IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LIQWD, INC. and OLAPLEX LLC,    )
                                  )
          Plaintiffs,        )
                                  )
       v.                 )    Civil Action No. 17-14-JFB-SRF
                                  )
L'ORÉAL USA, INC., L'ORÉAL USA    )    REDACTED
PRODUCTS, INC., L'ORÉAL USA S/D,    )    PUBLIC VERSION
INC., L'ORÉAL S.A. and REDKEN 5TH    )
AVENUE NYC, L.L.C.,            )
                                  )
          Defendants.     )

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

Presently before the court in this patent infringement action are the following motions:

(1) the motion to dismiss the complaint pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal

Rule of Civil Procedure, filed by defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc.,

L'Oréal USA S/D, Inc., and Redken 5th Avenue NYC, LLC (collectively, "L'Oréal USA") (D.I.

66); (2) the motion to dismiss the complaint pursuant to Rules 12(b)(5), 12(b)(2), 12(b)(1), and

12(b)(6), filed by defendant L'Oréal S.A. (together with the L'Oréal USA defendants,

"defendants") (D.I. 117); (3) the motion for leave to file a second amended complaint, filed by

plaintiffs Liqwd, Inc. and Olaplex LLC (together, "Olaplex") (D.I. 126); and (4) defendants'

motion to stay pending post-grant review (D.I. 150).  For the following reasons, I recommend

that the court: (1) deny L'Oréal USA's motion to dismiss, (2) grant-in-part L'Oréal S.A.'s

motion to dismiss; (3) grant Olaplex's motion to amend the complaint;[1] and (4) deny defendants' motion to stay.

## II.   BACKGROUND

### A. Patents-In-Suit

On November 22, 2016, the United States Patent and Trademark Office (the "USPTO") issued United States Patent No. 9,498,419 ("the '419 patent"), entitled "Keratin Treatment Formulations and Methods." The '419 patent was filed on March 31, 2016 on a fast track, and claims priority to United States Provisional Application No. 61/994,709, which was filed on May 16, 2014. The '419 patent is a continuation of parent application no. 14/713,885, which was filed May 15, 2015, published on November 19, 2015, and issued as U.S. Patent No. 9,326,926 on May 3, 2016. The '419 patent lists as inventors Eric D. Pressly and Craig J. Hawker ("the inventors"), and identifies Liqwd, Inc. as the assignee. The '419 patent describes "[f]ormulations, kits, and methods for rebuilding the disulfide bonds in keratin" to be applied in conjunction with a hair coloring treatment. ('419 patent, Abstract)

While the '419 patent was pending before the USPTO as Patent Application No. 15/087,415, a series of anonymous submissions were made on August 25, 2016, August 29, 2016, September 14, 2016, and September 23, 2016 alleging that the pending claims could not be

---

[1] Olaplex's proposed second amended complaint adds a claim for infringement of a patent which was filed with the United States Patent and Trademark Office and issued after the commencement of this suit. (D.I. 126, Ex. 2 at ¶¶ 26, 116-139) The second amended complaint also eliminates the causes of action for unjust enrichment and breach of the implied covenant of good faith and fair dealing. (D.I. 126, Ex. 2 at 41-42) The proposed amendments do not otherwise significantly alter the pleading. In the interest of judicial efficiency, the court resolves the pending motions to dismiss the first amended complaint to the extent that those motions apply equally to the second amended complaint. Counsel for defendants suggested such an approach during the September 19, 2017 conference, and counsel for plaintiffs raised no objection. (9/19/17 Tr. at 26:3-27:21)

allowed. (D.I. 53 at ¶ 84)  Olaplex alleges that L'Oréal USA made one or more of the third-party submissions to the USPTO to prevent the issuance of the '419 patent.  (*Id.* at ¶ 85)  The third-party submissions were rejected, and the '419 patent was issued.  (*Id.* at ¶ 86)

On July 19, 2017, the USPTO's Patent Trial and Appeal Board ("PTAB") instituted post-grant review of claims 1-8 and 10 of the '419 patent.  (D.I. 143, Ex. D)

United States Patent No. 9,668,954 ("the '954 patent") (together with the '419 patent, the "patents-in-suit") was filed on January 25, 2017 and issued on June 6, 2017.  On April 26, 2017, the USPTO issued a notice of allowance for the claims in the '954 patent.  (D.I. 143, Ex. B)  The '954 patent is a continuation of United States Patent Application No. 15/290,593, which is a continuation of the '419 patent.  The '954 patent has the same title, inventors, and specification as the '419 patent.  The active agent element of claim 1 of the '954 patent requires application of a bleaching mixture containing an active agent of maleic acid to the hair.  ('954 patent, col. 25:58-67)

### B. Parties

Olaplex LLC is a California start-up that discovered, developed, and sells professional hair care products including Olaplex Bond Multiplier No. 1 ("Bond Multiplier"), which protects hair during bleach treatments.  (D.I. 53 at ¶¶ 2, 18)  Olaplex LLC is purportedly the exclusive licensee of the patents-in-suit pursuant to a May 20, 2014 licensing agreement.  (D.I. 53 at ¶ 27; D.I. 68, Ex. A at 57:4-58:11 and Ex. 13)  Olaplex formally launched in June 2014 via its website.  (D.I. 53 at ¶ 33)  Liqwd, Inc. is a California company which is the alleged owner of the patents-in-suit.  (D.I. 53 at ¶¶ 6, 27)

L'Oréal USA Products, Inc., L'Oréal USA S.D., Inc., and Redken 5th Avenue NYC L.L.C. are subsidiaries of co-defendant L'Oréal USA, Inc.  (D.I. 53 at ¶¶ 8-10, 12)  L'Oréal

3

USA, Inc. is a wholly-owned subsidiary of L'Oréal S.A., a French company headquartered in France.  (*Id.* at ¶ 11)  L'Oréal USA develops and manufactures hair care, skin care, cosmetics, and fragrances distributed through over 30 brands.  Three of L'Oréal USA's products are accused of infringement by Olaplex in the present case: Matrix Bond Ultim8 Step 1 Amplifier, Redken pH-Bonder #1 Bond Protecting Additive, and L'Oréal Professionnel Smartbond Step 1 Additive (collectively, the "Accused Products").  (*Id.* at ¶¶ 61-62)

L'Oréal S.A. maintains its principal offices in France, where it produces and markets personal care products.  (D.I. 122 at ¶ 3)  L'Oréal S.A. is the corporate parent of several subsidiaries which manufacture and distribute beauty, cosmetic, and personal hygiene products throughout the world and which operate as separate legal entities from L'Oréal S.A.  (*Id.*) L'Oréal USA maintains separate licensing and distribution contracts, manufactures and distributes its own products, has its own board of directors, issues separate financial statements, files separate tax returns, and maintains a separate workforce from L'Oréal S.A.  (*Id.* at ¶ 4) L'Oréal S.A. has no physical presence in Delaware, does not conduct business in Delaware, and is not registered to do business in Delaware.  (*Id.* at ¶ 6)

### C. Facts

Dean Christal, the CEO of Olaplex LLC and Liqwd, Inc., worked with Drs. Pressly and Hawker to develop a hair product that would protect hair during chemical treatments.  (D.I. 53 at ¶¶ 21-22)  On December 6, 2012, the inventors executed "working agreements" with Christal, pursuant to which Drs. Hawker and Pressly agreed to assign their rights in the intellectual property to Christal or any associated business entity in exchange for a percentage of stock in the company and profits (the "2012 Emails").  (D.I. 68, Ex. A at Exs. 17 & 18)  The 2012 Emails expressly excluded Liqwd, Inc. as an assignee.  (*Id.*)

On May 16, 2014, the inventors filed U.S. Provisional Application No. 61/994,709 with the USPTO. (D.I. 68, Ex. A at Ex. 21)  On May 20, 2014, Liqwd, Inc. and Olaplex LLC executed a license agreement pursuant to which Liqwd, Inc. granted Olaplex LLC a license for provisional patent applications assigned to Liqwd, Inc. by the inventors. (D.I. 68, Ex. A at Ex. 13)  Olaplex launched its products online in June 2014. (D.I. 53 at ¶ 33)  On August 28, 2014, the inventors executed a formal assignment of their inventorship rights as inventors of Provisional Application No. 61/994,709 to Liqwd, Inc. (the "2014 Assignment"). (D.I. 68, Ex. A at Ex. 21)  In November 2014, Olaplex launched in the United States by marketing its products through Salon Centric, a wholesale salon and beauty supply distributor wholly owned by L'Oréal USA. (D.I. 53 at ¶ 34)



The inventors executed an assignment of the '419 patent to Liqwd on December 7, 2015, and recorded the assignment with the PTO on March 31, 2016 ("the 2016 Assignment"). (D.I. 88, Exs. A & B)

### D. Procedural History

On November 22, 2016, the '419 patent was issued by the USPTO, and Olaplex filed a complaint against L'Oréal USA for infringement of the '419 patent and false advertising in the Central District of California (the "California Action"). (D.I. 53 at ¶ 110; C.D. Cal. C.A. No. 16-8708-R-AFM, D.I. 1) Olaplex filed the present action on January 5, 2017 against L'Oréal USA after dismissing the California Action, asserting causes of action for the alleged infringement of the '419 patent, misappropriation of trade secrets under the Defend Trade Secrets Act, misappropriation of trade secrets under the Delaware Trade Secrets Act, unjust enrichment, breach of contract, and breach of the implied covenant of good faith and fair dealing. (D.I. 2) On January 17, 2017, Olaplex filed a motion for a preliminary injunction, alleging that it had suffered and would continue to suffer irreparable harm unless L'Oréal USA's infringement was enjoined. (D.I. 14)

Olaplex filed its first amended complaint on March 20, 2017, adding L'Oréal S.A. as a defendant. (D.I. 53) In response, L'Oréal USA filed its motion to dismiss the first amended complaint on April 17, 2017, alleging that Olaplex did not have standing to maintain the action under Rule 12(b)(1), and arguing that the causes of action failed to state a claim under Rule 12(b)(6). (D.I. 66) L'Oréal S.A. followed suit on June 15, 2017, filing a motion to dismiss for insufficiency of service of process, lack of personal jurisdiction, lack of standing, and failure to state a claim. (D.I. 117) On June 21, 2017, Olaplex moved for leave to file a second amended complaint, seeking to add a cause of action for infringement of the '954 patent, and striking its

causes of action for unjust enrichment and breach of the implied covenant of good faith and fair dealing.  (D.I. 126, Ex. 2)

On June 8, 2017, Judge Robinson heard argument on the pending motion for preliminary injunction and L'Oréal USA's pending motion to dismiss.  (D.I. 114)  Judge Robinson issued a memorandum order on July 6, 2017, denying Olaplex's motion for a preliminary injunction.  (D.I. 135)  Specifically, Judge Robinson found that Olaplex failed to demonstrate a likelihood of success on the merits, even though it established irreparable harm.  (*Id.*)  On July 11, 2017, Olaplex appealed the ruling on the preliminary injunction to the Federal Circuit.  (D.I. 136)  The Federal Circuit issued its decision on January 16, 2018, vacating the district court's denial of a preliminary injunction and remanding the case to the district court for further proceedings.  (D.I. 176, Ex. 1)  The Federal Circuit mandate making the judgment of the court final has not issued, and during a February 6, 2018 Rule 16 scheduling conference, defendants indicated their intention to petition for rehearing.  (2/6/18 Tr. at 25:21-23)

## III.   DISCUSSION

### A.   Standing

#### 1.   Legal standard

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of jurisdiction over the subject matter, or if the plaintiff lacks standing to bring its claim.  Motions brought under Rule 12(b)(1) may present either a facial or factual challenge to the court's subject matter jurisdiction.  *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (quoting *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009)).  In reviewing a facial challenge under Rule 12(b)(1), the standards relevant to Rule 12(b)(6) apply. In this regard, the court must accept all factual allegations in the complaint as true, and the court

may only consider the complaint and documents referenced in or attached to the complaint. *See Church of Universal Bhd. v. Farmington Twp. Supervisors*, 296 F. App'x 285, 288 (3d Cir. 2008); *Gould Elec., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). In reviewing a factual challenge to the court's subject matter jurisdiction, the court is not confined to the allegations in the complaint. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Instead, the court may consider evidence outside the pleadings, including affidavits, depositions and testimony, to resolve any factual issues bearing on jurisdiction. *See Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997). Once the court's subject matter jurisdiction over a complaint is challenged, the plaintiff bears the burden of proving that jurisdiction exists. *See Lincoln*, 800 F.3d at 105; *Mortensen*, 549 F.2d at 891.

The Supreme Court has announced three requirements for standing which originate out of Article III of the Constitution, all of which must be satisfied for a federal court to entertain a claim. In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), the Supreme Court opined:

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Id.* (internal citations and quotation marks omitted). Therefore, to satisfy the constitutional standing requirements, a plaintiff must show that it (1) has suffered or will immediately suffer an injury, (2) which is fairly traceable to the defendant's conduct, and (3) which is likely to be redressed by a favorable federal ruling on the matter. "[T]he touchstone of constitutional

8

standing in a patent infringement suit is whether a party can establish that it has an exclusionary

right in a patent that, if violated by another, would case the party holding the exclusionary right

to suffer legal injury." *WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir.

2010).

In addition to the constitutional standing requirements, the federal courts have adopted a

set of self-imposed prudential standing limitations on the exercise of federal jurisdiction. "These

considerations require that (1) a litigant assert his own legal interests rather than those of third

parties, (2) courts refrain from adjudicating abstract questions of wide public significance which

amount to generalized grievances, and (3) a litigant demonstrate that her interests are arguably

within the zone of interests intended to be protected by the statute, rule or constitutional

provision on which the claim is based." *Davis by Davis v. Phila. Housing Auth.*, 121 F.3d 92, 96

(3d Cir. 1997) (citations omitted). These "prudential" limitations are generally designed to

prevent courts from deciding broad questions of social import where no individual rights would

be vindicated. *Id.* "Prudential standing to sue for patent infringement derives from 35 U.S.C. §

281: 'A patentee shall have remedy by civil action for infringement of his patent.'" *Int'l Gamco,*

*Inc. v. Multimedia Games, Inc.*, 504 F.3d 1273, 1276 (Fed. Cir. 2007). The term "patentee" in §

281 "includes the patentee's successors in title." *Id.* (citing 35 U.S.C. § 100(d)).

Although patent rights are initially held by the named inventor, they may be licensed or

assigned, and when "a sufficiently large portion of this bundle of rights is held by one individual,

we refer to that individual as the owner of the patent, and that individual is permitted to sue for

infringement in his own name." *Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*,

604 F.3d 1354, 1360 (Fed. Cir. 2010). Accordingly, plaintiffs who "hold all legal rights to the

patent as the patentee or assignee of all patent rights" can sue in their own name alone. *Morrow*

*v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007) ("Unquestionably, a patentee who holds all the exclusionary rights and suffers constitutional injury in fact from infringement is one entitled to sue for infringement in its own name.").

Exclusive licensees also have constitutional standing because they hold "exclusionary rights and interests created by the patent statutes, but not all substantial rights to the patent." *Morrow*, 499 F.3d at 1340. "However, these exclusionary rights 'must be enforced through or in the name of the owner of the patent,' and the patentee who transferred these exclusionary interests is usually joined to satisfy prudential standing concerns." *Id.* at 1340; *see also Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1193 (Fed. Cir. 2007). In other words, "unlike an assignee that may sue in its own name, an exclusive licensee having fewer than all substantial patent rights . . . that seeks to enforce its rights in a patent generally must sue jointly with the patent owner." *Intellectual Prop. Dev., Inc. v. TCI Cablevision of CA, Inc.*, 248 F.3d 1333, 1347-48 (Fed. Cir. 2001) (finding "it was proper for IPD, as an exclusive licensee of fewer than all substantial rights in the '202 patent, to add [licensor] as a party plaintiff"). "By contrast, a bare licensee, i.e., a party with only a covenant from the patentee that it will not be sued for infringing the patent rights, lacks standing to sue third parties for infringement of the patent." *Propat*, 473 F.3d at 1193-94.

"Standing must be present at the time the suit is brought." *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975-76 (Fed. Cir. 2005). If a plaintiff lacks standing at that time, the court lacks subject matter jurisdiction and the case must be dismissed pursuant to Rule 12(b)(1). *See generally Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). The party "bringing the action bears the burden of establishing that it has standing." *Sicom*, 427 F.3d at 976.

10

## 2. Analysis[2]

### (a) Infringement – Count 1

In support of the motion to dismiss, L'Oréal USA contends that Olaplex lacks standing to sue for infringement of the '419 patent based on the 2012 Emails between Christal and the inventors. (D.I. 67 at 13) Specifically, L'Oréal USA notes that Liqwd, Inc. was expressly excluded from the 2012 Emails as a potential assignee. (*Id.*) Moreover, L'Oréal USA indicates that Olaplex LLC did not yet exist at the time of the 2012 Emails, and if it received the patent rights upon its founding in May 2014, the August 2014 Assignment or any subsequent assignment to Liqwd, Inc. by the inventors would have no effect because the inventors had no rights to assign following the founding of Olaplex LLC. (*Id.* at 14)

In response, Olaplex argues that the 2016 Assignment recorded with the USPTO validly assigned the '419 patent to Liqwd, Inc. (D.I. 88 at 1) According to Olaplex, the 2012 Emails did not validly transfer the inventors' rights in the '419 patent because Olaplex LLC did not exist at the time, and the patent rights therefore remained with the inventors until the 2016 Assignment. (*Id.* at 2-3) Moreover, Olaplex alleges that the 2012 Emails are facially not assignments because they do not reflect a present, automatic grant or transfer of the inventors' future patent rights. (*Id.* at 3-4)

It is well-established that "[t]he present assignment of a future invention divests the inventor-assignor of ownership of the invention and automatically vests ownership of the invention, when invented, in the assignee." *Picture Patents, LLC v. Aeropostale, Inc.*, 788 F. Supp. 2d 127, 135 (S.D.N.Y. 2011) (quoting *Imatec, Ltd. v. Apple Computer, Inc.*, 81 F. Supp.

---

[2] The court may consider evidence outside the pleadings in its analysis of this factual challenge to the court's subject matter jurisdiction. *See Wells v. City of Wilmington*, --- F. Supp. 3d ----, C.A. No. 16-076-SLR, 2017 WL 2798254, at *2 (D. Del. June 28 2017).

2d 471, 481 (S.D.N.Y. 2000); citing *FilmTec Corp. v. Allied-Signal, Inc.*, 939 F.2d 1568, 1573

(Fed. Cir. 1991); *Bd. of Trustees of the Leland Stanford Junior Univ. v. Roche Molecular Sys.,*

*Inc.*, 583 F.3d 832, 842 (Fed. Cir. 2009)).  Consequently, an inventor who assigns the rights in a

future invention does not have standing to sue for infringement of a patent arising from the

assigned invention.  *Id.*  However, an agreement to assign rights to an invention in the future

requires further action to transfer title of the invention, and does not constitute a present transfer

of the inventors' interest.  *See Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1576 (Fed.

Cir. 1991) ("[a]ny inventions conceived by IDEA or its employees . . . shall be the property of

[Arachnid], and all rights thereto will be assigned by IDEA . . . to [Arachnid]").  The

determination of whether an agreement constitutes an automatic assignment or an obligation to

assign is governed by federal law because it "is intimately bound up with the question of

standing in patent cases."  *See DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d

1284, 1290 (Fed. Cir. 2008).[3]

    In the present case, the 2012 Emails use neither the "does hereby grant" language of

present conveyance, nor the "will assign" language of a future conveyance of title following the

completion of further acts.  *See Affymetrix, Inc. v. Illumina, Inc.*, 446 F. Supp. 2d 292, 296 (D.

Del. 2006).  Nonetheless, the language of the 2012 Emails indicates that no further act on the

part of the assignee was required once the invention came into being, and title would transfer by

---

[3] The court acknowledges that the Federal Circuit's choice of law discussion regarding the
validity of patent transfers in *DDB Technologies* has been called into question.  *See Abraxis
Bioscience, Inc. v. Navinta LLC*, 672 F.3d 1239, 1242 (Fed. Cir. 2011) (O'Malley, dissenting)
(criticizing the majority for "ignor[ing] New York law when interpreting the contracts, and
cho[osing], instead, to create a new federal common law rule to assess the validity of patent
transfers, relying on *dicta*" in *DDB Technologies*).  However, this issue is not dispositive of the
present analysis in light of the court's conclusion that the 2012 Emails are not valid assignments
due to the fact that Olaplex LLC, the purported assignee, did not yet exist.

operation of law.  The 2012 Emails are written in present tense to describe the assignment of an

invention to be developed in the future.  Specifically, the 2012 Emails state, "I agree to give you"

a percentage of the stock in an unidentified company and its profits in exchange for ownership of

"[a]ll Intellectual Property and materials that have been discussed and will be developed by [the

inventors], concerning Photoactive Light Technology outside of the UV spectrum and Hair

Straightening Disulfide Bond breaking formulas for the beauty industry and other applicable

business." (D.I. 68, Ex. A at Exs. 17-18)  The 2012 Emails indicate that "[a]ll Intellectual

Property that relates to this agreement is wholly owned by the company or corporation,"

describing a present transfer of title requiring no further action on the part of the inventors.[4]  (Id.)

The use of the future tense to describe the inventors' obligations under the 2012 Emails is limited

to the development of the future inventions.  (Id.) ("You will help with all language that is

necessary to write a Patent application with the USPTO.")

However, the 2012 Emails do not constitute a valid assignment because they purport to

assign title in the future invention to an unidentified company.  (D.I. 68, Ex. A at Exs. 17 & 18)

Specifically, the 2012 Emails describe the parties to the agreement as "[y]ou being '[the

inventor]' and I being 'Dean Christal' or any business entity that you or I are affiliated with.

This would exclude your current employer and Liqwd, Inc."  (Id.)  The inventors indicate that

the intended assignee under the 2012 Emails is Olaplex LLC, because their stakes in Olaplex

LLC match the ownership interests granted in the 2012 Emails.  (D.I. 88, Ex. E at 44:16-51:16;

---

[4] The 2012 Emails state that, after the agreement is reached, Christal "will then have a more
formal document created by an attorney." (D.I. 68, Ex. A at Exs. 17-18)  The Federal Circuit has
declined to construe similar provisions as conflicting with the language of present, automatic
assignment in the agreement. See DDB Techs., 517 F.3d at 1290 n.3 (concluding that a clause
stating, "Employee agrees to execute specific assignments and do anything else properly
requested by Company, at any time during or after employment with Company, to secure such
rights," did not contemplate an additional act of assignment).

Ex. F at 59:12-17)  However, the website for the California Secretary of State shows that Olaplex

LLC registered to do business by filing its Articles of Organization of a Limited Liability

Company on May 20, 2014, nearly two years after the 2012 Emails.  (6/15/17 Tr. at 21:15-20;

California Secretary of State website at https://businesssearch.sos.ca.gov/)

Courts have held that an assignment to an unidentified entity, or an entity which does not

yet exist, is inadequate to divest the purported assignee of its ownership rights.  *See Diagnostic*

*Med. Assocs. v. N.Y. City Dist. Council of Carpenters Welfare Fund*, 2006 WL 728486, at *8

(S.D.N.Y. Mar. 21, 2006) ("Since an assignment to a nonexistent entity plainly is ineffective to

divest the assignor's entire interest, insofar as Marcucci attempted to transfer his claims to DMA,

they remained his property despite the paperwork that he signed."); *see also Imperium (IP)*

*Holdings, Inc. v. Apple, Inc.*, 2012 WL 2995697, at *2 (E.D. Tex. July 23, 2012) (concluding

that "even if the assignment was intended to be assigned to ESS Technologies International, Inc.,

that entity did not exist at the time of the 2004 Pictos Assignment.  Therefore, the 2004 Pictos

Assignment would be void as a matter of law, and Pictos Technologies, Inc. would have retained

their rights to the patents-in-suit.").  L'Oréal USA has not directed the court to any authority

contradicting this principle.  Consequently, the 2012 Emails did not constitute a valid assignment

of the inventors' rights to the '419 patent.

In view of the foregoing analysis, the court concludes that the 2016 Assignment between

the inventors and Liqwd, Inc. controls.  (D.I. 88, Exs. A & B)  Liqwd, Inc. has standing to sue

based on its status as the assignee of legal title to the provisional and parent applications which

preceded the '419 patent.  *See* 35 U.S.C. § 119(e).  The record reflects that Liqwd, Inc.

exclusively licensed the invention to Olaplex LLC.  (D.I. 68, Ex. A at Ex. 13)  Consequently,

Olaplex, LLC also has standing to assert its rights in the '419 patent together with Liqwd, Inc.

14

*See Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340 (Fed. Cir. 2007).  Having concluded that both plaintiffs in the present action have standing to sue, I recommend that the court deny L'Oréal USA's motion to dismiss pursuant to Rule 12(b)(1).

### (b) Breach of contract[5] – Count 4

L'Oréal S.A. contends that Olaplex also lacks standing to sue for its breach of contract claim because the claim is based on the alleged breach of ████████ by L'Oréal USA, Inc., and L'Oréal S.A. was not a party to ████████████████.  In response, Olaplex argues that it has standing to sue L'Oréal S.A. for breach of contract even though L'Oréal S.A. was not a signatory to ████████ because L'Oréal S.A. implicitly adopted ████████ by accepting its benefits ███████████████████████████████████████.  (D.I. 140 at 10-11)

A claim for breach of contract under Delaware law requires a contractual obligation, a breach of that obligation, and injury to the plaintiff caused by the defendant's breach of the contractual obligation. *See H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003).  Generally, "only a party to a contract may be sued for breach of that contract." *Koloni Reklam, Sanayi, Ticaret LTD/STI v. Viacom, Inc.*, C.A. No. 16-285-SLR, 2017 WL 726660, at *3 (D. Del. Feb. 23, 2017).  However, a third party to a contract may be bound by it by expressly or implicitly adopting the agreement if the contract itself contemplates that non-signatories may adopt it. *See Am. Legacy Found. v. Lorillard Tobacco Co.*, 831 A.2d 335, 343-44 (Del. Ch. 2003).  To determine whether a third party has standing as a beneficiary of the contract, the court considers whether the parties to the contract intended to confer direct benefits upon the third party. *Hadley v. Shaffer*, C.A. No. 99-144-JJF, 2003 WL 21960406, at *5 (D. Del. Aug. 12,

---

[5] Given that the court has recommended granting L'Oréal S.A.'s Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, *see* § III.E.2, *infra*, this analysis is offered as an alternative in the event that the district judge does not adopt the Rule 12(b)(2) recommendation.

2003). If a third party happens to benefit from the performance of the contract coincidentally or indirectly, the third party will have no enforceable rights under the contract. *Id.*

It is undisputed in the present case that L'Oréal S.A. is not a party to █████████ Moreover, █████ does not expressly mention L'Oréal S.A., and does not contain a provision indicating that a non-signatory may adopt it. (D.I. 53, Ex. B) Consequently, the facts of the present case are distinguishable from the facts before the court in *Lorillard Tobacco*. 831 A.2d at 343-44 (describing provisions of the M.S.A. relating to the treatment of non-signatories specifically identified in the M.S.A.). There is no indication from the terms of █████ that the parties intended to benefit L'Oréal S.A. The allegation in the first amended complaint that █████

████████████████████████████████████████████████████████

████████ is insufficient to establish that Olaplex suffered an injury as a result of L'Oréal S.A.'s actions. (D.I. 53 at ¶ 50) As a result, Olaplex does not have standing to assert a cause of action for breach of █████ against L'Oréal S.A. I recommend that the court grant L'Oréal S.A.'s Rule 12(b)(1) motion to dismiss with respect to Count 4 of the first amended complaint for breach of contract against L'Oréal S.A.

### (c) Trade secrets[6] – Counts 2 and 3

L'Oréal S.A. alleges that Olaplex lacks standing to assert its trade secrets claim against L'Oréal S.A. because the complaint contains no facts suggesting that L'Oréal S.A. caused injury to Olaplex. (D.I. 118 at 16) In response, Olaplex contends that L'Oréal S.A. received an unpublished patent application from Olaplex ██████████████████████ containing

---

[6] Given that the court has recommended granting L'Oréal S.A.'s Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, *see* § III.E.2, *infra*, this analysis is offered as an alternative in the event that the district judge does not adopt the Rule 12(b)(2) recommendation.

product formulas which constituted trade secrets, and were subsequently misappropriated to Olaplex's detriment. (D.I. 140 at 9-10)

The publication of a patent containing a trade secret destroys the trade secret because it "put[s] the world on notice." *Medtronic Vascular, Inc. v. Advanced Cardiovascular Sys., Inc.*, C.A. No. 98-80-SLR, 2005 WL 388592, at *1 n.4 (D. Del. Feb. 2, 2005). The first amended complaint alleges that an unpublished patent application, disclosed to L'Oréal ███████████████, identified the active ingredient and formula later used in the Accused Products. (D.I. 53 at ¶ 48) Thus, the first amended complaint establishes the disclosure of a trade secret not available in the public domain at the time of the events described.

In addition, the first amended complaint provides a connection between the disclosure of the trade secret and L'Oréal S.A.'s misappropriation of the information, explaining that ████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████ According to Olaplex, this information provided L'Oréal with the necessary information to bring an infringing product to market quickly, thereby establishing a causal connection between the injury and the challenged conduct. (*Id.* at ¶ 57) The first amended complaint goes on to plead that L'Oréal did, in fact, bring infringing products to market after obtaining the trade secret information. (*Id.* at ¶¶ 61-62) As a result, the court concludes that the first amended complaint adequately establishes Olaplex's standing to assert causes of action for misappropriation of trade secrets against L'Oréal S.A. I recommend that the court deny L'Oréal S.A.'s Rule 12(b)(1) motion to dismiss Olaplex's causes of action for misappropriation of trade secrets.

17

### B.    Failure to State a Claim

#### 1. Legal standard

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim

upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6)

motion to dismiss, the court must accept as true all factual allegations in the complaint and view

them in the light most favorable to the plaintiff. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64

(3d Cir. 2008). "[C]ourts use the same standard in ruling on a motion to dismiss a counterclaim

under Rule 12(b)(6) as they do in assessing a claim in a complaint." *Identix Pharms., Inc. v.

Gilead Sciences, Inc.*, C.A. No. 13-1987-LPS-CJB, 2014 WL 4222902, at *5 (D. Del. Aug. 25,

2014) (citing *Tyco Fire Prods. LP v. Victaulic Co.*, 777 F. Supp. 2d 893, 898-99 (E.D. Pa.

2011)).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint

must contain a "short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the

complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that

is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft

v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations

allow the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

When determining whether dismissal is appropriate, the court must take three steps.[7] *See

Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must identify

---

[7] Although *Iqbal* describes the analysis as a "two-pronged approach," the Supreme Court
observed that it is often necessary to "begin by taking note of the elements a plaintiff must plead
to state a claim." 556 U.S. at 675, 679. For this reason, the Third Circuit has adopted a three-

the elements of the claim. *Iqbal*, 556 U.S. at 675. Second, the court must identify and reject conclusory allegations. *Id.* at 678. Third, the court should assume the veracity of the well-pleaded factual allegations identified under the first prong of the analysis, and determine whether they are sufficiently alleged to state a claim for relief. *Id.*; *see also Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The third prong presents a context-specific inquiry that "draw[s] on [the court's] experience and common sense." *Id.* at 663-64; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

---

pronged approach. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## 2. Analysis

### (a) Direct infringement – Count 1

Pursuant to 35 U.S.C. § 271(a), a patent is directly infringed when a person "without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent." Amendments to the Federal Rules of Civil Procedure, which took effect on December 1, 2015, abrogated Rule 84 and the Appendix of Forms, including Form 18. Under the new rules, allegations of direct infringement are subject to the pleading standards established by *Twombly* and *Iqbal*, requiring plaintiffs to demonstrate a plausible claim for relief. *See Mayne Pharma Int'l PTY Ltd. v. Merck & Co., Inc.*, C.A. No. 15-438-LPS-CJB, 2015 WL 7833206, at *2 n.1 (D. Del. Dec. 3, 2015). "Direct infringement requires a party to perform each and every step or element of a claimed method or product." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1320 (Fed. Cir. 2009) (internal quotation marks omitted).

L'Oréal USA contends that Olaplex has failed to state a claim for direct infringement of the '419 patent because L'Oréal USA's products contain a hair coloring agent,[8] and the two-step hair bleaching method claimed in the '419 patent does not disclose hair coloring agents. (D.I. 67 at 16) However, paragraph 73 of the first amended complaint describes three dyes contained in L'Oréal USA's Accused Products, and expressly states that, "[a]lthough one or more of the ingredients may be a *product* colorant, the ingredients do not contain a hair coloring agent. In

---

[8] On appeal of the motion for preliminary injunction, the Federal Circuit determined that the district court relied on an incorrect claim construction of the term "hair coloring agent." *Liqwd, Inc. v. L'Oréal USA, Inc.*, 2018 WL 480759, at *2 (Fed. Cir. Jan. 16, 2018). The Federal Circuit construed "hair coloring agent" as "referring to a customary hair-coloring composition that is present in the mixture in an amount that, when the mixture is applied to hair, results in hair coloring, judged in the usual way—by visual inspection." *Id.* Thus, the Federal Circuit vacated the denial of the preliminary injunction on the basis that it was error for the district court to find no likelihood of success on the direct infringement claim.

other words, the dyes exist to color the product itself, not to color hair." (D.I. 53 at ¶¶ 73-74)
The first amended complaint subsequently reiterates that, "[w]hen used according to L'Oréal's
instructions and training, the mixture of the Accused Products and the bleaching formulation
does not contain a hair coloring agent." (*Id.* at ¶ 107) The allegations in the first amended
complaint, taken as true, establish that the Accused Products do not contain a hair coloring agent,
consistent with claim 1's requirement that the claimed mixture "does not contain a hair coloring
agent." ('419 patent, col. 26:4-5) The facts of this case are therefore distinguishable from the
situation before the court in *Cumberland Pharm. Inc. v. Sagent Agila LLC*, in which the
allegedly infringing product contained a product excluded from the scope of the patents-in-suit.
C.A. No. 12-825-LPS, 2013 WL 5913742 (D. Del. Nov. 1, 2013).

L'Oréal USA further alleges that Olaplex's claim for direct infringement fails because the
Accused Products do not contain a bleaching formulation. (D.I. 67 at 16) Claim 1 of the '419
patent requires "mixing a formulation comprising an active agent with a bleaching formulation."
('419 patent, col. 25:43-44) The first amended complaint identifies a video broadcast on
November 29, 2016, after the November 22, 2016 issuance date of the '419 patent, showing a
L'Oréal representative mixing one of the Accused Products in a bleaching treatment. (D.I. 53 at
¶ 96) Although the video was uploaded on November 29, 2016, the first amended complaint
does not establish when the recording was made to establish a post-issuance act of infringement.
Moreover, the November 29, 2016 video showed the allegedly infringing use of the accused
Matrix product, but the first amended complaint contains no post-issuance substantiation of the
claim that L'Oréal employees also infringed the accused Redken and L'Oréal Professionnel
products. However, the first amended complaint also alleges that L'Oréal stylists, colorists, and

21

trainers continue to produce videos and show employees how to use the Accused Products during bleaching following the issuance of the '419 patent. (*Id.* at ¶ 93)

Accepting the allegations of the first amended complaint as true at this stage of the proceedings, the court concludes that Olaplex has adequately stated a claim for direct infringement of the '419 patent.[9] Consequently, I recommend that the court deny L'Oréal USA's Rule 12(b)(6) motion to dismiss the first cause of action for direct infringement.

### (b) Induced infringement – Count 1

To state a claim for induced infringement, a plaintiff must allege facts showing that: (1) the plaintiff's patent is directly infringed, (2) the defendant induced that infringement by "aid[ing] and abett[ing] another's direct infringement of the patent," *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1306 (Fed. Cir. 1999), and (3) the defendant possessed the specific intent to encourage the third party to infringe, *see Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363 (Fed. Cir. 2003).

In support of its motion to dismiss, L'Oréal USA alleges that the first amended complaint does not demonstrate that L'Oréal USA had knowledge of specific third-party acts and the intent to induce third-party infringement of the '419 patent. (D.I. 67 at 17) In response, Olaplex directs the court to portions of the first amended complaint stating that L'Oréal USA induced infringement by intentionally directing and encouraging its customers, resellers, retailers, and end users to use, sell, offer to sell, and/or import the Accused Products. (D.I. 88 at 8) Olaplex further suggests that L'Oréal USA knew of the '419 patent at the time of the allegedly inducing

---

[9] The court further notes that the proposed second amended complaint bolsters Olaplex's cause of action for direct infringement of the '419 patent by adding a paragraph describing L'Oréal's admission that it has continued to infringe since the issuance of the patents-in-suit, and has continued to train others in infringing uses of the Accused Products. (D.I. 126, Ex. B at ¶ 111)

acts because it was served a complaint for infringement on the same day the patent issued.  (*Id.* at 9)

Olaplex has adequately pleaded a cause of action for induced infringement in the first amended complaint.  For the reasons set forth in § III.B.2(a), *supra*, the court concludes that Olaplex has adequately pleaded underlying acts of direct infringement.  The first amended complaint also establishes that L'Oréal USA had knowledge of the '419 patent prior to or as of the filing of the California Action on November 22, 2016.[10]  (D.I. 53 at ¶¶ 87, 110)

The first amended complaint plausibly suggests that L'Oréal USA knew the acts it induced would be infringing by describing L'Oréal USA's advertising materials and knowledge of the accusation that it infringed the '419 patent.  Specifically, the first amended complaint describes YouTube videos posted by L'Oréal USA which remain online and continue to teach infringing uses of the Accused Products since the issuance of the '419 patent.  (*Id.* at ¶ 98) Federal Circuit precedent establishes that, at the pleadings stage, facts comparable to those alleged in the first amended complaint are sufficient to state a claim for induced infringement. *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1341-42 (Fed. Cir. 2012) (concluding that advertisements encouraging infringing uses of an accused product give rise to a reasonable inference of an intention to induce customers to use the patented method); *see also DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 471 (D. Del. 2016)

---

[10] On appeal, the Federal Circuit found that its claim construction of the term "hair coloring agent" "makes it likely that the knowledge element for inducement of infringement may be satisfied" if Olaplex demonstrates that it is reasonably likely to succeed in proving that the instructions for use induce infringement and that L'Oréal knows, at the time a preliminary injunction is to take effect, that the instructions for use will induce infringement.  *Liqwd*, 2018 WL 480759, at *4.

(holding that the plaintiff sufficiently pleaded knowledge of alleged infringing use by the defendant, which provided instructions, promotional and educational materials to its customers).

The first amended complaint also states that L'Oréal USA made one or more anonymous third party submissions to the USPTO in August and September 2016 in an effort to challenge the validity and prevent the issuance of the '419 patent. (D.I. 53 at ¶¶ 84-86)  Taken as true, these allegations establish that L'Oréal USA had knowledge of the '419 patent prior to its issuance and had reason to believe its Accused Products would infringe the '419 patent. Although L'Oréal USA challenges these allegations as conclusory and speculative, the Federal Circuit has held that "the plausibility requirement is not akin to a 'probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged." *In re Bill of Lading*, 681 F.3d at 1341 (quoting *Twombly*, 550 U.S. at 556).  The court concludes that Olaplex has met the plausibility standard with respect to its cause of action for induced infringement.  As a result, I recommend that the court deny L'Oréal USA's Rule 12(b)(6) motion to dismiss Olaplex's first cause of action for induced infringement of the '419 patent.

### (c)  Willful infringement – Count 1

To state a claim for willful infringement, a patent owner must allege facts showing: (1) an objectively high likelihood that the defendant's actions constituted infringement, and (2) that the defendant either knew or should have known about the risk of infringement. *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).

L'Oréal USA contends that Olaplex has failed to adequately plead facts that might substantiate a willfulness finding in the first amended complaint. (D.I. 67 at 17)  In response, Olaplex cites the pleaded facts in the first amended complaint demonstrating that L'Oréal USA

24

knew of the '419 patent, knew the Accused Products would infringe the '419 patent, and tried to prevent the issuance of the '419 patent while continuing to sell and promote the Accused Products even after the '419 patent issued.  (D.I. 88 at 10)

As previously discussed at § III.B.2(b), *supra*, the first amended complaint plausibly pleads that L'Oréal USA knew or should have known about the risk of infringement posed by the Accused Products. (D.I. 53 at ¶¶ 84-88; 98; 110)  The first amended complaint also pleads facts suggesting that L'Oréal USA used the unpublished parent patent application which led to the '419 patent for purposes of developing the Accused Products.  (*Id.* at ¶¶ 48, 57, 82)  These allegations distinguish the case presently before the court from the pleading at issue in *Mayne Pharma Int'l PTY Ltd. v. Merck & Co., Inc.*, in which the complaint asserted willful infringement in a single, conclusory sentence without providing a factual predicate for the claim.  C.A. No. 15-438-LPS-CJB, 2015 WL 7833206, at *5 (D. Del. Dec. 3, 2015).  Given that the first amended complaint in the present action, taken as true, plausibly states a claim for relief for willful infringement, I recommend that the court deny L'Oréal USA's Rule 12(b)(6) motion to dismiss Olaplex's cause of action for willful infringement of the '419 patent at Count 1 of the first amended complaint.

### (d) Misappropriation of trade secrets[11] – Counts 2 and 3

Defendants' Rule 12(b)(6) motions seek dismissal of Olaplex's causes of action for trade secret misappropriation under both the Delaware Uniform Trade Secrets Act ("DUTSA") and the federal Defend Trade Secrets Act ("DTSA").  To prevail on a claim of trade secret

---

[11] Given that the court has recommended granting L'Oréal S.A.'s Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, *see* § III.E.2, *infra*, this analysis, as it pertains to L'Oréal S.A., is offered as an alternative in the event that the district judge does not adopt the Rule 12(b)(2) recommendation.

misappropriation under the Delaware Uniform Trade Secrets Act, a plaintiff must show the "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or, alternatively, the "[d]isclosure or use of a trade secret of another without express or implied consent" by a person who either: (1) acquired the secret by improper means; or (2) knew or had reason to know that their knowledge of the trade secret was (A) derived by another who acquired it by improper means, (B) "[a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use," or (C) acquired by accident or mistake. *See* 6 *Del. C.* § 2001(2).

> Under the DUTSA, a trade secret
>
> shall mean information, including a formula, pattern, compilation, program, device method, technique or process, that:
>
> a.   Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and
>
> b.   Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

6 *Del. C.* § 2001(2).

The federal Defend Trade Secrets Act ("DTSA") creates a private cause of action for the owner of a trade secret "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). A "trade secret" under the DTSA includes "all forms and types" of information that derive value from being secret and that the owner took reasonable measures to keep secret. *Id.* at § 1839(3)(A)(B). "Misappropriation" consists of (1) "acquisition of a trade secret" by a person who knows or should know the secret was improperly acquired, or (2) "disclosure or use of a trade secret of another without express or implied consent." § 1839(5)(A)(B).

26

**(i)     Judicial notice**

As a preliminary matter, defendants have requested that the court take judicial notice of a number of exhibits to evaluate its position regarding the viability of the trade secret misappropriation claims.  (D.I. 69; D.I. 118 at 19; D.I. 119)  Defendants specify that the exhibits are offered only to show certain information was publicly available between December 1, 2014 and July 22, 2015, and are not offered for the truth of their contents.  (D.I. 69 at 1-2; D.I. 119 at 1-2)  Olaplex has not expressly challenged defendants' request for judicial notice in either its responsive briefs (D.I. 88; D.I. 140) or a separate filing.

When resolving a 12(b)(6) motion to dismiss, a district court may "generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (internal citations omitted).  Federal Rule of Evidence 201(b) states that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  The court may consider a document outside the pleadings "only to indicate what was in the public realm at the time, not whether the contents . . . were in fact true." *Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital*, 435 F.3d 396, 401 n.15 (3d Cir. 2006) (concluding that taking judicial notice of publications for the fact of their publication does not transform a motion to dismiss into a motion for summary judgment).

Given that defendants do not ask the court to assume the truth of the matters stated in the attached documents, and Olaplex does not challenge the request, the court will grant defendants' requests for judicial notice.  (D.I. 69; D.I. 119)  Under the circumstances before the court, the

ruling on this issue does not convert the pending motion to dismiss to a motion for summary judgment. *See Biggins v. Wells Fargo & Co.*, 266 F.R.D. 399, 408 (N.D. Cal. 2009) (concluding that a court may take judicial notice of a document posted to a website if there is no dispute as to the document's authenticity).

### (ii) Trade secret

Defendants contend that Olaplex has failed to identify a trade secret to support its cause of action for trade secret misappropriation under the DTSA and DUTSA. (D.I. 67 at 18-21; D.I. 118 at 18-19) Specifically, defendants allege that the unpublished patent application cannot constitute a trade secret because the application has since been published. (D.I. 67 at 19; D.I. 118 at 19) Moreover, defendants allege that the first amended complaint's allegations regarding ███████████████████████████████████████████████████ lacks the specificity required by Rule 8(a). (D.I. 67 at 20; D.I. 118 at 19 n.5) According to defendants, the ███████ methods of using Olaplex's claimed invention are not trade secrets because they are readily ascertainable by others, and Olaplex's product was available for almost a year ███████ ███████████████ (D.I. 67 at 20; D.I. 118 at 19 n.6)

In response, Olaplex alleges that the first amended complaint adequately identifies several trade secrets, including details regarding unpublished testing methodologies and the product formula in the unpublished patent application. (D.I. 88 at 11-14; D.I. 140 at 11)

The first amended complaint adequately pleads that the unpublished patent application ███████████████████████,[12] which disclosed maleic acid as the active ingredient, was a trade secret for the period between ███████████████████████████ until its

---

[12] The first amended complaint indicates that the unpublished patent application ███████████ ███████████████ was Application No. 14/713,885, which was published on November 19, 2015. (D.I. 53 at ¶¶ 48, 50)

publication date.  (D.I. 53 at ¶ 57)  The parties do not dispute that the patent application was

unpublished at the time of the ▓▓▓▓▓▓▓▓▓▓ nor do the parties dispute that, once a

patent application is published, it ceases to be a secret and cannot be misappropriated.  (D.I. 67 at

19; D.I. 88 at 13)

> [W]hen a patent is published containing a trade secret, it destroys the trade secret.
> Patents serve to "put the world on notice" with respect to what the patentee claims
> to own; thus, any trade secret in a patent is no longer secret.  Once a trade secret is
> destroyed, the statute of limitations begins to run because the misappropriation of
> that trade secret is no longer a continuing tort.

*Raza v. Siemens Med. Solutions USA, Inc.*, 607 F. Supp. 2d 689, 693 (D. Del. 2009) (quoting

*Medtronic Vascular, Inc. v. Advanced Cardiovascular Sys., Inc.*, C.A. No. 98-80-SLR, 2005 WL

388592, at *1 n.4 (D. Del. Feb. 2, 2005)).  Under the present circumstances, the relevant case

law establishes that the patent application remained a trade secret until it was published.  *Grp.*

*One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1051 (Fed. Cir. 2001) (holding that the

publication of the PCT application destroyed the trade secret status of the confidential

disclosures, and the defendant could not be liable for trade secret misappropriation after the date

of publication); *Ultimate Timing, L.L.C. v. Simms*, 715 F. Supp. 2d 1195, 1207 (W.D. Wash.

2010) (holding that plaintiffs were not entitled to trade secret protection for the time period after

the patent applications were published).  Consequently, the first amended complaint adequately

pleads trade secret misappropriation based on the unpublished patent application for the period

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and the

subsequent publication date of the application.

The cases cited by defendants do not contradict this conclusion.  In *Raza*, the court

determined that the cause of action for trade secret misappropriation was time-barred under the

applicable three year statute of limitations because the patent application was published in July

2002 and the complaint was not filed until February 2006. *Raza*, 607 F. Supp. 2d at 692-93.

Because the claim was time-barred, the court did not have reason to reach the issue of whether a

pre-publication disclosure of a later-published patent application would give rise to a viable

claim for trade secret misappropriation. The same is true of defendants' reliance on *Medtronic*,

2005 WL 388592, at *1 n.4. Moreover, the exhibits attached to defendants' requests for judicial

notice do not reflect a disclosure of the complete product formula in any public documents prior

█████████████████████████ (D.I. 69; D.I. 119) In view of the foregoing analysis, the court

concludes that the first amended complaint accurately identifies the patent application as a trade

secret with respect to the time frame between █████████████████ and the publication of

the application.

The first amended complaint also adequately pleads trade secrets regarding its testing

methodologies. *See L-3 Commc'ns Corp. v. Jaxon Eng'g & Maintenance, Inc.*, 2013 WL

5437775, at *2 (D. Colo. Sept. 27, 2013) (recognizing testing protocols as trade secrets).

Pursuant to the allegations in the first amended complaint, the testing methodologies disclosed

█████████████████████ include: (1) how testing a bond-building product through

nuclear magnetic resonance ("NMR") testing was superior to testing it through tensile strength

testing, (2) the benefits of "speed testing" the product on swatches of hair that were repeatedly

washed instead of longitudinally following individual clients over a longer period, and (3) the

benefits of testing unprocessed hair swatches donated from actual salon clients, instead of using

pre-fabricated hair swatches with the cuticles stripped off. (D.I. 53 at ¶ 56) The record reflects

that Olaplex publicly disclosed testing on human hair swatches prior to █████████████

█████ by publishing a patent application on February 5, 2015 disclosing the results of testing

on swatches of human hair. (D.I. 69, Ex. F at 18 Ex. 8; D.I. 119, Ex. F at 18 Ex. 8) However,

the published patent application does not reflect the level of specificity disclosed in the complaint regarding the unprocessed nature of the hair swatches with the cuticles intact. (*Id.*) The record contains no evidence establishing that "speed testing" and NMR testing were widely known or publicly disclosed in connection with Olaplex products prior to the ███████████

███████ Consequently, the first amended complaint adequately identifies the testing methodologies as trade secrets ████████████████████████████

### (iii)    Misappropriation

Defendants contend that the trade secret allegations in the first amended complaint are deficient because Olaplex does not identify an act of misappropriation, instead offering conclusory allegations that defendants "illegally obtained and used Olaplex Trade Secrets as set forth above and through other means of which Olaplex is presently unaware." (D.I. 67 at 22; D.I. 118 at 20) (citing D.I. 53 at ¶ 118)  According to defendants, the first amended complaint contains no factual allegations establishing that defendants used, relied on, or otherwise misappropriated the alleged trade secret information. (D.I. 67 at 22; D.I. 118 at 20)  Moreover, L'Oréal USA alleges that Olaplex is not entitled to inferred misappropriation based on the amount of time it took for L'Oréal USA to manufacture the Accused Products. (D.I. 67 at 23)

In response, Olaplex argues that the first amended complaint adequately describes defendants' misappropriation, detailing changes to defendants' testing processes and product development following disclosure of the trade secrets that enabled them to achieve results they did not attain prior to the disclosure of the trade secret information. (D.I. 88 at 14-16)

The first amended complaint adequately describes acts of misappropriation undertaken by defendants. Specifically, the first amended complaint alleges that defendants "never managed to create the holy grail of hair product development—figuring out how to keep chemical treatments

. . . from damaging hair," ██████████████████████████████████

███████████████████████████████ The first amended complaint alleges that ██

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████ These actions demonstrate that defendants

acquired the trade secrets ████████████████████████ and subsequently disclosed or used

them to develop the Accused Products.  (D.I. 53 at ¶¶ 118, 120)

     The allegations in the first amended complaint are adequate to establish misappropriation

by both L'Oréal USA and L'Oréal S.A. ████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████████

██ Moreover, the allegations in the first amended complaint establish that ████████████████

████████████████████████████████████████████████████

██████████████████████ █ ██████████████████████████ These assertions,

combined with the pleaded facts that L'Oréal USA is "engaged in the business of manufacturing

and distributing" the Accused Products (D.I. 53 at ¶ 13), establish that L'Oréal USA acquired

---

[13] L'Oréal S.A. contends that the pleading fails to establish misappropriation by it because
L'Oréal S.A. is not responsible for manufacturing the Accused Products, and the first amended
complaint does not allege that L'Oréal S.A. disclosed or used the trade secrets.  (D.I. 118 at 20)
However, both the DUTSA and the DTSA require a showing of either acquisition or disclosure
and/or use.  Having established acquisition of a trade secret by a person who knows or should
know the secret was improperly acquired, Olaplex is not required to plead that L'Oréal S.A. also
disclosed or used the trade secret information under either the DUTSA or DTSA.

knowledge of the trade secrets ██████████████ and subsequently used the trade secrets to develop and manufacture the Accused Products.

The facts before the court pertaining to the trade secret claims demonstrate a level of detail which was not present in *Accenture Global Services GmbH v. Guidewire Software Inc.*, in which the complaint alleged that the defendant "somehow gained access to Accenture trade secrets in creating its software and services." 581 F. Supp. 2d 654, 663-64 (D. Del. 2008). In contrast, the first amended complaint in the instant case specifically alleges that particular trade secret information was disclosed ████████████████████████████████████ ██████████████████████████████ ██ ████ Consequently, the record presently before the court is more similar to the circumstances in *Eastman Chemical Co. v. AlphaPet Inc.*, in which the complaint described how the defendants gained access to the trade secrets, and alleged specifically that the technology was disclosed and used to develop the defendants' facility. *Eastman Chem. Co. v. AlphaPet Inc.*, C.A. No. 09-971-LPS-CJB, 2011 WL 5402767, at *9 (D. Del. Nov. 4, 2011). Although "[i]t is not common for a trade secret misappropriation plaintiff to know, prior to discovery, the details surrounding the purported theft," the first amended complaint provides adequate allegations which, taken as true, support Olaplex's trade secret claims under the DUTSA and DTSA. *Accenture*, 581 F. Supp. 2d at 663.

For the foregoing reasons, I recommend that the court deny defendants' Rule 12(b)(6) motions to dismiss Olaplex's third cause of action for trade secret misappropriation under the DUTSA.

### (iv)  Federal Defend Trade Secrets Act

Defendants contend that Olaplex's trade secrets claim under the DTSA should be dismissed because the first amended complaint does not identify any purported dates of

misappropriation, and events pleaded in connection with this cause of action occurred prior to the May 11, 2016 enactment of the DTSA. (D.I. 67 at 18; D.I. 118 at 18)  In response, Olaplex alleges that the DTSA defines "misappropriation" to include any "use of a trade secret of another without express or implied consent," and Olaplex's allegations of defendants' continued use of the trade secrets meets this standard. (D.I. 88 at 16-17; D.I. 140 at 11)

The DTSA applies only to an act of misappropriation that "occurs on or after the date of the enactment of this Act," which occurred on May 11, 2016. Pub. L. No. 114-153, § 2(e). Thus, a plaintiff states a plausible claim for relief only if it "sufficiently alleges a prohibited 'act' occurring after May 11, 2016." *Adams Arms, LLC v. Unified Weapon Sys., Inc.*, 2016 WL 5391394, at *6 (M.D. Fla. Sept. 27, 2016). Although the misappropriation in the present case allegedly ███████████████████████████████, the first amended complaint alleges a continuing use of the trade secrets to develop, market, and sell the Accused Products to the present day. (D.I. 53 at ¶ 120)

The DTSA does not foreclose a use-based theory simply because the trade secret being used was misappropriated before the DTSA's enactment. *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016) (holding that allegations of a continuing use were adequate to state a claim under the DTSA).  In fact, "Congress omitted from DTSA the following language from Section 11 of the [Uniform Trade Secret Act]: 'With respect to a continuing misappropriation that began prior to the effective date, the [Act] also does not apply to the continuing misappropriation that occurs after the effective date.'" *Adams Arms, LLC v. Unified Weapon Sys., Inc.*, 16-1503, 2016 WL 5391394, at *6 (M.D. Fla. Sept. 27, 2016). Accordingly, the DTSA applies to "continuing misappropriations that began prior to—but continued after—the DTSA's enactment." *Brand Energy &*

34

*Infrastructure Servs., Inc. v. Irex Contracting Grp.*, 2017 WL 1105648, at *4 (E.D. Pa. Mar. 24, 2017).

The first amended complaint in the present case sets forth a continuing misappropriation which began prior to the DTSA's enactment. (D.I. 53 at ¶ 120)  Defendants rely on the court's decision in *Hydrogen Master Rights, Ltd. v. Weston* to challenge the adequacy of the DTSA cause of action, which they characterize as a conclusory allegation of continuing use and disclosure. *See Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 3d 320, 338 (D. Del. 2017).  However, the first amended complaint in the present matter is distinguishable because it contains factually specific allegations "regarding who continued to use the trade secrets, what the trade secrets were, and under what circumstances they are continuing to be used." *See Brand Energy*, 2017 WL 1105648, at *4 n.8 (E.D. Pa. Mar. 24, 2017).  Specifically, the first amended complaint claims that defendants continue to use the enumerated trade secrets to market and sell its Accused Products and further develop and improve the Accused Products. (D.I. 53 at ¶¶ 53-57; 120)  Consequently, I recommend that the court deny defendants' Rule 12(b)(6) motions with respect to the DTSA cause of action at Count 2 of the first amended complaint.

### (e) Breach of contract – Count 4

To state a claim for breach of contract under Delaware law, a plaintiff must allege facts plausibly demonstrating: "(1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) a resulting damage to the plaintiff." *H-M Wexford LLC v. Encorp., Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003).

### (i)     L'Oréal USA

L'Oréal USA first alleges that Olaplex fails to identify the confidential information which was allegedly used in an unspecified manner in breach▮▮▮ (D.I. 67 at 23-34) ▮▮▮

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████   The first amended complaint alleges that L'Oréal USA, Inc. breached ███████████████

███████████████████████████████████████ ██ ████   supporting its

assertion with factual allegations that L'Oréal USA, Inc. representatives used information

██████████████████████████████   regarding an unpublished patent application and

product testing methods to develop their own competing product (*Id.* at ¶¶ 48-58).

The first amended complaint also adequately establishes that L'Oréal USA, Inc. breached

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██ █████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████   The first amended complaint alleges that L'Oréal USA, Inc.

gathered confidential information ████████████████████████████████████

███████████████████████████ ██ ████████   The pleading alleges that "L'Oréal"

was able to use the information ███████████████████████   to reduce the amount

of testing required and quickly bring a competitive product to the market.  (*Id.* at ¶¶ 57-58)

Olaplex uses the defined term "L'Oréal" to refer to all defendants collectively throughout the

complaint.  (*Id.* at 1)  Olaplex's use of the term "L'Oréal" to describe those responsible for

developing, marketing, and selling the infringing products indicates that the confidential

information was shared among entities for purposes other than to ███████████████████

L'Oréal USA also contends that Olaplex's DUTSA claim statutorily displaces its breach of contract claim.  (D.I. 67 at 24 n.11)  According to Olaplex, its breach of contract claim is not preempted by the DUTSA where, as here, it is unclear whether a plaintiff's confidential information is a trade secret.  (D.I. 88 at 19-20)

The DUTSA "displaces conflicting tort, restitutionary and other law of this State providing civil remedies for misappropriation of a trade secret."  6 *Del. C.* § 2007(a).  "The key . . . is whether a trade secret in fact exists or is alleged as an element of each claim (i.e., the claim is 'based upon' a trade secrets claim) in order for a common law claim to be preempted by the DUTSA."  *Overdrive, Inc. v. Baker & Taylor, Inc.*, 2011 WL 2448209, at *4-5 (Del. Ch. June 17, 2011).  The DUTSA preempts claims that are "grounded in the same facts which purportedly support the misappropriation of trade secrets claims," meaning that the same facts are used to establish all elements of both claims.  *Beard Res., Inc. v. Kates*, 8 A.3d 573, 602 (Del. Ch. 2010) (quoting *Ethypharm S.A. France v. Bentley Pharms., Inc.*, 388 F. Supp. 2d 426, 433 (D. Del. 2005)); *Accenture Global Servs. GmbH v. Guidewire Software Inc.*, 631 F. Supp. 2d 504, 508 (D. Del. 2009).

In the present case, Olaplex concedes that its breach of contract claim is based on the same facts as its claim for trade secret misappropriation under the DUTSA.  (D.I. 88 at 18)  However, it is premature to determine whether Olaplex's breach of contract claim is preempted by the DUTSA.  *See Overdrive, Inc. v. Baker & Taylor, Inc.*, 2011 WL 2448209, at *4-5 (Del. Ch. June 17, 2011) ("Construing all factual ambiguities in plaintiff's favor, I cannot say with certainty that plaintiff's [common law] claims are 'based upon' plaintiff's claim for trade secrets misappropriation" because uncertainty existed as to whether the confidential, proprietary information was a trade secret).  Although Olaplex has sufficiently alleged the existence of a

37

trade secret at the pleadings stage, *see* § III.B.2(d)(ii), *supra*, the ultimate success of its breach of contract claim is not necessarily dependent on the success of its DUTSA claim. *See Overdrive*, 2011 WL 2448209, at *5. If discovery reveals that no trade secret exists, Olaplex's breach of contract claim could still survive based on the misuse of confidential information ▆▆▆▆▆ ▆▆▆ Under these circumstances, it is appropriate to defer consideration of preemption by the DUTSA "until the facts are sufficiently developed and become clear after discovery, further briefing or trial in this matter." *Id.* Consequently, I recommend that the court deny L'Oréal USA's Rule 12(b)(6) motion as it pertains to Count 4 of the first amended complaint for breach of contract.

### (ii)   L'Oréal S.A.[14]

L'Oréal S.A. moves the court to dismiss the breach of contract claim against it because L'Oréal S.A. was not a party to ▆▆▆▆ or any other contract with Olaplex, and the first amended complaint does not allege an agency or alter ego theory between L'Oréal S.A. and L'Oréal USA, Inc. (D.I. 118 at 17) In response, Olaplex contends that L'Oréal S.A. is liable for breach of ▆▆▆▆ as a third-party beneficiary of the agreement. (D.I. 140 at 12)

It is a well-settled principle of contract law that "only a party to a contract may be sued for breach of that contract." *Koloni Reklam, Sanayi, Ticaret LTD/STI v. Viacom, Inc.*, C.A. No. 16-285-SLR, 2017 WL 726660, at *3 (D. Del. Feb. 23, 2017) (quoting *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999)). However, "[t]hird parties to an agreement may become parties to it, and thus bound by it, by either expressly or implicitly adopting the agreement." *Am. Legacy Found. v. Lorillard Tobacco Co.*,

---

[14] Given that the court has recommended granting L'Oréal S.A.'s Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, *see* § III.E.2, *infra*, this analysis is offered as an alternative in the event that the district judge does not adopt the Rule 12(b)(2) recommendation.

831 A.2d 335, 343-44 (Del. Ch. 2003); *see also Hadley v. Shaffer*, C.A. No. 99-144-JJF, 2003
WL 21960406, at *5 (D. Del. Aug. 12, 2003) ("Under Delaware law, the intention of the
contracting parties is paramount in determining whether others have standing as third-party
beneficiaries."). To establish third-party adoption of an agreement, the contract itself must
contemplate that non-signatories may adopt it. *Id.* at 344. "A common situation in which courts
have found implicit adoption by third parties is when a third-party beneficiary accepts the
benefits of a contract made for its benefit . . . ." *Id.*

　　　For the reasons previously stated in connection with L'Oréal S.A.'s standing argument,
*see* § III.A.2(b), *supra*, I recommend that the court grant L'Oréal S.A.'s Rule 12(b)(6) motion to
dismiss Olaplex's fourth cause of action for breach of contract against it. Far from
contemplating that non-signatories may adopt ▮▮▮▮ the language of ▮▮▮▮ expressly
distinguishes L'Oréal USA, Inc.'s "Representatives" as non-parties.[15]   (D.I. 53, Ex. B at ¶ 1)

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮

---

[15] Even assuming that L'Oréal S.A. was a party to or beneficiary of ▮▮▮▮ L'Oréal S.A. notes
that the first amended complaint contains no allegations claiming that L'Oréal S.A. breached the
agreement. (D.I. 118 at 17-18)  The only breach alleged in the first amended complaint is one by
L'Oréal USA, Inc.: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮   (D.I. 53 at ¶ 138)  Consequently, I recommend that Count 4 of the first
amended complaint be dismissed as it pertains to L'Oréal S.A.

### E. Insufficiency of Service of Process

#### 1. Legal standard

"Rule 12(b)(5) requires the Court to dismiss any case in which service of process was insufficient." *Hardwire, LLC v. Zero Int'l, Inc.*, 2014 WL 5144610, at \*14 (D. Del. Oct. 14, 2014). A plaintiff to a civil action in federal court must serve the summons and complaint within 90 days of filing. Fed. R. Civ. P. 4(c)(1); Fed. R. Civ. P. 4(m). The court uses a two-pronged inquiry to determine whether to excuse a plaintiff's failure to complete service within the time allowed and grant an extension. First, if plaintiff demonstrates "good cause" for the failure, the court must grant an extension. Fed. R. Civ. P. 4(m); *Chiang v. U.S. Small Bus. Admin.*, 331 F. App'x 113, 115 (3d Cir. 2009). Second, if plaintiff does not show good cause, the court may either dismiss the complaint or grant an extension in the sound exercise of its discretion. *Chiang*, 331 F. App'x at 115.

#### 2. Analysis

L'Oréal S.A. contends that the first amended complaint should be dismissed under Rule 12(b)(5) because Olaplex failed to properly serve it pursuant to the Hague Convention. (D.I. 118 at 8) Specifically, L'Oréal S.A. alleges that it was served through a private investigator instead of a *huissier de justice*, and the person who signed for the papers was not authorized to accept service on behalf of L'Oréal S.A. (*Id.* at 9)

The record reflects that Olaplex first attempted to serve L'Oréal S.A. on April 20, 2017 by leaving copies of the summons and complaint with Linda Mallem. (D.I. 83) Olaplex concedes that this attempt at service was inadequate because it did not use a *huissier de justice* to effect service. (D.I. 140 at 12) Following the filing of L'Oréal S.A.'s motion to dismiss on June 15, 2017, Olaplex attempted to remedy the deficiency by re-serving L'Oréal S.A. using a

40

*huissier de justice* on June 29, 2017. (D.I. 132)  On this second attempt, Olaplex served Helena

Botelho, assistant to the director of L'Oréal S.A.'s legal department. (*Id.*)  L'Oréal S.A. does not

dispute that Olaplex's second attempt at service cured all defects.  Despite curing defects in the

technical requirements for service of process, personal jurisdiction over L'Oréal S.A. is lacking

for the reasons set forth at § III.F.2, *infra*.

### F. Personal Jurisdiction

#### 1. Legal standard

Rule 12(b)(2) directs the court to dismiss a case when the court lacks personal

jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2).  When reviewing a motion to dismiss

pursuant to Rule 12(b)(2), a court must accept as true all allegations of jurisdictional fact made

by the plaintiff and resolve all factual disputes in the plaintiff's favor. *Traynor v. Liu*, 495 F.

Supp. 2d 444, 448 (D. Del. 2007).  Once a jurisdictional defense has been raised, the plaintiff

bears the burden of establishing, with reasonable particularity, that sufficient minimum contacts

have occurred between the defendant and the forum to support jurisdiction. *See Provident Nat'l

Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987).  To meet this burden, the

plaintiff must produce "sworn affidavits or other competent evidence," since a Rule 12(b)(2)

motion "requires resolution of factual issues outside the pleadings." *Time Share Vacation Club

v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984).

To establish personal jurisdiction, a plaintiff must demonstrate facts sufficient to satisfy

both a statutory and a constitutional requirement.  With respect to the statutory analysis, the court

analyzes the long-arm statute of the state in which the court is located. *See IMO Indus., Inc. v.

Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998).  Next, the court must determine whether

exercising jurisdiction over the moving defendant in this state comports with the due process

clause of the United States Constitution. *See id.*; *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009) (noting that the court must apply the law of the Federal Circuit to the constitutional inquiry in patent cases).

Pursuant to the relevant portions of Delaware's long-arm statute, 10 *Del. C.* § 3104(c)(1)-(4), a court may exercise personal jurisdiction over a defendant when the defendant or its agent:

(1) Transacts any business or performs any character of work or service in the State;
(2) Contracts to supply services or things in this State;
(3) Causes tortious injury in the State by an act or omission in this State;
(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.

10 *Del. C.* § 3104(c)(1)-(4). With the exception of subsection (c)(4), the long-arm statute requires a showing of specific jurisdiction. *See Shoemaker v. McConnell*, 556 F. Supp. 2d 351, 354-55 (D. Del. 2008). Subsection (c)(4) confers general jurisdiction, which requires a great number of contacts, but allows the exercise of personal jurisdiction even when the claim is unrelated to the forum contacts. *See Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1466 (D. Del. 1991).

If a defendant is found to be within the reach of the long-arm statute, the court then must analyze whether the exercise of personal jurisdiction comports with due process by determining whether the plaintiff has demonstrated that the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State," so that it should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citations omitted). For the court to exercise specific personal jurisdiction consistent with due process, a plaintiff's cause of action must have arisen from the defendant's activities in the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). The court may

42

exercise general personal jurisdiction consistent with due process if the plaintiff's cause of action is unrelated to the defendant's activities in the forum state, so long as the defendant has "continuous and systematic contacts with the forum state." *Applied Biosystems, Inc.*, 772 F. Supp. at 1458.

### 2. Analysis

Olaplex contends that the court has specific personal jurisdiction over L'Oréal S.A. due to the forum selection clause ████████████████████████████████████████████

████████████████████████████████████ To determine whether a non-party to an agreement is bound by its forum selection clause, the court analyzes: (1) whether the forum selection clause is valid;[16] (2) whether the non-signatory is a third-party beneficiary of the agreement, or is closely related to the agreement, and (3) whether the claims against the party arise from its status related to the agreement.[17] *See ING Bank, FSB v. Palmer*, C.A. No. 09-897-SLR, 2010 WL 4038604, at *1 (D. Del. Sept. 29, 2010).

For the reasons previously stated at §§ III.A.2(b) and III.B.2(e)(ii), *supra*, L'Oréal S.A. is not a party or a third-party beneficiary to ████████ and, consequently, is not bound by the forum selection clause contained therein under the three-part test. *See Eastman Chem. Co. v. AlphaPet*

---

[16] Forum selection clauses are presumed valid, unless the challenging party shows that enforcement would be unreasonable and unjust, or that the clause is overreaching. *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 218 (3d Cir. 2015) (citing *Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1146 (Del. 2010)). The arguments presented by L'Oréal S.A. in the present case suggest that the forum selection clause is not valid as to L'Oréal S.A., but presumably remains valid as to L'Oréal USA, Inc. (D.I. 153 at 4-5) L'Oréal S.A. cites no authority supporting the proposition that the same forum selection clause may be deemed valid as to one entity, but invalid as to another. Regardless, Olaplex has failed to demonstrate that L'Oréal S.A. satisfies the second prong of the test.

[17] The parties do not meaningfully dispute that the claims against L'Oréal S.A. arise from its status related to ████████, thereby satisfying the third prong of the test. Regardless, Olaplex has failed to demonstrate that L'Oréal S.A. satisfies the second prong of the test.

*Inc.*, C.A. No. 09-971-LPS-CJB, 2011 WL 6004079, at \*4 (D. Del. Nov. 4, 2011) ("[T]ypically only those parties that have actually signed the agreement-at-issue are bound by its forum selection clause."). There is no evidence that L'Oréal S.A. is an intended third-party beneficiary of ▉▉▉▉▉ as required under Delaware law. *See E.I. duPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 196 (3d Cir. 2001). Moreover, unlike the circumstances before the court in *Hadley v. Shaffer*, L'Oréal S.A. never invoked the forum selection clause or pursued an action based on ▉▉▉▉▉ 2003 WL 21960406, at \*1 ("Thomas J. Hadley filed a Motion to Dismiss, claiming that the mandatory forum selection clause . . . provided that the Delaware courts had exclusive jurisdiction," following which he initiated a suit in Oklahoma state court for breaches of the agreement).

In addition, L'Oréal S.A. is not "closely related" to ▉▉▉▉▉ An entity may be deemed closely related to an agreement if: "(1) it receives a direct monetary or non-monetary benefit from the agreement; or (2) it was foreseeable that the entity would be bound by the agreement." *Eastman Chem.*, 2011 WL 6004079, at \*9 (citing *Baker v. Impact Holding, Inc.*, 2010 WL 1931032, at \*4 (Del. Ch. May 13, 2010)). In contrast to the third-party beneficiary theory, where the court must examine the intentions of the contracting parties, the court looks to the parties' conduct after the contract is executed to determine whether the entity is "closely related." *Id.* (citing *E.I. DuPont*, 269 F.3d at 300).

In the present case, Olaplex fails to explain how L'Oréal S.A. directly benefitted from ▉▉▉▉ ▉▉▉▉ *See Eastman Chem.*, 2011 WL 6004079, at \*9-11 (holding that a third-party entity's management and control of another entity, overlap between officers and directors, and financial benefits did not show a direct benefit flowing from the terms of the agreement where the agreement itself did not require a direct payment or conveyance of benefits to the third party).

Moreover, L'Oréal S.A. did not negotiate or sign ▮▮▮ has never invoked the forum selection clause for its own benefit, and is not mentioned in ▮▮▮ *Cf. Carlyle Inv. Mgmt. LLC v. Monmouth Co. SA*, 779 F.3d 214, 219 (3d Cir. 2015). The parties present no arguments regarding whether it was foreseeable that L'Oréal S.A. would be bound by ▮▮▮ but the record before the court suggests that it was not.

For the foregoing reasons, I recommend that the court grant L'Oréal S.A.'s Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.

## G. Amended Pleadings

### 1. Legal standard

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that after a responsive pleading has been filed, a party may amend its pleading "only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision to grant or deny leave to amend lies within the discretion of the court. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). The Third Circuit has adopted a liberal approach to the amendment of pleadings. *See Dole v. Arco*, 921 F.2d 484, 487 (3d Cir. 1990). In the absence of undue delay, bad faith, or dilatory motives on the part of the moving party, the amendment should be freely granted, unless it is futile or unfairly prejudicial to the non-moving party. *See Foman*, 371 U.S. at 182; *In re Burlington*, 114 F.3d at 1434.

2. **Analysis[18]**

(a) **Undue delay and prejudice**

Defendants ask the court to deny Olaplex's motion for leave to file a second amended complaint, arguing that Olaplex could have sought the proposed amendments earlier.[19]  (D.I. 141 at 7-8)  The court does not find that Olaplex's proposed second amended complaint will cause undue delay.  A scheduling order has not yet been entered in this case and, consequently, the deadline to amend pleadings under the scheduling order has not yet expired.  In this district, seeking leave to amend within the deadline to amend pleadings generally precludes a finding of undue delay.  *See Intellectual Ventures I LLC v. Toshiba Corp.*, C.A. No. 12-453-SLR-SRF, 2015 WL 4916789, at *2 (D. Del. Aug. 17, 2015) (citing *Invensas Corp. v. Renesas Elecs. Corp.*, C.A. No. 11-448-GMS-CJB, 2013 WL 1776112, at * 3 (D. Del. Apr. 24, 2013); *Butamax Advanced Biofuels LLC v. Gevo, Inc.*, C.A. No. 11-54-SLR, 2012 WL 2365905, at *2 (D. Del. June 21, 2012)).  The fact that a scheduling order has not yet been entered highlights the fact that the case is still in its early stages.

Moreover, Olaplex sought leave to amend on June 21, 2017, promptly after the issuance of the '954 patent on June 7, 2017.  "The existence of issued and presently enforceable patent claims . . . is a necessary prerequisite" to litigation.  *Pfizer, Inc. v. Ranbaxy Labs., Ltd.*, 525 F. Supp. 2d 680, 686 (D. Del. 2007).  Olaplex could not have properly brought its claim for infringement of the '954 patent when it received the Notice of Allowance on April 26, 2017

---

[18] In support of its opposition to Olaplex's motion to amend, L'Oréal USA represents that the motion is inefficient and unnecessarily burdensome to the court.  (D.I. 141 at 7)  The court has addressed this issue by analyzing the motions to dismiss as they pertain to causes of action that remain unchanged by the proposed second amended complaint.

[19] Olaplex's proposed second amended complaint eliminates certain counts asserted in the first amended complaint, including the claims for unjust enrichment and breach of the implied covenant of good faith and fair dealing.  (D.I. 126, Ex. 2 at 41-42)

because the claims had not yet issued. Even if the two week delay in the present case could be

construed as unreasonable, "[t]he mere passage of time does not require that a motion to amend a

complaint be denied on grounds of delay." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d

267, 273 (3d Cir. 2001); *see also LifePort Scis. LLC v. Endologix Inc.*, C.A. No. 12-1791-GMS,

D.I. 105 at 2 (D. Del. July 29, 2015) ("Even assuming the plaintiff is correct that the defendant

*could* have filed its motion sooner, the court cannot say the delay was undue . . . when this was

explicitly contemplated as a possibility."). The record presently before the court does not

establish that defendants were prejudiced by Olaplex's alleged delay in bringing the motion.

### (b) Futility

Defendants also contend that granting Olaplex's motion to amend would be futile under

Rule 12(b)(6) because the claims do not read on the Accused Products to state a claim for direct,

induced, or willful infringement. (D.I. 141 at 11-13) Specifically, defendants allege that claim 1

of the '954 patent requires mixing a bleaching formula and a maleic acid formulation to apply to

the hair, but the Accused Products are not sold in a mixture with a bleaching formulation that is

applied to the hair. (*Id.* at 11) In response, Olaplex cites an appendix to an expert declaration in

support of its motion for a preliminary injunction which shows the product labels for each of the

Accused Products instruct the user to mix the Accused Products with bleach or developer as part

of bleaching treatments. (D.I. 148 at 6)

"Direct infringement requires a party to perform each and every step or element of a

claimed method or product." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1320 (Fed.

Cir. 2009) (internal quotation marks omitted). Olaplex's proposed second amended complaint

contains adequate factual allegations to establish a claim for direct infringement of the '954

patent under Rule 12(b)(6). Paragraph 126 of the proposed second amended complaint describes

the instructions on each of the Accused Products identifying how much bleach to include in the mixture. (D.I. 126, Ex. A at ¶ 126) These allegations are consistent with the product labels attached to Olaplex's expert declaration on the motion for a preliminary injunction, which establish that the mixing of bleach with a maleic acid formulation occurs in the Accused Products. (D.I. 16, Appendix 1 at 1, 8, 16-17) Moreover, contrary to defendants' contentions, the second amended complaint demonstrates that the concentration of maleic acid in the Accused Products is within the claimed range in the '954 patent. (D.I. 126, Ex. A at ¶¶ 132-133) Therefore, the proposed second amended complaint adequately states a claim for direct infringement under Rule 12(b)(6).

The proposed second amended complaint also sufficiently pleads a cause of action for induced infringement. Defendants argue that Olaplex's claim for induced infringement of the '954 patent fails because the court ruled that Olaplex had "not demonstrated that defendants knew that their customers' acts constitute infringement" in deciding the motion for a preliminary injunction. (D.I. 141 at 12; D.I. 135 at ¶¶ 13-14) However, the court's ruling on the motion for a preliminary injunction applied a different standard, assessing Olaplex's likelihood of success on the merits instead of analyzing the claim under the less-stringent *Twombly/Iqbal* standard. *See Milam v. Berryhill*, 2017 WL 561332, at *3 (S.D. W. Va. Feb. 10, 2017) ("Although Milam's arguments will be considered in full during the motion to dismiss phase of this litigation, at which point the Court notes a different standard of review applies, Milam's arguments in the instant motion do not satisfy the burden for a preliminary injunction."). The court concludes that the proposed second amended complaint contains sufficient allegations to show knowledge by L'Oréal USA that it induces third parties to infringe the patents-in-suit. (D.I. 126, Ex. A at ¶¶ 119-125)

Defendants rely on their previous arguments to demonstrate purported deficiencies in Olaplex's claim for willful infringement of the '954 patent.  (D.I. 141 at ¶ 13)  For the reasons previously stated at § III.B.2(c), *supra*, the court concludes that the proposed second amended complaint adequately states a claim for willful infringement of the '954 patent.  Consequently, I recommend that the court grant Olaplex's motion for leave to file a second amended complaint.

### H. Motion to Stay

#### 1.  Legal standard

The America Invents Act ("AIA") provides for the establishment of transitional post-grant review ("PGR") proceedings to reexamine the validity of issued patents, and considers the effect of these proceedings on related patent infringement actions, authorizing district courts to stay such parallel litigation under certain circumstances. 35 U.S.C. § 321; Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 6(d) (2011).  Under 35 U.S.C. § 324(a), a PGR proceeding may only be instituted if the petition demonstrates "that it is more likely than not that at least 1 of the claims challenged in the petition is unpatentable," representing a higher threshold than the "reasonable likelihood" standard applicable to *inter partes* review proceedings. 35 U.S.C. §§ 314(a), 324(a).

District courts also have the discretionary power to stay litigation under their inherent power to control their own dockets. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).  In determining whether to grant a discretionary stay, a court considers:

> (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.

*Alloc, Inc. v. Unilin Décor N.V.*, 2003 WL 21640372, at *2 (D. Del. July 11, 2003) (internal quotation marks omitted); *see also Tinnus Enters., LLC v. Telebrands Corp.*, 2017 WL 379471,

at *2 (E.D. Tex. Jan. 24, 2017) (applying same factors in context of PGR proceedings). "Courts have also referenced undue prejudice or hardship to the movant as a factor to be considered in evaluating a request to stay litigation." *Mission Abstract Data L.L.C. v. Beasley Broadcast Grp., Inc.*, 2011 WL 5523315, at *2 (D. Del. Nov. 14, 2011).

### 2. Analysis

Under the circumstances before the court, I recommend that the court deny defendants' motion to stay. Although the early stage of the litigation favors a stay, the PGR proceeding instituted by the PTAB does not address the '954 patent, meaning that the parties' dispute will not be fully resolved by the PGR proceeding regardless of the outcome. Moreover, the PGR proceeding will not resolve or advance the trade secret and breach of contract claims at issue in this case. *See FMC Corp. v. Summit Agro USA, LLC*, 14-51-LPS-CJB, 2014 WL 3703629, at *3-4 (D. Del. July 21, 2014); *Nippon Steel & Sumito Metal Corp. v. POSCO*, 2013 WL 1867042, at *8 (D.N.J. May 2, 2013).

Most importantly, Olaplex would suffer substantial prejudice from a stay because Olaplex and defendants are direct competitors in a two-player market, and Olaplex has faced price pressures and declining revenues as a result of the allegedly infringing conduct, causing it to suffer irreparable harm. (D.I. 135 at ¶¶ 4, 22) Under similar circumstances involving direct competitors, courts in this district have declined to grant a stay of proceedings. *See Courtesy Prods., L.L.C. v. Hamilton Beach Brands, Inc.*, C.A. No. 13-2012-SLR, 2015 WL 5145526, at *2 (D. Del. Sept. 1, 2015); *ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, C.A. No. 12-054-GMS-MPT, 2013 WL 663535, at *6 (D. Del. Feb. 25, 2013). Moreover, the Federal Circuit has recognized that a plaintiff's pursuit of a preliminary injunction supports a subsequent claim that it will be unduly prejudiced by a stay. *See VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d

1307, 1319 (Fed. Cir. 2014). For these reasons, I recommend that the court deny defendants'

motion to stay.

## IV.    CONCLUSION

For the foregoing reasons, I recommend that the court: (1) deny L'Oréal USA's motion to

dismiss (D.I. 66); (2) grant-in-part[20] L'Oréal S.A.'s motion to dismiss (D.I. 117); (3) grant

Olaplex's motion to amend the complaint (D.I. 126); and (4) deny defendants' motion to stay

(D.I. 150).

Given that the court has relied upon material that technically remains under seal, the

court is releasing this Report and Recommendation under seal, pending review by the parties. In

the unlikely event that the parties believe that certain material in this Report and

Recommendation should be redacted, the parties should jointly submit a proposed redacted

version by no later than **March 16, 2018**. The court will subsequently issue a publicly available

version of its Report and Recommendation.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Report and Recommendation.

Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10)

pages each. The failure of a party to object to legal conclusions may result in the loss of the right

---

[20] Specifically, I recommend that the court grant L'Oréal S.A.'s Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction and dismiss L'Oréal S.A. from the present action. In the event that the court declines to adopt this recommendation, I recommend that the court (1) deny L'Oréal S.A.'s Rule 12(b)(5) motion to dismiss for insufficient service of process; (2) grant L'Oréal S.A.'s Rule 12(b)(1) motion to dismiss with respect to the breach of contract claim, and deny the Rule 12(b)(1) motion with respect to the trade secret misappropriation claims; and (3) grant L'Oréal S.A.'s Rule 12(b)(6) motion to dismiss with respect to the breach of contract claim, and deny the Rule 12(b)6) motion with respect to the trade secret misappropriation claims.

to de novo review in the District Court. *See Sincavage v. Barnhart,* 171 F. App'x 924, 925 n.1

(3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order for Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website,

http://www.ded.uscourts.gov.

Dated: February 28, 2018

Sherry R. Fallon
United States Magistrate Judge