IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C. A. No. 17-14 (JFB) (SRF) |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA | ) | **DEMAND FOR JURY TRIAL** |
| PRODUCTS, INC, L'ORÉAL USA S/D, | ) | |
| INC., and REDKEN 5TH AVENUE NYC, | ) | REDKEN - |
| L.L.C., | ) | REDACTED - |
| | ) | PUBLIC VERSION |
| | ) | |
| Defendants. | ) | |

### SECOND AMENDED COMPLAINT

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Joseph M. Paunovich
Amardeep (Amar) L. Thakur
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5202

May 14, 2018 - Original Filing Date
May 22, 2018 - Redacted Filing Date

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C. A. No. 17-14 (JFB) (SRF) |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA | ) | **DEMAND FOR JURY TRIAL** |
| PRODUCTS, INC, L'ORÉAL USA S/D, | ) | |
| INC., and REDKEN 5TH AVENUE NYC, | ) | REDKEN - |
| L.L.C., | ) | PUBLIC VERSION |
| | ) | |
| Defendants. | ) | |


| | | |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C. A. No. 17-14 (JFB) (SRF) |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA PRODUCTS, INC, L'ORÉAL USA S/D, INC., and REDKEN 5TH AVENUE NYC, L.L.C., | ) | **DEMAND FOR JURY TRIAL**<br><br>REDACTED -<br>PUBLIC VERSION |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT

Plaintiffs Liqwd, Inc. ("Liqwd") and Olaplex LLC ("Olaplex") (collectively "Plaintiffs" or "Olaplex"), bring this action against L'Oréal USA, Inc.; L'Oréal USA Products, Inc.; L'Oréal USA S/D, Inc.; and Redken 5th Avenue NYC, L.L.C. (collectively, "L'Oréal")[1] for infringing Plaintiffs' exclusive rights under the Patent Laws of the United States (35 U.S.C. § 1 *et seq.*), misappropriating Olaplex's trade secrets, ███████████████████████. The infringing products are the Matrix Bond Ultim8, Redken pH-Bonder, and L'Oréal Professionnel Smartbond 3 step systems (collectively, "Accused Products"). Olaplex alleges upon personal knowledge as to its own activities and upon information and belief as to the activities of others and all other matters, and state as follows:

---

[1] This Second Amended Complaint is filed subject to clarification from the Court regarding Olaplex's leave to amend the complaint to add additional factual allegations establishing personal jurisdiction over L'Oréal, S.A. Olaplex has filed a letter with the Court contemporaneously herewith seeking such clarification. In the event the court provides clarification, and subject to the content thereof, Olaplex will refile this Pleading with either (A) removal of the instant footnote, or (B) additional allegations regarding L'Oréal, S.A.

## **NATURE OF THE ACTION / INTRODUCTION**

1.      L'Oréal is the world's largest beauty company and reported over $27 billion in revenue during its last fiscal year.

2.      A small California start-up called Olaplex recently discovered, developed, and eventually began selling a novel, game-changing product to the professional hair care market. One of Olaplex's three current products is the Olaplex Bond Multiplier No. 1 ("Bond Multiplier"), which protects hair during bleach treatments, and has quickly become a favorite treatment of hair care professionals. As of October 2016, hundreds of thousands of stylists in more than 80 countries have used Olaplex, and it is widely acclaimed to have revolutionized the hair care industry.

3.      The effect of using Olaplex during bleach treatments is readily apparent from a side-by-side picture of bleached hair with and without Olaplex. In the picture below, the left swatch of hair is an unprocessed color treated hair sample, the middle swatch of hair is the same color treated hair sample after being subjected to foil bleaching, rinsing, conditioning, and drying, and the right swatch of hair is the same color treated hair sample after foil bleaching with Olaplex Bond Multiplier added, rinsing, treating with Olaplex Bond Perfector (No. 2), rinsing, shampooing, conditioning, and drying.



4.    ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

5.    ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

### THE PARTIES

6.      Plaintiff Liqwd is a California corporation, with its principal place of business in Santa Barbara, California.

7.      Plaintiff Olaplex is a California limited liability company, with its principal place of business in Santa Barbara, California.

8.      Defendant L'Oréal USA, Inc., ("L'Oréal USA, Inc.") is a Delaware corporation, headquartered at 10 Hudson Yards, New York, New York.

9.     Defendant L'Oréal USA Products, Inc., ("L'Oréal USA Products, Inc.") is a Delaware corporation, headquartered at 10 Hudson Yards, New York, New York, and is a subsidiary of L'Oréal USA, Inc.

10.     Defendant L'Oréal USA S/D, Inc., ("L'Oréal USA S/D, Inc.") is a Delaware corporation, headquartered at 10 Hudson Yards, New York, New York, and is a subsidiary of L'Oréal USA, Inc.

11.     Defendant Redken 5th Avenue NYC L.L.C., ("Redken") is a New York limited liability company, headquartered at 10 Hudson Yards, New York, New York, and is a subsidiary of L'Oréal USA, Inc.

12.     L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc., and Redken are engaged in the business of manufacturing and distributing hair care products under the "Matrix," "Redken," and "L'Oréal Professionnel" brand names.

## JURISDICTION AND VENUE

13.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including §§ 271 and 281.   This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) over the patent-infringement claim and claim for misappropriation of trade secrets under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, as amended.

14.     This Court has supplemental jurisdiction over Olaplex's state law claims pursuant to 28 U.S.C. § 1367.   The federal and state claims alleged herein are so related that they form part of the same case or controversy.   Examples (not comprehensive) of the relation of patent versus non-patent claims include the following: ██████████████████████████████

████████████████████████████████████████

████████████████████████████; damages for Olaplex's patent

infringement will similarly also require an inquiry into facts regarding development, marketing and sales of overlapping, competitive products.   Thus, judicial economy, convenience, and fairness to the parties will result if this Court asserts jurisdiction over the state claims.

15.     This Court has personal jurisdiction over L'Oréal. Three of the defendants are Delaware corporations.  In addition, on information and belief, L'Oréal has transacted business in this District, contracted to supply goods or services in this District directly or through its agents, has offered for sale, sold and/or advertised its products and services in this District, and has otherwise purposely availed itself of the privileges and benefits of the laws of the State of Delaware. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████ .

16.     Venue is proper in this judicial district under at least 28 U.S.C. §§ 1391 and 1400(b). L'Oréal has one or more regular and established places of business in this judicial district, and/or has transacted business in this district. For example, L'Oréal USA Products and L'Oréal USA S/D are incorporated in the State of Delaware. L'Oréal is responsible for acts of infringement occurring in the District of Delaware, as alleged in this Complaint, and has delivered or caused to be delivered infringing products or services in the District of Delaware. L'Oréal also has caused the infringing products to be advertised, promoted, and sold in this judicial district. ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███ .

## BACKGROUND

### Olaplex & Its Proprietary Hair Care Technology

17.     Olaplex is a small company based in Santa Barbara, California that develops professional hair care products. Olaplex created the first successful and effective product in the hair "bond building" market, and it is the world leader in that market.

18.     Bleaching is a common chemical treatment performed to lighten or remove color from hair, but it can be extremely harsh on hair. It can give hair a straw-like texture with fragile hair fibers that break easily. If bleach is allowed to stay on the hair too long, it can cause hair to melt (disintegrate), or even to fall out.

19.     Repairing damaged hair has long been a shared concern of hair care professionals and their clients. Prior to Olaplex, hair care professionals lived with the fear that bleaching could ruin their client's hair.

20.     Dean Christal grew up in the beauty business with his mother running a hair salon out of his childhood home, and his father was a distributor of beauty products in the Midwest. Mr. Christal also gained experience in the haircare and beauty industries by working with his brother, Don Christal, who had founded Alterna Haircare and California Tan (sunless tanner). With this background and an entrepreneurial spirit, Mr. Christal met Dr. Craig Hawker and Dr. Eric Pressley and urged them to tackle the holy grail of hair product development—figuring out how to keep chemical treatments from damaging hair.

21.     Working literally in Dr. Pressly's home garage, Drs. Hawker and Pressly came up with the revolutionary technology to protect hair during chemical treatments.

22.     This first-of-a-kind approach used a special "binding agent" or active ingredient to protect the hair during chemical treatments (like bleaching). The active ingredient of the Bond

Multiplier product is a chemical called "bis-aminopropyl diglycol dimaleate" and whose chemical structure is shown below:



**Olaplex's Patents**

23.     Olaplex initially filed applications (and ultimately obtained patents) describing the dimaleate active ingredient used in the Bond Multiplier product.

24.     Recognizing the opportunity for unscrupulous competitors to copy Olaplex's proprietary technology and to use less expensive ingredients, Olaplex also obtained additional patents.

25.     Two of these additional patents are United States Patent Nos. 9,498,419 and 9,668,954 (collectively, the "Asserted Patents"), entitled "Keratin Treatment Formulations and Methods." The '419 Patent was duly and legally issued by the United States Patent and Trademark Office on November 22, 2016. A copy of the '419 Patent is attached hereto as Exhibit A.  The '954 Patent was duly and legally issued by the United States Patent and Trademark Office on June 6, 2017.  A copy of the '954 Patent is attached hereto as Exhibit B.

26.     Plaintiff Liqwd is the owner of the Asserted Patents. Plaintiff Olaplex is the exclusive licensee of the Asserted Patents with full rights of enforcement and recovery, including the right to pursue recovery of royalties and damages for infringement of the Asserted Patents.

27.     Each claim of the Asserted Patents is valid and enforceable.

28.    The Asserted Patents' claims describe, *inter alia*, methods for bleaching hair using maleic acid.

**Olaplex Pioneers Bond Building in 2014**

29.    In early 2014, Olaplex was only available to select premier hair colorists. Among such premier hair colorists, Tracey Cunningham (a Redken Global Creative Consultant), Guy Tang (a social media superstar with more than a million followers online), and Riawna Capri (a celebrity stylist and co-owner of the Nine Zero One Salon in West Hollywood) began using Olaplex with their clients and friends (including celebrities like Jennifer Lopez and Gwyneth Paltrow), and also spreading the word about the "miracle product" Olaplex.

30.    In May 2014, Beauty Launchpad (a national trade magazine) published a one-page feature on Olaplex, entitled "The Power of One." The article describes how Olaplex can be used to help hair when it is being lightened (bleached). Ms. Cunningham is quoted in the article saying that "[y]ou still use your same hair color, your same products, your same technique, and your same shampoos and conditioners, but the hair is stronger and shinier."

31.    The first step ("No. 1") is the Bond Multiplier product that is used, for example, in lightening (bleaching) treatments. The second step ("No. 2") is the "Bond Perfector" and is a cream that is applied after chemical processing of the hair and before it is shampooed and/or conditioned. The third step ("No. 3") is the "Hair Perfector," and is designed for at-home use in between visits to the hair salon.

32.    Olaplex formally launched in June 2014 via the Olaplex.com website. In the first month, customers placed more than 1,500 orders for Olaplex products. The next month, that number of orders nearly doubled. More than 20,000 orders for Olaplex products were fulfilled on Olaplex.com alone in the first six months. This success came at a time when Olaplex did not have any full-time employees and had not done any traditional advertising.

33.     In November 2014, Olaplex launched in the United States with one of the largest wholesale salon and beauty supply distributors in the country, Salon Centric (a wholly-owned subsidiary of Defendant L'Oréal USA, Inc.). Salon Centric opened some 100,000 accounts with Olaplex in the first six months. Olaplex generated literally millions of dollars of sales for Salon Centric in that short period.

34.     Olaplex also has been the subject of numerous stories in leading national and international publications, such as Allure, Beauty Now, British Vogue, Cosmopolitan, Daily Mail, Elle, Fashion Quarterly, Glamour Russia, Harper's Bazaar, Huffington Post, Marie Claire, Modern Salon, MTV News, New York Magazine, New York Times, People Magazine, Pop Sugar, Refinery 29, U.S. Weekly, Vanity Fair Italia, Vogue Germany, Vogue India, Washingtonian, and Women's Health. This partial list highlights the remarkable results that can be achieved with Olaplex's innovative professional hair care technology and the dramatic influence that Olaplex is having on the hair care industry.

35.     Today, Bond Multiplier has been used by hundreds of thousands of stylists across the globe, and continues to receive industry awards and rave reviews. In March 2015, Olaplex won the category "Favorite Color Innovation (Tool or Treatment)" at the 15th Annual Stylist Choice Awards. At this year's Stylist Choice Awards, Olaplex won two categories: "Favorite Bond Rebuilder" and "Favorite Product You Can't Live Without."

36.     Olaplex has an incredible presence and following on social media, with many of the top personalities in the entertainment industry showcasing their love of Olaplex. Below are un-solicited posts about Olaplex from celebrities Kim Kardashian West and supermodel Molly Sims:





37.    L'Oréal is in the business of selling, among other things, professional hair care products. Despite its long history, L'Oréal has never managed to successfully create the holy grail of hair product development—figuring out how to keep chemical treatments (like lightening or bleaching) from damaging hair.

38.    As word spread about the Olaplex "miracle treatment" and as Olaplex's sales skyrocketed (including through L'Oréal's Salon Centric distribution arm), ████████████████ ███████████████████████████████████████████████████.

39.    L'Oréal attempted to hire away Olaplex's key employees, whom L'Oréal believed were responsible for Olaplex's development. Drs. Hawker and Pressly were both contacted by a L'Oréal "Talent Acquisition" manager in March 2015 seeking to discuss their backgrounds and

potential opportunities at L'Oréal. Drs. Hawker and Pressly did not respond to L'Oréal's overtures.

40. ██████████████████████████████████████████████

██████████████████████████████████████████████

████████ .

41. ██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████ .

42. ██████████████████████████████████████████████

██████████████████████████████████████████████ .

43. ██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████ .

44. ██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████ .

45. ██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

46.

47.

48.



49.

50.

51.

██████████████████████████████████████████████████████

██████████████████████████████████████.

52.   ████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████.

53.   ████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████.

54.   ████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████.

55.   ████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████.

56.   ████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████.

57.   ████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████



**L'Oréal Willfully Copies and Knocks-off Olaplex and its 3-Part System**

60.  ███████████████████████████, L'Oréal embarked on a scheme to create not one, but three, "me too" knock-offs that it hoped would mimic Olaplex's success. These "me too" products include the Matrix Bond Ultim8 product ("Bond Ultim8"), the Redken pH-Bonder product ("pH-Bonder"), and the L'Oréal Professionnel Smartbond product ("Smartbond").

61.  L'Oréal's Bond Ultim8, pH-Bonder, and Smartbond products are collectively referred to herein as the "L'Oréal Bond Builders." Each line of the L'Oréal Bond Builders has three products, which are described below. For purposes of clarity, as defined above, the term "Accused Products" in this Complaint refers to the L'Oréal Bond Builder 3 step systems.

62.  The L'Oréal entities involved in this unlawful patent infringement are uniquely positioned to harm Olaplex. Since late 2014, a L'Oréal USA, Inc. subsidiary (Salon Centric) has distributed Olaplex in the United States. It had access to highly valuable insights and information about Olaplex (such as the identities of salon-level customers, order frequency, order amounts, customer feedback, and Olaplex's marketing and branding strategy). That valuable commercial

information provided a real-time insider's view of the success of Olaplex in the marketplace. As a vertically integrated beauty company, L'Oréal has product development and manufacturing entities too. These entities could use commercial information obtained by Salon Centric to copy Olaplex and to attempt to usurp its unique position in the marketplace in a way that other companies could not.

63.     For example, Salon Centric employees have been involved in efforts to promote the L'Oréal Bond Builders across the United States since their recent launch. In doing so, several employees have made false statements to consumers that the Olaplex technology patent had "run up" or was expired, "it was only available for two years," and the "secret recipe" was available for any company to utilize. These statements were made in several states. All three of Olaplex's products (Bond Multiplier, Bond Perfector, and Hair Perfector) are patent protected.

64.     L'Oréal copied the revolutionary three-step Olaplex system to protect hair during professional bleaching treatments. The marketing imagery produced by L'Oréal strongly resembles Olaplex's marketing materials, showing the product packaging in the background with the products lined up in front and somewhat off-center:



65.    Just like Olaplex (which has "No. 1", "No. 2" and "No. 3" products), the L'Oréal Bond Builders include three components. Bond Ultim8 products are labeled 1, 2, and 3. pH-Bonder products are labeled 1, 2, and "Post-Service Perfector."  Smartbond products are labeled 1, 2 and "Conditioner" step 3.

66.    Just like Olaplex, each of the three L'Oréal Bond Builders is sold as a kit containing the "1" and "2" products for use in a professional hair salon. Just like Olaplex, each kit includes a dosing dispenser (a syringe in the Bond Ultim8 and pH-Bonder kits, and a cup in the Smartbond kit). Just like Olaplex, L'Oréal sells the "step 3" or "Post-Service Perfector" products for home use by consumers (in between salon visits).

67.    Olaplex is sold in two different size kits. Olaplex calls the larger one the "Salon Intro Kit." It calls the smaller one the "Travelling Stylist kit." Just like Olaplex, Bond Ultim8

and pH-Bonder are sold in two different size kits. Bond Ultim8 even uses similar names for its kits. The larger one is called the "Salon Intro Kit" (exactly the same name that Olaplex uses) and a smaller one is called the "Travel Kit" (a very similar name to the one that Olaplex uses).

68.     The Accused Products are direct competitors of Olaplex' Bond Multiplier.

69.     With Olaplex, hair care professionals use Bond Multiplier at the salon to protect hair during bleach treatments. The Accused Products are aimed at the very same end consumers. The Bond Ultim8 Step 1 (Amplifier) is sold to hair care professionals as a way to prevent breakage and protect hair bonds during lightening services (bleaching). The pH-Bonder #1 (Bond Protecting Additive) and Smartbond Step 1 (Additive) also are for use by hair care professionals during lightening or bleaching hair treatments.

70.     The Accused Products are marketed to these consumers as serving the same need as Bond Multiplier. Since its launch, Olaplex has taught professional hair stylists that Olaplex' Bond Multiplier will allow them to lighten their client's hair without compromising the integrity of the hair. L'Oréal employs very similar messaging with its Accused Products, touting that they protect bonds during lightening, promote bond integrity during lightening, and strengthen bonds/hair during lightening.

71.     Olaplex Bond Multiplier has four ingredients: water, the active ingredient (bis-aminopropyl diglycol dimaleate) and two preservatives (sodium benzoate and phenoxyethanol).

72.     L'Oréal's Accused Products have very similar ingredients. Each of the Accused Products has the following ingredients: water, the active ingredient (maleic acid), a buffering agent (ethanolamine), and three dyes (CI 19140/Yellow 5, CI 14700/Red 4, CI 42090/Blue 1). The Accused Bond Ultim8 Step 1 Amplifier, and pH-Bonder #1 Bond Protecting Additive have one additional ingredient: citric acid.  The Accused Products are applied to hair with a bleaching

formulation.  Although one or more of the ingredients may be a *product* colorant, the ingredients do not contain a hair coloring agent.  In other words, the dyes exist to color the product itself, not to color hair.  ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

73.     Olaplex became known shortly after it was launched as "liquid gold" due to its unique golden yellow color, which is visible through its translucent bottle. L'Oréal's Accused Products add three different dyes to achieve a color reminiscent of the original Olaplex Bond Multiplier No. 1 product. The pictures below show the Accused Bond Ultim8 Step 1 product

(left) and Olaplex Bond Multiplier No. 1 (right) side-by-side and demonstrate the color similarity of the products in the bottles as used by hair care professionals:

 

74.     The instructions for using Olaplex and L'Oréal Bond Builders are also very similar. For the Accused Products, the ratios of the product to the bleach or lightener used are virtually identical, and call for about 4 ml of the respective product for each 15 grams of lightening (bleach) powder:

| ORIGINAL OLAPLEX INSTRUCTIONS[2] | | |
|---|---|---|
| "For lightener in foils, add ¼ oz. (7.5ml) Olaplex No. 1 for 30-60g of lightener powder. For anything less, add ⅛ oz (3.75ml) Olaplex No. 1." | | |
| INSTRUCTIONS FOR L'ORÉAL "ME TOO" KNOCKOFFS | | |
| Matrix Bond Ultim8 | Redken pH-Bonder | L'Oréal Professionnel Smartbond |
| "LIGHTENER: add 4ml (⅛ oz) of STEP 1 for every 15–30 grams (½–1 oz) of powder or 8ml (¼ oz.) of BOND ULTIM8 STEP 1 for every 30–60 grams (1–2 oz) of powder used in the mixture …." | "For lightener, add 4 ml of pH-Bonder #1 for every 15–30 grams (½ – 1 oz) of powder or 8 ml of pH-Bonder #1 for every 30–60 grams (1 – 2 oz) of powder used in mixture …." | "For lightener product, add 4ml (.14 oz) of Step 1 additive for every 15-30 g (½-1 oz) or 8ml of Step 1 additive for every 30-60 g (1-2 oz) of lightening product used in the final mixture …." |

75.     The original Olaplex is a two-step professional salon service with a white "Bond Perfector No. 2" cream being applied after chemical processing of the hair and before shampooing. L'Oréal copied that too in its Bond Builders. Matrix Bond Ultim8 "2" sealer, Redken pH-Bonder "fiber restorative pre-wash concentrate" "#2", and L'Oréal Professionnel Smart Bond pre-shampoo Step "2" are white creams applied after chemical processing of the hair and before it is shampooed and/or conditioned. L'Oréal's "2" products do not contain dyes.

76.     Again, L'Oréal's instructions tell hair care professionals to use its "me too" knockoff pre-wash cream / pre shampoo products in amounts and for times strikingly similar to the original Olaplex:

---

[2]     The written instructions for Olaplex changed in September 2016, and now instruct hair care professionals to use about half as much Bond Multiplier product during bleaching. L'Oréal copied the original Olaplex instructions dating back to just after the launch of the product (which are quoted throughout this Complaint), and L'Oréal has not yet updated its instructions to precisely match Olaplex's current instructions. (Although Olaplex changed its instructions, it was instructing users since late 2014 to use less Bond Multiplier product during bleach if they were not seeing appropriate lift (color lightening).

| ORIGINAL OLAPLEX INSTRUCTIONS | | |
|---|---|---|
| "Apply ½ oz (15 ml) of Bond Perfector from roots to ends. Comb thoroughly once. Leave on for a minimum of 5 minutes. For damaged hair, leave on for at least 10 minutes." | | |
| INSTRUCTIONS FOR L'ORÉAL "ME TOO" KNOCKOFFS | | |
| Matrix<br>Bond Ultim8 | Redken<br>pH-Bonder | L'Oréal<br>Professionnel Smartbond |
| "Apply 15ml–30ml (½–1oz) of STEP 2 SEALER depending on length and density of hair. Leave on the hair for a minimum of 10 minutes …." | "Depending on hair length and density, apply 15-30 g of pH-Bonder #2 into hair from roots to ends. Gently comb through once. Leave on for 10 minutes at room temperature …." | "2. Depending on hair length and density, apply 4 to 8 pumps of Step 2 pre shampoo into hair from roots to ends.<br><br>3. Comb through once to evenly distribute.<br><br>4. Leave on for 10 min at room temperature …." |

77.     The third component in the Olaplex system is the "Post-Service Perfector," which is for at-home use by customers in between visits to the hair salon. Again, the at-home components of the L'Oréal Bond Builders omit dyes entirely. Each is white and copies the appearance of Olaplex's "Hair Perfector." L'Oréal brazenly named the third (take home) component of its pH-Bonder product "Post-Service *Perfector*," again trying to benefit from the reputation of Olaplex's No. 3 "Hair *Perfector*" product.

78.     Olaplex instructs that its Hair Perfector product should be used once a week and applied to unwashed towel-dried hair and left for at least 10 minutes. L'Oréal copied these instructions too:

| ORIGINAL OLAPLEX INSTRUCTIONS | |
| --- | --- |
| "Apply a generous amount from roots to ends on unwashed towel-dried hair. Comb through once. Leave on for a minimum of 10 minutes or more." | |
| INSTRUCTIONS FOR L'ORÉAL "ME TOO" KNOCKOFFS | |
| Matrix Bond Ultim8 | Redken pH-Bonder |
| "To be used once a week. Before shampoo, apply on wet, towel-dried hair. Massage into hair from roots to ends. Leave on for at least 10 minutes …." | "Before shampoo, apply on wet, towel-dried hair. Massage into hair from roots to ends. Leave on for at least 10 minutes …." |

**L'Oréal Was Aware of Olaplex's Patents and On Notice of Infringement**

79.     L'Oréal had actual knowledge of the Asserted Patents and/or the applications from which they claim priority prior to the California action, or willfully blinded itself to the existence of the Asserted Patents, and had actual knowledge of the Asserted Patents prior to the filing of this action.

80.     L'Oréal monitors Olaplex's patents by, for example, monitoring websites having information regarding Olaplex's patents.

81.     ███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████.

82.     L'Oréal also demonstrated its awareness of Olaplex's patents (and/or its pending applications) by statements it made to the public. L'Oréal has affirmatively and repeatedly told the public that maleic acid "alone" cannot be patented in an attempt to mislead that public that its "me too" knockoffs were lawful. However, L'Oréal knew that Olaplex had been patented and that Olaplex was continuing to patent the use of that ingredient in a specific bleaching method that L'Oréal had copied.

83.     The '419 Patent issued from a patent application that was assigned Serial No. 15/087,415 by the U.S. Patent & Trademark Office (USPTO). A series of anonymous submissions were made to the USPTO on August 25, 2016, August 29, 2016, September 14, 2016, and September 23, 2016, which alleged the pending claims could not be allowed.

84.     On information and belief, L'Oréal made one or more of those third party submissions to USPTO in hopes of stopping issuance of the '419 patent.

85.     Those third party submissions were not successful. After the independent patent examiner carefully considered each third party submission, the '419 patent issued.

86.     In any event, L'Oréal has had actual knowledge of the Asserted '419 Patent no later than the November 22, 2016 filing date of the original Complaint in California, Case 2:14-cv-08708 ("the California Action"), which has now been dismissed.  L'Oréal has had actual knowledge of the Asserted '954 Patent no later than June 12, 2017, when Olaplex informed L'Oréal that it was going to move to amend the First Amended Complaint in this action to add a claim for infringement of the '954 Patent. ████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████.

87.     ████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████ .

88.   ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████ .

89.   L'Oréal continues its willful infringing conduct despite having this knowledge.

**FIRST CAUSE OF ACTION**
**(Patent Infringement of the '419 Patent, 35 U.S.C. §§ 1 *et seq.*)**

90.   Olaplex realleges and incorporates herein by reference the allegations contained in the preceding paragraphs.

91.   Claim 1 of the Asserted '419 Patent reads as follows:

1. A method for bleaching hair comprising:

(a) mixing a formulation comprising an active agent with a bleaching formulation, wherein the active agent has the formula:



or salts thereof; and

(b) applying the mixture to the hair;

wherein the active agent in the mixture is at a concentration ranging from about 0.1% by weight to about 50% by weight; and

wherein the mixture does not contain a hair coloring agent.

92.     L'Oréal's Accused Products are used during hair bleaching. Defendant Redken's website (www.redken.com) describes one of the Accused Products as follows: "pH-Bonder is a unique synergistic system that helps protect bonds and reduce breakage during technical services (such as bleach and hair color)." The instructions that accompany the pH-Bonder product describe how to use it during bleaching treatment.

93.     L'Oréal has produced training videos showing its employees using the Accused Products during bleaching and encouraging others to do the same, which L'Oréal maintains and continues to broadcast after the Asserted '419 Patent issued, including the following marketing videos uploaded by "Redken 5th Avenue NYC":

   https://www.YouTube.com/watch?v=0hwc44b2B4E (uploaded October 3, 2016)
   ("pH-Bonder YouTube Video"); and

   https://www.periscope.tv/Redken5thAve/1YqxoXpbPVbKv?           ("pH-Bonder
   Periscope Video")

94.     Sean Goddard, a Global Redken Artist and Artistic Trainer, appears in both the pH-Bonder YouTube video and the pH-Bonder Periscope Video.  Upon information and belief, Mr. Goddard and other L'Oréal stylists, colorists and trainers continue to infringe the Asserted '419 Patent by producing videos and showing employees how to use the Accused Products during bleaching and encouraging others to do the same after the Asserted '419 Patent issued.

95.     In training hair care professionals how to use the pH-Bonder product, L'Oréal teaches the "pH-Bonder regime" which the pH-Bonder YouTube video describes as "a complete synergistic system" to "promote bond integrity" during lightening (the word that L'Oréal uses instead of bleaching).

96.     YouTube marketing videos uploaded by "L'Oréal Professionnel," which L'Oréal maintains and continues to broadcast after the Asserted '419 Patent issued, show and describe how to use Smartbond during bleaching treatments to maintain the integrity of the hair:

https://www.youtube.com/watch?v=SHaJTzM5xu8 (uploaded August 2, 2016);

https://www.youtube.com/watch?v=i1Ch8lzdjeI (uploaded August 2, 2016);

https://www.youtube.com/watch?v=4ToTc4Q5x3I (uploaded August 24, 2016); and

https://www.youtube.com/watch?v=5BU8Nm74ERI (uploaded November 18, 2016) (collectively "Smartbond YouTube Videos")

97.     YouTube marketing videos uploaded by "Matrix," which L'Oréal maintains and continues to broadcast after the Asserted '419 Patent issued, show and describe how to use Bond Ultim8 during bleaching treatments to maintain the integrity of the hair:

https://www.youtube.com/watch?v=DqxLGHbzQXQ (uploaded November 17, 2016); and

https://www.youtube.com/watch?v=z_PO-85XxZE (uploaded November 29, 2016) ("Matrix YouTube Videos")

98.     L'Oréal instructs hair care professionals to use the Accused Products with lightener powder (bleach) as set forth above in paragraph 72.

99.     L'Oréal, or those under L'Oréal's direction and control, have maintained and continued to broadcast the aforementioned Internet videos up online for the duration of the Asserted '419 Patent's post-issuance term.

100.    L'Oréal's instructions and training describe the amounts of the Accused Products, powder bleach, and developer to use. The instructions which accompany the Bond Ultim8 Step 1 (Amplifier) and the pH-Bonder #1 (Bond Protecting Additive) advise to use 15-90 ml of developer with 15-30 g of bleach powder and 4 ml of the Bond Ultim8 Step 1 (Amplifier) and the pH-Bonder #1 (Bond Protecting Additive), and to use 30-120 ml of developer with 30-60 g

28

of bleach powder and 8 ml of the Bond Ultim8 Step 1 (Amplifier) and the pH-Bonder #1 (Bond Protecting Additive). The instructions which accompany the Smartbond Step 1 (Additive) advise to use 15–30 g of bleach powder and 4 ml of the Smartbond Step 1 (Additive), and to use 30–60 g of bleach powder and 8 ml of the Smartbond Step 1 (Additive). The instructions which accompany the Smartbond Step 1 (Additive) advise to use mixing ratios of 1:1, 1:1.5, or 1:2. The mixing ratio is the ratio of powder bleach to developer.

101.　The pH-Bonder YouTube video describes that the "#1 bond protecting additive" has "maleic acid" that "acts as a magnet to attract and then remove ions from the lighteners that interfere with weak [hair] bonds." In this video, Mr. Goddard:

- instructs hair care professionals to add and mix the #1 Bond Protecting Additive directly into their lightening formula, and actually shows this being done; and

- admits "of course" we put pH-Bonder in our lightener when lightening and color treating a model's hair, as shown on the video.

102.　The pH-Bonder YouTube video instructs users to mix 4 milliliters of "bond protecting additive solution" with 15–30 grams of powder lightener (i.e., bleach), or to mix 8 milliliters of "bond protecting additive solution" with 30–60 grams of bleach.

103.　In one of the Smartbond YouTube videos, Johnny Ramirez (a L'Oréal Professionnel Hair Artist from Los Angeles) specifically instructs users to mix 30 grams of powder lightener (bleach) with 8 milliliters of Step 1 additive.

104.　The Matrix YouTube videos specifically instruct users to mix Light Master powder lightener (bleach) with Bond Ultim8 Step 1 additive. For example, in one of the Matrix YouTube videos, Constance Robbins (a Matrix Artistic Educator) uses Bond Ultim8 Step 1 additive to pre-lighten hair with bleach before a coloring service.

105.　The labeling provided with the Accused Products shows that each has the following ingredients:  water, maleic acid, ethanolamine, CI 19140/Yellow 5, CI 14700/Red 4,

CI 42090/Blue 1.  The Accused Products are applied to hair with a bleaching formulation. Although one or more of the ingredients may be a product colorant, the ingredients do not contain a hair coloring agent.

106.    On information and belief, the Material Safety and Data Sheets for L'Oréal's Accused Products express the amount of maleic acid present in these products as sold, and report concentrations of less than or equal to 10.7 weight percent.

107.    When used according to L'Oréal's instructions and training, the concentration of maleic acid in the Accused Products is within a range from about 0.1% by weight to about 50% by weight in the bleaching formulation that is applied to the hair, as in claim 1 of the Asserted '419 Patent.

108.    When used according to L'Oréal's instructions and training, the mixture of the Accused Products and the bleaching formulation does not contain a hair coloring agent.

109.    When used according to L'Oréal's instructions and training, mixing of bleaching formulation and the maleic acid additive occurs at a time of use and prior to application of the mixture to the hair, as in claim 10 of the Asserted '419 Patent.

110.    █████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████.

111.    L'Oréal has directly infringed the Asserted '419 Patent, including at least claims 1 and 10, and continues to do so. L'Oréal has infringed at least these claims of the Asserted '419 Patent, either literally and/or under the doctrine of equivalents, by using, selling, or offering to sell in the United States, and/or importing in the United States, the Accused Products without authority from the patent holder. L'Oréal is liable for direct infringement of the Asserted '419 Patent pursuant to 35 U.S.C. § 271(a).

112.    L'Oréal also has actively induced others to infringe the Asserted '419 Patent, including at least claims 1 and 10, and continues to do so. L'Oréal had knowledge of the Asserted '419 Patent prior to, or at least as of, the filing of the California Action on November 22, 2016 and had knowledge that use of the Accused Products infringes, either literally and/or under the doctrine of equivalents, at least claims 1 and 10 of the Asserted '419 Patent. L'Oréal has induced direct infringement of the Asserted '419 Patent by L'Oréal's customers, resellers, retailers, and end users by intentionally directing them and encouraging them to use, sell, and/or offer to sell within the United States and/or to import into the United States the Accused Products. L'Oréal provides written instructions, video tutorials, and otherwise instructs its customers how to use the Accused Products in an infringing manner. L'Oréal is liable for indirect infringement of the Asserted '419 Patent pursuant to 35 U.S.C. § 271(b).

113.    Unless enjoined by this Court, L'Oréal will continue to infringe the Asserted '419 Patent and to actively induce others to infringe the Asserted '419 Patent, and Olaplex will continue to suffer irreparable harm for which there is no adequate remedy at law. Accordingly,

Olaplex is entitled to preliminary and permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

114.    As a direct and proximate result of L'Oréal's infringement, Olaplex has been and continues to be irreparably injured in its business and property rights, and is entitled to appropriate relief and to recover damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### (Patent Infringement of the '954 Patent, 35 U.S.C. §§ 1 *et seq.*)

115.    Olaplex realleges and incorporates herein by reference the allegations contained in the preceding paragraphs.

116.    Claim 1 of the Asserted '954 Patent reads as follows:

1. A method for bleaching hair comprising:

> (a) mixing a bleach powder and a developer to form a bleaching formulation;

> (b) mixing an active agent formulation comprising an active agent with the bleaching formulation to form a mixture, wherein the active agent is maleic acid; and

> (c) applying the mixture to the hair;

> wherein the active agent in the mixture is at a concentration ranging from about 0.1% by weight to about 50% by weight.

117.    L'Oréal's Accused Products are used during hair bleaching. Defendant Redken's website (www.redken.com) describes one of the Accused Products as follows: "pH-Bonder is a unique synergistic system that helps protect bonds and reduce breakage during technical services (such as bleach and hair color)." The instructions that accompany the pH-Bonder product describe how to use it during bleaching treatment.

118.    L'Oréal has produced training videos showing its employees using the Accused Products during bleaching and encouraging others to do the same, which L'Oréal maintains and continues to broadcast after the Asserted Patents issued, including the following marketing videos uploaded by "Redken 5th Avenue NYC":

https://www.YouTube.com/watch?v=0hwc44b2B4E (uploaded October 3, 2016) ("pH-Bonder YouTube Video"); and

https://www.periscope.tv/Redken5thAve/1YqxoXpbPVbKv?          ("pH-Bonder Periscope Video")

119.    Sean Goddard, a Global Redken Artist and Artistic Trainer, appears in both the pH-Bonder YouTube video and the pH-Bonder Periscope Video.  Upon information and belief, Mr. Goddard and other L'Oréal stylists, colorists and trainers continue to infringe the Asserted '954 Patent by producing videos and showing employees how to use the Accused Products during bleaching and encouraging others to do the same after the Asserted '954 Patent issued.

120.    In training hair care professionals how to use the pH-Bonder product, L'Oréal teaches the "pH-Bonder regime" which the pH-Bonder YouTube video describes as "a complete synergistic system" to "promote bond integrity" during lightening (the word that L'Oréal uses instead of bleaching).

121.    YouTube marketing videos uploaded by "L'Oréal Professionnel," which L'Oréal maintains and continues to broadcast after the Asserted '954 Patent issued, show and describe how to use Smartbond during bleaching treatments to maintain the integrity of the hair:

https://www.youtube.com/watch?v=SHaJTzM5xu8 (uploaded August 2, 2016);

https://www.youtube.com/watch?v=i1Ch8lzdjeI (uploaded August 2, 2016);

https://www.youtube.com/watch?v=4ToTc4Q5x3I  (uploaded  August 24,  2016); and

https://www.youtube.com/watch?v=5BU8Nm74ERI  (uploaded  November  18, 2016) (collectively "Smartbond YouTube Videos")

122.    YouTube marketing videos uploaded by "Matrix," which L'Oréal maintains and continues to broadcast after the Asserted '954 Patent issued, show and describe how to use Bond Ultim8 during bleaching treatments to maintain the integrity of the hair:

https://www.youtube.com/watch?v=DqxLGHbzQXQ  (uploaded  November  17, 2016); and

https://www.youtube.com/watch?v=z_PO-85XxZE  (uploaded  November  29, 2016) ("Matrix YouTube Videos")

123.    L'Oréal instructs hair care professionals to use the Accused Products with lightener powder (bleach) as set forth above in paragraph 72.

124.    L'Oréal, or those under L'Oréal's direction and control, have maintained and continued to broadcast the aforementioned Internet videos up online for the duration of the Asserted '954 Patent's post-issuance term.

125.    L'Oréal's instructions and training describe the amounts of the Accused Products, powder bleach, and developer to use. The instructions which accompany the Bond Ultim8 Step 1 (Amplifier) and the pH-Bonder #1 (Bond Protecting Additive) advise to use 15-90 ml of developer with 15-30 g of bleach powder and 4 ml of the Bond Ultim8 Step 1 (Amplifier) and the pH-Bonder #1 (Bond Protecting Additive), and to use 30-120 ml of developer with 30-60 g of bleach powder and 8 ml of the Bond Ultim8 Step 1 (Amplifier) and the pH-Bonder #1 (Bond Protecting Additive). The instructions which accompany the Smartbond Step 1 (Additive) advise to use 15–30 g of bleach powder and 4 ml of the Smartbond Step 1 (Additive), and to use 30–60 g of bleach powder and 8 ml of the Smartbond Step 1 (Additive). The instructions which accompany the Smartbond Step 1 (Additive) advise to use mixing ratios of 1:1, 1:1.5, or 1:2. The mixing ratio is the ratio of powder bleach to developer.

126.    The pH-Bonder YouTube video describes that the "#1 bond protecting additive" has "maleic acid" that "acts as a magnet to attract and then remove ions from the lighteners that interfere with weak [hair] bonds." In this video, Mr. Goddard:

- instructs hair care professionals to add and mix the #1 Bond Protecting Additive directly into their lightening formula, and actually shows this being done; and

- admits "of course" we put pH-Bonder in our lightener when lightening and color treating a model's hair, as shown on the video.

127.    The pH-Bonder YouTube video instructs users to mix 4 milliliters of "bond protecting additive solution" with 15–30 grams of powder lightener (i.e., bleach), or to mix 8 milliliters of "bond protecting additive solution" with 30–60 grams of bleach.

128.    In one of the Smartbond YouTube videos, Johnny Ramirez (a L'Oréal Professionnel Hair Artist from Los Angeles) specifically instructs users to mix 30 grams of powder lightener (bleach) with 8 milliliters of Step 1 additive.

129.    The Matrix YouTube videos specifically instruct users to mix Light Master powder lightener (bleach) with Bond Ultim8 Step 1 additive. For example, in one of the Matrix YouTube videos, Constance Robbins (a Matrix Artistic Educator) uses Bond Ultim8 Step 1 additive to pre-lighten hair with bleach before a coloring service.

130.    The labeling provided with the Accused Products shows that each has the following ingredients:  water, maleic acid, ethanolamine, CI 19140/Yellow 5, CI 14700/Red 4, CI 42090/Blue 1.  The Accused Products are applied to hair with a bleaching formulation.

131.    On information and belief, the Material Safety and Data Sheets for L'Oréal's Accused Products express the amount of maleic acid present in these products as sold, and report concentrations of less than or equal to 10.7 weight percent.

132.    When used according to L'Oréal's instructions and training, the concentration of maleic acid in the Accused Products is within a range from about 0.1% by weight to about 50%

by weight in the bleaching formulation that is applied to the hair, as in claim 1 of the Asserted '954 Patent.

133.    When used according to L'Oréal's instructions and training, the mixture of the Accused Products and the bleaching formulation does not contain a hair coloring agent.

134.    ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████.

135.    L'Oréal has directly infringed the Asserted '954 Patent, including at least claim 1, and continues to do so. L'Oréal has infringed at least this claim of the Asserted '954 Patent, either literally and/or under the doctrine of equivalents, by using, selling, or offering to sell in the United States, and/or importing in the United States, the Accused Products without authority from the patent holder. L'Oréal is liable for direct infringement of the Asserted '954 Patent pursuant to 35 U.S.C. § 271(a).

136.    L'Oréal also has actively induced others to infringe the Asserted '954 Patent, including at least claim 1, and continues to do so. L'Oréal had knowledge of the Asserted '954 Patent prior to, or at least as of, June 12, 2017 and had knowledge that use of the Accused

Products infringes, either literally and/or under the doctrine of equivalents, at least claim 1 of the Asserted '954 Patent. L'Oréal has induced direct infringement of the Asserted '954 Patent by L'Oréal's customers, resellers, retailers, and end users by intentionally directing them and encouraging them to use, sell, and/or offer to sell within the United States and/or to import into the United States the Accused Products. L'Oréal provides written instructions, video tutorials, and otherwise instructs its customers how to use the Accused Products in an infringing manner. L'Oréal is liable for indirect infringement of the Asserted '954 Patent pursuant to 35 U.S.C. § 271(b).

137.    Unless enjoined by this Court, L'Oréal will continue to infringe the Asserted '954 Patent and to actively induce others to infringe the Asserted '954 Patent, and Olaplex will continue to suffer irreparable harm for which there is no adequate remedy at law. Accordingly, Olaplex is entitled to preliminary and permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

138.    As a direct and proximate result of L'Oréal's infringement, Olaplex has been and continues to be irreparably injured in its business and property rights, and is entitled to appropriate relief and to recover damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
### (Misappropriation of Trade Secrets Under the Defend Trade Secrets Act)

139.    Olaplex realleges and incorporates herein by reference the allegations contained in the preceding paragraphs.

140.    Olaplex owns the trade secrets described more fully in paragraphs 45 – 55 (hereafter "Olaplex Trade Secrets"), which give Olaplex a significant competitive advantage

over would-be competitors, including L'Oréal.  This advantage was compromised as a result of L'Oréal's unlawful activities.

141.    Olaplex invested substantial resources to develop the Olaplex Trade Secrets, which derive independent economic value from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use.

142.    Olaplex made reasonable efforts under the circumstances to maintain the confidentiality of its trade secrets.  Olaplex's efforts included, but are not limited to, (i) limiting the circulation of said materials within Olaplex; and (ii) protecting, limiting, and controlling access to Olaplex properties with physical or electronic means.

143.    Olaplex did not consent to the use of any of the Olaplex Trade Secrets by anyone other than authorized individuals using them for Olaplex's own business purposes.

144.    L'Oréal has illegally obtained and used Olaplex Trade Secrets as set forth above and through other means of which Olaplex presently is unaware.

145.    On information and belief, at all times L'Oréal knew or had reason to know that Olaplex Trade Secrets were obtained from Olaplex by improper means.

146.    On information and belief, L'Oréal has used and disclosed Olaplex Trade Secrets without Olaplex's consent and without regard to Olaplex's rights, and without compensation, permission, or licenses for the benefit of themselves and others.  More specifically, L'Oréal has used these trade secrets in developing, marketing, and selling the Accused Products. Defendants' marketing and sale of the Accused Products continues to the present day, meaning that Defendants' trade secret misappropriation continues to the present day.  Upon information and belief, Defendants are also continuing to further develop (*i.e.* improve) the Accused Product,

and thus their use of Olaplex's trade secrets in product development also continues to the present day.

147.    As set forth in paragraphs 77-85, L'Oréal's conduct was, is, and remains willful and wanton, and was taken with blatant disregard for Olaplex's valid and enforceable rights.

148.    L'Oréal's wrongful conduct has caused and, unless enjoined by this Court, will continue in the future to cause irreparable injury to Olaplex.  Olaplex has no adequate remedy at law for such wrongs and injuries. ███████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████ Olaplex is therefore entitled to an injunction restraining and enjoining L'Oréal and its agents, servants, officers, directors, and employees, and all persons acting there under, in concert with, or on their behalf, from further using in any manner Olaplex Trade Secrets.

149.    In addition, as a proximate result of L'Oréal's misconduct, Olaplex has suffered actual damages, and L'Oréal has been unjustly enriched.  Specifically, L'Oréal used Olaplex's trade secrets to gain an unfair advantage in the bond-building and bleach-protection markets, and the erosion of Olaplex's market-share position is a direct result of L'Oréal's trade secret misappropriation.

150.    L'Oréal's misappropriation of Olaplex Trade Secrets was willful and malicious; on information and belief, L'Oréal misappropriated Olaplex's Trade Secrets with the deliberate intent to injure Olaplex's business and improve its own. Olaplex is therefore entitled to enhanced damages and reasonable attorneys' fees.

## FOURTH CAUSE OF ACTION
### (Misappropriation of Trade Secrets Under Delaware Trade Secrets Act)

151.   Olaplex realleges and incorporates herein by reference the allegations contained in the preceding paragraphs.

152.   The Olaplex Trade Secrets gave Olaplex a significant competitive advantage over would-be competitors, including L'Oréal.   This advantage was compromised as a result of L'Oréal's unlawful activities.

153.   Olaplex invested substantial resources to develop the Olaplex Trade Secrets, which derive independent economic value from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use.

154.   Olaplex made reasonable efforts under the circumstances to maintain the confidentiality of its trade secrets.   Olaplex's efforts included, but are not limited to, (i) limiting the circulation of said materials within Olaplex; and (ii) protecting, limiting, and controlling access to Olaplex properties with physical or electronic means.

155.   Olaplex did not consent to the use of any of the Olaplex Trade Secrets by anyone other than authorized individuals using them for Olaplex's own business purposes.

156.   L'Oréal has illegally obtained and used Olaplex Trade Secrets as set forth above and through other means of which Olaplex presently is unaware.

157.   On information and belief, at all times L'Oréal knew or had reason to know that Olaplex Trade Secrets were obtained from Olaplex by improper means.

158.   On information and belief, L'Oréal has used and disclosed Olaplex Trade Secrets without Olaplex's consent and without regard to Olaplex's rights, and without compensation, permission, or licenses for the benefit of themselves and others.   More specifically, L'Oréal has used these trade secrets in developing, marketing, and selling the Accused Products.   L'Oréal's

marketing and sale of the Accused Products continues, such that Defendants' trade secret misappropriation continues to the present day.   Upon information and belief, L'Oréal is also continuing to further develop (*i.e.* improve) the Accused Product, and thus its use of Olaplex's trade secrets in product development also continues to the present day.

159.    L'Oréal's conduct was, is, and remains willful and wanton, and was taken with blatant disregard for Olaplex's valid and enforceable rights.

160.    L'Oréal's wrongful conduct has caused and, unless enjoined by this Court, will continue in the future to cause irreparable injury to Olaplex.  Olaplex has no adequate remedy at law for such wrongs and injuries.  Olaplex is therefore entitled to an injunction restraining and enjoining L'Oréal and its agents, servants, officers, directors, and employees, and all persons acting there under, in concert with, or on their behalf, from further using in any manner Olaplex Trade Secrets.

161.    In addition, as a proximate result of L'Oréal's misconduct, Olaplex has suffered actual damages, and L'Oréal has been unjustly enriched.  Specifically, L'Oréal used Olaplex's trade secrets to gain an unfair advantage in the bond-building and bleach-protection markets, and the erosion of Olaplex's market-share position is a direct result of L'Oréal's trade secret misappropriation.

162.    L'Oréal's misappropriation of Olaplex Trade Secrets was willful and malicious; on information and belief, L'Oréal misappropriated Olaplex's Trade Secrets with the deliberate intent to injure Olaplex's business and improve its own. Olaplex is therefore entitled to enhanced damages and reasonable attorneys' fees.

## FIFTH CAUSE OF ACTION



163.    Olaplex realleges and incorporates herein by reference the allegations contained in the preceding paragraphs.

164.

165.

166.    Olaplex was harmed ▇▇▇▇▇▇ in an amount to be proven at trial.  This harm includes the erosion of Olaplex's market-leading position in the market for hair bond building and bleach protection products.

167.    Olaplex has been and will be further harmed irreparably as a result of L'Oréal's ▇▇▇▇▇▇, unless that conduct is enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Liqwd and Olaplex pray for entry of judgment against L'Oréal, as follows:

A.    That L'Oréal has infringed, and/or induced the infringement of one or more claims of the Asserted Patents;

B.    That L'Oréal has willfully infringed, and is willfully infringing the Asserted Patents;

C.     That L'Oréal (including its parents, subsidiaries, affiliates, successors, predecessors, assigns, and the officers, directors, agents, servants, and employees of each of the foregoing, customers and/or licensees and those persons acting in concert or participation with any of them) be preliminarily and  permanently enjoined and restrained under 35 U.S.C. § 283 from continued infringement, including but not limited to using, making, importing, offering for sale and/or selling products (such as the Accused Products) that infringe, and/or inducing the infringement of the Asserted Patents prior to their expiration;

D.     That Olaplex be awarded damages, in accordance with 35 U.S.C. § 284, adequate to compensate it for the infringement that has occurred, but in no event less than a reasonable royalty for the use made of the inventions by L'Oréal, together with costs fixed by the Court;

E.     An accounting and/or supplemental damages for all damages occurring after any discovery cutoff and through the Court's decision regarding the imposition of a permanent injunction;

F.     That this case is found to be an exceptional case, that Olaplex be awarded treble damages due to L'Oréal's deliberate and willful conduct, and that L'Oréal is ordered to pay Olaplex's costs of suit and attorneys' fees as provided for by 35 U.S.C. § 285;

G.     That Olaplex be granted prejudgment and post-judgment interest;

H.     That Olaplex be awarded damages as a result of L'Oréal's trade secret misappropriation, and enhanced damages due to L'Oréal's willful and malicious conduct;

I.     That L'Oréal (including its parents, subsidiaries, affiliates, successors, predecessors, assigns, and the officers, directors, agents, servants, and employees of each of the foregoing, customers and/or licensees and those persons acting in concert or participation with any of them) be preliminarily and permanently enjoined and restrained from further use of

Olaplex's trade secrets, including but not limited to using, making, importing, offering for sale and/or selling products (such as the Accused Products) anywhere in the world.

     K.     That Olaplex be awarded its costs and expenses in this action, including, but not limited to, ███████████████████████████████████████████

█████████████████████████████ ;

     L.     ████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████ ; and

     M.     The Olaplex be granted such other and further relief as the Court deems just and appropriate, including monetary damages for all claims.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Olaplex demands a trial by jury on all issues triable by jury.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Maryellen Noreika*

_____

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

OF COUNSEL:

Joseph M. Paunovich
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

*Attorneys for Plaintiffs*

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5202

May 14, 2018 - Original Filing Date
 May 22, 2018 - Redacted Filing Date