# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-14-JFB-SRF |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA | ) | REDACTED |
| PRODUCTS, INC., L'ORÉAL USA S/D, INC., | ) | PUBLIC VERSION |
| and REDKEN 5TH AVENUE NYC, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION

Of Counsel:

Dennis S. Ellis
Katherine F. Murray
Adam M. Reich
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA, 90071
(213) 683-6000

Naveen Modi
Joseph E. Palys
Daniel Zeilberger
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C., 20005
(202) 551-1990

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
212-318-6000

Dated: May 21, 2018

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Katharine L. Mowery (#5629)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
mowery@rlf.com

*Attorneys for Defendants*

**<u>TABLE OF CONTENTS</u>**

Page

TABLE OF AUTHORITIES ............................................................................................. iii

I.      Introduction and Summary of Argument ...................................................... 1

II.     Counterstatement of Facts ............................................................................ 1

        A.      Procedural History ............................................................................ 1

        B.      Olaplex's Alleged Invention ............................................................ 3

        C.      The Relevant Market and Olaplex's Sales ........................................ 4

III.    Olaplex Has Not Shown Likelihood of Success on the Merits ..................... 5

        A.      Claim 1 of the '419 Patent Is Invalid ............................................... 6

                1.      Claim 1 is Anticipated by Ogawa ........................................... 6

                2.      Claim 1 Is Obvious Over Kim and Ogawa .............................. 7

                        a.      Olaplex Submitted a Faulty Declaration to the PTO .................... 8

                        b.      Olaplex's Arguments Against Kim/Ogawa Lack Merit ............... 8

                        c.      Secondary Considerations Do Not Support Non-Obviousness ................................................................. 10

                3.      The PGR Raises a Substantial Question of Invalidity ............ 10

                4.      Claim 1 is Indefinite and Lacks Written Description Support ................ 11

        B.      Olaplex Cannot Show a Likelihood of Success on Infringement ....................... 12

IV.     Olaplex Has Not Shown Likelihood of Irreparable Harm ............................ 14

        A.      Olaplex and Its Expert ████████████ ...................................... 15

        B.      Olaplex's Pricing, Revenue, and Goodwill Have Been Unharmed .................... 16

        C.      The Bonder Market Has Changed ...................................................... 17

        D.      Olaplex's "Bond Builder" Market Analysis Lacks Credibility .......................... 18

V.      The Other Two Factors Weigh Against an Injunction ................................... 19

VI.     The Court Should Consider All of L'Oréal USA's Positions .......................... 20

VII.    Conclusion ................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amado v. Microsoft Corp.*,
    517 F.3d 1353 (Fed. Cir. 2008)..................................................................20

*Amgen, Inc. v. Chugai Pharm. Co.*,
    927 F.2d 1200 (Fed. Cir. 1991)..................................................................11

*Aylus Networks, Inc. v. Apple Inc.*,
    856 F.3d 1353 (Fed. Cir. 2017)..................................................................14

*B-K Lighting, Inc. v. Vision3 Lighting*,
    930 F. Supp. 2d 1102 (C.D. Cal. 2013) ......................................................20

*Eiselstein v. Frank*,
    52 F.3d 1035 (Fed. Cir. 1995)....................................................................11

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.*,
    137 F.3d 1475 (Fed. Cir. 1998)..................................................................20

*Girafa.com, Inc. v. Amazon.com, Inc.*,
    No. 07-787-SLR, 2008 WL 5155622 (D. Del. Dec. 9, 2008)....................19

*IGT v. Bally Gaming Int'l, Inc.*,
    675 F. Supp. 2d 487 (D. Del. 2009)...........................................................19

*Inphi Corp. v. Netlist, Inc.*,
    805 F.3d 1350 (Fed. Cir. 2015)..................................................................12

*Iron Grip Barbell Co. v. USA Sports, Inc.*,
    392 F.3d 1317 (Fed. Cir. 2004)..................................................................10

*KSM Fastening Sys., Inc. v. H.A. Jones Co.*,
    776 F.2d 1522 (Fed. Cir. 1985)..................................................................19

*Liqwd, Inc. v. L'Oréal USA, Inc.*,
    720 F. App'x 623 (Fed. Cir. 2018) ..................................................... *passim*

*Moba, B.V. v. Diamond Automation, Inc.*,
    325 F.3d 1306 (Fed. Cir. 2003)..................................................................12

*New Hampshire v. Maine*,
    532 U.S. 742 (2001)...................................................................................14

*Retractable Techs., Inc. v. Becton Dickinson & Co.*,
   757 F.3d 1366 (Fed. Cir. 2014)................................................................20

*Rosemount, Inc. v. U.S. ITC*,
   910 F.2d 819 (Fed. Cir. 1990)................................................................20

*SanDisk Corp. v. Memorex Prods., Inc.*,
   415 F.3d 1278 (Fed. Cir. 2005)..............................................................14

*State Indus., Inc. v. Mor-Flo Indus., Inc.*,
   948 F.2d 1573 (Fed. Cir. 1991)..............................................................6

*Titan Tire Corp v. Case New Holland, Inc.*,
   566 F.3d 1372 (Fed. Cir. 2009)..............................................................11

*Trading Techs. Int'l, Inc. v. Open E Cry, LLC*,
   728 F.3d 1309 (Fed. Cir. 2013)..............................................................12

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)................................................................................20

## Other Authorities

D. Del. LR 7.1.3(c)(2).................................................................................14

# I.  INTRODUCTION AND SUMMARY OF ARGUMENT

This is not the record for which a preliminary injunction should be granted.  Olaplex's relief is premised on purported infringement of U.S. Patent No. 9,498,419 ("the '419 patent") and its impact.  However, in the time since this Court rejected Olaplex's original motion, its case has unraveled.  First, Olaplex is unlikely to succeed on the merits.  The validity of the '419 patent has come into serious question, with the Patent Trial and Appeal Board ("PTAB") more likely than not to invalidate it in July.  In addition, the arguments Olaplex has advanced preclude any infringement.  Second, through the rigors of discovery, it is now apparent that Olaplex's basis for claiming irreparable harm rests on incorrect financial data, pseudoscience, and a framing of the market that is belied by overwhelming evidence.  For these reasons, and the arguments set forth below, L'Oréal USA respectfully requests that this Court deny Olaplex's Renewed Motion for a Preliminary Injunction.

# II.  COUNTERSTATEMENT OF FACTS

## A.  <u>Procedural History</u>

Olaplex first moved for a preliminary injunction on January 17, 2017.  (D.I. 14.)  It supported its motion with declarations from a technical expert, Dr. Edward T. Borish, and a damages expert, Dr. Nisha Mody.  (D.I. 16-17.)  At that time, Dr. Borish provided only an infringement analysis.  In trying to address one of the claim limitations, "[maleic acid] or salts thereof," he alleged that the Accused Products contain "maleic acid" (not salts thereof) and that mixtures prepared with the Accused Products similarly contain "maleic acid."  (D.I. 16 ¶¶ 48-57, 71, 74, 76, 79, 80-85.)  Meanwhile, Dr. Mody argued that Olaplex was irreparably harmed by this alleged infringement based on ███████████████ and a "National Market" that Dr. Mody defined as one limited to Olaplex and the Accused Products.  (D.I. 17 ¶¶ 7, 11.)

In response, L'Oréal USA provided evidence establishing, among other things, that there

was a substantial question as to the '419 patent's validity, that it was unlikely to infringe based on a construction of a term, "hair coloring agent," that this Court ultimately adopted, and that the competitive market included many third-party products. For instance, L'Oréal USA pointed to evidence that claim 1 of the '419 patent was anticipated by U.S. Patent No. 7,044,986 to Ogawa et al. ("Ogawa") and was rendered obvious by Korean Patent No. 2003-0003970 to Kim et al. ("Kim") in view of Ogawa. (D.I. 62 ¶¶ 127-173.) L'Oréal USA also pointed to evidence that Dr. Mody's market analysis was flawed and ████████████████████████████ ████████████████ (D.I. 63 ¶¶ 10-56; *see also* D.I. 63 Ex. F-2 ████████ ████████████████████) Olaplex attempted to rebut L'Oréal USA's arguments with new declarations from Dr. Borish (D.I. 98), Dr. Mody (D.I. 97), and four of Olaplex's distributors (D.I. 96-1 Exs. L-O). Olaplex, however, refused to allow L'Oréal USA to depose any of the individuals that provided these new declarations. (D.I. 267 Ex. D.)

The Court did not agree with L'Oréal USA's invalidity arguments (D.I. 135 ¶¶ 15-19), though two weeks later the PTAB found claim 1 (among others) more likely than not unpatentable in a post-grant review ("PGR") institution decision (JP Decl. Ex. H).[1] The Court also sided with Olaplex on irreparable harm based on Dr. Mody's testimony (D.I. 135 ¶ 22), though it was ████████████████████████████████ presented to the Court was seriously flawed (D.I. 266). The Court denied Olaplex's motion after finding Olaplex unlikely to establish infringement due to the "hair coloring agent" term. (D.I. 135 ¶¶ 7-14.)

On appeal, the Federal Circuit found that "the prosecution history clearly requires[] a construction of (the claim-forbidden) 'hair coloring agent' as referring to a customary hair-

---

[1] "JP Decl." refers to the Declaration of Joseph E. Palys. Similar abbreviations are used for other contemporaneously filed declarations, including "TS Decl.," "BF Decl.," and "SO Decl." for the declarations of Todd Schoettelkotte, Benny D. Freeman, Ph.D, and Steven Orzel, respectively.

coloring composition that is present in the mixture in an amount that, when the mixture is applied to hair, results in hair coloring, judged in the usual way—by visual inspection." *Liqwd, Inc. v. L'Oréal USA, Inc.*, 720 F. App'x 623, 627 (Fed. Cir. 2018). As a result, it remanded for reconsideration of infringement. The Federal Circuit also held "there may well be a 'substantial question' of invalidity here, necessitating more analysis in this case than we now have" given the PTAB's finding that "Ogawa disclosed all of the limitations of claim 1 . . . except the selection of maleic acid from among several potential agents," which "a person of skill in the art [would have been motivated] to select." *Id.* at 632. It also suggested reconsideration of various other issues, including changed market conditions. *Id.* at 625, 629, 631 n.2, 632-33.

### B.   Olaplex's Alleged Invention

Claim 1 of the '419 patent is a method for bleaching hair. The method includes two steps. First, a formulation containing maleic acid or salts thereof is mixed with a bleaching formulation. Second, that mixture is applied to hair. ('419 patent at 25:42-55.) The "mixture" contains a broad range of possible concentrations of the active agent ("from about 0.1% by weight to about 50% by weight") and lacks a hair coloring agent. (*Id.* at 26:1-5.) Claim 1 is not limited to any type of, degree of, or timeframe for "bleaching." (JP Decl. Ex. E at 107:7-10, 108:11-109:6.) Nor is it limited to any type of hair (*id.* Ex. B at 68:3-69:3; D.I. 109 at 4) or any particular chemical mechanism. (JP Decl. Ex. B at 73:9-12, 71:12-15.)

Olaplex represented to the PTAB that its product is not covered by the '419 patent. (*Id.* Ex. J at 15:21-25, 44:6-15.) The Federal Circuit relied on similar representations to find that "Olaplex's product uses bis-aminopropyl diglycol dimaleate," which "does not come within the '419 patent claims." *Liqwd, Inc.*, 720 F. App'x at 625. However, Olaplex's expert in a case involving a related patent in the United Kingdom ("UK") recently confirmed that the ingredient in Olaplex's product is actually a salt of maleic acid. (JP Decl. Ex. D at 397:12-398:5.)



███████████████████████████████████████████████ (D.I. 60 at

2), ██████████████████████████████████████ Olaplex

publicly credits Joseph Santy with the idea of using the Olaplex product with bleach.  (D.I. 60 at

4.)  ████████████████████████████████████████████████

████████████████████████████████████████████████████

██████ (JP Decl. Ex. O at ██████████████████████.) ████████████████████

████████████████████████████████████████████████████

████████████████ (JP Decl. Ex. C at ██████████████.)  Hawker and Pressly are the

only ones named on the '419 patent and none of the other employees have assigned their rights.[2]

After the Court last considered Olaplex's motion, the PTAB found claim 1 more likely

than not invalid.  (JP Decl. Ex. H.)  Olaplex's UK expert also recently gave testimony conflicting

with findings of the patent examiner who allowed the '419 patent (JP Decl. Ex D at 361:23-24),

and Olaplex's expert here, Dr. Borish, gave testimony to the PTAB regarding maleic acid that

undermines his infringement theories in this case (JP Decl. Ex. E at 119:20-121:12, 122:13-23,

194:8-14, Errata Sheet).  In addition, foreign patent offices examining related applications have

agreed with L'Oréal USA's positions in this case.  (JP Decl. Exs. F, G, T, U, AB.)

## C.  The Relevant Market and Olaplex's Sales

Olaplex has taken three views on the relevant market.  ██████████████████████████

██████████████████████ (D.I. 63 Ex. F-2.)  To the public, Olaplex says it is in a market all to

itself.  (TS Decl. Ex. B.)  And to this Court (when a two-player market is more favorable for its

irreparable harm analysis), Olaplex says it competes in a two-player market.  (D.I. 240 at 1.)

---

[2] L'Oréal USA previously moved to dismiss based on a lack of evidence that Olaplex has
standing to sue for infringement.  (D.I. 67 at 12-14.)  In light of the additional evidence discussed
here, serious questions as to inventorship and standing further counsel against an injunction.

Even within Olaplex's "National Market," however, the market has expanded well beyond a two-player market, increasing to approximately two dozen products since the Court last considered Olaplex's motion. (JP Decl. Ex. A at 73:3-77:7, 79:15-24, 80:12-20, 82:13-90:20, 93:1-15, 94:9-97:11, Exs. 140-153; SO Decl. ¶ 5; TS Decl. ¶¶ 28-29, 31-37.)

Olaplex relied on testimony from Dr. Mody for its market analysis. For example, █



(D.I. 17 ¶ 7.)

(JP Decl. Ex. K at 19; TS Decl. ¶ 19.)

(D.I. 243 ¶ 16, Ex. G.)

(JP Decl. Ex. K at 19-20),

(*id.* at 22-23; TS Decl. ¶ 20).

(JP Decl. Ex. L at █.)

(JP Decl. Ex. L at █.) Given these and other issues, L'Oreal USA is seeking to strike Dr. Mody's opinions. (*See* D.I. 266.)

## III. OLAPLEX HAS NOT SHOWN LIKELIHOOD OF SUCCESS ON THE MERITS

Olaplex has not established a likelihood of success on the merits at least because (A) there is a substantial question as to the validity of claim 1, and (B) it cannot establish infringement.[3]

---

[3] L'Oréal USA reserves the right to pursue other positions (e.g., on validity and infringement).

## A.    Claim 1 of the '419 Patent Is Invalid

L'Oréal USA's past challenges to claim 1 established a substantial question of invalidity. (D.I. 60; D.I. 103.)   Indeed, the Federal Circuit found that "there may well be a 'substantial question' of invalidity here" and expressly instructed that prior-art based invalidity be further explored with "more analysis" in the face of the PTAB's finding that claim 1 is more likely than not invalid.  *Liqwd, Inc.*, 720 F. App'x at 632.   In its Renewed Motion, Olaplex offers nothing new and simply asserts that "this Court correctly rejected [L'Oréal USA's] retread arguments in the July 6 Order."  (D.I. 240 at 16.)   This puzzling invitation by Olaplex to ignore the Federal Circuit's mandate is contrary to well-settled jurisprudence.  *See State Indus., Inc. v. Mor-Flo Indus., Inc.*, 948 F.2d 1573, 1577 (Fed. Cir. 1991).   In any event, the evidence L'Oréal USA previously submitted, as well as new evidence from around the world, including testimony of Olaplex's own expert in the U.K., further support the invalidity of claim 1.  (BF Decl. ¶¶ 19-97.)

### 1.    Claim 1 is Anticipated by Ogawa

L'Oréal USA previously showed how Ogawa anticipates claim 1.  (D.I. 60 at 18-20; D.I. 62 ¶¶ 130-149, App. 3.)   The Court disagreed, noting that "Defendants have not explained how Ogawa applies in light of either of plaintiffs' claim constructions" of "hair coloring agent."  (D.I. 135 at 11.)   But Defendants did explain how Ogawa anticipates under Olaplex's construction. (D.I. 60 at 18-20 n.20.)[4]   Indeed, the Federal Circuit indicated that "anticipation based on Ogawa . . . may be further explored on remand."  *Liqwd, Inc.*, 720 F. App'x at 631 n.2.

In its Renewed Motion, Olaplex chose not to present any new arguments.  (D.I. 240 at 15-16.)  However, nothing Olaplex previously argued overcomes L'Oréal USA's past arguments. For instance, Olaplex previously argued that Ogawa's maleic acid formulation is limited to its

---

[4] The Federal Circuit's construction of "hair coloring agent" does not impact the analysis, as it is similar to Olaplex's construction.  (BF Decl. ¶ 32, n.2, ¶ 60, n.4, ¶ 74; *see also* D.I. 98 ¶ 121.)

use for hair dyeing. (D.I. 96 at 7.) However, its own expert, Dr. Borish, disagreed with Olaplex and confirmed that Ogawa teaches a bleaching composition. (JP Decl. Ex. E at 152:14-153:3.) Indeed, Ogawa repeatedly explains that its hair dye compositions also encompass hair bleaching compositions. (Ogawa at 1:18-19, 3:28-32; BF Decl. ¶¶ 23-26, 28; *see also* BF Decl. ¶¶ 34-36, 56.) Olaplex also previously argued that "Ogawa does not recognize that free thiol groups are formed during bleaching" and that maleic acid in Ogawa "may not repair the hair as claimed in the '419 patent." (D.I. 96 at 7.) Claim 1, however, does not require any particular chemical mechanism, and is completely silent as to repairing hair. (JP Decl. Ex. B at 73:9-12.) Finally, Olaplex argued that because Ogawa discloses using maleic acid as one of ten chelating agents, it does not anticipate. (D.I. 96 at 6-7.) But Ogawa discloses using maleic acid with a bleaching formulation. (Ogawa at 2:61-3:3; JP Decl. Ex. E at 156:9-15; *see also* BF Decl. ¶¶ 27-33, 36.) That is sufficient for anticipation. And this is not surprising as a person of ordinary skill in the art ("POSA") understood that maleic acid was known well before the '419 patent as a chelating agent in many applications. (BF Decl. ¶¶ 30, 57; *id.* Exs. E and F.)

### 2. Claim 1 Is Obvious Over Kim and Ogawa

In addition to anticipation, L'Oréal USA previously demonstrated that the combination of Kim and Ogawa renders obvious claim 1. (D.I. 60 at 14-18; D.I. 62 ¶¶ 150-160, App. 3; D.I. 103 at 3-4.) It demonstrated that in granting the '419 patent over Kim, the Examiner relied on a faulty declaration submitted by Olaplex's CEO, Dean Christal. (*Id.*) This Court noted that "[a]t this stage in the proceedings, the court is not inclined to second guess the assessment of the examiner, who had Ogawa and Kim references before her." (D.I. 135 at 11.) The Federal Circuit's decision, however, requires further consideration of L'Oréal USA's arguments and evidence. *Liqwd, Inc.*, 720 F. App'x at 632. In its Renewed Motion, Olaplex chooses to stay silent. (D.I. 240 at 15-16.) While Olaplex did make some arguments disputing this combination

before (D.I. 96 at 7-8), those arguments lack merit (*see* D.I. 103 at 3-4), especially in light of the additional evidence that has surfaced from around the world over the past year.

### a. Olaplex Submitted a Faulty Declaration to the PTO

As an initial matter, the acknowledgement of Olaplex's UK expert that Kim "is an oxidative process, not a reductive process" highlights the substantial question of validity of claim 1. (JP Decl. Ex. D at 361:13-362:17.) That testimony directly contradicts the Examiner's erroneous basis for allowing the '419 patent over Kim during prosecution based on the Christal declaration. (D.I. 60 at 16-17; *see also* D.I. 61 at Ex. N at 2; *id.* Ex. O at 2.)

### b. Olaplex's Arguments Against Kim/Ogawa Lack Merit

In essence, Olaplex argues that a POSA would not have looked to Kim because it teaches coloring "previously reduced hair" and not bleaching, that there would have been no reason to use maleic acid to reduce hair damage during a bleaching treatment, and that a POSA would not have combined Kim and Ogawa. (D.I. 96 at 7-8.) These arguments lack merit.

First, Kim is relevant to bleaching. (BF Decl. ¶¶ 37-41, 43-45, 69-73, 75-83.) Indeed, Olaplex's UK expert recently testified that a POSA would have been interested in applying Kim's teaching that maleic acid can reduce oxidative damage to a method of bleaching, which causes similar damage. (JP Decl. Ex. D at 356:15-357:11, 404:18-22, 408:4-410:3, 412:6-14; D.I. 62 ¶¶ 169, 173; BF Decl. ¶¶ 56-59, 61-65, 71; *see also* D.I. 62 ¶¶ 169-173.) Patent offices around the world also have found Kim germane to a method of bleaching. (JP Decl. Exs. F, G, T, U, AB; *see also* BF Decl. ¶¶ 75-83.)

Second, Olaplex's attempt to limit Kim's teachings to "reduced hair" is incorrect. (D.I. 98 ¶ 233.) At the outset, Dr. Borish admitted the term "hair" in claim 1 may have pre-existing broken bonds and could be previously permed/reduced hair. (JP Decl. Ex. B at 68:3-69:3; '419 patent at 18:38-50.) Furthermore, Dr. Borish's testimony is inconsistent with that of Olaplex's

UK expert, who opined that "there is nothing in [Kim] about perming." (JP Decl. Ex. D at 361:13-25.) Finally, despite rejecting the alleged chemical mechanism described in the '419 patent (chalking it up to "hindsight speculation by the inventors," (*id.* Ex. B at 49:20-50:15)),[5] Dr. Borish argues that a POSA would trust its results. (JP Decl. Ex. B at 12:16-13:2.) Following this same logic, however, a POSA would have looked to Kim's results and noticed a markedly lower reduction in tensile strength during repeated oxidative dyeing processes. (BF Decl. ¶¶ 41-42, 61-65.) Indeed, Olaplex's UK expert agreed with as much.[6] (JP Decl. Ex. D at 403:12-404:10; Kim at 7:3-5; *see also* JP Dec. Ex. D at 408:4-410:3; D.I. 62 ¶¶ 164-168.)

Third, despite Olaplex's attempt to distance Kim and Ogawa, there was ample motivation for a POSA to combine the references. (D.I. 62 ¶¶ 164-168, App. 3.) A POSA would have had reason to apply Kim's teachings regarding reducing damage in oxidative dyeing processes to a bleaching process like that taught by Ogawa. (BF Decl. ¶¶23-32, 48-54, 66-68.) Indeed, a POSA would have expected that an active agent that prevents hair damage and strengthens hair in an oxidative dyeing process would have had the same benefits in other oxidative processes, like bleaching. (BF Decl. ¶¶ 41-42, 46-47, 59, 61-65, 75-83; JP Decl. Ex. D at 414:16-415:19; D.I. 62 ¶¶ 164-168, App. 3.) A POSA would have also understood that oxidative hair dyeing necessarily involves a step of oxidative bleaching prior to deposition of dyes, and that it is this step of bleaching that causes damage. (BF. Decl. ¶¶ 34, 39, 83.) A POSA would therefore have

---

[5] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████ (JP Decl. Exs. Y, Z, AA.)

[6] Contrary to Dr. Borish's assertions (D.I. 98 ¶ 207), the "reducing agents" described in Kim would not have prevented a POSA from modifying the process to achieve a method of bleaching without a hair coloring agent. The small quantities of reducing agents discussed in Kim are not applied to the hair. Instead, they are included to stop the oxidation process while oxidation dyes are on the shelf. (D.I. 62 ¶¶ 27, 41, 152, 153; *see also* JP Decl. Ex. D at 240:16-242:16, 243:22-244:5, 363:17-364:5; Kim at Table 1; BF Decl., ¶¶ 37-41, 72-73; *id.* Ex. D at 272.)

been motivated to reduce such damage in a traditional oxidative bleaching process that does not include subsequent application of dyes to the hair. (D.I. 62 ¶¶ 169, 173; BF Decl. ¶¶ 39-41, 59, 62-65.) A POSA would have also appreciated that both Ogawa and Kim disclose oxidative processes that use similar ingredients. (Ogawa at 7:1-31, 6:20-26; Kim at Table 1; BF Decl. ¶ 51, 59.) A POSA would have thus reasonably expected Kim's maleic acid formulation, which reduces damage during oxidative conditions, to provide similar results in other oxidative processes, such as a bleaching process like Ogawa. (D.I. 62 ¶¶ 169-173; BF Decl. ¶¶ 55-56, 58-59.) Olaplex's arguments that suggest otherwise simply ignore the scope of claim 1.

### c. Secondary Considerations Do Not Support Non-Obviousness

Olaplex cannot rely on secondary considerations to save its patent. (D.I. 109 at 4.)

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████ (D.I. 98 ¶ 237.) Olaplex's claims are also irrelevant given its insistence that its products are not covered by the '419 patent. *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1325 (Fed. Cir. 2004) ("copying requires the replication of a specific product").[7] Olaplex's conclusory teaching away and long felt need arguments also fail given that the above-mentioned prior art taught using maleic acid with bleaching. (*See also* BF Decl. ¶¶ 84-87.)

### 3. The PGR Raises a Substantial Question of Invalidity

The Federal Circuit noted that the PTAB has instituted PGR of claims 1-8 and 10 of the '419 patent, "concluding that those claims are more likely than not unpatentable for obviousness over the combination of Ogawa and two other references." *Liqwd, Inc.*, 720 F. App'x at 632.

---

[7] Olaplex's reliance on alleged facts and documents (e.g., D.I. 240 at 14 n.6, 18, 18 n.15) is at best only relevant to its trade secret claims that are not at issue here. ███████████████ █████████████████████████████████████████████████████, Olaplex ignores that the application for its U.S. Patent No. 9,095,518 (which Olaplex contends covers its Olaplex product, JP Decl. Ex. S) published on February 5, 2015. (*Id.* Exs. V-W.)

The "more likely than not" standard applied by the PTAB is higher than the substantial question of invalidity standard here. *Titan Tire Corp v. Case New Holland, Inc.*, 566 F.3d 1372, 1380 (Fed. Cir. 2009). While the PTAB's institution decision may not be binding, the Court should at a minimum consider the record before the PTAB when it instituted review (JP Decl. Ex. H) to determine whether it establishes a substantial question of invalidity, especially given the Federal Circuit's finding that the PTAB's institution decision was "sufficient to indicate why there may well be a 'substantial question' of invalidity here." *Liqwd, Inc.*, 720 F. App'x at 632.

4. **Claim 1 is Indefinite and Lacks Written Description Support**

*The "about" limitation*: Claim 1 recites that "the active agent in the mixture is at a concentration ranging from **about** 0.1% by weight to **about** 50% by weight" (emphasis added). However, there is no written description, in the '419 patent or any applications it claims priority to, to support the term "about" in this context. The term "about" appears more than 75 times in the specification, but the only disclosure even arguably contemplated as defining ranges of amounts of active agent in a bleaching mixture notably omits the term "about." ('419 patent at 16:26-36.) A POSA would have thus understood that the specification uses different disclosures to indicate when a precise number is or is not intended by omitting or reciting the term "about." *See Eiselstein v. Frank*, 52 F.3d 1035, 1039 (Fed. Cir. 1995). (BF Decl. ¶ 92, 94-95.) A POSA would have understood that the term "about" for the amount of active agent in the bleaching mixture expands the scope of claim 1 beyond that which is supported by the '419 patent. (*Id.*) Indeed, Olaplex's expert, Dr. Borish, said the term "about" would be understood to expand the scope of the endpoints of a range by 10%. (JP Decl. Ex. E at 80:16-81:9; BF Decl. ¶ 96.) Further, because the specification and prosecution history do not define or otherwise limit the scope of the term "about," a POSA is not properly informed of the metes and bounds of the claim. *See Amgen, Inc. v. Chugai Pharm. Co.*, 927 F.2d 1200 (Fed. Cir. 1991). (BF Decl. ¶ 97.)

Dr. Borish in fact concluded that the term is "an indefinite, really." (JP Decl. Ex. E at 80:13-81:9; BF Decl. ¶¶ 96-97.) Use of the term "about" thus renders claim 1 indefinite.

***The "hair coloring agent" limitation***: The Federal Circuit found "the prosecution history clearly requires[] a construction of (the claim-forbidden) 'hair coloring agent' as referring to a customary hair-coloring composition that is present in the mixture in an amount that, when the mixture is applied to hair, results in hair coloring, judged in the usual way—by visual inspection." *Liqwd, Inc.*, 720 F. App'x at 627. So interpreted, the term has inadequate written description support. *Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309, 1319 (Fed. Cir. 2013) ("claim construction and the written description requirement are separate issues"); *see also Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1320 (Fed. Cir. 2003). For example, the '419 patent (and the applications it claims priority to) does not delineate between "customary" and "non-customary" hair-coloring compositions and does not describe any visual inspection for a color change following hair bleaching. The fact that the limitation-at-issue is a negative limitation does not change the calculus. To the contrary, the Federal Circuit has made clear that negative limitations must be adequately described in the original disclosure. *See Inphi Corp. v. Netlist, Inc.*, 805 F.3d 1350, 1356 (Fed. Cir. 2015). Indeed, "a patentee may [not] arbitrarily dissect its invention by amending the claims in order to avoid the prior art" without adequate written description support. *Inphi Corp.*, 805 F.3d at 1356. Missing that here, claim 1 of the '419 patent is invalid for lack of sufficient written description. (BF Decl. ¶¶ 92-93.)

**B.    Olaplex Cannot Show a Likelihood of Success on Infringement**

Claim 1 requires "mixing a formulation comprising an active agent" that has the formula "[maleic acid] or salts thereof" and requires that "the [same] active agent in the mixture" is at a concentration from about "0.1% by weight to about 50% by weight." ('419 patent at 25:43-53, 26:1-3.) To support its allegation of infringement, Olaplex has repeatedly relied on Dr. Borish's

opinion that the Accused Products contain "maleic acid" which according to him, is the claimed "active agent" recited in claim 1. (D.I. 16 ¶ 48 ("the second ingredient is identified as 'maleic acid,' which is the active agent"), ¶¶ 49-57 (showing similar mappings), D.I. 16-1 at App. 1 at 1-2, App. 2 at 1-4, App. 3 at 1-4; D.I. 242 ¶ 23, App. 1 at 3-5, App. 2 at 14-17, App. 3 at 26-29.) To meet the "active agent in the mixture" limitation of claim 1, Dr. Borish again pointed to "maleic acid" and relied on a determination of "the weight percentage of **maleic acid** present in the mixture." (D.I. 16 ¶ 74, *see also, e.g., id.* ¶¶ 71, 76, 79, 80-85; D.I. 242 ¶ 23, App. 1 at 6-9, App. 2 at 18-21, App. 3 at 29-33.)[8] However, testimony by Dr. Borish after the Court's PI Order issued confirms that it is **impossible for such alleged use to infringe the claim**.

During the PGR proceeding, Dr. Borish made several representations that undermine his opinions before this Court. First, Dr. Borish limited his interpretation of claim 1 to a method of bleaching requiring "a pH of 9 to 11, more preferably 10 to 11." (JP Decl. Ex. E at 194:8-14; *see also id.* at 119:20-121:12.) This new interpretation is important because he also testified that, in the process of claim 1, maleic acid in the mixture at a pH of 11 "would be virtually all in the salt form." (*Id.* at 122:13-23, Errata Sheet; *see also id.* at 194:8-14.) Therefore, any amount of maleic acid present in the "mixture" formed by using the Accused Products in the way alleged by Olaplex would be far below the recited concentration range in claim 1 for "the active agent in the mixture." (BF Decl. ¶¶ 88-91.) Indeed, under Dr. Borish's view of claim 1 and his infringement analysis, basic science shows it is impossible to have such amounts of "maleic acid" in the "mixture" in the pH range to which he limits the method of claim 1. (*Id.*) Olaplex thus does not have a likelihood of success of proving infringement under its proffered mappings and analysis.

Any attempt by Olaplex to shift theories in its reply to assert infringement based on a

---

[8] Dr. Borish also testified that his focus of the "active agent" structure in claim 1 was to "maleic acid" and not the "salts thereof" aspect of the claim. (D.I. 61 Ex. E at 62:22-63:20.)

mapping to an active agent that is a "salt" of maleic acid would be improper and futile. As explained, Olaplex has always and only pursued infringement based on a mapping of claim 1 to "maleic acid" listed on the Accused Products' ingredient listings. Olaplex never once alleged infringement because use of the Accused Products includes a "salt [of maleic acid]" and any attempt to do so on reply would be improper. *See* D. Del. LR 7.1.3(c)(2).

Nevertheless, even if allowed, such an infringement reading is precluded by Olaplex's clear and unambiguous disclaimer of claim scope at the PTAB. Olaplex represented to the PTAB that its product does not fall within the scope of the '419 patent claims. (JP Decl. Ex. J at 15:21-25, 44:6-15.) However, Olaplex's UK expert recently confirmed that Olaplex's active ingredient—bis-amino dipropyl diglycol dimaleate—is a salt of maleic acid. (JP Decl. Ex. D at 397:12-398:5.)[9] Therefore, Olaplex's admission at the PTAB constitutes a clear and unambiguous disclaimer of salts of maleic acid, and any new argument that L'Oréal USA's products infringe because they purportedly contain a salt of maleic acid would be improper. *See Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017).[10]

Finally, Olaplex's claim of induced infringement fails at least because it has not established direct infringement.

## IV.    OLAPLEX HAS NOT SHOWN LIKELIHOOD OF IRREPARABLE HARM

This Court found last year that Olaplex would likely suffer irreparable harm absent an

---

[9] Although Dr. Borish argued that "within the context of the '419 [patent] . . . [Olaplex's active ingredient] is not a salt of maleic acid," (JP Decl. Ex. B at 79:3-18), when asked to explain his position in light of documentation identifying the same Olaplex active ingredient as "a salt of maleic acid . . . ," Dr. Borish could not adequately do so (*id.* at 82:24-86:19; *id.* at Ex. 127).

[10] Indeed, because such a new theory of infringement would be irreconcilable with Olaplex's repeated protestations in multiple fora that its product, which it admits is a salt of maleic acid, is not covered by claim 1, (*see* D.I. 61 at Ex C at 93:12-14; Ex. B at 60:7-21; D.I. 96 at 11 n.7; JP Decl. Ex. J at 15:21-25, 44:6-15); *Liqwd, Inc.*, 720 F. App'x at 625, Olaplex should be judicially estopped from asserting this new theory. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001); *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1290 (Fed. Cir. 2005).

injunction. (D.I. 135 ¶ 22.) That determination, it turns out, was ███████████ ███████████████ (TS Decl. ¶¶ 19-20.) It is thus not surprising that this Court's prediction "that Olaplex will continue to face price pressures and declining revenues based upon competition by the accused products" turned out to be wrong. With the Accused Products now on the market for nearly two years, ████████████████████████████████████ ████████ (TS Decl. ¶¶ 15-18, 21-27.)

Moreover, the market has changed in two notable ways. First, Olaplex no longer views itself as competing with *any* products. (TS Decl. ¶ 30.) Second, the market for bonder products has increased dramatically, even when viewed through the artificially limited lens of Olaplex's two largest distributors, Salon Centric and CosmoProf. (TS Decl. ¶¶ 31-37.) There are thus serious questions as to whether Olaplex has established any harm, much less *irreparable* harm, a prerequisite for a preliminary injunction. (TS Decl. ¶¶ 38-40; D.I. 135 ¶ 21 (citing *Abbot Labs. v. Andrx Pharm., Inc.*, 452 F.3d 1331, 1348 (Fed Cir. 2006).)

A. **Olaplex and Its Expert** ████████████████████████

Olaplex's irreparable-harm case was built on a house of cards that has toppled through discovery. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████ (D.I. 17 ¶ 7.) ████████████████████████

████████████████████████████████████████████

████████████████████████ (JP Decl. Ex. K at 19; TS Decl. ¶ 19.)[11]

_____

[11] ████████████████████████████████████████████
████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████ (JP Decl. Ex.

L at 36:17-37:6.) ███████████████████████████████████

██████████████████████████████ (D.I. 243 ¶ 16, Ex. G),[12] ████████

██████████████████████████████████████████████████

████████████████████ (JP Decl. Ex. K at 19-20), ████████████████

██████████ (*id.* at 22-23; D.I. 243 Ex. G ██████████████

█████████ ; TS Decl. ¶ 20). ████████████████████████

██████████████████████████████████████████████████

███████████████████████ (JP Decl. Ex. L at 75:15-76:2.)

## B.    Olaplex's Pricing, Revenue, and Goodwill Have Been Unharmed

Since the launch of the Accused Products nearly two years ago, ████████████

██████████████████████████████████████████ (TS Decl. ¶¶ 15-

18, 21-27.)  This is confirmed by data and testimony from Olaplex's own distributors.  (*Id.*; JP

Decl. Ex. N at ███████████████████ ; *id.* Ex. M at ███████ ; *id.* Ex. K at 19-29;

D.I. 247 ¶ 8.) ██████████████████████████████████████████

█████████████████████ (JP Decl. Ex. N at ███████████████

██████ ; *id.* Ex. M at █████████ ; SO Decl. ¶ 5.) ████████████████

██████████████████████████████████████████ (TS

Decl. ¶¶ 15-18, 21-27; JP Decl. Ex. N at ███████████████ ; *id.* Ex. M at ██████ .)  Olaplex can

hardly claim harm to its goodwill.  █████████████████████████

██████████████████████████████████████████████████

██████████████████████████ (JP Decl. Ex. K; TS Decl. ¶ 19 n.29.)

[12] ████████████████████████████████████████ (JP Decl. Ex. K at 19.)

████████████████████████████████████████████████████████████████████

████████████ (JP Decl. Ex. C at ██████████████████████.) Olaplex's parade of horribles

that the Court was led to believe could happen ███████████████████████ never

materialized. ███████████████████████████████████████ (TS Decl. ¶¶ 15-18,

21-27.) And there is no evidence that this will change absent a preliminary injunction.

### C. The Bonder Market Has Changed

Olaplex no longer views itself—at least outside the presence of this Court—as competing

with the Accused Products. To the contrary, Olaplex asserts that its products provide "the *only*

salon system that rebuilds broken hair bonds" (TS Decl. Ex. B), ███████████████████

████████████████████████████ (JP Decl. Ex. L at 20:12-23 ████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████ (*Id.* Ex. M at ████████; *see also id.* Ex. N at ████████.)

Even setting aside Olaplex's own representations, however, the market has changed. The

"Bonder" category of products offered by CosmoProf (one of the two distributors Olaplex

focuses on) has expanded and now includes products other than Olaplex and the Accused

Products, such as, for example, WellaPlex, among several others. (TS Decl. ¶¶ 28-37; JP Decl.

Ex. A at 73:3-75:18, 77:1-7, 79:15-24, 80:12-20, 82:13-90:20, 93:1-15, 94:9-97:11, Exs. 140-

153.) These products are priced comparably and purport to work similarly to Olaplex. (TS Decl.

¶¶ 31-37.) Wellaplex (as just one example) is advertised as a Bond Builder System used during

bleaching that "[r]econstruct[s] hair bonds for stronger hair[,]" a claim that CosmoProf would

have confirmed prior to selling the product. (TS Decl. Ex. E; *see also id.* Ex. B-F; JP Decl. Ex.

A at 116:22-117:11, 125:7-10 (testifying that CosmoProf "review[s] claims . . . of products that [CosmoProf] sell[s] to make sure that they are accurate as stated").)  The relevant distribution channels have also changed. ████████████████████████████████████████████

████████████████████████████████████████████████████████ (TS Decl. ¶ 37; JP Decl. Ex. C at ████████; D.I. 243 Ex. G.) ████████████████████████████████████

████████████████████████████ (JP Decl. Ex. L at ████████.)

### D.    Olaplex's "Bond Builder" Market Analysis Lacks Credibility

████████████████████████████████████████████████████████████████████

████████████████████████ (JP Decl. Ex. L at ████████.)  To get there, she apparently looked to the analysis of Dr. Borish.  (D.I. 243 ¶¶ 6, 24, 29.)[13]  As recently acquired evidence makes clear, however, Dr. Borish's analysis lacks credibility.  It is instead a results-driven process of looking for products that only mention maleic acid or bis-amino propyl diglycol dimaleate, which conveniently narrowed his list to the Accused and Olaplex's products.  (D.I. 242 ¶ 33; JP Decl. Ex. B at 27:11-18, 28:8-12.)  When it comes down to it, however, Dr. Borish does not really know whether these ingredients (or others) actually rebuild disulfide bonds.  (JP Decl. Ex. E at 69:21-70:3.)  He oddly points to the '419 patent for support (*id.* Ex. B at 11:3-13:7, 14:16-15:4) and believes an "unknown" mechanism is at play (*id.* at 21:21-23:3, 58:21-59:2).  But simply looking at treated hair to see if it remains soft, less frizzy, and shiny, to conclude that bonds are rebuilt (*id.*; '419 patent at 22:61-64) would add products that are marketed to do the same to Olaplex's narrowly defined market (JP Decl. Ex. A at Ex. 145).

Dr. Borish's analysis is also inconsistent with the facts.  Declarants from both Salon Centric and CosmoProf (the only distributors in Olaplex's "National Market") confirm that these

---

[13] In her rebuttal declaration Dr. Mody said she "spoke[] with . . . Dr. Edward Borish," (D.I. 97 ¶ 2), ████████████████████████████████ (*see* JP Decl. Ex. L at ████████).

distributors do not define the market for the products they carry, and that they categorize products as bonders (like Olaplex and others) based on how the brands market their products. (*Id.* at Ex. A 55:9-17, 57:3-25; SO Decl. ¶ 6.)  Moreover, when Olaplex's counsel pushed its own declarant to state that he would consult with a chemist to verify whether marketing claims made about a bonding product were accurate, CosmoProf's President disagreed and instead responded that he would "listen to the feedback of our customers, which is stylists."  (JP Decl. Ex. A at 118:1-22.)  Some of those customers reported that they had switched to non-Olaplex bonders, such as WellaPlex and Goldwell BondPro+.  (*Id.* at 91:9-93:15, 103:5-104:17, Ex. 146 ("I used Olaplex, but I am much more impressed by the formulation of WellaPlex."), Ex. 153 ("I would definitely recommend [BondPro+] over the other bond builders.").)

## V.     THE OTHER TWO FACTORS WEIGH AGAINST AN INJUNCTION

As Olaplex has not established likelihood of success on the merits or irreparable harm, the Court "need not address" the balance of hardships and public interest that might be served by a preliminary injunction.  *IGT v. Bally Gaming Int'l, Inc.*, 675 F. Supp. 2d 487, 493 (D. Del. 2009).  If considered, the balance of hardships tilts in favor of L'Oréal USA.  The Accused Products are intended for use with both a bleach process and a color process, the latter of which both technical experts agree would not infringe claim 1 the '419 patent.  (D.I. 61 at Ex. E at 45:8-16, 46:9-13; D.I. 62 ¶¶ 174-75.)  As a preliminary injunction would therefore result in preventing product usage that could not conceivably infringe the '419 patent, it would be unfair for the Court to issue such an overbroad order.  *See KSM Fastening Sys., Inc. v. H.A. Jones Co.*, 776 F.2d 1522, 1525 (Fed. Cir. 1985).

The public interest factor weighs in favor of L'Oréal USA as well.  "[T]he public interest is best served by denying a preliminary injunction when a moving party has failed to establish that the patent is likely valid and infringed."  *Girafa.com, Inc. v. Amazon.com, Inc.*, No. 07-787-

SLR, 2008 WL 5155622, at *1 (D. Del. Dec. 9, 2008); *see also Rosemount, Inc. v. U.S. ITC*, 910 F.2d 819, 822 (Fed. Cir. 1990). As the '419 patent is invalid and Olaplex cannot and has not established infringement, the public interest would be best served by denying Olaplex's motion.

## VI. THE COURT SHOULD CONSIDER ALL OF L'ORÉAL USA'S POSITIONS

Olaplex's invocation of waiver is misplaced. A district court is free to take any action that is consistent with the appellate mandate. *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475, 1484 (Fed. Cir. 1998); *see also Amado v. Microsoft Corp.*, 517 F.3d 1353, 1364 (Fed. Cir. 2008) (the mandate rule "forecloses reconsideration of issues *implicitly or explicitly decided on appeal*") (emphasis added); *B-K Lighting, Inc. v. Vision3 Lighting*, 930 F. Supp. 2d 1102, 1115 (C.D. Cal. 2013) (Federal Circuit's broad, non-restrictive mandate did not "preclude [the district court] from evaluating [defendant's] additional obviousness arguments).[14] This Court should consider all of L'Oréal USA's arguments and evidence, especially since they relate to points previously raised by L'Oréal USA, hinge on events from the past year, or are responsive to Olaplex's Renewed Motion. The Federal Circuit's decision broadly remanding the case expressly contemplates consideration of such issues. *See*, *e.g.*, *Liqwd, Inc.*, 720 F. App'x at 629, 631 n.2. And this Court has broad equitable authority to consider these issues given Olaplex is seeking an injunction. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Retractable Techs., Inc. v. Becton Dickinson & Co.*, 757 F.3d 1366, 1373 (Fed. Cir. 2014).

## VII. CONCLUSION

L'Oréal USA respectfully requests that the Court deny Olaplex's motion.[15]

---

[14] The cases cited by Olaplex do not contemplate the scope of a proceeding on remand. They only consider waiver in either a reply brief or at oral argument. (*See* D.I. 240 at 11-12, 16.)

[15] In the unlikely event the Court grants the motion, it should set a separate briefing schedule to determine the amount of the appropriate bond.

Of Counsel:

Dennis S. Ellis
Katherine F. Murray
Adam M. Reich
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA, 90071
(213) 683-6000

Naveen Modi
Joseph E. Palys
Daniel Zeilberger
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C., 20005
(202) 551-1990

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
212-318-6000


Dated: May 21, 2018

*/s/ Frederick L. Cottrell, III*

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Katharine L. Mowery (#5629)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
mowery@rlf.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2018, true and correct copies of the foregoing document were caused to be filed with the Clerk of Court via CM/ECF which will send notification of the filing to counsel of record and I further certify that true and correct copies of the foregoing document were caused to be served on the following counsel of record as indicated:

**VIA ELECTRONIC MAIL**
Jack B. Blumenfeld
Maryellen Noreika
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

**VIA ELECTRONIC MAIL**
Amardeep L. Thakur
Joseph M. Paunovich
Quinn, Emmanuel, Urquhart & Sullivan, LLP
865 S. Figueroa Street
Los Angeles, CA 90017
(213) 443-3000
amarthakur@quinnemanuel.com
joepaunovich@quinnemanuel.com

Matthew K. Blackburn
Diamond McCarthy LLP
150 California Street
Suite 2200
San Francisco, CA 94111
(415) 692-5200
mblackburn@diamondmccarthy.com

*/s/ Katharine L. Mowery*
Katharine L. Mowery (#5629)
mowery@rlf.com