

Frederick L. Cottrell III
302-651-7509
Cottrell@rlf.com

August 8, 2018

**VIA CM/ECF & HAND DELIVERY**

PUBLIC VERSION

The Honorable Sherry R. Fallon
District Court of Delaware
J. Caleb Boggs Federal Building
Wilmington, DE 19801-3567

      Re:  <u>*Liqwd, Inc., et al. v. L'Oréal USA, Inc., et al.*, C.A. No. 17-14 (JFB) (SRF)</u>

Dear Judge Fallon:

      Pursuant to the Court's Oral Order dated August 1, 2018, Defendants submit this supplemental letter brief regarding two issues implicated by the Protective Order: (1) participation of Plaintiffs' outside counsel, Mr. Matthew Blackburn, in post-grant review proceedings, and (2) access to Defendants' Highly Confidential Information by Plaintiffs' in-house counsel, Ms. Tiffany Walden. Specifically, as called for by the Protective Order, Defendants ask that Mr. Blackburn be prohibited from further involvement in the pending post grant reviews (PGRs), including any appeals. Additionally, Defendants ask that the Protective Order be modified so that Ms. Walden no longer has access to Defendants' Highly Confidential Information going forward.

      Defendants do not request the relief sought here lightly. Nonetheless, the requested relief is justified and, in fact, necessary given the circumstances. Indeed, as the Court is aware, Plaintiffs have requested production of some of Defendants' highly sensitive information (e.g., lab notebooks)—discovery which Defendants have provided and will supplement in short order—that will make the issues at hand all the more important.

      **A.**    **Background on the Protective Order**

      The Protective Order in this case includes provisions that recognize the inherent risk associated with providing a competitor with Highly Confidential Information. For one, as is frequently found in patent cases, the Protective Order includes a prosecution bar, prohibiting individuals who receive one party's Highly Confidential Information from engaging in patent prosecution for the adverse party given the risk—whether intended or inadvertent—of those individuals using that information for the receiving party's pending and future patent applications (for example, by changing the scope of the claims to improve the likelihood of an infringement finding). This prohibition is found in paragraph 12(a):

> Any attorney representing a Party, whether in-house or Outside Counsel, and any person associated with a Party and permitted to receive the other Party's Protected Material that is designated Highly Confidential, who reviews, or otherwise learns of, in whole or in part and directly or indirectly, the other Party's Highly Confidential material under this Order

The Honorable Sherry R. Fallon
August 8, 2018
Page 2

> shall not prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application pertaining to the subject matter of the patent-in-suit . . . .

(D.I. 54 ¶ 12(a).)

Second, as has more recently become the norm, the Protective Order includes a "Post Grant Activity" bar, providing similar protections for Highly Confidential Information in relation to any "Post Grant Activity" (such as the pending PGRs) given the similar risk associated with use of such information in such proceedings. This prohibition is found in paragraph 12(b):

> Absent the written consent of a Party producing Highly Confidential Protected Material (Producing Party), no person on behalf of Plaintiffs . . . who reviews, accesses, or learns (directly or indirectly) of Defendants' Highly Confidential Protected Material shall . . . engage in any Post Grant Activity . . . on behalf of any Party other than the Producing Party.

(D.I. 54 ¶ 12(b).) "Post Grant Activity" is defined broadly to include "any activity related to directly or indirectly providing any advice, counseling, preparing, prosecuting, editing, amending and/or drafting of any claim for any post grant proceeding involving the patent-in-suit [] or other patent or patent application claiming priority to or otherwise related to the patent-in-suit . . . ." (D.I. 54 ¶ 12(c).)

The Post Grant Activity bar applies "upon a good faith belief that an amendment or change to any claim of the patent-in-suit [] (or other patent or patent application claiming priority to or otherwise related to the patent-in-suit) would be made or any new claims would be added in such a post grant proceeding." (D.I. 54 ¶ 12(c).) There is one exception: "Olaplex's General Counsel, Tiffany Walden, may receive Protected Material that is designated as Highly Confidential and shall not be precluded from engaging in the activities specified in 12(a-c) on behalf of Olaplex provided Ms. Walden represents and warrants that she will not use L'Oréal's Highly Confidential information in any of the activities described in 12(a-c)." (D.I. 54 ¶ 12(d).)[1]

### B.  Participation of Plaintiffs' Counsel, Mr. Matthew Blackburn, in Post-Grant Review Proceedings

Plaintiffs' litigation counsel, Mr. Matthew Blackburn, is also lead counsel for Plaintiff Liqwd, Inc., the alleged Patent Owner, in the post-grant proceedings involving the patents-in-suit. (Ex. A.) It is undisputed that Mr. Blackburn has received and continues to receive Defendants' Highly Confidential Information in the litigation. Thus, the Post Grant Activity bar

---

[1] The Protective Order also specifies that "In-house or Outside Counsel of any Defendant in this action are not subject to the provisions set forth in paragraphs 12(b-c) even if they have received, reviewed, or had access to Plaintiffs' Confidential or Highly Confidential Protected Material other than through a violation of this Order." (D.I. 54 ¶ 12(d).) However, this is not analogous to the discussed provisions since the Post Grant Activity at issue in paragraphs 12(b-c) pertains only to Plaintiffs' patents where only Plaintiffs have an opportunity to alter their patent claims.

The Honorable Sherry R. Fallon
August 8, 2018
Page 3

of paragraph 12(b) of the Protective Order applies to him.  (D.I. 54 ¶ 12(b).)  The only dispute is whether the "amendment or change to any claim" contemplated in paragraph 12(c) has been triggered so as to preclude Mr. Blackburn's further involvement in such Post Grant Activity.  (D.I. 54 ¶ 12(c).)  The facts demonstrate that it has been triggered and, as such, Mr. Blackburn should be precluded from further involvement in Post-Grant Activity.

Specifically, on Friday, May 18, 2018, Plaintiffs amended U.S. Patent No. 9,668,954 ("the '954 patent"), a patent-in-suit which claims priority to U.S. Patent No. 9,498,419 (the other patent-in-suit) by disclaiming claim 17.  (Ex. B.)  **The very next business day**, Plaintiffs relied on this disclaimer in the PGRs to argue against institution.  (Ex. C at 43, 74.)  Such a disclaimer is clearly an "an amendment or change" to a claim of a patent-in-suit.  As such, Defendants immediately brought this issue to Plaintiffs' attention.  (Ex. D at 2-3.)

Plaintiffs, however, have taken an aggressive stance in interpreting the Protective Order.  Specifically, Plaintiffs argue that because the type of amendment Plaintiffs engaged in is not within the literal confines of a PGR, the "Post Grant Activity" bar has not been triggered.  (Ex. E at 61:11-23 (suggesting that because "[t]he disclaimer . . . was filed by Olaplex's outside prosecution counsel" it was "not in connection with the PGR proceedings"); *see also id.* at 64:7-9 ("With respect to Mr. Blackburn, again, I would circle back to the fact that this was not a disclaimer that was filed by him.").)  Plaintiffs' form-over-substance approach should be rejected.

By disclaiming claim 17 of the '954 patent in an effort to avoid institution of a PGR, Plaintiffs have engaged in precisely the sort of conduct envisioned by the Protective Order to trigger the "Post Grant Activity" bar.  Indeed, this Court has previously recognized the risk associated with such conduct, precluding attorneys for a patent owner from accessing a defendant's highly confidential information while also participating in post-grant activity given the risk that a patent owner will use such highly confidential information to strategically narrow its claims.  *See Boston Sci. Corp. v. Cook Grp. Inc.*, No. 15-980-LPS-CJB, 2017 WL 547903, at *2 (D. Del. Feb. 10, 2017) ("[E]ven if [plaintiff's] counsel is formally excluded from the claim drafting or amendment process, there remains a risk of [plaintiff] (even inadvertently) strategically narrowing the scope of its claims based on information that it learns (about currently accused products, or products under development) from [defendant's] confidential information."); *see also Xerox Corp. v. Google, Inc.*, 270 F.R.D. 182, 184 (D. Del. 2010) ("Defendants raise a legitimate concern that their confidential information could be competitively misused in strategically narrowing plaintiff's patent claims during reexamination.").

Plaintiffs also argue that Mr. Blackburn should not be excluded because they are entitled to their choice of counsel.  But when considering terms of a protective order, courts "must balance" the "risk of inadvertent disclosure or competitive use" of confidential information "against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice."  *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1380 (Fed. Cir. 2010).  Here, the "risk of inadvertent disclosure or competitive use" is substantial, particularly given that Defendants already have and will soon be producing additional highly sensitive information that touches on Defendants' product-development

The Honorable Sherry R. Fallon
August 8, 2018
Page 4

processes (e.g., lab notebooks). On the other hand, Plaintiffs are currently represented in the PGRs by Mr. Blackburn together with Ms. Rivka D. Monheit. (Ex. A.) Indeed, Ms. Monheit has represented Plaintiffs in the PGRs for just as long as Mr. Blackburn. To the best of Defendants' knowledge, Ms. Monheit does not have access to Defendants' Highly Confidential Information, and is free to continue to engage in Post Grant Activity on Plaintiffs' behalf. Thus, Plaintiffs would not be prejudiced by restricting only Mr. Blackburn's further participation in the PGRs. *See Bear Creek Techs. Inc. v. Verizon Servs. Corp.*, No. 12-600-GMS, 2012 WL 3190762, at *2 n.7 (D. Del. July 25, 2012) (rejecting plaintiff's "argument that it will suffer 'substantial' injury as a result of [its counsel's] inability to participate in [a reexamination]" because plaintiff "retained separate . . . counsel [that] has been actively prosecuting multiple related applications involving the same subject matter as the patent-in-suit" and "even prosecuted the patent-in-suit, asking the PTO to amend one of the claims in a certificate of correction").

In sum, given the clear violation of the terms of the Protective Order, the Court should order that Mr. Blackburn cannot continue to engage in Post Grant Activity, including any appeals stemming from the PGRs.

  **C. Access to Defendants' Highly Confidential Information by Plaintiffs' In-House Counsel, Tiffany Walden**

Defendants previously provided an accommodation to allow Plaintiffs' in-house counsel, Ms. Tiffany Walden, to receive Defendants' Highly Confidential Information, as outlined in paragraph 12(d) of the Protective Order, despite her participation in patent prosecution and Post Grant Activity. (D.I. 54 ¶ 12(d).) However, given Ms. Walden's shifting role at Olaplex LLC, Plaintiffs' loose treatment of Defendants' Highly Confidential Information, and Plaintiffs' attempts to find loopholes in the Protective Order, Defendants also ask the Court to modify the Stipulated Protective Order to remove the exception for Ms. Walden. In fact, Defendants have learned over the last year (after the stipulation to the Protective Order) that Ms. Walden has multiple responsibilities, both business and legal, contrary to the representations that were made about her when the parties negotiated the Protective Order.

As discussed above, when considering the terms of a protective order, courts "must balance" the "risk of inadvertent disclosure or competitive use" of confidential information "against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice." *In re Deutsche Bank Trust Co. Americas*, 605 F.3d at 1380. Here, the risk of inadvertent disclosure or competitive misuse associated with the continued disclosure of Defendants' Highly Confidential Information to Ms. Walden is substantial.

For one, as Plaintiffs have repeatedly asserted, "Olaplex is a small company." (Ex. E at 63:1-3.) Perhaps as a result, Ms. Walden serves multiple roles at Olaplex. (*See, e.g.*, Ex. F at 88:19-22 ("[Q.] You have a dual function at the company, both being general counsel and business function, right? A. That's true."); *see also id.* at 88:23-25.) In fact, while Ms. Walden previously was strictly Olaplex's "General Counsel," (Ex. G at 1; *see also* D.I. 247 ¶ 1), she recently changed roles and has taken on new responsibilities since the negotiation and entry of the Protective Order. Specifically, as of June 2018, Ms. Walden simultaneously serves as

The Honorable Sherry R. Fallon
August 8, 2018
Page 5

Olaplex's "Chief Administrative Officer" and "Chief Legal Officer." (Ex. G at 1.) At the same time, Ms. Walden has actively availed herself of opportunities in which Defendants' Highly Confidential Information was likely to be disclosed (e.g., attending nearly every deposition of Defendants' witnesses). Thus, the risk to Defendants is significant. *PhishMe, Inc. v. Wombat Sec. Techs., Inc.*, No. 16-403-LPS-CJB, 2017 WL 4138961, at *4-7 (D. Del. Sept. 18, 2017); *see also Blackbird Tech LCC v. Serv. Lighting & Elec. Supplies, Inc.*, No. 15-53-RGA, 2016 WL 2904592, at *6 (D. Del. May 18, 2016) ("When attorneys serve the dual role of competitive decisionmaker and litigation counsel, however, . . . courts must consider both of those roles and cannot simply ignore the competitive decisionmaker aspect."). Moreover, Plaintiffs themselves have repeatedly asserted that they are direct competitors with Defendants (e.g., D.I. 285 at 7), further heightening the risk. *PhishMe, Inc.*, 2017 WL 4138961, at *8.

In addition, Ms. Walden has been an integral part of Plaintiffs' efforts to expand and refine their patent portfolio—the very reason why Plaintiffs purport to need paragraph 12(d)'s exception for Ms. Walden. Indeed, Ms. Walden touts herself as being particularly skilled in "Intellectual Property" matters with over 99 endorsements from others. (Ex. G at 2.) Her continued exposure to Defendants' Highly Confidential Information creates the serious risk of her (whether deliberately or inadvertently) helping to develop strategies for amending or otherwise changing claims based on such highly confidential information and sharing those strategies with Mr. Blackburn or Ms. Monheit. This would in effect allow Mr. Blackburn or Ms. Monheit to incorrectly believe they are not relying on Defendants' Highly Confidential Information, when, in fact, they are.

The context in which Defendants make this request also matters. When the Protective Order was first entered, Plaintiffs had only asserted one patent against Defendants. Now Plaintiffs have asserted yet another patent, and, as discussed above in Section B, have strategically narrowed the scope of the claims of that patent. Thus, Plaintiffs are actively seeking ways to use their patents to attack Defendants' business.

To be sure, Defendants recognize that Plaintiffs may perceive harm from Ms. Walden's inability to access Defendants' Highly Confidential Information. However, Plaintiffs have "competent and capable outside counsel" that would mitigate any harm to Plaintiffs. *PhishMe, Inc.*, 2017 WL 4138961, at *9. It is not uncommon for parties to litigate cases even when in-house counsel does not have access to certain highly-confidential information. And here, Ms. Walden will continue to have access to confidential information, and can still meaningfully participate in litigation-strategy decisions without being privy to its competitor's most sensitive information. As such, given the circumstances, Defendants request that the Court modify the Protective Order to eliminate the carve-out for Ms. Walden, and prohibit Ms. Walden from further receiving Defendants' Highly Confidential Information. This result is both fair and correct because it balances the parties' concerns as compared to what currently exists. Indeed, should a genuine need arise for Ms. Walden to access certain Highly Confidential Information, Plaintiffs may request such relief upon showing good cause for such access.

The Honorable Sherry R. Fallon
August 8, 2018
Page 6

### D.     Conclusion

Defendants respectfully urge the Court to preclude Mr. Blackburn from further involvement in the pending PGRs, including all appeals from the PGRs, as called for by the Protective Order, and to preclude Ms. Walden from receiving any more of Defendants' Highly Confidential Information, as necessitated by changed circumstances.  As to Mr. Blackburn, the Protective Order clearly mandates that Plaintiffs' litigation counsel be prohibited from engaging in Post Grant Activity once—as was the case here—there is a good faith belief of an upcoming "amendment or change to any claim."  Plaintiffs have nonetheless aggressively (and incorrectly) interpreted the Protective Order to place form over substance to urge Mr. Blackburn's continued involvement in the PGRs.  As to Ms. Walden, it has now become clear that the exception in paragraph 12(d) of the Protective Order allowing her to continue to receive Defendants' Highly Confidential Information while continuing to engage in patent prosecution and Post Grant Activity poses an unacceptable risk of inadvertent misuse of Highly Confidential Information, particularly given Ms. Walden's ever-expanding non-legal role at Olaplex.  Indeed, Mr. Blackburn's continued involvement in the PGRs, and Ms. Walden's continued receipt of Defendants' Highly Confidential Information, seriously risks competitive injury to Defendants.

Respectfully,

*/s/ Frederick L. Cottrell, III*

Frederick L. Cottrell, III (#2555)

cc: Counsel of Record (via CM/ECF and E-Mail)

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 8, 2018, true and correct copies of the foregoing document were caused to be filed with the Clerk of Court via CM/ECF, which will send notification of the filing to counsel of record, and I further certify that true and correct copies of the foregoing document were caused to be served on the following counsel of record as indicated:

**VIA ELECTRONIC MAIL**
Jack B. Blumenfeld
Jeremy A. Tigan
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com

**VIA ELECTRONIC MAIL**
Amardeep L. Thakur
Joseph M. Paunovich
Ali Moghaddas
Quinn, Emmanuel, Urquhart & Sullivan, LLP
865 S. Figueroa Street
Los Angeles, CA 90017
(213) 443-3000
amarthakur@quinnemanuel.com
joepaunovich@quinnemanuel.com
alimoghaddas@quinnemanuel.com

**VIA ELECTRONIC MAIL**
Adam J. DiClemente
Quinn, Emmanuel, Urquhart & Sullivan, LLP
55 Madison Avenue
22nd Floor
New York, NY 10010
adamdiclemente@quinnemanuel.com

**VIA ELECTRONIC MAIL**
Matthew K. Blackburn
Diamond McCarthy LLP
150 California Street
Suite 220
San Francisco, CA 94111
(415) 263-9200
mblackburn@diamondmccarthy.com

*/s/ Jason J. Rawnsley*
Jason J. Rawnsley
rawnsley@rlf.com