Frederick L. Cottrell III
302-651-7509
Cottrell@rlf.com



August 22, 2018

<u>**VIA CM/ECF & HAND DELIVERY**</u>   PUBLIC VERSION

The Honorable Sherry R. Fallon
District Court of Delaware
J. Caleb Boggs Federal Building
Wilmington, DE 19801-3567

Re:  <u>*Liqwd, Inc., et al. v. L'Oréal USA, Inc., et al.*, C.A. No. 17-14 (JFB) (SRF)</u>

Dear Judge Fallon:

Plaintiffs contend that Mr. Blackburn, one of Plaintiffs' nine attorneys who have entered an appearance in this case, should continue to be allowed to have a second role representing Plaintiffs in post-grant proceedings involving the asserted patents at the United States Patent and Trademark Office. In addition, Plaintiffs contend that Ms. Walden, Plaintiffs' in-house counsel, should continue to receive Defendants' Highly Confidential Information, despite currently being excluded from many of the provisions intended to safeguard such information in paragraph 12(a-c) of the Protective Order (D.I. 54). For the reasons provided in Defendants prior letter brief (D.I. 358) and below, Defendants ask the Court to look past Plaintiffs' unavailing arguments and grant the requested relief.

### A. Participation of Plaintiffs' Counsel, Mr. Matthew Blackburn, in Post-Grant Review Proceedings

Plaintiffs do not dispute that Mr. Blackburn has received Defendants' Highly Confidential Information. (D.I. 358 at 2.) Nor do Plaintiffs dispute that during pending post grant proceedings involving asserted U.S. Patent No. 9,668,954 ("the '954 patent"), Plaintiff Liqwd, Inc. disclaimed claim 17 of the '954 patent in an effort avoid institution of those post grant proceedings. (*Id.* at 3.) Nonetheless, Plaintiffs make four primary arguments in support of Mr. Blackburn's continued involvement in the post grant proceedings. Specifically, according to Plaintiffs, (1) the Protective Order allows them to make changes to claims at issue in post grant proceedings so long as those changes are made outside of the confines of the post grant proceedings, (2) Mr. Blackburn was not the person who filed the disclaimer, (3) the disclaimer of claim 17 is not an "amendment or change" to claim 17, and (4) Defendants' requested relief would be burdensome. These arguments cannot withstand scrutiny.

First, Plaintiffs are wrong that the Protective Order is only intended to limit the mechanism used to alter claims at issue in post grant proceedings. The Protective Order states that the Post Grant Activity bar applies "upon a good faith belief that an amendment or change to any claim of [an asserted patent] would be made or any new claims would be added in such a post grant proceeding." (D.I. 54 ¶ 12(c).) Nowhere does the Protective Order limit where such

The Honorable Sherry R. Fallon
August 22, 2018
Page 2

amendments, changes, or new claims with respect to patents at issue in post grant proceedings may be made. Indeed, such a limitation would make little sense—the *result* is what matters, not the mechanism used by Plaintiffs. And here there is no question that the disclaimer of claim 17 affected the post grant proceedings. While the Patent Trial and Appeal Board ("PTAB") did institute a post-grant proceeding against the '954 patent—proving that the asserted claims are more likely than not unpatentable (D.I. 366-1 Ex. A at 37)—it declined to institute another at least in part because of the disclaimer of claim 17 (*id.* Ex. B at 24; *see also id.* Ex. A at 3 n.1).[1]

Plaintiffs' second argument, that Mr. Blackburn was not the person who filed the disclaimer, is a red herring. The Protective Order states that "[t]he restrictions set forth in paragraphs 12(b-c) shall apply immediately upon a good faith belief that an amendment or change to any claim of [an asserted patent] would be made or any new claims would be added in such a post grant proceeding," regardless of who is involved in such an amendment, change, or creation of a new claim. Additionally, even if the Court looks at this at an individual-specific level, *involvement in the disclaimer* is what should matter, not involvement in the clerical process of *filing* the disclaimer. While Mr. Blackburn and Ms. Walden each took care to submit a sworn statement to this Court that Ms. Monheit was the one that filed the disclaimer of claim 17, both Mr. Blackburn and Ms. Walden curiously never deny involvement in the decision to pursue the disclaimer or its use to avoid PGR review. (D.I. 369 ¶ 9; D.I. 371 ¶ 13.) Ms. Monheit herself only says that she "entered [the] disclaimer using [her] professional judgment" and does not deny having consulted with others, including Mr. Blackburn and Ms. Walden. (D.I. 370 ¶ 5.)[2] Indeed, the only alternative—that Ms. Monheit *sua sponte* disclaimed a claim of a patent at issue in district court litigation without consulting with her client, despite her own professed lack of experience in "litigation activities or post-grant proceedings" (*Id.* ¶ 4)—defies logic.

Third, as to Plaintiffs' position that the disclaimer of claim 17 is not an "amendment or change" to claim 17, the language of the Protective Order makes clear that Plaintiffs are wrong. The Protective Order speaks to three categories of patent claim revisions: (1) "amendment[s]" to claims, (2) "change[s]" to claims, and (3) "new claims." (D.I. 54 ¶ 12(c).) These categories line up with the three possible ways a claim may be revised—(1) a claim can be retained with its language altered; (2) a claim can be removed through cancellation/disclaimer; and (3) a new claim can be added. Thus, when the Protective Order speaks of an "amendment or change," it is not limited to textual amendments, but also encompasses changes by way of cancellation/disclaimer.

Finally, Plaintiffs argue that their litigation costs would rise if Mr. Blackburn was precluded from further involvement in the post grant proceedings. However, it is Plaintiffs' own

---

[1] Under *SAS Inst., Inc. v. Iancu*, if the Board had instituted a proceeding as to claim 17, it would have had to institute as to all challenged claims. 138 S. Ct. 1348, 1354 (2018).

[2] If the Court is inclined to deny the relief Defendants are seeking, Defendants should, at a minimum, be afforded an opportunity to take the depositions of these individuals and offer the deposition testimony to the Court. The declarations are carefully worded and, at best, fail to answer critical questions. (*See, e.g.*, *infra* Section B (discussing Ms. Walden's failure to deny having indirectly advised or instructed Ms. Monheit to enter the disclaimer of claim 17).)

The Honorable Sherry R. Fallon
August 22, 2018
Page 3

actions that have caused the Post Grant Activity bar to be triggered, and Plaintiffs should have had the foresight to anticipate the corresponding consequences.  Moreover, the risk to Defendants is significant.  As is evident from this very case, Plaintiffs are actively pursuing ways to sue Defendants for patent infringement.  In this context, and in light of the provisions in the Protective Order, Mr. Blackburn should not be permitted to simultaneously continue to receive Defendants' Highly Confidential Information as outside counsel for Defendants and participate in the post grant proceedings.  At a minimum, Mr. Blackburn should have to choose his venue going forward.  For instance, if the Court is not inclined to restrict Mr. Blackburn's participation in post grant proceedings, Mr. Blackburn should at a minimum be excluded from receiving Defendants' Highly Confidential Information going forward if Plaintiffs choose to continue to be represented by him in the post grant proceedings.  Plaintiffs certainly have (and do not deny having) other attorneys not involved in the post grant proceedings that can handle issues associated with such information.

        **B.**     **Access to Defendants' Highly Confidential Information by Plaintiffs' In-House Counsel, Tiffany Walden**

Ms. Walden concedes that she recently became Plaintiff Olaplex LLC's Chief Administrative Officer.  (D.I. 371 ¶ 5.)  According to Plaintiffs, "that title merely reflects the administrative responsibilities Ms. Walden has performed all along."  (D.I. 368 at 5-6.)  Even assuming that is true, this means that Ms. Walden vastly underrepresented the extent of her business role before earning that title.  For instance, when asked "what specific issues [Ms. Walden] perform[s] in [her] business function capacity," the only thing she pointed out was that she was "one of the people that oversee [Olaplex's] distribution accounts."  (D.I. 368 Ex. D at 22:11-19.)  Such a limited role is a far cry from a company's Chief Administrative Officer.  Indeed, if there is another person who also performs the functions of such an officer, Plaintiffs have not identified that person.

Moreover, Ms. Walden's declaration raises additional questions in regards to risks to Defendants from her continued exposure to Defendants' Highly Confidential Information.  For instance, while Ms. Walden states that she "did not directly advise or instruct Ms. Monheit to enter [the] disclaimer" discussed above, she does not deny having indirectly done so.  (D.I. 371 ¶ 13.)  This omission is notable because just two sentences later she denies "directly or *indirectly*" supplying Ms. Monheit with "L'Oréal information designated as Confidential or Highly Confidential."  (*Id.* (emphasis added).)  That is, while Ms. Walden denies having indirectly supplied Ms. Monheit with confidential information, Ms. Walden does not deny having indirectly advised or instructed Ms. Monheit to enter the disclaimer (e.g., through Dr. Pressly, who Ms. Walden says is the Olaplex employee that communicates with Ms. Monheit).  (*Id.* ¶ 4.)

Ms. Walden emphasizes that she "do[es] not advise or otherwise direct outside counsel's strategy decisions related to patent prosecution."  (D.I. 371 ¶ 4.)  But that only begs the question of why Plaintiffs insist that Ms. Walden be granted the exception in paragraph 12(d) of the Protective Order.  At a minimum, however, if the Court retains the exception for Ms. Walden at Plaintiffs' insistence, she should only be granted access to Defendants' Highly Confidential Information related to financial information that is necessary for managing the litigation and not any technical information.

The Honorable Sherry R. Fallon
August 22, 2018
Page 4

                                        Respectfully,

                                        */s/ Frederick L. Cottrell, III*

                                        Frederick L. Cottrell, III (#2555)

cc: Counsel of Record (via E-Mail)

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2018, true and correct copies of the foregoing document were caused to be filed with the Clerk of Court via CM/ECF, which will send notification of the filing to counsel of record, and I further certify that true and correct copies of the foregoing document were caused to be served on the following counsel of record as indicated:

**VIA ELECTRONIC MAIL**
Jack B. Blumenfeld
Jeremy A. Tigan
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com

**VIA ELECTRONIC MAIL**
Amardeep L. Thakur
Joseph M. Paunovich
Ali Moghaddas
Quinn, Emmanuel, Urquhart & Sullivan, LLP
865 S. Figueroa Street
Los Angeles, CA 90017
(213) 443-3000
amarthakur@quinnemanuel.com
joepaunovich@quinnemanuel.com
alimoghaddas@quinnemanuel.com

**VIA ELECTRONIC MAIL**
Adam J. DiClemente
Quinn, Emmanuel, Urquhart & Sullivan, LLP
55 Madison Avenue
22nd Floor
New York, NY 10010
adamdiclemente@quinnemanuel.com

**VIA ELECTRONIC MAIL**
Matthew K. Blackburn
Diamond McCarthy LLP
150 California Street
Suite 220
San Francisco, CA 94111
(415) 263-9200
mblackburn@diamondmccarthy.com

 */s/ Jason J. Rawnsley*
 Jason J. Rawnsley
 rawnsley@rlf.com