IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LIQWD, INC. and OLAPLEX LLC, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 17-14-JFB-SRF |
| ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA ) | |
| PRODUCTS, INC., L'ORÉAL USA S/D, ) | |
| INC., and REDKEN 5TH AVENUE NYC, ) | |
| L.L.C., ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

**I.   INTRODUCTION**

Presently before the court in this patent infringement action is the motion for partial dismissal of the second amended complaint ("SAC") pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure, filed by defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc., and Redken 5th Avenue NYC, LLC (collectively, "L'Oréal"). (D.I. 302) For the following reasons, I recommend that the court grant L'Oréal's motion to dismiss,[1] without prejudice.

---

[1] L'Oréal's motion to dismiss is directed only to the causes of action in Counts I and II for infringement in the second amended complaint. (D.I. 302) L'Oréal did not challenge Olaplex's causes of action for misappropriation of trade secrets and breach of contract, Counts III through V.

## II. BACKGROUND

### A. Patents-In-Suit

#### 1. The '419 patent

On November 22, 2016, the United States Patent and Trademark Office (the "USPTO") issued United States Patent No. 9,498,419 ("the '419 patent"), entitled "Keratin Treatment Formulations and Methods." The '419 patent was filed on March 31, 2016 on a fast track, and claims priority to United States Provisional Application No. 61/994,709, which was filed on May 16, 2014. The '419 patent is a continuation of parent application no. 14/713,885, which was filed on May 15, 2015, published on November 19, 2015, and issued as U.S. Patent No. 9,326,926 on May 3, 2016. The '419 patent lists as inventors Eric D. Pressly and Craig J. Hawker ("the inventors"), and identifies Liqwd, Inc. as the assignee. The '419 patent describes "[f]ormulations, kits, and methods for rebuilding the disulfide bonds in keratin" to be applied in conjunction with a hair coloring treatment. ('419 patent, Abstract)

While the '419 patent was pending before the USPTO as Patent Application No. 15/087,415, a series of anonymous submissions were made on August 25, 2016, August 29, 2016, September 14, 2016, and September 23, 2016 alleging that the pending claims could not be allowed. (D.I. 262 at ¶ 83) Olaplex alleges that L'Oréal USA made one or more of the third-party submissions to the USPTO to prevent the issuance of the '419 patent. (*Id.* at ¶ 84) The third-party submissions were rejected, and the '419 patent was issued. (*Id.* at ¶ 85)

On January 13, 2017, L'Oréal filed a PGR petition challenging the patentability of all asserted claims of the '419 patent. (D.I. 354 at 4) The Patent Trial and Appeal Board ("PTAB") instituted review of the challenged claims of the '419 patent on July 19, 2017. (*Id.* at 4-5) On June 27, 2018, the PTAB issued a final written decision finding all asserted claims of the '419

patent unpatentable. (D.I. 339, Ex. A) Olaplex appealed the final written decision to the Federal Circuit, and the appeal remains pending. (D.I. 373)

### 2. The '954 patent

United States Patent No. 9,668,954 ("the '954 patent") (together with the '419 patent, the "patents-in-suit") was filed on January 25, 2017 and issued on June 6, 2017. On April 26, 2017, the USPTO issued a notice of allowance for the claims in the '954 patent. (D.I. 143, Ex. B) The '954 patent is a continuation of United States Patent Application No. 15/290,593, which is a continuation of the '419 patent. The '954 patent has the same title, inventors, and specification as the '419 patent. The active agent element of claim 1 of the '954 patent requires application of a bleaching mixture containing an active agent of maleic acid to the hair. ('954 patent, col. 25:58-67)

In late January and early February 2018, L'Oréal filed three PGR petitions challenging the patentability of all claims of the '954 patent. (D.I. 354 at 5) On August 10, 2018, the PTAB instituted PGR proceedings on one of the petitions, and denied institution on the remaining two PGR petitions. (D.I. 366, Exs. A-C) A final written decision on the instituted petition regarding the '954 patent is anticipated in August 2019. (D.I. 385 at 6-13)

### B. Parties

Olaplex LLC is a California start-up that discovered, developed, and sells professional hair care products including Olaplex Bond Multiplier ("Bond Multiplier"), which protects hair during bleach treatments. (D.I. 262 at ¶¶ 2, 31) Olaplex LLC is purportedly the exclusive licensee of the patents-in-suit pursuant to a May 20, 2014 licensing agreement. (*Id.* at ¶ 26; D.I. 68, Ex. A at 57:4-58:11 and Ex. 13) Olaplex formally launched in June 2014 via its website.

(D.I. 262 at ¶ 32) Liqwd, Inc. is a California company which is the alleged owner of the patents-in-suit. (*Id.* at ¶¶ 6, 26)

L'Oréal USA Products, Inc., L'Oréal USA S.D., Inc., and Redken 5th Avenue NYC L.L.C. are subsidiaries of co-defendant L'Oréal USA, Inc. (D.I. 262 at ¶¶ 8-11) L'Oréal develops and manufactures hair care, skin care, cosmetics, and fragrances distributed through over 30 brands. Three lines of L'Oréal's products, each of which comprises three products, are accused of infringement by Olaplex in the present case: Matrix Bond Ultim8, Redken pH-Bonder, and L'Oréal Professionnel Smartbond products (collectively, the "Accused Products").[2] (*Id.* at ¶¶ 60-61)

### C. Facts[3]

Dean Christal, the CEO of Olaplex LLC and Liqwd, Inc., worked with Drs. Pressly and Hawker to develop a hair product that would protect hair during chemical treatments. (D.I. 262 at ¶¶ 20-21) Olaplex launched its products online in June 2014. (*Id.* at ¶ 32) In November 2014, Olaplex launched in the United States by marketing its products through Salon Centric, a wholesale salon and beauty supply distributor wholly owned by L'Oréal USA. (*Id.* at ¶ 33)

In January 2015, Christal was contacted by a L'Oréal executive regarding a potential acquisition of Olaplex. (D.I. 262 at ¶ 40) Olaplex and L'Oréal USA subsequently met five times throughout 2015 to discuss a potential acquisition. After meeting on February 20, March 27, and April 14, Olaplex and L'Oréal USA executed a nondisclosure agreement ("NDA") effective May

---

[2] This definition of the Accused Products is the subject of the parties' dispute. The proposed SAC that was the subject of the court's February 28, 2018 Report and Recommendation defined Accused Products to encompass only the Step 1 products for each of the accused product lines. (D.I. 126, Ex. 1 at 1) The expansion of this definition to encompass Steps 1-3 products for each product line in the SAC at D.I. 262 was made without leave of court.
[3] For purposes of the pending motion to dismiss, the court accepts as true the facts in the SAC in accordance with the Rule 12(b)(6) standard.

4

15, 2015. (*Id.* at ¶¶ 41, 43-46) On May 19, 2015, Olaplex provided a copy of unpublished patent application 14/713,885 to L'Oréal USA pursuant to the terms of the NDA, disclosing the active ingredient and formula used in the Accused Products months before the application was published. (*Id.* at ¶ 47) Christal and Pressly met with L'Oréal USA representatives on the same day, providing an in-depth explanation of how the formula works and what testing is needed to ensure efficacy. (*Id.* at ¶¶ 50-57) The parties subsequently met on September 1, 2015, and a representative of L'Oréal USA informed Christal that L'Oréal USA was no longer interested in the acquisition. (*Id.* at ¶ 59) Following the cessation of negotiations, L'Oréal USA developed the Accused Products. (*Id.* at ¶ 60)

### D. Procedural History

On November 22, 2016, the '419 patent was issued by the USPTO, and Olaplex filed a complaint against L'Oréal USA for infringement of the '419 patent and false advertising in the Central District of California (the "California Action"). (D.I. 262 at ¶ 86; C.D. Cal. C.A. No. 16-8708-R-AFM, D.I. 1) Olaplex filed the present action on January 5, 2017 against L'Oréal USA after dismissing the California Action, asserting causes of action for the alleged infringement of the '419 patent, misappropriation of trade secrets under the Defend Trade Secrets Act, misappropriation of trade secrets under the Delaware Trade Secrets Act, unjust enrichment, breach of contract, and breach of the implied covenant of good faith and fair dealing. (D.I. 2) On January 17, 2017, Olaplex filed a motion for a preliminary injunction, alleging that it had suffered and would continue to suffer irreparable harm unless L'Oréal USA's infringement was enjoined. (D.I. 14)

Olaplex filed its first amended complaint on March 20, 2017, adding L'Oréal S.A. as a defendant. (D.I. 53) In response, L'Oréal USA filed its motion to dismiss the first amended

complaint on April 17, 2017, alleging that Olaplex did not have standing to maintain the action under Rule 12(b)(1), and arguing that the causes of action failed to state a claim under Rule 12(b)(6). (D.I. 66) L'Oréal S.A. followed suit on June 15, 2017, filing a motion to dismiss for insufficiency of service of process, lack of personal jurisdiction, lack of standing, and failure to state a claim. (D.I. 117) On June 21, 2017, Olaplex moved for leave to file a second amended complaint, seeking to add a cause of action for infringement of the '954 patent, and striking its causes of action for unjust enrichment and breach of the implied covenant of good faith and fair dealing. (D.I. 126, Ex. 2)

Judge Robinson issued a memorandum order on July 6, 2017, denying Olaplex's motion for a preliminary injunction. (D.I. 135) On July 11, 2017, Olaplex appealed the ruling on the preliminary injunction to the Federal Circuit. (D.I. 136) The Federal Circuit issued its opinion on January 16, 2018, vacating the district court's denial of a preliminary injunction and remanding the case to the district court for further proceedings. (D.I. 176, Ex. 1) The Federal Circuit returned the mandate to this court on April 5, 2018, making the judgment of the Federal Circuit final. (D.I. 217)

On February 28, 2018, the court issued its Report and Recommendations, granting Olaplex's motion to amend the complaint, denying L'Oréal's motion to dismiss, and granting-in-part L'Oréal S.A.'s motion to dismiss. (D.I. 186) The district judge adopted the Report and Recommendations on April 23, 2018 and, in a subsequent June 26, 2018 Order, the district judge reaffirmed its conclusion that there is no personal jurisdiction over L'Oréal S.A., thereby dismissing L'Oréal S.A. from the litigation with prejudice. (D.I. 234; D.I. 317) Olaplex filed its second amended complaint (the "SAC") on May 14, 2018. (D.I. 262) On June 12, 2018,

6

L'Oréal filed the instant motion to dismiss the SAC for failure to state a claim pursuant to Rule 12(b)(6). (D.I. 302) The court held oral argument on the motion on December 12, 2018.

On October 15, 2018, the court issued a Report and Recommendation recommending that the district judge grant Olaplex's renewed motion for a preliminary injunction. (D.I. 430) On November 5, 2018, L'Oréal filed objections to the Report and Recommendation, as well as a motion to reopen and supplement the record on the motion for a preliminary injunction. (D.I. 468; D.I. 469) The motion and objections remain pending.

### III. LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008). "[C]ourts use the same standard in ruling on a motion to dismiss a counterclaim under Rule 12(b)(6) as they do in assessing a claim in a complaint." *Identix Pharms., Inc. v. Gilead Sciences, Inc.*, C.A. No. 13-1987-LPS-CJB, 2014 WL 4222902, at *5 (D. Del. Aug. 25, 2014) (citing *Tyco Fire Prods. LP v. Victaulic Co.*, 777 F. Supp. 2d 893, 898-99 (E.D. Pa. 2011)).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations

allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

When determining whether dismissal is appropriate, the court must take three steps.[4] *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must identify the elements of the claim. *Iqbal*, 556 U.S. at 675. Second, the court must identify and reject conclusory allegations. *Id.* at 678. Third, the court should assume the veracity of the well-pleaded factual allegations identified under the first prong of the analysis, and determine whether they are sufficiently alleged to state a claim for relief. *Id.*; *see also Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The third prong presents a context-specific inquiry that "draw[s] on [the court's] experience and common sense." *Id.* at 663-64; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-

---

[4] Although *Iqbal* describes the analysis as a "two-pronged approach," the Supreme Court observed that it is often necessary to "begin by taking note of the elements a plaintiff must plead to state a claim." 556 U.S. at 675, 679. For this reason, the Third Circuit has adopted a three-pronged approach. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

8

specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

## IV. ANALYSIS

### A. Judicial Notice

I recommend that the court deny L'Oréal's request for judicial notice of excerpts from the deposition testimony of Olaplex's expert, Dr. Edward T. Borish, in the PGR proceedings on the '419 patent. (D.I. 304) This testimony is not "integral to or expressly relied upon" in the SAC. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Moreover, the testimony relates to whether maleic acid would take its free acid form or its salt form at a pH of 11, which is a contested fact in the instant case that was presented to the court for resolution during claim construction. (D.I. 304, Ex. A at 122:13-23; D.I. 461 at 2-8; D.I. 460 at 1-6) Federal Rule of Evidence 201(b) provides that "[t]he court may judicially notice a fact" only if it "is not subject to reasonable dispute." Fed. R. Evid. 201(b); *see also Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 526-27 (D. Del. 2008) ("The Court may properly take notice of facts not reasonably subject to dispute. . . . For all practical purposes, judicially noticing a fact is tantamount to directing a verdict against a party as to the noticed fact."). L'Oréal's reliance on *CANVS Corp. v. United States* is not sufficiently analogous to the facts before the court because the issue arose in the context of a motion to stay, the ruling did not clearly extend to discovery documents such as deposition transcripts, and there is no indication that the judicially-noticed material was cited to advance a finding in favor of a particular party on a disputed issue of fact. 118 Fed. Cl. 587, 590 n.3 (2014).

### B. Newly-Added Accused Products

In support of its motion, L'Oréal alleges that the SAC should be dismissed because it deviates from the proposed SAC attached to Olaplex's motion for leave to amend the complaint that was the subject of the court's February 28, 2018 Report and Recommendation and the April 23, 2018 Order adopting the Report and Recommendation. (D.I. 303 at 6) According to L'Oréal, the court never authorized the addition of the Step 2 and Step 3 products from each of the three accused brand lines. (*Id.*)

In response, Olaplex contends that nothing in the court's rulings on the motion for leave to amend barred Olaplex from modifying the proposed SAC to add accused products, thereby "clarif[ying] a defined term." (D.I. 334 at 8) Moreover, Olaplex argues that L'Oréal had notice of the additional accused products based on Olaplex's discovery requests and infringement contentions. (*Id.* at 9) Olaplex relies on case law establishing that a plaintiff is not required to identify every accused product in the pleading. (*Id.* at 10-11)

I recommend that the court grant L'Oréal's motion to dismiss. Further amending a pleading without further leave of court, after the entry of an order permitting amendment, violates the Federal Rules and this court's Local Rules. Federal Rule of Civil Procedure 15(a)(2) states that, following the expiration of the time to amend as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P 15(a)(2). Pursuant to District of Delaware Local Rule 15.1,

> [a] party who moves to amend a pleading shall attach to the motion: (a) The proposed pleading as amended, complete with a handwritten or electronic signature; and (b) A form of the amended pleading which shall indicate in what respect it differs from the pleading which it amends, by bracketing or striking through materials to be deleted and underlining materials to be added. If the motion to amend is granted, the proposed amended pleading, as executed above, shall be docketed by the Court as the amended pleading.

10

D. Del. LR 15.1. Local Rule 15.1 requires the inclusion of both a clean version and a redline version of the proposed amendment to ensure that the court is able to identify the precise scope of the proposed amendments when considering the merits of the motion to amend.[5]

The Rules provide an express, affirmative directive to the parties regarding the proper procedure for seeking leave to amend the pleadings. Altering a proposed amended pleading after the court has given its approval undercuts the objective of the Rules to permit amendment only after obtaining court approval. Olaplex's argument that "this Court's Orders do not set forth the allowed contents of the amended complaint or preclude clarification of the defined 'Accused Product' term in relation to the new infringement claim for the '954 Patent" ignores the obligation of the parties to adhere to the Federal Rules of Civil Procedure and the Local Rules of this court.

## V. CONCLUSION

For the foregoing reasons, I recommend that the court grant L'Oréal's motion to dismiss. (D.I. 302) The SAC for which leave to amend was granted on April 23, 2018[6] is the operative pleading. It shall be deemed filed and served as of the date the motion to amend was granted. L'Oreal shall file its responsive pleading on or before **December 28, 2018**.

Given that the court has relied upon material that technically remains under seal, the court is releasing this Report and Recommendation under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Report and Recommendation should be redacted, the parties should jointly submit a proposed redacted

---

[5] The motion to amend that was granted by the court is found at D.I. 126. The clean and redline versions of the proposed second amended complaint are attached to the motion at Exhibits 1-2.
[6] On April 23, 2018, the assigned District Judge adopted the court's February 28, 2018 Report and Recommendations regarding Olaplex's motion to amend. (D.I. 234)

11

version by no later than **December 28, 2018**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (internal quotation marks and citation omitted). The court will subsequently issue a publicly available version of its Report and Recommendation.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart,* 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: December 17, 2018

Sherry R. Fallon
United States Magistrate Judge