## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LIQWD, INC. and OLAPLEX LLC,   )
                               )
      Plaintiffs,         )
                               )
     v.                )     Civil Action No. 17-14-JFB-SRF
                               )
L'ORÉAL USA, INC., L'ORÉAL USA   )
PRODUCTS, INC., L'ORÉAL USA S/D,   )
INC., and REDKEN 5TH AVENUE NYC,   )
L.L.C.,                          )
                               )
      Defendants.       )

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

Presently before the court in this patent infringement action is the motion to dismiss the counterclaims of defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc., and Redken 5th Avenue NYC, LLC (collectively, "L'Oréal") pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure, filed by plaintiffs Liqwd, Inc. and Olaplex LLC (together, "Olaplex").[1]  (D.I. 665)  For the following reasons, I recommend that the court grant-in-part Olaplex's motion to dismiss.

### II.    BACKGROUND

#### A. Patents

##### 1.   The '419 patent

On November 22, 2016, the United States Patent and Trademark Office (the "USPTO") issued United States Patent No. 9,498,419 ("the '419 patent"), entitled "Keratin Treatment

---

[1] The briefing associated with the pending motion to dismiss can be found at D.I. 666, D.I. 679, and D.I. 728.

Formulations and Methods." The '419 patent was filed on March 31, 2016 on a fast track, and claims priority to United States Provisional Application No. 61/994,709, which was filed on May 16, 2014. The '419 patent is a continuation of parent Application No. 14/713,885, which was filed on May 15, 2015, published on November 19, 2015, and issued as U.S. Patent No. 9,326,926 on May 3, 2016. The '419 patent lists as inventors Eric D. Pressly and Craig J. Hawker ("the inventors"), and identifies Liqwd, Inc. as the assignee. The '419 patent describes "[f]ormulations, kits, and methods for rebuilding the disulfide bonds in keratin" to be applied in conjunction with a hair coloring treatment. ('419 patent, Abstract)

While the '419 patent was pending before the United States Patent and Trademark Office ("USPTO") as Application No. 15/087,415, the USPTO received a series of anonymous submissions on August 25, 2016, August 29, 2016, September 14, 2016, and September 23, 2016 alleging that the pending claims were not allowable. (D.I. 636 at ¶ 83) Olaplex alleges that L'Oréal made one or more of the third-party submissions to the USPTO to prevent the issuance of the '419 patent. (*Id.* at ¶ 84) The third-party submissions were rejected, and the '419 patent was issued on November 22, 2016. (*Id.* at ¶ 85)

On January 13, 2017, L'Oréal filed a petition for post-grant review ("PGR") challenging the patentability of all asserted claims of the '419 patent. (D.I. 354 at 4) The Patent Trial and Appeal Board ("PTAB") instituted review of the challenged claims of the '419 patent on July 19, 2017. (*Id.* at 4-5) On June 27, 2018, the PTAB issued a final written decision finding all asserted claims of the '419 patent unpatentable. (D.I. 339, Ex. A) Olaplex appealed the final written decision to the Federal Circuit. (D.I. 373) The appeal remains pending.

2

### 2. The '954 patent

United States Patent No. 9,668,954 ("the '954 patent") (together with the '419 patent, the "patents-in-suit") was filed on January 25, 2017 and issued on June 6, 2017. The '954 patent is a continuation of United States Patent Application No. 15/290,593, which is a continuation of the '419 patent. The '954 patent has the same title, inventors, and specification as the '419 patent. The active agent element of claim 1 of the '954 patent requires application of a bleaching mixture containing an active agent of maleic acid to the hair. ('954 patent, col. 25:58-67)

In late January and early February 2018, L'Oréal filed three PGR petitions challenging the patentability of all claims of the '954 patent. (D.I. 354 at 5) On August 10, 2018, the PTAB instituted PGR proceedings on one of the petitions, and denied institution on the remaining two PGR petitions. (D.I. 366, Exs. A-C) A final written decision on the instituted petition regarding the '954 patent is anticipated in August 2019. (D.I. 385 at 6-13)

### 3. The '518 patent[2]

Liqwd, Inc. is the owner by assignment of United States Patent No. 9,095,518 ("the '518 patent"). (D.I. 650 at ¶ 214) In October 2016, Liqwd, Inc. assigned exclusive license rights to the '518 patent to Olaplex LLC to facilitate joint enforcement of the patent rights. (*Id.* at ¶ 215) Olaplex markets and sells three products, including Bond Multiplier No. 1, Bond Perfector No. 2, and Bond Perfector No. 3 (collectively, "the Olaplex products"), which include the active ingredient bis-aminopropyl diglycol dimaleate, and which are marked as patented under the '518 patent. (*Id.* at ¶¶ 216-17)

The claims of the '518 patent require "applying to the hair a formulation comprising a binding agent of formula I

---

[2] The '518 patent is not among the patents-in-suit.

(I)

$$(A)_p \overset{\displaystyle (D)_s}{\underset{\displaystyle (B)_q}{\rule{0pt}{0pt}|\!\!\!\!-(R)_n-\!\!\!|}}(C)_r$$

wherein A, B, C, and D are reactive moieties . . . wherein each of A, B, C, and D independently contains a moiety selected from the group consisting of . . . a maleate group . . . R is a linker that contains two or more charges, wherein the charges are opposite to the charges on the reactive moieties . . . wherein the reactive moieties are ionically bound to the linker." (D.I. 650 at ¶ 221; Ex. B, col. 35:66-36:24) According to L'Oréal, the Olaplex products do not fall within the scope of the '518 patent despite their markings. (*Id.* at ¶¶ 239-40) In support of its assertion, L'Oréal references Olaplex's representations that Olaplex's products do not include ionically bound reactive moieties. These representations were made in litigation in the United Kingdom (the "U.K. Litigation") involving a corresponding U.K. patent related to the patents-in-suit (*Id.* at ¶¶ 227-40)

## B. Parties

Olaplex LLC is a California start-up that discovered, developed, and sells the Olaplex products, which purportedly protect hair during and after bleaching treatments. (D.I. 636 at ¶¶ 2, 31) Olaplex LLC is the exclusive licensee of the patents-in-suit pursuant to a May 20, 2014 licensing agreement. (*Id.* at ¶ 26; D.I. 68, Ex. A at 57:4-58:11 and Ex. 13) Olaplex LLC formally launched in June 2014 via its website. (D.I. 636 at ¶ 32) Liqwd, Inc. is a California company which is the alleged owner of the patents-in-suit. (*Id.* at ¶¶ 6, 26)

L'Oréal USA Products, Inc., L'Oréal USA S.D., Inc., and Redken 5th Avenue NYC L.L.C. are subsidiaries of co-defendant L'Oréal USA, Inc. (D.I. 636 at ¶¶ 8-11) L'Oréal develops and manufactures hair care, skin care, cosmetics, and fragrances distributed through

nearly thirty brands. (D.I. 650 at ¶ 26)  Three lines of L'Oréal's products, each of which
comprises three products, are accused of infringement by Olaplex in the present case: Matrix
Bond Ultim8, Redken pH-Bonder, and L'Oréal Professionnel Smartbond products (collectively,
the "Accused Products").  (D.I. 636 at ¶¶ 60-61)

## C. Facts[3]

In June 2014, Olaplex launched its three products that were intended to protect hair
during and after chemical treatments. (D.I. 650 at ¶¶ 2, 30)  Prior to launching the Olaplex
products, Olaplex's co-founder, Dean Christal, implemented a social media campaign to market
the products, emphasizing their ability to "rebuild broken disulfide bonds." (*Id.* at ¶¶ 3, 36)  Mr.
Christal allegedly offered to pay industry insiders to make claims about the Olaplex products
while concealing their affiliation with Olaplex. (*Id.* at ¶¶ 3, 37)  Olaplex allegedly created fake
"burner" social media accounts to promote the scientific effectiveness of its products and attack
the products of its competitors. (*Id.* at ¶¶ 3-4)  Olaplex also allegedly threatened competitors
with infringement lawsuits and pressured its distributors to carry the Olaplex products
exclusively. (*Id.* at ¶ 4)

Following the launch of the Olaplex products, L'Oréal reviewed the Material Safety Data
Sheets ("MSDS") for Olaplex No. 1 and Olaplex No. 2, which identified Bis-(Maleimidoethoxy)
Ethane as a primary active ingredient in the products. (*Id.* at ¶ 32)  L'Oréal performed a
chemical analysis of the Olaplex products and determined that Bis-(Maleimidoethoxy) Ethane
could not be detected in the Olaplex products. (*Id.*)  In August 2014, L'Oréal contemplated the
use of maleic acid in its own products based on its previous independent work on hair treatment

---

[3] For purposes of the pending motion to dismiss, the court accepts as true the facts in L'Oréal's
answer and amended counterclaims in accordance with the Rule 12(b)(6) standard.

5

formulations. (*Id.* at ¶ 33) L'Oréal tested the Olaplex products for the presence of maleic acid,
which revealed the presence of a maleic acid solution in Olaplex No. 1 and Olaplex No. 2,
despite the fact that maleic acid was not listed as an ingredient in the Olaplex products. (*Id.*)

In January 2015, Mr. Christal was contacted by a L'Oréal executive regarding a potential
acquisition of Olaplex. (D.I. 636 at ¶ 40; D.I. 650 at ¶ 5) In an April 2015 meeting, Mr. Christal
indicated that he was interested in selling Olaplex for $1 billion. (D.I. 650 at ¶¶ 7, 82) On May
18, 2015, Olaplex LLC and L'Oréal USA entered into a nondisclosure agreement (the "First
NDA") to govern the parties' acquisition discussions. (*Id.* at ¶¶ 9, 84-85, 176-92; Ex. A) On
May 19, 2015, Olaplex and L'Oréal held another meeting in which Mr. Christal allegedly
withheld the financial information required by L'Oréal to make an offer of acquisition. (*Id.* at ¶¶
10, 86) On May 23, 2015, L'Oréal USA entered into a nondisclosure agreement with Liqwd,
Inc. (the "Second NDA;" together with the First NDA, the "NDAs"), which mirrored the terms
of the First NDA. (*Id.* at ¶¶ 195-211, D.I. 636, Ex. C) The parties subsequently met on
September 1, 2015, and a representative of L'Oréal informed Mr. Christal that L'Oréal was no
longer interested in the acquisition. (D.I. 650 at ¶¶ 11, 94) Following the cessation of
negotiations, L'Oréal continued the work it began in 2013 to develop the Accused Products. (*Id.*
at ¶¶ 12, 27)

## D. Procedural History

On November 22, 2016, Olaplex publicly filed a complaint against L'Oréal for
infringement of the '419 patent and false advertising in the Central District of California (the
"California Action"). (D.I. 650 at ¶ 11; D.I. 636 at ¶ 86; C.D. Cal. C.A. No. 16-8708-R-AFM,
D.I. 1) L'Oréal alleges that the complaint disclosed information regarding L'Oréal USA's
potential acquisition, which was subject to the confidentiality provisions of the NDAs. (*Id.* at ¶

6

111) Olaplex publicized the filing of the lawsuit by sending the complaint to media outlets,

revealing L'Oréal's confidential information therein. *(Id.* at ¶¶ 112-113)

Olaplex filed the present action on January 5, 2017 against L'Oréal after dismissing the

California Action. (D.I. 2) On January 31, 2019, Olaplex filed its third amended complaint.

(D.I. 636) L'Oréal filed its answer and amended counterclaims to the third amended complaint

on February 8, 2019. (D.I. 650) Olaplex filed the instant motion to dismiss seven of L'Oréal's

eleven counterclaims on February 22, 2019. (D.I. 665)

## III.    LEGAL STANDARD

"[C]ourts use the same standard in ruling on a motion to dismiss a counterclaim under

Rule 12(b)(6) as they do in assessing a claim in a complaint." *Identix Pharms., Inc. v. Gilead*

*Sciences, Inc.*, C.A. No. 13-1987-LPS-CJB, 2014 WL 4222902, at *5 (D. Del. Aug. 25, 2014)

(citing *Tyco Fire Prods. LP v. Victaulic Co.*, 777 F. Supp. 2d 893, 898-99 (E.D. Pa. 2011)). Rule

12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which

relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to

dismiss, the court must accept as true all factual allegations in the complaint and view them in

the light most favorable to the plaintiff. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir.

2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint

must contain a "short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the

complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that

is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft*

*v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations

7

allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

A heightened pleading standard applies to allegations of fraud under Rule 9: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Nonetheless, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* Rule 9(b) requires a plaintiff to plead "all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (internal quotation marks omitted). If the pleading is sufficient "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior," then specific date, place, and time allegations are not required to satisfy Rule 9(b). *Seville Indus. Mack Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984); *Van Roy v. Sakhr Software Co.*, C.A. No. 11-00863 (LPS), 2014 WL 3367275, at *3 (D. Del. July 8, 2014). The purpose of Rule 9(b) is to provide defendants with notice of the precise

8

nature of the claim against them, not to test the factual allegations of the claim. *See Seville*, 742
F.2d at 791.

## IV. ANALYSIS

### A. Lanham Act (Count I)[4]

The Lanham Act establishes civil liability for "[a]ny person who, on or in connection

with any goods or service . . . uses in commerce any . . . false or misleading description of fact,

or false or misleading representation of fact which . . . is likely to cause confusion." 15 U.S.C.

§ 1125(a)(1)(A). To plead a false advertising claim under the Lanham Act, the counterclaimant

must allege: "(1) the [counterclaim] defendant made false or misleading statements as to its own

product or another's; (2) the statements actually deceive or at least [have] a tendency to deceive a

substantial portion of the intended audience; (3) the deception is material in that it is likely to

influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5)

there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc."

*Incarcerated Entm't, LLC v. CNBC LLC*, 331 F. Supp. 3d 352, 362 (D. Del. 2018) (internal

quotation marks and citations omitted). "Only statements of fact capable of being proven false

---

[4] As a preliminary matter, the parties dispute whether the notice pleading standard of Rule 8, the
heightened pleading standard of Rule 9, or an "intermediate" standard blending the Rule 8 and
Rule 9 standards should apply to causes of action under the Lanham Act. (D.I. 666 at 2 n.2; D.I.
679 at 7-8) A split of authority exists among the courts on this issue. *Compare Gensler v.
Strabala*, 764 F.3d 735, 737 (7th Cir. 2014) (applying Rule 9(b) to Lanham Act claims), *with
N.J. Physicians United Reciprocal Exch. v. Boynton & Boynton, Inc.*, 141 F. Supp. 3d 298, 307-
08 (D.N.J. 2015) (applying an intermediate approach to Lanham Act claims), *and Synopsys, Inc.
v. Magma Design Automation*, C.A. No. 05-701-GMS, 2006 WL 1452803, at *2-3 (D. Del. May
25, 2006) (applying Rule 8 to Lanham Act claim). Consistent with other courts within the Third
Circuit, the undersigned judicial officer adopts the intermediate standard of review. The
intermediate pleading requirement is sufficient to address the fraudulent element of a Lanham
Act counterclaim and ensure that Olaplex is on notice of "the nature of the alleged falsehoods to
allow [it] to make a proper defense." *Trans USA Prods., Inc. v. Howard Berger Co., Inc.*, 2008
WL 852324, at *5 (D.N.J. Mar. 28, 2008).

are actionable under the Lanham Act because, when personal opinions on nonverifiable matters

are given, the recipient is likely to assume only that the communicator believes the statements,

not that the statement is true." *Parker v. Learn Skills Corp.*, 530 F. Supp. 2d 661, 679 (D. Del.

2008) (citations omitted). "[M]isdescriptions or false representations of specific characteristics

of a product, which are actionable under the Lanham Act, are distinguished from puffery, which

is not actionable." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 632 F. Supp. 2d 362, 366 (D. Del.

2009) (citing *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993)).

L'Oréal's counterclaim under the Lanham Act is based on eleven allegedly false and

deceptive statements by Olaplex:

(i) L'Oréal USA "knocked off" the Olaplex products and tried to replicate Olaplex's technology, when in fact, L'Oréal USA independently developed its own products;

(ii) That Craig Hawker invented Olaplex in one night and handed it to Dean Christal after Christal told him what he wanted, when Counterclaim Defendants' witnesses admitted this did not happen;

(iii) The Olaplex products will "never break a client's hair again" when Christal admitted that this claim could not be made since the Olaplex products cannot prevent hair breakage;

(iv) The Olaplex No. 1 product "rebuilds broken disulfide bonds and begins the process of preventing damage and repairing hair" when the evidence shows that the product does not perform this function;

(v) The Olaplex No. 2 product "continues to rebuild and restore any remaining broken bonds ensuring the strongest, shiniest, and healthiest hair possible" when the evidence shows that the product does not perform this function;

(vi) That maleic acid was "a component of [Counterclaim Defendants'] unique chemistry" when the chemistry in the Olaplex products is not;

(vii) The L'Oréal USA products do not perform as well as the Olaplex products when in fact, the L'Oréal USA products perform superior to Olaplex;

(viii) Stylists should be "careful" using any products other than the "Olaplex technology" because they may not protect the hair like Olaplex chemistry does;

10

(ix) Olaplex repairs and multiplies the disulfide bonds of the hair, when in fact,
the evidence shows that the products do not perform these functions;

(x) Olaplex links and multiplies the bonds of the hair . . . Olaplex is reconstructive
surgery, the other [L'Oréal USA] a band aid at best, when the evidence shows that
the Olaplex products do not perform in this manner; and

(xi) Olaplex's "purpose is to serve [the public] with honesty and full
transparency" when Olaplex has made affirmative misrepresentations regarding
its products, competitors' product and its affiliations to posts made by Olaplex
LLC employees and where Counterclaim Defendants insisted on concealing from
the public that they paid celebrities and industry insiders to promote their
products.

(D.I. 650 at ¶ 130) According to Olaplex, the first, fourth, seventh, eighth, ninth, tenth, and

eleventh purported misstatements are not actionable misrepresentations under the Lanham Act.

(D.I. 666 at 2-5) Moreover, Olaplex contends that the second, third, fourth, fifth, sixth, and ninth

alleged misrepresentations were made outside the applicable three-year statute of limitations

period. (*Id.* at 3 n.5)

### 1. Alleged misrepresentation (i)

With respect to the first alleged misrepresentation, Olaplex contends that a statement that

L'Oréal's products are "knock offs" is not actionable because there is no dispute that L'Oréal's

products launched after Olaplex's products, and the colloquial term "knock off" does not

constitute a measurable claim of fact capable of being proved false. (D.I. 666 at 2-3) In

response, L'Oréal contends that statements that L'Oréal "knocked off" Olaplex's products were

made by people holding themselves out as knowledgeable about the matter to encourage

consumers to purchase Olaplex's products over L'Oréal's products. (D.I. 679 at 6-7)

I recommend that the court deny Olaplex's motion to dismiss L'Oréal's Lanham Act

claim with respect to the first alleged misrepresentation. *See Luxpro Corp. v. Apple, Inc.*, 2011

WL 3566616, at *6 (N.D. Cal. Aug. 12, 2011) (denying motion to dismiss Lanham Act claim

11

based on representations that competitor's products were "cheap knockoffs" and "illegal copies."). "[S]tatements disparaging a competitor's product communicated to potential customers qualify as commercial advertising." *Eros Tours & Travel, Inc. v. Infinitywaves, LLC*, 2014 WL 12591919, at \*8 (C.D. Cal. Dec. 9, 2014). In *Eros Tours & Travel*, the Northern District of California held that an allegation regarding the dissemination of letters characterizing the defendant's website as a "complete knockoff," for the purpose of influencing customers not to buy the defendant's products and services, was sufficient to state a claim for false advertising under the Lanham Act. *Id.* at \*6. The court concluded that such statements "are straightforwardly factual assertions the veracity of which may be determined" by a review of the relevant evidence and an investigation of the circumstances surrounding the products' development. *Id.* The same reasoning extends to the present case.

## 2. Alleged misrepresentations (iv) & (ix)

Olaplex alleges that the fourth and ninth alleged misrepresentations, regarding the ability of the Olapex product to rebuild broken disulfide bonds, do not constitute false or misleading statements under the first prong of the Lanham Act because an unsubstantiated claim is not enough to be false or misleading. (D.I. 666 at 3-4) In response, L'Oréal alleges that it is false to say Olaplex's products have characteristics they do not possess, and to mischaracterize the performance and origin of L'Oréal's products. (D.I. 679 at 4)

I recommend that the court deny Olaplex's motion to dismiss L'Oréal's Lanham Act counterclaim with respect to the fourth and ninth alleged misrepresentations. These alleged misrepresentations, directed to the ability of the Olaplex products to rebuild broken disulfide bonds, satisfy the first prong of the Lanham Act inquiry at the pleadings stage because they are objectively verifiable. Viewing the allegations in the light most favorable to L'Oréal, as the

12

court must on a Rule 12(b)(6) motion to dismiss, the court concludes that the fourth and ninth

alleged misrepresentations satisfy the first prong under the Lanham Act because they are capable

of being proven false when the evidence is propounded. *See Robert Bosch LLC v. Pylon Mfg.*

*Corp.*, 632 F. Supp. 2d 362, 366 (D. Del. 2009). The Lanham Act does not require proof of

falsity at the pleadings stage.

The cases relied upon by Olaplex state that a claim must be false or misleading, and not

merely unsubstantiated. These cases are inapposite because they evaluated the sufficiency of the

proof of falsity proffered in support of the claims following the presentation of evidence. In

*Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d

125, 129 (3d Cir. 1994), the court evaluated the sufficiency of the Lanham Act claims after a

five-day evidentiary hearing on a motion for a preliminary injunction. In *Sandoz*

*Pharmaceuticals Corp. v. Richardson-Vicks, Inc.*, the Third Circuit likewise concluded that

consumer advertising claims were not literally false after considering evidence presented in

support of a motion for a preliminary injunction. 902 F.2d 222, 228-29 (3d Cir. 1990). At the

pleadings stage, however, L'Oréal is only required to plead facts alleging false or misleading

statements capable of being proven false when the evidence is subsequently propounded. *See*

*Robert Bosch LLC v. Pylon Mfg. Corp.*, 632 F. Supp. 2d 362, 366 (D. Del. 2009).

### 3. Alleged misrepresentations (vii), (viii) & (x)

The seventh, eighth, and tenth alleged misrepresentations address the performance of the

Accused Products as compared to the Olaplex products. (D.I. 650 at ¶ 130) Olaplex alleges that

these misrepresentations constitute puffery and "competitive superiority," as opposed to

actionable statements with quantifiable components under the Lanham Act. (D.I. 666 at 4-5) In

13

response, L'Oréal contends that the statements identified by Olaplex are not puffery, but rather a statement of opinion that fairly implies a factual basis. (D.I. 679 at 6)

I recommend that the court grant Olaplex's motion to dismiss L'Oréal's Lanham Act counterclaim with respect to alleged misrepresentations (vii), (viii), and (x). Statements suggesting that Olaplex's products are superior to the Accused Products are not verifiable statements of fact, but rather constitute personal opinions and nonactionable puffery. *See Robert Bosch*, 632 F. Supp. 2d at 367 (holding that phrases such as "new and improved" "are classic puffery."). The Lanham Act counterclaim does not identify any objective criteria for determining whether the Olaplex products are, in fact, superior to the Accused Products. Consequently, these alleged misstatements cannot form the basis of an actionable Lanham Act counterclaim. *See PhishMe, Inc. v. Wombat Sec. Techs., Inc.*, C.A. No. 16-403-LPS-CJB, 2017 WL 3821107, at *10 n.11 (recommending dismissal-in-part of the defendant's Lanham Act counterclaim to the extent that it was based on a particular alleged misrepresentation lacking sufficient factual support).

## 4. Alleged misrepresentation (xi)

Olaplex contends that L'Oréal's eleventh alleged misrepresentation, regarding Olaplex's purpose to serve the public with honesty and integrity, fails to identify who made the statement, and when and how it was made. (D.I. 666 at 5) L'Oréal does not separately address the sufficiency of the eleventh alleged misrepresentation in its responsive brief.

I recommend that the court grant Olaplex's motion to dismiss L'Oréal's Lanham Act counterclaim with respect to the eleventh alleged misrepresentation for lack of particularity. The pleading fails to identify who made the statement and the circumstances in which the statement was made. (D.I. 650 at ¶¶ 130, 154) These details are necessary to adequately inform Olaplex

14

of the allegations under the intermediate standard of review. *Cf. N.J. Physicians*, 141 F. Supp. 3d at 308 (finding Lanham Act allegations adequate under the intermediate standard of review where the pleading "provided a two-month date range, and provided a specific allegation as to the nature of the statement made and why that statement was false.").

Moreover, the counterclaim fails to establish that the statement constitutes advertising under the Lanham Act. *See Reybold Grp. of Cos., Inc. v. Does 1-20* , 323 F.R.D. 205, 210 (D. Del. 2017) (applying the "*Gordon & Breach* test," under which representations constitute advertising under the Lanham Act if they "consist of: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services; (4) that is disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry."). Olaplex's alleged statement that it intends to serve the public honestly and transparently does not "propos[e] a commercial transaction," as required to constitute commercial speech. *Accenture Glob. Servs. GmbH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 667 (D. Del. 2008) (quoting *United States v. Edge Broad. Co.*, 509 U.S. 418, 426 (1993)).

### 5. Alleged misrepresentations (i)-(xi) – Requisite particularity

According to Olaplex, L'Oréal fails to allege with particularity that any of the eleven alleged misstatements constitutes "advertising" under the Lanham Act because there are no allegations regarding their dissemination, reach, and audience. (D.I. 666 at 6; D.I. 728 at 5 n.5) In response, L'Oréal contends that its Lanham Act allegations identify the misleading and false statements made by Olaplex, the dates of those statements, the authors of those statements, and their content. (D.I. 679 at 8)

Apart from the court's recommendations at § IV.A.3-4, *supra*, L'Oréal's Lanham Act counterclaim otherwise sufficiently identifies the content of the misleading and false statements, the time frame within which those statements were made, and the authors of those statements. (D.I. 650 at ¶¶ 3, 100-02, 105-07, 109) For example, the pleading indicates that Olaplex advertised on its website the ability of its products to "link broken bonds in hair during and after chemical services" beginning in June 2014 when the products launched, and reiterated the ability of the Olaplex products to rebuild broken disulfide bonds as recently as November 2018. (*Id.* at ¶ 30) The pleading also alleges that Jeff Schwartz, Olaplex's Vice President of U.S. Sales and Distribution, described the Accused Products as "knock offs" in August 2016 posts on social media. (*Id.* at ¶ 106) In this regard, L'Oréal's Lanham Act counterclaim possesses the requisite level of specificity. *See N.J. Physicians United Reciprocal Exchange v. Boynton & Boynton, Inc.*, 141 F. Supp. 3d 298, 308 (D.N.J. 2015) (noting that the pleading exceeded the intermediate pleading standard where the allegations identified a two-month time period when the allegedly false or misleading statements were made, and described the nature of the false and misleading statements). Moreover, the Lanham Act counterclaim alleges the dissemination, reach, and audience of the advertising to establish dissemination to the relevant purchasing public. (D.I. 650 at ¶¶ 141-42)

## 6. Alleged misrepresentations (ii)-(vi) & (ix) – Statute of limitations

Olaplex further contends that the second, third, fourth, fifth, sixth, and ninth alleged misrepresentations were made outside the applicable three-year limitations period. (D.I. 666 at 3) Olaplex alleges that the three-year statute of limitations period for fraud claims under 10 *Del. C.* § 8106 should apply to L'Oréal's Lanham Act counterclaim. (*Id.* at 3 n.5)

16

In response, L'Oréal observes that there is no three-year statute of limitations in the Lanham Act, and the equitable principle of laches applies to the timeliness of a Lanham Act claim. (D.I. 679 at 9)  Regardless, L'Oréal notes that most of the statements underlying the claim were made within three years of L'Oréal's filing, rendering the timeliness challenge moot. (*Id.*)  Moreover, L'Oréal argues that Olaplex concealed its bad acts until late 2018, tolling the statute of limitations under the discovery rule. (*Id.* at 10)

A three-year limitations period applies to L'Oréal's Lanham Act counterclaim. The doctrine of laches consists of two elements: (1) "inexcusable delay in bringing suit," and (2) "prejudice to the defendant as a result of the delay." *Santana Prod., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 138 (3d Cir. 2005).  Whether a delay is "inexcusable" is determined by looking to "the most analogous" state statute of limitations. *Id.* at 135.  The most analogous statute of limitations to Lanham Act claims under Delaware law is the three-year statute of limitations for contract and related claims not involving personal injury under 10 *Del. C.* § 8106. *See Emerson Elec. Co. v. Emerson Quiet Kool Co. Ltd.*, C.A. No. 17-1846-LPS, 2019 WL 1397244, at *3 (D. Del. Mar. 28, 2019) (citing *Sanofi-Aventis v. Advancis Pharm. Corp.*, 453 F. Supp. 2d 834, 856 (D. Del. 2006); 10 *Del. C.* § 8106).  Consequently, if L'Oréal brought its Lanham Act counterclaim more than three years after the conduct underlying the counterclaim occurred, a "presumption of inexcusable delay and prejudice" applies. *Santana*, 401 F.3d at 138.

I recommend that the court dismiss L'Oréal's Lanham Act counterclaim as it pertains to the second and third alleged misrepresentations.  Pursuant to L'Oréal's amended counterclaim, the second and third alleged misrepresentations were made prior to January 11, 2016, resulting in a presumption of inexcusable delay and prejudice. *See Santana*, 401 F.3d at 138.  Specifically, the pleading alleges that the second and third alleged misrepresentations were made in June 2014

17

in conjunction with the launch of the Olaplex products. (D.I. 650 at ¶ 30) Thus, these statements were made more than three years prior to L'Oréal's assertion of its Lanham Act counterclaim. To the extent that L'Oréal's Lanham Act counterclaim is based on these alleged misrepresentations, the counterclaim is time-barred.

L'Oréal alleges the statute of limitations should be tolled under the discovery rule due to Olaplex's efforts to disguise its alleged misconduct. (D.I. 679 at 10) However, L'Oréal has not met its burden of pleading facts sufficient to establish that tolling applies in this instance. *See In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *6 (Del. Ch. July 17, 1998) ("party asserting that tolling applies [bears] the burden of pleading specific facts to demonstrate that the statute of limitations was, in fact, tolled."). In fact, the pleading indicates that Olaplex's second and third alleged misrepresentations were public statements made in connection with the launch of the Olaplex products. For example, paragraph 3 of L'Oréal's amended counterclaims describes Olaplex's "aggressive social media campaign to market the products" prior to launching the Olaplex products.[5] (D.I. 650 at ¶ 3) At paragraph 30, L'Oréal alleges that, "[w]hen the Olaplex products launched, Dean Christal represented to the media that Dr. Craig Hawker invented the Olaplex product in one night and that he handed it to Christal after he told Hawker what he wanted." (*Id.* at ¶ 30; *see also* ¶¶ 59, 64) L'Oréal does not explain how the discovery rule applies to toll the limitations period regarding public statements disseminated in the media.

L'Oréal's allegation that "Olaplex allegedly concealed its bad acts until late 2018" is supported by citations to its counterclaim for fraud by false promise, not its Lanham Act

---

[5] To the extent that the allegations in paragraph 3 of L'Oréal's pleading claim Olaplex created fake social media accounts and concealed the affiliation between industry insiders and Olaplex, this portion of the allegations is not actionable under the Lanham Act for the reasons set forth at § IV.A.7, *infra.*

counterclaim. (D.I. 679 at 10) (citing D.I. 650 at ¶¶ 171-72) It is telling that L'Oréal cited no portion of its Lanham Act counterclaim in support of its argument for application of the discovery rule to toll the limitations period. As explained in § IV.B, *infra*, L'Oréal's counterclaim for fraud by false promise is premised on the facts surrounding the parties' acquisition discussions, facts which are entirely unrelated to the Lanham Act counterclaim. Therefore, I recommend that the court dismiss L'Oréal's Lanham Act counterclaim to the extent that it is based on the second and third alleged misrepresentations, which are time-barred.

L'Oréal's counterclaim is not time-barred with respect to the fourth, fifth, sixth, and ninth alleged misrepresentations. The fourth, fifth, and ninth alleged misstatements in L'Oréal's Lanham Act counterclaim refer to claims made by Olaplex as recently as November 2018 regarding the ability to rebuild broken disulfide bonds. (D.I. 650 at ¶ 30) To the extent that the alleged misstatements are based on conduct in November 2018, the fourth, fifth, and ninth alleged misrepresentations in the Lanham Act counterclaim are not time-barred. With respect to the sixth alleged misrepresentation, the pleading indicates that Olaplex posted allegedly false statements on L'Oréal's social media websites in July 2016 claiming that Olaplex has a patent on maleic acid, and accusing L'Oréal of failing to come up with its own chemistry. (D.I. 650 at ¶¶ 101-02) Because the fourth, fifth, sixth, and ninth alleged misrepresentations were made within the applicable limitations period, L'Oréal's Lanham Act counterclaim is not time-barred to the extent that it is based on these alleged misrepresentations.

## 7. Duty to disclose / FTC Guidelines

Olaplex alleges that L'Oréal's Lanham Act counterclaim is based on the failure of Olaplex employees and affiliates to identify their affiliation with Olaplex when promoting the Olaplex products, which is not actionable under the Lanham Act. (D.I. 666 at 6-8) According to

19

Olaplex, L'Oréal does not allege the "fake" social media accounts or endorsers made any specific misrepresentations. (*Id.*) In response, L'Oréal contends that its Lanham Act counterclaim identifies affirmatively false and misleading statements. (D.I. 679 at 4)

I recommend that the court deny Olaplex's motion to dismiss L'Oréal's Lanham Act counterclaim due to the omissions contained therein. To state a claim under the Lanham Act, the claim must be based on an actionable affirmative statement, and "in and of itself an omission is insufficient." *FMC Corp. v. Summit Agro USA, LLC*, C.A. No. 14-51-LPS-CJB, 2014 WL 6627727, at *6 (D. Del. Nov. 14, 2014) (holding that alleged non-disclosure of identity and corporate affiliation is not actionable under the Lanham Act). L'Oréal's pleading identifies a number of instances in which individuals promoted the Olaplex products without disclosing their affiliation with or financial interest in Olaplex. (*See, e.g.*, D.I. 650 at ¶¶ 49, 51-53, 56, 65-69, 145, 148-49) While these omissions are not independently actionable under the Lanham Act, the pleading also affirmatively identifies allegedly false and misleading statements associated with the omissions. *See FMC*, 2014 WL 6627727, at *6 (observing that a "key omission of fact might contribute to a Section 43(a) claim's efficacy," so long as the plaintiff also "point[s] to an actionable affirmative statement in order to breathe life into such a claim."). For example, L'Oréal alleges that an Olaplex executive posted on Facebook that "Olaplex is the original bond builder, and we have a patent on the technology. pHbonder is just another knock-off product, trying to replicate the success of Olaplex – without owning the patented technology."[6] (D.I. 650

---

[6] The court further notes that, while the Olaplex executive did not affirmatively identify his association with Olaplex, the existence of a relationship may be inferred from the poster's use of first-person plural and his purported knowledge of Olaplex's patent ownership status. In this regard, the primary focus of the factual allegations set forth in the counterclaim appears to be on the allegedly false affirmative statements regarding copying and patent coverage, as opposed to omissions regarding the author's corporate affiliations with Olaplex.

20

at ¶ 109) L'Oréal's Lanham Act counterclaim should survive in this regard because the
accusations that the individuals failed to disclose their affiliation with Olaplex are intertwined
with allegations regarding the affirmative misstatements. *See FMC Corp.*, 2014 WL 6627727, at
*6.

The failure of Olaplex employees and affiliates to identify their affiliation with Olaplex
when promoting the Olaplex products does not form the only or primary basis for L'Oréal's
Lanham Act counterclaim. In this regard, the facts presently before the court are distinguishable
from the circumstances set forth in *FMC*, where the plaintiff "focused its assertion of
wrongdoing solely on Defendants' alleged 'deliberate decision to omit identification of China as
the country of origin' on the label of the Blanket 4F products." *Id.* at *13. The court's holding
was expressly based on "FMC's failure to sufficiently identify an allegedly false or misleading
*statement* in articulating the basis for its claim," rendering the Lanham Act claim "subject to
dismissal." *Id.* Because L'Oréal's Lanham Act counterclaim identifies allegedly false or
misleading statements in addition to the purported omissions, the facts before the court are
dissimilar from those presented in *FMC*, and wholesale dismissal of the Lanham Act
counterclaim on this basis is not warranted. *See PhishMe*, 2017 WL 3821107, at *10 n.11.

Olaplex also challenges L'Oréal's reliance on the FTC's Guides Concerning the Use of
Endorsements and Testimonials in Advertising (the "FTC Guidelines") in its Lanham Act
counterclaim, alleging that there is no private right of action under the Federal Trade
Commission Act (the "FTC Act"). (D.I. 666 at 7 n.10) In response, L'Oréal argues that its
Lanham Act claim is not premised on a violation of the FTC Guidelines, but rather refers to the
FTC Guidelines to show that the alleged conduct is the type of conduct already deemed
deceptive by the FTC. (D.I. 679 at 6 n.3)

To the extent that L'Oréal attempts to assert a cause of action under the FTC Act within its Lanham Act counterclaim, dismissal is warranted. (D.I. 650 at ¶¶ 133-35) "[I]t is well settled that there is no private right of action under the FTC Act." *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 639 (S.D.N.Y. 2018). However, dismissal of L'Oréal's Lanham Act counterclaim in its entirety is not warranted for the reasons previously discussed at § IV.A.1, 2, & 6, *supra*.

### 8. Causation of injury

Olaplex alleges that L'Oréal's Lanham Act counterclaim does not show economic or reputational harm flowing directly from Olaplex's alleged misrepresentations because L'Oréal's Accused Products did not enter the market until August 2016. (D.I. 666 at 8-9) To the extent that the amended counterclaims assert conduct occurring after August 2016, Olaplex contends that the counterclaim fails to allege causation with the requisite particularity because it offers only bare conclusions without factual predicates or explanations, and no quantification of which harms flowed directly from the alleged misstatements. (*Id.* at 9)

In response, L'Oréal contends that its Lanham Act counterclaim adequately alleges that Olaplex's false advertising proximately harmed L'Oréal's reputation. (D.I. 679 at 8) According to L'Oréal, Olaplex's false and misleading statements potentially reached millions of people and likely influenced their purchasing decisions, and L'Oréal has cited specific instances of consumers switching to Olaplex due to Olaplex's misrepresentations. (*Id.* at 9)

L'Oréal sufficiently pleads reputational harm and loss of sales stemming from Olaplex's advertising efforts leading up to the launch of L'Oréal's competing products in July 2016 and following the launch in August 2016. (D.I. 650 at ¶¶ 144-56) The pleading alleges that the purportedly false statements "influence[d] the purchasing decision of salons and stylists," and

"caus[ed] harm to L'Oréal USA both by direct diversion of potential L'Oréal USA sales and by lessening of goodwill associated with L'Oréal USA's products." (*Id.* at ¶¶ 144, 155) The Supreme Court has recognized that such statements disparaging the business and products of a competitor are sufficient to state an injury under the Rule 12 standard on a Lanham Act claim:

> When a defendant harms a plaintiff's reputation by casting aspersions on its business, the plaintiff's injury flows directly from the audience's belief in the disparaging statements. Courts have therefore afforded relief under § 1125(a) not only where a defendant denigrates a plaintiff's product by name . . . but also where the defendant damages the product's reputation by, for example, equating it with an inferior product.

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 138, 140 (2014) (internal citations omitted).

In the pleading, L'Oréal describes Olaplex's social media posts on L'Oréal's Instagram account falsely claiming that "the Olaplex products were covered by patents while the L'Oréal USA products were not, thereby tainting the market just before the L'Oréal USA products launched." (D.I. 650 at ¶ 103; *see also* ¶¶ 101-08) L'Oréal specifically alleges that in November 2016, an Olaplex executive's affirmative misrepresentation that L'Oréal's products "were just knock-offs" led a stylist to choose the Olaplex products over L'Oréal's products. (*Id.* at ¶ 110) Although Olaplex argues that this allegation is insufficient because it does not identify a specific stylist, the forum of the communication, or any proof of purchase, (D.I. 728 at 6 n.8), that level of specificity is not required at the pleadings stage under the relevant case authorities, *see, e.g.*, *Incarcerated Entm't, LLC v. Warner Bros. Pictures*, 261 F. Supp. 3d 1220, 1233 (M.D. Fla. 2017) (finding allegations that the false advertising caused a loss of goodwill and loss of sales were sufficient, noting there was "no authority to support [the] contention that Plaintiff must allege in 'detail' how its goodwill was damaged or how its sales declined."); *Advanced Fluid Sys., Inc. v. Huber*, 28 F. Supp. 3d 306, 336 (M.D. Pa. 2014) (concluding that the pleading

23

"permit[ted] an inference that some or all of the missed business opportunities . . . resulted from
the false advertisements").

As to allegations based on allegedly false advertising by Olaplex prior to July 2016, I
recommend that the court dismiss L'Oréal's Lanham Act counterclaim for lack of a sufficient
nexus between the alleged misrepresentations and the resultant injury to L'Oréal. L'Oréal has
failed to establish that its loss of sales and goodwill constitutes "economic or reputational injury
flowing directly from the deception wrought by the defendant's advertising," when the allegedly
false statements were made months or years prior to the launch of L'Oréal's products. *Lexmark*,
572 U.S. at 133.

## B. Fraud by False Promise (Count II)

A claim of common law fraud requires a showing that:

(1) the defendant falsely represented or omitted facts that the defendant had a duty
to disclose; (2) the defendant knew or believed that the representation was false or
made the representation with a reckless indifference to the truth; (3) the defendant
intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted
in justifiable reliance on the representation; and (5) the plaintiff was injured by its
reliance.

*DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 958 (Del. 2005); *see also OpenGate Capital*

*Grp. LLC v. Thermo Fisher Sci. Inc.*, C.A. No. 13-1475-GMS, 2014 WL 3367675, at *11-12 (D.

Del. July 8, 2014). The representation may be an overt misrepresentation, a deliberate

concealment of material facts, or silence in the face of a duty to speak. *Stephenson v. Capano*

*Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983).

In support of the motion to dismiss, Olaplex alleges that the fraud counterclaim should be
dismissed as a matter of law because the factual allegations in support of the counterclaim are
superseded by the parties' NDAs, which did not require Olaplex to provide L'Oréal with its
financial information. (D.I. 666 at 10) Olaplex contends that the anti-reliance clause at

24

paragraph 3 of the NDAs precludes reliance on the completeness of the information exchanged or omissions in that information. (*Id.* at 10-11) Moreover, Olaplex argues that Mr. Christal's oral promise to furnish financial information prior to the execution of the NDAs was superseded by the merger and non-modification clause at paragraph 9 of the NDAs. (*Id.* at 11)

In response, L'Oréal contends that the counterclaim sufficiently sets forth a cause of action for fraud by false promise by alleging that Mr. Christal falsely represented he was interested in selling Olaplex to L'Oréal, and he promised he would provide financial information to support his $1 billion demand. (D.I. 679 at 11) Based on Olaplex's allegedly false representations, L'Oréal contends that it executed the NDAs and undertook a costly and comprehensive pre-due diligence process. (*Id.* at 11-12)

I recommend that the court deny Olaplex's motion to dismiss L'Oréal's second counterclaim for fraud by false promise. Count II alleges that Mr. Christal promised to provide L'Oréal with Olaplex's financial information to support his $1 billion evaluation during an April 2015 acquisition meeting. (D.I. 650 at ¶ 165) The counterclaim further satisfies the remaining elements of the cause of action by pleading that Olaplex never intended to disclose its financial information, Olaplex intended to induce L'Oréal to enter into protracted acquisition discussions in justifiable reliance on Olaplex's representations, and L'Oréal was injured by expending resources on "lengthy and time consuming business plans." (*Id.* at ¶¶ 166-73)

Contrary to Olaplex's contentions, the merger and non-modification clause at paragraph 9 of the NDAs does not supersede Mr. Christal's oral promise to furnish financial information. In *Underwood v. Benefit Express Servs., LLC*, the court observed that such "integration clauses may not preclude a plaintiff's reasonable reliance on a fraudulent misrepresentation." C.A. No. 18-347-RGA-MPT, 2018 WL 6819003 (D. Del. Dec. 28, 2018). The reasonableness of L'Oréal's

reliance on Mr. Christal's oral promise in the present instance "is a question of fact that is
'generally not suitable for resolution on a motion to dismiss.'" *Id.* at 4 (quoting *TrueBlue, Inc. v.
Leeds Equity Partners, IV, LP*, 2015 WL 5968726, at *7, 9 (Del. Super. Ct. Sept. 25, 2015)).
Therefore, I recommend that the court deny Olaplex's motion to dismiss Count II.

## C. Breach of Contract (Counts III and IV)

"[T]o survive a motion to dismiss for failure to state a breach of contract [counter]claim,
[a counterclaim] plaintiff must demonstrate: first, the existence of a contract, whether express or
implied; second, the breach of an obligation imposed by that contract; and third, the resultant
damage to the [counterclaim] plaintiff." *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d
606, 612 (Del. 2003) (internal citations omitted). The parties do not dispute that Counts III and
IV contain adequate allegations of breach. (D.I. 650 at ¶¶ 186-87, 205, 207) Moreover, the
parties do not dispute that Counts III and IV contain adequate allegations of causation and injury.
(D.I. 650 at ¶¶ 191, 193, 210, 212)

In support of its motion to dismiss, Olaplex first alleges that L'Oréal lacks standing to sue
for breach of the NDAs because the NDAs protect only against the disclosure of Olaplex's
commercially sensitive information, but they do not extend the same protection to L'Oréal. (D.I.
666 at 12) In response, L'Oréal alleges that it has standing to sue as a party to both the First and
Second NDAs, which contain mutual obligations to treat the Discussion Information[7] as
confidential, and Olaplex understood it had to obtain L'Oréal's written approval before
disclosing this confidential information. (D.I. 679 at 13-14)

---

[7] The NDA defines "Discussion Information" to include "the fact that the Confidential
Information has been made available to us, that discussions or negotiations are taking place or
have taken place concerning a possible Transaction involving us and the Company or any of the
terms, conditions or other facts with respect to any such possible Transaction, including the
status thereof and the identities of the parties thereto." (D.I. 650, Ex. A at ¶ 2)

26

I recommend that the court deny Olaplex's motion to dismiss L'Oréal's counterclaims for breach of the NDAs. The record before the court establishes that L'Oréal has standing to assert its counterclaims for breach of contract. (D.I. 650 at ¶¶ 177, 182, 196, 201) The obligations in the NDAs are not limited to maintaining the confidentiality of Olaplex's financial information. The "Discussion Information" section of the NDAs provides that "[e]ach party agrees that, without the prior written consent of the other party, it will not disclose to any person . . . that discussions or negotiations are taking place or have taken place concerning a possible Transaction involving us and the Company or any of the terms, conditions, or other facts with respect to any such possible Transaction. . . ." (D.I. 636, Ex. C at ¶ 2; D.I. 650, Ex. A at ¶ 2) This provision establishes that the parties' confidentiality obligations extend to the mutual obligation to preserve the confidentiality of the acquisition discussions, which forms the basis of the counterclaims at Counts III and IV. (D.I. 650 at ¶¶ 176-77, 181-84, 195-96, 200-03) Consequently, L'Oréal has standing to sue for breach of the NDAs. *See Rottlund Homes of N.J., Inc. v. Saul, Ewing, Remick & Saul, L.L.P.*, 243 F. Supp. 2d 145, 153 (D. Del. 2003) ("As a general matter, only a party to a contract has standing to enforce a contract and sue for breach of that contract.").

Olaplex also contends that L'Oréal's breach of contract counterclaims violate the *Noerr-Pennington* doctrine to the extent that they accuse Olaplex of breaching the NDA by filing, publicizing, and participating in the instant litigation. (D.I. 666 at 12-13) In response, L'Oréal contends that the *Noerr-Pennington* doctrine does not apply because the breach of contract counterclaims are based upon Olaplex's unauthorized disclosure of confidential information, not the filing of the lawsuit. (D.I. 679 at 15) Furthermore, L'Oréal alleges that the *Noerr-*

27

*Pennington* doctrine does not immunize a party from causes of action for breach of contract. (*Id.*)

The *Noerr-Pennington* doctrine shields parties from liability for engaging in litigation: "*Noerr-Pennington* provides broad immunity from liability to those who petition the government, including administrative agencies and courts, for redress of their grievances." *Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162, 178 (3d Cir. 2015) (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)). Immunity under the *Noerr-Pennington* doctrine extends to business torts due to the doctrine's foundation on a First Amendment right of petition. *IGT v. Bally Gaming Int'l Inc.*, C.A. No. 06-282-SLR, 2010 WL 1727388, at *2 (D. Del. Apr. 28, 2010) (citing *Cal. Motor Transp.*, 404 U.S. at 510; *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128-29 (3d Cir. 1999)); *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 343 F. Supp. 2d 272, 324 (D. Del. 2004). However, the weight of authority suggests that the application of the *Noerr-Pennington* doctrine does not extend to claims sounding in contract. *See Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1047 (9th Cir. 2015) (holding that the *Noerr-Pennington* doctrine "does not . . . immunize a party from actions that amount to a breach of contract.");[8] *Spear Pharms., Inc. v. William Blair & Co.,* LLC,

---

[8] In *Microsoft Corp. v. Motorola, Inc.*, the Ninth Circuit explained its reasoning for declining to extend *Noerr-Pennington* immunity to breach of contract claims as follows:

> "Because the *Noerr-Pennington* doctrine grows out of the Petition Clause, its reach extends only so far as necessary to steer . . . clear of violating the First Amendment." *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005). Enforcing a contractual commitment to refrain from litigation does not violate the First Amendment; if it did, every settlement of a lawsuit would be unenforceable as a *Noerr-Pennington* violation.

*Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1048 (9th Cir. 2015).

610 F. Supp. 2d 278, 288 (D. Del. 2009) (denying a motion to dismiss a claim for breach of a

confidentiality agreement based on the *Noerr-Pennington* doctrine).[9] Consequently, I

recommend that the court decline to extend the *Noerr-Pennington* doctrine to L'Oréal's

counterclaims for breach of contract in the present matter.

Moreover, L'Oréal's breach of contract counterclaims are not premised on the filing of

the litigation. The counterclaim paragraphs cited by Olaplex specify that it was the complaint's

public filing in the California Action, and not the initiation of the California Action itself, which

resulted in the alleged breach of the NDAs. (D.I. 650 at ¶¶ 186, 205) Had the complaint in the

California Action been filed under seal, there is no suggestion that L'Oréal would have included

the filing of the complaint in the California Action as a basis for its breach of contract

counterclaims. (*Id.* at ¶¶ 188, 206) ("As demonstrated by the sealed Complaint filed by

Counterclaim Defendant . . . in this case in January 2017 . . . Counterclaim Defendant . . . could

have filed the California Complaint under seal, and thus protected L'Oréal USA's confidential

Discussion Information.").

---

[9] A number of other District Courts have similarly declined to extend the *Noerr-Pennington* doctrine to breach of contract claims. *See Powertech Tech., Inc. v. Tessera, Inc.*, 872 F. Supp. 2d 924, 931 (N.D. Cal. 2012) (concluding that the defendant "provides no compelling authority that the doctrine immunizes against breach of contract claims."); *Apple, Inc. v. Motorola Mobility, Inc.*, 886 F. Supp. 2d 1061, 1078 (W.D. Wis. 2012) ("Motorola has cited no authority for the proposition that the *Noerr-Pennington* doctrine should apply to Apple's breach of contract claims . . . and I conclude that applying immunity to Motorola from Apple's breach of contract claims is not appropriate."); *In re Innovatio IP Ventures, LLC Patent Litig.*, 921 F. Supp. 2d 903, 922 n.17 (N.D. Ill. 2013) ("Innovatio does not contend that *Noerr-Pennington* provides immunity from the MAC's breach of contract and promissory estoppel claims, thus conceding that it is not applicable."); *see also LightSquared Inc. v. Deere & Co.*, 2014 WL 345270, at \*4 (S.D.N.Y. Jan. 31, 2014) (granting mandatory withdrawal of the reference regarding an adversary proceeding because determining whether the *Noerr-Pennington* doctrine should extend to claims for breach of contract "would require the Bankruptcy Court to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes.").

Having concluded that: (1) L'Oréal has standing to bring its breach of contract counterclaims, and (2) the *Noerr-Pennington* doctrine does not apply to L'Oréal's breach of contract counterclaims, I recommend that the court deny Olaplex's motion to dismiss Counts III and IV of L'Oréal's counterclaims for breach of contract.

## D. False Marking (Count V)

Section 292 of the Patent Act prohibits marking an article with "the words 'patent applied for,' 'patent pending,' or any word importing that an application for patent has been made, when no application for patent has been made, or if made, is not pending, for the purpose of deceiving the public." 35 U.S.C. § 292(a). False marking claims brought under 35 U.S.C. § 292 are held to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1309 (Fed. Cir. 2011). To establish a claim for false marking, the claimant must demonstrate two elements: (1) that the defendant marked an unpatented article; and (2) that the defendant intended to deceive the public. *Brinkmeier v. Graco Children's Prods. Inc.*, 767 F. Supp. 2d 488, 494 (D. Del. 2011). Under the America Invents Act ("AIA"), the claimant must also show that "it suffered a competitive injury as a result of the false marking." *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1373 (Fed. Cir. 2013); *see* 35 U.S.C. § 292(b). A "competitive injury" may include the loss of sales or a competitive disadvantage caused by the defendant's unfair competition. *Gravelle v. Kaba Ilco Corp.*, 684 F. App'x 974, 978 (Fed. Cir. 2017) (citing *Sukumar v. Nautilus, Inc.*, 785 F.3d 1396, 1400 (Fed. Cir. 2015)).

### 1. Method claims

In support of the motion to dismiss L'Oréal's false marking counterclaim, Olaplex contends that patent marking is not required for method claims and, because there is no duty to

30

mark articles with the '518 patent, Olaplex cannot have violated the false marking statute. (D.I. 666 at 13) According to L'Oréal, the false marking statute may be violated when a defendant falsely marks products with a method patent. (D.I. 679 at 17)

The '518 patent contains only method claims, and "it is . . . settled in the case law that the notice requirement of [§ 287(a)] does not apply when the patent is directed to a process or method." *Bandag, Inc. v. Gerrard Tire Co., Inc.*, 704 F.2d 1578, 1581 (Fed. Cir. 1983). "The purpose behind the marking statute is to encourage the patentee to give notice to the public of the patent. The reason that the marking statute does not apply to method claims is that, ordinarily, where the patent claims are directed to only a method or process there is nothing to mark." *Am. Med. Sys., Inc. v. Med. Eng'g Corp., Inc.*, 6 F.3d 1523, 1538 (Fed. Cir. 1993)). Although there is no duty to mark an item with a method patent, "the Supreme Court and the Federal Circuit have recognized that method claims can be intellectual property 'embodied' in an article." *Harrington v. CIBA Vision Corp.*, 2010 WL 2889584, at *4-5 (W.D.N.C. July 21, 2010); *see also N. Tex. Patent Grp., Inc. v. Blackboard, Inc.*, 2011 WL 1832871, at *4 (N.D. Ill. May 10, 2011).

Olaplex conflates the duty to mark pursuant to § 287(a) and false marking pursuant to § 292. The fact that Olaplex had no duty to mark its products with the '518 patent under § 287(a) does not automatically immunize Olaplex from liability under § 292. If the claims of the '518 patent do not cover the Olaplex products, Olaplex's marking satisfies the first prong of the inquiry under § 292 regardless of whether Olaplex had a duty to mark its products under § 287(a). The court's adoption of Olaplex's reasoning would lead to the untenable result that a party could mark an unpatented article with any method patent, regardless of its relation to the article, and avoid liability under § 292 by claiming that it had no duty to mark the article at all.

31

For the reasons described at §§ IV.D.2-4, *infra*, questions of fact remain as to whether the
Olaplex products are unpatented articles not covered by the '518 patent.

## 2. Marking of an unpatented article

Olaplex next alleges that L'Oréal's false marking counterclaim does not satisfy the
heightened Rule 9(b) standard because it does not plausibly allege that the marking is false. (D.I.
666 at 14-15) In response, L'Oréal contends that its false marking counterclaim adequately
alleges that Olaplex falsely marked three products which were not, in fact, covered by the '518
patent. (D.I. 679 at 16) Moreover, L'Oréal argues that the counterclaim specifically recites
Olaplex's admission in the UK Litigation signifying that Olaplex's products are not covered by
the '518 patent. (*Id.*)

L'Oréal adequately pleads that Olaplex's products are not covered by the '518 patent in
accordance with the first element of a cause of action brought under § 292. The amended
counterclaim alleges that the active ingredient in Olaplex's products is bis-aminopropyl diglycol
dimaleate (D.I. 650 at ¶ 216), which is identified as the binding agent in claim 6 of the '518
patent, (*id.* at ¶ 225). However, the claims of the '518 patent require four reactive moieties
ionically bound to a linker. (*Id.* at ¶ 221) The false marking counterclaim explains that during
the UK Litigation, Olaplex affirmatively represented that the Olaplex products do not include
ionically bound moieties, in contravention of the claimed requirements of the '518 patent. (*Id.* at
¶¶ 226-28) This alleged discrepancy is sufficient to satisfy the Rule 9(b) pleading standard, and
Olaplex's arguments to the contrary confuse the pleading standard with the burden of proof.
Accordingly, L'Oréal's false marking allegations are sufficient to satisfy the first requirement of
a § 292 claim.

.

### 3. Intent to deceive the public

Olaplex further contends that L'Oréal's false marking counterclaim does not adequately plead that Olaplex intended to deceive the public, as required by the second element of a false marking claim. (D.I. 666 at 13-15) L'Oréal responds that the false marking counterclaim adequately pleads intent to deceive by citing Olaplex's public representations that the Olaplex products are covered by the '518 patent, even though those products do not include ionically bound reactive moieties as required by claim 1 of the '518 patent. (D.I. 679 at 16)

State of mind may be averred generally under Rule 9(b) when "essential information lies uniquely within another party's control," so long as the pleading "sets forth the specific facts upon which the belief is reasonably based." *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1330 (Fed. Cir. 2009); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997). According to the Federal Circuit, intent to deceive can be inferred "[w]here a party making a misrepresentation has knowledge of the misrepresentation." *Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005). Pleading that a counterclaim defendant "knew or should have known" its markings were false is sufficient to establish intent to deceive on a motion to dismiss. *Brinkmeier v. Graco Children's Prods. Inc.*, 767 F. Supp. 2d 488, 497 (D. Del. 2011) (citing *Hollander v. Etymotic Research, Inc.*, 726 F. Supp. 2d 543, 556 (E.D. Pa. 2010); *Simonian v. Blistex, Inc.*, 2010 WL 4539450, at *4 (N.D. Ill. Nov. 3, 2010)).

L'Oréal's false marking counterclaim adequately alleges the requisite intent under Rule 9(b). The counterclaim asserts that Olaplex intentionally used the marking of its products with the '518 patent as a marketing strategy to suggest that bis-aminopropyl diglycol dimaleate is patented, thereby discouraging competitors from manufacturing products using this ingredient. (D.I. 650 at ¶¶ 240-41) Thus, L'Oréal's false marking counterclaim sufficiently alleges specific

facts to plausibly suggest that Olaplex had knowledge of the mismarking and intended to deceive the public. *See EMD Crop Bioscience Inc. v. Becker Underwood, Inc.,* 750 F. Supp. 2d 1004, 1020 (W.D. Wis. 2010) (citing *Iqbal,* 129 S. Ct. at 1949); *see also Brinkmeier*, 767 F. Supp. 2d at 497.

## 4. Competitive injury

Finally, Olaplex contends that L'Oréal's generic pleading of "lost sales, loss of market share, loss of business opportunities, and loss of good will" is insufficient to plead the existence of a competitive injury under the third element of a claim brought pursuant to § 292. (D.I. 666 at 16) In response, L'Oréal argues that it manufactures and sells products that compete with Olaplex's products and, as a result, Olaplex's false marking scheme has given it an unfair advantage over L'Oréal, resulting in L'Oréal's loss of sales, market share, business opportunities, and goodwill. (D.I. 679 at 18)

L'Oréal's false marking counterclaim adequately identifies a competitive injury by alleging that Olaplex's false marking scheme has given Olaplex an unfair advantage in the two-player market. (D.I. 650 at ¶¶ 244-45) Specifically, the counterclaim explains that L'Oréal and Olaplex are direct competitors, and Olaplex's false marking of its products with the '518 patent has discouraged competitors from commercializing competing products and has deterred customers from using L'Oréal's products, resulting in lost sales, loss of market share, loss of business opportunities, and loss of goodwill. (*Id.* at ¶ 245) These allegations are sufficient to plead "[a] wrongful economic loss caused by a commercial rival, such as the loss of sales due to unfair competition; a disadvantage in a plaintiff's ability to compete with a defendant, caused by the defendant's unfair competition." *See Sukumar v. Nautilus, Inc.*, 785 F.3d 1396, 1400 (Fed. Cir. 2015) (quoting Black's Law Dictionary (9th ed. 2009)).

34

Having reviewed the allegations of L'Oréal's false marking counterclaim in the light most favorable to L'Oréal, I recommend that the court deny Olaplex's motion to dismiss Count V of L'Oréal's amended counterclaims.

## E. Inequitable Conduct (Counts X and XI)

When a party claims a patent is unenforceable, and the claim is "premised upon inequitable conduct, [it] is a claim sounding in fraud." *Senju Pharm. Co. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 305 (D. Del. 2013). A party alleging inequitable conduct, therefore, must plead with particularity those facts which support the claim that the patent holder acted fraudulently before the USPTO. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). To plead inequitable conduct "with the requisite particularity under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the [USPTO]." *Senju Pharm. Co.*, 921 F. Supp. 2d at 306 (quoting *Exergen Corp.*, 575 F.3d at 1328); *see Int'l Bus. Mach. Corp. v. Priceline Grp. Inc.*, C.A. No. 15-137-LPS-CJB, 2017 WL 1349175, at \*4-5 (D. Del. Apr. 10, 2017). In addition,

although "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

*Exergen Corp.*, 575 F.3d at 1328-29.

In support of the motion to dismiss, Olaplex contends that L'Oréal's counterclaims for inequitable conduct fail to allege material misrepresentations and specific intent to deceive regarding Mr. Christal's alleged misrepresentation of the Kim prior art reference to the USPTO. (D.I. 666 at 17) According to Olaplex, the counterclaims contain no allegations of a deliberate

plan to defraud the USPTO about the Kim reference, and instead focus on non-actionable
attorney argument made by prosecution counsel with respect to the Kim reference.[10] (*Id.* at 18)
Olaplex alleges that L'Oréal's inequitable conduct counterclaims do not identify a specific
misrepresentation leading to the patent's issuance, and they also lack non-conclusory allegations
to show specific intent. (*Id.* at 18-19)

In response, L'Oréal alleges that its inequitable conduct allegations satisfy the Rule 9(b)
standard because the counterclaim alleges that Dr. Pressly and Rivka Monheit[11] misled the
USPTO by failing to mention the Olaplex products were the result of click chemistry, and
Olaplex's CEO submitted a false declaration which was mistakenly relied upon by the examiner.
(D.I. 679 at 19) According to L'Oréal, the examiner clearly indicated that the erroneous
declarations of Dr. Pressly and Mr. Christal were determinative of allowability. (*Id.* at 19-20)

I recommend that the court grant Olaplex's motion to dismiss Counts X and XI. The
inequitable conduct counterclaims do not adequately plead that the alleged misrepresentation or
material omission was made with the requisite knowledge of falsity or intent to deceive the

_____

[10] Olaplex cites a series of cases concluding that such efforts by attorneys to distinguish the
claims from the prior art are "not gross mischaracterizations or unreasonable interpretations" of
the prior art reference. *Young v. Lumenis*, 492 F.3d 1336, 1349 (Fed. Cir. 2007) (concluding that
the district court erred in granting summary judgment of inequitable conduct); *see also
WesternGeco L.L.C. v. ION Geophysical Corp.*, 2012 WL 567430, at *19 (S.D. Tex. Feb. 21,
2012) (concluding that attorney argument based on a prior art reference before the patent
examiner cannot form the basis for an inequitable conduct claim because the examiner was "free
to either accept or reject [the prosecuting attorney's] characterization of the prior art."").
However, these cases address the weight given by the examiner to attorney argument, as opposed
to evidence in the form of an affidavit or declaration. *See Rohm & Haas Co. v. Crystal Chem.
Co.*, 722 F.2d 1556, 1570-71 (Fed. Cir. 1983) (holding that affidavits submitted to overcome
prior-art rejections and the misrepresentations therein were material, and "there is no room to
argue that the submission of false affidavits is not material."); *see also Therasense, Inc. v.
Becton, Dickinson & Co.*, 649 F.3d 1276, 1292 (Fed. Cir. 2011) (holding that the submission of
false declarations is inherently material).

[11] Rivka Monheit is Olaplex's prosecution counsel.

USPTO. The counterclaims allege that Mr. Christal and Ms. Monheit knew the statements made in Mr. Christal's declaration were false and misleading because the declaration was inconsistent with the position taken by Olaplex's prosecution counsel in prosecuting a series of foreign patent applications, as well as the position taken by Olaplex's own technical expert in the UK Litigation. (D.I. 650 at ¶¶ 289-90) However, the pleading establishes that Mr. Christal's declaration was dated August 23, 2016, (*id.* at ¶ 282), and the testimony by Olaplex's technical expert in the UK Litigation was not proffered until April 25, 2018, (*id.* at ¶ 289). Similarly, the foreign patent applications identified in the counterclaims post-date Mr. Christal's declaration. (*Id.* at ¶ 290) (citing D.I. 272, Exs. F, G; D.I. 273, Exs. T, U, AB). Allegations of knowledge and intent based on testimony and documents that did not exist at the time Mr. Christal submitted his declaration are insufficient to state a claim under the heightened pleading standard that Mr. Christal intended to deceive the USPTO at the time his declaration was made.

L'Oréal's allegation of inequitable conduct based on Mr. Christal's purported "misleading portrayal of his hair care experience" is also insufficient under the heightened pleading standard. (D.I. 650 at ¶ 248) L'Oréal fails to plead that Mr. Christal's statements regarding his professional experience are false or misleading, as Mr. Christal did not represent that he was a chemist in the declaration. L'Oréal's counterclaim also fails to address how Mr. Christal's description of his credentials were material to the examiner's decision to credit his declaration and allow the patents-in-suit.

In addition, L'Oréal fails to adequately plead a cause of action for inequitable conduct stemming from Dr. Pressly's declaration. The counterclaims allege that Dr. Pressly's representations regarding the unexpected effects of maleic acid as an active agent in a method for bleaching hair were false and misleading due to his "practice . . . of not keeping any

documentation of his testing, including that relating to maleic acid." (D.I. 650 at ¶¶ 293-94)
These allegations are insufficient to establish that the "single most reasonable inference" from
Dr. Pressly's record-keeping practices is his intention to submit a false submission. *See
Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290-91 (Fed. Cir. 2011).

L'Oréal also fails to sufficiently plead why click chemistry is relevant or why the
examiner would have rejected Olaplex's patent applications if the concept of click chemistry had
been disclosed during prosecution. (D.I. 650 at ¶¶ 295-300) L'Oréal's conclusory and
speculative assertion that "the failure to disclose materials associated with click chemistry
discussed above, at a minimum, caused the Examiner to give the declarations greater weight and
ultimately allow the '419 and '954 patents," is insufficient to satisfy the heightened pleading
standard under Rule 9(b). (*Id.* at ¶ 304) For these reasons, I recommend that the court grant
Olaplex's motion to dismiss L'Oréal's inequitable conduct counterclaims.

## V. CONCLUSION

For the foregoing reasons, I recommend that the court grant-in-part and deny-in-part
Olaplex's motion to dismiss (D.I. 638) as follows:

1. Olaplex's motion to dismiss Count I of L'Oréal's amended counterclaims for alleged
   violations of the Lanham Act is GRANTED-IN-PART. Specifically, the motion to
   dismiss Count I is GRANTED with respect to alleged misrepresentations (ii), (iii),
   (vii), (viii), (x), and (xi). The motion to dismiss Count I is also GRANTED with
   respect to alleged misrepresentations based on conduct occurring prior to July 2016.
   The motion to dismiss Count I is also GRANTED as to averments of violations of the
   FTC Act. The motion to dismiss Count I is DENIED in all other respects.

2.  Olaplex's motion to dismiss Count II of L'Oréal's amended counterclaims for fraud by false promise is DENIED.

3.  Olaplex's motion to dismiss Counts III and IV of L'Oréal's amended counterclaims for breach of contract is DENIED.

4.  Olaplex's motion to dismiss Count V of L'Oréal's amended counterclaims for false marking is DENIED.

5.  Olaplex's motion to dismiss Counts X and XI of L'Oréal's amended counterclaims for inequitable conduct is GRANTED.

Given that the court has relied upon material that technically remains under seal, the court is releasing this Report and Recommendation under seal, pending a ruling on objections to this court's November 29, 2018 Memorandum Order regarding redactions. (D.I. 575)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart,* 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson,* 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: April 30, 2019

Sherry R. Fallon
United States Magistrate Judge