IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LIQWD, INC. and OLAPLEX LLC,<br><br>Plaintiffs,<br><br>v.<br><br>L'ORÉAL USA, INC., L'ORÉAL USA PRODUCTS, INC., L'ORÉAL USA S/D, INC., and REDKENS 5TH AVENUE, NYC, L.L.C.,<br><br>Defendant. | **CIVIL ACTION NO. 17-14-JFB-SRF**<br><br>**MEMORANDUM AND ORDER CLAIM CONSTRUCTION** |

This matter is before the Court on the objections by defendants, D.I. 620, to the report and recommendation of the magistrate judge, D.I. 602. Liqwd filed its claim construction chart. D.I. 404. The parties filed numerous briefs. Plaintiffs oppose defendants' objections. D.I. 646. In this patent infringement action filed by plaintiffs Liqwd, Inc. and Olaplex LLC (together, "Olaplex") against defendants L'Oreal USA, Inc., L'Oreal USA Products, Inc., L'Oreal USA S/D, Inc., and Redken 5th Avenue NYC, LLC (collectively, "L'Oreal"), Olaplex alleges infringement of United States Patent Nos. 9,498,419 ("the '419 patent") and 9,668,954 ("the '954 patent") (D.I. 262 at ¶¶ 90-138).

I.  **STANDARD OF REVIEW**

The standard of review is governed by 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b). The district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made" and "may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C). Similarly, Rule 72(b)(3) requires de novo review of any recommendation that is dispositive of a claim or defense

of a party. The Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

The Supreme Court has construed the statutory grant of authority conferred on magistrate judges under 28 U.S.C. § 636 to mean that nondispositive pretrial matters are governed by § 636(b)(1)(A) and dispositive matters are covered by § 636(b)(1)(B). *Gomez v. United States,* 490 U.S. 858, 873-74 (1989); *see also* Fed. R. Civ. P. 72(a). Under subparagraph (B), a district court may refer a dispositive motion to a magistrate judge "to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition." 28 U.S.C. § 636(b)(1)(B); *see EEOC v. City of Long Branch,* 866 F.3d 93, 99–100 (3d Cir. 2017). The product of a magistrate judge, following a referral of a dispositive matter, is often called a "report and recommendation." *Id.* "Parties 'may serve and file specific written objections to the proposed findings and recommendations' within 14 days of being served with a copy of the magistrate judge's report and recommendation." *Id.* (quoting Fed. R. Civ. P. 72(b)(2)).

"If a party objects timely to a magistrate judge's report and recommendation, the district court must 'make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *EEOC,* 866 F.3d at 99 (quoting 28 U.S.C. § 636(b)(1)).

Claim construction determinations in an R&R are reviewed de novo. *See St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co.,* 691 F. Supp. 2d 538, 542 (D. Del. 2010); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Claim construction

falls "exclusively within the province of the court," not that of the jury. *Teva Pharm. USA, Inc. v. Sandoz, Inc.,* 135 S. Ct. 831, 837 (2015) (quoting *Markman,* 517 U.S. at 370). It is proper for courts to "treat the ultimate question of the proper construction of the patent as a question of law in the way that [courts] treat document construction as a question of law." *Id.* at 837, 841 (noting that when the court relies solely upon the intrinsic evidence—the patent claims, the specification, and the prosecution history—the court's construction is a determination of law, however, underlying factual determinations are reviewed for clear error).

The claims of a patent define the scope of the patent. *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). The claims of a patent are of primary importance in determining what is patentable and the function and purpose of a claim is to "delimit the right to exclude." *Id.* The purpose of claim construction is to "determin[e] the meaning and scope of the patent claims asserted to be infringed." *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd,* 517 U.S. 370 (1996). A claim construction order will dictate how the court will instruct the jury regarding a claim's scope. *O2 Micro Int'l Ltd. v. Beyond Innovation Technology Co., Ltd.,* 521 F.3d 1351, 1359 (Fed. Cir. 2008).

The process of construing a claim term begins with the words of the claims. *Phillips,* 415 F.3d at 1312-14; *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996). Absent contravening evidence from the specification or prosecution history, plain and unambiguous claim language controls the construction analysis. *DSW, Inc. v. Shoe Pavilion, Inc.,* 537 F.3d 1342, 1347 (Fed. Cir. 2008). However, the claims "must be read in view of the specification, of which they are a part." *Phillips,* 415 F.3d at

3

1315 (quoting *Markman,* 52 F.3d at 979); see *Tempo Lighting, Inc. v. Tivoli,* LLC, 742 F.3d 973, 977 (Fed. Cir. 2014) (stating in claim construction, the court "gives primacy to the language of the claims, followed by the specification"). Additionally, the prosecution history, while not literally within the patent document, serves as intrinsic evidence for purposes of claim construction. *Id.*

If a claim term remains ambiguous after an examination of intrinsic evidence, the court may resort to extrinsic evidence. *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001). Extrinsic evidence includes expert and inventor testimony, dictionaries, and learned treatises. *Phillips,* 415 F.3d at 1317. Extrinsic evidence is less reliable and less persuasive than intrinsic evidence since such evidence is not part of the patent and was not created concurrently with the prosecution of the patent. *Id.* at 1317-19; *Summit 6, LLC v. Samsung Electronics Co.,* 802 F.3d 1283, 1290 (Fed. Cir. 2015) ("Although courts are permitted to consider extrinsic evidence, like expert testimony, dictionaries, and treatises, such evidence is generally of less significance than the intrinsic record"). "Extrinsic evidence may not be used 'to contradict claim meaning that is unambiguous in light of the intrinsic evidence.'" *Summit 6, LLC,* 802 F.3d at 1290 (quoting *Phillips,* 415 F.3d at 1324).

"[A] district court is not obligated to construe terms with ordinary meanings, lest trial courts be inundated with requests to parse the meaning of every word in the asserted claims." *O2 Micro Int'l Ltd.,* 521 F.3d at 1360. However, when the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute. *Id.*

The words of a claim are generally given their ordinary and customary meaning, which is the meaning a term would have to a person of ordinary skill in the art in question at the time of the invention. *Phillips,* 415 F.3d at 1313. The inquiry into how a person of ordinary skill in the art understands a term provides an objective baseline for which to begin claim interpretation. *Id.* "In some cases, the ordinary meaning of claim language . . . may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

"'There are only two exceptions to the general rule [that claim terms are given their plain and ordinary meanings to one of skill in the art]: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution.'" *Golden Bridge Tech., Inc. v. Apple Inc.,* 758 F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Computer Entm't Am. LLC,* 669 F.3d 1362, 1365 (Fed. Cir. 2012)). "To act as its own lexicographer, a patentee must 'clearly set forth a definition of the disputed claim term' other than its plain and ordinary meaning." *Thorner,* 669 F.3d at 1365-66 (quoting *CCS Fitness, Inc. v. Brunswick Corp.,* 288 F.3d 1359, 1366 (Fed. Cir. 2002)). "It is not enough for a patentee to simply disclose a single embodiment or use a word in the same manner in all embodiments, the patentee must 'clearly express an intent' to redefine the term." *Id.* at 1366 (quoting *Helmsderfer v. Bobrick Washroom Equip., Inc.,* 527 F.3d 1379, 1381 (Fed. Cir. 2008)). The inventor's written description of the invention is relevant and controlling insofar as it provides clear lexicography. *Id.*

The court is guided in the claim construction endeavor by several "canons of claim construction" or guideposts. *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.,* 246 F.3d 1368, 1376 (Fed. Cir. 2001). Under the doctrine of claim differentiation, a dependent claim has a narrower scope than the claim from which it depends, and an independent claim has a broader scope than the claim that depends from it. *Free Motion Fitness, Inc. v. Cybex Int'l, Inc.,* 423 F.3d 1343, 1351 (Fed. Cir. 2005). Also, ordinarily, claims are not limited to the preferred embodiments disclosed in the specification. *Phillips,* 415 F.3d at 1323. Different words in a patent have different meanings and the same words have the same meaning. *Innova/Pure Water, Inc., v. Safari Water Filtration Systems, Inc.,* 381 F.3d 1111, 1119-20 (Fed. Cir. 2004). Use of the open-ended term of art, "comprising," allows the addition of other elements so long as the named elements, which are essential, are included. See *Genentech, Inc. v. Chiron Corp.,* 112 F.3d 495, 501 (Fed. Cir. 1997). Generally, a preamble is not limiting. *Summit 6, LLC,* 802 F.3d at 1292 (noting, for example that preamble language that merely states the purpose or intended use of an invention is generally not treated as limiting the scope of the claim). "When the applicant adds a claim or otherwise amends his specification after the original filing date, . . . the new claims or other added material must find support in the original specification." *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. General Elec. Co.,* 264 F.3d 1111, 1118 (Fed. Cir. 2001) (noting that "the written description requirement and its corollary, the new matter prohibition of 35 U.S.C. § 132, both serve to ensure that the patent applicant was in full possession of the claimed subject matter on the application filing date").

When looking at a specification in the patent, the court adheres to two axioms. *Liebel-Flarsheim Co. v. Medrad, Inc.,* 358 F.3d 898, 904 (Fed. Cir. 2004). On the one hand, claims must be read in view of the specification, and, on the other hand, a court may not read a limitation from the specification into the claims. *Id.; Innovad Inc. v. Microsoft Corp.,* 260 F.3d 1326, 1332 (Fed. Cir. 2001) (noting that the "interpretative process forbids importing limitations from the specification into the defining language of the claims"). If possible, claims should be construed to preserve the claim's validity, but that maxim is limited "to cases in which 'the court concludes, after applying all the available tools of claim construction, that the claim is still ambiguous.'" *Phillips,* 415 F.3d at 1327 (quoting *Liebel-Flarsheim Co.,* 358 F.3d at 911).

## II.  DISCUSSION

The magistrate judge held a Markman hearing on November 8, 2018. The magistrate judge outlined the history of the patents, which the Court adopts in this memorandum and order. The magistrate judge stated:

> On November 22, 2016, the United States Patent and Trademark Office (the "USPTO") issued the '419 patent, entitled "Keratin Treatment Formulations and Methods." The '419 patent was filed on March 31, 2016 on a fast track, and claims priority to United States Provisional Application No. 61/994,709, which was filed on May 16, 2014. The '419 patent is a continuation of parent application no. 14/713,885, which was filed on May 15, 2015, published on November 19, 2015, and issued as U.S. Patent No. 9,326,926 on May 3, 2016. The '419 patent lists as inventors Eric D. Pressly and Craig J. Hawker ("the inventors"), and identifies Liqwd, Inc. as the assignee. The '419 patent describes "[ t]ormulations, kits, and methods for rebuilding the disulfide bonds in keratin" to be applied in conjunction with a hair coloring treatment. ('419 patent, Abstract)

> United States Patent No. 9,668,954 ("the '954 patent") (together with the '419 patent, the "patents-in-suit") was filed on January 25, 2017 and issued on June 6, 2017. On April 26, 2017, the USPTO issued a notice of allowance for the claims in the '954 patent. (D.I. 143, Ex. B) The '954 patent is a continuation of

> United States Patent Application No. 15/290,593, which is a continuation of the '419 patent. The '954 patent has the same title, inventors, and specification as the '419 patent. The active agent element of claim 1 of the '954 patent requires application of a bleaching mixture containing an active agent of maleic acid to the hair. ('954 patent, col. 25:58-67)

D.I. 602 at 1-2.

Defendants contend that the magistrate judge glossed over or ignored defendants' evidence and adopted many of plaintiffs' "illogical and unsupported positions." D.I. 620 at 1. Defendants first argue that the magistrate judge ignored intrinsic evidence and prosecution history evidence as to Claim 1. The Court disagrees and finds the magistrate judge clearly looked at the intrinsic evidence and the prosecution history. The Court further finds that the PTAB has already construed a number of these terms, finding against the defendants' proposals. The Court agrees with the magistrate judge that she correctly adopted the construction based on the intrinsic record, extrinsic evidence, and the findings of the PTAB.

Next, defendants claim the magistrate judge erroneously found "no construction needed" for the phrase "or salts thereof." The Court agrees with the magistrate judge that a person of ordinary skill would understand what is meant by "salt" and "salts thereof." D.I. 602 at 4-5.

Third, defendants contend that the Court should correct a typographical error.[1] Plaintiffs did not directly respond to this contention. To the extent that the typographical error is consistent with the findings of this Court herein, the Court will grant this objection.

---

[1] The defendants state: "The R&R includes a typographical error that the Court should correct with respect to the construction of the phrase, "wherein the active agent has the formula: or salts thereof." Specifically, while the R&R agreed in Section IV.D with Defendants' construction for "wherein the active agent has the formula," indicating it means "wherein the active agent is free acid having the nonionic structure." (D.I. 602 at 10-11), the R&R indicated that it agreed with Olaplex that "wherein the active agent has the formula: or salts thereof" means "the active agent has the formula of maleic acid: or salts of the active agent." (*Id.* at 12.) In so doing, the R&R did not provide any new analysis, and simply pointed back to its previous

8

The defendants next argue that the magistrate judge incorrectly identifies the "about" terms. Defendants contend that "nothing in the specification, prosecution history, or prior art provides any indication as to what range of specific activity is covered by the term "about" in the context of the '419 and '954 patents…" *Id.* at 8. "About" is a somewhat indefinite word, but the Court agrees it is so obvious to the reasonable, average person that it is not in need of defining. The plain and ordinary meaning applies here. The meaning refers to the "approximate" active agent concentration in the mixture. D.I. 425, Ex. 1 ('419 patent) at page 26:1-3, 7:26-34. As stated by the magistrate judge, "the use of 'about' is intended to avoid a 'strict numerical boundary to the specified parameter.'" D.I. 602 at 14 (citations omitted).

Defendants next object to the magistrate judge's finding regarding "hair breakage" terms. Defendants contend these claims are indefinite, and the magistrate judge relied on extrinsic evidence over the express language of the claims and specification. Again, the term construction adopted by the magistrate judge is consistent with findings of the PTAB. The magistrate judge concluded that "hair breakage" is obvious to the reasonable, average person. The Court agrees and will overrule the defendants' objections. These words do not need to be defined.

Next, defendants contend that the magistrate judge misconstrued "bleaching formulation" and argues that nothing in the asserted claims precludes pre-treatment of hair with an alkali. *Id.* at 9. Next, the defendants contend that "bleach powder" is misconstrued and the magistrate judge read limitations from the specification into the

---

discussion in Section IV.D (and Section IV.E). As such, in context, it is clear the R&R intended to say that the phrase means "wherein the active agent is free acid having the nonionic structure: or salts of the active agent." Thus, even if the Court does not agree with Defendants with respect to "salts thereof," the Court should correct this typographical error in the R&R to ensure a clear record going forward." D.I. 620 at 7.

claim. With regard to both of these terms, again, the PTAB already construed these terms and the magistrate judge adopted the same constructions. D.I. 460 at 8-9 (citing D.I. 426, Ex. 21 (PGR2018-00024 Denial of Institution) at 8-10; D.I. 460, Ex. 2 (PGR2018-00024 Denial of Rehearing Request) at 2-8); D.I. 602 at 8-10. The Court agrees with the magistrate judge. A person of ordinary skill will understand that a sufficiently alkaline pH is needed to bleach. *See* D.I. 602 at 8-10. The Court agrees that the limiting variables sufficiently assess hair breakage. The magistrate concluded that there is "a known, and standardized method for measuring decreases in hair breakage." D.I. 460 at 10-11 (citing D.I. 426, Ex. 20 at n. 25); D.I. 602 at 19 (citing the same and D.I. 426, Ex. 28 at 445); *see also Wellman v. Eastman*, 642 F.3d 1355, 1367 (Fed. Cir. 2011) ("Well known industry standards need not be repeated in a patent").

Last, the magistrate judge, argues the defendants, failed to address all of their indefiniteness arguments regarding mixing limitations. Again, the PTAB has already rejected the indefiniteness argument. D.I. 460 at 13. The Court has carefully reviewed these arguments and finds them to be without merit. All terms that need construction have been construed. The argument regarding such terms as identified by L'Oreal such as "at the time of use" and "shortly" and "use" and "applying mixture to the hair" are rejected. The terms identified by L'Oreal are not indefinite.

The Court has carefully reviewed each of the terms construed by the magistrate judge as well as each objection filed by the defendants. The Court will adopt all claims as construed by the magistrate judge and as set forth herein. These claims are construed as follows:

| Claim Term | Recommended Construction |
|---|---|
| "active agent in the mixture is at a concentration" | weight of active agent added into the active agent formulation relative to the total weight of the mixture with the bleaching formulation |
| "bleaching formulation" | an oxidizing formulation with a sufficiently alkaline pH to lighten hair |
| "bleach powder" | a dry particulate composition (i.e., a powder) comprising at least a persulfate and an alkalizing agent |
| "wherein the active agent has the formula: [structure]" | wherein the active agent is free acid having the nonionic structure: [structure] |
| "or salts thereof" | No construction needed. The plain and ordinary meaning applies, i.e., salts of the active agent |
| "wherein the active agent has the formula: [structure] or salts thereof" | No construction needed. The plain and ordinary meaning applies, i.e., the active agent has the formula of maleic acid: [structure] or salts of the active agent |
| "wherein the active agent is maleic acid" | wherein the active agent is free acid having the nonionic structure: [structure] |

| Claim Term | Recommended Construction |
|---|---|
| "active agent in the mixture is at a concentration" | weight of active agent added into the active agent formulation relative to the total weight of the mixture with the bleaching formulation |
| "bleaching formulation" | an oxidizing formulation with a sufficiently alkaline pH to lighten hair |
| "bleach powder" | a dry particulate composition (i.e., a powder) comprising at least a persulfate and an alkalizing agent |
| "wherein the active agent has the formula: [structure]" | wherein the active agent is free acid having the nonionic structure: [structure] |
| "or salts thereof" | No construction needed. The plain and ordinary meaning applies, i.e., salts of the active agent |
| "wherein the active agent has the formula: [structure] or salts thereof" | No construction needed. The plain and ordinary meaning applies, i.e., the active agent has the formula of maleic acid: [structure] or salts of the active agent |
| "wherein the active agent is maleic acid" | wherein the active agent is free acid having the nonionic structure: [structure] |

| | |
|---|---|
| "wherein following step (c) breakage of the hair is decreased by at least [5%], [10%], [20%] compared to hair bleached with the bleaching formulation in the absence of the active agent" | The only portion of this claim phrase that should be construed is: "breakage of the hair." <br><br> Proposed construction of this portion: "visible broken fibers of hair upon industry standard testing." <br><br> The other claim language needs no construction. Plain and ordinary meaning. |

THERFORE, IT IS ORDERED THAT:

1. Defendants' objections, D.I. 620, are overruled, with the exception of defendants' request to fix the typographical error;

2. The report and recommendation of the magistrate judge, D.I. 602, is adopted in its entirety.

Dated this 2nd day of May 2019.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge