EXHIBIT 11

## EXHIBIT 11:  DEFENDANTS' TRIAL EXHIBIT LIST

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-14-JFB-SRF |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA | ) | |
| PRODUCTS, INC., L'ORÉAL USA S/D, INC., | ) | |
| and REDKEN 5TH AVENUE NYC, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## EXHIBIT 11
## DEFENDANTS' TRIAL EXHIBIT LIST

1

## EXHIBIT 11:  DEFENDANTS' TRIAL EXHIBIT LIST

Pursuant to D. Del. Local Rule 16.3(c)(7), Defendants provide the following list of exhibits they intend to offer at trial, along with Plaintiffs' objections thereto.[1]  Although the parties initially agreed to submit a joint trial exhibit list, Plaintiffs changed their position the day before the filing deadline for the Proposed Pre-Trial Order and indicated separate lists were to be submitted. Defendants understand from discussions with Plaintiffs' counsel that the parties intend to continue to work together to submit a combined single exhibit list as soon as it can be finalized and before the pretrial conference.  Defendants continue to review their exhibit list to remove duplicative or unnecessary exhibits for various reasons, including exhibits identified on Plaintiffs' list.

---

[1] A key for Plaintiffs' objection codes is provided at the end of this Exhibit.

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 1 | 1/11/2017 | | | Declaration Of Sara Lim In Support Of Olaplex's Motion For A Preliminary Injunction | No Objection |
| 2 | 4/1/2015 | | | Online article entitled "Olaplex: The Science Behind the Strand" | No Objection |
| 3 | 6/3/2014 | | | Document headed "Meche Salon Los Angeles" | No Objection |
| 4 | 8/22/2016 | | | Declaration Under 37 C.F.R. Section 1.132 By Dean Christal | No Objection |
| 5 | 11/22/2016 | | | United States Patent, Patent No.: US 9,498,419 B2 w/o certificate of correction | No Objection |
| 6 | 2/5/2015 | | | United States Patent Application Publication US 2015/0034117 A1 | No Objection |
| 7 | 9/17/2015 | | | Modern Salon article entitled "Hero Complex: An Interview with Dean Christal of Olaplex" | No Objection |
| 8 | 5/8/2014 | OLA_0000015590 | OLA_0000015590 | E-mail dated 5-8-14 re "Allure magazine Breakthroughs feature" | No Objection |
| 9 | 4/14/2015 | | | Document headed "3/23/2017, (4) santy olaplex - Facebook Search" | No Objection |
| 9A | 8/8/2014 | | | Document headed "3/24/2017, Olaplex - We would like you to meet Joe Santy from... | Facebook" | No Objection |
| 10 | 8/13/2016 | OLA_0000025375 | OLA_0000025376 | E-mails dated 8-13-16 re "Monday's launch email" | No Objection |
| 11 | 12/6/2012 | OLA_0000025876 | OLA_0000025878 | E-mails dated 12-3-12 and 12-6-12 re "Working Agreement 11-30-12/5% Updated" | No Objection |
| 12 | 3/20/2017 | | | First Amended Complaint | No Objection |
| 13 | 5/20/2014 | OLA_0000000027 | OLA_0000000031 | LiQWD Inc. License Agreement to Olaplex, LLC | No Objection |
| 14 | 1/11/2017 | | | Declaration Of Tiffany Walden In Support Of Olaplex's Motion For A Preliminary Injunction | No Objection |
| 15 | 3/21/2017 | | | Document headed "3/21/2017, Tiffany Walden - Olaplex - Vanguard Law Magazine" | No Objection |
| 16 | 1/14/2003 | | | Document entitled "(19) Korean Intellectual Property Office (KR), (12) Unexamined Published Patent Application (A)" 2003-003970 to Kim et al. | No Objection |
| 17 | 12/29/2014 | OLA_0000025883 | OLA_0000025885 | E-mails dated 12-7-12 and 12-29-14 re "Agreement with Chemist #1/Olaplex" | No Objection |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 18 | 10/23/2016 | OLA_0000025890 | OLA_0000025891 | E-mails dated 12-6-12, 11-14-15, and 10-23-16 re "Working Agreement 12-6-2012" | No Objection |
| 19 | 12/6/2012 | OLA_0000025886 | OLA_0000025889 | Mutual Non-Disclosure Agreement dated 12-6-12 | No Objection |
| 20 | 7/17/2013 | OLA_0000025879 | OLA_0000025882 | Mutual Non-Disclosure Agreement dated 7-17-13 | No Objection |
| 21 | 5/16/2014 | OLA_0000000131 | OLA_0000000134 | Document:  Pressly and Hawker Patent Assignment dated 8-28-2014 | No Objection |
| 22 | 2/24/2017 | | | Document entitled "Intellectual Property Theft | No Objection |
| 23 | 3/15/2016 | OLA_0000024712 | OLA_0000024713 | Email from A. Sutin gto T. Walden, dated March 15, 2016 | No Objection |
| 24 | 4/13/2015 | | | Article entitled "How Does Olaplex Hair Treatment Work?" | No Objection |
| 25 | 1/12/2017 | | | Declaration Of Craig Hawker, Ph.D. In Support Of Olaplex's Motion For A Preliminary Injunction | No Objection |
| 26 | | | | Provisional Application For United States Letters Patent By Eric D. Pressly and Craig J. Hawker For Hair Treatment Compositions And Methods | No Objection |
| 27 | 10/6/2014 | OLA_0000023756 | OLA_0000023757 | Letter to Dean Christal from Personal Care Products Council dated 10-6-2014 | No Objection |
| 28 | 8/4/2015 | | | U.S. Patent Number 9,095,518 entitled "Methods For Fixing Hair And Skin" | No Objection |
| 29 | 12/6/2012 | OLA_0000025886 | OLA_0000025889 | Mutual Non-Disclosure Agreement | FO, H, AU |
| 30 | 3/10/2014 | OLA_0000015035 | OLA_0000015040 | Document labeled 29261 dated 3-10-2014 re: Hair swatche, untreated, control sample,  "Fractured and exhibited 'necking' failure after tensile test" | No Objection |
| 31 | 1/25/2017 | OLA_0000017608 | OLA_0000017608 | Emails dated 1-25-17 re "another" | No Objection |
| 32 | 1/12/2017 | | | Declaration of Edward T. Borish, Ph.D., in support of Olaplex's Motion For a Preliminary Injunction | H |
| 33 | | | | Exhibit G to Declaration of Edward T. Borish, Ph.D., in support of Olaplex's Motion For a Preliminary Injunction | No Objection |
| 34 | | | | Exhibit E to Declaration of Edward T. Borish, Ph.D., in support of Olaplex's Motion For a Preliminary Injunction | No Objection |
| 35 | | | | Intentionally Left Blank | |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 36 | | | | Exhibit C to Declaration of Edward T. Borish, Ph.D., in support of Olaplex's Motion For a Preliminary Injunction | No Objection |
| 37 | | | | Exhibit D to Declaration of Edward T. Borish, Ph.D., in support of Olaplex's Motion For a Preliminary Injunction | No Objection |
| 38 | 10/26/2015 | | | Copy from the file history for the '419 patent for declaration under 37 CFR Section 1.132 of Eric D. Pressly | H |
| 39 | | | | Intentionally Left Blank | |
| 40 | | | | Intentionally Left Blank | |
| 41 | 1/11/2017 | | | Intentionally Left Blank | |
| 42 | | | | Exhibit A (CV of N. Mody) | No Objection |
| 43 | | | | Notebook brought by Ms. Mody to deposition 5-1-2018 | No Objection |
| 44A | 3/20/2017 | | | Notice of Subpoena re: Eric Pressly | No Objection |
| 45 | 12/29/2014 | OLA_0000025883 | OLA_0000025885 | E-mail thread beginning with an e-mail from Eric Pressly to Dean Christal dated December 7, 2012, subject: Re: Working agreement 12-6-2012 | No Objection |
| 46 | 4/3/2017 | | | Hand drawing by Dr. Pressly from deposition on 4-3-2017 | No Objection |
| 47 | | | | Intentionally Left Blank | |
| 48 | 9/5/2016 | OLA_0000015682 | OLA_0000015683 | E-mail from Dean Christal to Eric Pressly dated 9-5-2016, subject: Small change in last paragraph, with attachment | No Objection |
| 49 | | | | Intentionally Left Blank | |
| 54 | | | | Intentionally Left Blank | N/A |
| 55 | | | | Intentionally Left Blank | N/A |
| 56 | | | | Intentionally Left Blank | N/A |
| 57 | | | | Intentionally Left Blank | N/A |
| 58 | | | | Intentionally Left Blank | N/A |
| 59 | | | | Intentionally Left Blank | N/A |
| 60 | | | | Intentionally Left Blank | N/A |
| 61 | | | | Intentionally Left Blank | N/A |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 62 | | | | Intentionally Left Blank | N/A |
| 64 | | | | Intentionally Left Blank | N/A |
| 65 | | | | Intentionally Left Blank | N/A |
| 86 | 10/3/2016 | LO_USA0000374 | LO_USA0000376 | Document re: Bond Ultim8 Launch Details | No Objection |
| 87 | 10/31/2016 | LO_USA0000416 | LO_USA0000417 | Email from N. Vissat to D. Mann and Z. Baris, dated 10-31-2016 | No Objection |
| 88 | 4/7/2017 | | | Declaration of W. Todd Schoettelkotte in Support of Defendant's Opposition to Plaintiffs' renewed motion for preliminary injunction | H |
| 89 | 5/15/2017 | | | Printout from SalonCentric website | No Objection |
| 90 | 12/31/2016 | | | Document entitled "Olaplex, LLC QTY & Sales Report for USA -- Aurora Beauty Sup April 1, 2015 - December 31, 2016" | No Objection |
| 91 | 8/20/2015 | LO_USA0000271 | LO_USA0000273 | Document entitled "Bond Expert | Lightener and Color Additive" | No Objection |
| 92 | 2/14/2016 | LO_USA0000110 | LO_USA0000111 | Document entitled "PPD Bonder Target Pad: July 2016" | No Objection |
| 93 | 6/17/2015 | LO_USA0000084 | LO_USA0000087 | Document entitled: "A New Market Category: The Bond Builders" | No Objection |
| 94 | 7/29/2015 | LO_USA0000366 | LO_USA0000377 | Chart re: Hair Protecting Additives | No Objection |
| 95 | 11/26/2016 | LO_USA0000211 | LO_USA0000211 | Document entitled "Redken: #1 Big Bet: PH Bonder" | No Objection |
| 96 | | | | Intentionally Left Blank | N/A |
| 97 | 6/30/2015 | | | Kline Group report June 2015 | H; FO |
| 99 | 5/18/2017 | | | Defendants' First Supplemental Objections and Responses to Plaintiffs' First Set of Interrogatories | No Objection |
| 103 | | | | Intentionally Left Blank | |
| 104 | 2/10/2015 | LO_USA0000864 | LO_USA0000865 | Emails ending with email from F. Sow to G. Provot et al.; subject: IMG-20150203-00048.jpg / BRAZILIAN BOND BUILD 3R | H; CP; FO |
| 106 | 6/15/2016 | LO_USA0000144 | LO_USA0000158 | Document entitled "Officialization  Intl." re Redken pH Bonder Step 1 | No Objection |
| 113 | 5/25/2017 | | | Rebuttal Declaration of Nisha Mody, Ph.D., in Support of Olaplex's Motion for a Preliminary Injunction | No Objection |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 113A | | | | Intentionally Left Blank | N/A |
| 114 | 4/26/2018 | | | Supplemental Declaration of Nisha Mody, Ph.D., in Support of Olaplex's Motion for a Preliminary Injunction | No Objection |
| 115 | | | | Exhibit W to Declaration re: screen shot of webpage from Reddit | No Objection |
| 116 | 4/30/2018 | | | Plaintiff's First Supplemental Objections and Response to Defendants' Fifth Interrogatory | No Objection |
| 117 | | | | Exhibit G to declaration re: chart entitled "Olaplex Sales, By y Year - Top 25 Distributors (2015-2018) | No Objection |
| 118 | | | | Exhibit B to declaration re: Chart Projected Sales 2015-2016 of various Bonder products | No Objection |
| 119A | 5/10/2017 | | | Defendants' Objections and Responses to Plaintiffs' Second Interrogatory | H; 105 |
| 120A | 4/26/2018 | | | Supplemental declaration of Edward T. Borish, Ph.D. in support of Olaplex's renewed motion for a preliminary injunction | H |
| 121A | 5/25/2017 | | | Exhibit B to declaration; copy of Rebuttal declaration of Edward T. Borish, Ph.D. in support of Olaplex's renewed motion for preliminary injunction, Volume 1 of 2 | H |
| 122A | | | | Intentionally Left Blank | |
| 123 | | | | Intentionally Left Blank | N/A |
| 124A | 5/8/2017 | | | Exhibit AF-28 to Declaration; Document re: webpage of Uberliss ingredients | FO, H |
| 125A | 6/1/2016 | | | Document of webpage entitled, "U/Blog A look into the science behind the Uberliss Bond Treatment" | H; FO |
| 126A | | | | Intentionally Left Blank | |
| 127A | 3/29/2018 | | | Document entitled Cosmetics - Cosing [EC Regulation (v.2)] re: bis-aminopropyl diglycol dimaleate | H; FO; CP |
| 128A | 8/4/2015 | | | United States Patent 9095518 with certificate of correction | COMP |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 129A | 1/14/2003 | | | Korean Patent Publication No. 2003-003970 to Kim et al. | H |
| 130A | | | | Appendix 2 to declaration entitled Olaplex v. L'Oreal USA Documents Considered | H |
| 131A | 4/27/2018 | | | Schoettelkotte Decl. Exhibit "G" | H; FO |
| 132 | | | | Intentionally Left Blank | N/A |
| 133 | 5/21/2018 | | | Declaration of W. Todd Schoettelkotte in Support of Defendant's Opposition to Plaintiffs' renewed motion for preliminary injunction | H |
| 134A | 1/11/2017 | | | Declaration of Nisha Mody, Ph.D., in Support of Olaplex's Motion For a Preliminary Injunction | No Objection |
| 135A | 5/25/2017 | | | Rebuttal Declaration of Nisha Mody, Ph.D., in Support of Olaplex's Motion for a Preliminary Injunction | No Objection |
| 136A | 4/26/2018 | | | Supplemental Declaration of Nisha Mody, Ph.D., In Support of Olaplex's Renewed Motion for a Preliminary Injunction | No Objection |
| 137A | 5/7/2018 | | | Shop By Brand, 149 Brands, from www.cosmoprofbeauty.com | H; FO; REL |
| 137 | 9/6/2016 | OLA_0000064068 | OLA_0000064072 | Email dated 9-6-2016 FWD: Our new shelf with image of shelf attached | No Objection |
| 138 | | | | Shop By Category, Hair Color from www.cosmoprofbeauty.com | No Objection |
| 138A | 1/11/2017 | | | Declaration Of Tiffany Walden In Support Of Olaplex's Motion For A Preliminary Injunction | No Objection |
| 139 | | | | Filter by Brand www.cosmoprofbeauty.com | H; FO; CP; REL |
| 139A | 11/22/2016 | OLA_0000064056 | OLA_0000064056 | Email from L. Bobitt to J. Schwartz et al. dated 11-22-2016 re: Another Basher | No Objection |
| 140A | 5/3/2018 (5/22/2018) | | | Products Found (19), search for "bonders" from www.cosmoprofbeauty.com | H; FO; CP; REL |
| 141A | 5/7/2018 (6/12/2018) | | | Moroccanoil ChromaTech Salon Package from www.cosmoprofbeauty.com | H; FO; CP; REL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 142A | 5/7/2018 (6/12/2018) | | | Celeb Luxury BondFix Conditioner from www.cosmoprofbeauty.com | H; FO; CP; REL, NVP, DIS, AU, FO, H |
| 143A | 5/7/2018 | | | Schwarzkopf Professional BlondMe Bond Enforcing Premium Lightener 9+ from www.cosmoprofbeauty.com | H; FO; CP; REL |
| 144A | 5/7/2018 | | | Schwarzkopf Professional BlondMe - Keratin Restore Bonding Conditioner - All Blondes from www.cosmoprofbeauty.com | H; FO; CP; REL |
| 145A | 5/7/2018 | | | Wella, WellaPlex Large Kit from www.cosmoprofbeauty.com | H; FO; CP; REL |
| 146A | 5/7/2018 | | | Review by Ms.J@Catch 22 Salon re: Wellaplex, 03/27/18 from www.cosmoprofbeauty.com | H; FO; CP; REL |
| 147 | 5/7/2018 | | | Farouk Transformation Bonder Formula A for Virgin/Resistant Hair from www.cosmoprofbeauty.com | H; FO; CP; REL, NVP, DIS, AU, FO, H |
| 147A | 4/8/2016 | LO_USA0002623 | LO_USA0002626 | Email from H. Kunetx to L. Marino dated 4-8-2016; Subject: "Re: Bond protectors" | No Objection |
| 148A | 5/7/2018 | | | Farouk Transformation Bonder Formula B for Colored/Chemical Treated Hair from www.cosmoprofbeauty.com | H; FO; CP; REL |
| 148 | 11/26/2016 | LO_USA0002698 | LO_USA0002749 | Redken presentation | No Objection |
| 149A | 5/7/2018 | | | Matrix Bond Ultim8 Travel Kit from www.cosmoprofbeauty.com | H; FO; CP |
| 150A | 5/7/2018 | | | Farouk Transformation Bonder Formula C for Highlighted, Porous/Fine Hair from www.cosmoprofbeauty.com | H; FO; CP; REL, NVP, DIS, AU, FO, H |
| 151A | 5/7/2018 | | | Schwarzkopf Professional IGORA Bond Sealer from www.cosmoprofbeauty.com | H; FO; CP; REL |
| 152A | 5/7/2018 | | | Goldwell USA BondPro+ Salon Kit from www.cosmoprofbeauty.com | H; FO; CP; REL |
| 153A | 5/7/2018 | | | Reviews, Best Bond Builder by BellasDad, 01/12/17 from www.cosmoprofbeauty.com | H; FO; CP; REL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 155 | 4/23/2017 (4/30/2015) | LO_USA0007909 | LO_USA0007915 | Document entitled "Olivia Project  Executive Summary" dated 4-30-2015 | No Objection |
| 156A | 9/4/2014 | | | Heavy Lifting: Olaplex Takes the Breakage out of Lifting - Career - Modern Salon from www.modernsalon.com | H, FO |
| 157 | 2/19/2016 (2/15/2018) | OLA_0000014030 | OLA_0000014035 | Email from J. Santy to Darcy Christal et al. dated 2-19-2016; subject: "FAQs Section 1" | H, REL |
| 157A | 2/15/2018 | | | US Patent Pub. No. US 2018/0042830 A1 | No Objection |
| 158 | 7/10/2014 | | | Olaplex Instagram Post | H, FO, Q |
| 158A | 8/31/2017 | | | US Patent Pub. No. US 2017/0246094 A1 | No Objection |
| 159A | 9/1/2016 | OLA_0000015687 | OLA_0000015692 | Email - Here's the Word Files for the Artwork You Requested | H, FO, REL |
| 160 | 11/7/2013 | OLA_0000063745 | OLA_0000063747 | Email - Dr. Oz Magazine | H, REL |
| 160A | 5/21/2018 | | | Declaration of Benny D. Freeman, Ph.D. In Support of Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction | H |
| 161 | 5/16/2006 | OLA_0000063641 | OLA_0000063663 | Presentation - Olaplex The Future of Chemical Services (Hefford Decl. Exhibit "N") | H; Incorrect Descriptor; REL |
| 161A | 5/16/2006 | | | Hefford Decl. Exhibit N: United States Patent Ogawa et al, 7044986 B2 | H |
| 162 | 2/19/2016 | OLA_0000014040 | OLA_0000014041 | Email - Tweaked Salon Menu | REL |
| 162A | | | | Chapter 6: Sequestrants in Food by Thomas E. Furia | NVP, DIS, FO, H |
| 163 | 4/5/2018 | | | Defendants' Notice of Deposition of Olaplex, LLC Persuant to Rule 30 (b) (6) - Related to Motion for Preliminary Injunction | No Objection |
| 163A | | | | Freeman Decl. Exhibit "B" : cv of Benny Freeman | FO, H |
| 164 | | | | Excerpt of Rough Draft, Joe Santy May 14, 2018, Deposition | |
| 164A | 7/28/2016 | LO_USA0008237 | LO_USA0008244 | Document entitled: "L'oreal Professionnel Smartbond-Communications Desk" dated 7-28-2016 | No Objection |
| 165 | 4/26/2018 | | | Declaration Of Tiffany Walden In Support Of Olaplex's Renewed Motion For Preliminary Injunction | No Objection |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 166 | 3/10/2014 | | | Trademark/Service Mark Statement of Use for "Bond Multiplier" | No Objection |
| 167A | 5/7/2018 | | | Document:  Olaplex Distributor List from Olaplex Website dated 5-7-2018 | H, FO |
| 167 | | DOLDEN 0001 | DOLDEN 0015 | Text messages between Roger Dolden and Dean Christal | No Objection |
| 168A | 6/10/2018 | | | Printout from the Bartlett, Pringle & Wolf website | H, FO, REL |
| 168C | 5/13/2015 | LO_USA0028275 | LO_USA0028277 | Email from R. Dolden to F. Roze dated 9-2-2015; subject: Project Olivia - Confidential | No Objection |
| 168D | 5/15/2018 | | | Olaplex Net Sales, by Year – Top 25 Distributors | Late addition by L'Oreal on May 12, 2019 after May 8, 2019 deadline for updated exhibit list; H; FO |
| 169A | 6/4/2018 | | | Declaration of Lisa Lorden in Support of Olaplex's Renewed Motion for Preliminary Injunction | No Objection |
| 170A | 4/5/2018 | | | Defendants' Second Set of Interrogatories to Plaintiffs Related to Motion for Preliminary Injunction | No Objection |
| 170 | 10/15/2015 | LO_USA0026934 | LO_USA0026935 | Email from R. Dolden to S. Habif et al. dated 10-15-2015; subject: Olaplex IP | No Objection |
| 171B | 6/11/2015 | LO_USA0004298 | LO_USA0004300 | Email from Dean Christal to R. Dolden dated 6/11/15; subject:  Project Olivia | No Objection |
| 171 | 10/15/2015 | LO_USA0049928 | LO_USA0049928 | Email from S. Habif to R. Dolden dated 10-15-2015; subject: RE: Olaplex IP | No Objection |
| 172 | | | | Intentionally Left Blank | |
| 173A | 5/16/2017 | | | Certificate of Correction for U.S. Patent No. 9,498,419 | No Objection |
| 174A | | | | Freeman Declaration Exhibit J- Robbins, Chemical and Physical Behavior of Human Hair" dated 2012 | H |
| 175A | | | | Freeman Declaration Exhibit K- Johnson, Hair and Hair Care dated 1997 | H |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 175 | 3/30/2015 | LO_USA0029197 | LO_USA0029199 | Email from H. Kunetz to R. Dolden dated 3-30-2015; subject: Confidential: Olaplex | No Objection |
| 176A | | | | Intentionally Left Blank | |
| 177A | | | | Freeman Declaration Exhibit I- Society of Cosmetic Chemists, Monograph, Permanent Hair Dyes, dated | FO, H, REL |
| 177 | 7/4/2015 | LO_USA0026528 | LO_USA0026539 | Project Olivia presentation dated 7-4-2015 | No Objection |
| 178 | 4/16/2015 | LO_USA0028233 | LO_USA0028233 | Email from R. Dolden to P. Sharnsky dated 4-16-2015; subject: Project Olivia | No Objection |
| 181 | 5/20/2015 | LO_USA0035071 | LO_USA0035074 | Email frm D. Allard to R. Dolden dated 5-20-2015; subject: Olivia meeting May 19th - R&I assessment, with attachment (R&I assessment following Olivia meeting on May 19th) | No Objection |
| 182 | 5/22/2015 | LO_USA0035264 | LO_USA0035270 | Email from V. Niz to F. Cerventes et al. dated 5-22-2015; subject: Project Olivia - Summary of Confidentiality Requirements and Data Room-Clean Room Access | No Objection |
| 186 | 4/29/2015 | LO_USA0028663 | LO_USA0028664 | Email from R. Dolde to A. Verhulst-Santos et al. dated 4-29-2015; subject: RE: Project Olivia Status --- Confidential | No Objection |
| 187 | 5/13/2015 | LO_USA0028264 | LO_USA0028273 | Email from R. Dolden to H. Kunetz dated 5-13-2015; subject: Project Olivia - Confidential | No Objection |
| 188 | 5/15/2015 | OLA_0000065778 | OLA_0000065783 | Confidentiality Agreement dated 5-15-2015 | No Objection |
| 189 | 5/15/2015 | | | Confidentiality Agreement dated 5-15-2015 | No Objection |
| 190 | 4/30/2015 | LO_USA0026738 | LO_USA0026740 | Email from R. Dolden to F. Roze dated 4-30-2015; subject: FW: Project Olivia Status --- Confidential | No Objection |
| 192 | 6/29/2015 | LO_USA0035379 | LO_USA0035380 | Email from K. O'Rourke to R. Dolden dated 6-29-2015; subject: RE: Olaplex | No Objection |
| 193 | 5/19/2015 | LO_USA0060088 | LO_USA0060093 | Email from M. Gringauz to S. Habif et al. dated 5-19-2015; subject: Project Olivia Summary of Confidentiality Requirements | No Objection |
| 194 | 9/2/2015 | LO_USA0028284 | LO_USA0028306 | Email from R. Dolden to V. Pivet et al. dated 5-22-2015; subject: Project Olivia - Meeting with Owner/Scientist - Strictly Confidential | No Objection |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 195 | 6/11/2015 | LO_USA0028218 | LO_USA0028220 | Email from R. Dolden to D. Christal dated 6-11-2015; subject: Project Olivia | No Objection |
| 196 | 6/17/2015 | LO_USA0030672 LO_USA0059967 | LO_USA0030672 LO_USA0059984 | Email from H. Kunetx to R. Dolden dated 6-17-2015; subject: FW: update data | No Objection |
| 197 | 7/1/2015 | LO_USA0066944 | LO_USA0066970 | Emails ending with email from R. Dolden to K. O'Rourke dated 7-1-2015; subject: FW: Olivia BP V 1-1-0 with attachment (Project Olivia dated 7-1-2015) | No Objection |
| 199 | 8/27/2014 | LO_USA0008197 | LO_USA0008197 | Email frm M. Zellner to K. Hamilton et al. dated 8-27-2014; subject: Olaplex Crosslinker.pptx with attachment | No Objection |
| 201 | 6/10/2015 | LO_USA0039744 | LO_USA0039746 | Email from M. Soliman to C. Goget et al. dated 6-10-2015; subject: Topline EV1506-0296: Olaplex 3x MTT - Maleic Acid and Diamine Investigation | No Objection |
| 202 | 6/10/2015 | LO_USA0065454 | LO_USA0065456 | Email from K. Hamilton to C. Goget dated 6-10-2015; subject: RE: AU1506-0031 - Request for Cysteic Acid | No Objection |
| 203 | 6/22/2015 | LO_USA0039233 | LO_USA0039235 | Email from C. Goget to K. Hamilton dated 6-22-2015; subject: TR: "BONDING" project - Action plan for next weel | No Objection |
| 204 | 6/22/2015 | LO_USA0065361 | LO_USA0065362 | Email from F. Boulinaeu to S. Loisel-Joubert et al. dated 6-22-2015; subject: RE: maleic acid - diamine (monoethanolamine) in bleach | No Objection |
| 205 | 7/17/2015 | LO_USA0063822 | LO_USA0063823 | Email from F. Boulinaeu to G. Provot et al. dated 7-17-2015; subject: Analytical chemistry action plan for Bonding - 17 Jul 2015 | No Objection |
| 206 | 9/8/2015 | LO_USA0039877 | LO_USA0039894 | Presentation entitled "Bonding September 2015" | No Objection |
| 207 | | | | U.S. Provisional Patent Application No. 62/259564 | No Objection |
| 211 | 9/10/2018 | LO_USA0067926 | LO_USA0068083 | Laboratory Notebook L10005 (Danielski) | No Objection |
| 212 | 8/25/2018 | LO_USA0022327 | LO_USA0022419 | Laboratory Notebook L11145(Boulineau) | No Objection |
| 213 | 1/15/2015 | LO_USA0039236 | LO_USA0039239 | Email from C. Goget to K. Hamilton dated 1-15-2015; subject: TR: Discussion on hydrolyzed bismaleimido | No Objection |
| 214 | 7/23/2015 | LO_USA0067297 | LO_USA0067303 | Memo re: Formation of sulfur-nitrogen bonds with diamines and cystine under oxidative bleaching dated 7-23-2015 | No Objection |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 215 | 4/15/2015 | LO_USA0039453 | LO_USA0039456 | Email from K. Hamilton to H. Lam et al. dated 4-15-2015; subject: RE: FOX - RM and safety Action Plan | No Objection |
| 216 | 1/5/2015 | LO_USA0065366 | LO_USA0065383 | Email from C. Goget to Jean-Marc Ascione et al dated 1-5-2015; subject: TR: Cysteic acid level changes with attachment | No Objection |
| 217 | 5/1/2015 | LO_USA0063799 | LO_USA0063809 | Email from F. Boulineau to C. Shaw dated 5-1-2015; subject: Olaplex 1st generation analytical report with attachment (Memo dated 5-1-2015 AU1408-0043-Ananlysis of Olaplex No1 and No2 (First Generation) | No Objection |
| 220 | 10/18/2018 | | | Notice of Second Amended Subpoena Duces Tecum and Ad Testificandum to the University of California, Santa Barbara | No Objection |
| 221 | 6/23/1958 | UCSB000013 | UCSB000019 | General University Policy Regarding Academic Appointees | No Objection |
| 222 | 7/1/2014 | UCSB000020 | UCSB000036 | General University Policy Regarding Academic Appointees | No Objection |
| 223 | 1/9/2015 | UCSB000386 | UCSB000386 | Email from C. Hawker to E. Pressly dated 1-9-2015; subject: Checks | H; FO; REL |
| 224 | 1/26/2015 | UCSB000886 | UCSB000889 | Email from C. Hawker to E. Pressly dated 1-26-2015; subject: Re: LIQ 100 CIP - the Examiner indicated that claim 9 Is allowable, and would search for some additions specific compounds too - please review and respond | No Objection |
| 225 | 3/3/2003 | UCSB000150 | UCSB000166 | Guidance for Faculty and Other Academic Employees on Issues Related to Intellectual Property and Consulting dated 3-3-2003 | No Objection |
| 226 | 8/1/2014 | UCSB000167 | UCSB000171 | Disclosure and Record of Invention Form | H; FO; REL |
| 227 | | UCSB000236 | UCSB000237 | UCSB State Oath of Allegiance | H; FO; REL |
| 228 | 11/16/2011 | UCSB000238 | UCSB000240 | Amendment to Patent Acknowledgment/Agreement | H; FO; REL |
| 229 | 11/18/2014 | UCSB000425 | UCSB000426 | Emails ending with C. Hawker to C. Hawker dated 11-18-2014; subject: Fw: Working Agreement 12-6-2012 | No Objection |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 230 | 11/14/2015 | UCSB000704 | UCSB000705 | Email from C. Hawker to D. Christal dated 11-14-2015; subject: Fwd: Serendipity | No Objection |
| 231 | 2/19/2015 | UCSB000241 | UCSB000250 | 2015 Dreyfus Prize | No Objection |
| 232 | | UCSB000251 | UCSB000272 | Presentation entitled "Central Role of Chemistry" | No Objection |
| 233 | | UCSB000342 | UCSB000372 | Presentation entitled "Olaplex Hair Care System" | No Objection |
| 234 | | UCSB000373 | UCSB000384 | Presentation entitled "New Hair Care System" | No Objection |
| 235 | 6/1/2015 | UCSB000389 | UCSB000389 | Email from C. Hawker to J. Schwartz dated 6-1-2015; subject: Facilities use | H; FO; REL |
| 236 | 12/23/2014 | UCSB000412 | UCSB000421 | Email from C. Hawker dated 12-23-2014: Fw: Olaplex RIPT test results with attachments | No Objection |
| 237 | 2/24/2010 | UCSB000197 | UCSB000208 | Business and Finance Bulletin G-39 | H; FO; REL |
| 238 | | UCSB000596 | UCSB000610 | Copy of Claims in LIQ 100 CIP PCT | No Objection |
| 239 | 6/26/2013 | OLA_0000025911 | OLA_0000025912 | Email from E. Pressly to D. Christal dated 6-26-2013; subject: Fwd: Disclosure of External Activity | No Objection |
| 240 | 10/10/2018 | | | Declaration of Benny D. Freeman, Ph.D. In Support of Defendants' Opening Brief on Claim Construction | No Objection |
| 240A | | BTC_PL 000681.001 | BTC_PL 000681.002 | Article from Bhind the Chair entitled "This Could (And Will) Change Everything" | No Objection |
| 241 | | | | Freeman Decl. Exhibit "A" Materials Considered | H |
| 241A | 1/28/2015 | BTC_PL 0006898 | BTC_PL 0006899 | Email from M. Rector -Gable to Mary-behindthechair.com dated 1-28-15; subject: Fwd: Consulting Services Agreement | H; REL |
| 242 | | BTC_PL 006900 | BTC_PL 006906 | Consulting Services Agreement between BehindTheChair and Olaplex | H; REL; BER |
| 243 | 8/20/2014 | BTC_PL 007098 | BTC_PL 007100 | Email from D. Christal to Mary Rect-Gable dated 8-20-2014; subject: Olaplex Agreement | H; REL |
| 244 | 11/13/2014 | BTC_PL 204060 | BTC_PL 204063 | Email from Mart@behindthechair to L. Zehil dated 11-13-14; subject: Re: Letter of Intent | H; REL |
| 245 | 8/23/2014 | BTC_PL 204136 | BTC_PL 204137 | Email from lou@palmcapitaladvisors to Mary Rector-Gable dated 8-23-2014; subject: Re: Fwd: Letter of Intent | H; FO; REL |
| 246 | 8/24//2014 | BTC_PL 204420 | BTC_PL 204421 | Email from Mary Rector-Gable to Lou Capital Advisors dated 8-24-2014; subject: Fwd: Consulting Services Agreement | H; FO; REL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 247 | 8/23/2014 | BTC_PL 204138 | BTC_PL 204140 | Email from lou to Mary Rector-Gable dated 8-23-2014; subject: Re: Fwd: LLC- | H; FO; REL |
| 248 | 5/12/2014 | BTC_PL_001668 | BTC_PL_001672 | Email from Mary Rector-Gable to Dana dated 5-12-2014; subject: Fwd: Olaplex | H; FO; REL; CP |
| 250 | 10/5/2016 | OLA_0000016485 | OLA_0000016487 | Email from G. Auer to D. Christal dated 10-5-2016; subject: copy I just sent in a word doc | H; FO |
| 251 | 8/23/2016 | OLA_0000024719 | OLA_0000024723 | Email from G. Auer to T. Walden dated 8-23-2016; subject: Re: Olaplex's special ofer for you. | H; REL |
| 252 | 12/11/2018 | | | Resume of Gregory Auer | H; FO; REL |
| 253 | 9/11/2016 | OLA_0000015667 | OLA_0000015668 | Email from D. Christal to M. Berkshire dated 9-11-2016; subject: Fwd: New usage email blast. Please review | No Objection |
| 254 | 8/26/2016 | OLA_0000013587 | OLA_0000013587 | Email from G. Auer to D. Christal dated 8-26-2016 | H; FO; REL |
| 271 | 12/5/2018 | | | Defendants' Notice of Deposition of Vanessa Schneider | No Objection |
| 272 | 12/6/2018 | | | Vanessa Schneider LinkedIn profile | No Objection |
| 273 | 5/7/2016 | OLA_0000077099 | OLA_0000077149 | Email from V. Schnieder to T. Waldon dated 6-7-2016; subject: Re: Employee Handbook and Related Documetns | No Objection |
| 274 | | OLA_0000095691 | OLA_0000095695 | Olaplex LLC nondisclosure agreement and assignment | No Objection |
| 275 | 8/16/2015 | OLA_0000023295 | OLA_0000023298 | Email from kimberly@olaplex.com to martine Olaplex dated 8-16-2015; subject: Fwd: Relaxer Piece | No Objection |
| 276 | 6/21/2015 | OLA_0000016060 | OLA_0000016062 | Email from D. Christal to AB McDonald dated 6-21-2015; subject: Fwd: An important discussion I think it is important for you to see. | No Objection |
| 277 | 4/1/2016 | OLA_0000077106 | OLA_0000077148 | Olaplex LLC Employee Handbook April 2016 | No Objection |
| 278 | | LO_USA0038876 | LO_USA0038879 | Facebook post | H; FO; AU |
| 280 | 12/12/2018 | | | Dustin Stone Twitter Account | No Objection |
| 281 | 12/12/2018 | | | Dustin Stone LinkedIn profile | No Objection |
| 282 | 10/3/2016 | OLA_00000953591 | OLA_00000953634 | Email from T. Waldon to D. Stone dated 10-3-2016; subject: Welcome to Olaplex - Dustin Stone | No Objection |
| 283 | 10/6/2015 | OLA_0000071533 | OLA_0000071533 | Email from J. Iturralde to J. Schwartz dated 10-6-2015; subject: RE: Stylist comments about Charlotte | No Objection |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 284 | 12/16/2015 | OLA_0000074726 | OLA_0000074727 | Email from D. Stone to Martine Olaplex dated 12-16-2015; subject: Re: | No Objection |
| 285 | 9/9/2016 | | | September 2016 Brazilian B3 Salon Geek Post | H |
| 286 | 11/22/2016 | OLA_0000024572 | OLA_0000024581 | Emails ending with email from T. Waldon to Martine Olaplex; subject: Re: Salon Outreach Update | No Objection |
| 287 | 9/7/2016 | | | September 2016 Olaplex new directions of use: am I the only one who's not happy? Salon Geek Post | No Objection |
| 290 | 12/5/2018 | | | Defendants' Notice of Deposition of Jordan Alexander | No Objection |
| 291 | 12/11/2018 | | | Jordan Alexander LinkedIn profile | No Objection |
| 292 | 11/29/2017 | OLA_0000067577 | OLA_0000067580 | Witness Statement of Jordan Alexander | No Objection |
| 293 | 4/1/2016 | OLA_0000077106 | OLA_0000077147 | Olaplex LLC Employee Handbook | No Objection |
| 294 | 4/28/2016 | OLA_0000093494 | OLA_0000093498 | Email from J. Alexander to T. Walden dated 4-28-2016; subject: Re: Employee Handbook and Related Documents | No Objection |
| 295 | 7/15/2015 | OLA_0000023103 | OLA_0000023105 | Email from J. Alexander to Darcy Christal dated 7-15-2015; subject: Re: Olaplex Contact Form | Ivy | No Objection |
| 296A | | OLA_0000067480 | OLA_0000067480 | Article entitled "Speed Up Highlighting Without Compromising Quality" from behindthechair.com | No Objection |
| 297 | 8/7/2015 | OLA_0000017720 | OLA_0000017720 | Email from J. Alexander to E. Pressly dated 8-7-2015; subject: Response | No Objection |
| 298 | 5/23/2015 | OLA_0000016695 | OLA_0000016697 | Email from Ab McDonald to Martine Olaplex dated 5-23-2015; subject: Re: KNOCK OFF POST | No Objection |
| 299 | 5/16/2016 | OLA_0000082661 | OLA_0000082661 | Email from rececca@olaplex to Mason Berkshire dated 5-16-2016; subject: Re: Outgoing emails to distribtors regarding passwords | No Objection |
| 300 | 9/21/2015 | OLA_0000016618 | OLA_0000016620 | Email frm K. Helmers to D. Christal dated 9-21-2015; subject: Fwd: Reply From Nubond | No Objection |
| 301 | 6/15/2014 | | | Instagram post by Jordan Alexander | No Objection |
| 302 | 11/7/2013 | OLA_0000063745 | OLA_0000063745 | Email from J. Morehouse to dean@liqwd christal dated 11-7-2013; subject: Dr. Oz magazine | H; CP, REL |
| 303 | 9/18/2014 | OLA_0000067892 | OLA_0000067892 | Email from JSanty3@aol.com to bpchampion@gmail.com dated 9-18-2014; subject: Olaplex and Perming | H; CP |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 304 | 1/24/2015 | OLA_0000015102 | OLA_0000015102 | Email from Joe Santy to D. Christal dated 1-24-2015; subject: Re: First text Olaplex vs. BB | No Objection |
| 305 | 8/16/2015 | OLA_0000023295 | OLA_0000023298 | Emails from kimberly@olaplex.com to Martine Olaplex dated 8-16-2015; subject: Fwd: Relaxer Piece | H; FO |
| 306 | 7/17/2013 | OLA_0000063667 | OLA_0000063668 | Emails from D. Christal to jsanty3@aol.com dated 7-17-2013; subject: Re: Liqwd Perm NDA | No Objection |
| 307 | 9/1/2016 | OLA_0000015687 | OLA_0000015687 | Email from D. Christal to J. Mesry dated 9-1-2016; subject: Fwd: Here's the word files for the artwork you requested. | H; REL |
| 308 | 9/24/2014 | OLA_0000015331 | OLA_0000015339 | Email from J. Schwartz to D. Christal dated 9-24-2014; subject: FW: Sarasota Exam Results and OLAPLEX Results | H; FO |
| 331 | 11/27/2018 | | | Subpoena to Testify at a Deposition in a Civil Action | No Objection |
| 332 | 2/27/2014 | | | Instagram post | No Objection |
| 333 | 2/23/2014 | OLA_0000067373 | OLA_0000067373 | Instagram post by Tracey Cunningham | No Objection |
| 334 | 2/18/2014 | OLA_0000109311 | OLA_0000109312 | Email from T. Cunningham to Dean@Liqwd.com dated 2-18-2014; subject: Re: Colorists in your salon | No Objection |
| 335 | 2/21/2014 | OLA_0000109313 | OLA_0000109313 | Email from T. Cunningham to dean@liqwd.com dated 2-21-2014; subject: Re: Your Olaplex #post | No Objection |
| 336 | | OLA_0000024543 | OLA_0000024543 | "This Could (And Will) Change Everything," article by Mary Rector-Gable in behindthechair.com | No Objection |
| 337 | 5/14/2014 | OLA_0000107060 | OLA_0000107061 | Email from T. Cunniham to dean@liqwd.com dated 5-14-2014; subject: Re: Can you READ NOW! | No Objection |
| 338 | 2/26/2014 | | | Instagram post by Tracey Cunningham | No Objection |
| 339 | 2/21/2014 | | | Wordpress post "Tracey Cunningham on Chrissy Teigen's Hair" | No Objection |
| 340 | 2/21/2014 | OLA_0000067402 | OLA_0000067402 | Instagram post by Tracey Cunningham | No Objection |
| 341 | 2/18/2014 | | | Instagram post by Tracey Cunningham | No Objection |
| 342 | 3/3/2014 | | | Instagram post by Tracey Cunningham | No Objection |
| 343 | 3/6/2014 | OLA_0000067388 | OLA_0000067388 | Instagram post by Tracey Cunningham | No Objection |
| 344 | 3/8/2014 | OLA_0000067397 | OLA_0000067397 | Instagram post by Tracey Cunningham | No Objection |
| 345 | 9/17/2015 | LO_USA0072107 | LO_USA0072110 | Article "Hero Complex: An Interview with Dean Christal of Olaplex," by Anne Moratto dated 9-17-2015 | No Objection |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 346 | 2/18/2014 | OLA_0000106215 | OLA_0000106215 | Email from T. Cunningham to dean@liqwd.com dated 2-18-2014; subject: Re: Colorists in your salon | No Objection |
| 347 | 3/26/2014 | OLA_0000067379 | OLA_0000067379 | Instagram post by Tracey Cunningham | No Objection |
| 348 | 4/25/2014 | | | Instagram post by Tracey Cunningham | No Objection |
| 349 | 5/5/2014 | | | Instagram post by Tracey Cunningham | No Objection |
| 350 | 5/6/2014 | | | Instagram post by Tracey Cunningham | No Objection |
| 351 | 5/14/2018 | | | Second amended complaint | No Objection |
| 352 | 10/26/2018 | | | Plaintiffs' Answering Brief in Opposition to Defendants' Motion for Redactions | No Objection |
| 353 | 11/22/2016 | OLA_0000077009 | OLA_0000077039 | Email from T. Walden to paul.ziobro@wsj.com dated 11-22-2016; subject: Olaplex suing L'Oreal for Patent Infringement | No Objection |
| 354 | 11/21/2018 | | | Defendants' Notice of Deposition of Plaintiffs Pursuant to Rule 30(b)(6) | No Objection |
| 355 | 1/6/2017 | OLA_0000024562 | OLA_0000024563 | Email from T. Walden to D. Christal; subject: Re: L'Oreal suit | No Objection |
| 356 | 1/4/2017 | OLA_0000017609 | OLA_0000017610 | Email from M, McKenna to E. Pressly dated 1-4-2017; subject: Re: Checking in, NYE edition | No Objection |
| 357 | 11/23/2016 | | | Article entitled "L'Oreal sued by California startup over patent" in www.marketwatch.com dated 11-23-2016 | No Objection |
| 358 | 4/28/2016 | OLA_0000082785 | OLA_0000082840 | Email from T. Walden to A. Maslo et al. dated 4-28-2016; subject: Employee Handbook and Related Documents | No Objection |
| 359 | 12/1/2009 | | | 16 C.F.R. § 225.5 Disclosure of material connections | No Objection |
| 360 | 3/5/2015 | OLA_0000106909 | OLA_0000106916 | Email from E. Holz to dean@olaplex.com dated 3-5-2015; subject: Re: HAIR FORUMS - CORRECTED | No Objection |
| 361 | 3/9/2015 | OLA_0000106917 | OLA_0000106924 | Email from E. Holz to dean@olaplex.com dated 3-9-2015; subject: Re: HAIR FORUMS | No Objection |
| 362 | 8/9/2016 | OLA_0000098285 | OLA_0000098226 | Email from T. Walden to Darcy Christal dated 8-9-2016; subject: Re: Advocate Guide | No Objection |
| 363 | 3/7/2016 | OLA_0000097873 | OLA_0000097874 | Email from D. Christal to T. Walden dated 3-7-2016; subject: Re: Two Social Media Posts | No Objection |
| 364 | | OLA_0000075795 | OLA_0000075795 | Olaplex's Sales and Gross Profit (Excel) | No Objection |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 364A | | | | Olaplex Income Statement from April 2015 to December 2015 | COMP; H; FO |
| 364B | | | | Olaplex Income Statement from April 2015 to December 2015 | COMP; H; FO |
| 365 | 10/24/2016 | OLA_0000097503 | OLA_0000097503 | Emails ending with email from T. Walden to D. Christal; subject: olaplex Sales for 2016 - Units and Dollars.xlsx | No Objection |
| 366 | | OLA_0000075799 | OLA_0000075799 | Olaplex Sales revenues | No Objection |
| 367 | 8/16/2015 | OLA_0000064224 | OLA_0000064224 | Email from jeff@olaplex.com to Sarah Lim dated 8-16-2015; subject: Fwd: Earthly Body/Colorphlex | No Objection |
| 368 | 5/4/2016 | OLA_0000019657 | OLA_0000019659 | Email from J. Iturralde to M. Heines, J. Schwartz, S. Gaspard, M. Spinks, J. Franklin, dated May 4, 2016 | No Objection |
| 369 | 8/7/2015 | OLA_0000015991 | OLA_0000016003 | Email from D. Christal to A. Povalej dated 8-7-2015; subject: Re: Olaplex/Sexy hair Patent Infringement | No Objection |
| 400 | 5/27/2017 | | | Expert Report and Declaration of Karl Kronenberger on behalf of Plaintiff BehindTheChair.com | No Objection |
| 403 | | SC0001419 | SC0001429 | SalonCentric Sales Data | No Objection |
| 411 | 8/16/2016 | LO_USA0073581 | LO_USA0073582 | Email from P. Schiraldi to B. Fontaine "RE: Bonder Survey Results - update" | No Objection |
| 423 | | SC0000981 | SC0001010 | Charts entitled "Olaplex Performance" and "PPD Bonder Performance" | No Objection |
| 431 | 7/1/2015 | LO_USA0026569 | LO_USA0026670 | Email:  FW: presentations for the OLIVIA Meeting - ALERT with attachment entitled Project Olivia Investment Committee July 1, 2015 | No Objection |
| 436 | 5/9/2016 | LO_USA0040038 | LO_USA0040075 | Email: FW: Bond protectors | No Objection |
| 471A | 9/15/2014 | OLA_0000080520 | OLA_0000080521 | Email from K. Funk to B. Fontaine Re: "Agenda - Olaplex Call 2014 09 15" | No Objection |
| 472A | 12/17/2018 | | | Page "Who We Are" from www.saloncentric.com | No Objection |
| 474 | 10/25/2016 | OLA_0000089877 | OLA_0000089889 | Email from J. Schwartz to S. Orzel Re: "SC Contract" | No Objection |
| 475 | 4/6/2015 | LO_USA0035575 | LO_USA0035576 | Email from P. Sharnsky to R. Dolden "RE: Project Olivia" | No Objection |
| 476 | 4/15/2015 | LO_USA0007916 | LO_USA0007917 | Email from R. Dolden to K. O'Rourke "Fwd: Olivia: next steps" | No Objection |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 503 | 8/22/2014 | LO_USA0064698 | LO_USA0064699 | Email from K. Hamilton Re: "Olaplex Update Meeting Recap" | No Objection |
| 504 | 9/16/2014 | LO_USA0065164 | LO_USA0065167 | Email from K. Hamilton to C. Goget "RE: Olaplex Update Meeting Recap 12 Sept 2014" | No Objection |
| 506 | 4/10/2015 | LO_USA0039285 | LO_USA0039289 | Email from T. Re to K. Hamilton, H. Lam, C. Goget, F. Boulineau "RE: FOX - RM and safety Action Plan" | No Objection |
| 507 | 12/14/2016 | LO_USA0039907 | LO_USA0039907 | Material listings | No Objection |
| 508 | 10/12/2016 | LO_USA0039957 | LO_USA0039982 | Bonding Protection Routine for Stronger Reinforced Cared for Hair | |
| 509 | 1/13/2016 | LO_USA0064029 | LO_USA0064030 | Chart of Bonding Test with Bleach | No Objection |
| 511 | 8/18/2014 | LO_USA0064683 | LO_USA0064685 | Email from K. Hamilton to C. Goget "FW: Olaplex data for TCEP" | No Objection |
| 513 | 7/20/2015 | LO_USA0067470 | LO_USA0067497 | Stylist Workshop- Bonding Additive w/Treatment Formula #'s:  Additive: 37462 RDK, Treatment: 1129634IN3 | No Objection |
| 514 | 8/27/2014 | LO_USA0008203 | LO_USA0008203 | Email from K. Hamilton Re: "Olaplex Update Meeting Recap" | No Objection |
| 515 | 4/22/2010 | LO_USA0074958 | LO_USA0074980 | Hair Fiber Transformation Evaluation of Bis-Maleimides | No Objection |
| 516 | 12/20/2018 | | | Defendants' Objections and Responses to Plaintiffs' Fifth Set of Interrogatories (Nos. 13-20) | H; 105 |
| 517 | 8/23/2018 | LO_USA0021275 | LO_USA0021458 | Laboratory Notebook L11455 (Hamilton 2) | No Objection |
| 518 | 2/12/2019 | | | Expert Report of Benny D. Freeman, PhD on Non-Infringement of U.S. Patent Nos. 9,498,419 AND 9,668,954 | FO, H, REL |
| 519 | 2/12/2019 | | | Exhibit 182 to Expert Report of Benny D. Freeman, PhD on Non-Infringement - List of Additional Documents and Materials Considered | FO, H |
| 520 | 1/29/2019 | | | Expert Report of Benny D. Freeman, PhD on Invalidity of U.S. Patent Nos. 9,498,419 AND 9,668,954 | FO, H, REL |
| 521 | 1/29/2019 | | | Exhibit 86 to Expert Report of Benny D. Freeman, PhD on Invalidity -  List of Documents and Materials Considered | FO, H |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 522 | 11/22/2016 | | | Exhibit 1 to Expert Report of Benny D. Freeman, PhD on Invalidity -  U.S. Patent 9,498,419 | No Objection |
| 523 | 6/6/2017 | | | Exhibit 2 to Expert Report of Benny D. Freeman, PhD on Invalidity - U.S. Patent 9,668,954 | No Objection |
| 524 | 8/4/2015 | | | Exhibit 117  to Expert Report of Benny D. Freeman, PhD on Invalidity - U.S. Patent 9,095,518 | H |
| 525 | | | | Exhibit 84 to Expert Report of Benny D. Freeman, PhD on Invalidity - Freeman CV | FO, H |
| 526 | 5/16/2006 | | | Exhibit 51 to Expert Report of Benny D. Freeman, PhD on Invalidity - U.S. Patent 7,044,986 | H |
| 527 | 12/19/2002 | | | Exhibit 48 to Expert Report of Benny D. Freeman, PhD on Invalidity -  U.S. Patent Application 2002/0189034 | H |
| 530 | 1/29/2019 | | | Expert Report of Peter Smith Regarding Digital Computer Forensics | H |
| 531 | | OLA_0000106926 | OLA_0000106931 | HAIR FORUMS .xls | H; FO |
| 532 | | | | Exhibits A to I-12 to Smith Expert Report | H; COMP; FO |
| 533 | | OLA_0000019116 | OLA_0000019116 | Spreadsheet of Social Media Manager contact information | H; COMP; FO |
| 534 | | OLA_0000019117 | OLA_0000019117 | Attachment to E. Holz email identifying IG account names and passwords (Excel) | H; COMP; FO |
| 535 | 3/21/2015 | OLA_0000106943 | OLA_0000106958 | Email from E. Holz to D. Christal Re: "ABCH Article Screenshots" | H; COMP; FO |
| 536 | 5/23/2015 | OLA_0000016695 | OLA_0000016697 | Email from A. McDonald to Martine@olaplex.com "Re: KNOCK OFF POST" | No Objection |
| 603 | 11/22/2016 | | | United States Patent Number 9,498,419 | No Objection |
| 605 | | PABST002507 | PABST002553 | Document entitled "Demande de Brevet D'Invention" (in French), Pub. No. 3007642 | No Objection |
| 606 | | PABST000408 | PABST000409 | Document entitled "权利要求书" (Patent Claim) (in Mandarin), HK3570 | No Objection |
| 607 | 8/28/2014 | | | Assignment from E. Pressly and C. Hawker to Liqwd, Inc. | No Objection |
| 608 | 2/5/2015 | | | United States Patent Application Publication No. 2015/0034117 | No Objection |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 610 | 5/6/2014 | | | Instagram post by Tracey Cunningham | No Objection |
| 611 | 6/1/2014 | | | Email from D. Christal to slim@olaplex.com Re: "Olaplex new directions" | H; FO; COMP; REL; DIS |
| 612 | 3/4/2014 | OLA_0000100397 | OLA_0000100449 | Text messages between Tracey Cunningham and Dean Christal | H; FO; Q |
| 613 | 2/15/2014 | OLA_0000099886 | OLA_0000099886 | Email from D. Christal to T. Cunningham Re: "Olaplex packaging" | H; FO; COMP |
| 614 | 3/14/2014 | OLA_0000109315 | OLA_0000109315 | Email from D. Christal to T. Cunningham Re" Olaplex agreement" | No Objection |
| 615 | 5/1/2014 | LO_USA0010391 | LO_USA0010392 | LAUNCHPAD article "The Power of One," by Amy Dodds | No Objection |
| 616 | 4/9/2014 | OLA_0000015593 | OLA_0000015593 | Email from D. Christal to C. Cunningham Re: "Read ASAP for Launchpad" | No Objection |
| 617 | 3/23/2014 | OLA_0000107856 | OLA_0000107856 | Email from D. Christal to T. Cunningham Re: "Letter of Intent" | No Objection |
| 618 | 2/17/2016 | OLA_0000110731 | OLA_0000110731 | Email from D. Christal to T. Cunningham Re: "Olaplex/Liqwd deal" | No Objection |
| 619 | 1/28/2016 | OLA_0000024021 | OLA_0000024022 | Email from D. Christal to T. Cunningham "Re: Google Alert - Tracey Cunningham" | H; FO; REL |
| 621 | 12/5/2018 | | | Defendants' Notice of Deposition of Tyler Krebs | No Objection |
| 622 | 12/17/2018 | | | Tyler Krebs LinkedIn profile | No Objection |
| 623 | 9/19/2018 | OLA_0000098496 | OLA_0000098497 | Email from jeff@olaplex.com to M. Spinks, S. Murphy "Re: [EXT] Fwd: #4 and #5" | No Objection |
| 731 | 12/15/2018 | | | Jeff Schwartz LinkedIn profile | H; CP |
| 732 | 5/5/2016 | OLA_0000084704 | OLA_0000084705 | Email from T. Walden to J. Schwartz "Re: Employee Handbook and Related Documents" | H; CP |
| 733 | 12/2/2015 | SC0000248 | SC0000250 | Email from J. Schwartz to S. Orzel "Re: Store Sale" | H; FO |
| 734 | 5/21/2015 | OLA_0000020368 | OLA_0000020369 | Email from Darcy Christal to J. Schwartz "Fwd: KNOCK OFF POST" | H; FO |
| 735 | 2/16/2015 | OLA_0000022020 | OLA_0000022020 | Email from J. Schwartz to P. Palladino, S. Massie Ree: "Olaplex Knock-off" | No Objection |
| 736 | 6/24/2015 | OLA_0000020220 | OLA_0000020220 | Email from K. Helmers to J. Schwartz Re: "Knock off comparisons - Invitation to collaborate" | H; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 737 | 4/20/2015 | OLA_0000092270 | OLA_0000092272 | Email from J. Schwartz to M. Spinks "RE: resending from original date sent 04/09/2015" | H; FO |
| 738 | 12/17/2015 | OLA_0000073472 | OLA_0000073472 | Email from J. Schwartz to J. Franklin, J. Iturralde, M. Brwona, R. Boyd, F. Fulco, M. Heines, and D. Christal Re: "FHI NeoBond" | H; FO |
| 739 | 11/21/2018 | | | Defendants' Notice of Deposition of Plaintiffs Pursuant to Rule 30(b)(6) | No Objection |
| 740 | | | | Thermo Scientific Instructions BM(PEG)2 and BM(PEG)3 | No Objection |
| 741 | 6/1/2014 | LO_USA0008192 | LO_USA0008196 | Material Safety Data Sheet for Olaplex Bond Multiplier No. 1 | No Objection |
| 742 | 7/4/1905 | | | Langmuir paper: "Improved Methodology for the Preparation of Water-Soluble Maleimide-Functionalized Small Gold Nanopartides" | No Objection |
| 743 | 8/29/2014 | LO_USA0010810 | LO_USA0010868 | International Application No. PCT/US2014/049388 | No Objection |
| 744 | 7/15/2014 | OLA_0000080790 | OLA_0000080790 | Email from E. Pressly to E. Kimble, J. Goff Re: "Alternate Olaplex recipe" | No Objection |
| 745 | 12/1/2014 | LO_USA0010745 | LO_USA0010749 | Material Safety Data Sheet Olaplex Bond Multiplier No. 1 | No Objection |
| 746 | 5/15/2015 | LO_USA0068275 | LO_USA0068284 | Pressly Declaration (Keratin Treatment Formulations and Methods) | No Objection |
| 747 | 11/22/2016 | | | United States Patent 9,498,419 | No Objection |
| 748 | 8/27/2015 | OLA_0000015922 | OLA_0000015922 | Email from D. Christal to E. Pressly "Re: Henkel bonding vs. Olaplex" | No Objection |
| 749 | 4/1/2015 | | | DS Laboratories Material Data Sheet for RO. TOPIA FRACTAL ENERGIZER | No Objection |
| 752 | 11/6/2009 | | | "The Power of Thiol-ene Chemistry" published in Journal of Polymer Science | H; DIS; REL |
| 753 | 2/9/2010 | | | "Thiol-click chemistry: a multifaceted toolbox for small molecule and polymer synthesis" published in Chemical Society Reviews | H; DIS; REL; FO |
| 754 | 8/1/2014 | LO_USA0010810 | LO_USA0010868 | International application no. PCT/US2014/049388 | H; FO; REL |
| 755 | 2/5/2015 | | | International Application No. PCT/US2014/049388; Internatonal Pub. No. WO 2015/017768 A1 | H; FO; REL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 756 | 6/1/2014 | | | Material Safety Data Sheet Olaplex Bond Multiplier No. 1 | H; FO |
| 757 | 12/12/2014 | UCSB000815 | UCSB000821 | Email from C. Hawker to E. Khoschel "Re: Emailing Behind The Chair - Articles: Hair Colour Technology" | H; FO |
| 758 | 11/6/2014 | UCSB001241 | UCSB001242 | Email from C. Hawker to P. Allen Re: Olaplex | H; FO |
| 759 | 12/18/2014 | | | Email from C. Hawker to E. Pressly "Fw: Barry Arkles" | H; FO |
| 760 | | | | Intentionally Left Blank | |
| 761 | | UCSB000273 | UCSB000341 | UCSB Presentation "Success stories in commercial functional materials - from hair care to pharmaceuticals" | H; FO |
| 762 | | UCSB000251 | UCSB000272 | UCSB Presentation "Central Role of Chemistry" | H; FO |
| 800 | 5/14/2014 | OLA_0000100184 | OLA_0000100186 | Email from D. Christal to M. Rector-Gable Re: My Letter-- | No Objection |
| 801 | 12/2/2017 | OLA_0000067603 | OLA_0000067620 | Confidential Binding Settlement Term Sheet between Behind the Chair and  Christal, Olaplex and Liqwd | No Objection |
| 802 | 7/10/2014 | | | Olaplex Instagram Post re Joe Santy | No Objection |
| 803 | 10/11/2014 | OLA_0000095575 | OLA_0000095576 | Email from D. Christal to P. Sharnsky Re: "Exchange with Lanza/Olaplex" | No Objection |
| 804 | 7/22/2015 | OLA_0000097251 | OLA_0000097251 | Email from D. Christal to P. Sharnsky "Fwd: Big Sexy Patent Infringment" | No Objection |
| 805 | 12/20/2017 | | | Witness Statement of Dean Christal | No Objection |
| 806 | 4/20/2015 | OLA_0000092270 | OLA_0000092272 | Email from J. Schwartz to M. Spinks "RE: resending from original date sent 04/09/2015" | No Objection |
| 807 | 10/7/2015 | OLA_0000015867 | OLA_0000015869 | Email from D. hristal to Olaplex employees Re: "Letter to post starting tomorrow early" | No Objection |
| 808 | | | | Tracey Cunningham Instagram posts | No Objection |
| 809 | 8/13/2015 | OLA_0000014434 | OLA_0000014437 | Email from S. Reiss to D. Christal "RE: OLAPLEX and Modern Salon" | No Objection |
| 810 | 9/18/2015 | OLA_0000024064 | OLA_0000024067 | Email from D. Christal to S. Reiss "Re: OLAPLEX story picked up by Google Alert - hair salon" | No Objection |
| 811 | 4/9/2014 | OLA_0000015593 | OLA_0000015593 | Email from D. Christal to T. Cunningham Re: "Read ASAP for Launchpad" | No Objection |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 812 | 1/27/2017 | OLA_0000067413 | OLA_0000067416 | Declaration of Dean Christal in Support of Defendants' Motion for Summary Adjudication in Behind the Chair Litigation | No Objection |
| 813 | 6/11/2015 | | | Email from R. Dolden to D. Christal Re: "Project Olivia" | No Objection |
| 850 | 12/18/2018 | | | Subpoena to to E. Holz to Testify at a Deposition in a Civil Action | No Objection |
| 851 | 12/20/2018 | | | Evanice Holz LinkedIn profile | No Objection |
| 852 | 2/21/2015 | OLA_0000106892 | OLA_0000106896 | Email from E. Holz to Dean and Darcy Christal Re: "Olaplex mentions on blogs & forums" | H |
| 853 | 3/5/2015 | OLA_0000106909 | OLA_0000106916 | Email from E. Holz to D. Christal Re: HAIR FORUMS - CORRECTED with attachment | H; COMP |
| 854 | 3/13/2015 | OLA_0000106925 | OLA_0000106931 | Email from E. Holz to Dean and Darcy Christal Re "30+ NEW GROUPS & FORUMS" with attachment | H |
| 855 | 3/21/2015 | OLA_0000106943 | OLA_0000106958 | Email from E. Holz to Dean and Darcy Christal Re: "ABCH Article Screenshots" with attachment | H; Q |
| 856 | 6/16/2015 | OLA_0000014644 | OLA_0000014647 | Email from E. Holz to Darcy Christal Re: Social Media Reports | H |
| 857 | 4/8/2015 | OLA_0000016703 | OLA_0000016704 | Email from E. Holz to M.Berkshire Re: [PICS] Khloe Kardashian Blonde - star Shows Off Bright New Hair Style - Hollywood Life | H |
| 858 | 4/27/2015 | OLA_0000018705 | OLA_0000018705 | Email from E. Holz to T. Katz Re: "Files Shared" | H |
| 859 | 5/30/2015 | OLA_0000018145 | OLA_0000018146 | Email from martine@olaplex.com to E. Holz Re: "HAIR FORUM/GROUP ASSIGNMENT SHEET" | H |
| 860 | 6/19/2015 | OLA_0000018564 | OLA_0000018566 | Email from E. Holz to Slim@olaplex.com Re: "Ets Excel.xlsx - Invitation to edit" | H |
| 861 | 10/6/2015 | OLA_0000134324 | OLA_0000134325 | Email from E. Holz to J. Schwartz Re: "ET Response to 'The Photo'" | H |
| 862 | 3/21/2015 | | | SalonGeek posts | H; FO; DIS; AU |
| 863 | 3/22/2015 | | | Reddit FancyFollicles website printout | H; FO; DIS; AU |
| 864 | 3/21/2015 | | | hairbrained Archive: "Olaplex for the win!! :)" | H; FO; DIS; AU |
| 865 | 4/1/2016 | OLA_0000083122 | OLA_0000083164 | Olaplex LLC Employee Handbook | No Objection |
| 866 | | | | Exhibit A to Freeman Invalidity Report | FO, H |
| 867 | | | | Exhibit B to Freeman Invalidity Report | H |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 868 | | | | Exhibit C to Freeman Invalidity Report | COMP, FO, H |
| 869 | | | | Exhibit D to Freeman Invalidity Report | COMP, FO, H |
| 870 | | | | Exhibit E to Freeman Invalidity Report | COMP, FO, H |
| 871 | | | | Exhibit F to Freeman Invalidity Report | COMP, FO, H |
| 872 | | | | Exhibit G to Freeman Invalidity Report | COMP, FO, H |
| 873 | | | | Exhibit H to Freeman Invalidity Report | COMP, FO, H |
| 874 | | | | Exhibit I to Freeman Invalidity Report | COMP, FO, H |
| 875 | 2/12/2019 | | | Expert Report of Leigh Fatzinger | H |
| 876 | 2/8/2019 | | | Defendants' Answer and Defenses to Plaintiff's Third Amended Complaint and Amended Counterclaims | H |
| 877 | 1/29/2019 | | | Expert Report of Peter Smith Regarding Digital Computer Forensics | H |
| 878 | 4/27/2015 | OLA_0000018705 | OLA_0000018705 | Email from E. Holz to T. Katz Re: "Files Shared" | H; FO |
| 879 | | | | Zevastian MIA NYC LA (@zevastianbeautyplace) Instagram profile | H; FO; DIS; AU |
| 880 | | | | Tracey Cunningham (@traceycunningham1) Instagram profile | H; FO; DIS; AU |
| 881 | 1/29/2019 | | | Rhonda Harper Expert Report | H |
| 882 | 3/13/2015 | OLA_0000100862 | OLA_0000100868 | Email from E. Holz to dean@olaplex.com and Darcy Christal Re: "30+ NEW GROUPS & FORUMS" with attachment | H; FO; Q |
| 883 | 11/27/2018 | | | Subpoena to V. Laris to Testify at a Deposition in a Civil Action | No Objection |
| 884 | 12/4/2017 | OLA_0000067601 | OLA_0000067602 | Witness Statement of Vicki Laris | No Objection |
| 885 | 3/6/2014 | OLA_0000114858 | OLA_0000114858 | Email from V. Laris to info@olaplex.com Re: Interested in product | No Objection |
| 886 | 3/7/2014 | OLA_0000116817 | OLA_0000116818 | Email from V. Laris to info@olaplex.com Re: Olaplex | No Objection |
| 887 | 3/21/2014 | OLA_0000114707 | OLA_0000114709 | Email from V. Laris to info@olaplex.com Re: Olaplex | No Objection |
| 888 | 4/5/2014 | OLA_0000114304 | OLA_0000114306 | Email from V. Laris to info@olaplex.com Re: Olaplex | No Objection |
| 889 | 5/9/2014 | OLA_0000116979 | OLA_0000116981 | email from V. Laris to info@olaplex.com Re: Olaplex | No Objection |
| 890 | 6/2/2014 | OLA_0000116912 | OLA_0000116914 | Email from V. Laris to info@olaplex.com Re: Olaplex | No Objection |
| 891 | 6/13/2014 | OLA_0000111077 | OLA_0000111080 | Email from V. Laris to info@olaplex.com Re: Olaplex | No Objection |
| 892 | 10/30/2014 | OLA_0000015191 | OLA_0000015191 | Email from V. Laris to D. Christal Re: "Salon west Tampa" | No Objection |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 893 | 11/11/2013 | | | vlaris11 Instagram post | H; FO; AU; DIS |
| 894 | 11/11/2013 | | | vlaris11 Instagram post | H; FO; AU; DIS; COMP |
| 900 | 1/29/2019 | | | Opening Expert Report of Douglas D. Schoon, M.S. | No Objection |
| 901 | 2/2/2012 | LO_USA0008859 | LO_USA0008874 | U.S. Patent Application 2012/0024309 | H; FO |
| 902 | 8/4/2015 | LO_USA0009520 | LO_USA0009542 | U.S. Patent 9,095,518 | COMP |
| 903 | 2/26/2019 | | | Innovation Awards - Schoon Scientific | No Objection |
| 904 | 3/11/2016 | | | Olaplex Facebook post | H; FO; CP |
| 905 | 9/16/2014 | LO_USA0065164 | LO_USA0065167 | Email from K. Hamilton to C. Goget RE: "Olaplex Update Meeting Recap 12 Sept 2014" and attachment | H; FO |
| 906 | 8/23/2018 | LO_USA0021096 | LO_USA0021274 | Laboratory Notebook L11363 (Hamilton 1) | H; FO |
| 907 | 5/26/2015 | LO_USA0039163 | LO_USA0039165 | Email from A. Lahaye Re: "Olaplex experiment - Need your input ASAP" | H; FO |
| 908 | 8/25/2018 | LO_USA0022327 | LO_USA0022419 | Laboratory Notebook L11145 (Boulineau) | H; FO |
| 909 | 6/27/2018 | OLA_0000065453 | OLA_0000065504 | Final Written Decision PGR2017-00012 | MIL; H; REL; 403; CP; Incomplete Description of Redacted Document |
| 910 | 11/21/2018 | | | Subpoena to Testify at a Deposition in a Civil Action | No Objection |
| 911 | 4/15/2014 | | | vtgesther Instagram post | H; FO; DIS |
| 911A | | | | James Pooley Bio | H; MIL |
| 912 | 12/20/2017 | OLA_0000067563 | OLA_0000067574 | Witness Statement of Dean V. Christal | No Objection |
| 912A | 3/2/2019 | | | James Pooley, PLC - Services | H; MIL |
| 913 | 1/28/2019 | | | Declaration of Esther Vasquez in Support of Non-Party Esther Vasquez's Portion of Joint Stipulation Re:· Defendants' Motion to Compel Non-Party Esther Vasquez to Comply with Subpoena Duces Tecum and to Testify at Deposition | No Objection |
| 914 | 6/21/2014 | | | vtgesther Instagram post | No Objection |
| 914A | | | | Protecting Trade Secrets from Cyber and Other Threats from create.org | H |
| 915 | 6/23/2014 | | | vtgesther Instagram post | No Objection |
| 916 | 4/13/2018 | | | Witness Statement of Esther Vasquez | No Objection |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 916A | 12/20/2017 | OLA_0000067563 | OLA_0000067574 | Witness Statement of Dean V. Christal | No Objection |
| 917 | 6/27/2014 | OLA_0000108805 | OLA_0000108805 | Email to info@olaplex.com Re: Silicone? | H; FO |
| 918 | 10/1/2014 | OLA_0000108816 | OLA_0000108819 | Email to orders@olaplex.com Re: Olaplex Questions answered | H; FO |
| 920 | 2/12/2019 | | | Expert Report of Thomas Schultz, PH.D. | H; MIL |
| 921 | | OLA_0000094755 | OLA_0000094804 | Utility Patent for Keratin Treatment Formulations and Methods | No Objection |
| 922 | 1/29/2019 | | | Opening Expert Report of Douglas D. Schoon, M.S. | No Objection |
| 923 | 2/28/2018 | | | Report and Recommendation re Motions to Dismiss | H; REL |
| 924 | 6/18/2015 | LO_USA0002413 | LO_USA0002430 | Powerpoint: "Project Olivia Investment Committee - June 18, 2015" | No Objection |
| 925 | 8/23/2018 | LO_USA0021096 | LO_USA0021274 | Laboratory Notebook L11363 (Hamilton 1) | H; FO |
| 926 | 8/27/2014 | LO_USA0008203 | LO_USA0008203 | Email from K. Hamilton Re: Olaplex Update Meeting Recap | No Objection |
| 927 | 8/5/2014 | | | Maritime Beauty website: Olaplex No. 3 Hair Perfector 100ml product page | No Objection |
| 928 | 4/1/2017 | | | Material Safety Data Sheet for Olaplex Bond Perfector No. 3 | No Objection |
| 929 | 8/27/2014 | LO_USA0038996 | LO_USA0039007 | Email from B. Fontaine to C. Goget re MSDS | No Objection |
| 930 | 11/21/2018 | | | Subpoena to A. Gold Testify at a Deposition in a Civil Action | No Objection |
| 930A | 6/27/2018 | OLA_0000065453 | OLA_0000065482 | Excerpt from PTAB Final Written Decision PGR2017-00012 | H, MIL, REL, 403 |
| 931 | 2/27/2019 | | | Memorandum Order re Gold Deposition | No Objection |
| 932 | 1/30/2019 | | | Alan Gold Witness Statement | No Objection |
| 933 | 8/23/2013 | | | alangoldgroup Instagram post | No Objection |
| 934 | 6/20/2014 | | | Emails and Witness Statement of Alan Gold | H; FO; COMP |
| 950 | 1/29/2019 | | | Export Report of Professor Dominique Hanssens | No Objection |
| 951 | 6/20/2016 | | | Declaration of Dr. Dominique M. Hanssens in Support of Plaintiff's Reply to Motion for Preliminary Injunction | No Objection |
| 952 | 2/12/2019 | | | Expert Rebuttal Report of ·Professor Dominique Hanssens | No Objection |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 953 | 6/1/1985 | | | Article:  "Effects of Product Trial on Consumer Expectations, Demand, and Prices" by Patricia Goering | H; FO |
| 954 | 8/12/2011 | | | Declaration of Dominique M. Hanssens in Support of Defendant's Opposition to Plaintiff's Motion for Class Certification | No Objection |
| 955 | | | | Empirical Generalizations about Marketing Impact, edited by Dominique M. Hanssens | No Objection |
| 956 | 5/15/2018 | | | Excerpt from Videotaped Deposition of Tiffany Walden | H; CP; LR |
| 957 | 12/18/2018 | | | Excerpt from Videotaped Deposition of Jeff Schwartz | H; CP; LR |
| 958 | 7/20/2016 | | | Exhibit B-1 to Expert Report of Pete Smith - Lorealpro Instagram Page | H; FO; AU; CP |
| 959 | 8/20/2014 | BTC_PL 007098 | BTC_PL 007098 | Email correspondence between M. Rector-Gable and D. Christal Re: Olaplex Agreement | H; FO; REL |
| 960 | 4/13/2017 | | | Declaration of Dean Christal in Support of Defendants' Motion for Summary Adjudication | No Objection |
| 961 | 5/7/2012 | | | Declaration of Dr. Hanssens in Support of Defendant's Opposition to Plaintiff's Motion for Class Certification in Altamura v L'Oreal USA | H; FO; REL |
| 962 | 2/12/2019 | | | Second Expert Report of George G. Strong, Jr. | No Objection |
| 963 | 9/20/2016 | LO_USA0003439 | LO_USA0003544 | Kline Report:  Salon Hair Care: World Market Analysis and Opportunities - Published September 2016 | H; FO |
| 964 | 5/1/2018 | | | Kline Report: Salon Hair Care: U.S. Market Analysis and Opportunities - Published May 2018 | H; FO |
| 965 | 1/29/2019 | | | Expert Report of George G. Strong, Jr. | No Objection |
| 966 | 3/5/2019 | | | 3 by 3 matrix drawn by George at deposition | H; FO |
| 1000 | 1/29/2019 | | | Opening Expert Report of Edward T. Borish, Ph.D. | H, REL |
| 1000A | 2/12/2019 | | | Rebuttal Expert Report of W. Todd Schoettelkotte Relating to Olaplex's Damages | H |
| 1001 | | | | Intentionally Left Blank | |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 1001A | 12/21/2018 | | | Defendants' Sixth Supplemental Objections and Responses to Interrogatory No. 2 and First Supplemental Objections and Responses to Plaintiffs' Interrogatory Nos. 9 and 24 | H |
| 1002 | | | | Eslabondexx Bleach product page | H; FO |
| 1002A | | | | Table LO_USA0075976.xlsx (34 pages) | No Objection |
| 1003 | | | | Table LO_USA0075977.xslx - pH-Bonder 2016 (34 pages) | H; FO |
| 1004 | | | | Eslabondexx Bleach - 500gr - product page | H; FO |
| 1004A | 5/20/2014 | OLA_0000000027 | OLA_0000000031 | LiQWD Inc. License Agreement to Olaplex, LLC | No Objection |
| 1005A | | | | Intentionally Left Blank | |
| 1005 | 11/1/2016 | OLA_0000000032 | OLA_0000000048 | Amendment No. 1 to Liqwd Inc. License Agreement to Olaplex, LLC | No Objection |
| 1006 | | | | Uberliss Bond Trial Kit website page | NVP, DIS, AU, FO, H |
| 1006A | 7/1/2015 | LO_USA0026570 | LO_USA0026594 | Powerpoint: "Project Olivia Investment Committee, July 1, 2015" | No Objection |
| 1007 | 1/31/2019 | | | U.S. Patent Application 2019/0029945 | H; FO; REL |
| 1008 | 2/12/2019 | | | Rebuttal Expert Report of Edward T. Borish, Ph.D. | H |
| 1009 | | LO_USA0010257 | LO_USA0010275 | Exhibit 9 to Invalidity Report of Freeman | H |
| 1010 | | LO_USA0075041 | LO_USA0075259 | Exhibit 15 to Invalidity Report of Freeman | H |
| 1010A | 1/29/2019 | | | Fulcrum Financial Inquiry LLP's Report in connection with Liqwd, Inc. and Olaplex LLC vs. L'Oreal USA, Inc., et al. | H |
| 1011 | 4/26/2018 | | | Testimony of David Mark Haddleton, Day 3, In the High Court of Justice Business and Propert Courts of England and Wales Intellectual Prperty Lists Patents Court | No Objection |
| 1011A | 12/21/2018 | | | Defendants' Sixth Supplemental Objections and Responses to Interrogatory No. 2 and First Supplemental Objections and Responses to Plaintiffs' Interrogatory Nos. 9 and 24 | H |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 1012 | | LO_USA0075919 | LO_USA0075975 | Exhibit 17 to Invalidity Report of Freeman - International Patent Application Pub. No. WO 2008/072672 ("Watanabe 672") | H |
| 1012A | 1/11/2019 | | | Defendants' Answer and Defenses to Plaintiffs' Second Amended Complaint and Counterclaims | H |
| 1013 | | LO_USA0070057 | LO_USA0070079 | Exhibit 13 to Invalidity Report of Freeman - U.S. Patent Application Publication No. US 2009/0126756 ("Syed") | H |
| 1013A | 2/12/2019 | | | Second Expert Report of George G. Strong, Jr. | No Objection |
| 1014 | | LO_USA0075743 | LO_USA0075745 | Exhibit 17 to Invalidity Report of Freeman | AU, FO, H, REL |
| 1015 | | | | Intentionally Left Blank | |
| 1016 | | | | Intentionally Left Blank | |
| 1017 | | | | Intentionally Left Blank | |
| 1018 | 5/29/1969 | LO_USA0075788 | LO_USA0075801 | Exhibit 26 to Invalidity Report of Freeman - U.S. Patent No. 3,634,022 ("Robbins") | H |
| 1019 | 9/16/1969 | | | "Endgroup Analysis of Isolated Poly (methyl methacrylate) from Graft Copolymers of Wool" | H; FO; REL |
| 1020 | 7/1/1996 | | | "Reduction of human hair by cysteamine and ammonium thioglycolate: A correlation of amino acid analysis and single-fiber tensile kinetic data" | H; FO |
| 1021A | 10/14/1969 | LO_USA0070499 | LO_USA0070503 | U.S. Patent No. 3,472,604 (Exhibit 6 to Expert Report of Benny Freeman) | H |
| 1022 | | LO_USA0075746 | LO_USA0075760 | Polymerization into Human Hair, Clarence Robbins et al. (Exhibit 25 to Expert Report of Benny Freeman) | H; FO |
| 1023A | | LO_USA0075788 | LO_USA0075801 | "The Thiol-Michael Addition Click Reaction:  A Powerful and Widely Used Tool in Materials Chemistry" - Ex. 36 to Invalidity Report of Freeman | H; FO |
| 1025 | 2/12/2019 | | | Expert report of Peter N. Golder, Ph.D. | H |
| 1026 | 7/1/2015 | LO_USA0041358 | LO_USA0041382 | Powerpont:  "Project Olivia Investment Committee, 7/1/15" | No Objection |
| 1027 | | | | Exhibit 23 to George Strong Expert Report:  Comparison of Olaplex and L'Oréal Margins, Q2 2015 - Q3 2018 | No Objection |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 1028 | 11/1/2016 | OLA_0000000032 | OLA_0000000048 | Amendment No. 1 to Liqwd Inc. License Agreement to Olaplex, LLC | No Objection |
| 1029 | | | | Article in the Strategic Management Journal, 1998, entitled "First-Mover (Dis)advantages: Retrospective and Link With the Resource-Based View," by Lieberman and Montgomery | No Objection |
| 1030 | 7/6/2017 | | | Memorandum Order re Motion for Preliminary Injunction | No Objection |
| 1031 | 10/15/2018 | | | Report and Recommendation re Motion for Preliminary Injunction | No Objection |
| 1032 | 1/16/2018 | | | United States Court of Appeals for the Federal Circuit, Notice of Entry of Judgment Accompanied by Opinion | No Objection |
| 1033 | 5/16/2017 | | | Excerpt of Deposition Transcript of Todd Schoettelkotte | No Objection |
| 1034 | 5/25/2017 | | | Rebuttal Declaration of Edward T. Borish, Ph.D. in Support of Olaplex's Motion for a Preliminary Injunction | H |
| 1035 | 5/11/2017 | | | Excerpt of Deposition Transcript of Leslie Marino | No Objection |
| 1036 | 5/11/2017 | | | Excerpt of Deposition Transcript of Leslie Marino | No Objection |
| 1050 | 3/3/2019 | | | Email chain between C. Tallman and T. Walden re deposition | No Objection |
| 1051 | 12/3/2018 | | | Subpoena to C. Tallman to Testify at a Deposition in a Civil Action | No Objection |
| 1052 | 5/3/2014 | | | Text messages between C. Tallman and D. Christal | No Objection |
| 1053 | 4/11/2014 | | | Courtney Tallman Hair (@courtneytallmanhair) Instagram post | No Objection |
| 1054 | | | | Courtney Tallman Hair (@courtneytallmanhair) Instagram post | No Objection |
| 1055 | 4/13/2014 | | | Courtney Tallman Hair (@courtneytallmanhair) Instagram post | No Objection |
| 1056 | 4/18/2014 | | | Courtney Tallman Hair (@courtneytallmanhair) Instagram post | No Objection |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 1057 | 5/2/2014 | | | Courtney Tallman Hair (@courtneytallmanhair) Instagram post | No Objection |
| 1058 | 5/7/2014 | | | Courtney Tallman Hair (@courtneytallmanhair) Instagram post | No Objection |
| 1059 | 6/21/2014 | | | Email chain between C. Tallman and D. Christal | No Objection |
| 1060 | 3/20/2018 | | | Email chain between C. Tallman and R. Boakes | H; FO |
| 1070 | 11/3/2011 | | | Nondisclosure Agreeement between LiQWD and Gelest NDA | No Objection |
| 1071 | 8/16/2016 | | | Gelest Process Document, BISAMINOPROPYL DIGLYCOL DIMALEATE- XG-2820, Version 1 | H; FO; REL |
| 1072 | 11/10/2016 | | | Gelest Process Document, BISAMINOPROPYL DIGLYCOL DIMALEATE- XG-2820, Version 2 | H; FO; REL |
| 1073 | 12/14/2018 | | | Gelest Process Document, BISAMINOPROPYL DIGLYCOL DIMALEATE- XG-2820, Version 3 | H; FO; REL |
| 1074 | 10/21/2014 | | | Alternative Process document for XG-2820, 20wt% 2,2'-ethylenedioxy bis(ethylaimnonium)-bis (hemi-maleate) | H; FO; REL |
| 1075 | 1/6/2014 | GELEST 0005 | GELEST 0134 | Batch of Gelest Invoices, Shipped to Cosway or Liqwd | H; FO; REL; COMP |
| 1076 | 7/25/2018 | GELEST 0135 | GELEST 0235 | Batch of emails from dave@olaplex.com to Gelest enclosing Purchase Orders | H; FO; REL; COMP |
| 1077 | | GELEST 0236 | GELEST 0325 | Batch of emails between Olaplex, Cosway and Gelest re: product shipments | H; FO; REL; COMP |
| 1078 | | GELEST 0236 | GELEST 0435 | Batch of emails between Olaplex, Cosway and Gelest re: product shipments and POs | H; FO; REL; COMP |
| 1079 | | GELEST 0436 | GELEST 0535 | Batch of emails between Olaplex, Cosway and Gelest re: product shipments and POs | No Objection |
| 1080 | | GELEST 0536 | GELEST 0610 | Batch of emails between Olaplex, Cosway and Gelest re: product shipments and POs | H; FO; REL; COMP |
| 1081 | 3/26/2015 | | | Olaplex FAQ on www.olaplex.com | No Objection |
| 1082 | 12/1/2014 | | | Material Safety Data Sheet Olaplex Bond Multiplier No. 1 | No Objection |
| 1083 | 6/2014 | | | Material Safety Data Sheet Olaplex Bond Perfector No. 2 | No Objection |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 1084 | 7/15/2014 | OLA_0000080790 | OLA_0000080790 | Email from E. Pressly to Gelest re "Alternate Olaplex recipe" | H |
| 1085 | 8/1/2014 | LO_USA0010810 | LO_USA0010868 | Certified copy of U.S. Provisional patent application 61/903,239 in Internation App. No. PCT/US2014/0493883 | H |
| 1086 | | | | Emails, Instagram posts, and text messages between T. Walden and S. Conde | No Objection |
| 1087 | 3/19/2018 | | | Email from S. Conde to R. Boakes Re: L'Oreal - Smartbond - Olaplex | No Objection |
| 1088 | 3/19/2018 | | | Email from S. Conde to R. Boakes Re: L'Oreal - Smartbond - Olaplex | H; FO |
| 1089 | 3/27/2014 | | | semamariehair Instagram post | No Objection |
| 1090 | 6/1/2014 | | | semamariehair Instagram post | No Objection |
| 1090A | 6/20/2014 | | | Cosway batch records for Olaplex Bond Multiplier Batch Code 4F1709 | No Objection |
| 1091 | 6/1/2014 | | | semamariehair Instagram post | No Objection |
| 1091A | 8/25/2014 | | | Cosway batch records for Olaplex Bond Multiplier Batch Code 4H2617 | No Objection |
| 1092 | 6/18/2014 | | | semamariehair Instagram post | No Objection |
| 1092A | 9/2/2014 | | | Cosway batch records for Olaplex Bond Multiplier Batch Code 4I0320 | No Objection |
| 1093 | 4/1/2014 | | | semamariehair Instagram post | No Objection |
| 1093A | 4/5/2017 | | | Cosway batch records for Olaplex Bond Multiplie Batch Code 7D0616 | No Objection |
| 1094 | 5/22/2014 | | | semamariehair Instagram post | No Objection |
| 1094A | 2/3/2015 | | | Cosway batch records for Olaplex BondPerfetcor and Hair Protector Multiplier Batch Code 5B0516 | H; CP |
| 1095A | 12/5/18, | | | Screenshot of S. Conde Text Messages Dated "Wednesday, Dec. 5," "Tuesday, Jan. 29"" | H; REL |
| 1095 | 1/9/2017 | | | Invoice #187786 to Olaplex from Cosway | H; FO |
| 1096A | 4/9/2018 | | | Email from S. Conde to R. Boakes Re: L'Oreal - Smartbond - Olaplex | H; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 1096 | 4/22/2014 | | | E-mail dated 4/22/2014 from Maggie Martinez to Susan McCarthy; Michelle Pienkos Mora attaching spreadsheets ( without attachments) | H; FO; CP |
| 1097 | 5/1/2014 | | | Cosway spreadsheets re Open orders status | H; FO |
| 1098 | 5/6/2014 | | | Email from D. Christal to S. McCarthy: Re: Hair perfector | H; FO |
| 1099 | 5/27/2014 | | | Email from Darcy Christal to S. McCarthy Re: "Fwd: Labels" | H; FO |
| 1100B | | | | Intentionally Left Blank | |
| 1100A | 1/29/2019 | | | Rhonda Harper Expert Report | H |
| 1100 | 7/11/2014 | | | Email from L. Sandoval to S. McCarthy Re: Olaplex MSDS sheets | H; FO |
| 1101A | | | | Tracey Cunningham (@traceycunningham1) Instagram profile | H; FO |
| 1101 | 7/1/2014 | | | Material Safety Data Sheet for Olaplex Bond Perfector No. 2/ Olaplex Hair Perfector No. 3t | No Objection |
| 1102A | 1/11/2019 | | | Defendants' Answer and Defenses to Plaintiffs' Second Amended Complaint and Counterclaims | H |
| 1102 | 7/21/2014 | | | Email from M. Mora to M. Martinez, R. Camacho, W. Mina, E. Garcia Re:  545-6500 | No Objection |
| 1103A | 9/29/2013 | | | 38 surprising facts about trust in social media | H |
| 1103 | 7/24/2014 | | | Email from M. Martinez to S. McCarthy re: GELEST | No Objection |
| 1104A | | | | Influence of social media in travel | H |
| 1104 | 11/7/2014 | | | Email from M. Martinez to Olaplex: FW: 545-6500 | No Objection |
| 1105 | 11/7/2014 | | | Gelest Packing List for shipment to Cosway | No Objection |
| 1106 | 11/11/2014 | | | Email from M. Martinez to D. Kaprielien Re: 545-6500 | No Objection |
| 1107 | 11/18/2014 | | | Email from P. Russo to S. McCarthy Re: Olaplex | No Objection |
| 1108 | 2/3/2015 | | | Email from D. Simon to Cosway employees Re: Olaplex 545-7035 | No Objection |
| 1109 | 9/4/2014 | | | Invoice #168649 to Olaplex from Cosway | No Objection |
| 1110 | 9/5/2014 | | | Invoice #168669 to Olaplex from Cosway | No Objection |
| 1111 | 8/6/2014 | | | Invoice #168034 to Olaplex from Cosway | No Objection |
| 1112 | 9/4/2014 | | | Invoice #168648 to Olaplex from Cosway | No Objection |
| 1113 | 7/17/2015 | | | Invoice #175768 to Olaplex from Cosway | No Objection |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 1114 | 8/23/2016 | OLA_0000094471 | OLA_0000094471 | Email string between S. McCarthy and D. Christal and T. Walden Re: Cosway agreement | H; FO |
| 1116 | 6/27/2013 | GELEST 0611 | GELEST 0672 | Polymer Development Batch Sheets, Reaction Batch Sheets, Record Sheets, Final Product Analysis Forms, and Invoices | H; FO; COMP |
| 3000 | 6/10/2015 | LO_USA0000010 | LO_USA0000013 | Presentation:  "A New Market Category: The Bond Builders" | H; FO; CP; 403 (cumulative, see, e.g., TX 924 ) |
| 3001 | 5/4/2015 | LO_USA0000104 | LO_USA0000108 | Document RE: "Olaplex Competitors" | H; FO; CP; 403 |
| 3002 | 1/28/2016 | LO_USA0000190 | LO_USA0000200 | Presentation:  "Competitive Landscape" | H; FO; CP; 403 |
| 3003 | 1/8/2016 | LO_USA0000261 | LO_USA0000262 | Document RE: "Launch of Treatment/Additive 'Virgin'" | H; FO; CP; 403 |
| 3004 | 6/17/2016 | LO_USA0000281 | LO_USA0000315 | Presentation:  "Bonding: A Growing Category" | H; FO; CP; 403 |
| 3005 | 7/22/2016 | LO_USA0000356 | LO_USA0000359 | Document RE: "Competitive Cheat Sheets" | H; FO; CP; 403 |
| 3006 | 8/18/2015 | LO_USA0000371 | LO_USA0000371 | Document RE: "Competitive Update: Growing Olaplex Competitors" | H; FO; CP; 403 |
| 3007 | 1/5/2016 | LO_USA0000389 | LO_USA0000389 | Document RE: "Haircare additives that prevent bonds in hair from breaking while lightening and coloring in salon" | H; FO; CP; 403 |
| 3008 | 1/26/2017 | LO_USA0000405 | LO_USA0000415 | Document RE: "Claims Concurrence Bonders, Pro Market" | H; FO; CP; 403 |
| 3009 | 10/28/2016 | LO_USA0000418 | LO_USA0000418 | Document RE: "Bond Competitive Overview" | H; FO; CP; 403 |
| 3010 | 4/12/2016 | LO_USA0000465 | LO_USA0000466 | Document RE: "Competitive Comparison" | H; FO; CP; 403 |
| 3011 | 11/9/2015 | LO_USA0000474 | LO_USA0000493 | Document RE: "Bondifyer: Environment Concurrentiel Claims" | H; FO; CP; 403 |
| 3012 | 8/28/2015 | LO_USA0000563 | LO_USA0000563 | Document RE: "Key Points" | No Objection |
| 3013 | 8/12/2015 | LO_USA0000584 | LO_USA0000593 | Document RE: "Keratin Complex Vital Shot" | H; FO; CP; 403; REL |
| 3014 | 8/18/2015 | LO_USA0000594 | LO_USA0000594 | Email from D. Burakov to A. Potin and others dated Aug. 18, 2015, subject: "Olaplex like products" | H; FO; CP |
| 3015 | 8/18/2015 | LO_USA0000595 | LO_USA0000609 | PowerPoint RE: "Olaplex like Products 2015" | H; FO; CP |
| 3016 | 6/17/2015 | LO_USA0000635 | LO_USA0000638 | Document RE: "Additive for Chemical Services" | H; FO; CP |
| 3017 | 6/17/2015 | LO_USA0000684 | LO_USA0000685 | Document RE: "Olivia - Like Products" | H; FO; CP |
| 3018 | 9/23/2015 | LO_USA0000749 | LO_USA0000759 | Document RE: "Competitive Landscape" | H; FO; CP |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3019 | 7/18/2016 | LO_USA0000876 | LO_USA0000877 | Letter from Olaplex LLC to customers dated July 19, 2016 | No Objection |
| 3020 | 7/15/2016 | LO_USA0001013 | LO_USA0001123 | Myra A. Hoshowski, Conditioning of Hair, Hair and Hair Care 65-104 (Dale H. Johnson ed., 1997) | Incorrect Description; H; FO; CP |
| 3021 | 10/30/2015 | LO_USA0001072 | LO_USA0001105 | StreetLink: New Product Releases | H; FO; CP; 403 (cumulative, see, e.g., TX 3040 ) |
| 3022 | 4/17/2016 | LO_USA0001318 | LO_USA0001386 | TrendVision Reports: Overview of Hair-Protecting Additives (April 2016) | H; FO; 403 (cumulative) |
| 3023 | 4/15/2016 | LO_USA0001583 | LO_USA0001583 | Document RE: "Bond Landscape" | H; FO; CP |
| 3024 | 12/19/2016 | LO_USA0001601 | LO_USA0001631 | StreetLink: The Bonding Additives Market Expands, Again | H; FO; CP; 403 (cumulative, see, e.g., TX 3040 ) |
| 3025 | 11/21/2014 | LO_USA0001898 | LO_USA0001921 | StreetLink "Olaplex 1st Imitator: An Open Letter From Olaplex's D. Christal" | H; FO; CP; Incorrect Description |
| 3026 | 6/5/2015 | LO_USA0002356 | LO_USA0002399 | TrendVision Reports: Overview of Hair-Protecting Additives (May 2015) | H; FO; 403 (cumulative) |
| 3027 | 6/19/2015 | LO_USA0002402 | LO_USA0002404 | Email chain ending with email from R. Dolden to D. Christal dated June 19, 2015, subject: "RE: Income Statement/Licensing/Liqwd Inc IP" | H; FO; 403; Privacy Privilege |
| 3028 | 8/31/2015 | LO_USA0002405 | LO_USA0002408 | Email chain ending with email from R. Dolden to D. Christal dated Aug. 31, 2015, RE: Meeting Dates | No Objection |
| 3029 | 6/13/2015 | LO_USA0002409 | LO_USA0002409 | Email chain ending with email from R. Dolden to D. Christal dated June 13, 2015, RE: Olivia | H; FO |
| 3030 | 9/1/2015 | LO_USA0002411 | LO_USA0002411 | Email from R. Dolden to D. Christal dated Sept. 1, 2015, subject: "Today" | No Objection |
| 3031 | 5/19/2015 | LO_USA0002412 | LO_USA0002412 | Email from D. Christal to R. Dolden dated May 19, 2015, Subject: Copy of Costed BOM's with margins | H; FO; CP |
| 3032 | 5/4/2015 | LO_USA0002431 | LO_USA0004646 | PowerPoint RE: "Olaplex Brand Snapshot, April 2015" | No Objection |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3033 | 6/15/2015 | LO_USA0002462 | LO_USA0002463 | Email chain ending with email from D. Christal to R. Dolden dated June 15, 2015, subject: "Income Statement/Licensing/Liqwd Inc IP | H; FO |
| 3034 | 5/18/2015 | LO_USA0002466 | LO_USA0002466 | Email from D. Christal to R. Dolden and M. Gringauz dated May 18, 2015, subject: "NDA for Meeting Tomorrow" | No Objection |
| 3035 | 6/11/2015 | LO_USA0002495 | LO_USA0002497 | Email chain ending with email from D. Christal to R. Dolden, dated June 11, 2015, RE: Project Olivia | H; FO |
| 3036 | 6/11/2015 | LO_USA0002498 | LO_USA0002500 | Email chain ending with from D. Christal to R. Dolden, dated June 11, 2015, RE: Project Olivia | H; FO |
| 3037 | 5/23/2015 | LO_USA0002506 | LO_USA0002511 | Email from R. Dolden to D. Christal, M. Gringauz, and R. Dolden, dated May 23, 2015, attaching Rodger D liq.pdf | No Objection |
| 3038 | 9/9/2016 | LO_USA0002817 | LO_USA0002889 | Document RE: "Quantitative Professional Blind Use Test" | H; FO; REL |
| 3039 | 7/22/2016 | LO_USA0002890 | LO_USA0002933 | Presentation RE: "pH-Bonder, Bond Protecting Additive, Trainer's Guide" | H; FO |
| 3040 | 11/23/2015 | LO_USA0002934 | LO_USA0002960 | StreetLink, Nov. 23, 2015 issue | H; FO |
| 3041 | 7/22/2016 | LO_USA0002961 | LO_USA0003004 | Presentation: "pH-Bonder, Bond Protecting Additive" | H; FO; 403 (cumulative, see, e.g., TX 3039) |
| 3042 | 7/31/2016 | LO_USA0004226 | LO_USA0004253 | Document RE: "NYTS, Matrix Bond Ultim8" | H; FO |
| 3043 | | | | Intentionally Left Blank | |
| 3044 | | | | Intentionally Left Blank | |
| 3045 | | | | Intentionally Left Blank | |
| 3046 | | | | Intentionally Left Blank | |
| 3047 | | | | Intentionally Left Blank | |
| 3048 | 9/1/2015 | LO_USA0004276 | LO_USA0004276 | Email from R. Dolden to D. Christal dated Sept. 1, 2015, subject: "Today" | No Objection |
| 3049 | 8/31/2015 | LO_USA0004277 | LO_USA0004280 | Email chain ending with email from R. Dolden to D. Christal dated Aug. 31, 2015, RE: Meeting Dates | No Objection |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3050 | 6/19/2015 | LO_USA0004281 | LO_USA0004283 | Email chain ending with email from R. Dolden to D. Christal dated June 19, 2015, subject: "RE: Income Statement/Licensing/Liqwd Inc IP" | H; FO |
| 3051 | 6/13/2015 | LO_USA0004284 | LO_USA0004284 | Email chain ending with email from R. Dolden to D. Christal dated June 13, 2015, RE: Olivia | H; FO |
| 3052 | 5/24/2015 | LO_USA0004285 | LO_USA0004285 | Email chain ending with email from R. Dolden to D. Christal dated May 24, 2015, RE: Rodger D liq.pdf | H; FO; CP |
| 3053 | 8/27/2015 | LO_USA0004286 | LO_USA0004288 | Email chain ending with email from D. Christal to R. Dolden dated Aug. 27, 2015, RE: Meeting Dates | No Objection |
| 3054 | 8/20/2015 | LO_USA0004289 | LO_USA0004291 | Email chain ending with email from D. Christal to R. Dolden dated Aug. 20, 2015, RE: Meeting Dates | 403 (cumulative) |
| 3055 | 8/7/2015 | LO_USA0004292 | LO_USA0004292 | Email chain ending with email from D. Christal to R. Dolden dated Aug. 7, 2015, RE: August 20? | 403 (cumulative) |
| 3056 | 8/10/2015 | LO_USA0004293 | LO_USA0004294 | Email chain ending with email from D. Christal to R. Dolden dated Aug. 10, 2015, RE: August 24 | 403 (cumulative) |
| 3057 | 8/10/2015 | LO_USA0004295 | LO_USA0004296 | Email chain ending with email from D. Christal to R. Dolden dated Aug. 10, 2015, RE: August 20? | 403 (cumulative) |
| 3058 | 7/24/2015 | LO_USA0004297 | LO_USA0004297 | Email chain ending with email from D. Christal to R. Snyder dated July 24, 2015, Subject: Rodger Dolden L'Oréal | H; FO; REL |
| 3059 | 5/23/2015 | LO_USA0004301 | LO_USA0004307 | Email from D. Christal to M. Gringauz and R. Dolden dated May 23, 2015, Subject: Rodger D liq.pdf | H; FO; CP; 403 (cumulative) |
| 3060 | 6/21/2015 | LO_USA0004309 | LO_USA0004311 | Email chain ending with email from D. Christal to R. Dolden dated June 21, 2015, RE: Income Statement/Licensing/Liqwd Inc IP | H; FO; 403 (cumulative) |
| 3061 | 5/19/2015 | LO_USA0004312 | LO_USA0004312 | Email from D. Christal to R. Dolden dated May 19, 2015, Subject: Copy of Costed BOM's with margins | H; FO; 403 (cumulative) |
| 3062 | 6/10/2015 | LO_USA0004313 | LO_USA0004314 | Email chain ending with email from D. Christal to R. Dolden dated June 10, 2015, Subject: Olaplex | H; FO; 403 (cumulative) |
| 3063 | 6/21/2015 | LO_USA0004315 | LO_USA0004317 | Email chain ending with email from D. Christal to R. Dolden dated June 21, 2015, RE: Income Statement/Licensing/Liqwd Inc IP | H; FO; 403 (cumulative) |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3064 | 5/14/2015 | LO_USA0004318 | LO_USA0004319 | Email chain ending with email from D. Christal to R. Dolden dated May 14, 2015, RE: Project Olivia - Confidential | No Objection |
| 3065 | 6/21/2015 | LO_USA0004320 | LO_USA0004322 | Email chain ending with email from D. Christal to R. Dolden dated June 21, 2015, RE: Income Statement/Licensing/Liqwd Inc IP | H; FO |
| 3066 | 6/22/2015 | LO_USA0004323 | LO_USA0004324 | Email chain ending with email from D. Christal to R. Dolden dated June 22, 2015, Subject: FWD: Olaplex Surveys - Results to date | No Objection |
| 3067 | 5/4/2015 | LO_USA0004325 | LO_USA0004337 | Document RE: Olaplex User Survey, Results April 30-May 3, 2015 | No Objection |
| 3068 | 5/1/2015 | LO_USA00049690 | LO_USA00049691 | Email chain ending with email from R. Dolden to S. Habif, H. Kunetz, J. Pahin, H. Toutain, J. Ascione, F. Cervantes, C. Goget, and Y. Land, dated May 1, 2015, attaching OLIVIA RI Review pre DD April 29 v3 | H; FO; CP |
| 3069 | 6/9/2015 | LO_USA00072680 | LO_USA00072686 | Email chain ending with email from R. Dolden to S. Habif dated June 9, 2015, Subject: FWD: Olivia | No Objection |
| 3070 | | | | Intentionally Left Blank | |
| 3071 | 5/22/2015 | LO_USA0007880 | LO_USA0007885 | Email chain ending with email from R. Dolden to H. Kunetz, dated May 22, 2015, attaching Detailed Notes of May 19 | No Objection |
| 3072 | 9/9/2016 | LO_USA0008584 | LO_USA0008584 | Email chain ending with email from B. Fontaine to L. Marino, P. Schiraldi, L. Morris, G. Meggo, P. Sharnsky, A. Lopez, P. Palladino, S. Newton-Smith, V. Stults, S. Orzel, and P. Parenty, dated September 9, 2016 | H; FO; CP |
| 3073 | 9/9/2016 | LO_USA0008585 | LO_USA0008585 | Email chain ending with email from K. Tucker to Lisa Morris, M. Ryan, and M. Arce, dated September 9, 2016 | H; FO; CP |
| 3074 | 1/14/2003 | LO_USA0008708 | LO_USA0008720 | Korean Patent Application Pub. No. KR2003-0003970 to Kim et al. | H |
| 3075 | 6/16/2006 | LO_USA0008721 | LO_USA0008726 | U.S. Patent No. 7,044,986 to Ogawa | H |
| 3076 | 7/14/1966 | LO_USA0008727 | LO_USA0008728 | German Patent Application No. DE 1220969 | A; REL; 403 |
| 3077 | 7/14/1966 | LO_USA0008729 | LO_USA0008735 | Translation of German Patent Application No. DE 1220969 | A; REL; 403 |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3078 | 6/2/2006 | LO_USA0008736 | LO_USA0008748 | Korean Patent Application Pub. No. KR 2006-0059564 | H |
| 3079 | 6/2/2006 | LO_USA0008749 | LO_USA0008761 | Translation of Korean Patent Application Pub. No. KR 2006-0059564 | A; REL; 403 |
| 3080 | | | | Intentionally Left Blank | |
| 3081 | 10/15/2013 | LO_USA0008843 | LO_USA0008852 | U.S. Patent No. 8,556,992 ("DeGeorge") | H |
| 3082 | 3/19/2002 | LO_USA0008853 | LO_USA0008858 | U.S. Patent No. 6,358,502 ("Tanabe") | H |
| 3083 | 2/7/2013 | LO_USA0008875 | LO_USA0008895 | U.S. Patent Application Pub. No. US 2013/0034515A1 ("Stone") | H |
| 3084 | 12/19/2002 | LO_USA0008988 | LO_USA0008996 | U.S. Patent Application Pub. No. US 2002/0189034 ("Kitabata") | H |
| 3085 | 6/22/1993 | LO_USA0008997 | LO_USA0009001 | U.S. Patent No. 5,221,286 ("Singleton") | H |
| 3086 | 12/31/2014 | LO_USA0009002 | LO_USA0009057 | International Patent Application Pub. No. WO 2014/207097 ("Wahler") | REL; 403 |
| 3087 | 6/19/2008 | LO_USA0009058 | LO_USA0009069 | U.S. Patent Application Pub. No. 2008/0141468 ("Cotteret") | H |
| 3088 | 3/16/2016 | LO_USA0009070 | LO_USA0009075 | Material Safety Data Sheet FIBREPLEX No 1 bond booster | A; REL; 403 |
| 3089 | 2/28/2018 | LO_USA0009077 | LO_USA0009082 | Fibreplex No. 1 Product Label ("Fibreplex Label"), LO_USA0009076, and Schwarzkopf Professional Launches Fibreplex, estetica.it (2/28/2018), http://estatica.it/int/a/schwarzkopf-professional-launches-fibreplex | AU, FO, H, REL, 403 |
| 3090 | 1997 | LO_USA0009083 | LO_USA0009176 | J. Alan Swift, Fundamentals of Human Hair Science (Hilda Butler ed., 1997) | FO, H |
| 3091 | | LO_USA0009194 | LO_USA0009234 | Keith C. Brown & Stanley Pohl, Permanent Hair Dyes, Society of Cosmetic Chemists, Monograph | FO, H, REL |
| 3092 | 3/2/1999 | LO_USA0009236 | LO_USA0009249 | U.S. Patent No. 5,877,204 ("Davison") | H |
| 3093 | 1938 | LO_USA0009250 | LO_USA0009259 | Edward James Morgan & Ernest Friedmann, C. Interaction of Maleic Acid with Thiol Compounds, 32(4) Biochem. J. 733 (1938) | REL; 403; FO |
| 3094 | 1992 | LO_USA0009486 | LO_USA0009493 | Excerpts of CTFA Cosmetic Ingredient Handbook (John A. Wenninger & G.N. McEwen eds., Cosmetic, Toiletry, and Fragrance Ass'n 2d ed. 1992) | BE, CP, FO, H |
| 3095 | | | | Intentionally Left Blank | |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3096 | 2010 | LO_USA0009580 | LO_USA0009587 | Justin W. Chan et al., Nucleophile-Initiated Thiol-Michael Reactions: Effect of Organocatalyst, Thiol, and Ene, 43 Macromolecules 6381 (2010) | REL; 403 |
| 3097 | 9/2015 | LO_USA0009591 | LO_USA0009591 | Document RE: Fibreplex No. 1 Bond Booster | A; REL; 403; FO |
| 3098 | 2010 | LO_USA0009592 | LO_USA0009599 | Matthew J. Kade, Daniel J. Burke, & Craig J. Hawker, The Power of Thiol-ene Chemistry, 48 J. Polym. Sci. Part A: Polym. Chem. 743 (2010) | REL; 403 |
| 3099 | 5/31/2013 | LO_USA0009601 | LO_USA0009606 | Steven Isaacman & Michael Isaacman, Just Click It: New Chemical Reactions for Cosmetic Applications, Cosmetics & Toiletries (May 31, 2013) | REL; 403 |
| 3100 | 2001 | LO_USA0009607 | LO_USA0009624 | Hartmuth C. Kolb et al., Click Chemistry: Diverse Chemical Function from a Few Good Reactions, 40 Angew. Chem. Int. Ed. 2004 (2001) | REL; 403 |
| 3101 | 2014 | LO_USA0009660 | LO_USA0009680 | Devatha P. Nair et al., The Thiol-Michael Addition Click Reaction: A Powerful and Widely Used Tool in Materials Chemistry, 26 Chem. Mater. 724 (2014) | REL; 403 |
| 3102 | 2011 | LO_USA0009681 | LO_USA0009699 | William H. Brown et al., Organic Chemistry (5th ed. 2011) | REL; 403 |
| 3103 | | | | Intentionally Left Blank | |
| 3104 | 1997 | LO_USA0010078 | LO_USA0010091 | Max Feughelman, Morphology and Properties of Hair, Hair and Hair Care 1-12 (Dale H. Johnson ed. 1997) | REL; 403 |
| 3105 | 1997 | LO_USA0010137 | LO_USA0010153 | Keith C. Brown, Hair Coloring, Hair and Hair Care 191-215 (Dale H. Johnson ed., 1997) | FO, H |
| 3106 | | | | Intentionally Left Blank | |
| 3107 | | | | Intentionally Left Blank | |
| 3108 | 2003 | LO_USA0010376 | LO_USA0010383 | Riki Canari & Aharon M. Eyal, Effect of pH on Dicarboxylic Acids Extraction by Amine-Based Extractants, 42 Ind. Eng. Chem. Res. 1293 (2003) | REL; 403 |
| 3109 | 1986 | LO_USA0010384 | LO_USA0010387 | Steven S. Zumdahl, Chemistry 621-22 (D.C. Heath and Company 1986) | REL; 403 |
| 3110 | | | | Intentionally Left Blank | |
| 3111 | 9/2/2000 | LO_USA0010671 | LO_USA0010682 | European Patent Application Pub. No. EP 0978272 ("Nagase") | REL; 403; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3112 | 5/2013 | LO_USA0010687 | LO_USA0010692 | Be Your Mood, Mintel Database Entry | A; REL; 403 |
| 3113 | | | | Intentionally Left Blank | |
| 3114 | 2012 | LO_USA0010750 | LO_USA0010795 | Thomas Clausen et al., Hair Preparations, Ullmann's Encyclopedia of Industrial Chemistry 204-47 (2012) | REL; 403 |
| 3115 | 12/1/2017 | LO_USA0010809 | LO_USA0010809 | Ulf Akerstrom, Statement of the Use of Maleic Acid, Letter from Hardford AB | REL; 403 |
| 3116 | | | | Intentionally Left Blank | |
| 3117 | 9/2/2015 | LO_USA0010873 | LO_USA0010873 | 14-4285D-1  INNO SEQ with  BONDING Step 2 EDR | A; REL; 403; FO |
| 3118 | | | | Intentionally Left Blank | |
| 3119 | | | | Intentionally Left Blank | |
| 3120 | | | | Intentionally Left Blank | |
| 3121 | 10/16/2015 | LO_USA0010958 | LO_USA0010959 | 14-4285D-1  INNO SEQ with  BONDING Step 2 PEC Test Summary | A; REL; 403; FO |
| 3122 | 9/10/2015 | LO_USA0010962 | LO_USA0010963 | 14-4285D-3  INNO SEQ with BONDING ADDITIVE Step 1 and Step 2 EDR | A; REL; 403; FO |
| 3123 | 11/6/2015 | LO_USA0010985 | LO_USA0010985 | 14-4285D-7 INNO L'OREAL ADDITIVE P4 C8 v P4 C3 EDR | A; REL; 403; FO |
| 3124 | 9/30/2015 | LO_USA0010988 | LO_USA0010989 | 144285C16R INNO L`OREAL ADDITIVE System Steps 1 and 2 - 1st  Recheck  PEC Test Summary | A; REL; 403; FO |
| 3125 | 4/14/2016 | LO_USA0010991 | LO_USA0010993 | 14-4285D6X  INNO L`OREAL ADDITIVE System vs System P12 vs P4  Expert Test Summary | A; REL; 403; FO |
| 3126 | 3/18/2016 | LO_USA0010994 | LO_USA0010997 | Email from K. Dreher to G. David dated 3-18-2016; Re: EV1603-0405 - Study request Sensorial (37567 RDK, 1129634IN2, 37817 RDK) | A; REL; 403; FO |
| 3127 | 9/11/2015 | LO_USA0010998 | LO_USA0011018 | 14-4285D-1 INNO SEQ with  BONDING Results | A; REL; 403; FO |
| 3128 | 11/3/2016 | LO_USA0011019 | LO_USA0011038 | 14-4285D10R  INNO ADDITIVES  BOOSTERS P12C18 v P4C8 EV1608-0566  Results | A; REL; 403; FO |
| 3129 | 11/3/2016 | LO_USA001103 | LO_USA001142 | 14-4285D10  INNO ADDITIVES  BOOSTERS P12C18 v P4C8 EV1608-0566 Expert Test Summary | A; REL; 403; FO |
| 3130 | 3/8/2016 | LO_USA0011043 | LO_USA0011059 | 14-4285F-2  INNO ADDITIVES  BOOSTERS  BONDING EV1602-0125 Results | A; REL; 403; FO |
| 3131 | 9/30/2015 | LO_USA0011060 | LO_USA0011072 | 144285C16R INNO L'OREAL ADDITIVE  Results | A; REL; 403; FO |
| 3132 | 7/31/2015 | LO_USA0011078 | LO_USA0011079 | 144285C10S  INNO L`OREAL BONDING System Steps 1 and 2 EDR | A; REL; 403; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3133 | 3/13/2015 | LO_USA0011087 | LO_USA0011089 | 14-4285P3S Test Results | A; REL; 403; FO |
| 3134 | 10/28/2015 | LO_USA0011091 | LO_USA0011094 | 14-4285D-4 INNO L`OREAL ADDITIVE System vs System PEC Test Summary | A; REL; 403; FO |
| 3135 | 10/19/2015 | LO_USA0011095 | LO_USA0011125 | 14-4285C17S INNO L'OREAL BONDING Results | A; REL; 403; FO |
| 3136 | 7/11/2016 | LO_USA0011126 | LO_USA0011142 | 14-4285F-3 INNO ADDITIVES BOOSTERS BONDING -Diluted P12C8 vs diluted P4C8 EV1603-0405  Results | A; REL; 403; FO |
| 3137 | 2/2/2016 | LO_USA0011143 | LO_USA0011145 | 14-4285D8R  INNO L`OREAL ADDITIVE System vs System P12C8 v O rcks PEC Test Summary | A; REL; 403; FO |
| 3138 | 12/2/2015 | LO_USA0011146 | LO_USA0011148 | 14-4285D7R  INNO L`OREAL ADDITIVE  P4 C8 v P4 C3  2 returns PEC Test Summary | A; REL; 403; FO |
| 3139 | 8/24/2015 | LO_USA0011151 | LO_USA0011181 | Report PPE-CE-US-15-004 Bonding Additive with Treatment | A; REL; 403; FO |
| 3140 | 3/7/2016 | LO_USA0011182 | LO_USA0011187 | AR Bonding Screening P4 APTES C8 EV1602-0368 | A; REL; 403; FO |
| 3141 | 7/14/2015 | LO_USA0011188 | LO_USA0011188 | 14-4285C5S -INNO L'OREAL ADDITIVE  step 1 and 2 EDR | A; REL; 403; FO |
| 3142 | | | | Intentionally Left Blank | |
| 3143 | | | | Intentionally Left Blank | N/A |
| 3144 | 2/13/2015 | LO_USA0011221 | LO_USA0011222 | 14-4285P2S INNO LOreal Regimen2 vs Olaplex EDR | A; REL; 403; FO |
| 3145 | 8/12/2015 | LO_USA0011223 | LO_USA0011223 | 144285C13S INNO LOREAL ADDITIVE STEP 1 and 2 EDR | A; REL; 403; FO |
| 3146 | | | | Intentionally Left Blank | |
| 3147 | 2/24/2015 | LO_USA0011226 | LO_USA0011241 | 14-4285P-1 L'Oreal additive vs Olaplex Results | A; REL; 403; FO |
| 3148 | 10/19/2016 | LO_USA0011242 | LO_USA0011247 | 14-4285D-6 + D-6R INNO L`OREAL ADDITIVE System vs System P12 vs P4 Expert Test Summary | A; REL; 403; FO |
| 3149 | 11/18/2015 | LO_USA0011248 | LO_USA0011255 | 14-4285D7R1 INNO L'OREAL ADDITIVE P4 C8 vs P4 C3 Results | A; REL; 403; FO |
| 3150 | | | | Intentionally Left Blank | |
| 3151 | 12/11/2015 | LO_USA0011258 | LO_USA0011258 | 14-4285D-8R INNO BONDING vs OLAPLEX w SEQ Steps 1 and 2 rcks EDR | A; REL; 403; FO |
| 3152 | 2/3/2016 | LO_USA0011260 | LO_USA0011263 | Email from K. Dreher to G. David dated 2/3/2016; Re: EV1602-0125 - Study request Sensorial (37817 RDK, 1129634IN2) | A; REL; 403; FO |
| 3153 | 2/4/2016 | LO_USA0011264 | LO_USA0011264 | 14-4285F-1  INNO ADDITIVES  BOOSTERS  BONDING EV1602-0029 EDR | A; REL; 403; FO |
| 3154 | 8/12/2015 | LO_USA0011265 | LO_USA0011266 | 144285C12S INNO LOREAL ADDITIVE STEP 1 and 2 EDR | A; REL; 403; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3155 | 7/11/2016 | LO_USA0011267 | LO_USA0011287 | 14-4285F3R INNO ADDITIVES  BOOSTERS BONDING -Diluted P12C8 vs diluted P4C8 EV1603-0405 Results | A; REL; 403; FO |
| 3156 | 9/17/2015 | LO_USA0011290 | LO_USA0011290 | 144285C16R  INNO L`OREAL ADDITIVE System Steps 1 and 2 - 3 Rechecks EDR | A; REL; 403; FO |
| 3157 | | | | Intentionally Left Blank | |
| 3158 | | | | Intentionally Left Blank | |
| 3159 | 7/8/2015 | LO_USA0011296 | LO_USA0011297 | 14-4285C-3 INNO LOREAL ADDITIVE STEP 2 ONLY EDR | A; REL; 403; FO |
| 3160 | 9/2/2015 | LO_USA0011298 | LO_USA0011298 | 144285C14R  INNO L`OREAL ADDITIVE System Steps 1 and 2 - 3 Rechecks EDR | A; REL; 403; FO |
| 3161 | | | | Intentionally Left Blank | N/A |
| 3162 | 4/26/2016 | LO_USA0011302 | LO_USA0011303 | Bonding System DECODE | A; REL; 403; FO |
| 3163 | 3/22/2016 | LO_USA0011304 | LO_USA0011305 | 14-4285F-3  INNO ADDITIVES  BOOSTERS BONDING -Diluted P12C8 vs diluted P4C8 EV1603-0405 EDR | A; REL; 403; FO |
| 3164 | 7/24/2015 | LO_USA0011306 | LO_USA0011306 | Hair Color Evaluation Form, Project 14-4285A18 PEC | A; REL; 403; FO |
| 3165 | 12/2/2015 | LO_USA0011308 | LO_USA0011310 | Expert / Professional Evaluations Chart | A; REL; 403; FO |
| 3166 | 7/24/2015 | LO_USA0011311 | LO_USA0011311 | Hair Color Evaluation Form, Project 44285C552 | A; REL; 403; FO |
| 3167 | | | | Intentionally Left Blank | |
| 3168 | 7/23/2015 | LO_USA0011313 | LO_USA0011314 | 14-4285C8S INNO LOREAL ADDITIVE STEP 1 and 2 EDR | A; REL; 403; FO |
| 3169 | 7/31/2015 | LO_USA0011315 | LO_USA0011316 | 144285C9SR  INNO L`OREAL BONDING System Steps 1 and 2 EDR | A; REL; 403; FO |
| 3170 | 9/10/2015 | LO_USA0011317 | LO_USA0011318 | 14-4285D-2  INNO SEQ with  BONDING Step 2 EDR | A; REL; 403; FO |
| 3171 | 10/16/2015 | LO_USA0011319 | LO_USA0011322 | Result comparison chart for 14-4285C8S, 144285C14S, 144285C16S | A; REL; 403; FO |
| 3172 | 4/16/2015 | LO_USA0011323 | LO_USA0011328 | Olaplex Expert Evaluation Characterization | A; REL; 403; FO |
| 3173 | 8/8/2016 | LO_USA0011329 | LO_USA0011349 | 14-4285D8R  INNO L`OREAL ADDITIVE System vs System Results | A; REL; 403; FO |
| 3174 | 3/23/2016 | LO_USA0011350 | LO_USA0011370 | 14-4285F2R INNO ADDITIVES  BOOSTERS  BONDING Results | A; REL; 403; FO |
| 3175 | | | | Intentionally Left Blank | N/A |
| 3176 | 5/23/2016 | LO_USA0011372 | LO_USA0011391 | 14-4285D6R  INNO L`OREAL ADDITIVE System vs System P12 vs P4 Results | A; REL; 403; FO |
| 3177 | | | | Intentionally Left Blank | N/A |
| 3178 | 2/27/2015 | LO_USA0011393 | LO_USA0011394 | 14-4285P3 INNO LOreal Regimen CE15021-0287 Base EDR | A; REL; 403; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3179 | | | | Intentionally Left Blank | |
| 3180 | 2/9/2015 | LO_USA0011397 | LO_USA0011400 | Email from K. Hamilton to M. Applebaum et al. dated 2/9/2015; subject:  CE1502-0082- Request Tests- Hair Color (37149 RDK-US4764, 1129564IN1-US4764, 1082614RK3-1082614RK3, 1082626RK2-1082626RK2, 178914 U-437013 U, 1152406-1152406) | A; REL; 403; FO |
| 3181 | 6/4/2015 | LO_USA0011401 | LO_USA0011422 | Questionnaire: ADDBASES15, Post Color Treatments 2015 5/28/2015 Screen 6 | A; REL; 403; FO |
| 3182 | | | | Intentionally Left Blank | |
| 3183 | 9/8/2016 | LO_USA0011426 | LO_USA0011474 | Evaluation screen results Step 1 P4 + Step 2's | A; REL; 403; FO |
| 3184 | 8/27/2015 | LO_USA0011475 | LO_USA0011502 | Report PPE-CE-US-15-003 Bonding Additive Workshop July 2015 | A; REL; 403; FO |
| 3185 | | | | Intentionally Left Blank | N/A |
| 3186 | 9/9/2015 | LO_USA0011513 | LO_USA0011518 | 14-4285C INNO L`OREAL Bonding Step 2 Comparison Results | A; REL; 403; FO |
| 3187 | | | | Intentionally Left Blank | N/A |
| 3188 | | | | Intentionally Left Blank | N/A |
| 3189 | 10/30/2015 | LO_USA0011523 | LO_USA0011546 | 144285C14S Product Comparison Results | A; REL; 403; FO |
| 3190 | 9/30/2015 | LO_USA0011547 | LO_USA0011565 | 144285C14R INNO L'OREAL ADDITIVE  P4 C3 Results | A; REL; 403; FO |
| 3191 | 8/14/2015 | LO_USA0011568 | LO_USA0011584 | 14-4285C-8 Product Comparison Results | A; REL; 403; FO |
| 3192 | 8/5/2015 | LO_USA0011585 | LO_USA0011607 | 14-4285C8S Olaplex System Results | A; REL; 403; FO |
| 3193 | 9/14/2016 | LO_USA0011608 | LO_USA0011623 | 14-4285F-4 INNO ADDITIVES BOOSTERS Diluted P4+ C8 vs diluted P12+C18 Results | A; REL; 403; FO |
| 3194 | 7/7/2015 | LO_USA0011624 | LO_USA0011625 | 14-4285C-INNO L'OREAL ADDITIVE  step 1 and 2 EDR | A; REL; 403; FO |
| 3195 | 8/11/2015 | LO_USA0011626 | LO_USA0011626 | 144285C12R  INNO L`OREAL ADDITIVE System Steps 1 and 2 - 3 RCKS EDR | A; REL; 403; FO |
| 3196 | 10/20/2015 | LO_USA0011627 | LO_USA0011628 | 14-4285D-4  INNO L'OREAL ADDITIVE System v System  EDR | A; REL; 403; FO |
| 3197 | 9/17/2015 | LO_USA0011629 | LO_USA0011629 | 144285C16S INNO LOREAL ADDITIVE STEP 1 and 2 EDR | A; REL; 403; FO |
| 3198 | 6/29/2016 | LO_USA0011630 | LO_USA0011633 | 14-4285D-6  INNO L`OREAL ADDITIVE System vs System P12 vs P4  Expert Test Summary | A; REL; 403; FO |
| 3199 | 9/25/2015 | LO_USA0011636 | LO_USA0011638 | 144285C16S INNO L`OREAL ADDITIVE System Steps 1 and 2 PEC Test Summary | A; REL; 403; FO |
| 3200 | 8/24/2015 | LO_USA0011639 | LO_USA0011640 | 144285C14S INNO LOREAL ADDITIVE STEP 1 and 2 EDR | A; REL; 403; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3201 | | | | Intentionally Left Blank | |
| 3202 | | | | Intentionally Left Blank | |
| 3203 | | | | Intentionally Left Blank | |
| 3204 | 8/8/2016 | LO_USA0011742 | LO_USA0011751 | AR Bonding Next Gen Screening | A; REL; 403; FO |
| 3205 | 8/31/2015 | LO_USA0011752 | LO_USA001154 | 144285C10S INNO L`OREAL ADDITIVE System Steps 1 and 2 PEC Test Summary | A; REL; 403; FO |
| 3206 | 4/6/2016 | LO_USA0011755 | LO_USA0011775 | 14-4285F1R INNO ADDITIVES  BOOSTERS  BONDING Results | A; REL; 403; FO |
| 3207 | 10/11/2016 | LO_USA0011776 | LO_USA0011781 | 14-4285D-8 INNO LOREAL ADDITIVE System vs. System P12 vs Olaplex PEC Test Summary | A; REL; 403; FO |
| 3208 | 9/17/2015 | LO_USA0011786 | LO_USA0011786 | 144285C16S INNO LOREAL ADDITIVE STEP 1 and 2 EDR | A; REL; 403; FO |
| 3209 | 12/23/2015 | LO_USA0011787 | LO_USA0011787 | 14-4285D-9 INNO L'OREAL ADDTIVE P12 C18 v P12 C8 EDR | A; REL; 403; FO |
| 3210 | | | | Intentionally Left Blank | |
| 3211 | 8/5/2015 | LO_USA0011801 | LO_USA0011818 | 144285C10S INNO L'OREAL ADDITIVE  step 1 and 2 Results | A; REL; 403; FO |
| 3212 | | | | Intentionally Left Blank | |
| 3213 | 8/22/2015 | LO_USA0011823 | LO_USA0011839 | 14-4285C10 INNO L`OREAL Bonding Step 2 Comparison Results | A; REL; 403; FO |
| 3214 | 8/31/2015 | LO_USA0011847 | LO_USA0011868 | 144285C12S INNO ADDITIVE System Steps 1 and 2 Results | A; REL; 403; FO |
| 3215 | 8/24/2016 | LO_USA0011870 | LO_USA0011873 | Email from K. Dreher to G. David dated 8/24/2016 Re: EV1608-0566 - Study request Sensorial (38437 RDK, 1129634IN26) | A; REL; 403; FO; H; BE |
| 3216 | 11/3/2015 | LO_USA0011874 | LO_USA0011875 | 14-4285D-6  INNO L`OREAL ADDITIVE System vs System P12 vs P4 EDR | A; REL; 403; FO |
| 3217 | 10/19/2015 | LO_USA0011876 | LO_USA0011906 | 144285C17S  INNO L`OREAL ADDITIVE System Steps 1 and 2 Results | A; REL; 403; FO |
| 3218 | 3/11/2016 | LO_USA0011907 | LO_USA0011916 | AR Bonding Screening  P4 C8 and Carbodilite EV1602-0367 | A; REL; 403; FO |
| 3219 | 2/13/2015 | LO_USA0011917 | LO_USA0011918 | 14-4285P1 INNO LOreal Regimen vs Olaplex - Bleach CE1502-00082 (Base) EDR | A; REL; 403; FO |
| 3220 | 3/14/2016 | LO_USA0011919 | LO_USA0011920 | 14-4285F-2  INNO ADDITIVES  BOOSTERS  BONDING EV1602-0025 Chart | A; REL; 403; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3221 | 8/12/2015 | LO_USA0011922 | LO_USA0011945 | 144285C10S Product Comparison Results | A; REL; 403; FO |
| 3222 | 8/6/2015 | LO_USA0011946 | LO_USA0011968 | 144285C11S  INNO LOREAL Steps 1 and 2 Results | A; REL; 403; FO |
| 3223 | 8/5/2016 | LO_USA0011969 | LO_USA0011972 | Email from K. Dreher to G. David dated 8-5-2016 Re: EV1608-0181 - Study request Sensorial (37567 RDK, 1129634IN2, US4764) | A; REL; 403; FO; H; BE |
| 3224 | 8/3/2016 | LO_USA0011973 | LO_USA0011992 | 14-4285D-9 INNO L'OREAL P12 C18 vs P12 C8 Results | A; REL; 403; FO |
| 3225 | 4/8/2016 | LO_USA0011993 | LO_USA0011997 | 14-4285F-2(R) INNO ADDITIVES  BOOSTERS  BONDING EV1602-0125 Expert Test Summary | A; REL; 403; FO |
| 3226 | | | | Intentionally Left Blank | |
| 3227 | 2/13/2015 | LO_USA0012017 | LO_USA0012018 | 14-4285P2 INNO LOreal Regimen2 vs Olaplex EDR | A; REL; 403; FO |
| 3228 | 5/24/2016 | LO_USA0012019 | LO_USA0012043 | AR Swatch Session 5 Chart | A; REL; 403; FO |
| 3229 | 10/6/2016 | LO_USA0012044 | LO_USA0012063 | 14-4285F-5  INNO ADDITIVES  BOOSTERS  Diluted P4+ C8 vs diluted P12+C18 Results | A; REL; 403; FO |
| 3230 | 5/23/2016 | LO_USA0012064 | LO_USA0012066 | 14-4285D6R  INNO L`OREAL ADDITIVE System vs System P12 vs P4 RCK Expert Test Summary | A; REL; 403; FO |
| 3231 | | | | Intentionally Left Blank | |
| 3232 | | | | Intentionally Left Blank | |
| 3233 | 8/14/2015 | LO_USA0012078 | LO_USA0012079 | 14-4285C-7 INNO LOREAL BONDING STEP 2 EDR | A; REL; 403; FO |
| 3234 | 8/14/2015 | LO_USA0012080 | LO_USA0012081 | 14-4285C-8 INNO LOREAL BONDING STEP 2 EDR | A; REL; 403; FO |
| 3235 | 7/14/2015 | LO_USA0012082 | LO_USA0012094 | 14-4285C-4 Product Comparison Results | A; REL; 403; FO |
| 3236 | 9/19/2016 | LO_USA0012099 | LO_USA0012100 | 14-4285F-5  INNO ADDITIVES  BOOSTERS  Diluted P4+ C8 vs diluted P12+C18 EV1608-0569 | A; REL; 403; FO |
| 3237 | 2/4/2016 | LO_USA0012101 | LO_USA0012102 | 14-4285F-2  INNO ADDITIVES  BOOSTERS  BONDING EV1602-0125 EDR | A; REL; 403; FO |
| 3238 | 10/21/2015 | LO_USA0012103 | LO_USA0012113 | 144285C17R Product Comparison Results | A; REL; 403; FO |
| 3239 | 7/17/2015 | LO_USA0012114 | LO_USA0012122 | 144285C5SR INNO L'OREAL ADDITIVE System Results | A; REL; 403; FO |
| 3240 | 10/19/2015 | LO_USA0012123 | LO_USA0012138 | INNO ADDITIVE Comparison charts | A; REL; 403; FO |
| 3241 | 12/23/2015 | LO_USA0012139 | LO_USA0012141 | 14-4285D-8 INNO L'OREAL ADDITIVE System vs System P12 vs O PEC Test Summary | A; REL; 403; FO |
| 3242 | 2/13/2015 | LO_USA0012144 | LO_USA0012145 | 14-4285P1S INNO LOreal Regimen vs Olaplex EDR | A; REL; 403; FO |
| 3243 | 7/28/2015 | LO_USA0012146 | LO_USA0012169 | Questionnaire: ADDBASE15, Post Color Treatments 2015 6/29/15 screen 8 | A; REL; 403; FO |
| 3244 | 11/17/2015 | LO_USA0012170 | LO_USA0012173 | Document entitled Bonding All Metiers - Expert Evaluation | A; REL; 403; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3245 | 8/22/2015 | LO_USA0012174 | LO_USA0012190 | 14-4285C11 INNO L`OREAL Bonding Step 2 Comparison Results | A; REL; 403; FO |
| 3246 | 1/19/2016 | LO_USA0012191 | LO_USA0012193 | 14-4285D-9  INNO L`OREAL ADDITIVE P12 +C18 vs P12 +C8 PEC Test Summary | A; REL; 403; FO |
| 3247 | | | | Intentionally Left Blank | N/A |
| 3248 | 10/26/2015 | LO_USA0012195 | LO_USA0012195 | 14-4285D-5 INNO L'OREAL ADDITIVE  SYSTEM TO SYSTEM P11C19 P4C8 | A; REL; 403; FO |
| 3249 | 8/26/2016 | LO_USA0012196 | LO_USA0012197 | 14-4285D10 INNO ADDITIVES  BOOSTERS P12/C18 v P4/C8 EV1608-0566 EDR | A; REL; 403; FO |
| 3250 | 4/6/2016 | LO_USA0012198 | LO_USA0012202 | 14-4285F-1, F1R INNO ADDITIVES  BOOSTERS  BONDING EV1602-0029 Expert Test Summary | A; REL; 403; FO |
| 3251 | 3/22/2016 | LO_USA0012203 | LO_USA0012206 | Email from K. Dreher to G. David dated 3-22-2016 Re: EV1603-0891 - Study request Sensorial (37567 RDK, 1129634IN2, 37817 RDK) | A; REL; 403; FO; H; BE |
| 3252 | 9/2/2015 | LO_USA0012207 | LO_USA0012207 | 144285C14R  INNO L`OREAL ADDITIVE System Steps 1 and 2 - 3 Rechecks EDR | A; REL; 403; FO |
| 3253 | 8/1/2016 | LO_USA0012208 | LO_USA0012212 | 14-4285F-3 INNO ADDITIVES  BOOSTERS BONDING -Diluted P12C8 vs diluted P4C8 EV1603-0405 Expert Test Summary | A; REL; 403; FO |
| 3254 | 1/13/2016 | LO_USA0012213 | LO_USA0012246 | Step 1 P4 + Step 2's Evaluation Results | A; REL; 403; FO |
| 3255 | 9/17/2015 | LO_USA0012247 | LO_USA0012247 | 144285C16R  INNO L`OREAL ADDITIVE System Steps 1 and 2 - 3 Rechecks EDR | A; REL; 403; FO |
| 3256 | 4/26/2016 | LO_USA0012248 | LO_USA0012302 | 14-4285D-6 P12 vs P4 RESULTS | A; REL; 403; FO |
| 3257 | 8/13/2015 | LO_USA0012303 | LO_USA0012324 | 144285C12S Product Comparison Steps 1 and 2 Results | A; REL; 403; FO |
| 3258 | 2/9/2016 | LO_USA0012326 | LO_USA0012347 | AR BondingSystems chart | A; REL; 403; FO |
| 3259 | 9/8/2015 | LO_USA0012350 | LO_USA0012351 | Copy of 14-4285D-1  INNO SEQ with  BONDING Step 2 PEC Test Summary | A; REL; 403; FO |
| 3260 | 8/14/2015 | LO_USA0012352 | LO_USA0012353 | Result Topline Stylist Workshop Project dated July 14, 2015, Project Orch# - 2014-4285/A | A; REL; 403; FO |
| 3261 | 10/28/2015 | LO_USA0012354 | LO_USA0012381 | 14-4285D-4  P11+C8 v P4+C* Comparison Results | A; REL; 403; FO |
| 3262 | 8/13/2015 | LO_USA0012382 | LO_USA0012396 | 14-4285C-9 INNO L'OREAL Bonding  step 2 Results | A; REL; 403; FO |
| 3263 | 8/13/2015 | LO_USA0012397 | LO_USA0012418 | 144285C13S INNO L'OREAL ADDITIVE  step 1 and 2 Results | A; REL; 403; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3264 | 2/2/2016 | LO_USA0012419 | LO_USA0012446 | 14-4285C17S INNO L'OREAL ADDITIVE Step 1 and 2 Results | A; REL; 403; FO |
| 3265 | 2/24/2015 | LO_USA0012447 | LO_USA0012464 | 14-4285P-2 Additive Comparison Results | A; REL; 403; FO |
| 3266 | 7/15/2015 | LO_USA0012465 | LO_USA0012485 | 14-4285C5S INNO L'OREAL ADDITIVE Step 1 and 2 Results | A; REL; 403; FO |
| 3267 | 3/24/2015 | LO_USA0012486 | LO_USA0012503 | 14-4285P-3 Additive Comparison Results | A; REL; 403; FO |
| 3268 | 11/3/2016 | LO_USA0012504 | LO_USA0012508 | 14-4285D10  INNO ADDITIVES  BOOSTERS P12C18 v P4C8 EV1608-0566  Expert Test Summary | A; REL; 403; FO |
| 3269 | 8/5/2016 | LO_USA0012509 | LO_USA0012512 | Email from K. Dreher to G. David dated 8-5-2016 Re: FW: EV1608-0182 - Study request Sensorial (37567 RDK, 1129634IN2, 112963IN26) | A; REL; 403; FO; H; BE |
| 3270 | 8/3/2016 | LO_USA0012513 | LO_USA0012532 | 14-4285D-9 INNO L'OREAL P12 C18 vs P12 C8 RESULTS | A; REL; 403; FO |
| 3271 | 10/3/2016 | LO_USA0012533 | LO_USA0012535 | 14-4285F-4  INNO ADDITIVES  BOOSTERS Diluted P4+ C8 vs diluted P12+C18  EV1608-0569 Expert Test Summary | A; REL; 403; FO |
| 3272 | 9/25/2015 | LO_USA0012536 | LO_USA0012568 | 144285C16R System Additive Step 1 and Step 2 Results | A; REL; 403; FO |
| 3273 | 8/14/2015 | LO_USA0012569 | LO_USA0012570 | 14-4285C11 INNO LOREAL ADDITIVE STEP 2 EDR | A; REL; 403; FO |
| 3274 | 7/13/2015 | LO_USA0012571 | LO_USA0012582 | Step 1 P4 + Additives Screening Results | A; REL; 403; FO |
| 3275 | 1/19/2016 | LO_USA0012583 | LO_USA0012610 | 14-4285D-9  INNO L`OREAL ADDITIVE P12 +C18 vs P12 +C8 Results | A; REL; 403; FO |
| 3276 | 10/20/2015 | LO_USA0012611 | LO_USA0012618 | Additives Comparison Result Chart | A; REL; 403; FO |
| 3277 | 8/22/2015 | LO_USA0012620 | LO_USA0012625 | 14-4285C INNO L`OREAL Bonding Step 2 Comparison Results | A; REL; 403; FO |
| 3278 | 3/9/2016 | LO_USA0012628 | LO_USA0012648 | 14-4285D-6 INNO L'OREAL ADDITIVE  SYSTEM TO SYSTEM P12 vs P4 Results | A; REL; 403; FO |
| 3279 | 10/23/2015 | LO_USA0012649 | LO_USA0012650 | 14-4285D-5  INNO L'OREAL ADDITIVE System v System P11C19 P4C8 EDR | A; REL; 403; FO |
| 3280 | 8/5/2015 | LO_USA0012651 | LO_USA0012660 | 144285C5SR INNO L'OREAL ADDITIVE System Comparison Results | A; REL; 403; FO |
| 3281 | 12/16/2015 | LO_USA0012678 | LO_USA0012689 | 14-4285D7R1 INNO L'OREAL ADDITIVE P4 C8 vs P4 C3 Comparison Results | A; REL; 403; FO |
| 3282 | 7/20/2015 | LO_USA0012690 | LO_USA0012704 | 14-4285C-6 INNO L'OREAL Bonding  step 2 Comparison Results | A; REL; 403; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3283 | 8/24/2015 | LO_USA0012736 | LO_USA0012737 | 144285C14S INNO LOREAL ADDITIVE STEP 1 and 2 EDR | A; REL; 403; FO |
| 3284 | 8/14/2015 | LO_USA0012738 | LO_USA0012756 | 14-4285C-7 BONDING Step 2 Comparison Results | A; REL; 403; FO |
| 3285 | 7/23/2015 | LO_USA0012763 | LO_USA0012764 | 144285C7SR  INNO L`OREAL ADDITIVE System Steps 1 and 2 3 EDR | A; REL; 403; FO |
| 3286 | 10/25/2016 | LO_USA0012769 | LO_USA0012772 | 14-4285F-5  INNO ADDITIVES  BOOSTERS  Diluted P4  C8 vs diluted P12 C18  EV1608-0569 Expert Test Summary | A; REL; 403; FO |
| 3287 | | | | Intentionally Left Blank | N/A |
| 3288 | 10/6/2016 | LO_USA0012805 | LO_USA0012833 | 14-4285D10 INNO ADDITIVES  P12+C18 v P4+C8 EV1608-0566 Comparison Results | A; REL; 403; FO |
| 3289 | 11/3/2016 | LO_USA0012834 | LO_USA0012862 | 14-4285D10  INNO ADDITIVES P12C18 v P4C8 EV1608-0566 Comparison Results | A; REL; 403; FO |
| 3290 | | | | Intentionally Left Blank | N/A |
| 3291 | 3/15/2016 | LO_USA0012868 | LO_USA0012870 | 14-4285F2R INNO ADDITIVES BOOSTERS BONDING EV1602-0125 RCK  Expert Test Summary | A; REL; 403; FO |
| 3292 | 7/23/2015 | LO_USA0012873 | LO_USA0012874 | 144285C2R  INNO L`OREAL ADDITIVE System Steps 1 and 2 EDR | A; REL; 403; FO |
| 3293 | 5/17/2016 | LO_USA0012875 | LO_USA0012923 | Bonding Project Status Report | A; REL; 403; FO |
| 3294 | 8/22/2015 | LO_USA0012925 | LO_USA0012941 | 14-4285C-9 INNO L`OREAL Bonding Step 2 Comparison Results | A; REL; 403; FO |
| 3295 | | | | Intentionally Left Blank | N/A |
| 3296 | 9/25/2015 | LO_USA0012943 | LO_USA0012963 | 14-4285D-3 Inno L'Oreal Additive System Steps 1 and 2 Comparison Results | A; REL; 403; FO |
| 3297 | 9/25/2015 | LO_USA0012964 | LO_USA0012996 | 144285C14R INNO BONDING STEP 1 AND STEP 2 Comparison Results | A; REL; 403; FO |
| 3298 | 10/12/2016 | LO_USA0012997 | LO_USA0013000 | 14-4285D-9  INNO L`OREAL ADDITIVE P12 +C18 vs P12 +C8 EV1608-0182 Expert Test Summary | A; REL; 403; FO |
| 3299 | 9/19/2016 | LO_USA0013003 | LO_USA0013004 | 14-4285F-5  INNO ADDITIVES  BOOSTERS  Diluted P4+ C8 vs diluted P12+C18 on DAMP HAIR EV1608-0569 EDR | A; REL; 403; FO |
| 3300 | | | | Intentionally Left Blank | N/A |
| 3301 | 7/16/2015 | LO_USA0013022 | LO_USA0013038 | 14-4285C-5 INNO Bonding Test | A; REL; 403; FO |
| 3302 | 8/21/2015 | LO_USA0013039 | LO_USA0013040 | 14-4285C12 INNO LOREAL ADDITIVE STEP 2 ONLY EDR | A; REL; 403; FO |
| 3303 | 12/30/2015 | LO_USA0013041 | LO_USA0013061 | 14-4285C8S INNO Bonding Additive Results | A; REL; 403; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3304 | 7/9/2015 | LO_USA0013062 | LO_USA0013071 | 14-4285C-3 INNO Bonding Test Results | A; REL; 403; FO |
| 3305 | 10/17/2016 | LO_USA0013072 | LO_USA0013091 | 14-4285H-1 INNO Bonding Test Results | A; REL; 403; FO |
| 3306 | | | | Intentionally Left Blank | |
| 3307 | 11/23/2015 | LO_USA0013116 | LO_USA0013127 | 14-4285D7R1 INNO L'OREAL ADDITIVE P4 C8 vs P4 C3 | A; REL; 403; FO |
| 3308 | 7/13/2015 | LO_USA0013128 | LO_USA0013138 | 14-4285C-4 INNO L'OREAL Bonding  step 2 RESULTS | A; REL; 403; FO |
| 3309 | 10/12/2016 | LO_USA0013139 | LO_USA0013140 | 14-4285H-1  INNO Bonding Test Results  EV1610-0168 EDR | A; REL; 403; FO |
| 3310 | 4/6/2016 | LO_USA0013141 | LO_USA0013143 | 14-4285F1R  INNO ADDITIVES  BOOSTERS  BONDING EV1602-0029 | A; REL; 403; FO |
| 3311 | 9/15/2016 | LO_USA0013144 | LO_USA0013172 | 14-4285D10 INNO ADDITIVES BOOSTERS P12+C18 v P4+C8 | A; REL; 403; FO |
| 3312 | 9/25/2015 | LO_USA0013173 | LO_USA0013174 | 14-4285D-3  INNO SEQ with BONDING ADDITIVE Step 1 and Step 2 | A; REL; 403; FO |
| 3313 | 9/25/2015 | LO_USA0013175 | LO_USA0013202 | 144285C16S System Additive Step 1 and Step 2 | A; REL; 403; FO |
| 3314 | 8/31/2015 | LO_USA0013203 | LO_USA0013205 | 144285C12S  INNO L`OREAL ADDITIVE steps 1 and 2 | A; REL; 403; FO |
| 3315 | 8/8/2016 | LO_USA0013206 | LO_USA0013225 | 14-4285D-9 INNO L'OREAL P12 C18 vs P12 C8 EV1608-0182 | A; REL; 403; FO |
| 3316 | 8/14/2015 | LO_USA0013230 | LO_USA0013231 | 14-4285C-6 INNO LOREAL ADDITIVE STEP 2 | A; REL; 403; FO |
| 3317 | 9/25/2015 | LO_USA0013232 | LO_USA0013260 | 144285C14S SYSTEM INNO BONDING Results | A; REL; 403; FO |
| 3318 | 10/30/2015 | LO_USA0013263 | LO_USA0013288 | 144285C16S INNO L'OREAL ADDITIVE  step 1 and 2 RESULTS | A; REL; 403; FO |
| 3319 | 2/27/2015 | LO_USA0013289 | LO_USA0013290 | 14-4285P3S INNO LOreal Anti-Olaplex EDR shade | A; REL; 403; FO |
| 3320 | 4/26/2016 | LO_USA0013291 | LO_USA0013307 | 14-4285F-1  INNO ADDITIVES  BOOSTERS  BONDING EV1602-0029 | A; REL; 403; FO |
| 3321 | 3/8/2016 | LO_USA0013308 | LO_USA0013309 | 14-4285F-2  INNO ADDITIVES  BOOSTERS  BONDING EV1602-0125 | A; REL; 403; FO |
| 3322 | 12/11/2015 | LO_USA0013311 | LO_USA0013312 | 14-4285D-8 INNO BONDING vs OLAPLEX w SEQ Steps 1 and 2 | A; REL; 403; FO |
| 3323 | 7/14/2015 | LO_USA0013313 | LO_USA0013314 | 14-4285C-5 INNO LOREAL ADDITIVE STEP 2 | A; REL; 403; FO |
| 3324 | 2/12/2015 | LO_USA0013315 | LO_USA0013317 | Email from K. Hamilton G. David dated 2-12-2015 ; subject: CE1502-0084 | A; REL; 403; FO; H; BE |
| 3325 | 8/8/2016 | LO_USA0013320 | LO_USA0013347 | 14-4285D-8 INNO L'OREAL ADDITIVE v OLAPLEX w SEQ steps1 and 2 | A; REL; 403; FO |
| 3326 | 12/2/2015 | LO_USA0013350 | LO_USA0013359 | 14-4285D7R2 INNO L'OREAL ADDITIVE P4 C8 vs P4 C3 | A; REL; 403; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3327 | 8/24/2016 | LO_USA0013360 | LO_USA0013364 | Email from K. Dreher to G. Davis dated 8-24-2016; subject "EV1608-0569 - Study request Sensorial" | A; REL; 403; FO; H; BE |
| 3328 | 8/22/2015 | LO_USA0013365 | LO_USA0013387 | 14-4285C7S INNO L`OREAL Bonding Steps 1- 2 | A; REL; 403; FO |
| 3329 | 8/31/2016 | LO_USA0013388 | LO_USA0013389 | 14-4285F-4 INNO ADDITIVES BOOSTERS Diluted P4+ C8 vs diluted P12+C18 EV1608-0569 EDR | A; REL; 403; FO |
| 3330 | 8/14/2015 | LO_USA0013390 | LO_USA0013391 | 14-4285C-9 INNO LOREAL ADDITIVE STEP 2 EDR | A; REL; 403; FO |
| 3331 | 3/19/2015 | LO_USA0013392 | LO_USA0013397 | 14-4285P3S Proto 1 vs Proto 2 | A; REL; 403; FO |
| 3332 | 11/18/2016 | LO_USA0013398 | LO_USA0013401 | 14-4285H-1 INNO Bonding Back Bar Layer vs Rinse EV1610-0168 Expert Test Summary | A; REL; 403; FO |
| 3333 | 8/5/2015 | LO_USA0013402 | LO_USA0013411 | 144285C8SR Olaplex Steps 1 and 2 | A; REL; 403; FO |
| 3334 | 9/27/2015 | LO_USA0013412 | LO_USA0013428 | 14-4285D-3 Inno SEQ with Bonding Additive Results | A; REL; 403; FO |
| 3335 | 8/31/2015 | LO_USA0013462 | LO_USA0013464 | 144285C11S INNO L`OREAL ADDITIVE System Steps 1 and 2 PEC Test Summary | A; REL; 403; FO |
| 3336 | 10/16/2015 | LO_USA0013466 | LO_USA0013468 | 144285C17S INNO L`OREAL ADDITIVE System Steps 1 and 2 PEC Test Summary | A; REL; 403; FO |
| 3337 | 8/5/2015 | LO_USA0013469 | LO_USA0013478 | 14-4285C7SR INNO L'OREAL ADDITIVE step 1 and 2 Results | A; REL; 403; FO |
| 3338 | 9/30/2015 | LO_USA0013479 | LO_USA0013482 | 144285C14R INNO L`OREAL ADDITIVE System Steps 1 and 2 - 3 Rechecks PEC Test Summary | A; REL; 403; FO |
| 3339 | 3/28/2016 | LO_USA0013483 | LO_USA0013496 | AR Bonding with LLC (Aptes) Results | A; REL; 403; FO |
| 3340 | 8/21/2015 | LO_USA0013500 | LO_USA0013500 | 14-4285C12 INNO L'OREAL Bonding step 2 | A; REL; 403; FO |
| 3341 | 10/1/2015 | LO_USA0013503 | LO_USA0013504 | 14-4285E-5 INNO L'OREAL ADDITIVE SYSTEM Steps 1 and 2 in RKCF SEQ REDS BASE EDR | A; REL; 403; FO |
| 3342 | 4/20/2016 | LO_USA0013506 | LO_USA0013522 | 14-4285G1T INNO Additives Boosters BONDING P16C8 vs P4C8 in Bleach EV1603-0746 Results | A; REL; 403; FO |
| 3343 | 3/22/2016 | LO_USA0013523 | LO_USA0013523 | 14-4285G-1 INNO Additives Boosters BONDING P16C8 vs P4C8 in Bleach EV1603-0746 | A; REL; 403; FO |
| 3344 | 8/12/2015 | LO_USA0013524 | LO_USA0013524 | 144285C13S INNO LOREAL ADDITIVE STEPs 1 and 2 EDR | A; REL; 403; FO |
| 3345 | 7/31/2015 | LO_USA0013526 | LO_USA0013526 | 144285C9SR INNO L`OREAL BONDING System Steps 1 and 2 EDR | A; REL; 403; FO |
| 3346 | 4/1/2015 | LO_USA0013527 | LO_USA0013527 | Additive Academy testing results | A; REL; 403; FO |
| 3347 | 11/25/2015 | LO_USA0013528 | LO_USA0013528 | 14-4285E-9 INNO L'OREAL ADDITIVE SYSTEM Steps 1 and 2 any PREFERENCE Kit Base EDR | A; REL; 403; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3348 | 4/20/2016 | LO_USA0013529 | LO_USA0013531 | 14-4285G-1  INNO Additives Boosters BONDING P16C8 vs P4C8 in Bleach EV1603-0746 Expert Hair Summary | A; REL; 403; FO |
| 3349 | 8/22/2015 | LO_USA0013532 | LO_USA0013554 | 14-4285C7S INNO L`OREAL Bonding Steps 1- 2 RESULTS | A; REL; 403; FO |
| 3350 | 10/14/2015 | LO_USA0013555 | LO_USA0013588 | 144285C16S System Additive Step 1 and Step 2 System RESULTS | A; REL; 403; FO |
| 3351 | 8/22/2015 | LO_USA0013589 | LO_USA0013611 | 14-4285C7S INNO L`OREAL Bonding Steps 1- 2 RESULTS | A; REL; 403; FO |
| 3352 | 6/4/2015 | LO_USA0013612 | LO_USA0013625 | Document entitled Olivia Project dated June 4, 2015 | Duplicate Exhibit |
| 3353 | 10/30/2015 | LO_USA0013627 | LO_USA0013648 | 144285C12S INNO ADDITIVE System RESULTS | A; REL; 403; FO |
| 3354 | 11/25/2015 | LO_USA0013649 | LO_USA0013650 | 14-4285E-8 INNO L'OREAL ADDITIVE SYSTEM Steps 1 and 2 any shade in RKCG EDR | A; REL; 403; FO |
| 3355 | 8/31/2015 | LO_USA0013651 | LO_USA0013653 | 144285C12S  INNO L`OREAL ADDITIVE steps 1 and 2 PEC Test Summary | A; REL; 403; FO |
| 3356 | 10/14/2015 | LO_USA0013660 | LO_USA0013667 | Document entitled "Additives-Boosters_ Alternative to OLAPLEX- Evaluation and charactierization OLAPLEX against FIBERPLEX | A; REL; 403; FO |
| 3357 | 10/12/2015 | LO_USA0013671 | LO_USA0013679 | Document entitled "Additives-Boosters_ Alternative to OLAPLEX- Evaluation and charactierization: P4 + C8 [1,9% maleic acid + MEA] specifications | A; REL; 403; FO |
| 3358 | 9/10/2015 | LO_USA0013680 | LO_USA0013688 | Document entitled "Additives-Boosters_ Alternative to OLAPLEX- Evaluation and charactierization: P4 + C3 [1,9% maleic acid] specifications vs Bleach alone | A; REL; 403; FO |
| 3359 | 7/16/2015 | LO_USA0013689 | LO_USA0013696 | Document entitled "Bonding Additive and Post Treament Evaluation" | A; REL; 403; FO |
| 3360 | 8/13/2015 | LO_USA0013697 | LO_USA0013718 | 144285C12S INNO L'OREAL ADDITIVE  step 1 and 2 RESULTS | A; REL; 403; FO |
| 3361 | 2/6/2015 | LO_USA0013719 | LO_USA0013733 | Post Color Treatments 2015 Questionanaire: ADDBASE15 | A; REL; 403; FO |
| 3362 | 4/6/2015 | LO_USA0013734 | LO_USA0013749 | Additive + Post Color Treatments Results | A; REL; 403; FO |
| 3363 | 8/11/2015 | LO_USA0013750 | LO_USA0013775 | 144285C10S INNO ADDITIVE System RESULTS | A; REL; 403; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3364 | 10/14/2015 | LO_USA0013776 | LO_USA0013784 | Document entitled "Additives-Boosters_ Alternative to OLAPLEX- Evaluation and charactierization P4 + C8 [1,9% maleic acid + MEA] vs Olaplex | A; REL; 403; FO |
| 3365 | 10/14/2015 | LO_USA0013785 | LO_USA0013796 | 144285C16R INNO L'OREAL ADDITIVE RESULTS | A; REL; 403; FO |
| 3366 | 10/1/2015 | LO_USA0013797 | LO_USA0013797 | 14-4285E5S INNO L'OREAL ADDITIVE SYSTEM Steps 1 and 2 in RKCF n SEQ REDS SHADE EDR | A; REL; 403; FO |
| 3367 | 8/11/2015 | LO_USA0013798 | LO_USA0013798 | 144285C12S  INNO L`OREAL ADDITIVE System Steps 1 and 2 EDR | A; REL; 403; FO |
| 3368 | 7/8/2015 | LO_USA0013799 | LO_USA0013800 | 14-4285C2 INNO LOREAL ADDITIVE STEP 1 and 2 EDR | A; REL; 403; FO |
| 3369 | 6/4/2015 | LO_USA0013801 | LO_USA0013814 | Document entitled Olivia Project Formula Screening Results | Duplicate Exhibit |
| 3370 | 7/16/2015 | LO_USA0013815 | LO_USA0013815 | Hair Color Evaluation Form Project 14-4285 2S | A; REL; 403; FO |
| 3371 | 3/18/2016 | LO_USA0013827 | LO_USA0013831 | Email from G. David to K. Dreher et al. dated 3-18-2016; subject:  RE:EV1603-0746 - Study Reqquest Sensorial (1129634IN2, 37938 RDK, 37817 RDK) | A; REL; 403; FO; H; BE |
| 3372 | 10/19/2015 | LO_USA0013832 | LO_USA0013839 | 14-4285E7S INNO L'OREAL ADDITIVE P4C8 and Olaplex vs no additive | A; REL; 403; FO |
| 3373 | 8/1/2015 | LO_USA0013840 | LO_USA0013860 | 14-4285C8S INNO Bonding Additive Results | A; REL; 403; FO |
| 3374 | 9/29/2015 | LO_USA0013861 | LO_USA0013862 | 14-4285E-3 INNO L'OREAL ADDITIVE SYSTEM steps 1 and 2 P4+C8 EDR | A; REL; 403; FO |
| 3375 | 7/31/2015 | LO_USA0013866 | LO_USA0013867 | 144285C910S  INNO L`OREAL BONDING System Steps 1 and 2 EDR | A; REL; 403; FO |
| 3376 | 10/21/2015 | LO_USA0013868 | LO_USA0013861 | Document entitled Bonding Performances | A; REL; 403; FO |
| 3377 | 12/23/2015 | LO_USA0013873 | LO_USA0013875 | 14-4285E-4 INNO L`OREAL ADDITIVE SYSTEM  steps 1 and 2 any Shade RKCF BASE PEC Test Summary | A; REL; 403; FO |
| 3378 | 8/6/2015 | LO_USA0013876 | LO_USA0013898 | 144285C11S  INNO L'OREAL ADDITIVE  step 1 and 2 RESULT | A; REL; 403; FO |
| 3379 | 11/23/2015 | LO_USA0013899 | LO_USA0013901 | 14-4285E-4  INNO L`OREAL ADDITIVE SYSTEM  steps 1 and 2 any Shade RKCF BASE PEC Test Summary | A; REL; 403; FO |
| 3380 | | | | Intentionally Left Blank | |
| 3381 | 7/16/2015 | LO_USA0013914 | LO_USA0013915 | 14-4285C2S INNO LOREAL ADDITIVE STEP 1 and 2 EDR | A; REL; 403; FO |
| 3382 | 8/31/2015 | LO_USA0013917 | LO_USA0013919 | 14-4285C9S  INNO L`OREAL ADDITIVE System Steps 1 and 2 PEC Test Summary | A; REL; 403; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3383 | 10/30/2015 | LO_USA0013920 | LO_USA0013920 | 14-4285E7S INNO L`OREAL ADDITIVE Steps 1 and 2 w RKCF SEQ REDS shade EDR | A; REL; 403; FO |
| 3384 | 6/29/2016 | LO_USA0013921 | LO_USA0013922 | 14-4285S13 P12 C8 in Cream Bleach vs Cream Bleach alone EDR | A; REL; 403; FO |
| 3385 | 8/31/2015 | LO_USA0013923 | LO_USA0013925 | 144285C11S INNO L`OREAL ADDITIVE System Steps 1 and 2 PEC Test Summary | A; REL; 403; FO |
| 3386 | 8/13/2015 | LO_USA0013927 | LO_USA0013948 | 144285C13S INNO L'OREAL ADDITIVE step 1 and 2 RESULTs | A; REL; 403; FO |
| 3387 | 8/31/2015 | LO_USA0013949 | LO_USA0013951 | 144285C10S INNO L'OREAL ADDITIVE System Steps 1 and 2 PEC Test Summary | A; REL; 403; FO |
| 3388 | 2/9/2015 | LO_USA0013952 | LO_USA0013979 | Questionnaire: ADDBASE15, Post Color Treatments 2015 | A; REL; 403; FO |
| 3389 | 8/18/2015 | LO_USA0013981 | LO_USA0014001 | Document entitled Additives-Boosters- Alternative to OLAPLEX -Evaluation and characterization:  Olaplex specification, P4+C3 [1,9%] specifications, P4+C4 [1,9%maleic acid + 5%glcerine] specifications | A; REL; 403; FO |
| 3390 | 7/16/2015 | LO_USA0014003 | LO_USA0014003 | Image of head of hair | A; REL; 403; FO |
| 3391 | | | | Intentionally Left Blank | |
| 3392 | 8/12/2015 | LO_USA0014014 | LO_USA0014036 | 14-4285C-2 INNO L'OREAL ADDITIVE  step 1 and 2 RESULTS | A; REL; 403; FO |
| 3393 | 9/10/2015 | LO_USA0014048 | LO_USA0014069 | 144285C12S INNO ADDITIVE System RESULTS | A; REL; 403; FO |
| 3394 | 9/29/2015 | LO_USA0014070 | LO_USA0014070 | 14-4285E3S INNO L'OREAL ADDITIVE SYSTEM Steps 1 and 2 in Color SHADE EDR | A; REL; 403; FO |
| 3395 | 9/24/2015 | LO_USA0014071 | LO_USA0014071 | 14-4285E-1 INNO L'OREAL ADDITIVE SYSTEM Steps 1 and 2 in Color EDR | A; REL; 403; FO |
| 3396 | | | | Intentionally Left Blank | |
| 3397 | 8/12/2015 | LO_USA0014101 | LO_USA0014124 | 144285C11S INNO ADDITIVE System RESULTS | A; REL; 403; FO |
| 3398 | 8/12/2015 | LO_USA0014131 | LO_USA0014156 | 14-4285C2S INNO L'OREAL ADDITIVE  step 1 and 2 RESULTS | A; REL; 403; FO |
| 3399 | | | | Intentionally Left Blank | |
| 3400 | 8/12/2015 | LO_USA0014160 | LO_USA0014183 | 144285C10S INNO ADDITIVE System RESULTS | A; REL; 403; FO |
| 3401 | 4/20/2016 | LO_USA0014184 | LO_USA0014186 | 14-4285G1T INNO BONDING P16C8 vs P4C8 Treatment Expert Hair Summary | A; REL; 403; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3402 | 7/31/2015 | LO_USA0014189 | LO_USA0014190 | 144285C10S  INNO L`OREAL BONDING System Steps 1 and 2 EDR | A; REL; 403; FO |
| 3403 | 10/16/2015 | LO_USA0014191 | LO_USA0014213 | 14-4285E-4  INNO L`OREAL ADDITIVE SYSTEM  RESULTS | A; REL; 403; FO |
| 3404 | 4/19/2016 | LO_USA0014214 | LO_USA0014235 | 14-4285G-1  INNO BONDING P16C8 vs P4C8 in Bleach EV1603-0746 9 results | A; REL; 403; FO |
| 3405 | 12/4/2015 | LO_USA0014236 | LO_USA0014238 | 14-4285E-8 INNO L'OREAL ADDITIVE SYSTEM Steps 1 and 2 any shade in RKCG PEC Test Summary | A; REL; 403; FO |
| 3406 | 6/23/2015 | LO_USA0014248 | LO_USA0014251 | Document entitled Product Performance Evaluation - Bonding Taskforce US/FR Headtrials | A; REL; 403; FO |
| 3407 | 9/29/2015 | LO_USA0014257 | LO_USA0014258 | 14-4285E4  INNO L'OREAL ADDITIVE SYSTEM Steps 1 and 2 Base EDR | A; REL; 403; FO |
| 3408 | 10/5/2015 | LO_USA0014259 | LO_USA0014260 | 14-4285E-6 INNO L'OREAL ADDITIVE SYSTEM Steps 1 and 2 in RKCF SEQ REDS BASE EDR | A; REL; 403; FO |
| 3409 | 4/4/2016 | LO_USA0014261 | LO_USA0014279 | 14-4285G-1  INNO BONDING P16C8 vs P4C8 in Bleach EV1603-0746 RESULT | A; REL; 403; FO |
| 3410 | 12/3/2015 | LO_USA0014280 | LO_USA0014303 | 14-4285E-8  INNO L`OREAL ADDITIVE SYSTEM RESULT | A; REL; 403; FO |
| 3411 | 9/29/2015 | LO_USA0014306 | LO_USA0014306 | 14-4285E4S INNO L'OREAL ADDITIVE SYSTEM Steps 1 and 2 in Color SHADE EDR | A; REL; 403; FO |
| 3412 | 9/28/2015 | LO_USA0014307 | LO_USA0014308 | 14-4285E-1 INNO L'OREAL ADDITIVE SYSTEM Steps 1 and 2 in RKCF SEQ EDR | A; REL; 403; FO |
| 3413 | 10/12/2015 | LO_USA0014309 | LO_USA0014317 | Document entitled Additives-Boosters- Alternative to OLAPLEX - Evaluation and characterization P9+C8 specifications | A; REL; 403; FO |
| 3414 | 8/11/2015 | LO_USA0014319 | LO_USA0014319 | 144285C12R  INNO L`OREAL ADDITIVE System Steps 1 and 2 - 3 RCKS EDR | A; REL; 403; FO |
| 3415 | 10/8/2015 | LO_USA0014320 | LO_USA0014321 | 14-4285E-4 INNO L'OREAL ADDITIVE SYSTEM Steps 1 and 2 any shade RKCF BASE EDR | A; REL; 403; FO |
| 3416 | 10/5/2015 | LO_USA0014322 | LO_USA0014323 | 14-4285E6S INNO L'OREAL ADDITIVE SYSTEM Steps 1 and 2 in RKCF n SEQ REDS SHADE EDR | A; REL; 403; FO |
| 3417 | 8/25/2015 | LO_USA0014337 | LO_USA0014357 | Document entitled Additives-Boosters- Alternative to OLAPLEX -Evaluation and characterization:  Olaplex specification, P4+C3 [1,9%] specifications, P4+C4 [1,9%maleic acid + 5%glcerine] specifications | A; REL; 403; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3418 | 8/12/2015 | LO_USA0014358 | LO_USA0014359 | 144285C12S INNO LOREAL ADDITIVE STEP 1 and 2 EDR | A; REL; 403; FO |
| 3419 | 10/21/2015 | LO_USA0014362 | LO_USA0014365 | Document - Bonding Performances | A; REL; 403; FO |
| 3420 | 8/5/2015 | LO_USA0014366 | LO_USA0014388 | 14-4285C8S INNO L`OREAL Bonding Steps 1- 2 RESULTS | A; REL; 403; FO |
| 3421 | 8/12/2015 | LO_USA0014389 | LO_USA0014406 | 14-4285C9S INNO L'OREAL ADDITIVE  step 1 and 2 RESULTS | A; REL; 403; FO |
| 3422 | 12/4/2015 | LO_USA0014409 | LO_USA0014432 | 14-4285E-9  INNO L`OREAL ADDITIVE SYSTEM  RESULTS | A; REL; 403; FO |
| 3423 | 8/31/2015 | LO_USA0014443 | LO_USA0014444 | 14-4285C-2  INNO L`OREAL ADDITIVE steps 1 and 2 PEC Test Summary | A; REL; 403; FO |
| 3424 | 7/9/2015 | LO_USA0014445 | LO_USA0014462 | 14-4285C-1 INNO L`OREAL ADDTIVE RESULTS | A; REL; 403; FO |
| 3425 | 4/21/2016 | LO_USA0014464 | LO_USA0014466 | Document- Bonding - P4 / P16 / P12 | A; REL; 403; FO |
| 3426 | 7/16/2015 | LO_USA0014467 | LO_USA0014494 | 14-4285A16 INNO L`OREAL ADDTIVE RESULTS | A; REL; 403; FO |
| 3427 | 8/5/2015 | LO_USA0014499 | LO_USA0014516 | 144285C10S INNO L'OREAL ADDITIVE  step 1 and 2 RESULTS | A; REL; 403; FO |
| 3428 | 5/28/2015 | LO_USA0014517 | LO_USA0014544 | Questionnaire: ADDBASE15, Post Color Treatments 2015 | A; REL; 403; FO |
| 3429 | 7/28/2015 | LO_USA0014545 | LO_USA0014546 | 14-4285C9S INNO LOREAL ADDITIVE STEP 1 and 2 EDR | A; REL; 403; FO |
| 3430 | 6/3/2016 | LO_USA0014694 | LO_USA0014701 | HCS16-030 Processing Time Bonding vs Olaplex | A; REL; 403; FO |
| 3431 | 5/25/2016 | LO_USA0018074 | LO_USA0018075 | Microbiological Study Results MU1604-0279 | A; REL; 403; FO |
| 3432 | | | | Intentionally Left Blank | |
| 3433 | 7/13/2016 | LO_USA0018096 | LO_USA0018097 | Email from T. Carothers to D. Velkov dated 7-13-2016; subject:  RE: Ad-Hoc Survey for Bonding Professional Quanti | A; REL; 403; FO |
| 3434 | 7/7/2015 | LO_USA0018098 | LO_USA0018104 | SDS- Non-Hazardous Cosmetic/Personal Care Products | A; REL; 403; FO |
| 3435 | 8/24/2018 | LO_USA0018105 | LO_USA0018106 | Microbiological Study Results MU1604-0216 | A; REL; 403; FO |
| 3436 | 4/18/2016 | LO_USA0018107 | LO_USA0018107 | Email from J. Pannullo to R. Iancau dated 4-18-2016; subject:  FW Purchase order 4200385583 approved | A; REL; 403; FO |
| 3437 | 8/24/2018 | LO_USA0018108 | LO_USA0018109 | Microbiological Study Results MU1604-0218 | A; REL; 403; FO |
| 3438 | 12/9/2015 | LO_USA0018110 | LO_USA0018117 | SDS Performance Additive P4 + AHA | A; REL; 403; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3439 | 4/8/2016 | LO_USA0018130 | LO_USA0018131 | Email from D. Ferreira to M. Nashed dated 4-8-2016; subject:  DIALOG:  DC1603-1803 Response for 1129686MX2-MATRIX - 2015-4558/B - RM or FP Safety approvale (VISA) for efficacy tests in humans | A; REL; 403; FO; H; BE |
| 3440 | 12/22/2014 | LO_USA0018404 | LO_USA0018433 | L'Oreal Absolut Repair Regimen, Study ETU-FT-14-001, Orchestrat # 2009-6904/A | A; REL; 403; FO |
| 3441 | 8/24/2018 | LO_USA0018468 | LO_USA0018469 | Microbiological Study Result MU1604-0217 (Formula no. 1129686MX2) | A; REL; 403; FO |
| 3442 | 10/28/2015 | LO_USA0018634 | LO_USA0018635 | Microbiological Study Results (Formula No. 1129634IN1) | A; REL; 403; FO |
| 3443 | 12/30/2015 | LO_USA0018636 | LO_USA0018644 | Test Report - Sensory Properties of P1 Additive in Chromatics vs. Chromatics Alone (Study #COS-CAP-2015-0787) | A; REL; 403; FO |
| 3444 | 10/6/2015 | LO_USA0018645 | LO_USA0018646 | Microbiological Study Results (Formula No. 37477 RDK) | A; REL; 403; FO |
| 3445 | 12/15/2015 | LO_USA0018659 | LO_USA0018660 | Microbiological Study Results (Formula No. 1129634IN2) | A; REL; 403; FO |
| 3446 | 9/8/2016 | LO_USA0018685 | LO_USA0018700 | Bonding for Hair Color (Project No. TF16-005) | A; REL; 403; FO |
| 3447 | 4/16/2015 | LO_USA0018703 | LO_USA0018704 | Microbiological Study Results (Formula No. 37149 RDK) | A; REL; 403; FO |
| 3448 | 6/22/2015 | LO_USA0018734 | LO_USA0018734 | Analytical Request - AU1503-0157, Requested 3-27-2015, Product/RN Name:  Glycerin Additive for Bleach | A; REL; 403; FO |
| 3449 | 8/23/2017 | LO_USA0018799 | LO_USA0018801 | Sodium Relaxer + Bonding Performance Synthesis | A; REL; 403; FO |
| 3450 | 9/23/2016 | LO_USA0018802 | LO_USA0018810 | Sensory Study Report - Solon Study - Sensory Properties of P12 Additive in Color Fusion vs. Color Fusion Alone | A; REL; 403; FO |
| 3451 | 2/3/2017 | LO_USA0018811 | LO_USA0018820 | Evaluation of the impact of P12/C8 on fiber integrity in a bleach application using tensile test | A; REL; 403; FO |
| 3452 | 8/26/2015 | LO_USA0018821 | LO_USA0018826 | Test Report - Sensory Properties of Bleach Powder with Additive 37326 RFK Compared to Bleach Alone (Study #COS-CAP-2015-0573) | A; REL; 403; FO |
| 3453 | 4/29/2015 | LO_USA0018883 | LO_USA0018884 | Microbiological Study Results (Formula No. 37149 RDK) | A; REL; 403; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3454 | 3/21/2016 | LO_USA0018901 | LO_USA0018909 | Test Report - Sensory Properties of P4 in Blonde Glam Cream Bleach vs. Blonde Glam Cream Bleach Alone (Study #COS-CAP-2016-0237) | A; REL; 403; FO |
| 3455 | 5/5/2015 | LO_USA0018966 | LO_USA0018977 | Report A comparison of anti-breakage properties of bleach dated 5-5-2015 | A; REL; 403; FO |
| 3456 | 3/21/2016 | LO_USA0019047 | LO_USA0019055 | Test Report - Sensory Properties of Bonding Additive P4 in Color Gels vs. Color Gels Alone (Study #COS-CAP-2016-0235) | A; REL; 403; FO |
| 3457 | 6/2/2016 | LO_USA0019074 | LO_USA0019082 | Test Report - Sensory Properties of P4 Additive 37817 RDK in Masters Results vs. Masters Results Alone (Study #COS-CAP-2016-0415) | A; REL; 403; FO |
| 3458 | 5/5/2015 | LO_USA0019098 | LO_USA0019009 | Report A comparison of anti-breakage properties of bleach dated 5-5-2015 | A; REL; 403; FO |
| 3459 | 6/23/2017 | LO_USA0019110 | LO_USA0019114 | Inno Bonding 2.0- Relaxers: Relaxer + Bonding Treatment Modified P12/C8 versus Relaxer + Bonding P4/C8 | A; REL; 403; FO |
| 3460 | 3/14/2016 | LO_USA0019151 | LO_USA0019159 | Test Report - Sensory Properties of Bonding Additive P4 in Color Fusion vs. Color Fusion Alone (Study #COS-CAP-2016-0043) | A; REL; 403; FO |
| 3461 | 12/29/2015 | LO_USA0019178 | LO_USA0019179 | Microbiological Study Results (Formula No. 37477 RDK) | A; REL; 403; FO |
| 3462 | 12/29/2015 | LO_USA0019218 | LO_USA0019219 | Microbiological Study Results (Formula No. 37462 RDK) | A; REL; 403; FO |
| 3463 | 2/22/2016 | LO_USA0019298 | LO_USA0019321 | Relaxer with Bonding Additive and Treatment (Formula #s - Additive: 37817 RDK (P4) - Treatment: 1129634IN2 (C8)) | A; REL; 403; FO |
| 3464 | 4/30/2015 | LO_USA0019322 | LO_USA0019333 | Report of Fiber Integrity of Tresses treated with bleach and bleach plus additives dated 4-30-2015 | A; REL; 403; FO |
| 3465 | 4/22/2015 | LO_USA0019345 | LO_USA0019346 | Microbiological Study Results (Formula No. 37149 RDK) | A; REL; 403; FO |
| 3466 | 10/27/2015 | LO_USA0019430 | LO_USA0019438 | Test Report - Sensory Properties of Bleach with Performance Additive P4  vs. Bleach Alone (Study #COS-CAP-2015-0594) | A; REL; 403; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3467 | 6/18/2015 | LO_USA0019466 | LO_USA0019477 | Test Report - Sensory Properties of Flash Lift Powder Compared to Flash Lift with Booster (Study #COS-CAP-2015-0460) | A; REL; 403; FO |
| 3468 | 5/16/2016 | LO_USA0019516 | LO_USA0019524 | Test Report - Sensory Properties of P4 Additive 37817 RDK in Majirel vs. Majirel Alone ( Study #COS-CAP-2016-0312) | A; REL; 403; FO |
| 3469 | 12/7/2015 | LO_USA0019612 | LO_USA0019637 | Bonding Additive w/Treatment (Formula #s - Additive: 37567 RDK (P12) - Treatment: 1129634IN2 (C8)) | A; REL; 403; FO |
| 3470 | 7/14/2015 | LO_USA0019656 | LO_USA0019686 | Bonding Additive w/Treatment (Formula #s - Additive 37462 RDK - Treatment: 112963IN) (Study #: ETU-CE-15-004; Orchestra #: 2014-4285/A) | A; REL; 403; FO |
| 3471 | | | | Intentionally Left Blank | |
| 3472 | 8/13/2018 | LO_USA0019706 | LO_USA0019725 | Report Evaluation of Fiber Integrity of  swatches treated with Eagle highlift base plus bonding actives versus SOCOLOR | A; REL; 403; FO |
| 3473 | | | | Intentionally Left Blank | |
| 3474 | 8/10/2017 | LO_USA0019731 | LO_USA0019732 | Sodium Relaxer + Bonding + In-Shower Performance Synthesis | A; REL; 403; FO |
| 3475 | | | | Intentionally Left Blank | |
| 3476 | 6/18/2015 | LO_USA0019802 | LO_USA0019813 | Sensory Properties of Flash Lift Pwder Compared to Flash Lift with Booster (Test date 3-31-2015 to 4-17-2015) | A; REL; 403; FO |
| 3477 | 12/18/2015 | LO_USA0019851 | LO_USA0019859 | Test Report - Sensory Properties of P4 Additive in Color Fusion Extra Lift vs Color Fusion Extra Lift Alone (Test date 9-29-2015 to 10-1-2015) | A; REL; 403; FO |
| 3478 | 3/31/2016 | LO_USA0019885 | LO_USA0019893 | Test Report - Sensory Properties of P13 Additive in Bleach Powder vs. Bleach Powder Alone (Study #COS-CAP-2016-0242) | A; REL; 403; FO |
| 3479 | 3/21/2016 | LO_USA0019899 | LO_USA0019907 | Test Report - Sensory Properties of P4 in Blonde Glam Cream Bleach vs. Blonde Glam Cream Bleach Alone (Study #COS-CAP-2016-0237) | A; REL; 403; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3480 | 4/7/2016 | LO_USA0019919 | LO_USA0019927 | Test Report  Sensory Properties of P12 in Bleach Powder vs. Bleach Powder Alone (Study #COS-CAP-2016-0283) | A; REL; 403; FO |
| 3481 | 3/18/2016 | LO_USA0019946 | LO_USA0019957 | The evaluation of the impact of the new P4+C8 system on the hair's mechanical properties when introduced during ableach application | A; REL; 403; FO |
| 3482 | 9/18/2015 | LO_USA0019970 | LO_USA0019997 | Bonding Additive w/Treatment (Formula #s: Additive: 37462 RDK; Treatment: 1129634IN3; Study #: PPE-CE-15-003; Orchestra #: 2014-4285/A) | A; REL; 403; FO |
| 3483 | 11/4/2016 | LO_USA0019998 | LO_USA0020006 | Sensory Properties of P12 Additive in Blonde Dimensions vs. Blonde Dimensions Alone (Study #COS-CAP-2016-0984) | A; REL; 403; FO |
| 3484 | 5/16/2016 | LO_USA0020103 | LO_USA0020111 | Test Report - Sensory Properties of P4 Additive 37817 RDK in Majirel vs. Majirel Alone ( Study #COS-CAP-2016-0312) | A; REL; 403; FO |
| 3485 | 3/21/2016 | LO_USA0020112 | LO_USA0020120 | Test Report - Sensory Properties of Bonding Additive P4 in Color Gels vs. Color Gels Alone (Study #COS-CAP-2016-0235) | A; REL; 403; FO |
| 3486 | 8/16/2018 | LO_USA0020125 | LO_USA0020141 | Evaluation of Fiber Integrity of swatches treated with Schwartzkopf BlondeMe 9 level bleach plus P4 bonding additive versus Fiberplex | A; REL; 403; FO |
| 3487 | 7/7/2016 | LO_USA0020142 | LO_USA0020150 | Test Report - Sensory Properties of P4 Additive 90285 MX in Socolor vs. Socolor Alone (Study #COS0-CAP-2016-0416) | A; REL; 403; FO |
| 3488 | 1/11/2016 | LO_USA0020153 | LO_USA0020154 | Microbiological Study Results (Formula No. 1129634IN8) | A; REL; 403; FO |
| 3489 | 5/27/2015 | LO_USA0020200 | LO_USA0020218 | Evaluation of fiber integrity of tresses treated with bleach alone vs. those with bleach plus additives | A; REL; 403; FO |
| 3490 | 10/23/2015 | LO_USA0020240 | LO_USA0020241 | Microbiological Study Results (Formula No. 37462 RDK) | A; REL; 403; FO |
| 3491 | 3/15/2016 | LO_USA0020242 | LO_USA0020253 | The evaluation of the impact of the new P4+C8 system on the hairs' mechanical properties when introduced during a bleach application | A; REL; 403; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3492 | 1/8/2016 | LO_USA0020262 | LO_USA0020270 | Test Report - Sensory Properties of Bonding Additive P4 in Shades EQ vs. Shades EQ Alone ( Study #COS-CAP-2016-0039) | A; REL; 403; FO |
| 3493 | 12/31/2015 | LO_USA0020303 | LO_USA0020311 | Test Report - Sensory Properties of P9 Additive in Flash Lift vs. Flash Lift Alone (Study #COS-CAP-2015-0894 | A; REL; 403; FO |
| 3494 | | | | Intentionally Left Blank | |
| 3495 | 11/3/2015 | LO_USA0020322 | LO_USA0020323 | Microbiological Study Results (Formula No. 1129634IN8) | A; REL; 403; FO |
| 3496 | 5/6/2015 | LO_USA0020324 | LO_USA0020357 | Redken Additive + Opale 32 Treatment (Formula #s: Additive: 37149 RDK; Treatment: 1129601 RK; Study #: ETU-CE-15-001; Orchestra #: 2015-1883/A) | A; REL; 403; FO |
| 3497 | | | | Intentionally Left Blank | |
| 3498 | 12/18/2015 | LO_USA0020505 | LO_USA0020513 | Test Report - Sensory Properties of P4 Additive in Color Fusion Extra Lift vs. Color Fusion Extra Lift Alone (Study #COS-CAP-2015-0890) | A; REL; 403; FO |
| 3499 | | | | Intentionally Left Blank | |
| 3500 | 2/16/2016 | LO_USA0020651 | LO_USA0020659 | Test Report - Sensory Properties of Bonding Additive P4 in Chromatics vs. Chromatics Alone (Study #COS-CAP-2016-0040) | A; REL; 403; FO |
| 3501 | 3/14/2016 | LO_USA0020668 | LO_USA0020676 | Test Report - Sensory Properties of Bonding Additive P4 in Color Fusion vs. Color Fusion Alone (Study #COS-CAP-2016-0043) | A; REL; 403; FO |
| 3502 | 1/8/2016 | LO_USA0020731 | LO_USA0020739 | Test Report - Sensory Properties of Bonding Additive P4 in Shades EQ vs. Shades EQ Alone ( Study #COS-CAP-2016-0039) | A; REL; 403; FO |
| 3503 | 4/30/2015 | LO_USA0020740 | LO_USA0020751 | Evaluation of fiber integrity of tresses treated with bleach along vs. those with bleach plus additives using single fiber tensile measurements | A; REL; 403; FO |
| 3504 | 2/16/2016 | LO_USA0020752 | LO_USA0020760 | Product Performance Evaluation (PPE) Test Report Sensory Properties of Bonding Additive P4 in Chromatics vs. Chromatics Alone (Study # COS-CAP-2016-0040) | A; REL; 403; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3505 | 9/14/2016 | LO_USA0020777 | LO_USA0020783 | Product Performance Evaluation - Evaluation of the Fiber Integrity Treated with Perm Products by Means of Tensile Test Report | A; REL; 403; FO |
| 3506 | 10/10/2016 | LO_USA0020786 | LO_USA0020811 | Bonding for Relaxers [PPE: [Expert Science] Professional Bonding Task Force Project N°TF16-007 Formulas #s Additive: 1200591 (P4) Treatment: 1129686MX2 (C8)] | A; REL; 403; FO |
| 3507 | 6/2/2016 | LO_USA0020815 | LO_USA0020823 | Product Performance Evaluation (PPE) Test Report Sensory Properties of P4 Additive 37817 RDK in Masters Results vs. Masters Results Alone (Study # COS-CAP-2016-0415) | A; REL; 403; FO |
| 3508 | 6/13/2016 | LO_USA0020867 | LO_USA0020867 | Stability Certificate (Formula No. 1200591) | A; REL; 403; FO |
| 3509 | 10/6/2015 | LO_USA0020907 | LO_USA0020908 | Microbiological Study Results (Formula No. 1129634IN2) | A; REL; 403; FO |
| 3510 | 9/28/2015 | LO_USA0020957 | LO_USA0020983 | Bonding Additive w/ Treatment (Formula #'s: Additive: 37462 RDK Treatment: 1129634IN1/1129634IN5 Study #: ETU-PPE-15-006 Orchestra #: 2014-4285/A) | A; REL; 403; FO |
| 3511 | | | | Intentionally Left Blank | N/A |
| 3512 | 11/3/2015 | LO_USA0021459 | LO_USA0021655 | Lab Notebook L11580 (Dreher 1) | H; FO; 403 |
| 3513 | 8/3/2015 | LO_USA0021656 | LO_USA0021847 | Lab Notebook L11533 (Hamilton 3) | H; FO; 403 |
| 3514 | 1/25/2017 | LO_USA0021848 | LO_USA0021906 | Lab Notebook L11794 (Kluck) | H; FO |
| 3515 | 3/16/2016 | LO_USA0021907 | LO_USA0021977 | Lab Notebook L11639 (Darakjy 3) | H; FO |
| 3516 | 7/27/2015 | LO_USA0021978 | LO_USA0022154 | Lab Notebook L11521 (Riva Manocha 1) | H; FO |
| 3517 | 9/30/2015 | LO_USA0022155 | LO_USA0022326 | Lab Notebook L11559 (Kluck) | H; FO |
| 3518 | 1/29/2015 | LO_USA0022420 | LO_USA0022591 | Lab Notebook L11411 (Kluck) | H; FO |
| 3519 | 10/24/2016 | LO_USA0022592 | LO_USA0022786 | Lab Notebook L11751 (Dreher 6) | H; FO; 403 |
| 3520 | 2/25/2016 | LO_USA0022787 | LO_USA0022886 | Lab Notebook L11630 (Riva Manocha 2) | H; FO |
| 3521 | 9/2/2016 | LO_USA0022887 | LO_USA0023080 | Lab Notebook L11734 (Dreher 5) | H; FO; 403 |
| 3522 | 7/25/2016 | LO_USA0023081 | LO_USA0023267 | Lab Notebook L11722 (Dreher 4) | H; FO; 403 |
| 3523 | 3/11/2016 | LO_USA0023268 | LO_USA0023453 | Lab Notebook L11638 (Dreher 3) | H; FO; 403 |
| 3524 | 7/27/2015 | LO_USA0023454 | LO_USA0023639 | Lab Notebook L11520 (Darakjy 1) | H; FO |
| 3525 | 1/29/2016 | LO_USA0023640 | LO_USA0023824 | Lab Notebook L11616 (Dreher 2) | H; FO; 403 |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3526 | 7/24/2015 | LO_USA0023987 | LO_USA0023992 | Email from R. Dolden to H. Kunetz dated 7-24-2015; subject: FW  L'Oreal is against Olaplex - serious (local) issue | No Objection |
| 3527 | 5/7/2015 | LO_USA0024119 | LO_USA0024120 | Email chain ending with email from R. Dolden to D. Allard, dated May 7, 2015, attaching Olivia Request List - pre due diligence | No Objection |
| 3528 | 6/10/2015 | LO_USA0026509 | LO_USA0026517 | Document Entitled "Olivia US Sales Assumptions" | H; FO; CP |
| 3529 | 5/26/2015 | LO_USA0026518 | LO_USA0026520 | Email chain ending with email from R. Dolden to D. Staatz dated May 26, 2015; Subject: FW: Olivia - Confidential | H; FO; CP |
| 3530 | 4/15/2015 | LO_USA0026521 | LO_USA0026522 | Email chain ending with email from R. Dolden to H. Kunetz, N. Hieronimus, A. Verhulst-Santos, A. Evrard, V. Pivet, F. Roze, A. Pagliano, P. Parenty, and B. Fontaine, dated April 15, 2015, Subject: Olivia Owner's Intention/Structure - Confidential | No Objection |
| 3531 | 4/28/2015 | LO_USA0026523 | LO_USA0026527 | Document Entitled "Olivia R&I Synthesis - PreDD" | H; FO; CP |
| 3532 | 6/1/2015 | LO_USA0026554 | LO_USA0026555 | Email chain ending with email from R. Dolden to H. Kunetz dated June 1, 2015; Subject: FW: Project Olivia | H; FO |
| 3533 | 5/1/2015 | LO_USA0026556 | LO_USA0026561 | Email chain ending with email from R. Dolden to A. Kerschner, M. Fluck, and D. Morgan, dated May 1, 2015, Subject: FW: Pre DD R&I assessment check, attaching OLIVIA RI Review pre DD April 29 v3 | No Objection |
| 3534 | 5/1/2015 | LO_USA0026562 | LO_USA0026568 | Email chain ending with email from R. Dolden to S. Habif, H. Kunetz, J. Pahin, H. Toutain, J. Ascione, F. Cervantes, C. Goget, and Y. Land, dated May 1, 2015, Subject: FW: Pre DD R&I assessment check, attaching OLIVIA RI Review pre DD April 29 v3 | H; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3535 | 7/1/2015 | LO_USA0026569 | LO_USA0026569 | Email chain ending with email from R. Dolden to I. Poidevin, K. Balleret, D. Nelly, S. Beache-Terrade, N. Gerault, M. Rigaud, V. Laloy, J. Lili, A. Levon Dean, C. Duvert, J. Boschet, A. Evrard, A. Theret, A. De La Sauzay, L. Boussaa, F. Roze, and C. Duvert dated July 1, 2015, Subject: FW: presentations for hte OLIVIA Meeting - ALERT | H; FO; CP |
| 3536 | 7/1/2015 | LO_USA0026646 | LO_USA0026670 | Document Entitled: "Project Olivia: L'Oréal" | H; FO |
| 3537 | 4/29/2015 | LO_USA0026671 | LO_USA0026671 | Email chain ending with email from R. Dolden to D. Allard dated April 29, 2015, Subject: FW: Project Olivia - Confidential | H; FO |
| 3538 | 7/1/2015 | LO_USA0026672 | LO_USA0026696 | Document Entitled: "Project Olivia: L'Oréal" | H; FO; 403 (cumulative, see, e.g., TX 3536) |
| 3539 | 7/1/2015 | LO_USA0026697 | LO_USA0026697 | Document Entitled: "Comparative Value Creation" | H; FO; CP |
| 3540 | 4/17/2015 | LO_USA0026698 | LO_USA0026699 | Email chain ending with email from R. Dolden to R. Dolden, dated April 17, 2015, Subject: FW: Project Olivia - Our Call Today | H; FO |
| 3541 | 7/1/2015 | LO_USA0026725 | LO_USA0026725 | Document Entitled: "Comparative Value Creation" | H; FO; CP; 403 (cumulative, see, e.g., TX 3539) |
| 3542 | 5/26/2015 | LO_USA0026726 | LO_USA0026727 | Email chain ending with email from R. Dolden to D. Staats dated May 26, 2015, Subject: FW: Project Olivia - Meeting with Owner Scientist  - Strictly Confidential | No Objection |
| 3543 | 5/22/2015 | LO_USA0026728 | LO_USA0026732 | Document Entitled: "Project Olivia, Detailed Notes of May 19 Meeting - Strictly Confidential" | 403 (cumulative) |
| 3544 | 5/13/2015 | LO_USA0026733 | LO_USA0026735 | Email chain ending with email from R. Dolden to D. Allard, dated May 13, 2015, Subject: FW: Project Olivia Next Week | H; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3545 | 9/2/2015 | LO_USA0026736 | LO_USA0026737 | Document Entitled: "Project Olivia, Notes of September 1 Meeting with Dean Christal, Confidential" | 403 (cumulative) |
| 3546 | 4/30/2015 | LO_USA0026738 LO_USA002674001 | LO_USA0026740 LO_USA002670007 | Email chain ending with email from R. Dolden to H. Kunetz, F. Roze, and M. Gringauz, dated April 30, 2015, Subject: FW: Project Olivia Status -- Confidential, attaching Olivia avril 2015 mod2 | H; FO |
| 3547 | 7/1/2015 | LO_USA0026766 | LO_USA0026766 | Document Entitled: "Comparative Value Creation" | H; FO; CP; 403 (cumulative, see, e.g., TX 3539 and TX 3541) |
| 3548 | 6/3/2015 | LO_USA0026797 | LO_USA0026798 | Email from R. Dolden to H. Kunetz, D. Morgan, M. Flick, and A. Kerschner, dated June 3, 2015, Subject: FW: US Sales Build Page from BP, attaching Olivia pre-Due Diligence BP V0-8-6 US Sales Build Page | H; FO; CP |
| 3549 | 6/26/2015 | LO_USA0026799 | LO_USA0026800 | Email chain ending with email from R. Dolden to A. Pagliano and F. Roze, dated June 26, 2015, Subject: FWD: Olivia --- Challenge to the Brand | H; FO |
| 3550 | 6/13/2015 | LO_USA0026801 | LO_USA0026802 | Email chain ending with email from R. Dolden to H. Kunetz dated June 13, 2015, Subject: FWD: Olivia | No Objection |
| 3551 | 7/1/2015 | LO_USA0026807 | LO_USA0026822 | Email chain ending with email from R. Dolden to H. Kunetz, dated July 1, 2015, Subject: FWD: Olivia scenarios Buy or Make.xlsx, attaching Olivia scenarios Buy or Make | No Objection |
| 3552 | 4/16/2015 | LO_USA0026850 | LO_USA0026852 | Email chain ending with email from R. Dolden to S. Habib dated April 16, 2015, Subject: FWD: Olivia Owner's Intention/Structure - Confidential | H; FO |
| 3553 | 9/2/2015 | LO_USA0026853 | LO_USA0026854 | Email chain ending with email from R. Dolden to R. Dolden dated September 2, 2015, Subject: FWD: Project Olivia --- Notes of Yesterday's Meeting with Dean Christal --- confidential | H; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3554 | 5/23/2015 | LO_USA0026855 | LO_USA0026856 | Email chain ending with email from R. Dolden to J. Agon dated May 23, 2015, Subject: FWD: Project Olivia - Meeting with Owner/Scientist - Strictly Confidential | No Objection |
| 3555 | 5/22/2015 | LO_USA0026857 | LO_USA0026861 | Document Entitled: "Project Olivia, Detailed Notes of May 19 Meeting - Strictly Confidential" | No Objection |
| 3556 | 5/21/2015 | LO_USA0026862 | LO_USA0026864 | Document Entitled: "Olaplex, LLC, Profit & Loss, January through December 2014" | No Objection |
| 3557 | 5/21/2015 | LO_USA0026865 | LO_USA0026876 | Document Entitled: "Forecast - Olaplex International Sales - Per Month / Per Customer / Per Region" | No Objection |
| 3558 | 5/21/2015 | LO_USA0026877 | LO_USA0026878 | Chart listing Item No., Description, Quantity, and Cost of Olaplex Products | No Objection |
| 3559 | 6/13/2015 | LO_USA0026879 | LO_USA0026880 | Email chain ending with email from R. Dolden to A. Kerschner dated June 13, 2015, Subject: FWD: US Olivia | H; FO |
| 3560 | 8/20/2015 | LO_USA0026881 | LO_USA0026883 | Email chain ending with email from R. Dolden to D. Christal dated Aug. 20, 2015, Subject: Meeting Dates | No Objection |
| 3561 | 6/8/2015 | LO_USA0026889 | LO_USA0026889 | Email from R. Dolden to V. Pivet, H. Kunetz, S. Habif, F. Cervantes, D. Allard, J. Ascione, A. Verhulst-Santos, J. Chabot, F. Roze, D. Morgan, M. Fluck, and A. Kerschner, dated June 8, 2015, attaching Hair Protecting Additives Report and Hair Protecting Additives | H; FO; CP |
| 3562 | 6/5/2015 | LO_USA0026890 | LO_USA0026933 | Document Entitled:  "Trendvision Reports: Overview of Hair Protecting Additives through May 2015" | H; FO |
| 3563 | 4/8/2015 | LO_USA0026937 | LO_USA0026949 | Email chain ending with email from R. Dolden to F. Roze and H. Kunetz dated April 8, 2015, Subject: Olaplex (Project Olivia), attaching draft Olivia V1.pptx | H; FO |
| 3565 | 5/21/2015 | LO_USA0028183 | LO_USA0028198 | Email chain ending with email from K. O'Rourke to H. Kunetz, M. Fluck, and D. Morgan, dated May 21, 2015, Subject: Olivia - Documents for 11 am meeting, attaching 20150521110213, 201521110319, and 201505221110248 | No Objection |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3566 | 5/21/2015 | LO_USA0028187 | LO_USA0028198 | Document Entitled: "Forecast - Olaplex International Sales - Per Month / Per Customer / Per Region" | No Objection |
| 3567 | 5/16/2015 | LO_USA0028199 | LO_USA0028199 | Email from R. Dolden to H. Kunetz dated May 16, 2015, Subject: Olivia BSG | H; FO |
| 3568 | 5/5/2015 | LO_USA0028205 | LO_USA0028207 | Email chain ending with email from R. Doldent to V. Pivet, J. Chabot, D. Morget, P. Parenty, H. Kunetz, M. Fluck, A. Kerschner dated May 5, 2015, Subject: Olivia Project Timing | H; FO |
| 3569 | 4/15/2015 | LO_USA0028216 | LO_USA0028217 | Email chain ending with email from R. Dolden to H. Kunetz dated April 15, 2015, Subject: Olivia Owner's Intention/Structure - Confidential | No Objection |
| 3570 | 5/15/2015 | LO_USA0028224 | LO_USA0028224 | Email from R. Dolden to S. Habif, J. Ascione, F. Cervantes, D. Allard, H. Kunetz, and V. Pivet, dated May 15, 2015, Subject: Project Olivia | H; FO |
| 3571 | 5/12/2015 | LO_USA0028226 | LO_USA0028226 | Email from R. Dolden to H. Kunetz dated May 12, 2015, Subject: Project Olivia | No Objection |
| 3572 | 4/29/2015 | LO_USA0028227 | LO_USA0028227 | Email from R. Dolden to S. Habif, and M. Gringauz, dated April 29, 2015, Subject: Project Olivia | H; FO |
| 3573 | 4/28/2015 | LO_USA0028229 | LO_USA0028229 | Email from R. Dolden to S. Habif, H. Kunetz, A. Verhulst-Santos, and F. Roze, dated April 28, 2015, Subject: Project Olivia | H; FO |
| 3574 | 4/18/2015 | LO_USA0028230 | LO_USA0028230 | Email from R. Dolden to P. Sharnsky dated April 18, 2015, Subject: Project Olivia | No Objection |
| 3575 | 5/4/2015 | LO_USA0028232 | LO_USA0028232 | Email from R. Dolden to D. Allard, F. Roze, S. Habif, F. Cervantes, H. Kunetz, and M. Gringauz, dated May 4, 2015, Subject: Project Olivia | H; FO |
| 3576 | 5/12/2015 | LO_USA0028259 | LO_USA0028259 | Email from R. Dolden to P. Sharnsky dated May 12, 2015, Subject: Project Olivia - Confidential | No Objection |
| 3577 | 4/29/2015 | LO_USA0028263 | LO_USA0028263 | Email from R. Dolden to D. Allard, S. Habif, and M. Gringauz, dated April 29, 2015, Subject: Project Olivia - Confidential | H; FO |
| 3578 | 4/22/2015 | LO_USA0028274 | LO_USA0028274 | Email from R. Dolden tto C. Dumais, P. parenty, H. Kunetz dated April 22, 2015, Subject: Project Olivia - Confidential | H; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3579 | 5/5/2015 | LO_USA0028279 | LO_USA0028279 | Email from R. Dolden to R. Dolden dated May 5, 2015, Subject: Project Olivia - Notes on R&I Meeting | No Objection |
| 3580 | 9/2/2015 | LO_USA0028280 | LO_USA0028281 | Email from R. Dolden to R. Dolden dated Sept. 2, 2015, Subject: Project Olivia -- Notes of September 1 Meeting with Dean Christal --- Confidential | H; FO |
| 3581 | 9/2/2015 | LO_USA0028282 | LO_USA0028282 | Email from R. Dolden to R. Dolden dated Sept. 2, 2015, Subject: Project Olivia -- Notes of September 1 Meeting with Dean Christal --- Confidential | H; FO |
| 3582 | 6/9/2015 | LO_USA0028307 | LO_USA0028307 | Email from R. Dolden to J. Ascione, D. Allard, S. Habif, V. Pivet, F. Roze, H. Kunetz, and F. Cervantes, dated June 9, 2015, Subject: Project Olivia Patent | No Objection |
| 3583 | 5/8/2015 | LO_USA0028310 | LO_USA0028310 | Email from R. Dolden to D. Allard dated May 8, 2015, Subject: Project Olivia Next Week | H; FO |
| 3584 | 4/18/2015 | LO_USA0028312 | LO_USA0028312 | Email from R. Dolden to N. Hieronimus, A. Verhulst-Santos, F. Roze, C. Mulliez, L. Attal, J. Ascione, A. Evrard, A. Pagliano, M. Dubrule, and M. Gringauz, dated April 18, 2015, Subject: Project Olivia Status --- Confidential | H; FO |
| 3585 | 9/2/2015 | LO_USA0028314 | LO_USA0028315 | Document Entitled: "Project Olivia, Notes of September 1 Meeting with Dean Christal, Confidential" | 403 (cumulative) |
| 3586 | 6/17/2015 | LO_USA0028316 | LO_USA0028316 | Email from R. Dolden to L. Schmitt dated June 17, 2015, Subject: Project Olivia Unbudgeted Opportunities, attaching Olivia Opportunities Risks.pptx | H; FO; CP |
| 3587 | 6/17/2015 | LO_USA0028317 | LO_USA0028318 | Document Entitled: "Olivia - Opportunities & Risks Not Reflected in BP" | H; FO; CP |
| 3588 | 8/10/2015 | LO_USA0028319 | LO_USA0028319 | Email chain ending with email from R. Dolden to D. Christal dated Aug. 10, 2015, Subject: RE: August 20? | H; FO; 403 (cumulative) |
| 3589 | 8/10/2015 | LO_USA0028321 | LO_USA0028323 | Email chain ending with email from R. Dolden to D. Christal dated Aug. 10, 2015, Subject: RE: August 24 | H; FO; 403 (cumulative) |
| 3590 | 6/16/2015 | LO_USA0028339 | LO_USA0028343 | Email chain ending with email from R. Dolden to A. Kerschner dated June 16, 2015, Subject: RE: Income Statement/licensing/Liqwd Inc IP | H; FO; Privacy |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3591 | | | | Intentionally Left Blank | N/A |
| 3592 | | | | Intentionally Left Blank | N/A |
| 3593 | 4/15/2015 | LO_USA0028380 | LO_USA0028381 | Email from R. Dolden to P. Sharnsky dated April 15, 2015, Subject: RE: Olivia: next steps | H; FO |
| 3594 | 5/13/2015 | LO_USA0028442 | LO_USA0028463 | Email from R. Dolden to N. Milosh, L. Schmitt, A. Pagliano, P. Parenty, H. Kunetz, D. Morgan, M. Fluck, R. Rabinowitz, J. Huether, C. Carillon, F. Cervantes, M. Gringauz, A. Kerschner, dated May 13, 2015, Subject: RE: Olivia - Confidential, attaching Olivia Owner's Intention/Structure, Olivia RI Review pre DD April 29 v3, and draft Olivia V1 | No Objection |
| 3595 | 5/13/2015 | LO_USA0028479 | LO_USA0028479 | Email chain ending with email from R. Dolden to V. Pivet dated May 13, 2015, Subject: RE: Olivia Business Planning | H; FO |
| 3596 | 5/7/2015 | LO_USA0028480 | LO_USA0028480 | Email chain ending with email from R. Dolden to D. allard dated May 7, 2015, Subject: RE: Olivia Initial Seller Request List | H; FO |
| 3597 | 6/25/2015 | LO_USA0028481 | LO_USA0028481 | Email chain ending with email from J. Gianni to D. Staats and R. Dolden dated June 25, 2015, Subject: RE: Olivia draft, attaching Project Olivia_Discussion materials_v56.pdf | H; FO; CP |
| 3598 | 6/26/2015 | LO_USA0028482 | LO_USA0028506 | Document Entitled: "Project Olivia, L'Oréal" | H; FO; CP |
| 3599 | 5/20/2015 | LO_USA0028508 | LO_USA0028509 | Email chain ending with email from R. Dolden to F. Cervantes dated May 20, 2015, Subject: RE: Olivia meeting May 19th - R&I assessment | H; FO |
| 3600 | 5/25/2015 | LO_USA0028510 | LO_USA0028510 | Email from R. Dolden to M Gringauz, D. Allard, and F. Cervantes, dated May 25, 2015, Subject: RE: Olivia meeting R&I assessment - Executive summary | H; FO; CP |
| 3601 | 6/14/2015 | LO_USA0028511 | LO_USA0028514 | Email chain ending with email from R. Dolden to A. Kerschner dated June 14, 2015, Subject: RE: Olivia Opportunities & Risks - Urgent Request | H; FO |
| 3602 | 6/14/2015 | LO_USA0028518 | LO_USA0028519 | Email chain ending with email from R. Dolden to V. Pivet, H. Kunetz dated June 14, 2015, Subject: RE: Olivia Opportunities & Risks | H; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3603 | 6/12/2015 | LO_USA0028520 | LO_USA0028520 | Document Entitled: "Olivia Applications as a % of Total Bleach/Color Applications" | H; FO; CP |
| 3604 | 4/16/2015 | LO_USA0028528 | LO_USA0028530 | Email chain ending with email from R. Dolden to A. Verhulst-Santos, dated April 16, 2015, Subject: RE: Olivia Owner's Intention/Structure - Confidential | H; FO; 403 (cumulative) |
| 3605 | 5/5/2015 | LO_USA0028531 | LO_USA0028533 | Email chain ending with email from R. Dolden to V. Pivet, D. Morgan dated May 5, 2015, Subject: Olivia Project Timing | H; FO |
| 3606 | 5/1/2015 | LO_USA0028551 | LO_USA0028552 | Email chain ending with email from R. Dolden to S. Habif, H. Kunetz, J. Pahin, H. Toutain, J. Ascione, F. Cervantes, C. Goget, Y. Land dated May 1, 2015, Subject: RE: Pre DD R&I assessment deck | H; FO |
| 3607 | 6/2/2015 | LO_USA0028553 | LO_USA0028554 | Email chain ending with email from R. Dolden to N. Milosh dated June 2, 2015, Subject: RE: Project Olivia | H; FO |
| 3608 | 6/7/2015 | LO_USA0028555 | LO_USA0028557 | Email chain ending in email from R. Dolden to S. Habif dated June 7, 2015, Subject: RE: Project Olivia | H; FO |
| 3609 | 6/1/2015 | LO_USA0028558 | LO_USA0028559 | Email chain ending with email from R. Dolden to S. Habif dated June 1, 2015, Subject: RE: Project Olivia | H; FO |
| 3610 | 6/2/2015 | LO_USA0028560 | LO_USA0028561 | Email from R. Dolden to J. Ascione, F. Cervantes, D. Allard, H. Kunetz, V. Pivet, and A. Kerschner, dated June 2, 2015, Subject: RE: Project Olivia | H; FO |
| 3611 | 3/20/2016 | LO_USA0028562 | LO_USA0028562 | Email chain ending with R. Dolden to P. Sharnsky dated March 20, 2016, Subject: RE: Project Olivia | H; FO |
| 3612 | 5/13/2015 | LO_USA0028566 | LO_USA0028566 | Email chain ending with email from R. Dolden to D. Christal dated May 13, 2015, Subject: RE: Project Olivia - Confidential | H; FO; 403 (cumulative) |
| 3613 | 4/29/2015 | LO_USA0028567 | LO_USA0028567 | Email chain ending with email from R. Dolden to S. habif dated April 29, 2015, Subject: RE: Project Olivia - Confidential | H; FO |
| 3614 | 5/22/2015 | LO_USA0028569 | LO_USA0028570 | Email chain ending with email from R. Dolden to A. Kerschner dated May 22, 2015, Subject: Re  Project Olivia - Meeting with Owner Scientist  - Strictly Confidential | H; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3615 | 4/27/2015 | LO_USA0028573 | LO_USA0028573 | Email chain ending with email from R. Dolden to M. Gringauz dated April 27, 2015, Subject: Re: Project Olivia - RI Specific Clean Team Guidelinesv2 - Confidential | H; FO; CP |
| 3616 | 6/3/2015 | LO_USA0028588 | LO_USA0028591 | Email chain ending with email from R. Dolden to C. Carillon, M. Fluck dated June 3, 2015, Subject: RE: Project Olivia --- Supply Chain | H; FO |
| 3617 | 4/17/2015 | LO_USA0028606 | LO_USA0028607 | Email from R. Dolden to R. Dolden, dated April 17, 2015, Subject: RE: Project Olivia - Our Call Today | No Objection |
| 3618 | 6/2/2015 | LO_USA0028647 | LO_USA0028647 | Email from R. Dolden to N. Milosh, dated June 2, 2015, Subject: RE: Project Olivia Plan B? | H; FO |
| 3619 | 5/5/2015 | LO_USA0028654 | LO_USA0028656 | Email from R. Dolden, N. Hieronimus, L. Attal, A. Evrard, A. Verhulst-Santos, J. Ascione, F. Roze, M. Gringauz, S. Habif, and H. Kunetz, dated May 5, 2015, Subject: RE: Project Olivia Status --- Confidential | H; FO; CP |
| 3620 | 6/23/2015 | LO_USA0029173 | LO_USA0029178 | Document Entitled: "PPD US, Full 2014 Fully Allocated P/L" | H; FO; CP |
| 3621 | 6/30/2015 | LO_USA0029179 | LO_USA0029194 | Email from J. Chabot to L. Schmitt, N. Milosh, R. Dolden, A. Kerschner, V. Pivet, dated June 30, 2015, Subject: Cancel & replace Olivia scenarios Buy or Make.xlsx | H; FO |
| 3622 | 8/18/2015 | LO_USA0029204 | LO_USA0029205 | Email chain ending with email from B. Fontaine to H. Kunetz, R. Dolden, P. Parenty dated Aug. 18, 2015, Subject: FW: Phone discussion with Dean from Olaplex | H; FO |
| 3623 | 6/22/2015 | LO_USA0029482 | LO_USA0029482 | Email chain ending with email from P. Sharnsky to R. Dolden dated June 22, 2015, Subject: FW: Olaplex | No Objection |
| 3624 | 5/20/2015 | LO_USA0030581 | LO_USA0030583 | Email chain ending with email from F. Cervantes to M. Gringauz dated May 20, 2015, Subject: FW: Olivia meeting May 19th - R&I assessment | H; FO; CP |
| 3625 | 5/20/2015 | LO_USA0030584 | LO_USA0030588 | Document Entitled: "Project Olivia - Summary of Confidential Requirements" | H; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3626 | 6/28/2015 | LO_USA0030589 | LO_USA0030590 | Email chain ending with email from H. Kunetz to D. morgan and R. Dolden dated June 28, 2015, Subject: FWD: Olaplex | No Objection |
| 3627 | 7/22/2015 | LO_USA0030591 | LO_USA0030591 | Document Entitled: "OLIVIA project, Meeting of 21.07.2015" | No Objection |
| 3628 | 5/26/2015 | LO_USA0030602 | LO_USA0030655 | Email chain ending with email from A. Kerschner to J. Chabot dated May 26, 2015, Subject: FW: Project Olivia --- Supply Chain | Incorrect bate-stamp range; H; FO; CP |
| 3629 | 5/26/2015 | LO_USA0030606 | LO_USA0030655 | Document Entitled: "Project Olivia, International Business Plan, v 0-5-3" | H; FO; CP; Q |
| 3630 | 5/4/2015 | LO_USA0030675 | LO_USA0030676 | Email chain ending with email from P. Parenty to R. Dolden, H. Kunetz, D. Morgan, B. Fontaine, V. Pivet, dated May 4, 2015, Subject: FW: Project Olivia Report | H; FP; CP |
| 3631 | 5/4/2015 | LO_USA0030677 | LO_USA0030678 | Document Entitled: "Project Olivia Report" | H; FO; CP; Q |
| 3632 | 5/4/2015 | LO_USA0030679 | LO_USA0030697 | Document Entitled: "Project Olivia Report" | H; FO; CP; Q |
| 3633 | 5/4/2015 | LO_USA0030698 | LO_USA0030721 | Document Entitled: "Project Olivia Report" | H; FO; CP; Q |
| 3634 | 4/15/2015 | LO_USA0030726 | LO_USA0030728 | Email chain ending with email from H. Kunetz to S. Habif, dated April 15, 2015, Subject: FWD: Olivia Owner's Intention/Structure - Confidential | H; FO |
| 3635 | 6/24/2015 | LO_USA0031910 | LO_USA0031913 | Email from H. Kunetz to V. Pivet to J. Chabot dated June 24, 2015, Subject: MS assumption, attaching market potential inc straight v3.xlsx | H; FO |
| 3636 | 8/18/2015 | LO_USA0032966 | LO_USA0032966 | Email from B. Fontaine to H. Kunetz, R. Dolden, P. Parenty, and D. Morgan, dated August 18, 2015, Subject: Olaplex patent system | H; FO |
| 3637 | 5/22/2015 | LO_USA0035067 | LO_USA0035068 | Email from D. Allard to R. Dolden, M. Gringauz, and F. Cervantes, dated May 22, 2015, Subject: Olivia meeting R&I assessment - Executive summary, attaching R&I executive summary Olivia meeting May 19th | H; FO; CP |
| 3638 | 5/20/2015 | LO_USA0035071 | LO_USA0035074 | Email from D. Allard to R. Dolden, H. Kunetz, M. Gringauz, and F. Cervantes, dated May 20, 2015, Subject: Olivia meeting May 19th - R&I assessment, attaching R&I assessment Olivia meeting May 19th | H; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3639 | 6/11/2015 | LO_USA0035075 | LO_USA0035075 | Email from J. Chabot to V. Pivet, H. Kunetz, R. Dolden, A. Kerschner dated June 11, 2015, Subject: Olivia International BP v8 150611.xlsx | H; FO; CP |
| 3640 | 6/11/2015 | LO_USA0035076 | LO_USA0035039 | Document Entitled: "Project Olivia, International Business Plan, v 0-5-3" | Incorrect bate-stamp range; H; FO; Q |
| 3641 | 6/12/2015 | LO_USA0035140 | LO_USA0035143 | Email from A. Kerschner to D. Morgan, V. Pivet, H. Kunetz, M. Fluck, J. Chabot, R. Dolden dated June 12, 2015, Subject: Olivia Opportunities & Risks - Urgent Request | H; FO |
| 3642 | 4/7/2015 | LO_USA0035258 | LO_USA0035258 | Email from H. Kunetz to S. Habif dated April 7, 2015, Subject: Project Olivia: Feedback on patents | H; FO |
| 3643 | 5/5/2015 | LO_USA0035259 | LO_USA0035259 | Email from R. Dolden to R. Dolden dated May 5, 2015, Subject: Project Olivia - Notes on R&I Meeting | No Objection |
| 3644 | 4/27/2015 | LO_USA0035260 | LO_USA0035263 | Email from M. Gringauz to R. Dolden and S. Habif dated April 27, 2015, Subject: Project Olivia - RI Specific Clean Team Guidelinesv2 - Confidential | H; FO |
| 3645 | 5/1/2015 | LO_USA0035271 | LO_USA0035276 | Email from S. Habif to H. Kunetz, R. Dolden, J. Pahin, H. Toutain, J. Ascione, F. Cervantes, C. Goget, and Y. Land, dated May 1. 2015, Subject: Pre DD R&I assessment deck, attaching OLIVIA RI Review pre DD April 29 v3 .pptx | H; FO |
| 3646 | 7/8/2015 | LO_USA0035277 | LO_USA0035279 | Email from M. Gringauz to R. Dolden, dated July 8, 2015, Subject: Project Olivia Permission List clean 6-01-15, attaching Project Olivia Permission List  clean 6-01-15.docx | H; FO |
| 3647 | 7/1/2015 | LO_USA0035280 | LO_USA0035304 | Document Entitled: "Project Olivia, L'Oréal" | H; FO; 403 (cumulative) |
| 3648 | 5/19/2015 | LO_USA0035305 | LO_USA0035310 | Email from M. Gringauz to S. Habif, F. Cervantes, R. Dolden, and T. Sarakatsannis, dated May 19, 2015, Subject: Project Olivia Summary of Confidentiality Requirements, attaching Project Olivia Summary of Confidentiality Requirements | H; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3649 | 7/1/2015 | LO_USA0035311 | LO_USA0035335 | Document Entitled: "Project Olivia, L'Oréal" | H; FO; 403 (cumulative) |
| 3650 | 6/23/2015 | LO_USA0035352 | LO_USA0035352 | Email chain ending in email from V. Pivet to H. Kunetz, J. Chabot dated June 23, 2015, Subject: RE: Copy of 150623 market potential inc straight comments hugo.xlsx | H; FO; CP |
| 3651 | 3/23/2015 | LO_USA0035353 | LO_USA0035354 | Email from H. Kunetz to S. Habif, F. Roze, P. Parenty, V. Pivet, and R. Dolden dated March 23, 2015, Subject: RE: Confidential: Olaplex | H; FO |
| 3652 | 6/26/2015 | LO_USA0035466 | LO_USA0035469 | Email from A. Pagliano to R. Dolden and F. Roze, dated July 26, 2015, Subject: RE: Olivia --- Challenge to the Brand | H; FO |
| 3653 | 6/30/2015 | LO_USA0035473 | LO_USA0035497 | Project Olivia Discussion Materials 2015 0701.pdf | H; FO; 403 (cumulative) |
| 3654 | 5/20/2015 | LO_USA0035500 | LO_USA0035501 | Email chain ending with email from K. O'Rourke to R. Dolden dated May 20, 2015, Subject: RE: Olivia meeting May 19th - R&I assessment | H; FO |
| 3655 | 5/20/2015 | LO_USA0035502 | LO_USA0035503 | Email chain ending with email from K. O'Rourke to R. Dolden dated May 20, 2015, Subject: RE: Olivia meeting May 19th - R&I assessment | H; FO |
| 3656 | 5/21/2015 | LO_USA0035504 | LO_USA0035504 | Email chain ending with email from D. Allard to M. Gringauz, R. Dolden dated May 21, 2015, Subject: RE: Olivia meeting May 19th - R&I assessment | H; FO |
| 3657 | 5/20/2015 | LO_USA0035505 | LO_USA0035506 | Email chain ending with email from M. Gringauz to R. Dolden, F. Cervantes, dated May 20, 2015, Subject: RE: Olivia meeting May 19th - R&I assessment | H; FO; CP |
| 3658 | 5/20/2015 | LO_USA0035505 | LO_USA0035511 | Email from M. Gringauz to R. Dolden, F. Cervantes, H. Kunetz, D. Allard, and K. O'Rourke, dated May 20, 2015, attaching Project Olivia Summary of Confidentiality Requirements | H; FO |
| 3659 | 5/20/2015 | LO_USA0035512 | LO_USA0035513 | Email from F. Cervantes to M. Gringauz, R. Dolden, H. Kunetz, D. Allard, and K. O'Rourke, dated May 20, 2015, Subject: RE: Olivia meeting May 19th - R&I assessment | H; FO; 403 (cumulative) |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3660 | 5/20/2015 | LO_USA0035514 | LO_USA0035515 | Email chain ending with email from D. Allard to F. Cervantes, M. Gringauz, R. Dolden dated May 20, 2015, Subject: RE: Olivia meeting May 19th - R&I assessment | H; FO |
| 3661 | 5/20/2015 | LO_USA0035516 | LO_USA0035516 | Email chain ending with email from F. Cervantes to D. Allard, M. Gringauz, R. Dolden dated May 20, 2015, Subject: RE: Olivia meeting May 19th - R&I assessment | H; FO |
| 3662 | 5/20/2015 | LO_USA0035517 | LO_USA0035517 | Email chain ending with email from M. Gringauz to R. Dolden, D. Allard, K. O'Rourke, dated May 20, 2015, Subject: RE: Olivia meeting May 19th - R&I assessment | H; FO |
| 3663 | 5/20/2015 | LO_USA0035518 | LO_USA0035518 | Email chain ending with email from H. Kunetz to M. Gringauz, dated May 20, 2015, Subject: RE: Olivia meeting May 19th - R&I assessment | H; FO; CP |
| 3664 | 5/21/2015 | LO_USA0035519 | LO_USA0035519 | Email chain ending with email from M. Gringauz to D. Allard and R. Dolden dated May 21, 2015, Subject: RE: Olivia meeting May 19th - R&I assessment | H; FO |
| 3665 | 5/20/2015 | LO_USA0035521 | LO_USA0035521 | Email chain ending with email from M. Gringauz to H. Kunetz dated May 20, 2015, Subject: RE: Olivia meeting May 19th - R&I assessment | H; FO; CP |
| 3666 | 5/24/2015 | LO_USA0035524 | LO_USA0035524 | Email chain ending with email from M. Gringauz to D. Allard and R. Dolden dated May 24, 2015, Subject: RE: Olivia meeting R&I assessment - Executive summary | H; FO; CP; 403 (cumulative) |
| 3667 | 5/22/2015 | LO_USA0035525 | LO_USA0035525 | Email chain ending with email from H. Kunetz to R. Dolden dated May 22, 2015, Subject: RE: Olivia Memo - Draft | H; FO |
| 3668 | 6/4/2015 | LO_USA0035527 | LO_USA0035530 | Email chain ending with email from R. Dolden to R. Dolden dated June 4, 2015, Subject: RE: Olivia One Time Costs | H; FO |
| 3669 | 5/4/2015 | LO_USA0035550 | LO_USA0035551 | Email chain ending with email from S. habif to R. Dolden dated May 4, 2015, Subject: RE: Pre DD R&I assessment deck | H; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3670 | 6/9/2015 | LO_USA0035552 | LO_USA0035554 | Email chain ending with email from S. Habif to R. Dolden dated June 9, 2015, Subject: RE: Project Olivia | H; FO |
| 3671 | 6/2/2015 | LO_USA0035564 | LO_USA0035565 | Email chain ending with email from H. Kunetz to R. Dolden dated June 2, 2015, Subject: RE: Project Olivia | H; FO |
| 3672 | 6/1/2015 | LO_USA0035566 | LO_USA0035566 | Email from S. Habif to R. Dolden, J. Ascione, F. Cervantes, D. Allard, H. Kunetz, and V. Pivet, dated June 1, 2015, Subject: RE: Project Olivia | H; FO |
| 3673 | 4/29/2015 | LO_USA0035567 | LO_USA0035567 | Email from S. Habif to R. Dolden and M. Gringauz, dated April 29, 2015, Subject: RE: Project Olivia | H; FO |
| 3674 | 4/28/2015 | LO_USA0035568 | LO_USA0035568 | Email chain ending with email from H. Kunetz to R. Dolden dated April 28, 2015, Subject: RE: Project Olivia | H; FO |
| 3675 | 4/18/2015 | LO_USA0035573 | LO_USA0035573 | Email chain ending with email from P. Sharnsky to R. Dolden dated April 18, 2015, Subject: RE: Project Olivia | No Objection |
| 3676 | 4/29/2015 | LO_USA0035577 | LO_USA0035577 | Email from D. Allard to R. Dolden dated April 29, 2015, Subject: RE: Project Olivia - Confidential | H; FO |
| 3677 | 4/29/2015 | LO_USA0035578 | LO_USA0035578 | Email chain ending with email from S. habif to R. Dolden and D. Allard dated April 29, 2015, Subject: RE: Project Olivia - Confidential | H; FO; 403 (cumulative) |
| 3678 | 4/17/2015 | LO_USA0035580 | LO_USA0035581 | Email from R. Dolden to R. Dolden dated April 17, 2015, Subject: RE: Project Olivia - Our Call Today | No Objection |
| 3679 | 6/29/2015 | LO_USA0035856 | LO_USA0035863 | Email from D. Staats to R. Dolden, M. Gringauz, and J. Gianni, dated June 29, 2015, Subject: RE: Project Olivia Earn Out, attaching LOI Draft | H; FO |
| 3680 | 5/19/2015 | LO_USA0037107 | LO_USA0037108 | Email chain ending with email from F> Cervantes to M. Gringauz dated May 19, 2015, Subject: RE: Project Olivia Summary of Confidentiality Requirements | H; FO |
| 3681 | 5/19/2015 | LO_USA0037109 | LO_USA0037110 | Email from M. Gringauz to F. Cervantes, T. Srakatsannis, R. Dolden, and S. Habif, dated May 19, 2015, Subject: RE: Project Olivia Summary of Confidentiality Requirements | H; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3682 | 6/3/2015 | LO_USA0038577 | LO_USA0038578 | Email from A. Kerschner to K. O'Rourke dated June 3, 2015, Subject: US Sales Build Page from BP | H; FO |
| 3683 | 6/26/2015 | LO_USA0038579 | LO_USA0038586 | Document Entitled: "Project Olivia" | H; FO |
| 3684 | 5/26/2015 | LO_USA0038587 | LO_USA0038587 | Email from D. Allard to L. Attal, S. Habif, J. Ascione, J. Pahin, A. Evrard, dated May 26, 2015, Subject: Olivia meeting with Owner / Scientist on May 19th- R&I assessment Executive summary - Strictly confidential | H; FO; CP |
| 3685 | 5/26/2015 | LO_USA0038588 | LO_USA0038589 | Document Entitled: "R&I Executive Summary Following Olivia Meeting on May 19th, Strictly Confidential" | H; FO; CP |
| 3686 | 5/26/2015 | LO_USA0038590 | LO_USA0038592 | Email from R. Dolen to M. Gringauz and D. Allard, dated May 26, 2015, Subject: FW: Olivia meeting with Owner/Scientist on may 19th - R&I assessment Executive summary - Strictly confidential, attaching R&I executive summary Olivia meeting May 19th.docx | H; FO |
| 3687 | 5/26/2015 | LO_USA0038593 | LO_USA0038595 | Email from D. Allard to L. Attal, S. Habif, J. Ascione, J. Pahin, A. Evrard, A. Verhulst-Santos, N. Hieronimus, V. Pivet, F. Roze, H. Kunetz, P. Parenty, D. Morgan, C. Mulliez, L. Schmitt, N. Milosh, dated May 26, 2015, Subject: Olivia meeting with Owner/Scientist on Ma 19th - R&I assessment Executive summary - strictly confidential, Olivia meeting with Owner  Scientist  on May 19th-  R&I assessment.msg, dated May 26, 2015, attaching R&I executive summary Olivia meeting May 19th.docx | H; FO |
| 3688 | 5/26/2015 | LO_USA0038596 | LO_USA0038596 | Email from M. Gringauz to R. Dolden dated May 26, 2015, Subject: RE: Olivia meeting with Owner/Scientist on May 19th-R&I assessment Executive summary - Strictly confidential | H; FO |
| 3689 | 7/21/2015 | LO_USA0038597 | LO_USA0038603 | Email from A. Evrard to R. Dolden dated July 21, 2015, Subject: TR: Reunion Olivia - 21 juillet 2015 | H; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3690 | 1/13/2016 | LO_USA0038604 | LO_USA0038605 | Email from C. Deschryver to F. hernandez, J. Townsend, J. Caetano, R. Hrymoc and others, dated jan. 13, 2016, Subject: RE: Monthly TKO meeting: Bonder | H; FO; CP |
| 3691 | 2/16/2016 | LO_USA0038606 | LO_USA0038606 | Email from C. Shum to F. Boulineau, A. Chin, A. Potin, C. Goget dated Feb. 16, 2016, Subject: Bonder OFF - June timing | H; FO |
| 3692 | 12/8/2015 | LO_USA0038607 | LO_USA0038607 | Email from C. Deschryver to F. Hernandez, J. Townsend, J. Caetano, R. Hrymoc and others, dated Dec. 8, 2015, Subject: Monthly TKO meeting: Bonder | H; FO; CP |
| 3693 | 12/8/2015 | LO_USA0038608 | LO_USA0038611 | Email from C. Deschryver to A. Delaune, J. mill, F. Saudrais, L. Escrouzailles, and others, dated Dec. 8, 2015, Subject: FW: PROJECT KICK-OFF: Redken pH Bonder. July 2016 PAM | No Objection |
| 3694 | 12/8/2015 | LO_USA0038612 | LO_USA0038612 | Image of Redken pH Bonder | H; FO |
| 3695 | 12/8/2015 | LO_USA0038613 | LO_USA0038613 | Image of Redken pH Bonder | H; FO |
| 3696 | 12/9/2015 | LO_USA0038614 | LO_USA0038615 | Email chain ending with email from N. Lim to C. Masclet, C. Deschryver and others, dated Dec. 9, 2015, Subject: RE: Monthly TKO meeting: Bonder | H; FO; CP |
| 3697 | 12/8/2015 | LO_USA0038616 | LO_USA0038620 | Document Entitled: "Functional Risk Analysis Checklist " | H; FO; CP |
| 3698 | 12/9/2015 | LO_USA0038621 | LO_USA0038627 | Email from A. Chin to N. Lim, C. Masclet, C. Deschryver and others dated Dec. 9, 2015, Subject: RE: Monthly TKO meeting: Bonder | H; FO |
| 3699 | 9/9/2016 | LO_USA0038913 | LO_USA0038917 | Email chain ending with email from M. Crim to C. Goget dated Sept. 9, 2016, Subject: RE: Stylists Response to pHBonder from OLAPLEX Forum | H; FO; 403; AU |
| 3700 | 9/8/2016 | LO_USA0038918 | LO_USA0038918 | Facebook thread begun by Sarah Marie Brown | H; FO; 403; AU; CP |
| 3701 | 9/8/2016 | LO_USA0038919 | LO_USA0038919 | Facebook thread begun by Sarah Marie Brown - continued | H; FO; 403; AU; CP |
| 3702 | 8/31/2016 | LO_USA0038920 | LO_USA0038920 | Facebook thread begun by Ashley Medina | H; FO; 403; AU; CP |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3703 | 8/31/2016 | LO_USA0038921 | LO_USA0038921 | Facebook thread begun by Ashley Medina - continued | H; FO; 403; AU; CP |
| 3704 | 11/23/2016 | LO_USA0038961 | LO_USA0038964 | Article: "L'Oréal sued over haircare product by California start-up" | H; FO; REL |
| 3705 | 7/23/2014 | LO_USA0038965 | LO_USA0038965 | Email chain ending with email from M. Degeorge to M. Crim, dated July 23, 2014, Subject: Olaplex MSDS | H; FO; CP |
| 3706 | | | | Intentionally Left Blank | |
| 3707 | 8/22/2014 | LO_USA0038971 | LO_USA0038995 | Email from C. Shaw to K. Leung, A. Elsen, E. Badman, F. Boulineau dated Aug. 22, 2014, Subject: RE: olaplex slides | H; FO |
| 3708 | 8/21/2014 | LO_USA0039003 | LO_USA0039007 | Material Safety Data Sheet for Olaplex Bond Multiplier No. 1 dated June 2014 | H; FO |
| 3709 | 8/27/2014 | LO_USA0039008 | LO_USA0039008 | Email from M. Zellner to K. hamliton, M. Degeorge, M. Soliman, A. Elsen, C. Goget, H. Bryant, K. Leung, C. Shaw, dated Aug. 27, 2014, Subject: FW: Olaplex Crosslinker.pptx | H; FO; CP |
| 3710 | 8/27/2014 | LO_USA0039009 | LO_USA0039012 | Document Entitled: "Olaplex" | H; FO; CP |
| 3711 | | | | Intentionally Left Blank | |
| 3712 | 8/27/2014 | LO_USA0039131 | LO_USA0039131 | Email from K. Hamilton to K. Leung Re: Olaplex Update Meeting Recap | No Objection |
| 3713 | 10/9/2014 | LO_USA0039132 | LO_USA0039135 | Email from C. Goget to M. Kanji, F. Legrand, dated Oct. 9, 2014, Subject: Olaplex slides for JPA meeting | H; FO |
| 3714 | 1/14/2015 | LO_USA0039157 | LO_USA0039160 | Email from K. Hamilton to F. Boulineau, dated January 14, 2015, Subject: FW: Discussion on hydrolyzed bismaleimido | H; FO |
| 3715 | | | | Intentionally Left Blank | |
| 3716 | | LO_USA0039227 | LO_USA0039227 | Facebook thread beginning with Jennifer Boyce | H; FO; CP; Q; AU |
| 3717 | 8/6/2015 | LO_USA0039228 | LO_USA0039232 | Email from C. Goget to S. habif, F. Legrand, J. Ascione and others dated Aug. 6, 2015, Subject: RE: BONDING PROJECT : main outcomes of our 2 days and action plan for the next weeks.msg | H; FO |
| 3718 | 6/22/2015 | LO_USA0039233 | LO_USA0039233 | Email thread ending with email from C. Goget to K. Hamilton, F. Boulineau, dated June 22, 2015, Subject: TR: "BONDING" project - Action plan for next week | H; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3719 | 8/4/2014 | LO_USA0039240 | LO_USA0039249 | Document Entitled: "CMO Alert, Brand Snapshot Olaplex" | No Objection |
| 3720 | | | | Intentionally Left Blank | |
| 3721 | 6/2014 | LO_USA0039255 | LO_USA0039259 | Document Entitled: "Material Safety Data Sheet, Finished Product Name: Olaplex Bond Perfector No. 2/Olaplex Hair Perfector No. 3" | H; FO |
| 3722 | 12/9/2015 | LO_USA0039260 | LO_USA0039271 | Scan of Olaplex boxes 1st and 2nd gen | H; FO |
| 3723 | 8/25/2014 | LO_USA0039272 | LO_USA0039284 | Document Entitled: "Olaplex, Project Update 25 Aug. 2014" | H; FO |
| 3724 | 8/27/2015 | LO_USA0039290 | LO_USA0039298 | Email chain ending with mail from K. Hamilton to G. Provot, F. Boulineau dated Aug. 27, 2015, Subject: FW: BONDING PROJECT : main outcomes of our 2 days and action plan for the next weeks.msg | H; FO |
| 3725 | | | | Intentionally Left Blank | |
| 3726 | | | | Intentionally Left Blank | |
| 3727 | 11/4/2015 | LO_USA0039307 | LO_USA0039320 | Email from C. Goget to A. Grevillot and others, dated November 4, 2015, Subject: RE: Bonding - Sourcing of 3-butoxypropylamine | H; FO |
| 3728 | 6/23/2015 | LO_USA0039321 | LO_USA0039322 | Email from C. Goget to F. Legrand, K. Hamilton, F. Boulineau, and M. Soliman, dated June 23, 2015, Subject: RE: "BONDING" project - Action plan for next week | H; FO |
| 3729 | 5/29/2015 | LO_USA0039323 | LO_USA0039326 | Email from M. DeGeorge, A. Lahaye, S. Habif, J. Ascione, M. Kanji, C. Goget, A. Potin, M. Applebaum, E. De La Bandera, K. Hamilton, F. Boulineau, dated May 29, 2015, Subject: Re: Olaplex lab screening | H; FO |
| 3730 | | | | Intentionally Left Blank | |
| 3731 | | | | Intentionally Left Blank | |
| 3732 | 8/9/2015 | LO_USA0039362 | LO_USA0039366 | Email from A. Potin, dated August 9, 2015, Subject: RE: BONDING PROJECT: main outcomes of our 2 days and action plan for the next weeks | H; FO |
| 3733 | | | | Intentionally Left Blank | |
| 3734 | | | | Intentionally Left Blank | |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3735 | 5/28/2015 | LO_USA0039399 | LO_USA0039408 | Email from A. Lahaye, to C. Goget, A. Potin, M. DeGeorge, F. Boulineau, K. Hamilton, dated May 28, 2015, Subject: RE: Olaplex lab screening, with attachments | H; FO |
| 3736 | 6/10/2015 | LO_USA0039440 | LO_USA0039440 | Email from A. Potin, dated June 10, 2015, Subject: RE: Olivia - Summary from last week + pending results | H; FO; CP |
| 3737 | 8/21/2015 | LO_USA0039442 | LO_USA0039442 | Email from A. Lahaye to F. Boulineau, dated August 21, 2015, Subject: FW: BONDING PROJECT -stylist workshop (Aug 17) debrief | H; FO; CP |
| 3738 | 6/7/2015 | LO_USA0039447 | LO_USA0039447 | Email from S. Habif to C. Goget, J. Ascione, F. Legrand, M. Kanji, A. Potin, D. Velkov, F. Boulineau, A. Mahadeshwar, dated June 7, 2015, Subject: RE: Olivia - Summary from last week + pending results | H; FO; CP |
| 3739 | 6/10/2015 | LO_USA0039453 | LO_USA0039446 | Email from C. Goget to S. Habif, J. Ascione, F. Legrand, M. Kanji, A. Potin, D. Velkov, F. Boulineau, a. Mahadeshwar, F. Pataut, dated June 10, 2015, Subject: RE: FOX - RM and safety Action Plan, with attachments | Misstated bate-stamp range; H; FO; CP |
| 3740 | 11/23/2016 | LO_USA0040971 | LO_USA0040972 | November 22, 2016, The Financial Times article, "L'Oréal sued over haircare product by Californian start-up" | H; FO; REL |
| 3741 | 9/15/2016 | LO_USA0040977 | LO_USA0040978 | Email from K. O'Rourke dated Sept. 15, 2016, Subject: May 2016 Market and Sell Through | H; FO; REL |
| 3742 | | | | Intentionally Left Blank | |
| 3743 | | | | Intentionally Left Blank | |
| 3744 | 9/2/2015 | LO_USA0041123 | LO_USA0041125 | Email from R. Dolden to F. Roze dated Sept. 2, 2015, Subject: Project Olivia - Confidential with attachment | No Objection |
| 3745 | 3/20/2016 | LO_USA0041126 | LO_USA0041127 | Email from R. Dolden to P. Sharnsky dated March 20, 2016, Subject: Re: Project Olivia | H; FO |
| 3746 | 3/21/2016 | LO_USA0041128 | LO_USA0041128 | Email from R. Dolden to D. Christal dated March 21, 2016, Subject: Call | H; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3747 | 9/2/2015 | LO_USA0041129 | LO_USA0041130 | Email from R. Dolden to R. Dolden dated Sept. 2, 2015, Subject: Fwd  Project Olivia --- Notes of Yesterday's Meeting with Dean Cristal - confidential | H; FO |
| 3748 | 10/15/2015 | LO_USA0041131 | LO_USA0041132 | Email from R. Dolden to S. Habif, M. Kanji, F. Cervantes dated Oct. 15, 2015, Subject: Olaplex IP with attachment | H; FO |
| 3749 | 9/2/2015 | LO_USA0041134 | LO_USA0041135 | Project Olivia Notes September 1 Meeting with Dean Cristal Confidential | 403 (cumulative) |
| 3750 | 3/20/2016 | LO_USA0041136 | LO_USA0041136 | Email from R. Dolden to P. Sharnsky dated March 20, 2016, Subject: Re: Project Olivia | H; FO |
| 3751 | 9/2/2015 | LO_USA0041137 | LO_USA0041138 | Olivia Notes September 1 Meeting with Dean Cristal | 403 (cumulative) |
| 3752 | 9/2/2015 | LO_USA0041139 | LO_USA0041140 | Email from R. Dolden to R. Dolden dated September 2, 2015, Subject: Project Olivia --- Notes of September 1 Meeting with Dean Cristal - Confidential | H; FO |
| 3753 | 9/2/2015 | LO_USA0041141 | LO_USA0041141 | Email from R. Dolden to R. Dolden dated Sept. 2, 2015, Subject: Project Olivia --- Notes of Yesterday's Meeting with Dean Cristal -confidential | H; FO |
| 3754 | 8/27/2015 | LO_USA0041142 | LO_USA0041144 | Email from R. Dolden to D. Christal dated August 27, 2015, Subject RE: Meeting Dates | 403 (cumulative) |
| 3755 | | | | Intentionally Left Blank | N/A |
| 3756 | 8/20/2015 | LO_USA0041148 | LO_USA0041150 | Email from R. Dolden to D. Christal dated August 20, 2015, Subject: RE: Meeting Dates | H; FO; 403 (cumulative) |
| 3757 | 8/7/2015 | LO_USA0041151 | LO_USA0041151 | Email from R. Dolden to D. Christal dated August 7, 2015, Subject: August 20? | H; FO; 403 (cumulative) |
| 3758 | 8/10/2015 | LO_USA0041158 | LO_USA0041159 | Email from R. Dolden to D. Christal dated August 10, 2015, Subject: August 24 | H; FO; 403 (cumulative) |
| 3759 | 8/19/2015 | LO_USA0041160 | LO_USA0041160 | Email frm R. Dolden to H. Kunetz dated August 19, 2015, Subject: Re: Olaplex patent system | H; FO |
| 3760 | 7/9/2015 | LO_USA0041195 | LO_USA0041197 | Email from R. Dolden to D. Christal dated June 9, 2015, Subject: Re: L'Oreal is against Olaplex - serious (local) issue - Confidential | No Objection |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3761 | 6/8/2015 | LO_USA0046802 LO_USA0000467 | LO_USA0046846 LO_USA0000468 | Email from R. Dolden to V. Pivet, H. Kunetz, S. Habif, F. Cervantes, D. Allard, J. Ascione, A. Verhulst-Santos, J. Chabot, F. Roze, D. Morgan, M. Fluck, and A. Kerschner, dated June 8, 2015, Subject: Hair Protecting Additives - Trend Vision Report, with attachments | H; FO; COMP |
| 3762 | 5/26/2015 | LO_USA0048286 | LO_USA0048288 | Email from R. Dolden to M. Gringauz and D. Allard, dated May 26, 2015, Subject: FW: Olivia meeting with Owner/Scientist on May 19th - R&I assessment Executive summary - Strictly confidential, with attachment | H; FO |
| 3763 | 4/15/2015 | LO_USA0049404 | LO_USA0049405 | Email from R. Dolden to H. Kunetz dated April 15, 2015, Subject: Olivia Owner's Intention/Structure - Confidential | No Objection |
| 3764 | 5/22/2015 | LO_USA0049423 | LO_USA0049424 | Email fom R. Dolden to D. Morgan, P. Sharnsky, H. Kunetz dated May 22, 2015, Subject: RE: OLAPLEX PROJECTION | H; FO |
| 3765 | 5/8/2015 | LO_USA0049646 | LO_USA0049648 | Email from R. Dolden dated May 8, 2015, Subject: RE: Project Olivia Status - Confidential | H; FO |
| 3766 | 5/8/2015 | LO_USA0049649 | LO_USA0049649 | Email from R. Dolden to D. Morgan dated May 8, 2015, Subject: Re: Olivia BP | H; FO |
| 3767 | 5/8/2015 | LO_USA0049650 | LO_USA0049650 | Email from R. Doldne to D. Morgan, M. Fluck, B. Fontaine dated May 8, 2015, Subject: RE: Olivia BP | H; FO |
| 3768 | 5/7/2015 | LO_USA0049651 | LO_USA0049651 | Email from R. Dolen to D. Allard dated May 7, 2015, Subject FW: Olivia Initial Seller Request List | No Objection |
| 3769 | 5/8/2015 | LO_USA0049652 | LO_USA0049652 | Email from R. Dolden to N. Milosh dated May 8, 2015, Subject: RE: Olivia | H; FO |
| 3770 | 5/7/2015 | LO_USA0049653 | LO_USA0049653 | Email from R. Dolden to D. Allard, dated May 7, 2015, Subject: RE: Olivia Initial Seller Request List | H; FO |
| 3771 | | | | Intentionally Left Blank | N/A |
| 3772 | | | | Intentionally Left Blank | N/A |
| 3773 | 5/5/2015 | LO_USA0049655 | LO_USA0049655 | Email from R. Dolden to R. Dlden dated May 5, 2015, Subject: Project Olivia - Notes on R&I Meeting | No Objection |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3774 | 5/5/2015 | LO_USA0049656 | LO_USA0049658 | Email from R. Dolden dated May 5, 2015, Subject: RE: Project Olivia Status -Confidential | H; FO |
| 3775 | 5/5/2015 | LO_USA0049659 | LO_USA0049661 | Email from R. Dolden to A. Evrard dated May 5, 2015, Subject: Re: Project Olivia Status - Confidential | H; FO |
| 3776 | 5/5/2015 | LO_USA0049666 | LO_USA0049668 | Email from R. Dolden to A. Evrard dated May 5, 2015, Subect: RE: Project Olivia Status -Confidential | H; FO |
| 3777 | 5/5/2015 | LO_USA0049673 | LO_USA0049675 | Email from R. Dolden dated May 5, 2015, Subject: RE: Olivia Project Timing | H; FO |
| 3778 | 4/29/2015 | LO_USA0049677 | LO_USA0049677 | Email from R. Dolden to S. Habif and M. Gringauz, dated April 29, 2015, Subject: RE: Project Olivia - Confidential | H; FO |
| 3779 | 4/29/2015 | LO_USA0049678 | LO_USA0049678 | Email from R. Dolden to S. Habif dated April 29 2015, Subject: RE:  Project Olivia - Confidential | H; FO |
| 3780 | | | | Intentionally Left Blank | N/A |
| 3781 | 5/1/2015 | LO_USA0049683 | LO_USA0049688 | Email from R. Dolden to A. Kershner, M. Fluck, and D.Morgan, dated May 1, 2015, Subject: FW: Pre DD R&I assessment deck, with attachment | H; FO |
| 3782 | 5/1/2015 | LO_USA0049683 | LO_USA0049688 | Email from R. Dolden to A. Kerschner, M. Fluck, D. Morgan dated May 1, 2015, Subject: FW: Pre DD R&I assessment deck, with attachment | H; FO; 403 (cumulative, see, e.g., 3781) |
| 3783 | 4/28/2015 | LO_USA0049689 | LO_USA0049689 | Email from R. Dolden to S. Habif, H. Kunetz dated april 28, 2015, Subject: Project Olivia | H; FO |
| 3784 | 5/1/2015 | LO_USA0049690 | LO_USA0049691 | Email from R. Dolden to S. Habif dated May 1, 2015, Subject: FW: Pre DD R&I assessment deck | H; FO; CP |
| 3785 | 4/29/2015 | LO_USA0049692 | LO_USA0049692 | Email from R. Dolden to D. Allard dated April 29, 2015, Subject: FW: Project Olivia - Confidential | H; FO |
| 3786 | 4/29/2015 | LO_USA0049693 | LO_USA0049693 | Email from R. Dolden to S. Habif dated April 29, 2015, Subject: Project Olivia | H; FO; 403 (cumulative) |
| 3787 | 4/29/2015 | LO_USA0049696 | LO_USA0049697 | Email from R. Dolden dated April 29, 2015, Subject: RE: Project Olivia Status - Confidential | H; FO |
| 3788 | 4/29/2015 | LO_USA0049698 | LO_USA0049698 | Email from R. Dolden to D. Allard, S. Habif, and M. Gringauz, dated April 29, 2015, Subject: Project Olivia - Confidential | H; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3789 | 4/30/2015 | LO_USA0049702 | LO_USA0049704 | Email from R. Dolden to H. Junetz, F. Roze, M. Gringauz dated April 30, 2015, Subject: FW: Project Olivia Status - Confidential | H; FO; CP |
| 3790 | 4/27/2015 | LO_USA0049705 | LO_USA0049705 | Email from R. Dolden to M. Gringauz dated April 27, 2015, Subject: Re: Project Olivia - RI Specific Clean Team Guidelinesv2 - Confidential | H; FO |
| 3791 | 4/27/2015 | LO_USA0049707 | LO_USA0049707 | Email from R. Dolden to A. Kerschnr, D. Morgan, M. Fluck dated April 27, 2015, Subect: Re: Olivia | H; FO |
| 3792 | 4/22/2015 | LO_USA0049716 | LO_USA0049716 | Email from R. Dolden to C. Dumas dated April 22, 2015, Subject: Project Olivia - Confidential | H; FO |
| 3793 | 4/17/2015 | LO_USA0049721 | LO_USA0049722 | Email from R. Dolden to R. Dolden dated April 17, 2015, Subject: RE: Project Olivia - Our Call Today | No Objection |
| 3794 | 4/16/2015 | LO_USA0049723 | LO_USA0049723 | Email from R. Dolden to P. Sharnsky dated April 16, 2015, Subject: Project Olivia | No Objection |
| 3795 | 4/8/2015 | LO_USA0049724 | LO_USA0049736 | Email from R. Dolden to F. Roze dated April 8, 2015, SubjectL Olaplex (Project Olivia) | H; FO |
| 3796 | 10/15/2015 | LO_USA0049928 | LO_USA0049928 | Email from S. Habif to R. Dolden, M. Kanji, and F. Cervantes, dated October 15, 2015, Subject: RE: Olaplex IP | H; FO |
| 3797 | 3/20/2016 | LO_USA0049929 | LO_USA0049929 | Email from P. Sharnsky to R. Dolden dated Mar. 20, 2016, Subject: RE: Project Olivia | H; FO |
| 3798 | 6/30/2015 | LO_USA0050096 | LO_USA0050109 | Email from J. Chabot dated June 20, 2015, Subject: Ollivia scenarios Buy or Make, with attachment | H; FO |
| 3799 | 6/29/2015 | LO_USA0050110 | LO_USA0050111 | Email from K. O'Rourke to R. Dolden dated June 29, 2015, Subject RE: Olaplex | No Objection |
| 3800 | 6/29/2015 | LO_USA0050112 | LO_USA0050128 | Email from J. Chabot dated June 29, 2015, Subject TR: Olivia scenarios Buy or Make, with attachment | H; FO |
| 3801 | 6/29/2015 | LO_USA0050129 | LO_USA0050145 | Email from J. Chabot to R. Dolden, A. Kerschner, M. Fluck, D. Morgan, V. Pivet, H. Kunetz dated June 29, 2015, Subject Olivia scenarios Buy or Make, with attachment | H; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3802 | 5/26/2015 | LO_USA0052527 | LO_USA0052529 | Email from D. Allard to L. Attal, S. Habif, J. Ascione, J. Pahin, A. Evrard, F. Cervantes, R. Dolden, M. Gringauz, F. Deroy, and S. Vermelle, dated May 26, 2015, Subject: Olivia meeting with Owner/Scientist on May 19th - R&I assessment Executive summary -Strictly confidential, with attachment | H; FO |
| 3803 | 6/5/2015 | LO_USA0053868 | LO_USA0053870 | Email from S. Habif to R. Dolden, J. Ascione, F. Cervantes, D. Allard, H. Kunetz, V. Pivet, and A. Kerschner, dated June 5, 2015, Subject: RE: Project Olivia | H; FO |
| 3804 | 5/20/2015 | LO_USA0056057 | LO_USA0056057 | Email M. Gringauz to R. Dolden, D. Allard, K. O'Rourke dated May 20, 2015, Subject: RE: Olivia meeting May 19th - R&I assessment | H; FO; 403 (cumulative) |
| 3805 | 6/4/2015 | LO_USA0056059 | LO_USA0056060 | Email from N. Milosh to R. Dolden dated June 4, 2015, Subject RE: Olivia Plan B? -  Confidential | H; FO |
| 3806 | 5/8/2015 | LO_USA0056074 | LO_USA0056075 | Email from D. Allard to R. Dolden dated May 8, 2015, Subject: RE: Olivia Initial Seller Request List, with attachment | No Objection |
| 3807 | 5/1/2015 | LO_USA0056203 | LO_USA0056205 | Email from H. Kunetz to J. Ascione, S. Habif, R. Dolden, V. Pivet, F. Roze, A. Verhulst-Santos, and Z. Roman, dated May 1, 2015, Subject: Re: Project Olivia Status -Confidential | H; FO |
| 3808 | 5/20/2015 | LO_USA0056208 | LO_USA0056208 | Email from M. Gringauz to H. Kunetz, D. Allard, R. Dolden, and F. Cervantes, dated May 20, 2015, Subject:  RE: Olivia meeting May 19th - R&I assessment | H; FO |
| 3809 | 5/21/2015 | LO_USA0056212 | LO_USA0056212 | Email from M. Gringauz to D. Allard, and R. Dolden, dated May 21, 2015, Subject: RE: Olivia meeting May 19th - R&I assessment | H; FO; 403 (cumulative) |
| 3810 | 6/9/2015 | LO_USA0057364 | LO_USA0057366 | Eamil from S. Habif to R. Dolden, J. Ascione, F. Cervantes, D. Allard, H. Kunetz, and V. Pivet, dated June 9, 2015, Subject: Re: Project Olivia | H; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3811 | 5/26/2015 | LO_USA0057377 | LO_USA0057377 | Email from M. Gringauz to R. Dolden and D. Allard, dated May 26, 2015, Subject: Re: Olivia meeting with Owner/Scientist on May 19th - R&I assessment Executive summary - Strictly confidential | H; FO |
| 3812 | 6/18/2015 | LO_USA0059967 | LO_USA0059984 | Presentation:  Project Olivia June 18, 2015 | H; FO; 403 (cumulative) |
| 3813 | 5/26/2015 | LO_USA0060030 | LO_USA0060032 | Email from D. Allard to L. Attal, S. Habif, J. Ascione, J. Pahin, A. Evrard, A. Verhulst-Santos, N. Hieronimus, V. Pivet, F. Roze, H. Kunetz, P. Parenty, D. Morgan, C. Mulliez, L. Schmitt, N. Milosh, F. Cervantes, R. Dolden, M. Gringauz, F. Deroy, and S. Vermelle, dated May 26, 2015, Subject: Olivia meeting with Owner/Scientist on May 19th R&I asessment Executive summary - Strictly confidential, with attachment | H; FO; 403 (cumulative) |
| 3814 | 4/29/2015 | LO_USA0060039 | LO_USA0060039 | Email from S. Habif to R. Dolden, D. Allard, M. Gringauz dated April 29 2015, Subject: RE: Project Olivia - Confidential | H; FO; 403 (cumulative) |
| 3815 | 5/22/2015 | LO_USA0060045 | LO_USA0060046 | Email from D. Allard to R. Dolden, M. Gringauz, F. Cervantes dated May 22, 2015, Subject: Olivia meeting R&I assessment - Executive summary, with attachment | H; FO; 403 (cumulative) |
| 3816 | 5/20/2015 | LO_USA0060052 | LO_USA0060052 | Email from M. Gringauz to D. Allard, R. Dolden, H. Kunetz dated May 20, 2015, Subject: RE: Olivia meeting May 19th - R&I assessment | H; FO; 403 (cumulative) |
| 3817 | 5/20/2015 | LO_USA0060053 | LO_USA0060053 | Email from H. Kunetz to M. Gringauz, D. Allard, R. Dolden, F. Cervantes dated May 20, 2015, Subject Re: Olivia meeting May 19th - R&I assessment | H; FO |
| 3818 | 5/20/2015 | LO_USA0060054 | LO_USA0060055 | Email from D. Allard to F. Cervantes, M. Gringauz, R. Dolden dated May 20, 2015, Subject: Re: Olivia meeting May 19th - R&I assessment | H; FO |
| 3819 | 5/20/2015 | LO_USA0060076 | LO_USA0060076 | Email from F. Cervantes to M. Gringauz, R. Dolden, D. Allard, K. O'Rourke dated May 20, 2015, Subject:  RE:  Olivia meeting May 19th - R&I assessment | H; FO; 403 (cumulative) |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3820 | 5/11/2015 | LO_USA0060083 | LO_USA0060087 | Email from K. O'Rourke to R. Dolden dated May 11, 2015, Subject: RE: Project Olivia Status - Confidential | No Objection |
| 3821 | 5/19/2015 | LO_USA0060097 | LO_USA0060098 | Email from M. Gringauz to F. Cervantes, T. Sarakatsannis, R. Dolden, S. Habif dated May 19, 2015, Subject: RE: Project Olivia Summary of Confidentiality Requirements | H; FO |
| 3822 | 5/22/2015 | LO_USA0060099 | LO_USA0060105 | Email from V. Niz dated May 22, 2015, Subject: Project Olivia - Summary of Confidentiality Requirements and Data Room-Clean Room Access, with attachments | H; FO |
| 3823 | | | | Intentionally Left Blank | N/A |
| 3824 | 5/21/2015 | LO_USA0060108 | LO_USA0060109 | Email from D. Morgan, to P. Sharnsky, R. Dolden, H. Kunetz, and B. Fontaine, dated May 21, 2015, Subject: Re: OLAPLEX PROJECTION | H; FO |
| 3825 | 5/20/2015 | LO_USA0060112 | LO_USA0060119 | Email from F. Cervantes to M. Gringauz, D. Allard, R. Dolden, S. Habif, H. Kunetz, K. O'Rourke dated May 20, 2015, Subject: FW: Olivia meeting My 19th - R&I assessement, with attachment | H; FO |
| 3826 | 4/29/2015 | LO_USA0062242 | LO_USA0062242 | Email from D. Allard to R. Dolden, S. Habif, and M. Gringauz dated April 29, 2015, Subject: Re: Project Olivia - Confidential | H; FO; 403 (cumulative) |
| 3827 | 4/6/2015 | LO_USA0062308 | LO_USA0062309 | Email from P. Sharnsky to R. Dolden dated April 6, 2015, Subject: RE Project Olivia | H; FO |
| 3828 | 5/15/2015 | LO_USA0062774 | LO_USA0062786 | Presentation:  Prohect Olivia 15/05/2015 | H; FO |
| 3829 | 5/12/2015 | LO_USA0062787 | LO_USA0062791 | OLIVIA R&I Synthesis - PreDD | H; FO; CP |
| 3830 | | | | Intentionally Left Blank | N/A |
| 3831 | | | | Intentionally Left Blank | |
| 3832 | 2/19/2016 | LO_USA0063798 | LO_USA0063798 | Email from F. Legrand to C. Goget dated 2-16-2016 Re: FW MEA Residual analysis of bonding project  (AU1602-0120) | H; FO |
| 3833 | 5/1/2015 | LO_USA0063799 | LO_USA0063809 | Email from F. Boulineau to C. Shaw et al. dated 5-1-2015 RE Olaplex 1st generation analytical report w attachment (Memo 5-1-2015) | H; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3834 | 4/25/2016 | LO_USA0063810 | LO_USA0063812 | Email from G. Provot to A. Potin et al. dated 4-25-2016; subject: RE Notification MILOR  BONDING PROJECT VISUALISATION DE L'ACIDE MALEIQUE ET DE LA MEA MARQUES PAR ANALYSE NANOSIMS DE CHEVEUX DECOLORES SELON LE PROTOCOLE OLAPLEX STEP 1 | H; FO |
| 3835 | | | | Intentionally Left Blank | |
| 3836 | | | | Intentionally Left Blank | |
| 3837 | | | | Intentionally Left Blank | |
| 3838 | 7/24/2015 | LO_USA0064166 | LO_USA0064168 | Email fro K. Norwood to S. Habif et al. dated 7-24-2015; subject: RE: BONDING: next steps instrumental | H; FO |
| 3839 | | | | Intentionally Left Blank | |
| 3840 | | | | Intentionally Left Blank | |
| 3841 | | | | Intentionally Left Blank | |
| 3842 | 11/20/2015 | LO_USA0065138 | LO_USA0065159 | Email  from C. Goget to F. Legrand dated 11-20-2015; subject: TR Bonding  Meeting with Advanced Research & Applied Research | H; FO |
| 3843 | 9/29/2015 | LO_USA0065160 | LO_USA0065163 | Email from R. Rughani to Jean-Thierry Simonnet et al., dated 9-29-2015; subject: Re Olaplex _Next steps with attachment | H; FO |
| 3844 | | | | Intentionally Left Blank | |
| 3845 | | | | Intentionally Left Blank | |
| 3846 | 7/29/2015 | LO_USA0065173 | LO_USA0065180 | Document entitled Bonding Project Managemnt | No Objection |
| 3847 | 8/22/2014 | LO_USA0065181 | LO_USA0065205 | Email from C. Shaw to K. Leung et al. dated 8-22-2014; subject: RE olaplex slides with attachment | H; FO |
| 3848 | | | | Intentionally Left Blank | |
| 3849 | 8/26/2018 | LO_USA0065788 | LO_USA0065788 | Email from J. Hobby to M. Applebaum et al. dated 3-18-2016; subject: Professional Bonding Brands | H; FO |
| 3850 | | | | Intentionally Left Blank | |
| 3851 | | | | Intentionally Left Blank | |
| 3852 | 1/25/2016 | LO_USA0065845 | LO_USA0065852 | Claims - Bonding Summary Chart | H; FO; Q |
| 3853 | 7/25/2016 | LO_USA0065921 | LO_USA0065924 | Email from K. Dreher to R. Iancau dated 7-25-2016; subject: RE: HCS16-030 Bonding vs. Olaplex Daily Cell _ Step 1 + 2 Quantities | H; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3854 | | | | Intentionally Left Blank | |
| 3855 | | LO_USA0066572 | LO_USA0066574 | D. Christal notes provided at May 2015 meeting | Q; H. |
| 3856 | 4/29/2015 | LO_USA0067312 | LO_USA0067313 | Microbiological Study Results (Formula No. 1129601RK) | H; FO; REL |
| 3857 | 4/7/2016 | LO_USA0067314 | LO_USA0067322 | Product Performance Evaluation (PPE) Test Report Sensory Properties of P12 in Bleach Powder vs. Bleach Powder Alone (Study # COS-CAP-2016-0283) | H; FO; REL |
| 3858 | 5/5/2015 | LO_USA0067323 | LO_USA0067334 | Comparison of Anti-Breakage Properties of Bleach with Additives Report (CAP-MCI-US-1504-0006) | H; FO; REL |
| 3859 | | | | Intentionally Left Blank | |
| 3860 | | | | Intentionally Left Blank | |
| 3861 | | | | Intentionally Left Blank | |
| 3862 | | | | Intentionally Left Blank | |
| 3863 | | | | Intentionally Left Blank | |
| 3864 | | | | Intentionally Left Blank | |
| 3865 | 8/10/2015 | LO_USA0067464 | LO_USA0067465 | Microbiological Study Results (Formula No. 1129634IN3) | H; FO; REL |
| 3866 | 6/22/2015 | LO_USA0067466 | LO_USA0067467 | Microbiological Study Results (Formula No. 1129601RK) | H; FO; REL |
| 3867 | 12/15/2015 | LO_USA0067468 | LO_USA0067469 | Microbiological Study Results (Formula No. 37558 RDK1) | No Objection |
| 3868 | | | | Intentionally Left Blank | |
| 3869 | 9/23/2016 | LO_USA0067507 | LO_USA0067515 | Product Performance Evaluation (PPE) Sensory Properties of P 12 Additive in Color Fusion vs. Color Fusion Alone (Study # COS-CAP-2016-0726) | H; FO; REL |
| 3870 | 7/25/2016 | LO_USA0067516 | LO_USA0067541 | Relaxer with Bonding Additive and Treatment [Formula #'s Additive: 37567 RDK (P12) Treatment: 1129601RK(C1) 1129681RK4 (C8)] | H; FO; REL |
| 3871 | | | | Intentionally Left Blank | |
| 3872 | | | | Intentionally Left Blank | |
| 3873 | | | | Intentionally Left Blank | |
| 3874 | | | | Intentionally Left Blank | |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3875 | 10/26/2016 | LO_USA0067604 | LO_USA0067612 | Product Performance Evaluation (PPE) Sensory Properties of P 12 Additive in Majirel vs. Majirel Alone (Study # COS-CAP-2016-0982) | H; FO; REL |
| 3876 | 9/28/2015 | LO_USA0067613 | LO_USA0067639 | Bonding Additive w/ Treatment (Formula #'s: Additive: 37462 RDK Treatment: 1129634IN1/1129634IN5 Study #: ETU-PPE-15-006 Orchestra #: 2014-4285/A) | H; FO; REL |
| 3877 | 2/16/2016 | LO_USA0067643 | LO_USA0067668 | Bonding Additive w/ Treatment [Formula #s Additive: 37567 RDK (P12) Treatment: 1129634IN2 (C8)] | H; FO; REL |
| 3878 | 2/3/2017 | LO_USA0067669 | LO_USA0067678 | Product Performance Evaluation Hair Instrumental Evaluation - France Evaluation of the Impact of P12/C8 on Fiber Integrity in a Bleach Application Report (HEV-INS-FR-17-0058) | H; FO; REL |
| 3879 | 5/20/2014 | LO_USA0067679 | LO_USA0067765 | Lab Notebook L11315 (Badman) | H; FO; REL |
| 3880 | 5/20/2014 | LO_USA0067766 | LO_USA0067925 | Lab Notebook L11314 (Badman) | H; FO; REL |
| 3881 | 6/17/2013 | LO_USA0068084 | LO_USA0068252 | Lab Notebook L11161 (Pauker) | H; FO; REL |
| 3882 | 1992 | LO_USA0068271 | LO_USA0068274 | Excerpts of CTFA Cosmetic Ingredient Handbook (John A. Wenninger & G.N. McEwen eds., Cosmetic, Toiletry, and Fragrance Ass'n 2d ed. 1992) ("CTFA II") | BE, CP, FO, H |
| 3883 | 2015 | LO_USA0068287 | LO_USA0068304 | Simone Aparecida de Franca et al., Types of Hair Dye and Their Mechanisms of Action, 2 Cosmetics 2015 ("Aparecida de Franca") | H; FO |
| 3884 | 2011 | LO_USA0068340 | LO_USA0068346 | Sudhakar Mhaskar et al., Hair Breakage Index: An alternative tool for damage assessment of human hair, 62 J. Cosmet. Sci. 203 (2011) ("Mhaskar") | H; FO |
| 3885 | 4/4/2017 | LO_USA0068495 | LO_USA0068678 | Amended Grounds of Invalidity of the First and Second Defendants in the matter of Liqwd, Inc. v. L'Oréal (U.K.) Ltd., Claim No. HP-2016-000056 ("UK Amended Invalidity Grounds") | H; FO |
| 3886 | 7/2007 | LO_USA0068679 | LO_USA0068689 | Catzy Blonde, Mintel Database Entry and Box Translation ("Mintel I") | AU, COMP, FO, H |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3887 | 2010 | LO_USA0068898 | LO_USA0068916 | A.D. Pomogailo et al., Macromolecular Metal Carboxylates and Their Nanocomposites, 139 Springer Series in Materials Sci. 7 (2010) ("Pomogailo") | H; FO |
| 3888 | 1964 | LO_USA0068934 | LO_USA0068937 | Basil Dmuchovsky et al., The Mechanism of the Base-Catalyzed Addition of Thiols to Maleic Anhydride, 86 J. Am. Chem. Soc. 2874 (1964) | H; FO |
| 3889 | 1/11/1989 | LO_USA0068938 | LO_USA0068948 | European Patent Application Pub. No. 298684 ("Suita-Mangano") | H; FO |
| 3890 | 2009 | LO_USA0069072 | LO_USA0069393 | John Halal, Hair Structure and Chemistry Simplified (Cengage Learning 5th ed. 2009) ("Halal") | H |
| 3891 | 9/18/2018 | LO_USA0069563 | LO_USA0069581 | U.S. Patent No. 10,076,478 | H; FO |
| 3892 | 9/8/2005 | LO_USA0069806 | LO_USA0069822 | U.S. Patent Application Pub. No. US 2005/193501 ("Chan") | H |
| 3893 | 3/20/2008 | LO_USA0069937 | LO_USA0070010 | U.S. Patent Application Pub. No. US 2008/0066773 ("Anderson") | H |
| 3894 | 2/2/2012 | LO_USA0070176 | LO_USA0070191 | U.S. Patent Application Pub. No. US 2012/0024309A1 ("Pratt") | H |
| 3895 | 7/19/2012 | LO_USA0070192 | LO_USA0070212 | U.S. Patent Application Pub. No. 2012/0180807 ("Flohr") | H |
| 3896 | 11/19/2015 | LO_USA0070394 | LO_USA0070410 | U.S. Application Pub. No. 2015/0328102 | |
| 3897 | 8/6/1685 | LO_USA0070573 | LO_USA0070578 | U.S. Patent No. 4,532,950 ("Lang") | H |
| 3898 | 10/15/1996 | LO_USA0070646 | LO_USA0070660 | U.S. Patent No. 5,565,216 ("Cowsar") | H |
| 3899 | 5/11/2004 | LO_USA0070761 | LO_USA0070772 | U.S. Patent No. 6,732,744 ("Olshavsky") | H |
| 3900 | 7/13/2010 | LO_USA0070877 | LO_USA0070895 | U.S. Patent No. 7,754,794 ("Chen") | H |
| 3901 | 11/22/2016 | LO_USA0071020 | LO_USA0071035 | U.S. Patent No. 9,498,419 ("'419 patent") | No Objection |
| 3902 | 6/6/2017 | LO_USA0071036 | LO_USA0071054 | U.S. Patent No. 9,668,954 | No Objection |
| 3903 | | | | Intentionally Left Blank | N/A |
| 3904 | 8/7/2014 | LO_USA0071854 | LO_USA0071872 | International Patent Application Pub. No. WO 2014/118212 ("Burchbuckler") | H; REL |
| 3905 | 1999 | LO_USA0071995 | LO_USA0072002 | Charles Q. Yang & Yun Lu, In-situ Polymerization of Maleic Acid and Itaconic Acid and Crosslinking of Cotton Fabric, 69(10) Textile Res. J. 782 (1999) ("Yang I") | H, REL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3906 | 12/8/2019 | LO_USA0072073 | LO_USA0072075 | December 8, 2016 IPWatchdog article by Steve Brachman | H; FO; REL |
| 3907 | 11/23/2016 | LO_USA0072076 | LO_USA0072080 | November 23, 2016, MarketWatch article by Nick Kostov | H; FO; REL |
| 3908 | 11/24/2016 | LO_USA0072085-L-91 | LO_USA0072085-L-91 | November 24, 2016, Cosmopolitan article by Victoria Jowett | H; FO; REL |
| 3909 | 11/28/2016 | LO_USA0072092 | LO_USA0072098 | November 28, 2016, cosmeticsbuisness.com article,"Olaplex sues L'Oréal over 'slavish knockoffs,'" | H; FO; REL |
| 3910 | 11/2/2018 | LO_USA0072124 | LO_USA0072127 | Copy of Olaplex website | H; FO; CP |
| 3911 | 6/23/2015 | LO_USA0072749 | LO_USA0072749 | Email from R. Dolden to H. Kunetx RE  Olivia BP Approval | H; FO |
| 3912 | 4/14/2015 | LO_USA0072807 | LO_USA0072810 | FW  OLAPLEX Tested Again.msg | No Objection |
| 3913 | 10/8/2015 | LO_USA0072813 | LO_USA0072814 | Fwd  Olaplex .msg | H; FO |
| 3914 | 9/8/2016 | LO_USA0073912 | LO_USA0073914 | Email from C. Gebhart to M. Glenn, dated September 8, 2016 | H; FO |
| 3915 | 5/18/2015 | LO_USA0074040 | LO_USA0074045 | Confidentiality Agreement executed by L'Oreal and Olaplex | 403 (cumulative) |
| 3916 | 4/14/2015 | LO_USA0074100 | LO_USA0074103 | FW  OLAPLEX Tested Again.msg | 403 (cumulative, see, e.g.,  TX 3912) |
| 3917 | 8/19/2016 | LO_USA0074261 | LO_USA0074263 | Olaplex's and its "idonthairyou" posts on social media | H; FO; AU; CP |
| 3918 | 12/18/2018 | LO_USA0074925 | LO_USA0074934 | Contract Research Services Report on Anti-Breakage Assessment of Bleach Formulations, dated March 20, 2015 | No Objection |
| 3919 | 1977 | LO_USA0075041 | LO_USA0075259 | Chemistry of Natural Protein Fibers (R. S. Asquith ed.) ("Asquith") (1977) | H; FO |
| 3920 | 12/21/2018 | LO_USA0075270 | LO_USA0075301 | Citraconic Acid, National Center for Biotechnology Information, PubChem Open Chemistry Database, https://pubchem.ncbi.nlm.nih.gov/compound/Citraconic_acid ("NCBI - Citraconic Acid") | H; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3921 | 2010 | LO_USA0075302 | LO_USA0075335 | Charles E. Hoyle et al., Thiol-click chemistry: a multifaceted toolbox for small molecule and polymer synthesis, 39 Chem. Soc. Rev. 1355 (2010) ("Hoyle") | H, REL |
| 3922 | 2010 | LO_USA0075336 | LO_USA0075352 | Trefor A. Evans et al., A statistical analysis of hair breakage. II. Repeated grooming experiments, 61 J. Cosmet. Sci. 439 (2010) ("Evans") | H; FO |
| 3923 | 2012 | LO_USA0075405 | LO_USA0075411 | Pierangelo Gobbo & Mark S. Workentin, Improved Methodology for the Preparation of Water-Soluble Maleimide-Functionalized Small Gold Nanoparticles, Langmuir, 12357-63 (2012) ("Gobbo") | H; FO |
| 3924 | 2009 | LO_USA0075412 | LO_USA0075421 | Hans-Martin Haake et al., Hair Breakage–How to measure and counteract, 60 J. Cosmet. Sci. 143 (2009) | DIS; FO; REL; 403 |
| 3925 | 7/3/2008 | LO_USA0075701 | LO_USA0075702 | Japanese Unexamined Patent Application Pub. No. JP 2008-150308 ("Watanabe 308") with translation | H |
| 3926 | 12/21/2018 | LO_USA0075720 | LO_USA0075742 | Maleamic Acid, National Center for Biotechnology Information, PubChem Open Chemistry Database, https://pubchem.ncbi.nlm.nih.gov/compound/5280451 | H; FO |
| 3927 | 2012 | LO_USA0075743 | LO_USA0075745 | BM(PEG)2 and BM(PEG)3, ThermoScientific Instructions ("ThermoScientific Instructions") | H; FO |
| 3928 | 1976 | LO_USA0075761 | LO_USA0075771 | V.N.E. Robinson, A study of damaged hair, 27 J. Soc. Cosmet. Chem. 155 (1976) ("Robinson") | H; FO |
| 3929 | 4/19/1960 | LO_USA0075780 | LO_USA0075787 | U.S. Patent No. 2,933,365 ("Moore") | H |
| 3930 | | LO_USA0075976 | LO_USA0075976 | L'Oreal USA Sales Revenue Spreadsheet | H, FO |
| 3931 | 7/29/2016 | OLA _0000016580 | OLA _0000016580 | Email from G. Auer to D. Christal and J. Schwartz, dated July 29, 2016 | No Objection |
| 3932 | | OLA_0000000306 | OLA_0000001680 | Prosecution History for U.S. Patent No. 9,668,954 (15/415,464) | No Objection |
| 3933 | 2015 | OLA_0000003173 | OLA_0000003180 | Labmuffin 2015 How Does OlaPlex Hair Treatment Work.PDF | 403; H; BE |
| 3934 | 8/16/2015 | OLA_00000064224 | OLA_00000064224 | Email from J. Schwartz to S. Lim, dated August 16, 2015 | mistates bates range; No Objection |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3935 | 8/21/2015 | OLA_00000073810 | OLA_00000073810 | Email from J. Schwartz to S. Orzel, dated August 21, 2015 | No Objection |
| 3936 | | | | Intentionally Left Blank | |
| 3937 | | OLA_0000008436 | OLA_0000009384 | Prosecution History for U.S. Patent No. 9,498,419 (15/087,415) | No Objection |
| 3938 | | | | Intentionally Left Blank | N/A |
| 3939 | | | | Intentionally Left Blank | N/A |
| 3940 | | | | Intentionally Left Blank | N/A |
| 3941 | | | | Intentionally Left Blank | N/A |
| 3942 | | | | Intentionally Left Blank | N/A |
| 3943 | | | | Intentionally Left Blank | N/A |
| 3944 | | | | Intentionally Left Blank | N/A |
| 3945 | 10/6/2015 | OLA_0000014324 | OLA_0000014325 | Email from Evanice Holz to Jeff Schwartz dated 10-6-2015; subject RE:  ET Response to 'The Photo' | REL; MIL; 403 |
| 3946 | 10/3/2015 | OLA_0000014328 | OLA_0000014328 | Email from J. Alexander to D. Christal, D. Christal, and E. Pressley re: Maleic Message | REL; MIL; 403 |
| 3947 | 8/11/2015 | OLA_0000014459 | OLA_0000014460 | Email from G. McKovich to D. Christal, dated August 11, 2015 | REL; MIL; 403 |
| 3948 | 7/13/2015 | OLA_0000014569 | OLA_0000014572 | Safety Data Sheet Sexyhair Bond Maker | H; FO; REL |
| 3949 | 5/19/2014 | OLA_0000014656 | OLA_0000014656 | Email from D. Christal to M. Rector-Gable, dated May 19, 2014, Letter of Intent | Misstated Bates-stamp range; H; FO; REL |
| 3950 | April | OLA_0000014826 | OLA_0000014828 | Email from M. Rector-Gable to D. Christal, dated April 24, 2015 Re: Bond Builder | H; FO; REL; MIL; 403 |
| 3951 | 4/3/2015 | OLA_0000014921 | OLA_0000014924 | Email from A. McDonald to D. Christal and D. Christal, dated April 3, 2015 re: Olaplex Contact Form Brittany | H; REL; FO |
| 3952 | 3/19/2015 | OLA_0000015004 | OLA_0000015007 | Email from J. Alexander to martine@olaplex.com et al.; subject Fwd: OLAPLEX Tested Again | H; REL; FO |
| 3953 | 3/21/2015 | OLA_0000015008 OLA_00001106944 | OLA_0000015008 OLA_00001106958 | Email from E. Holz to D. Christal dated 3-21-2015; subject: Re:  ABCH Article Screenshots, with attachments | REL; FO; 403; MIL |
| 3954 | | OLA_0000015193 | OLA_0000015197 | Olaplex FAQ | REL; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3955 | 8/7/2014 | OLA_0000015425 | OLA_0000015463 | Email from B. Le Poer Trench to dean@olaplex.com dated 8/7/2014; subject:  Re:  Allure Magazine - Olaplex Bond Multiplier (June 2014) | REL; FO; H; MIL; 403 |
| 3956 | | OLA_0000015551 | OLA_0000015551 | Olaplex Bond Multiplier No. 1 Labeling | CP |
| 3957 | May | OLA_0000015590 | OLA_0000015592 | Email from D. Christal to A. Owens, dated May 8, 2014 | REL; FO; MIL |
| 3958 | | OLA_0000015614 | OLA_0000015614 | Email from D. Christal to Bertrand | REL; FO; MIL; 403; CP |
| 3959 | 6/28/2016 | OLA_0000015823 | OLA_0000015823 | Email from D. Christal to E. Pressly, dated June 28, 2016 | REL; FO; MIL; 403; CP |
| 3960 | October | OLA_0000015874 | OLA_0000015875 | Email from D. Christal to A. Dodds, and J. Schwartz, dated October 1, 2015 Re: Olaplex a Readers Choice Award Winner | REL; H; MIL; CP |
| 3961 | August | OLA_0000016004 | OLA_0000016007 | Email from D. Christal to S. Lim, dated August 4, 2015 Re: Modern Salon Answers - Time Sensitive please review | REL; H; MIL; CP; 403 |
| 3962 | 7/23/2015 | OLA_0000016031 | OLA_0000016031 | Email form D. Christal to J. Franklin, dated July 23, 2015 | REL; H; MIL; 403 |
| 3963 | 6/16/2015 | OLA_0000016098 | OLA_0000016099 | Email from D. Christal to Andre Nizetich; subject:  Olaplex Coupon with attachment | REL; CP; MIL |
| 3964 | 5/7/2015 | OLA_0000016130 | OLA_0000016134 | Email from T. Katz to D. Christal dated May 7, 2015, Subject: Plan of attack, with attachment: Short-term and long-term approach to responding to the shortfall in social media coverage | REL; CP; MIL; H; 403 |
| 3965 | 3/20/2015 | OLA_0000016147 | OLA_0000016150 | Email from D. Christal to J. Alexander Re: Olaplex Tested Again | REL; CP; MIL; 403 |
| 3966 | 9/27/2014 | OLA_0000016360 | OLA_0000016363 | Email from D. Christal to A. Nizetich, dated September 27, 2014 | REL; H; MIL; 403 |
| 3967 | 9/24/2014 | OLA_0000016368 | OLA_0000016369 | Email from D. Christal to Andre Nizetich Re: Olaplex/ABCH | REL; H; MIL; 403; CP |
| 3968 | | OLA_0000016831 | OLA_0000016831 | Olaplex Advertisement "Never Break a Client's Hair" | REL; MIL; 403; CP |
| 3969 | 9/27/2014 | OLA_0000017548 | OLA_0000017551 | Email from Andre Nizetich to D. Christal FWD:  ABCH Reports OLAPLEX is the Real Deal | REL; MIL; 403; CP; H |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3970 | 9/23/2014 | OLA_0000017552 | OLA_0000017561 | Email from Mike Nave to Dean Christal RE: FW: Sarasota Exam Results and Olaplex Results | REL; MIL; 403; H |
| 3971 | 1995 | OLA_0000017664 | OLA_0000017670 | Degradation of Phenol and Salyciylic Acid by Ultraviolet Radiation/Hydrogen Peroxide/Oxygen, Wa. Res. Vol. 29, No. 10, pp. 2346-2353, 1995 | REL; H; FO |
| 3972 | | | | Intentionally Left Blank | |
| 3973 | | OLA_0000017798 | OLA_0000017803 | LIQ 103 - Proposed Amendments to Claims | CP; FO |
| 3974 | | OLA_0000017804 | OLA_0000017804 | Untitled attachment | DIS; Misstated Bates-stamp range |
| 3975 | | OLA_0000017805 | OLA_0000017812 | LIQ 103 PCT - Proposed Claim Amendments | CP; FO |
| 3976 | 8/23/2015 | OLA_0000017813 | OLA_0000017813 | Email thread between C. Hawker to E. Pressly | REL; CP; FO; H |
| 3977 | 6/22/2015 | OLA_0000017814 | OLA_0000017814 | Email from E. Pressly to C. Hawker; subject: Can you take a look before we meet tomorrow? | CP; FO |
| 3978 | | OLA_0000017815 | OLA_0000017820 | LIQ 100 CIP CON - Proposed Kit Claims for New Continuation Application attachment | CP; FO |
| 3979 | 9/16/2015 | OLA_0000017821 | OLA_0000017821 | Email from E. Pressly to J. Alexander Re: N-Acetyle Cysteine | CP; FO |
| 3980 | 3/11/1997 | OLA_0000017822 | OLA_0000017826 | U.S. Patent No. 5,609,860 to Tabata et al. | H |
| 3981 | 9/16/2015 | OLA_0000017827 | OLA_0000017827 | Email from J. Alexander to E. Pressly | REL; CP; H; FO |
| 3982 | May | OLA_0000017828 | OLA_0000017830 | Email from E. Pressly to D. Christal, dated May 18, 2015, attaching Olivia Illustrative Discussion Points | CP |
| 3983 | 5/18/2015 | OLA_0000017828 | OLA_0000017830 | Email from E. Pressly to D. Christal Re: Meeting questions referencing Attachments Olivia Illustrative Discussion Points.docx | CP |
| 3984 | 9/16/2015 | OLA_0000017831 | OLA_0000017844 | Email from E. Pressly to J. Alexander Re: N-Acetyl Cysteine | REL |
| 3985 | 3/12/2015 | OLA_0000017845 | OLA_0000017845 | Email from E. Pressly to C. Hawker Re: Patent look | CP; REL |
| 3986 | | OLA_0000017846 | OLA_0000017850 | Draft claims | CP; REL; FO |
| 3987 | 3/12/2015 | OLA_0000017851 | OLA_0000017851 | Email from C. Hawker to E. Pressly | CP; REL; FO |
| 3988 | | OLA_0000018415 | OLA_0000018415 | Image of Olaplex Logo with company address | Misstated Bates-stamp range; DIS |
| 3989 | 4/9/2015 | OLA_0000018689 | OLA_0000018690 | Email from E. Holz to E. Holz attaching ScreenShot 2015-04-09 at 12.47.27 PM | REL; FO; MIL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 3990 | 3/21/2015 | OLA_0000018698 | OLA_0000018698 | Email from E. Holz to Sara Lim FWD: ABCH Article Screenshots | REL; 403; MIL |
| 3991 | 4/27/2015 | OLA_0000018705 | OLA_0000018117 | Email from E. Holz to T. Katz, dated April 27, 2015, attaching Olaplex April Social.key; International Social Media Manager, Fake IG Accounts. | REL; 403; MIL |
| 3992 | | | | Intentionally Left Blank | N/A |
| 3993 | 4/21/2015 | OLA_0000020107 | OLA_0000020107 | Email from J. Franklin to J. Schwartz, dated August 21, 2015 | REL; H; MIL; FO; CP |
| 3994 | 10/17/2016 | OLA_0000020645 | OLA_0000020645 | Email from J. Schwartz to J. Iturralde, B. Mouton, and J. Franklin, dated October 17, 2016 | REL; FO; CP |
| 3995 | 8/18/2016 | OLA_0000020652 | OLA_0000020652 | Email from J. Schwartz to J. Franklin, dated August 18, 2016 | REL; FO; MIL; CP |
| 3996 | 1/16/2016 | OLA_0000021092 | OLA_0000021093 | Email from J. Schwartz to S. Gaspard, dated January 16, 2016 | REL; MIL; H |
| 3997 | 1/15/2016 | OLA_0000022907 | OLA_0000022917 | Email from J. Alexander to J. Santy, dated January 15, 2016 | REL; MIL; FO; 403 |
| 3998 | 7/16/2015 | OLA_0000023002 | OLA_0000023004 | Email from J. Alexander to D. Tobojka, dated July 16, 2015 | REL; MIL; FO; 403 |
| 3999 | April | OLA_0000023067 | OLA_0000023067 | Email from J. Alexander to J. Teyke, dated April 3, 2015 | REL; CP |
| 4000 | 3/19/2015 | OLA_0000023069 | OLA_0000023069 | Email from J. Alexander to anb@olaplex.com FWD Revised: Olaplex USA Distributors | REL; MIL |
| 4001 | 3/31/2015 | OLA_0000023070 | OLA_0000023070 | Email from J. Alexander to Pannos Salon, dated March 31, 2015 | REL; CP |
| 4002 | 8/16/2015 | OLA_0000023925 | OLA_0000023998 | Email from Kimberly@olaplex.com to Martine@olaplex.com, dated August 16, 2015 re: perms | Misstates Bates-stamp range; |
| 4003 | 9/28/2014 | OLA_0000024530 | OLA_0000024532 | Email from D. Christal to exam@haircolorist.com Re: ABCH Reports OLAPLEX is the Real Deal | REL; MIL; H |
| 4004 | 8/18/2014 | OLA_0000024542 | OLA_0000024544 | Email from D. Christal to D. Christal, dated August 18, 2014, attaching article from BTC "On Paper" | REL; H; FO |
| 4005 | 11/23/2016 | OLA_0000024724 | OLA_0000024726 | Email from D. Christal to Greg Auer Re: OU Post and Article as JPEG | MIL; REL; FO |
| 4006 | 11/23/2016 | OLA_0000024727 | OLA_0000024728 | Email from Dean Christal to Greg Auer Re: OU v 3 | MIL; REL; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4007 | 11/23/2016 | OLA_0000024729 | OLA_0000024734 | Email from D. Christal to J. Schwartz, dated 11/13/2016 | REL; MIL; H; FO; 403 |
| 4008 | 10/1/2015 | OLA_0000025490 | OLA_0000025494 | Email from D. Christal to S. Orzel, dated October 1, 2015 | REL; MIL; H |
| 4009 | | OLA_0000025952 | OLA_0000025955 | Mutual Non-Disclosure Agreement | Q |
| 4010 | | | | Intentionally Left Blank | |
| 4011 | 8/29/2014 | OLA_0000039172 | OLA_0000039256 | U.S Application No. 62/000,340 | REL; FO |
| 4012 | 4/13/2015 | OLA_0000045754 | OLA_0000045761 | Website Screen shot How Does Olaplex Hair Treatment Work? From www.labmuffin.com | REL; FO |
| 4013 | 9/14/2016 | OLA_0000049937 | OLA_0000049970 | PCT/US2015/031166 Preliminary Report on Patentability | REL; FO |
| 4014 | 7/4/2016 | OLA_0000052855 | OLA_0000052877 | Letter from Bereskin & Parr to Candadian IPO dated 7/4/2016 Re: CA Application No. 2.916,985 Voluntary Amendment to the application | REL; FO; H |
| 4015 | 7/23/2013 | OLA_0000063665 | OLA_0000063665 | Email from J. Santy to D. Christal, dated July 23, 2013 | REL |
| 4016 | 7/17/2013 | OLA_0000063666 | OLA_0000063666 | Email from D. Christal to J. Santy, dated July 17, 2013 | REL; H |
| 4017 | 7/19/2013 | OLA_0000063670 | OLA_0000063670 | Email from D. Christal to J. Santy, dated July 19, 2013 | REL; H |
| 4018 | 7/17/2013 | OLA_0000063673 | OLA_0000063673 | Email from D. Christal to J. Santy, dated July 17, 2013 | REL |
| 4019 | 10/15/2013 | OLA_0000063742 | OLA_0000063742 | Email from D. Christal to J. Morehouse and J. Santy, dated October 15, 2013 | CP; REL; H |
| 4020 | 10/28/2013 | OLA_0000063744 | OLA_0000063744 | Email from D. Christal, dated October 28, 2013 | REL; CP |
| 4021 | | OLA_0000063757 | OLA_0000063760 | Olaplex Technical Fast Facts | FO; CP; H |
| 4022 | 11/28/2016 | OLA_0000063922 | OLA_0000063949 | November 28, 2016 cosmeticsdesign.com article by Deanna Utroske | Misstates Bates-stamp range; H; REL; FO |
| 4023 | 2/2/2017 | OLA_0000064043 | OLA_0000064043 | Email from Steve Orzel to Jeff Schwartz Re: Amika | REL; H |
| 4024 | 10/13/2016 | OLA_0000064211 | OLA_0000064212 | Email from Jeff Schwartz to Darcy Christal Re: Olaplex Contact Form - Jan Grozowski | MIL; REL; 403 |
| 4025 | 1/16/2016 | OLA_0000065017 | OLA_0000065017 | Email from Jeff Schwartz to Stacy Gaspard et al. Re Dennis Bernard Olaplex Knock-off 4Plex | MIL; REL |
| 4026 | 1/16/2016 | OLA_0000065019 | OLA_0000065019 | Email from S. Gaspard to J. Schwartz, dated January 16, 2016 | REL; MIL |
| 4027 | 6/27/2018 | OLA_0000065453 | OLA_0000065504 | PGR2017-00012 (Paper 102) - FINAL WRITTEN DECISION | H, MIL, REL, 403 |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4028 | 8/29/2017 | OLA_0000065505 | OLA_0000065518 | PGR2017-00012 (Paper 27) - Patent Owner's Motion for Additional Discovery (37 C.F.R. 42.51(b)(2) and 42.224) | H, MIL, REL |
| 4029 | 9/27/2017 | OLA_0000065519 | OLA_0000065533 | PGR2017-00012 (Paper 37) - Conduct of the Proceeding | MIL, REL |
| 4030 | 10/20/2017 | OLA_0000065534 | OLA_0000065545 | PGR2017-00012 (Paper 44) - CONFIDENTIAL LIQWD PATENT OWNER RESPONSE | H, MIL, REL |
| 4031 | 1/26/2018 | OLA_0000065646 | OLA_0000065677 | PGR2017-00012 (Paper 55) - PETITIONERS REPLY TO PATENT OWNERS RESPONSE | H, MIL, REL |
| 4032 | 3/20/2018 | OLA_0000065678 | OLA_0000065697 | PGR2017-00012 (Paper (70) - Patent Owner's Motion for Observations on Cross-Examination | H, MIL, REL |
| 4033 | 3/20/2018 | OLA_0000065698 | OLA_0000065720 | PGR2017-00012 (Paper 72) - Patent Owner's Motion to Exclude Petitioner's Evidence | H, MIL, REL |
| 4034 | 3/27/2018 | OLA_0000065721 | OLA_0000065737 | PGR2017-00012 (Paper 77) - Patent Owner's Corrected Motion for Observations on Cross-Examination | H, MIL, REL |
| 4035 | 3/27/2018 | OLA_0000065738 | OLA_0000065754 | PGR2017-00012 (Paper 80) - Petitioner's Opposition to Patent Owner's Motino to Exclude Evidence | H, MIL, REL |
| 4036 | 4/3/2018 | OLA_0000065755 | OLA_0000065762 | PGR2017-00012 (Paper 85) - Patent Owner's  Reply In Support of its Motion to Exclude Evidence | H, MIL, REL |
| 4037 | 4/3/2018 | OLA_0000065763 | OLA_0000065777 | PGR2017-00012 (Paper 86) - PETITIONERS RESPONSE TO PATENT OWNERS CORRECTED MOTION FOR OBSERVATIONS | H, MIL, REL |
| 4038 | 1/11/2018 | OLA_0000065784 | OLA_0000065951 | PGR2017-00012 (Exhibit 1027) - Pressly Deposition | H, MIL |
| 4039 | 1/12/2018 | OLA_0000065952 | OLA_0000066072 | PGR2017-00012 (Exhibit 1028) - Christal Declaration | H, MIL |
| 4040 | 7/24/2014 | OLA_0000066073 | OLA_0000066250 | PGR2017-00012 (Exhibit 1036) - Lab Notebook L11363 (Hamilton 1) | BE, CP, H, MIL, REL, 403 |
| 4041 | 1/26/2018 | OLA_0000066251 | OLA_0000066257 | PGR2017-00012 (Exhibit 1041) - Declaration of Melanie Crim | H, MIL |
| 4042 | 8/29/2017 | OLA_0000066258 | OLA_0000066262 | PGR2017-00012 (Exhibit 2010) - Patent Owners Discovery Requests to Petitioner | H, MIL, REL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4043 | 8/29/2017 | OLA_0000066263 | OLA_0000066274 | PGR2017-00012 (Exhibit 2012) - E-mail dated May 13, 2015 from Roger Dolden (Executive Vice President for L'Oral USA, Inc.) to Dean Christal (CEO of Liqwd, Inc.) regarding Project Olivia | M,BE |
| 4044 | 10/19/2017 | OLA_0000066275 | OLA_0000066280 | Declaration of Eric D. Pressly, Ph.D. in PGR2017-00012, dated October 19, 2017 | H, MIL |
| 4045 | 10/19/2017 | OLA_0000066275 | OLA_0000066280 | PGR2017-00012 (Exhibit 2022) - Eric Pressly Declaration | H, MIL |
| 4046 | 10/18/2017 | OLA_0000066281 | OLA_0000066287 | Declaration of Dean Christal in PGR2017-00012, dated October 18, 2017 | H |
| 4047 | 10/18/2017 | OLA_0000066281 | OLA_0000066287 | PGR2017-00012 (Exhibit 2023) - Dean Christal Declaration | H, MIL |
| 4048 | 10/20/2017 | OLA_0000066288 | OLA_0000066414 | PGR2017-00012 (Exhibit 2025) - Edward Borish Declaration | H, MIL |
| 4049 | 7/20/2016 | OLA_0000066415 | OLA_0000066418 | PGR2017-00012 (Exhibit 2038) - Dye Impact Study dated July 20, 2016 | MIL |
| 4050 | 7/22/2016 | OLA_0000066419 | OLA_0000066421 | PGR2017-00012 (Exhibit 2039) - Impact of Dyes in Bonding Additive P4, dated June 21, 2016 | MIL |
| 4051 | 5/22/2017 | OLA_0000066422 | OLA_0000066448 | PGR2017-00012 (Exhibit 2040) - Dreher 30b6 Deposition Excerpts 20170522 | H, MIL |
| 4052 | 3/6/2018 | OLA_0000066449 | OLA_0000066528 | PGR2017-00012 (Exhibit 2056) - Crim deposition | H, MIL |
| 4053 | 9/19/2017 | OLA_0000066529 | OLA_0000066531 | PGR2017-00012 (Exhibit 3001) - | MIL, REL |
| 4054 | 2/1/2018 | OLA_0000066835 | OLA_0000066937 | PGR2018-00025 (Paper 3) - PETITION FOR POST-GRANT REVIEW OF U.S. PATENT 9,668,954 | H, MIL, REL, 403 |
| 4055 | 7/24/2014 | OLA_0000066938 | OLA_0000067115 | PGR2018-00025 (Exhibit 1036) - Lab Notebook L11363 (Hamilton 1) | BE, CP, H, MIL, REL, 403 |
| 4056 | 1/26/2018 | OLA_0000067116 | OLA_0000067122 | PGR2018-00025 (Exhibit 1037) - Declaration of Melanie Crim | H, MIL |
| 4057 | 8/9/2018 | OLA_0000067123 | OLA_0000067128 | PGR2018-00025 (Paper 11) -Denying-In-Part and Granting-In-Part Petitioner's Motion to Seal and For Protective Order 35 U.S.C. sec. 326; 37 C.F.R. secs. 42.14, 42.54 | H, MIL, REL |
| 4058 | 5/21/2018 | OLA_0000067129 | OLA_0000067187 | PGR2018-00025 (Paper 9) -Patent Owner Liqwd's Preliminary Response under 37 CFR 42.207 | H, MIL, REL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4059 | 8/10/2018 | OLA_0000067188 | OLA_0000067225 | PGR2018-00025 (Paper 12) -Decision Institution of Post-Grant Review | H, MIL, REL, 403 |
| 4060 | 8/10/2018 | OLA_0000067226 | OLA_0000067232 | PGR2018-00025 (Paper 13) -Scheduling Order | MIL, REL |
| 4061 | | OLA_0000067542 | OLA_0000067542 | Website screenshot Color Cut & Style Connection Center, Olaplex | H; REL; 403; MIL |
| 4062 | 8/17/2016 | OLA_0000067900 | OLA_0000067900 | Email from D. Christal to D. Christal re: Norman Ingraham, dated August 17, 2016 | H; REL; 403 |
| 4063 | 8/21/2015 | OLA_0000073811 | OLA_0000073811 | Email from Jeff Schwartz to Franklin Jill Re FHI Olaplex Knockoff | REL; 403; MIL |
| 4064 | | OLA_0000075801 | OLA_0000075801 | Olaplex's Sales and Gross Profit (Excel) | REL; 403; MIL |
| 4065 | 10/12/2016 | OLA_0000077606 | OLA_0000077613 | Email form T. Walden to D. Christal and D. Christal, dated October 12, 2016, attaching Olaplex VP of Education | REL |
| 4066 | 10/1/2015 | OLA_0000078461 | OLA_0000078461 | Email from Steve Orzel to Jeff Schwartz Re: Oalplex Knock Off | REL; 403; MIL; H |
| 4067 | 1/20/2015 | OLA_0000080102 | OLA_0000080146 | Email from T. Ryan to D. Christal, dated January 20, 2015, attaching JettMG - Deck - Capabilities Oct2014, SMM_Proposal_Olaplex, and Schwarzkopf Professional Canada Audit V6 | REL; H |
| 4068 | 10/1/2015 | OLA_0000081100 | OLA_0000081100 | Email from D. Christal to S. Orzel, dated October 1, 2015 re: Olaplex Knock Off | REL; 403; MIL; H |
| 4069 | 8/21/2015 | OLA_0000087093 | OLA_0000087093 | Email from S. Orzel to J. Schwartz, dated August 21, 2015 re: FHI Olaplex Knock off | REL; 403; MIL; H |
| 4070 | 4/24/2015 | OLA_0000088089 | OLA_0000088092 | Email from M. Spinks to J. Schwartz, dated April 24, 2015, attaching Tom re: Olaplex letter | REL; 403; H |
| 4071 | 4/20/2015 | OLA_0000092270 | OLA_0000092272 | Email from J. Schwartz to M. Spinks, dated April 20, 2015 re: resending from origial date sent 4/09/2015 | REL; H; 403 |
| 4072 | 5/21/2015 | OLA_0000095960 | OLA_0000095975 | Email from R. Dolden to V. buehler, M. Gringauze, D. Hernand, and R. Dolden, dated May 21, 2015 re: L'O - confidentiality Agreement | CP; 403; H |
| 4073 | 5/19/2015 | OLA_0000095976 | OLA_0000095989 | Email from D. Hernand to M. Gringauz, V. Buehler, and R. Dolden, dated May 19, 2015 re: L'O - confidentiality Agreement | CP; 403; H |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4074 | 5/19/2015 | OLA_0000096058 | OLA_0000096064 | Email from M. Gringauz to V. Buehler, D. Hernand, and R. Dolden, dated May 19, 2015 re: L'O - confidentiality Agreement | CP; 403; H |
| 4075 | 5/18/2015 | OLA_0000096132 | OLA_0000096149 | Email from V. Buehler to D. Hernand, M. Gringauz, and R. Dolden, dated May 18, 2015 re: L'O - confidentiality Agreement | CP; 403; H |
| 4076 | 5/15/2015 | OLA_0000096150 | OLA_0000096154 | Email from M. Gringauz to D. Hernand, V. Buehler, and R. Dolden, dated May 15, 2015 re: L'O - confidentiality Agreement | CP; 403; H |
| 4077 | 5/19/2015 | OLA_0000096181 | OLA_0000096195 | Email from M. Gringauz to V. Buehler, D. Hernand, and R. Dolden, dated May 19, 2015 re: L'O - confidentiality Agreement | CP; 403; H |
| 4078 | 8/30/2016 | OLA_0000097142 | OLA_0000097142 | Email from D. Christal to P. Signori, dated August 30, 2016 re: Loreal smart bond | REL; 403; H |
| 4079 | 8/30/2016 | OLA_0000097208 | OLA_0000097208 | Email from D. Christal to P. Signori, dated August 30, 2016 re: Loreal smart bond | REL; 403; H |
| 4080 | 10/24/2016 | OLA_0000097503 | OLA_0000097503 | Email from T. Walden to D. Christal re: olaplex Sales for 2016 - Units and Dollars | CP; 403 |
| 4081 | | OLA_0000097544 | OLA_0000097548 | Email from T. Walden to J. Schwarts and D. Christal re: Gebhart | REL; H; 403; CP |
| 4082 | 2/3/2017 | OLA_0000098873 | OLA_0000099049 | Deposition of Dean Christal, taken in Behind the Chair.com litigation, dated February 3, 2017 | REL; 403; MIL |
| 4083 | 8/24/2014 | OLA_0000100044 | OLA_0000100044 | Email from M. Rector-Gable to D. Christal, dated August 24, 2014 Re: Consulting Services Agreement | REL; 403; MIL; H |
| 4084 | | OLA_0000100045 | OLA_0000100051 | Consulting Agreement between BehindTheChair.com and Olaplex LLC, marked at the deposition of Mary Rector-Gable in the Behind the Chair litigation | REL; 403; MIL; H |
| 4085 | 4/22/2014 | OLA_0000100052 | OLA_0000100053 | Email from D. Christal to M. Rector-Gable, dated April 22, 2014, re: Wednesday, 23rd - Beverly Hills, marked at the deposition of Mary Rector-Gable in the Behind the Chair litigation | REL; 403; MIL; H |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4086 | 5/12/2014 | OLA_0000100182 | OLA_0000100182 | Email from D. Christal to M. Rector-Gable, dated May 12, 2014, re: Olaplex, marked at the deposition of Dean Christal in the Behind the Chair litigation | REL; 403; MIL; H |
| 4087 | | OLA_0000100191 | OLA_0000100196 | behindthechair.com color issue, marked at the deposition of D. Chirstal in the Behind the Chair litigaiton | REL; 403; MIL; H |
| 4088 | 4/9/2014 | OLA_0000100380 | OLA_0000100389 | Email from M. Rector-Gable to D. Schmidtbauer, dated April 9, 2014, marked at the deposition of Dan Schmidtbaer in the Behind the Chair litigation | REL; 403; MIL; H |
| 4089 | 2/15/2014 | OLA_0000100395 | OLA_0000100396 | Email from D. Christal to T. Cunningham, dated February 15, 2014, marked at the deposition of Tracey Cunningham in the Behind the Chair litigation | REL; 403; MIL; H |
| 4090 | 3/4/2014 | OLA_0000100397 | OLA_0000100580 | Text messages between D. Christal and T. Cunningham, marked at the deposition of Tracey Cunningham in the Behind the Chair litigation | REL; 403; MIL; H |
| 4091 | | | | Intentionally Left Blank | N/A |
| 4092 | 1/3/2015 | OLA_0000100449 | OLA_0000100449 | Text Messages between D. Christal and S. Lim | Misstates Bates-stamp range |
| 4093 | 3/23/2014 | OLA_0000100471 | OLA_0000100473 | Email from D. Christal to T. Cunningham, dated March 23, 2014, re: He still keeps communicating, marked at the deposition of Tracey Cunningham in the Behind the Chair litigation | REL; 403; MIL; H |
| 4094 | 3/10/2014 | OLA_0000100474 | OLA_0000100475 | Email from D. Christal to A. Dodds, dated March 10, 2014, re:Beauty Launchpad Magazine, marked at the deposition of Tracey Cunningham in the Behind the Chair litigation | REL; 403; MIL; H |
| 4095 | 8/8/2014 | OLA_0000100504 | OLA_0000100504 | Email from B. Le Poer Trench to D. Christal, dated August 8, 2014, re: Colorist feedback, marked at the deposition of Tracey Cunningham in the Behind the Chair litigation | REL; 403; MIL; H |
| 4096 | 8/10/2014 | OLA_0000100506 | OLA_0000100506 | Email from B. Trench to T. Cunningham, dated August 10, 2014 re: Allure Quote Approval, marked at the deposition of Tracy Cunningham in the Behind the Chair litigation | REL; 403; MIL; H |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4097 | 10/21/2014 | OLA_0000100512 | OLA_0000100513 | Email from D. Christal toT. Cunninghan, dated October 21, 2014, re: Olaplex agreementy, marked at the deposition of Tracey Cunningham in the Behind the Chair litigation | REL; 403; MIL; H |
| 4098 | 10/6/2014 | OLA_0000100560 | OLA_0000100561 | Email from C. Hawker to D. Christal and E. Pressly, dated October 6, 2014 re: Serendipity | REL; 403; H |
| 4099 | 6/25/2014 | OLA_0000100644 | OLA_0000100646 | Email from M. Rector=Gable to L. Zehil, dated June 25, 2014 re: LLC, marked at the deposition of L. Zehil in the Behind the Chair litigation | REL; 403; MIL; H |
| 4100 | 8/21/2014 | OLA_0000100674 | OLA_0000100676 | Email from L. Zehill to M. Rector-Gable, dated August 21, 2014, re: Olaplex Agreemetn, marked at the deposition of Louis Zehill in the Behind the Chair litigation | REL; 403; MIL; H |
| 4101 | 8/8/2014 | OLA_0000100729 | OLA_0000100729 | Email from D. Christal to B. Le Poer Trench, dated August 8, 2014, re Colorist feedback, marked at the deposition of Dean Christal in the Behind the Chair litigation | REL; 403; MIL; H |
| 4102 | 10/14/2015 | OLA_0000100761 | OLA_0000100785 | Defendant Dean Christal's Objections and Responses to Plaintiff BehindtheChair.com, Inc.'s Form Interrogatories, marked at the deposition of D. Christal in the Behnd the Chair litigation | REL; 403; MIL; H |
| 4103 | 4/28/2014 | OLA_0000100793 | OLA_0000100897 | Email from K. Cote-Favaro to Sales@liqwd.com, dated April 28, 2014, re: It's a Small World After All… but not at BTC at Premier Orlando!, marked at the deposition of D. Christal in the Behind the Chair litigation | REL; 403; MIL; H |
| 4104 | 4/6/2017 | OLA_0000101054 | OLA_0000101079 | Declaration of C. Steven Baker in Support of Defendants' Motion for Summary Judgment in Behind the Chair litigation | REL; 403; MIL; H |
| 4105 | 1/8/2016 | OLA_0000101080 | OLA_0000101084 | Behind the Chair articles, marked at the deposition of Kronenberger in the Behind the Chair litigation | REL; 403; MIL; H |
| 4106 | 6/9/2017 | OLA_0000101237 | OLA_0000101287 | Expert Report of Dr. Larry Chiagouris, marked at the depositio of M Chiagouris in the Behind the Chair litigation | REL; 403; MIL; H |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4107 | 2/23/2015 | OLA_0000101334 | OLA_0000101634 | Deposition of Mary Rector-Gable, taken in the Behind the Chair litigation | REL; 403; MIL; H |
| 4108 | 6/19/2015 | OLA_0000101635 | OLA_0000101910 | Deposition of Dean Christal, dated June 19, 2015, taken in the Behind the Chair litigation | REL; 403; MIL; H |
| 4109 | 12/13/2016 | OLA_0000102148 | OLA_0000102375 | Deposition of Tracey Cunningham, dated December 13, 2016, in the Behind the Chair Litigation | REL; 403; MIL; H |
| 4110 | 8/20/2014 | OLA_0000102717 | OLA_0000102717 | Email from D. Christal to M. Rector-Gable, dated August 20, 2014 | REL; 403; MIL |
| 4111 | May | OLA_0000103529 | OLA_0000103530 | Mary Rector-Gable, This Could (and Will) Change Everything, Behindthechair.com, May 2014, at 30 | REL; 403; MIL; CP |
| 4112 | | OLA_0000104351 | OLA_0000104354 | HAIR FORUMS Spreadsheet | REL; 403; MIL; CP |
| 4113 | | OLA_0000104355 | OLA_0000104355 | Burner Accounts Spreadsheet | REL; 403; MIL; CP |
| 4114 | | OLA_0000104355 | OLA_0000104360 | HAIR FORUMS Spreadsheet | REL; 403; MIL; CP |
| 4115 | 9/18/2015 | OLA_0000106408 | OLA_0000106408 | Email from Dean Christal to Ab McDonald Re: Dead forums or problem with forums assigned to me | REL; 403; MIL |
| 4116 | 3/9/2015 | OLA_0000106917 | OLA_0000106924 | Email from E. Holz to D. Christal and D. Christal, dated March 9, 2015, attaching Hair Forums, Att123964, Hair Forums.numbers, and ATT123967 | REL; 403; MIL |
| 4117 | 8/30/2016 | OLA_0000108714 | OLA_0000108714 | Email from S. Sanner to info@olapllex.com, dated May 31, 2014 | REL; 403; MIL |
| 4118 | | OLA_0000109817 | OLA_0000109817 | New Olaplex Usage Instructions | H; CP |
| 4119 | 8/8/2014 | OLA_0000109861 | OLA_0000109861 | Email from Dean Christal to Tracey Cunningam RE Allure UK quote | REL; 403; MIL |
| 4120 | 3/23/2014 | OLA_0000111990 | OLA_0000111990 | Email from C. basye to info@olaplex, dated May 26, 2014 | REL; 403; MIL |
| 4121 | 5/31/2014 | OLA_0000112321 | OLA_0000112321 | Email from B, Matter to info@olaplex.com, dated May 19, 2014 | REL; 403; MIL |
| 4122 | 5/19/2014 | OLA_0000112335 | OLA_0000112335 | Email from Merry to info@olaplex.com, dated May 19, 2014 | REL; 403; MIL |
| 4123 | 5/19/2014 | OLA_0000113247 | OLA_0000113247 | Email from K. Diaz to info@olaplex.com, dated April 27, 2014 | REL; 403; MIL |
| 4124 | 3/5/2014 | OLA_0000115360 | OLA_0000115361 | Email from A. Dodds to D. Christal, dated March 5, 2014 | REL; 403; MIL |
| 4125 | | OLA_0000117204 | OLA_0000117204 | Excel Export Spreadsheey (export 20170411_141723 | REL; 403; COMP |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4126 | 9/14/2018 | OLA_0000118059 | OLA_0000118096 | CA Application No. 2,947,303 4th Protest and Submission of Prior Art | REL; H |
| 4127 | 2/1/2019 | OLA_0000119302 | OLA_000020147 | U.S. Application No. 15/290,593 | REL |
| 4128 | 10/31/2018 | OLA_0000120770 | OLA_0000120776 | Declaration of Dean Christal in PGR2018-00025, dated October 31, 2018 | H; MIL |
| 4129 | 10/31/2018 | OLA_0000120770 | OLA_0000120776 | PGR2018-00025 (Exhibit 2046) -Christal Declaration | H, MIL |
| 4130 | 10/24/2018 | OLA_0000120777 | OLA_0000120890 | PGR2018-00025 (Exhibit 2061) -Wickett Deposition transcript | H, MIL |
| 4131 | 5/5/2015 | OLA_0000120891 | OLA_0000120891 | PGR2018-00025 (Exhibit 2067) - Dolden Project Olivia Notes on R&I Meeting, May 5, 2015 | H, MIL |
| 4132 | 6/18/2015 | OLA_0000120892 | OLA_0000120909 | PGR2018-00025 (Exhibit 2068) - Project Olivia Investment Committee - June 18, 2015 | MIL |
| 4133 | 6/29/2015 | OLA_0000120910 | OLA_0000120911 | PGR2018-00025 (Exhibit 2069) - Email from K. O'Rourke to R. Dolden, dated June 29, 2015 | MIL |
| 4134 | 5/8/2018 | OLA_0000120912 | OLA_0000120942 | PGR2018-00025 (Exhibit 2070) - HIGHLY CONFIDENTIAL Defendants Third Supplemental Objections and Responses to Plaintiffs Interrogatory No. 2, dated May 8, 2018 | MIL |
| 4135 | 4/16/2015 | OLA_0000120943 | OLA_0000120945 | PGR2018-00025 (Exhibit 2071) - Email from R. Dolden to D. Morgan, dated April 16, 2015 | MIL |
| 4136 | 11/16/2018 | OLA_0000120946 | OLA_0000121136 | PGR2018-00025 (Exhibit 2072) -Borish Declaration | H, MIL |
| 4137 | 11/16/2018 | OLA_0000121137 | OLA_0000121228 | PGR2018-00025 (Paper 23) -Patent Owner's Response | H, MIL, REL |
| 4138 | 2/4/2016 | OLA_0000121270 | OLA_0000121275 | Email from D. Christal to D. Russell, dated February 4, 2016 | H; REL; 403; MIL |
| 4139 | 4/24/2015 | PABST000210 | PABST000254 | U.S. Application No. 62/152,220 | REL; MIL |
| 4140 | 7/9/2018 | PABST001982 | PABST001985 | Letter from R. Monheit datyed July 9, 2018 | FO, REL |
| 4141 | | PABST003642 | PABST004085 | New Zealand(NZ)Hair Treatment Compositions & Methods Application Folder LIQ 103 (Foreign) | REL; 403 |
| 4142 | | PABST005680 | PABST006081 | Japan(JP)Hair Treatment Compositions&Methods Liqwd Inc Vol 2 LIQ 103 (Foreign) | REL; 403 |
| 4143 | | PABST007494 | PABST007827 | Mexico(MX)Hair Treatment Compositions&Methods Liqwd Inc. Application Folder LIQ 103 (Foreign) | REL; 403 |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4144 | | PABST010979 | PABST011362 | Australia (AU)Hair Treatment Compositions & Methods Liqwd Inc Application Fodler (LIQ 103 (Foreign) | REL; 403 |
| 4145 | | PABST011363 | PABST011644 | LIQ 103 NZ (References firm 3rd Party Submission).pdf | REL; 403 |
| 4146 | | PABST012193 | PABST012566 | Singapore (SG) Hair Treatment Compositions&Methods Liqwd Inc. Application Folder LIQ 103 (Foreign) | REL; 403 |
| 4147 | | PABST013130 | PABST013722 | New Zealand(NZ)Hair Treatment Compositions&Methods Vol 2.Application Folder LIQ 103 (Foreign) | REL; 403 |
| 4148 | | PABST013723 | PABST013943 | Australi(AU)Hair Treatment Compositions&Methods Liqwd Inc. Application Folder LIQ 103 (Foreign) | REL; 403 |
| 4149 | | PABST014480 | PABST015163 | Canada(CA)HairTreatment Compositions&Methods Liqwd Vol 1.pdf | REL; 403 |
| 4150 | | PABST016921 | PABST017139 | El Salvador (SV) Hair Treatment Compositions & Methods Liqwd Inc. Application Folder LIQ 103 (Foreign) | REL; 403 |
| 4151 | | PABST017140 | PABST017407 | (EAPO) Eurasian Patent Organization Hair Treatment Compositions Application Folder LIQ 103 (Foreign) | REL; 403 |
| 4152 | | PABST017408 | PABST017729 | Europe(EP)HairTreatment Compositions & Methods Liqwd Vol 1 Application Folder LIQ 103 (Foreign) | REL; 403 |
| 4153 | 12/20/2018 | UCSB000251 | UCSB000272 | Exhibit 762 to the 12/20/2018 deposition of Craig J.Hawker, entitled "Central Role of Chemistry," | H; A; REL; 403; BE |
| 4154 | 12/20/2018 | UCSB000273 | UCSB000341 | Exhibit 761 to the 12/20/2018 deposition of Craig J.Hawker, entitled, "Success stories in commercial functional materials – from hair care to pharmaceuticals," | H; A; REL; 403; BE |
| 4155 | 7/8/1905 | UCSB000273 | UCSB000241 | Presentation- Success stories in commercial functional materials - from hair care to pharmaceuticals, Craig J. Hawker | H; A; CP; REL; 403 |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4156 | 12/12/2014 | UCSB000815 | UCSB000821 | Email from Craig Hawker to Ezat Khoshdel Re: Emailing: Behind the Chair -Articles Hair Colour Technology (Exhibit 757 to the 12/20/2018 deposition of Craig J.Hawker) | H; A; CP; REL; 403 |
| 4157 | | | | | |
| 4158 | 7/25/2017 | | | U.S. Patent No. 9,713,583 | NVP; DIS; REL; 403; FO |
| 4159 | 5/1/2015 | | | U.S. Application No. 62/155,900 | NVP; DIS; REL; 403; FO |
| 4160 | 5/1/2015 | | | U.S. Application No. 62/155931 | NVP; DIS; REL; 403; FO |
| 4161 | 11/24/2015 | | | U.S. Application No. 62/259564 | NVP; DIS; REL; 403; FO |
| 4162 | 2009 | | | John Halal, Hair Structure and Chemistry Simplified (Cengage Learning, 5th ed. 2009) | NVP, DIS, FO, H |
| 4163 | | | | Intentionally Left Blank | |
| 4164 | | | | Intentionally Left Blank | |
| 4165 | 5/16/2006 | | | US 7,044,986 | REL; 403; FO; NVP; DIS |
| 4166 | 1/14/2003 | | | "Hair Dye Composition" Korean Patent Publication No. 2003-0003970 | REL; 403; FO; NVP; DIS |
| 4167 | | | | Intentionally Left Blank | |
| 4168 | | | | Jerry March, Advanced Organic Chemistry – Reactions, Mechanisms, and Structure (John Wiley & Sons 4th ed.). | REL; 403; FO; NVP; DIS |
| 4169 | 12/22/2006; | | | National Center for Bioltechnology Information PubChem Database entry for "Hydrogen maleate" | REL; 403; FO; NVP; DIS |
| 4170 | 9/16/2004; | | | National Center for Bioltechnology Information PubChem Database entry for "Maleate" | REL; 403; FO; NVP; DIS |
| 4171 | 9/16/2004; | | | National Center for Bioltechnology Information PubChem Database entry for "Maleic Acid" | REL; 403; FO; NVP; DIS |
| 4172 | 10/8/2018 | | | Olaplex Website The Olaplex Difference | REL; 403; FO; NVP; DIS |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4173 | 9/18/2016 | | | Bea McMonagle, Chemists Turned Hair Gurus Responsible for a Blonder Hollywood Target Perms and Straighteners, Forbes.com | REL; 403; FO; NVP; DIS |
| 4174 | | | | Intentionally Left Blank | N/A |
| 4175 | | | | Intentionally Left Blank | |
| 4176 | 9/21/2017 | | | Liqwd's response to an examination report and amended description and claims in New Zealand Patent Application No. 725652 | REL; 403; FO; NVP; DIS |
| 4177 | 5/25/2017 | | | "Response to Written Opinion Dated 25 May 2017" filed by Liqwd in Singapore Patent Application No. 11201609005Q | REL; 403; FO; NVP; DIS |
| 4178 | 11/15/2016 | | | Filing receipt for Israeli Patent Application No. 248989 filed by Liqwd | REL; 403; FO; NVP; DIS |
| 4179 | 6/5/2017 | | | "Memorandum in Response to Official Action of June 5, 2017," filed in Israeli Patent Application No. 248989 | REL; 403; FO; NVP; DIS |
| 4180 | 12/6/2017 | | | "Response – Advanced Examination" filed by Liqwd, Inc. in Canadian Patent Application No. 2,947,303 | REL; 403; FO; NVP; DIS |
| 4181 | 8/17/2018 | | | "LIQWD's response" in Korean Patent Cancellation proceeding 2017 So 45 | REL; 403; FO; NVP; DIS |
| 4182 | 8/23/2016 | | | "Amendment and Response to Office Action" from File History for U.S. App. No. 15/087,415 | FO, H |
| 4183 | 9/29/2017 | | | "Request to Amend a Complete Specification," filed by Liqwd, Inc. in Australian Patent Application No. 2015258904 | REL; 403; FO; NVP; DIS |
| 4184 | 1/12/2017 | | | Declaration of Edward T. Borish, PH.D. in Support of Olaplex's Motion for a Preliminary Injunction | FO, H |
| 4185 | 4/29/2017 | | | Patent Owner's Preliminary Response filed by Liqwd, Inc. in PGR2017-00012 | REL; 403; FO; NVP; DIS |
| 4186 | | | | Intentionally Left Blank | |
| 4187 | 4/17/2018 | | | "Preliminary Amendment" from 1File History for U.S. App. No. 15/940,150 | REL; 403; FO; NVP; DIS |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4188 | 4/25/2018 | | | Excerpt of transcripts of proceedings in the High Court of Justice, Business and Property Courts of England and Wales, in the matter of Liqwd, Inc. v. L'Oréal (U.K.) Ltd., Claim No. HP-2016-000056 | REL; 403; FO; NVP; DIS |
| 4189 | 1999 | | | Raymond E. Davis et al., Modern Chemistry (Holt, Rinehart & Winston 1999) | REL; 403; FO; NVP; DIS |
| 4190 | 2009 | | | André O. Barel et al., Handbook of Cosmetic Science and Technology (Informa Healthcare USA, Inc. 3rd ed. 2009) | DIS, FO, H |
| 4191 | 2010 | | | Y.K. Kamath et al., Hair Breakage by Combing and Brushing—A Comment on: T.A. Evans and K. Park, A Statistical Analysis of Hair Breakage. II. Repeated Grooming Experiments, J. Cosmet. Sci., 41, 439-456 (2010) | REL; 403; FO; NVP; DIS |
| 4192 | 5/3/2016 | | | US 9,326,926 | REL; 403; FO; NVP; DIS |
| 4193 | 5/16/2014 | | | U.S. Patent Provisional Application No. 61/994,709 | No Objection |
| 4194 | 1997 | | | Dale H. Johnson, Hair and Hair Care, Vol. 17 (Marcel Dekker, Inc. 1997) | DIS, FO, H |
| 4195 | 2008 | | | Donald Voet et al., Fundamentals of Biochemistry – Life at the Molecular Level (John Wiley & Sons, Inc., 3rd ed. 2008) | REL; 403; FO; NVP; DIS |
| 4196 | 2011 | | | Sudhakar Mhaskar et al., Hair Breakage Index: An Alternative Tool for Damage Assessment of Human Hair, J. Cosmet. Sci., 62, 203-207 (2011) | REL; 403; FO; NVP; DIS |
| 4197 | 2006 | | | Manuel Gamez-Garcia, Understanding the Micro-Physical and Mechanical Properties of the Hair Cuticle Via Damage Analysis, J. Cosmet. Sci., 57, 423-424 (2006) | REL; 403; FO; NVP; DIS |
| 4198 | 2000 | | | Sigrid B. Ruetsch et al., Photodegradation of Human Hair: An SEM Study, J. Cosmet. Sci., 51, 103-125 (2000) | REL; 403; FO; NVP; DIS |
| 4199 | | | | Intentionally Left Blank | |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4200 | 1983 | | | Lidia M. Jankowska et al., The Relationships Between Ionic and Non-Ionic Diffusion of Sulfonamides Across the Rabbit Cornea | REL; 403; FO; NVP; DIS |
| 4201 | 1997 | | | Richard J. Lewis, Sr., Hawley's Condensed Chemical Dictionary (John Wiley & Sons, Inc. 13th ed. 1997) | REL; 403; FO; NVP; DIS |
| 4202 | 10/26/2017 | | | "Examination report No. 2 for standard patent application" issued by the Australian government For Application No. 2015258904 | REL; 403; FO; NVP; DIS |
| 4203 | 3/4/2018 | | | Office action in Israeli patent application number 248989 filed by Liqwd with translation | REL; 403; FO; NVP; DIS |
| 4204 | 12/18/2017 | | | "Notification of the First Office Action" from the State Intellectual Property Office of the People's Republic of China in Chinese patent application number 201580026038.9 filed by Liqwd with translation | REL; 403; FO; NVP; DIS |
| 4205 | 5/17/2018 | | | "Notice of Cancellation Grounds" issued by the Korean Intellectual Property Tribunal and Appeal Board regarding Korean Patent No. 1787310 with translation | REL; 403; FO; NVP; DIS |
| 4206 | 1995 | | | Sukhvinder S. Sandhu et al., A Simple and Sensitive Method Using Protein Loss Measurements to Evaluate Damage to Human Hair During Combing, J. Soc. Cosmet. Chem., 46, 39-52 (1995) | REL; 403; FO; NVP; DIS |
| 4207 | 2007 | | | Manuel Gamez-Garcia et al., Patterns of Light Interference Produced by Damaged Cuticle Cells in Human Hair, J. Cosmet. Sci., 58, 269-282 (2007) | REL; 403; FO; NVP; DIS |
| 4208 | 1993 | | | M.L. Tate et al., Quantification and Prevention of Hair Damage, J.Soc. Cosmet. Chem., 44, 347-371 (1993) | REL; 403; FO; NVP; DIS |
| 4209 | 5/22/2018 | | | "Further Examination Report" by the New Zealand Intellectual Property Office, re No. 175402 | REL; 403; FO; NVP; DIS |
| 4210 | 11/30/2017 | | | "Response to Written Opinion Dated 30 November 2017" filed by Liqwd in Singapore Patent Application No. 11201609005Q | REL; 403; FO; NVP; DIS |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4211 | | | | Intentionally Left Blank | N/A |
| 4212 | 9/26/2017 | | | Plaintiffs' Confidential Reply Brief in 2017-2295 (Fed. Cir.) | H; BE; REL; 403; FO; NVP; DIS |
| 4213 | 7/31/2018 | | | "Decision of Refusal" issued by Japan Patent Office re 2016-572832 with translation | REL; 403; FO; NVP; DIS |
| 4214 | | | | Redline comparison between Olaplex's International Patent Application (PCT/US2015/031166) and Olaplex's US Patent Application 14/713,885 | AU; REL; 403; FO; NVP; DIS |
| 4215 | 5/1/2018 | | | "Opinion" filed in Japan Patent Office re 2016-572832 | REL; 403; FO; NVP; DIS |
| 4216 | 10/30/2018 | | | "Hair Internal Structure Strength", TRI Princeton Website | AU; NVP; DIS |
| 4217 | 10/30/2018 | | | "Repeated Grooming", TRI Princeton Website | AU; NVP; DIS |
| 4218 | 3/21/2018 | | | "Response - Advanced Examination" filed by Liqwd in Canadian Patent Application 2,947,303 | AU; NVP; DIS |
| 4219 | 10/26/2015 | | | "Declaration Under 37 C.F.R. 1,132" in US Patent Application 14/713,885 by Eric Pressly | FO, H |
| 4220 | | | | Intentionally Left Blank | N/A |
| 4221 | | | | Intentionally Left Blank | N/A |
| 4222 | | | | Intentionally Left Blank | N/A |
| 4223 | | | | Intentionally Left Blank | N/A |
| 4224 | | | | Intentionally Left Blank | N/A |
| 4225 | | | | Intentionally Left Blank | N/A |
| 4226 | 12/3/2014 | | | Ingredients List for Olaplex Bond Multiplier No. 1, https://www.adiflagstore.it/media/wysiwyg/Olaplex/MSDS/Olaplex_Bond_Multiplier_No._1_Ingredient_List_Word, Cosway Company, Inc. | AU |
| 4227 | 3/11/2019 | | | Olaplex Distributor Info, https://web.archive.org/web/20150317081328/https://olaplex.com/pages/distributors | AU |
| 4228 | 5/16/2014 | | | US Provisional Application 61/994,709 | No Objection |
| 4229 | 4/25/2018 | | | Liqwd v. L'Oreal UK Court Transcript, dated April 25, 2018 (excerpts) | AU; CP; FO; REL; 403; H |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4230 | | | | Intentionally Left Blank | N/A |
| 4231 | 6/30/2018 | | | L'Oréal 2018 Half-Yearly Financial Report | NVP; DIS; FO |
| 4232 | 5/15/2014 | | | Provisional Application for United States Letters Patent by E. Pressly and C. Hawker for Hair Treatment Compositions and Methods - (61/994,709) | No Objection |
| 4233 | 8/23/2016 | | | "Amendment and Response to Office Action," for Keratin Treatment Formulations And Methods - (15/087,415) | FO, H |
| 4234 | 5/10/2016 | | | "Second Preliminary Amendment," for Keratin Treatment Formulations and Methods (15/087,415) | H |
| 4235 | 10/26/2015 | | | Declaration Under 37 C.F.R. 1.132 of E. Pressly (14/713,885) | FO, H |
| 4236 | 8/22/2016 | | | Declaration Under 37 C.F.R. 1.132 of D. Christal (15/087,415) | FO, H |
| 4237 | 8/17/2016 | | | Applicant-Initiated Interview Summary (15/087,415) | FO, H |
| 4238 | 9/7/2016 | | | Applicant-Initiated Interview Summary (15/087,415) | FO, H |
| 4239 | 9/20/2016 | | | Notice of Allowability (15/087,415) | H |
| 4240 | 4/4/2017 | | | Distributor List from Olaplex's website, https://olaplex.com/pages/distributors | No Objection |
| 4241 | 11/22/2016 | | | Complaint for Patent Infringement filed in Central District of California, Liqwd Inc. and Olaplex LLC | H; BE |
| 4242 | 3/31/2016 | | | Request for Filing a Continuation Application (14/713,885) | No Objection |
| 4243 | 2002 | | | Webster's Third International New Dictionary (2002) | REL; 403; LO; NVP; DIS |
| 4244 | 1992 | | | The Academic Press Dictionary of Science and Technology (1992) | REL; 403; LO; NVP; DIS |
| 4245 | 2011 | | | American Heritage Science Dictionary (2011) | REL; 403; LO; NVP; DIS |
| 4246 | 1998 | | | John Corbett, Hair Colorants: Chemistry and Toxicology 1998 | DIS, FO, H |
| 4247 | | | | Intentionally Left Blank | |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4248 | 2000 | | | L.J. Kirschenbaum, X. Qu, E.T. Borish, Oxygen Radicals from Photoirradiated Human Hair: An ESR and Fluorescence Study (May/June 2000) | FO, H |
| 4249 | 4/23/2004 | | | Opinion of the Scientific Committee on Cosmetic Products and Non-Food Products Intended for Consumers Concerning Acid Blue 9 | AU, FO, H, REL, 403 |
| 4250 | 4/23/2004 | | | Opinion of the Scientific Committee on Cosmetic Products and Non-Food Products Intended for Consumers Concerning Acid Yellow 23 | AU, FO, H, REL, 403 |
| 4251 | 2015 | | | Simone Aparecida de Franca et al., Types of Hair Dye and Their Mechanisms of Action (2015) | DIS, AU, FO, H, REL |
| 4252 | 7/10/1997 | | | PCT Publication No. WO 97/24106 | REL; 403; NVP; DIS; AU; FO |
| 4253 | 11/22/2001 | | | U.S. Pub. No. 20010042276 | REL; 403; NVP; DIS; AU; FO |
| 4254 | 10/18/1994 | | | U.S. Patent No. 5,356,438 | DIS, H |
| 4255 | 5/16/2006 | | | U.S. Patent No. 7,044,986 | H |
| 4256 | 1/14/2003 | | | KR Pat. No. 2003-0003970 | H |
| 4257 | | | | Declaration Of W. Todd Schoettelkotte In Support Of Defendant's Opposition To Plaintiffs' Motion For Preliminary Injunction | H |
| 4258 | | | | "How it works: Olaplex" https://olaplex.com/pages/how-it-works | No Objection |
| 4259 | 10/14/2016 | | | "Matrix BOND Ultim8 Bond Protecting System Delivers 8 Bond-Protecting Benefits" https://www.modernsalon.com/article/78281/matrix-bond-ultim8-bond-protecting-system-...page | REL; 403; AU; FO; NVP; DIS |
| 4260 | 9/30/2016 | | | "Redken pH-Bonder Promotes Bond Integrity During Color and Lightening Services" https://www.modernsalon.com/product/39850/redken-ph-bonder-promotes-bond-integrity-...page | REL; 403; AU; FO; NVP; DIS |
| 4261 | | | | Smartbond Kit - Steps For Use | AU |
| 4262 | 7/23/2016 | | | "Why ColorpHlex is Better Than Olaplex" http://wendyosalon.com/2017/01/peace-love-hair/ | REL; 403; H; FO; AU; NVP; DIS |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4263 | 10/28/2015 | | | "sallys salon: Olaplex vs. Colorphlex" https://sallysunisexhairdressers.wordpress.com/2015/10/28/olaplexvscolorphlex/ | REL; 403; H; FO; AU; NVP; DIS |
| 4264 | 6/14/2014 | | | "ColorpHlex: Better than Olaplex? | Connieology" https://connieology.com/2016/06/14/colorphlexbetterthanolaplex/ | REL; 403; H; FO; AU; NVP; DIS |
| 4265 | 9/13/2015 | | | "Why One Hairstylist Won't Use This Revolutionary Repair Product | Byrdie" http://www.byrdie.com/drawbackofolaplex# | REL; 403; H; FO; AU; NVP; DIS |
| 4266 | | | | "Olaplex vs B3" http://thebeautyboxsalon.com/olaplex-vs-b3/ | REL; 403; H; FO; AU; NVP; DIS |
| 4267 | | | | "Hair Color Without Damage? Brazilian Bond Builder vs. Olaplex" https://www.naturallycurly.com/curlreading/curlproducts/haircolorwithoutdamagebrazilianb3vsolaplexsi/ | REL; 403; H; FO; AU; NVP; DIS |
| 4268 | 1/19/2017 | | | "Olaplex VS Brazilian Bond Builder" Online Article | REL; 403; H; FO; AU; NVP; DIS |
| 4269 | | | | Article Entitled "I'm a Hair Color Addict:  This is What Saved My Hair" by R. Adler | REL; 403; H; FO; AU; NVP; DIS |
| 4270 | 4/3/2017 | | | Article Entitled "What you NEED to know about your hair and Science" from hairbyMelindaK | REL; 403; H; FO; AU; NVP; DIS |
| 4271 | 12/13/2016 | | | Article Entitled "OLAPLEX and BOND ANGEL comparisons" by Nutree Professional | REL; 403; H; FO; AU; NVP; DIS |
| 4272 | 9/15/2015 | | | Article Entitled "Olaplex™ and Bondplex™: Finally, products that can repair." by M. Rose | REL; 403; H; FO; AU; NVP; DIS |
| 4273 | 3/19/2016 | | | Article Entitled "This Product Is Why The Kardashians Can Dye Their Hair So Often Without It Falling Out" by D. Guercio | REL; 403; H; FO; AU; NVP; DIS |
| 4274 | | | | allentownhairsalon.com, "Zerran edges out Olaplex in our testing" | REL; 403; H; FO; AU; NVP; DIS |
| 4275 | 6/25/2015 | | | Mr. & Mrs. Haircare, "A Revolution in Colouring Services" | REL; 403; H; FO; AU; NVP; DIS |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4276 | July/August | | | The Colorist Magazine, "Building Bonds" | REL; 403; H; FO; AU; NVP; DIS |
| 4277 | 7/16/2015 | | | BehindtheChair.com, "Innovative New Products to SAVE Your Clients' Hair!" | REL; 403; H; FO; AU; NVP; DIS |
| 4278 | | | | BehindTheChair.com's Facebook Page, About Section | REL; 403; H; FO; AU; NVP; DIS |
| 4279 | 9/1/2015 | | | HJI, "Secret Strengths: Strengthening Additives" September 2015 | REL; 403; H; FO; AU; NVP; DIS |
| 4280 | 4/22/2016 | | | Kline Group, "Bond Multipliers Rev Up the U.S. Salon Hair Care Market's Growth to a Five-year High" | REL; 403; H; FO; AU; NVP; DIS |
| 4281 | 11/8/2016 | | | "Product Roundup: Bond Builders" by E. Jakaitis | REL; 403; H; FO; AU; NVP; DIS |
| 4282 | 11/1/2016 | | | Modern Salon, "Color Strong" | REL; 403; H; FO; AU; NVP; DIS |
| 4283 | Dec. | | | Beauty Launchpad Magazine (December 2016), Document Entitled: "Color" | REL; 403; H; FO; AU; NVP; DIS |
| 4284 | Dec. | | | Beauty Launchpad Magazine (December 2015), Document Entitled: "Color" | REL; 403; H; FO; AU; NVP; DIS |
| 4285 | | | | Ultrabondseal.com, Page Entitled: "Brand Story: Ur Back Bar Solution" | REL; 403; H; FO; AU; NVP; DIS |
| 4286 | | | | Keratincomplex.com, Page Entitled: "Bond Rebuilder Services" | REL; 403; H; FO; AU; NVP; DIS |
| 4287 | | | | Niophlex No.01 100mL Product Page, at http://www.niphlex.com/assortment/nioplex-no-01-100ml | REL; 403; H; FO; AU; NVP; DIS |
| 4288 | | | | Bondi Bond Repair System Product Page, at http//stores.colorexpress.org/bondi-bond-repair-system/ | REL; 403; H; FO; AU; NVP; DIS |
| 4289 | | | | Color Brilliance Absolute Perfection Booster Step 1 Product Page, at http://www.sallybeauty.com/step-one-booster/ SBS-405017,default,pd.html | REL; 403; H; FO; AU; NVP; DIS |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4290 | | | | Quadraplex Product Page, at http://oligoprofessional.com/en/quadraplex-2/ | REL; 403; H; FO; AU; NVP; DIS |
| 4291 | | | | Wella SP Liquid Hair 100mL Product Page, at www.beautybay.com/haircare/wellsap/liquidhair/ | REL; 403; H; FO; AU; NVP; DIS |
| 4292 | | | | Gkhair Shield Additive+ Product Page, at https://www.gkhair.com/p/shield-additive | REL; 403; H; FO; AU; NVP; DIS |
| 4293 | | | | Goldwell BondPro+ Product Page, at http://www.goldwell.us/products/color/system/bondpro/ | REL; 403; H; FO; AU; NVP; DIS |
| 4294 | | | | Uberliss.com, Bond Treatment FAQ, https://uberliss.com/pages/bond-treatment-faq | REL; 403; H; FO; AU; NVP; DIS |
| 4295 | | | | 8XPowder Product Page, at https://en.trussprofessional.com/product/details/208 | REL; 403; H; FO; AU; NVP; DIS |
| 4296 | | | | Document Entitled: "Brazilian Professionals is the ONLY authorized online retailer to sell authentic Brazilian Bond Builder products.", at http://brazilianbondbuilder.com/AuthorizedRetailers.html?iframe=true&width=600&height=300 | REL; 403; H; FO; AU; NVP; DIS |
| 4297 | | | | Document Entitled: "US Distributors, colorpHlex", at http://colorphlex.com/distributors/ | REL; 403; H; FO; AU; NVP; DIS |
| 4298 | | | | Olaplex.com, Page Entitled: "OLAPLEX - Prevent Damage, Repair Hair" | REL; 403; H; FO; AU; NVP; DIS |
| 4299 | 3/15/2016 | | | Twitter.com, Tweet by @olaplex Entitled: "April G. comparied Olaplex & 5 other 'bond builders' LIVE on Perisdcope yesterday," at https://twitter.com/olaplex/status/709763840284565504 | REL; 403; H; FO; AU; NVP; DIS |
| 4300 | 9/17/2015 | | | ModernSalon.com, Article Entitled: "Hero Complex: An Interview with Dean Christal of Olaplex" by A. Moratto, at https://www.modernsalon.com/article/32793/hero-complex-an-interview-with-dean-christa | REL; 403; H; FO; AU; NVP; DIS |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4301 | | | | Olaplex.com, Page Entitled: "Distributor List" at https://olaplex.com/pages/distributors | REL; 403; H; FO; AU; NVP; DIS |
| 4302 | 6/5/2017 | | | Chart Comparting Statements In Dr. N. Mody's Rebuttal Declaration (D.I. 97) With Evidence Obtained in This Case | REL; 403; H; FO; AU; NVP; DIS |
| 4303 | 5/16/2018 | | | Declaration Of Steven Orzel, dated May 16, 2018 | H; FO |
| 4304 | 5/21/2018 | | | Declaration Of Benny D. Freeman, Ph.D. In Support Of Defendants' Opposition To Plaintiffs' Motion For A Preliminary Injunction, dated May 21, 2018 | FO, H |
| 4305 | 5/21/2018 | | | Exhibit A to Declaration Of Benny D. Freeman, Ph.D. In Support Of Defendants' Opposition To Plaintiffs' Motion For A Preliminary Injunction, dated May 21, 2018, "List of Materials Considered" | FO, H, REL |
| 4306 | 5/21/2018 | | | Exhibit B to Declaration Of Benny D. Freeman, Ph.D. In Support Of Defendants' Opposition To Plaintiffs' Motion For A Preliminary Injunction, dated May 21, 2018, "Curriculum Vitae of Dr. Benny D. Freeman" | FO, H, REL |
| 4307 | 5/21/2018 | | | Exhibit C to Declaration Of Benny D. Freeman, Ph.D. In Support Of Defendants' Opposition To Plaintiffs' Motion For A Preliminary Injunction, dated May 21, 2018, "List of Expert Witness Cases" | FO, H, REL |
| 4308 | 5/21/2018 | | | Exhibit D to Declaration Of Benny D. Freeman, Ph.D. In Support Of Defendants' Opposition To Plaintiffs' Motion For A Preliminary Injunction, dated May 21, 2018, "The Science of Hair Care" Scan of bookCharles Zviak, Chapter 8: "Oxidative Coloring" from "The Science of Hair Care" (1986) | FO, H |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4309 | 5/21/2018 | | | Exhibit E to Declaration Of Benny D. Freeman, Ph.D. In Support Of Defendants' Opposition To Plaintiffs' Motion For A Preliminary Injunction, dated May 21, 2018, "LOh, I. and Hong, S., "Low temperature preparation of ultrafine LiCoO2 powders by the sol-del method," 32 J. MAT. SCI. 3177-3182 (1997) | FO, H, REL |
| 4310 | 5/21/2018 | | | Exhibit F to Declaration Of Benny D. Freeman, Ph.D. In Support Of Defendants' Opposition To Plaintiffs' Motion For A Preliminary Injunction, dated May 21, 2018, Fey, G.T. et al., "Electroanalytical studies on sol-gel derived LiNi0.8Co0.2O2," 82 MAT. CHEM. PHYS. 5-15 (2003) | H, REL |
| 4311 | | | | Intentionally Left Blank | |
| 4312 | 5/21/2018 | | | Exhibit H to Declaration Of Benny D. Freeman, Ph.D. In Support Of Defendants' Opposition To Plaintiffs' Motion For A Preliminary Injunction, dated May 21, 2018, Charles Zviak and Jean Milléquant, Chapter 7: "Hair Bleaching" and Chapter 9: "Oxidation Coloring" from "The Science of Hair Care" (2nd ed.) (Eds. Bouillon & Wilkinson) (2005) | COMP, FO, H |
| 4313 | 5/21/2018 | | | Exhibit I to Declaration Of Benny D. Freeman, Ph.D. In Support Of Defendants' Opposition To Plaintiffs' Motion For A Preliminary Injunction, dated May 21, 2018, Keith Brown and Stanley Pohl, "Permanent Hair Dyes," Society of Cosmetic Chemists Monograph (1996) | FO, H, REL |
| 4314 | | | | Intentionally Left Blank | |
| 4315 | | | | Intentionally Left Blank | |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4316 | 5/21/2018 | | | Exhibit L to Declaration Of Benny D. Freeman, Ph.D. In Support Of Defendants' Opposition To Plaintiffs' Motion For A Preliminary Injunction, dated May 21, 2018L.J. Wolfram, "The Reactivity of Human Hair: A Review," Hair Research (Ed. Orfanos) (1981) | FO, H |
| 4317 | | | | Intentionally Left Blank | |
| 4318 | 5/21/2018 | | | Declaration of W. Todd Schoettelkotte In Support Of Defendants' Opposition To Plaintiffs' Renewed Motion For Preliminary Injunction, dated May 21, 2018 | H; FO |
| 4319 | 5/21/2018 | | | Appendix 3 to Declaration of W. Todd Schoettelkotte In Support Of Defendants' Opposition To Plaintiffs' Renewed Motion For Preliminary Injunction, dated May 21, 2018 | H; FO |
| 4320 | 1/16/2018 | | | Liqwd, Inc. v. L'Oréal USA, Inc. , 2018 U.S. App. LEXIS 1078 (Fed. Cir. Jan. 16, 2018) | No Objection |
| 4321 | 5/16/2018 | | | Olaplex.com, Page Entitled: "OLAPLEX - Prevent Damage, Repair Hair" | DIS; AU; H; FO; REL; MIL |
| 4322 | 5/21/2018 | | | Product Search For "Bonder" on Cosmoprofbeauty.com, https://www.cosmoprofbeauty.com/search?q=bonder&backToSearchPage=true&viewallproduct=true | REL; AU; H; FO |
| 4323 | 5/16/2018 | | | Webpage Entitled: "The Wella Professionals Heritage" at http://www.wella.com/professional/en-US/family-history#/ | REL; H; AU; FO |
| 4324 | 5/21/2018 | | | Wella.com, Page Entitled: "WellaPlex OPTI pH SYSTEM" at wella.com/professional/en-US/products/color-information/wellaplex_bond_builder | REL; AU; H; FO |
| 4325 | 5/21/2018 | | | Document Entitled: "Wella: WellaPlex Large Kit" | REL; AU; H; FO; DIS |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4326 | 4/27/2018 | | | "How The Top 1000 Online Retailers Performed In 2017" Online Article, https://www.digitalcommerce360.com/2018/04/27/how-the-top-1000-online-retailers-performed-in-2017/ | REL; AU; H; FO |
| 4327 | 4/25/2018 | | | Excerpts From The Computer-Aided Transcripts Of Proceedings In The High Court Of Justice, Business And Property Courts Of England And Wales, In The Matter Of Liqwd, Inc. V. L'Oréal (U.K.) Ltd., Claim No. Hp-2016-000056 | DIS; CP; REL; H; FO; AU |
| 4328 | 10/26/2017 | | | Document Entitled: "Examination report No. 2 for standard patent application," and dated October 26, 2017, issued by the Australian government in connection with an Australian patent application filed by Liqwd, Inc. | DIS; REL; H; FO; AU |
| 4329 | 12/21/2017 | | | Document Re. Canadian Patent Application No. 2,947,303, Title: Keratin Treatment Formulations and Methods | DIS; REL; H; FO; AU |
| 4330 | 2017-2018 | | | Copy Of The Record In L'Oreal Usa, Inc., V. Liqwd, Inc., Case No. PGR2017-00012 (P.T.A.B.) Up To And Including The Institution Decision On July 19, 2017 And The Supplemental Institution Decision On May 10, 2018 | NVP, DIS, AU, COMP, CP, FO, H, MIL, REL, 403 |
| 4331 | 9/23/2016 | | | Screenshot Of Olaplex's Website, viewed on September 23, 2016 | DIS; REL; H; FO; AU |
| 4332 | 3/4/2018 | | | Office action in Israeli patent application number 248989 filed by Liqwd, Inc., dated March 4, 2018 | DIS; REL; H; FO; AU |
| 4333 | 12/18/2017 | | | "Notification of the First Office Action" from the State Intellectual Property Office of the People's Republic of China ("SIPO") in Chinese patent application number 201580026038.9 filed by Liqwd, Inc., dated December 18, 2017, and a certified translation thereof. | DIS; REL; H; FO; AU |
| 4334 | | | | Intentionally Left Blank | |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4335 | | | | U.S. Provisional Patent Application No. 61/994,709 | No Objection |
| 4336 | 5/1/2014 | | | "The Power of One" from Beauty Launchpad magazine dated May 2014 | DIS; REL; H; FO; AU |
| 4337 | 5/17/2017 | | | "Notice of Cancellation Grounds" dated May 17, 2017, issued by the Korean Intellectual Property Tribunal and Appeal Board regarding Korean Patent No. 1787310 owned by LIQWD Incorporated, and a certified translation thereof | DIS; REL; H; FO; AU |
| 4338 | 1/29/2019 | | | Expert Report of Benny D. Freeman, Ph.D. on Invalidity of U.S. Patent Nos. 9,498,419 and 9,668,954, dated January 29, 2019 | FO, H, REL |
| 4339 | 1986 | | | Charles Zviak & Rodney P.R. Dawber, Hair Structure, Function, and Physicochemical Properties,The Science of Hair Care (Charles Zviak ed., 1st ed. 1986) ("Zviak II") | FO, H |
| 4340 | 4/28/2015 | | | U.S. Patent No. 9,018,150 ("Rizk") | H |
| 4341 | 3/31/2005 | | | U.S. Patent Application Pub. No. US 2005/0069516 | DIS; REL; H; FO; AU; MIL |
| 4342 | 1/26/2012 | | | U.S. Patent Application Pub No. US 2012/0021025 | DIS; REL; H; FO; AU; MIL |
| 4343 | 5/1/2000 | | | Charles Q. Yang & Xiaohong Gu, Polymerization of Maleic Acid and Itaconic Acid Studied by FT-Raman Spectroscopy, 81 J. App. Poly. Sci. 223 (2001) ("Yang II") | H, REL |
| 4344 | 1/8/2019 | | | Report and Recommendation, D.I. 602 | REL; 403 |
| 4345 | | | | File History for U.S. Patent No. 9,498,419 | No Objection |
| 4346 | | | | File History for U.S. Patent No. 9,668,954 | No Objection |
| 4347 | | | | Intentionally Left Blank | |
| 4348 | | | | File History for U.S. Patent No. 9,326,926 | Comp |
| 4349 | 5/16/2014 | | | U.S. Provisional Patent Application No. 61/994,709 | No Objection. |
| 4350 | 11/1/2018 | | | Markman Hearing Transcript dated November 1, 2018, in Liqwd, Inc. v. L'Oréal USA, Inc., No. 1:17-cv-0014-JFB-SRF | No Objection |
| 4351 | 9/24/2018 | | | Joint Claim Construction Chart, D.I. 404-1, at Ex. A | No Objection |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4352 | | | | Excerpts of Raymond E. Davis et al., Modern Chemistry (Holt, Rinehart & Winston 1999) | H; FO; DIS; MIL; CP |
| 4353 | | | | Excerpts of Richard J. Lewis, Sr., Hawley's Condensed Chemical Dictionary (John Wiley & Sons, Inc. 13th ed. 1997) | H; FO; DIS; MIL; CP |
| 4354 | 1/29/2019 | | | Curriculum vitae of Benny D. Freeman, Ph.D | FO, H |
| 4355 | 1/29/2019 | | | List of Cases Involving Deposition or Trial Testimony of Benny D. Freeman, Ph.D | H; FO; MIL |
| 4356 | 1/29/2019 | | | List of Documents and Materials Considered in connection with Expert Report of Benny D. Freeman, PhD dated Jan. 29, 2019 | H; FO; MIL |
| 4357 | 10/8/2018 | | | Lidia M. Jankowska et al., The Relationships Between Ionic and Non-Ionic Diffusion of Sulfonamindes Across the Rabbit Cornea (1986) ("Jankowska"), D.I. 421, JP Decl. Ex. AW | H; FO; MIL |
| 4358 | 10/10/2018 | | | Maleic Acid, National Center for Biotechnology Information, PubChem Open Chemistry Database, https://pubchem.ncbi.nlm.nih.gov/compound/444266 ("NCBI - Maleic Acid"), D.I. 421, JP Decl. Ex. O | H; FO; MIL |
| 4359 | 10/10/2018 | | | Hydrogen Maleate, National Center for Biotechnology Information, PubChem Open Chemistry Database, https://pubchem.ncbi.nlm.nih.gov/compound/11966254, D.I. 421, JP Decl. Ex. M | H; FO; MIL |
| 4360 | 10/10/2018 | | | Maleate, National Center for Biotechnology Information, PubChem Open Chemistry Database, https://pubchem.ncbi.nlm.nih.gov/compound/5288227, D.I. 421, JP Decl. Ex. N | H; FO; MIL |
| 4361 | | | | Intentionally Left Blank | |
| 4362 | 10/10/2018 | | | Excerpts of Donald Voet et al., Fundamentals of Biochemistry – Life at the Molecular Level (John Wiley & Sons, Inc., 3rd ed. 2008), D.I. 421, JP decl. Ex. AR ("Voet") | H; FO; MIL; CP |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4363 | 6/9/2011 | | | Y.K. Kamath et al., Hair Breakage by Combing and Brushing—A Comment on: T.A. Evans and K. Park, A Statistical Analysis of Hair Breakage. II. Repeated Grooming Experiments, J. Cosmet. Sci., 41, 439-456 (2010), 62 J. Cosmet. Sci. 579 (2011), filed as Exhibit 1015 in the matter of L'Oréal USA, Inc. v. Liqwd, Inc., Case No. PGR2018-00025 (P.T.A.B.), concerning the '954 patent, D.I. 421, JP decl. Ex. AN ("Kamath") | H; FO; MIL |
| 4364 | 11/16/2006 | | | Manuel Gamez-Garcia, Understanding the Micro-Physical and Mechanical Properties of the Hair Cuticle Via Damage Analysis, 57 J. Cosmet. Sci. 423 (2006), D.I. 421, JP Decl. Ex. AT ("Gamez-Garcia I") | H; FO; MIL |
| 4365 | 1/31/2000 | | | Sigrid B. Ruetsch et al., Photodegradation of Human Hair: An SEM Study, 51 J. Cosmet. Sci. 103 (2000), D.I. 421, JP Decl. Ex. AU ("Ruetsch") | H; FO; MIL |
| 4366 | | | | Intentionally Left Blank | |
| 4367 | 10/10/2018 | | | Excerpts of André O. Barel et al., Handbook of Cosmetic Science and Technology (Informa Healthcare USA, Inc. 3rd ed. 2009), filed as Exhibit 1017 in the matter of L'Oréal USA, Inc. v. Liqwd, Inc., Case No. PGR2018-00025 (P.T.A.B.), concerning the '954 patent, D.I. 421, JP Decl. Ex. AM ("Barel") | BE, CP, FO, H, MIL |
| 4368 | 10/10/2018 | | | Manuel Gamez-Garcia et al., Patterns of Light Interference Produced by Damaged Cuticle Cells in Human Hair, 58 J. Cosmet. Sci. 269 (2007), D.I. 421 JP Decl. Ex. BE ("Gamez-Garcia II") | H; FO; MIL |
| 4369 | 10/10/2018 | | | Sukhvinder S. Sandhu et al., A Simple and Sensitive Method Using Protein Loss Measurements to Evaluate Damage to Human Hair During Combing, 46 J. Soc. Cosmet. Chem. 39 (1995), D.I. 421, JP Decl. Ex. BD ("Sandhu") | H; FO; MIL |
| 4370 | 10/10/2018 | | | M.L. Tate et al., Quantification and Prevention of Hair Damage, 44 J.Soc. Cosmet. Chem. 347 (1993), D.I. 421, JP Decl. Ex. BF ("Tate") | H; FO; MIL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4371 | 6/28/2014 | | | Internet Archive Website preservation of "Olaplex.com" website as of June 28, 2014 | AU; REL; DIS; H; CP; COMP; FO |
| 4372 | 11/5/2014 | | | B(l)ack to Blonde—A Boxed Haircolor Story, Behindtheechair.com (November 5, 2014), https://behindthechair.com/articles/b-l-ack-to-blonde-a-boxed-haircolor-story/ | H; AU; FO |
| 4373 | 1/29/2019 | | | 2,2'-(Ethylenedioxy)bis(ethymaleimide), Alfa Chemistry, https://www.alfa-chemistry.com/cas_115597-84-7.htm | AU; H; FO |
| 4374 | 1/29/2019 | | | 2,2'-(Ethylenedioxy)bis(ethylamine), Sigma-Aldrich, https://www.sigmaaldrich.com/catalog/product/aldrich/385506?lang=en&region=US | AU; H; FO |
| 4375 | | | | Material Safety Data Sheet Olaplex Bond Multiplier No. 1 dated December 2014 | DIS; AU; H; FO |
| 4376 | 1/19/2019 | | | Fumaric Acid, National Center for Biotechnology Information, PubChem Open Chemistry Database, https://pubchem.ncbi.nlm.nih.gov/compound/fumaric_acid ("NCBI - Fumaric Acid") | AU; H; FO |
| 4377 | 1/12/2019 | | | Itaconic Acid, National Center for Biotechnology Information, PubChem Open Chemistry Database, https://pubchem.ncbi.nlm.nih.gov/compound/Itaconic_acid ("NCBI - Itaconic Acid") | AU; H; FO |
| 4378 | 8/4/2015 | | | U.S. Patent No. 9,095,518 ("the '518 patent") | REL |
| 4379 | 3/29/2018 | | | Deposition Transcript of Edward Borish, Ph.D (5/2/2018), at Ex. 127, Cosmetics - CosIng [EC Regulation (v.2)], | AU, FO, REL |
| 4380 | 5/2/2018 | | | Excerpts from the computer-aided transcripts of proceedings in the High Court of Justice, Business and Property Courts of England and Wales, in the matter of Liqwd, Inc. v. L'Oréal (U.K.) Ltd., Claim No. HP-2016-000056 (5/2/2018), D.I. 608, Ex. C | DIS; CP; REL; H; FO; AU |
| 4381 | 2/5/2015 | | | International Patent Application Pub. No. WO 2015/017768 ("WO '768") | DIS; REL; AU; FO; H |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4382 | 5/22/2017 | | | Defendants First Supplemental Objections and Responses to Plaintiffs' First Set of Interrogatories (No. 1), Deposition Transcript of Kimberly Dreher (5/22/2017), at Ex. 99 | H; COMP |
| 4383 | 12/20/2018 | | | Defendants' First Supplemental Objections and Responses to Plaintiffs' Nineteenth Interrogatory | H |
| 4384 | 12/3/2018 | | | Defendants' Objections and Responses to Plaintiffs' Fifth Set of Interrogatories (Nos. 13-20) | H |
| 4385 | 6/26/2013 | | | Certified Copy of Priority Document for International Patent Application No. PCT/EP2014/063505, priority document numbered FR 1356138, filed June 26, 2013, copy of English translation, and certification of translation | DIS, AU, COMP, H |
| 4386 | 6/26/2013 | | | Certified Copy of Priority Document for International Patent Application No. PCT/EP2014/063505, priority document numbered FR 1356139, filed June 26, 2013, copy of English translation, and certification of translation | DIS, AU, COMP, H |
| 4387 | | | | Charles Ziviak, Oxidation Coloring, The Science of Hair Care 263-277 (C. Bouillon & J. Wilkinson eds., 1986) | DIS, FO, H |
| 4388 | 11/12/2013 | | | World Intellectual Property Organization, Document Made Available Under the Patent Cooperation Treaty, International Application No. PCT/US2014/049388 | No Objection |
| 4389 | 10/24/2028 | | | Third party observation - GB 1605346.4, filed in Application No. GB1605346.4 on 10/24/2028 and Exhibit E47 thereto | DIS; AU; FO; H; REL; COMP; CP |
| 4390 | 4/26/2018 | | | Excerpts from the computer-aided transcripts of proceedings in the High Court of Justice, Business and Property Courts of England and Wales, in the matter of Liqwd, Inc. v. L'Oréal (U.K.) Ltd., Claim No. HP-2016-000056 (4/26/2018) | DIS; CP; REL; H; FO; AU |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4391 | 11/16/2010 | | | Michael J. Paterson & Aleksandar Jovanovic, On the synthesis of N-maleoyl amino acids in aqueous media: cautionary tales for the unwary traverller | DIS; AU; H; FO; REL; MIL |
| 4392 | | | | Chantal Bolduc & Jerry Shapiro, Hair Care Products: Waving, Straightening, Conditioning, and Coloring, 19 Clinics in Dermatology 431 (2001) | DIS, FO, H |
| 4393 | 1/29/2019 | | | Rhonda Harper Expert Report, dated January 29, 2019 | H; FO; MIL |
| 4394 | 1/29/2019 | | | Appendix A to Rhonda Harper Expert Report dated Jan. 29, 2019: Professional History | H; FO; MIL |
| 4395 | 1/29/2019 | | | Rhonda Harper CV | H; FO; MIL |
| 4396 | 1/29/2019 | | | R. Harper Expert Testimony Experience | H; FO; MIL |
| 4397 | 9/28/2015 | | | "Global Trust in Advertising," Nielsen, 2015 | H; FO; MIL |
| 4398 | Sept. | | | Pew Research Center's Internet Project, September 2014 | H; FO; MIL |
| 4399 | 9/29/2013 | | | "38 Surprising Facts about Trust in Social Media," Barn Raisers LLC, 2013 | H; FO; MIL |
| 4400 | | | | Marketing-dictionary.org | H; FO; MIL |
| 4401 | 3/21/2015 | | | Salongeek.com, "UK version of a Olaplex?", at https://salongeek.com/threads/uk-version-of-a-olaplex.284959/ | H; FO; MIL |
| 4402 | 1/29/2019 | | | Expert Report of David Nolte, dated January 29, 2019 | H; FO; MIL |
| 4403 | 1/29/2019 | | | David Nolte CV | H; FO; MIL |
| 4404 | 1/29/2019 | | | Document Entitled: "Olaplex Performance During Damage Period" | H; FO; MIL |
| 4405 | 1/29/2019 | | | Document Entitled: "Analysis of Olaplex Sales, by SKU" | H; FO; MIL |
| 4406 | | | | Document Entitled: "Comparison of L'Oreal Projections to Actual Sales" | H; FO; MIL |
| 4407 | | | | Document Entitled: "2016 Registration Document Annual Financial Report; Integrated Report" | H; FO; MIL |
| 4408 | | | | https://www.klinegroup.com/ Webpage | H; FO; MIL |
| 4409 | | | | Expert Report of Peter Smith Regarding Digital Computer Forensics, dated January 29, 2019 | H; FO; MIL |
| 4410 | | | | Peter Smith Curriculum Vitae | H; FO; MIL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4411 | | | | Ex. B to Smith Expert Report  - Report of content from the Instagram.com accounts | H; FO; MIL; REL; AU |
| 4412 | | | | Ex. B-1 to Smith Expert Report -Instagram Screen Capture | H; FO; MIL; REL; AU |
| 4413 | | | | Ex. B-2 to Smith Expert Report -Instagram Screen Capture | H; FO; MIL; REL; AU |
| 4414 | | | | Ex. B-3 to Smith Expert Report - Instagram Screen Capture | H; FO; MIL; REL; AU |
| 4415 | | | | Ex. B-4 to Smith Expert Report - Instagram Screen Capture | H; FO; MIL; REL; AU |
| 4416 | | | | Ex. B-5 to Smith Expert Report - Instagram Screen Capture | H; FO; MIL; REL; AU |
| 4417 | | | | Ex. B-6 to Smith Expert Report - Instagram Screen Capture | H; FO; MIL; REL; AU |
| 4418 | | | | Ex. B-7 to Smith Expert Report  - Instagram Screen Capture | H; FO; MIL; REL; AU |
| 4419 | | | | Ex. B-8 to Smith Expert Report  - Instagram Screen Capture | H; FO; MIL; REL; AU |
| 4420 | | | | Ex. B-9 Smith Expert Report  - Instagram Screen Capture | H; FO; MIL; REL; AU |
| 4421 | | | | Ex. C to Smith Expert Report  - Olaplex's Facebook page on February 21, 2016 | H; FO; MIL; REL; AU |
| 4422 | | | | Ex. D to Smith Expert Report  - Report of captured postings on BeautyHeaven.com | H; FO; MIL; REL; AU |
| 4423 | | | | Ex. D-1 to Smith Expert Report Beauty -Heaven.com Screen Captures | H; FO; MIL; REL; AU |
| 4424 | | | | A report of captured postings that met either search criteria on HairDyeForum.com | H; FO; MIL; REL; AU |
| 4425 | | | | Ex. E to Smith Expert Report - HairDyeForum.com screen captures | H; FO; MIL; REL; AU |
| 4426 | | | | Ex. F to Smith Expert Report - Report of captured postings on Forums.LongHairCommunity.com | H; FO; MIL; REL; AU |
| 4427 | | | | Ex. F-1 to Smith Expert Report  - Forums.LongHairCommunity.com screen captures | H; FO; MIL; REL; AU |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4428 | | | | Ex. G to Smith Expert Report  - Report of captured postings on Loveyourcurls.com | H; FO; MIL; REL; AU |
| 4429 | | | | Ex. G-1 to Smith Expert Report  - Loveyourcurls.com screen captures | H; FO; MIL; REL; AU |
| 4430 | | | | Ex. G-2 to Smith Expert Report  - Loveyourcurls.com screen captures | H; FO; MIL; REL; AU |
| 4431 | | | | Ex. H to Smith Expert Report  - Report of captured postings on Reddit.com | H; FO; MIL; REL; AU |
| 4432 | | | | Ex. H1-H9 to Smith Expert Report  -Screen captures | H; FO; MIL; REL; AU |
| 4433 | | | | Ex. I to Smith Expert Report - Report of captured postings on Salongeek.com | H; FO; MIL; REL; AU |
| 4434 | | | | Ex. I-1 to Smith Expert Report - Salongeek.com screen captures | H; FO; MIL; REL; AU |
| 4435 | | | | Ex. I-2 to Smith Expert Report - Salongeek.com screen captures | H; FO; MIL; REL; AU |
| 4436 | | | | Ex. I-3 to Smith Expert Report- Salongeek.com screen captures | H; FO; MIL; REL; AU |
| 4437 | | | | Ex. I-4 to Smith Expert Report  - Salongeek.com screen captures | H; FO; MIL; REL; AU |
| 4438 | | | | Ex. I-5 to Smith Expert Report -Salongeek.com screen captures | H; FO; MIL; REL; AU |
| 4439 | | | | Ex. I-6 to Smith Expert Report  - Salongeek.com screen captures | H; FO; MIL; REL; AU |
| 4440 | | | | Ex. I-7 to Smith Expert Report  - Salongeek.com screen captures | H; FO; MIL; REL; AU |
| 4441 | | | | Ex. I-8 to Smith Expert Report  - Salongeek.com screen captures | H; FO; MIL; REL; AU |
| 4442 | | | | Ex. I-9 to Smith Expert Report  - Salongeek.com screen captures | H; FO; MIL; REL; AU |
| 4443 | | | | Ex. I-10 to Smith Expert Report  - Salongeek.com screen captures | H; FO; MIL; REL; AU |
| 4444 | | | | Ex. I-11 to Smith Expert Report  - Salongeek.com screen captures | H; FO; MIL; REL; AU |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4445 | | | | Ex. I-12 to Smith Expert Report  - Salongeek.com screen captures | H; FO; MIL; REL; AU |
| 4446 | | | | chemjobber.blogspot.com/2017/01/this-loreal-suit-seems-bad-for-them.html | H; DIS; FO; Q; REL |
| 4447 | 1/31/2017 | | | PGR2017-00012 (Paper 1) - Power of Attorney | MIL, REL |
| 4448 | 1/31/2017 | | | PGR2017-00012 (Paper 2) - PETITION FOR POST-GRANT REVIEW OF U.S. PATENT 9,498,419 | H, MIL, REL, 403 |
| 4449 | 2/21/2017 | | | PGR2017-00012 (Paper 3) - PATENT OWNER POWER OF ATTORNEY PURSUANT TO 37 C.F.R. SEC. 42.10(b) | MIL, REL |
| 4450 | 2/21/2017 | | | PGR2017-00012 (Paper 4) - PATENT OWNER MANDATORY NOTICES PURSUANT TO 37 C.F.R. SEC. 42.8(a)(2) | H, MIL, REL |
| 4451 | 2/21/2017 | | | PGR2017-00012 (Paper 5) - Updated Mandatory Notices | H, MIL, REL |
| 4452 | 2/23/2017 | | | PGR2017-00012 (Paper 6) - Notice of Accord Filing Date | MIL, REL |
| 4453 | 4/30/2017 | | | PGR2017-00012 (Paper 7) - Patent Owner's Preliminary Response Under 37 CFR 42.207 | H, MIL, REL |
| 4454 | | | | Intentionally Left Blank | N/A |
| 4455 | | | | Intentionally Left Blank | N/A |
| 4456 | | | | Intentionally Left Blank | N/A |
| 4457 | | | | Intentionally Left Blank | N/A |
| 4458 | | | | Intentionally Left Blank | N/A |
| 4459 | | | | Intentionally Left Blank | N/A |
| 4460 | | | | Intentionally Left Blank | N/A |
| 4461 | | | | Intentionally Left Blank | N/A |
| 4462 | | | | Intentionally Left Blank | N/A |
| 4463 | 7/19/2017 | | | PGR2017-00012 (Paper 17) - DECISION Institution of Post-Grant Review | H, MIL, REL, 403 |
| 4464 | 7/19/2017 | | | PGR2017-00012 (Paper 18) - Scheduling Order | MIL, REL |
| 4465 | 7/27/2019 | | | PGR2017-00012 (Paper 19) - Submission of New Exhibit | H, MIL, REL |
| 4466 | 7/27/2019 | | | PGR2017-00012 (Paper 20) - Exhibit List | MIL, REL |
| 4467 | 7/27/2019 | | | PGR2017-00012 (Paper 21) - Certificate of Service | MIL, REL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4468 | 8/2/2017 | | | PGR2017-00012 (Paper 22) - Patent Owner LIQWDS Objections to Evidence under 37 C.F.R. 42.64(b)(1) | H, MIL, REL |
| 4469 | 8/15/2017 | | | PGR2017-00012 (Paper 23) - Patent Owner LIQWDs List of Proposed Motions | H, MIL, REL |
| 4470 | 8/23/2017 | | | PGR2017-00012 (Paper 24) - Patent Owner's Objections to Petitioner's Supplemental Evidence | H, MIL, REL |
| 4471 | 8/24/2017 | | | PGR2017-00012 (Paper 25) - Order Conduct of the Proceeding | H, MIL, REL |
| 4472 | 8/24/2017 | | | PGR2017-00012 (Paper 26) - Order Conduct of the Proceeding | H, MIL, REL |
| 4473 | 8/29/2017 | | | PGR2017-00012 (Paper 28) - PATENT OWNERS UPDATED EXHIBIT LIST (as of August 29, 2017) | H, MIL, REL |
| 4474 | 8/30/2017 | | | PGR2017-00012 (Paper 29) - Motion to Seal Patent Owner's Motion for Additional Evidence and Related Confidential Exhibits | H, MIL, REL |
| 4475 | 8/31/2017 | | | PGR2017-00012 (Paper 30) - Petitioner's Motion for Supplemental Information | H, MIL, REL |
| 4476 | 9/5/2017 | | | PGR2017-00012 (Paper 31) - Petitioners Opposition to Patent Owners Motion for Additional Discovery | H, MIL, REL |
| 4477 | 9/6/2017 | | | PGR2017-00012 (Paper 32) - Petitioners Objections to Patent Owners Evidence | H, MIL, REL |
| 4478 | 9/7/2017 | | | PGR2017-00012 (Paper 33) - Patent Owner's Opposition to Petitoner's Motion for Supplemental Information Under 37 C.F.R. 42.223 | H, MIL, REL |
| 4479 | 9/11/2017 | | | PGR2017-00012 (Paper 34) - Patent Owners Notice of Deposition of Arun Nandagiri | MIL, REL |
| 4480 | 9/26/2017 | | | PGR2017-00012 (Paper 35) - Patent Owner's Contingent Notice of Deposition of Jina Bang | MIL, REL |
| 4481 | 9/26/2017 | | | PGR2017-00012 (Paper 36) - Patent Owner's Contingent Notice of Deposition of David Joshua Sherman | MIL, REL |
| 4482 | 9/28/2017 | | | PGR2017-00012 (Paper 38) - Motion to Seal (1) Order Regarding Conduct of Proceeding (Paper 37) and (2) Related Exhibit 3001 | H, MIL, REL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4483 | 10/3/2017 | | | PGR2017-00012 (Paper 39) - Conduct of the Proceeding | MIL, REL |
| 4484 | 10/9/2017 | | | PGR2017-00012 (Paper 40) - Patent Owner's Amended Notice of Deposition of Jina Bang | MIL, REL |
| 4485 | 10/9/2017 | | | PGR2017-00012 (Paper 41) - Patent Owner's Notice of Deposition of David Joshua Sherman | MIL, REL |
| 4486 | 10/9/2017 | | | PGR2017-00012 (Paper 42) - Patent Owner Liqwd Inc's Updated Exhibit List | MIL, REL |
| 4487 | 10/10/2017 | | | PGR2017-00012 (Paper 43) - PETITIONERS UPDATED EXHIBIT LIST | H, MIL, REL |
| 4488 | 10/21/2017 | | | PGR2017-00012 (Paper 45) - MOTION TO SEAL (1) PATENT OWNERS RESPONSE (PAPER 44) AND (2) RELATED EXHIBITS 2022, 2023, 2025, 2038, 2039, AND 2040 AND FOR PROTECTIVE ORDERS | H, MIL, REL |
| 4489 | 10/27/2017 | | | PGR2017-00012 (Paper 46) - PETITIONERS OBJECTIONS TO PATENT OWNERS EVIDENCE | H, MIL, REL |
| 4490 | 11/28/2017 | | | PGR2017-00012 (Paper 47) - Petitioners Contingent Notice of Deposition of Thomas Dispenza | MIL, REL |
| 4491 | 11/30/2017 | | | PGR2017-00012 (Paper 48) - Petitioners Contingent Notice of Deposition of Edward Borish, Ph.D. | MIL, REL |
| 4492 | 12/7/2017 | | | PGR2017-00012 (Paper 49) - Petitioners Amended Notice of Deposition of Thomas Dispenza | MIL, REL |
| 4493 | 12/14/2017 | | | PGR2017-00012 (Paper 50) - Petitioners Amended Notice of Deposition of Edward Borish, Ph.D | MIL, REL |
| 4494 | 12/27/2017 | | | PGR2017-00012 (Paper 51)- PETITIONERS NOTICE OF DEPOSITION OF ERIC PRESSLY | MIL, REL |
| 4495 | 12/27/2017 | | | PGR2017-00012 (Paper 52) - PETITIONERS NOTICE OF DEPOSITION OF DEAN CHRISTAL | MIL, REL |
| 4496 | 1/10/2018 | | | PGR2017-00012 (Paper 53) - PETITIONERS AMENDED NOTICE OF DEPOSITION OF ERIC PRESSLY | MIL, REL |
| 4497 | 1/26/2018 | | | PGR2017-00012 (Paper 54) - MOTION TO SEAL PETITIONER S REPLY AND RELATED EXHIBITS 1024, 1027, 1028, 1036, AND 1041 AND FOR PROTECTIVE ORDER | H, MIL, REL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4498 | 1/26/2018 | | | PGR2017-00012 (Paper 57) - PETITIONERS UPDATED EXHIBIT LIST | H, MIL, REL |
| 4499 | 2/2/2018 | | | PGR2017-00012 (Paper 58) - Patent Owner Liqwd's Objections under 37 C.F.R. 42.64(b)(1) to Evidence Submitted in Support of Petitioner's Reply | MM |
| 4500 | 2/8/2018 | | | PGR2017-00012 (Paper 59) - PETITIONERS UPDATED MANDATORY NOTICES | H, MIL, REL |
| 4501 | 2/12/2018 | | | PGR2017-00012 (Paper 60) - PATENT OWNER LIQWD, INCS CONTINGENT NOTICE OF DEPOSITION OF MELANIE CRIM | MIL, REL |
| 4502 | 2/12/2018 | | | PGR2017-00012 (Paper 61) - PATENT OWNER LIQWD, INCS CONTINGENT NOTICE OF DEPOSITION OF ARUN NANDAGIRI | MIL, REL |
| 4503 | 2/13/2018 | | | PGR2017-00012 (Paper 62) - ORDER Conduct of the Proceeding | H, MIL, REL |
| 4504 | 2/16/2018 | | | PGR2017-00012 (Paper 63) - Amended Contingent Notice of Deposition of Melanie Crim | MIL, REL |
| 4505 | 2/16/2018 | | | PGR2017-00012 (Paper 64) - Amended Contingent Notice of Deposition of Arun Nandagiri | MIL, REL |
| 4506 | 2/22/2018 | | | PGR2017-00012 (Paper 65) - Patent Owner's Updated Amended Notice of Deposition of Arun Nandagiril | MIL, REL |
| 4507 | 2/23/2018 | | | PGR2017-00012 (Paper 66) - Patent Owner's Updated Amended Notice of Deposition of Melanie Crim | MIL, REL |
| 4508 | 3/9/2018 | | | PGR2017-00012 (Paper 67) - NOTICE OF SCHEDULING STIPULATION | MIL, REL |
| 4509 | 3/12/2018 | | | PGR2017-00012 (Paper 68) - Patent Owner's Notice of Continued Deposition of Arun Nandagiri | MIL, REL |
| 4510 | 3/20/2018 | | | PGR2017-00012 (Paper (69) - Patent Owner Rule 42.70 Request for Oral Argument | H, MIL, REL |
| 4511 | 3/20/2018 | | | PGR2017-00012 (Paper 71)- PETITIONERS REQUEST FOR ORAL ARGUMENT | H, MIL, REL |
| 4512 | 3/20/2018 | | | PGR2017-00012 (Paper 73) - PETITIONERS MOTION TO EXCLUDE EVIDENCE PURSUANT TO 37 C.F.R. 42.64(c) | H, MIL, REL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4513 | 3/21/2018 | | | PGR2017-00012 (Paper 74) - Motion to Seal (1) Patent Owner's Motion for Observations on Cross-Examination (PAPER 70), (2) Patent Owner's Motion to Exclude Petitioner's Evidence (PAPER 72), and (3) Related Exhibit 2056 and for a Protective Order | H, MIL, REL |
| 4514 | 3/21/2018 | | | PGR2017-00012 (Paper 75) - Patent Owner Liqwd's Updated Exhibit List | H, MIL, REL |
| 4515 | 3/27/2018 | | | PGR2017-00012 (Paper 76) - Notice of Scheduling Stipulation | MIL, REL |
| 4516 | 3/27/2018 | | | PGR2017-00012 (Paper 78) - Motion to Seal Patent Owner's Corrected Motion for Observations on Cross-Examination (Paper 77) and for Protective Order | H, MIL, REL |
| 4517 | 3/27/2018 | | | PGR2017-00012 (Paper 79) - Patent Owner's Opposition to Petitioner's Motion to Exclude Evidence under 37 C.F.R. 42.64(c) | H, MIL, REL |
| 4518 | 3/28/2018 | | | PGR2017-00012 (Paper 81) - ORDER Conduct of the Proceeding | H, MIL, REL |
| 4519 | 3/29/2018 | | | PGR2017-00012 (Paper 82) - PETITIONERS OPPOSITION TO PATENT OWNERS MOTION TO EXCLUDE EVIDENCE | BE, CP, H, MIL, REL |
| 4520 | 3/29/2018 | | | PGR2017-00012 (Paper 83) - PETITIONERS UPDATED EXHIBIT LIST | H, MIL, REL |
| 4521 | 4/2/2018 | | | PGR2017-00012 (Paper 84) - ORDER Trial Hearing | H, MIL, REL |
| 4522 | 4/3/2018 | | | PGR2017-00012 (Paper 87) - PETITIONERS REPLY TO PATENT OWNERS OPPOSITION TO MOTION TO EXCLUDE | H, MIL, REL |
| 4523 | 4/3/2018 | | | PGR2017-00012 (Paper 88) - Patent Owner's Motion to Seal its Reply In Support of its Motion to Exclude Evidence (Paper 85) and for a Protective Order | H, MIL, REL |
| 4524 | 4/3/2018 | | | PGR2017-00012 (Paper 89) - PETITIONERS UPDATED EXHIBIT LIST | H, MIL, REL |
| 4525 | 4/3/2018 | | | PGR2017-00012 (Paper 90) - MOTION TO SEAL PETITIONERS RESPONSE TO PATENT OWNERS CORRECTED MOTION FOR OBSERVATIONS (PAPER 86) | H, MIL, REL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4526 | 4/4/2018 | | | PGR2017-00012 (Paper 91) - Patent Owner Motion Seeking Remedy Regarding Protective Order Violation Concerning Sealed Exhibit 2025 | H, MIL, REL |
| 4527 | 4/6/2018 | | | PGR2017-00012 (Paper 92) - Patent Owner's Updated Mandatory Notices Pursuant to 37 C.F.R. 42.8(a)(3) & (b)(2) | H, MIL, REL |
| 4528 | 4/6/2018 | | | PGR2017-00012 (Paper 93) - Patent Owner Liqwd Inc.'s Updated Exhibit List | MIL, REL |
| 4529 | 4/10/2018 | | | PGR2017-00012 (Paper 94) - Oral Hearing 37 C.F.R. sec 42.70 | MIL, REL |
| 4530 | 4/10/2018 | | | PGR2017-00012 (Paper 95) - PETITIONERS UPDATED EXHIBIT LIST | H, MIL, REL |
| 4531 | 4/10/2018 | | | PGR2017-00012 (Paper 96) - PETITIONERS OPPOSITION TO PATENT OWNERS MOTION SEEKING REMEDY REGARDING PROTECTIVE ORDER VIOLATION CONCERNING SEALED EXHIBIT 2025 | H, MIL, REL |
| 4532 | 4/30/2018 | | | PGR2017-00012 (Paper 97) - ORDER Conduct of the Proceeding | H, MIL, REL |
| 4533 | 4/11/2018 | | | PGR2017-00012 (Paper 98) - Hearing Transcript | H, MIL, REL, 403 |
| 4534 | 5/10/2018 | | | PGR2017-00012 (Paper 99) - Conduct of the Proceeding | MIL, REL |
| 4535 | 5/24/2018 | | | PGR2017-00012 (Paper 100) - Patent Owner Liqwd, Inc.'s Supplemental Response Pursuant to Board's May 10, 2018 Order | H, MIL, REL |
| 4536 | 5/31/2018 | | | PGR2017-00012 (Paper 101) - Petitioners Reply to Patent Owners Supplemental Response | H, MIL, REL |
| 4537 | 7/10/2018 | | | PGR2017-00012 (Paper 103) - Patent Owner's Notice of Appeal to the U.S. Court of Appeals for the Federal Circuit | H, MIL, REL, 403 |
| 4538 | 7/13/2018 | | | PGR2017-00012 (Paper 104) - JOINT MOTION TO SEAL FINAL WRITTEN DECISION (PAPER 102) AND FOR PROTECTIVE ORDER | H, MIL, REL |
| 4539 | 11/22/2016 | | | PGR2017-00012 (Exhibit 1001) - U.S. Patent No. 9,498,419 | No Objection |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4540 | 5/16/2006 | | | PGR2017-00012 (Exhibit 1002) - U.S. Patent No. 7,044,986 | H, MIL |
| 4541 | | | | PGR2017-00012 (Exhibit 1003) - German Patent Publication DE 1220969 | H, MIL |
| 4542 | 11/25/1964 | | | PGR2017-00012 (Exhibit 1004) - Certified translation of German Patent Publication DE 1220969 | BE, H, MIL |
| 4543 | 12/19/2002 | | | PGR2017-00012 (Exhibit 1005) -U.S. Patent Publication No. 2002/0189034 | H, MIL |
| 4544 | | | | PGR2017-00012 (Exhibit 1006) -Korean Patent Publication KR2006-0059564 | H, MIL |
| 4545 | 12/30/2016 | | | PGR2017-00012 (Exhibit 1007) -Certified translation of Korean Patent Publication KR2006-0059564 | BE, H, MIL, REL |
| 4546 | 1/30/2017 | | | PGR2017-00012 (Exhibit 1008) -Declaration of Arun Nandagiri | H, MIL |
| 4547 | 10/26/2015 | | | PGR2017-00012 (Exhibit 1009) -Declaration under 37 C.F.R. 1.132 of Eric D. Pressly, Ph.D. | H, MIL |
| 4548 | 8/23/2016 | | | PGR2017-00012 (Exhibit 1010) -Response to Office Action submitted August 23, 2016 | H, MIL |
| 4549 | 9/26/2016 | | | PGR2017-00012 (Exhibit 1011) -Notice of Allowance and attachments mailed September 26, 2016 | H, MIL |
| 4550 | 6/28/1905 | | | PGR2017-00012 (Exhibit 1012) -Thomas Clausen et al., Hair Preparations | H, MIL |
| 4551 | 9/7/2016 | | | PGR2017-00012 (Exhibit 1013) -Declaration under 37 C.F.R. 1.132 of Eric D. Pressly, Ph.D. | H, MIL |
| 4552 | 5/23/2016 | | | PGR2017-00012 (Exhibit 1014) -Office Action mailed May 23, 2016 | H, MIL |
| 4553 | 6/20/1905 | | | PGR2017-00012 (Exhibit 1015) -JOHN CORBETT, HAIR COLORANTS | H, MIL |
| 4554 | | | | PGR2017-00012 (Exhibit 1016) -Curriculum Vitae of Arun Nandagiri | H, MIL, REL |
| 4555 | 6/24/1905 | | | PGR2017-00012 (Exhibit 1017) -WEBSTERS THIRD INTERNATIONAL NEW DICTIONARY 40 | CP, MIL, REL |
| 4556 | | | | PGR2017-00012 (Exhibit 1018) -Certified translation of Korean Patent Publication KR2006-0059564 | H, MIL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4557 | | | | PGR2017-00012 (Exhibit 1019) -Sitch Declaration | H, MIL |
| 4558 | | | | PGR2017-00012 (Exhibit 1020) -Sherman Declaration | H, MIL |
| 4559 | 12/12/2017 | | | PGR2017-00012 (Exhibit 1021) -Printout from New York State licensing website | H, MIL, REL |
| 4560 | 12/12/2017 | | | PGR2017-00012 (Exhibit 1022) -Printout from the Olaplex Website | H, MIL, REL |
| 4561 | | | | PGR2017-00012 (Exhibit 1023) -Technical and Training Manual for Chromastics Hair Color Products | H, MIL, REL |
| 4562 | 10/13/2017 | | | PGR2017-00012 (Exhibit 1025) -Dispenza Deposition Transcript | H, MIL |
| 4563 | 1/5/2018 | | | PGR2017-00012 (Exhibit 1026) -Borish Deposition Transcript | H, MIL |
| 4564 | 2/20/2007 | | | PGR2017-00012 (Exhibit 1029) -U.S. Patent 7,179,302 | H, MIL |
| 4565 | 2/2/2012 | | | PGR2017-00012 (Exhibit 1030) -U.S. Patent Publication 2012/0024309 | H, MIL |
| 4566 | 1/10/1978 | | | PGR2017-00012 (Exhibit 1031) -U.S. Patent 4,067,345 | H, MIL |
| 4567 | 2/6/1979 | | | PGR2017-00012 (Exhibit 1032) -U.S. Patent 4,138,478 | H, MIL |
| 4568 | 2/5/2015 | | | PGR2017-00012 (Exhibit 1033) -U.S. Patent Publication US2015/0034119 | H, MIL |
| 4569 | 8/4/2015 | | | PGR2017-00012 (Exhibit 1034) -U.S. Patent 9,095,518 | H, MIL |
| 4570 | 3/16/2017 | | | PGR2017-00012 (Exhibit 1035) -PCT Publication WO2017041908 | H, MIL |
| 4571 | 11/22/2001 | | | PGR2017-00012 (Exhibit 1037) -U.S. Patent Publication 2001/0042276 | H, MIL |
| 4572 | | | | PGR2017-00012 (Exhibit 1038) -C.R. Robbins, Chemical and Physical Behavior of Human Hair | H, MIL |
| 4573 | 1/23/2018 | | | PGR2017-00012 (Exhibit 1039) -Table 3.4, pKa values of some amino acids | CP, H, MIL |
| 4574 | 1/26/2018 | | | PGR2017-00012 (Exhibit 1040) -Rebuttal Declaration of Arun Nandagiri | H, MIL |
| 4575 | 6/14/1905 | | | PGR2017-00012 (Exhibit 1042) -CTFA Cosmetic Ingredient Handbook | CP, H, MIL |
| 4576 | 6/13/1905 | | | PGR2017-00012 (Exhibit 1043) -Daniel C. Harris, Quantitative Chemical Analysis | H, MIL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4577 | 10/15/2013 | | | PGR2017-00012 (Exhibit 1044) -U.S. Patent 8,556,992 | H, MIL |
| 4578 | | | | PGR2017-00012 (Exhibit 1047) -Signed Protective Order Acknowledgments- Arun Nandagiri | H, MIL, REL |
| 4579 | | | | PGR2017-00012 (Exhibit 2001) -Claims Listing | MIL |
| 4580 | 1/5/2017 | | | PGR2017-00012 (Exhibit 2002)Complaint filed January 5, 2017, in Liqwd, Inc. et al. v. L'Oral USA, Inc., et al., Case No. 1:17-cv-00014-SLR (D. Del.) | MIL |
| 4581 | 1/18/2017 | | | PGR2017-00012 (Exhibit 2003)Plaintiffs Opening Brief in Support of Motion for Preliminary Injunction, Redacted-Public version, filed January 18, 2017, in Liqwd, Inc. et al. v. L'Oral USA, Inc., et al., Case No. 1:17-cv-0014-SLR (D. Del.) | BE, CP, H, MIL, REL |
| 4582 | 8/25/2016 | | | PGR2017-00012 (Exhibit 2004) - August 25, 2016 Third Party Submission regarding Singleton U.S. Patent No. 5,221,286 and Berkemer German Laid-Open Application DE 1 220 969 | H, MIL |
| 4583 | 8/29/2016 | | | PGR2017-00012 (Exhibit 2005) - August 29, 2016 Third Party Submission regarding Ogawa U.S. Patent No. 7,044,986 | H, MIL |
| 4584 | 9/14/2016 | | | PGR2017-00012 (Exhibit 2065) - September 14, 2016 Third Party Submission regarding Singleton U.S. Patent No. 5,221,286, Kitabata U.S. Patent Publ. No. 2002/0189034, and Berkemer German Laid-Open Application DE 1 220 969 | H, MIL |
| 4585 | 9/23/2016 | | | PGR2017-00012 (Exhibit 2007) - September 23, 2016 Third Party Submission regarding Wahler PCT Publication No. WO2014/207097 | H, MIL |
| 4586 | 10/13/2016 | | | PGR2017-00012 (Exhibit 2008) - October 13, 2016 Supplemental Notice of Allowance | H, MIL |
| 4587 | 11/22/2016 | | | PGR2017-00012 (Exhibit 2009) - Complaint filed November 22, 2016, in Liqwd, Inc. v. L'Oral USA, Inc., et al., Case No. 2:16-cv-08708 (C.D. Cal.) | MIL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4588 | 7/6/2017 | | | PGR2017-00012 (Exhibit 2011) - Order dated July 6, 2017 denying preliminary injunction in Liqwd, Inc. et al. v. L'Oral USA, Inc., et al., Case No. 1:17-cv-0014-SLR (D. Del.) | H, MIL, REL, 403 |
| 4589 | | | | PGR2017-00012 (Exhibit 2013) - Advertisements for Copy Products (Matrix Bond Ultim8, L'Oral Professionnel Smartbond, and Redken pH-Bonder) mentioning maleic acid | COMP, MIL |
| 4590 | 2/13/2017 | | | PGR2017-00012 (Exhibit 2014) - Order dated February 13, 2017 setting discovery in connection with preliminary injunction motion in Liqwd, Inc. et al. v. L'Oral USA, Inc., et al., Case No. 1:17-cv-0014-SLR (D. Del.). | H, MIL, REL |
| 4591 | 5/2/2017 | | | PGR2017-00012 (Exhibit 2015) - Patent Owners 1st Amended Rule 30(b)(6) Deposition Notice dated May 2, 2017 in Liqwd, Inc. et al. v. L'Oral USA, Inc., et al., Case No. 1:17-cv-0014-SLR (D. Del.) | H, MIL, REL |
| 4592 | 8/13/2017 | | | PGR2017-00012 (Exhibit 2016) - E-mail string including August 13, 2017 e-mail from Petitioners Lead Counsel refusing to provide additional discovery requested by Patent Owners Counsel. | H, MIL, REL |
| 4593 | 10/17/2017 | | | PGR2017-00012 (Exhibit 2021) - Declaration of Thomas DISPENZA | H, MIL |
| 4594 | | | | PGR2017-00012 (Exhibit 2024) - Ex. 2024 Utility application, filed May 15, 2015 (U.S.S.N. 14/713,885) | MIL |
| 4595 | 1/17/2017 | | | PGR2017-00012 (Exhibit 2026) - Borish C.V. | MIL, REL |
| 4596 | 6/19/1905 | | | PGR2017-00012 (Exhibit 2027) - Brown Chapter (1997) | H, MIL |
| 4597 | 4/24/2013 | | | PGR2017-00012 (Exhibit 2028) - FMC Webinar, The Science of Persulfate Activation (April 24, 2013) | H, MIL |
| 4598 | 6/23/1905 | | | PGR2017-00012 (Exhibit 2029) - Bolduc, C. et al., Hair Care Products - Waving, Straightening, Conditioning, and Coloring | H, MIL |
| 4599 | 7/4/1905 | | | PGR2017-00012 (Exhibit 2030) - Robbins Chapter 6 -- Interactions of Shampoo and Conditioner In... | H, MIL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4600 | | | | PGR2017-00012 (Exhibit 2031) - Redken Curvaeous Conditioner Label | MIL |
| 4601 | | | | PGR2017-00012 (Exhibit 2032) - Matrix Biolage Advanced Shampoo Label | MIL |
| 4602 | | | | PGR2017-00012 (Exhibit 2033) - Pureology Conditioner Label | MIL |
| 4603 | 1/14/2011 | | | PGR2017-00012 (Exhibit 2034) - Maleic Acid Safety Data Sheet Vertellus 2011 | MIL |
| 4604 | | | | PGR2017-00012 (Exhibit 2035) - Matrix Bond Ultim8 Bottle Instructions & Ingredients (2016) | MIL |
| 4605 | | | | PGR2017-00012 (Exhibit 2036) - Matrix Bond Ultim8 Package Bond Protecting System Directions (Nov. 2016) | MIL |
| 4606 | 12/16/2016 | | | PGR2017-00012 (Exhibit 2037) - Analyze, Inc. Lab Report re Maleic Acid | MIL |
| 4607 | | | | PGR2017-00012 (Exhibit 2041) - Redken pH-BONDER #1 bond protecting additive Instructions and Ingredient List | MIL |
| 4608 | | OLA_0000027279 | OLA_0000027284 | PGR2017-00012 (Exhibit 2042) - Redken ph-Bonder Package Instructions | MIL |
| 4609 | | | | PGR2017-00012 (Exhibit 2043) - L'Oreal Professionel Smartbond Step 1 Bottle Label | MIL |
| 4610 | | | | PGR2017-00012 (Exhibit 2044) - L'Oral Professionnel Smartbond Package Instructions | MIL |
| 4611 | 7/4/1905 | | | PGR2017-00012 (Exhibit 2045) - Robbins Chapter 5 - Bleaching and Oxidation of Human Hair (Chem... | H, MIL |
| 4612 | 10/6/2017 | | | PGR2017-00012 (Exhibit 2046) - Nandagiri Deposition Transcript from Oct. 6, 2017 | H, MIL |
| 4613 | 2/28/2018 | | | PGR2017-00012 (Exhibit 2051) - Printout of website http://Brialab.com (dated February 28, 2018) | H, MIL, REL |
| 4614 | 11/2001 | | | PGR2017-00012 (Exhibit 2052) - H.N. Po et al., The Henderson-Hasselbalch Equation: Its History and Limitation, J. of Chem. Educ., 78 (11):1499-1503 (2001) | H, MIL, REL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4615 | 10/12/2017 | | | PGR2017-00012 (Exhibit 2053) - Deposition transcript of David Sherman, dated October 12, 2017 in PGR 201700012 | H, MIL |
| 4616 | 10/11/2017 | | | PGR2017-00012 (Exhibit 2054) - Deposition transcript of Jina Bang, dated October 11, 2017 in PGR 201700012 | H, MIL |
| 4617 | 3/2/2018 | | | PGR2017-00012 (Exhibit 2055) - Deposition transcript of Arun Nandagiri, dated March 2, 2018 in PGR 201700012 | H, MIL |
| 4618 | 3/14/2018 | | | PGR2017-00012 (Exhibit 2057) - Deposition transcript of Arun Nandagiri, dated March 14, 2018 in PGR 201700012 | H, MIL |
| 4619 | 12/27/2017 | | | PGR2017-00012 (Exhibit 2058) - Signature page and errata of Thomas Dispenza for December 27, 2017 deposition transcript | H, MIL |
| 4620 | 1/22/2018 | | | PGR2017-00012 (Exhibit 2059) - Signature page and errata of Edward Borish, Ph.D. for January 5, 2018 deposition transcript | H, MIL |
| 4621 | 11/13/2017 | | | PGR2017-00012 (Exhibit 2062) - Patent Owners Submission of Supplemental Evidence Under 37 C.F.R. 42.64(b)(2), served November 13, 2017 | H, MIL, REL |
| 4622 | 11/13/2017 | | | PGR2017-00012 (Exhibit 2063) - Blackburn Declaration Regarding Exhibits 2028, 2031 2037, and 2041 2044, served November 13, 2017 | H, MIL |
| 4623 | | | | PGR2017-00012 (Exhibit 2064) - Redken pH - BONDER Package Instructions | MIL |
| 4624 | 9/26/2017 | | | PGR2017-00012 (Exhibit 3002) - | MIL, REL |
| 4625 | 2/6/2018 | | | PGR2017-00012 (Exhibit 3003) - | MIL, REL, 403 |
| 4626 | 2/1/2018 | | | PGR2018-00025 (Paper 1) - LOREAL USA, INC.'s POWER OF ATTORNEY | MIL, REL |
| 4627 | 2/1/2018 | | | PGR2018-00025 (Paper 2) -MOTION TO SEAL PETITION AND RELATED EXHIBITS 1036 AND 1037 AND FOR PROTECTIVE ORDER | H, MIL, REL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4628 | 2/1/2018 | | | PGR2018-00025 (Paper 4) -Redacted PETITION FOR POST-GRANT REVIEW OF U.S. PATENT 9,668,954 | BE, CP, H, MIL, REL, 403 |
| 4629 | 2/21/2018 | | | PGR2018-00025 (Paper 5) -Notice of Accord Filing Date | MIL, REL |
| 4630 | 2/22/2018 | | | PGR2018-00025 (Paper 6) -Patent Owner Rule 42.10(b) Power of Attorney | MIL, REL |
| 4631 | 2/22/2018 | | | PGR2018-00025 (Paper 7) -Patent Owner Rule 42.8(a)(2) Mandatory Notices | H, MIL, REL |
| 4632 | 4/20/2018 | | | PGR2018-00025 (Paper 8) -Patent Owner Updated 42.8(a)(3) and (b)(2) Mandatory Disclosures | H, MIL, REL |
| 4633 | 7/12/2018 | | | PGR2018-00025 (Paper 10) -Petitioners Updated Mandatory Notices | H, MIL, REL |
| 4634 | 8/24/2018 | | | PGR2018-00025 (Paper 14) -Patent Owner Rule 42.64(b)(1) Evidence Objections | H, MIL, REL |
| 4635 | 8/24/2018 | | | PGR2018-00025 (Paper 15) -Petitioners Objections to Patent Owners Evidence | H, MIL, REL |
| 4636 | 10/2/2018 | | | PGR2018-00025 (Paper 16) -ORDER Conduct of the Proceeding | H, MIL, REL |
| 4637 | 10/10/2018 | | | PGR2018-00025 (Paper 17) -PETITIONERS UPDATED EXHIBIT LIST | H, MIL, REL |
| 4638 | 10/10/2018 | | | PGR2018-00025 (Paper 18) -STIPULATION AND PROPOSED MODIFIED PROTECTIVE ORDER | H, MIL, REL |
| 4639 | 10/12/2018 | | | PGR2018-00025 (Paper 19) -Patent Owner Notice of Deposition of R. Randall Wickett, Ph.D. | MIL, REL |
| 4640 | 10/12/2018 | | | PGR2018-00025 (Paper 20) -Patent Owner Amended Notice of Deposition of R. Randall Wickett, Ph.D. | MIL, REL |
| 4641 | 10/17/2018 | | | PGR2018-00025 (Paper 21) -Granting Parties' Request For Modified Protective Order 35 U.S.C. § 326; 37 C.F.R. §§ 42.14, 42.54 | MIL, REL |
| 4642 | 10/30/2018 | | | PGR2018-00025 (Paper 22) -Order Conduct of the Proceeding | H, MIL, REL |
| 4643 | 11/20/2018 | | | PGR2018-00025 (Paper 24) -Patent Owner's Motion to Seal (1) Patent Owner's Response (Paper 23) and (2) Related Exhibits 2046, 2061, and 2067-2072 | H, MIL, REL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4644 | 11/21/2018 | | | PGR2018-00025 (Paper 25) -Patent Owner's Updated Exhibit List | H, MIL, REL |
| 4645 | 11/26/2018 | | | PGR2018-00025 (Paper 26) -Petitioners Objections to Patent Owners Evidence | H, MIL, REL |
| 4646 | 12/12/2018 | | | PGR2018-00025 (Paper 27) -Joint Statement to the Board for December 13, 2018 Conference | H, MIL, REL, 403 |
| 4647 | 12/14/2018 | | | PGR2018-00025 (Paper 28) -ORDER - Conduct of the Proceeding; Granting Petitioner Authorization to File Motion 37 C.F.R. 42.5; 37 C.F.R. 42.20(b) | H, MIL, REL, 403 |
| 4648 | 12/21/2018 | | | PGR2018-00025 (Paper 29) -Joint Stipulation Regarding Protective Order Violations | H, MIL, REL, 403 |
| 4649 | 12/21/2018 | | | PGR2018-00025 (Paper 30) -Petitioner's Updated Exhibit List | H, MIL, REL |
| 4650 | 12/21/2018 | | | PGR2018-00025 (Paper 31) -Petitioner's Notice of Deposition of Edward Borish, Ph.D. | MIL, REL |
| 4651 | 12/21/2018 | | | PGR2018-00025 (Paper 32) -Petitioner's Notice of Deposition of Dean Christal | MIL, REL |
| 4652 | 1/7/2019 | | | PGR2018-00025 (Paper 33) -Order - Conduct of the Proceeding Granting Petitioner Authorization to File Motion for Additional Discovery | H, MIL, REL |
| 4653 | 1/7/2019 | | | PGR2018-00025 (Paper 34) -Petitioners Request for Additional Discovery | H, MIL, REL |
| 4654 | 1/9/2019 | | | PGR2018-00025 (Paper 35) -Petitioners Updated Exhibit List | H, MIL, REL |
| 4655 | 1/10/2019 | | | PGR2018-00025 (Paper 36) -Petitioner's Contingent Notice of Deposition of Eric Pressly | MIL, REL |
| 4656 | 1/10/2019 | | | PGR2018-00025 (Paper 37) -Petitioner's Updated Notice of Deposition of Edward Borish | MIL, REL |
| 4657 | 1/10/2019 | | | PGR2018-00025 (Paper 38) -Petitioner's Updated Notice of Deposition of Dean Christal | MIL, REL |
| 4658 | 1/14/2019 | | | PGR2018-00025 (Paper 39) -Patent Owner's Opposition to Petitioner's Motion for Additional Discovery | H, MIL, REL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4659 | 1/17/2019 | | | PGR2018-00025 (Paper 40) -Patent Owner's Opposition to Petitioner's Motion for Additional Discovery | H, MIL, REL |
| 4660 | 1/18/2019 | | | PGR2018-00025 (Paper 41) -Petitioner's Reply in Support Of Petitioners Motion for Additional Discovery Under 37 C.F.R. 42.51(B)(2) | H, MIL, REL |
| 4661 | 1/25/2019 | | | PGR2018-00025 (Paper 42) -Decision Granting Petitioners Motion for Additional Discovery. | H, MIL, REL, 403 |
| 4662 | 1/25/2019 | | | PGR2018-00025 (Paper 43) -PETITIONERS NOTICE OF DEPOSITION OF ERIC PRESSLY | MIL, REL |
| 4663 | 2/15/2019 | | | PGR2018-00025 (Paper 44) -Petitioner's updated Exhibit List | H, MIL, REL |
| 4664 | 2/15/2019 | | | PGR2018-00025 (Paper 45) -Motion to Seal Petitioner's Reply and Related Exhibits | H, MIL, REL |
| 4665 | 2/22/2019 | | | PGR2018-00025 (Paper 47) -Petitioner's Updated Exhibit List | H, MIL, REL |
| 4666 | 2/25/2019 | | | PGR2018-00025 (Paper 48) -Patent Owner Liqwd, Inc's Objections to Petitioner's Reply Evidence under 37 CFR 42.64 (b)(1) | H, MIL, REL |
| 4667 | 2/26/2019 | | | PGR2018-00025 (Paper 49) -Patent Owner Liqwd, Inc.'s Notice of Deposition of R. Randall Wickett, Ph.D. | MIL, REL |
| 4668 | 2/27/2019 | | | PGR2018-00025 (Paper 50) -Petitioner's Updated Exhibit List | H, MIL, REL |
| 4669 | 3/7/2019 | | | PGR2018-00025 (Paper 51) -Order - Conduct of the Proceeding - 37 CFR 42.5 | H, MIL, REL |
| 4670 | 3/11/2019 | | | PGR2018-00025 (Paper 52) -Petitioner's Supplemental Brief on 37 C.F.R. 42.23(b) | H, MIL, REL |
| 4671 | 3/18/2019 | | | PGR2018-00025 (Paper 53) -Patent Owner's Supplemental Brief regarding 37 C.F.R. 42.23(b) | H, MIL, REL |
| 4672 | 3/22/2019 | | | PGR2018-00025 (Paper 54) -Patent Owner's Oral Hearing Request | H, MIL, REL |
| 4673 | 3/22/2019 | | | PGR2018-00025 (Paper 57) -Petitioner Request for Oral Argument | H, MIL, REL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4674 | 3/26/2019 | | | PGR2018-00025 (Paper 59) -Patent Owner's Motion to Seal Papers 55 and 56 and Exhibit 2080 | H, MIL, REL |
| 4675 | 3/26/2019 | | | PGR2018-00025 (Paper 60) -Patent Owner's Authorized Sur-Reply to Petitioner's Reply | H, MIL, REL |
| 4676 | 3/29/2019 | | | PGR2018-00025 (Paper 62) -Motion to Seal Petitioner's Motion to Exclude Evidence Pursuant to 37 C.F.R. 42.64(c) | H, MIL, REL |
| 4677 | 3/29/2019 | | | PGR2018-00025 (Paper 63) -Petitioner's Objections to Patent Owners Evidence | H, MIL, REL |
| 4678 | 3/29/2019 | | | PGR2018-00025 (Paper 64) -Opposition to Patent Owner's Motion to Exclude Evidence | H, MIL, REL, 403 |
| 4679 | 3/29/2019 | | | PGR2018-00025 (Paper 65) -Petitioner's Response to Patent Owner's Motion for Observations | H, MIL, REL |
| 4680 | 4/1/2019 | | | PGR2018-00025 (Paper 66) -Order Authorizing filling of Crim Deposition | H, MIL, REL |
| 4681 | 4/3/2019 | | | PGR2018-00025 (Paper 68) -ORDER Granting Request for Oral Argument | H, MIL, REL |
| 4682 | 4/3/2019 | | | PGR2018-00025 (Paper 69) -Liqwd's Motion to Seal Exhibit 2084 | H, MIL, REL |
| 4683 | 4/3/2019 | | | PGR2018-00025 (Paper 70) -Patent Owner's Updated Exhibit List | H, MIL, REL |
| 4684 | 4/4/2019 | | | PGR2018-00025 (Paper 71) -Patent Owner's Updated Exhibit List | H, MIL, REL |
| 4685 | 4/4/2019 | | | PGR2018-00025 (Paper 72) -Petitioner's Updated Exhibit List. | H, MIL, REL |
| 4686 | 4/4/2019 | | | PGR2018-00025 (Paper 75) -Order Granting Request for Oral Argument | H, MIL, REL |
| 4687 | 6/6/2017 | | | PGR2018-00025 (Exhibit 1001) - U.S. Patent No. 9,668,954 to Pressly | No Objection |
| 4688 | | | | PGR2018-00025 (Exhibit 1003) - German Patent Publication DE 1220969 | H, MIL |
| 4689 | | | | PGR2018-00025 (Exhibit 1004) - Certified translation of German Patent Publication DE 1220969 (Berkemer) | H, MIL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4690 | | | | PGR2018-00025 (Exhibit 1005) - Korean Patent Publication KR2006-0059564 | H, MIL |
| 4691 | 6/2/2006 | | | PGR2018-00025 (Exhibit 1006) - Certified translation of Korean Patent Publication KR2006-0059564 (KR564) | H, MIL, REL |
| 4692 | 3/19/2002 | | | PGR2018-00025 (Exhibit 1007) - U.S. Patent No. 6,358,502 to Tanabe | H, MIL |
| 4693 | 2/7/2013 | | | PGR2018-00025 (Exhibit 1008) - U.S. Patent Publication No. 2013/0034515 to Stone | H, MIL |
| 4694 | 2/2/2012 | | | PGR2018-00025 (Exhibit 1009) - U.S. Patent Publication No. 2012/0024309 to Pratt | H, MIL |
| 4695 | 5/16/2006 | | | PGR2018-00025 (Exhibit 1010) - U.S. Patent No. 7,044,986 to Ogawa | H, MIL |
| 4696 | 6/28/1905 | | | PGR2018-00025 (Exhibit 1011) - Thomas Clausen et al., Hair Preparations | H, MIL |
| 4697 | 1/31/2018 | | | PGR2018-00025 (Exhibit 1012) - DECLARATION OF R. RANDALL WICKETT, PH.D. | H, MIL |
| 4698 | | | | PGR2018-00025 (Exhibit 1013) - Curriculum Vitae of R. Randall Wickett, Ph.D. | H, MIL, REL |
| 4699 | 6/9/2011 | | | PGR2018-00025 (Exhibit 1015) - Y. K. Kammath & C. Robbins, Hair breakage by combing and brushingA comment on: T. A. Evans and K. Park, A statistical analysis of hair Breakage. II. Repeated Grooming Experiments | H, MIL |
| 4700 | 7/1/1905 | | | PGR2018-00025 (Exhibit 1017) - RR Wickett & J Jachowicz, Measuring Hair in Handbook of Cosmetic Science and Technology, 694-724 (Andre O. Barel et al. eds., 3d ed. 2009) | H, MIL |
| 4701 | | | | PGR2018-00025 (Exhibit 1020) - Provisional Application 61/994,709 | MIL |
| 4702 | 6/14/1905 | | | PGR2018-00025 (Exhibit 1023) - CTFA Cosmetic Ingredient Handbook (John A. Wenninger et al. eds., 2d ed. 1992) | CP, H, MIL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4703 | 2009 | | | PGR2018-00025 (Exhibit 1025) - Trefor A. Evans, Fatigue testing of hairA statistical approach to hair breakage, 60 J. Cosmet. Sci. 599-616 (2009) | H, MIL, REL |
| 4704 | 1991 | | | PGR2018-00025 (Exhibit 1027) - Daniel C. Harris, Quantitative Chemical Analysis (3d ed. 1991) | H, MIL |
| 4705 | | | | PGR2018-00025 (Exhibit 1028) - Korean Patent Publication KR2003-0003970 | H, MIL |
| 4706 | 1/14/2003 | | | PGR2018-00025 (Exhibit 1029) - Certified Translation of Korean Patent Publication KR2003-0003970 | H, MIL |
| 4707 | | | | PGR2018-00025 (Exhibit 1030) - As-filed specification of U.S. Patent Application No. 14/713,885 | MIL |
| 4708 | | | | PGR2018-00025 (Exhibit 1031) - As-filed specification of U.S. Patent Application No. 15/087,415 | MIL |
| 4709 | | | | PGR2018-00025 (Exhibit 1032) - As-filed specification of U.S. Patent Application No. 15/290,593 | MIL |
| 4710 | | | | PGR2018-00025 (Exhibit 1033) - As-filed specification of U.S. Patent Application No. 15/415,464 | MIL |
| 4711 | 6/22/1993 | | | PGR2018-00025 (Exhibit 1034) - U.S. Patent No. 5,221,286 to Singleton | H, MIL |
| 4712 | 12/31/2014 | | | PGR2018-00025 (Exhibit 1035) - PCT Publication WO 2014/207097 to Wahler | H, MIL |
| 4713 | 12/13/2017 | | | PGR2018-00025 (Exhibit 1038) - Transcript of Deposition of Thomas Dispenza | H, MIL |
| 4714 | 1/5/2018 | | | PGR2018-00025 (Exhibit 1039) - Transcript of Deposition of Edward T. Borish, Ph.D | H, MIL |
| 4715 | 2/20/2007 | | | PGR2018-00025 (Exhibit 1041) - U.S. Patent No. 7,179,302 | H, MIL |
| 4716 | 1/10/1978 | | | PGR2018-00025 (Exhibit 1042) - U.S. Patent No. 4,067,345 | H, MIL |
| 4717 | 2/6/1979 | | | PGR2018-00025 (Exhibit 1043) - U.S. Patent No. 4,138,478 | H, MIL |
| 4718 | 2/5/2015 | | | PGR2018-00025 (Exhibit 1044) - U.S. Patent Publication No. 2015/0034119 | H, MIL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4719 | 1/23/2018 | | | PGR2018-00025 (Exhibit 1045) - Table 3.4, pKa values of some amino acids - Biochemistry NCBI Bookshelf | CP, H, MIL |
| 4720 | | | | PGR2018-00025 (Exhibit 1046) - C.R. Robbins, Chemical and Physical Behavior of Human Hair, DOI 10.1007/978-3-642-25611-0_2, # Springer-Verlag Berlin Heidelberg 2012 | H, MIL |
| 4721 | 9/27/2018 | | | PGR2018-00025 (Exhibit 1047) - Transcript of September 27, 2018 Teleconference | H, MIL, REL |
| 4722 | | | | PGR2018-00025 (Exhibit 1048) - Public version of Exhibit 1036- Laboratory Notebook | BE, CP, H, MIL, REL, 403 |
| 4723 | 12/6/2018 | | | PGR2018-00025 (Exhibit 1049) - Transcript of December 6, 2018, Teleconference | H, MIL, REL |
| 4724 | 12/13/2018 | | | PGR2018-00025 (Exhibit 1050) - Transcript of December 13, 2018, Teleconference | H, MIL, REL |
| 4725 | 1/4/2019 | | | PGR2018-00025 (Exhibit 1051) - Ex. 1051 Teleconference_01042019 | H, MIL, REL |
| 4726 | 10/8/2015 | | | PGR2018-00025 (Exhibit 1052) - Olaplex Facebook Post- A Letter from Dean Christal | H, MIL, REL |
| 4727 | 1/29/2019 | | | PGR2018-00025 (Exhibit 1055) - Transcript of Deposition of Eric Pressly, Ph.D | H, MIL, REL |
| 4728 | 1/29/2019 | | | PGR2018-00025 (Exhibit 1056) - Affidavit of Jeffrey Jaime | H, MIL, REL, 403 |
| 4729 | 1/29/2019 | | | PGR2018-00025 (Exhibit 1057) - Affidavit of Jose Manuel M. Martinez | H, MIL, REL, 403 |
| 4730 | 1/29/2019 | | | PGR2018-00025 (Exhibit 1058) - Affidavit of Anthony Fuller | H, MIL, REL, 403 |
| 4731 | | | | PGR2018-00025 (Exhibit 1059) - MINTEL database entry- Be Your Mood Permanent Hair Colour | FO, H, MIL |
| 4732 | | | | PGR2018-00025 (Exhibit 1060) - MINTEL database entry- Catzy Hair Colourant | FO, H, MIL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4733 | 6/19/1905 | | | PGR2018-00025 (Exhibit 1063) - V. Signori & D.M. Lewis, FTIR investigation of the damage produced on human hair by weathering and bleaching processes: implementation of different sampling techniques and data processing, 19 Intl J. Cosmetic Sci. 1, 1-13 (1997). | H, MIL |
| 4734 | 1/30/2019 | | | PGR2018-00025 (Exhibit 1064) - Email string regarding scheduling of deposition of Eric Pressly, Ph.D. | H, MIL, REL |
| 4735 | 7/4/1905 | | | PGR2018-00025 (Exhibit 1065) - Practical Modern Hair Science i-ii, 117-156 (Trefor Evans & R. Randall Wickett eds., 2012). | H, MIL |
| 4736 | 2/15/2019 | | | PGR2018-00025 (Exhibit 1066) - REDACTED_Petioner's Reply to Patent Owner Response | BE, CP, H, MIL, REL |
| 4737 | 2/15/2019 | | | PGR2018-00025 (Exhibit 1067) - REDACTED Version of Exhibit 1062-Reply Declaration of R. Randall Wickett, Ph.D | BE, H, MIL |
| 4738 | 2/1/2019 | | | PGR2018-00025 (Exhibit 1068) - Redacted version of Exhibit 1053-Transcript of Deposition of Edward T. Borish, Ph.D | BE, H, MIL |
| 4739 | 3/22/2019 | | | PGR2018-00025 (Exhibit 1073) - Redacted Version of Paper 58- Petitioner's Motion to Exclude Evidence Pursuant to 37 C.F.R. 42.64(c) | BE, CP, H, MIL, REL |
| 4740 | | | | PGR2018-00025 (Exhibit 2001) -Listing of claims 1-16 and 18-30 of U.S. Patent No. 9,668,954 | MIL |
| 4741 | 11/22/2016 | | | PGR2018-00025 (Exhibit 2002) -Pressly et al. U.S. Patent No. 9,498,419 | MIL |
| 4742 | 1/16/2018 | | | PGR2018-00025 (Exhibit 2003) -Liqwd v. L'Oreal Federal Circuit decision, dated January 26, 2018 | MIL, REL, 403 |
| 4743 | 4/26/2018 | | | PGR2018-00025 (Exhibit 2004) -Liqwd v. L'Oreal UK Trial Testimony (day 3) | CP, MIL, REL |
| 4744 | 1997 | | | PGR2018-00025 (Exhibit 2005) -Brown Chapter 7 (1997) | H, MIL |
| 4745 | 2001 | | | PGR2018-00025 (Exhibit 2006) -Bolduc Article (2001) | H, MIL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4746 | 2012 | | | PGR2018-00025 (Exhibit 2007) -Robbins Chapter 5 (2012) | H, MIL |
| 4747 | 12/19/2002 | | | PGR2018-00025 (Exhibit 2008) -Kitabata U.S. Patent Publ. | H, MIL |
| 4748 | 7/4/1905 | | | PGR2018-00025 (Exhibit 2009) -Robbins Chapter 9 (2012) | H, MIL |
| 4749 | | | | PGR2018-00025 (Exhibit 2010) -Joico bleach powder label | MIL |
| 4750 | | | | PGR2018-00025 (Exhibit 2011) -Clairol Professional Basic White bleach powder label | MIL |
| 4751 | 2/17/2011 | | | PGR2018-00025 (Exhibit 2012) -Onyebuagu et al. U.S. Patent Publ. 2011-0038818 | H, MIL |
| 4752 | 3/31/2016 | | | PGR2018-00025 (Exhibit 2013) -March 31, 2016 Prel. Amdt. from '415 application file history | H, MIL |
| 4753 | 1/24/2017 | | | PGR2018-00025 (Exhibit 2014) -January 24, 2017 Prel. Amdt. from '593 application file history | H, MIL |
| 4754 | 8/25/2016 | | | PGR2018-00025 (Exhibit 2017) -August 25, 2016 Third Party Submission from '415 application file history | H, MIL |
| 4755 | 9/14/2016 | | | PGR2018-00025 (Exhibit 2018) -September 14, 2016 Third Party Submission from '415 application file history | H, MIL |
| 4756 | 12/12/2017 | | | PGR2018-00025 (Exhibit 2019) -December 12, 2017 Certificate of Correction | MIL |
| 4757 | 9/26/2016 | | | PGR2018-00025 (Exhibit 2020) -September 26, 2016 Notice of Allowance from '415 application file history | H, MIL |
| 4758 | 1/30/2017 | | | PGR2018-00025 (Exhibit 2021) -Arun Nandagiri declaration dated January 30, 2017 from PGR2017-00012 | H, MIL |
| 4759 | 7/4/1905 | | | PGR2018-00025 (Exhibit 2022) -Robbins Chapter 6 (2012) | H, MIL |
| 4760 | | | | PGR2018-00025 (Exhibit 2024) -Matrix Light Master bleach label | MIL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4761 | | | | PGR2018-00025 (Exhibit 2025) -Redken Flash Lift bleach label | MIL |
| 4762 | | | | PGR2018-00025 (Exhibit 2026) -Redken Up to 7 bleach label | MIL |
| 4763 | | | | PGR2018-00025 (Exhibit 2027) -L'Oreal Quick Blue bleach label | MIL |
| 4764 | 2010 | | | PGR2018-00025 (Exhibit 2028) -Evans article (Nov./Dec. 2010) | H, MIL |
| 4765 | 1/31/2018 | | | PGR2018-00025 (Exhibit 2031) -Wickett Declaration dated January 31, 2018 from PGR2018-00023 | H, MIL |
| 4766 | | | | PGR2018-00025 (Exhibit 2032) - Borish Curriculum Vitae | MIL, REL |
| 4767 | 2005 | | | PGR2018-00025 (Exhibit 2033) -Zviak/Millquant Chapter 7: Hair Bleaching from THE SCIENCE OF HAIR CARE (Bouillon C, Wilkinson J, eds., 2d edn. 2005). | H, MIL |
| 4768 | | | | PGR2018-00025 (Exhibit 2034) - Felthouse et al, Maleic Anhydride, Maleic Acid, and Fumaric Acid from the KIRKOTHMER ENCYCLOPEDIA OF CHEMICAL TECHNOLOGY (first published October 18, 2001) | H, MIL |
| 4769 | 3/5/2007 | | | PGR2018-00025 (Exhibit 2035) - Final Report on the Safety Assessment of Maleic Acid, Intl J. of Toxicology, 26 (Suppl. 2):125130 (2007) | H, MIL |
| 4770 | 1/14/2011 | | | PGR2018-00025 (Exhibit 2036) - Maleic Acid Safety Data Sheet Vertellus (2011) | MIL |
| 4771 | 10/20/2015 | | | PGR2018-00025 (Exhibit 2037) - October 20, 2015 Interview Summary from 885 appl. file history | H, MIL |
| 4772 | 10/26/2015 | | | PGR2018-00025 (Exhibit 2038) - October 29, 2015 Pressly declaration from 885 appl. file history | H, MIL |
| 4773 | 12/28/2015 | | | PGR2018-00025 (Exhibit 2039) - December 28, 2015 Notice of Allowance from 885 appl. file history | H, MIL |
| 4774 | 8/6/2018 | | | PGR2018-00025 (Exhibit 2040) - August 6, 2018 Amendment from 455 appl. file history. | H, MIL |
| 4775 | 8/3/2018 | | | PGR2018-00025 (Exhibit 2041) - August 6, 2018 Pressly Declaration from 455 application file history | H, MIL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4776 | 8/10/2018 | | | PGR2018-00025 (Exhibit 2042) - August 10, 2017 Notice of Allowance from 455 application file history | H, MIL |
| 4777 | 10/18/2018 | | | PGR2018-00025 (Exhibit 2043) -Excerpt from YOUTUBE video entitled How Does SMARTBOND technology work? By L'Oral Professionnel, available at: https://youtu.be/LMyB5fiel1g?t=31 [last visited 10/18/2018] | MIL |
| 4778 | | | | PGR2018-00025 (Exhibit 2044) - Redken pH-Bonder Technical Guide (August 2016) | MIL |
| 4779 | | | | PGR2018-00025 (Exhibit 2045) - Matrix Bond Ultim8 Techniques Guide | MIL |
| 4780 | | | | PGR2018-00025 (Exhibit 2047) -Matrix Bond Ultim8 bottle instructions | MIL |
| 4781 | | | | PGR2018-00025 (Exhibit 2048) -Matrix Bond Ultim8 package instructions | MIL |
| 4782 | 12/16/2016 | | | PGR2018-00025 (Exhibit 2049) - Lab Report from Analyze, Inc. | MIL |
| 4783 | | | | PGR2018-00025 (Exhibit 2050) - Redken pH-Bonder bottle instructions | MIL |
| 4784 | | | | PGR2018-00025 (Exhibit 2051) -Redken pH-Bonder package instructions | MIL |
| 4785 | | | | PGR2018-00025 (Exhibit 2052) - L'Oral Professionnel Smartbond bottle instructions | MIL |
| 4786 | | | | PGR2018-00025 (Exhibit 2053) - L'Oral Professionnel Smartbond package instructions | MIL |
| 4787 | 9/18/2018 | | | PGR2018-00025 (Exhibit 2054) - Pressly et al. U.S. Patent No. 10,076,478 | MIL |
| 4788 | 1981 | | | PGR2018-00025 (Exhibit 2055) - Wolfram, The Reactivity of Human Hair. A Review in HAIR RESEARCH (1981) | H, MIL |
| 4789 | 2005 | | | PGR2018-00025 (Exhibit 2056) - Dubief et al., Chapter 4 Hair Care Products from THE SCIENCE OF HAIR CARE (Bouillon C, Wilkinson J, eds., 2d edn. 2005). | H, MIL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4790 | 10/6/2017 | | | PGR2018-00025 (Exhibit 2057) - Deposition Transcript of Arun Nandagiri dated October 6, 2017 from PGR201700012 | H, MIL |
| 4791 | 6/2/2018 | | | PGR2018-00025 (Exhibit 2058) - Types of Professional Haircolor Services (Redken), https://www.redken.com/haircolor/types-of-professional-haircolor-services (obtained June 2, 2018) | H, MIL |
| 4792 | 1998 | | | PGR2018-00025 (Exhibit 2059) - Corbett, Hair Colorants: Chemistry and Toxicology, Cosmetic Science Monographs Number 2 (1998) | H, MIL |
| 4793 | 1976 | | | PGR2018-00025 (Exhibit 2060) -Corbett, The Chemistry of Hair-care Products, J. Socy of Dyers and Colourists 92(8):285303 (1976) | H, MIL |
| 4794 | 2005 | | | PGR2018-00025 (Exhibit 2062) - Franbourg et al., Chapter 12 Evaluation of Product Efficacy from THE SCIENCE OF HAIR CARE (Bouillon C, Wilkinson J, eds., 2d edn. 2005). | H, MIL |
| 4795 | 2007 | | | PGR2018-00025 (Exhibit 2063) - Harris, Chapter 9, Monoprotic Acid-Base Equilibria from QUANTITATIVE CHEMICAL ANALYSIS (7th ed. 2007). | H, MIL |
| 4796 | 10/24/2018 | | | PGR2018-00025 (Exhibit 2064) -Public Version of October 24, 2018 Wickett Deposition Transcript | BE, H, MIL |
| 4797 | | | | PGR2018-00025 (Exhibit 2065) -CRC Handbook of Chemistry & Physics (85th Ed. 2005) | CP, H, MIL, REL |
| 4798 | 2007 | | | PGR2018-00025 (Exhibit 2066) -Harris, Chapter 10, Polyprotic Acid-Base Equilibria from QUANTITATIVE CHEMICAL ANALYSIS (7th ed. 2007). | H, MIL |
| 4799 | 1/10/2019 | | | PGR2018-00025 (Exhibit 2076) - O'Brien Email dated January 10, 2019 | H, MIL, REL |
| 4800 | 8/29/2017 | | | PGR2018-00025 (Exhibit 2077) -Certified English Translation of Omitted Text from Ex. 1005 | H, MIL |
| 4801 | | | | PGR2018-00025 (Exhibit 2078) -Prior Ex. 1018 from PGR2017-00012 (2nd KR'564 Translation) | H, MIL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4802 | 10/11/2017 | | | PGR2018-00025 (Exhibit 2079) -Bang Deposition transcript dated October 11, 2017 from PGR2017-00012 | H, MIL |
| 4803 | 3/22/2019 | | | PGR2018-00025 (Exhibit 2081) -REDACTED Liqwd Motion to Exclude Petitioner Evidence (Sealed in Paper 55) | BE, CP, H, MIL, REL |
| 4804 | 3/22/2019 | | | PGR2018-00025 (Exhibit 2082) -REDACTED Liqwd Motion for Observations on Cross-Examination of Dr. Wickett (Sealed is Paper 56) | BE, CP, H, MIL, REL |
| 4805 | 3/15/2019 | | | PGR2018-00025 (Exhibit 2083) -REDACTED version of Wickett Deposition transcript dated March 15, 2019 | BE, H, MIL |
| 4806 | | | | https://olaplex.com/pages/patents | REL; MIL |
| 4807 | | | | https://www.arsova.com/products | REL; H; FO |
| 4808 | 3/24/2017 | | | PLAINTIFFS' SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES (NOS. 1–3) | H; REL; FO |
| 4809 | 4/26/2018 | | | PLAINTIFFS' OBJECTIONS AND RESPONSES TO DEFENDANTS' SECOND SET OF INTERROGATORIES RELATED TO MOTION FOR PRELIMINARY INJUNCTION(NOS. 4-6) | H; REL; FO |
| 4810 | 4/3/2018 | | | PLAINTIFFS' FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSE TO DEFENDANTS' FIFTH INTERROGATORY | H; REL; FO |
| 4811 | 5/7/2018 | | | PLAINTIFFS' FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSE TO DEFENDANTS' INTERROGATORY NO. 6 | H; REL; FO |
| 4812 | 5/13/2018 | | | PLAINTIFFS' SECOND SUPPLEMENTAL OBJECTIONS AND RESPONSE TO DEFENDANTS' FIFTH INTERROGATORY | H; REL; FO |
| 4813 | 7/20/2018 | | | PLAINTIFFS' SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEFENDANTS' FOURTH AND SIXTH INTERROGATORIES | H; REL; FO |
| 4814 | 8/29/2018 | | | PLAINTIFFS' THIRD SUPPLEMENTAL OBJECTIONS AND RESPONSE TO DEFENDANTS' FIFTH INTERROGATORY | H; REL; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4815 | 11/13/2018 | | | PLAINTIFFS' FOURTH SUPPLEMENTAL OBJECTIONS AND RESPONSE TO DEFENDANTS' FIFTH INTERROGATORY | H; REL; FO |
| 4816 | 10/30/2018 | | | PLAINTIFFS' OBJECTIONS AND RESPONSES TO DEFENDANTS' THIRD SET OF INTERROGATORIES (NOS. 7-20) | H; REL; FO |
| 4817 | 1/4/2019 | | | PLAINTIFFS' SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEFENDANTS' THIRD SET OF INTERROGATORIES (NO. 13) | H; REL; FO |
| 4818 | 2/15/2019 | | | PLAINTIFFS' SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEFENDANTS' THIRD SET OF INTERROGATORIES NOS. 7, 9, 10, 16, 18 AND 20 | H; REL; FO |
| 4819 | 2/22/2019 | | | PLAINTIFFS' SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEFENDANTS' THIRD SET OF INTERROGATORIES NOS. 11, 13, 14, 15 AND 17 | H; REL; FO |
| 4820 | 1/4/2019 | | | PLAINTIFFS' OBJECTIONS AND RESPONSES TO DEFENDANTS' FOURTH SET OF INTERROGATORIES (NOS. 21-25) | H; REL; FO |
| 4821 | 1/4/2019 | | | PLAINTIFFS' OBJECTIONS AND RESPONSES TO DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSION (NOS. 1-50) | H; REL; FO |
| 4822 | 2/15/2019 | | | PLAINTIFFS' FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSION NOS. 19, 20 AND 44-46 | H; REL; FO |
| 4823 | 2/22/2019 | | | PLAINTIFFS' SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSION NOS. 8, 9, 33, 34 & 47 | H; REL; FO |
| 4824 | 12/13/2016 | LO_USA0072099 | LO_USA0072101 | December 13, 2016, Chem.Info article by Meagan Parrish | H; FO; REL |
| 4825 | | | | Claim Chart A: Ogawa ('419 Patent (claims 1, 10)) | FO, H |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4826 | | | | Claim Chart A-1: Ogawa in view of Berkemer and KR '564 ('419 patent (claims 1,10), '954 patent (claims 1, 4, 11, 30)) | FO, H, BE, 403 |
| 4827 | | | | Claim Chart A-2: Ogawa in view of Berkemer, KR '564, and Evans ('954 patent (claims 24-26)) | FO, H, BE, 403 |
| 4828 | | | | Claim Chart A-3: Ogawa in view of Berkemer, KR '564, and Tanabe ('954 patent (claims 12, 13, 19)) | FO, H, BE, 403 |
| 4829 | | | | Claim Chart A-4: Ogawa in view of Berkemer, KR '564, Tanabe, and Evans ('954 patent (claims 14-16)) | FO, H, BE, 403 |
| 4830 | | | | Claim Chart A-5: Ogawa in view of Berkemer, KR '564, Tanabe, and Stone ('954 patent (claim 20)) | FO, H, BE, 403 |
| 4831 | | | | Claim Chart B-1: Kim in view of Ogawa ('419 patent (claims 1,10), '954 patent (claims 1, 4, 11, 30)) | FO, H, BE, 403 |
| 4832 | | | | Claim Chart B-2: Kim in view of Ogawa and Evans ('954 patent (claims 24-26)) | FO, H, BE, 403 |
| 4833 | | | | Claim Chart B-3: Kim in view of Ogawa and Tanabe ('954 patent (claims 12, 13, 19)) | FO, H, BE, 403 |
| 4834 | | | | Claim Chart B-4: Kim in view of Ogawa, Tanabe, and Evans ('954 patent (claims 14-16)) | FO, H, BE, 403 |
| 4835 | | | | Claim Chart B-5: Kim in view of Ogawa, Tanabe, and Stone ('954 patent (claim 20)) | FO, H, BE, 403 |
| 4836 | | | | Claim Chart C-1: Kitabata in view of Berkemer and KR '564 ('419 patent (claims 1,10) | FO, H, BE, 403 |
| 4837 | | | | Claim Chart C-2: Kitabata in view of Singleton and Berkemer ('419 patent (claims 1,10), '954 patent (claims 1, 4, 11, 30)) | FO, H, BE, 403 |
| 4838 | | | | Claim Chart C-3: Kitabata in view of Singleton, Berkemer, and Evans ('954 patent (claims 24-26)) | FO, H, BE, 403 |
| 4839 | | | | Claim Chart C-4: Kitabata in view of Singleton, Berkemer, and Tanabe ('954 patent (claims 12, 13, 19)) | FO, H, BE, 403 |
| 4840 | | | | Claim Chart C-5: Kitabata in view of Singleton, Berkemer, Tanabe, and Evans ('954 patent (claims 14-16)) | FO, H, BE, 403 |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4841 | | | | Claim Chart C-6: Kitabata in view of Singleton, Berkemer, Tanabe, and Stone ('954 patent (claim 20)) | FO, H, BE, 403 |
| 4842 | | | | Claim Chart C-7: Kitabata in view of Dasher and Robbins ('419 patent (claims 1,10), '954 patent (claims 1, 4, 11, 30)) | FO, H, BE, 403 |
| 4843 | | | | Claim Chart C-8: Kitabata in view of Dasher, Robbins , and Evans ('954 patent (claims 24-26)) | FO, H, BE, 403 |
| 4844 | | | | Claim Chart C-9: Kitabata in view of Dasher, Robbins , and Tanabe ('954 patent (claims 12, 13, 19)) | FO, H, BE, 403 |
| 4845 | | | | Claim Chart C-10: Kitabata in view of Dasher, Robbins , Tanabe, and Evans ('954 patent (claims 14-16)) | FO, H, BE, 403 |
| 4846 | | | | Claim Chart C-11: Kitabata in view of Dasher, Robbins , Tanabe, and Stone ('954 patent (claim 20)) | FO, H, BE, 403 |
| 4847 | | | | Claim Chart D-1: Pratt in view of Tanabe (or further in view of Berkemer and KR '564 ('419 patent (claims 1,10), '954 patent (claims 1, 4, 11-13, 19, 30)) | FO, H, BE, 403 |
| 4848 | | | | Claim Chart D-2: Pratt in view of Tanabe and Evans (or further in view of Berkemer and KR '564) ('954 patent (claims 14-16, 24-26)) | FO, H, BE, 403 |
| 4849 | | | | Claim Chart D-3: Pratt in view of Tanabe and Stone (or further in view of Berkemer and KR '564) ('954 patent (claim 20)) | FO, H, BE, 403 |
| 4850 | | | | Claim Chart E-1: Wahler in view of Dasher and Robbins ('419 patent (claims 1,10), '954 patent (claims 1, 4, 11, 30)) - Priority chart for Wahler (FR '138 and FR '139) | FO, H, BE, 403 |
| 4851 | | | | Claim Chart E-2: Wahler in view of Dasher, Robbins , and Evans ('954 patent (claims 24-26)) | FO, H, BE, 403 |
| 4852 | | | | Claim Chart E-3: Wahler in view of Dasher, Robbins , and Tanabe ('954 patent (claims 12, 13, 19)) | FO, H, BE, 403 |
| 4853 | | | | Claim Chart E-4: Wahler in view of Dasher, Robbins , Tanabe, and Evans ('954 patent (claims 14-16)) | FO, H, BE, 403 |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4854 | | | | Claim Chart E-5: Wahler in view of Dasher, Robbins , Tanabe, and Stone ('954 patent (claim 20)) | FO, H, BE, 403 |
| 4855 | | | | Claim Chart E-6: Wahler in view of Dasher and Hawker ('419 patent (claims 1,10), '954 patent (claims 1, 4, 11, 30)) | FO, H, BE, 403 |
| 4856 | | | | Claim Chart E-7: Wahler in view of Dasher, Hawker, and Evans ('954 patent (claims 24-26)) | FO, H, BE, 403 |
| 4857 | | | | Claim Chart E-8: Wahler in view of Dasher, Hawker, and Tanabe ('954 patent (claims 12, 13, 19)) | FO, H, BE, 403 |
| 4858 | | | | Claim Chart E-9: Wahler in view of Dasher, Hawker, Tanabe, and Evans ('954 patent (claims 14-16)) | FO, H, BE, 403 |
| 4859 | | | | Claim Chart E-10: Wahler in view of Dasher, Hawker, Tanabe, and Stone ('954 patent (claim 20)) | FO, H, BE, 403 |
| 4860 | | | | Claim Chart F-1: Cotteret in view of Ogawa and Singleton ('419 patent (claims 1,10), '954 patent (claims 1, 4, 11, 30)) | FO, H, BE, 403 |
| 4861 | | | | Claim Chart F-2: Cotteret in view of Ogawa, Singleton, and Evans ('954 patent (claims 24-26)) | FO, H, BE, 403 |
| 4862 | | | | Claim Chart F-3: Cotteret in view of Ogawa, Singleton, and Tanabe ('954 patent (claims 12, 13, 19)) | FO, H, BE, 403 |
| 4863 | | | | Claim Chart F-4: Cotteret in view of Ogawa, Singleton, Tanabe, and Evans ('954 patent (claims 14-16)) | FO, H, BE, 403 |
| 4864 | | | | Claim Chart F-5: Cotteret in view of Ogawa, Singleton, Tanabe, and Stone ('954 patent (claim 20)) | FO, H, BE, 403 |
| 4865 | | | | Claim Chart G-1: Anderson in view of Pratt and Robbins ('419 patent (claims 1,10), '954 patent (claims 1, 4, 11, 30)) | FO, H, BE, 403 |
| 4866 | | | | Claim Chart G-2: Anderson in view of Pratt, Robbins, and Evans ('954 patent (claims 24-26)) | FO, H, BE, 403 |
| 4867 | | | | Claim Chart G-3: Anderson in view of Pratt, Robbins, and Tanabe ('954 patent (claims 12, 13, 19)) | FO, H, BE, 403 |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4868 | | | | Claim Chart G-4: Anderson in view of Pratt, Robbins, Tanabe, and Evans ('954 patent (claims 14-16)) | FO, H, BE, 403 |
| 4869 | | | | Claim Chart G-5: Anderson in view of Pratt, Robbins , Tanabe, and Stone ('954 patent (claim 20)) | FO, H, BE, 403 |
| 4870 | | | | Claim Chart H-1: Flohr in view of Pratt and Robbins ('419 patent (claims 1,10), '954 patent (claims 1, 4, 11, 30)) | FO, H, BE, 403 |
| 4871 | | | | Claim Chart H-2: Flohr in view of Pratt, Robbins, and Evans ('954 patent (claims 24-26)) | FO, H, BE, 403 |
| 4872 | | | | Claim Chart H-3: Flohr in view of Pratt, Robbins, and Tanabe ('954 patent (claims 12, 13, 19)) | FO, H, BE, 403 |
| 4873 | | | | Claim Chart H-4: Flohr in view of Pratt, Robbins, Tanabe, and Evans ('954 patent (claims 14-16)) | FO, H, BE, 403 |
| 4874 | | | | Claim Chart H-5: Flohr in view of Pratt, Robbins , Tanabe, and Stone ('954 patent (claim 20)) | FO, H, BE, 403 |
| 4875 | | | | Claim Chart H-6: Flohr in view of Kitabata and Robbins ('419 patent (claims 1,10), '954 patent (claims 1, 4, 11, 30)) | FO, H, BE, 403 |
| 4876 | | | | Claim Chart H-7: Flohr in view of Kitabata, Robbins, and Evans ('954 patent (claims 24-26)) | FO, H, BE, 403 |
| 4877 | | | | Claim Chart H-8: Flohr in view of Kitabata, Robbins, and Tanabe ('954 patent (claims 12, 13, 19)) | FO, H, BE, 403 |
| 4878 | | | | Claim Chart H-9: Flohr in view of Kitabata, Robbins, Tanabe, and Evans ('954 patent (claims 14-16)) | FO, H, BE, 403 |
| 4879 | | | | Claim Chart H-10: Flohr in view of Kitabata, Robbins , Tanabe, and Stone ('954 patent (claim 20)) | FO, H, BE, 403 |
| 4880 | | | | Claim Chart I-1: DeGeorge in view of Berkemer and KR '564 ('419 patent (claims 1,10), '954 patent (claims 1, 4, 11, 30)) | FO, H, BE, 403 |
| 4881 | | | | Claim Chart I-2: DeGeorge in view of Berkemer, KR '564, and Evans ('954 patent (claims 24-26)) | FO, H, BE, 403 |
| 4882 | | | | Claim Chart I-3: DeGeorge in view of Berkemer, KR '564, and Tanabe ('954 patent (claims 12, 13, 19)) | FO, H, BE, 403 |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4883 | | | | Claim Chart I-4: DeGeorge in view of Berkemer, KR '564, Tanabe, and Evans ('954 patent (claims 14-16)) | FO, H, BE, 403 |
| 4884 | | | | Claim Chart I-5: DeGeorge in view of Berkemer, KR '564, Tanabe, and Stone ('954 patent (claim 20)) | FO, H, BE, 403 |
| 4885 | 5/9/2016 | LO_USA0040736 | LO_USA0040737 | Email from F. Boulineau to C. Goget, D. Bethelmy-Rada, and L. Vandall, dated May 9, 2016 re: Hot for AM- Maleic Acid Function | H; FO |
| 4886 | | LO_USA0008653 | LO_USA0008653 | Composition of raw materials of 1200591 | H; FO; CP; AU |
| 4887 | | LO_USA0008677 | LO_USA0008677 | Composition of raw materials of 1112405 | H; FO; CP; AU |
| 4888 | | | | Ethanolamine, National Center for Biotechnology Information, PubChem Open Chemistry Database, https://pubchem.ncbi.nlm.nih.gov/compound/Ethanolamine#section=3D-Conformer | DIS; H; FO; REL; 403 |
| 4889 | | | | Citric Acid, National Center for Biotechnology Information, PubChem Open Chemistry Database, https://pubchem.ncbi.nlm.nih.gov/compound/citric_acid | DIS; H; FO; REL; 403 |
| 4890 | 6/16/2016 | LO_USA0008607 | LO_USA0008621 | Officialization International except Japan and South Korea, Redken pH Bonder Step | No objection |
| 4891 | 6/16/2016 | LO_USA0008630 | LO_USA0008644 | Officialization International except Japan and South Korea, Matrix Bond Ultim8 Step 1 | No objection |
| 4892 | 10/2/2017 | LO_USA0008654 | LO_USA0008658 | Officialization International L'Oreal Professionnel Smartbond step 1 | No objection |
| 4893 | 12/16/2016 | OLA_0000026884 | OLA_0000026886 | ANALYZE Report | H; FO; CP |
| 4894 | 2/12/2019 | | | Brandwatch Data Coverage White Paper: "In total we crawl over 95 million sites every day" | H; DIS; FO; MIL |
| 4895 | 2/12/2019 | | | The Instagram Universe dataset | H; DIS; FO; MIL |
| 4896 | 2/12/2019 | | | subfilter used for Set A on the Instagram platform | H; DIS; FO; MIL |
| 4897 | 2/12/2019 | | | Comparison Set A – Instagram dataset | H; DIS; FO; MIL |
| 4898 | 2/12/2019 | | | subfilter used for Set B on the Instagram platform | H; DIS; FO; MIL |
| 4899 | 2/12/2019 | | | Comparison Set B – Instagram dataset | H; DIS; FO; MIL |
| 4900 | 2/12/2019 | | | Twitter Universe dataset | H; DIS; FO; MIL |
| 4901 | 2/12/2019 | | | subfilter used for Set A on the Twitter platform | H; DIS; FO; MIL |
| 4902 | 2/12/2019 | | | Comparison Set A – Twitter dataset | H; DIS; FO; MIL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4903 | 2/12/2019 | | | subfilter used for Set B on the Twitter platform | H; DIS; FO; MIL |
| 4904 | 2/12/2019 | | | Comparison Set B – Twitter dataset | H; DIS; FO; MIL |
| 4905 | 2/12/2019 | | | Screengrabs from the Facebook Ad Platform | H; DIS; FO; MIL |
| 4906 | 2/12/2019 | | | Digital News Universe dataset | H; DIS; FO; MIL |
| 4907 | 2/12/2019 | | | subfilter used for Set A in the Digital News Universe | H; DIS; FO; MIL |
| 4908 | 2/12/2019 | | | Comparison Set A – Digital News dataset | H; DIS; FO; MIL |
| 4909 | 2/12/2019 | | | subfilter used for Set B in the Digital News Universe | H; DIS; FO; MIL |
| 4910 | 2/12/2019 | | | Comparison Set B – Digital News dataset | H; DIS; FO; MIL |
| 4911 | 2/12/2019 | | | Forums/Blogs Universe dataset | H; DIS; FO; MIL |
| 4912 | 2/12/2019 | | | subfilter used for Set A in the Forums/Blogs Universe | H; DIS; FO; MIL |
| 4913 | 2/12/2019 | | | Comparison Set A – Forums/Blogs dataset | H; DIS; FO; MIL |
| 4914 | 2/12/2019 | | | subfilter used for Set B in the Forums/Blogs Universe | H; DIS; FO; MIL |
| 4915 | 2/12/2019 | | | Comparison Set B – Forums/Blogs dataset | H; DIS; FO; MIL |
| 4916 | 2/12/2019 | | | Comparison Sets – Non-query/Boolean List | H; DIS; FO; MIL |
| 4917 | 2/5/2015 | LO_USA0075979 | LO_USA0076005 | WO 2015/017768 A1 with markups | LO Produced Late on May 8, 2019; DIS; H; FO; AU; MIL; LR; Missing Metadata |
| 4918 | Apr-15 | LO_USA0076006 | LO_USA0076056 | Presentation entitled sSalon Brand Snapshot | LO Produced Late on May 8, 2019; DIS; H; FO; AU; MIL; LR; Missing Metadata; Incorrect Bate-stamp range and/or Description of document |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4919 | May-15 | LO_USA0076057 | LO_USA0076058 | Olivia - R&I assessment- May 2015 with handwritten notes | LO Produced Late on May 8, 2019; DIS; H; FO; AU; MIL; LR; Missing Metadata |
| 4920 | 5/13/2015 | LO_USA0076059 | LO_USA0076079 | Email from R. Dolden to D. Christal re: Project Olivia - Confidential with attachment | LO Produced Late on May 8, 2019; DIS; H; FO; AU; MIL; LR; CP; COMP; Missing Metadata |
| 4921 | 2015 | LO_USA0076080 | LO_USA0076080 | Handwritten notes relating to Olivia | LO Produced Late on May 8, 2019; DIS; H; FO; AU; MIL; LR; Missing Metadata |
| 4922 | 5/7/2015 | LO_USA0076081 | LO_USA0076092 | Presentation entitiled "Additives" | LO Produced Late on May 8, 2019; DIS; H; FO; AU; MIL; LR; Missing Metadata |
| 4923 | 5/7/2015 | LO_USA0076093 | LO_USA0076098 | Presentation entitled Olaplex | LO Produced Late on May 8, 2019; DIS; H; FO; AU; MIL; LR; Missing Metadata |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4924 | 5/7/2015 | LO_USA0076099 | LO_USA0076099 | Email fro Delphine Allard to S. Allard forwarding email from F. Legrand to Delphine Allard dated May 7, 2015 re: Olivia - mechanismes avances | LO Produced Late on May 8, 2019; DIS; H; FO; AU; MIL; LR; Incorrect Bate-stamp range; Missing Metadata; foreign language |
| 4925 | | LO_USA0076100 | LO_USA0076100 | Document regarding mechanism | LO Produced Late on May 8, 2019; DIS; H; FO; AU; MIL; LR; Incorrect Description of document; Missing Metadata |
| 4926 | 5/5/2015 | LO_USA0076101 | LO_USA0076103 | Email thread ending with email from F. Legrand to Delphine Allard Re: FW: Pre DD R&I assessment deck | LO Produced Late on May 8, 2019; DIS; H; FO; AU; MIL; LR; Incorrect Bate-stamp range; Missing Metadata |
| 4927 | 2/9/2015 | LO_USA0076104 | LO_USA0076111 | Search Report for Bis-Aminopropyl Diglycol Dimaleate in Hair Cosemtics | LO Produced Late on May 8, 2019; DIS; H; FO; AU; MIL; LR; Missing Metadata |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4928 | 4/28/2015 | LO_USA0076112 | LO_USA0076116 | Presentation entitled Olivia R&I Synthesis - PreDD with markups | LO Produced Late on May 8, 2019; DIS; H; FO; AU; MIL; LR; CP; Missing Metadata |
| 4929 | 2015 | LO_USA0076117 | LO_USA0076117 | Project Olivia - Pre d/d Request List | LO Produced Late on May 8, 2019; DIS; H; FO; AU; MIL; LR; Missing Metadata |
| 4930 | 2015 | LO_USA0076118 | LO_USA0076118 | Olivia - R&I assessment notes | LO Produced Late on May 8, 2019; DIS; H; FO; AU; MIL; LR; CP; Incorrect Bate-stamp range; Missing Metadata |
| 4931 | | LO_USA0076120 | LO_USA0076134 | Presentation entitled Olaplex Evaluation in Tecture metier with handwritten notes | LO Produced Late on May 8, 2019; DIS; H; FO; AU; MIL; LR; CP; Missing Metadata |
| 4932 | 6/11/2015 | LO_USA0076135 | LO_USA0076143 | Presentation - Product Performance Evaluation - Olaplex Technology Instrumental Evaluation | LO Produced Late on May 8, 2019; DIS; H; FO; AU; MIL; LR; Missing Metadata |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4933 | 2015 | LO_USA0076144 | LO_USA0076144 | R&I Eexecutive summary following Olivia meeting on May 19th with markups | LO Produced Late on May 8, 2019; DIS; H; FO; AU; MIL; LR; Missing Metadata |
| 4934 | 2015 | LO_USA0076145 | LO_USA0076145 | R&I Eexecutive summary following Olivia meeting on May 19th | LO Produced Late on May 8, 2019; DIS; H; FO; AU; MIL; LR; Missing Metadata |
| 4935 | 2015 | LO_USA0076146 | LO_USA0076147 | R&I assessment followiing Olivia meeting on May 19th with handwritten notes and markups | LO Produced Late on May 8, 2019; DIS; H; FO; AU; MIL; LR; CP; Incorrect Bate-stamp range; Missing Metadata |
| 4936 | 2015 | LO_USA0076148 | LO_USA0076148 | Notes- About the silicon technology with markups | LO Produced Late on May 8, 2019; DIS; H; FO; AU; MIL; LR; CP; Incorrect Bate-stamp range; Missing Metadata |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4937 | 5/22/2015 | LO_USA0076149 | LO_USA0076171 | Email thread ending with email from R. Dolden to Vianney Pivet and H. Kumetz Re: Project Olivia - Meeting with Owner/Scientists - Strictly Confidential with attachments | LO Produced Late on May 8, 2019; DIS; H; FO; AU; MIL; LR; Incorrect Bate-stamp range; Missing Metadata |
| 4938 | 10/21/2014 | LO_USA0076172 | LO_USA0076175 | Copy of International Search Report for International Application No. PCT/US2014/049388 | LO Produced Late on May 8, 2019; DIS; H; FO; AU; MIL; LR; CP; Missing Metadata |
| 4939 | 5/19/2015 | LO_USA0076176 | LO_USA0076225 | Notebook with handwritten meeting notes | LO Produced Late on May 8, 2019); DIS; H; FO; AU; BE; MIL; LR; Missing Metadata |
| 4940 | 2/12/2019 | | | Expert Report of James Pooley | H; MIL |
| 4941 | 2/12/2019 | | | James Pooley CV | H; MIL |
| 4942 | 2/12/2019 | | | James Pooley Materials reviewed | H; MIL |
| 4943 | 5/6/2014 | OLA_00000116840 | OLA_00000116840 | Email from E. Connaghan to D. Christal, dated May 16, 2014 re Olaplex | |
| 4944 | 2/12/2019 | | | Expert Report of Thomas Shultz, Ph.D. | H; MIL; 403 (cumulative, see, e.g., TX 920) |
| 4945 | | | | Shultz Curriculum Vitae | H; MIL |
| 4946 | | | | Shultz Materials Reviewed | H; MIL |
| 4947 | 2/12/2019 | | | Rebuttal Expert Report of W. Todd Schoettelkotte Relating to Olaplex's Damages | H; MIL |
| 4948 | 2/12/2019 | | | Schedule 1 | H; MIL |
| 4949 | 2/12/2019 | | | Schedule 2 | H; MIL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4950 | 2/12/2019 | | | Schedule 3.1 | H; MIL |
| 4951 | 2/12/2019 | | | Schedule 3.2 | H; MIL |
| 4952 | 2/12/2019 | | | Schedule 3.3 | H; MIL |
| 4953 | 2/12/2019 | | | Schedule 3.4 | H; MIL |
| 4954 | 2/12/2019 | | | Schedule 3.5 | H; MIL |
| 4955 | 2/12/2019 | | | Schedule 3.6 | H; MIL |
| 4956 | 2/12/2019 | | | Schedule 3.7 | H; MIL |
| 4957 | 2/12/2019 | | | Schedule 4.1 | H; MIL |
| 4958 | 2/12/2019 | | | Schedule 4.2 | H; MIL |
| 4959 | 2/12/2019 | | | Schedule 4.3 | H; MIL |
| 4960 | 2/12/2019 | | | Schedule 4.4 | H; MIL |
| 4961 | 2/12/2019 | | | Schedule 5.1 | H; MIL |
| 4962 | 2/12/2019 | | | Schedule 5.2 | H; MIL |
| 4963 | 2/12/2019 | | | Schedule 5.3 | H; MIL |
| 4964 | 2/12/2019 | | | Schedule 5.4 | H; MIL |
| 4965 | 2/12/2019 | | | Schedule 5.5 | H; MIL |
| 4966 | 2/12/2019 | | | Schedule 5.6 | H; MIL |
| 4967 | 2/12/2019 | | | Schedule 5.7 | H; MIL |
| 4968 | 2/12/2019 | | | Schedule 5.8 | H; MIL |
| 4969 | 2/12/2019 | | | Schedule 5.9 | H; MIL |
| 4970 | 2/12/2019 | | | Schedule 5.10 | H; MIL |
| 4971 | 2/12/2019 | | | Schedule 5.11 | H; MIL |
| 4972 | 2/12/2019 | | | Schedule 5.12 | H; MIL |
| 4973 | 2/12/2019 | | | Schedule 5.13 | H; MIL |
| 4974 | 2/12/2019 | | | Schedule 5.14 | H; MIL |
| 4975 | 2/12/2019 | | | Schedule 5.15 | H; MIL |
| 4976 | 2/12/2019 | | | Schedule 5.16 | H; MIL |
| 4977 | 2/12/2019 | | | Schedule 5.17 | H; MIL |
| 4978 | 2/12/2019 | | | Schedule 5.18 | H; MIL |
| 4979 | 2/12/2019 | | | Schedule 5.19 | H; MIL |
| 4980 | 2/12/2019 | | | Schedule 5.20 | H; MIL |
| 4981 | 2/12/2019 | | | Schedule 5.21 | H; MIL |
| 4982 | 2/12/2019 | | | Schedule 6.1 | H; MIL |
| 4983 | 2/12/2019 | | | Schedule 6.2 | H; MIL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 4984 | 2/12/2019 | | | Schedule 6.3 | H; MIL |
| 4985 | 2/12/2019 | | | Schedule 6.4 | H; MIL |
| 4986 | 2/12/2019 | | | Schedule 6.5 | H; MIL |
| 4987 | 2/12/2019 | | | Schedule 6.6 | H; MIL |
| 4988 | 2/12/2019 | | | Schedule 6.7 | H; MIL |
| 4989 | 2/12/2019 | | | Schedule 6.8 | H; MIL |
| 4990 | 2/12/2019 | | | Schedule 6.9 | H; MIL |
| 4991 | 2/12/2019 | | | Schedule 6.10 | H; MIL |
| 4992 | 2/12/2019 | | | Schedule 6.11 | H; MIL |
| 4993 | 2/12/2019 | | | Schedule 6.12 | H; MIL |
| 4994 | 2/12/2019 | | | Schedule 6.13 | H; MIL |
| 4995 | 2/12/2019 | | | Schedule 6.14 | H; MIL |
| 4996 | 2/12/2019 | | | Schedule 6.15 | H; MIL |
| 4997 | 2/12/2019 | | | Schedule 6.16 | H; MIL |
| 4998 | 2/12/2019 | | | Schedule 6.17 | H; MIL |
| 4999 | 2/12/2019 | | | Schedule 6.18 | H; MIL |
| 5000 | 2/12/2019 | | | Schedule 7.1 | H; MIL |
| 5001 | 2/12/2019 | | | Schedule 7.2 | H; MIL |
| 5002 | 2/12/2019 | | | Schedule 7.3 | H; MIL |
| 5003 | 2/12/2019 | | | Schedule 7.4 | H; MIL |
| 5004 | 2/12/2019 | | | Schedule 7.5 | H; MIL |
| 5005 | 2/12/2019 | | | Schedule 7.6 | H; MIL |
| 5006 | 2/12/2019 | | | Schedule 7.7 | H; MIL |
| 5007 | 2/12/2019 | | | Schedule 7.8 | H; MIL |
| 5008 | 2/12/2019 | | | Schedule 7.9 | H; MIL |
| 5009 | 2/12/2019 | | | Schedule 7.10 | H; MIL |
| 5010 | 2/12/2019 | | | Schedule 7.11 | H; MIL |
| 5011 | 2/12/2019 | | | Schedule 7.12 | H; MIL |
| 5012 | 2/12/2019 | | | Schedule 7.13 | H; MIL |
| 5013 | 2/12/2019 | | | Schedule 7.14 | H; MIL |
| 5014 | 2/12/2019 | | | Schedule 7.15 | H; MIL |
| 5015 | 2/12/2019 | | | Schedule 7.16 | H; MIL |
| 5016 | 2/12/2019 | | | Schedule 7.17 | H; MIL |
| 5017 | 2/12/2019 | | | Schedule 7.18 | H; MIL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 5018 | 2/12/2019 | | | Schedule 7.19 | H; MIL |
| 5019 | 2/12/2019 | | | Schedule 7.20 | H; MIL |
| 5020 | 2/12/2019 | | | Schedule 7.21 | H; MIL |
| 5021 | 2/12/2019 | | | Schedule 8.1 | H; MIL |
| 5022 | 2/12/2019 | | | Schedule 8.2 | H; MIL |
| 5023 | 2/12/2019 | | | Schedule 8.3 | H; MIL |
| 5024 | 2/12/2019 | | | Schedule 8.4 | H; MIL |
| 5025 | 2/12/2019 | | | Schedule 8.5 | H; MIL |
| 5026 | 2/12/2019 | | | Schedule 8.6 | H; MIL |
| 5027 | 2/12/2019 | | | Schedule 9.1 | H; MIL |
| 5028 | 2/12/2019 | | | Schedule 9.2 | H; MIL |
| 5029 | 2/12/2019 | | | Schedule 9.3 | H; MIL |
| 5030 | 2/12/2019 | | | Schedule 9.4 | H; MIL |
| 5031 | 2/12/2019 | | | Schedule 9.5 | H; MIL |
| 5032 | 2/12/2019 | | | Schedule 9.6 | H; MIL |
| 5033 | 2/12/2019 | | | Schedule 9.7 | H; MIL |
| 5034 | 2/12/2019 | | | Schedule 9.8 | H; MIL |
| 5035 | 2/12/2019 | | | Schedule 9.9 | H; MIL |
| 5036 | 2/12/2019 | | | Schedule 9.10 | H; MIL |
| 5037 | 2/12/2019 | | | Schedule 9.11 | H; MIL |
| 5038 | 2/12/2019 | | | Schedule 9.12 | H; MIL |
| 5039 | 2/12/2019 | | | Schedule 9.1 | H; MIL |
| 5040 | 2/12/2019 | | | Schedule 9.2 | H; MIL |
| 5041 | 2/12/2019 | | | Schedule 9.3 | H; MIL |
| 5042 | 2/12/2019 | | | Schedule 9.4 | H; MIL |
| 5043 | 2/12/2019 | | | Schedule 9.5 | H; MIL |
| 5044 | 2/12/2019 | | | Schedule 9.6 | H; MIL |
| 5045 | 2/12/2019 | | | Schedule 9.7 | H; MIL |
| 5046 | 2/12/2019 | | | Schedule 9.8 | H; MIL |
| 5047 | 2/12/2019 | | | Schedule 9.9 | H; MIL |
| 5048 | 2/12/2019 | | | Schedule 9.10 | H; MIL |
| 5049 | 2/12/2019 | | | Schedule 9.11 | H; MIL |
| 5050 | 2/12/2019 | | | Schedule 9.12 | H; MIL |
| 5051 | 2/12/2019 | | | Expert Report of Professor Peter N. Golder, Ph.D. | H |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 5052 | 2/12/2019 | | | Ex. 1 - The Six Innovation Adoption Factors Olaplex and L'Oréal USA | H |
| 5053 | 2/12/2019 | | | Ex. 2 - Market Entrance Timeline of Hair-Protecting Additives Based on the 2016 TrendVision Report | H |
| 5054 | 2/12/2019 | | | Ex. 3 - Annotations to Professor Hanssens's Exhibit 4 Per-Month Average Historical U.S. Sales by Quarter October 2014 –September 2018 | H |
| 5055 | 2/12/2019 | | | Appendix A - Curriculum Vitae | H |
| 5056 | 2/12/2019 | | | Appendix B - Testimony in the last four years | H |
| 5057 | 2/12/2019 | | | Appendix C - Materials Relied Upon | H |
| 5058 | 2/12/2019 | | | Appendix D - Mellage, Carrie M., "Salon Hair Care: U.S. Market Analysis and Opportunities," Kline Research, May 2018 ("2018 Kline Report") | H; FO |
| 5059 | 6/10/2015 | LO_USA0074906 | LO_USA0074910 | Memo from M. Soliman to C. Goget, K. Hamilton, H. Lee, K. Norwood, J. Troch, D. Velkov, J. Ascione, S. De Launay, M. Kanji, F. LeGrand, C. Rondeau, and D. Trillat, dated June 10, 2015 re HIE15-007 | Late addition by L'Oreal on May 12, 2019 after May 8, 2019 deadline for updated exhibit list; H; FO |
| 5060 | 4/19/2011 | LO_USA0074935 | LO_USA0074950 | Memo from J. Cabourg, F. Chiba, M. De Boni, L. Feuillette, and H. Takahashi to V. Burckbuchler, A. Cavezza, C. Blaise, N. Cavusoglu, A. Dublanchet, D. Jullien, F. Leroy, J. Morancais, F. Pataut, G. Plos, I. Rodriguez, M. Vicic, J. Ascione, B. Didllon, G. Genain, L. Gilbert, I. Marey-Semper, and M. Mellul, dated April 19, 2011 fe Investigation of the Perfomrances of Bis-Maleimides on Hair Within the Context of 2 Axes: Straightening and Perm, and Formol Substitution | Late addition by L'Oreal on May 12, 2019 after May 8, 2019 deadline for updated exhibit list; H; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 5061 | 1/18/2011 | LO_USA0074981 | LO_USA0075034 | Hair Fiber Transformation Evaluation of Bis-Maleimides Reactivity on Amines | Late addition by L'Oreal on May 12, 2019 after May 8, 2019 deadline for updated exhibit list; H; FO; DIS |
| 5062 | | LO_USA0075977 | LO_USA0075977 | L'Oreal USA Units Sold | Late addition by L'Oreal on May 12, 2019 after May 8, 2019 deadline for updated exhibit list; H; FO |
| 5063 | 8/21/2015 | OLA_0000073810 | OLA_0000073810 | Email from J. Schwartz to S. Orzel at K. Stewart, dated August 21, 2015 re Olaplex Knock Off | Late addition by L'Oreal on May 12, 2019 after May 8, 2019 deadline for updated exhibit list; 403 (cumulative, see, e.g., TX 3935) |
| 5064 | 11/5/2018 | OLA_0000075807 | OLA_0000075807 | Spreadsheet from T. Walden re Olaplex sales | Late addition by L'Oreal on May 12, 2019 after May 8, 2019 deadline for updated exhibit list; H; FO |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 5065 | 2/12/2019 | | | "pH Bonder: A Complete Synergistic System to Promote Bond Integrity," Redken, available at https://www.redken.com/blog/at-the-salon/ph-bonder-complete-synergistic-system-promotes-bond-integrity | Late addition by L'Oreal on May 12, 2019 after May 8, 2019 deadline for updated exhibit list; H; FO; DIS; REL |
| 5066 | 6/15/1905 | | | Golder, Peter N. and Gerard J. Tellis, "Pioneer Advantage: Marketing Logic or Marketing Legend?" Journal of Marketing Research, Vol. 30(2), 1993, pp. 158-170 ("Golder and Tellis (1993)") | Late addition by L'Oreal on May 12, 2019 after May 8, 2019 deadline for updated exhibit list; H; FO; DIS |
| 5067 | 6/28/1905 | | | Tellis, Gerard J. and Peter N. Golder, Will and Vision: How Latecomers Grow to Dominate Markets, Figueroa Press, 2006 ("Will and Vision") | Late addition by L'Oreal on May 12, 2019 after May 8, 2019 deadline for updated exhibit list; H; FO; DIS |
| 5068 | 6/20/1905 | | | Lieberman, Marvin B. and David B. Montgomery, "First-Mover (Dis)Advantages: Retrospective and Link with the Resource-Based View," Strategic Management Journal, Vol. 19(12), 1998, pp. 1111-1125 ("Lieberman and Montgomery (1998)") | Late addition by L'Oreal on May 12, 2019 after May 8, 2019 deadline for updated exhibit list; H; FO; DIS; REL; 403 (cumulative, see, e.g., TX 1029) |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 5070 | 7/3/1905 | | | Golder, Peter N., "First-Mover (Pioneer) Advantage," in Wiley International Encyclopedia of Marketing, Jagdish Sheth and Naresh Malhotra (Eds.), Wiley, 2011 | Late addition by L'Oreal on May 12, 2019 after May 8, 2019 deadline for updated exhibit list; H; FO; DIS |
| 5071 | 7/3/1905 | | | Golder, Peter N., "Later Mover (Nonpioneer) Advantage," in Wiley International Encyclopedia of Marketing, Jagdish Sheth and Naresh Malhotra (Eds.), Wiley, 2011 | Late addition by L'Oreal on May 12, 2019 after May 8, 2019 deadline for updated exhibit list; H; FO; DIS |
| 5072 | 6/18/1905 | | | Tellis, Gerald J. and Peter N. Golder, "First to Market, First to Fail? Real Causes of Enduring Market Leadership," Sloan Management Review, Vol. 37(2), 1996, pp. 65-75 ("Tellis and Golder (1996)") | Late addition by L'Oreal on May 12, 2019 after May 8, 2019 deadline for updated exhibit list; H; FO; DIS; REL |
| 5073 | 9/6/2016 | | | "New Usage Directions. Same Amazing Result.," Olaplex , September 6, 2016, available at https://blog.olaplex.com/2016/09/06/olaplexs-new-usage-directions-same-amazing-result/ | Late addition by L'Oreal on May 12, 2019 after May 8, 2019 deadline for updated exhibit list; H; FO; DIS |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 5074 | 2/12/2019 | | | "Goldwell's BondPro+," Modern Salon , available at https://www.modernsalon.com/product/39856/goldwells-bondpro | Late addition by L'Oreal on May 12, 2019 after May 8, 2019 deadline for updated exhibit list; H; FO; DIS; REL |
| 5075 | 3/13/2017 | | | "FibrePlex," Behind the Chair , available at https://behindthechair.com/product-announcements/schwarzkopf-professional-fibreplex/ | Late addition by L'Oreal on May 12, 2019 after May 8, 2019 deadline for updated exhibit list; H; FO; DIS; REL |
| 5076 | 1/16/2018 | | | "WellaPlex," Behind the Chair , available at https://behindthechair.com/product-announcements/wellaplex/ | Late addition by L'Oreal on May 12, 2019 after May 8, 2019 deadline for updated exhibit list; H; FO; DIS; REL |
| 5077 | 2/12/2019 | | | "WellaPlex Travel Kit," CosmoProf , available at https://www.cosmoprofbeauty.com/USA-819017.html | Late addition by L'Oreal on May 12, 2019 after May 8, 2019 deadline for updated exhibit list; H; FO; DIS; REL |

| Trial Exh./ Deposition Exh. No. | Document Date | Begin Bates No. | End Bates No. | Description | Plaintiffs' Objection |
|---|---|---|---|---|---|
| 5078 | 2/11/2019 | | | Malonic Acid, National Center for Biotechnology Information, PubChem Open Chemistry Database, https://pubchem.ncbi.nlm.nih.gov/compound/malonic_acid. | Late addition by L'Oreal on May 14, 2019 after May 8, 2019 deadline for updated exhibit list; H; FO; DIS; REL |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**PLAINTIFFS' OBJECTION CODES TO DEFENDANTS' TRIAL EXHIBIT LIST**

| OBJECTIONS | DESCRIPTIONS | RULES |
|---|---|---|
| 403 | Probative value outweighed by unfair prejudice, confusion, undue delay, wasting time, or cumulative evidence | FRE 403 |
| AU | Authenticity | FRE 901, 1001, 1002 |
| BE | Best evidence rule | FRE 901, 1002, 1003 |
| COMP | Compilation of documents/multiple documents | FRE 901, 1001, 1002 |
| CP | Rule of completeness/incomplete document | FRE 106, 403, 1003 |
| DIS | Not produced during discovery | |
| FO | Lack of foundation | FRE 602, 611(a) |
| H | Hearsay | FRE 801, 802 |
| MIL | Subject of pending motion *in limine* or other motion | |
| LR | Violates the Delaware Local Rules | L.R. 16.3 |
| Q | Quality of the document; illegible | |
| REL | Lack of relevance | FRE 401, 402 |
| 105 | Admissible for one party for one purpose but not another party for another purpose | FRE 105 |
| W | Privileged/Word Product | FRE 501 |

EXHIBIT 12

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LIQWD, INC. and OLAPLEX LLC,   )
             )
     Plaintiffs,   )
             )
     v.      )  C. A. No. 17-14 (JFB) (SRF)
             )
L'ORÉAL USA, INC., L'ORÉAL USA ) **CONFIDENTIAL – FILED UNDER**
PRODUCTS, INC, L'ORÉAL USA S/D, ) **SEAL**
INC., and REDKEN 5TH AVENUE NYC, )
L.L.C.,          )
             )
     Defendants.  )

## PLAINTIFFS' MOTION *IN LIMINE* NO. 1 TO PRECLUDE TESTIMONY OF DEFENDANTS' EXPERTS OUTSIDE THE SCOPE OF THEIR EXPERT REPORTS

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Adam DiClemente
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5200

May 1, 2019

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

*Attorneys for Plaintiffs*

Defendants ("L'Oréal") should be precluded from eliciting expert opinion testimony from their expert witnesses[1] beyond the scope of the opinions disclosed in the experts' Rule 26 reports.

## I.    BACKGROUND

L'Oréal's Amended Counter-Complaint (D.I. 650) alleges broadly that Plaintiffs ("Olaplex") violated the Lanham Act through unspecified false advertising.  D.I. 650, at 60-69.  As written and served, its expert reports fail to offer admissible opinions in support of that claim.[2]  As explained below, opinions not disclosed in a written report are "inadmissible for any purpose," and should be precluded by an order *in limine*.  *Hologic, Inc. v. Minervia Surgical, Inc.*, 2018 WL 3348998, at *1 (D. Del. Jul. 6, 2018) (quoting *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).

For example, Mr. Nolte was "engaged by L'Oréal USA to calculate monetary remedies" for the Lanham Act and False Marking Counter-Claims.  Nolte Report at 1.  As Olaplex explained, his damages Report lacks any analysis of the causal link between Olaplex's challenged conduct and the asserted damages.  D.I. 689, 765.  Nonetheless, Mr. Nolte asserted at deposition that Olaplex's conduct ***caused*** damages, declining to provide any specifics, or to locate that opinion in his Report.[3]  Similarly, Ms. Harper was retained to opine on whether "Olaplex's marketing activities …follow the

---

[1]  Olaplex has moved to exclude L'Oréal's experts pursuant to Daubert and Rule 702.  *See* D.I. 684, 686, 688, 690, 692, 697, 700.  In the event this Court does not grant such Motions, an order *in limine* should issue for the reasons set forth herein.

[2]  On January 29, 2019 L'Oréal served reports of Harper (D.I. 720, Ex. 4, "Harper Report") and Nolte (D.I. 720, Ex. 5, "Nolte Report").  Olaplex took depositions on March 6, 2019 (D.I. 722, Ex. 14, "Harper Tr.") and March 7, 2019 (D.I. 722, Ex. 15, "Nolte Tr.").

[3]  *See* Nolte Tr. at 101:11-14 ("Q. And you concluded that there is causation with respect to both the false patent [marking] and the false advertising?  A. I have made that conclusion, yes."); *id.* at 49:6-10 ("Q. What else in your report speaks to causation?  A. In doing the calculations that I did, I made adjustments.  And both those calculations were attempting to separate additional harm.  And [] effectively it was because of causation-type reasons."); *id.* at 50:8-9 ("So in that sense, [] I guess I'd refer you to almost the entire report.").

1

rules and regulations of the Lanham Act." Harper Report, ¶ 16.  The Harper Report claims (without basis) that Olaplex "deceived *millions* of consumers," nowhere explaining how the "millions" figure was derived or providing quantification.  D.I. 687 at 13-14.  Nonetheless, Ms. Harper (and her Counsel) claimed for the first time at deposition that the figure was "half a million" and/or "at least 33 million" without any analysis or support.  *Id.*  In addition to these examples, L'Oréal should not be allowed elicit testimony beyond the scope of the Rule 26 reports from any of its experts permitted to testify at trial.  *See supra* note 1.

## II.   <u>PRECLUSION IS THE APPROPRIATE REMEDY</u>

This Court has explained that it "will, as it must, limit the expert testimony at trial to that disclosed in the expert reports."  *Stored Value Sols., Inc. v. Card Activation Techs., Inc.*, 2010 WL 3834457, at *2 n.1 (D. Del. Sep. 27, 2010); *accord Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 2015 WL 10457176, at *4 (D. Del. April 23, 2015) ("Absent approval of the Court, all experts for all parties are PRECLUDED from testifying beyond the scope of their reports . . . .").  Such limitation is appropriate here—not only as to Ms. Harper and Mr. Nolte, but all of L'Oréal's experts surviving to trial.

Federal Rule of Civil Procedure 26(a)(2)(B) requires an expert to disclose in his or her report "a *complete statement of all opinions* the witness will express *and the basis and reasons for them*." *Id.* (emphasis added).  As described above, several of L'Oréal's experts attempted to offer additional opinions at deposition beyond what was set forth in their Rule 26 reports.  If these experts are permitted to testify at trial, L'Oréal will likely attempt to elicit or use undisclosed opinions to remedy their deficient Rule 26 reports.  Such testimony is not a "reasonable synthesis and/or elaboration of the opinions contained in [their] report[s]" and therefore must be excluded. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 585 F. Supp. 2d 568, 581 (D. Del. 2008).

Notably, in its Opposition to Olaplex's *Daubert* challenge of Mr. Nolte's purported causation opinion, L'Oréal represented to the Court (contrary to Mr. Nolte's deposition testimony) that "Mr. Nolte was not asked, nor does he intend, to offer an opinion on causation." D.I. 755, at 1. Taking that representation as true, L'Oréal has no basis to oppose this motion precluding L'Oréal from eliciting, or Mr. Nolte from offering, a "causation" opinion at trial. Similarly, L'Oréal should not allowed to attempt to rescue Ms. Harper's unstated figures by asserting they are "mere arithmetic." A central purpose of a Rule 26 report is to permit testing of the expert's opinions and their underlying methodology. *See Withrow v. Spears*, 967 F. Supp. 2d 982, 1000 (D. Del. 2013); Fed. R. Evid. 702. Ms. Harper's report does not attempt to quantify her "millions" figure and the challenged opinions are thus not "synthesis and/or elaboration" of that claim. *Power Integrations*, 585 F. Supp. 2d at 581.

Moreover, Olaplex would be unfairly prejudiced by allowing such new opinions at trial. Curing such prejudice would require supplemental discovery, which is impossible given the trial date. *See* D.I. 195. *See Forest Labs., Inc. v. Ivax Pharm., Inc.*, 237 F.R.D. 106, 113-14 (D. Del. 2006) (sustaining objections to expert's trial testimony as beyond the scope of his expert reports); *see also Hurley v. Atlantic City Police Dept.*, 174 F.3d 95, 113 (3d Cir. 1999) (factors for determining whether allowing testimony beyond the scope of expert reports was abuse of discretion include prejudice to opposing party, ability to cure the prejudice, disruption of trial, and bad faith or willfulness of non-compliance), *abrogated on other grounds by Potente v. Cty. of Hudson*, 900 A,2d 787, 794 (N.J. 2006) (applying state law).

## III.   <u>CONCLUSION</u>

Olaplex respectfully requests that the Court grant this Motion and enter an order precluding L'Oréal from eliciting expert opinion testimony outside the scope of its experts' reports.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Adam DiClemente
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5200

May 1, 2019

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2019, copies of the foregoing were caused to be served upon

the following in the manner indicated:

| | |
|---|---|
| Frederick L. Cottrell, Esquire | *VIA ELECTRONIC MAIL* |
| Jeffrey L. Moyer, Esquire | |
| Jason J. Rawnsley, Esquire | |
| Katharine Lester Mowery, Esquire | |
| RICHARDS, LAYTON & FINGER, PA | |
| One Rodney Square | |
| 920 North King Street | |
| Wilmington, DE  19801 | |
| *Attorneys for Defendants* | |

Dennis S. Ellis, Esquire                                               *VIA ELECTRONIC MAIL*
Katherine Murray, Esquire
Adam M. Reich, Esquire
Serli Polatoglu, Esquire
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA  90071
*Attorneys for Defendants*

Naveen Modi, Esquire                                               *VIA ELECTRONIC MAIL*
Joseph E. Palys, Esquire
Daniel Zeilberger, Esquire
Michael A. Wolfe, Esquire
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, D.C.  20005
*Attorneys for Defendants*

Scott F. Peachman, Esquire                                               *VIA ELECTRONIC MAIL*
PAUL HASTINGS LLP
200 Park Avenue
New York, NY  10166
*Attorneys for Defendants*

*/s/ Anthony D. Raucci*
Anthony D. Raucci (#5948)

1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-14-JFB-SRF |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA | ) | **CONFIDENTIAL –** |
| PRODUCTS, INC., L'ORÉAL USA S/D, | ) | **FILED UNDER SEAL** |
| INC. and REDKEN 5TH AVENUE NYC, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 1 TO PRECLUDE TESTIMONY OF DEFENDANTS' EXPERTS OUTSIDE THE SCOPE OF THEIR EXPERT REPORTS

Of Counsel:

Dennis S. Ellis
Katherine F. Murray
Adam M. Reich
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
(213) 683-6000

Naveen Modi
Joseph E. Palys
Daniel Zeilberger
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1990

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Dated:  May 8, 2019

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Katharine L. Mowery (#5629)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
mowery@rlf.com

*Attorneys for Defendants*
*L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc. and Redken 5th Avenue NYC, LLC*

## I.      SUMMARY OF ARGUMENT

Defendants agree, in principle, that experts should not be permitted to provide testimony

at trial that goes beyond the scope of their reports.  However, any such rule must be applied

equally to all parties, not just to Defendants' experts.  Fed. R. Civ. P. 26(a)(2)(B).

Notwithstanding Defendants' position, Defendants oppose Plaintiffs' Motion because it is

premature and vague.  Courts routinely deny motions *in limine* that seek to preclude expert

testimony that goes "beyond the scope" of expert reports, holding that such determinations are

more appropriately made at trial.  *See, e.g.*, *Almirall LLC v. Taro Pharm. Indus. LTD*, 2019 WL

316742, at *3 (D. Del. Jan. 24, 2019) (denying motion *in limine* to exclude expert testimony

outside the scope of the expert's report, holding that while "only testimony and opinions

properly disclosed in expert reports will be permitted[,] [plaintiff]'s challenges to purportedly

undisclosed testimony may be based on an unduly narrow reading of the reports," and such

objections would more appropriately be made at trial).  Moreover, Plaintiffs' Motion is vague, as

it purports to encompass all of Defendants' experts, but fails to pinpoint exactly which of their

opinions will go beyond the scope of their reports.  "Evidentiary rulings, especially ones that

encompass broad classes of evidence, should generally be deferred until trial to allow for the

resolution of questions of foundation, relevancy, and potential prejudice in proper context."

*Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013).

## II.     OLAPLEX'S OBJECTIONS AS TO THE SCOPE OF DEFENDANTS' EXPERTS' TESTIMONY ARE BETTER RESERVED FOR TRIAL.

While Defendants agree with the basic principle that parties' experts should not be

permitted to testify about subjects beyond the scope of their reports, granting a motion *in limine*

to this effect would be premature.  Save for two experts, Plaintiffs have failed to articulate what

matters would be "outside the scope" of Defendants' experts' reports.  *Leonard*, 981 F. Supp. 2d

at 276 ("[T]he court may deny a motion in limine when it lacks the necessary specificity with respect to the evidence to be excluded.")  As such, an order proscribing such testimony for Defendants' remaining experts would be vague, and susceptible to different interpretations by both parties.  *See, e.g.*, *Almirall*, 2019 WL 316742, at *3 (D. Del. Jan. 24, 2019) (denying motion *in limine* to exclude expert testimony outside the scope of the expert's report, holding that while "only testimony and opinions properly disclosed in expert reports will be permitted[,] [plaintiff]'s challenges to purportedly undisclosed testimony may be based on an *unduly narrow reading of the reports*") (emphasis added).  *See also Bailey v. B.S. Quarries, Inc.*, 2016 WL 3411639, at *3, n.3 (M.D. Pa. June 16, 2016) (denying motion *in limine* to preclude expert testimony beyond the scope of the expert's report, holding that an objection at trial would be a more appropriate means to decide the issue); *Lee v. Bawuah*, 2008 WL 8929051, at *1 (S.D.N.Y. July 23, 2008) (denying motion *in limine* to preclude doctors from testifying as to matters outside their report, holding that "defense counsel can object to any testimony at trial that goes beyond the scope of the doctors' role as treating physician; the Court cannot rule in advance on any question by question issues, but will rule as necessary at trial").  Indeed, even Plaintiffs' cited authority supports the proposition that *in limine* preclusion of testimony as to matters outside an expert's report would be premature.  *See, e.g.*, *Stored Value Sols., Inc. v. Card Activation Techs., Inc.*, 2010 WL 3834457, at *2 (D. Del. Sept. 27, 2010) ("The Court will defer ruling on any objection to expert testimony as beyond the scope of the expert reports until after trial.").

Plaintiffs' arguments as to the two matters specifically identified as outside the scope of Defendants' expert reports are unconvincing.  First, Plaintiffs assert that David Nolte, Defendants' damages expert, should be precluded from offering an opinion as to causation in connection with Defendants' false advertising and false marking claims.  However, Mr. Nolte

considered facts pertinent to causation in forming his damages opinions, as explained in his report, and should be permitted to discuss the facts he relied on at trial.  An order prematurely circumscribing such testimony would be improper.  Moreover, Plaintiffs' contention that Ms. Harper's opinion that Olaplex deceived millions of consumers should be excluded as "beyond the scope" of her report is belied by the Motion itself, which concedes that Ms. Harper included this opinion in her expert report, and she expounded upon it at her deposition.[1]  (Mot. at 2.)  As such, Olaplex has not articulated any grounds on which these or any other expert opinions should be excluded *in limine*, and its Motion should be denied.

---

[1] Olaplex's contention that the admission of these opinions would necessitate additional discovery is nonsensical, as these are not "new" opinions.  Moreover, as Olaplex successfully blocked Defendants' efforts to obtain additional discovery as to causation and related matters, it should not now be allowed to block Defendants' introduction of such evidence.  (*See* D.I. 673, Ex. B at 26:11-22, 30:20-31:11.) (Magistrate denying Defendants' motion to compel Plaintiffs to produce additional discovery relating to their false advertising based on Olaplex's representations that further discovery would be "cumulative.").

Of Counsel:

Dennis S. Ellis
Katherine F. Murray
Adam M. Reich
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
(213) 683-6000

Naveen Modi
Joseph E. Palys
Daniel Zeilberger
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1990

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Dated:  May 8, 2019

/s/ Frederick L. Cottrell, III
Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Katharine L. Mowery (#5629)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
mowery@rlf.com

**Attorneys for Defendants**
*L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc. and Redken 5th Avenue NYC, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2019, true and correct copies of the foregoing document were caused to be served on the following counsel of record as indicated:

**VIA ELECTRONIC MAIL**
Jack B. Blumenfeld
Jeremy A. Tigan
Anthony D. Raucci
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

Diane M. Doolittle
Suong T. Nguyen
Quinn, Emmanuel, Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(605) 801-5000
dianedoolittle@quinnemanuel.com
suongnguyen@quinnemanuel.com

Jared W. Newton
Quinn, Emmanuel, Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000
jarednewton@quinnemanuel.com

Megan Y. Yung
Quinn, Emmanuel, Urquhart & Sullivan, LLP
111 Huntington Avenue
Suite 520
Boston, MA 02199
meganyung@quinnemanuel.com

**VIA ELECTRONIC MAIL**
Amardeep L. Thakur
Joseph M. Paunovich
Bruce E. Van Dalsem
Ali Moghaddas
Patrick T. Schmidt
William Odom
Quinn, Emmanuel, Urquhart & Sullivan, LLP
865 S. Figueroa Street
Los Angeles, CA 90017
(213) 443-3000
amarthakur@quinnemanuel.com
joepaunovich@quinnemanuel.com
brucevandalsem@quinnemanuel.com
alimoghaddas@quinnemanuel.com
patrickschmidt@quinnemanuel.com
william.odom@quinnemanuel.com

Adam J. DiClemente
Quinn, Emmanuel, Urquhart & Sullivan, LLP
55 Madison Avenue
22nd Floor
New York, NY 10010
(212) 849-7361
adamdiclemente@quinnemanuel.com

Matthew K. Blackburn
Diamond McCarthy LLP
150 California Street
Suite 2200
San Francisco, CA 94111
(415) 263-9200
mblackburn@diamondmccarthy.com

*/s/ Katharine L. Mowery*
Katharine L. Mowery (#5629)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LIQWD, INC. and OLAPLEX LLC,      )
     )
     Plaintiffs,      )
     )
     v.      )     C. A. No. 1:17-cv-00014-JFB-SRF
     )
L'ORÉAL USA, INC., L'ORÉAL USA      )     **CONFIDENTIAL –**
PRODUCTS, INC., L'ORÉAL USA      )     **FILED UNDER SEAL**
S/D, INC., and REDKEN 5TH AVENUE      )
NYC, L.L.C.,      )
     )
     Defendants.      )

## PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION _IN LIMINE_ NO. 1 TO PRECLUDE TESTIMONY OF DEFENDANTS' EXPERTS OUTSIDE THE SCOPE OF THEIR EXPERT REPORTS

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

Adam DiClemente
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA 94111
(415) 692-5200

May 13, 2019

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

_Attorneys for Plaintiffs_

Plaintiffs' ("Olaplex") and Defendants ("L'Oréal") are in accord: "experts should not be permitted to provide testimony at trial that goes beyond the scope of their reports." Opp. at 1. Notwithstanding this agreement, L'Oréal argues that Olaplex's Motion is "premature and vague" because Olaplex identified "only" two instances in which L'Oréal's experts already attempt to offer opinions beyond their reports. *Id.* At a minimum, the Court should exclude those improper opinions, and Olaplex maintains that an *in limine* order covering all experts at trial is warranted. The specificity of Olaplex's Motion alone distinguishes this case from L'Oréal's cited authorities, which do not address specific examples of testimony outside the scope of expert reports. *E.g.*, *Bailey v. B.S. Quarries, Inc.*, 2016 WL 3411639 (M.D. Pa. June 16, 2016); *Lee v. Bawuah*, 2008 WL 8929051 (S.D.N.Y. July 23, 2008). L'Oréal's other authorities are inapposite bench trials, not jury trials mandating relief as here. *E.g.*, *Almirall LLC v. Taro Pharma. Indus. LTD*, 2019 WL 316742, at *2 (D. Del. Jan. 24, 2019). The concerns about "new" expert opinions are significant because this is a jury trial, and juries often heed expert testimony closely. For that reason, numerous decisions exist precluding, *in limine*, experts from offering opinions beyond their Rule 26 reports (*see* Mot. at 2); the Court should exercise its discretion to do so here for the reasons outlined in the Motion. As to David Nolte, L'Oréal's defense of his novel causation opinions fails. Opp. at 2-3. At deposition Mr. Nolte for the first time purported to opine on causation (Mot. at 1 & n.3). L'Oréal claims that he "explained in his report" that he "considered facts pertinent to causation," Opp. at 2-3, but can offer no citation proving this because there is none. *See* D.I. 720, Ex. 5. As to Rhonda Harper, L'Oréal attempts to characterize the "at least 33 million" figure offered by **counsel** at deposition as merely "expound[ing] upon" her written "millions of consumers" opinion. Opp. at 3. But **attorney** testimony at deposition to buttress a conclusory opinion is still an opinion outside the report, and improper. Mot. at 1-2; D.I. 687, at 13-14 & n.3.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Anthony D. Raucci

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Adam DiClemente
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5200

May 13, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2019, copies of the foregoing were caused to be served

upon the following in the manner indicated:

Frederick L. Cottrell, Esquire                                    *VIA ELECTRONIC MAIL*
Jeffrey L. Moyer, Esquire
Jason J. Rawnsley, Esquire
Katharine Lester Mowery, Esquire
RICHARDS, LAYTON & FINGER, PA
One Rodney Square
920 North King Street
Wilmington, DE  19801
*Attorneys for Defendants*

Dennis S. Ellis, Esquire                                          *VIA ELECTRONIC MAIL*
Katherine Murray, Esquire
Adam M. Reich, Esquire
Serli Polatoglu, Esquire
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA  90071
*Attorneys for Defendants*

Naveen Modi, Esquire                                             *VIA ELECTRONIC MAIL*
Joseph E. Palys, Esquire
Daniel Zeilberger, Esquire
Michael A. Wolfe, Esquire
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, D.C.  20005
*Attorneys for Defendants*

Scott F. Peachman, Esquire                                      *VIA ELECTRONIC MAIL*
PAUL HASTINGS LLP
200 Park Avenue
New York, NY  10166
*Attorneys for Defendants*

                                        */s/ Anthony D. Raucci*
                                        Anthony D. Raucci (#5948)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C. A. No. 17-14 (JFB) (SRF) |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA | ) | **CONFIDENTIAL –** |
| PRODUCTS, INC., L'ORÉAL USA S/D, | ) | **FILED UNDER SEAL** |
| INC., and REDKEN 5TH AVENUE | ) | |
| NYC, L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MOTION *IN LIMINE* NO. 2 TO PRECLUDE REFERENCE TO OR USE OF POST GRANT REVIEW PROCEEDINGS RELATING TO THE PATENTS-IN-SUIT

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Adam DiClemente
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5200

May 1, 2019

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

*Attorneys for Plaintiffs*

Defendants ("L'Oréal") should be precluded from referencing or using at trial any Post Grant Review ("PGR") proceedings or decisions regarding the Patents-in-Suit, including reference or use of any decision that issues between now and trial.

## I.    BACKGROUND

Plaintiffs ("Olaplex") claim that L'Oréal infringes U.S. Patent No. 9,498,419 ("'419 Patent") and No. 9,668,954 ("'954 Patent").  D.I. 636, at 25-37.  Post-Grant Review of the '419 Patent was instituted on July 19, 2017.  *See L'Oreal USA, Inc. v. Liqwd, Inc.*, No. PGR2017–00012, 2017 WL 3085428 (PTAB July 19, 2017).  The Patent Office found claims 1-8 and 10 of the '419 Patent to be unpatentable.  D.I. 373.  Olaplex has timely appealed that decision to the United States Court of Appeals for the Federal Circuit, where the appeal remains active and pending.  *See Liqwd, Inc. v. L'Oréal USA, Inc.*, Case No. 2018-2152.  Post-Grant Review of the '954 Patent was instituted on August 30, 2018.  *See L'Oreal USA, Inc. v. Liqwd, Inc.*, No. PGR2018-00025, 2018 WL 3934314 (PTAB Aug 10, 2018).  The Patent Office has not yet issued a decision in this PGR proceeding.[1]

As a defense to Olaplex's infringement claims, L'Oréal contends that the Patents-in-Suit are invalid.  *See, e.g.*, D.I. 650 at 26 (Fourth Defense), *id.* ¶¶ 255-59, 265-69.  L'Oréal should be precluded from arguing that the Patent Office's decisions—to date and any additional decisions prior to the start of trial—are evidence of invalidity in support of this defense.  Because, as described below, such evidence is "inadmissible on all potential grounds," *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013), and because the development and presentation of the evidence at trial will not bear upon the admissibility question, *cf. C R Bard*

---

[1]    The Patent Office **declined** to institute Post-Grant review in response to several petitions concerning the Patents-in-Suit.  This Motion seeks an order precluding **any** reference or use of PGR proceedings and, as such, applies equally to these declinations.

*Inc. v. AngioDynamics Inc.*, 2018 WL 3468215, at *3 (D. Del. July 18, 2018), an order *in limine* is appropriate.

## II.   **ARGUMENT**

The Patent Office's decision on the '419 Patent is not binding on the district court and is still on appeal to the Federal Circuit, and its decision to institute '954 Patent PGR proceedings is preliminary.[2]   Therefore, any reference to this decision or institution, or to the proceeding generally, would be highly prejudicial to Olaplex at trial.   Fed. R. Evid. 403; *see Hologic, Inc. v. Minerva Surgical, Inc.*, 2018 WL 3348998, at *4 (D. Del. July 9, 2018) (issuing order *in limine* "because the patent office proceeding and decision are not binding and are on appeal, the prejudicial and confusing effect of the evidence almost certainly outweighs any probative value.").   The nature of Patent Office PGR decisions, and their interaction with Article III appeals, is a complex question beyond the understanding of a reasonable jury.   A jury will not likely understand how to weigh an administrative decision subject to appeal that may be reversed (as to the '419 Patent), nor a decision to institute PGR proceedings (as to the '954 Patent), and is likely to give the Patent Office's decisions far more weight than the law permits.   Indeed, even on instruction a jury is not likely to comprehend the differing burdens of proof employed by the Patent Office (as compared to the Article III Courts), or the meaning of institution of PGR proceedings.   Should the Federal Circuit reverse (in whole or in part) the Patent Office's decision on the '419 Patent, or should the Patent Office determine that the '954 Patent was duly issued, the jury will have already been tainted by presentation of this information, necessitating retrial.

Where, as here, the Patent Office's decision is not binding and the Federal Circuit has not ruled on it, courts ***routinely exclude any reference to or reliance on*** the Patent Office's decision

---

[2]   The Patent Office may issue a decision on the '954 Patent between now and trial.   As such, the Court's order should extend to any decisions that may issue from the Patent Office.

under Rule 403.  *See, e.g.*, *Callaway Golf Co. v. Acushnet Co*., 576 F.3d 1331, 1343 (Fed. Cir. 2009) (applying Third Circuit law, finding that the results of the Patent Office proceedings were "not binding" on the district court and the "prejudicial nature of evidence" "outweighed whatever marginal probative or corrective value"); *Hologic, Inc.*, 2018 WL 3348998, at *4 (excluding reference to the substance and decision of PGR proceedings "with respect to the merits"); *Personalized User Model, L.L.P. v. Google Inc.*, 2014 WL 807736, at *3 (D. Del. Feb. 27, 2014) (excluding any reference to Patent Office proceedings because "given the non-finality of the reexamination proceedings . . . the probative value of the reexamination evidence is substantially outweighed by the risk of unfair prejudice"); *Belden Techs. Inc. v. Superior Essex Commc'ns LP*, 802 F. Supp. 2d 555, 569 (D. Del. 2011) ("final" decision by Patent Office "not binding on the court" and "far more prejudicial than probative").

In addition to yielding unfair prejudice, reference to the PGR proceedings would present a substantial danger of confusing the issues and misleading the jury.  *See* Fed. R. Evid. 403. PGR proceedings apply unique burdens of proof and different legal standards from those in District Court.  It would be difficult, if not impossible, to instruct a jury on these critical nuances. *See Personalized User Model*, 2014 WL 807736, at *3 (excluding any reference to the Patent Office proceedings because of the "different standards applicable" to patent office proceedings and litigation "risk confusing the jury"); *Callaway*, 576 F.3d at 1343 (risk of jury confusion is "high" if evidence from Patent Office proceedings introduced); *Belden Techs.*, 802 F. Supp. 2d at 569 (admitting the final results at the Patent Office "would have only served to confuse the jury").

## III.   <u>CONCLUSION</u>

Olaplex respectfully requests that the Court grant this motion and enter an order precluding L'Oréal from referencing or using at trial any PGR proceedings or decisions.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Adam DiClemente
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5200

May 1, 2019

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 1, 2019, copies of the foregoing were caused to be served upon the following in the manner indicated:

| | |
|---|---|
| Frederick L. Cottrell, Esquire | *VIA ELECTRONIC MAIL* |
| Jeffrey L. Moyer, Esquire | |
| Jason J. Rawnsley, Esquire | |
| Katharine Lester Mowery, Esquire | |
| RICHARDS, LAYTON & FINGER, PA | |
| One Rodney Square | |
| 920 North King Street | |
| Wilmington, DE  19801 | |
| *Attorneys for Defendants* | |

Dennis S. Ellis, Esquire                                                   *VIA ELECTRONIC MAIL*
Katherine Murray, Esquire
Adam M. Reich, Esquire
Serli Polatoglu, Esquire
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA  90071
*Attorneys for Defendants*

Naveen Modi, Esquire                                                   *VIA ELECTRONIC MAIL*
Joseph E. Palys, Esquire
Daniel Zeilberger, Esquire
Michael A. Wolfe, Esquire
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, D.C.  20005
*Attorneys for Defendants*

Scott F. Peachman, Esquire                                             *VIA ELECTRONIC MAIL*
PAUL HASTINGS LLP
200 Park Avenue
New York, NY  10166
*Attorneys for Defendants*

/s/ *Anthony D. Raucci*
Anthony D. Raucci (#5948)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-14-JFB-SRF |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA | ) | **HIGHLY CONFIDENTIAL** |
| PRODUCTS, INC., L'ORÉAL USA S/D, INC., | ) | **FILED UNDER SEAL** |
| and REDKEN 5TH AVENUE NYC, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION *IN LIMINE* NO. 2 TO PRECLUDE REFERENCE TO OR USE OF POST GRANT REVIEW PROCEEDINGS RELATING TO THE PATENTS-IN-SUIT

Of Counsel:
Dennis S. Ellis
Katherine F. Murray
Adam M. Reich
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
(213) 683-6000

Naveen Modi
Joseph E. Palys
Daniel Zeilberger
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1990

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Dated: May 8, 2019

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Katharine L. Mowery (#5629)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
mowery@rlf.com

*Attorneys for Defendants*
*L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc. and Redken 5th Avenue NYC, LLC*

Defendant L'Oréal USA, Inc. initiated post-grant reviews ("PGRs") against the two asserted patents in this case, U.S. Patent No. 9,498,419 ("the '419 patent") and U.S. Patent No. 9,668,954 ("the '954 patent"). The '419 patent PGR was instituted on July 19, 2017, *L'Oréal USA, Inc. v. Liqwd, Inc.*, No. PGR2017-00012, 2017 WL 3085428 (P.T.A.B. July 19, 2017), and the Patent Trial and Appeal Board ("PTAB") issued a final written decision on June 27, 2018, finding all of the claims-at-issue (claims 1-8 and 10) to be unpatentable. (D.I. 373.) The '954 patent PGR was instituted on August 10, 2018 (as to all claims), but a final decision has not yet issued. *L'Oréal USA, Inc. v. Liqwd, Inc.*, No. PGR2018-00025, 2018 WL 3934314 (P.T.A.B. Aug. 10, 2018). Plaintiffs ask that the Court "enter an order precluding L'Oréal from referencing or using at trial any PGR proceedings or decisions" under Rule 403 of the Federal Rules of Evidence. (Mot. at 3.) Plaintiffs' motion should be denied for several reasons.

***First***, Plaintiffs ask for the motion *in limine* to apply only to Defendants. (*See* Mot. at 3.) By making such a one-sided request, Plaintiffs concede the relevance of the information at issue. There is no legitimate basis to apply a PGR-related restriction on Defendants and not Plaintiffs. If the Court were to agree with Plaintiffs' arguments as to prejudice and confusion, they would apply in both directions.

***Second***, the PGR proceedings are part of the intrinsic records of the asserted patents and thus are relevant to both Plaintiffs' and Defendants' claims and defenses concerning these patents (e.g., as to invalidity, non-infringement, and estoppel). *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004).

***Third***, Plaintiffs themselves have highlighted the relevance of this intrinsic evidence by heavily relying on the PGR record throughout this case to support their positions concerning the asserted patents. For instance, Plaintiff's technical expert referenced the PGR record in well

1

over 100 paragraphs of his expert report to support his opinions on validity.  (*See, e.g.*, D.I. 716,

Ex. B at ¶¶ 79-82, 86-96, 106, 108, 109, 115, 180, 198, 219, 220, 222, 228, 231-235, 238, 256-

258, 279, 283, 293, 310, 312, 314-316, 347-351, 353, 354, 356, 358, 360, 361, 368-371, 373,

374, 376, 378, 380, 381, 383, 385, 392, 400, 458-460, 464-466, 468-471, 475-479, 481-483, 485-

487, 489, 490, 492, 497, 498, 500, 502, 509, 519, 532, 542, 550, 562, 564, 567, 570-576, 579,

581, 582, 585-588, 591, 613, 622, 635, 645, 669, 681, 695, 708, 719, 822, 830, 850, 853, 863-

865, 978.)  In fact, many of these paragraphs cite exclusively to the PGR record, and go to key

issues such as whether the prior art discloses certain claim limitations.  It would be highly

prejudicial to preclude Defendants from referencing or using the PGR record—effectively

shielding Plaintiffs' expert from questions about the PGR record—when Plaintiffs' expert has

relied on the PGR record to support his opinions.

     ***Fourth***, testimonial and documentary evidence has been developed in the PGR

proceedings that is relevant here.  For instance, Plaintiff Liqwd, Inc. submitted to the PTAB

declarations from one co-inventor Eric Pressly (Ex. A), Plaintiffs' CEO, Dean Christal (Ex. B;

Ex. C), and a technical expert, Edward Borish, (Ex. D; Ex. E).  Each of these individuals was

also deposed in relation to the PGR proceedings, resulting in deposition transcripts being

submitted into evidence in the PGR proceedings.[1]  Pressly and Christal are fact witnesses in this

case (*see* D.I. 762) and Borish is Plaintiffs' technical expert (*see* D.I. 714 Ex. B).  This Court has

previously recognized that it is entirely permissible for "evidence that has been developed in [a

post-grant patent office proceeding, such as a PGR] – including testimonial as well as

documentary evidence – [to] be used at trial, provided that it is done without referencing the

---

[1] Plaintiffs have refused to produce deposition transcripts associated with the '954 patent PGR,
which is a subject of objections filed by Defendants.  (*See* D.I. 729.)

[proceeding]." *Siemens Mobility Inc. v. Westinghouse Air Brake Techs. Corp.*, No. 16-284-LPS, 2019 WL 77046, at *1 (D. Del. Jan. 2, 2019). Thus, at a minimum, Defendants should be allowed to make the jury aware of testimony and evidence offered to the PTAB to assess witness credibility and truthfulness, particularly where the testimony is inconsistent with what is offered to the jury. Indeed, while Plaintiffs ask the Court to preclude reference to anything from the PGR *proceedings*, its arguments are exclusively directed to issues associated with putting PGR *decisions* before the jury. (Mot. at 2-3.) While inconsistent testimony may be harmful to Plaintiffs' case, it is not the sort of prejudice that is considered in the context of FRE Rule 403. Consistent with the finding in *Siemens Mobility*, testimonial and documentary evidence developed in the PGR proceedings should be admissible.

**Fifth**, Plaintiffs assert that Defendants "[have] willfully infringed, and [are] willfully infringing the Asserted Patents" and further ask that "this case [be] found to be an exceptional case." (D.I. 636 at 42.) Therefore, "the fact of initiation of the [PGR] proceeding[s] may be relevant to issues of subjective intent and willfulness." *Hologic, Inc. v. Minerva Surgical, Inc.*, No. 1:15-cv-1031, 2018 WL 3348998, at *4 (D. Del. July 9, 2018). While Plaintiffs argue that the jury will not know how to assess the PGR decisions against the patents-in-suit (Mot. at 2-3), no such prejudice could apply to references to the filing of the PGRs. And even if there was some *de minimis* prejudice, it is not undue prejudice since it is highly relevant and the likelihood of any jury confusion is low. Therefore, Defendants should be allowed to present the jury with sufficient evidence from the PGR proceedings to defend against Plaintiffs' claims that relate to Defendants' intent.

For the foregoing reasons, Defendants respectfully submit that Plaintiffs' motion should be denied.

                                          */s/ Frederick L. Cottrell, III*
Of Counsel:                               Frederick L. Cottrell, III (#2555)
                                          Jeffrey L. Moyer (#3309)
Dennis S. Ellis                           Katharine L. Mowery (#5629)
Katherine F. Murray                       Richards, Layton & Finger, P.A.
Adam M. Reich                             One Rodney Square
Paul Hastings LLP                         920 N. King Street
515 South Flower Street, 25th Floor       Wilmington, Delaware 19801
Los Angeles, CA 90071                     (302) 651-7700
(213) 683-6000                            cottrell@rlf.com
                                          moyer@rlf.com
Naveen Modi                               mowery@rlf.com
Joseph E. Palys
Daniel Zeilberger                         **Attorneys for Defendants**
Paul Hastings LLP                         *L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal*
875 15th Street, N.W.                      *USA S/D, Inc. and Redken 5th Avenue NYC, LLC*
Washington, D.C. 20005
(202) 551-1990

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Dated:  May 8, 2019

4

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2019, true and correct copies of the foregoing document were caused to be served on the following counsel of record as indicated:

**VIA ELECTRONIC MAIL**
Jack B. Blumenfeld
Jeremy A. Tigan
Anthony D. Raucci
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

Diane M. Doolittle
Suong T. Nguyen
Quinn, Emmanuel, Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(605) 801-5000
dianedoolittle@quinnemanuel.com
suongnguyen@quinnemanuel.com

Jared W. Newton
Quinn, Emmanuel, Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000
jarednewton@quinnemanuel.com

Megan Y. Yung
Quinn, Emmanuel, Urquhart & Sullivan, LLP
111 Huntington Avenue
Suite 520
Boston, MA 02199
meganyung@quinnemanuel.com

**VIA ELECTRONIC MAIL**
Amardeep L. Thakur
Joseph M. Paunovich
Bruce E. Van Dalsem
Ali Moghaddas
Patrick T. Schmidt
William Odom
Quinn, Emmanuel, Urquhart & Sullivan, LLP
865 S. Figueroa Street
Los Angeles, CA 90017
(213) 443-3000
amarthakur@quinnemanuel.com
joepaunovich@quinnemanuel.com
brucevandalsem@quinnemanuel.com
alimoghaddas@quinnemanuel.com
patrickschmidt@quinnemanuel.com
william.odom@quinnemanuel.com

Adam J. DiClemente
Quinn, Emmanuel, Urquhart & Sullivan, LLP
55 Madison Avenue
22nd Floor
New York, NY 10010
(212) 849-7361
adamdiclemente@quinnemanuel.com

Matthew K. Blackburn
Diamond McCarthy LLP
150 California Street
Suite 2200
San Francisco, CA 94111
(415) 263-9200
mblackburn@diamondmccarthy.com

*/s/ Katharine L. Mowery*
Katharine L. Mowery (#5629)

# Exhibit A

PGR 2017–00012

Filed on behalf of Liqwd, Inc.
By:   Matthew K. Blackburn
      DIAMOND MCCARTHY LLP
      150 California St., Suite 2200
      San Francisco, CA  94111
      Tel: 415.692.5200
      Fax: 415.263.9200

**CONTAINS CONFIDENTIAL INFORMATION**

UNITED STATES PATENT AND TRADEMARK OFFICE

————————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————————

L'ORÉAL USA, INC.,
*Petitioner,*

v.

LIQWD, INC.,
*Patent Owner.*

————————————

Case PGR 2017–00012
Patent No. 9,498,419

————————————

DECLARATION OF ERIC D. PRESSLY, Ph.D.

Mail Stop PATENT BOARD
Patent Trial & Appeal Board
U.S. Patent & Trademark Office
P.O. Box 1450
Alexandria, VA  22313–1450

Highly Confidential

OLA_0000066275

PGR 2017–00012
Patent No. 9,498,419

I, Eric D. Pressly, Ph.D., declare as follows:

1.      I am one of the co-inventors of U.S. Patent No. 9,498,419 ("the '419 patent") which is owned by Liqwd, Inc. ("Patent Owner"). I understand that Olaplex LLC ("Olaplex") is currently an exclusive licensee of the '419 patent, and I am a co-owner of Olaplex.

2.      I submit this declaration in support of Patent Owner's Response to the Post Grant Review Petitioner filed by Petitioner L'Oréal USA, Inc. ("Petitioner") in proceeding PGR2017–00012.

3.      Unless otherwise stated, I have personal knowledge of the facts stated in this affidavit, or believe them to be true based upon information provided to me by others and after a reasonable investigation. I could and would competently testify that the below facts are true and correct to the best of my knowledge if called upon to do so.

4.      I am a materials scientist by education and training. I graduated with honors from the Materials Science and Engineering department at the University of Illinois, and received my doctorate degree from the University of California Santa Barbara in Materials Science.

5.      I am self-employed and work with both Patent Owner and Olaplex. Among the work that I have done for Patent Owner and Olaplex is inventing and developing hair care products for them, answering technical questions, and

-1-

Highly Confidential

OLA_0000066276

Liqwd, Inc. Ex. 2022
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2017-00012

PGR 2017–00012
Patent No. 9,498,419

attending trade shows. I began working with Patent Owner in late 2012 and with Olaplex after it was founded in 2014.

6.     Dr. Craig Hawker (co-inventor of the '419 patent) and I partnered with Dean Christal in 2012 to invent and develop products to protect hair from the well-known damage that occurs during chemical services. Dr. Hawker and I sought out different chemistries to protect chemically treated hair. We worked with Mr. Christal in my home garage over months evaluating candidate compositions, which we applied to hair swatches while subjecting them to chemicals and subsequent washings.

7.     Dr. Hawker and I ultimately discovered the unexpected performance of compositions with certain active agents that provide protection to hair during chemical bleaching. Based on these discoveries, Olaplex licensed patent applications and patents from Patent Owner and commercialized a three-step "bond builder" hair care system: Bond Multiplier (No. 1), Bond Perfector (No. 2), and Hair Perfector (No. 3). The three-step Olaplex system uses bis-aminopropyl diglycol dimaleate as the active ingredient.

8.     I am a co-inventor on a series of U.S. patents and patent applications describing the use of a different chemical (maleic acid) as an additive in a method for bleaching hair.

-2-

Highly Confidential

PGR 2017–00012
Patent No. 9,498,419

9.      On May 15, 2015, a patent application (Ser. No. 14/713,885; Exhibit 2024) was filed naming Dr. Hawker and me as co-inventors, which described use of maleic acid as an additive for bleaching hair.

10.     In March of 2015, Petitioner contacted me and unsuccessfully tried to recruit and hire me to work with Petitioner, but I did not respond to that advance.

11.     In May of 2015, Dean Christal approached me and asked me to meet with representatives for Petitioner in Santa Monica, California. He instructed me that my role was to answer technical questions regarding the proprietary technology, which Dr. Hawker and I developed for Patent Owner to protect hair during bleaching treatments.

12.     On May 19, 2015, I travelled from Santa Barbara to Santa Monica for a lunch meeting with Petitioner's representatives at The Penthouse Restaurant in the Huntley Hotel. I joined the meeting in progress. Dean Christal and I attended on behalf of Patent Owner. From Petitioner, I recall meeting Mr. Roger Dolden, Mr. Hugo Kunetz, and Ms. Delphine Allard.

13.     Petitioner's representatives had a binder with them during the meeting, which I believe contained complete copies of each of Patent Owner's then-published Patent applications. Ms. Allard used a note pad to take notes of the discussions, and my answers to her questions about how the technology works.

-3-

Highly Confidential

OLA_0000066278

14.    Ms. Allard appeared to be reading a document during the meeting. I believe that document was a copy of our maleic acid patent application (Exhibit 2024) which had been filed just days earlier. Later, after the meeting with Petitioner's representatives, Mr. Christal confirmed that he had provided Ms. Allard with a copy of our maleic acid patent application under a non-disclosure agreement.

15.    Mr. Christal described to Petitioner's representatives that Patent Owner's patent applications describe cheaper alternatives to Olaplex's active, which I understood to a reference to maleic acid.

16.    Ms. Allard asked how we determined which compounds (including maleic acid) were effective and which were not. We discussed formulation, stability, and solubility of maleate ions that applied equally to the previously disclosed '419 patent and the Olaplex active ingredient.

17.    At the conclusion of the meeting, Petitioner's representatives took copies of Patent Owner's patent applications with them, including the application describing the use of maleic acid that Mr. Christal had provided during the meeting.

-4-

Highly Confidential

OLA_0000066279

PGR 2017–00012
Patent No. 9,498,419

I declare, under the penalty of perjury, that the foregoing is true and correct.

Executed October 19, 2017, at Santa Barbara, California.

Eric D. Pressly, Ph.D.

Highly Confidential

OLA_0000066280

# Exhibit B

PGR 2017–00012

Filed on behalf of Liqwd, Inc.
By:   Matthew K. Blackburn
      DIAMOND MCCARTHY LLP
      150 California St., Suite 2200
      San Francisco, CA 94111
      Tel: 415.692.5200
      Fax: 415.263.9200

**CONTAINS CONFIDENTIAL INFORMATION**

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

L'ORÉAL USA, INC.,
*Petitioner,*

v.

LIQWD, INC.,
*Patent Owner.*

_____

Case PGR 2017–00012
Patent No. 9,498,419

_____

DECLARATION OF DEAN CHRISTAL

Mail Stop PATENT BOARD
Patent Trial & Appeal Board
U.S. Patent & Trademark Office
P.O. Box 1450
Alexandria, VA 22313–1450

Highly Confidential

PGR 2017–00012
Patent No. 9,498,419

I, Dean Christal, declare as follows:

    1.    I founded and own Liqwd, Inc. ("Patent Owner"), which in turn owns U.S. Patent No. 9,498,419 ("the '419 patent"). I also co-own the exclusive licensee of the '419 patent, Olaplex LLC ("Olaplex").

    2.    I submit this declaration in support of Patent Owner's Response to the Post Grant Review Petition filed by Petitioner L'Oreal USA, Inc. ("Petitioner") in proceeding PGR2017–00012.

    3.    Unless otherwise stated, I have personal knowledge of the facts stated in this declaration, or believe them to be true based upon information provided to me by others and after a reasonable investigation. I could and would competently testify that the below facts are true and correct to the best of my knowledge if called upon to do so.

    4.    I founded Patent Owner in 2008. From my efforts to market Patent Owner's products, as well as from my personal experience in the hair care industry, I have had many conversations with professional stylists. By 2012, I came to understand the professional beauty industry had accepted that damage occurred to hair during bleach or chemical processes. Each year, consumers purchased many different products to hide or mask damage caused by chemical treatment. However, no product was available on the market to prevent damage to hair during chemical treatments such as bleaching.

Highly Confidential

OLA_0000066282

Liqwd, Inc. Ex. 2023
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2017-00012

PGR 2017–00012
Patent No. 9,498,419

5.      In 2012, I met Drs. Craig J. Hawker and Eric D. Pressly. During my initial conversation with Dr. Hawker, we talked about the need for a product to prevent hair damage during chemical treatments. Thereafter, I worked with Drs. Craig Hawker and Eric Pressly to develop these products. This work led to discoveries by Drs. Hawker and Pressly that certain chemicals had a protective effect when used during hair bleaching.

6.      In May 2014, I caused Olaplex to be registered as a business in the State of California. I have functioned as the CEO/Manager of Olaplex since it was founded. I formed Olaplex in order to bring to market one of the chemicals discovered by Drs. Hawker and Pressly, which had a protective effect when used during hair bleaching.

7.      Olaplex commercialized as a three-step Olaplex "bond builder" hair care system: Bond Multiplier (No. 1), Bond Perfector (No. 2), and Hair Perfector (No. 3) beginning on June 23, 2014 via the Olaplex website (www.olaplex.com). By November 2014, Olaplex had entered into a distribution contract with one of Petitioner's subsidiaries (Salon Centric) to distribute Olaplex's bond builder system.

8.      By at least 2015, after seeing Olaplex's success with stylists and its incredible sales at Salon Centric, Petitioner approached me about acquiring Olaplex.

Highly Confidential

OLA_0000066283

Liqwd, Inc. Ex. 2023
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2017-00012

PGR 2017–00012
Patent No. 9,498,419

9.      Over the course of the next nine months, I met with Petitioner's

employees and representatives multiple times. Among Petitioner's employees and

representatives that I met with were Paul Sharnsky; Bertrand Fontaine; Roger

Dolden; Hugo Kunetz; Delphine Allard; Nicolas Hieronimus; and An Verhulst-

Santos.

10.     In April/May 2015, Mr. Dolden, an Executive Vice President of

Petitioner, approached me and requested an in-person meeting to discuss the

possibility of Petitioner acquiring Olaplex.

11.     Thereafter, Mr. Dolden asked me to execute a Non-Disclosure

Agreement ("NDA"), a copy of which he provided via e-mail on May 13, 2015.

Ex. 2012 is a true and correct copy of the e-mail that I received from Mr. Dolden

on or about May 13, 2015 with the attachments. The NDA provided Petitioner with

a 60-day period of exclusivity to negotiate the purchase of Olaplex. During a

telephone call at that same time, I was told by Mr. Dolden that Petitioner's purpose

behind the NDA was to permit the sharing of information with Petitioner as part of

its due diligence process in connection with the acquisition.

12.     On May 15, 2015, I executed the NDA.

13.     Also in May of 2015, I approached Dr. Pressly and asked him to

attend the in-person meeting with representatives for Petitioner in Santa Monica,

California. I told Dr. Pressly that he was responsible for answering technical

Highly Confidential

OLA_0000066284

PGR 2017–00012
Patent No. 9,498,419

questions from Petitioner regarding the proprietary technology to protect hair

during bleaching treatments.

14.     On May 19, 2015, I drove by myself from Santa Barbara to Santa

Monica for the in-person meeting with Petitioner's representatives at The

Penthouse Restaurant in the Huntley Hotel. In attendance for Petitioner were Mr.

Roger Dolden (an Executive Vice President), Hugo Kunetz (the President for the

North Americas of Petitioner's parent, L'Oréal S.A.), and Ms. Delphine Allard

(who I understood at the time was a chemist for Petitioner).

15.     During the meeting, we discussed the three-step Olaplex "bond

builder" hair care system as well as other proprietary technology relating to other

chemicals (maleic acid) which had a protective effect when used during hair

bleaching.

16.     Under the NDA, I provided Petitioner with a copy of Patent Owner's

then-unpublished maleic acid patent application describing Patent Owner's

patented technology. Exhibit 2024 is a true and correct copy of the patent

application that I handed directly to Ms. Allard during the May 19, 2015 meeting. I

recall her reading the application during the meeting. At that time, this patent

application was secret and was not publicly available.

17.     At some point later, Dr. Pressly arrived and joined the meeting. The

general substance of Petitioner's questions during the meeting related to the

Highly Confidential

OLA_0000066285

Liqwd, Inc. Ex. 2023
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2017-00012

PGR 2017-00012
Patent No. 9,498,419

technology invented by Drs. Hawker and Pressly, the development and testing of

that technology, and the unpublished patent application, which I had earlier given

to Ms. Allard. I told Petitioner's representatives that cheaper alternatives to

Olaplex's active were contained in the patent application that I had earlier given to

Ms. Allard.

18.    Petitioner's representatives spoke with Dr. Pressly and asked him

questions. Ms. Allard asked how we determined which compounds, including

maleic acid, were effective and which were not.

19.    At the conclusion of the meeting, Petitioner's representatives took

copies of Patent Owner's patent applications with them, including the application

describing the use of maleic acid that I had provided earlier in the meeting.

20.    In May 2015, Petitioner did not have any commercially available

products that I was aware of which used maleic acid as an additive in a method for

bleaching hair. During our discussions about Petitioner acquiring Olaplex,

Petitioner never told me that they had developed a maleic acid-based additive for

using during bleaching. During these meetings, Petitioner had obtained information

that I believe it needed to develop new products copying Patent Owner's

proprietary maleic acid technology.

21.    Later in 2015, by September, Mr. Dolden returned to Los Angeles and

met with me. During that meeting, Mr. Dolden informed me that Petitioner was no

Highly Confidential

OLA_0000066286

Liqwd, Inc. Ex. 2023
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2017-00012

PGR 2017–00012
Patent No. 9,498,419

longer interested in purchasing our technology, including the maleic acid bleaching additive technology described and claimed in the '419 patent.

22.    In August of 2016, L'Oréal launched two products in the United States: Bond Ultim8 Step 1 Amplifier under the Matrix line and pH- Bonder #1 Bond Protecting Additive under the Redken brand. In November of 2016, L'Oréal also launched a third product Smartbond Step 1 Additive sold under its L'Oréal Professionnel line in the United States. In this declaration, I refer to these products collectively as the "Copy Products."

23.    The Copy Products were Petitioner's first commercially available products that used maleic acid as an additive in a method for bleaching hair.

24.    I believed at that time, and continue to believe, that the Copy Products use the '419 patent's technology and that Petitioner had improperly used information that it obtained from me to develop the Copy Products.

I declare, under the penalty of perjury, that the foregoing is true and correct. Executed October 18, 2017, at Santa Barbara, California.

Dean Christal

-6-

Highly Confidential

OLA_0000066287

# Exhibit C

PGR 2018–00025

Filed on behalf of Liqwd, Inc.
By:    Matthew K. Blackburn
       DIAMOND MCCARTHY LLP
       150 California St., Suite 2200
       San Francisco, CA 94111
       Tel: 415.692.5200
       Fax: 415.263.9200

**CONTAINS PROTECTIVE ORDER MATERIAL**

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE PATENT TRIAL AND APPEAL BOARD

L'ORÉAL USA, INC.,
*Petitioner,*

v.

LIQWD, INC.,
*Patent Owner.*

Case PGR 2018–00025
Patent No. 9,668,954

DECLARATION OF DEAN CHRISTAL

Mail Stop PATENT BOARD
Patent Trial & Appeal Board
U.S. Patent & Trademark Office
P.O. Box 1450
Alexandria, VA 22313–1450

-1-

Liqwd, Inc. Ex. 2046
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

PGR 2018–00025
Patent No. 9,668,954

I, Dean Christal, declare as follows:

1.      I founded and own Liqwd, Inc. ("Patent Owner"), which in turn owns U.S. Patent No. 9,668,954 ("the '954 patent"). I also co-own the exclusive licensee of the '954 patent, Olaplex LLC ("Olaplex").

2.      I submit this declaration in support of Patent Owner's Response to the Post Grant Review Petition filed by Petitioner L'Oréal USA, Inc. ("Petitioner") in proceeding PGR2018 – 00025.

3.      Unless otherwise stated, I have personal knowledge of the facts stated in this declaration, or believe them to be true based upon information provided to me by others and after a reasonable investigation. I could and would competently testify that the below facts are true and correct to the best of my knowledge if called upon to do so.

4.      I founded Patent Owner in 2008. From my efforts to market Patent Owner's products, as well as from my personal experience in the hair care industry, I have had many conversations with professional stylists. By 2012, I had come to understand the professional beauty industry accepted that damage occurred to hair during bleach or chemical treatment. Each year, consumers purchased many different products to hide or mask damage caused by chemical treatment. However, no product was available on the market to prevent damage to hair during chemical treatment, such as during bleaching.

-2-

Liqwd, Inc. Ex. 2046
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

OLA_0000120771

PGR 2018–00025
Patent No. 9,668,954

5.      In 2012, I met Drs. Craig J. Hawker and Eric D. Pressly. During my initial conversation with Dr. Hawker, we talked about the need for a product to prevent hair damage during chemical treatments. Afterwards, I worked with Drs. Hawker and Pressly to develop these products. This work led to discoveries by Drs. Hawker and Pressly that certain chemicals had a protective effect when used during hair bleaching.

6.      I have functioned as the CEO/Manager of Olaplex since it was founded in May 2014. I formed Olaplex in order to bring to market the three-step Olaplex "bond builder" hair care system: Bond Multiplier (No. 1), Bond Perfector (No. 2), and Hair Perfector (No. 3).

7.      One of Petitioner's subsidiaries (Salon Centric) entered into a contract to distribute Olaplex's bond builder system by November 2014. After Olaplex's success with stylists and its incredible sales at Salon Centric, Petitioner approached me by at least 2015 about acquiring Olaplex.

8.      Over the course of about nine months, I repeatedly met with Petitioner's employees and representatives, including: Paul Sharnsky; Bertrand Fontaine; Roger Dolden; Hugo Kunetz; Delphine Allard; Nicolas Hieronimus; and An Verhulst-Santos.

Liqwd, Inc. Ex. 2046
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential                                                                                    OLA_0000120772

9.      Mr. Dolden, who then was an Executive Vice President with Petitioner, approached me in April or May 2015 and requested an in-person meeting to discuss the possibility of Petitioner acquiring Olaplex.

10.      Mr. Dolden would later request that I execute a Non-Disclosure Agreement ("NDA"), which provided Petitioner with a 60-day period of exclusivity to negotiate the purchase of Olaplex. During a telephone call in mid-May 2015, Mr. Dolden told me that Petitioner's purpose behind the NDA was to permit information sharing with Petitioner as part of a due diligence process in connection with Petitioner's acquisition of Olaplex.

11.      I executed the NDA on May 15, 2015.

12.      Also in May of 2015, I approached Dr. Pressly and asked him to attend the in-person meeting in Santa Monica, California with Petitioner's representatives. I told Dr. Pressly, one of the inventors of the '954 patent, that he was responsible for answering technical questions from Petitioner regarding the proprietary technology to protect hair during bleaching treatments that he and Dr. Hawker had invented.

13.      On May 19, 2015, I drove by myself from Santa Barbara to Santa Monica for the in-person meeting with Petitioner's representatives at The Penthouse Restaurant in the Huntley Hotel. In attendance for Petitioner were Mr. Roger Dolden (then an Executive Vice President), Hugo Kunetz (then the

-4-

Liqwd, Inc. Ex. 2046
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120773

PGR 2018–00025
Patent No. 9,668,954

President for the North Americas of Petitioner's parent, L'Oréal S.A.), and

Ms. Delphine Allard (who I understood at the time was a chemist for Petitioner).

14. During the meeting, we discussed the three-step Olaplex "bond builder" hair care system as well as other proprietary technology relating to other chemicals (maleic acid) which had a protective effect when used during hair bleaching.

15. Under the NDA, I provided Petitioner with a copy of Patent Owner's then-unpublished maleic acid patent application describing Patent Owner's proprietary technology that is now disclosed and claimed in the '954 patent. Exhibit 1030 is a true and correct copy of the patent application that I handed directly to Ms. Allard during the May 19, 2015 meeting. I recall her reading the application during the meeting. At that time, this patent application was secret and was not publicly available.

16. At some point later, Dr. Pressly arrived and joined the meeting. The general substance of Petitioner's questions during the meeting related to the technology invented by Drs. Hawker and Pressly, the development and testing of that technology, and the unpublished patent application, which I had earlier given to Ms. Allard. I told Petitioner's representatives that cheaper alternatives to Olaplex's active were contained in the patent application that I had earlier given to Ms. Allard.

-5-

Liqwd, Inc. Ex. 2046
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120774

PGR 2018–00025
Patent No. 9,668,954

17.   Petitioner's representatives spoke with Dr. Pressly and asked him questions. Ms. Allard asked how we determined which compounds (including maleic acid) were effective and which were not.

18.   At the conclusion of the meeting, Petitioner's representatives took the application describing use of maleic acid during bleaching that I had provided to Ms. Allard earlier in the meeting.

19.   In May 2015, Petitioner did not have any commercially available products that I was aware of which used maleic acid as an additive in a method for bleaching hair. During our discussions about Petitioner acquiring Olaplex, Petitioner never told me that they had developed a maleic acid-based additive for using during bleaching. During these meetings, Petitioner had obtained information that I believe it needed to develop new products copying Patent Owner's proprietary maleic acid technology.

20.   Later in 2015, by September, Mr. Dolden returned to Los Angeles and met with me. During that meeting, Mr. Dolden informed me that Petitioner was no longer interested in purchasing our technology, including the maleic acid bleaching additive technology described and claimed in the '954 patent.

21.   In August of 2016, L'Oréal launched two products in the United States: Bond Ultim8 Step 1 Amplifier under the Matrix line and pH-Bonder #1 Bond Protecting Additive under the Redken brand. In November of 2016, L'Oréal

-6-

Liqwd, Inc. Ex. 2046
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120775

PGR 2018–00025
Patent No. 9,668,954

also launched a third product Smartbond Step 1 Additive sold under its L'Oréal Professionnel line in the United States. In this declaration, I refer to these products collectively as the "Copy Products."

22.    The Copy Products were Petitioner's first commercially available products that used maleic acid as an additive in a method for bleaching hair.

23.    I believed at that time, and continue to believe, that the Copy Products use the '954 patent's technology and that Petitioner had improperly used information that it obtained from me to develop the Copy Products.


I declare, under the penalty of perjury, that the foregoing is true and correct. Executed October 31, 2018, at Santa Barbara, California.


Dean Christal

-7-

Liqwd, Inc. Ex. 2046
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120776

# Exhibit D

Liqwd, Inc. Ex. 2025
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2017-00012

PGR 2017–00012

Filed on behalf of Liqwd, Inc.
By:   Matthew K. Blackburn
        DIAMOND MCCARTHY LLP
        150 California St., Suite 2200
        San Francisco, CA 94111
        Tel: 415.692.5200
        Fax: 415.263.9200

**CONTAINS CONFIDENTIAL INFORMATION**

UNITED STATES PATENT AND TRADEMARK OFFICE

———————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————————

L'ORÉAL USA, INC.,
*Petitioner,*

v.

LIQWD, INC.,
*Patent Owner.*

———————————

Case PGR 2017–00012
Patent No. 9,498,419

———————————

DECLARATION OF EDWARD T. BORISH, PH.D.

Mail Stop PATENT BOARD
Patent Trial & Appeal Board
U.S. Patent & Trademark Office
P.O. Box 1450
Alexandria, VA 22313–1450

PGR 2017–00012
Patent No. 9,498,419

# TABLE OF CONTENTS

Page

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | QUALIFICATIONS | 3 |
| III. | SUMMARY OF OPINIONS | 5 |
| IV. | LEGAL STANDARDS | 6 |
| | A. Claim Construction | 6 |
| | B. Obviousness | 7 |
| | C. Burden of Proof | 9 |
| V. | THE '419 PATENT | 9 |
| | A. Background and State-of-the-Art as of the Priority Date of the '419 Patent, May 16, 2014 | 9 |
| | B. The Claimed Invention of the '419 Patent | 14 |
| VI. | PROSECUTION HISTORY OF THE '419 PATENT | 17 |
| VII. | LEVEL OF ORDINARY SKILL IN THE ART | 19 |
| VIII. | CLAIM CONSTRUCTION | 21 |
| | A. "Hair Coloring Agents" | 21 |
| IX. | FACTUAL ASSESSMENT OF THE GROUNDS FOR INSTITUTION | 24 |
| | A. First Primary Reference of the Grounds—Ogawa (Ex. 1002) | 25 |
| | B. Second Primary Reference of the Grounds—Kitabata (Ex. 1005) | 29 |
| | C. Secondary Reference DE '969 (Exs. 1003 and 1004) | 31 |
| | D. Secondary Reference KR '564 (Exs. 1006 and 1007) | 37 |
| X. | NONOBVIOUSNESS OF '419 PATENT CLAIMS 1–8 AND 10 | 42 |
| | A. GROUND #1—the Claimed Hair Bleaching Method Would Not Have Been Obvious to a POSITA as of May 16, 2014 in Light of Ogawa in View of DE '969 and KR '564 | 42 |

Highly Confidential

OLA_0000066289

**Liqwd, Inc. Ex. 2025**
**L'Oreal USA, Inc. v. Liqwd, Inc.**
**PGR2017-00012**

PGR 2017–00012
Patent No. 9,498,419

|   | 1. | Ogawa Fails to Disclose Use of Maleic Acid in a Method for Bleaching Hair, or the Claimed Maleic Acid Concentrations for Bleaching Treatments. | 43 |

|   | 2. | DE '969 and KR '564 Also Fail to Disclose Use of Maleic Acid in a Method for Bleaching Hair, or the Claimed Maleic Acid Concentrations for Bleaching Treatments. | 47 |

|   | 3. | It Would Not Have Been Obvious to Modify Ogawa to Select Maleic Acid, Let Alone in the Ranges Specified in '419 Patent Claim 1. | 48 |

| B. | GROUND #2—the Claimed Hair Bleaching Method Would Not Have Been Obvious to a POSITA as of May 16, 2014 in Light of Kitabata in View of DE '969 and KR '564 | | 54 |

|   | 1. | Kitabata Fails to Disclose Use of Maleic Acid in a Method for Bleaching Hair, or the Claimed Maleic Acid Concentrations for Bleaching Treatments. | 55 |

|   | 2. | DE '969 and KR '564 Also Fail to Disclose Use of Maleic Acid in a Method for Bleaching Hair, or the Claimed Maleic Acid Concentrations for Bleaching Treatments. | 56 |

|   | 3. | It Would Not Have Been Obvious to Modify Kitabata to Select Maleic Acid, Let Alone in the Ranges Specified in '419 Patent Claim 1. | 57 |

| C. | Objective Evidence Demonstrates that Claims 1–8 and 10 Would Not have Been Obvious to a POSITA as of May 16, 2014 | | 63 |

|   | 1. | Long-Felt and Unmet Need as of May 16, 2014 | 63 |

|   | 2. | Petitioner's Choice to Copy the '419 Patent Invention | 65 |

Highly Confidential

OLA_0000066290

PGR 2017–00012
Patent No. 9,498,419

I, Edward T. Borish, Ph.D., declare as follows:

## I.    INTRODUCTION

1.     I am currently the Vice President of Research and Development with Global Seven, Inc., a producer of specialty chemicals for personal care, household and industrial products, and an independent consultant with ANA Innovation LLC, which helps clients develop new business opportunities in biotechnology, mass and salon marketing, educational/scientific publishing, and retail merchandising.

2.     I have been retained by Liqwd, Inc. ("Patent Owner") as an independent expert consultant in the above-referenced post grant review proceeding regarding U.S. Patent No. 9,498,419 ("the '419 patent"). I have been asked to analyze the validity of certain claims of the '419 patent, including the teachings of the prior art and the state of the art.

3.     I submit this declaration in support of Patent Owner's Response to the Post Grant Review Petition filed by Petitioner L'Oréal USA, Inc. ("Petitioner") in proceeding PGR2017–00012. I understand that the Patent Trial and Appeal Board ("Board") has instituted proceedings with respect to claims 1–8 and 10 of the '419 patent only. I have been asked to provide my opinions regarding whether claims 1–8 and 10 of the '419 patent are invalid in view of the following two grounds:

Highly Confidential

OLA_0000066291

PGR 2017–00012
Patent No. 9,498,419

| Ground | '419 Patent Claims | References |
|--------|--------------------|-----------|
| #1 | 1–8 and 10 | Ogawa et al. U.S. Patent No. 7,044,986 ("Ogawa") in view of German Patent 1 220 969 ("DE '969")  and Korean Patent 10–2006–0059564 ("KR '564") |
| #2 | 1–8 and 10 | Kitabata et al. U.S. Patent Publ. 2002/0189034 ("Kitabata") in view of DE '969 and KR '564 |

4. I am being compensated for my time spent in connection with this matter at my usual rate of $420 per hour. I have no financial interest in the outcome of this proceeding, and my compensation is unaffected by the content of my testimony.

5. This declaration identifies my opinions to date. I reserve the right to supplement this declaration, if allowed by the Board under the relevant rules, to address any new issues raised by Petitioner or its experts, or resulting from further rulings of the Board or otherwise from further proceedings.

6. I base the following opinions on my personal knowledge and experience, as well as my review of the relevant documents as listed below.

-2-

OLA_0000066292

Liqwd, Inc. Ex. 2025
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2017-00012

PGR 2017–00012
Patent No. 9,498,419

## II.   QUALIFICATIONS

7.   I have approximately 35 years of academic and professional experience in the field of cosmetic science, and over 25 years of overlapping experience relating to the development of hair care products.

8.   I obtained a Bachelor of Science (Chemistry) degree at the University of Massachusetts at Lowell in Lowell, Massachusetts, in 1979, and a Doctor of Philosophy (Ph.D.) degree in Inorganic Chemistry at the University of Rhode Island in Kingston, Rhode Island, where my thesis research involved Silver (III) redox reactions, in 1984.

9.   I have taught in the areas of chemistry, biochemistry, and cosmetics science at the University of Cincinnati as an Adjunct Professor and at Louisiana State University and the University of Rhode Island.

10.   I was a Post-Doctoral Research Associate and Senior Post-Doctoral Researcher at Louisiana State University in Baton Rouge, Louisiana, where I studied free radical biochemistry, from 1984 to 1987.

11.   In 1987, I left academia and joined Helene Curtis, Inc. as a senior chemist, where my work involved identifying and developing technologies and products for the salon and mass markets.

12.   In 1990, I left Helene Curtis to pursue an opportunity with a subsidiary of Kodak (L&F Products). I was the group leader charged with

-3-

Highly Confidential

OLA_0000066293

**Liqwd, Inc. Ex. 2025**
**L'Oreal USA, Inc. v. Liqwd, Inc.**
**PGR2017-00012**

developing new hair care and skin care products. This work led to a number of products that were commercialized, including Ogilvie Tender Color Hair Color, and a new perm product called Heat Activated Whisper Wave.

13.     I joined a division of Shiseido Company Ltd. (Zotos International) as Vice President of Research and Development from 1993 through 1997. I was responsible for directing all aspects of research and development regarding personal care products for the salon business. Among the innovations that we worked on were innovations for hair growth, sunscreens, sunless tanners, and dietary supplements.

14.     In 1999, I joined Bath & Body Works as Director of Research and Development, and helped launch 800 new products during a three-year period. Among my responsibilities was directing development of high performance skin and hair care lines, and antibacterial products.

15.     In 2002, I joined Global Seven, where I am currently employed.

16.     I have over 50 patents, publications, and presentations covering both applied and basic research relating to chemistry, biochemistry and associated sciences, and design and development of products in the health and personal care industry.

17.     I have consulted for numerous hair care companies, including Abercrombie & Fitch (the famous American fashion brand), Dragoco Gerberding

Highly Confidential

OLA_0000066294

PGR 2017–00012
Patent No. 9,498,419

& Co. AG (an international supplier of perfume compositions, aroma chemicals, cosmetic raw materials and active ingredients, and flavors), and Genencor (a biotechnology company that is now part of DuPont), to name a few.

18.    I have authored and/or co-authored a number of articles and book chapters relating to hair care products. The complete list of my publications is provided in my curriculum vitae.

19.    My curriculum vitae is attached as Exhibit 2026 and further highlights my education, experience, and qualifications as an expert in formulating and testing hair care products.

## III. SUMMARY OF OPINIONS

20.    I conclude that claims 1–8 and 10 of the '419 patent would not have been obvious to a person of ordinary skill in the art or POSITA as of May 16, 2014 over (a) Ogawa in view of DE '969 and KR '564, or (b) Kitabata in view of DE '969 and KR '564.

21.    My opinions are based upon: my review of the '419 patent, the file history of the '419 patent, and when necessary a review of the prior art cited in the '419 patent; my review of Petitioner's petition for Post Grant Review of the '419 patent, the references relied on by Petitioner, Mr. Nandagiri's declaration, and the Board's Decision on Institution of PGR; exhibits cited in this declaration, my education, knowledge, and experience; my understanding of basic science as well

-5-

as principles, and practices in the field of cosmetic science; my review of testing performed at my direction and described herein; and the perspective of a POSITA.

## IV. LEGAL STANDARDS

22.    I am not a legal expert and offer no opinions on the law. However, counsel has informed me of the legal standards that apply with respect to determining patent validity.

23.    I have been informed that a patent includes the written description of one or more preferred embodiments of the invention, figures, and one or more claims that point out and claim the subject matter of the invention. The claims define and measure the patent's scope. Each claim defines a separate invention.

24.    I have been informed that the determination of patent validity requires a two-step process. First, the language of the claims being evaluated is construed. Second, the construed claims are compared to the prior art.

### A. CLAIM CONSTRUCTION

25.    I have been advised that in a post grant review, the Board gives claim terms in an unexpired patent their broadest reasonable construction in light of the specification in which they appear. Claim terms also are given their ordinary and customary meaning, as would be understood by a POSITA in the context of the entire patent disclosure.

-6-

PGR 2017–00012
Patent No. 9,498,419

26.    I also have been informed and understand that if the patentee has clearly defined a claim term in the patent specification or file history, such definition is applied.

B.    OBVIOUSNESS

27.    It is my understanding that where a single prior art reference does not disclose all of the limitations of a claim, the claim may still be invalid if differences between the patented subject matter and the prior art are such that the subject matter as a whole would have been obvious, at the time the invention was made, to a POSITA to which said subject matter pertains.

28.    I also understand that obviousness is a factual inquiry, where the following factors guide the analysis: (a) the scope and content of the prior art; (b) the differences between the prior art and the claims at issue; (c) the level of ordinary skill in the art; and (d) the objective secondary factors of nonobviousness (for example, copying, long-felt unmet need, and unexpected results).

29.    I have been informed by counsel and I understand that, in order to evaluate the obviousness of the '419 patent claims over a given prior art combination, I should analyze whether the prior art references disclose every limitation of the challenged claims either explicitly or inherently, as those references are read by the POSITA at the time of the invention. Then I am to determine whether that combination makes the claimed invention, as a whole,

Highly Confidential

OLA_0000066297

PGR 2017–00012
Patent No. 9,498,419

obvious to the POSITA by a preponderance of the evidence, at the time of the invention.

30.     I further understand that, although obviousness may be shown by a combination of prior art references, there must be a reason (whether explicit or implicit) to combine elements found in the prior art and to arrange them as set forth in the patented subject matter. I understand that the law requires that there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness.

31.     I further have been informed and understand that a reference may be said to teach away from a particular modification when a POSITA, upon reading the reference, would be discouraged from following the path set out in the reference or would be led in a direction divergent from the path that was taken by the inventors.

32.     It is also my understanding that the objective secondary factors must be considered before determining whether the claimed invention would have been obvious to one of skill in the art at the time of invention.

33.     I understand that, notwithstanding what the teachings of the prior art would have suggested to a POSITA at the time of the invention, the totality of the evidence submitted, including objective evidence of nonobviousness, may lead to a conclusion that the challenged claims would not have been obvious to a POSITA.

-8-

Highly Confidential

OLA_0000066298

PGR 2017–00012
Patent No. 9,498,419

34.   I understand there must also be a causal relationship, termed a "nexus," between the objective evidence of non-obviousness and the claimed invention. I understand that all types of objective evidence of non-obviousness must be shown to have a nexus. The stronger the showing of a nexus, the greater the weight accorded the objective evidence of non-obviousness.

C.   BURDEN OF PROOF

35.   It is my understanding that Petitioner bears the burden of proving by a preponderance of the evidence that claims 1–8 and 10 of the '419 patent are invalid. I understand that the preponderance of the evidence standard is satisfied if the proposition is more likely to be true than to be not true.

36.   I have applied the standards described above to the best of my ability in my analysis of the validity of claims 1–8 and 10 of the '419 patent as described herein.

V.   THE '419 PATENT

A.   BACKGROUND AND STATE-OF-THE-ART AS OF THE PRIORITY DATE OF THE '419 PATENT, MAY 16, 2014

37.   The '419 patent relates to an innovative way to protect hair during damaging bleaching treatments.

38.   Hair fibers consist primarily of fibrous proteins belonging to the keratin family. Proteins are polymers consisting of polypeptide chains formed from condensation (or bonding) of amino acid building blocks. A feature that

-9-

Highly Confidential

OLA_0000066299

distinguishes keratin from other fibrous proteins is a high content of the sulfur containing amino acid cystine.

39.     Cystine forms covalent crosslinks (or bonds) between polypeptide chains. These crosslinks are responsible for the high degree of physical and chemical stability of keratin.

40.     Morphologically, hair structure has three distinct components: the cuticle, the cortex, and the medulla. The shingle-like cuticle layer forms the hair's exterior and encloses the corticular mass. The cortex constitutes the bulk of the hair fiber and contains tightly packed elongated cortical cells oriented parallel to the fiber axis. These cells contain α-helical microfibrils embedded in a cystine-rich amorphous protein matrix. Melanin pigment granules are located within the cortex of the hair fiber. (Ex. 2027, 2). The medulla is located toward the center of the hair fiber. It is composed of loosely attached spongy cells and makes up only a small percentage of the hair fiber.

41.     By its nature, hair bleaching is very destructive. As the '419 patent explains, many harsh chemical treatments involve chemicals that can break these natural bonds in the hair, and can cause severe hair damage, especially when chemical treatments are repeated. (Ex. 1001, Col. 1, line 24 – Col. 2, line 10; Col. 2, lines 23–33; Col. 23, line 63 – Col. 24, line 2).

Highly Confidential

OLA_0000066300

42.     For example, bleaching typically lightens hair color by oxidation reactions. Chemicals are applied to the hair, which react with the color pigment in the hair and change the pigment so that it no longer imparts a color to the hair. A typical bleaching process involves two components: powder lightener (also known as bleach powder) and developer. (*Id.*, Col. 16, lines 56–58). Powder lightener is generally a salt of a persulfate. Developer is generally hydrogen peroxide, which in combination with the persulfate is the oxidizing agent.

43.     An important aspect of bleaching formulations is inclusion of alkali, which is used to raise the pH and swell hair fibers. (Ex. 1007, 2; Ex. 1008, ¶15). This swelling makes hair fibers permeable to bleaching chemicals, which must penetrate into the hair fibers to reach the melanin granules or other pigments inside the hair fiber in order to oxidize them and decolor the hair. (Ex. 1008, ¶15; Ex. 1012, 6). The alkali also helps to accelerate the bleaching action by elevating the pH. (Ex. 2027, 6 ("peroxide solutions are only active for bleaching in alkaline solution;" and "bleaching markedly decreases with decreasing pH.")).

44.     Melanin is the natural pigment present inside of hair fibers. Hair bleach helps to remove visible color in hair by first permeating into the hair fiber and reaching the melanin, and then aggressively oxidizing it so that it no longer imparts color on the hair fiber. (*Id.*). Initially, the hydrogen peroxide dissolves and disperses melanin granules, which can lighten hair color to a small degree. (*Id.*, 7).

-11-

This dissolution/dispersion step by itself is not bleaching, because the pigment is not destroyed and remains able to color hair. A slower decoloration step follows, where the melanin and artificial pigments are chemically altered. (*Id.*).

45.     To accomplish hair bleaching, an alkaline mixture with both hydrogen peroxide developer and bleach powder are most commonly used. The bleach powder is often referred to as a "booster," because it contains persulfates that increase the oxidizing power significantly over developer alone. (*Id.*). Together the peroxide and the persulfates work together in a complementary fashion synergistically to aggressively oxidize the melanin and pigments during hair bleaching. (*Id.*, 6–7).

46.     The use of bleach powder with developer is a much more aggressive oxidant than developer alone. (*Id.*, 6 ("peroxide alone is too slow" if "extensive bleaching" is required)). A POSITA would appreciate that persulfates are one of the strongest oxidants available. The oxidative strength of persulfates makes them suitable, for example, to remediate soil and cleanup wastewater/groundwater. Sulfate free radicals produced by persulfates when they are in the presence of transition metals (such as iron) allow them to destroy toxic waste in soil and groundwater. (Ex. 2028, 1, 3–4, 5–6). These same free radicals could potentially have disastrous consequences if they were produced in the same quantities during hair bleaching.

-12-

Liqwd, Inc. Ex. 2025
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2017-00012

47.    In addition to changing hair pigment as intended, the bleaching process can also create harmful side reactions within the hair shaft. (Ex. 2027, 7). One of the side reactions is oxidizing the disulfide bonds in hair that are important to its strength. (*Id.*; Ex. 2029, 6). This oxidization breaks the disulfide bonds, thus weakening the hair. (Ex. 2027, 7).

48.    The problem that bleaching causes damage to hair has long been known. DE '969 was filed in 1964 and discloses that repeated bleaching causes numerous problems including making hair brittle, opening the hair cuticles and making hair appear "lusterless and dull." (Ex. 1004, p. 1).

49.    Thirty years later, textbooks continued to report, "the aggressive nature of the bleaching mixtures can result in significant damage to hair." (Ex. 2027, 6–7). Some of the damage affects the aesthetic quality of the hair, causing it to lose its luster and appear "flat." (*Id.*, 6). It was believed that this damage was caused by oxidation of cysteine to cysteic acid. (*Id.*, 7). This weakened hair structure by damaging disulfide crosslinks. (*Id.*). This is perceptible damage and the hair is brittle, more likely to break, and more sensitive to humidity. (*Id.*).

50.    Oxidative hair bleaching was known to destroy disulfide bonds within the keratin (causing weakening of the hair) and to damage the cuticle. (Ex. 2029, 6). Even shortly before the effective filing date of the '419 patent, experts describes that bleaching altered the physical properties of hair, lowering its

-13-

Highly Confidential

OLA_0000066303

PGR 2017–00012
Patent No. 9,498,419

mechanical strength and giving hair a rough, straw-like feel. (Ex. 1012, 16). The

evidence that bleaching was known to damage hair is so overwhelming that even

Petitioner's expert declarant (Mr. Nandagiri) conceded, "the bleaching process has

long been known to damage hair, causing it to be brittle, dull, and otherwise

diminished in appearance." (Ex. 1008, ¶16).

51.    Prior to the '419 patent, hair damaged by bleaching was treated after-

the-fact with toners, conditioners, oils, and silicones intended to mask the

structural damage caused by prior bleaching. (Ex. 2027, 6, 7, 13; Ex. 2021, ¶¶27,

31, 34–39). However, these treatments only masked the underlying problem, and

they did not repair the damage, or prevent it. (Ex. 2021, ¶¶41–42).

B.    THE CLAIMED INVENTION OF THE '419 PATENT

52.    The '419 patented method is a new approach, and addresses the

underlying problem by preventing or repairing damage to hair during bleaching.

This invention solved the previously unmet need for a way to address damage

during oxidative hair bleaching.

53.    As described in the '419 patent, formulations with active ingredients

are applied in connection with the hair bleaching treatment. (Ex. 1001, Col. 3, line

20–35). One of the claimed methods for bleaching involves combining a

formulation with maleic acid (or its salt form) with a bleaching formulation to

create a mixture with a specific concentration range of the active ingredient, which

-14-

OLA_0000066304

**Liqwd, Inc. Ex. 2025**
**L'Oreal USA, Inc. v. Liqwd, Inc.**
**PGR2017-00012**

PGR 2017–00012
Patent No. 9,498,419

then is applied to hair during the bleaching process. (*Id.*, Col. 25, line 42–Col. 26, line 5).

54.    Maleic acid has the chemical structure shown below:



55.    The '419 patent has ten claims including one independent claim (claim 1). As claim 1 sets forth, after mixing two formulations (an active agent formulation and a bleaching formulation), the mixture is applied to the hair. The claim identifies the active agent (maleic acid), and describes the concentration of that agent in the mixture. (Ex. 1001, Col. 25, line 41–Col. 26, line 3). Consistent with the claims being directed to hair bleaching (and not hair coloring), the last claim element excludes "hair coloring agent[s]" from the mixture. (*Id.*, Col. 26, lines 4–5).

-15-

Highly Confidential

OLA_0000066305

Liqwd, Inc. Ex. 2025
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2017-00012

PGR 2017–00012
Patent No. 9,498,419

56.    Claim 1 is reproduced below:

| Independent Claim 1 of the '419 Patent |
| --- |
| 1. A method for bleaching hair comprising:<br><br>(a) mixing a formulation comprising an active agent with a bleaching formulation, wherein the active agent has the formula:<br><br><br><br>or salts thereof; and<br><br>(b) applying the mixture to the hair;<br><br>wherein the active agent in the mixture is at a concentration ranging from about 0.1% by weight to about 50% by weight; and<br><br>wherein the mixture does not contain a hair coloring agent. |

57.    In step (a), a mixture is formed from two formulations: (1) an active agent formulation containing maleic acid or salts thereof, and (2) a bleaching formulation. (Ex. 1001, Col. 25, lines 43–53). Then, in step (b), the combined active agent and bleaching formulations, i.e., the bleaching mixture, is applied to hair. (*Id.*, Col. 25, line 54).

58.    Claim 1 imposes two conditions on the bleaching mixture that is applied to the hair. First, the active agent (maleic acid or salts thereof) must be

-16-

Highly Confidential

OLA_0000066306

**Liqwd, Inc. Ex. 2025**
**L'Oreal USA, Inc. v. Liqwd, Inc.**
**PGR2017-00012**

PGR 2017–00012
Patent No. 9,498,419

present in the mixture applied to the hair at a concentration of about 0.1 wt. % to about 50 wt. %. (*Id.*, Col. 26, lines 1–3). Second, the mixture applied to the hair cannot contain a hair coloring agent. (*Id.*, Col. 26, lines 4–5).

## VI.   PROSECUTION HISTORY OF THE '419 PATENT

59.   The '419 patent issued on November 22, 2016 from a family of three patent applications dating back to May 16, 2014:



60.   After prosecution of the '419 patent (and the earlier priority applications), claims 1–10 were allowed in light of thorough consideration of more than 135 prior art references cited on the face of the patent. (*Id.*, item (56) at cover page and pp. 2–3). The prosecution of the underlying application from its initial

-17-

Highly Confidential

OLA_0000066307

PGR 2017–00012
Patent No. 9,498,419

filing on March 31, 2016 through to its issuance on November 22, 2016 gives

additional context for the claim language at issue here.

61.     A Rule 132 declaration by Dr. Eric Pressly (one of the co-inventors),

submitted on August 23, 2016 (Ex. 1009), demonstrates that hair bleached

according to patented method (using maleic acid or maleic acid salts in a bleaching

mixture) resulted in hair which showed little or no breakage, had great or good

feel, and had a healthy appearance by visual inspection. (Ex. 1009, ¶¶5, 9, 10). In

contrast, hair treated with similar chemicals (e.g., monosodium succinate, malic

acid, citric acid), outside the scope of the '419 patent claims did not provide the

same or even similar benefits. (*Id.*, ¶¶9, 10).

62.     The Examiner explained the reasons for allowance. First, the claimed

hair bleaching methods using maleic acid (or its salt) as an active agent at a

concentration from about 0.1 to about 50% by weight and in the absence of a hair

coloring agent were *not* present in the art of record. (Ex. 1011, 9). Second,

declarations filed by Liqwd (including the Pressly declaration discussed above)

helped overcome potential rejections based on references of record (including

Petitioner's Ogawa, Kitabata, and DE '969 references). (*Id.*). As the Examiner

found, the prior art "does not teach mixing maleic acid with a bleaching

formulation and applying the mixture to hair." (*Id.*). Prior to the invention, "one of

ordinary skill in the art would not expect free thiol groups to form from a bleaching

-18-

formulation," and there would be no motivation to add maleic acid to a hair bleaching formulation. (*Id.*).

63.    Four separate third-party prior art submissions were provided to the U.S. Patent and Trademark Office in an unsuccessful campaign to prevent the '419 patent from issuing. These submissions identified five alleged prior art references—including three of the four references now at issue in this Petition. One of the submissions (Ex. 2005) argued that Ogawa anticipates the '419 patent claims. The Examiner fully considered the identified prior art and reasoning, and found none of it persuasive. (Exs. 1011, 2004–2008).

## VII. LEVEL OF ORDINARY SKILL IN THE ART

64.    I understand that patent claim construction and patentability are generally analyzed from the perspective of a POSITA at the time the patent application was filed.

65.    I understand that the POSITA is a hypothetical person who is presumed to have known the relevant art at the time of the invention. I understand that factors that may be considered in determining the level of ordinary skill in the art may include: (a) type of problems encountered in the art; (b) prior art solutions to those problems; (c) rapidity with which innovations are made; (d) sophistication of the technology; and (e) educational level of active workers in the field.

Highly Confidential

OLA_0000066309

Liqwd, Inc. Ex. 2025
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2017-00012

66.     I understand that the '419 patent claims priority to May 16, 2014. My opinions herein are based on what a POSITA would have understood as of about May 16, 2014.

67.     My opinion on the level of ordinary skill in the art is based on my personal knowledge and experience as well as my consideration of such things as the education and experience level of persons of skill working in the field.

68.     In my opinion, the field of invention is cosmetic science. More specifically, the '419 patent relates to methods for rebuilding the disulfide bonds in keratin found in hair. (Ex. 1001, Abstract). A POSITA as of May 16, 2014 would have a college degree in chemistry or an associated science. In addition, a POSITA would have had several years of work experience.

69.     I have reviewed the declaration of Arun Nandagiri (Exhibit 1008). In that declaration, Mr. Nandagiri gives his opinion as to the skill level of a POSITA at the time of the invention of the '419 patent: "someone with at least an Associate's degree in chemistry, chemical engineering, or a related field, and at least 5–7 years of laboratory experience with formulation and testing of hair care products, with special emphasis on reactive products; or someone with a Ph.D. in chemistry, chemical engineering, or a related field and with at least minimal prior laboratory experience with formulation and testing of hair care products." (Ex.

-20-

Highly Confidential

OLA_0000066310

Liqwd, Inc. Ex. 2025
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2017-00012

PGR 2017–00012
Patent No. 9,498,419

1008, ¶26). I had at least the qualifications of a POSITA under this definition at the time that the '419 patent was filed.

70.    In my opinion, Mr. Nandagiri has created an unrealistically high level of skill in the art. In my knowledge and experience, a person formulating a hair care products often would not have 5–7 years of laboratory experience in formulation and testing of hair care products. Also, someone with a Ph.D. in chemistry, chemical engineering, or a related field would not typically be involved in the day-to-day process of formulating a hair care products in a laboratory. However, my opinions in this declaration do not change whether my definition of a POSITA or Mr. Nandagiri's definition is used.

## VIII. CLAIM CONSTRUCTION

71.    In my opinion, claims 1–8 and 10 contain a term that may require construction by the Board, which I analyze below.

### A.    "HAIR COLORING AGENTS"

72.    The '419 patent claims require "wherein the mixture does not contain a hair coloring agent." (Ex. 1001 at claim 1). In its Decision, the Board found that this phrase means, "wherein the mixture applied to the hair does not have a colorant or pigment that is customarily used in hair care products, which changes the color or tone of the hair it is applied to based on visual inspection." (Paper 17, 6). I agree with the Board's construction.

-21-

OLA_0000066311

PGR 2017–00012
Patent No. 9,498,419

73.    The '419 patent claims describe hair bleaching methods. The claim language itself makes clear that the focus is on the mixture of the active agent formulation and the bleaching formulation. The specificity of the language chosen tells me that it is that active agent/bleaching formulation mixture itself, which must be evaluated to determine if it contains a hair coloring agent. In other words, this claim language requires an evaluation of whether the chemicals *as used in that mixture* can actually color hair.

74.    This focus is important because bleaching formulations are very destructive, particularly to colorants and pigments. The oxidizing agents (peroxide, persulfate) can oxidize various chemicals so that they are incapable of coloring hair. For example, melanin (the natural pigment that colors hair) is destroyed by a properly applied bleaching mixture. Artificial pigments also are destroyed by a properly applied bleaching mixture.

75.    The alkalinity or high pH of bleaching mixtures also affects the ability of hair to be colored by various chemicals. When hair is exposed to solutions with pH greater than the isoelectric point of hair (which is slightly less than 4), negative charge builds up on the surface of the hair fibers. (Ex. 2030, 40, 41, 60). This charge build up is why hair fibers sometimes appear to repel one another (like two ends of a magnet), and that's when you get static flyaway. Similarly, negatively

-22-

PGR 2017–00012
Patent No. 9,498,419

charged chemicals are repelled by the negatively charged hair fibers when applied to the hair at typical pH of bleaching mixtures (9–11).

76.     This is why negatively charged acid dyes are commonly used in small amounts to color the bulk of shampoos and conditioner products. For example, Redken Curvaceous conditioner contains both CI 19140/Yellow 5 and CI 42090/Blue 1, Matrix Biolage Advanced shampoo contains CI 19140/ Yellow 5, and Pureology (one of Petitioner's brands) Strength Cure conditioner contains CI 14700/Red 4. (Ex. 2031, 2; Ex. 2032, 2; Ex. 2033, 2). Because of the negative charge build-up on the hair fibers at the pH where these products are applied to hair, the small amounts of negatively charged acid dyes do not and cannot actually color hair. These shampoo and conditioner products use product coloring acid dyes and are neither intended to color hair nor labeled as coloring hair.

77.     Further, in my judgment it is important to consider the negotiations that lead to the issuance of the '419 patent, which make it clear that the colorant or pigment must actually color the hair and not just the active agent/bleaching formulation mixture. In the August 23, 2016 Amendment, the word "hair" was added before "coloring agent." (Ex. 1010, 2). This change alone emphasizes to me that the coloring agent must color hair in the claimed method.

78.     Then, the remarks specifically contrasted colors or pigments that change the color of hair based on visual inspection with common agents that color

-23-

Liqwd, Inc. Ex. 2025
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2017-00012

PGR 2017–00012
Patent No. 9,498,419

hair care products but do not color hair when applied to the hair based on visual inspection. (*Id.*, 7). This statement reinforces my view that the coloring agent must color hair when used in the claimed method.

79.     In my opinion, a POSITA would not regard as a "hair coloring agent" within the scope of the '419 patent any chemicals that are incapable of coloring hair in the active agent/bleaching formulation mixture in the claimed method.

## IX.   FACTUAL ASSESSMENT OF THE GROUNDS FOR INSTITUTION

80.     I have been informed and understand from reviewing the Board's Institution Decision (Paper 17) that the Board found for purposes of initiating this proceeding that it is more likely than not that claims 1–8 and 10 of the '419 patent are unpatentable as obvious over (a) the combination of Ogawa, DE '969, and KR '564, and (b) the combination of Kitabata, DE '969, and KR '564.

81.     I have been asked to evaluate the Board's decision and to assess Petitioner's contention that it would have been obvious to modify Ogawa's example 3 by replacing two chelators (EDTA and ascorbic acid) with maleic acid as allegedly disclosed in DE '969 and KR '564, and if doing so would have resulted in a method for bleaching hair that met each limitation of claims 1–8 and 10 of the '419 patent.

-24-

Highly Confidential

OLA_0000066314

PGR 2017–00012
Patent No. 9,498,419

82.    I also have been asked to evaluate the Board's decision and to assess
Petitioner's contention that it would have been obvious to modify Kitabata's
methods for bleaching hair by replacing a first pH adjustor with maleic acid as
allegedly disclosed in DE '969 and KR '564, and if doing so would have resulted
in a method for bleaching hair that met each limitation of claims 1–8 and 10 of the
'419 patent.

83.    As described below, my analysis leads me to conclude that claims 1–8
and 10 would not have been obvious to a POSITA as of May 16, 2014 because
there are differences between the '419 patent claims and the disclosures of the
cited references. Further, it would not have been obvious to modify Ogawa or
Kitabata to incorporate maleic acid into a bleaching mixture in a hair bleaching
method in light of the disclosures of DE '969 and KR '564. DE '969 and KR '564
actually lead away from the proposed combination.

A.    FIRST PRIMARY REFERENCE OF THE GROUNDS—OGAWA (EX. 1002)

84.    Ogawa is the primary reference relied on in the first instituted ground
of rejection (Ogawa in view of two secondary references, DE '969 and KR '564).

85.    The Board recognized that Ogawa relates to "hair dye compositions"
that "do not give off an intensely irritating order and have low irritating property."
(Paper 17 at 8, citing Ex. 1002 at cover page, item [57]).

-25-

Highly Confidential

OLA_0000066315

PGR 2017–00012
Patent No. 9,498,419

86. The claims of Ogawa relate to hair dyeing methods and do not describe hair bleaching methods at all. For example, Ogawa's claim 1 expressly states, "[a] method of dyeing the hair." (Ex. 1002, Col. 7, line 44). Hair dyeing refers to the imparting or adding of color to hair, which is the opposite of hair bleaching, which removes coloring from hair.

87. "Bleach packs" or "hair bleaches" are a very limited aspect of Ogawa. Ogawa first mentions its "inventive" hair bleaches in column 3 and says they "may not contain such an oxidation dye intermediate" in contrast to hair dyes which may. (Ex. 1002, Col. 3, lines 28–31; *see also id.*, Col. 4, lines 22–24). Later, Ogawa expresses a preference to mix "a first bleach pack" with a second pack including "an oxidizing agent" (e.g., hydrogen peroxide) upon use, and provides a "mixing ratio" that outlines the relative amounts of the bleach pack and the second pack to be used. (*Id.*, Col. 4, lines 25–39). These passages do not describe any other ingredients of the bleach pack or the second pack.

88. Maleic acid is entirely omitted from the only specific bleach pack disclosed by Ogawa—Example 3. (*Id.*, Col. 7, lines 11–31). Although it is called a "bleach pack" by Ogawa, the 15-ingredient formulation omits hair bleaching agents entirely. (*Id.*). Instead, it is an alkali pack that contains alkali agents (e.g., aqueous ammonia and monoethanolamine). (*Id.*, Col. 7, lines 15, 19). Ogawa also

-26-

PGR 2017–00012
Patent No. 9,498,419

fails to describe the intended functions of the listed non-bleach ingredients in that formulation.

89.     In my opinion, a POSITA would not regard the Example 3 bleach pack to be a "bleaching formulation" within the meaning of the '419 patent, because it does not contain hydrogen peroxide, persulfate or any bleaching agent.

90.     Example 3 also instructs to mix that particular Example 3 bleach pack with a "second pack" whose formulation is shown in Table 2. (*Id.*, Col. 7, lines 5–7). Table 2 sets forth a highly acidic formulation containing hydrogen peroxide. (*Id.*, Col. 6, lines 20–25). Table 2 formulation also omits maleic acid. (*Id.*). Thus, Ogawa fails to describe mixing maleic acid with a bleaching formulation during bleaching or specific concentrations of maleic acid in the final bleach mixture.

91.     Although the second pack contains hydrogen peroxide, the pH of the second pack is 3.5. Therefore, the peroxide would be stable at room temperature at that pH, and would be an ineffective bleaching agent.

92.     Ogawa never describes the second pack as a bleaching formulation.

93.     Ogawa describes adding the first pack and second pack in Example 3 together "in an equal amount (by weight)." (Ex. 1002, Col. 7, lines 5–7). However, Ogawa never describes the pH of the combined mixture in Example 3, and therefore it is unclear if the resulting pH of the mixture would be high enough to actually bleach hair.

-27-

**Liqwd, Inc. v. L'Oreal**
**L'Oreal USA, Inc. v. Liqwd, Inc.**
**PGR2017-00012**

PGR 2017–00012
Patent No. 9,498,419

94.     Ogawa mentions maleic acid just once, and only in connection with hair dyeing. Petitioner relies on that discussion of "illustrative" chelating agents "ingredient (D)," one of which is maleic acid. (*Id.*, Col. 2, line 61–Col. 3, line 1). However, ingredient (D) is only described in connection with hair dyeing compositions. (*Id.*, Col. 2, lines 1–14). For example, Ogawa mentions "maleic acid" as a possible "chelating agent (D)" in claim 8 which is a "method of dyeing hair." (*Id.*, Col. 8, lines 34–39). Similarly, Ogawa describes concentration ranges of chelating agents only in the context of hair dyes. (*Id.*, Col. 3, lines 4–7 and Col. 8, lines 28–30).

95.     "[N]o particular limitation" is placed by Ogawa on the choice of chelator. (*Id.*, Col. 2, lines 61–64). All that is required is that the chelator (a) "has ability to chelate metal ions" and (b) "is commonly used in cosmetic preparations." (*Id.*). In addition, to the listed agents, their various salt forms can be used. (*Id.*, Col. 2, line 63–Col. 3, line 1). Instead of a small list of possible chelators, Ogawa teaches a potentially very large set of these materials.

96.     There is no disclosure anywhere in Ogawa to use maleic acid in "bleach packs" or for use in a method for bleaching hair. Nor has Petitioner identified any teaching in Ogawa that the discussion of "ingredient (D)" or "chelating agent (D)" in connection with hair dyes applies to methods for

-28-

Highly Confidential

Liqwd, Inc. Ex. 2025
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2017-00012

PGR 2017–00012
Patent No. 9,498,419

bleaching hair, much less what would motivate a POSITA to combine these separate teachings in Ogawa.

97.    Ogawa also never provides a concentration range for chelating agents in any context, much less a maleic acid concentration range for use in methods for bleaching hair.

### B.    SECOND PRIMARY REFERENCE OF THE GROUNDS—KITABATA (Ex. 1005)

98.    Kitabata is the primary reference relied on in the second instituted ground of rejection (Kitabata in view of two secondary references, DE '969 and KR '564).

99.    Kitabata discloses a hair treatment method involving application to hair of a "hair dyeing/hair bleaching" composition having at least four ingredients. One of these ingredients is the "at least one first pH adjustor selected from the group consisting of polycarboxylic acids and their salts." (Ex. 1005, ¶¶0020–24, ¶¶0062–66, and claim 13).

100.    For polycarboxylic acids, there are "no particular restrictions … so long as they are … commonly used as pH adjustors in cosmetics," although citric,

-29-

Highly Confidential

tartaric, and malic[1] acids (or their salts) are preferred. (*Id.*, ¶¶0025, 0039). Maleic acid is one of fourteen "example" acids listed for the first pH adjustor. (*Id.*, ¶0039). The pH adjustor can also be any of the numerous physiologically acceptable salts of those polycarboxylic acids. (*Id.*). Further adding to the permissible options for the pH adjustor is Kitabata's teaching that the compositions may contain more than one pH adjustor, without further guidance regarding the combinations of pH adjusters that may be used. (*Id.*, ¶0016 ("at least one")). Instead of a small set of 14 possible pH adjustors, Kitabata teaches a virtually infinite set of these materials.

101.    Another aspect of Kitabata is a two-agent hair dyeing/bleach composition. An alkali-containing "primary agent" has the first pH adjustor present at a concentration of 0.1–10 wt. %. (*Id.*, ¶0026). That primary agent is used with an oxidant-containing secondary agent at any mixing ratio, however Kitabata indicates that preferred mixing ratios are in the range of 1:0.5 to 1:3. (*Id.*, ¶0061).

---

[1] "Malic acid" should not be confused with "maleic acid." Despite having a similar name, it is structurally distinct from maleic acid. Malic acid has the following

structure:

Highly Confidential

OLA_0000066320

PGR 2017–00012
Patent No. 9,498,419

102.   Five so-called bleaching examples are shown in Table 1. (*Id.*, ¶0087). Each example contains only malic acid or a salt of citric acid (trisodium citrate). (*Id.*). None of the bleaching examples uses maleic acid.

103.   Kitabata (a) never describes mixing maleic acid with a bleaching formulation, and (b) never provides a general concentration range for the first pH adjustor for use in hair bleaching methods, much less a specific concentration range for maleic acid for use in hair bleaching methods.

C.   SECONDARY REFERENCE DE '969 (EXS. 1003 AND 1004)

104.   DE '969 is a secondary reference relied on in both the first and second instituted grounds of rejection.

105.   DE '969 relates to a specific hair treatment method for already damaged hair. An acidic leave-on treatment solution allegedly improves the look of the hair by smoothing and consolidating the hair's surface. (Paper 17 at 11, citing Ex. 1004 at p. 2, lines 7–14). Nothing in DE '969 teaches that its particular treatment solution is used with an alkaline bleaching formulation or that the DE '969 method can be used during hair bleaching. The opposite is true: the methods described in DE '969 are wholly incompatible with use during bleaching.

106.   DE '969 acknowledges chemical hair treatments (perming, bleaching and coloring) damage hair. (*Id.*, p. 1, lines 24–32). Alkali is used in various hair treatments (including bleaching) to raise the pH and swell hair fibers. (Ex. 1007, 2;

-31-

Ex. 1008, ¶15; Ex. 2027, 6, 7). This swelling makes hair fibers permeable to bleaching chemicals, which must penetrate into the hair fibers to reach the melanin granules or other pigments inside the hair fiber in order to oxidize them and decolor the hair. (Ex. 1008, ¶15; Ex. 1012, 16–17).

107.   Swelling of the hair fibers can damage the outer protective cuticle layer. If alkali is not completely removed at the end of the chemical treatment, then the hair fibers will remain in a swollen state with cuticles lifted, creating a rough hair surface. (Ex. 1004, p. 1, lines 29–30; Ex. 1007, 2). The surface roughness scatters light (rather than reflects light like smooth, untreated hair). This results in a dull appearance as well as a coarse feel. (Ex. 1004, p. 2, lines 7–10).

108.   DE '969 also acknowledges that various acids (tannic acid, lactic acid, or citric acid) can smooth previously roughened hair fiber surfaces after chemical treatments. (*Id.*, p. 1, line 34 – p. 2, line 3). The effect is "particularly high" when the acids adhere to the hair surface. (*Id.*, p. 2, lines 3–5).

109.   DE '969 proposes another leave-on acidic treatment method for use after bleaching has been completed. (*Id.*, p. 2, lines 30–37). When this method is carried out properly, DE '969 says that the surface of previously damaged hair is smoothed. (*Id.*, p. 2, lines 7–10 and p. 3, lines 24–26). In particular, the treatment solution includes (a) maleic acid or its substitution products, (b) a "surface-active substance" to ensure the solution wets the hair, (c) an acidic buffer substances "to

-32-

**Liqwd, Inc. Ex. 2025**
**L'Oreal USA, Inc. v. Liqwd, Inc.**
**PGR2017-00012**

PGR 2017–00012
Patent No. 9,498,419

facilitate attachment of the unsaturated acids to the keratine substances,"
(d) glycerol distearate or glycerol monostearate, and (e) "sugar substances" to
"improve[] the mechanical properties of the hair after the treatment." (*Id.*, p. 2,
lines 12–17; *Id.*, p. 3, lines 4–12 and 34–37). Then, the treatment solution is
massaged into the hair, and the hair is dried under a hair dryer "with the solution
remaining in the hair." (*Id.*, p. 3, lines 37–39).

110.   This post-treatment method is said to have an "astringent" effect on
the hair according to DE '969. (*Id.*, p. 1, line 34–p. 2, line 5). A POSITA would
understand this is because the acid neutralizes residual alkali resulting in "de-
swelling" or tightening of the hair shaft allowing the cuticles to lay flat, and results
in a smoother more reflective surface that is shinier and feels softer similar to
untreated hair. (Ex. 1007, 2; Ex. 1012, 17).

111.   However, the DE '969 method cannot be used during bleaching. The
alleged benefit of DE '969 (i.e., "astonishing structural improvement of the hair
surface") requires an acidic pH of 1.9 to 4.0, which are far from the alkaline pH
used in hair bleaching methods. (*Id.*, p. 3, lines 8–12 and 23–26). DE '969 uses
"buffer substances" (glycocoll) in the after-the-fact treatment solution to maintain
that pH. (*Id.*, p. 3, line 34–p. 4, line 15). A POSITA would understand this ensures
that the treatment solution has an acidic pH at or below the isoelectric point of the
hair. (Ex. 1007, 6). At that pH range, hair fibers have a net positive charge and

Highly Confidential

OLA_0000066323

Liqwd, Inc. Ex. 2025
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2017-00012

PGR 2017–00012
Patent No. 9,498,419

would not repel maleic acid/substitution products. By doing this, "a firm

substantial attachment" forms between the maleic acid/substitution products and

the hair according to DE '969. (*Id.*, p. 2, lines 19–28).

112.   A POSITA would not expect such bonding to occur at alkaline pH.

Hair fibers at alkaline pH are above their isoelectric point, and therefore hair fibers

have a net negative charge during bleaching. That negative charge on the hair

fibers repels negatively charged molecules, such as maleic acid/substitution

products.

113.   DE '969 also teaches that at acidic pH the addition of maleic acid will

react with peroxides in order to counteract post-oxidation and provide an astringent

effect. (*Id.*, p. 2, lines 30–37). This reaction will create acids other than maleic acid

(i.e., oxyacids and peroxyacids). (*Id.*). These other acids will display the very same

"astringent action" as maleic acid ("same desired purpose of surface smoothing.")

(*Id.*). A POSITA would understand that this astringent effect occurs with any acid

that decreases pH sufficiently and neutralizes alkali so that the hair fibers converge

or de-swell. (*Id.*, p. 1, line 36–p. 2, line 5; Ex. 1007, p. 2, ¶16; Ex. 1012, 17). There

is no teaching that any of these benefits will result at alkaline pH.

114.   DE '969 speculates that its leave-on treatment solution somehow

reacts with the hair, but I disagree. DE '969 says "unsaturated compounds" provide

firm cuticle attachment to the cortex because "chemical bonds have formed by

-34-

OLA_0000066324

reaction of the C–C-double bonds to the amino acid and hydroxyl groups of the keratin substances." (Ex. 1004, p. 2, lines 23–28). However, the examples of DE '969 show that could not happen. Each example has a treatment solution formulated with amine groups (glycocoll or glycine) as well as hydroxyl groups (water, glycerol, sugars). (*Id.*, p. 3, 34–37). If the mechanism proposed in DE '969 were actually operative, then the maleic acid/substitution products would have reacted with the amino acid and hydroxyl groups in the treatment solution long before it was applied to the hair. This would render the maleic acid entirely unavailable to react with hair when the treatment solution is later applied to the hair.

115.    Also, the DE '969 method teaches that the acidic treatment is left on the hair; it is literally dried onto the hair. (*Id.*, p. 3, lines 37–39). The treatment is not rinsed from the hair. In contrast, bleaching involves temporary application of alkaline chemicals, which are rinsed-off to avoid over-processing the hair. Leaving the alkaline chemicals from a bleach formulation on hair indefinitely would cause significant hair and scalp damage. It would be unsafe.

116.    Finally, DE '969 also lacks information about appropriate maleic acid concentrations for use in a hair bleaching mixture. While the DE '969 acidic, leave-on treatment solution is said to contain 0.3–4% maleic acid or substitution products, (*Id.*, p. 2, lines 12–17, p. 5, lines 10–12), those disclosures do not provide

-35-

PGR 2017–00012
Patent No. 9,498,419

information on the concentration of maleic acid that would be used in a mixture
with a bleaching formulation as it would be applied during bleaching.

117.    The Patent Examiner confirmed this understanding that DE '969 is not
pertinent to the '419 patent claims (which are methods for bleaching hair): "since
'969 does not teach mixing maleic acid with a bleaching composition, it does not
appear to disclose the instantly claimed invention." (Ex. 1011, 14). "DE 1220969
was not directed to a method of bleaching hair, thus it would not render the instant
claims obvious." (*Id.*).

118.    The Examiner also rejected the very same arguments, confirming that
"astonishing structural improvement of the hair surface" provided by the method of
DE '969 was not better than the "especially great" smoothing effect of prior art
methods using lactic and citric acid compositions:

> [I]t is not taught [in DE '969] that maleic acid is better
>
> than lactic or citric acid. The reference states that the
>
> surface smoothing [] effect of those astringent substances
>
> is especially great.

(*Id.*). The Examiner also noted that comparative data showing a tangible benefit is
lacking from DE '969, for example. (*Id.* ("Since there was no comparison in the
reference the examiner was unable [to] determine the purported 'significant
progress'.")).

-36-

OLA_0000066326

Liqwd, Inc. Ex. 2025
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2017-00012

D.   SECONDARY REFERENCE KR '564 (EXS. 1006 AND 1007)

119.   KR '564 is another secondary reference relied on in both the first and second instituted grounds of rejection.

120.   KR '564 relates to a mild acid hair treatment agent with a pH of 4–5. (Paper 17 at 11, citing Ex. 1007 at 1, 3). Applying a mild acid rinse neutralizes and removes left over alkali residues. This "maintain[s] the isoelectric point of hair" after the chemical treatment. (Ex. 1007, 1, 2). Nothing in KR '564 teaches mixing a mild acid hair treatment agent with a bleaching formulation or even during hair bleaching.

121.   KR '564 teaches that it is "necessary" to neutralize and remove alkali substances with acid or an acidic composition to prevent further hair damage after chemical hair treatments. (*Id.*, 2). However, for bleaching to be effective, bleaching formulations must be alkaline (pH of 9–11), not acidic. (Ex. 1005, ¶¶0028, 0042, 0069; Ex. 1008, ¶15; Ex. 1012, 17).

122.   KR '564 describes the use of a "wide range" of mild acids: "an organic acid, lactic acid, citric acid, malic acid, oxalic acid, acetic acid, tartaric acid, adipic acid, succinic acid, maleic acid, glutamic acid, fumaric acid, pyruvic acid, gluconic acid, citric acid, picric acid, aspartic acid, terebic acid and the like." (Ex. 1007, 3).

Highly Confidential                                                                    OLA_0000066327

Liqwd, Inc. Ex. 2025
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2017-00012

123.   KR '564 never expresses a preference for maleic acid. Instead, it says the results achieved by the post-bleaching acid rinse "slightly differed" depending on the acid used, (*id.*, 6), and KR '564 does not describe any supposed advantages of using maleic acid over any other mild acid. To the contrary, KR '564 explicitly directs one to select lactic acid in view of its data, noting "among the types of mild acid used … in the examples it was found that lactic acid has the best stability, that the pH thereof can be reduced by even a small amount more than with other acid types, that the pH of the product can be preserved for a long time (2–3 years), and that it exhibits particularly excellent effects." (*Id.*).

124.   KR '564 specifies that the acidic composition has a pH range of 4–5, (*id.*, 3), but is silent on the amount of maleic acid or any other acid that should be used in a post-bleaching acid rinse. For example, the experiments described in KR '564 say that acid diluted with water to a pH 4–5 was sprayed on hair, allowed it to sit for 10–20 minutes, and then rinsed from the hair. (*Id., 3*).

125.   None of the examples of KR '564 teaches to mix mild acids (like maleic acid) with a bleaching formulation or even to use the mild acid treatment in a bleaching method.

126.   Further, KR '564 teaches that its desired pH range causes the hair to "converge[]" or de-swell. (*Id.*, 2). Adding mild acid to a bleaching formulation would be expected to react with the alkaline (or alkalizing) agent, but KR '564

Highly Confidential                                                   OLA_0000066328

recognizes that hair bleaching requires "synergizing effects" of hydrogen peroxide and alkaline agents. (*Id.*, 2). In addition to neutralizing the alkaline agents, the maleic acid would be expected to decrease pH, and "bleaching markedly decreases with decreasing pH." (Ex. 2027, 6). This disclosure would have led a POSITA away from mixing mild acids (like maleic acid) with a bleaching formulation during a bleaching method.

127.   KR '564 suggests that the mild acid treatment agents may be used "alone as a treatment agent" or may be "preliminarily added to a permanent wave agent, dyeing agent and the like as an additive for various hair treatment solvents." (*Id.*, 3). A POSITA would understand that such chemical treatments are performed at significantly higher pH than taught by KR '564 (4–5). Thus, a POSITA would understand both uses to involve applying the mild acid treatment to hair previously damaged by chemical treatments.

128.   This understanding of KR '564 is consistent with Petitioner's understanding. The Petition repeatedly describes the mild acid treatment agent as being used as a post-treatment during bleaching process:

-39-

OLA_0000066329

PGR 2017–00012
Patent No. 9,498,419

| Petition (Paper 2) | Petitioner's Characterization of KR '564 |
|---|---|
| p. 19 | "… KR '564 teaches that a post-treatment of maleic acid can be included as an additive in a bleaching process. (Ex. 1007, 3.)" |
| p. 46 | "The PHOSITA would have been motivated to specifically use maleic acid as the chelating agent in the methods for bleaching hair disclosed in Ogawa based on … KR '564's disclosure of a post-treatment of maleic acid used as an additive in a bleaching process." |

129.    KR '564's description that the mild acid treatment is used on hair "alone" means that a client would receive the treatment to address existing damage. The description of being "preliminarily added" to "various hair treatment solvents" means that the mild acid treatment is applied with a solvent to already damaged hair. The next sentence describes the solvents ("purified water, lotion or hair oil"). (*Id.*). Omitted from that list is any mention of mixing the mild acid treatment with a bleaching formulation. Using a mild acid agent as a post-treatment alone or in a solvent can neutralize and remove residual alkali that would be left in

-40-

Highly Confidential

**Liqwd, Inc. Ex. 2025**
**L'Oreal USA, Inc. v. Liqwd, Inc.**
**PGR2017-00012**

PGR 2017–00012
Patent No. 9,498,419

the hair after rinsing the hair dye, the permanent wave, or even hair bleach. (Ex.

1007, 2; Ex. 1012, 17).

130.   However, Mr. Nandagiri argues this sentence teaches adding the mild

acid "during a bleaching process" or to a bleaching mixture in order to prevent

damage. (Ex. 1008, ¶¶64, 148). I disagree if Mr. Nandagiri is suggesting that

KR '564 teaches mixing the acid treatments with pH of 4–5 into bleaching

formulations during hair bleaching. First, that paragraph in KR '564 fails to

mention bleaching at all:

> In addition to being used alone as a treatment agent, the
>
> hair treatment agent according to the present invention
>
> may be preliminarily added to a *permanent wave agent,*
>
> *dyeing agent* and the like as an additive for various hair
>
> treatment solvents.

(Ex. 1007, p. 3, ¶3 (emphasis added); *compare* Ex. 1007, 6 (claim 1 directed to

"chemical treatments such as permanent wave, dyeing, *bleaching* and the

like")(emphasis added)). At most, this would be a teaching to combine a mild acid

with "a permanent wave agent" or "dyeing agent," and also a "hair treatment

solvent" (i.e., water, lotion or hair oil). KR '564 never goes on to describe how this

solution would, or even could, be used in any hair care process, including during

hair bleaching.

-41-

Highly Confidential

OLA_0000066331

PGR 2017–00012
Patent No. 9,498,419

131.   Second, a POSITA would understand that neutralizing alkali with mild acid (as KR '564 intends) and driving the pH down to 4–5 during bleaching would be counter-productive. The hair bleaching process would be impeded by neutralizing all of the alkali, which provides "synergistic effects" with peroxide during bleaching. (*Id.*, 2). The hair bleaching process also would be impeded by decreasing pH which "markedly decreases" the effectiveness of bleaching. (Ex. 2027, 6). If the treatment solution failed to fully neutralize the alkali and drive down the pH to 4–5, then the hair would remain in an expanded condition, contrary to the intent of KR '564. (*Id.*)

132.   In no way does KR '564 teach to add mild acid to a bleaching formulation.

## X.   NONOBVIOUSNESS OF '419 PATENT CLAIMS 1–8 AND 10

### A.   GROUND #1—THE CLAIMED HAIR BLEACHING METHOD WOULD NOT HAVE BEEN OBVIOUS TO A POSITA AS OF MAY 16, 2014 IN LIGHT OF OGAWA IN VIEW OF DE '969 AND KR '564

133.   Instituted ground #1 asserts that claims 1–8 and 10 would have been obvious in light of Ogawa in combination with DE '969 and KR '564. I disagree that a POSITA would find all of the claim elements in the cited references or would combine these references to achieve the hair bleaching method set forth in the '419 patent claims. First, Ogawa fails to disclose mixing maleic acid with a

-42-

Highly Confidential

OLA_0000066332

PGR 2017–00012
Patent No. 9,498,419

bleaching formulation and fails to describe the claimed maleic acid concentrations

for use in a mixture with a bleaching formulation.

134.    Second, both DE '969 and KR '564 suffer from the same deficiency

which is both fail to disclose mixing maleic acid with a bleaching formulation or to

describe the claimed maleic acid concentrations. To the contrary, DE '969 and

KR '564 disclose after-the-fact acid treatments, which are incompatible with

bleaching formulations and operate very differently from Ogawa and from one

another.

135.    Third, a POSITA would not have been motivated to add maleic acid

to Ogawa because of a lack of expectation that maleic acid would successfully act

to protect hair during bleaching. A POSITA would have lacked that expectation

because both DE '969 and KR '564 fail to relate any benefit directly to mixing

maleic acid with a bleaching formulation. If anything, the teachings of DE '969

and KR '564 teach away from mixing maleic acid with a bleaching formulation.

> 1.  Ogawa Fails to Disclose Use of Maleic Acid in a Method for
>     Bleaching Hair, or the Claimed Maleic Acid Concentrations for
>     Bleaching Treatments.

136.    In my opinion, a POSITA would have recognized that Ogawa's

disclosure does not include a teaching to mix maleic acid with a bleaching

formulation in a hair bleaching method.

-43-

Highly Confidential

OLA_0000066333

137.   Ogawa's claims relate to hair dyeing methods and not hair bleaching. For example, Ogawa's claim 1 states, "[a] method of dyeing the hair." (Ex. 1002, Col. 7, line 44). Hair dyeing refers to the imparting or adding of color to hair, which is the opposite of hair bleaching, which removes coloring from hair.

138.   "Bleach packs" or "hair bleaches" are a very limited aspect of Ogawa. Ogawa first mentions "hair bleaches" in column 3 and says they "may not contain such an oxidation dye intermediate." (Ex. 1002, Col. 3, lines 28–31; see also *id.*, Col. 4, lines 22–24). Later, Ogawa expresses a preference to mix "a first bleach pack" with a second pack including "an oxidizing agent" (e.g., hydrogen peroxide) upon use, and provides a "mixing ratio" that outlines the relative amounts of the bleach pack and the second pack to be used. (*Id.*, Col. 4, lines 25–39). These passages do not describe any other ingredients of the bleach pack or the second pack.

139.   Maleic acid is entirely omitted from the only specific bleach pack disclosed by Ogawa—Example 3. (*Id.*, Col. 7, lines 11–31). Although it is called a "bleach pack" by Ogawa, the 15-ingredient formulation omits hair-bleaching agents entirely. (*Id.*). Instead, it is an alkali pack that contains alkali agents (e.g., aqueous ammonia and monoethanolamine). (*Id.*, Col. 7, lines 15, 19). Ogawa also fails to describe the intended functions of the listed non-bleach ingredients in that formulation.

-44-

Liqwd, Inc. Ex. 2025
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2017-00012

Case 1:17-cv-00014-JFB-SRF    Document 821-2    Filed 05/28/19    Page 282 of 714 PageID #:
50567
Page 48

140.   In my opinion, a POSITA would not regard the Example 3 bleach pack to be a "bleaching formulation" within the meaning of the '419 patent. It does not contain hydrogen peroxide, persulfate or any bleaching agent. (*Id.*, Col. 7, lines 11–31).

141.   Example 3 also instructs to mix that particular Example 3 bleach pack with a "second pack" whose formulation is shown in Table 2. (*Id.*, Col. 7, lines 5–7). Table 2 sets forth a highly acidic formulation containing hydrogen peroxide. (*Id.*, Col. 6, lines 20–25). Table 2 formulation also omits maleic acid. (*Id.*).

142.   Although the second pack contains hydrogen peroxide, the pH of the second pack is 3.5. The peroxide would be stable at that pH, and would not be an effective bleaching agent.

143.   Ogawa never describes the second pack as a bleaching formulation.

144.   Ogawa describes that the first pack and second pack in Example 3 are added together "in an equal amount (by weight)." (Ex. 1002, Col. 7, lines 5–7). However, Ogawa never describes the pH of the combined mixture in Example 3.

145.   Thus, it is my opinion that a POSITA would have recognized that Ogawa fails to describe mixing maleic acid with a bleaching formulation during bleaching.

146.   Ogawa also fails to describe specific concentrations of maleic acid in the final bleach mixture. Although Ogawa discloses that a "chelating agent" (D)

Highly Confidential

OLA_0000066335

may be incorporated into its hair dye composition "preferably in a proportion of from 0.01 to 10 wt. %" (Ex. 1002, Col. 3, lines 4–7), nothing in Ogawa describes particular maleic acid concentrations for bleaching treatments.

147.    Ogawa's only mention of maleic acid is in connection with hair dyeing. Petitioner relies on that discussion of "illustrative" chelating agents "ingredient (D)," one of which is maleic acid. (*Id.*, Col. 2, line 61–Col. 3, line 1).

148.    However, ingredient (D) is only described in connection with hair dyeing compositions. (*Id.*, Col. 2, lines 1–14). For example, Ogawa mentions "maleic acid" as a possible "chelating agent (D)" in claim 8 which is a "method of dyeing hair." (*Id.*, Col. 8, lines 34–39). There is no disclosure anywhere in Ogawa to use maleic acid in bleach packs or for use during hair bleaching. Nor has Petitioner identified any teaching in Ogawa that the discussion of "ingredient (D)" or "chelating agent (D)" in connection with hair dyes applies to methods for bleaching hair, much less what would motivate a POSITA to combine these separate teachings in Ogawa.

149.    For example, Ogawa describes potential amounts of chelating agents only in the context of hair dyes. (*Id.*, Col. 3, lines 4–7 and Col. 8, lines 28–30). For hair bleaching methods, Ogawa never provides a concentration range for chelating agents, much less a concentration range for maleic acid use in such methods.

-46-

PGR 2017–00012
Patent No. 9,498,419

150.    Therefore, it is also my opinion that a POSITA would have recognized that Ogawa's disclosure does not describe a particular maleic acid concentration range for bleaching treatments.

> 2. DE '969 and KR '564 Also Fail to Disclose Use of Maleic Acid in a Method for Bleaching Hair, or the Claimed Maleic Acid Concentrations for Bleaching Treatments.

151.    In my opinion, a POSITA would have recognized that both DE '969 and KR '564 also fail to disclose the use of maleic acid in a method for bleaching hair and fail to disclose a particular maleic acid concentration range for bleaching treatments.

152.    DE '969 discloses a method for treating previously damaged hair by applying an acidic leave-on treatment with heat from a hair dryer. (Ex. 1004, p. 2, lines 7–10, p. 3, line 28 –p. 4, line 15). The treatment has a pH of 1.9–4.0. (*Id.*, p. 3, lines 8–12). While DE '969 discloses the use of "maleic acid or substitution products," (*id.*, p. 2, lines 12–17), it fails to teach to mix maleic acid with a bleaching formulation (which is alkaline), or to use it in a method for bleaching hair. Similarly, DE '969 also fails to disclose a particular maleic acid concentration range for those uses.

153.    KR '564 relates to a mild acid rinse that is intended to neutralize and remove alkali residues left over from prior chemical hair treatments. (Ex. 1007, 1,

-47-

PGR 2017–00012
Patent No. 9,498,419

2). KR '564 discloses numerous organic acids for this purpose, and teaches that their effects are equivalent. (*Id.*, 3, 6 ("results slightly different")). KR '564 does not disclose a particular maleic acid concentration range to be mixed with a bleaching formulation, used in a method for bleaching hair, or for any purpose at all.

154.    Therefore, it is my opinion that a POSITA would have recognized that DE '969 and KR '564 fail to disclose use of maleic acid in a method for bleaching hair, or the claimed maleic acid concentrations for bleaching treatments.

### 3. It Would Not Have Been Obvious to Modify Ogawa to Select Maleic Acid, Let Alone in the Ranges Specified in '419 Patent Claim 1.

155.    The first instituted ground relies on DE '969 and KR '564 to provide a reason to modify Ogawa and select maleic acid to mix with a bleaching formulation, in the ranges specified in '419 patent claim 1. In particular, the Institution decision said that DE '969 would have motivated a POSITA to choose maleic acid for use in carrying out Ogawa's method. (Paper 17 at 13). I disagree because there is no such motivation to change Ogawa's method and arrive at '419 patent claim 1 based on either of the secondary references.

156.    DE '969 allegedly discusses a preferred use of maleic acid over other acids (tannic, lactic, and citric acids) to treat hair previously damages by bleaching.

-48-

PGR 2017–00012
Patent No. 9,498,419

(*Id.*). In particular, the Board focused on the supposed structural improvement of the hair surface resulting from treatment with maleic acid, which it said was "permanent." (*Id.*).

157.   I respectfully disagree. In my opinion, a POSITA would not have been motivated by DE '969 to choose maleic acid for use in carrying out Ogawa's method. Nothing in DE '969 teaches that its particular treatment solution is used with an alkaline bleaching formulation nor that the DE '969 method can be used during hair bleaching. The opposite is true: the methods described in DE '969 are wholly incompatible with use during bleaching.

158.   DE '969 relates to a specific hair treatment method that is for use only on previously damaged hair. The acidic leave-on treatment solution of DE '969 allegedly improves the look of the hair by smoothing and consolidating the hair's surface. (Paper 17 at 11, citing Ex. 1004 at p. 2, lines 7–14). DE '969 describes the acid treatment as having a pH of 1.9 to 4.0. (Ex. 1004, p. 3, lines 8–12). Although DE '969 does not provide an explanation for the alleged benefit associated with following its treatment method, a POSITA would have understood that this alleged benefit is achieved by neutralizing residual alkali that may be present in the hair. (*Id.*, p. 1, lines 29–30, p. 2, lines 7–10; Ex. 1007, p. 2, ¶¶13, 18; Ex. 2012, ¶31).

159.   A POSITA also would understand this pH range ensures that the treatment solution has an acidic pH at or below the isoelectric point of the hair.

-49-

Highly Confidential

OLA_0000066339

PGR 2017–00012
Patent No. 9,498,419

(Ex. 1007, 6). At that pH range, hair fibers have a net positive charge and would not repel maleic acid/substitution products. This allows maleic acid/substitution products to bond with the hair. By doing this, "a firm substantial attachment" forms between the maleic acid/substitution products and the hair according to DE '969. (Ex. 1004, p. 2, lines 19–28).

160. However, bleaching formulations use alkali to raise pH and swell hair fibers. (Ex. 1007, 2; Ex. 1008, ¶15; Ex. 2027, 6, 7). This swelling makes hair fibers permeable to bleaching chemicals, which must penetrate into the hair fibers to reach the melanin granules or other pigments inside the hair fiber in order to oxidize them and decolor the hair. (Ex. 1008, ¶15; Ex. 1012, 6).

161. A POSITA also would not expect bonding to occur between maleic acid and hair at alkaline pH. Hair fibers at alkaline pH are above the isoelectric point of hair, and therefore the hair fibers have a net negative charge during bleaching. That negative charge on the hair fibers repels negatively charged molecules, such as maleic acid/substitution products.

162. Further, DE '969 teaches that, at acidic pH, the addition of maleic acid will react with peroxides in order to counteract post-oxidation and provide an astringent effect. (*Id.*, p. 2, lines 30–37). This reaction will create acids other than maleic acid (i.e., oxyacids and peroxyacids). (*Id.*). These other acids will display the very same "astringent action" as maleic acid ("same desired purpose of surface

-50-

Liqwd, Inc. Ex. 2025
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2017-00012

PGR 2017–00012
Patent No. 9,498,419

smoothing.") (*Id.*). A POSITA would understand that this astringent effect occurs with any acid that decreases pH sufficiently and neutralizes alkali so that the hair fibers converge or de-swell. (*Id.*, p. 1, line 36–p. 2, line 5; Ex. 1007, p. 2, ¶16; Ex. 1012, 17). There is no teaching that any of these benefits will result at alkaline pH.

163. If sufficient amounts of maleic acid were added to make the bleaching mixture acidic, the bleaching process would be inoperative. (Ex. 1008, ¶15; Ex. 1012, 6).

164. If small amounts of maleic acid were added to a mixture containing a bleaching formulation, the maleic acid would be entirely neutralized in the mixture. There would be no maleic acid available in the mixture when applied to the hair to neutralize any residual alkali. In an alkaline environment, the maleic acid would not be expected to have any astringent effect.

165. Therefore, a POSITA would have expected that the addition of maleic acid to a bleaching formulation would  either to hinder bleaching by neutralizing alkali and decreasing pH, or to have no benefit as taught by DE '969 because there would be no maleic acid remaining to neutralize residual alkali and therefore no astringent effect. This would have led a POSITA away from selecting maleic acid to add to a mixture with a bleaching formulation.

-51-

OLA_0000066341

Liqwd, Inc. Ex. 2025
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2017-00012

Page 55

PGR 2017–00012
Patent No. 9,498,419

166.   Also, the DE '969 method teaches that the acidic treatment is left on and literally dried onto the hair. (Ex. 1004, p. 3, lines 37–39). DE '969 teaches that tightening or "astringent" action of maleic acid benefits from remaining stuck to the hair surface and for this reason the acidic treatment is not rinsed from the hair. (*Id.*, p. 2, lines 3–5, p. 3, lines 37–39). However, bleaching formulations are applied temporarily to hair and are rinsed-off to avoid over-processing the hair. Leaving the alkaline chemicals from a bleach formulation on hair indefinitely would cause significant hair and scalp damage and would be unsafe. There would be no reason for a POSITA to believe from the disclosure of DE '969 that temporary application of maleic acid in a mixture with a bleaching formulation would provide any benefit.

167.   For at least similar reasons, a POSITA also would not have been motivated by KR '564 to choose maleic acid for use in carrying out Ogawa's method. First and foremost, KR '564 never describes any particular benefit that would flow from using maleic acid as opposed to any other mild acid. Instead, KR '564 teaches that all mild acids are essentially equivalent. (Ex. 1007, 6 ("results slightly differed")). Second, KR '564 never teaches that mixing a mild acid treatment with a bleaching formulation would provide any benefit. Third, the teaching in KR '564 that mild acid treatments at pH of 4–5 should be used to neutralize alkali to prevent hair damage, (*id.*, 2, 3), would have led a POSITA

-52-

Highly Confidential

away from mixing any mild acid with a bleaching formulation. Bleaching is done at a high pH (9–11) and relies on alkali to swell hair fibers. A POSITA would have wanted to avoid mixing mild acids with the bleaching formulation for fear that they would hinder bleaching by neutralizing alkali.

168.   Finally, and more generally, a POSITA would have been aware that maleic acid should not be used with oxidizers. Safety Data Sheets provided with maleic acid warn that mixing maleic acid with oxidizers may be detrimental or dangerous. (Ex. 2034, 5, 6). A POSITA would have respected these warnings and would have sought to avoid combining incompatible materials with one another. In my opinion, POSITA would therefore understand that maleic acid is not a good candidate to include in a bleaching composition.

169.   Section 2 of the Safety Data Sheet for maleic acid identifies hazards associated with maleic acid. (Ex. 2034, 1). This section indicates that maleic acid is a skin sensitizer, which means that maleic acid can cause allergic reactions (e.g., contact dermatitis). (*Id.*). Contact dermatitis involves a systemic allergic response and can persist even after the sensitizer is removed. Once an individual sensitized to a particular chemical, an allergic response can grow increasingly intense with repeated exposure. Severe allergic reactions can be life threatening. This is yet another reason why a POSITA would have sought to avoid mixing maleic acid into a mixture with a bleaching formulation.

-53-

Liqwd, Inc. Ex. 2025
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2017-00012

PGR 2017–00012
Patent No. 9,498,419

170.   Therefore, it is my opinion that a POSITA would not have found it obvious in light of DE '969 or KR '564 to modify Ogawa to select maleic acid in place of the EDTA and ascorbic acid used in Ogawa's Example 3, let alone in the ranges specified in '419 patent claim 1.

B.   GROUND #2—THE CLAIMED HAIR BLEACHING METHOD WOULD NOT HAVE BEEN OBVIOUS TO A POSITA AS OF MAY 16, 2014 IN LIGHT OF KITABATA IN VIEW OF DE '969 AND KR '564

171.   Instituted ground #2 asserts that claims 1–8 and 10 would have been obvious in light of Kitabata in combination with DE '969 and KR '564. I disagree that a POSITA would find all of the claim elements in the cited references or would combine these references to achieve the hair bleaching method set forth in the '419 patent claims. First, Kitabata fails to disclose mixing maleic acid with a bleaching formulation and fails to describe the claimed maleic acid concentrations for use in a mixture with a bleaching formulation.

172.   Second, both DE '969 and KR '564 suffer from the same deficiency which is both fail to disclose mixing maleic acid with a bleaching formulation or to describe the claimed maleic acid concentrations. To the contrary, DE '969 and KR '564 disclose after-the-fact acid treatments, which are incompatible with bleaching formulations and operate very differently from Kitabata and also from one another.

-54-

Highly Confidential

OLA_0000066344

173.  Third, a POSITA would not have been motivated to add maleic acid to Kitabata because of a lack of expectation that maleic acid would successfully act to protect hair during bleaching. A POSITA would have lacked that expectation because both DE '969 and KR '564 fail to relate any benefit directly to mixing maleic acid with a bleaching formulation. If anything, the teachings of DE '969 and KR '564 teach away from mixing maleic acid with a bleaching formulation.

1.  Kitabata Fails to Disclose Use of Maleic Acid in a Method for Bleaching Hair, or the Claimed Maleic Acid Concentrations for Bleaching Treatments.

174.  In my opinion, a POSITA would have recognized that Kitabata's disclosure does not include a teaching to mix maleic acid with a bleaching formulation in a hair bleaching method.

175.  Kitabata's "hair dyeing/hair bleaching" composition has a primary agent with several ingredients, including "at least one first pH adjustor selected from the group consisting of polycarboxylic acids and their salts." (Ex. 1005, ¶¶0020–24, ¶¶0062–66, and claim 13). Kitabata teaches a virtually infinite set of materials with combinations of fourteen "example" acids and their salts. (*Id.*, ¶¶0025, 0039).

176.  Although maleic acid is one of the "example" acids, no particular advantages are disclosed. (*Id.*, ¶0039). The only bleaching examples are shown in

-55-

PGR 2017–00012
Patent No. 9,498,419

Table 1, and each contains malic acid or a salt of citric acid (trisodium citrate). (*Id.*, ¶0087). Kitabata fails to describe using maleic acid in a hair bleaching method or any particular maleic acid concentrations for use in bleaching treatments.

177.   Thus, it is my opinion that a POSITA would have recognized that Kitabata fails to describe mixing maleic acid with a bleaching formulation during bleaching, and also fails to describe a particular maleic acid concentration range for bleaching treatments.

> 2.   DE '969 and KR '564 Also Fail to Disclose Use of Maleic Acid in a Method for Bleaching Hair, or the Claimed Maleic Acid Concentrations for Bleaching Treatments.

178.   In my opinion, a POSITA would have recognized that both DE '969 and KR '564 also fail to disclose the use of maleic acid in a method for bleaching hair and fail to disclose a particular maleic acid concentration range for bleaching treatments.

179.   DE '969 discloses a method for treating previously damaged hair by applying an acidic leave-on treatment with heat from a hair dryer. (Ex. 1004, p. 2, lines 7–10, p. 3, line 28 – p. 4, line 15). The treatment has a pH of 1.9 – 4.0. (*Id.*, p. 3, lines 8–12). While DE '969 discloses the use of "maleic acid or substitution products," (*id.*, p. 2, lines 12–17), it fails to teach to mix maleic acid with a bleaching formulation (which is alkaline), or to use it in a method for bleaching

-56-

hair. Similarly, DE '969 also fails to disclose a particular maleic acid concentration range for those uses.

180.    KR '564 relates to a mild acid rinse that is intended to neutralize and remove alkali residues left over from prior chemical hair treatments. (Ex. 1007, 1, 2). KR '564 discloses numerous organic acids for this purpose, and teaches that their effects are equivalent. (*Id.*, 3, 6 ("results slightly different")). KR '564 does not disclose a particular maleic acid concentration range to be mixed with a bleaching formulation, used in a method for bleaching hair, or for any purpose at all.

181.    Therefore, it is my opinion that a POSITA would have recognized that DE '969 and KR '564 fail to disclose use of maleic acid in a method for bleaching hair, or the claimed maleic acid concentrations for bleaching treatments.

### 3. It Would Not Have Been Obvious to Modify Kitabata to Select Maleic Acid, Let Alone in the Ranges Specified in '419 Patent Claim 1.

182.    The second instituted ground relies on DE '969 and KR '564 to provide a reason to modify Kitabata and select maleic acid to mix with a bleaching formulation, in the ranges specified in '419 patent claim 1. In particular, the Institution decision said that DE '969 would have motivated a POSITA to choose maleic acid for use in carrying out Kitabata's method. (Paper 17 at 20). I disagree

Highly Confidential

OLA_0000066347

Liqwd, Inc. Ex. 2025
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2017-00012

PGR 2017–00012
Patent No. 9,498,419

because there is no such motivation to change Kitabata's method and arrive at

'419 patent claim 1 based on either of the secondary references.

183.   DE '969 allegedly discusses a preferred use of maleic acid over other

acids (tannic, lactic, and citric acids) to treat hair previously damages by bleaching.

(*Id.*). In particular, the Board focused on the supposed structural improvement of

the hair surface resulting from treatment with maleic acid, which it said was

"permanent." (*Id.*).

184.   I disagree. In my opinion, a POSITA would not have been motivated

by DE '969 to choose maleic acid for use in carrying out Kitabata's method.

Nothing in DE '969 teaches that its particular treatment solution is useful with an

alkaline bleaching formulation nor that the DE '969 method can be used during

hair bleaching. The opposite is true: the methods described in DE '969 are wholly

incompatible with use during bleaching.

185.   DE '969 relates to a specific hair treatment method that is for use only

on previously damaged hair. The acidic leave-on treatment solution of DE '969

allegedly improves the look of the hair by smoothing and consolidating the hair's

surface. (Paper 17 at 11, citing Ex. 1004 at p. 2, lines 7–14). DE '969 describes the

acid treatment as having a pH of 1.9 to 4.0. (Ex. 1004, p. 3, lines 8–12). Although

DE '969 does not provide an explanation for the alleged benefit associated with

following its treatment method, a POSITA would have understood that this alleged

-58-

Highly Confidential

OLA_0000066348

PGR 2017–00012
Patent No. 9,498,419

benefit is achieved by neutralizing residual alkali that may be present in the hair. (*Id.*, p. 1, lines 29–30, p. 2, lines 7–10; Ex. 1007, 2, ¶¶13, 18; Ex. 2012, ¶31).

186.   A POSITA also would understand this pH range ensures that the treatment solution has an acidic pH at or below the isoelectric point of the hair. (Ex. 1007, 6). At that pH range, hair fibers have a net positive charge and would not repel maleic acid/substitution products, allowing them to bond with the hair. By doing this, "a firm substantial attachment" forms between the maleic acid/substitution products and the hair according to DE '969. (Ex. 1004, p. 2, lines 19–28).

187.   However, bleaching formulations use alkali to raise pH and swell hair fibers. (Ex. 1007, 2; Ex. 1008, ¶15; Ex. 2027, 6, 7). This swelling makes hair fibers permeable to bleaching chemicals, which must penetrate into the hair fibers to reach the melanin granules or other pigments inside the hair fiber in order to oxidize them and decolor the hair. (Ex. 1008, ¶15; Ex. 1012, 6).

188.   A POSITA also would not expect bonding to occur between maleic acid and hair at alkaline pH. Hair fibers at alkaline pH are above their isoelectric point, and therefore hair fibers have a net negative charge during bleaching. That negative charge on the hair fibers repels negatively charged molecules, such as maleic acid/substitution products.

-59-

Highly Confidential

OLA_0000066349

189.   Further, DE '969 teaches that, at acidic pH, the addition of maleic acid will react with peroxides in order to counteract post-oxidation and provide an astringent effect. (*Id.*, p. 2, lines 30–37). This reaction will create acids other than maleic acid (i.e., oxyacids and peroxyacids). (*Id.*). These other acids will display the very same "astringent action" as maleic acid ("same desired purpose of surface smoothing.") (*Id.*). A POSITA would understand that this astringent effect occurs with any acid that decreases pH sufficiently and neutralizes alkali so that the hair fibers converge or de-swell. (*Id.*, p. 1, line 36–p. 2, line 5; Ex. 1007, p. 2, ¶16; Ex. 1012, 17). There is no teaching that any of these benefits will result at alkaline pH.

190.   If sufficient amounts of maleic acid were added to make the bleaching mixture acidic, the bleaching process would be inoperative. (Ex. 1008, ¶15; Ex. 1012, 6).

191.   If small amounts of maleic acid were added to a mixture containing a bleaching formulation, the maleic acid would be entirely neutralized in the mixture. There would be no maleic acid available in the mixture when applied to the hair to neutralize any residual alkali. In an alkaline environment, the maleic acid would not be expected to have any astringent effect.

192.   Therefore, a POSITA would have expected that the addition of maleic acid to a bleaching formulation would  either to hinder bleaching by neutralizing

-60-

Highly Confidential

OLA_0000066350

alkali and decreasing pH, or to have no benefit as taught by DE '969 because there would be no maleic acid remaining to neutralize residual alkali and therefore no astringent effect. This would have led a POSITA away from selecting maleic acid to add to a mixture with a bleaching formulation.

193.    Also, the DE '969 method teaches that the acidic treatment is left on and literally dried onto the hair. (Ex. 1004, p. 3, lines 37–39). DE '969 teaches that tightening or "astringent" action of maleic acid benefits from remaining stuck to the hair surface and for this reason the acidic treatment is not rinsed from the hair. (*Id.*, p. 2, lines 3–5, p. 3, lines 37–39). However, bleaching formulations are applied temporarily to hair and are rinsed-off to avoid over-processing the hair. Leaving the alkaline chemicals from a bleach formulation on hair indefinitely would cause significant hair and scalp damage and would be unsafe. There would be no reason for a POSITA to believe from the disclosure of DE '969 that temporary application of maleic acid in a mixture with a bleaching formulation would provide any benefit.

194.    For at least similar reasons, a POSITA also would not have been motivated by KR '564 to choose maleic acid for use in carrying out Kitabata's method. First, KR '564 never describes any particular benefit that would flow from using maleic acid as opposed to any other mild acid. Instead, KR '564 teaches that all mild acids are essentially equivalent. (Ex. 1007, 6 ("results slightly differed")).

-61-

OLA_0000066351

PGR 2017–00012
Patent No. 9,498,419

Second, KR '564 never teaches that mixing a mild acid treatment with a bleaching formulation would provide any benefit. Third, the teaching in KR '564 that mild acid treatments at pH of 4–5 should be used to neutralize alkali to prevent hair damage, (*id.*, 2, 3), would have led a POSITA away from mixing any mild acid with a bleaching formulation. Bleaching is done at a high pH (9–11) and relies on alkali to swell hair fibers. A POSITA would have wanted to avoid mixing mild acids with the bleaching formulation for fear that they would hinder bleaching by neutralizing alkali.

195.   Finally, and more generally, a POSITA would have been aware that maleic acid should not be used with oxidizers. Safety Data Sheets provided with maleic acid warn that mixing maleic acid with oxidizers may be detrimental or dangerous. (Ex. 2034, 5, 6). A POSITA would have respected these warnings and would have sought to avoid combining incompatible materials with one another. In my opinion, POSITA would therefore understand that maleic acid is not a good candidate to include in a bleaching composition.

196.   Section 2 of the Safety Data Sheet for maleic acid identifies hazards associated with maleic acid. (Ex. 2034, 1). This section indicates that maleic acid is a skin sensitizer, which means that maleic acid can cause allergic reactions (e.g., contact dermatitis). (*Id.*). Contact dermatitis involves a systemic allergic response and can persist even after the sensitizer is removed. Once an individual sensitized

-62-

PGR 2017–00012
Patent No. 9,498,419

to a particular chemical, an allergic response can grow increasingly intense with repeated exposure. This is yet another reason why a POSITA would have sought to avoid mixing maleic acid into a mixture with a bleaching formulation.

197.   Therefore, it is my opinion that a POSITA would not have found it obvious in light of DE '969 or KR '564 to modify Kitabata to select maleic acid in place of malic acid used in Kitabata's Example 2, let alone in the ranges specified in '419 patent claim 1.

C.   OBJECTIVE EVIDENCE DEMONSTRATES THAT CLAIMS 1–8 AND 10 WOULD NOT HAVE BEEN OBVIOUS TO A POSITA AS OF MAY 16, 2014

198.   The fact that Claims 1–8 and 10 of the '419 patent are not obvious is also supported by the objective indicia, or so called secondary considerations, of non-obviousness, including long felt but unresolved need for the invention and Petitioner's copying.

1.   Long-Felt and Unmet Need as of May 16, 2014

199.   I have been informed and understand that a long-felt but unmet need for an invention supports the non-obviousness of the invention. If the invention under consideration was obvious based upon earlier prior art disclosures, the long-felt need would have been met before the time of the invention.

200.   In my opinion, a long-felt need in the field of cosmetic science for a method that prevents damage and repairs damage during oxidative hair bleaching

-63-

Liqwd, Inc. Ex. 2025
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2017-00012

PGR 2017–00012
Patent No. 9,498,419

confirms the non-obviousness of the inventions claimed in the relevant claims of the '419 patent.

201.   Oxidative bleaching has long been known to cause damage to hair. As early as 1964, the art knew that repeated bleaching caused numerous problems including making hair brittle, opening the hair cuticles, and making hair appear "lusterless and dull." (Ex. 1004, p. 1). Thirty years later, textbooks and journal articles continued to report, "the aggressive nature of the bleaching mixtures can result in significant damage to hair." (Ex. 2027, 6–7; see also Ex 2029, 6). It was believed that this damage was caused by oxidation of cysteine to cysteic acid. (Ex. 2027, 7). Shortly before the effective filing date of the '419 patent, experts continued to describe how that bleaching lowered the mechanical strength and damaged hair. (Ex. 1012, 16, 17; Ex. 2045, 6).

202.   I have reviewed the Declaration of Thomas Dispenza (Ex. 2021), and find his statements to be compelling proof of the non-obviousness of the inventions. Prior to the '419 patent, hair damaged by bleaching was treated after-the-fact with toners, conditioners, oils, and silicones intended to mask the structural damage caused by prior bleaching. (Ex. 2027, 6, 7, 13; Ex. 2021, ¶¶27, 31, 34–39). However, these treatments only masked the underlying problem, and they did not repair the damage, or prevent it. (Ex. 2021, ¶¶41–42). A POSITA

-64-

Highly Confidential

OLA_0000066354

would have understood that there was no cure of oxidative bleach damage prior to the '419 patent invention.

203. Even Petitioner's expert declarant (Mr. Nandagiri) conceded, "the bleaching process has long been known to damage hair causing it to be brittle, dull, and otherwise diminished in appearance." (Ex. 1008, ¶16).

204. Further, the '419 patent says that the invention rebuilds disulfide bonds in keratin found in hair that would otherwise be damaged by chemical treatments such as bleaching. (Ex. 1001, cover page at item [57]). Petitioner's advertisements for its maleic-acid bleach additives also tout the ability of maleic acid to strengthen and preserve bonds during hair bleaching. (Ex. 2013, 3, 7, 9, 20).

205. Therefore, it is my opinion that a POSITA would have recognized that there was a long-felt and unmet need for a method to prevent damage and repair damage during oxidative hair bleaching and that need was finally met by the '419 patent invention.

### 2. Petitioner's Choice to Copy the '419 Patent Invention

206. I have been informed and understand that evidence that the Petitioner has copied the invention supports the non-obviousness of the invention. If the invention under consideration were obvious based on prior art disclosures, there

Highly Confidential

OLA_0000066355

Liqwd, Inc. Ex. 2025
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2017-00012

PGR 2017–00012
Patent No. 9,498,419

would have been no need to obtain disclosures from Patent Owner and to copy the

invention from those disclosures.

207.   I have been asked to give my opinion on whether Petitioner's three

products ((a) Matrix Bond Ultim8 Step 1 Amplifier; (b) Redken pH-Bonder #1

Bond Protecting Additive; (c) L'Oréal Professionnel Smartbond Step 1 Additive)

fall within the scope of properly construed claim elements of the relevant claims of

the '419 patent.

208.   It is my opinion that each of these three products, if used according to

their instructions, would practice the method for bleaching hair set forth in at least

claim 1 of the '419 patent and, therefore, embody the relevant claims of the

'419 patent as demonstrated below individually for each product.

209.   I also have considered Petitioner's advertisements for these products.

Various advertisements feature discussions of maleic acid and its alleged benefits

in hair bleaching. (Ex. 2013, 3, 7, 9, 20).

210.   I have reviewed the Declarations of Dean Christal and Eric Pressly,

and find their statements to be compelling proof of the non-obviousness of the

inventions. (Exs. 2022 and 2023). The patent application that Mr. Christal provided

to Petitioner's representatives discloses the method of using a maleic acid active

agent in a method of bleaching hair. (See, e.g., Ex. 2024, 37–38). In my opinion,

evidence that Petitioner has copied the invention from disclosures provided by

-66-

Highly Confidential

OLA_0000066356

PGR 2017–00012
Patent No. 9,498,419

Patent Owner confirms the non-obviousness of the inventions claimed in the relevant claims of the '419 patent.

211.   Below I show that the use of these products as instructed by Petitioner in hair bleaching infringes at least claim 1 of the '419 patent.

**<u>Matrix Bond Ultim8 Step 1</u>**

212.   If the preamble of '419 patent claim 1 is considered a claim limitation, the use of Bond Ultim8 Step 1 according to the instructions provides a method for bleaching or lightening the color of hair. (Ex. 2035, 1 ("Helps protect bonds during lightening").

213.   Use of Bond Ultim8 Step 1 as instructed involves mixing a maleic acid active agent formulation with a bleaching formulation. The Bond Ultim8 Step 1 label identifies maleic acid as an ingredient. (*Id.*). The instructions for use direct the user to mix the STEP 1 additive with a two-part bleaching formulation having peroxide and bleaching powder. (*Id.*; Ex. 2036, 2).

214.   Use of Bond Ultim8 Step 1 as instructed also involves applying the additive/bleaching formulation mixture to hair. Petitioner expressly instructs a user to "[a]pply lightener … as usual" after mixing the maleic acid active agent formulation with the bleaching formulation. (Ex. 2035, 1; Ex. 2036, 2). The next step in the instructions calls for rinsing of the lightener from the hair, which confirms that the mixture is applied to the hair. (Ex. 2036, 2).

-67-

Highly Confidential

OLA_0000066357

**Liqwd, Inc. Ex. 2025**
**L'Oreal USA, Inc. v. Liqwd, Inc.**
**PGR2017-00012**

PGR 2017–00012
Patent No. 9,498,419

215.   Bond Ultim8 Step 1 has maleic acid at a concentration of about

10.5 wt. %. (Ex. 2037, 1). Using these test results and/or data, together with the

instructions that come with the Bond Ultim8 Step 1, it is possible to determine the

concentration of maleic acid (weight percentage) in the mixture that is applied to

the hair.

216.   The package instructions that accompany Bond Ultim8 Step 1 include

a table which specifies amounts of lightener powder, developer, and Step 1

additive to use when bleaching hair. The relevant portion of the table is reproduced

as follows:

| Lightener (grams) | Developer (ml) | Step 1 Additive (ml) |
|:---:|:---:|:---:|
| 15–30 g | 15–90 ml | 4 ml |
| 30–60 g | 30–120 ml | 8 ml |

(Ex. 2036, 2).

217.   The amounts of developer and Step 1 additive are given as a volume.

To convert these into a mass, I assumed that the density of each was approximately

that of water (1 g/ml). Water is expected to be the major component of these

compositions, and I have seen nothing in the ingredient lists, material safety data

sheets, or any other information source to suggest otherwise.

-68-

Highly Confidential

Liqwd, Inc. Ex. 2025
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2017-00012

PGR 2017–00012
Patent No. 9,498,419

218.   Thus, the total mass of ingredients in the top row was from a minimum of 34 grams (i.e., 15+15+4) to a maximum of 124 grams (i.e., 30+90+4). Using the NMR testing results, I calculated the weight of maleic acid present in 4 ml of Step 1 additive (0.4 grams). From this I calculated the weight percentage of maleic acid present in that mixture to be between 0.3–1.2 wt. %. Following the same process, I determined that the weight percentage of maleic acid present in that mixture in the bottom row to be between 0.4–1.2 wt. %.

219.   Thus, my analysis demonstrates that when Bond Ultim8 Step 1 is used according to the instructions the concentration of maleic acid (weight percentage) in the mixture that is applied to the hair is between about 0.1% by weight and about 50% by weight, as claimed in this element.

220.   Bond Ultim8 Step 1 includes three generic product-coloring chemicals (CI 19140/Yellow 5, CI 14700/Red 4, CI 42090/Blue 1). (Ex. 2035). The core question is whether Bond Ultim8 Step 1 actually uses CI 19140, CI 14700 and CI 42090 in the bleaching mixture applied to the hair in such a way that they actually color hair. In my opinion, when used as instructed, the mixture applied to the hair does not contain a hair-coloring agent.

221.   CI 19140, CI 14700 and CI 42090 are common dyes for coloring products, but I am not aware of any hair dye product, which uses these chemicals to actually impart color to hair in the low concentrations that I believe these

-69-

Highly Confidential                                          OLA_0000066359

PGR 2017–00012
Patent No. 9,498,419

chemical are used in the Bond Ultim8 Step 1. Moreover, all three of these dyes are used in various shampoo and conditioner products marketed by Petitioner, which are neither intended to color hair, nor labeled as coloring hair, as demonstrated below.

222.   Redken Curvaceous conditioner contains both CI 19140/Yellow 5 and CI 42090/Blue 1. (Ex. 2031, 2). Matrix Biolage Advanced shampoo also contains CI 19140/ Yellow 5. (Ex. 2032, 2). Pureology (a brand of Petitioner) Strength Cure conditioner contains CI 14700/Red 4. (Ex. 2033, 2). The fact that Petitioner uses the three dyes at issue in its shampoo and conditioner products, and does not label those shampoos and conditioners as products containing hair colorants, further demonstrates that Petitioner does not genuinely consider these dyes to be hair colorants.

223.   I also have considered an internal report of Petitioner, which was dated 20 July 2016 and assessed "Impact of the Dyes Used in Bonding Additive P4." (Ex. 2038). This document identifies the formulation of Bond Ultim8 Step 1 as "1200591." (*Id.*, 2; see also Ex. 2035, 1; Ex. 2039, 2; Ex. 2040, p. 12 at Tr. 46, lines 17–25).

224.   Two additional formulations were tested. One was a version of L'Oréal Professional Smartbond Step 1 without any dyes (Formula 1112405B) and one was a version of Smartbond Step 1 with four times the normal dye load

-70-

Highly Confidential

OLA_0000066360

**Liqwd, Inc. Ex. 2025**
**L'Oreal USA, Inc. v. Liqwd, Inc.**
**PGR2017-00012**

(Formula 1112405C). The concentrations of the dyes in Bond Ultim8 Step 1 are reported as 0.0001% CI 19140/Yellow 5, 0.000011% of CI 42090/Blue 1, and 0.00008% of CI 14700/Red 4. (Ex. 2038, 2).

225.   Each product was tested with both oxidative hair color (Majirel clear) and a bleaching product having both bleach powder and 30-volume developer. (*Id.*). The Results and Conclusion sections report that the Petitioner's maleic acid containing bleach additives do not color hair:

RESULTS:

In all conditions, we did not notice any coloration of the hair (all type of hair – type of product – additives)

* * *

L*a*b* results : no significant differences between 1112405, 1112405B and 1112405C on all types of fibers.

CONCLUSION:

Dyes added into the Bonding additive, at the very low concentration introduced, have the only properties to color the bulk of the additive but none properties to color hair.

(*Id.* at 3).

Highly Confidential

OLA_0000066361

226.    Another internal report produced by Petitioner, dated July 21, 2016,

assesses whether the dyes added in Bond Ultim8 Step 1 "will only color the bulk of

the additive and not the hair." (Ex. 2039, 2). In this report, the Bond Ultim8 Step 1

formulation is compared with a similar formulation that entirely omits the three

dyes. (*Id.*; Ex. 2040, pp. 22–24 at Tr. 126, line 20–Tr. 128, line 8). Yet again, no

coloration of the hair was detected. (Ex. 2039, 3). The conclusion is that the dyes

in Bond Ultim8 Step 1 only "color the bulk of the additive" and do not have the

"properties to color hair." (*Id.*).

227.    From this, I understand that Petitioner deliberately formulated the

Bond Ultim8 Step 1product in order to avoid coloring hair.

228.    In my opinion, the Bond Ultim8 Step 1 product does not contain a hair

coloring agent. When these products are used as Petitioner instructs for bleaching

hair, the bleaching mixture does not contain a hair coloring agent and no product

colorant present would be expected to act as a hair coloring agent.

229.    The following Table 1 summarizes where each element of claim 1 of

the '419 patent is practiced by the use of Petitioner's Bond Ultim8 Step 1 product

as instructed:

Highly Confidential

OLA_0000066362

TABLE 1

| Claim Language | Infringement by Use of Matrix Bond Ultim8 Step 1 |
|---|---|
| 1. A method for bleaching hair comprising: | To the extent that the preamble is considered a claim limitation, the use of Bond Ultim8 Step 1 according to the instructions provides a method for bleaching or lightening the color of hair. |
| (a) mixing a formulation comprising an active agent with a bleaching formulation, | The label on Bond Ultim8 Step 1 lists the ingredients that it contains. The second ingredient is identified as "maleic acid," which is the active agent:<br><br>1200591-INGREDIENTS: AQUA / WATER, MALEIC ACID, ETHANOLAMINE, CITRIC ACID, CI 19140 / YELLOW 5, CI 14700 / RED 4, CI 42090 / BLUE 1 (D191397/2)<br><br>(Ex. 2035, 1 excerpt, with emphasis added.). Thus, Bond Ultim8 Step 1 is a formulation comprising an active agent.<br><br>The instructions provided on the bottle of Bond Ultim8 Step 1 direct the user to mix |

-73-

OLA_0000066363

PGR 2017–00012
Patent No. 9,498,419

| Claim Language | Infringement by Use of Matrix Bond Ultim8 Step 1 |
|---|---|
| | STEP 1, including its active agent maleic acid, with a two-part bleaching formulation : |
| | **STEP 1: BOND ULTIM8 AMPLIFIER** treatment helps prevent breakage during lightening services. **To use:** Mix your lightener or color, with developer, as usual, before adding **STEP 1. LIGHTENER:** add 4mL (1/8oz) of **STEP 1** for every 15-30 grams (1/2 - 1 oz) of powder or 8 mL (1/4 oz) of **BOND ULTIM8 STEP 1** for every 30-60 grams (1 - 2 oz) of powder used in mixture. **COLOR:** add 4mL (1/8oz) of **STEP 1** for every 60 grams (2 oz) of colorant used in mixture. Apply lightener or color as usual. Rinse color from hair – do not shampoo. Dry thoroughly with a towel. Follow with **STEP 2.** Store Upright. Rinse Syringe after each use. |
| | (Ex. 2035, 1 excerpt, with emphasis added.). |
| | The package instructions (included in the box when Bond Ultim8 Step 1 is sold) further describe the bleaching formulation: |

-74-

PGR 2017–00012
Patent No. 9,498,419

| Claim Language | Infringement by Use of Matrix Bond Ultim8 Step 1 |
|---|---|
| | **DIRECTIONS FOR USE:**<br><br>**STEP 1: AMPLIFIER**<br>1. Mix your lightener or color as usual.<br>2. Add 4ml of **STEP 1** per 15g of lightener powder to the mixture. Use 8ml (¼ oz.) of **STEP 1** when mixing 30g or more of lightener powder.<br>3. Apply lightener or color as usual.<br><br>(Ex. 2036, 2 excerpt, with emphasis added.) The words "powder" and "lightener powder" refer to bleaching powder. The bleaching formulation is therefore the combination of bleach and developer.<br><br>For the foregoing reasons, use of Bond Ultim8 Step 1 as instructed involves mixing a formulation comprising an active agent with a bleaching formulation. |
| wherein the active | The label on Bond Ultim8 Step 1 lists the ingredients that it contains. The second |

-75-

PGR 2017–00012
Patent No. 9,498,419

| Claim Language | Infringement by Use of Matrix Bond Ultim8 Step 1 |
|---|---|
| agent has the formula:<br><br><br><br>or<br><br>salts thereof; and | ingredient is identified as "maleic acid," which is the active agent. (Ex. 2035, 1). The chemical structural formula of maleic acid is depicted below:<br><br><br><br>Bond Ultim8 Step 1 therefore has an active agent with formula shown in the claim. |
| (b) applying the mixture to the hair; | As documented above, the instructions provided on the bottle (Ex. 2035, 1), and those that are included in the packaging provided with Bond Ultim8 Step 1 (Ex. 2036, 2), direct the user to "[a]pply lightener … as usual" after mixing the additive into the bleaching formation. The mixture is being applied to the hair.<br><br>To the extent this is not self-evident; step "4." of the package instructions directs the user to "Rinse lightener … from hair" (which confirms that the mixture is applied to the hair): |

-76-

OLA_0000066366

PGR 2017–00012
Patent No. 9,498,419

| Claim Language | Infringement by Use of Matrix Bond Ultim8 Step 1 |
|---|---|
| | **DIRECTIONS FOR USE:**<br><br>**STEP 1: AMPLIFIER**<br>1. Mix your lightener or color as usual.<br>2. Add 4ml of **STEP 1** per 15g of lightener powder to the mixture. Use 8ml (¼ oz.) of **STEP 1** when mixing 30g or more of lightener powder.<br>3. Apply lightener or color as usual.<br>4. Rinse lightener color from hair – do not shampoo. Dry thoroughly with a towel.<br><br>(Ex. 2036, 2 excerpt, with emphasis added.)[2]<br><br>Therefore, the use of Bond Ultim8 Step 1 as instructed involves applying the additive/bleaching formulation mixture to hair. |
| wherein the active | As discussed above, Bond Ultim8 Step 1 contains the active agent maleic acid. At my |

---

[2]   The reference to "lightener color" in item 4 appears to be a typographical error.  Consistent with items 1 and 3 of the same instructions, I understand and believe that item 4 should read "lightener or color".

-77-

OLA_0000066367

PGR 2017–00012
Patent No. 9,498,419

| Claim Language | Infringement by Use of Matrix Bond Ultim8 Step 1 |
|---|---|
| agent in the mixture is at a concentration ranging from about 0.1% by weight to about 50% by weight; and | direction, Bond Ultim8 Step 1 was tested at an independent laboratory, ANALYZE INC., which determined that maleic acid was present in the Bond Ultim8 Step 1 bottle at a concentration of about 10.5 ±0.1 % by weight: |

Quantitative $^1$H NMR spectroscopy was used to determine the concentrations of both the maleic acid (MA) and monoethanolamine (MEA) using calcium formate as the internal standard.

The average values of the triplicate NMR assay results are listed in Summary Table I

### Summary Table I – MA and MEA Assay Results

| Sample ID | [MA] Wt-% | [MEA] Wt-% |
|---|---|---|
| Sample 1 - Redken pH Bonder Step 1 | 10.6 | 5.5 |
| Sample 2 - Matrix Bond Ultim 8 Step 1 | 10.5 | 5.4 |
| Sample 3 - L'Oreal Smartbond Step 1 | 10.2 | 5.4 |

The precision of the analyses is good with all average values of the triplicate analyses having a standard deviation of less than $\pm$ 0.1.

Highly Confidential

OLA_0000066368

Liqwd, Inc. Ex. 2025
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2017-00012

Case 1:17-cv-00014-JFB-SRF   Document 821-2   Filed 05/28/19   Page 316 of 714 PageID #:
50601

Page 82

PGR 2017–00012
Patent No. 9,498,419

| Claim Language | Infringement by Use of Matrix Bond Ultim8 Step 1 |
|---|---|
| | (Ex. 2037, 1, with emphasis added; note that [1]H NMR is the acronym for Proton Nuclear Magnetic Resonance Spectroscopy, where such spectroscopy services were performed for ANALYZE INC. by the independent laboratory Spectral Data Systems of Champaign, Illinois.) |

The Bond Ultim8 Step 1 Instructions (Ex. 2036, 1) contain a table that specifies the amounts of lighter or bleaching powder, developer and Bond Ultim8 Step 1 to use when bleaching:

| Lightener/Color (as indicated) | | Developer (6.7, 10-40 volume) | STEP 1 Additive |
|---|---|---|---|
| Powder | 15g-30g | 15-90ml (½-3 oz.) | 4ml (1/8 oz.) |
| | 30g-60g | 30-120ml (1-4 oz.) | 8ml (1/4 oz.) |

-79-

OLA_0000066369

PGR 2017–00012
Patent No. 9,498,419

| Claim Language | Infringement by Use of Matrix Bond Ultim8 Step 1 |
|---|---|
| | When Bond Ultim8 Step 1 is mixed with bleach and developer per the package instructions, the concentration of active agent in the mixture varies from 0.3% by weight to 1.2% by weight, as shown in the table below: |

| Bleach | Developer | | Additive | | Maleic acid | Total | Maleic acid |
|---|---|---|---|---|---|---|---|
| (g) | (ml) | (g) | (ml) | (g) | (g) | (g) | (wt%) |
| 15 | 15 | 15 | 4 | 4 | 0.42 | 34.0 | 1.2% |
| 15 | 90 | 90 | 4 | 4 | 0.42 | 109.0 | 0.4% |
| 30 | 15 | 15 | 4 | 4 | 0.42 | 49.0 | 0.9% |
| 30 | 90 | 90 | 4 | 4 | 0.42 | 124.0 | 0.3% |

-80-

PGR 2017–00012
Patent No. 9,498,419

| Claim Language | Infringement by Use of Matrix Bond Ultim8 Step 1 | | | | | | |
|---|---|---|---|---|---|---|---|
| | Bleach | Developer | | Additive | | Maleic acid | Total | Maleic acid |
| | (g) | (ml) | (g) | (ml) | (g) | (g) | (g) | (wt%) |
| | 30 | 30 | 30 | 8 | 8 | 0.84 | 68.0 | 1.2% |
| | 30 | 120 | 120 | 8 | 8 | 0.84 | 158.0 | 0.5% |
| | 60 | 30 | 30 | 8 | 8 | 0.84 | 98.0 | 0.9% |
| | 60 | 120 | 120 | 8 | 8 | 0.84 | 188.0 | 0.4% |

Each of these values is within the claimed range from about 0.1% by weight to about 50% by weight.

| wherein the mixture | The claimed mixture is the combination of Bond Ultim8 Step 1 with the bleaching |
|---|---|

Highly Confidential

OLA_0000066371

| Claim Language | Infringement by Use of Matrix Bond Ultim8 Step 1 |
|---|---|
| does not contain a hair coloring agent. | formulation. I reviewed the label of Bond Ultim8 Step 1, as well as the labels of the Matrix-branded bleaching powder and developer, to determine what ingredients they contain. From this review, I have confirmed that they do not contain hair coloring agents. "Hair coloring agent" has a well-understood plain and ordinary meaning that is set forth in the file history of the '419 patent, namely, "a colorant or pigment that is customarily used in hair care products, which changes the color or tone of the hair it is applied to based on visual inspection." (Ex. 1010, 7). For example, a colorant or pigment that is intended to, for example, permanently or demi-permanently change the color or tone of hair is typically diffused into the hair fibers themselves during hair coloring, and then oxidized by hydrogen peroxide into active intermediates. (*See also* Ex. 1001, Col. 16, line 43 – Col. 17, line 14 and Col. 20, lines 30–36). These intermediates then react with coupling agents to create dye molecules that fix the color to the hair fiber. By contrast, a |

-82-

PGR 2017–00012
Patent No. 9,498,419

| Claim Language | Infringement by Use of Matrix Bond Ultim8 Step 1 |
|---|---|
|  | colorant or pigment that is not intended to permanently, demi-permanently or semi-permanently change the color or tone of hair, e.g., the colorant or pigment easily washes out, in this fashion is not a "hair coloring agent."<br><br>Bond Ultim8 Step 1 does not contain any "hair coloring agents," and its instructions for use do not include such agents for bleaching treatments, as shown above. The ingredient lists for Bond Ultim8 Step 1 includes three generic product coloring chemicals (CI 19140/Yellow 5, CI 14700/Red 4, CI 42090/Blue 1):<br><br>**1200591-INGREDIENTS:** AQUA / WATER, MALEIC ACID, ETHANOLAMINE, CITRIC ACID, CI 19140 / YELLOW 5, CI 14700 / RED 4, CI 42090 / BLUE 1 (D191397/2)<br><br>(Ex. 2035, 1 excerpt, with emphasis added.)<br><br>The lack of binding activity between these generic coloring chemicals used in Bond |

-83-

Highly Confidential

OLA_0000066373

PGR 2017–00012
Patent No. 9,498,419

| Claim Language | Infringement by Use of Matrix Bond Ultim8 Step 1 |
|---|---|
| | Ultim8 Step 1 and hair fiber makes them a good choice for modifying the appearance of a product in a bottle. Internal testing by Petitioner establishes that these dyes color the product only and do not actually color hair. (Ex. 2038, 3; Ex. 2039, 3). <br><br> For all of these reasons, the mixture of Bond Ultim8 Step 1 and the bleaching formulation does not contain a hair coloring agent. |

Highly Confidential

OLA_0000066374

**Liqwd, Inc. Ex. 2025**
**L'Oreal USA, Inc. v. Liqwd, Inc.**
**PGR2017-00012**

### Redken pH-Bonder #1

230.    If the preamble of '419 patent claim 1 is considered a claim limitation, the use of Redken pH-Bonder #1 according to the instructions provides a method for bleaching or lightening the color of hair. (Ex. 2041, 1 "promotes bond integrity" and "helps protect bonds to keep fibers strong from within during technical services" such as lightening).

231.    Use of pH-Bonder #1 as instructed involves mixing a maleic acid active agent formulation with a bleaching formulation. The pH-Bonder #1 label identifies maleic acid as an ingredient. (*Id.*). The instructions for use direct the user to mix the #1 additive with a two-part bleaching formulation having peroxide and bleaching powder. (Ex. 2041, 1; Ex. 2042, 4).

232.    Use of pH-Bonder #1 as instructed also involves applying the additive/bleaching formulation mixture to hair. Petitioner expressly instructs a user to "[a]pply lightener … as usual" after mixing the maleic acid active agent formulation with the bleaching formulation. (Ex. 2041, 1; Ex. 2042, 4). The next step in the instructions calls for rinsing of the lightener from the hair, which confirms that the mixture is applied to the hair. (Ex. 2041, 1; Ex. 2042, 4).

233.    pH-Bonder #1 has maleic acid at a concentration of about 10.6 wt. %. (Ex. 2037, 1). Using these test results and/or data, together with the instructions

Highly Confidential                OLA_0000066375

Liqwd, Inc. Ex. 2025
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2017-00012

PGR 2017–00012
Patent No. 9,498,419

that come with the pH-Bonder #1, it is possible to determine the concentration of

maleic acid (weight percentage) in the mixture that is applied to the hair.

234.    The pH-Bonder #1 package instructions provide a "mixing table" that

instructs the amounts of bleach, developer and pH-Bonder #1 to use during hair

bleaching. For convenience, I have added the red labels to the image below

identifying the component being described in that column:



(Ex. 2042, 5).

235.    The amounts of developer and Step 1 additive are given as a volume.

To convert these into a mass, I assumed that the density of each was approximately

-86-

OLA_0000066376

**Liqwd, Inc. Ex. 2025**
**L'Oreal USA, Inc. v. Liqwd, Inc.**
**PGR2017-00012**

PGR 2017–00012
Patent No. 9,498,419

that of water (1 g/ml). Water is expected to be the major component of these compositions, and I have seen nothing in the ingredient lists, safety data sheets, or any other information source to suggest otherwise.

236.    Thus, the total mass of ingredients in the top row was from a minimum of 34 grams (i.e., 15+15+4) to a maximum of 124 grams (i.e., 30+90+4). Using the NMR testing results, I calculated the weight of maleic acid present in 4 ml of Step 1 additive (0.4 grams). From this I calculated the weight percentage of maleic acid present in that mixture to be between 0.3–1.2 wt. %.

237.    Following the same process, I determined that the weight percentage of maleic acid present in that mixture in the bottom row to be between 0.4–1.2 wt. %.

238.    Thus, my analysis demonstrates that when pH-Bonder #1 is used according to the instructions the concentration of maleic acid (weight percentage) in the mixture that is applied to the hair is between about 0.1% by weight and about 50% by weight, as claimed in this element.

239.    pH-Bonder #1 includes three generic product-coloring chemicals (CI 19140/Yellow 5, CI 14700/Red 4, CI 42090/Blue 1). (Ex. 2041, 1). The core question is whether pH-Bonder #1 actually uses CI 19140, CI 14700 and CI 42090 in the bleaching mixture applied to the hair in such a way that they actually color

Highly Confidential

OLA_0000066377

**Liqwd, Inc. Ex. 2025**
**L'Oreal USA, Inc. v. Liqwd, Inc.**
**PGR2017-00012**

PGR 2017–00012
Patent No. 9,498,419

hair. In my opinion, when used as instructed, the mixture applied to the hair does not contain a hair-coloring agent.

240.   CI 19140, CI 14700 and CI 42090 are common dyes for coloring products, but I am not aware of any hair dye product which uses these chemicals to actually impart color to hair in the low concentrations that I believe these chemical are used in the pH-Bonder #1. Moreover, all three of these dyes are used in various shampoo and conditioner products marketed by Petitioner, which are neither intended to color hair, nor labeled as coloring hair, as, demonstrated below.

241.   Redken Curvaceous conditioner contains both CI 19140/Yellow 5 and CI 42090/Blue 1. (Ex. 2031, 2). Matrix Biolage Advanced shampoo also contains CI 19140/ Yellow 5. (Ex. 2032, 2). Pureology (a brand of Petitioner) Strength Cure conditioner contains CI 14700/Red 4. (Ex. 2033, 2). The fact that Petitioner uses the three dyes at issue in its shampoo and conditioner products, and does not label those shampoos and conditioners as products containing hair colorants, further demonstrates that Petitioner does not genuinely consider these dyes to be hair colorants.

242.   I also have considered an internal report of Petitioner, which was dated 20 July 2016 and assessed "Impact of the Dyes Used in Bonding Additive P4." (Ex. 2038). This document identifies the formulation of pH-Bonder #1 as

-88-

OLA_0000066378

**Liqwd, Inc. Ex. 2025**
**L'Oreal USA, Inc. v. Liqwd, Inc.**
**PGR2017-00012**

"1200591." (*Id.*, 2; see also Ex. 2041, 1; Ex. 2039, 2; Ex. 2040, p. 12 at Tr. 46, lines 5–16).

243.   Two additional formulations were tested. One was a version of L'Oréal Professional Smartbond Step 1 without any dyes (Formula 1112405B) and one was a version of Smartbond Step 1 with four times the normal dye load (Formula 1112405C). The concentrations of the dyes in pH-Bonder #1 are reported as 0.0001% CI 19140/Yellow 5, 0.000011 of CI 42090/Blue 1, and 0.00008 of CI 14700/Red 4. (Ex. 2038, 2).

244.   Each product was tested with both oxidative hair color (Majirel clear) and a bleaching product having both bleach powder and 30-volume developer. (*Id.*). The Results and Conclusion sections report that all of Petitioner's maleic-acid bleaching additive products do not color hair:

> RESULTS:
>
> In all conditions, we did not notice any coloration of the hair (all type of hair – type of product – additives)
>
>          * * *
>
> L*a*b* results : no significant differences between 1112405, 1112405B and 1112405C on all types of fibers.
>
> CONCLUSION:

-89-

Liqwd, Inc. Ex. 2025
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2017-00012

Dyes added into the Bonding additive, at the very low

concentration introduced, have the only properties to

color the bulk of the additive but none properties to color

hair.

(*Id.* at 3).

245.   Another internal report produced by Petitioner, dated July 21, 2016, assesses whether the dyes added in pH-Bonder #1 "will only color the bulk of the additive and not the hair." (Ex. 2039, 2). In this report, the pH-Bonder #1 formulation is compared with a similar formulation that entirely omits the three dyes. (*Id.*; Ex. 2040, pp. 22–24 at Tr. 126, line 20–Tr. 128, line 8). Yet again, no coloration of the hair was detected. (Ex. 2039, 3). The conclusion is that the dyes in pH-Bonder #1 only "color the bulk of the additive" and do not have the "properties to color hair." (*Id.*).

246.   From this, I understand that Petitioner deliberately formulated the pH-Bonder #1 product in order to avoid coloring hair.

247.   In my opinion, the pH-Bonder #1 product does not contain a hair coloring agent. When these products are used as Petitioner instructs for bleaching hair, the bleaching mixture does not contain a hair coloring agent and no product colorant present would be expected to act as a hair coloring agent.

Highly Confidential

OLA_0000066380

**Liqwd, Inc. Ex. 2025**
**L'Oreal USA, Inc. v. Liqwd, Inc.**
**PGR2017-00012**

PGR 2017–00012
Patent No. 9,498,419

248.    The following Table 2 summarizes where each element of claim 1 of

the '419 patent is practiced by the use of Petitioner's pH-Bonder #1 product as

instructed:

-91-

Highly Confidential

OLA_0000066381

PGR 2017–00012
Patent No. 9,498,419

TABLE 2

| Claim Language | Infringement by Use of Redken pH-Bonder #1) |
|---|---|
| 1. A method for bleaching hair comprising: | To the extent that the preamble is considered a claim limitation, the use of pH-Bonder #1 according to the instructions provides a method for bleaching or lightening the color of hair. |
| (a) mixing a formulation comprising an active agent with a bleaching formulation, | The label on pH-Bonder #1 lists the ingredients that it contains. The second ingredient is identified as "maleic acid," which is the active agent:<br><br>1200591 INGREDIENTS: AQUA/WATER/EAU, MALEIC ACID, ETHANOLAMINE, CITRIC ACID, CI 19140/YELLOW 5, CI 14700/ RED 4, CI 42090/BLUE 1 (D191396/1)<br><br>(Ex. 2041, 1). Thus pH-Bonder #1 is a formulation comprising an active agent.<br><br>The instructions provided on the bottle of pH-Bonder #1 direct the user to mix pH-Bonder #1, |

-92-

Highly Confidential

OLA_0000066382

PGR 2017–00012
Patent No. 9,498,419

| Claim Language | Infringement by Use of Redken pH-Bonder #1) |
|---|---|
| | including its active agent maleic acid, with a two-part bleaching formulation: |

pH-Bonder #1 helps protect bonds to keep fibers strong from within during technical services. DIRECTIONS: Wearing suitable gloves, mix your lightener or color as usual. **IMPORTANT: Always mix developer and lightener/color before adding pH-Bonder #1.** For lightener, add 4 ml of pH-Bonder #1 for every 15-30 grams (1/2-1 oz) of powder or 8 ml of pH-Bonder #1 for every 30-60 grams (1-2 oz) of powder used in mixture. For color, add 4 ml of pH-Bonder #1 for every 60 grams (2 oz) of colorant used in mixture. Apply lightener or color as usual. Rinse lightener or color from hair - do not shampoo. Dry thoroughly with a towel.

[Highlighted text reproduced for clarity:]

"Wearing suitable gloves, mix your lightener… as usual. IMPORTANT: Always mix developer, and lightener… before adding pH-Bonder #1. For lightener, add 4ml of pH-Bonder #1 for every 15–30 grams (½–1 oz) of powder or 8ml of pH-Bonder #1 for every 30–60 grams (1–2 oz) of powder used in mixture…. Apply lightener … as usual."

(Ex. 2041, 1 excerpt, with emphasis added.)

The package instructions (included in the box when pH-Bonder #1 is sold) further describe the

-93-

PGR 2017–00012
Patent No. 9,498,419

| Claim Language | Infringement by Use of Redken pH-Bonder #1) |
|---|---|
| | bleaching formulation:<br><br>**#1 BOND PROTECTING ADDITIVE**<br><br>**DIRECTIONS:**<br>1. Wearing suitable gloves, mix your lightener or color as usual. **Important: Always mix developer and lightener/color before adding pH-Bonder #1 Bond Protecting Additive.**<br>2. Using the syringe, add **pH-Bonder #1 Bond Protecting Additive** to your formula.<br>· For lightener, add 4 ml of **pH-Bonder #1 Bond Protecting Additive** for every 15-30 g (1/2 - 1 oz.) of powder or 8 ml of **pH-Bonder #1 Bond Protecting Additive** for every 30-60 g (1 - 2 oz.) of powder used in mixture.<br>· For color, add 4 ml of **pH-Bonder #1 Bond Protecting Additive** for every 60 g (2 oz.) of colorant used in mixture. Apply lightener or color as usual.<br>3. Rinse color from hair—do not shampoo.<br>4. Dry thoroughly with a towel. Rinse syringe thoroughly after every use. Always store the bottle in the upright position.<br>5. Follow with **pH-Bonder #2 Fiber Restorative Pre-Wash Concentrate.** |

-94-

Highly Confidential

OLA_0000066384

Liqwd, Inc. Ex. 2025
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2017-00012

PGR 2017–00012
Patent No. 9,498,419

| Claim Language | Infringement by Use of Redken pH-Bonder #1 |
|---|---|
|  | (Ex. 2042, 4 excerpt, with emphasis added.) The words "powder" and "lightener" refer to bleaching powder. The bleaching formulation is therefore the combination of bleach and developer.<br><br>For the foregoing reasons, use of pH-Bonder #1 as instructed involves mixing a formulation comprising an active agent with a bleaching formulation. |
| wherein the active agent has the formula:<br><br><br><br>or salts thereof; and | The label on pH-Bonder #1 (Ex. 2041, 1) lists the ingredients that it contains, and the second ingredient is identified as "maleic acid," which is the active agent. The chemical structural formula of maleic acid is depicted below:<br><br><br><br>pH-Bonder #1 therefore has an active agent with the formula shown in the claim. |

-95-

Highly Confidential

OLA_0000066385

PGR 2017–00012
Patent No. 9,498,419

| Claim Language | Infringement by Use of Redken pH-Bonder #1 |
|---|---|
| (b) applying the mixture to the hair; | As documented above, the instructions provided on bottle (Ex. 2041, 1), and those that are included in the packaging provided with pH-Bonder #1 (Ex. 2042, 4), direct the user to "[a]pply lightener … as usual" after mixing the additive into the bleaching formation. The mixture is being applied to the hair. |
| | To the extent this is not self-evident; the label instructions direct the user to "Rinse lightener … from hair" (which confirms that the mixture is applied to the hair): |
| | pH-Bonder #1 helps protect bonds to keep fibers strong from within during technical services. DIRECTIONS: Wearing suitable gloves, mix your lightener or color as usual. **IMPORTANT: Always mix developer and lightener/color before adding pH-Bonder #1.** For lightener, add 4 ml of pH-Bonder #1 for every 15-30 grams (1/2-1 oz) of powder or 8 ml of pH-Bonder #1 for every 30-60 grams (1-2 oz) of powder used in mixture. For color, add 4 ml of pH-Bonder #1 for every 60 grams (2 oz) of colorant used in mixture. Apply lightener or color as usual. Rinse lightener or color from hair - do not shampoo. Dry thoroughly with a towel. |
| | (Ex. 2041, 1 excerpt, with emphasis added.) |
| | Therefore, the use of pH-Bonder #1 as instructed involves applying the additive/bleaching |

-96-

Highly Confidential

OLA_0000066386

| Claim Language | Infringement by Use of Redken pH-Bonder #1) |
|---|---|
|  | formulation mixture to hair. |
| wherein the active agent in the mixture is at a concentration ranging from about 0.1% by weight to about 50% by weight; and | As discussed above, pH-Bonder #1 contains the active agent maleic acid. At my direction, pH-Bonder #1 was tested at an independent laboratory, ANALYZE INC., which determined that maleic acid was present in the pH-Bonder #1 bottle at a concentration of about 10.6 ±0.1 % by weight: |

-97-

Highly Confidential

OLA_0000066387

PGR 2017–00012
Patent No. 9,498,419

| Claim Language | Infringement by Use of Redken pH-Bonder #1 |
|---|---|
| | Quantitative [1]H NMR spectroscopy was used to determine the concentrations of both the maleic acid (MA) and monoethanolamine (MEA) using calcium formate as the internal standard.<br><br>The average values of the triplicate NMR assay results are listed in Summary Table I<br><br>**Summary Table I – MA and MEA Assay Results**<br><br>| Sample ID | [MA] Wt-% | [MEA] Wt-% |<br>|---|---|---|<br>| Sample 1 - Redken pH Bonder Step 1 | 10.6 | 5.5 |<br>| Sample 2 - Matrix Bond Ultim 8 Step 1 | 10.5 | 5.4 |<br>| Sample 3 - L'Oreal Smartbond Step 1 | 10.2 | 5.4 |<br><br>The precision of the analyses is good with all average values of the triplicate analyses having a standard deviation of less than $\pm$ 0.1.<br><br>(Ex. 2037, with emphasis added; note that [1]H NMR is the acronym for Proton Nuclear Magnetic Resonance Spectroscopy, where such spectroscopy services were performed for ANALYZE INC. by the independent laboratory Spectral Data Systems of Champaign, Illinois.)<br><br>The pH-Bonder #1 Instructions (Ex. 2042, 5) contain a table that specifies the amounts of |

-98-

OLA_0000066388

| Claim Language | Infringement by Use of Redken pH-Bonder #1) |
|---|---|
| | lighter or bleaching powder, developer and Bond Ultim8 Step 1, respectively, to use when bleaching:  |

Highly Confidential

OLA_0000066389

PGR 2017–00012
Patent No. 9,498,419

| Claim Language | *Infringement by Use of Redken pH-Bonder #1)* |
|---|---|
| | When pH-Bonder #1 is mixed with bleach and developer per the package instructions, the concentration of active agent in the mixture varies from 0.3% by weight to 1.2% by weight, as shown in the table below: |

| Bleach | Developer | | Additive | | Maleic acid | Total | Maleic acid |
|---|---|---|---|---|---|---|---|
| (g) | (ml) | (g) | (ml) | (g) | (g) | (g) | (wt%) |
| 15 | 15 | 15 | 4 | 4 | 0.42 | 34.0 | 1.2% |
| 15 | 90 | 90 | 4 | 4 | 0.42 | 109.0 | 0.4% |
| 30 | 15 | 15 | 4 | 4 | 0.42 | 49.0 | 0.9% |
| 30 | 90 | 90 | 4 | 4 | 0.42 | 124.0 | 0.3% |

-100-

OLA_0000066390

PGR 2017–00012
Patent No. 9,498,419

| Claim Language | Infringement by Use of Redken pH-Bonder #1) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Bleach | Developer | | Additive | | Maleic acid | Total | Maleic acid |
| | (g) | (ml) | (g) | (ml) | (g) | (g) | (g) | (wt%) |
| | 30 | 30 | 30 | 8 | 8 | 0.85 | 68.0 | 1.2% |
| | 30 | 120 | 120 | 8 | 8 | 0.85 | 158.0 | 0.5% |
| | 60 | 30 | 30 | 8 | 8 | 0.85 | 98.0 | 0.9% |
| | 60 | 120 | 120 | 8 | 8 | 0.85 | 188.0 | 0.4% |
| | Each of these values is within the claimed range from about 0.1% by weight to about 50% by weight. | | | | | | | |

Highly Confidential

OLA_0000066391

PGR 2017–00012
Patent No. 9,498,419

| Claim Language | Infringement by Use of Redken pH-Bonder #1) |
|---|---|
| wherein the mixture does not contain a hair coloring agent. | The claimed mixture is the combination of pH-Bonder #1 with the bleaching formulation. I reviewed the labels of pH-Bonder #1, as well as the labels of the Redken-branded bleaching powder and developer, to determine what ingredients they contain. From this review, I have confirmed that they do not contain hair coloring agents.

Hair coloring agent" has a well-understood plain and ordinary meaning that is set forth in the file history of the '419 patent, namely, "a colorant or pigment that is customarily used in hair care products, which changes the color or tone of the hair it is applied to based on visual inspection." (Ex. 1010, 7). For example, a colorant or pigment that is intended to, for example, permanently or demi-permanently change the color or tone of hair is typically diffused into the hair fibers themselves during hair coloring, and then oxidized by hydrogen peroxide into active intermediates. (*See also* Ex. 1001, Col. 16, line 43 – Col. 17, line 14 and Col. 20, lines 30–36). |

-102-

Highly Confidential

| Claim Language | Infringement by Use of Redken pH-Bonder #1) |
|---|---|
|  | These intermediates then react with coupling agents (such as resorcinol) to create dye molecules that fix the color to the hair fiber. By contrast, a colorant or pigment that is not intended to permanently, demi-permanently or semi-permanently change the color or tone of hair, e.g., the colorant or pigment easily washes out, in this fashion is not a "hair coloring agent."<br><br>pH-Bonder #1 does not contain any "hair coloring agents," and its instructions for use do not include such agents for bleaching treatments, as shown above. While the ingredient lists for pH-Bonder #1 includes three generic product coloring chemicals (CI 19140/Yellow 5, CI 14700/Red 4, CI 42090/Blue 1):<br><br>1200591 INGREDIENTS: AQUA/WATER/EAU, MALEIC ACID, ETHANOLAMINE, CITRIC ACID, CI 19140/YELLOW 5, CI 14700/ RED 4, CI 42090/BLUE 1 (D191396/1) |

-103-

Highly Confidential

PGR 2017–00012
Patent No. 9,498,419

| Claim Language | Infringement by Use of Redken pH-Bonder #1 |
|---|---|
| | (Ex. 2041, 1 excerpt, with emphasis added.) The lack of binding activity between these generic coloring chemicals used in pH-Bonder #1 and hair fiber makes them a good choice for modifying the appearance of a product in a bottle. Internal testing by Petitioner establishes that these dyes color the product only and do not actually color the hair. (Ex. 2038, 3; Ex. 2039, 2). For all of these reasons, the mixture of pH-Bonder #1 and the bleaching formulation does not contain a hair coloring agent. |

Highly Confidential

OLA_0000066394

PGR 2017–00012
Patent No. 9,498,419

## L'Oréal Professionnel Smartbond Step 1

249.   If the preamble of '419 patent claim 1 is considered a claim limitation, the use of L'Oréal Professionnel Smartbond Step 1 according to the instructions provides a method for bleaching or lightening the color of hair. (Ex. 2043, 1).

250.   Use of Smartbond Step 1 as instructed involves mixing a maleic acid active agent formulation with a bleaching formulation. The Smartbond Step 1 label identifies maleic acid as an ingredient. (*Id.*). The instructions for use direct the user to mix the Smartbond Step 1 additive with a two-part bleaching formulation having peroxide and bleaching powder. (*Id.*; Ex. 2044, 1).

251.   Use of Smartbond Step 1 as instructed also involves applying the additive/bleaching formulation mixture to hair. Petitioner expressly instructs a user to apply the lightener "as usual according to the instructions" after mixing the maleic acid active agent formulation with the bleaching formulation. (Ex. 2043, 1; Ex. 2044, 1). The next step in the instructions calls for "rins[ing] off" of the final mixture of the bleaching formulation and the Smartbond Step 1 additive from the hair, which confirms that the mixture is applied to the hair. (Ex. 2044, 1; Ex. 2043, 1).

252.   Smartbond Step 1 has maleic acid at a concentration of about 10.2 wt. %. (Ex. 2037, 1). Using these test results and/or data, together with the instructions that come with the Smartbond Step 1, it is possible to determine the

-105-

Liqwd, Inc. Ex. 2025
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2017-00012

concentration of maleic acid (weight percentage) in the mixture that is applied to

the hair.

253.   The package instructions that accompany Smartbond Step 1(Ex. 2044,

1) include a table which species the amounts of lightener powder, developer, and

Smartbond Step 1 additive to use when bleaching hair. The relevant portion of the

table is reproduced as follows:

| Lightener Powder (grams) | Developer | Smartbond Step 1 Additive (ml) |
|---|---|---|
| 15–30 g | 1:1 or 1:1.5 or 1:2 | 4 ml |
| 30–60 g | | 8 ml |

254.   The "Developer" column provides mixing ratios describing the

relative amount of developer used with the lighter. In a 1:1 mixing ratio, 15 grams

of lightener powder are used with 15 milliliters (ml) of developer. In a 1:2 mixing

ratio, 15 grams of lightener powder are used with 30 milliliters (ml) of developer.

My conclusions would be the same for any of these ratios.

255.   The amounts of developer and Smartbond Step 1 additive are given as

a volume. To convert these into a mass, I assumed that the density of each was

-106-

Highly Confidential

OLA_0000066396

**Liqwd, Inc. Ex. 2025**
**L'Oreal USA, Inc. v. Liqwd, Inc.**
**PGR2017-00012**

PGR 2017–00012
Patent No. 9,498,419

approximately that of water (1 g/ml). Water is expected to be the major component of these compositions, and I have seen nothing in the ingredient lists, material safety data sheets, or any other information source to suggest otherwise.

256.    Thus, the total mass of ingredients in the top row was from a minimum of 34 grams (i.e., 15+15+4) to a maximum of 94 grams (i.e., 30+60+4). Using the NMR testing results, I calculated the weight of maleic acid present in 4 ml of Step 1 additive (0.4 grams). From this, I calculated the weight percentage of maleic acid present in that mixture to be between 0.4–1.2 wt. % for the top and bottom rows.

257.    Thus, my analysis demonstrates that when Smartbond Step 1 is used according to the instructions the concentration of maleic acid (weight percentage) in the mixture that is applied to the hair is between about 0.1% by weight and about 50% by weight, as claimed in this element.

258.    Smartbond Step 1 includes three generic product-coloring chemicals (CI 19140/Yellow 5, CI 14700/Red 4, CI 42090/Blue 1). (Ex. 2043, 1). The core question is whether Smartbond Step 1 actually uses CI 19140, CI 14700 and CI 42090 in the bleaching mixture applied to the hair in such a way that they actually color hair. In my opinion, when used as instructed, the mixture applied to the hair does not contain a hair-coloring agent.

-107-

Highly Confidential

OLA_0000066397

PGR 2017–00012
Patent No. 9,498,419

259.   CI 19140, CI 14700 and CI 42090 are common dyes for coloring products, but I am not aware of any hair dye product, which uses these chemicals to actually impart color to hair in the low concentrations that I believe these chemical are used in the Smartbond Step 1. Moreover, all three of these dyes are used in various shampoo and conditioner products marketed by Petitioner, which are neither intended to color hair, nor labeled as coloring hair, as, demonstrated below.

260.   Redken Curvaceous conditioner contains both CI 19140/Yellow 5 and CI 42090/Blue 1. (Ex. 2031, 2). Matrix Biolage Advanced shampoo also contains CI 19140/ Yellow 5. (Ex. 2032, 2). Pureology (a brand of Petitioner) Strength Cure conditioner contains CI 14700/Red 4. (Ex. 2033, 2). The fact that Petitioner uses the three dyes at issue in its shampoo and conditioner products, and does not label those shampoos and conditioners as products containing hair colorants, further demonstrates that Petitioner does not genuinely consider these dyes to be hair colorants.

261.   I have considered an internal report of Petitioner, which was dated 20 July 2016 and assessed "Impact of the Dyes Used in Bonding Additive P4." (Ex. 2038). This document identifies the formulation of Smartbond Step 1 as "1112405. "(*Id.*, 2; see also Ex. 2043, 1; Ex. 2039, 2; Ex. 2040, pp. 10–11 at Tr. 44, line 22– Tr. 45, line 19).

-108-

OLA_0000066398

**Liqwd, Inc. Ex. 2025**
**L'Oreal USA, Inc. v. Liqwd, Inc.**
**PGR2017-00012**

PGR 2017–00012
Patent No. 9,498,419

262.  Two additional formulations were tested. One was a version of Smartbond Step 1 without any dyes (Formula 1112405B) and one was a version of Smartbond Step 1 with four times the normal dye load (Formula 1112405C). The concentrations of the dyes in Smartbond Step 1 are reported as 0.0001% CI 19140/Yellow 5, 0.000011 of CI 42090/Blue 1, and 0.00008 of CI 14700/Red 4. (Ex. 2038, 2).

263.  Each product was tested with both oxidative hair color (Majirel clear) and a bleaching product having both bleach powder and 30-volume developer. (*Id.*). The Results and Conclusion sections report that all of Petitioner's maleic-acid bleaching additive products do not color hair:

> RESULTS:
>
> In all conditions, we did not notice any coloration of the hair (all type of hair – type of product – additives)
>
> * * *
>
> L*a*b* results : no significant differences between 1112405, 1112405B and 1112405C on all types of fibers.
>
> CONCLUSION:
>
> Dyes added into the Bonding additive, at the very low concentration introduced, have the only properties to

-109-

Highly Confidential

OLA_0000066399

**L'Oreal USA, Inc. v. Liqwd, Inc.**
**PGR2017-00012**

color the bulk of the additive but none properties to color

hair.

(*Id.* at 3).

264.    Another internal report produced by Petitioner, dated July 21, 2016,

assesses whether the dyes added in Smartbond Step 1 "will only color the bulk of

the additive and not the hair." (Ex. 2039, 2). In this report, the Smartbond Step 1

formulation is compared with a similar formulation that entirely omits the three

dyes. (*Id.*; Ex. 2040, pp. 22–24 at Tr. 126, line 20–Tr. 128, line 8). Yet again, no

coloration of the hair was detected. (Ex. 2039, 3). The conclusion is that the dyes

in Smartbond Step 1 only "color the bulk of the additive" and do not have the

"properties to color hair." (*Id.*).

265.    From this, I understand that Petitioner deliberately formulated the

Bond Ultim8 Step 1product in order to avoid coloring hair.

266.    In my opinion, the Smartbond Step 1 product does not contain a hair

coloring agent. When these products are used as Petitioner instructs for bleaching

hair, the bleaching mixture does not contain a hair coloring agent and no product

colorant present would be expected to act as a hair coloring agent.

267.    The following Table 3 summarizes where each element of claim 1 of

the '419 patent is practiced by the use of Petitioner's Smartbond Step 1 product as

instructed:

Highly Confidential

OLA_0000066400

TABLE 3

| Claim Language | Infringement by Use of L'Oréal Smartbond Step 1 |
| --- | --- |
| 1. A method for bleaching hair comprising: | To the extent that the preamble is considered a claim limitation, the use of Smartbond Step 1 according to the instructions provides a method for bleaching or lightening the color of hair. |
| (a) mixing a formulation comprising an active agent with a bleaching formulation, | The label on Smartbond Step 1 lists the ingredients that it contains. The second ingredient is identified as "maleic acid," which is the active agent:<br><br>1112405 - INGREDIENTS: AQUA / WATER / EAU • MALEIC ACID • ETHANOLAMINE • CI 19140 / YELLOW 5 • CI 14700 / RED 4 • CI 42090 / BLUE 1. D193050/1.<br><br>(Ex. 2043, 1 excerpt, with emphasis added.) Thus Smartbond Step 1 is a formulation comprising an active agent. |

Highly Confidential                                                                OLA_0000066401

PGR 2017–00012
Patent No. 9,498,419

| Claim Language | Infringement by Use of L'Oréal Smartbond Step 1 |
|---|---|
|  | The instructions provided on the bottle of Smartbond Step 1 direct the user to mix Smartbond Step 1, including its active agent maleic acid, with a two-part bleaching formulation:<br><br>**STEP 1**<br>**USA - BOND STRENGTHENING SYSTEM ADDITIVE.**<br>Suitable for all hair types.<br>**DIRECTIONS:** To make dosage easier, a graduated dispenser is included in this kit. Use this dispenser for appropriate dosage. Wash the dispenser thoroughly after every use. Always store the bottle in the upright position.<br>1. Mix your lightener or color as usual. Important: Always mix developer and lightener/color before adding Smartbond Step 1.<br>2. **For lightener product,** add 4 ml (.14 oz) of Step 1 additive for every 15-30 g (1/2-1 oz) or 8 ml of Step 1 additive for every 30-60 g (1-2 oz) of lightening product used in the final mixture. |

-112-

OLA_0000066402

| Claim Language | Infringement by Use of L'Oréal Smartbond Step 1 |
|---|---|
| | **For color product,** add 4 ml (.14 oz) of Step 1 additive per tube of colorant cream used in the final mixture.<br>3. Apply lightener or color mixture as usual. Rinse thoroughly lightener or color mixture from hair.<br>4. Do not shampoo. Dry thoroughly with a towel.<br>5. Follow with Step 2 pre shampoo.<br><br>(Ex. 2043, 1 excerpt, with emphasis added.)<br><br>The package instructions (included in the box when the Smartbond Step 1 is sold) further<br><br>describe the bleaching formulation: |

-113-

OLA_0000066403

PGR 2017–00012
Patent No. 9,498,419

| Claim Language | Infringement by Use of L'Oréal Smartbond Step 1 |
|---|---|
| | **#1**<br>**MIX**<br>MIX YOUR LIGHTENER AS USUAL. IMPORTANT: ALWAYS MIX DEVELOPER AND LIGHTENER BEFORE ADDING SMARTBOND STEP 1. ADD 4 ML (.14 OZ) OF STEP 1 ADDITIVE FOR EVERY 15-30 G (1/2-1 OZ) OR 8 ML OF STEP 1 ADDITIVE FOR EVERY 30-60 G (1-2 OZ) OF LIGHTENING PRODUCT USED IN THE FINAL MIXTURE.<br><br>**#2**<br>**APPLICATION**<br>APPLY AS USUAL ACCORDING TO INSTRUCTIONS. RINSE OFF. DO NOT SHAMPOO. TOWEL DRY HAIR WELL TO REMOVE EXCESS MOISTURE.<br><br>Ex. 2044, 1, with emphasis added.) The word "lightener" refers to bleaching powder. The bleaching formulation is therefore the combination of bleach and developer.<br>For the foregoing reasons, use of Smartbond Step 1 as instructed involves mixing a formulation comprising an active agent with a bleaching formulation. |

Highly Confidential

OLA_0000066404

PGR 2017–00012
Patent No. 9,498,419

| Claim Language | Infringement by Use of L'Oréal Smartbond Step 1 |
|---|---|
| wherein the active agent has the formula:  or salts thereof; and | The label on Smartbond Step 1 (Ex. 2043, 1) lists the ingredients that it contains. The second ingredient is identified as "maleic acid," which is the active agent. The chemical structural formula of maleic acid is depicted below:  Smartbond Step 1 therefore has an active agent with the formula shown in the claim. |
| (b) applying the mixture to the hair; | As documented above, the instructions provided on the bottle (Ex. 2043, 1) and those that are included in the packaging provided with Smartbond Step 1 (Ex. 2044, 1) direct the user to "[a]pply lightener … as usual" after mixing the additive into the bleaching formation. The mixture is being applied to the hair. |

-115-

Highly Confidential

OLA_0000066405

| Claim Language | Infringement by Use of L'Oréal Smartbond Step 1 |
|---|---|
|  | To the extent this is not self-evident; the label instructions confirms that the mixture is applied to the hair because they direct the user to "Rinse thoroughly lightener … from hair": <br><br> **3.** Apply lightener or color mixture as usual. Rinse thoroughly lightener or color mixture from hair. <br><br> (Ex. 2043, 1, with emphasis added.) . <br><br> Therefore, the use of Smartbond Step 1 as instructed involves applying the additive/bleaching formulation mixture to hair. |
| wherein the active agent in the mixture is at a concentration | As discussed above, Smartbond Step 1 contains the active agent maleic acid. At my direction, Smartbond Step 1 was tested at an independent laboratory, ANALYZE INC., which determined that maleic acid was present in Smartbond Step 1 at a concentration of about 10.2 $\pm 0.1$ % by weight. |

-116-

Highly Confidential

OLA_0000066406

| Claim Language | Infringement by Use of L'Oréal Smartbond Step 1 |
|---|---|
| ranging from about 0.1% by weight to about 50% by weight; and | Quantitative $^1$H NMR spectroscopy was used to determine the concentrations of both the maleic acid (MA) and monoethanolamine (MEA) using calcium formate as the internal standard. |

The average values of the triplicate NMR assay results are listed in Summary Table I

### Summary Table I – MA and MEA Assay Results

| Sample ID | [MA] Wt-% | [MEA] Wt-% |
|---|---|---|
| Sample 1 - Redken pH Bonder Step 1 | 10.6 | 5.5 |
| Sample 2 - Matrix Bond Ultim 8 Step 1 | 10.5 | 5.4 |
| Sample 3 - L'Oreal Smartbond Step 1 | 10.2 | 5.4 |

The precision of the analyses is good with all average values of the triplicate analyses having a standard deviation of less than $\pm$ 0.1.

(Ex. 2037, 1, with emphasis added; note that $^1$H NMR is the acronym for Proton Nuclear Magnetic Resonance Spectroscopy, where such spectroscopy services were performed for ANALYZE INC. by the independent laboratory Spectral Data Systems of Champaign, Illinois.)

Highly Confidential

OLA_0000066407

PGR 2017–00012
Patent No. 9,498,419

| Claim Language | Infringement by Use of L'Oréal Smartbond Step 1 |
|---|---|
|  | The Smartbond Step 1 Instructions (Ex. 2044, 1) contain a table that specifies the amounts of lighter or bleaching powder, developer and Bond Ultim8 Step 1, respectively, to use when bleaching: |

| LIGHTENER PRODUCTS | QUANTITY OF PRODUCT | DEVELOPER | STEP 1 |
|---|---|---|---|
| Lightening Oil | 30 ml (1.01 oz) | 1:2 | 2 ml (.07 oz) |
|  | 60 ml (2.03 oz) |  | 4 ml (.14 oz) |
| Powder / Pastes | 15-30 g | 1:1 or 1:1.5 or 1:2 | 4 ml (.14 oz) |
|  | 30-60 g |  | 8 ml (.28 oz) |
| Blond Studio Majimèches | 1 sachet | 1:1:1 | 4 ml (.14 oz) |

When Smartbond Step 1 is mixed with bleach and developer per the package instructions, the concentration of active agent in the mixture varies from 0.3% by weight to 1.2% by weight:

-118-

OLA_0000066408

PGR 2017–00012
Patent No. 9,498,419

| Claim Language | Infringement by Use of L'Oréal Smartbond Step 1 | | | | | | |
|---|---|---|---|---|---|---|---|
| | Bleach | Developer | | Additive | | Maleic acid | Total | Maleic acid |
| | (g) | (ml) | (g) | (ml) | (g) | (g) | (g) | (wt%) |
| | 15 | 15 | 15 | 4 | 4 | 0.41 | 34 | 1.2% |
| | 15 | 22.5 | 22.5 | 4 | 4 | 0.41 | 41.5 | 1.0% |
| | 15 | 30 | 30 | 4 | 4 | 0.41 | 49 | 0.8% |
| | 30 | 30 | 30 | 4 | 4 | 0.41 | 64 | 0.6% |
| | 30 | 45 | 45 | 4 | 4 | 0.41 | 79 | 0.5% |
| | 30 | 60 | 60 | 4 | 4 | 0.41 | 94 | 0.4% |

-119-

Highly Confidential

OLA_0000066409

PGR 2017–00012
Patent No. 9,498,419

| Claim Language | Infringement by Use of L'Oréal Smartbond Step 1 | | | | | | |
|---|---|---|---|---|---|---|---|
| | | Bleach | Developer | | Additive | | Maleic acid | Total | Maleic acid |
| | | (g) | (ml) | (g) | (ml) | (g) | (g) | (g) | (wt%) |
| | | 30 | 30 | 30 | 8 | 8 | 0.82 | 68 | 1.2% |
| | | 30 | 45 | 45 | 8 | 8 | 0.82 | 83 | 1.0% |
| | | 30 | 60 | 60 | 8 | 8 | 0.82 | 98 | 0.8% |
| | | 60 | 60 | 60 | 8 | 8 | 0.82 | 128 | 0.6% |
| | | 60 | 90 | 90 | 8 | 8 | 0.82 | 158 | 0.5% |
| | | 60 | 120 | 120 | 8 | 8 | 0.82 | 188 | 0.4% |

-120-

OLA_0000066410

| Claim Language | Infringement by Use of L'Oréal Smartbond Step 1 |
|---|---|
| | Each of these values is within the claimed range from about 0.1% by weight to about 50% by weight. |
| wherein the mixture does not contain a hair coloring agent. | The claimed mixture is the combination of Smartbond Step 1 with the bleaching formulation. I reviewed the label of Smartbond Step 1, as well as the labels of the L'Oréal-branded bleaching powder and developer, to determine what ingredients they contain. From this I have confirmed that they do not contain hair coloring agents. |
| | "Hair coloring agent" has a well-understood plain and ordinary meaning that is set forth in the file history of the '419 patent, namely, "a colorant or pigment that is customarily used in hair care products, which changes the color or tone of the hair it is applied to based on visual inspection." (Ex. 1010, 7). For example, a colorant or pigment that is intended to, for example, permanently or demi-permanently change the color or tone of hair is typically |

-121-

| Claim Language | Infringement by Use of L'Oréal Smartbond Step 1 |
|---|---|
| | diffused into the hair fibers themselves during hair coloring, and then oxidized by hydrogen peroxide into active intermediates. (*See also* Ex. 1001, Col. 16, line 43 – Col. 17, line 14 and Col. 20, lines 30–36). These intermediates then react with coupling agents to create dye molecules that fix the color to the hair fiber. By contrast, a colorant or pigment that is not intended to permanently, demi-permanently or semi-permanently change the color or tone of hair, e.g., the colorant or pigment easily washes out, in this fashion is not a "hair coloring agent."<br><br>Smartbond Step 1 does not contain any "hair coloring agents," and its instructions for use do not include such agents for bleaching treatments, as shown above. The ingredient lists for Smartbond Step 1 includes three generic product coloring chemicals (CI 19140/Yellow 5, CI 14700/Red 4, CI 42090/Blue 1): |

Highly Confidential

OLA_0000066412

| Claim Language | Infringement by Use of L'Oréal Smartbond Step 1 |
|---|---|
|  | 1112405 - INGREDIENTS: AQUA / WATER / EAU • MALEIC ACID • ETHANOLAMINE • CI 19140 / YELLOW 5 • CI 14700 / RED 4 • CI 42090 / BLUE 1. D193050/1. |
|  | (Ex. 2043, 1 excerpt, with emphasis added.) |
|  | The lack of binding activity between these generic coloring chemicals used Smartbond Step 1 and hair fiber makes them a good choice for modifying the appearance of a product in a bottle. Internal testing by Petitioner establishes that these dyes color the product only and do not actually color hair. (Ex. 2038, 3; Ex. 2039, 3). |
|  | For all of these reasons, the mixture of Smartbond Step 1 and the bleaching formulation does not contain a hair coloring agent. |

-123-

Highly Confidential

OLA_0000066413

**Liqwd, Inc. Ex. 2025**
**L'Oreal USA, Inc. v. Liqwd, Inc.**
**PGR2017-00012**

PGR 2017–00012
Patent No. 9,498,419

268.    Therefore, it is my opinion that a POSITA would have recognized that Petitioner chose to copy the '419 patent invention, which is powerful objective evidence that the invention would not have been obvious in light of the cited references.

I declare, under the penalty of perjury, that the foregoing is true and correct. Executed October 20, 2017, at Westerville, Ohio.

Edward T. Borish, Ph.D.

-124-

Highly Confidential

OLA_0000066414

# Exhibit E

PGR 2018–00025

Filed on behalf of Liqwd, Inc.
By:   Matthew K. Blackburn
      DIAMOND McCARTHY LLP
      150 California St., Suite 2200
      San Francisco, CA  94111
      Tel: 415.692.5200
      Fax: 415.263.9200

**CONTAINS PROTECTIVE ORDER MATERIAL AND
HIGHLY CONFIDENTIAL-PROTECTIVE ORDER MATERIAL**

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE PATENT TRIAL AND APPEAL BOARD

L'ORÉAL USA, INC.,
*Petitioner,*

v.

LIQWD, INC.,
*Patent Owner.*

Case PGR 2018–00025
Patent No. 9,668,954

DECLARATION OF EDWARD T. BORISH, PH.D.

Mail Stop PATENT BOARD
Patent Trial & Appeal Board
U.S. Patent & Trademark Office
P.O. Box 1450
Alexandria, VA  22313–1450

1

**Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025**

PGR 2018–00025
Patent No. 9,668,954

TABLE OF CONTENTS

I.   INTRODUCTION ................................................................ 10

II.  QUALIFICATIONS ............................................................ 13

III. SUMMARY OF OPINIONS ................................................ 16

IV.  LEVEL OF SKILL IN THE ART ........................................ 18

V.   LEGAL STANDARDS ........................................................ 21
     A. CLAIM CONSTRUCTION ............................................... 21
     B. OBVIOUSNESS ............................................................ 22
     C. PRIORITY .................................................................... 24

VI.  '954 PATENT .................................................................. 25
     A. BACKGROUND AND STATE-OF-THE-ART AS OF THE PRIORITY DATE OF THE
        '954 PATENT, MAY 16, 2014 ....................................... 25
     B. THE CLAIMED INVENTIONS OF THE '954 PATENT ........... 38

VII. PROSECUTION HISTORY ................................................ 41

VIII. CLAIM CONSTRUCTION ................................................ 45

IX.  THE '954 PATENT CLAIMS ARE ENTITLED TO THE MAY 16, 2014
     PRIORITY DATE ............................................................. 47
     A. THE PRIORITY APPLICATIONS DISCLOSE THE SUBJECT MATTER OF CLAIM 1,
        INCLUDING "ABOUT" 0.1% BY WEIGHT AND "ABOUT" 50% BY WEIGHT OF
        THE ACTIVE AGENT IN THE MIXTURE ............................. 48
     B. THE PRIORITY APPLICATIONS DISCLOSE THE SUBJECT MATTER OF
        DEPENDENT CLAIMS 5 AND 6, INCLUDING "ABOUT" 0.1% BY WEIGHT AND
        "ABOUT" 5%/3% BY WEIGHT OF THE ACTIVE AGENT IN THE MIXTURE ........ 54

X.   FACTUAL ASSESSMENT OF PETITIONER'S APPLIED REFERENCES 56
     A. PRATT (EX. 1009) ....................................................... 56
     B. TANABE (EX. 1007) ................................................... 67
     C. BERKEMER (EX. 1004) ............................................... 76
     D. KR '564 (EX. 1006) ................................................... 83
     E. STONE (EX. 1008) ...................................................... 93

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120947

PGR 2018–00025
Patent No. 9,668,954

XI. NONOBVIOUSNESS OF '954 PATENT CLAIMS ........................................ 95

  A. GROUND #1: THE HAIR BLEACHING METHOD OF '954 PATENT CLAIM 1 WOULD NOT HAVE BEEN OBVIOUS TO A POSITA AS OF MAY 16, 2014 IN LIGHT OF PRATT IN VIEW OF TANABE ......................................................... 95

    1. Pratt Fails to Disclose Mixing Maleic Acid into a Bleaching Formulation or the Concentrations of Maleic Acid that Should be Used for that Purpose ...................................................................................... 97

    2. Tanabe Also Fails to Disclose Mixing Maleic Acid into a Bleaching Formulation or the Concentrations of Maleic Acid that Should be Used for that Purpose ...................................................................... 101

    3. A POSITA Would Not Have Looked to Tanabe to Provide Improved Optical or Mechanical Properties of Hair in Pratt's Alkaline Bleaching Method .................................................................... 104

    4. A POSITA Would Not Have Been Motivated by Tanabe to Select Maleic Acid for Use in Pratt's Alkaline Bleaching Method ............................... 113

  B. GROUND #2: CLAIMED HAIR BLEACHING METHODS OF CLAIMS 20 AND 22 WOULD NOT HAVE BEEN OBVIOUS TO A POSITA AS OF MAY 16, 2014 IN LIGHT OF PRATT IN VIEW OF TANABE AND STONE ........................................ 117

  C. GROUND #3: THE HAIR BLEACHING METHOD OF '954 PATENT CLAIM 1 WOULD NOT HAVE BEEN OBVIOUS TO A POSITA AS OF MAY 16, 2014 IN LIGHT OF PRATT IN VIEW OF TANABE, BERKEMER, AND KR '564 ................. 118

    1. Berkemer and KR '564 Both Fail to Disclose Mixing Maleic Acid into a Bleaching Formulation or the Concentrations of Maleic Acid that Should be Used for that Purpose ..................................................... 118

    2. Berkemer and KR '564 Fail to Provide A Reason to Select Maleic Acid for Use in Pratt's Alkaline Bleaching Method ......................................... 119

  D. GROUND #4: THE CLAIMED HAIR BLEACHING METHODS OF CLAIMS 20 AND 22 WOULD NOT HAVE BEEN OBVIOUS TO A POSITA AS OF MAY 16, 2014 IN LIGHT OF PRATT IN VIEW OF TANABE, BERKEMER, KR '564, AND STONE .... 132

  E. OBJECTIVE EVIDENCE DEMONSTRATES THAT '954 PATENT CLAIM 1 WOULD NOT HAVE BEEN OBVIOUS TO A POSITA AS OF MAY 16, 2014 ................... 133

    1. Long-Felt and Unmet Need as of May 16, 2014 ..................................... 134

    2. Petitioner's Choice to Copy the '954 Patent Invention .......................... 137

    3. Commercial Success of Petitioner's Copy Products ............................... 184

    4. Unexpected Results Provided by the '954 Patent Invention ................... 185

    5. Skepticism and Praise by Others of the '954 Patent Invention .............. 187

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120948

PGR 2018–00025
Patent No. 9,668,954

F. Grounds #1 & #3: The Hair Bleaching Method of '954 Patent Claims 2–16, 18, 19, 21, and 23–30 Would Not Have Been Obvious to a POSITA as of May 16, 2014 in light of Pratt in View of Tanabe .......189

XII.   CONCLUSION ............................................................................................ 191

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120949

PGR 2018–00025
Patent No. 9,668,954

## PATENT OWNER'S EXHIBIT LIST

| Ex. | Description |
|-----|-------------|
| 2001 | Claim Listing |
| 2002 | Pressly U.S. Patent No. 9,489,419 |
| 2003 | *Liqwd v. L'Oréal* Fed. Cir. decision |
| 2004 | April 26, 2018 trial testimony in *Liqwd, Inc., et al. v. L'Oréal (UK) Ltd. et al.*, EWHC Patents Court, Claim No. HP-2016–000056 |
| 2005 | Brown, Chapter 7 "Hair Coloring" from HAIR AND HAIR CARE (Johnson ed., 1997) |
| 2006 | Bolduc et al., "Hair Care Products: Waving, Straightening, Conditioning, and Coloring" Clin. Dermatol, 19:431–436 (2001) |
| 2007 | Robbins, Chapter 5 "Bleaching and Oxidation of Human Hair" from CHEMICAL AND PHYSICAL BEHAVIOR OF HUMAN HAIR (2012) |
| 2008 | Kitabata U.S. Patent Publ. 2002/0189034 |
| 2009 | Robbins, Chapter 9 "The Physical Properties of Hair Fibers" from CHEMICAL AND PHYSICAL BEHAVIOR OF HUMAN HAIR (2012) |
| 2010 | Joico Bleach Powder label |
| 2011 | Clairol Bleach Powder label |
| 2012 | Onyebuagu U.S. Patent Publ. 2011/0038818 |
| 2013 | March 31, 2016 Prel. Amdt. from '415 appl. file history |
| 2014 | January 24, 2017 Prel. Amdt. from '593 appl. file history |
| 2015 | RESERVED |
| 2016 | RESERVED |
| 2017 | August 25, 2016 3rd Party Submission regarding Singleton and Berkemer |

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120950

PGR 2018–00025
Patent No. 9,668,954

| Ex. | Description |
|------|-------------|
| 2018 | September 14, 2016 3rd Party Submission regarding Singleton, Kitabata, and Berkemer |
| 2019 | December 12, 2017 Certificate of Correction of the '954 Patent |
| 2020 | September 26, 2016 Notice of Allowance of the '415 application |
| 2021 | Nandagiri Declaration from PGR2017–00012 |
| 2022 | Robbins, Chapter 6 "Interactions of Shampoo and Conditioner Ingredients with Hair" from CHEMICAL AND PHYSICAL BEHAVIOR OF HUMAN HAIR (2012) |
| 2023 | RESERVED |
| 2024 | Matrix Light Master Label |
| 2025 | Redken Flash Lift Label |
| 2026 | Redken Up to 7 Label |
| 2027 | L'Oréal Quick Blue Label |
| 2028 | Evans et al, "A Statistical Analysis of Hair Breakage. II Repeated Grooming Experiments," J. Cosmet Sci., 41:439–456 (2010) |
| 2029 | RESERVED |
| 2030 | RESERVED |
| 2031 | Wickett Declaration from PGR2018–00023 |
| 2032 | Curriculum Vitae of Edward T. Borish, Ph.D. |
| 2033 | Zviak/Milléquant Chapter 7: "Hair Bleaching" from THE SCIENCE OF HAIR CARE (Bouillon C, Wilkinson J, eds., 2d edn. 2005). |
| 2034 | Felthouse et al, "Maleic Anhydride, Maleic Acid, and Fumaric Acid" from the KIRK-OTHMER ENCYCLOPEDIA OF CHEMICAL TECHNOLOGY (first published October 18, 2001) |

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120951

PGR 2018–00025
Patent No. 9,668,954

| Ex. | Description |
|-----|-------------|
| 2035 | "Final Report on the Safety Assessment of Maleic Acid," Int'l J. of Toxicology, 26 (Suppl. 2):125–130 (2007) |
| 2036 | Maleic Acid Safety Data Sheet Vertellus (2011) |
| 2037 | October 20, 2015 Interview Summary from '885 appl. file history |
| 2038 | October 29, 2015 Pressly declaration from '885 appl. file history |
| 2039 | December 28, 2015 Notice of Allowance from '885 appl. file history |
| 2040 | August 6, 2018 Amendment from '455 appl. file history. |
| 2041 | August 6, 2018 Pressly Declaration from '455 application file history |
| 2042 | August 10, 2017 Notice of Allowance from '455 application file history |
| 2043 | Excerpt from YOUTUBE video entitled "How Does SMARTBOND technology work?" By L'Oréal Professionnel, available at: https://youtu.be/LMyB5fiel1g?t=31 [last visited 10/18/2018] |
| 2044 | Redken pH-Bonder Technical Guide (August 2016) |
| 2045 | Matrix Bond Ultim8 Techniques Guide |
| 2046 | Declaration of Dean Christal, dated October 31, 2018 |
| 2047 | Matrix Bond Ultim8 bottle instructions |
| 2048 | Matrix Bond Ultim8 package instructions |
| 2049 | Lab Report from Analyze, Inc. |
| 2050 | Redken pH-Bonder bottle instructions |
| 2051 | Redken pH-Bonder package instructions |
| 2052 | L'Oréal Professionnel Smartbond bottle instructions |
| 2053 | L'Oréal Professionnel Smartbond package instructions |

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120952

PGR 2018–00025
Patent No. 9,668,954

| Ex. | Description |
|---|---|
| 2054 | Pressly et al. U.S. Patent No. 10,076,478 |
| 2055 | Wolfram, "The Reactivity of Human Hair. A Review" in HAIR RESEARCH (1981) |
| 2056 | Dubief et al., Chapter 4 "Hair Care Products" from THE SCIENCE OF HAIR CARE (Bouillon C, Wilkinson J, eds., 2d edn. 2005). |
| 2057 | Deposition Transcript of Arun Nandagiri dated October 6, 2017 from PGR2017–00012 |
| 2058 | "Types of Professional Haircolor Services (Redken), https://www.redken.com/haircolor/types-of-professional-haircolor-services (obtained June 2, 2018) |
| 2059 | Corbett, "Hair Colorants: Chemistry and Toxicology," Cosmetic Science Monographs Number 2 (1998) |
| 2060 | Corbett, "The Chemistry of Hair-care Products," J. Soc'y of Dyers and Colourists 92(8):285–303 (1976) |
| 2061 | **CONFIDENTIAL** Deposition Transcript of R. Randall Wickett dated October 24, 2018 from PGR2018–00025 |
| 2062 | Franbourg et al., Chapter 12 "Evaluation of Product Efficacy" from THE SCIENCE OF HAIR CARE (Bouillon C, Wilkinson J, eds., 2d edn. 2005). |
| 2063 | Harris, Chapter 9, "Monoprotic Acid-Base Equilibria" from QUANTITATIVE CHEMICAL ANALYSIS (7th ed. 2007). |
| 2064 | RESERVED |
| 2065 | CRC Handbook of Chemistry & Physics (85th Ed. 2005) |
| 2066 | Harris, Chapter 10, "Polyprotic Acid-Base Equilibria" from QUANTITATIVE CHEMICAL ANALYSIS (7th ed. 2007). |
| 2067 | **HIGHLY CONFIDENTIAL** E-mail bearing production number LO_USA0056223 |
| 2068 | **HIGHLY CONFIDENTIAL** presentation bearing production numbers LO_USA0002413–30 |

8

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

OLA_0000120953

PGR 2018—00025
Patent No. 9,668,954

| Ex. | Description |
|------|-------------|
| 2069 | **HIGHLY CONFIDENTIAL** E-mail bearing production number LO_USA0035379 |
| 2070 | **HIGHLY CONFIDENTIAL** Defendants' Third Supplemental Objections and Responses to Plaintiffs' Interrogatory No. 2, dated May 8, 2018 |
| 2071 | **HIGHLY CONFIDENTIAL** E-mail bearing production numbers LO_USA0026489–91 |
| 2072 | **HIGHLY CONFIDENTIAL** Declaration of Edward T. Borish, Ph.D. |

9

**Liqwd, Inc. Ex. 2072**
**L'Oreal USA, Inc. v. Liqwd, Inc.**
**PGR2018-00025**

PGR 2018–00025
Patent No. 9,668,954

# I.   INTRODUCTION

1.      I am currently the Vice President of Research and Development with

Global Seven, Inc., a producer of specialty chemicals for personal care, household,

and industrial products, and an independent consultant with ANA Innovation LLC,

which helps clients develop new business opportunities in biotechnology, mass,

and salon marketing, educational/scientific publishing, and retail merchandising.

2.      I have been retained by Patent Owner Liqwd, Inc. ("Patent Owner")

as an independent expert consultant to provide my opinion on the issues raised by

Petitioner L'Oréal USA, Inc. ("Petitioner") in the above-referenced post grant

review proceeding regarding U.S. Patent No. 9,668,954 ("the '954 patent").

3.      I submit this declaration in support of Patent Owner's Response to the

Post Grant Review Petition filed by Petitioner L'Oréal USA, Inc. ("Petitioner") in

proceeding PGR2018–00025. I understand that the Patent Trial and Appeal Board

("Board") has instituted proceedings with respect to claims 1–16 and 18–30 of the

'954 patent only. I have been asked to provide my opinions regarding whether

claims 1–16 and 18–30 of the '954 patent have been shown by Petitioner to be

unpatentable in view of the following four grounds:

10

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120955

PGR 2018–00025
Patent No. 9,668,954

| Ground | '954 Patent Claims | References |
|---|---|---|
| #1 | 1–16, 18, 19, 21, and 23–30 | Pratt U.S. Patent Publ. 2012/0024309 ("Pratt," Ex. 1009) in view of Tanabe et al. U.S. Patent No. 6,358,502 ("Tanabe," Ex. 1007) |
| #2 | 20 and 22 | Pratt and Tanabe in further view of Stone et al. U.S. Patent Publ. 2013/0034515 ("Stone," Ex. 1008) |
| #3 | 1–16, 18, 19, 21, and 23–30 | Pratt and Tanabe in further view of German Patent Publ. 1 220 969 ("Berkemer," Ex. 1003 and Ex. 1004) and Korean Patent Publ. 10–2006–0059564 ("KR '564," Ex. 1005 and Ex. 1006) |
| #4 | 20 and 22 | Pratt, Tanabe, Berkemer, and KR '564 in further view of Stone |

4.     I am being compensated for my time spent in connection with this matter at my usual rate of \$420 per hour. I have no financial interest in the

11

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

OLA_0000120956

PGR 2018–00025
Patent No. 9,668,954

outcome of this proceeding, and my compensation is unaffected by the content of my testimony.

     5.     This declaration identifies my opinions to date. I reserve the right to supplement this declaration, if allowed by the Board under the relevant rules, to address any new issues raised by Petitioner or its experts, or resulting from further rulings of the Board or otherwise from further proceedings.

     6.     I base the following opinions on my personal knowledge and experience, as well as my review of the relevant documents as listed below.

12

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120957

PGR 2018—00025
Patent No. 9,668,954

## II.   QUALIFICATIONS

7.     I have approximately 35 years of academic and professional experience in the field of cosmetic science, and over 25 years of overlapping experience relating to the development of hair care products.

8.     I obtained a Bachelor of Science (Chemistry) degree at the University of Massachusetts at Lowell in Lowell, Massachusetts, in 1979, and a Doctor of Philosophy (Ph.D.) degree in Inorganic Chemistry at the University of Rhode Island in Kingston, Rhode Island, where my thesis research involved Silver (III) redox reactions, in 1984.

9.     I have taught in the areas of chemistry, biochemistry, and cosmetics science at the University of Cincinnati as an Adjunct Professor and at Louisiana State University and the University of Rhode Island.

10.     I was a Post-Doctoral Research Associate and Senior Post-Doctoral Researcher at Louisiana State University in Baton Rouge, Louisiana, where I studied free radical biochemistry, from 1984—1987.

11.     In 1987, I left academia and joined Helene Curtis, Inc. as a senior chemist, where my work involved identifying and developing technologies and products for the salon and mass markets.

12.     In 1990, I left Helene Curtis to pursue an opportunity with a subsidiary of Kodak (L&F Products). I was the group leader charged with

13

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120958

PGR 2018–00025
Patent No. 9,668,954

developing new hair care and skin care products. This work led to a number of products that were commercialized, including Ogilvie Tender Color Hair Color, and a new perm product called Heat Activated Whisper Wave.

13.     I joined a division of Shiseido Company Ltd. (Zotos International) from 1993–1997, and was promoted to Vice President of Research and Development in 1994. I was responsible for directing all aspects of research and development regarding personal care products for the salon business. Among the innovations that we worked on were innovations for hair growth, sunscreens, sunless tanners, and dietary supplements.

14.     In 1999, I joined Bath & Body Works as Director of Research and Development, and helped launch 800 new products during a three-year period. Among my responsibilities was directing development of high performance skin and hair care lines as well as antibacterial products.

15.     In 2002, I joined Global Seven, where I am currently employed.

16.     I have over fifty patents, publications, and presentations covering both applied and basic research relating to chemistry, biochemistry, and associated sciences, and design, and development of products in the health and personal care industry.

17.     I have consulted on numerous hair care products for a variety of companies, including Abercrombie & Fitch (the famous American fashion brand),

14

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

OLA_0000120959

PGR 2018–00025
Patent No. 9,668,954

Dragoco Gerberding & Co. AG (an international supplier of perfume compositions, aroma chemicals, cosmetic raw materials and active ingredients, and flavors), and Genencor (a biotechnology company that is now part of DuPont), to name a few.

18.     I have authored and/or co-authored a number of articles and book chapters relating to hair care products. The complete list of my publications is provided in my curriculum vitae.

19.     My curriculum vitae (Exhibit 2032) further highlights my education, experience, and qualifications as an expert in formulating and testing hair care products.

15

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120960

## III.  SUMMARY OF OPINIONS

20.     I conclude Petitioner has not met its burden to show that any of the '954 patent claims in dispute would have been unpatentable as obvious to a hypothetical "person of ordinary skill in the art" or POSITA as of May 16, 2014 over Petitioner's proposed combinations of references: (a) Pratt and in view of Tanabe as to '954 patent claims 1–16, 18, 19, 21, and 23–30, (b) Pratt and Tanabe in view of Stone as to '954 patent claims 20 and 22, (c) Pratt in view of Tanabe, Berkemer, and KR '564 as to '954 patent claims 1–16, 18, 19, 21, and 23–30, or (d) Pratt, Tanabe, Berkemer, and KR '564 in further view of Stone as to claims 20 and 22.

21.     As detailed below, I find that claim 1 of the '954 patent would not have been obvious over the Pratt/Tanabe and Pratt/Tanabe/Berkemer/KR '564 combinations. Further, I find considerable objective evidence of nonobviousness, including long-felt and unmet need, Petitioner's copying, commercial success, unexpected results, and professional praise/skepticism. Because I have determined that claim 1 of the '954 patent would have been nonobvious, I am informed and understand that the dependent claims of the '954 patent also are not obvious.

22.     Accordingly, it is my opinion that the Board should uphold the patentability of the '954 patent claims.

16

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120961

PGR 2018–00025
Patent No. 9,668,954

23.     My opinions are based upon: my review of the '954 patent, the file history of the '954 patent (including when necessary a review of the prior art cited in the '954 patent); my review of Petitioner's petition for Post Grant Review of the '954 patent in this proceeding, the references relied on by Petitioner, Dr. Wickett's declaration (Ex. 1012), and the Board's Decision on Institution of PGR (Paper 12); exhibits cited in this declaration; my education, knowledge, and experience; my understanding of basic science as well as principles and practices in the field of cosmetic science; my review of testing performed at my direction and described herein; and the perspective of a POSITA.

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120962

PGR 2018—00025
Patent No. 9,668,954

## IV. LEVEL OF SKILL IN THE ART

24.  I understand that evaluation of the Petition requires interpretation of various patent documents (e.g., the '954 patent), and patent documents are written to be read and understood from the point of view of a POSITA at the time the patent application was filed.

25.  I understand that the POSITA is a hypothetical person who is presumed to have known the relevant art at the time of the invention. I understand that factors that may be considered in determining the level of ordinary skill in the art may include: (a) type of problems encountered in the art; (b) prior art solutions to those problems; (c) rapidity with which innovations are made; (d) sophistication of the technology; and (e) educational level of active workers in the field. I further understand that a POSITA is defined not only by skill level and experience, but also by ordinary creativity and common sense.

26.  I understand that the '954 patent claims priority to May 16, 2014. My opinions herein are based on what a POSITA would have understood as of about May 16, 2014.

27.  My opinion on the level of ordinary skill in the art is based on my personal knowledge and experience as well as my consideration of such things as the education and experience level of persons of skill working in the field.

18

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

OLA_0000120963

PGR 2018–00025
Patent No. 9,668,954

28.     In my opinion, the field of invention is cosmetic science. More specifically, the '954 patent relates to methods for rebuilding the disulfide bonds in keratin found in hair. (Ex. 1001, Abstract). With respect to the '954 patent, a POSITA as of May 16, 2014 would have a college degree in chemistry or an associated science. In addition, a POSITA would have had several years of work experience.

29.     I have reviewed the declaration of R. Randall Wickett, Ph.D. (Exhibit 1012). In that declaration, Dr. Wickett gives his opinion as to the skill level of a POSITA at the time of the invention of the '954 patent: "someone with at least an Associate's degree in chemistry, chemical engineering, or a related field, and at least 5–7 years of laboratory experience with formulation and testing of hair care products, with special emphasis on reactive products; or someone with a Ph.D. in chemistry, chemical engineering, or a related field and with at least minimal prior laboratory experience with formulation and testing of hair care products." (Ex. 1012, ¶34). I had at least the qualifications of a POSITA under this definition at the time that the '954 patent was filed.

30.     In my opinion, Dr. Wickett has created an unrealistically high level of skill in the art. In my knowledge and experience, a person formulating hair care products often would not have 5–7 years of laboratory experience in formulation and testing of hair care products. Also, someone with a Ph.D. in chemistry,

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120964

PGR 2018–00025
Patent No. 9,668,954

chemical engineering, or a related field would not typically be involved in the day-to-day process of formulating hair care products in a laboratory. However, my opinions in this declaration do not change whether my definition of a POSITA or Dr. Wickett's definition is used.

31.     I also note that Dr. Wickett is unclear as to the proper date of invention, and mentions both May 2014 and January 2017. (Ex. 1012, ¶34). Dr. Wickett was informed by Petitioner's counsel that the '954 patent claims are not entitled to rely on the May 2014 filing date of the original provisional application and says certain features in claims 1, 5, and 6 are not properly disclosed in the earlier applications. (Ex. 1012, ¶¶40, 40 n.1, 42 n.2). As discussed below in paragraphs 90–108, Dr. Wickett was misinformed and each of the identified '954 patent claims is entitled to rely on the May 2014 filing date of the provisional application.

32.     Nonetheless, even if January 2017 is the proper date of invention (i.e., time period for assessing obviousness), my opinions in this declaration do not change and the '954 patent claims would not have been obvious to a POSITA at that time as explained below.

20

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120965

PGR 2018–00025
Patent No. 9,668,954

# V.   LEGAL STANDARDS

33.    I am not a legal expert and offer no opinions on the law. However, counsel has informed me of legal standards that apply with respect to determining patent validity.

34.    It is my understanding that Petitioner bears the burden of proving by a preponderance of the evidence that the '954 patent claims are unpatentable. I understand that the preponderance of the evidence standard is satisfied if the proposition is more likely to be true than to be not true.

35.    I have been informed that a patent includes the written description of one or more preferred embodiments of the invention, figures, and one or more claims that point out and claim the subject matter of the invention. The claims define and measure the patent's scope. Each claim defines a separate invention.

36.    I have been informed that the determination of patent validity for obviousness requires a two-step process. First, the language of the claims being evaluated is construed. Second, the construed claims are compared to the prior art.

## A.    CLAIM CONSTRUCTION

37.    I have been advised that in a post grant review, the Board gives claim terms in an unexpired patent their broadest reasonable construction in light of the specification in which they appear. Claim terms also are given their ordinary and

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120966

customary meaning, as would be understood by a POSITA in the context of the entire patent disclosure.

38.     I also have been informed and understand that if the patentee has clearly defined a claim term in the patent specification or file history, such definition is applied.

B.     OBVIOUSNESS

39.     I understand that a patent claim may be unpatentable as obvious if, at the time of the invention, the differences between the patented subject matter and the prior art are such that the subject matter as a whole would have been obvious to a POSITA. I also understand that analysis of obviousness requires consideration of: (a) the scope and content of the prior art; (b) the differences between the prior art and the claims at issue; (c) the level of ordinary skill in the art; and (d) the objective secondary factors of nonobviousness (for example, copying, long-felt unmet need, and unexpected results).

40.     I have been informed by counsel and I understand that, in order to evaluate the obviousness of the '954 patent claims over a given prior art combination, I should analyze whether the prior art references disclose every limitation of the challenged claims either explicitly or inherently, as those references are read by the POSITA at the time of the invention. Then I am to

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120967

PGR 2018–00025
Patent No. 9,668,954

determine whether that combination would have made the claimed invention, as a whole, obvious to the POSITA by a preponderance of the evidence.

41.     I further understand that it is not enough to simply show that the references disclose each element of a patent claim. Two additional showings must be made. First, there must be a reason (whether explicit or implicit) that would have prompted a POSITA to combine elements found in the prior art and to arrange them as described in the patented subject matter. I understand that the law requires that there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness. Second, there must be a reasonable expectation that a POSITA would have had success in combining the teachings of the prior art.

42.     I further have been informed and understand that a reference may be said to teach away from a particular modification when a POSITA, upon reading the reference, would be discouraged from following the path set out in the reference or would be led in a direction divergent from the path that was taken by the inventors.

43.     I understand that, notwithstanding what the teachings of the prior art would have suggested to a POSITA at the time of the invention, the totality of the evidence submitted, including objective evidence of nonobviousness, may lead to a conclusion that the challenged claims would not have been obvious to a POSITA.

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120968

PGR 2018–00025
Patent No. 9,668,954

44.     I understand there must also be a causal relationship, termed a "nexus," between the objective evidence of nonobviousness and the claimed invention. I understand that all types of objective evidence of nonobviousness must be shown to have a nexus. The stronger the showing of a nexus, the greater the weight accorded the objective evidence of nonobviousness.

C.     PRIORITY

45.     I have been told, and understand, that to be entitled to the benefit of an earlier application, the invention claimed must have been disclosed in the earlier application in the manner provided by 35 U.S.C. §112(a). A verbatim disclosure is not necessary, so long as the disclosure reasonably conveys to a POSITA that the inventor had possession of the subject matter in question, even if every nuance of the claims is not explicitly described in the specification. For example, a priority claim may be proper if a POSITA could derive claim limitations from the earlier application's disclosure.

**Liqwd, Inc. Ex. 2072**
**L'Oreal USA, Inc. v. Liqwd, Inc.**
**PGR2018-00025**

Highly Confidential

OLA_0000120969

PGR 2018–00025
Patent No. 9,668,954

## VI.   '954 PATENT

### A.   BACKGROUND AND STATE-OF-THE-ART AS OF THE PRIORITY DATE OF THE '954 PATENT, MAY 16, 2014

46.     The '954 patent discloses an innovative way to protect hair during damaging bleaching treatments involving developer and bleach powder.

47.     Hair fibers consist primarily of fibrous proteins belonging to the keratin family. (Ex. 1011, p. 4). Proteins are polymers consisting of polypeptide chains formed from condensation (or bonding) of amino acid building blocks. A feature that distinguishes keratin from other fibrous proteins is high content of the sulfur-containing amino acid cystine. (Ex. 1011, p. 4).

48.     Cystine forms covalent crosslinks (or bonds) between polypeptide chains. (Ex. 1011, p. 4). "These crosslinks give a high degree of physical and chemical stability to the keratin fiber." (Ex. 2006, p. 1).

49.     Morphologically, hair structure generally has three distinct components: the cuticle, the cortex, and the medulla. (Ex. 2006, p. 1). The shingle-like cuticle layer forms the hair's exterior and encloses the corticular mass. (Ex. 1011, p. 3). The cortex constitutes the bulk of the hair fiber and contains tightly packed elongated cortical cells oriented parallel to the fiber axis. (Ex. 1011, p. 3). These cells contain $\alpha$-helical microfibrils embedded in a cystine-rich amorphous protein matrix. (Ex. 1011, p. 5). The medulla is located toward the

25

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential                                                              OLA_0000120970

PGR 2018–00025
Patent No. 9,668,954

center of the hair fiber, is composed of loosely attached spongy cells, and makes up only a small percentage of the hair fiber. (Ex. 1011, p. 3). In some human hair fibers, the medulla may be absent. (Ex. 1011, p. 3).

50.     Melanin is the natural pigment present inside of hair fibers. (Ex. 2005, p. 2). Melanin pigment granules are located within the cortex of the hair fiber. (Ex. 1011, pp. 3, 5–6; Ex. 2005, p. 2).

51.     Bleaching typically lightens hair color by oxidation reactions. Chemicals are applied to the hair, which react with the color pigment in the hair and change that pigment so it no longer imparts color to the hair. A typical bleaching process involves two components: powder lightener (also known as bleach powder) and developer. (Ex. 1001, Col. 16, lines 55–57). The bleach powder is often referred to as a "booster," because it contains persulfates that increase the oxidizing power significantly over developer alone. (Ex. 2005, p. 6). The persulfates and the developer work together in a complementary fashion synergistically to aggressively oxidize the melanin and pigments during hair bleaching. (Ex. 2005, pp. 6–7).

52.     Bleach powder is generally at least one salt of a persulfate together with one or more alkalizing agents. (Ex. 2010, p. 3; Ex. 2011, pp. 1, 3; Ex. 1001, Col. 22, lines 55–56, Col. 23, lines 30–31, and Col. 23, lines 64–65; Ex. 1011, p. 17 ("bleach powder … consists of a peroxodisulfate, an alkalinizing agent," and

26

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

PGR 2018–00025
Patent No. 9,668,954

other ingredients; also teaches that ("[t]he ammonium salt is most effective; when combined with an alkalinizing component such as sodium carbonate or silicate, ammonia is formed"); Ex. 2005, p. 6 ("bleach booster" powder is discussed that "is usually a mixture of ammonium and potassium persulfates" and that has "metasilicates mixed in with the persulfates" to provide "[a]lkaline pH."); Ex. 2033, p. 12 ("high pH" of bleach powder "is obtained using either metasilicates or phosphates or carbonates)).

53.     Cream and gel bleaches also can include bleach powder. (Ex. 1011, p. 17). Conventional bleach powder includes an alkalizing agent. (Ex. 1011, p. 17 (defining bleach powder as including "peroxodisulfate" and "an alkalinizing agent"); Ex. 2007, pp. 2–3 (describing three-part bleach composition with "hair lightener base," "lotion developer," and bleach powder "containing salts of persulfate" and sodium silica alkalizing agent). Accordingly, these cream and gel bleaches also include an alkalizing agent from the bleach powder.

54.     Exhibits 2010 and 2011 are exemplary of the contents of bleach powders today as well as before the '954 patent invention. I also went to both Cosmoprof and SalonCentric and looked at the contents of commercially available bleach powders, and each product I looked at contained alkali (generally sodium silicate or sodium metasilicate).

27

Highly Confidential

OLA_0000120972

PGR 2018–00025
Patent No. 9,668,954

55.     Developer is generally supplied as an acidic hydrogen peroxide solution, which in combination with the persulfate bleach powder is the oxidizing agent. (Ex. 2005, p. 6). Hydrogen peroxide-containing developer is "generally supplied at pH 3 to 4." (Ex. 2005, p. 6; see also Ex. 2006, p. 5 ("usually stored in acid solution.")).

56.     An important aspect of bleaching formulations is inclusion of alkali so that the bleaching formulation applied to the hair is sufficiently alkaline to swell hair fibers. (Ex. 1012, ¶21; Ex. 2021, ¶15; Ex. 1011, p. 17). This swelling makes hair fibers permeable to bleaching chemicals, which must penetrate into the hair fibers to reach the melanin granules or other pigments inside the hair fiber in order to oxidize them and decolorize the hair. (Ex. 1012, ¶21; Ex. 2021, ¶15; Ex. 1035, p. 2, lines 22–26 (alkaline agent "causes swelling of the keratin fibre, with opening of the scales, which promotes the penetration of the oxidizing agent" into the hair); Ex. 2005, p. 6). The alkali also helps accelerate the bleaching action by elevating pH. (Ex. 2005, p. 6 ("peroxide solutions are only active for bleaching in alkaline solution"; and "bleaching markedly decreases with decreasing pH."); Ex. 1035, p. 2, lines 20–22 (alkaline agent "makes it possible to adjust the pH of the composition to an alkaline pH to enable activation of the oxidizing agent"); Ex. 1012, ¶19 ("Bleach powders … may be added … to intensify or accelerate the

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120973

bleaching process."); Ex. 2007, p. 56 ("dissolution" of melanin "is at a maximum near the pK of hydrogen peroxide (pH 11.75).")).

57.     Initially, the hydrogen peroxide dissolves and disperses melanin granules. (Ex. 2005, p. 7). This dissolution/dispersion step by itself is not bleaching, and the pigment is not destroyed and remains able to color hair. A slower de-coloration step follows, where the melanin and artificial pigments are chemically altered. (Ex. 2005, p. 7).

58.     In addition to changing hair pigment as intended, hair bleaching is very destructive and the bleaching process can also create harmful side reactions. (Ex. 2005, p. 7; Ex. 1009, ¶3 ("unavoidable")). Oxidative hair bleaching was known to destroy disulfide bonds within the keratin, to cause negative charge to accumulate on the hair fiber surface, and to damage the cuticle. (Ex. 2005, pp. 6–7; Ex. 2006, pp. 3, 6; Ex. 1011, p. 16). As the '954 patent explains, harsh chemical treatments involve chemicals that can break the natural bonds in the hair and cause severe hair damage, especially when the chemical treatments are applied repeatedly. (Ex. 1001, Col. 1, line 26–Col. 2, line 11; Col. 2, lines 24–34; Col. 24, lines 11–18; see also Ex. 1011, p. 16).

59.     The problem that bleaching causes damage to hair has long been known. Berkemer was filed in 1964 and discloses that repeated bleaching causes numerous problems (e.g., making hair brittle, opening the hair cuticles and making

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120974

PGR 2018–00025
Patent No. 9,668,954

hair appear "lusterless and dull"). (Ex. 1004, p. 2, lines 24–32; see also Ex. 1042, Col. 1, lines 23–26 ("Damaged hair is recognized by one or more defects such as brittleness, split ends, scaling, low tensile strength, lack of luster, excessive elasticity, increased porosity, and poor manageability") and Ex. 1043, Col. 1, lines 38–42; Ex. 1041, Col. 2, lines 27–28 ("Repeated oxidative treatments leave weak, brittle hairs, which have little shine and luster")).

60.     Thirty years later, textbooks continued to report, "the aggressive nature of the bleaching mixtures can result in significant damage to hair." (Ex. 2005, p. 6; see also Ex. 1011, p. 17 ("problem of hair damage must always be considered" after hair bleaching). Some of the damage affects the aesthetic quality of the hair, causing it to lose its luster and appear "flat." (Ex. 2005, p. 6; Ex. 1017, p. 726 ("reduce hair gloss by damaging cuticles")). Damage also can be perceived because the hair feels more brittle, is more likely to break, and is more sensitive to humidity. (Ex. 2005, p. 7; Ex. 1006, p. 3 (¶7) ("hair becomes porous and stiff" after bleaching "making it easy to break")).

61.     Also, failure to remove alkali leaves hair swollen and soft, making the hair more susceptible to mechanical damage. (Ex.  1006, p. 3 (¶12) ("there is residual alkali in the hair so that the expanded condition of the hair is maintained")).

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120975

62.    Even shortly before the effective filing date of the '954 patent, experts described that bleaching altered the physical properties of hair, lowering its mechanical strength, giving hair a rough, straw-like feel when dry and giving hair a spongy feeling when wet. (Ex. 1011, p. 16 ("When a strong bleach is used, alteration of the chemical properties of hair also results in modified physical properties: a higher extensibility and thus lower mechanical strength; a rough, strawlike feel when dry; and a spongy feeling when wet."); Ex. 1009, ¶3 ("damaging effects of bleaching compositions are unavoidable"); Ex. 1038, Dispenza Tr. 56, lines 9–15; Ex. 2009, pp. 555–57).

63.    The evidence that bleaching was known to damage hair is so overwhelming that even Petitioner's declarant (Dr. Wickett) conceded bleaching has been known to damage hair, causing it to be brittle, dull, and otherwise diminished in appearance. (Ex. 1012, ¶22). A declarant for Petitioner in another PGR proceeding made a similar admission. (Ex. 2021, ¶16 ("the bleaching process has long been known to damage hair, causing it to be brittle, dull, and otherwise diminished in appearance.")).

64.    Prior to the '954 patent, it was understood that each application of a bleaching treatment damaged the hair. In general, when bleach was applied to hair, techniques were used to avoid or at least minimize re-bleaching already damaged hair. For example, bleach might be re-applied after six to eight weeks or so and

31

Highly Confidential

OLA_0000120976

only to the previously untreated roots of the hair fibers (new hair growth), and not to the previously bleached hair. (Ex. 2005, p. 13 ("subsequent [bleaching] treatments are only applied to the new growth areas (root application) for this length of time to limit cumulative damage"); Ex. 2033, p. 13 ("crucial that bleaching be localized to the portions where it is needed" because "[e]xtension onto areas that have been previously bleached can only increase the damage to the hair."))

65.     After-the-fact treatments with toners, conditioners, oils, and silicones also were used prior to the '954 patent to mask the structural damage caused by earlier bleaching. (Ex. 1038, Dispenza Tr. 23, line 23 – Tr. 24, line 13 and Tr. 55, lines 5 – 18; Ex. 2005, pp. 6, 7, 13). For example, cationic compounds, and silicones could be applied to already damaged hair that would improve the feel and combability of the hair. (Ex. 1011, pp. 8, 12, 17). Conditioning compounds could be applied to be hair to temporarily improve surface roughness and combability of the hair. (Ex. 1011, p. 12, ("Combability improvers include the cationic film-forming polymers listed above and cationic surfactants such as cetyltrimethylammonium chloride, bromide, or phosphate. Cationic silicones known as amodimethicone are also often used."); Ex. 1038, Dispenza Tr. 67, line 24 – Tr. 68, line 3; Ex. 2022, p. 330 ("For hair conditioning products the principle function involves combability. Ease of combing depends primarily on

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120977

lubrication of the fiber surface."); Ex. 2033, p. 11 ("softeners or conditioning agents may be added, whereby the mixture will afford hair smoother feel, combability, and sheen.")).

66.     It was also known to apply acidic compositions to hair after bleaching had been completed in order to neutralize any residual alkali and to smooth the hair surface. (Ex. 1004, p. 2, line 34–p. 3, line 5; Ex. 1006, p. 3 (¶19) ("use acid to return the hair to its original condition"); Ex. 1011, p. 10 ("earliest conditioning treatments" were "acid rinses" that counter-acted undesirable "swelling of hair") and p. 17 (acidic conditioners neutralized alkali residues in the hair and reversed hair swelling); Ex. 1038, Dispenza Tr. 95, line 5–Tr. 96, line 12 and Tr. 97, lines 11–24).

67.     Further, it was known to apply antioxidant compositions to hair after bleaching had been completed to neutralize residual oxidants remaining in the hair. (Ex. 1011, p. 17 ("To prevent 'delayed' oxidation, which may result from residual hydrogen peroxide in the hair, antioxidants such as ascorbic or glyoxylic acid may be added to the conditioning agent"); Ex. 1007, Col. 3, lines 18–26; Ex. 1004, p. 3, lines 30–37 (unsaturated compounds "counteract the post-oxidation that is harmful for the hair surface after a bleaching, in that they react with the peroxides remaining in the hair to form oxyacids or peroxyacids which, as do the olefinic compounds, display an astringent action, and thereby serve for the same desired

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120978

purpose of surface smoothing"); Ex. 2021, ¶165 (Berkemer teaches to counteract

harmful post-oxidation)).

68.     However, these after-the-fact treatments did not prevent the damage

from occurring during bleaching. (Ex. 1009, ¶3 ("damaging effects of bleaching

compositions are unavoidable"); Ex. 1011, p. 10 (action of hair conditioners

"restricted largely to modifying the surface qualities of the hair and making it

glossy"); Ex. 1038, Dispenza Tr. 67, line 24–Tr. 68, line 3; Ex. 1041, Col. 2,

lines 38–42 ("conditioners do not bring the hair back to its initial condition but

merely conceal the damage under a protective layer of the conditioning agent,

which only results in an improved feel of the hair")). Before the '954 patent

invention, there was a need for a way to bleach hair while protecting it from bleach

damage.

69.     Maleic acid is a dicarboxylic acid that has been known since the

1800s and has been commercially available since 1928. (Ex. 2034, p. 1). Despite

being a very old chemical, maleic acid was seldom used in cosmetic products

before the '954 patent invention and even then is typically used at low

concentrations. (Ex. 2035, p. 125 (maleic acid "is used in a few cosmetic product

formulations at low concentrations"), p. 126 ("In 2002, Maleic Acid was reported

to be an ingredient in three formulations of hair products and shaving creams")).

34

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120979

70.   Maleic acid exists in three forms: (1)  maleic acid, (2) hydrogen

maleate, and (3) maleate, whose chemical structures are depicted below.



In the images above, maleic acid refers to the fully protonated species. It exists in

environments with acidic pH. As the pH increases by addition of alkalizing agents,

maleic acid becomes deprotonated. Hydrogen maleate forms when one proton is

removed. Maleate forms when two protons are removed. The acid equilibrium

equations for the forms of maleic acid may be written as below:

$$C_4H_4O_4 \leftrightarrow H^+ + C_4H_3O_4^- \tag{1}$$

$$C_4H_3O_4^- \leftrightarrow H^+ + C_4H_2O_4^{2-} \tag{2}$$

35

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

PGR 2018–00025
Patent No. 9,668,954

71.     Maleic acid has two acid dissociation constants or $pK_a$ values (1.9 and 6.2). (Ex. 2034, p. 40). Amounts of the three species pictured above at a given pH can be estimated using the $pK_a$ values for maleic acid. When the pH is less than 1.9, maleic acid will be the predominant species. When the pH is equal to the first $pK_a$ value (1.9), fully protonated maleic acid and hydrogen maleate will be present in equal amounts. As the pH increases above 1.9, the amount of fully protonated maleic acid will be greatly reduced and the hydrogen maleate will be the predominant species. When the pH is equal to the second $pK_a$ value (6.2), hydrogen maleate and maleate will be present in equal amounts. As the pH increases above 6.2, maleate will be the predominant species. Maleate is called a conjugate base, and it cannot act as an acid because it does not have any acidic protons.

72.     The equilibrium expressions corresponding to the above acid equilibrium equations can be solved to give the amounts of the maleic acid, hydrogen maleate, and maleate at various pH values:

$$\alpha_{C_4H_4O_4} = \frac{[H^+]^2}{[H^+]^2 + [H^+]K_{a1} + K_{a1}K_{a2}} \tag{3}$$

$$\alpha_{C_4H_3O_4^-} = \frac{[H^+]K_{a1}}{[H^+]^2 + [H^+]K_{a1} + K_{a1}K_{a2}} \tag{4}$$

$$\alpha_{C_4H_2O_4^{2-}} = \frac{K_{a1}K_{a2}}{[H^+]^2 + [H^+]K_{a1} + K_{a1}K_{a2}} \tag{5}$$

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120981

(Ex. 2066, p. 192). The graph below estimates the fraction of fully protonated

maleic acid, hydrogen maleate, and maleate at various pH values:



73.     Maleic acid has been reported to have various toxicological side-

effects in animals, including kidney infections in rabbits, experimentally induced

Fanconi syndrome in rats and dogs, blindness in rabbits, and reproductive side

effects in hamsters. (Ex. 2035, pp. 127–128). In humans, maleic acid has caused

acute vesicular dermatitis (a severe form of skin inflammation). (Ex. 2035, p. 129).

Also, because of the double bond in maleic acid, a POSITA would have

understood that maleic acid is susceptible to other reactions such as oxidation,

which would impact its long-term stability. Further, the safety data sheet for maleic

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120982

PGR 2018–00025
Patent No. 9,668,954

acid warns that maleic acid is a skin sensitizer and that it is incompatible with alkali and oxidants. (Ex. 2036, pp. 1, 3, 5, 6, 7, 9).

B.    THE CLAIMED INVENTIONS OF THE '954 PATENT

74.    The '954 patent discloses and claims a new hair bleach method that addresses the underlying problem (damage during oxidative hair bleaching) by preventing or repairing damage to hair during bleaching. This invention solved the previously unmet need for a way to address damage during oxidative hair bleaching with bleach powder and developer.

75.    The '954 patent has twenty-nine claims[1] including one independent claim (claim 1), all of which were challenged by Petitioner. Exhibit 2001 lists all of the challenged claims.

76.    Claim 1 of the '954 patent sets forth a method for bleaching hair involving three steps: (a) mixing a bleach powder and a developer to form a bleaching formulation, (b) mixing a maleic acid active agent formulation with the bleaching formulation to form a mixture, and (c) applying that mixture to the hair.

---

[1] I have been told that Patent Owner filed a paper with the U.S. Patent Office called a statutory disclaimer on May 18, 2018, which disclaimed claim 17 of the '954 patent, and that the Board did not institute post-grant review of claim 17. (Paper 12, p. 3 footnote 1).  I offer no opinions about claim 17.

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120983

(Ex. 1001, Col. 25, lines 58–64). The weight of active agent relative to the final mixture also is described. (Ex. 1001, Col. 25, lines 65–67).

77. Claim 1 is reproduced below:

| Independent Claim 1 of the '954 Patent |
| --- |
| 1. A method for bleaching hair comprising: <br><br> (a) mixing a bleach powder and a developer to form a bleaching formulation, <br><br> (b) mixing an active agent formulation comprising an active agent with the bleaching formulation to form a mixture, wherein the active agent is maleic acid; and <br><br> (c) applying the mixture to the hair; <br><br> wherein the active agent in the mixture is at a concentration ranging from about 0.1% by weight to about 50% by weight. |

78. According to claim 1, the active agent concentration ranges from about 0.1 wt. % to about 50 wt. %. (Ex. 1001, Col. 25, lines 65–67). A POSITA would have understood this concentration language to require a comparison of the weight of the active agent added to the active agent formulation with the total weight of the mixture applied to the hair.

39

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

PGR 2018–00025
Patent No. 9,668,954

79.    Example 3 of the '954 patent describes a hair bleaching method that uses an active agent formulation made from 2 grams of maleic acid in 10 grams of total solution (water). (Ex. 1001, Col. 22, line 38–Col. 23, line 17). 9 ml (9 grams) of active agent formulation are added into the mixture, meaning that only 90% of the 2 grams of maleic acid in the active agent formulation, i.e., 1.8 grams of maleic acid, are included. Thus, the active agent in the final bleaching mixture applied to the hair is at a concentration of 2.8 wt% (1.8 grams of the active agent in the mixture divided by 65 grams in the total mixture):

| Component | Weight (g) |
|---|---|
| Developer (1 oz.) | 28 |
| Bleach powder (1 oz.) | 28 |
| Active Agent Formulation (9 ml) | 9 |
| Total | 65 |

80.    Hair treated in this manner during bleaching showed "[a] noticeable difference in hair quality" in terms of softness, less frizz, hydration, and shine, and these benefits were persistent even after five washings. (Ex. 1001, Col. 23, lines 8–17).

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120985

PGR 2018–00025
Patent No. 9,668,954

## VII. PROSECUTION HISTORY

81.    The '954 patent issued on June 6, 2017 from a family or group of

patent applications dating back to May 16, 2014. (Ex. 1001, cover page, item (63)).



(Ex. 1001, cover page, items (10), (21), (22), (45), (60), and (63); Ex. 2054, cover

page, items (10), (21), (22), (45), (60), and (63)).

41

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120986

82.   Prosecution of the '954 patent (and the related patent applications) involves the independent Patent Examiner's thorough consideration of hundreds of prior art references and determination that the claims were patentable. The '954 patent reflects consideration of 75 U.S. patents/published patent applications, 77 foreign patents/published patent applications, and 180 non-patent literature references. (Ex. 1001, cover page, item (56) and pp. 2–5).

83.   The Examiner was initially skeptical that the selection of maleic acid out of the group of known di- and tri-carboxylic acids was inventive. During prosecution of the '885 application, the Examiner requested evidence (a declaration with data) showing that "a small change (i.e., going from citric acid to maleic acid) produced a significantly significant difference in the quality of the hair following a color treatment." (Ex. 2037, p. 2). Attorneys for Patent Owner provided this declaration on October 29, 2015, and it showed that a bleaching mixture with about 1.1 wt% maleic acid reduced hair breakage, improved the feel of the hair, and provided an overall healthy appearance, while similar carboxylic acids and other chemicals did not. (Ex. 2038, pp. 4–6).

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120987

PGR 2018–00025
Patent No. 9,668,954

84. To illustrate the disparate results achieved by similar chemicals, I have excerpted the data for three chemicals which provided very different results despite their structural similarity:

| Maleic Acid | Sodium Salt of Succinic Acid | Malic Acid | Citric Acid |
|---|---|---|---|
|  |  |  |  |
| "No breakage, great feel, with healthy appearance" | "Significant breakage, rough feel, frayed, with unhealthy appearance" | "Some breakage, rough feel, frayed, with unhealthy appearance" | "Some breakage, rough feel, frayed, with unhealthy appearance" |

(Ex. 2038, p. 4)

85. The Examiner then allowed the pending claims and explained "[o]ne of ordinary skill in the art would not have expected the significant difference in hair quality (breakage, feel, and appearance)" resulting from the use of maleic acid. (Ex. 2039, p. 10). This led to the issuance of the related '926 patent.

43

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120988

PGR 2018–00025
Patent No. 9,668,954

86.     During prosecution of the '455 application, the Examiner again requested data showing the unique benefits of using maleic acid during a hair bleaching method as compared with similar chemicals. (Ex. 2040, p. 3). An August 6, 2018 declaration by Dr. Pressly details a series of experiments showing the unexpected results provided by maleic acid or salts thereof as compared with other common acids or salts thereof (e.g., citric acid). (Ex. 2041, ¶5). Three different concentrations of the active agent in the bleaching mixture were used (0.1 wt%, 0.7 wt%, and 5 wt%). (Ex. 2041, ¶6). The use of these various concentrations in the bleaching mixture improved hair quality (breakage, feel, and appearance) while equivalent concentrations of citric acid did not. (Ex. 2041, ¶¶7–10).

87.     In the Reasons for Allowance, the Examiner explained that Dr. Pressly's declaration (Ex. 2041) "is persuasive to establish the unexpectedness of maleic acid compared to conventional acids utilized as pH adjusters; namely citric acid." (Ex. 2042, p. 3). This led to the issuance of the related '478 patent.

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120989

## VIII. CLAIM CONSTRUCTION

88.     I agree with the Board's determination in its August 10, 2018 decision

that no construction of any term of claim 1 of the '954 patent is necessary to

resolve the patentability of a claim based on information in the PGR petition.

(Paper 12, p. 9).[2]

89.     Petitioner fails to provide any interpretations of terms in claim 1,

except to say that Petitioner has used an interpretation that "the claims should be

interpreted to include salts of maleic acid" in the mixture applied to the hair. (Pet.,

p. 21; see also Ex. 1012, ¶39). I have been told that the Board in the PGR2018–

00023 proceeding construed the "maleic acid" terms to mean "the active ingredient

as added to the active agent formulation in order to form the mixture" and

explained that "this interpretation does not exclude the formation of maleic acid

---

[2] In view of the two other PGR Petitions (PGR2018–00023 and PGR2018–00024)
filed by Petitioner, which were not instituted by the Board, the Board also adopted
for "consistency" the claim constructions that were applied in PGR2018–00023:
(1) the claims did not exclude salts of maleic acid from forming when the free acid
is mixed with an alkaline bleaching formulation, (2) "bleach powder" requires a
dry particular composition (i.e., powder) comprising at least a persulfate and an
alkali; and (3) "bleaching formulation" requires "a mixture of bleach powder and
developer that provides a sufficiently alkaline pH so that the bleaching
formulation, when mixed with the active agent formulation and applied to the hair,
can remove color from and lighten the hair. (Paper 12, pp. 7, 9).

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120990

PGR 2018−00025
Patent No. 9,668,954

salts after the free acid is mixed with a bleaching formulation." (*L'Oréal USA, Inc.*

*v. Liqwd, Inc.*, PGR2018−00023, Paper 9 (PTAB Aug. 10, 2018, p. 12).

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120991

PGR 2018–00025
Patent No. 9,668,954

## IX.  THE '954 PATENT CLAIMS ARE ENTITLED TO THE MAY 16, 2014 PRIORITY DATE

90.    The '954 patent issued from the '464 patent application (Ex. 1033), which was filed on January 25, 2017. (Ex. 1001, cover page, items (21) and (22)). The '954 patent claims entitlement to the earlier filing dates of a series of four related patent applications dating back to May 16, 2014: the '593 application (Ex. 1032), the '415 application (Ex. 1031), the '885 application (Ex. 1030), and the '709 application (Ex. 1020). (Ex. 1001, cover page, items (60) and (63)).

91.    In the Petition (Paper 3), Petitioner does not argue that the '954 patent claims are not entitled to rely on an effective filing date of May 16, 2014 (the filing date of the '709 application), and instead states generally in a footnote that "Petitioner does not concede that the '954 patent claims are entitled to any claim of priority…." (Paper 3, p. 10 n.2).

92.    Dr. Wickett (Petitioner's declarant) gives an opinion that claims 1, 5, and 6 of the '954 patent supposedly are not entitled to rely on an earlier application filing date because Dr. Wickett incorrectly concludes that the '954 patent and the earlier patent applications do not disclose the subject matter of these three claims. (Ex. 1012, ¶¶40–41). Dr. Wickett only identifies three features that he says were not disclosed in the earlier applications:

47

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120992

| '954 Patent Claim | Feature |
|---|---|
| 1 | "about 0.1% by weight to about 50% by weight" |
| 5 | "about 0.1 wt % to about 5 wt %" |
| 6 | "about 0.1 wt % to about 3 wt %" |

(Ex. 1012, ¶41 and ¶41 n.1). As explained below, I disagree with Dr. Wickett.

93.   In section A below, I discuss disclosures in the patent applications that relate to features of claim 1, including "about" 0.1% by weight and "about" 50% by weight of the active agent in the mixture. In section B below, I discuss disclosures in the patent applications that relate to features of claims 5 and 6. I do not address other claims of the '954 patent, which were not addressed by Dr. Wickett.

94.   Based on my analysis, my opinion is that each one of claims 1, 5, and 6 of the '954 patent is entitled to rely on a priority or effective filing date of May 16, 2014 (i.e., the filing date of the '709 application), because a POSITA would have understood that the '954 patent and the earlier applications describe these claims.

A.   THE PRIORITY APPLICATIONS DISCLOSE THE SUBJECT MATTER OF CLAIM 1, INCLUDING "ABOUT" 0.1% BY WEIGHT AND "ABOUT" 50% BY WEIGHT OF THE ACTIVE AGENT IN THE MIXTURE

95.   All of these applications, i.e. the '593 application (Ex. 1032), the '415 application (Ex. 1031), the '885 application (Ex. 1030), and the

48

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

'709 application (Ex. 1020). (Ex. 1001, cover page, items (60) and (63)), disclose

the elements of claim 1, including (1) the "method for bleaching hair" recited in

the introductory portion of the claim (see, e.g., Ex. 1020, p. 2, lines 22–26;

Exs. 1030–1032, all in p. 4, lines 6–10; Ex. 1033, p. 4, lines 12–16); (2) mixing

step (a) to form a "bleaching formulation" from "bleach powder and a developer"

(see, e.g., Ex. 1020, p. 21, line 29–p. 22, line 1 and p. 31, lines 20–23; Exs. 1030–

1032, all in p. 26, lines 25–27 and p. 36, lines 20–23; Ex. 1033, p. 26, line 29–p.

27, line 1 and p. 36, lines 20–23), (3) mixing step (b) to form a mixture from "the

bleaching formulation" and "an active agent formulation" (see, e.g., Ex. 1020,

p. 31, lines 23–24; Ex. 1030–1033, all in p. 36, lines 23–24), (4) "maleic acid" as

the active agent (see, e.g., Ex. 1020, p. 12, lines 10–15 and p. 31, line 15;

Exs. 1030–1033, all in p. 36, line 15), (5) mixture applying step (c) (see, e.g.,

Ex. 1020, p. 31, line 25–26; Exs. 1030–1033, all in p. 36, line 25–26), and (6) the

active agent concentration ranges from about 0.1% by wt. to about 50% by wt.

(see, e.g., Ex. 1020, p. 9, line 28–29 and p. 21, line 13–19; Exs. 1030–1032, all in

p. 11, lines 17–18 and p. 26, lines 6–13; Ex. 1033, p. 11, lines 23–24 and p. 26,

lines 10–17).

96. Dr. Wickett argues that the final portion of claim 1 (describing

concentration ranges from "about 0.1% by weight to about 50% by weight") is not

adequately described in the earlier applications because of the use of the word

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120994

"about" in connection with the concentration range. (Ex. 1012, ¶40). I disagree. As

Dr. Wickett acknowledges in part, the relevant text in column 16, lines 31–40 of

the '954 patent sets out concentrations of active agent in highlighting mixtures:

> Typical concentrations of the active agent in the
>
> highlighting mixture range from small amounts, such as
>
> approximately at least 0.01% (by wt), preferably at least
>
> 0.1% (by wt), to large amounts, such as up to 50%
>
> (by wt). Preferably the highlighting mixture contains the
>
> active agent in a concentration ranging from 0.1%
>
> (by wt) to 5% (by wt), more preferably from 0.1%
>
> (by wt) to 3% ([by] wt). While greater concentrations of
>
> active agent could be present in the highlighting mixture,
>
> they are generally not needed to achieve the desired
>
> results.

97.     The text shown above also appears in each of the earlier patent

applications. (Ex. 1020, p. 21, lines 13–19;[3] Ex. 1030–1032, p. 26, lines 6–13;

---

[3]   The text in Exhibit 1020 is not identical to the text quoted above, and refers to
"% (wt)" instead of "% (by wt)." A POSITA would have understood this text to
mean the same thing.

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120995

PGR 2018–00025
Patent No. 9,668,954

and Ex. 1033, p. 26, lines 10–17). I also note that Dr. Wickett omitted the final sentence of this text without explanation. (Ex. 1012, ¶40).

98.     This text would have informed a POSITA that imprecise numerical limitations are being described. First, the passage says that "typical" active agent concentrations range from small amounts to large amounts. It then gives exemplary ("such as") numerical values and describes them as being "approximate."

99.     Second, all of the exemplary numbers are written with only one significant figure. This reinforces the approximate nature of the numbers described in this passage. For example, writing the exemplary large amount as being "up to 50% (by wt)," informs the reader that the concentration value being reported are accurate only to the tens place. A POSITA would have understood this reference in the text to include concentrations greater than 50.0% (by wt) and less than 54.9% (by wt).

100.    Third, the passage expressly tells a POSITA that lesser and greater concentrations of the active agent are permitted. "[A]pproximately" modifies at least the lowest endpoint, and thus "about 0.1 % by weight." (Ex. 1020, p. 21, lines 14–15; Ex. 1030–1032, p. 26, lines 7–8; Ex. 1033, p. 26, lines 11–12). As to the upper endpoint, Dr. Wickett never acknowledges the last sentence in the paragraph, which clearly states that the highest endpoint is approximate. (Ex. 1001,

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120996

PGR 2018–00025
Patent No. 9,668,954

Col. 16, lines 37–40 ("greater concentrations…could be present"); Ex. 1020, p. 21, lines 18–19; Ex. 1030–1032, p. 26, lines 11–13; Ex. 1033, p. 26, lines 15–17).

101.   Fourth, Dr. Wickett admits that the '954 patent uses language reflecting imprecise amounts in column 7, lines 26–34, including the disclosure of "about 50 wt %" concentrations of the active agent in the formulation. (Ex. 1012, ¶40). The disclosure of active agent concentrations "to about 50 wt%" appears in each of the relevant applications. (Ex. 1020, p. 9, line 28–p. 10, line 2; Exs. 1030–1032, p. 11, lines 17–22; Ex. 1033, p. 11, lines 23–28). However, Dr. Wickett incorrectly dismisses this passage as relating only to active agent formulations. (Ex. 1012, ¶40). Such an interpretation is inconsistent with the '954 patent.

102.   The passage in column 7, lines 26–34 appears in Section "II. Formulations," where the specification generally describes hair repair formulations. It teaches that "the formulations" treat hair to reduce or prevent hair damage during chemical treatments and that the formulations are intended to be "administered to an individual's hair and/or human scalp." (Ex. 1001, Col. 7, lines 11–13, Col. 7, lines 18–24; see also Ex. 1020, p. 9, lines 14–17, p. 9, lines 21–25; Exs. 1030–1032, p. 11, lines 2–6, p. 11, lines 10–14; Ex. 1033, p. 11, lines 8–12, p. 11, lines 16–20). This would have informed a POSITA that what is being described in Section II (including column 7, lines 26–34) includes

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120997

PGR 2018–00025
Patent No. 9,668,954

the composition or mixture that is applied to the person's hair (which could be either the claim 1 "mixture" or "an active agent formulation").

103. Within this section, the '954 patent describes both "hair repair formulations" (Ex. 1001 at Col. 15, line 8, Col. 15, lines 41–42, Col. 15, lines 59–60; Ex. 1020 at p. 19, lines 7–8, p. 20, line 2, p. 20, line 16; Exs. 1030–1032 at p. 23, lines 26–27, p. 24, line 22, p. 25, lines 6–7; Ex. 1033 at p. 23, lines 30–31, p. 24, line 26, p. 25, lines 10–11), as well as "liquid active agent formulations." (Ex. 1001, Col. 16, lines 12–26; Ex. 1020, p. 20, line 29–p. 21, line 9; Exs. 1030–1032, p. 25, line 23–p. 26, line 2; Ex. 1033, p. 25, line 27–p. 26, line 6).

104. The '954 patent also teaches that "the liquid active agent formulation" (i.e., the formulation mixed with the bleaching formulation to form the mixture in claim 1), "may contain any suitable concentration of active agent in a suitable carrier, typically a diluent." (Ex. 1001, Col. 16, lines 16–18; see also *id.* at Col. 21, lines 40–41; Col. 22, lines 45–47; Col. 24, lines 33–34 (each describing active agent formulations with an active agent and water)). This is under a subheading "v. Liquid Active Agent Formulations." (Ex. 1001, Col. 16, line 12). These disclosures also appear in the various patent applications. (Ex. 1020, p. 21, lines 3; p. 29, lines 25–26; p. 31, lines 15–16; p. 32, lines 23–24; Exs. 1030–1032, p. 25, lines 25–27; p. 34, lines 25–26; p. 36, lines 15–16; p. 39, lines 11–12; Ex. 1033, p. 25, lines 29–31; p. 34, lines 25–26; p. 36, lines 15–16; p. 39, lines 11–12).

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000120998

105.   Thus, a POSITA would have understood that the '954 patent describes concentrations of active agent in the mixture with the bleaching formulation to be imprecise, and that these active agent concentration ranges in the mixture also are described in the '464, '594, '415, '885, and '709 applications, and therefore the '954 patent claim 1 is entitled to rely on May 16, 2014 as its effective filing date.

B.   THE PRIORITY APPLICATIONS DISCLOSE THE SUBJECT MATTER OF DEPENDENT CLAIMS 5 AND 6, INCLUDING "ABOUT" 0.1% BY WEIGHT AND "ABOUT" 5%/3% BY WEIGHT OF THE ACTIVE AGENT IN THE MIXTURE

106.   Claims 5 and 6 are dependent claims of claim 1, and recite narrower active agent concentration ranges in the mixture of "about 0.1 wt% to about 5 wt%" and "about 0.1 wt% to about 3 wt%." The lower limit of the concentration range in claims 5 and 6 is clearly described in the '954 patent and each of the earlier patent applications: "[a]pproximately at least…0.1% (by wt)" of active agent in the mixture is expressly described. (Ex. 1001, Col. 16, lines 31–34; Ex. 1020, p. 21, lines 13–15; Exs. 1030–1032, p. 26, lines 6–9; Ex. 1033, p. 26, lines 10–13).

107.   The upper limits of the concentration ranges in claims 5 and 6 also are described in the '954 patent and each of the earlier patent applications. Preferred active agent concentration ranges in the highlighting mixture range up to 3% (by wt) or 5% (by wt). (Ex. 1001, Col. 16, lines 35–37; Ex. 1020, p. 21, lines 16–

54

Highly Confidential

OLA_0000120999

PGR 2018–00025
Patent No. 9,668,954

17; Exs. 1030–1032, p. 26, lines 9–11; Ex. 1033, p. 26, lines 13–15). "[G]reater concentrations of the active agent could be present in the highlighting mixture." (Ex. 1001, Col. 16, lines 37–40; see also *id.* at Col. 7, lines 32–34 ("about 3 wt %"); Ex. 1020, p. 21, lines 18–19 and p. 10, lines 1–2; Exs. 1030–1032, p. 26, lines 11–13 and p. 11, lines 20–22; Ex. 1033, p. 26, lines 15–16 and p. 11, lines 26–28).

108.   A POSITA would have understood that the '954 patent and the earlier patent applications describe the concentrations of the active agent in claims 5 and 6, and these claims entitled to rely on May 16, 2014 as their effective filing date.

55

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121000

## X.   FACTUAL ASSESSMENT OF PETITIONER'S APPLIED REFERENCES

109.   I have reviewed in detail each of the five references applied in the Petition (Pratt, Tanabe, Berkemer, KR '564, and Stone) and provide the following summaries of each.

### A.   PRATT (Ex. 1009)

110.   Pratt, applied for in 2009, describes an alkaline hair bleaching method that supposedly produces less noticeable bleach damage by including cationic material in a bleaching composition. (Ex. 1009, Abstract, ¶¶5, 6, and 8). Pratt is the only reference relied on in the Petition, which actually describes an alkaline hair bleaching method.

111.   Pratt's bleaching composition has three component parts (which are referred to as compositions (a), (b), and (c)). (Ex. 1009, Abstract, ¶6). Composition (a) includes at least one compound with "bleaching effect." (Ex. 1009, Abstract). Composition (b) includes at least one oxidizing agent. (Ex. 1009, Abstract). Composition (c) has particular cationic and/or cationizable compounds. (Ex. 1009, Abstract, ¶¶6, 39). Pratt contends that his composition (c) noticeably reduces hair damage during bleaching. (Ex. 1009, ¶¶5, 9).

112.   The pH of composition (b) "is in the range of 2–7, preferably 2.5 to 6 and more preferably 2.5 to 5." (Ex. 1009, ¶38). The pH of the composition (c)

56

Highly Confidential

OLA_0000121001

"varies between 2 and 12, preferably 2.5 – 10, more preferably 3 to 8, most preferably 3 to 6 and in particular 3 to 5." (Ex. 1009, ¶94). When these three compositions are mixed together to form the final bleaching composition applied to the hair, the resulting pH "is between 8 and 12." (Ex. 1009, p. 14 (claim 12)). A POSITA would have understood that in Pratt's final bleaching mixture all three compositions (compositions (a), (b), and (c)) share the same pH, which is between 8 and 12.

113.   Pratt explains that bleach damage is both unavoidable and difficult to repair afterwards. (Ex. 1009, ¶3). Pratt claims "the damaging effect of bleaching composition on hair is noticeably reduced" by use of his method. (Ex. 1009, ¶5). A POSITA would understand this is an assertion that Pratt's method can be used to hide or mask bleach damage.

114.   I agree with Petitioner's declarant (Dr. Wickett) that "Pratt does not disclose an order for mixing compositions (a), (b), and (c)." (Ex. 1012, ¶53). Pratt forms a bleaching composition by combining together compositions (a), (b), and (c) "prior to application." (Ex. 1009, ¶6; see also Ex. 1009, ¶8 ("prepared by mixing three compositions") and ¶104 (compositions (a), (b), and (c) "were mixed" together). The mixing ratio of compositions (a), (b), and (c) is described as being "in the range of 4 : 8 : 0.1 – 4 : 8 : 1, preferably 4 : 6 : 0.2 – 4 : 6 : 0.75, more preferably 4 : 4 : 0.2 – 4 : 4 : 0.75." (Ex. 1009, ¶95).

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121002

115. Dr. Wickett argues that a POSITA would have understood that the "third composition" is added after the first (a) and second (b) compositions have been mixed. (Ex. 1012, ¶53, citing Ex. 1009, Example 1). I disagree. If Dr. Wickett implies a mixing order by his characterizations of compositions (a), (b), and (c) as "first," "second," and "third," Dr. Wickett overlooks the fact that the phrases "first" composition and "second" composition are never used in connection with Example 1. The text of Example 1 states that all three compositions "were mixed." (Ex. 1009, ¶104). A POSITA would have understood that Pratt's Example 1 discloses the mixing together of all three components, and nothing in Example 1 teaches that composition (a) and composition (b) are mixed together first, and then composition (c) is added to that pre-existing mixture.

116. I understand that Dr. Wickett also relies on paragraph 97 of Pratt for his implication that Pratt's Example 1 teaches a specific order of mixing. (Ex. 1012, ¶53). Again, I disagree. That paragraph provides information about the pH range of "the ready to use product, a mixture of bleaching composition and oxidizing lotion." (Ex. 1009, ¶97). A POSITA would have understood that the reference to a "ready to use product" in this paragraph merely gives information about a pH range of the mixture of the bleaching composition and the oxidizing lotion, which is consistent with conventional bleaching formulas. A POSITA would not have understood this paragraph to teach or disclose how

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121003

compositions (a), (b), and (c) are mixed in Example 1 or otherwise. Dr. Wickett also overlooks and does not address Pratt's claim 12, which says "the ready to use aqueous bleaching composition" is formed "after mixing the three compositions." Likewise, claim 14 says the aqueous bleaching composition is "prepared by mixing the three compositions." (See also Ex. 1009, Abstract ("three parts which are mixed") and ¶6 (same)). A POSITA would not have understood that Pratt discloses mixing composition (a) and composition (b) prior to the addition of composition (c).

117.   Pratt discloses a broad set of possible choices for the cationic and other materials in composition (c). (Ex. 1009, ¶¶39–94). These materials may include cationic/cationizable compounds, such a cetyltrimethyl ammonium chloride (¶¶39–49), as well as water soluble silk protein or silk protein hydrolysate (¶¶51–52), hair conditioners such as non-ionics, oily substances, or cationic substances (¶¶53–58), additional proteins, and protein hydrolysates (¶¶59–60), emulsifiers such as fatty alcohols (¶¶61–62), surfactants (¶¶63–73), organic solvents (¶75), thickening agents, (¶76), ceramide-type compounds (¶77), polyol (¶78), diamides (¶¶79–82), ubichinone-type compounds (¶83), UV filters (¶¶84–85), and direct dyes (¶¶86–93). More than a hundred exemplary cationic/cationizable compounds are identified in paragraph 46 alone.

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121004

PGR 2018–00025
Patent No. 9,668,954

118.   A POSITA would have understood that Pratt includes cationic and cationizable materials in the bleaching composition to function as a hair conditioner. (Ex. 2022, p. 332 ("hair conditioners include "[c]ationic substances consisting of mono-functional quaternary ammonium compounds or amines or even polymeric quaternary ammonium compounds or amines")). These cationic materials are positively charged and ionically bind to bleach damaged hair, which tends to be negatively charged. (Ex. 2006, p. 3 ("Cationic agents (quaternary ammonium compounds) are positively charged, and they are attracted by the negative charge of damaged hair."); Ex. 2022, pp. 347, 366–67, 369 ("the cationic part of conditioners binds to the hair surface by ionic bonds with the hydrophobic tails projecting into the air to provide a hydrophobic hair surface"); see also Ex. 1011, p. 7 ("Cationic surfactants have a positive charge and are strongly absorbed by the hair") and Ex. 1011, p. 17 ("The formation of acid groups during oxidation promotes the adsorption of cationic compounds, which improve the feel and combability of the hair")). Cationic surfactants, such as cetrimonium chloride, were known to form a thin film on the hair and to improve the combability of bleach damaged hair, impart a smooth feel to the hair, and reduce "flyaway hair." (Ex. 2022, pp. 368–69 ("low surface friction" and "to make hair comb easier"); Ex. 1011, p. 8 ("prevent tangling during combing and brushing of wet hair, and impart a pleasant, smooth feel to the hair after drying.")).

60

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121005

PGR 2018–00025
Patent No. 9,668,954

119.   The only mention of maleic acid in Pratt is buried within a long list of optional pH adjusters for composition (c). (Ex. 1009, ¶94). This long list of pH adjusters includes six different acids, monoethanolamine, triethanolamine, ammonia, the class of ammonia salts with acids (e.g., ammonium chloride, ammonium sulphate, ammonium carbonate, ammonium bicarbonate, and ammonium nitrate), the class of alkaline solutions (e.g., sodium hydroxide, and potassium hydroxide), and the class of salts made from alkaline solutions and known acids. (Ex. 1009, ¶94). A POSITA would have understood that this is a virtually infinite list. Pratt does not describe the concentration of any acid or any other pH adjuster in the final bleaching composition.

120.   There is no teaching in Pratt that the optional pH adjuster in composition (c) serves any purpose other than to alter the pH of that composition, if necessary. Pratt does not teach that any of the disclosed pH adjusters serves to repair or prevent bleach damage.

121.   A POSITA would have understood that Pratt uses acid in his composition (c) to facilitate solubilization of fatty amines, which are among his cationizable compounds. For example, the fatty amine materials identified in paragraph 46 (e.g., stearyloxypropyl amine) are not soluble in water. By acidifying composition (c), the amine becomes protonated and thus soluble in water. However, there would be no need to include optional pH adjusters if the added

61

Highly Confidential

OLA_0000121006

PGR 2018–00025
Patent No. 9,668,954

component is a permanently cationic (e.g., centrimonium chloride) and is already soluble in water. There is no teaching in Pratt that acid is suitable for any other uses or has any other function in the final bleaching composition.

122.   Pratt's Example 1 describes that a small amount of citric acid is added to the third composition. (Ex. 1009, ¶103). None of Pratt's thirteen examples describes a composition (c) or any other composition as having maleic acid at any concentration. (Ex. 1009, ¶¶100–137).

123.   In Example 1, two "dark" human hair tresses were bleached with Pratt's so-called "Inventive Composition" and a "Comparative Composition," respectively, for 40 minutes at 50 °C. (Ex. 1009, ¶¶104–106).

124.   Comparative Composition is the same as the Inventive Composition prepared in Pratt's Example 1, except that composition (c) having centrimonium chloride and a small amount of citric acid in water has been replaced with water alone. (Ex. 1009, ¶¶103, 105, 107).

125.   Table 1 (reproduced below) purports to summarize results of using Pratt's composition from Example 1:

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121007

| Sample | L | a | b | ΔE | Cysteic acid content | |
|---|---|---|---|---|---|---|
| | | | | | (mol/100 mol) | (mol/100 mol) per level of lightening |
| Before Bleaching | 18 | 1.5 | 1.0 | -- | 0.7 | -- |
| Inventive Composition | 55 | 11.0 | 33 | 51 | 4.90 | 0.083 |
| Comparative Composition | 55 | 12.0 | 33 | 50.5 | 5.42 | 0.094 |

(Ex. 1009, ¶107). In the table above "L" refers to the lightness of the hair, "a"
refers to the red/green coordinate, and "b" refers to the yellow/blue coordinate.

126.   ΔE is a measure of color change. (Ex. 2061, Wickett Tr. 191, lines 8–
17). During his recent deposition, Petitioner's declaration (Dr. Wickett) expressed
his opinion that the ΔE values reported in Pratt using the following CIE 1976
formula:

$$\Delta E = \sqrt{(L_2 - L_1)^2 + (a_2 - a_1)^2 + (b - b_1)^2} \qquad (6)$$

(Ex. 2061, Wickett Tr. 191, line 8–Tr. 192, line 6 and Tr. 194, line 6–Tr. 195,
line 16). Applying that formula, I calculate that the ΔE value for the Inventive
Composition is 49.8, and the ΔE value for the Comparative Composition is 50.0.
These values are different than what is reported in Pratt's Table 1, and show that

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121008

PGR 2018–00025
Patent No. 9,668,954

the Comparative Composition —not the Inventive Composition — was more
effective at bleaching the hair.

127.   I am aware that various modifications of that formula have been
proposed, including CIE 1994 (Graphic Arts), CIE 1994 (Textiles), CIE 2000,
CMC 1.1, and CMC 2.1. Using an online calculator available at the website below,
I confirmed that none of these formulas provides $\Delta E$ values matching those which
Pratt reports.

http://www.brucelindbloom.com/index.html?ColorDifferenceCalc.html

128.   For convenience, I reproduce below the results that I obtained:

| Formula | Inventive Composition | Comparative Composition |
|---|---|---|
| CIE 1994 (graphic arts) | 48.2 | 48.4 |
| CIE 1994 (textiles) | 34.9 | 36.1 |
| CIE 2000 | 36.3 | 36.4 |
| CMC 1.1 | 79.7 | 79.9 |
| CMC 2.1 | 55.5 | 55.8 |

129.   A POSITA would have been concerned that Pratt's only data table
contains erroneous data, especially since the correct data shows Pratt's Inventive

64

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

OLA_0000121009

PGR 2018–00025
Patent No. 9,668,954

Composition performs poorly (less effective at bleaching the hair as measured by ΔE) than the Comparative Composition.

130.   I appreciate that Pratt also claims the cysteic acid content of hair bleached with the inventive composition "is clearly and significantly lower" than the Comparative Composition. (Ex. 1009, ¶108). However, a POSITA would have regarded that claim with a high degree of skepticism because Pratt does not provide sufficient information to support it. Table 1 does not provide information regarding the experimental error of cysteic acid content numbers provided.

131.   Also, a POSITA would have understood that cysteic acid testing is a destructive test, and therefore different hair samples would be required for the "Before bleaching," "Inventive Composition," and "Comparative Composition" reported in Pratt's Table 1. (Ex. 2061, Wickett Tr. 198, line 10–Tr. 199, line 2). This is significant because cysteic acid content in human hair is highly variable. In unaltered human hair, cysteic acid content has been shown to vary from $22-40$ micromoles/gram of dry hair. (Ex. 1046, p. 112 (describing "[s]ignificant differences [in cysteic acid] indicated among samples analyzed"); see also Ex. 2055, p. 479 (cysteic acid content in human hair ranges between $10-58$ micromoles/gram of dry hair); and Ex. 2060, pp. 286–87 ("there is considerable variation in the amino-acid composition of human hair"; reporting cysteic acid content in human hair varies between $10-59$ micromoles/gram of dry hair);

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121010

PGR 2018–00025
Patent No. 9,668,954

Ex. 2009, p. 561 (describing significant variation in cysteic acid within single strand of hair between distal and proximal ends). A POSITA would also have been aware that the procedures employed in conducting the test can introduce further error into the cysteic acid measurements. A POSITA would have understood that a reported variation in cysteic acid content of just 0.52% could be the result of variation in the hair making up the tresses that were tested, or could be the result of improper experimental procedure.

132.   Pratt's Table 1 also reports a normalized cysteic acid number "per level of lightening." Dr. Wickett speculated that this number was obtained by dividing the cysteic acid percentages (mol/100 mol) by the $\Delta E$ reported in the same row. (Ex. 2061, Wickett Tr. 199, line 15–Tr. 200, line 18). However, dividing the reported cysteic acid content by the correct $\Delta E$ values from Pratt's Table 1 does not result in the reported numbers.

133.   Other than the Table 1 data, Pratt reports that hair treated with his inventive compositions had improved combability, better shine, softer feel, and had better elasticity when his three-part bleaching composition was used. (Ex. 1009, ¶¶115, 122, 127, 128, and 138).

134.   In summary, Pratt does not describe mixing maleic acid with a bleaching formulation formed from developer and bleach powder. Pratt also does

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121011

not provide a specific concentration range for maleic acid when used in hair bleaching methods.

B.   TANABE (Ex. 1007)

135.   Tanabe, applied for in 1999, describes an acidic (low pH) hair cosmetic composition intended to improve optical or mechanical properties of already damaged hair, and does not describe hair bleaching methods at all. (Ex. 1007, Abstract, and Col. 3, lines 38–43 (applying conditioners to hair that is already permed and bleached)). Tanabe's acidic compositions have pH 2–6. (Ex. 1007, Col. 3, lines 28–30). Tanabe does not disclose adding his acidic hair cosmetic compositions into bleaching mixtures, which a POSITA would have understood have significantly higher pHs. Instead, Tanabe treats already damaged hair. For example, Tanabe uses hair samples that were double processed (previously bleached and permed) to test his acidic conditioners. (Ex. 1007, Col. 3, line 42).

136.   Tanabe's compositions include at least three ingredients: (A) glycine, alanine, or combinations thereof, (B) an acid, and (C) a cationic surfactant. (Ex. 1007, Col. 1, line 42–45). Component (A) is "added preferably in a proportion from 0.01–20 wt %." (Ex. 1007, Col. 1, lines 52–53).

137.   Tanabe links the amount of glycine or alanine to "imparting color deepness to hair." (Ex. 1007, Col. 1, lines 52–57). A POSITA would have

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121012

understood that Tanabe uses these ingredients in his hair cosmetic compositions as buffers to ensure acidic pH below the isoelectric point of hair. (Ex. 1004, p. 4, lines 8–12 ("glycocoll" or glycine added to conditioner as a "buffer substance[]" to maintain acidic pH); Ex. 2017, p. 3 (referring to glycocoll as "glycine"); Ex. 2018, p. 4 (same)). Glycine and alanine buffer at acidic pHs around the first pKa values of these amino acids, which are 2.35 and 2.34, respectively. (Ex. 2065, pp. 7–8). The isoelectric point of hair is less than about 4. (Ex. 2022, pp. 368, 369, 388). Negative charge builds up on the surface of the hair fibers when hair is exposed to a pH greater than the isoelectric point of hair, while positive charge builds up on the fiber surface when hair is exposed to a pH less than the isoelectric point of hair. (Ex. 2022, pp. 368, 369, 388).

138. In Table 1, Tanabe's Invention Product 6 and Comparative Product 3 include the same components, except that Invention Product 6 includes 2 wt% glycine and has pH 3.3. (Ex. 1007, Table 1). Comparative Product 3 without glycine had pH 5.0. (Ex. 1007, Table 1). A POSITA would have understood that at lower pH values, Tanabe's component (C) (the cationic surfactant) in Tanabe's Invention Products would be expected to be less attracted to the hair fibers, and therefore that component is not responsible for the performance reported in Table 1. A POSITA also would have concluded that the performance reported in Table 1 is largely dependent on Tanabe's component (B) (i.e., the acid) and its

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121013

PGR 2018–00025
Patent No. 9,668,954

ability to donate acidic protons. As illustrated in paragraphs 72 and 144, maleic, malic, and succinic acid have a greater ability to donate acidic protons at pH 3.3 than at pH 5.0 or 5.5. The fully deprotonated form of maleic acid, which exists at pH 8–12, has no acidic protons to donate.

139.   A large number of acids are usable as Tanabe's component (B), including (a) α-hydroxy acids, (b) β-hydroxy acids, (c) 1,2-dicarboxylic acids, (d) 1,3-dicarboxylic acids, and (e) aromatic carboxylic acids. (Ex. 1007, Col. 1, line 58–Col. 2, line 3). Tanabe provides fourteen illustrative α-hydroxy acids and β-hydroxy acids, four dicarboxylic acids, and three aromatic carboxylic acids. (Ex. 1007, Col. 1, line 58–Col. 2, line 3). While Tanabe says that malic acid, succinic acid, and maleic acid are "particularly preferred" acids, Tanabe does not explain why. (Ex. 1007, Col. 2, lines 5–6; see also Ex. 1007, Col. 7, line 1–7 and Col. 8, lines 1–6). From reading Tanabe, a POSITA would understand that the particular benefits provided by these three acids could be provided by a myriad of other acids, not the least of which is citric acid as used in Pratt's examples. (Ex. 2056, p. 157 (describing "[t]reatment of bleached hair with solutions of carboxylic acids [to] restore[] the initial fatigue resistance of hair" and development of "restoring shampoos formulated with a substantial amount of an α-hydroxyacid, e.g., citric acid, or fruit acid, their pH being adjusted at 5.");

69

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121014

PGR 2018–00025
Patent No. 9,668,954

Ex. 2062, p. 445 (reporting that a 4 wt% citric acid solution provided significant strengthening effect after bleaching); see also Ex. 1006, p. 4 (¶2) ("wide range" of "mild acid" can be used to treat already damaged hair)).

140.   Tanabe teaches that the final hair cosmetic composition has an acidic pH, "preferably" not higher than "the pKa of the α-hydroxy acid (B) employed, and may range specifically from 2–6." (Ex. 1007, Col. 3, lines 26–30). The "Invention Products" and "Comparative Products" in Tanabe's Table 1 have pH values of 3.3, 5.0, or 5.5. (Ex. 1007, Table 1). This indicates that a protonated form of the acid is required. The amount of acid in Tanabe's conditioner ranges from 0.01–5 wt%, which he says is "from the standpoint of imparting transparency to hair." (Ex. 1007, Col. 2, lines 7–11; Col. 7, lines 35–38; Col. 8, lines 34–36).

141.   Importantly, the low pH Invention Products performed far better than the higher-pH Comparative Products. Tanabe teaches that his Invention Products provide benefit at pH 3.3, while his Comparative Products do not provide such a benefit at pH 5.0 or 5.5. Taken together, a POSITA would have understood that Tanabe shows lower pH provided better conditioning properties than a higher pH.

142.   Also, Tanabe's description of his component (B) is strictly limited to the use of acid; the use of salts or other pH adjusters is not taught. (Ex. 1007, Col. 1, line 58–Col. 2, line 12). A POSITA would have understood a purpose of

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121015

PGR 2018–00025
Patent No. 9,668,954

including acid in Tanabe's hair cosmetic composition was to decrease pH to 6 and below.

143.   Tanabe's hair cosmetic compositions can be used as a "hair rinse, conditioner, treatment, hair cream, hair pack, or the like." (Ex. 1007, Col.3, lines 32–35). Tanabe does not mention bleach powder, developer, or hydrogen peroxide. Tanabe does not claim or propose that any benefits from using his hair cosmetic compositions would actually occur if they were added into a reactive, highly alkaline bleaching mixture.

144.   Tanabe's examples use only three acids (malic acid, maleic acid, and succinic acid) and only in the small concentration of 0.5 wt%. Applying the analysis in paragraph 72, I have prepared graphs estimating the fraction of various forms of malic and succinic acid:

71

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121016

PGR 2018–00025
Patent No. 9,668,954





Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121017

Malic acid has two $pK_a$ values (3.4 and 5.1). (Ex. 2065, p. 8). Succinic acid has two $pK_a$ values (4.2 and 5.6). (Ex. 2065, p. 8). Paragraph 72 (above) shows a similar graph for maleic acid. A POSITA would have understood that Tanabe's three preferred acids (maleic, malic, and succinic acids) are each capable of donating acidic protons at pH 2–6.

145.   Maleic acid is used in just one composition (Invention Product 5 of Example 1), and it left the hair with poor body. (Ex. 1007, Table 1, Col. 5, lines 28–31). The only "Invention Product" formulation tested that left hair with good body was Invention Product 7, which used malic acid. (Ex. 1007, Table 1). Further, the only formulations tested in Examples 3–5 contained malic acid. (Ex. 1007, Col. 5, line 51–Col. 6, line 60).

146.   Tanabe says his hair cosmetic compositions improve the optical or mechanical properties of hair (e.g., luster, softness, body). (Ex. 1007, Abstract; Col. 1, lines 5–14). A POSITA would have understood that by "mechanical properties" Tanabe means manageability, touch, softness/body, silky feel, non-greasy feel evaluated organoleptically, and not tensile properties or any other properties evaluated instrumentally. (Ex. 1007, Col. 1, lines 12–13 ("mechanical properties of hair, such as…softness, body, and the like."); Col. 3, lines 52 ("organoleptically ranked"); Col. 3, line 40 ("softness/body, manageability, and touch of hair"); Col. 5, lines 29–30 ("softening/body, hair manageability, and

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121018

touch"); Col. 5, lines 32 ("nongreasiness"); Col. 5, lines 37–42 (how to evaluate "nongreasiness of hair"); Col. 5, line 49 ("nongreasiness"); Col. 6, lines 59–60 ("softness and body to hair, and also improved the manageability of hair"); Col. 6, lines 66–67 ("impart softness and body to hair, so that the manageability of hair is improved"); and Table 1).

147.   A POSITA also would have understood that by "optical" properties of hair Tanabe means external appearance of the hair, luster, or shine. (Ex. 1007, Col. 1, line 13 ("optical…properties of hair, such as luster"); Col. 4, lines 1–8 (how to evaluate "external appearance of hair"); Col. 5, lines 28–29 ("external appearance of hair"); Col. 6, line 59 ("good luster"); Col. 6, line 65 ("color deepness, transparency, and shiny luster"); and Table 1).

148.   Tanabe's Table 1 supposedly shows improved optical/mechanical properties of hair (a. external appearance, b. softening/body, c. hair manageability, d. touch).

149.   A POSITA would have understood that the benefits described in Tanabe require an acidic conditioning composition that causes the hair fiber to contract and makes the cuticle smoother. For example, external appearance of hair fibers improves when exposed to the low pH of the conditioner, which is known to smooth hair fiber surfaces. (Ex. 1004, p. 2, line 34–p. 3, line 5 (dilute acid after-treatment solutions have "surface-smoothing action" and "improve the light

74

Highly Confidential

OLA_0000121019

reflection" of damaged hair); Ex. 1006, p. 2 (¶2) ("mild acid" conditioning after-treatment provides hair with "greater shine" and "smoothness," and "mak[es] hair glossier"); Ex. 2006, p. 433 ("Smooth hair cuticles reflect more light, resulting in glossier hair")).

150.   A POSITA also would have understood that Tanabe's claimed improvements in softening/body and touch/feel result from low pH of the conditioner, which smooths the hair fiber surface and makes hair feel softer and silkier to the touch. (Ex. 1006, p. 2 (¶2) ("mild acid" conditioning after-treatment provides hair with greater "elasticity"); Ex. 1011, p. 17 (acidic conditioners neutralize alkali residues and reverse hair swelling); Ex. 2006, p. 433 (smooth hair cuticles "result in softer hair"); Ex. 2056, p. 157 (acid rinse returns "hair pH" back to a normal level and prevents elimination of amino acids and oligoproteins)).

151.   Likewise, a POSITA would have understood that improved manageability results from the ability of the low pH of the acidic conditioner to counteract or neutralize negative charge on the hair fiber surface. (Ex. 1006, p. 2 (¶2) ("mild acid" conditioning after-treatment "facilitat[es] the production and maintenance of styling"); Ex. 1011, p. 8 (conditioning agents "reduce static charge, which causes 'flyaway hair'")). A POSITA would have understood that each of the above benefits would require inclusion of a protonated acid and would not be provided by inclusion of a fully deprotonated form of the acid.

75

Highly Confidential

OLA_0000121020

C.   BERKEMER (Ex. 1004)

152.   Berkemer, applied for in 1964, relates to a specific acidic hair treatment method of applying an acidic maleic acid conditioner to already damaged hair, and does not describe hair bleaching methods at all. (Ex. 2020, p. 14 ("[Berkemer] does not teach mixing maleic acid with a bleaching composition"); Ex. 1012, ¶148 (Berkemer discloses treating hair that "has been structurally damaged" by bleaching and other chemical treatments) and ¶154 (Berkemer is for "use after a bleaching process")).

153.   Berkemer does not mention bleach powder, developer, or hydrogen peroxide. Berkemer does not disclose how much acidic conditioner should be added to bleaching formulations made from mixtures of bleach powder and developer. Berkemer does not disclose that the described acidic conditioner or the disclosed application method provide any benefit in the higher pH environment of alkaline bleaching.

154.   Chemical hair treatments (perming, bleaching, and coloring) can leave hair fiber surfaces rough. (Ex. 1004, p. 2, lines 24–32, p. 3, lines 7–10). Alkali, which is used in such chemical treatments to raise pH and to swell hair fibers, must be removed or neutralized once the treatment has finished. (Ex. 1006, p. 3 (¶15); Ex. 1011, p. 17 ("If the conditioner is adjusted to an acidic pH, alkali residues are neutralized and the hair swelling is reversed."); Ex. 1012, ¶21 ("Bleaching is

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121021

PGR 2018–00025
Patent No. 9,668,954

typically carried out under alkaline conditions"); Ex. 2021, ¶15 (same)). If the alkali is not removed or neutralized, the hair fibers may remain swollen with cuticles (outer surface) lifted, which creates a rough hair surface that is prone to damage. (Ex. 1004, p. 2, lines 29–32 (bleaching causes "opening of the hair cuticles" which results in disappearance of "natural gloss" and "the hair becomes lusterless and dull"); Ex. 1006, p. 3 (¶13) (to prevent further hair damage and decrease its progression "it is necessary to neutralize and remove the alkali agents to prevent expansion of the hair")).

155.   Earlier acidic treatments (e.g., tannic acid, lactic acid, or citric acid) smoothed damaged hair fiber surfaces by neutralizing and removing residual alkali, which Berkemer calls an "astringent" effect. (Ex. 1004, p. 2, line 34–p. 3, line 5). The astringent effect was "particularly high" when the acids adhered to or remained on the hair surface. (Ex. 1004, p. 3, lines 3–5).

156.   Berkemer proposes a leave-on treatment method using a solution with acidic pH (1.9–4.0) to smooth previously damaged hair fiber surfaces. (Ex. 1004, p. 3, lines 7–15, p. 4, lines 8–12; Examples 1–3; Ex. 1012, ¶149 ("Berkemer's examples are leave-in products")). These post-treatments may include maleic acid or its substitution products and other ingredients such as acidic buffer substances (glycine) "to facilitate attachment of the unsaturated acids to the keratin substances." (Ex. 1004, p. 3, lines 12–17, p. 4, lines 4–21, p. 4, lines 34–37).

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121022

PGR 2018–00025
Patent No. 9,668,954

After the acidic treatment solution is applied, the hair is dried at 40 °C under a hair dryer "with the solution remaining in the hair." (Ex. 1004, p. 4, lines 37–39). The treatment solution is not rinsed off of the hair.

157.   Berkemer does not explain what specific "structural improvement" occurs when this method is used, and it could simply be the same smoothing effect already provided by earlier acidic neutralizing treatments. (Ex. 1004, p. 2, line 36– p. 3, line 5 (tannic acid, lactic acid, and citric acid provide "particularly high" surface-smoothing action when they remain on the hair); Ex. 1006, p. 7 (¶3) (mild acid treatment uniformly aligns the cuticle and provides "gloss and shine" and smooth feel); Ex. 1011, p. 17 (acidic conditioners neutralize alkali residues and reverse hair swelling); Ex. 2057, Nandagiri Tr. 138, line 9–Tr. 140, line 21 (admitting various acids achieve structural improvement of the hair surface, cuticle smoothing) and Tr. 147, line 18–Tr. 148, line 2 ("structural improvement" claimed by Berkemer could be the same surface-smoothing action that results from other dilute acid solutions)).

158.   Berkemer has no comparative data showing that any special benefit results from using maleic acid in his method instead of any other acid.

159.   A POSITA would have understood that Berkemer's acidic conditioner functions by neutralizing alkali (driving the pH down), which causes the cuticle to be smoothed. (Ex. 1004, p. 3, lines 7–10; p. 3, lines 35–37; Ex. 1011, p. 17 (acidic

78

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121023

PGR 2018–00025
Patent No. 9,668,954

conditioners neutralize alkali residues and reverse hair swelling)). A POSITA would have understood that this same effect would have been provided by many other acids but only in acidic environments. (See also Ex. 1004, p. 2, line 34–p. 3, line 5 (describing how tannic, lactic, and citric acids provide "particularly high" surface smoothing "when they remain adhering to the hair surface"); Ex. 2057, Nandagiri Tr. 147, line 18–Tr. 148, line 2)). A POSITA would have understood that acids can smooth previously swollen hair fiber surfaces by neutralizing sufficient alkali to drive the pH below 5. (Ex. 1006, p. 3 (¶16) ("hair converges at a pH of 4–5, when the pH is 2.7 or less hydrolysis of the hair begins")). To do so, the acid applied to the hair in Berkemer must be protonated so that it can donate an acidic proton to the alkali in a reaction known as neutralization.

160.   Berkemer stresses that the surface smoothing effect of dilute acid solutions is improved "when they remain adhering to the hair surface." (Ex. 1004, p. 3, lines 3–5). In his novel method, Berkemer teaches to include a surfactant to improve hair wetting (Ex. 1004, p. 4, lines 4–6), to include an acidic buffer substance to maintain the pH at or below the isoelectric point of hair (Ex. 1004, p. 4, lines 8–12), to include an emulsifier to thicken the solution and allow it to remain in the hair (Ex. 1004, p. 4, lines 14–17), and to include "sugar substances," which he says improve mechanical properties of the hair. (Ex. 1004, p. 4, lines 19–21).

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121024

PGR 2018–00025
Patent No. 9,668,954

161.   Each of Berkemer's examples includes these components and further employs the unique step of actually drying the acidic conditioner treatment into the hair. (Ex. 1004, p. 4, lines 37–39). Because dilute acid rinses were known, even in 1964 (Ex. 1004, p. 2, line 34–p. 3, line 5), a POSITA would have understood that Berkemer's supposed contribution was the specific method employed to allow the treatment to remain adhering in the hair.

162.   Importantly, a POSITA would not have expected Berkemer's acidic hair treatment method to provide a benefit in the context of hair bleaching with developer and bleach powder. Hair bleaching requires an alkaline (high) pH. (Ex. 2005, p. 6 (bleaching requires "a final pH around 10")). If acid were added into the bleaching mixture in a sufficient quantity to maintain the pH below 4.0 then that would prevent bleaching. (Ex. 2005, p. 6 ("bleaching markedly decreases with decreasing pH")). If the quantity of acid were insufficient to maintain the pH below 4.0 then the astringent action that causes the surface of the hair fibers to become smooth would not occur. Further, hair bleaching formulations made from bleach powder and developer are extremely damaging to the hair in part because the chemistry that they employ requires alkali (pH 9–11), and cannot remain adhering in the hair and must be rinsed from the hair after 1–2 hours at most. (Ex. 1011, p. 17 ("left to work for up to 60 min"); Ex. 1012, ¶21; Ex. 2005, p. 6).

80

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121025

163.   Berkemer expresses a theory involving a mechanism in which his conditioner is actually forming bonds with amino acid and hydroxyl groups in hair. (Ex. 1004, p. 3, lines 23–28). A POSITA would have been highly skeptical of this theory, because Berkemer's examples show that would not happen.

164.   Each example has a treatment solution formulated with chemical(s) having amine groups (glycocoll or glycine) and hydroxyl groups (water, glycerol, sugars). (Ex. 1004, pp. 3, 34–37). If the mechanism proposed in Berkemer were actually operative; then the maleic acid/substitution products would have reacted with the amino acid and hydroxyl groups in the treatment solution long before it was applied to the hair. This would render the maleic acid entirely unavailable to react with hair when the treatment solution is later applied to the hair. Accordingly, a POSITA would have understood that Berkemer's proposed mechanism of bonding to amino acids and hydroxyl groups in hair, if it were possible, would have occurred in the liquid treatment solution before it was applied to the hair, and cannot be contributing to the proposed benefits.

165.   Berkemer also expresses a theory that leaving unsaturated compounds, such as maleic acid, in the hair counteracts harmful post-oxidation by reacting with peroxides to form oxyacids or peroxyacids after bleaching has finished and provides an astringent effect. (Ex. 1004, p. 3, lines 30–37). A POSITA would have known that converting peroxides to oxyacids or peroxyacids

81

Highly Confidential

OLA_0000121026

PGR 2018–00025
Patent No. 9,668,954

in this manner would decrease the amount of peroxide that is available to bleach the hair and thus would hamper or stop hair bleaching. (Ex. 1006, p. 3 (¶7) (bleaching "conducted by the synergistic effects of hydrogen peroxide and alkaline agent"); Ex. 1011, pp. 16, 17). A POSITA also would have wanted to avoid using an agent to consume peroxide in an alkaline bleaching mixture. A POSITA would have known to apply such an agent after the bleaching process had been completed.

166.   Berkemer lacks information about appropriate maleic acid concentrations for use in a hair bleaching mixture. While the Berkemer acidic, leave-on treatment solution is said to contain 0.3–4% maleic acid or substitution products, (Ex. 1004, p. 3, lines 15–17, p. 6, lines 10–12), those disclosures do not provide information on the concentration of maleic acid that would be used in a mixture with a bleaching formulation made from developer and bleach powder.

167.   The Patent Examiner confirmed that Berkemer is not pertinent to the '954 patent claims (which are methods for bleaching hair). During prosecution of the application that issued as the related '419 patent, the Examiner said: "since [Berkemer] does not teach mixing maleic acid with a bleaching composition, it does not appear to disclose the instantly claimed invention." (Ex. 2020, p. 14). "[Berkemer] was not directed to a method of bleaching hair; thus it would not render the instant claims obvious." (Ex. 2020, p. 14).

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121027

PGR 2018–00025
Patent No. 9,668,954

168.  The Examiner also rejected the very same arguments, confirming that Berkemer does not express a preference for maleic acid:

> [I]t is not taught [in Berkemer] that maleic acid is better than lactic or citric acid. The reference states that the surface smoothing effect of those astringent substances is especially great.

(Ex. 2020, p. 14).

D.  KR '564 (Ex. 1006)

169.  KR '564, applied for in 2004, describes an acidic conditioner made of a dilute acid solution with pH 4–5 that neutralizes and removes alkali residues left over from prior chemical hair treatments and which it intends to "maintain" the isoelectric point of hair. (Ex. 1006, p. 2 (¶2), p. 3 (¶¶16, 19), p. 4 (¶9)). The isoelectric point of hair is less than about 4. (Ex. 2022, pp. 368, 369, 388). Nothing in KR '564 teaches mixing the acidic hair treatment rinse with alkaline bleaching formulations formed from bleach powder and developer.

170.  The acidic treatment of KR '564 is said to cause the hair to "converge[]" or de-swell. (Ex. 1006, p. 3 (¶16)). Acidic treatment after-the-fact (such as after permanent wave or hair dye chemical services) helps "return the hair to its original condition," and avoids problems caused when alkali remains in the hair (e.g., severe swelling, softening, and damage). (Ex. 1006, p. 3 (¶19));

83

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121028

Ex. 1011, p. 17 ("If the conditioner is adjusted to an acidic pH, alkali residues are neutralized and the hair swelling is reversed."); Ex. 2056, p. 157 (acid rinse returns "hair pH" back to a normal level, and in already bleach hair prevents elimination of amino acids and oligoproteins and restores initial fatigue resistance); Ex. 2062, p. 445).

171.   KR '564 describes experiments where acid is diluted with water to a pH 4–5 and the solutions were sprayed onto already damaged hair. A POSITA would have known that minute amounts of lactic acid (on the order of 0.002 wt.%) can achieve a pH of 4, given its molecular weight of 90.078 g/mole and $pK_{a1}$ value of 3.86 (corresponding with an acid dissociation constant value of $1.38 \times 10^{-4}$). (Ex. 2065, pp. 6, 8). This is well below the lower concentration range in claim 1 of the '954 patent.

172.   None of the examples of KR '564 teaches to mix mild acids (including maleic acid specifically) with an alkaline bleaching formulation made from developer and bleach powder or even to use the mild acid treatment during alkaline hair bleaching.

173.   According to KR '564, lactic acid is preferred because it provides at least four benefits over other acids. First, "lactic acid has the best stability." (Ex. 1006, p. 7 (¶5)). Second, the pH of a lactic acid solution "can be reduced by even a small amount more than with other acid types." (Ex. 1006, p. 7 (¶5)). Third,

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121029

the pH of the lactic acid solution "can be preserved for a long time (2–3 years)." (Ex. 1006, p. 7 (¶5)). Fourth, the lactic acid treatment of KR '564 "exhibits particularly excellent effects." (Ex. 1006, p. 7 (¶5)).

174.   KR '564 expresses no preference for maleic acid in any context and has no data showing any benefit resulting from the use of maleic acid.

175.   The teaching by KR '564 that a pH below 5 is necessary to de-swell or converge the hair, (Ex. 1006, p. 3 (¶16)), would have led a POSITA to conclude that its disclosures would not be useful with alkaline hair bleaching methods using bleach powder and developer. A POSITA would have understood that the goals of KR '564 were two-fold: (a) neutralizing alkali and (b) smoothing the cuticle or de-swelling the hair. To do so, the acid applied to the hair must be protonated so that it can donate an acidic proton to the alkali and neutralize it. However, a POSITA would have known that these two goals cannot occur simultaneously with bleaching. Bleaching requires the presence of alkali both to achieve an alkaline pH and to swell of the hair fibers. (See, e.g., Ex. 1010, Col. 1, lines 46–49 (insufficient bleaching power below pH 8.5); Ex. 1039, Borish Tr. 50, lines 14–18 ("To bleach hair generally requires a pH of 9 to 11, usually practiced 10 to 11."); Ex. 2005, p. 6 (pH around 10); Ex. 2007, p. 2 (pH "generally from 9 to 11"); Ex. 2008, ¶42 ("pH of greater acidity than 9.0 will tend to give a poor bleaching

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121030

PGR 2018−00025
Patent No. 9,668,954

effect.")). A POSITA also would have known that in the pH range from 9−11, maleic acid would exist in its fully deprotonated form. See ¶72 (above).

176.   KR '564 contains the following sentence on page 4:

"In addition to being used alone as a treatment agent, the
hair treatment agent according to the present invention
may be preliminarily added to a permanent wave agent,
dyeing agent, and the like as an additive for various hair
treatment solvents."

177.   This sentence does not mention bleaching at all. A POSITA would have understood that omission was intentional because KR '564 was describing the use of the mild acid treatment in particular chemical processes that do not require alkaline pH.

178.   Permanent waving involves two distinct chemical processes: (a) a reduction step where disulfide bonds in hair are intentionally broken, and (b) a neutralization step where the previously reduced disulfide bonds are reformed to give the hair a desired shape. (Ex. 2006, p. 2). A POSITA would have known that a mild acid treatment agent (such as suggested by KR '564) could be included in step 2 (the neutralization step) without adversely impacting its chemistry. (Ex. 1011, p. 26 (hydrogen peroxide neutralizers are at pH 2.0−4.5; Ex. 2061,

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121031

PGR 2018–00025
Patent No. 9,668,954

Wickett Tr. 214, line 9–Tr. 216, line 7 ("I would – would put it with the neutralizer" which is at an acidic pH)).

179.   Similarly, a POSITA would have understood that a mild acid treatment agent (such as suggested by KR '564) could have been successfully used with certain hair dyeing processes, which do not require highly alkaline pH or oxidation reactions. For example, temporary hair coloring involves large molecules that are temporarily deposited on the outer surface of hair fibers. (Ex. 2005, p. 18; Ex. 2006, p. 4). Because penetration of the dye inside of the hair fiber is not required, temporary hair coloring is performed without requirements for alkali or oxidants. (Ex. 2005, p. 18 ("Coloration [by temporary colorants] occurs by deposition of disperse or acid dyes on the surface of the hair"); Ex. 2060, p. 290 (same)).

180.   Likewise, demi-permanent hair coloring can be done at an acidic pH. (Ex. 2058, p. 3 (demi-permanent hair color "can be formulated without ammonia for no lift" and "processes at an acidic pH without lift"); see also Ex. 2059, pp. 24–25 (demi-permanent hair color is referred to as "no-lift" and uses "same [oxidative] dye precursors and a some-what lower hydrogen peroxide concentration (1–2% in the mixed product)")).

181.   Dr. Wickett contends (Ex. 1012, ¶155) that a POSITA would have understood the phrase "and the like" in the paragraph quoted above in my

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121032

paragraph 176 "to include bleaching." I disagree. Dr. Wickett's opinion is based solely on: (a) the disclosure in other parts of KR '564 of various chemical treatments including bleaching, (b) the supposed awareness of a POSITA that "the mechanism of damage for bleaching and oxidative dyeing" is "the same." (Ex. 1012, ¶155; see also Ex. 2061, Wickett Tr. 214, line 9–Tr. 215, line 3).

182.   First, I note that the paragraph in question from KR '564 fails to mention bleaching at all. KR '564 mentions bleaching in some lists of chemical treatments where it is intended to be included and omits bleaching from other lists where it is intended to be excluded.

183.   For example, paragraphs 12, 18, and 19 of page 3 of KR '564 describe a difficulty caused by use of monoethanolamine (MEA) as an alkalizing agent in permanent wave agents and hair dyes. None of those paragraphs mentions bleaching. A POSITA would have known that hair bleaching generally involves alkalizing agents other than MEA, such as metasilicates and ammonia. (Ex. 2005, p. 6 ("Alkaline pH is controlled by metasilicates mixed in with the persulfates, and ammonia is supplied by the ammonium salts"); Ex. 2010, p. 3 (bleach powder ingredients include ammonium persulfate and sodium metasilicate); Ex. 2011, pp. 3–4 (same); Ex. 1009, ¶¶17, 110, 123; Ex. 1011, p. 17 ("The ammonium salt is most effective; when combined with an alkalinizing component such as sodium

Highly Confidential

OLA_0000121033

carbonate or silicate, ammonia is formed"); Ex. 2033, p. 12 ("high pH" of bleach powder "is obtained using either metasilicates or phosphates or carbonates")).

184.   A POSITA also would have known that MEA is used in hair dyeing and permanent waving as the alkalizing agent. (Ex. 1001, Col. 16, lines 60–62 (describing alkalizing agents in oxidative hair coloring as being "usually ammonia and/or an ammonia substitute such as monoethanolamine"); Ex. 1010, Col. 3, lines 8–24 (describing use of monoethanolamine in hair dyeing as an alkali agent) and Examples 1–2 (same); Ex. 1011, p. 18 ("The alkali used to accelerate dyeing and swelling of the hair is ammonia or, less often, monoethanolamine."). and p. 24 ("Ammonia and monoethanolamine are most effective in promoting waving action."); Ex. 1029, p. 4, line 37–p. 5, line 3 (describing ammonia and monoethanolamine as alkaline substances in hair dye compositions) and Examples 1–4 (same); Ex. 1041, Col. 1, line 63–Col. 2, line 7 (describing use of ammonia and monoethanolamine during oxidative hair dyeing)).

185.   Thus, paragraphs 12, 18, and 19 on page 3 of KR '564 omit bleaching from the listed chemical processes because they relate to aspects that are relevant to permanent waving agents and hair dyes, and are not relevant to hair bleaching.

186.   Second, Dr. Wickett is wrong to claim KR '564 teaches that the mechanism of damage from bleaching and other chemical treatments is the same. To the contrary, KR '564 teaches that if oxidative bleaching is "repeated several

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121034

times" then this "result[s] in twisting of the cuticles that serves as a cause of hair damage." (Ex. 1006, p. 3 (¶8)). This form of damage is never described by KR '564 as occurring during permanent waving or hair dyeing.

187.   KR '564 discloses that "with cuticles" in permanent waving "a full bond is not possible and cuticles that fall out are produced, thereby damaging the hair." (Ex. 1006, p. 3 (¶6)). The reference to "full bond" makes sense in the context of permanent waving where reducing agents are used to intentionally break bonds in the hair, which are then separately oxidized in a second step to form new bonds. KR '564 is describing that the cuticle can be damaged in permanent waving because the reducing agent breaks disulfide bonds in hair and those bonds may not be adequately restored in the second step, leaving the cuticle susceptible to damage. This form of damage is never described by KR '564 as occurring during hair bleaching, and again a POSITA would know that reducing agents are not used in hair bleaching methods with bleach powder and developer.

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121035

PGR 2018–00025
Patent No. 9,668,954

188.   KR '564 also contrasts bleaching with dyeing:

| Oxidative Bleaching | Hair Dyeing |
|---|---|
| "oxidative bleaching action of the melanin pigment is conducted by hydrogen peroxide *separately from* the alkaline agent" | where "melanin bleaching and dye is conducted by *synergistic effects of* hydrogen peroxide and an alkaline agent" which makes hair "porous and stiff" |

(Ex. 1006, p. 3, (¶¶7–8). In addition to contrasting the role of alkali in these

chemical processes, KR '564 does not describe that hair is made porous or stiff

when it is bleached. Thus, KR '564 expressly distinguishes mechanism of

bleaching from other chemical treatments such as permanent waving and hair

dyeing.

189.   Contrary to what Dr. Wickett has said, a POSITA would have

recognized there are differences in the damage that results from oxidative dyeing

and the damage that results from alkaline bleaching formulations. Dye deposition

on the hair surface is what contributes to a poor feel and dull appearance of dyed

hair. (Ex. 2005, p. 9; Ex. 2004, p. 402, lines 12–22). Because of an absence of

dyes in bleaching formulations, that form of damage cannot occur during

bleaching. A POSITA also would have known that cystine loss is far greater in

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121036

PGR 2018–00025
Patent No. 9,668,954

bleaching than in dyeing. (Ex. 2055, p. 495 ("much less oxidation of cystine is reported to take place during oxidative dyeing")). This causes bleached hair to react very differently from dyed hair. (See, e.g., Ex. 2055, p. 496 (Table 10 reports bleached hair exhibits significantly higher dimensional contraction when exposed to 4% sodium sulfite as compared with oxidatively dyed hair).

190.    Specifically in the context of alkaline bleaching using developer and bleach powder, a POSITA would have understood that a significantly different chemistry is involved than with oxidative hair dyeing. For example, the persulfates in bleach powder are able to form sulfate free radicals which play a part in hair bleaching and also in bleach damage, but owing to the absence of persulfates in oxidative hair dyeing, damage caused by sulfate radicals cannot occur in oxidative hair dyeing.

191.    Third, neutralizing alkali with mild acid (as KR '564 intends) during bleaching with bleach powder and developer is counter-productive to actually lightening the hair's color. (Ex. 1010, Col. 1, lines 46–49 (insufficient bleaching power below pH 8.5); Ex. 1039, Borish Tr. 50, lines 14–18 ("To bleach hair generally requires a pH of 9–11, usually practiced 10–11."); Ex. 2005, p. 6 (pH around 10); Ex. 2007, p. 2 (pH "generally from 9–11"); Ex. 2008, ¶42 ("pH of greater acidity than 9.0 will tend to give a poor bleaching effect.")). A POSITA would have understood that including a mild acid treatment in the bleaching

92

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121037

mixture applied to the hair would have one of two results (neither of which would be desirable). Either (a) the hair bleaching process would be harmed by neutralizing alkali and acidifying the pH below 8.5–9 or (b) the mild acid treatment solution itself would be fully neutralized by the alkali and then the hair would remain in an expanded condition, contrary to the intent of KR '564. (Ex. 1006, p. 3 (¶13) ("to prevent hair damage or decrease the progression thereof, it is necessary to neutralize and remove the alkali agent to prevent expansion of the hair")). Importantly, a POSITA would have understood that it is possible to include a mild acid solution in a permanent wave neutralizer and in some hair dyeing compositions where alkalinity is not required. See ¶¶178–180 (above).

      E.     STONE (Ex. 1008)

    192.   Stone describes a hair care composition with quarternized polysiloxanes, surfactants, botanical compounds, amino acids, and vitamins. (Ex. 1008, Abstract). The compositions can be used in "shampoos, conditioners, styling gels, aerosol styling sprays, non-aerosol styling sprays, aerosol styling mousses, styling gels, styling pomades, leave-in conditioning sprays, and thermal protection sprays." (Ex. 1008, ¶14).

    193.   Stone's hair care compositions have a final pH between about 4.0 and about 8.5. (Ex. 1008, ¶31). A "wide variety of acids" can be used to lower the pH if it is too high, and "[c]ommon acids" include "citric acid, acetic acid, benzoic

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121038

PGR 2018–00025
Patent No. 9,668,954

acid, glycolic acid, lactic acid, malic acid, and sulfuric acid." (Ex. 1008, ¶31).
Stone never mentions maleic acid.

194.   Stone's hair care compositions are post-treatments, and are never discussed as additives for use during a bleaching process. Stone does not mention bleaching formulations, bleach powder, or developer. In fact, the only mention of hair bleaching is in connection with Example 42, where shampoos and conditioners are tested on previously bleached hair. (Ex. 1008, ¶99).

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121039

PGR 2018–00025
Patent No. 9,668,954

# XI.   NONOBVIOUSNESS OF '954 PATENT CLAIMS

195.   I have been informed and understand from reviewing the Institution Decision (Paper 12) that Petitioner has challenged the patentability of claims 1–16 and 18–30 of the '954 patent based on four combinations of references: (a) the combination of Pratt and Tanabe [claims 1–16, 18, 19, 21, and 23–30], (b) the combination of Pratt, Tanabe, and Stone [claims 20 and 22], (c) the combination of Pratt, Tanabe, Berkemer, and KR '564 [claims 1–16, 18, 19, 21, and 23–30], and (d) the combination of Pratt, Tanabe, Berkemer, KR '564, and Stone [claims 20 and 22]. (Paper 12, pp. 2, 37). In my opinion, as discussed in detail below, Petitioner has failed to establish that independent claim 1 would have been unpatentable as obvious because a POSITA would not make these combinations, and even if a POSITA did so, none of these combinations renders '954 patent claim 1 obvious. Further, because I have determined that claim 1 of the '954 patent would not have been obvious to a POSITA, I am informed and understand that no dependent claim of the '954 patent can be found to have been obvious.

> A.   GROUND #1: THE HAIR BLEACHING METHOD OF '954 PATENT CLAIM 1 WOULD NOT HAVE BEEN OBVIOUS TO A POSITA AS OF MAY 16, 2014 IN LIGHT OF PRATT IN VIEW OF TANABE

196.   The first instituted ground asserts that claim 1 of the '954 patent would have been obvious in light of Pratt in combination with Tanabe. I disagree that a POSITA would find all of the claim elements in the cited references or that a

95

Highly Confidential

OLA_0000121040

POSITA would have combined the disclosures in these references to achieve the hair bleaching method described in the '954 patent claims. First, Pratt fails to disclose use of maleic acid in a method for bleaching hair, or to use the claimed maleic acid concentrations in a method for bleaching hair.

197.   Second, Tanabe suffers from the same deficiencies; namely it fails to disclose mixing maleic acid with a bleaching formulation or to describe the claimed maleic acid concentrations in a bleaching mixture. To the contrary, Tanabe discloses after-the-fact acid treatment, which a POSITA would have believed are not beneficial in alkaline bleaching formulations.

198.   Third, Petitioner's motivation to combine Pratt with Tanabe does not make sense. A POSITA would not have looked to Tanabe to provide improved optical/mechanical properties of hair either (a) because Pratt already claimed to provide these benefits, or (b) because the benefits proposed by Tanabe would not be expected to result in an alkaline bleaching environment.

199.   Fourth, a POSITA would not have been motivated to select maleic acid from Tanabe's disclosure for use in Pratt's alkaline bleaching method. Tanabe teaches that his conditioner requires an acidic pH of 6 or less to provide benefits, while peroxide/persulfate bleaching is performed at pH 9–11. A POSITA would have lacked the expectation that maleic acid would provide any benefit when mixed with an alkaline bleaching formulation because Tanabe demonstrates that

96

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121041

PGR 2018–00025
Patent No. 9,668,954

his benefits are diminished at pH 5.0 or 5.5, and there is no evidence shown that any benefit would occur at pH 9–11.

200.   Accordingly, it is my opinion that claim 1 of the '954 patent would not have been obvious to a POSITA over Pratt, and Tanabe.

> 1. Pratt Fails to Disclose Mixing Maleic Acid into a Bleaching Formulation or the Concentrations of Maleic Acid that Should be Used for that Purpose

201.   In my opinion, a POSITA would have recognized that Pratt's disclosure does not include a teaching to mix maleic acid into a bleaching formulation and does not include a teaching of the concentrations of maleic acid that should be used for that purpose.

202.   Pratt's alkaline hair bleaching method uses a bleaching composition made by mixing together three compositions (referred to as compositions (a), (b), and (c)) prior to application to the hair. (Ex. 1009, Abstract, ¶¶6, 8, 101, and 104). "Pratt does not disclose an order for mixing compositions (a), (b), and (c)." (Ex. 1012, ¶53). The only mention of maleic acid in Pratt is in connection with composition (c) within a long list of optional pH adjusters for composition (c). (Ex. 1009, ¶94).

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121042

203.   The pH of the composition (c) "varies between 2 and 12, preferably 2.5–10, more preferably 3–8, most preferably 3–6 and in particular 3–5." (Ex. 1009, ¶94).

204.   Pratt's long list of pH adjusters includes six different acids, monoethanolamine, triethanolamine, ammonia, the class of ammonia salts with acids (e.g., ammonium chloride, ammonium sulphate, ammonium carbonate, ammonium bicarbonate, and ammonium nitrate), the class of alkaline solutions (e.g., sodium hydroxide, and potassium hydroxide), and the class of salts made from alkaline solutions and known acids. (Ex. 1009, ¶94). A POSITA would have understood this is a virtually infinite list.

205.   A POSITA would generally have wanted to avoid including maleic acid in Pratt's final bleaching mixture. First, the stability of maleic acid must always be considered because of its highly reactive double bond. If a POSITA were at all concerned about shelf-life, they would have wanted to avoid using maleic acid, which explains why it has seldom been used in cosmetics. (Ex. 2035, p. 127). Second, it was well-known that maleic acid is a skin sensitizer. (Ex. 2036, pp. 1, 3, 7, 9; Ex. 2035, p. 129). Third, the safety data sheet for maleic acid warns that maleic acid is incompatible with alkali and oxidants that are present in Pratt's bleaching composition. (Ex. 2036, pp. 5, 6). In my opinion, a POSITA would have selected the more commonly used citric acid as the pH adjuster, if needed, as it is

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121043

PGR 2018–00025
Patent No. 9,668,954

listed first by Pratt, and is used in almost all of Pratt's examples (Examples 1, 2, and 4–13).

206.   Even if a POSITA were motivated to select maleic acid as the pH adjuster for Pratt's composition (c), Pratt never describes the concentration of maleic acid, or any acid or other pH adjuster. There simply is no discussion anywhere in Pratt of the amounts of acid to be used. This makes sense because the pH of Pratt's composition (c) is within the very wide range of 2–12. (Ex. 1009, ¶94). If the pH of Pratt's composition (c) is less than Pratt desires, it may be beneficial to avoid acidifiers altogether and instead it may be helpful to add alkalizing agents to increase the pH.

207.   Pratt generally discloses potential mixing ratios for his compositions (a), (b), and (c). (Ex. 1009, ¶95). This does not inform a POSITA of the amounts of maleic acid to be used in the final bleaching composition. There simply is no teaching in Pratt of the amount of maleic acid in an alkaline bleaching composition.

208.   The Board correctly commented in the Institution Decision that none of Pratt's examples use maleic acid or provide specific concentrations of maleic acid. (Paper 12, p. 19). Based on my review of Pratt's examples, Pratt contemplates very small amounts of acid in his final bleaching composition, well below 0.1 wt%.

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121044

PGR 2018–00025
Patent No. 9,668,954

209.   Pratt's Example 1 is an aqueous solution of cetrimonium chloride that only includes enough citric acid to achieve pH 4. A POSITA would have understood that minute amounts of citric acid would be necessary to achieve this result.

210.   Using the equilibrium equation (see ¶243 (below)), it is possible to calculate the amount of acid needed to be added to water to give an aqueous solution with a pH 4. Based on my calculation, the concentration of citric acid in the third composition needed to achieve that pH is about 0.002 wt.%, given its molecular weight of 192.12 g/mole and $pK_{a1}$ value of 3.13 (corresponding with an acid dissociation constant value of $7.41 \times 10^{-4}$). (Ex. 2063, p. 174). When Pratt's compositions (a), (b), and (c) are combined using Pratt's specified mixing ratios (i.e., $4:8:0.1-4:8:1$), the concentration of the acid in the final bleaching concentration is in the range of 0.00002 wt.%–0.0002 wt.%.

211.   Therefore, it is my opinion that Pratt does not disclose mixing maleic acid into a bleaching formulation previously formed from developer and bleach powder, or the particular concentrations of maleic acid that should be used for that purpose.

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121045

PGR 2018–00025
Patent No. 9,668,954

2.  Tanabe Also Fails to Disclose Mixing Maleic Acid into a
Bleaching Formulation or the Concentrations of Maleic Acid
that Should be Used for that Purpose

212.   In my opinion, a POSITA would have recognized that Tanabe's

disclosure also does not include a teaching to mix maleic acid into a bleaching

formulation previously made from developer and bleach powder, and does not

include a teaching of the concentrations of maleic acid that should be used for that

purpose.

213.   Tanabe describes acidic hair cosmetic compositions that include at

least three ingredients: (A) glycine, alanine, or combinations thereof, (B) an acid,

and (C) a cationic surfactant. (Ex. 1007, Abstract and Col. 1, lines 42–45, 52–53).

Tanabe's acidic compositions have a pH range of 2–6 (Ex. 1007, Col. 3, lines 29–

31), which is well below the pH range of alkaline bleaching (9–11). (Ex. 2005,

p. 6 (pH around 10); Ex. 2007, p. 2 (pH "generally from 9–11"); Ex. 2008, ¶42

("pH of greater acidity than 9.0 will tend to give a poor bleaching effect."))

214.   There is no disclosure in Tanabe to mix these acidic cosmetic

compositions into an alkaline bleaching mixture. There is no disclosure in Tanabe

that his acidic cosmetic compositions provide any benefit at pH greater than 6. To

the contrary, Tanabe teaches that these acidic compositions are applied to already

perm and bleach-damaged hair at a pH of 6 or lower. (Ex. 1007, Col. 3, lines 29–

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121046

31 and lines 38–43; Paper 12, p. 16, n.8 ("Tanabe does not disclose that its conditioners are added to a bleaching formulation")).

215.   Tanabe also fails to provide any disclosure of the amount of maleic acid that should be used in a final bleaching mixture applied to hair. Tanabe discloses that the acid component of his acidic cosmetic composition "may be added preferably in a proportion of from 0.01 to 5 wt. %." (Ex. 1007, Col. 2, lines 7–12). This disclosure relates only to the acid content in the after-the-fact conditioner disclosed by Tanabe, and does not inform a POSITA of the concentration of maleic acid (or any acid) that should be used in an alkaline bleaching composition made up of developer and bleach powder.

216.   Tanabe says the amount of component (B), acid, is "based on the whole composition from the standpoint of imparting transparency to hair." (Ex. 1007, Col. 2, lines 8–12). Dr. Wickett was unclear what Tanabe meant by "transparency": "transparency to hair in this context doesn't really mean anything." (Ex. 2061, Wickett Tr. 246, line 22–Tr. 247, line 14).

217.   A POSITA would have understood that Tanabe only achieves this supposed "transparency" benefit within a pH range "specifically from 2 to 6, with pH 2.5 to 3.5 being particularly preferred," and never describes a pH greater than 6. (Ex. 1007, Col. 3, lines 26–30). There is no teaching in Tanabe that this transparency benefit would occur at pH 9–11.

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121047

218.    Tanabe exclusively describes his component (B) as being an acid at acidic pH, and never says salts of his various acids are usable in his cosmetic composition. (Ex. 1007, Abstract; Col. 1, lines 34–39 ("specific acid compound"); Col. 1, lines 40–44 (listing acid usable as component (B)); Col. 1, line 58–Col. 2, line 7 (same)). The examples only use acids at acidic pH. (Ex. 1007, Table 1 (malic acid, maleic acid, succinic acid at pH 3.3); Col. 5, line 63 (Example 3: malic acid at pH 3.5); Col. 6, line 32 (Example 4: malic acid at pH 3.5); Col. 5, line 52 (Example 5: malic acid at pH 3.0)). From this, a POSITA would have understood that Tanabe relies on acid to establish an acidic pH to provide any supposed benefits. (Ex. 1007, Col. 3, lines 29–31). Again, donation of the acidic proton is what produces the smooth, lustrous, and shiny fiber surfaces sought by Tanabe, and the fully deprotonated form of maleic acid as would exist at pH 8–12 cannot provide this benefit.

219.    There is simply no guidance or information provided by Tanabe on how much component (B) should be used in an alkaline bleaching environment to achieve any benefit.

220.    Thus, it is my opinion that Tanabe does not disclose mixing maleic acid into a bleaching formulation or the particular concentrations of maleic acid that should be used for that purpose.

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121048

### 3. A POSITA Would Not Have Looked to Tanabe to Provide Improved Optical or Mechanical Properties of Hair in Pratt's Alkaline Bleaching Method

221.    Dr. Wickett says that there would be motivation to use Tanabe's composition (specifically one including maleic acid as component (B)) as Pratt's composition (c). (Ex. 1012, ¶45). Dr. Wickett says "Tanabe's composition is within the scope of Pratt's composition (c)," and "both Pratt and Tanabe are directed to similar goals of reducing damage and improving optical and mechanical properties of hair." (Ex. 1012, ¶45). From this, Dr. Wickett concludes that a POSITA would have expected both that Tanabe's compositions "could have been used as Pratt's composition (c)" and that when this modification was made "the expected result" would be "reducing damage to and/or improving the optical or mechanical properties of the hair as taught by Pratt and Tanabe." (Ex. 1012, ¶47). I disagree with Dr. Wickett.

222.    Pratt already has a formulation that provides improved optical or mechanical properties. Even if Tanabe did disclose some new benefit that is not already present in Pratt—and it does not—there is absolutely no suggestion in Tanabe or expectation that the benefits of Tanabe's acidic conditioner would result if that acidic conditioner were included into Pratt's alkaline bleaching method. Thus, a POSITA simply would not have been motivated to modify Pratt to include

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121049

PGR 2018–00025
Patent No. 9,668,954

Tanabe's conditioner with maleic acid in order to provide enhanced optical or mechanical properties.

223.    A POSITA would have understood that using Tanabe's composition in place of Pratt's composition (c) offers no additional benefit or improvement over the benefits already claimed by Pratt. First, Pratt already provides many if not all of the optical or mechanical property benefits claimed by Tanabe (Ex. 1007, Abstract; Col. 1, lines 5–7 and lines 29–31; Col. 6, lines 62–65). Second, a POSITA would have appreciated that Tanabe's composition has benefit when his acid is at an acidic pH, but not in an alkaline environment. Therefore, a POSITA would not have been motivated to include Tanabe's composition in an alkaline bleaching environment, which involves a significantly higher pH. Petitioner has not provided evidence that Tanabe's benefits would happen in this very different environment.

224.    A POSITA would have understood that Tanabe's optical or mechanical property benefits include luster, softness, body, color deepness, transparency, and manageability. (Ex. 1007, Col. 1, lines 11–14 and lines 34–39; Ex. 1007, Col. 6, lines 65–67). Tanabe's optical properties relate to the external appearance of hair, i.e., its level of luster, deepness of color, shine, and "high transparency." (Ex. 1007, Col. 4, lines 3–9). Tanabe's mechanical properties relates to the softness, body of the hair and touch, i.e., "[s]oft and silky touch with

105

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential                                                                    OLA_0000121050

adequate resiliency, and good body," (Ex. 1007, Col. 4, lines 17–23 and lines 45–49). In addition, Tanabe explains manageability refers to hair that is "[w]ell managed without hair out of place." (Ex. 1007, Col. 4, lines 31–37).).

225.   However, hair treated with Pratt's bleaching method has improved combability, better shine or luster, softer feel, and had better elasticity when his three-part bleaching composition was used. (Ex. 1009, ¶¶115, 122, 127, 128, 138; Ex. 1011, p. 29 (shine measurements correlate well with consumer assessment of luster); Ex. 1017, p. 727 (equating "luster" and "shine"); see also Ex. 1004, p. 2, lines 24–32 (reporting that "hair becomes lusterless and dull" when "the natural gloss disappears")). A POSITA would have understood that Pratt's improved combability refers to the hair being easier to manage. (Ex. 1011, p. 11 (improved combing or brush qualities "make hair easier to manage"); Ex. 2006, p. 3 ("Conditioner give hair manageability by decreasing static electricity and by reducing friction among hair shafts, which can lead to tangling.")). Cationic compositions, such as employed by Pratt, were known to impart "body, texture, and firmness" to the hair. (Ex. 2056, p. 166; Ex. 2060, p. 300 ("quaternary salts" confer properties such "as lubricity, shine and body.")).

226.   Tanabe says using the proper amounts of component (A), glycine and/or alanine, "impart[s] color deepness to hair." (Ex. 1007, Col. 1, lines 52–57). Dr. Wickett admitted at deposition that he did not "actually know what [Tanabe]

106

Highly Confidential

OLA_0000121051

means" by color deepness and "there's no way to know whether it would occur at high pH or not." (Ex. 2061, Wickett Tr. 259, line 2–Tr. 260, line 13).

227.   Given that Pratt's goal is to remove color from hair (to bleach hair), a POSITA would not have been focused on color deepness in that context. In addition, a POSITA would have understood from Tanabe that the benefit of color deepness requires an acidic pH. Tanabe's Table 1 shows that the hair external appearance (which would include its color deepness) is helped when glycine or alanine are included (all rankings "A"). (Ex. 1007, Table 1). In each of these Invention Products, the glycine or alanine buffers the pH to 3.3. (Ex 1007, Table 1; see also Ex. 1004, p. 4, lines 8–12 ("glycocoll" or glycine added to conditioner as a "buffer substance[]" to maintain acidic pH)). However, when Tanabe omits glycine or alanine and allows the pH to increase to 5.0 or 5.5, the hair external appearance (which again would include its color deepness) is diminished and achieves rankings of "B" and "C." (Ex. 1007, Table 1).

228.   Finally, Tanabe suggests the amount of acid in his conditioner is linked to a benefit that Tanabe describes as "imparting transparency to hair." (Ex. 1007, Col. 2, lines 7–12). Dr. Wickett was unclear what Tanabe meant by "transparency": "transparency to hair in this context doesn't really mean anything." (Ex. 2061, Wickett Tr. 246, line 22–Tr. 247, line 14). Later, he would speculate that transparency in Tanabe "probably means" a "mirror-like reflection" of light

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121052

PGR 2018–00025
Patent No. 9,668,954

from the hair, which gives the hair "better shine." (Ex. 2061, Wickett Tr. 247, line 15–Tr. 250, line 1). Of course, a POSITA would have been well-acquainted with the use of dilute acid rinses at acidic pH well below pH 9–11 to smooth the cuticle and enhance the shininess of hair. (Ex. 1004, p. 2, line 34–p. 3, line 5; Ex. 1006, p. 3 (¶19) ("use acid to return the hair to its original condition"); Ex. 1011, p. 10 ("earliest conditioning treatments" were "acid rinses" that counteracted undesirable "swelling of hair") and p. 17 (acidic conditioners neutralized alkali residues in the hair and reversed hair swelling); Ex. 1038, Dispenza Tr. 95, line 5–Tr. 96, line 12 and Tr. 97, lines 11–24).

229.   I am also aware that Dr. Wickett speculates the transparency discussed in Tanabe is caused by "deposition" of the acid "on the surface that fills in any surface disparities or something and puts a reflective coating on the surface that makes the—what he's determining as transparency—improves what he's determining as is transparency." (Ex. 2061, Wickett Tr. 257, line 1–Tr. 258, line 12). Dr. Wickett offers nothing to substantiate this speculation. Tanabe certainly does not describe the mechanism postulated by Dr. Wickett.

230.   Further, to the extent that a POSITA did believe Dr. Wickett's speculation regarding transparency, they would not believe this benefit or any other benefit in Tanabe would happen at the elevated pH used in alkaline bleaching. When hair is exposed to pH 9–11, this causes the hair shaft to become

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121053

PGR 2018–00025
Patent No. 9,668,954

swollen and the cuticle to be raised. (Ex. 1006, p. 3 (¶15) (hair swells at pH 8 or greater); Ex. 2009, pp. 560–561 (large increase in swelling above pH 9); Ex. 1012, ¶21 ("Under alkaline conditions, the hair swells allowing the chemical treatment to penetrate the hair cuticle into the cortex")). Therefore, the surface of the hair would not be expected to be smooth, and would not produce a "transparency" benefit at this pH. (Ex. 1004, p. 2, lines 24–32 ("lusterless and dull"); Ex. 1041, Col. 2, lines 27–28 (after repeated oxidative treatments leave hair fibers "have little shine and luster")). Further, Tanabe provides data demonstrating that his invention requires an acidic pH to provide conditioning benefits, and that those benefits are greatly diminished as the pH increases to 5.0 or 5.5. (Ex. 1009, Table 1). A POSITA would have understood that  donation of the acidic proton is what produces the smooth, lustrous, and shiny fiber surfaces sought by Tanabe by smoothing the hair cuticle, and that the fully deprotonated form of maleic acid as would exist at pH 8–12 cannot provide this benefit.

231.    That Pratt already provides benefits supposedly provided by Tanabe would not have surprised a POSITA. As Dr. Wickett notes, both Pratt and Tanabe disclose the use of similar cationic materials. (Ex. 1012, ¶¶49–50). If these cationic materials are the source of the optical or mechanical benefits claimed in Tanabe, then Pratt's cationic materials already would provide the same benefit in Pratt's bleaching method.

109

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121054

232.    Dr. Wickett says "[a] skilled artisan would have expected that the use of Tanabe's composition (C) would function as Pratt's cationic compound, as well as provide Tanabe's disclosed benefit as a conditioner in order to both reduce damage and impart Tanabe's disclosed 'improved optical and mechanical properties.'" (Ex. 1012, ¶48). I disagree.

233.    Dr. Wickett has not identified any specific property that supposedly would be improved by this modification. Dr. Wickett has failed to provide any technical reasoning why a POSITA would expect an acidic conditioner formulated to operate at pH 2–6 would provide any benefit at a pH greater than 6. At his deposition, Dr. Wickett was unable to explain what benefits would be expected from the various components of Tanabe's composition if they were added into Pratt's alkaline bleaching mixture.

234.    For example, as to Tanabe's glycine/alanine, the most that Dr. Wickett would say is that "they might expect … conditioning benefits, either improving optical or mechanical properties of hair based on Tanabe." (Ex. 2061, Wickett Tr. 235, lines 6–20). Similarly, Dr. Wickett says a POSITA "might conclude" that glycine "provided part of the benefit" reported in Berkemer (Ex. 1004). (Ex. 2061, Wickett Tr. 235, line 21–Tr. 236, line 11). Not only are these statements mere expressions of possibility (i.e., the benefit might or might not be seen), Dr. Wickett failed to identify any teaching that these very small

110

Highly Confidential

OLA_0000121055

PGR 2018–00025
Patent No. 9,668,954

amino acids would have any benefit at pH 9–11, the pH at which alkaline bleaching is done. Tanabe shows glycine and alanine are acidic buffers that force has acidic conditioner to a pH of 3.0. (Ex. 1007, Table 1); Ex. 1004, p. 4, lines 8–12 ("glycocoll" or glycine added to conditioner as a "buffer substance[]" to maintain acidic pH)). A POSITA would not expect that either glycine or alanine would provide any benefit in Pratt's bleaching method.

235.   As to Tanabe's component (B) (i.e., the acid), Dr. Wickett testified that Tanabe includes the acid component in his conditioner "because he saw astonishing structural improvements of the hair surface." (Ex. 2061, Wickett Tr. 236, line 19–Tr. 237, line 12). Of course, that testimony is contradicted by Tanabe, which says no such thing. (Ex. 2061, Wickett Tr. 238, line 13–Tr. 239, line 5 ("Oh excuse me, from Berkemer, not Tanabe")).

236.   Tanabe's component (C) includes cationic materials, which Dr. Wickett says are similar to or the same as cationic materials already disclosed in Pratt. As I said above, I would not have expected Tanabe's cationic material to provide any additional benefits as compared with Pratt's cationic material. Tanabe certainly does not describe any particular benefit that he finds as a result of his cationic materials. Tanabe says the cationic materials provide "softness" when used in the correct amount. (Ex. 1007, Col. 2, lines 45–50). Dr. Wickett indicated that he did not know if Tanabe's cationic material would provide the same softness

111

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121056

benefit when used in Pratt's bleaching method. (Ex. 2061, Wickett Tr. 255, line 17–Tr. 256, line 21).

237.   A POSITA also would have understood that Tanabe's claimed improvements in softening/body and touch/feel result from the low pH of the conditioner, which smooths the hair fiber surface and makes hair feel softer and silkier to the touch. (Ex. 1006, p. 2 (¶2) ("mild acid" conditioning after-treatment provides hair with greater "elasticity"); Ex. 2006, p. 433 (smooth hair cuticles "result in softer hair"); Ex. 2021, ¶¶171, 252 (POSITA would have expected prior art dilute acid after-treatment solutions disclosed in Berkemer to "improve[e] feel and appearance of the hair")).

238.   A difference between Tanabe's cationic component and Pratt's composition (c) is that Tanabe requires an acid to provide for an acidic pH with its cationic component, while Pratt says pH adjusters are optional in composition (c). (Compare Ex. 1007, Col. 1, line 58–Col. 2, line 5 with Ex. 1009, ¶94). To the extent that Tanabe's disclosed acids were responsible for Tanabe's improved mechanical and optical characteristics, a POSITA would have understood that Tanabe's benefits require an acidic pH which is not present during alkaline bleaching with developer and bleach powder.

112

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121057

239.    For the reasons provided above, it is my opinion that a POSITA

would not have looked to Tanabe to provide improved optical or mechanical

properties of hair in Pratt's alkaline bleaching method.

> ### 4. A POSITA Would Not Have Been Motivated by Tanabe to Select Maleic Acid for Use in Pratt's Alkaline Bleaching Method

240.    Dr. Wickett also says that "a skilled artisan would have been

motivated to select maleic acid from Tanabe's expressly disclosed acids in view of

Tanabe's disclosure that maleic acid is one of three 'preferred' acids for use as

component (B), one of three acids exemplified, and one of only two acids

claimed." (Ex. 1012, ¶56). I disagree.

241.    Dr. Wickett could not explain why Tanabe expressed a preference for

three particular acids (malic, maleic, and succinic acid) over other acids. (Ex. 2061,

Wickett Tr. 240, line 6–Tr. 242, line 1 ("He doesn't clearly explain why he

expresses the preference for those three acids")). Dr. Wickett would later admit

that Tanabe simply does not teach that maleic acid provides any conditioning

benefit during alkaline bleaching. (Ex. 2061, Wickett Tr. 242, lines 10–19). Nor

did Dr. Wickett know whether Tanabe's three preferred acids would, in fact,

provide any tangible benefit in an alkaline environment. (Ex. 2061, Wickett

Tr. 242, lines 3–8).

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121058

PGR 2018–00025
Patent No. 9,668,954

242.   A POSITA would not have expected any benefits if a maleic acid containing Tanabe conditioning composition were added into the Pratt alkaline bleaching composition. A POSITA would have understood that Tanabe teaches the benefit of the acid is to provide an acidic environment. Tanabe shows that the benefits of his conditioning composition are pH dependent. Tanabe's Invention Products are at pH 3.3 and produced better results than similar compositions that are at pH 5.0 or 5.5. Further, Tanabe only describes including acids in his compositions, and does not contemplate including the salt forms which are prevalent at higher pH.

243.   A POSITA would have understood that maleic acid can exist in up to three forms depending on pH: (1) fully protonated maleic acid, (2) hydrogen maleate, and (3) maleate. Maleic acid has two acid dissociation constants or pKa values (1.9 and 6.2). (Ex. 2034, p. 40; Ex. 2065, p. 8). When the pH is equal to the first $pK_a$ value (1.9), maleic acid and hydrogen maleate will be present in equal amounts. As the pH increases above 1.9, the amount of fully protonated maleic acid will be greatly reduced and hydrogen maleate will be the predominant species. When the pH is equal to the second $pK_a$ value (6.2), hydrogen maleate and maleate will be present in equal amounts. As the pH increases above 6.2, maleate will be the predominant species. Maleate is called a conjugate base, and it cannot act as an

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121059

PGR 2018–00025
Patent No. 9,668,954

acid because it does not have any acidic protons. A graph showing the various forms of maleic acid versus pH is above at paragraph 72.

244.   A POSITA would have understood that at a pH equal to the first $pK_a$ value, the maleate ions would be virtually nonexistent. Similarly, at a pH equal to the second $pK_a$ value, fully protonated maleic acid would be virtually nonexistent.

245.   In Tanabe's low pH experiments (pH 3.3), Tanabe would have had a combination of fully protonated maleic acid and hydrogen maleate ions, and virtually no maleate ions. Similarly, at Tanabe's high pH experiments (pH 5.0, 5.5), the maleic acid would be present in its hydrogen maleic and maleate forms, but the fully protonated maleic acid would be virtually nonexistent.

246.   Tanabe mentions specifically that pH may be in the range of 2–6, and explains that the particularly preferred pH range is 2.5–3.5. Combined with Tanabe's Table 1, a POSITA would have understood that the effectiveness of Tanabe's conditioner significantly decreases as pH increases to around 6. This follows the pattern of the transition of maleic acid into its various forms, i.e., the acid transitioning from it fully protonated form to its doubly deprotonated, maleate form. See paragraph 72 (above).

247.   A POSITA would have understood that in the context of Pratt's bleaching compositions, the pH would be 8–12, preferably in the range 9–11. (Ex. 1009, p. 14 (claim 12); Ex. 1010, Col. 1, lines 46–49 (insufficient bleaching

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121060

PGR 2018–00025
Patent No. 9,668,954

power below pH 8.5); Ex. 1039, Borish Tr. 50, lines 14–18 ("To bleach hair generally requires a pH of 9–11, usually practiced 10–11."); Ex. 2005, p. 6 (pH around 10); Ex. 2007, p. 2 (pH "generally from 9–11"); Ex. 2008, ¶42 ("pH of greater acidity than 9.0 will tend to give a poor bleaching effect.")). Therefore, a POSITA would further have known that there would be virtually no fully protonated maleic acid present in Pratt's bleaching composition. This is significant because Tanabe teaches that the benefits of his conditioning composition stem from the presence of fully protonated acid and not its fully deprotonated form. As a result, a POSITA would not have expected any benefit from a Tanabe conditioner with maleic acid since the benefits of his invention were already disappearing when the pH approaches 6.0, which is still an acidic composition, while Pratt is significantly more alkaline.

248.    To believe that Tanabe's conditioner would provide a benefit when used in an alkaline bleaching mixture would require a belief that maleic acid in a proposed combination with Pratt could simultaneously exist at pH 2–6 and also pH 9–11, which is of course impossible. As such, a POSITA would only have expected the acidic pH adjuster used in Tanabe to provide benefit at low pH.

249.    For the reasons provided above, it is my opinion that a POSITA would not have been motivated by Tanabe to select maleic acid for use in Pratt's alkaline bleaching method.

116

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121061

PGR 2018–00025
Patent No. 9,668,954

B.   GROUND #2: CLAIMED HAIR BLEACHING METHODS OF CLAIMS 20 AND 22 WOULD NOT HAVE BEEN OBVIOUS TO A POSITA AS OF MAY 16, 2014 IN LIGHT OF PRATT IN VIEW OF TANABE AND STONE

250.   The second instituted ground further relies on Stone in connection with the additional elements recited in claims 20 and 22. As shown above, Petitioner fails to establish that independent claim 1 would have been obvious based on Pratt in combination with Tanabe. Petitioner does not propose that Stone alleviates the deficiencies identified above.

251.   Stone fails to even mention maleic acid or the amounts of maleic acid that should be used in a bleaching mixture. Instead, Stone describes a hair care composition with quarternized polysiloxanes, surfactants, botanical compounds, amino acids, and vitamins that can be used in "shampoos, conditioners, styling gels, aerosol styling sprays, non-aerosol styling sprays, aerosol styling mousses, styling gels, styling pomades, leave-in conditioning sprays, and thermal protection sprays." (Ex. 1008, Abstract and ¶14). Stone's hair care compositions have a final pH between about 4.0 and about 8.5. (Ex. 1008, ¶31).

252.   Because Stone does not cure the deficiencies in Pratt and Tanabe regarding independent claim 1, Petitioner has failed to show that it is more likely than not that at least one claim of dependent claims 20 and 22 is rendered obvious by Pratt/Tanabe/Stone.

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121062

253.    Accordingly, in my opinion a POSITA would not have found the bleaching methods of claims 20 and 22 to be obvious in light of Pratt/Tanabe/Stone.

C.    GROUND #3: THE HAIR BLEACHING METHOD OF '954 PATENT CLAIM 1 WOULD NOT HAVE BEEN OBVIOUS TO A POSITA AS OF MAY 16, 2014 IN LIGHT OF PRATT IN VIEW OF TANABE, BERKEMER, AND KR '564

254.    The third instituted ground further relies on two additional references (Berkemer and KR '564) in addition to the Pratt and Tanabe references. As shown in Section XI.A above, Petitioner fails to establish that claim 1 of the '954 patent would have been obvious based on Pratt in combination with Tanabe.

1.    Berkemer and KR '564 Both Fail to Disclose Mixing Maleic Acid into a Bleaching Formulation or the Concentrations of Maleic Acid that Should be Used for that Purpose

255.    Berkemer discloses a method for treating previously damaged hair by applying an acidic leave-on treatment with heat from a hair dryer. (Ex. 1004, p. 3, lines 7–10, p. 4, line 28–p. 5, line 15). The treatment has a pH of 1.9–4.0. (Ex. 1004, p. 4, lines 8–12). While Berkemer discloses the use of "maleic acid or substitution products thereof," (Ex. 1004, p. 3, lines 12–17), it fails to teach to mix maleic acid with a bleaching formulation (which is alkaline), or to use it in a method for bleaching hair. Similarly, Berkemer also fails to disclose a particular maleic acid concentration range for those uses.

118

Highly Confidential

OLA_0000121063

256.   KR '564 has the same deficiencies as Berkemer. KR '564 relates to a mild acid rinse that is intended to neutralize and remove alkali residues left over from prior chemical hair treatments. (Ex. 1006, p. 2 (¶¶1–2), p. 3 (¶13). KR '564 discloses numerous organic acids for this purpose, and does not describe any advantages of using maleic acid over any other mild acid. (Ex. 1006, pp. 4 (¶¶3, 11), p. 7 (¶4)).

257.   Lactic acid is preferred because it provides (1) "the best stability," (Ex. 1006, p. 7 (¶5)), (2) pH of a lactic acid solution "can be reduced by even a small amount more than with other acid types," (Ex. 1006, p. 7 (¶5)), (3) the pH of the lactic acid solution "can be preserved for a long time (2–3 years)," (Ex. 1006, p. 7 (¶5)), and (4) the lactic acid treatment "exhibits particularly excellent effects." (Ex. 1006, p. 7 (¶5)). KR '564 does not disclose a particular maleic acid concentration range to be mixed with a bleaching formulation, used in a method for bleaching hair, or for any purpose at all.

### 2. Berkemer and KR '564 Fail to Provide A Reason to Select Maleic Acid for Use in Pratt's Alkaline Bleaching Method

258.   Petitioner and its declarant (Dr. Wickett) rely on Berkemer and KR '564 only to "provide an additional reason to specifically select maleic acid from Tanabe's three preferred acids for use as component (B)." (Paper 3, p. 71; Ex. 1012, ¶147). I disagree.

119

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121064

PGR 2018–00025
Patent No. 9,668,954

259.   I see that Dr. Wickett claims that KR '564 discloses the use of maleic acid in bleaching to alleviate and prevent damage to the hair caused by that alkaline process. (Ex. 1012, ¶147, citing Ex. 1006, p. 2). I understand Dr. Wickett's citation is to the following paragraph in KR '564:

> The present invention relates to a hair treatment agent comprising mild acid, and it relates to a hair treatment agent which has the advantages of alleviating and preventing hair damage caused by chemical treatments such as permanent wave, dyeing or bleaching.

(Ex. 1006, p. 2 (¶1). I disagree with Dr. Wickett opinion because he is misinterpreting KR '564. In the cited paragraph, the discussion of "alleviating" hair damage refers to reversing the effect of a chemical treatment that has left the hair fibers in a swollen state with cuticles lifted. The reference to "preventing" hair damage refers to alleviating the vulnerability of the hair to further damage from routine maintenance, e.g., breaking of cuticles through combing and brushing, if it is left in a swollen state. This is apparent from the very next paragraph in KR '564 which explains that the mild acid treatment provides the hair with "greater shine, smoothness and elasticity, making hair glossier, and facilitating the production and maintenance of styling." (Ex. 1006, p. 2 (¶2)). A POSITA would have understood that these benefits are the result of the mild acid treatment neutralizing the alkali in

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121065

order to maintain the isoelectric point of the hair and thereby converging or deswelling the hair fibers.

260.    Berkemer does not motivate the addition of maleic acid into a highly alkaline bleaching formulation. Berkemer discloses the surface smoothing or astringent effect of acids in an acidic environment. (Ex. 1004, p. 3, lines 7–10 and lines 35–37). To ensure a pH is maintained from 1.9 to 4.0, Berkemer teaches that buffer substances are included in his treatment composition. (Ex. 1004, p. 4, lines 8–12).

261.    A POSITA would have understood that the benefits achieved in Berkemer are due to (and require) an acidic pH, and that these benefits cannot be achieved at pH 9–11, which is the pH employed in alkaline bleaching. The isoelectric point of hair is less than about 4. (Ex. 2022, pp. 368, 369, 388). During hair bleaching, the hair is exposed to alkali and a pH far greater than 4. This has a number of effects on the hair, not the least of which are (a) to swell the hair, making it permeable to bleaching chemicals, (Ex. 1012, ¶21; Ex. 2021, ¶15; Ex. 1035, p. 2, lines 22–26 (alkaline agent "causes swelling of the keratin fibre, with opening of the scales, which promotes the penetration of the oxidizing agent" into the hair); Ex. 2005, p. 6), and (b) to cause negative charge to build up on the exterior surface of the hair fibers. (Ex. 2006, p. 3 (damaged hair has "negative charge"); see also Ex. 1011, p. 17 (describing "formation of acid groups" which

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121066

have a negative charge "during oxidation")). A POSITA would have known that leaving the hair fibers in a swollen state would render them soft and more susceptible to damage. (Ex. 1006, p. 3 (¶19) ("to prevent the severe swelling, softening and thus damage of hair due to alkaline chemicals… it is important to use acid to return the hair to its original condition to maintain the appropriate isoelectric point level."))

262.   To address this problem, it was known to apply acidic substances to hair after the bleaching process had been completed. For example, Berkemer itself teaches that dilute solutions of tannic acid, lactic acid, and citric acid were applied to hair to smooth the hair surface. (Ex. 1004, p. 2, line 36–p. 3, line 3). Numerous other references also discuss the use of acid rinses after bleaching to smooth the roughened surface of already bleach damaged hair. (Ex. 1006, p. 2 (¶¶1–2), p. 3 (¶13) (acid rinse to neutralize and remove alkali agent to prevent expansion or swelling of hair); Ex. 2056, p. 157 (acid rinse are "classical agents used in hair care products" that bring "'hair pH' back to the normal level," address residual alkali that "impair hair surface and appearance," and "prevent the elimination of amino acids" from the hair); Ex. 2060, p. 290 ("self evident" that low pH shampoos and cream rinses have advantages over high pH products when used on already bleach hair) and p. 300 ("crème rinses are generally formulated in the pH range 2.5–5.0 which gives sufficient acidity to neutralize the hair"); Ex. 1011, p. 10 ("earliest

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121067

PGR 2018–00025
Patent No. 9,668,954

conditioning treatments were... acid rinses") and p. 17 ("ascorbic or glyoxylic acid may be added to the conditioning agent" and "acidic pH" of the conditioner neutralizes "alkali residues" and reverses "hair swelling"); Ex. 2033, p. 13 ("it is important to use a shampoo or a rinse after [bleach] application" and "[i]t is preferable to select an acid pH product"); Ex. 2031, ¶31 (acid rinse post treatments were known prior to 2014);  Ex. 2061, Wickett Tr. 92, line 10–Tr. 93, line 9)). The purpose of these acid rinses was to neutralize the alkali and de-swell the hair. (Ex. 1011, p. 17; Ex. 1038, Dispenza Tr. 95, line 5–Tr. 96, line 12; Ex. 1006, p. 3 (¶¶12–13)).

263.    There is no teaching that the surface smoothing benefits described in Berkemer can be achieved at a pH greater than 4. The acid in Berkemer is intended to provide a benefit by creating an acidic environment. To believe that Berkemer's maleic acid conditioning technique would provide a benefit when used in an alkaline bleaching mixture would require a belief that the maleic acid present in a proposed mixture with the bleaching treatment could simultaneously exist at pH 1.9–4 and also at pH 9–11, which is of course impossible. A POSITA would have understood that donation of the acidic proton to neutralize alkali is what produces the surface smoothing or astringency benefit sought by Berkemer, and that fully deprotonated maleic acid as would exist at pH 8–12 cannot provide this benefit. Therefore, a POSITA would *not* have expected Berkemer's maleic acid

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121068

conditioning technique to have provided the benefits if used in an alkaline bleaching mixture.

264.    Having reviewed Dr. Wickett's declaration carefully, I do not find any technical discussion by him or citation to the art of any description that maleic acid (or any acid) can achieve a permanent surface smoothing effect at pH 9–11. Dr. Wickett comments that Berkemer treats hair with a maleic acid solution after the hair has already been damaged by chemical treatments. (Ex. 1012, ¶¶148). Dr. Wickett notes that Berkemer says the structural improvement of the hair surface is "astonishing." (Ex. 1012, ¶¶149). Dr. Wickett argues that some positive charges would be present on hair at pH 11, therefore maleic acid would not be repelled by the overall negative charge of the hair fiber surface. (Ex. 1012, ¶¶150–153). None of this explains why the surface smoothing effect, which Berkemer describes at a pH 1.9–4, would be expected to occur at pH 9–11 (which is the pH used in alkaline bleaching).

265.    Then, in paragraph 154, Dr. Wickett explains that "[a]fter a typical bleaching process, hair is at alkaline pH" and therefore "the benefits of Berkemer including the 'astonishing structural improvement of the hair surface' are associated with hair that is at alkaline pH." (Ex. 1012, ¶154). Dr. Wickett fails to explain what he means by the phrase "associated with." Nowhere does Berkemer teach that surface smoothing can occur at pH greater than 4. To the contrary,

124

Highly Confidential

OLA_0000121069

PGR 2018–00025
Patent No. 9,668,954

Berkemer teaches that acidic buffers, such as glycine, should be added to maintain an acidic pH. (Ex. 1004, p. 4, lines 8–12). Again, a POSITA would have understood that Berkemer's conditioning method provided surface smoothing by neutralizing residual alkali (i.e., driving the pH down below the level where bleaching could occur), and thereby de-swelling the hair. (Ex. 1011, p. 17; Ex. 1038, Dispenza Tr. 95, line 5–Tr. 96, line 12; Ex. 1006, p. 3 (¶¶12–13)).

266.   Dr. Wickett's paragraph 154 continues with his opinion that a POSITA "would not have expected that alkaline conditions typically used in bleaching methods would alter the benefits taught by Berkemer." (Ex. 1012, ¶154). I disagree with Dr. Wickett because, as discussed, the only condition where Berkemer say his treatment provides any benefit is at pH 1.9–4, and there is absolutely no discussion in Berkemer that maleic acid provides any benefit at pH 9–11 during alkaline bleaching. Again, Berkemer's use of maleic acid is to provide an acidic environment. It would be impossible for maleic acid to simultaneously exist at pH 4 (where Berkemer says it has a benefit) and also at pH 9–11 (where a POSITA knows alkaline bleaching is performed). I also see that Dr. Wickett relies on KR '564 and say it teaches that maleic acid can be used during a bleaching process. (Ex. 1012, ¶154). As discussed in greater detail below, KR '564 discloses that its mild acid treatment provides a benefit only in an acidic environment (pH 4–5), where it can neutralize alkali and deswell hair.

125

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121070

PGR 2018–00025
Patent No. 9,668,954

267.   In my opinion, a POSITA would not have been motivated by Berkemer to choose maleic acid out of Tanabe's acids for use in Tanabe's after-the-fact acidic conditioner so that it could be used in Pratt's alkaline bleaching method. As discussed above, even if there were some motivation provided by Berkemer to use maleic acid in Tanabe's conditioner—which there is not—Tanabe's conditioner is only taught to provide benefits at acidic pH and not at alkaline pH.

268.   Dr. Wickett also argues that KR '564 teaches "maleic acid as an additive for a bleaching process." (Ex. 1012, ¶155, citing Ex. 1006, p. 4 (¶3)). According to Dr. Wickett this would provide a POSITA with an expectation that Berkemer's benefits could be achieved at alkaline bleaching pH. (Ex. 1012, ¶154).

269.   A POSITA also would not have been motivated by KR '564 to choose maleic acid for use in carrying out Pratt's alkaline bleaching method. KR '564 never describes any particular benefit that would come from choosing maleic acid as opposed to any other mild acid. To the contrary, KR '564 teaches that lactic acid is preferred over other mild acids for the reasons discussed above (¶173).

270.   Also, KR '564 never teaches that mixing a mild acid treatment with a bleaching formulation would provide any benefit in that high pH environment. Dr. Wickett places significances on a single sentence in KR '564, which he says

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121071

"teaches maleic acid as an additive for a bleaching process." (Ex. 1012, ¶155 citing Ex. 1006, p. 4). However, that sentence never even mentions bleaching:

> In addition to being used alone as a treatment agent, the hair treatment agent according to the present invention may be preliminarily added to a permanent wave agent, dyeing agent and the like as an additive for various hair treatment solvents.

271.   A POSITA would have understood that the omission of bleaching from that sentence was intentional because KR '564 was describing the use of the mild acid treatment in chemical processes that do not require alkaline pH. For example, permanent waving involves a reduction step where disulfide bonds in hair are intentionally broken, and a neutralization step where the previously reduced disulfide bonds are reformed. (Ex. 2006, p. 2). A POSITA would have known that a mild acid treatment agent could be included in step 2 (the neutralization step) without adversely impacting its chemistry because that step is acidic and does not require alkali. (Ex. 1011, p. 26 (hydrogen peroxide neutralizers are at pH 2.0–4.5; Ex. 2061, Wickett Tr. 215, line 9–Tr. 216, line 7 ("I would – would put it with the neutralizer" which is at an acidic pH)).

272.   Similarly, a mild acid treatment agent could be used with certain hair dyeing processes, which do not require highly alkaline pH or oxidation reactions.

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121072

PGR 2018–00025
Patent No. 9,668,954

Temporary hair coloring is performed without requirements for alkali or oxidants, because the dye is deposited on the outside surface of the hair fiber. (Ex. 2005, p. 208 ("Coloration [by temporary colorants] occurs by deposition of disperse or acid dyes on the surface of the hair"); Ex. 2060, p. 290 (same)). No-lift demi-permanent hair coloring can be done at an acidic pH. (Ex. 2058, p. 3 (demi-permanent hair color "can be formulated without ammonia for no lift" and "processes at an acidic pH without lift"); see also Ex. 2059, pp. 24–25 (demi-permanent hair color is referred to as "no-lift" and uses "same [oxidative] dye precursors and a some-what lower hydrogen peroxide concentrations (1–2% in the mixed product)")). A POSITA would understand that these treatments, those not requiring an alkaline environment (pH 9–11), are what KR '564 means by "permanent wave agent" and "dyeing agent."

273.   Third, the teaching in KR '564 that mild acid treatments at pH of 4–5 should be used to neutralize alkali to prevent hair damage, (Ex. 1006, pp. 2 (¶¶1–2), p. 4 (¶11)), would have led a POSITA away from mixing any mild acid with a bleaching formulation. Bleaching is done at a high pH (9–11) and relies on alkali to swell hair fibers. A POSITA would have wanted to avoid mixing mild acids with the bleaching formulation for fear that they would hinder bleaching by neutralizing alkali. A POSITA would have known that mild acids neutralize

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121073

PGR 2018–00025
Patent No. 9,668,954

alkalizing agents by donating an acidic proton, a process called neutralization, and if the pH is sufficiently decreased swelling of the hair fibers can be reversed.

274.   Dr. Wickett also argues that "the mechanism of damage for bleaching and oxidative dyeing" are "the same, as disclosed by KR '564." (Ex. 1012, ¶155 citing Ex. 1006, p. 3). I disagree.

275.   KR '564 contrasts oxidative bleaching with hair dyeing and teaches that the mechanisms are different because of the role of the alkaline agent:

| Oxidative Bleaching | Hair Dyeing |
|---|---|
| "oxidative bleaching action of the melanin pigment is conducted by hydrogen peroxide *separately from* the alkaline agent" | where "melanin bleaching and dye is conducted by *synergistic effects of* hydrogen peroxide and an alkaline agent" which makes hair "porous and stiff" |

(Ex. 1006, p. 3, (¶¶7–8)). In addition to contrasting the role of alkali in these chemical processes, KR '564 does not describe that hair is made porous or stiff when it is bleached. Thus, KR '564 distinguishes the mechanism of oxidative bleaching from hair dyeing.

276.   Contrary to what Dr. Wickett has said, a POSITA would have recognized that damage caused by hair bleaching differs from damage caused by

129

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121074

PGR 2018–00025
Patent No. 9,668,954

hair dyeing. Dye deposition on the hair surface is what contributes to a poor feel and dull appearance of dyed hair. (Ex. 2005, p. 9; Ex. 2004, p. 402, lines 12–22). Because dyes are absent from bleaching formulations that form of damage cannot occur during hair bleaching. A POSITA also would have known that cystine loss is far greater in bleaching than in dyeing. (Ex. 2055, p. 495 ("much less oxidation of cystine is reported to take place during oxidative dyeing")). Because the damage is different, bleach damaged hair reacts differently than dyed hair. (Ex. 2055, p. 484 ("bleached hair, when exposed under similar [weathering] conditions, weakens and becomes more swellable in spite of decrease in urea-bisulfite solubility") and p. 496 (Table 10 reports significantly higher dimensional contraction when exposed to sulfite as compared with oxidatively dyed hair)).

277.   A POSITA would have understood significantly different chemistry is involved with alkaline bleaching using developer and bleach powder (as in '954 patent claim 1) as compared to hair dyeing. Persulfates in bleach powder form sulfate free radicals, which play a part in hair bleaching and also damage hair. Persulfates are not used in hair dyeing, and the damage caused by sulfate radicals cannot occur in hair dyeing.

278.   Dr. Wickett also argues that a POSITA would have known how to compensate for the acidic additive composition in order to ensure bleaching is not inhibited. (Ex. 1012, ¶156). In particular, Dr. Wickett suggests adding base to

130

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121075

increase the pH of the bleaching formulation to which he has added the acid. (Ex. 1012, ¶156). However, Dr. Wickett has not actually performed this experiment, and a POSITA would have known that there could be other chemical reactions caused by this change. In any case, Dr. Wickett's argument missed the crucial point, which is that at pH 9–11 (where alkaline bleaching occurs), there is no teaching in the art that any additional benefits associated with KR '564, Berkemer, or Tanabe can be achieved in alkaline bleaching.

279.   Dr. Wickett continues this argument by suggesting that KR '564 does not require an acidic pH, but fails to explain why the benefits of KR '564 purportedly can be achieved at pH greater than 5. (Ex. 1012, ¶157). Dr. Wickett argues that KR '564 describes different embodiments, some of which are post-treatments that lower the pH and others of which he says do not require an acidic pH. (Ex. 1012, ¶157). However, Dr. Wickett fails to identify any support in KR '564 for his opinion.

280.   I disagree with Dr. Wickett's opinion because it contradicts KR '564 itself. In particular, KR '564 teaches that the surface smoothing effect ("hair converges") requires "a pH of 4–5." (Ex. 1006, p. 3 (¶16)). KR '564 also teaches that swelling and softening of the hair occurs "when the pH is 8 or greater." (Ex. 1006, p. 3 (¶15)). To further emphasize the point that a low, acidic pH is required, KR '564 teaches that "it is important to use acid to return the hair to its

131

Highly Confidential

OLA_0000121076

original conditions to maintain the appropriate isoelectric point level." (Ex. 1006, p. 3 (¶19)). KR '564 also says "it is necessary to neutralize and remove the alkali agent to prevent expansion of the hair." (Ex. 1006, p. 3 (¶13)). A POSITA would have understood that donation of acidic protons is what allows KR '564's mild acid to converge or de-swell hair fibers, and that the fully deprotonated form of maleic acid as would exist at pH 8–12 cannot provide this benefit. KR '564 simply does not teach that a mild acid solution provides any benefit at a pH greater than 5.

281.   Berkemer and KR '564 would not have provided any reason to select maleic acid and to use it in the Pratt/Tanabe combination. Thus, for the reasons provided above, it is my opinion that at least claim 1 of the '954 patent would not have been obvious to a POSITA over Pratt, Tanabe, Berkemer, and KR '564.

D.   GROUND #4: THE CLAIMED HAIR BLEACHING METHODS OF CLAIMS 20 AND 22 WOULD NOT HAVE BEEN OBVIOUS TO A POSITA AS OF MAY 16, 2014 IN LIGHT OF PRATT IN VIEW OF TANABE, BERKEMER, KR '564, AND STONE

282.   The fourth instituted ground further relies on Stone in connection with the additional elements recited in claims 20 and 22. As shown above, Petitioner fails to establish that independent claim 1 would have been obvious based on Pratt in combination with Tanabe, Berkemer, and KR '564. Petitioner does not propose that Stone alleviates the deficiencies identified above.

132

Highly Confidential

OLA_0000121077

283. Stone fails to even mention maleic acid or the amounts of maleic acid that should be used in a bleaching mixture. Instead, Stone describes a hair care composition with quarternized polysiloxanes, surfactants, botanical compounds, amino acids, and vitamins that can be used in "shampoos, conditioners, styling gels, aerosol styling sprays, non-aerosol styling sprays, aerosol styling mousses, styling gels, styling pomades, leave-in conditioning sprays, and thermal protection sprays." (Ex. 1008, Abstract and ¶14). Stone's hair care compositions have a final pH between about 4.0 and about 8.5. (Ex. 1008, ¶31).

284. Because Stone does not cure the deficiencies in Pratt and Tanabe regarding independent claim 1, Petitioner has failed to show that it is more likely than not that at least one claim of dependent claims 20 and 22 is rendered obvious by Pratt/Tanabe/Berkemer/KR '564/Stone.

285. Accordingly, in my opinion a POSITA would not have found the bleaching methods of claims 20 and 22 to be obvious in light of Pratt/Tanabe/Berkemer/KR '564/Stone.

E.   OBJECTIVE EVIDENCE DEMONSTRATES THAT '954 PATENT CLAIM 1 WOULD NOT HAVE BEEN OBVIOUS TO A POSITA AS OF MAY 16, 2014

286. The fact that the invention of the '954 patent would not been obvious to a POSITA is also supported by objective indicia of nonobviousness, or so called secondary considerations, including long felt but unresolved need for the

133

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121078

PGR 2018–00025
Patent No. 9,668,954

invention, Petitioner's copying the method of '954 patent claim 1, commercial success of Petitioner's products employing that invention, unexpected results provided by that invention as well as the skepticism and praise of others.

### 1.  Long-Felt and Unmet Need as of May 16, 2014

287.   I have been informed and understand that a long-felt but unmet need for an invention supports the nonobviousness of the invention. If the invention under consideration was obvious based on earlier prior art disclosures, the long-felt need would have been met before the time of the invention.

288.   In my opinion, a long-felt need existed in the field of cosmetic science for a method that prevents damage and repairs damage during oxidative hair bleaching, which confirms the nonobviousness of the inventions claimed in '954 patent claim 1.

289.   Oxidative hair bleaching has long been known to damage hair. As early as 1964, it was known that repeated bleaching caused numerous problems including making hair brittle, opening the hair cuticles, and making hair appear "lusterless and dull." (Ex. 1004, p. 2, lines 24–32). Even thirty years later, textbooks and journal articles continued to report that "the aggressive nature of the bleaching mixtures can result in significant damage to hair." (Ex. 2005, p. 6; see

134

Highly Confidential

OLA_0000121079

PGR 2018–00025
Patent No. 9,668,954

also Ex. 2029, p. 6). Some theorized that this damage was caused by unintended oxidation of cysteine to cysteic acid. (Ex. 2005, p. 7).

290.   Shortly before the May 2014 effective filing date of the '954 patent, experts continued to describe how bleaching lowered the mechanical strength of and otherwise damaged hair. (Ex. 1011, p. 16 (use of "strong bleach" causes "alteration of the chemical properties of hair" and "results in modified physical properties: a higher extensibility and thus lower mechanical strength; a rough, strawlike feel when dry; and a spongy feeling when wet."); Ex. 2006, p. 6 ("Following bleaching, the hair will often be different in texture, will break more easily, and will be more susceptible to humidity."); Ex. 2007, p. 6 (severe bleaching breaks disulfide bonds)).

291.   I have reviewed the deposition testimony of Thomas Dispenza submitted by Petitioner (Ex. 1038) and find his testimony to be compelling proof of the nonobviousness. Mr. Dispenza (a highly successful cosmetologist) explains that prior to the '954 patent, hair damaged by bleaching was treated after-the-fact with toners, conditioners, oils, and silicones. (Ex. 1038, Dispenza Tr. 67, line 17– Tr. 68, line 3; see also Ex. 2005, pp. 6, 7, and 13; and Ex. 2006, p. 6). However, 118 only masked the underlying problem, and they did not actually repair the damage or prevent it. (Ex. 1038, Dispenza Tr. 102, lines 8–22). A POSITA would

135

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

OLA_0000121080

PGR 2018–00025
Patent No. 9,668,954

have understood that there was no cure for oxidative bleach damage prior to the '954 patent invention, other than to not bleach the hair.

292.   Even Petitioner's declarant (Dr. Wickett) conceded, "bleaching as well as other similar chemical processes such as hair dyeing, permanent waving, etc., have been known to damage hair" (Ex. 1012, ¶22). Petitioner's previous declarant (Mr. Nandagiri) said that same thing. (Ex. 2021, ¶16).

293.   Further, the '954 patent says that the invention rebuilds disulfide bonds in keratin found in hair that would otherwise be damaged by chemical treatments such as bleaching. (Ex. 1001, cover page, item (57)). Petitioner's advertisements for its maleic acid bleach additives also tout the ability of maleic acid to strengthen and preserve bonds during hair bleaching. (Ex. 2043, p. 1 ("preserves the strong bonds" and "weak bonds reform"); Ex. 2044, p. 3 ("protect bonds and balance hair's pH"); Ex. 2045, p. 16 ("maleic acid protects the bonds during the chemical process")).

294.   No one else thought to combine a maleic acid active agent into a bleaching mixture before the '954 patent. In addition, the references applied by Petitioner are old. Pratt was applied for in 2009. Tanabe, Berkemer, and KR '564 Berkemer were applied for in 1999, 1964, and 2004, respectively. In other words, the supposed motivation from Berkemer to select maleic and use it in an alkaline bleach mixture existed for fifty years, and yet no one did. Even looking at the most

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121081

recent of these references, five years passed after Pratt applied for this patent and before the '954 patent effective filing date, and yet no one thought to modify Pratt's disclosures and to use maleic in an alkaline bleach mixture until the '954 patent inventors did. The reason that the art did not make the selection or modification that Petitioner now proposes is because the Pratt/Tanabe and Pratt/Tanabe/Berkemer/KR '564 combinations were not obvious to a POSITA. The Chairman of Petitioner's corporate parent admitted as much. (Ex. 2069 at LO_USA0035379 (June 29, 2015: "great technological innovation" and "it would have been preferable to invent it ourselves but that was not the case")).

295.   Therefore, it is my opinion that a POSITA would have recognized that there was a long-felt and unmet need for a method to prevent damage and repair damage during oxidative hair bleaching and that need was finally met by the '954 patent invention.

## 2.  Petitioner's Choice to Copy the '954 Patent Invention

296.   I have been informed and understand evidence that an invention was copied will support the nonobviousness of that invention. If the invention under consideration would have been obvious to a POSITA based on prior art disclosures, then there would have been no need to copy the invention.

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121082

PGR 2018–00025
Patent No. 9,668,954

297.   I have been asked to give my opinion on whether use of Petitioner's three products ((a) Matrix Bond Ultim8 Step 1 Amplifier; (b) Redken pH-Bonder #1 Bond Protecting Additive; (c) L'Oréal Professionnel Smartbond Step 1 Additive) falls within the scope of '954 patent claim 1.

298.   It is my opinion that each of these three products, if used according to their instructions, would practice the method for bleaching hair described in at least claim 1 of the '954 patent and, therefore, embody at least that claim as demonstrated below individually for each product.

299.   I also have considered Petitioner's advertisements for these products. Various advertisements feature discussions of maleic acid and its supposed benefits in hair bleaching. (Exs. 2043–2045).

300.   I also have reviewed the Declaration of Dean Christal (Ex. 2046), describing how Mr. Christal provided an unpublished patent application (Ex. 1030) to Petitioner's representatives disclosing the method of using a maleic acid active agent in a method of bleaching hair. Thus, Petitioner gained access to a non-public patent application describing the methods of the '954 patent and then shortly thereafter launched three commercial products that use those methods.

301.   Below I show that the use of these products as instructed by Petitioner in hair bleaching infringes claim 1 of the '954 patent. I note that this is consistent with the Board's determination in PGR 2017–00012 that Petitioner did, in fact,

138

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121083

copy the features of these products from an unpublished patent application describing the invention of the '954 patent. See *L'Oréal USA, Inc. v. Liqwd, Inc.*, PGR 2017–00012, Paper 102 (PTAB June 27, 2018), p. 30 ("the preponderance of the evidence suggests that Petitioner used maleic acid because of its access to Patent Owner's non-public information, rather than because of Petitioner's own independent development.").

### Matrix Bond Ultim8 Step 1

302.   Use of Matrix Bond Ultim8 Step 1 according to Petitioner's instructions provides a method for bleaching or lightening the color of hair. (Ex. 2047, p. 1 ("Helps protect bonds during lightening")).

303.   Use of Matrix Bond Ultim8 Step 1 as instructed involves mixing a bleach powder and a developer to form a bleaching formulation. The instructions for use direct the user to use a two-part bleaching formulation having developer and bleach powder. (Ex. 2047, p. 1; Ex. 2048, p. 2).

304.   Use of Matrix Bond Ultim8 Step 1 as instructed involves mixing a maleic acid active agent formulation with the bleaching formulation. The Bond Ultim8 Step 1 label identifies maleic acid as an ingredient. (Ex. 2047, p. 1). The instructions for use direct the user to mix the Bond Ultim8 Step 1 additive with the two-part bleaching formulation having developer and bleach powder. (Ex. 2047, p. 1; Ex. 2048, p. 2).

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121084

305. Use of Matrix Bond Ultim8 Step 1 as instructed also involves applying to hair the additive/bleaching formulation mixture. Petitioner expressly instructs users to "[a]pply lightener…as usual" after mixing the maleic acid active agent formulation with the bleaching formulation. (Ex. 2047, p. 1; Ex. 2048, p. 2). The next step in the instructions calls for rinsing the lightener (i.e., the mixture of the bleaching formulation and the additive) out of the hair, which confirms that the mixture had been applied to the hair in the prior step. (Ex. 2048, p. 2).

306. Matrix Bond Ultim8 Step 1 has maleic acid at a concentration of about 10.5 wt. %. (Ex. 2049, 1). Using these test results and/or data, together with Petitioner's instructions that come with the Bond Ultim8 Step 1, it is possible to determine the concentration of maleic acid (weight percentage) in the mixture that is applied to the hair.

307. The package instructions that accompany Matrix Bond Ultim8 Step 1 include a table which specifies amounts of lightener powder, developer, and Step 1 additive to use when bleaching hair. The relevant portion of that table is reproduced below:

| Lightener (grams) | Developer (ml) | Step 1 Additive (ml) |
|-------------------|----------------|----------------------|
| 15–30 | 15–90 | 4 |

140

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

OLA_0000121085

PGR 2018–00025
Patent No. 9,668,954

| Lightener (grams) | Developer (ml) | Step 1 Additive (ml) |
|:---:|:---:|:---:|
| 30–60 | 30–120 | 8 |

(Ex. 2048, 2).

308.   The amounts of developer and Bond Ultim8 Step 1 additive are given as volumes. To convert these into a mass, I assumed that the density of each was approximately that of water (1 g/ml). Water is expected to be the major component of these compositions, and I have seen nothing in the ingredient lists, material safety data sheets, or any other information source to suggest otherwise.

309.   Thus, the total mass of ingredients in the top row was from a minimum of 34 grams (i.e., 15+15+4) to a maximum of 124 grams (i.e., 30+90+4). Using the NMR testing results (Ex. 2049), I calculated the weight of maleic acid present in 4 ml of Step 1 additive (0.4 grams). From this I calculated the weight percentage of maleic acid present in that mixture to be between 0.3–1.2 wt. %. Following the same process, I determined the weight percentage of maleic acid present in mixtures described in the bottom row of the Table to be between 0.4– 1.2 wt. %.

310.   This analysis demonstrates that, when Matrix Bond Ultim8 Step 1 is used according to Petitioner's instructions, the concentration of maleic acid

141

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

OLA_0000121086

PGR 2018–00025
Patent No. 9,668,954

(weight percentage) in the mixture that is applied to the hair is between about 0.1% by weight and about 50% by weight.

311.    The following Table 1 summarizes where each element of claim 1 of the '954 patent is practiced by the use of Petitioner's Matrix Bond Ultim8 Step 1 product as instructed:

142

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121087

PGR 2018–00025
Patent No. 9,668,954

TABLE 1

| Claim Language | Infringement by Use of Matrix Bond Ultim8 Step 1 |
|---|---|
| 1. A method for bleaching hair comprising: | The use of Bond Ultim8 Step 1 according to the instructions provides a method for bleaching or lightening the color of hair. (Ex. 2047, 1 ("treatment helps prevent breakage during lightening services")). |
| (a) mixing a bleach powder and a developer to form a bleaching formulation, | Petitioner's instructions provided on the bottle of Bond Ultim8 Step 1 direct the user to make a two-part bleaching formulation from lightener (bleach powder) and developer: STEP 1: BOND ULTIM8 AMPLIFIER treatment helps prevent breakage during lightening services. To use: Mix your lightener or color, with developer, as usual, before adding STEP 1. LIGHTENER: add 4mL (1/8oz) of STEP 1 for every 15-30 grams (1/2 - 1 oz) of powder or 8 mL (1/4 oz) of BOND ULTIM8 STEP 1 for every 30-60 grams (1 - 2 oz) of powder used in mixture. COLOR: add 4mL (1/8oz) of STEP 1 for every 60 grams (2 oz) of colorant used in mixture. Apply lightener or color as usual. Rinse color from hair – do not shampoo. Dry thoroughly with a towel. Follow with STEP 2. Store Upright. Rinse Syringe after each use. (Ex. 2047, 1 excerpt, with emphasis added.). The words "lightener" and "powder" refer to |

143

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121088

PGR 2018–00025
Patent No. 9,668,954

| Claim Language | Infringement by Use of Matrix Bond Ultim8 Step 1 |
|---|---|
| | bleach powder. Petitioner's package instructions (included in the box when Bond Ultim8 Step 1 is sold) further describe making bleaching formulation as usual with lightener powder: **DIRECTIONS FOR USE:** **STEP 1: AMPLIFIER** 1. Mix your lightener or color as usual. 2. Add 4ml of **STEP 1** per 15g of lightener powder to the mixture. Use 8ml (¼ oz.) of **STEP 1** when mixing 30g or more of lightener powder. 3. Apply lightener or color as usual. (Ex. 2048, 2 excerpt, with emphasis added.) The words "lightener" and "lightener powder" refer to bleach powder. The bleaching formulation is therefore the combination of bleach powder and developer. |
| (b) mixing an active | Matrix Bond Ultim8 Step 1 is an active agent formulation comprising an active agent. |

144

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121089

PGR 2018–00025
Patent No. 9,668,954

| Claim Language | Infringement by Use of Matrix Bond Ultim8 Step 1 |
|---|---|
| agent formulation comprising an active agent with the bleaching formulation to form a mixture, | Petitioner's instructions provided on the bottle of Bond Ultim8 Step 1 direct the user to mix Bond Ultim8 Step 1 with a two-part bleaching formulation: |

STEP 1: BOND ULTIM8 AMPLIFIER treatment helps prevent breakage during lightening services. To use: Mix your lightener or color, with developer, as usual, before adding STEP 1. LIGHTENER: add 4mL (1/8oz) of STEP 1 for every 15-30 grams (1/2 - 1 oz) of powder or 8 mL (1/4 oz) of BOND ULTIM8 STEP 1 for every 30-60 grams (1 - 2 oz) of powder used in mixture. COLOR: add 4mL (1/8oz) of STEP 1 for every 60 grams (2 oz) of colorant used in mixture. Apply lightener or color as usual. Rinse color from hair – do not shampoo. Dry thoroughly with a towel. Follow with STEP 2. Store Upright. Rinse Syringe after each use.

(Ex. 2047, 1 excerpt, with emphasis added.).

Petitioner's package instructions (included in the box when Bond Ultim8 Step 1 is sold) further describe mixing the Bond Ultim8 Step 1 additive with the bleaching formulation:

145

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

OLA_0000121090

PGR 2018–00025
Patent No. 9,668,954

| Claim Language | Infringement by Use of Matrix Bond Ultim8 Step 1 |
|---|---|
| | **DIRECTIONS FOR USE:**<br><br>**STEP 1: AMPLIFIER**<br>1. Mix your lightener or color as usual.<br>2. Add 4ml of **STEP 1** per 15g of lightener powder to the mixture. Use 8ml (¼ oz.) of **STEP 1** when mixing 30g or more of lightener powder.<br>3. Apply lightener or color as usual.<br><br>(Ex. 2048, 2 excerpt, with emphasis added.).<br><br>Use of Bond Ultim8 Step 1 as Petitioner instructs involves mixing an active agent<br><br>formulation comprising an active agent with a bleaching formulation. |
| wherein the active agent is maleic acid; and | The label on the Matrix Bond Ultim8 Step 1 lists the ingredients that it contains:<br><br>**1200591-INGREDIENTS: AQUA / WATER, MALEIC ACID, ETHANOLAMINE, CITRIC ACID, CI 19140 / YELLOW 5, CI 14700 / RED 4, CI 42090 / BLUE 1 (D191397/2)**<br><br>(Ex. 2047, 1). The second ingredient is identified as "maleic acid," which is the active<br><br>agent. |

146

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121091

PGR 2018–00025
Patent No. 9,668,954

| Claim Language | Infringement by Use of Matrix Bond Ultim8 Step 1 |
|---|---|
| (c) applying the mixture to the hair; | Petitioner's instructions provided on the bottle (Ex. 2047, 1), and those that are included in the packaging provided with Matrix Bond Ultim8 Step 1 (Ex. 2048, 2), direct the user to "[a]pply lightener…as usual" after mixing the additive into the bleaching formulation. The mixture is being applied to the hair. <br><br> To the extent this is not self-evident; step "4." of Petitioner's package instructions directs the user to "Rinse lightener…from hair" (which confirms that the mixture is applied to the hair): <br><br> **DIRECTIONS FOR USE:** <br><br> **STEP 1: AMPLIFIER** <br> 1. Mix your lightener or color as usual. <br> 2. Add 4ml of **STEP 1** per 15g of lightener powder to the mixture. Use 8ml (¼ oz.) of **STEP 1** when mixing 30g or more of lightener powder. <br> 3. Apply lightener or color as usual. <br> 4. Rinse lightener color from hair – do not shampoo. Dry thoroughly with a towel. |

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121092

| *Claim Language* | *Infringement by Use of Matrix Bond Ultim8 Step 1* |
|---|---|
| | (Ex. 2048, 2 excerpt, with emphasis added.)[4] <br><br> Use of Bond Ultim8 Step 1 as instructed involves applying the additive/bleaching formulation mixture to hair. |
| wherein the active agent in the mixture is at a concentration ranging from about 0.1% by weight to about 50% by weight. | As discussed above, Bond Ultim8 Step 1 contains the active agent maleic acid. Bond Ultim8 Step 1 was tested at an independent laboratory, ANALYZE INC., to determine the amount of maleic acid present in the Bond Ultim8 Step 1. A report from the testing lab determined that the maleic acid was present in the Bond Ultim8 Step 1 bottle at a concentration of about 10.5 ±0.1 % by weight: |

---

[4]   The reference to "lightener color" in item 4 appears to be a typographical error.  Consistent with items 1 and 3 of the same instructions, I understand and believe that item 4 should read "lightener <u>or</u> color".

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121093

PGR 2018–00025
Patent No. 9,668,954

| Claim Language | Infringement by Use of Matrix Bond Ultim8 Step 1 |
|---|---|
| | Quantitative $^1$H NMR spectroscopy was used to determine the concentrations of both the maleic acid (MA) and monoethanolamine (MEA) using calcium formate as the internal standard.<br><br>The average values of the triplicate NMR assay results are listed in Summary Table I<br><br>**Summary Table I – MA and MEA Assay Results**<br><br>_(table below)_<br><br>The precision of the analyses is good with all average values of the triplicate analyses having a standard deviation of less than $\pm$ 0.1.<br><br>(Ex. 2049, 1, with emphasis added; note that $^1$H NMR is the acronym for Proton Nuclear Magnetic Resonance Spectroscopy, where such spectroscopy services were performed for ANALYZE INC. by the independent laboratory Spectral Data Systems of Champaign, Illinois.) |

Summary Table I – MA and MEA Assay Results

| Sample ID | [MA]<br>Wt-% | [MEA]<br>Wt-% |
|---|---|---|
| Sample 1 - Redken pH Bonder Step 1 | 10.6 | 5.5 |
| Sample 2 - Matrix Bond Ultim 8 Step 1 | 10.5 | 5.4 |
| Sample 3 - L'Oreal Smartbond Step 1 | 10.2 | 5.4 |

149

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

OLA_0000121094

PGR 2018—00025
Patent No. 9,668,954

| Claim Language | Infringement by Use of Matrix Bond Ultim8 Step 1 |
|---|---|
|  | Petitioner's Matrix Bond Ultim8 Step 1 Instructions (Ex. 2048, 2) contain a table that specifies the amounts of lightener or bleach powder, developer, and Bond Ultim8 Step 1 additive to use when bleaching: |

| Lightener/Color (as indicated) | | Developer (6,7, 10-40 volume) | STEP 1 Additive |
|---|---|---|---|
| Powder | 15g-30g | 15-90ml (½-3 oz.) | 4ml (1/8 oz.) |
|  | 30g-60g | 30-120ml (1-4 oz.) | 8ml (1/4 oz.) |

The concentration of active agent in the mixture applied to hair varies from 0.3% by weight to 1.2% by weight, as shown in the table below:

150

Highly Confidential

OLA_0000121095

PGR 2018–00025
Patent No. 9,668,954

| Claim Language | Infringement by Use of Matrix Bond Ultim8 Step 1 | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Bleach | Developer | | Additive | | Maleic acid | Total | Maleic acid |
| | (g) | (ml) | (g) | (ml) | (g) | (g) | (g) | (wt%) |
| | 15 | 15 | 15 | 4 | 4 | 0.42 | 34.0 | 1.2% |
| | 15 | 90 | 90 | 4 | 4 | 0.42 | 109.0 | 0.4% |
| | 30 | 15 | 15 | 4 | 4 | 0.42 | 49.0 | 0.9% |
| | 30 | 90 | 90 | 4 | 4 | 0.42 | 124.0 | 0.3% |

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121096

PGR 2018–00025
Patent No. 9,668,954

| Claim Language | Infringement by Use of Matrix Bond Ultim8 Step 1 | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | Bleach | Developer | | Additive | | Maleic acid | Total | Maleic acid |
| | | (g) | (ml) | (g) | (ml) | (g) | (g) | (g) | (wt%) |
| | | 30 | 30 | 30 | 8 | 8 | 0.84 | 68.0 | 1.2% |
| | | 30 | 120 | 120 | 8 | 8 | 0.84 | 158.0 | 0.5% |
| | | 60 | 30 | 30 | 8 | 8 | 0.84 | 98.0 | 0.9% |
| | | 60 | 120 | 120 | 8 | 8 | 0.84 | 188.0 | 0.4% |

Each of these values is within the range from about 0.1% by weight to about 50% by weight.

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121097

### Redken pH-Bonder #1

312.   Use of Redken pH-Bonder #1 according to Petitioner's instructions provides a method for bleaching or lightening the color of hair. (Ex. 2050, 1 "promotes bond integrity" and "helps protect bonds to keep fibers strong from within during technical services" such as lightening).

313.   Use of Redken pH-Bonder #1 as instructed involves mixing a bleach powder and a developer to form a bleaching formulation. The instructions for use direct the user to use a two-part bleaching formulation having developer and bleach powder. (*Id.*; Ex. 2051, 2).

314.   Use of Redken pH-Bonder #1 as instructed involves mixing a maleic acid active agent formulation with a bleaching formulation. The Redken pH-Bonder #1 label identifies maleic acid as an ingredient. (Ex. 2050, 1). The instructions for use direct the user to mix the pH-Bonder #1 additive with the two-part bleaching formulation having developer and bleach powder. (Ex. 2050, 1; Ex. 2051, 2).

315.   Use of Redken pH-Bonder #1 as instructed also involves applying to hair the additive/bleaching formulation mixture to hair. Petitioner expressly instructs users to "[a]pply lightener…as usual" after mixing the maleic acid active agent formulation with the bleaching formulation. (Ex. 2050, 1; Ex. 2051, 2). The next step in the instructions calls for rinsing the lightener (i.e., the mixture of the

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121098

PGR 2018–00025
Patent No. 9,668,954

bleaching formulation and the additive) out of the hair, which confirms that the mixture had been applied to the hair in the prior step. (Ex. 2050, 1; Ex. 2051, 2).

316.  Redken pH-Bonder #1 has maleic acid at a concentration of about 10.6 wt. %. (Ex. 2049, 1). Using these test results and/or data, together with Petitioner's instructions that come with the Redken pH-Bonder #1, it is possible to determine the concentration of maleic acid (weight percentage) in the mixture that is applied to the hair.

317.  The package instructions that accompany Redken pH-Bonder #1 include a table which specifies amounts of lightener powder, developer, and pH-Bonder #1 additive to use when bleaching hair. The relevant portion of the table is reproduced below:

| Lightener (grams) | Developer (ml) | pH-Bonder #1 Additive (ml) |
|:---:|:---:|:---:|
| 15–30 | 15–90 | 4 |
| 30–60 | 30–120 | 8 |

(Ex. 2051, 3).

318.  The amounts of developer and pH-Bonder #1 additive are given as a volume. To convert these into a mass, I assumed that the density of each was approximately that of water (1 g/ml). Water is expected to be the major component

154

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

OLA_0000121099

of these compositions, and I have seen nothing in the ingredient lists, material safety data sheets, or any other information source to suggest otherwise.

319.   Thus, the total mass of ingredients in the top row was from a minimum of 34 grams (i.e., 15+15+4) to a maximum of 124 grams (i.e., 30+90+4). Using the NMR testing results (Ex. 2049), I calculated the weight of maleic acid present in 4 ml of pH-Bonder #1 additive (0.4 grams). From this I calculated the weight percentage of maleic acid present in that mixture to be between 0.3 – 1.2 wt. %. Following the same process, I determined that the weight percentage of maleic acid present in that mixture in the bottom row to be between 0.4 – 1.2 wt. %.

320.   This analysis demonstrates that when Redken pH-Bonder #1 is used according to Petitioner's instructions, the concentration of maleic acid (weight percentage) in the mixture that is applied to the hair is between about 0.1% by weight and about 50% by weight, as claimed in this element.

321.   The following Table 2 summarizes where each element of claim 1 of the '954 patent is practiced by the use of Petitioner's Redken pH-Bonder #1 product as instructed:

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121100

PGR 2018–00025
Patent No. 9,668,954

TABLE 2

| Claim Language | Infringement by Use of Redken pH-Bonder #1 |
|---|---|
| 1. A method for bleaching hair comprising: | The use of Redken pH-Bonder #1 according to the instructions provides a method for bleaching or lightening the color of hair. (Ex. 2050, 1 ("protects bonds… during technical services" such a hair lightening or bleaching)). |
| (a) mixing a bleach powder and a developer to form a bleaching formulation, | Petitioner's instructions provided on the bottle of Redken pH-Bonder #1 direct the user to make a two-part bleaching formulation from lightener (bleach powder) and developer: <br><br> pH-Bonder #1 helps protect bonds to keep fibers strong from within during technical services. DIRECTIONS: Wearing suitable gloves, mix your lightener or color as usual. **IMPORTANT: Always mix developer and lightener/color before adding pH-Bonder #1.** For lightener, add 4 ml of pH-Bonder #1 for every 15-30 grams (1/2-1 oz) of powder or 8 ml of pH-Bonder #1 for every 30-60 grams (1-2 oz) of powder used in mixture. For color, add 4 ml of pH-Bonder #1 for every 60 grams (2 oz) of colorant used in mixture. Apply lightener or color as usual. Rinse lightener or color from hair - do not shampoo. Dry thoroughly with a towel. <br><br> (Ex. 2050, 1 excerpt, with emphasis added.). The words "powder" and "lightener" refer to bleach powder. <br><br> Petitioner's package instructions (included in the box when Redken pH-Bonder #1 is sold) |

156

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121101

PGR 2018–00025
Patent No. 9,668,954

| Claim Language | Infringement by Use of Redken pH-Bonder #1 |
|---|---|
| | further describe making the bleaching formulation as usual with lightener: <br><br> **DIRECTIONS:** <br> 1 Wearing suitable gloves, mix your lightener or color as usual. **Important: Always mix developer and lightener/color before adding pH-Bonder #1** <br><br> (Ex. 2051, 2 excerpt, with emphasis added.) The word "lightener" refers to bleach powder. <br><br> The bleaching formulation is therefore the combination of bleach powder and developer. |
| (b) mixing an active agent formulation comprising an active agent with the bleaching formulation | Redken pH-Bonder #1 is an active agent formulation comprising an active agent. <br><br> Petitioner's instructions provided on the bottle of Redken pH-Bonder #1 direct the user to mix pH-Bonder #1 with a two-part bleaching formulation: <br><br> pH-Bonder #1 helps protect bonds to keep fibers strong from within during technical services. DIRECTIONS: Wearing suitable gloves, mix your lightener or color as usual. **IMPORTANT: Always mix developer and lightener/color before adding pH-Bonder #1.** For lightener, add 4 ml of pH-Bonder #1 for every 15-30 grams (1/2-1 oz) of powder or 8 ml of pH-Bonder #1 for every 30-60 grams (1-2 oz) of powder used in mixture. For color, add 4 ml of pH-Bonder #1 for every 60 grams (2 oz) of colorant used in mixture. Apply lightener or color as usual. Rinse lightener or color from hair - do not shampoo. Dry thoroughly with a towel. |

157

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

| Claim Language | Infringement by Use of Redken pH-Bonder #1 |
| --- | --- |
| to form a mixture, | [Highlighted text reproduced for clarity:]<br><br>"Wearing suitable gloves, mix your lightener…as usual. IMPORTANT: Always mix developer, and lightener…before adding pH-Bonder #1. For lightener, add 4ml of pH-Bonder #1 for every 15−30 grams (½−1 oz) of powder or 8ml of pH-Bonder #1 for every 30−60 grams (1−2 oz) of powder used in mixture…. Apply lightener…as usual."<br><br>(Ex. 2050, 1 excerpt, with emphasis added.).<br><br>Petitioner's package instructions (included in the box when Redken pH-Bonder #1 is sold) further describe adding pH-Bonder #1 to the bleaching formulation: |

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121103

PGR 2018–00025
Patent No. 9,668,954

| Claim Language | Infringement by Use of Redken pH-Bonder #1 |
|---|---|
| | **DIRECTIONS:**<br><br>1 Wearing suitable gloves, mix your lightener or color as usual. **Important: Always mix developer and lightener/color before adding pH-Bonder #1**<br><br>2 For lightener add 4 ml of **pH-Bonder #1** for every 15-30 grams (1/2 - 1 oz) of powder or 8 ml of **pH-Bonder #1** for every 30-60 grams (1 - 2 oz) of powder used in mixture. For color add 4 ml of **pH-Bonder #1** for every 60 grams (2 oz) of colorant used in mixture.<br><br>(Ex. 2051, 2 excerpt, with emphasis added.).<br><br>Use of Redken pH-Bonder #1 as Petitioner instructs involves mixing an active agent formulation comprising an active agent with a bleaching formulation. |
| wherein the active agent is maleic acid; | The label on Redken pH-Bonder #1 lists the ingredients that it contains. |

159

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

OLA_0000121104

PGR 2018–00025
Patent No. 9,668,954

| Claim Language | Infringement by Use of Redken pH-Bonder #1 |
|---|---|
| and | 1200591 INGREDIENTS: AQUA/WATER/EAU, MALEIC ACID, ETHANOLAMINE, CITRIC ACID, CI 19140/YELLOW 5, CI 14700/ RED 4, CI 42090/BLUE 1 (D191396/1)<br><br>(Ex. 2050, 1). The second ingredient is identified as "maleic acid," which is the active agent. |
| (c) applying the mixture to the hair; | Petitioner's instructions provided on the bottle (Ex. 2050, 1), and those that are included in the packaging provided with Redken pH-Bonder #1 (Ex. 2051, 2), direct the user to "[a]pply lightener…as usual" after mixing the additive into the bleaching formulation. The mixture is being applied to the hair.<br><br>To the extent this is not self-evident; the bottle instructions direct the user to "Rinse lightener…from hair" (which confirms that the mixture is applied to the hair): |

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121105

PGR 2018–00025
Patent No. 9,668,954

| Claim Language | Infringement by Use of Redken pH-Bonder #1 |
|---|---|
| | pH-Bonder #1 helps protect bonds to keep fibers strong from within during technical services. DIRECTIONS: Wearing suitable gloves, mix your lightener or color as usual. **IMPORTANT: Always mix developer and lightener/color before adding pH-Bonder #1.** For lightener, add 4 ml of pH-Bonder #1 for every 15-30 grams (1/2-1 oz) of powder or 8 ml of pH-Bonder #1 for every 30-60 grams (1-2 oz) of powder used in mixture. For color, add 4 ml of pH-Bonder #1 for every 60 grams (2 oz) of colorant used in mixture. Apply lightener or color as usual. Rinse lightener or color from hair - do not shampoo. Dry thoroughly with a towel.

(Ex. 2050, 1 excerpt, with emphasis added.)[5]

Use of Redken pH-Bonder #1 as instructed involves applying the additive/bleaching

formulation mixture to hair. |
| wherein the active agent in the mixture is at a concentration ranging from about 0.1% by weight to | As discussed above, Redken pH-Bonder #1 contains the active agent maleic acid. At my direction, Redken pH-Bonder #1 was tested at an independent laboratory, ANALYZE INC., to determine the amount of maleic acid present in the Redken pH-Bonder #1. A report from the testing lab determined that the maleic acid was present in the Redken pH-Bonder #1 bottle at a concentration of about $10.6 \pm 0.1$ % by weight: |

[5]  The reference to "color" in item 4 appears to be a typographical error.  Consistent with items 1 and 3 of the same instructions, I understand and believe that item 4 should read "lightener or color".

161

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

PGR 2018–00025
Patent No. 9,668,954

| Claim Language | Infringement by Use of Redken pH-Bonder #1 |
|---|---|
| about 50% by weight. | Quantitative [1]H NMR spectroscopy was used to determine the concentrations of both the maleic acid (MA) and monoethanolamine (MEA) using calcium formate as the internal standard.<br><br>The average values of the triplicate NMR assay results are listed in Summary Table I<br><br>**Summary Table I – MA and MEA Assay Results**<br><br>Table below<br><br>The precision of the analyses is good with all average values of the triplicate analyses having a standard deviation of less than ± 0.1.<br><br>(Ex. 2049, 1, with emphasis added; note that [1]H NMR is the acronym for Proton Nuclear Magnetic Resonance Spectroscopy, where such spectroscopy services were performed for ANALYZE INC. by the independent laboratory Spectral Data Systems of Champaign, Illinois.)<br><br>Petitioner's Redken pH-Bonder #1 Instructions (Ex. 2051, 3) contain a table that specifies |

Summary Table I – MA and MEA Assay Results

| Sample ID | [MA] Wt-% | [MEA] Wt-% |
|---|---|---|
| Sample 1 - Redken pH Bonder Step 1 | 10.6 | 5.5 |
| Sample 2 - Matrix Bond Ultim 8 Step 1 | 10.5 | 5.4 |
| Sample 3 - L'Oreal Smartbond Step 1 | 10.2 | 5.4 |

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121107

| Claim Language | Infringement by Use of Redken pH-Bonder #1 |
|---|---|
| | the amounts of lightener or bleach powder (right), developer (middle), and Redken pH-Bonder #1 (left) to use when bleaching: <br><br>  <br><br> The concentration of active agent in the mixture applied to hair varies from 0.3% by weight to 1.2% by weight, as shown in the table below: |

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121108

PGR 2018–00025
Patent No. 9,668,954

| Claim Language | Infringement by Use of Redken pH-Bonder #1 | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Bleach | Developer | | Additive | | Maleic acid | Total | Maleic acid |
| | (g) | (ml) | (g) | (ml) | (g) | (g) | (g) | (wt%) |
| | 15 | 15 | 15 | 4 | 4 | 0.42 | 34 | 1.2% |
| | 15 | 90 | 90 | 4 | 4 | 0.42 | 109 | 0.4% |
| | 30 | 15 | 15 | 4 | 4 | 0.42 | 49 | 0.9% |
| | 30 | 90 | 90 | 4 | 4 | 0.42 | 124 | 0.3% |

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121109

PGR 2018–00025
Patent No. 9,668,954

| Claim Language | Infringement by Use of Redken pH-Bonder #1 | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | Bleach | Developer | | Additive | | Maleic acid | Total | Maleic acid |
| | | (g) | (ml) | (g) | (ml) | (g) | (g) | (g) | (wt%) |
| | | 30 | 30 | 30 | 8 | 8 | 0.85 | 68 | 1.2% |
| | | 30 | 120 | 120 | 8 | 8 | 0.85 | 158 | 0.5% |
| | | 60 | 30 | 30 | 8 | 8 | 0.85 | 98 | 0.9% |
| | | 60 | 120 | 120 | 8 | 8 | 0.85 | 188 | 0.4% |

Each of these values is within the range from about 0.1% by weight to about 50% by weight.

165

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

OLA_0000121110

PGR 2018–00025
Patent No. 9,668,954

## L'Oréal Professionnel Smartbond Step 1

322.    Use of L'Oréal Professionnel Smartbond Step 1 according to Petitioner's instructions provides a method for bleaching or lightening the color of hair. (Ex. 2052, 1 ("[p]rotects bonds and durably strengthens for a stronger hair during technical service" such as lightening)).

323.    Use of L'Oréal Professionnel Smartbond Step 1 as instructed involves mixing a bleach powder and a developer to form a bleaching formulation. The instructions for use direct the user to use a two-part bleaching formulation having developer and bleach powder. (*Id.*; Ex. 2053, 1).

324.    Use of L'Oréal Professionnel Smartbond Step 1 as instructed involves mixing a maleic acid active agent formulation with the bleaching formulation. The Smartbond Step 1 label identifies maleic acid as an ingredient. (Ex. 2052, 1). The instructions for use direct the user to mix the Smartbond Step 1 additive with the two-part bleaching formulation having developer and bleach powder. (Ex. 2052, 1; Ex. 2053, 1).

325.    Use of L'Oréal Professionnel Smartbond Step 1 as instructed also involves applying to hair the additive/bleaching formulation mixture. Petitioner expressly instructs users to apply the lightener "as usual according to the instructions" after mixing the maleic acid active agent formulation with the bleaching formulation. (Ex. 2052, 1; Ex. 2053, 1). The next step in the instructions

166

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121111

PGR 2018–00025
Patent No. 9,668,954

calls for "rins[ing] off" of the lightener (i.e., the mixture of the bleaching formulation and the additive) from the hair, which confirms that the mixture had been applied to the hair in the prior step. (Ex. 2052, 1; Ex. 2053, 1).

326.  L'Oréal Professionnel Smartbond Step 1 has maleic acid at a concentration of about 10.2 wt. %. (Ex. 2049, 1). Using these test results and/or data, together with Petitioner's instructions that come with the Smartbond Step 1, it is possible to determine the concentration of maleic acid (weight percentage) in the mixture that is applied to the hair.

327.  The package instructions that accompany L'Oréal Professionnel Smartbond Step 1 include a table which specifies amounts of lightener powder, developer, and Smartbond Step 1 additive to use when bleaching hair. The relevant portion of the table is reproduced below:

| Lightener Powder (grams) | Developer | Smartbond Step 1 Additive (ml) |
|---|---|---|
| 15–30 | 1:1 or 1:1.5 or 1:2 | 4 |
| 30–60 | | 8 |

(Ex. 2053, 1).

167

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

OLA_0000121112

PGR 2018–00025
Patent No. 9,668,954

328.    The "Developer" column provides mixing ratios describing the relative amount of developer used with the lighter. In a 1:1 mixing ratio, 15 grams of lightener powder are used with 15 milliliters (ml) of developer. In a 1:2 mixing ratio, 15 grams of lightener powder are used with 30 milliliters (ml) of developer. My conclusions would be the same for any of these ratios.

329.    The amounts of developer and Smartbond Step 1 additive are given as a volume. To convert these into a mass, I assumed that the density of each was approximately that of water (1 g/ml). Water is expected to be the major component of these compositions, and I have seen nothing in the ingredient lists, material safety data sheets, or any other information source to suggest otherwise.

330.    Thus, the total mass of ingredients in the top row was from a minimum of 34 grams (i.e., 15+15+4) to a maximum of 94 grams (i.e., 30+60+4). Using the NMR testing results, I calculated the weight of maleic acid present in 4 ml of Smartbond Step 1 additive (0.4 grams). From this I calculated the weight percentage of maleic acid present in that mixture to be between $0.4-1.2$ wt. %. Following the same process, I determined that the weight percentage of maleic acid present in that mixture in the bottom row to be between $0.4-1.2$ wt. %.

331.    This analysis demonstrates that, when L'Oréal Professionnel Smartbond Step 1 is used according to Petitioner's instructions, the concentration

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121113

PGR 2018–00025
Patent No. 9,668,954

of maleic acid (weight percentage) in the mixture that is applied to the hair is between about 0.1% by weight and about 50% by weight.

332.   The following Table 3 summarizes where each element of claim 1 of the '954 patent is practiced by the use of Petitioner's L'Oréal Professionnel Smartbond Step 1 product as instructed:

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121114

PGR 2018–00025
Patent No. 9,668,954

TABLE 3

| Claim Language | Infringement by Use of L'Oréal Professionnel Smartbond Step 1 |
|---|---|
| 1. A method for bleaching hair comprising: | The use of Smartbond Step 1 according to the instructions provides a method for bleaching or lightening the color of hair. (Ex. 2052, 1 ("[p]rotects bonds and durably strengthens for a stronger hair during technical service" such as lightening)). |
| (a) mixing a bleach powder and a developer to form a bleaching formulation, | Petitioner's instructions provided on the bottle of Smartbond Step 1 direct the use of the Smartbond Step 1 additive with a two-part bleaching formulation made from lightener (bleach powder) and developer: |

170

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121115

PGR 2018–00025
Patent No. 9,668,954

| Claim Language | Infringement by Use of L'Oréal Professionnel Smartbond Step 1 |
|---|---|
| | **STEP 1**<br>**USA - BOND STRENGTHENING SYSTEM ADDITIVE.**<br>Suitable for all hair types.<br><br>**DIRECTIONS:** To make dosage easier, a graduated dispenser is included in this kit. Use this dispenser for appropriate dosage. Wash the dispenser thoroughly after every use. Always store the bottle in the upright position.<br>**1.** Mix your lightener or color as usual. Important: Always mix developer and lightener/color before adding Smartbond Step 1.<br>**2. For lightener product,** add 4 ml (.14 oz) of Step 1 additive for every 15-30 g (1/2-1 oz) or 8 ml of Step 1 additive for every 30-60 g (1-2 oz) of lightening product used in the final mixture.<br><br>(Ex. 2052, 1 excerpt, with emphasis added.). The words "lightener," "lightener product," and "lightening product" refer to bleach powder.<br><br>Petitioner's package instructions (included in the box when Smartbond Step 1 is sold)<br><br>further describe making the bleaching formulation as usual with lightener and developer: |

171

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121116

PGR 2018–00025
Patent No. 9,668,954

| Claim Language | Infringement by Use of L'Oréal Professionnel Smartbond Step 1 |
|---|---|
| | **#1** **MIX** <br><br> MIX YOUR LIGHTENER AS USUAL. IMPORTANT: ALWAYS MIX DEVELOPER AND LIGHTENER BEFORE ADDING SMARTBOND STEP 1. ADD 4 ML (.14 OZ) OF STEP 1 ADDITIVE FOR EVERY 15-30 G (1/2-1 OZ) OR 8 ML OF STEP 1 ADDITIVE FOR EVERY 30-60 G (1-2 OZ) OF LIGHTENING PRODUCT USED IN THE FINAL MIXTURE. <br><br> **#2** **APPLICATION** <br><br> APPLY AS USUAL ACCORDING TO INSTRUCTIONS. RINSE OFF. DO NOT SHAMPOO. TOWEL DRY HAIR WELL TO REMOVE EXCESS MOISTURE. <br><br> (Ex. 2053, 1 excerpt, with emphasis added.) The words "lightener" and "lightening product" refer to bleach powder. The bleaching formulation is therefore the combination of bleach powder and developer. |
| (b) mixing an active | L'Oréal Professionnel Smartbond Step 1 is a formulation comprising an active agent. |

172

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121117

PGR 2018-00025
Patent No. 9,668,954

| Claim Language | Infringement by Use of L'Oréal Professionnel Smartbond Step 1 |
|---|---|
| agent formulation comprising an active agent with the bleaching formulation to form a mixture, | Petitioner's instructions provided on the bottle of Smartbond Step 1 direct the user to mix Smartbond Step 1 with a two-part bleaching formulation: <br><br> **STEP 1** <br><br> **USA - BOND STRENGTHENING SYSTEM ADDITIVE.** <br> Suitable for all hair types. <br><br> **DIRECTIONS:** To make dosage easier, a graduated dispenser is included in this kit. Use this dispenser for appropriate dosage. Wash the dispenser thoroughly after every use. Always store the bottle in the upright position. <br><br> **1.** Mix your lightener or color as usual. Important: Always mix developer and lightener/color before adding Smartbond Step 1. <br><br> **2. For lightener product,** add 4 ml (.14 oz) of Step 1 additive for every 15-30 g (1/2-1 oz) or 8 ml of Step 1 additive for every 30-60 g (1-2 oz) of lightening product used in the final mixture. <br><br> (Ex. 2052, 1 excerpt, with emphasis added.). <br><br> Petitioner's package instructions (included in the box when Smartbond Step 1 is sold) further describe mixing the Smartbond Step 1 additive with the bleaching formulation: |

173

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121118

PGR 2018–00025
Patent No. 9,668,954

| Claim Language | Infringement by Use of L'Oréal Professionnel Smartbond Step 1 |
|---|---|
| | **#1** **MIX** <br><br> MIX YOUR LIGHTENER AS USUAL. IMPORTANT: ALWAYS MIX DEVELOPER AND LIGHTENER BEFORE ADDING SMARTBOND STEP 1. ADD 4 ML (.14 OZ) OF STEP 1 ADDITIVE FOR EVERY 15-30 G (1/2-1 OZ) OR 8 ML OF STEP 1 ADDITIVE FOR EVERY 30-60 G (1-2 OZ) OF LIGHTENING PRODUCT USED IN THE FINAL MIXTURE. <br><br> **#2** **APPLICATION** <br><br> APPLY AS USUAL ACCORDING TO INSTRUCTIONS. RINSE OFF. DO NOT SHAMPOO. TOWEL DRY HAIR WELL TO REMOVE EXCESS MOISTURE. <br><br> (Ex. 2053, 1 excerpt, with emphasis added.). <br><br> Use of Smartbond Step 1 as Petitioner instructs involves mixing a formulation comprising an active agent with a bleaching formulation. |
| wherein the active | The label on L'Oréal Professionnel Smartbond Step 1 lists the ingredients that it contains: |

174

Highly Confidential

OLA_0000121119

PGR 2018–00025
Patent No. 9,668,954

| Claim Language | Infringement by Use of L'Oréal Professionnel Smartbond Step 1 |
|---|---|
| agent is maleic acid; and | 1112405 - INGREDIENTS: AQUA / WATER / EAU • MALEIC ACID • ETHANOLAMINE • CI 19140 / YELLOW 5 • CI 14700 / RED 4 • CI 42090 / BLUE 1. D193050/1. (Ex. 2052, 1). The second ingredient is identified as "maleic acid," which is the active agent. Smartbond Step 1 therefore has maleic acid as the active agent. |
| (c) applying the mixture to the hair; | Petitioner's instructions provided on the bottle (Ex. 2052, 1), and those that are included in the packaging provided with L'Oréal Professionnel Smartbond Step 1 (Ex. 2053, 1), direct the user to "[a]pply lightener…as usual" after mixing the additive into the bleaching formulation. The mixture is being applied to the hair. To the extent this is not self-evident; the label instructions confirms that the mixture is applied to the hair because they direct the user to "Rinse thoroughly lightener…from hair" (which confirms that he mixture is applied to the hair): **3.** Apply lightener or color mixture as usual. Rinse thoroughly lightener or color mixture from hair. |

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121120

PGR 2018—00025
Patent No. 9,668,954

| Claim Language | Infringement by Use of L'Oréal Professionnel Smartbond Step 1 |
|---|---|
| | (Ex. 2052, 1 excerpt, with emphasis added). <br><br> Use of Smartbond Step 1 as instructed involves applying the additive/bleaching formulation mixture to hair. |
| wherein the active agent in the mixture is at a concentration ranging from about 0.1% by weight to about 50% by weight. | As discussed above, Smartbond Step 1 contains the active agent maleic acid. Smartbond Step 1 was tested at an independent laboratory, ANALYZE INC., to determine the amount of maleic acid in the Smartbond Step 1. A report from the testing lab determined that the maleic acid was present in the Smartbond Step 1 bottle at a concentration of about 10.2 $\pm 0.1$ % by weight: |

176

Highly Confidential

OLA_0000121121

PGR 2018–00025
Patent No. 9,668,954

| Claim Language | Infringement by Use of L'Oréal Professionnel Smartbond Step 1 |
|---|---|
| | Quantitative $^1$H NMR spectroscopy was used to determine the concentrations of both the maleic acid (MA) and monoethanolamine (MEA) using calcium formate as the internal standard.<br><br>The average values of the triplicate NMR assay results are listed in Summary Table I<br><br>**Summary Table I – MA and MEA Assay Results**<br><br>{TABLE}<br><br>The precision of the analyses is good with all average values of the triplicate analyses having a standard deviation of less than $\pm$ 0.1.<br><br>(Ex. 2049, 1, with emphasis added; note that $^1$H NMR is the acronym for Proton Nuclear Magnetic Resonance Spectroscopy, where such spectroscopy services were performed for ANALYZE INC. by the independent laboratory Spectral Data Systems of Champaign, Illinois.)<br><br>Petitioner's Smartbond Step 1 Instructions (Ex. 2053, 1) contain a table that specifies the |

Summary Table I:

| Sample ID | [MA] Wt-% | [MEA] Wt-% |
|---|---|---|
| Sample 1 - Redken pH Bonder Step 1 | 10.6 | 5.5 |
| Sample 2 - Matrix Bond Ultim 8 Step 1 | 10.5 | 5.4 |
| Sample 3 - L'Oreal Smartbond Step 1 | 10.2 | 5.4 |

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121122

PGR 2018–00025
Patent No. 9,668,954

| Claim Language | Infringement by Use of L'Oréal Professionnel Smartbond Step 1 | | | |
|---|---|---|---|---|
| | amounts of lightener or bleach powder, developer, and Smartbond Step 1 additive to use when bleaching hair: | | | |

| LIGHTENER PRODUCTS | QUANTITY OF PRODUCT | DEVELOPER | STEP 1 |
|---|---|---|---|
| Lightening Oil | 30 ml (1.01 oz) | 1:2 | 2 ml (.07 oz) |
| | 60 ml (2.03 oz) | | 4 ml (.14 oz) |
| Powder / Pastes | 15-30 g | 1:1 or 1:1.5 or 1:2 | 4 ml (.14 oz) |
| | 30-60 g | | 8 ml (.28 oz) |
| Blond Studio Majimèches | 1 sachet | 1:1:1 | 4 ml (.14 oz) |

The concentration of active agent in the mixture varies from 0.3% by weight to 1.2% by weight, as shown in the table below:

178

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

OLA_0000121123

PGR 2018-00025
Patent No. 9,668,954

| Claim Language | Infringement by Use of L'Oréal Professionnel Smartbond Step 1 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Bleach | Developer | | Additive | | Maleic acid | Total | Maleic acid | |
| | (g) | (ml) | (g) | (ml) | (g) | (g) | (g) | (wt%) | |
| | 15 | 15 | 15 | 4 | 4 | 0.41 | 34 | 1.2% | |
| | 15 | 22.5 | 22.5 | 4 | 4 | 0.41 | 41.5 | 1.0% | |
| | 15 | 30. | 30 | 4 | 4 | 0.41 | 49 | 0.8% | |
| | 30 | 30 | 30 | 4 | 4 | 0.41 | 64 | 0.6% | |
| | 30 | 45 | 45 | 4 | 4 | 0.41 | 79 | 0.5 | |
| | 30 | 60 | 60 | 4 | 4 | 0.42 | 94 | 0.4% | |

179

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

PGR 2018–00025
Patent No. 9,668,954

| Claim Language | Infringement by Use of L'Oréal Professionnel Smartbond Step 1 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | Bleach | Developer | | Additive | | Maleic acid | Total | Maleic acid |
| | | (g) | (ml) | (g) | (ml) | (g) | (g) | (g) | (wt%) |
| | | 30 | 30 | 30 | 8 | 8 | 0.82 | 68 | 1.2% |
| | | 30 | 45 | 45 | 8 | 8 | 0.82 | 83 | 1.0% |
| | | 30 | 60 | 60 | 8 | 8 | 0.82 | 98 | 0.8 |
| | | 60 | 60 | 60 | 8 | 8 | 0.82 | 128 | 0.6% |
| | | 60 | 90 | 90 | 8 | 8 | 0.82 | 158 | 0.5% |
| | | 60 | 120 | 120 | 8 | 8 | 0.82 | 188 | 0.4% |

Each of these values is within the range from about 0.1% by weight to about 50% by

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121125

PGR 2018—00025
Patent No. 9,668,954

| Claim Language | *Infringement by Use of L'Oréal Professionnel Smartbond Step 1* |
|---|---|
| | weight. |

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121126

PGR 2018–00025
Patent No. 9,668,954

333.   Accordingly, it is my opinion that each of Petitioner's three products (Matrix Bond Ultim8 Step 1 Amplifier; Redken pH-Bonder #1 Bond Protecting Additive; L'Oréal Professionnel Smartbond Step 1 Additive) have in fact copied the patented features of '954 patent claim 1, and infringe at least that claim.

334.   I am informed that Petitioner has previously argued that its copying of Patent Owner's patented technology is not evidence of nonobviousness because Patent Owner did not establish that Petitioner's products were copied from Patent Owner's commercial product.

335.   Shortly before meeting with Mr. Christal and Dr. Pressly on May 19, 2015, one of Petitioner's executives explained the state of Petitioner's knowledge:

- "Labs believe that there is something really new and different here" (referring to the Olaplex product)

- "The Olivia [a coded reference to Patent Owner's technology] and OA P1 are completely different."

- Petitioner "do[es] not know that [technologies Petitioner was attempting to patent] would work to create a customer benefit."

- Another of Petitioner's executives "also wants to keep working while we are receiving confidential information under the NDA, again the [sic] relying on the Chinese wall."

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121127

- Another of Petitioner's executives "believes the [Petitioner] Labs are not really close to a solution either with OA P1 or with a technology near Olivia."

(Ex. 2067 at LO_USA0056223).

336.   After the meeting with Mr. Christal and Dr. Pressly, Petitioner provided a positive assessment of "Project Olivia." A June 18, 2015 presentation describes Petitioner's strategic interest continued to be "[a]cquir[ing] an original, patented technology" (i.e., Patent Owner's technology). (Ex. 2068 at LO_USA0002427). Although there had been the "multiplication of copycats since Jan 2015" coming to the market, but "none with the same impact." (*Id.* at LO_USA0002423–24).

337.   Eleven days later, the Chairman of Petitioner's corporate parent (Jean-Paul Agon) commented that "This is a great technological innovation" and "[i]t would have been preferable to invent it ourselves but that was not the case." (Ex. 2069 at LO_USA0035379). Petitioner's Chairman framed the choice as either Petitioner's research and innovation "guarantee that it is able to develop an equivalent product within 12 months" or "we have to buy it." (*Id.*).

338.   In my opinion, Petitioner's copying of the '954 patent invention from Patent Owner instead of developing it from the references from which it claimed

Highly Confidential

OLA_0000121128

PGR 2018–00025
Patent No. 9,668,954

the invention would have been obvious, is powerful evidence that confirms the patentability and nonobviousness of the challenged '954 patent claims.

### 3.   Commercial Success of Petitioner's Copy Products

339.   In my opinion, the '954 patent invention has exhibited commercial success directly resulting from use the invention of '954 patent claim 1. Petitioner's three products, which practice claim 1 of the '954 patent when used as Petitioner instructs as shown in the preceding section, have exhibited commercial success directly resulting from incorporation of the claimed invention.

340.   Prior to May 2014, I am not aware that Petitioner or any third party was selling a product with instructions to practice the method of the '954 patent claim 1. As discussed in Section XI.E.2 (above), I have determined that use of Petitioner's Matrix Bond Ultim8 Step 1 Amplifier; (b) Redken pH-Bonder #1 Bond Protecting Additive; (c) L'Oréal Professionnel Smartbond Step 1 Additive as instructed practice the method of '954 patent claim 1.

341.   Based on my review of the sales figures contained in Exhibit 2070 (at pages 8–10 and, 27–28), Petitioner's sales of these products have been significant (generating $10.2 million in review between 2016 and February 2018).  A POSITA would have understood that the great commercial success of Petitioner's copy products is based on the benefits provided by practicing the method of claim 1 of

184

Highly Confidential

OLA_0000121129

the '954 patent, which are practiced by each Petitioner's products when they are used as instructed.

342.    It is my opinion that practicing the method of claim 1 of the '954 patent contributed significantly to the commercial success of Petitioner's copy products.

343.    Accordingly, the commercial success of Petitioner's copy products which use the invention of '954 patent claim 1 confirms the patentability and nonobviousness of at least '954 patent claim 1.

4.    Unexpected Results Provided by the '954 Patent Invention

344.    In my opinion, the unexpected results provided by using the method of '954 patent claim 1 invention also confirm the patentability and nonobviousness of at least that claim.

345.    Patent Owner has results of experiments to the Patent Office showing that various concentrations of maleic acid when used as described in '954 patent claim 1 provides significant benefits when added to an alkaline bleaching mixture:

185

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121130

PGR 2018–00025
Patent No. 9,668,954

| Description | Exhibit |
|---|---|
| Maleic acid at 2.8 wt% concentration in bleaching mixture provided "noticeable different in hair quality" and "hair was softer, less frizzy, appeared hydrated, with more shine than the control." | Ex. 1001, Col. 22, line 38–Col. 23, line 17 (Example 3) |
| Maleic acid at 1.1 wt% concentration in bleaching mixture reduced hair breakage, improved the feel of the hair, and provided an overall healthy appearance, while similar carboxylic acids and other chemicals did not. | Ex. 2038, pp. 4–6 |
| Maleic acid at 0.1 wt%, 0.7 wt%, and 5 wt% concentrations improved hair quality (breakage, feel, and appearance) while equivalent concentrations of citric acid did not. | Ex. 2041, ¶¶6–10 |

346.   These results demonstrate the benefits of a maleic acid active agent in a bleaching mixture over the concentration range from 0.1 wt% to 5 wt%. Given the consistent benefit provided by this active agent at five different concentrations

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121131

PGR 2018–00025
Patent No. 9,668,954

within that range, a POSITA would have expected that benefit to persist at higher concentrations of active agent throughout the range in claim 1 of the '954 patent.

347.   These results show that the invention of '954 patent claim 1 provides a tangible benefit in terms of improving the quality of bleached hair over the claimed range of active agent concentrations. A POSITA would not have expected a maleic acid active agent to have had this effect, which confirms the patentability and nonobviousness of at least '954 patent claim 1.

### 5.   Skepticism and Praise by Others of the '954 Patent Invention

348.   In my opinion, the expressions of skepticism and praise of those skilled in the art further confirms the patentability and nonobviousness of '954 patent claim 1.

349.   During prosecution, the Patent Examiner was initially skeptical that the selection of maleic acid out of the group of known di- and tri-carboxylic acids was inventive. To quell her concerns, the Examiner requested evidence in the form a declaration with experimental results showing that a small change in the chemical structure of the active agent (for example going from citric acid to maleic acid) actually produced a significant improvement in the quality of the hair following bleaching. (Ex. 2037, p. 2). That declaration was filed on October 29, 2015, and it showed a bleaching mixture with about 1.1 wt% maleic acid reduced

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121132

hair breakage, improved the feel of the hair, and provided an overall healthy appearance, while similar carboxylic acids and other chemicals did not. (Ex. 2038, pp. 4–6). The Examiner then allowed the pending claims and explained "[o]ne of ordinary skill in the art would not have expected the significant difference in hair quality (breakage, feel, and appearance)" resulting from the use of maleic acid. (Ex. 2039, p. 10). This led to the issuance of the related '926 patent.

350.   Then, during prosecution of the '455 application, the Examiner again requested data showing the unique benefits of using maleic acid during a hair bleaching method as compared with similar chemicals. (Ex. 2040, p. 3). An August 6, 2018 declaration by Dr. Pressly details a series of experiments showing the unexpected results provided by maleic acid or salts thereof as compared with other common acids or salts thereof (e.g., citric acid). (Ex. 2041, ¶5). The Examiner went on to explain that Dr. Pressly's declaration (Ex. 2041) "is persuasive to establish the unexpectedness of maleic acid compared to conventional acids utilized as pH adjusters, namely citric acid." (Ex. 2042, p. 8). This led to the issuance of the related '478 patent.

351.   Thus, the Patent Examiner who is an expert in the technical field of the '954 patent, was initially skeptical that maleic acid could actually provide a benefit over similar chemicals, which confirms the patentability and nonobviousness of at least '954 patent claim 1.

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121133

PGR 2018–00025
Patent No. 9,668,954

352.   The invention of claim 1 of the '954 patent has also received industry praise (from no less than the Chairman of Petitioner's corporate parent), who said Patent Owner's invention "is a great technological innovation, which can be extremely creative value…, to give [Petitioner] a major competitive advantage." (Ex. 2069 at LO_USA0035379). This technology was a "must have." (*Id.*; see also Ex. 2071 at LO_USA0026489 ("this is [the] greatest opportunity I've seen at L'Oréal in 30 years.")

353.   These statements of praise from Petitioner recognize that the Patent Owner's technology is both valuable and innovative.

354.   In view of such skepticism from the independent patent examiner and the strong praise from a sophisticated competitor for the claimed invention, these objective indicia support the conclusion that claim 1 of the '954 patent is nonobvious.

F.   GROUNDS #1 & #3: THE HAIR BLEACHING METHOD OF '954 PATENT CLAIMS 2–16, 18, 19, 21, AND 23–30 WOULD NOT HAVE BEEN OBVIOUS TO A POSITA AS OF MAY 16, 2014 IN LIGHT OF PRATT IN VIEW OF TANABE

355.   In my opinion, Petitioner also has failed to establish that claims 2–16, 18, 19, 21 and 23–30 would have been unpatentable as obvious over either Pratt/Tanabe or Pratt/Tanabe/Berkemer/KR '564.

**Liqwd, Inc. Ex. 2072**
**L'Oreal USA, Inc. v. Liqwd, Inc.**
**PGR2018-00025**

Highly Confidential

OLA_0000121134

PGR 2018–00025
Patent No. 9,668,954

356.   I detail above in Sections XI.A and XI.C that'954 patent claim 1 is not rendered unpatentable as obvious by these combinations of references. Because I have determined that claim 1 of the '954 patent would not have been obvious to a POSITA, I am informed and understand that no dependent claim of the '954 patent can be found to have been obvious. For at least that reason, claims 2–16, 18, 19, 21 and 23–30 of the '954 patent are patentable.

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121135

## XII. CONCLUSION

357.  Accordingly, it is my opinion that the Board should uphold the

patentability of the '954 patent claims.

I declare, under the penalty of perjury, that the foregoing is true and correct.

Executed on November 16, 2018, at Westerville, Ohio.

Edward T. Borish, Ph.D.

191

Liqwd, Inc. Ex. 2072
L'Oreal USA, Inc. v. Liqwd, Inc.
PGR2018-00025

Highly Confidential

OLA_0000121136

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C. A. No. 1:17-cv-00014-JFB-SRF |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA | ) | **CONFIDENTIAL –** |
| PRODUCTS, INC., L'ORÉAL USA | ) | **FILED UNDER SEAL** |
| S/D, INC., and REDKEN 5TH AVENUE | ) | |
| NYC, L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION *IN LIMINE* NO. 2 TO PRECLUDE REFERENCE TO OR USE OF POST GRANT REVIEW PROCEEDINGS RELATING TO THE PATENTS-IN-SUIT

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Adam DiClemente
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5200

May 13, 2019

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

*Attorneys for Plaintiffs*

Plaintiffs' ("Olaplex") Motion acknowledged that the relief would apply to all parties (Mot. at 1 n.1) and never objected to this Court's order extending to all parties.  *Cf.* Opp. at 1. L'Oréal's contrary claim is unfounded.  First, L'Oréal's reliance on *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340 (Fed. Cir. 2004) (Mot. at 1) as a basis for admitting the PGR results is misplaced since that case does not concern the admission of PGR (or any type of PTAB proceeding) evidence before a jury at all.  Second, L'Oréal's assertion that "PGR proceedings . . . are relevant to both Plaintiffs' and Defendants' claims and defenses" is belied by the wealth of authority cited by Olaplex establishing the opposite. Mot. at 2-3.  Even so, the risk of misuse would trigger exclusion under Rule 403.  L'Oréal's third point (Opp. at 1-2) is mislaid: Olaplex's position is not that *evidence* must be excluded simply because it happened to be submitted in a PGR proceeding. Rather, Olaplex's seeks an order, just as this Court entered in *Hologic, Inc. v. Minerva Surgical*, 2018 WL 3348998 (D. Del. July 9, 2018), precluding reference to "the PTAB's substantive proceeding, findings, and decision." *Id.* at *4.  For the same reason, L'Oréal's fourth point (Opp. at 2-3) fails.  The relief requested would not preclude use of prior witness declarations and depositions taken in connection with PGR proceedings.  However, if L'Oréal seeks to offer such evidence in this proceeding, it should be precluded from informing the jury that they were submitted in PGR proceedings or the results thereof.  *See* Mot. at 2-3 (collecting cases).  Finally, L'Oréal mischaracterizes this Court's *Hologic* decision granting the same relief Olaplex requests here. The *Hologic* decision did not find that PGR proceedings were relevant to intent or willfulness, but found those issues moot based on Rule 56 rulings.  *Id.* at *4.  *Hologic* held:

> [B]ecause the patent office proceeding and decision are not binding … the prejudicial and confusing effect of the evidence almost certainly outweighs any probative value…. The substance of the proceeding and decision will not be admitted.

*Id.*  The same results should follow here.  Olaplex requests this Court grant its Motion.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Adam DiClemente
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5200

May 13, 2019

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 13, 2019, copies of the foregoing were caused to be served

upon the following in the manner indicated:

Frederick L. Cottrell, Esquire                               *VIA ELECTRONIC MAIL*
Jeffrey L. Moyer, Esquire
Jason J. Rawnsley, Esquire
Katharine Lester Mowery, Esquire
RICHARDS, LAYTON & FINGER, PA
One Rodney Square
920 North King Street
Wilmington, DE  19801
*Attorneys for Defendants*

Dennis S. Ellis, Esquire                               *VIA ELECTRONIC MAIL*
Katherine Murray, Esquire
Adam M. Reich, Esquire
Serli Polatoglu, Esquire
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA  90071
*Attorneys for Defendants*

Naveen Modi, Esquire                               *VIA ELECTRONIC MAIL*
Joseph E. Palys, Esquire
Daniel Zeilberger, Esquire
Michael A. Wolfe, Esquire
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, D.C.  20005
*Attorneys for Defendants*

Scott F. Peachman, Esquire                               *VIA ELECTRONIC MAIL*
PAUL HASTINGS LLP
200 Park Avenue
New York, NY  10166
*Attorneys for Defendants*

*/s/ Anthony D. Raucci*
Anthony D. Raucci (#5948)

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C. A. No. 17-14 (JFB) (SRF) |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA | ) | **CONFIDENTIAL –** |
| PRODUCTS, INC., L'ORÉAL USA S/D, | ) | **FILED UNDER SEAL** |
| INC., and REDKEN 5TH AVENUE | ) | |
| NYC, L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MOTION *IN LIMINE* NO. 3 TO PRECLUDE REFERENCE TO L'ORÉAL'S PATENTS AS EVIDENCE OF NON-INFRINGEMENT

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Adam DiClemente
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5200

May 1, 2019

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

*Attorneys for Plaintiffs*

Defendants ("L'Oréal") should be precluded from referencing or using at trial its own patents and patent applications (including prosecutions histories) to argue or suggest that L'Oréal does not infringe Olaplex's Patents-in-Suit.

## I.     BACKGROUND

Plaintiffs ("Olaplex") claim that L'Oréal infringes U.S. Patent No. 9,498,419 ("'419 Patent") and No. 9,668,954 ("'954 Patent"). D.I. 636, at 25-37.[1]

## II.    PRECLUSION IS THE APPROPRIATE REMEDY

This case concerns L'Oréal's infringement of Olaplex's '419 and '954 Patents. At trial, the jury will be asked to determine whether use of L'Oréal's Accused Product satisfies all elements of the Patents-in-Suit by comparing the claim terms, as construed by the Court, to the Accused Product and the usage thereof. L'Oréal's own patents (allegedly covering the Accused Products or not) do not bear upon this inquiry. The law is clear on this point. *See Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996) ("That [defendants] patented its [accused] method is irrelevant: 'The existence of one's own patent does not constitute a defense to infringement of someone else's patent.'" (citation omitted)); *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1300-01 (Fed. Cir. 2015) ("[T]he facts that [the defendant] sought and obtained patents gave it no defense to patent infringement . . . ."); *Sonos, Inc. v. D&M Holdings Inc.*, 2017 WL 5633204, at *1 (D. Del. Nov. 21, 2017) ("The fact that [defendants] ha[ve] patents in the same technological field is not a defense to infringement . . . .").

Reference, use, or introduction of L'Oréal's patents at trial to suggest they are exculpatory would confuse the jury by implying that L'Oréal would not have received its patents

---

[1]   The parties are exchanging initial exhibits lists concurrently with this filing. As such, Olaplex cannot yet identify any specific trial exhibits to which this Motion applies.

if its products using that patented technology infringed Olaplex's patents.  That, of course, is a legally erroneous assumption—a product can practice more than one patent.  *See, e.g.*, *Atlas Powder Co. v. E.I. du Pont de Nemours & Co.*, 750 F.2d 1569, 1580 (Fed. Cir. 1984).  Further, disputes at trial about the scope and validity of L'Oréal's patents, which are not asserted and have not been subject of claim construction or other motions practice, would greatly compound the confusion.  *See Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 2000 WL 34334583, at *6 (N.D. Cal. Mar. 31, 2000) ("Had the Court allowed this evidence . . . the trial would have devolved into a series of collateral disputes dealing with the scope and validity of each of [defendant's] asserted patents. The Court is satisfied that it did not abuse its discretion in excluding evidence that the [accused product] was covered by [defendant]'s patents.").

Courts have repeatedly excluded an infringer's patents under Rule 403 due to the potential prejudice to the plaintiff and the high risk of jury confusion.  "The fact that [defendants] ha[ve] patents . . . could mislead the jury into believing that [defendants'] patents give it the right to practice technology that is covered by those patents . . . ."  *Sonos, Inc.*, 2017 WL 5633204, at *1.  This would improperly "shift the focus of the trial from the validity and infringement of [the plaintiff's] patent to the validity of [the defendant's] patent" thereby "distracting and confusing

. . . the jury, while providing little, if any, relevant information."  *Cameco Indus., Inc. v. La. Cane Mfg., Inc.*, 1995 WL 468234, at *6 (E.D. La. July 27, 1995) (excluding defendant's patent because they were "unfairly prejudicial to the plaintiff").  This Court has recently issued an order *in limine* to prevent this form of evidence from reaching the jury "as to evidence that relates to infringement or embodiment" in a patent infringement case.  *See Hologic, Inc. v. Minerva Surgical, Inc.*, 2018 WL 3348998, at *5 (D. Del. July 9, 2018) ("Minerva's patents will not be

admitted to show or suggest that the fact that Minerva obtained a patent means they do not infringe Hologic's patent.").

## III.    **CONCLUSION**

Olaplex respectfully requests that the Court grant this motion and enter an order precluding L'Oréal from referencing or using at trial its own patents and patent applications (and prosecutions histories) to argue or suggest that they show L'Oréal does not infringe.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Adam DiClemente
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5200

May 1, 2019

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 1, 2019, copies of the foregoing were caused to be served upon the following in the manner indicated:

Frederick L. Cottrell, Esquire                     *VIA ELECTRONIC MAIL*
Jeffrey L. Moyer, Esquire
Jason J. Rawnsley, Esquire
Katharine Lester Mowery, Esquire
RICHARDS, LAYTON & FINGER, PA
One Rodney Square
920 North King Street
Wilmington, DE  19801
*Attorneys for Defendants*

Dennis S. Ellis, Esquire                           *VIA ELECTRONIC MAIL*
Katherine Murray, Esquire
Adam M. Reich, Esquire
Serli Polatoglu, Esquire
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA  90071
*Attorneys for Defendants*

Naveen Modi, Esquire                               *VIA ELECTRONIC MAIL*
Joseph E. Palys, Esquire
Daniel Zeilberger, Esquire
Michael A. Wolfe, Esquire
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, D.C.  20005
*Attorneys for Defendants*

Scott F. Peachman, Esquire                         *VIA ELECTRONIC MAIL*
PAUL HASTINGS LLP
200 Park Avenue
New York, NY  10166
*Attorneys for Defendants*

*/s/ Anthony D. Raucci*
Anthony D. Raucci (#5948)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-14-JFB-SRF |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA | ) | **CONFIDENTIAL** |
| PRODUCTS, INC., L'ORÉAL USA S/D, INC., | ) | **FILED UNDER SEAL** |
| and REDKEN 5TH AVENUE NYC, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION *IN LIMINE* NO. 3 TO PRECLUDE REFERENCE TO L'OREAL USA'S PATENTS AS EVIDENCE OF NON-INFRINGEMENT

Of Counsel:
Dennis S. Ellis
Katherine F. Murray
Adam M. Reich
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
(213) 683-6000

Naveen Modi
Joseph E. Palys
Daniel Zeilberger
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1990

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Dated:  May 8, 2019

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Katharine L. Mowery (#5629)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
mowery@rlf.com

***Attorneys for Defendants***
*L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc. and Redken 5th Avenue NYC, LLC*

Plaintiffs' motion is largely moot as Defendants do not intend to introduce L'Oréal patents and patent applications for the narrow purpose suggested by Plaintiffs—that Defendants would not have received their patents if their products using that patented technology infringed Olaplex's patent.  (Olaplex MIL No. 3 at 1-2.)  However, L'Oréal patents and patent applications are relevant for other purposes and thus reference to and use of those patents and patent applications should not be entirely precluded.

For instance, Plaintiffs themselves have made L'Oréal's patents and patent applications relevant to Plaintiffs' claims of trade secret misappropriation.  (*See, e.g.*, D.I. 732 at 1 (arguing "L'Oréal [USA] skipped many months of research, and applied for a patent claiming Olaplex's technology…."), 5, 7, 15 (referring to Defendants' "patent efforts"), 19; D.I. 734, Ex. 116; D.I. 706, Ex. C at ¶¶ 65, 76 n.1, 82 (referring to Defendants' patent applications).)  Although Plaintiffs quote a portion of this Court's decision in *Sonos, Inc. v. D&M Holdings Inc.*, No. 14-cv-1330-WCB, 2017 WL 5633204 (D. Del. Nov. 21, 2017), they ignore the relevant portion that would allow use of a defendant's patents if the plaintiff "first opens the door to any such evidence, such as by stating that [defendant] lacks its own technology and therefore must rely on stealing technology from [plaintiff]." *Id.* at *1.  To date, Plaintiffs' trade secret misappropriation claims have used L'Oréal's patents and patent applications against Defendants.  Defendants must have the opportunity to defend themselves at trial with reciprocal use.

In addition, because Plaintiffs have highlighted the relevancy of L'Oréal's patent applications, reference to and use of any patents granted from those applications should be allowed to prevent any prejudice by the suggestion that no patents were granted from these applications.  *See Wonderland NurseryGoods Co. v. Thorley Indus., LLC*, No. 12-cv-196, 2014 WL 241751, at *2 (W.D. Pa. Jan. 22, 2014). ("The Court finds that it is unfairly prejudicial to

1

[defendant] to admit the published patent applications without admitting the corresponding granted patents because it suggests to the jury that [defendant] did not receive patents for its research and work in attempting to patent features of the accused [] device.").

Furthermore, reference to and use of such patents and applications is relevant and proper to address technical features relating to the accused products, including the "synergistic" features relating to those products that Plaintiffs have suggested is a "litigation-driven concept made out of whole cloth by counsel and adopted by L'Oréal[ USA's] expert." (D.I. 757 at 7.)  As explained by Defendants, this narrative is decisively refuted by Defendants' independent product development documentation as well as Defendants' patents and patent applications. (D.I. 775 at 2.)

For the foregoing reasons, Defendants respectfully request this Court deny Plaintiffs' motion *in limine*.

*/s/ Katharine L. Mowery*

Of Counsel:

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Dennis S. Ellis
Katharine L. Mowery (#5629)
Katherine F. Murray
Richards, Layton & Finger, P.A.
Adam M. Reich
One Rodney Square
Paul Hastings LLP
920 N. King Street
515 South Flower Street, 25th Floor
Wilmington, Delaware 19801
Los Angeles, CA 90071
(302) 651-7700
(213) 683-6000
cottrell@rlf.com
moyer@rlf.com
mowery@rlf.com

Naveen Modi
Joseph E. Palys
Daniel Zeilberger
**Attorneys for Defendants**
Paul Hastings LLP
*L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal*
875 15th Street, N.W.
*USA S/D, Inc. and Redken 5th Avenue NYC, LLC*
Washington, D.C. 20005
(202) 551-1990

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Dated:  May 8, 2019

3

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2019, true and correct copies of the foregoing document were caused to be served on the following counsel of record as indicated:

**VIA ELECTRONIC MAIL**
Jack B. Blumenfeld
Jeremy A. Tigan
Anthony D. Raucci
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

Diane M. Doolittle
Suong T. Nguyen
Quinn, Emmanuel, Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(605) 801-5000
dianedoolittle@quinnemanuel.com
suongnguyen@quinnemanuel.com

Jared W. Newton
Quinn, Emmanuel, Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000
jarednewton@quinnemanuel.com

Megan Y. Yung
Quinn, Emmanuel, Urquhart & Sullivan, LLP
111 Huntington Avenue
Suite 520
Boston, MA 02199
meganyung@quinnemanuel.com

**VIA ELECTRONIC MAIL**
Amardeep L. Thakur
Joseph M. Paunovich
Bruce E. Van Dalsem
Ali Moghaddas
Patrick T. Schmidt
William Odom
Quinn, Emmanuel, Urquhart & Sullivan, LLP
865 S. Figueroa Street
Los Angeles, CA 90017
(213) 443-3000
amarthakur@quinnemanuel.com
joepaunovich@quinnemanuel.com
brucevandalsem@quinnemanuel.com
alimoghaddas@quinnemanuel.com
patrickschmidt@quinnemanuel.com
william.odom@quinnemanuel.com

Adam J. DiClemente
Quinn, Emmanuel, Urquhart & Sullivan, LLP
55 Madison Avenue
22nd Floor
New York, NY 10010
(212) 849-7361
adamdiclemente@quinnemanuel.com

Matthew K. Blackburn
Diamond McCarthy LLP
150 California Street
Suite 2200
San Francisco, CA 94111
(415) 263-9200
mblackburn@diamondmccarthy.com

*/s/ Katharine L. Mowery*
Katharine L. Mowery (#5629)

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C. A. No. 1:17-cv-00014-JFB-SRF |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA | ) | **CONFIDENTIAL –** |
| PRODUCTS, INC., L'ORÉAL USA | ) | **FILED UNDER SEAL** |
| S/D, INC., and REDKEN 5TH AVENUE | ) | |
| NYC, L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION *IN LIMINE* NO. 3 TO PRECLUDE REFERENCE TO L'ORÉAL'S PATENTS AS EVIDENCE OF NON-INFRINGEMENT

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Adam DiClemente
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5200

May 13, 2019

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

*Attorneys for Plaintiffs*

Defendants ("L'Oréal") concede in their Opposition brief that the narrow relief Plaintiffs ("Olaplex") seek through their Motion is appropriate.  Opp. at 1.  Olaplex purposefully sought narrow, circumscribed relief by way of its Motion—seeking the exclusion of evidence regarding L'Oréal's patents for a particular, improper purpose.  Mot. at 3.  The supposedly relevant purposes for which L'Oréal states it intends to use its own patents and patent applications, which concern Olaplex's trade secret claims, not its patent claims, (Opp. at 1-2) fall outside that requested relief.[1]

L'Oréal calls this motion "largely moot" because it does not "intend to introduce L'Oréal patents and patent applications for the narrow purpose suggested by Plaintiffs . . . ."  Opp. at 1. That does not make this motion "moot," it makes it ***uncontested***.  The Court should enter the order requested by Olaplex outright, ensuring L'Oréal does not alter its position at trial and make improper argument to the jury.

---

[1]   Olaplex reserves the right to object at trial to L'Oréal's introduction of its own patents or patent applications for the purposes L'Oréal describes in its Opposition, and does not concede that the use of L'Oréal's patents at trial is permissible or appropriate.

1

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Anthony D. Raucci
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Adam DiClemente
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5200

May 13, 2019

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 13, 2019, copies of the foregoing were caused to be served

upon the following in the manner indicated:

Frederick L. Cottrell, Esquire                          *VIA ELECTRONIC MAIL*
Jeffrey L. Moyer, Esquire
Jason J. Rawnsley, Esquire
Katharine Lester Mowery, Esquire
RICHARDS, LAYTON & FINGER, PA
One Rodney Square
920 North King Street
Wilmington, DE  19801
*Attorneys for Defendants*

Dennis S. Ellis, Esquire                                 *VIA ELECTRONIC MAIL*
Katherine Murray, Esquire
Adam M. Reich, Esquire
Serli Polatoglu, Esquire
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA  90071
*Attorneys for Defendants*

Naveen Modi, Esquire                                     *VIA ELECTRONIC MAIL*
Joseph E. Palys, Esquire
Daniel Zeilberger, Esquire
Michael A. Wolfe, Esquire
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, D.C.  20005
*Attorneys for Defendants*

Scott F. Peachman, Esquire                               *VIA ELECTRONIC MAIL*
PAUL HASTINGS LLP
200 Park Avenue
New York, NY  10166
*Attorneys for Defendants*

*/s/ Anthony D. Raucci*
Anthony D. Raucci (#5948)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C. A. No. 17-14 (JFB) (SRF) |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA | ) | **CONFIDENTIAL –** |
| PRODUCTS, INC., L'ORÉAL USA S/D, | ) | **FILED UNDER SEAL** |
| INC., and REDKEN 5TH AVENUE | ) | |
| NYC, L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MOTION _IN LIMINE_ NO. 4 TO PRECLUDE USE OF ALLEGED "FALSE ADVERTISING" POSTS OR ACCOUNTS BEYOND THOSE SPECIFICALLY IDENTIFIED IN L'ORÉAL'S PLEADINGS AND EXPERT REPORTS**

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Adam DiClemente
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5200

May 1, 2019

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

_Attorneys for Plaintiffs_

Defendants ("L'Oreal") should be precluded from using at trial any evidence of or arguing the existence of allegedly "fake" online posts or online accounts which were not specifically identified in the Expert Report of Peter Smith.

## I.     **BACKGROUND**

L'Oreal filed its Lanham Act false advertising Counter-Claim after the close of discovery. *See* D.I. 608. Notwithstanding, the Pleading (as filed, and as amended on February 8, 2019 (D.I. 650)), utterly lacks specificity regarding the identity of the alleged false advertisements at issue in the case. Olaplex sought bifurcation, in part to allow discovery and responses to contention interrogatories. *See* D.I. 616. L'Oreal stridently opposed (D.I. 625) and the Magistrate denied the request (D.I. 634). No fact discovery was permitted on the Counter-claim. Accordingly, as of the date hereof, L'Oreal has not identified the evidence it will use to support this claim—and, critically, the identity of the alleged false advertisements at issue. This is crucial because the Lanham Act requires proof of "injury ***flowing directly*** from the deception wrought ***by the defendant's advertising***," *Lexmark Int'l v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014) (emphasis added), which requires "establishing a causal link between its alleged injury and [Olaplex's] ***specific misrepresentations***," *Larry Pitt & Assocs. v. Lundy Law LLP*, 294 F. Supp. 3d 329, 341 (E.D. Pa. 2018) (emphasis added). Olaplex has shown that the Lanham Act claim is ripe for Summary Judgment. D.I. 682. In the event the claim does proceed to trial, to avoid quintessential "trial by ambush," L'Oreal should be precluded from offering into evidence (or suggesting the existence of) any alleged instances of false advertising (*e.g.*, "fake posts," "fake accounts," or articles without attribution) that have not been specifically identified in the Pleading, expert discovery, and in briefing on Summary Judgment.

Specifically, L'Oreal should be precluded from introducing anything other than the 25 posts identified, marked as exhibits, and served with the expert report of Peter Smith (D.I. 720,

Ex. 9, "Smith Report"), and alleged additional false advertisements cited in the Opposition to Olaplex's Summary judgment motion (D.I. 758). Mr. Smith opines that the "accounts identified in documents produced by Olaplex in this case made 19 posts regarding Olaplex and 6 posts regarding L'Oreal USA and its products that [he] was able to locate," Smith Report at ¶ 8, and he attached copies of those posts to his Report, *id.* Exs. A - I-12. Those posts have been sufficiently identified.[1]   To the extent L'Oreal contends that it has specifically identified other false advertising posts that should not be subject to this limiting order, L'Oreal appropriately bears the burden of identifying them to Olaplex and this Court.

## II.   PRECLUSION IS THE APPROPRIATE REMEDY

If the Lanham Act claim proceeds to trial, it should be limited to alleged false advertisements that L'Oreal has actually identified and disclosed. To do otherwise invites unfair surprise and prejudice to Olaplex. This situation—first revealing alleged false advertisements at trial—is akin to failing to identify a witness, and the factors set out in *Meyers v. Pennypack Woods HOA*, 599 F.2d 894, 904-05 (3d. Cir. 1997) are instructive. First, "prejudice or surprise" to Olaplex is high—social media contains millions of posts referencing Olaplex and/or the Accused Products. Olaplex cannot prepare to defend itself against all (even most) unidentified posts. Second, L'Oreal cannot now cure its non-identification: discovery is closed; summary judgment has been filed; the case is at the eve of trial. Third, disruption at trial will be significant. *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 863 (9th Cir. 2014) ("late disclosure … throws a wrench into the machinery of trial."). An order *in limine* is appropriate because this undisclosed evidence (alleged false advertisements not previously

---

[1]   Olaplex may raise challenges to any specific post if and when L'Oreal moves to offer one into evidence, based on context, use, and other appropriate factors. *Accord* D.I. 769 at 2 & n.1.

identified) would be "inadmissible on all potential grounds." *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013). Introducing undisclosed "advertisements" into evidence or suggesting more exist would work unfair prejudice as "trial by ambush."  Indeed, the Federal Rules of Civil Procedure exist "in part, to eliminate the element of 'surprise' in litigation," and "surprise during trial, by major variance in theory of recovery or defense, undisclosed until after trial is underway, is a long-established ground for granting a new trial motion." *Becton Dickinson & Co. v. Tyco Healthcare Grp. LP*, 2006 WL 890995, at *9–10 (D. Del. Mar. 31, 2006) (internal citations omitted). This is not a situation where review of the trial evidence, as it unfolds, is necessary to decide an evidentiary issue.  *Cf. C R Bard Inc. v. AngioDynamics Inc.*, 2018 WL 3468215, at *3 (D. Del. July 18, 2018).  Rather, Olaplex is entitled to know the specific allegations against it to adequately prepare its defenses. As it stands, the decision not to bifurcate proceedings (to which Olaplex has objected, D.I. 655), prevented any fact discovery on this Counter-Claim.  It follows that, at the least, the Counter-Claim should be limited to those alleged false advertisements that expressly were made known to Olaplex in the pleadings, expert discovery, and summary judgment filings. To do otherwise is to invite error at trial and to ensure unfair prejudice against Olaplex.

## III.   <u>CONCLUSION</u>

Olaplex respectfully requests that the Court issue an order *in limine* precluding L'Oreal from referencing or introducing evidence of or suggesting the existence of allegedly "fake" online posts or online accounts which were not specifically identified in the Expert Report of Peter Smith.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Anthony D. Raucci
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Adam DiClemente
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5200

May 1, 2019

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 1, 2019, copies of the foregoing were caused to be served

upon the following in the manner indicated:

Frederick L. Cottrell, Esquire                                    *VIA ELECTRONIC MAIL*
Jeffrey L. Moyer, Esquire
Jason J. Rawnsley, Esquire
Katharine Lester Mowery, Esquire
RICHARDS, LAYTON & FINGER, PA
One Rodney Square
920 North King Street
Wilmington, DE  19801
*Attorneys for Defendants*

Dennis S. Ellis, Esquire                                          *VIA ELECTRONIC MAIL*
Katherine Murray, Esquire
Adam M. Reich, Esquire
Serli Polatoglu, Esquire
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA  90071
*Attorneys for Defendants*

Naveen Modi, Esquire                                             *VIA ELECTRONIC MAIL*
Joseph E. Palys, Esquire
Daniel Zeilberger, Esquire
Michael A. Wolfe, Esquire
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, D.C.  20005
*Attorneys for Defendants*

Scott F. Peachman, Esquire                                       *VIA ELECTRONIC MAIL*
PAUL HASTINGS LLP
200 Park Avenue
New York, NY  10166
*Attorneys for Defendants*

                                   */s/ Anthony D. Raucci*
                                   Anthony D. Raucci (#5948)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-14-JFB-SRF |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA | ) | **CONFIDENTIAL –** |
| PRODUCTS, INC., L'ORÉAL USA S/D, | ) | **FILED UNDER SEAL** |
| INC. and REDKEN 5TH AVENUE NYC, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 4 TO PRECLUDE USE OF ALLEGED "FALSE ADVERTISING" POSTS OR ACCOUNTS BEYOND THOSE SPECIFICALLY IDENTIFIED IN DEFENDANTS' PLEADINGS AND EXPERT REPORTS

Of Counsel:

Dennis S. Ellis
Katherine F. Murray
Adam M. Reich
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
(213) 683-6000

Naveen Modi
Joseph E. Palys
Daniel Zeilberger
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1990

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Dated:  May 8, 2019

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Katharine L. Mowery (#5629)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
mowery@rlf.com

*Attorneys for Defendants*
*L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc. and Redken 5th Avenue NYC, LLC*

## I.     SUMMARY OF ARGUMENT

Plaintiffs' request that Defendants "be precluded from offering into evidence (or suggesting the existence of) any alleged instances of false advertising (*e.g.*, 'fake posts,' 'fake accounts,' or articles without attribution) beyond those specifically identified in [Defendants' Counterclaims], expert discovery, and in briefing on Summary Judgment" should be denied.

As a preliminary matter, Plaintiffs do not identify *any* legal basis for the exclusion of such evidence.  Plaintiffs' sole argument—that any mention of additional burner accounts[1] or posts made therefrom would constitute "unfair surprise" at trial—carries no weight.  (Mot. at 2-3.)  First, any evidence that Defendants intend to introduce would be identified on their exhibit list.  There is no "unfair surprise."  Second, as the Magistrate correctly noted long ago, Olaplex *already possesses* the information forming the bases of Defendants' Lanham Act counterclaim, as the representations at issue came from Olaplex.  (D.I. 633 ¶ 8.)  Olaplex refused to produce all of this evidence to Defendants, forcing Defendants to move to compel.  (D.I. 643 at 1-2.)  In response to Defendants' motion to compel, Plaintiffs took the position that producing additional evidence of their burner accounts would be "cumulative," thus acknowledging the existence of these additional accounts.  (D.I. 673, Ex. B at 26:11-13.)  Plaintiffs also represented to the Magistrate that the information had already been identified by Plaintiffs' own expert, Leigh Fatzinger, in his report, which was served on February 12, 2019, two weeks after Defendants' expert report was served.  (*See* D.I. 673, Ex. B at 26:11-22 (Olaplex acknowledging that Mr. Fatzinger identified the universe of potential posts infected by Olaplex's alleged malfeasance and

---

[1]  "Burner accounts" refer to social media accounts created by Olaplex that fail to disclose any affiliation with the company, through which Olaplex employees masquerade as objective third-parties commenting positively on the company's own products, and negatively about competitors.

"provide[d] that analysis" to Defendants").)  (*See also* D.I. 673, Ex. A ¶¶ 18, 22).  Having represented to the Magistrate that the requested information had already been provided, and having not been required to produce any more, Plaintiffs cannot now preclude Defendants from relying on the information they do have.  Plaintiffs' Motion should be denied.

## II.  PRECLUDING RELEVANT EVIDENCE WOULD BE UNDULY PREJUDICIAL TO DEFENDANTS.

Plaintiffs cannot shield evidence from the jury simply because it is unfavorable.  Without any legal support for their request, Plaintiffs contend that any reference to burner accounts used by Plaintiffs and not disclosed in the Expert Report of Peter Smith would cause "unfair surprise." This make no sense, as Plaintiffs clearly are aware of the burner accounts they created.  To the extent Plaintiffs were unaware of the magnitude of their enterprise, they learned these facts no later than January 29, 2019, when their own expert, Leigh Fatzinger, submitted his report. Plaintiffs even relied on their expert's report to block Defendants from obtaining further discovery.  As Plaintiffs represented to the Magistrate:

> And this I think is the key here why this truly is cumulative and they don't need anything more.  In response to Mr. Smith, we hired a gentleman by the name of Leigh Fatzinger who works for a company Turbine Labs. They're one of the preeminent social media companies that analyzes these types of things, and they went out and they tried to scrape literally every post or publication that so much as mentioned Olaplex on Instagram, Twitter, Facebook, the Internet, and they did provide this analysis [to Defendants].

(D.I. 673, Ex. B at 26:11-22.)  Plaintiffs won this argument.  They cannot now block this evidence from the jury, simply because it is not favorable to them.[2]

---

[2]  Plaintiffs' Motion *in Limine* does not seek preclusion of any evidence showing that additional burner accounts exist, as identified by Defendants' expert, Peter Smith, in his expert report dated January 29, 2019.  To the extent Plaintiffs raise this argument for the first time in Reply, it should be denied. *U.S. v. Medeiros*, 710 F. Supp. 106, 110 (M.D. Pa. 1989), *aff'd* 884 F.2d 75 (3d Cir. 1989) ("[I]t is improper for a party to present a new argument in his or her reply brief."). In any event, Plaintiffs cannot claim "unfair surprise" as to such evidence, since it was disclosed

Olaplex's cited authority is inapposite.  The factors articulated in *Meyers v. Pennypack Woods HOA*, 559 F.2d 894 (3d Cir. 1977), do not apply, as this situation is not akin to a party's attempt to introduce a surprise witness.  *Id.* at 904-05.  The evidence at issue here has long-since been known to Plaintiffs.  Indeed, unlike the plaintiff in *Meyers*, Defendants disclosed the expert reports of both Mr. Smith and Mr. Fatzinger in their initial trial exhibit list exchanged on May 1, 2019.  *See id.* at 904 (overruling trial court's decision to exclude the testimony of witnesses whose names were not disclosed on the parties' pretrial memorandum).

*Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273 (D. Del. 2013) is equally unhelpful, as it explains that "[e]vidence should not be excluded pursuant to a motion *in limine*, unless it is clearly inadmissible on *all potential grounds*."  *Id.* at 276 (emphasis added).  Plaintiffs have not demonstrated as much, as evidence relating to additional burner accounts is relevant to issues beyond Defendants' Lanham Act counterclaim.  (*See* D.I. 633 ¶ 7 ("L'Oréal has established that the facts underlying L'Oréal's first counterclaim under the Lanham Act are related to its unjust enrichment defense and Olaplex's claim for damages.").)  At a minimum, as the Magistrate noted, this information is relevant to Defendants' unjust enrichment defense and Olaplex's claim for damages.  (*See* D.I. 633 ¶ 7.)  This information also rebuts Plaintiffs' two-party market theory, as it demonstrates that Plaintiffs artificially created this market through their own manipulative conduct, as well as Defendants' unclean hands defense, which is premised, in part, on Plaintiffs' market manipulation.  (*See* D.I. 605; D.I. 650 at 31; Opp. to Plaintiffs' MIL No. 5, filed concurrently herewith, at 1-2.)

Plaintiffs' Motion *in Limine* to preclude references to burner accounts should be denied.

---

in opening expert reports.  Tellingly, Olaplex has not asserted, in either its Motion *in Limine* or in its *Daubert* motion challenging Mr. Smith, that Mr. Smith's identification of additional burner accounts is wrong.

Of Counsel:

Dennis S. Ellis
Katherine F. Murray
Adam M. Reich
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
(213) 683-6000

Naveen Modi
Joseph E. Palys
Daniel Zeilberger
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1990

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Dated:  May 8, 2019

/s/ Frederick L. Cottrell, III
Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Katharine L. Mowery (#5629)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
mowery@rlf.com

**Attorneys for Defendants**
*L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc. and Redken 5th Avenue NYC, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2019, true and correct copies of the foregoing document were caused to be served on the following counsel of record as indicated:

**VIA ELECTRONIC MAIL**
Jack B. Blumenfeld
Jeremy A. Tigan
Anthony D. Raucci
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

Diane M. Doolittle
Suong T. Nguyen
Quinn, Emmanuel, Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(605) 801-5000
dianedoolittle@quinnemanuel.com
suongnguyen@quinnemanuel.com

Jared W. Newton
Quinn, Emmanuel, Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000
jarednewton@quinnemanuel.com

Megan Y. Yung
Quinn, Emmanuel, Urquhart & Sullivan, LLP
111 Huntington Avenue
Suite 520
Boston, MA 02199
meganyung@quinnemanuel.com

**VIA ELECTRONIC MAIL**
Amardeep L. Thakur
Joseph M. Paunovich
Bruce E. Van Dalsem
Ali Moghaddas
Patrick T. Schmidt
William Odom
Quinn, Emmanuel, Urquhart & Sullivan, LLP
865 S. Figueroa Street
Los Angeles, CA 90017
(213) 443-3000
amarthakur@quinnemanuel.com
joepaunovich@quinnemanuel.com
brucevandalsem@quinnemanuel.com
alimoghaddas@quinnemanuel.com
patrickschmidt@quinnemanuel.com
william.odom@quinnemanuel.com

Adam J. DiClemente
Quinn, Emmanuel, Urquhart & Sullivan, LLP
55 Madison Avenue
22nd Floor
New York, NY 10010
(212) 849-7361
adamdiclemente@quinnemanuel.com

Matthew K. Blackburn
Diamond McCarthy LLP
150 California Street
Suite 2200
San Francisco, CA 94111
(415) 263-9200
mblackburn@diamondmccarthy.com

*/s/ Katharine L. Mowery*
Katharine L. Mowery (#5629)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C. A. No. 1:17-cv-00014-JFB-SRF |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA | ) | **CONFIDENTIAL –** |
| PRODUCTS, INC., L'ORÉAL USA | ) | **FILED UNDER SEAL** |
| S/D, INC., and REDKEN 5TH AVENUE | ) | |
| NYC, L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION *IN LIMINE* NO. 4 TO PRECLUDE USE OF ALLEGED "FALSE ADVERTISING" POSTS OR ACCOUNTS BEYOND THOSE SPECIFICALLY IDENTIFIED IN L'ORÉAL'S PLEADINGS AND EXPERT REPORTS**

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Adam DiClemente
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5200

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

*Attorneys for Plaintiffs*

May 13, 2019

i

Defendants' ("L'Oréal") opposition to Plaintiffs' ("Olaplex") Motion *In Limine* No. 4 is an invitation to chaos and prejudice at trial. Despite filing its sprawling false advertising Lanham Act claim in January 2019, L'Oréal has never identified with ***any*** specificity the false advertisements that it claims are at issue in this case. The failure to do so renders it impossible for Olaplex to adequately prepare trial defenses and strategy under the governing law. *See Lexmark Int'l v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014); *Larry Pitt & Assocs. v. Lundy Law LLP*, 294 F. Supp. 3d 329, 341 (E.D. Pa. 2018) ("specific misrepresentations"). L'Oréal claims Olaplex did not identify any legal basis for this Motion. Opp. at 1. That is obstinate: the impropriety of "trial by ambush" is beyond citation. The ***only*** effort L'Oréal has made to specifically identify the false advertisements at issue is in exhibits to the Smith Report and summary judgment briefs. This Court appropriately should hold L'Oréal—the Counter-Plaintiff bearing the burden of proof on its claim—to those, and only those, contentions.

L'Oréal's Opposition obfuscates by claiming that an Olaplex Expert Report (Fatzinger) identified advertisements that L'Oréal may attempt to use at trial. First, this continues L'Oréal's flagrant mischaracterization of this Report, which only identifies generic content from the Internet hitting on "keyword searches" and makes no claim that any such content is a "false advertisement." D.I. 765, at 6 n.7. Second, the Report's exhibits are merely spreadsheets listing thousands of Internet hits for keywords like "Olaplex." L'Oréal has never identified which spreadsheet entries it will attempt to offer as evidence of false advertising—citing the exhibits as "proof" that other false advertisements have been adequately "identified" is a fiction. Opp. at 2-3. L'Oréal's accusation that Olaplex withheld discovery is wrong. That dispute was resolved and not at issue in this Motion. D.I. 681. In sum, the Court should not to allow L'Oréal to ambush Olaplex (or the Court) at trial by attempting to use or refer to alleged false advertisements it never identified.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Adam DiClemente
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5200

May 13, 2019

1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

*Attorneys for Plaintiffs*

2

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2019, copies of the foregoing were caused to be served

upon the following in the manner indicated:

Frederick L. Cottrell, Esquire                                    *VIA ELECTRONIC MAIL*
Jeffrey L. Moyer, Esquire
Jason J. Rawnsley, Esquire
Katharine Lester Mowery, Esquire
RICHARDS, LAYTON & FINGER, PA
One Rodney Square
920 North King Street
Wilmington, DE  19801
*Attorneys for Defendants*

Dennis S. Ellis, Esquire                                          *VIA ELECTRONIC MAIL*
Katherine Murray, Esquire
Adam M. Reich, Esquire
Serli Polatoglu, Esquire
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA  90071
*Attorneys for Defendants*

Naveen Modi, Esquire                                              *VIA ELECTRONIC MAIL*
Joseph E. Palys, Esquire
Daniel Zeilberger, Esquire
Michael A. Wolfe, Esquire
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, D.C.  20005
*Attorneys for Defendants*

Scott F. Peachman, Esquire                                        *VIA ELECTRONIC MAIL*
PAUL HASTINGS LLP
200 Park Avenue
New York, NY  10166
*Attorneys for Defendants*

                                        */s/ Anthony D. Raucci*
                                        Anthony D. Raucci (#5948)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C. A. No. 17-14 (JFB) (SRF) |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA | ) | **CONFIDENTIAL –** |
| PRODUCTS, INC., L'ORÉAL USA S/D, | ) | **FILED UNDER SEAL** |
| INC., and REDKEN 5TH AVENUE | ) | |
| NYC, L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MOTION *IN LIMINE* NO. 5 TO PRECLUDE DEFENDANTS FROM REFERENCE TO OR RELIANCE ON MATTERS DISMISSED FROM THE AMENDED COUNTER-COMPLAINT PURSUANT TO RULE 12(b)(6) OR FROM ASSERTING CLAIM CONSTRUCTIONS OR CLAIM CONSTRUCTION ARGUMENTS REJECTED IN THE CLAIM CONSTRUCTION ORDER**

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Adam DiClemente
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5200

May 2, 2019

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

*Attorneys for Plaintiffs*

Defendants ("L'Oréal") should be precluded from referring to or relying on matters stricken from the Amended Counter-Complaint (D.I. 650) pursuant to the Court's Report and Recommendation granting in part Olaplex's Rule 12(b)(6) Motion to Dismiss (D.I. 791), and from asserting claim constructions or construction arguments rejected in the governing claim construction order (D.I. 796, adopting D.I. 602).

## I.  **BACKGROUND**

L'Oréal filed its Amended Counter-Complaint after the close of fact discovery on February 8, 2019.  D.I. 650.  On February 22, 2019, Olaplex filed a Motion to Dismiss pursuant to Rule 12(b)(6).  D.I. 665, 666.  After full briefing (*see* D.I. 666, 679, 728), Judge Fallon issued a Report & Recommendation (D.I. 791) granting, in part, Olaplex's Rule 12 Motion.  Trial is slated to begin on July 29, 2019.  The Report & Recommendation dismissed substantial parts of L'Oréal's Counterclaim for false advertising under the Lanham Act (D.I. 791 at 9-24, 38), and L'Oréal's full Counterclaims for inequitable conduct (*id.* at 35-39).[1]  With respect to the Lanham Act claim, the Motion to Dismiss ruling substantially curtails L'Oréal's cause of action and the theories of liability.  As these matters have been removed from the case, and as discussing those matters at trial would yield substantial confusion of the issues that actually remain in the case, L'Oréal should be precluded from referring to, introducing alleged evidence of, or relying on the following:

> **A.** Any information regarding the dismissed alleged false advertisement claim that "Craig Hawker invented Olaplex in one night and handed it do Dean Christal after Chistal told him what he wanted[.]"  D.I. 791 at 10 (point ii);
>
> **B.** Any information regarding the dismissed alleged false advertisement claim that Olaplex products will "never break a client's hair again[.]"  *Id.* (point iii);

---

[1]    L'Oréal's Counterclaims for inequitable conduct were previously bifurcated for separate trial to the bench. *See* D.I. 633 (Bifurcation Order).

**C.** Any information regarding the dismissed alleged false advertisement claim that the "L'Oréal USA products do not perform as well as the Olaplex products, when in fact, the L'Oréal USA products perform superior to Olaplex[.]" *Id.* (point vii);

**D.** Any information regrading the dismissed alleged false advertisement claim that "[s]tylists should be 'careful' using any products other than the 'Olaplex technology' because they may  not protect the hair like Olaplex chemistry does[.]" *Id.* (point vii);

**E.** Any information regarding the dismissed alleged false advertisement claim that "Olaplex links and multiplies the bonds of the hair" whereas other products are "a band aid at best[.]" *Id.* at 11 (point x);

**F.** Any information regarding the dismissed alleged false advertisement claim that "Olaplex's purposes is to serve [the public] with honesty and full transparency[.]" *Id.* (point xi);

**G.** Any information regarding the FTC Act or the FTC Guidelines Concerning the Use of Endorsements and Testimonials in Advertising.  *Id.* at 21-22;

**H.** Any information regarding allegedly false advertisements by Olaplex occurring prior to July 2016. *Id.* at 24;

**I.** Any information regarding Olaplex, or actors affiliated with Olaplex (including, but not limited to Dean Christal, Eric Pressly, and Rivka Monheit's) representations to the USPTO related to L'Oréal's dismissed inequitable conduct claims.  *Id.* at 35-38.

## II.  PRECLUSION IS THE APPROPRIATE REMEDY

If L'Oréal's Lanham Act claim reaches trial in any form (*but see* D.I. 683 (Olaplex's Opening Brief in support of its Motion for Summary Judgment)), the jury will be tasked with ascertaining whether the alleged statements constitute false advertising, whether such advertisements created actual deception, and, if so, whether L'Oréal has demonstrated nay harm "flowing directly" from such statements.  *See Incarcerated Entm't, LLC. v. CNBC LLC,* 331 F. Supp. 2d 352 (D. Del. 2018);  *Lexmark Int'l, Inc. v. Static Ctrl Components, Inc.*, 572 U.S. 118 (2014).  Allowing L'Oréal to offer evidence and discussion of alleged false advertisements that

have been eliminated from its Counterclaim (points A-F, H) is highly likely to yield substantial confusion of the issues and misleading the jury. Because these allegations are no longer at issue, evidence in support there of has no probative value and the Rule 403 exclusion standard is easily satisfied. *See* Fed. R. Civ. P. 403 (exclusion permitted where "probative value is substantially outweighed by a danger of … confusing the issues [or] misleading the jury"). Similarly, any reference to the irrelevant, legally inapposite FTC Act or the Guidelines thereunder (point G) is likely to generate significant juror confusion about the governing law and, as they suggest that the Federal Government has taken a controlling position about the alleged conduct (where it has not), would be unfairly prejudicial well in excess of any probative value (as there is none). Last, any reference to the dismissed inequitable conduct allegations (point I)—to the extent the bifurcation order does not already resolve this issue—should be barred because they would plainly mislead and confuse the jury about the live issue of the Asserted Patents' validity.

Additionally, notwithstanding the claim construction Report and Recommendation (D.I. 602), adopted by this Court in full (D.I. 796), L'Oréal has indicated an intent to present at trial arguments that depend on rejected claim constructions and arguments. *E.g.,* D.I. 684-85 (Olaplex's **Daubert** Motion and Brief as to Dr. Benny Freeman). Like expert testimony, fact testimony or attorney argument "based on an impermissible claim construction is properly excluded as irrelevant and on the basis that the evidence could confuse the jury." *EMC Corp. v. Pure Storage, Inc.* 154 F. Supp. 3d 81, 109 (D. Del. 2016); *Fed R. Evid.* 403. As testimony and argument concerning claims in the Asserted Patents will permeate trial, *in limine* relief is proper.

## III.   <u>CONCLUSION</u>

Olaplex respectfully requests that the Court issue an order *in limine* precluding L'Oréal from referring to or relying on matters stricken from the Amended Counter-Complaint or rejected claim constructions and arguments as set forth above.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Adam DiClemente
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5200

May 2, 2019

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2019, copies of the foregoing were caused to be served upon the following in the manner indicated:

Frederick L. Cottrell, Esquire                                    *VIA ELECTRONIC MAIL*
Jeffrey L. Moyer, Esquire
Jason J. Rawnsley, Esquire
Katharine Lester Mowery, Esquire
RICHARDS, LAYTON & FINGER, PA
One Rodney Square
920 North King Street
Wilmington, DE  19801
*Attorneys for Defendants*

Dennis S. Ellis, Esquire                                          *VIA ELECTRONIC MAIL*
Katherine Murray, Esquire
Adam M. Reich, Esquire
Serli Polatoglu, Esquire
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA  90071
*Attorneys for Defendants*

Naveen Modi, Esquire                                              *VIA ELECTRONIC MAIL*
Joseph E. Palys, Esquire
Daniel Zeilberger, Esquire
Michael A. Wolfe, Esquire
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, D.C.  20005
*Attorneys for Defendants*

Scott F. Peachman, Esquire                                        *VIA ELECTRONIC MAIL*
PAUL HASTINGS LLP
200 Park Avenue
New York, NY  10166
*Attorneys for Defendants*

*/s/ Anthony D. Raucci*
Anthony D. Raucci (#5948)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

LIQWD, INC. and OLAPLEX LLC,      )
                                  )
             Plaintiffs,       )
                                    )
v.                                       )      C.A. No. 17-14-JFB-SRF
                                    )
L'ORÉAL USA, INC., L'ORÉAL USA    )      **CONFIDENTIAL –**
PRODUCTS, INC., L'ORÉAL USA S/D,    )      **FILED UNDER SEAL**
INC. and REDKEN 5TH AVENUE NYC,   )
LLC,                                  )
                                    )
           Defendants.      )

**<u>DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 5 TO
PRECLUDE DEFENDANTS FROM REFERENCE TO OR RELIANCE ON MATTERS
DISMISSED FROM THE AMENDED COUNTER-COMPLAINT PURSUANT TO RULE
12(b)(6)</u>**

Of Counsel:

Dennis S. Ellis
Katherine F. Murray
Adam M. Reich
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
(213) 683-6000

Naveen Modi
Joseph E. Palys
Daniel Zeilberger
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1990

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Dated:  May 8, 2019

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Katharine L. Mowery (#5629)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
mowery@rlf.com

***Attorneys for Defendants***
*L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal
USA S/D, Inc. and Redken 5th Avenue NYC, LLC*

Plaintiffs seek, through their Motion *in Limine* No. 5, to preclude Defendants from presenting to the jury evidence of their market manipulation and misconduct.  This is overly broad, improper for various reasons, and would be prejudicial to Defendants.

Plaintiffs seek to preclude reference to any of the matters identified as (A) through (I) in their Motion on the grounds that Defendants cited this evidence as partial support for their Lanham Act claim, which the R&R partially dismissed, and for their inequitable conduct claims, which the R&R dismissed entirely.  (D.I. 791.)  First, the R&R is not final, as the parties' objections are due May 14, 2019.  Second, even if the Court were to overrule all objections to the R&R, Plaintiffs' Motion still should be denied because evidence concerning the matters (A) through (I) are relevant to issues beyond false advertising and inequitable conduct.  The law is clear that "evidence should not be excluded pursuant to a motion in limine, unless it is clearly inadmissible on **all potential grounds**."  *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013) (emphasis added).  Plaintiffs have not made this showing.  Nor can they.  The issues relating to Defendants' false advertising counterclaim overlap with Defendants' defenses and damages issues, as the Magistrate recognized in its ruling on Plaintiffs' Motion to Bifurcate.  (*See* D.I. 633 ¶ 7 ("L'Oréal has established that the facts underlying L'Oréal's first counter claim under the Lanham Act are related to its unjust enrichment defense and Olaplex's claim for damages.").)

Further, Plaintiffs position that "[b]ecause these allegations are no longer at issue, evidence in support there of [sic] has no probative value and the Rule 403 exclusion standard is easily satisfied" is simply incorrect.  (Mot. at 3.)  Matters (A) through (F) relate to representations made by Plaintiffs in order to gain market share by touting their products and denouncing competitors.  This conduct is directly relevant to Plaintiffs' two-party market theory,

which Plaintiffs continue to pursue in support of their request for injunctive relief.  Defendants

dispute Plaintiffs' two-party market theory, and this evidence shows that the market identified by

Plaintiffs was artificially created through Plaintiffs' own manipulation.  (*See, e.g.*, Mot. at I(B)-

(E) (listing examples); D.I 605.)  This evidence is also relevant to Defendants' unjust enrichment

defense, and the issue of damages.  Specifically, Defendants have a right to present evidence

showing that Plaintiffs were unjustly enriched as a result of their misconduct, and thus, to the

extent Plaintiffs are entitled to any damages, those damages should be offset by the amount of

their unjust enrichment.[1]  Plaintiffs' actions are also relevant to Defendants' defense of unclean

hands, which is premised on Plaintiffs' manipulation of the market by lauding their own products

and denouncing the Accused Products, often through undisclosed, paid endorsements and fake

social media accounts.  (*See* D.I. 650 at 31; *see also* Opp. to Plaintiffs' MIL No. 4 at 3.)

Moreover, Plaintiffs' request to preclude **any** information **related to** Defendants'

inequitable conduct claims (matter (I)) is improperly vague.[2]  For instance, the file histories of

the asserted patents, including its record of communications with the USPTO are part of the

intrinsic record.  Thus, arguments and declarations, *inter alia*, submitted by Plaintiffs during

prosecution of Plaintiffs' patent applications are highly relevant to issues well beyond

inequitable conduct, including invalidity and noninfringement.  Indeed, Plaintiffs have relied on

materials identified in the inequitable conduct claims (*e.g.*, a declaration from co-inventor Dr.

---

[1] Though the Magistrate held that Defendants could not base a Lanham Act claim on matters (A) and (B) on statute of limitations grounds, this does not preclude Defendants from presenting this evidence as it relates to damages, including issues relating to Plaintiffs' inflated profits.

[2] Plaintiffs' broad, vague request to preclude "**any** information regarding" matters (A)-(I) is sufficient grounds to deny the Motion.  *See Leonard*, 981 F. Supp. 2d at 276 ("[T]he court may deny a motion in limine when it lacks the necessary specificity with respect to the evidence to be excluded."); *id.* ("Evidentiary rulings, especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context.").

Eric Pressly submitted to the USPTO during prosecution), as evidence of nonobviousness. (*Compare* D.I. 626, Ex. H at 74-76 *with* D.I. 608 ¶¶ 229-35, 249-50.)  Allowing Plaintiffs to rely on evidence from the file histories while precluding Defendants from doing the same for purposes other than assertions of inequitable conduct would be highly prejudicial.  Similarly, as another example, an article authored by co-inventor Craig Hawker that is identified in Defendants' inequitable conduct claims is a prior art reference identified and relied upon by Defendants' expert for obviousness.  (D.I. 716, Ex. A ¶¶ 400-419.)  As this article is relevant to invalidity and the state of the art, its use during trial should not be precluded.

Furthermore, the matters identified by Plaintiffs are also relevant to rebut theories that Plaintiffs may present at trial and to test the credibility of its witnesses.  Defendants have a right to introduce and use evidence that is relevant to their defenses and to damages issues in this case, even if that evidence may also be relevant to other claims.  Plaintiffs' motion for a blanket prohibition of relevant evidence should be denied.

Last, Plaintiffs' belated attempt to add another (sixth) motion *in limine* concerning this Court's ruling on claim construction by way of its fifth Motion is improper.  (Ex. A.)  While Defendants agree that the parties should not raise different claim constructions for the fifteen terms/phrases specifically identified in the Court's Order (D.I. 796 at 11-12), Plaintiffs' Motion appears to seek a broader *Daubert* preclusion.  As explained by Defendants in response to Plaintiffs' *Daubert* Motion, Defendants' expert has presented opinions on invalidity and noninfringement that apply the same constructions now adopted by this Court in the context of the asserted claims.  (D.I. 738.)  Plaintiffs' disagreement with Defendants' expert as to how the Court's now adopted constructions are applied is no basis for precluding those arguments during trial.  Plaintiffs' Motion should be denied.

Of Counsel:

Dennis S. Ellis
Katherine F. Murray
Adam M. Reich
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
(213) 683-6000

Naveen Modi
Joseph E. Palys
Daniel Zeilberger
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1990

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Dated:  May 8, 2019

*/s/ Frederick L. Cottrell, III*
Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Katharine L. Mowery (#5629)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
mowery@rlf.com

**Attorneys for Defendants**
*L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc. and Redken 5th Avenue NYC, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2019, true and correct copies of the foregoing document

were caused to be served on the following counsel of record as indicated:

**VIA ELECTRONIC MAIL**
Jack B. Blumenfeld
Jeremy A. Tigan
Anthony D. Raucci
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

Diane M. Doolittle
Suong T. Nguyen
Quinn, Emmanuel, Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(605) 801-5000
dianedoolittle@quinnemanuel.com
suongnguyen@quinnemanuel.com

Jared W. Newton
Quinn, Emmanuel, Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000
jarednewton@quinnemanuel.com

Megan Y. Yung
Quinn, Emmanuel, Urquhart & Sullivan, LLP
111 Huntington Avenue
Suite 520
Boston, MA 02199
meganyung@quinnemanuel.com

**VIA ELECTRONIC MAIL**
Amardeep L. Thakur
Joseph M. Paunovich
Bruce E. Van Dalsem
Ali Moghaddas
Patrick T. Schmidt
William Odom
Quinn, Emmanuel, Urquhart & Sullivan, LLP
865 S. Figueroa Street
Los Angeles, CA 90017
(213) 443-3000
amarthakur@quinnemanuel.com
joepaunovich@quinnemanuel.com
brucevandalsem@quinnemanuel.com
alimoghaddas@quinnemanuel.com
patrickschmidt@quinnemanuel.com
william.odom@quinnemanuel.com

Adam J. DiClemente
Quinn, Emmanuel, Urquhart & Sullivan, LLP
55 Madison Avenue
22nd Floor
New York, NY 10010
(212) 849-7361
adamdiclemente@quinnemanuel.com

Matthew K. Blackburn
Diamond McCarthy LLP
150 California Street
Suite 2200
San Francisco, CA 94111
(415) 263-9200
mblackburn@diamondmccarthy.com

*/s/ Katharine L. Mowery*
Katharine L. Mowery (#5629)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C. A. No. 17-14 (JFB) (SRF) |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA | ) | **CONFIDENTIAL –** |
| PRODUCTS, INC., L'ORÉAL USA S/D, | ) | **FILED UNDER SEAL** |
| INC., and REDKEN 5TH AVENUE | ) | |
| NYC, L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION _IN LIMINE_ NO. 5 TO PRECLUDE DEFENDANTS FROM REFERENCE TO OR RELIANCE ON MATTERS DISMISSED FROM THE AMENDED COUNTER COMPLAINT PURSUANT TO RULE 12(b)(6) OR FROM ASSERTING CLAIM CONSTRUCTIONS OR CLAIM CONSTRUCTION ARGUMENTS REJECTED IN THE CLAIM CONSTRUCTION ORDER**

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Adam DiClemente
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5200

May 13, 2019

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

_Attorneys for Plaintiffs_

Defendants ("L'Oréal") opposition to Plaintiffs' ("Olaplex") Motion *In Limine* No. 5 proves that its Counterclaims are designed to sow trial confusion by generically alleging that Olaplex engaged in unspecified "market manipulation and misconduct." Opp. at 1.   Olaplex's Motion would merely limit evidence to **only** those claims remaining in issue.   Because L'Oréal's Counter-Complaint is significantly reduced by the recent Order (D.I. 791), and because claim construction disputes are now fully resolved (D.I. 796), it is appropriate to exclude related evidence and argument.   L'Oréal's Opposition asks the Court to deny the Motion for each category (*see* Mot. at A-I) because, now somehow, these points are "relevant to issues beyond false advertising and inequitable conduct." Opp. at 1. L'Oréal requests free rein to discuss the dismissed issues based on a showing of feigned relevance to other claims and defenses.   Mot. at 2-3.   Even if Points A-I had relevance to issues other than the now dismissed claims (they do not), that is insufficient to allow their use under Rule 403.   Indeed, its Opposition proves that L'Oreal intends to generically argue at trial that Olaplex conducted an undefined campaign of "market manipulation and misconduct" by pointing to anything and everything **even if not actionable**.   Mot. at 1. Thus, there is a substantial risk of juror confusion and prejudice to Olaplex outweighing any probative value, inviting jury misuse to inform decisions on the remainder of the Lanham Act claim and in assessing remedies.   Points A-F go to specific alleged false advertisements that L'Oréal can no longer assert at trial.   The claim that these are now relevant to "gaining market share" is an obvious backdoor effort to reanimate the dismissed claims. Mot. at 1-2.   Point I only prevents argument that Olaplex engaged misconduct at the USPTO, and would not prevent use of intrinsic evidence for the patent claims. L'Oréal's unwillingness to concede that the Rule 12 and claim construction orders altered the scope of the case is, itself, strong proof that restricting this evidence *in limine* is necessary and appropriate.

1

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Adam DiClemente
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5200

May 13, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2019, copies of the foregoing were caused to be served upon the following in the manner indicated:

Frederick L. Cottrell, Esquire                                  *VIA ELECTRONIC MAIL*
Jeffrey L. Moyer, Esquire
Jason J. Rawnsley, Esquire
Katharine Lester Mowery, Esquire
RICHARDS, LAYTON & FINGER, PA
One Rodney Square
920 North King Street
Wilmington, DE  19801
*Attorneys for Defendants*

Dennis S. Ellis, Esquire                                        *VIA ELECTRONIC MAIL*
Katherine Murray, Esquire
Adam M. Reich, Esquire
Serli Polatoglu, Esquire
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA  90071
*Attorneys for Defendants*

Naveen Modi, Esquire                                            *VIA ELECTRONIC MAIL*
Joseph E. Palys, Esquire
Daniel Zeilberger, Esquire
Michael A. Wolfe, Esquire
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, D.C.  20005
*Attorneys for Defendants*

Scott F. Peachman, Esquire                                      *VIA ELECTRONIC MAIL*
PAUL HASTINGS LLP
200 Park Avenue
New York, NY  10166
*Attorneys for Defendants*

                                         */s/ Anthony D. Raucci*
                                         Anthony D. Raucci (#5948)

EXHIBIT 13

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-14-JFB-SRF |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA | ) | **CONFIDENTIAL –** |
| PRODUCTS, INC., L'ORÉAL USA S/D, INC. | ) | **FILED UNDER SEAL** |
| and REDKEN 5TH AVENUE NYC, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' MOTION *IN LIMINE* NO. 1 TO EXCLUDE
EVIDENCE OF NET WORTH**

Of Counsel:

Dennis S. Ellis
Katherine F. Murray
Adam M. Reich
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
(213) 683-6000

Naveen Modi
Joseph E. Palys
Daniel Zeilberger
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1990

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Dated:  May 1, 2019

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Katharine L. Mowery (#5629)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
mowery@rlf.com

*Attorneys for Defendants*
*L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc. and Redken 5th Avenue NYC, LLC*

I.      **SUMMARY OF ARGUMENT**

Defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc., and

Redken 5th Avenue NYC, L.L.C. (together, "Defendants") respectfully request an Order *in*

*limine* precluding Plaintiffs Liqwd, Inc. and Olaplex LLC (together, "Plaintiffs") from

referencing at trial the financial condition, profitability, and/or net worth of any Defendant or

their parent entity.  While the profitability of the Accused Products may be relevant to Plaintiffs'

patent infringement claims, Defendants' overall finances are not, and should not be disclosed to

the jury. Fed. R. Evid. 402.  Courts routinely hold that such information is inadmissible unless

and until a jury concludes that "the defendant's [] conduct warrants an award of punitive

damages."  *Johnson v. Fed. Express Corp.*, 2014 WL 805995, at *12 (M.D. Pa. Feb. 28, 2014).

*See also Waters v. Genesis Health Ventures, Inc.*, 400 F. Supp. 2d 808, 813 (E.D. Pa. 2005)

(barring reference to  plaintiff from referencing defendant's net worth in the presence of the jury

"until the Court determines that Plaintiff has demonstrated that punitive damages are

appropriate").  Furthermore, even if Plaintiffs were to demonstrate that they are entitled to

punitive damages, evidence pertaining to Defendants' overall financial condition should still be

excluded as substantially more prejudicial than probative.  Fed. R. Evid. 403; *Mango v.*

*BuzzFeed, Inc.*, 316 F. Supp. 3d 811, 813 (S.D.N.Y. 2018) (precluding evidence of defendant's

net worth and financial condition, despite this information's limited relevance to plaintiff's

punitive damages claim, reasoning it was substantially more prejudicial than probative,

especially where defendant agreed to stipulate to its size and international presence).

II.     **DEFENDANTS' OVERALL FINANCIAL STATUS IS IRRELEVANT AND SUBSTANTIALLY MORE PREJUDICIAL THAN PROBATIVE.**

Plaintiffs should be precluded from referencing the financial status or net worth of any

Defendant or the corporate parent of any Defendant unless and until they can show they are

entitled to punitive damages on their tort claims.[1]  *Parkins v. Brown*, 241 F.2d 367, 368 n.2 (5th

Cir. 1957) ("The proffered evidence as to the financial condition of defendant will be competent

only if the evidence develops a case warranting the jury in awarding punitive or exemplary

damages.").  "[E]vidence of [a] defendant's financial condition is not relevant until the factfinder

concludes that the defendant's intentional conduct warrants an award of punitive damages."

*Johnson*, 2014 WL 805995, at *12 (granting motion *in limine* to "preclude [plaintiff] from

offering evidence or testimony of [defendant]'s net worth or revenue in her opening statement or

at any other time in the presence of the jury until the jury reaches a verdict awarding punitive

damages"); *McGrane v. Shred-It USA, Inc.*, 2011 WL 1706777, at *2 (W.D. Pa. May 4, 2011)

("[U]ntil the Court determines that the evidence of record is sufficient to prove outrageous

conduct, evidence of Defendant's financial condition or net worth is irrelevant.").

 Admitting evidence of Defendants' net worth absent a showing that enhanced damages

are recoverable would substantially and unduly prejudice Defendants.  *See Ridolfi v. State Farm*

*Mut. Auto. Ins. Co.*, 2017 WL 3142372, at *2 (M.D. Pa. July 25, 2017) (holding that, where

punitive damages were not recoverable, evidence of defendant's net worth should be excluded a

"irrelevant" and "highly prejudicial," as it "could lead to juror confusion"); *Smith v. Allstate Ins.*

*Co.*, 912 F. Supp. 2d 242, 255 (W.D. Pa. 2012) ("Nonetheless, the Court agrees with [defendant]

that, should Plaintiff present evidence regarding [defendant]'s net worth and punitive damages

before Plaintiff presents legally sufficient evidence to sustain her claim for punitive damages, the

---

[1] Under no circumstances can Plaintiffs reference such information in connection with their patent infringement claim, as the issue of enhanced damages is not a matter for the jury.  *See, e.g.*, *Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*, 707 F. Supp. 2d 737, 745 (N.D. Ohio 2010) ("Assessing enhanced damages is a two-step process: first, the *fact finder* must determine if an accused infringer is guilty of conduct, such as willfulness, upon which enhanced damages may be based, and, if so, *the court* must then exercise its discretion to determine if damages should be enhanced given the totality of the circumstances.") (emphasis added).

probative value of this evidence would be substantially outweighed by a danger of unfair prejudice to [defendant], confusing the issues, misleading the jury, undue delay, and wasting time."); *Williams v. Betz Labs., Inc.*, 1996 WL 114815, at *3 (E.D. Pa. Mar. 14, 1996) (holding that "[b]efore evidence of the financial condition or net worth of defendant Betz is admissible, this Court must determine the legal sufficiency of plaintiff's claim for punitive damages, which must await trial," as a contrary decision would lead to the jury hearing "irrelevant confusing matters" proscribed by Federal Rule of Evidence 403). "The only purpose of presenting such evidence to the jury [at this stage] would be to represent that [Defendant] could afford to pay an award to Plaintiffs," which is improper. *Karlo v. Pittsburgh Glass Works, LLC*, 2016 WL 69651, at *3 (W.D. Pa. Jan. 6, 2016) (granting motion *in limine* to exclude evidence of defendant's financial status). *See also Hunt v. Cty. of Orange*, 2009 WL 10702539, at *3 (C.D. Cal. Oct. 7, 2009) (granting motion *in limine* to exclude evidence of defendant's financial condition because it would compromise factfinder's ability to award damages by "injecting the 'foreign, diverting, and distracting' question of the defendants' 'ability . . . to pay the . . . damages'"). The danger of jury confusion is high here, where Plaintiffs have already attempted to rely on finances relating to Defendants' corporate parent, L'Oréal S.A., who is not a party to this action, to increase their damages demand. (*See* D.I. 705, Ex. A; D.I. 702 at 15-16, D.I. 779 at 9-10.) Moreover, even if Plaintiffs did demonstrate their entitlement to punitive damages, evidence of Defendants' financial condition should still be excluded as more prejudicial than probative. *Mango*, 316 F. Supp. 3d at 813 (precluding evidence of financial condition and noting that defendant's size and international presence sufficed to calculate punitive damages).

Plaintiffs should be precluded from offering evidence of the net worth of any Defendant or their corporate parent.

Of Counsel:

Dennis S. Ellis
Katherine F. Murray
Adam M. Reich
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
(213) 683-6000

Naveen Modi
Joseph E. Palys
Daniel Zeilberger
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1990

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Dated:  May 1, 2019

/s/ Frederick L. Cottrell, III
Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Katharine L. Mowery (#5629)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
mowery@rlf.com

**Attorneys for Defendants**
L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal
USA S/D, Inc. and Redken 5th Avenue NYC, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2019, true and correct copies of the foregoing document

were caused to be served on the following counsel of record as indicated:

**VIA ELECTRONIC MAIL**
Jack B. Blumenfeld
Jeremy A. Tigan
Anthony D. Raucci
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

Diane M. Doolittle
Suong T. Nguyen
Quinn, Emmanuel, Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(605) 801-5000
dianedoolittle@quinnemanuel.com
suongnguyen@quinnemanuel.com

Jared W. Newton
Quinn, Emmanuel, Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000
jarednewton@quinnemanuel.com

Megan Y. Yung
Quinn, Emmanuel, Urquhart & Sullivan, LLP
111 Huntington Avenue
Suite 520
Boston, MA 02199
meganyung@quinnemanuel.com

**VIA ELECTRONIC MAIL**
Amardeep L. Thakur
Joseph M. Paunovich
Bruce E. Van Dalsem
Ali Moghaddas
Patrick T. Schmidt
William Odom
Quinn, Emmanuel, Urquhart & Sullivan, LLP
865 S. Figueroa Street
Los Angeles, CA 90017
(213) 443-3000
amarthakur@quinnemanuel.com
joepaunovich@quinnemanuel.com
brucevandalsem@quinnemanuel.com
alimoghaddas@quinnemanuel.com
patrickschmidt@quinnemanuel.com
william.odom@quinnemanuel.com

Adam J. DiClemente
Quinn, Emmanuel, Urquhart & Sullivan, LLP
55 Madison Avenue
22nd Floor
New York, NY 10010
(212) 849-7361
adamdiclemente@quinnemanuel.com

Matthew K. Blackburn
Diamond McCarthy LLP
150 California Street
Suite 2200
San Francisco, CA 94111
(415) 263-9200
mblackburn@diamondmccarthy.com

*/s/ Jason J. Rawnsley*
Jason J. Rawnsley (#5379)
rawnsley@rlf.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C. A. No. 1:17-cv-00014-JFB-SRF |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA | ) | **CONFIDENTIAL –** |
| PRODUCTS, INC., L'ORÉAL USA | ) | **FILED UNDER SEAL** |
| S/D, INC., and REDKEN 5TH AVENUE | ) | |
| NYC, L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 1 TO EXCLUDE EVIDENCE OF NET WORTH

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Adam DiClemente
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5200

May 8, 2018

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

*Attorneys for Plaintiffs*

Plaintiffs ("Olaplex") oppose Defendants' ("L'Oréal") Motion *in Limine* No. 1 ("Mot.").

# I.      PUNITIVE DAMAGES CLAIMS SUPPORT EVIDENCE OF NET WORTH

In a single sentence, L'Oréal urges this Court to exclude all evidence touching on its net worth, despite acknowledging the clear relevance of such information as to damages (among other issues in this case).  Mot. at 3.  However, both the Delaware Uniform Trade Secrets Act and the federal Defend Trade Secrets Act authorize recovery of punitive damages, 6 Del. C. § 2003(b); 18 U.S.C. § 1836(b)(3)(C), and L'Oréal acknowledges that "[e]vidence concerning a defendant's net worth is relevant to punitive damages."  *Bassi v. Patten*, 592 F. Supp. 2d 77, 85 (D.D.C. 2009). This admission alone is sufficient to deny L'Oréal's Motion.

Rather than address this head-on, L'Oréal urges error by asking the Court to exclude relevant evidence based on distinguishable cases and Rule 403.  Both arguments fail. First, L'Oréal's cases generally concern claims where punitive damages were not available ***as a matter of law*** or where the defendant had stipulated to facts concerning statutory damages enhancement. *E.g.*, *Ridolfi v. State Farm Mut. Auto. Ins. Co.*, 2017 WL 3142372, at *2 (M.D. Pa. July 25, 2017) (breach of contract); *Karlo v. Pittsburgh Glass Works, LLC*, 2016 WL 69651, at *2-3 (W.D. Pa. Jan. 6, 2016) (age discrimination); *Mango v. BuzzFeed, Inc.*, 316 F. Supp. 3d 811, 814 (S.D.N.Y. 2018) (copyright infringement).  None of these circumstances is present here.  In L'Oreal's remaining cases, evidence of net worth was excluded only for the liability stage of trials in which damages was bifurcated.  *E.g.*, *Johnson v. Federal Exp. Corp.*, 2014 WL 805995, at *12 (M.D. Pa. Feb. 28, 2014); *Hunt v. Cnty. of Orange*, 2009 WL 10702539, at *10 (C.D. Cal. Oct. 7, 2009). This circumstance, too, is not present here.

Second, Rule 403 exclusion is not proper because, as detailed in Part II, evidence addressing L'Oréal's net worth has significant, independent probative value for multiple claims and defenses at issue in this case.  Any abstract danger articulated by L'Oréal is insufficient to

"substantially outweigh" the value of presenting this relevant evidence to the jury; especially in an *in limine* order rendered before the Court is given a full record to understand the context and scope for presentation of this evidence.  Ignoring this reality, L'Oreal argues under Rule 403 that Olaplex may address L'Oréal's net worth only after the Court has found sufficient evidence to support exemplary damages.  Mot. at 1-2.  This trial within the trial demand makes no sense.  Moreover, there is no "danger of unfair prejudice" if this evidence were presented without evidence of willful and malicious conduct because L'Oréal's culpability is clear in the record at the outset.  *See, e.g.,* D.I. 732, at 2-7, 18-19.  Notably, none of L'Oréal's ***four*** separate motions for summary judgment (D.I. 694, 703, 710, 712), including one targeting Olaplex's damages case (D.I. 694), assert that willfulness cannot be proven.   The Rule 403 inquiry is highly fact- and context-sensitive, *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008), so L'Oréal's reliance on employment-discrimination cases is unavailing.  Mot. at 1-2. To the extent L'Oréal fears juror misuse of this otherwise proper information, it should propose a jury instruction at the appropriate time—a generic order *in limine* is not called for on these facts.

## II.   EVIDENCE OF NET WORTH IS RELEVANT AND HIGHLY PROBATIVE

Beyond relevance to Olaplex's punitive damages case (which L'Oréal concedes), evidence relating to Defendant's financial capacities (*e.g.*, net worth) is probative of key claims and defenses in this lawsuit.  The case law is clear that evidence of financial capability "may be admitted where it relates to a substantive issue at trial."  *Marvin Johnson, P.C. v. Shoen*, 888 F. Supp. 1009, 1013-14 (D. Ariz. 1995) (admitting evidence of defendant's financial capacity because it was relevant to the parties' asserted interpretations of contract); *see also Bower v. Weisman*, 674 F. Supp. 113, 117-18 (S.D.N.Y. 1987) (admitting evidence of defendant's financial capacity because it was "relevant for reasons other than the determination of damages").  Here, one of L'Oréal's defenses concerning Olaplex's claims is that it did or could have independently ascertained (not

misappropriated) Olaplex's technology using its knowhow and resources and/or designed around it to avoid paying Olaplex's lost profits.  D.I. 650, at 29; D.I. 695 at 10-14, 17-20.  Thus, L'Oréal has squarely put at issue its financial ability and resources to develop the Accused Products independently from the information it stole from Olaplex and/or  that L'Oréal had the financial wherewithal and resources to design around Olaplex's technology.   These capabilities are materially a function of financial resources—the ability to pay top chemists and to fund R&D, for example, goes directly to L'Oréal's defenses.  *Id.*  Further, L'Oréal's fraud Counterclaim is premised on its claim that Olaplex allegedly "demand[ed] an ***unreasonable*** $1 billion" from L'Oréal during talks.  D.I. 650, at 69-70 (emphasis added).  That L'Oréal could more than afford this acquisition request—a fact publicly known—is probative of the demand's reasonability and provides context that tends to disprove L'Oréal's argument.  Further still, L'Oréal has placed its own net worth in issue because, in attempting to defeat Olaplex's lost profits claims for alleged lack of demand for the patented invention, its witnesses (including an expert) have asserted that the Accused Products are not profitable by comparing their sales with L'Oréal's ***overall*** sales.  *See, e.g.*, D.I. 720, Ex. 7, at ¶ 95 (arguing that sales of the Accused Products "represent just a tiny fraction of the ***L'Oréal Group's overall sales***").   L'Oréal cannot rely on this point and simultaneously seek an order that would preclude Olaplex from rebutting it.  Evidence of financial capacity would not be offered to show ability to pay.  Mot. at 3.  However, for the reasons above, this evidence is highly probative of claims and defenses.  The balance of Rule 403 factors counsels denying L'Oréal's broad request for *in limine* relief.

## III.   <u>CONCLUSION</u>

Olaplex respectfully requests that the Court deny L'Oréal's Motion *in Limine* No. 1 to Exclude Evidence of Net Worth.

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Adam DiClemente
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5200

May 8, 2019

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*
_____

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

*Attorneys for Plaintiffs*

4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-14-JFB-SRF |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA | ) | **CONFIDENTIAL –** |
| PRODUCTS, INC., L'ORÉAL USA S/D, INC. | ) | **FILED UNDER SEAL** |
| and REDKEN 5TH AVENUE NYC, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION *IN LIMINE* NO. 1 TO EXCLUDE EVIDENCE OF NET WORTH

Of Counsel:

Dennis S. Ellis
Katherine F. Murray
Adam M. Reich
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
(213) 683-6000

Naveen Modi
Joseph E. Palys
Daniel Zeilberger
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1990

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Dated:  May 13, 2019

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Katharine L. Mowery (#5629)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
mowery@rlf.com

***Attorneys for Defendants***
*L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc. and Redken 5th Avenue NYC, LLC*

Olaplex fails to grasp the import of L'Oréal USA's Motion in Limine No. 1, which does not seek to preclude reference to L'Oréal USA's resources or Accused Products sales, but to its net worth and the net worth of its parent company, L'Oréal S.A..  Courts routinely exclude such information prior to a finding of liability on grounds that this information is substantially more prejudicial than probative.  *See, e.g.*, *Waters v. Genesis Health Ventures, Inc.*, 400 F. Supp. 2d 808, 813 (E.D. Pa. 2005); *Parkins v. Brown*, 241 F.2d 367, 368 n.2 (5th Cir. 1957); *Smith v. Allstate Ins. Co.*, 912 F. Supp. 2d 242, 255 (W.D. Pa. 2012); *McGrane v. Shred-It USA, Inc.*, 2011 WL 1706777, at *2 (W.D. Pa. May 4, 2011); *Williams v. Betz Labs., Inc.*, 1996 WL 114815, at *3 (E.D. Pa. Mar. 14, 1996).[1]  Olaplex also attempts to distinguish certain cases by noting that they involved employment discrimination claims, but this superficial distinction is irrelevant.  Reference to a defendant's net worth in any case seeking  punitive damages would be substantially more prejudicial than probative for the same reason—it would "confus[e] the issues, mislead[] the jury, undu[ly] delay, and wast[e] time."  *Smith*, 912 F. Supp. 2d at 255.

Olaplex's argument that Defendants' net worth is relevant to issues beyond punitive damages is misplaced.  While the parties may discuss the resources available to Defendants, and Defendants' ability to manufacture products without the assistance of Olaplex, this has nothing to do with the **net worth** of the company.  Defendants' net worth is also irrelevant to whether Olaplex's (not Defendants') $1 billion acquisition demand was made in good faith.  Whether Defendants may have had the means to pay this amount has no bearing on the reasonableness of Olaplex's demand.  Likewise, the profitability of the Accused Products can be shown through evidence of the sales of those products.  Olaplex's introduction of net worth evidence at trial would be prejudicial and invite error.   Defendants' Motion should be granted.

---

[1] Contrary to Olaplex's assertion, these cases did not involve situations where punitive damages were unavailable as a matter of law, or where the issue of punitive damages was bifurcated.

Of Counsel:

Dennis S. Ellis
Katherine F. Murray
Adam M. Reich
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
(213) 683-6000

Naveen Modi
Joseph E. Palys
Daniel Zeilberger
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1990

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Dated:  May 13, 2019

*/s/ Frederick L. Cottrell, III*
Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Katharine L. Mowery (#5629)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
mowery@rlf.com

***Attorneys for Defendants***
*L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc. and Redken 5th Avenue NYC, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 13, 2019, true and correct copies of the foregoing document

were caused to be served on the following counsel of record as indicated:

**VIA ELECTRONIC MAIL**
Jack B. Blumenfeld
Jeremy A. Tigan
Anthony D. Raucci
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

Diane M. Doolittle
Suong T. Nguyen
Quinn, Emmanuel, Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(605) 801-5000
dianedoolittle@quinnemanuel.com
suongnguyen@quinnemanuel.com

Jared W. Newton
Quinn, Emmanuel, Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000
jarednewton@quinnemanuel.com

Megan Y. Yung
Quinn, Emmanuel, Urquhart & Sullivan, LLP
111 Huntington Avenue
Suite 520
Boston, MA 02199
meganyung@quinnemanuel.com

**VIA ELECTRONIC MAIL**
Amardeep L. Thakur
Joseph M. Paunovich
Bruce E. Van Dalsem
Ali Moghaddas
Patrick T. Schmidt
William Odom
Quinn, Emmanuel, Urquhart & Sullivan, LLP
865 S. Figueroa Street
Los Angeles, CA 90017
(213) 443-3000
amarthakur@quinnemanuel.com
joepaunovich@quinnemanuel.com
brucevandalsem@quinnemanuel.com
alimoghaddas@quinnemanuel.com
patrickschmidt@quinnemanuel.com
william.odom@quinnemanuel.com

Adam J. DiClemente
Quinn, Emmanuel, Urquhart & Sullivan, LLP
55 Madison Avenue
22nd Floor
New York, NY 10010
(212) 849-7361
adamdiclemente@quinnemanuel.com

Matthew K. Blackburn
Diamond McCarthy LLP
150 California Street
Suite 2200
San Francisco, CA 94111
(415) 263-9200
mblackburn@diamondmccarthy.com

/s/ Jason J. Rawnsley
Jason J. Rawnsley (#5379)
rawnsley@rlf.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LIQWD, INC. and OLAPLEX LLC,      )
                                   )
               Plaintiffs,     )
                                   )
v.                                )     C.A. No. 17-14-JFB-SRF
                                   )
L'ORÉAL USA, INC., L'ORÉAL USA    )     **CONFIDENTIAL –**
PRODUCTS, INC., L'ORÉAL USA S/D, INC. )     **FILED UNDER SEAL**
and REDKEN 5TH AVENUE NYC, LLC,   )
                                   )
               Defendants.   )
                                   )

## DEFENDANTS' MOTION *IN LIMINE* NO. 2 TO PRECLUDE REFERENCE TO ANY FINDINGS AND CONCLUSIONS MADE IN CONNECTION WITH PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION

Of Counsel:

Dennis S. Ellis
Katherine F. Murray
Adam M. Reich
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
(213) 683-6000

Naveen Modi
Joseph E. Palys
Daniel Zeilberger
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1990

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Dated:  May 1, 2019

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Katharine L. Mowery (#5629)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
mowery@rlf.com

***Attorneys for Defendants***
*L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc. and Redken 5th Avenue NYC, LLC*

## I.      SUMMARY OF ARGUMENT

Plaintiffs should be precluded from making reference at trial to any finding or ruling made by the Magistrate, this Court, or the Federal Circuit in connection with Plaintiffs' motions for preliminary injunction (D.I. 14, 239).  Plaintiffs have used these rulings as a crutch throughout this litigation, relying on preliminary findings based on an incomplete record to avoid making fulsome, affirmative arguments.  They should not be permitted to utilize this strategy at trial.  As a threshold matter, any findings or conclusions made in connection with Plaintiffs' motions for preliminary injunctive relief are irrelevant to any issue being decided by the jury.  Fed. R. Evid. 402.  But even if that were not the case, such references should be excluded as substantially more prejudicial than probative.  Fed. R. Evid. 403.  Courts routinely preclude references to preliminary injunctions on these grounds.  *See Judkins v. HT Window Fashions Corp.*, 2009 WL 3400989, at *1 (W.D. Pa. Oct. 20, 2009); *Altana Pharma AG v. Teva Pharm. USA Inc.*, 2010 WL 11470982, at *1 (D.N.J. Apr. 5, 2010); *King Pharm., Inc. v. Sandoz, Inc.*, 2010 WL 4789950, at *1 (D.N.J. Sept. 8, 2010).[1]

## II.      THE FINDINGS AND CONCLUSIONS ON PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION ARE NOT RELEVANT.

The findings and conclusions relating to Plaintiffs' requests for preliminary injunctive relief are irrelevant at trial.  Fed. R. Evid. 402.  "[T]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.  Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."  *Univ. of Tex. v.*

---

[1] To be clear, Defendants are not seeking to preclude evidence adduced or presented by any party in connection with the preliminary injunction motions.  This motion *in limine* is limited only to the findings and conclusions reached by the courts in connection with those motions.

*Camenisch*, 451 U.S. 390, 395 (1981).  As such, "all findings of fact and conclusions of law at the preliminary injunction stage are subject to change upon the ultimate trial on the merits," and are "not binding" on the trial court.  *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1363 (Fed. Cir. 2001); *Univ. of Tex.*, 451 U.S. at 395.  This point is punctuated in the instant case, as this Court declined to review Defendants' motions to reopen the preliminary injunction record to include evidence that Plaintiffs withheld during discovery (and which was not available to Defendants during the preliminary injunction briefing), on grounds that the preliminary injunction was "<u>preliminary</u>."  (*See* D.I. 785 at 12 (emphasis in original).) Defendants intend to appeal this Court's order granting Plaintiffs' Renewed Motion for Preliminary Injunction.  (D.I. 785.)  In short, the preliminary nature of both the requested relief and the findings associated therewith are precisely what make them irrelevant to a full trial on the merits.  *See Judkins*, 2009 WL 3400989, at *1 (granting motion *in limine* to preclude reference to preliminary injunction decision because "findings and conclusions at the preliminary injunction stage are tentative, subject to change, and are not binding at a trial on the merits"); *Sanofi-Aventis Deutschland Gmbh v. Glenmark Pharm. Inc., USA*, 2011 WL 383861, at *3 (D.N.J. Feb. 3, 2011) (excluding as irrelevant references concerning the court's preliminary injunction opinion); *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 2013 WL 5286189, at *2 (D.N.J. Sept. 16, 2013) (same); *Novartis Pharm. Corp. v. Teva Pharm. USA, Inc.*, 2009 WL 3754170, at *5 (D.N.J. Nov. 5, 2009) ("A judicial ruling or court conclusion of law is not a matter for the jury which operates as the factfinder.").

## III.    REFERENCE TO THE COURTS' PRELIMINARY FINDINGS AND CONCLUSIONS IS SUBSTANTIALLY MORE PREJUDICIAL THAN PROBATIVE.

Even if the findings and conclusions were relevant, such references should be excluded as more prejudicial than probative.  Fed. R. Evid. 403.  Courts routinely exclude such evidence on

the grounds that it is "likely to unduly influence the jury." *Park W. Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314, 324 (S.D.N.Y. 2009) (granting motion *in limine* to preclude references to the court's preliminary injunction ruling pursuant to Rule 403); *Sanofi-Aventis*, 2011 WL 383861, at *3 (excluding as prejudicial evidence and references relating to the court's preliminary injunction opinion); *Novartis*, 2009 WL 3754170, at *5 ("Given the leniency afforded by courts at the preliminary injunction stage, the introduction of the denial of the preliminary injunction and the Federal Circuit's affirmance of that disposition creates an unduly prejudicial effect outweighing any potential probative value alleged for purposes of introduction."); *Howmedica*, 2013 WL 5286189, at *2 (excluding evidence of and reference to preliminary injunction order on the grounds that it "would be unfairly prejudicial, confuse the issues, and mislead the jury"); *King Lombardi Acquisitions, Inc. v. Troop Real Estate, Inc.*, 2011 WL 13213918, at *1 (C.D. Cal. Jan. 10, 2011) (granting motion *in limine* to "preclude plaintiff from offering evidence or argument related to the parties' stipulated preliminary injunction," reasoning that "whatever probative value evidence of the stipulated preliminary injunction may have, it is far outweighed by the potential for unfair prejudice and confusion").

Plaintiffs should be precluded from referencing any findings or conclusions reached by any court relating to their motions for preliminary injunction.

| Of Counsel: | /s/ Frederick L. Cottrell, III |
|---|---|
| | Frederick L. Cottrell, III (#2555) |
| Dennis S. Ellis | Jeffrey L. Moyer (#3309) |
| Katherine F. Murray | Katharine L. Mowery (#5629) |
| Adam M. Reich | Richards, Layton & Finger, P.A. |
| Paul Hastings LLP | One Rodney Square |
| 515 South Flower Street, 25th Floor | 920 N. King Street |
| Los Angeles, CA 90071 | Wilmington, Delaware 19801 |
| (213) 683-6000 | (302) 651-7700 |
| | cottrell@rlf.com |
| Naveen Modi | moyer@rlf.com |
| Joseph E. Palys | mowery@rlf.com |
| Daniel Zeilberger | |

Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1990

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Dated:  May 1, 2019

**Attorneys for Defendants**
L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal
USA S/D, Inc. and Redken 5th Avenue NYC, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2019, true and correct copies of the foregoing document

were caused to be served on the following counsel of record as indicated:

**VIA ELECTRONIC MAIL**

Jack B. Blumenfeld
Jeremy A. Tigan
Anthony D. Raucci
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

Diane M. Doolittle
Suong T. Nguyen
Quinn, Emmanuel, Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(605) 801-5000
dianedoolittle@quinnemanuel.com
suongnguyen@quinnemanuel.com

Jared W. Newton
Quinn, Emmanuel, Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000
jarednewton@quinnemanuel.com

Megan Y. Yung
Quinn, Emmanuel, Urquhart & Sullivan, LLP
111 Huntington Avenue
Suite 520
Boston, MA 02199
meganyung@quinnemanuel.com

**VIA ELECTRONIC MAIL**

Amardeep L. Thakur
Joseph M. Paunovich
Bruce E. Van Dalsem
Ali Moghaddas
Patrick T. Schmidt
William Odom
Quinn, Emmanuel, Urquhart & Sullivan, LLP
865 S. Figueroa Street
Los Angeles, CA 90017
(213) 443-3000
amarthakur@quinnemanuel.com
joepaunovich@quinnemanuel.com
brucevandalsem@quinnemanuel.com
alimoghaddas@quinnemanuel.com
patrickschmidt@quinnemanuel.com
william.odom@quinnemanuel.com

Adam J. DiClemente
Quinn, Emmanuel, Urquhart & Sullivan, LLP
55 Madison Avenue
22nd Floor
New York, NY 10010
(212) 849-7361
adamdiclemente@quinnemanuel.com

Matthew K. Blackburn
Diamond McCarthy LLP
150 California Street
Suite 2200
San Francisco, CA 94111
(415) 263-9200
mblackburn@diamondmccarthy.com

*/s/ Jason J. Rawnsley*
Jason J. Rawnsley (#5379)
rawnsley@rlf.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C. A. No. 1:17-cv-00014-JFB-SRF |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA | ) | **CONFIDENTIAL –** |
| PRODUCTS, INC., L'ORÉAL USA | ) | **FILED UNDER SEAL** |
| S/D, INC., and REDKEN 5TH AVENUE | ) | |
| NYC, L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 2 TO PRECLUDE REFERENCE TO ANY FINDINGS AND CONCLUSIONS MADE IN CONNECTION WITH PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Adam DiClemente
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5200

May 8, 2018

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

*Attorneys for Plaintiffs*

Plaintiffs ("Olaplex") oppose Defendants' ("L'Oréal") Motion *in Limine* No. 2 to Prelude Reference to Any Findings and Conclusions Made in Connection with Plaintiffs' Motions for Preliminary Injunction ("Motion" or "Mot.").

## I.   CERTAIN PRELIMINARY INJUNCTION FINDINGS ARE PROBATIVE AND ADMISSIBLE FOR PROPER PURPOSES

L'Oréal's Motion seeks to preclude "***any*** findings and conclusions*" related to Olaplex's Preliminary Injunction Motions.  Mot. at 1 (emphasis added).  This is an overbroad request and improper.  *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013) ("Evidentiary rulings … should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context.").  At the outset, Olaplex will certainly not suggest that the jury should find the '419 Patent valid and infringed at trial on the basis that its motion for a preliminary injunction was granted.[1]  However, there are several proper uses of findings made in connection with the preliminary injunction motions and it should not be excluded wholesale. For example, Olaplex contends that L'Oréal actively induces infringement by instructing its customers to use the Accused Products in an infringing manner. *Liqwd, Inc. v. L'Oréal USA, Inc.*, 720 F. App'x 623, 628-29 (Fed. Cir. 2018).  As the Federal Circuit recognized, "active inducement of infringement[] is often 'an ongoing offense that can continue after litigation has commenced.'"  *Id.* at 628 (quoting *In re Seagate Technology, LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007)).  Olaplex should be permitted to inform the jury of the Federal Circuit's decision on appeal from the first Order concerning the preliminary injunction motion (D.I. 135), as well as the date thereof (D.I. 217-1), because that decision establishes that

---

[1]   L'Oréal charges, without citation or explanation, that "Plaintiffs have used these [preliminary injunction] rulings as a crutch throughout this litigation, relying on preliminary findings based on an incomplete record to avoid making fulsome, affirmative argument."  Mot. at 1.  L'Oréal declined to direct the Court to even a single example to back up this claim.

1

L'Oréal actively induced infringement with the requisite knowledge at least as early as the date the decision issued (but likely much earlier in light of other evidence). *See id.* at 629 ("Our claim construction today *makes it likely that the knowledge element for inducement of infringement may be satisfied*[.]" (emphasis added)). Relatedly, one of L'Oréal's defenses to Olaplex's infringement claims is that, to the extent it has infringed Olaplex's patents, it did not do so willfully. D.I. 650, at 27. The Federal Circuit has held that the fact an infringer is enjoined from infringing is relevant to the infringer's *notice* of infringement, supporting a finding of willfulness. *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 785 F.2d 1013, 1015 (Fed. Cir. 1986) ("We agree . . . that the injunction, against a party who had already infringed, provided an added reason for caution."). In support of Olaplex's demand for enhanced patent damages, Olaplex should be permitted to inform the jury of the timeframe when L'Oréal was found likely to be infringing the '419 Patent, helping to establish the date by which L'Oréal knew (or should have known) that its conduct was infringing. L'Oréal did not stop its infringement (or do anything different) following either the Federal Circuit's decision (D.I. 217-1), or this Court's decisions on remand (D.I. 430; D.I. 785). L'Oréal's request to entirely bar information from the first two years of this litigation (indeed two additional years of infringing conduct) is overbroad and unsupported at law. To the extent L'Oréal believes that any specific reference to an order, conclusion, or decision respecting the preliminary injunction phase of this case is improper, the appropriate action is a contemporaneous trial objection. *Cf. C.R. Bard Inc. v. AngioDynamics Inc.*, 2018 WL 3468215, at *3 (D. Del. July 18, 2018); *see infra* Part II. Further still, evidence of preliminary injunction decisions may be relevant for impeachment purposes at trial. One of the cases L'Oréal cites expressly recognizes that an order *in limine* otherwise excluding reference to a preliminary injunction order should leave open its use for impeachment. *See Altana Pharma AG v. Teva*

2

*Pharms. USA Inc.*, 2010 WL 11470982, at *1 (D.N.J. April 5, 2010) ("However, the Defendants are not precluded from the use of injunction materials if relevant and appropriate for impeachment purposes."). Moreover, several of L'Oréal's experts relied on preliminary injunction materials and decisions to form their opinions. *See, e.g.*, D.I. 719, Ex. 1, at ¶¶ 25, 29 (Dr. Benny Freeman's Opening Report); D.I. 720, Ex. 4, at ¶ 14 & n.2 (Rhonda Harper's Report); D.I. 720, Ex. 6, at Ex. B, Items 7, 12 (James Pooley's Report); D.I. 720, Ex. 8, at Ex. B, Items 6, 10 (Thomas Schultz's Report); D.I. 719, Ex. 3, at ¶ 23, 27, 77 n.44 (Dr. Freeman's Rebuttal Report). Assuming that these experts are permitted to testify at trial,[2] Olaplex should be allowed to cross-examine them about and impeach them with the materials they relied on, *see* Fed. R. Evid. 705, which includes the evidence that L'Oréal would exclude hereby.[3]

## II.     ANY PREJUDICE CAN BE EASILY CURED

To the extent there is any prejudice in informing the jury about certain findings related to the preliminary injunction proceedings, it is easily cured. Given the probative value that Olaplex has described above, to the extent any prejudice would result, the remedy should not be to exclude the evidence but to issue a cautionary instruction to the jury. *See, e.g.*, *WWP, Inc. v. Wounded Warriors Family Support, Inc.*, 628 F.3d 1032, 1040-41 (8th Cir. 2011) (affirming district court's admission of reference to grant of preliminary injunction because it was relevant to plaintiff's damages theory and because the district court "issued a cautionary instruction"); *Citizens Fin. Group, Inc. v. Citizens Nat'l Bank*, 383 F.3d 110, 133 (3d Cir. 2004).

## III.     CONCLUSION

Olaplex respectfully requests that the Court deny L'Oréal's Motion.

---

[2]  *But see* D.I. 684, 686, 690, 697 (Olaplex's *Daubert* motions).

[3]  Additionally, Olaplex experts rely on the existence of judicial findings made in the Preliminary Injunction proceedings that are probative of issues and defenses in the case. *See, e.g.*, D.I. 747-1, Ex. 1 at ¶¶ 29, 48, 63, 68, 74, 83 & accompanying footnotes.

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Adam DiClemente
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5200

May 8, 2019

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*
_____

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-14-JFB-SRF |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA | ) | **CONFIDENTIAL –** |
| PRODUCTS, INC., L'ORÉAL USA S/D, INC. | ) | **FILED UNDER SEAL** |
| and REDKEN 5TH AVENUE NYC, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 2 TO PRECLUDE REFERENCE TO ANY FINDINGS AND CONCLUSIONS MADE IN CONNECTION WITH PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION

Of Counsel:

Dennis S. Ellis
Katherine F. Murray
Adam M. Reich
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
(213) 683-6000

Naveen Modi
Joseph E. Palys
Daniel Zeilberger
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1990

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Dated: May 13, 2019

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Katharine L. Mowery (#5629)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
mowery@rlf.com

***Attorneys for Defendants***
*L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc. and Redken 5th Avenue NYC, LLC*

Olaplex concedes that it would be improper to "suggest that the jury should find the '419 Patent valid and infringed at trial on the basis that its motion for preliminary injunction was granted." (Opp. at 1.) Nonetheless, Olaplex still seeks to reference the trial and appellate courts' findings relating to its motions for preliminary injunction ("PI"). This is improper, as these preliminary findings are based on an incomplete record and would "unduly influence the jury." *Park W. Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314, 324 (S.D.N.Y. 2009).

While Olaplex argues that the PI findings may be relevant for other purposes, it focuses primarily on the evidence presented in connection with the PI motions, not with the courts' findings.[1] Defendants do not seek to preclude the underlying evidence, to which they may have separate objections at trial. Their motion focuses only on the rulings and findings within them.

Olaplex also contends that the PI ruling somehow establishes Defendants' knowledge for induced infringement or willfulness. (Opp. at 2.) Not only is this argument incorrect (and Defendants reject such a premise), it underscores the prejudice such rulings would introduce to Defendants, as Defendants were forced to present initial non-infringement and invalidity positions during the time constrained PI phases of this case, which do not represent all of Defendants' non-infringement and invalidity positions against the asserted patents. The jury should not be tainted by findings and conclusions that were not based on a full record and evidence that will be presented at trial. Moreover, Defendants are appealing the PI ruling and maintain that the asserted patents are both invalid and not infringed.[2]

---

[1] For instance, Olaplex states that this information may be relevant for impeachment purposes, and that Defendants' experts relied on the PI ruling in their reports. The cited portions of the reports note the experts' *awareness* of the rulings, not their reliance on them.

[2] Moreover, if Olaplex is permitted to reference the PI rulings at trial based on its theory, then the PGR decisions (which Olaplex seeks to preclude in another motion *in limine*) demonstrating the invalidity of the asserted patents should likewise be allowed, to afford Defendants a fair retort to Olaplex's allegations of willfulness, infringement, and validity.

Of Counsel:

Dennis S. Ellis
Katherine F. Murray
Adam M. Reich
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
(213) 683-6000

Naveen Modi
Joseph E. Palys
Daniel Zeilberger
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1990

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Dated:  May 13, 2019

/s/ Frederick L. Cottrell, III
Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Katharine L. Mowery (#5629)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
mowery@rlf.com

*Attorneys for Defendants*
*L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc. and Redken 5th Avenue NYC, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 13, 2019, true and correct copies of the foregoing document

were caused to be served on the following counsel of record as indicated:

**VIA ELECTRONIC MAIL**
Jack B. Blumenfeld
Jeremy A. Tigan
Anthony D. Raucci
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

Diane M. Doolittle
Suong T. Nguyen
Quinn, Emmanuel, Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(605) 801-5000
dianedoolittle@quinnemanuel.com
suongnguyen@quinnemanuel.com

Jared W. Newton
Quinn, Emmanuel, Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000
jarednewton@quinnemanuel.com

Megan Y. Yung
Quinn, Emmanuel, Urquhart & Sullivan, LLP
111 Huntington Avenue
Suite 520
Boston, MA 02199
meganyung@quinnemanuel.com

**VIA ELECTRONIC MAIL**
Amardeep L. Thakur
Joseph M. Paunovich
Bruce E. Van Dalsem
Ali Moghaddas
Patrick T. Schmidt
William Odom
Quinn, Emmanuel, Urquhart & Sullivan, LLP
865 S. Figueroa Street
Los Angeles, CA 90017
(213) 443-3000
amarthakur@quinnemanuel.com
joepaunovich@quinnemanuel.com
brucevandalsem@quinnemanuel.com
alimoghaddas@quinnemanuel.com
patrickschmidt@quinnemanuel.com
william.odom@quinnemanuel.com

Adam J. DiClemente
Quinn, Emmanuel, Urquhart & Sullivan, LLP
55 Madison Avenue
22nd Floor
New York, NY 10010
(212) 849-7361
adamdiclemente@quinnemanuel.com

Matthew K. Blackburn
Diamond McCarthy LLP
150 California Street
Suite 2200
San Francisco, CA 94111
(415) 263-9200
mblackburn@diamondmccarthy.com


/s/ Jason J. Rawnsley
Jason J. Rawnsley (#5379)
rawnsley@rlf.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-14-JFB-SRF |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA | ) | **HIGHLY CONFIDENTIAL** |
| PRODUCTS, INC., L'ORÉAL USA S/D, INC., | ) | **FILED UNDER SEAL** |
| and REDKEN 5TH AVENUE NYC, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION *IN LIMINE* NO. 3 TO PRECLUDE REFERENCE TO L'ORÉAL S.A.'S PARTICIPATION IN AND DISMISSAL FROM THIS PROCEEDING AND THE U.K. LITIGATION DECISION

Of Counsel:
Dennis S. Ellis
Katherine F. Murray
Adam M. Reich
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
(213) 683-6000

Naveen Modi
Joseph E. Palys
Daniel Zeilberger
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1990

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Dated:  May 1, 2019

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Katharine L. Mowery (#5629)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
mowery@rlf.com

*Attorneys for Defendants*
*L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal*
*USA S/D, Inc. and Redken 5th Avenue NYC, LLC*

Defendants respectfully request an order *in limine* precluding Plaintiffs from referencing or using at trial certain information regarding a non-party, L'Oréal S.A.  In particular, Defendants request that the Court preclude Olaplex from referring to or eliciting testimony regarding the following at trial: (1) L'Oréal S.A.'s temporary involvement and dismissal from this case; and (2) a decision currently under appeal in the United Kingdom involving L'Oréal S.A, *Liqwd, Inc. v. L'Oréal (U.K.) Ltd.* (the "U.K. Decision").

L'Oréal S.A. is not a defendant in this case.  Yet, throughout this case, Olaplex has repeatedly referenced "L'Oréal" indiscriminately in an attempt to blur the lines between the distinct entities to Olaplex's benefit.  (*See, e.g.*, D.I. 668 at 4 (arguing "***L'Oréal*** [i.e., L'Oréal USA] has already deposed [Olaplex witnesses] extensively on the subject of Olaplex's alleged prior public use and/or sale of its products … a contention that was rejected by the court in the U.K. Litigation but which ***L'Oréal*** [i.e., L'Oréal S.A. and L'Oréal (U.K.) Ltd.] continues to pursue on appeal.") (emphasis added).)  Defendants expect Olaplex will reference L'Oréal S.A. in an attempt to suggest that a foreign company, rather than L'Oréal USA, Inc., a U.S. company, is the true party in this lawsuit.  The fact is that Defendants are U.S. companies just like Olaplex, and any suggestion to the contrary to try to prejudice Defendants should be precluded.  In particular, Olaplex should be precluded from referencing L'Oréal S.A.'s former status as a defendant in this case, discovery issues relating to L'Oréal S.A., and a U.K. Decision involving L'Oréal S.A.  (*See, e.g.*, Ex. A at 5 (Tiffany Walden asserting that "a judge may consider [the U.K. decision] when assessing the [U.S.] case").)  These topics are irrelevant to the case, are likely to confuse/mislead the jury, and carry a substantial risk of unfairly prejudicing Defendants.  *See* Fed. R. Evid. 401-403.  Thus, this Court should issue an order *in limine* preempting such juror confusion and undue prejudice.

1

**L'Oréal S.A.'s Participation In The Case**

This Court has already rejected Olaplex's contention that L'Oréal S.A.—the foreign parent company of L'Oréal USA, Inc., but a separate legal entity—was purportedly "closely related" to Defendants for purposes of this proceeding, and therefore this Court rejected Olaplex's improper attempt to draw L'Oréal S.A. into this case through its First Amended Complaint.  (*See* D.I. 186 at 4, 6, 15-16, 38-39, 41-45 (recommending dismissal); D.I. 234 at 2-7 (adopting D.I. 186 in its entirety); *see also* D.I. 117 (L'Oréal S.A.'s motion to dismiss).)  Olaplex should be precluded from suggesting to the jury that any negative inference should be made regarding L'Oréal S.A.'s temporary involvement in this case or any discovery directed to L'Oréal S.A.—such as, for example, impugning the Defendants for Olaplex's failure to prove its entitlement to discovery from L'Oréal S.A., a separate entity.

**The U.K. Decision**

This Court should also preclude reference to and use of the U.K. Decision finding infringement and validity of U.K. Patent GB 2 525 793 by L'Oréal S.A. and L'Oréal (U.K.) Ltd.

*First*, reference to the U.K. Decision would present a substantial danger of confusing the issues and misleading the jury while its probative value is negligible.  *See* Fed. R. Evid. 401-403.  Differences between the present case and the U.K. litigation make that decision irrelevant to the present case.[1]  For example, the UK Decision is based on laws of a different country and is

---

[1] Although the ***decision*** in the U.K. litigation is irrelevant to this case, certain underlying facts, such as prior use by Olaplex, are relevant to certain claims or defenses by both Olaplex and L'Oréal USA.  Defendants' motion does not seek to exclude all mention of the U.K. litigation (which may be properly invoked for impeachment purposes, for example), but instead is narrowly targeted to the decision in the case which has no probative value and a high likelihood of unfair prejudice to Defendants in this case, none of which were/are a party to that U.K. litigation.

2

against different defendants.  (*See* D.I. 668, Ex. N).  It would be difficult, if not impossible, to instruct a jury on these nuances.

**Second**, the U.K. Decision is both non-binding and is still on appeal; therefore, any reference to that decision would be highly prejudicial to Defendants at trial.  *See Quad/Tech, Inc. v. Q.I. Press Controls B.V.*, 701 F. Supp. 2d 644, 655 (E.D. Pa. 2010) ("foreign patent determinations are not binding in litigation concerning United States patents and patent law"), *aff'd*, 413 F. App'x 278 (Fed. Cir. 2011).  Even if the Court finds that the U.K. Decision has minimal relevance, the jury likely will not know how to properly weigh a decision in a foreign jurisdiction that is on appeal.  Should the U.K. appellate court reverse (or even criticize) the U.K. Decision, the jury will have already been tainted.  The marginal probative value (if any) of the U.K. Decision is vastly outweighed by the high likelihood of unfair prejudice to Defendants by its inclusion.

**Third**, it would be unfair to allow Olaplex to use the U.K. Decision to persuade the jury that specific outcomes in that case (e.g., infringement of a foreign patent and validity regarding prior use under U.K. law) are relevant to this case when Olaplex vigorously (and successfully) fought to block Defendants' access to documents from that case.  (*See* D.I. 668, 675.)  Allowing the use of the decision would be permitting Olaplex to use an outcome while withholding from Defendants the basic information to argue why this outcome is inapplicable.  Olaplex cannot have it both ways.

For the foregoing reasons, Defendants respectfully request an order *in limine* precluding Olaplex from referencing or using at trial the participation and dismissal of L'Oréal S.A. in this action or the U.K. Decision.

|                                              | /s/ Frederick L. Cottrell, III                              |
|----------------------------------------------|------------------------------------------------------------|
| Of Counsel:                                  | Frederick L. Cottrell, III (#2555)                         |
| Dennis S. Ellis                              | Jeffrey L. Moyer (#3309)                                   |
| Katherine F. Murray                          | Katharine L. Mowery (#5629)                                |
| Adam M. Reich                                | Richards, Layton & Finger, P.A.                            |
| Paul Hastings LLP                            | One Rodney Square                                          |
| 515 South Flower Street, 25th Floor          | 920 N. King Street                                         |
| Los Angeles, CA 90071                        | Wilmington, Delaware 19801                                 |
| (213) 683-6000                               | (302) 651-7700                                             |
|                                              | cottrell@rlf.com                                           |
| Naveen Modi                                  | moyer@rlf.com                                              |
| Joseph E. Palys                              | mowery@rlf.com                                             |
| Daniel Zeilberger                            |                                                            |
| Paul Hastings LLP                            | **Attorneys for Defendants**                               |
| 875 15th Street, N.W.                        | L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal     |
| Washington, D.C. 20005                       | USA S/D, Inc. and Redken 5th Avenue NYC, LLC               |
| (202) 551-1990                               |                                                            |
|                                              |                                                            |
| Scott F. Peachman                            |                                                            |
| Paul Hastings LLP                            |                                                            |
| 200 Park Avenue                              |                                                            |
| New York, NY 10166                           |                                                            |
| (212) 318-6000                               |                                                            |

Dated:  May 1, 2019

4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 1, 2019, true and correct copies of the foregoing document

were caused to be served on the following counsel of record as indicated:

<u>**VIA ELECTRONIC MAIL**</u>
Jack B. Blumenfeld
Jeremy A. Tigan
Anthony D. Raucci
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

Diane M. Doolittle
Suong T. Nguyen
Quinn, Emmanuel, Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(605) 801-5000
dianedoolittle@quinnemanuel.com
suongnguyen@quinnemanuel.com

Jared W. Newton
Quinn, Emmanuel, Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000
jarednewton@quinnemanuel.com

Megan Y. Yung
Quinn, Emmanuel, Urquhart & Sullivan, LLP
111 Huntington Avenue
Suite 520
Boston, MA 02199
meganyung@quinnemanuel.com

<u>**VIA ELECTRONIC MAIL**</u>
Amardeep L. Thakur
Joseph M. Paunovich
Bruce E. Van Dalsem
Ali Moghaddas
Patrick T. Schmidt
William Odom
Quinn, Emmanuel, Urquhart & Sullivan, LLP
865 S. Figueroa Street
Los Angeles, CA 90017
(213) 443-3000
amarthakur@quinnemanuel.com
joepaunovich@quinnemanuel.com
brucevandalsem@quinnemanuel.com
alimoghaddas@quinnemanuel.com
patrickschmidt@quinnemanuel.com
william.odom@quinnemanuel.com

Adam J. DiClemente
Quinn, Emmanuel, Urquhart & Sullivan, LLP
55 Madison Avenue
22nd Floor
New York, NY 10010
(212) 849-7361
adamdiclemente@quinnemanuel.com

Matthew K. Blackburn
Diamond McCarthy LLP
150 California Street
Suite 2200
San Francisco, CA 94111
(415) 263-9200
mblackburn@diamondmccarthy.com

*/s/ Jason J. Rawnsley*
Jason J. Rawnsley (#5379)
rawnsley@rlf.com

# Exhibit A

Case 1:17-cv-00014-JFB-SRF    Document 321-2    Filed 05/28/19    Page 642 of 714 PageID #: 50927

OLAPLEX. [BLOG]                                        ↵ Back to Website

# Hair Stories
#### FROM OLAPLEX

Search …

................................................................

Jun 16, 2018

# Legal Update: Olaplex Patent Litigation Victory



On Monday, June 11, 2018, a UK High Court Judge ruled that L'Oréal UK and its parent company, L'Oréal SA infringed an Olaplex patent by selling

LO_USA0072114

and using their Smartbond product.  Many of our followers have asked for more information about the case, the victory, what it means for hairdressers, and what it means for Olaplex and their on-going US litigation.    To help in answer your questions, below is a Q & A with Dean Christal, the CEO and Founder of Olaplex, and Tiffany Walden, Olaplex's General Counsel.

## Q:  What does Olaplex have patented?

Tiffany: Olaplex has nearly a dozen patents around the world, and more than 100 additional patents pending. They cover a variety of technologies and inventions – some protecting our Olaplex products, some protecting compositions that perform similarly, and some covering new things we haven't yet manufactured.  The patent L'Oréal infringed is the use of maleic acid in bleaching mixtures to repair damage to hair.

## Q:  When did you first learn L'Oréal was infringing your patent?

Dean:  A few months before the launch of their infringing products – we started hearing whispers in the industry that L'Oréal was going to launch three products that used maleic acid in bleach – something we had patented in the US, and had a patent pending in the UK.  L'Oréal knew we had those patents, so we were shocked that they would brazenly infringe the patent. We didn't want to get in a huge legal battle – it's been incredibly costly and disruptive to our business and personal lives.  But we didn't have a choice. I had a phone call with Frederic Roze, the Executive Vice President of the Americas for L'Oréal; I informed him they would be infringing our patent and we would have no choice but to sue, but Frederic wasn't interested in listening to me and ultimately they launched the infringing products.



## Q:  Why did you sue L'Oréal?

Dean: Truly, we felt like we didn't have a choice.  Once we informed them we had patents covering their products – and they told us they were not going to cancel the launch, we had to protect our technology and our investment.  Olaplex spent millions creating and patenting our Step 1 technology – we couldn't allow L'Oréal to steal it and then compete against us.

LO_USA0072115

Tiffany:  Legally, we have an obligation to enforce our patent rights.  If you don't take action when you find people infringing your rights, you are at risk to lose them.  We also knew that if L'Oréal got away with patent infringement, every other manufacturer would think they could also infringe our patent.

## Q:  Are a lot of other people infringing your patent?

Tiffany:  No.  While there are a lot of knock-off products purporting to be "bond builders" – none of those products work – because they don't use our patented chemistry.  Most of the "bond builders" out there are really silicones, oils, and protein treatments – they might make the hair feel good in the short-term, but after a couple of washes, the damage becomes apparent.

## Q:  Was it scary for you to go up against L'Oréal – given how big and powerful they are in the industry?

Dean:  The short answer is yes.  From the beginning, we knew we were in the right, everyone knows that Olaplex created this category and we created the technology. L'Oréal is the biggest beauty company in the world and we knew that that they would pull all stops and spend tons of money not to get caught in their illegal acts. We didn't want to go bankrupt protecting our intellectual property but we had no choice. In the US, they control a lot of our distribution through Salon Centric and we knew that once we sued them, we would risk our business at Salon Centric.  Ultimately, I decided that the costs and risks were worth it and we needed to sue them to get L'Oréal to stop infringing.

Tiffany: At every stage of the process, we faced an uphill battle because of L'Oréal's size and strength: we had law firms that wouldn't work with us because they do work for L'Oréal.  We had experts decline to partner with us because they rely on L'Oréal for consulting work and didn't want to be adverse to them.  A lot of times it felt – and it continues to feel – that they're using their size and power to simply try and outspend us and force us into a position where we can no longer afford to litigate this case.

Dean:  What they don't seem to understand is that we can't afford not to litigate this case.  We've spent millions of dollars on this case – and we've

LO_USA0072116

Case 1:17-cv-00014-JFB-SRF    Document 321-2   Filed 05/28/19   Page 645 of 714 PageID #: 50930

had to slow down the growth of our business because of it – but if we wouldn't have sued L'Oréal and wouldn't have won – it would have had disastrous consequences long-term for the success of our company.

## Q: What was the hardest part of the lawsuit?

Dean: Dealing with the personal attacks from their attorneys. In the UK litigation, their attorney spent hours calling me a liar and a dishonest person. He said the same thing about Dr. Pressly, one of the inventors of Olaplex, and Tracey Cunningham. To hear someone impugn your character, and to have to just sit there and listen to it- is not an easy thing.

Tiffany: Olaplex has about 4 attorneys working for us in each of our lawsuits. Combined, L'Oréal has more than twenty. As I mentioned before, I think one of their strategies is to try and overwhelm our small company by filing frivolous motions, and forcing us to spend a lot of money on legal fees. In the UK, early in the litigation they tried this strategy – they filed motions trying to dismiss L'Oréal SA (the French parent company) from the lawsuit. The day before the hearing, they withdrew the motion. The judge ordered L'Oréal to pay us nearly $70,000 for withdrawing the motion. So while their techniques aren't always effective, it forces us to spend time and money to defend and oppose their motions and applications.

## Q: Now that you've won, what happens next in the UK lawsuit?

Tiffany: In July, we are going to the court and asking for the court to order an injunction, award us our legal fees for winning the case, and to enjoin L'Oréal from continuing to sell the Smartbond Step 1 for use in bleach. L'Oréal has already publicly said they're going to ask the court for permission to appeal.

## Q: Can hairdressers in the UK keep using the L'Oréal Smartbond Step 1 product?

Tiffany: A judge has ruled that using Smartbond Step 1 in bleach/lightener to repair hair during the bleaching process infringes our patent. Anyone that uses Smartbond Step 1 in this way is infringing the patent – and could be liable for damages and may also be enjoined.

LO_USA0072117

Dean:  Olaplex supports hairdressers and we always have.  We know L'Oréal is the bad-actor here, not the stylists, but if hairdressers continue to use Smartbond in a way that infringes our patent – we may be in a position where we're forced to take legal action to get them to stop the infringement.

**Q:  Does the fact that the product infringes the patent mean that L'Oréal's products are identical to Olaplex?**

Tiffany:  No.  Olaplex owns a variety of patents that cover various inventions.  Olaplex's raw materials are far more expensive than L'Oréal's and we believe provide a better product for stylists and colorists.

**Q:   Why does the judgment only mention the Smartbond product and not Redken pH Bonder or Matrix Bond Ultim8?**

Tiffany:  In the UK, L'Oréal sells only the Smartbond product – so that is what the Judge focused on.

**Q:  I know this is just a decision in the UK, does it impact the US or anywhere else in the world?**

Tiffany: While the decision is not binding on a US court, we believe that a judge may consider this information when assessing the case.  L'Oréal seems to agree with that logic, as they've cited to the UK litigation multiple times in our US proceeding.

OLAPLEX.

MADE IN CALIFORNIA, LOVED WORLDWIDE

Copyright 2018 Olaplex, All rights reserved

LO_USA0072118

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LIQWD, INC. and OLAPLEX LLC,                )
                                            )
Plaintiffs,                                 )
                                            )
v.                                          )     C.A. No. 17-14-JFB-SRF
                                            )
L'ORÉAL USA, INC., L'ORÉAL USA              )     **HIGHLY CONFIDENTIAL**
PRODUCTS, INC., L'ORÉAL USA S/D, INC.,      )     **FILED UNDER SEAL**
and REDKEN 5TH AVENUE NYC, LLC,             )
                                            )
Defendants.                                 )

## DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 3 TO PRECLUDE REFERENCE TO L'ORÉAL S.A.'S PARTICIPATION IN AND DISMISSAL FROM THIS PROCEEDING AND THE U.K. LITIGATION DECISION

Of Counsel:                                 Frederick L. Cottrell, III (#2555)
Dennis S. Ellis                             Jeffrey L. Moyer (#3309)
Katherine F. Murray                         Katharine L. Mowery (#5629)
Adam M. Reich                               Richards, Layton & Finger, P.A.
Paul Hastings LLP                           One Rodney Square
515 South Flower Street, 25th Floor         920 N. King Street
Los Angeles, CA 90071                       Wilmington, Delaware 19801
(213) 683-6000                              (302) 651-7700
                                            cottrell@rlf.com
                                            moyer@rlf.com
Naveen Modi                                 mowery@rlf.com
Joseph E. Palys
Daniel Zeilberger                           *Attorneys for Defendants*
Paul Hastings LLP                           *L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal*
875 15th Street, N.W.                        *USA S/D, Inc. and Redken 5th Avenue NYC, LLC*
Washington, D.C. 20005
(202) 551-1990

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Dated:  May 13, 2019

Defendants' MIL No. 3 was narrowly-tailored to two issues. Contrary to Plaintiffs' hyperbole, Defendants do **not** seek to force the parties to "avoid mentioning L'Oréal S.A. at trial" (Olaplex Opposition ("Opp.") at 1), but instead prevent Plaintiffs from wielding their failure to join L'Oréal S.A. as a weapon to impugn the actual Defendants in the case—as exemplified in the opposition itself. (Opp. at 2 n.2.) Olaplex's failure to obtain discovery from L'Oréal S.A.—a foreign entity not in this case—should not be unfairly characterized by Plaintiffs to taint Defendants.[1]  The proper remedy is to exclude reference to L'Oréal S.A.'s participation in this legal proceeding and its dismissal from the case.

Similarly, Defendants' motion made clear that it sought to exclude only the U.K. **decision**, not the underlying facts or the proceeding itself.  Injecting the U.K. decision into this case would encourage the jury to abdicate its role as fact-finder, and instead simply follow the U.K. decision, even though that decision is inapplicable on various levels.[2] For example, Plaintiffs suggest that the decision is necessary to bolster Mr. Christal's credibility. (Opp. at 2.) However, Mr. Christal's credibility—as a central witness in this case—is for the jury in this proceeding to decide, not a judge in the U.K. Further, Plaintiffs' willfulness theory is premised on the faulty predicate that the U.K. decision is notice of U.S. infringement; it is not. Finally, Plaintiffs' non-infringing alternatives rationale is speculation about what they believe "L'Oreal … would have" done (Opp. at 3 (citing no precedent)), not a legitimate need for the decision.

---

[1] Plaintiffs' repeated, strategic use of the term "L'Oréal" to impute actions from separate entities onto the Defendants continues. (*See* Opp. at 3 ("If, as **L'Oréal** [Defendants] claims … **L'Oréal** [S.A. or U.K.] would have launched them in the U.K."), 2-3 (ambiguously referring to "**its** invalidity arguments" to imply they were positions of Defendants rather than separate, foreign entities).) Plaintiffs' fabricated "full corporate names" argument misses the mark. (Opp. at 1 n.1.)

[2] As Defendants explained, the decision is not binding on this Court, was regarding different defendants and a different, foreign patent using a different legal standard, and is currently on appeal. (*Cf.* Olaplex MIL No. 2 (arguing incurable prejudice from the mere mention of a PGR proceeding between the same parties on the patents-in-suit under U.S. patent law).)

1

*/s/ Frederick L. Cottrell, III*

Of Counsel:

Frederick L. Cottrell, III (#2555)

Jeffrey L. Moyer (#3309)

Dennis S. Ellis

Katharine L. Mowery (#5629)

Katherine F. Murray

Richards, Layton & Finger, P.A.

Adam M. Reich

One Rodney Square

Paul Hastings LLP

920 N. King Street

515 South Flower Street, 25th Floor

Wilmington, Delaware 19801

Los Angeles, CA 90071

(302) 651-7700

(213) 683-6000

cottrell@rlf.com

moyer@rlf.com

Naveen Modi

mowery@rlf.com

Joseph E. Palys

Daniel Zeilberger

***Attorneys for Defendants***

Paul Hastings LLP

*L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal*

875 15th Street, N.W.

*USA S/D, Inc. and Redken 5th Avenue NYC, LLC*

Washington, D.C. 20005

(202) 551-1990

Scott F. Peachman

Paul Hastings LLP

200 Park Avenue

New York, NY 10166

(212) 318-6000

Dated:  May 13, 2019

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 13, 2019, true and correct copies of the foregoing document

were caused to be served on the following counsel of record as indicated:

**VIA ELECTRONIC MAIL**

Jack B. Blumenfeld
Jeremy A. Tigan
Anthony D. Raucci
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

Diane M. Doolittle
Suong T. Nguyen
Quinn, Emmanuel, Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(605) 801-5000
dianedoolittle@quinnemanuel.com
suongnguyen@quinnemanuel.com

Jared W. Newton
Quinn, Emmanuel, Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000
jarednewton@quinnemanuel.com

Megan Y. Yung
Quinn, Emmanuel, Urquhart & Sullivan, LLP
111 Huntington Avenue
Suite 520
Boston, MA 02199
meganyung@quinnemanuel.com

**VIA ELECTRONIC MAIL**

Amardeep L. Thakur
Joseph M. Paunovich
Bruce E. Van Dalsem
Ali Moghaddas
Patrick T. Schmidt
William Odom
Quinn, Emmanuel, Urquhart & Sullivan, LLP
865 S. Figueroa Street
Los Angeles, CA 90017
(213) 443-3000
amarthakur@quinnemanuel.com
joepaunovich@quinnemanuel.com
brucevandalsem@quinnemanuel.com
alimoghaddas@quinnemanuel.com
patrickschmidt@quinnemanuel.com
william.odom@quinnemanuel.com

Adam J. DiClemente
Quinn, Emmanuel, Urquhart & Sullivan, LLP
55 Madison Avenue
22nd Floor
New York, NY 10010
(212) 849-7361
adamdiclemente@quinnemanuel.com

Matthew K. Blackburn
Diamond McCarthy LLP
150 California Street
Suite 2200
San Francisco, CA 94111
(415) 263-9200
mblackburn@diamondmccarthy.com

/s/ Jason J. Rawnsley
Jason J. Rawnsley (#5379)
rawnsley@rlf.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C. A. No. 1:17-cv-00014-JFB-SRF |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA | ) | **CONFIDENTIAL –** |
| PRODUCTS, INC., L'ORÉAL USA | ) | **FILED UNDER SEAL** |
| S/D, INC., and REDKEN 5TH AVENUE | ) | |
| NYC, L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 3 TO PRECLUDE REFERENCE TO L'ORÉAL S.A.'S PARTICIPATION IN AND DISMISSAL FROM THIS PROCEEDING AND THE U.K. LITIGATION DECISION

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Adam DiClemente
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5200

May 8, 2018

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

*Attorneys for Plaintiffs*

Plaintiffs ("Olaplex") oppose Defendants' ("L'Oréal") Motion *in Limine* No. 3 to Prelude Reference to L'Oréal S.A.'s Participation in and Dismissal From This Proceeding and the U.K. Litigation Decision ("Motion" or "Mot.").

## I.    L'ORÉAL S.A.'S INVOLVEMENT IN THIS CASE AND THE RECORD IS RELEVANT AND PROBATIVE; L'ORÉAL CANNOT SHOW ANY PREJUDICE

L'Oréal S.A. plays a central role in this case.[1]   At the critical May 19, 2015 meeting between Olaplex and L'Oréal, two of the three L'Oréal representatives were affiliated with L'Oréal S.A.  *See* D.I. 732, at 6.  Further, many documents which Olaplex will offer in support of its trade secret and patent infringement claims, include discussion among L'Oréal S.A. and the L'Oréal Defendants regarding Olaplex's patents,technology, and business.  *See, e.g.*, D.I. 734-2, Ex. 105 (May 22, 2015 email from Roger Dolden to numerous L'Oreal S.A. executives—*e.g.*, Nicolas Hieronimus, An Verhulst-Santos, Alain Everard—providing "Detailed notes of May 19 Meeting" and describing information obtained from Olaplex); D.I. 732, at 17(citing D.I. 734-3, Ex. 120) (statement from L'Oréal S.A. President about Olaplex).   Olaplex originally named L'Oréal S.A. as a defendant in this action, but L'Oréal S.A. prevailed on a personal jurisdiction motion to dismiss on the basis that it was not a party to the NDAs, and therefore not bound by the Delaware forum selection clause.  *See* D.I. 186.  However, the decision dismissing L'Oréal S.A. as a party in this case does not eliminate L'Oréal S.A.'s (and its employees) significant involvement in key parts of the factual record.  Given this involvement, it is impossible to avoid mentioning L'Oréal S.A. at trial—L'Oréal's Motion should be denied on that ground alone. Additionally, L'Oréal has not shown any prejudice that would result from the jury learning that

---

[1]    L'Oréal's claim that Olaplex has attempted to "blur the lines" by, as a matter of convenience and clarity, using the defined term "L'Oréal" for the collective Defendants makes no sense.  Mot. at 1.  Almost all of L'Oréal's witnesses and documents use the same short-hand, as do several of the Court's orders.  To the extent L'Oréal somehow seeks an order mandating use of full corporate names, no authority supports that contention and none was proffered.

L'Oréal S.A. was previously a named defendant or that various relevant actors in this case work for L'Oreal S.A.  On the contrary, Olaplex would be prejudiced, for example, if it was precluded from explaining who the attendees at the critical May 19, 2015 meeting between the parties worked for (L'Oreal USA and L'Oreal S.A.) and why Olaplex disclosed its trade secrets to them under the NDAs.  Not being allowed to inform the jury about L'Oréal S.A.'s role in the factual record and why L'Oréal S.A. is not a defendant, if anything, would confuse the jury as to why such a central actor is not at trial.[2]

## II.   THE U.K. LITIGATION DECISION IS RELEVANT FOR PROPER PURPOSES

As a general matter, Olaplex acknowledges that it would not be proper to urge the jury to find validity and infringement of the Asserted Patents in this case merely because a court in the U.K. found in Olaplex's favor on those issues.  Olaplex will not do so at trial.  However, the fact that identical products were found to infringe foreign counterpart patent to those in suit and its invalidity arguments rejected is probative of several proper issues in this case.

The U.K. decision is relevant for examination of at least one of L'Oréal's experts.  James Pooley, L'Oréal's "reasonable efforts" expert, expressly relied on a witness statement submitted by Olaplex founder Dean Christal *in the U.K. litigation*, determined that it lacked credibility, discounted it, and would urge the jury that it should do the same as to Mr. Christal.  *See* D.I. 720, Ex. 6, at ¶¶ 28 & nn.5, 7-9; *see also* D.I. 691, at 9-10, 18-19. That the judge presiding over the U.K. litigation reached the opposite conclusion is competent evidence to impeach this opinion, for which L'Oréal opened the door.  Further, the U.K. judgment is probative of willfulness.  Olaplex seeks enhanced patent damages on the basis that L'Oréal's infringement was willful.  D.I. 650, at

---

[2] Notably, this Court granted an opposed Motion for a Letter Request compelling discovery (documents and deposition) from L'Oréal S.A., which was objected to by the L'Oréal defendants. but L'Oréal S.A. to date has not provided any documents and did not show up for its deposition on the date the French court enforcing the Request set for its deposition.

27.   Notice of infringement is relevant to that inquiry.  *Zimmer Surgical, Inc. v. Stryker Corp.*, 2019 WL 1082336, at *13 (D. Del. Mar. 7, 2019).  The fact that the U.K. court sided with Olaplex on the same Accused Products with respect to a foreign counterpart patent to those in suit and its invalidity arguments rejected rebuts L'Oréal's expert's claim that L'Oreal held a good faith belief of noninfringement and invalidity.  Similarly, L'Oréal continues to sell its Accused Products despite this Court's Order granting a preliminary injunction to stop such sales (notwithstanding the Court's need to enter an order regarding the appropriate bond amount).  D.I. 785; 792.  Further still, the U.K. judgment is probative of the alleged availability of reasonable non-infringing alternatives.[3] If, as L'Oréal claims, non-infringing alternatives to Olaplex's products are available, then L'Oréal presumably would have launched them in the U.K. after the U.K. court found that L'Oréal's Accused Products infringe and that the patent is valid. It did not do so, making it less likely that its litigation manufactured "alternatives" are reasonable, viable or legitimately available.

To the extent the U.K. decision would introduce any prejudicial harm, such prejudice can be addressed through an instruction that the U.K. decision is not binding here, was made under different law, and involved different defendants.  Such an instruction is far from "difficult, if not impossible" to give, as L'Oréal claims.   Mot. at 2. Indeed, juries are presumed to follow instructions from the bench.  *Citizens Fin. Group, Inc. v. Citizens Nat'l Bank*, 383 F.3d 110, 133 (3d Cir. 2004) ("This Court presumes that the jury followed the Court's instructions.").

## III.   <u>CONCLUSION</u>

Olaplex respectfully requests that the Court deny L'Oréal's Motion.

---

[3]    The availability of non-infringing alternatives goes to the availability of lost profits under *Panduit*.  *Mentor Graphics Corp. v. EVE-USA, Inc*., 851 F.3d 1275, 1290 (Fed. Cir. 2017). L'Oréal's rebuttal damages expert opines that non-infringing alternatives are available, and that Olaplex's claim to lost profits should therefore be denied.  D.I. 720, Ex. 7, at ¶¶ 57-76.

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Adam DiClemente
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5200

May 8, 2019

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*

—————————————————————
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-14-JFB-SRF |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA | ) | **HIGHLY CONFIDENTIAL** |
| PRODUCTS, INC., L'ORÉAL USA S/D, INC., | ) | **FILED UNDER SEAL** |
| and REDKEN 5TH AVENUE NYC, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION *IN LIMINE* NO. 4 TO EXCLUDE EVIDENCE OF OR REFERENCE TO POTENTIAL EMPLOYMENT OF CRAIG HAWKER AND ERIC PRESSLY

Of Counsel:
Dennis S. Ellis
Katherine F. Murray
Adam M. Reich
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
(213) 683-6000

Naveen Modi
Joseph E. Palys
Daniel Zeilberger
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1990

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Dated: May 1, 2019

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Katharine L. Mowery (#5629)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
mowery@rlf.com

***Attorneys for Defendants***
*L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc. and Redken 5th Avenue NYC, LLC*

Pursuant to Federal Rules of Evidence 401-403, Defendants respectfully request that this Court preclude Plaintiffs from referencing at trial L'Oréal USA, Inc.'s preliminary contact with Drs. Pressly and Hawker inquiring as to their interest in working for L'Oréal USA, Inc.  (D.I. 245 ¶ 8; Ex. A hereto.)  Notwithstanding the routine nature of such an inquiry, Defendants believe that Plaintiffs may seek to introduce email correspondence between a recruiter and Drs. Hawker and Pressly to support their claim that Defendants sought to steal Plaintiffs' confidential information.  (*See, e.g.*, D.I. 732 at 2, 18-19 (referencing this inquiry in opposition to Defendants' Motion for Summary Judgment as to Plaintiffs' Claims for Misappropriation of Trade Secrets and Breach of Contract).)  This inquiry is irrelevant to Plaintiffs' claim of trade secret misappropriation or any other issue in this case.  Reference to this inquiry would be highly prejudicial to Defendants, likely to mislead and confuse the jury, and waste time in an already tight schedule.

## I.  L'ORÉAL USA, INC.'S ROUTINE OUTREACH TO MEMBERS OF THE SCIENTIFIC COMMUNITY IS IRRELEVANT TO PLAINTIFFS' ALLEGED TRADE SECRET MISAPPROPRIATION CLAIM OR ANY OTHER ISSUE.

There is no probative value to L'Oréal USA, Inc.'s routine outreach to chemists for potential employment (including Drs. Pressly and Hawker).  On March 2, 2015, a Talent Acquisition Director for L'Oréal USA, Inc.'s Research and Innovation team sent Dr. Craig Hawker a single e-mail, expressing interest in "an exploratory conversation to discuss [his] background and potential opportunities [] at L'Oréal."  (Ex. A hereto.)  Dr. Hawker indicated that he "did not respond to L'Oréal[]."  (D.I. 245 ¶ 8.)  And there is no evidence that L'Oréal USA, Inc. made any further attempts to contact Drs. Hawker or Pressly.  Contrary to Olaplex's insinuations, (*see* D.I. 732 at 18-19), such a standard introductory email sent to a potential job candidate has no bearing on whether Olaplex's alleged "trade secrets" were either readily ascertainable or misappropriated.

1

**First**, although "[a]n inference of secrecy may [] be drawn from the fact that defendant resorted to improper means to obtain the information" (*id.* at 17), there is nothing improper about L'Oréal USA, Inc.'s outreach to Dr. Hawker.  In fact, Olaplex itself considered reaching out to L'Oréal USA, Inc.'s employees to discuss employment opportunities as well.  (*See* Ex. B hereto (Oct. 12, 2016 email from Tiffany Walden considering several L'Oréal USA employees for Olaplex's "VP of Education" position).)  The mere fact that a recruiting manager at L'Oréal USA, Inc. explored the possibility of hiring Drs. Pressly and Hawker is of no relevance to Olaplex's assertion that its purported "trade secrets were, in fact, secret" (D.I. 732 at 17), and it would be improper for Olaplex to introduce such evidence to suggest any malicious intent by L'Oréal USA, Inc.

**Second**, unlike actual employment of a trade secret holder's former employees, unsuccessful recruitment attempts do not tend to make alleged misappropriation more or less probable, and thus are irrelevant.  *See* Fed. R. Evid. 401.  As Dr. Hawker testified, he and Dr. Pressly "did not respond."  (D.I. 245 ¶ 8.)

**Third**, the irrelevance of L'Oréal USA, Inc.'s outreach to Dr. Hawker is evidenced by its omission from Olaplex's trade secret expert report and the deposition of L'Oréal USA, Inc.'s corporate representative on this topic.  In particular, Olaplex's purported trade secret expert, Mr. Schoon, did not mention L'Oréal USA, Inc.'s single employment inquiry in his expert report. (*See generally* D.I. 749, Ex. 1.)  Additionally, Olaplex asked no questions regarding this issue to L'Oréal USA, Inc.'s designated corporate witness on this topic.  (*See* Ex. C hereto (Plaintiff's Amended Third Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6)) at ¶ 43.)

## II.      REFERENCE TO L'ORÉAL USA, INC.'S CONTACT WITH DRS. PRESSLY AND HAWKER WILL UNFAIRLY PREJUDICE DEFENDANTS, CONFUSE AND MISLEAD THE JURY, AND WASTE TIME.

If Olaplex is allowed to reference L'Oréal USA, Inc.'s preliminary outreach to Dr. Hawker at trial, it likely will insinuate to the jury—as it did to the Court—that this common recruiting practice is somehow evidence of nefarious activity by L'Oréal USA, Inc.; it is not.  As discussed above, such routine recruitment practice is irrelevant to Olaplex's trade secret claims, and whatever probative value it has is substantially outweighed by the substantial prejudice to Defendants.  *See* Fed. R. Evid. 401-403.  Inquiries and reference to this issue at trial will not only unfairly prejudice Defendants, it will confuse and/or mislead the jury by mingling standard recruiting practices with Olaplex's unsubstantiated conspiracy theory concerning the motivation behind the inquiries.  Moreover, reference to L'Oréal USA, Inc.'s recruiting contact with Dr. Hawker will waste time at trial, as it would likely lead to discussions concerning routine and common recruiting practices within the industry and at L'Oréal USA, Inc.  Presentation of such tangential evidence would be a waste of time in an already tight trial schedule.

Olaplex should be precluded from referencing or using at trial any evidence relating to L'Oréal USA, Inc.'s preliminary contact with Drs. Pressly and/or Hawker.


|  | /s/ Frederick L. Cottrell, III |
|---|---|
| Of Counsel: | Frederick L. Cottrell, III (#2555) |
| Dennis S. Ellis | Jeffrey L. Moyer (#3309) |
| Katherine F. Murray | Katharine L. Mowery (#5629) |
| Adam M. Reich | Richards, Layton & Finger, P.A. |
| Paul Hastings LLP | One Rodney Square |
| 515 South Flower Street, 25th Floor | 920 N. King Street |
| Los Angeles, CA 90071 | Wilmington, Delaware 19801 |
| (213) 683-6000 | (302) 651-7700 |
|  | cottrell@rlf.com |
| Naveen Modi | moyer@rlf.com |
| Joseph E. Palys | mowery@rlf.com |
| Daniel Zeilberger |  |

Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1990

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Dated: May 1, 2019

**Attorneys for Defendants**
L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc. and Redken 5th Avenue NYC, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2019, true and correct copies of the foregoing document

were caused to be served on the following counsel of record as indicated:

**VIA ELECTRONIC MAIL**
Jack B. Blumenfeld
Jeremy A. Tigan
Anthony D. Raucci
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

Diane M. Doolittle
Suong T. Nguyen
Quinn, Emmanuel, Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(605) 801-5000
dianedoolittle@quinnemanuel.com
suongnguyen@quinnemanuel.com

Jared W. Newton
Quinn, Emmanuel, Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000
jarednewton@quinnemanuel.com

Megan Y. Yung
Quinn, Emmanuel, Urquhart & Sullivan, LLP
111 Huntington Avenue
Suite 520
Boston, MA 02199
meganyung@quinnemanuel.com

**VIA ELECTRONIC MAIL**
Amardeep L. Thakur
Joseph M. Paunovich
Bruce E. Van Dalsem
Ali Moghaddas
Patrick T. Schmidt
William Odom
Quinn, Emmanuel, Urquhart & Sullivan, LLP
865 S. Figueroa Street
Los Angeles, CA 90017
(213) 443-3000
amarthakur@quinnemanuel.com
joepaunovich@quinnemanuel.com
brucevandalsem@quinnemanuel.com
alimoghaddas@quinnemanuel.com
patrickschmidt@quinnemanuel.com
william.odom@quinnemanuel.com

Adam J. DiClemente
Quinn, Emmanuel, Urquhart & Sullivan, LLP
55 Madison Avenue
22nd Floor
New York, NY 10010
(212) 849-7361
adamdiclemente@quinnemanuel.com

Matthew K. Blackburn
Diamond McCarthy LLP
150 California Street
Suite 2200
San Francisco, CA 94111
(415) 263-9200
mblackburn@diamondmccarthy.com

*/s/ Jason J. Rawnsley*
Jason J. Rawnsley (#5379)
rawnsley@rlf.com

# Exhibit A

Date: Mon, Mar 2, 2015 at 4:26 PM
Subject: Fw: L'Oreal
To: dean christal <dean@olaplex.com>, Eric Pressly <eric.pressly@gmail.com>

Dear Dean and Eric,

I think the number of wacko emails increases in a linear relationship with the # of instagram/facebook users - on average about one a day hits the junk folder.

However this one did give me a chuckle and illustrates why big companies may not always be the most efficient - at the very least, Eric - we have opportunities =))))

Hope all is well.

Warmest regards

Craig

---

**From:** RYAN Kathleen <kryan@us.loreal.com>
**Sent:** Monday, March 2, 2015 9:46 AM
**To:** Craig Hawker
**Subject:** L'Oreal

Dear Dr. Hawker,
I hope this message finds you well. My name is Kathy Ryan. I manage Talent Acquisition for L'Oreal Research & Innovation, US. We are extremely impressed with the work you have done with Olaplex. I would love the opportunity to have an exploratory conversation to discuss your background and potential opportunities here at L'Oreal. If you are interested, please let me know when would be the best times and number to reach you. Either way, I look forward to your response.

*L'Oréal is the world's largest cosmetic company with the highest investment in R&I in the industry. Founded in 1909 by a young chemist, Eugene Schueller, L'Oréal continues to excel in science and innovation. L'Oréal's Research and Innovation employs over 4,000 people of approximately 60 nationalities. Working in some thirty disciplines, more than half of these employees have doctorates or engineering degrees, and they are responsible for about 600 patents filed per year.*

Sincerely,

Confidential

# Exhibit B

Message

| | |
|---|---|
| **From**: | Tiffany Walden [tiffany@olaplex.com] |
| **Sent**: | 10/12/2016 2:14:00 PM |
| **To**: | Dean Christal [dean@olaplex.com]; Darcy Christal [darcy@olaplex.com] |
| **Subject**: | Fwd: Education Program Outline |
| **Attachments**: | Olaplex VP of Education.docx; Untitled attachment 10615.htm |

Dean/Darcy:

Here is the job description for VP of Education. I found a handful of candidates on Linkedin, that I can reach out too and we can also post the job online if you would like. I have also included Jordan's email outlining his education plan.

**Let me know if you would like to like me to start the search process.**

Thanks,
Tiffany

**VP of Education Candidates:**
Holly Johnson, VP of Global Education, AVEDA
Kevin Molin, VP of Technical Education, AVEDA (https://www.linkedin.com/in/kevin-molin-9831167?authType=name&authToken=wkb0&trk=prof-sb-browse_map-name)
Christopher Hermann, Director of Education Development, AVEDA (https://www.linkedin.com/in/christopher-hermann-23932a7?authType=name&authToken=9IWf&trk=prof-sb-browse_map-name)
Ali Yanez, Director of Education - North America, AVEDA (https://www.linkedin.com/in/ali-yanez-3bab4a39?authType=name&authToken=r5yJ&trk=prof-sb-browse_map-name)
Sheri Doss, VP of Education, Redken (https://www.linkedin.com/in/sheri-doss-33b36119)
Marlene Arce, VP Education at L'Oreal Professionnel, Kerastase and Shu Uemura Art of Hair (https://www.linkedin.com/in/marlene-arce-7704777?authType=name&authToken=EcWo&trk=prof-sb-browse_map-name)
Rachel Flowers, Education Development Director, L'Oreal Professional (https://www.linkedin.com/in/rachel-flowers-04ba3413?authType=name&authToken=DEW2&trk=prof-sb-browse_map-name)
Katherine Oechsle-Truesdale, Director of Education, L'Oreal (https://www.linkedin.com/in/oechsle-truesdale-katherine-b2a49418?authType=name&authToken=vvUr&trk=prof-sb-browse_map-name)
Kathleen Mattie, AVP, Education Development at Redken & Pureology, (https://www.linkedin.com/in/kathleen-mattie-2a357420?authType=name&authToken=xAEe&trk=prof-sb-browse_map-name)
Fabio, VP Education North America P&G/Coty **(https://www.linkedin.com/in/fabiosementilli)**
Robb Dubre, Head of Artistic and Education, Kenra (https://www.linkedin.com/in/robb-dubre-a12020a?authType=name&authToken=EaHn&trk=prof-sb-browse_map-name)

Tiffany Walden
General Counsel
Olaplex, LLC

Begin forwarded message:

**From:** Jordan Alexander <jordan@olaplex.com>
**Subject: Education Program Outline**
**Date:** October 12, 2016 at 10:05:17 AM PDT
**To:** Tiffany Walden <tiffany@olaplex.com>, Dean Christal <dean@olaplex.com>

Hi Dean / Tiffany,

Until a new vice president of education is hired, this is the program I was originally working on to launch domestic education with costs considered below. We could get this rolled out within 60-90 days. Let me know

Highly Confidential

# Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C. A. No. 17-14 (JFB) (SRF) |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA | ) | **HIGHLY CONFIDENTIAL** |
| PRODUCTS, INC, L'ORÉAL USA S/D, | ) | |
| INC., and REDKEN 5TH AVENUE NYC, | ) | |
| L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' AMENDED THIRD NOTICE OF DEPOSITION TO L'ORÉAL USA, INC., L'ORÉAL USA PRODUCTS, INC., L'ORÉAL USA S/D, INC., AND REDKEN 5TH AVENUE NYC, LLC. PURSUANT TO FED. R. CIV. P. 30(b)(6)**

PLEASE TAKE NOTICE that Plaintiffs, Liqwd, Inc. and Olaplex LLC (collectively "Plaintiffs"), will take the testimony by deposition upon oral examination of Defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc., and Redken 5th Avenue NYC, LLC (collectively, "Defendants") pursuant to Fed. R. Civ. P. 30(b)(6). Defendants shall designate one or more officers, directors, managing agents, or other representative(s) who consent to testify on Defendants' behalf regarding the matters set forth in attached Schedule A no less than fourteen (14) days before the day set for the deposition, including which portion(s) of this Notice each deponent is prepared to discuss.

PLEASE TAKE FURTHER NOTICE THAT, the deposition will commence at 9:00 a.m. on November 13, 2018, or at a date and time to be mutually agreed upon by counsel, and will continue until completion with such adjournments as may be necessary. The deposition will take place at the offices of Quinn Emanuel Urquhart & Sullivan LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017, or at a place to be mutually agreed upon by counsel. The deposition shall be taken before an officer, notary public, or other person duly authorized to

administer oaths.  You are invited to attend and cross-examine.  The testimony will be recorded by stenographic, audio, video, and/or real-time transcription means.

Plaintiffs have prepared this amended notice of deposition based on information and discovery currently available to them.  Plaintiffs reserve the right to serve one or more supplemental 30(b)(6) notices as they continue their review of Defendants' current and future document productions and as discovery progresses.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Adam J. DiClemente
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
55 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849 7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5202

November 2, 2018

**SCHEDULE A**

**DEFINITIONS AND INSTRUCTIONS**

1.      "Olaplex" means Liqwd, Inc. and Olaplex LLC, the plaintiffs in this action, unless otherwise expressly stated.

2.      "You," "Your," and "L'Oréal" mean L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc., and Redken 5th Avenue NYC, L.L.C., the Defendants in this action, and any predecessor or successor of L'Oréal, and any past or present parent (including L'Oréal S.A.), division, subsidiary (including SalonCentric), affiliate, joint venture, associated organization, director, officer, agent, employee, consultant, staff member, counsel, patent agent, or other representative of L'Oréal in any country.

3.      This "Action" means District of Delaware Civil Action No. 17-cv-00014, and the previously filed litigation in the Central District of California, Case No. 2:16-cv-08708.

4.      "Complaint" means the latest version of Olaplex's complaint in the District of Delaware Civil Action No. 17-cv-00014, and any amended version(s) of the complaint as of the date that such amended version is filed with the Court.

5.      The "Asserted Patents" means the patents asserted by Olaplex in the latest version of Olaplex's Complaint in this litigation, including United States Patent Nos. 9,498,419 ("the '419 Patent") and 9,668,954 ("the '954 Patent"), and all underlying patent applications, continuations, continuations-in-part, divisionals, reissues, provisionals, and any other patent applications regarding the Asserted Patents.  Any additional patent or patents asserted by Olaplex in any amended version(s) of the complaint are within the meaning of the term as of the date that such amended version is filed with the Court.

6.      "L'Oréal Patent Application" means U.S. Patent Application Serial No. 15/484,625; U.S. Patent Application Serial Nos. 15/484,663; PCT/US2016/063724; PCT/US16/30172; U.S. Provisional Patent Application No. 62/259,564; U.S. Provisional Patent Application No. 62/155,931; U.S. Provisional Patent Application No. 62/155,900 and all underlying patent applications, continuations, continuations-in-part, divisionals, reissues, provisionals, and any other patent applications relating to the substance of the L'Oréal Patent Application.

7.      "Olaplex Trade Secrets" means the confidential and valuable trade secret information described and disclosed to L'Oréal as described in Olaplex's Second Amended Complaint, including but not limited to paragraphs 40-59 and 62-64, and in response to Your document requests and interrogatories.  Any additional Olaplex Trade Secrets in any amended version(s) of the complaint are within the meaning of the term as of the date that such version is filed with the Court.

8.      "Olaplex Confidential Information" has the meaning of the term "Confidential Information" as defined by the Confidentiality Agreement, dated May 15, 2015, and attached as Exhibit C to the Second Amended Complaint.

9.      "Infringe" and "Infringement" mean direct infringement, contributory infringement, infringement by inducement, literal infringement, and infringement by the doctrine of equivalents.

10.     "Maleic acid" means the formula illustrating maleic acid depicted below:

and "salts of maleic acid" means all salts of maleic acid.

11.     The "Accused Products" means each and every product either previously or currently made, used, sold, or offered for sale by L'Oréal that Olaplex contends infringes any claim of the Asserted Patents in the latest version of Olaplex's Complaint including but not limited to the Matrix Bond Ultim8 Step 1 Amplifier; Matrix Bond Ultim8 Step 2 Sealer; Matrix Bond Ultim8 Step 3 Sealing Treatment; Redken pH-Bonder #1 Bond Protecting Additive; Redken pH Bonder Step 2 Fiber Restorative Pre-Wash Concentrate; Redken pH Bonder Step 3 Post-Service Perfector; L'Oréal Professionnel Smartbond Step 1 Additive; L'Oréal Professionnel Smartbond Step 2 Pre-Shampoo; and L'Oréal Professionnel Smartbond Step 3 Conditioner. Any additional L'Oréal products accused by Olaplex in any amended version(s) of the Complaint are within the meaning of the term as of the date that such version is filed with the Court.

12.     The term "product" should be understood to include any product, device, apparatus, process, method, system, media, or instrumentality.

13.     "Bleaching Treatment" means a chemical treatment performed to remove dye and/or natural pigment from hair.

14.     "Coloring Treatment" means a chemical treatment performed to add a colorant or pigment that is customarily used in hair care products, which changes the color or tone of the hair it is applied to based upon visual inspection.

15.     "Standalone Treatment" means with respect to the use of the Accused Products a treatment with the Accused Products that does not involve use of a Bleaching Treatment or Coloring Treatment mixed with the Accused Products for application to hair.

16.     The term "Bond Builder" refers to products that protect and repair hair during and after chemical treatments that include maleic acid and its derivatives thereof, specifically including the Accused Products and Olaplex.

17.     "Document" or "Documents" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34, including, without limitation, hard copies as well as electronic or computerized data compilations. A draft or non-identical copy of a document is a separate document within the meaning of this term. Document includes all written, graphic or otherwise recorded material, including without limitation, microfilms or other film records or impressions, tape recordings or computer cards, floppy disks or printouts, any and all papers, photographs, films, recordings, memoranda, books, records, accounts, communications, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, inter-office memoranda or written communications of any nature, recordings of conversations either in writings or upon any mechanical or electrical recording devices, including electronic mail ("e-mail"), notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs, and any differing versions of any of the foregoing, whether so denominated, formal, informal or otherwise, as well as copies of the foregoing which differ in any way, including by the addition of handwritten notations or other written or printed matter of any nature, from the original. The foregoing specifically includes information stored in a computer database and capable of being generated in documentary form, such as e-mail.

18.     "Communication" means, without limitation, any transmission, conveyance or exchange of a word, statement, fact, thing, idea, document, instruction, information, demand or

question by any medium, whether by written, oral, or other means, including but not limited to, electronic communications.

19.     "Distributors" refers to SalonCentric, Beauty Systems Group (also known as BSG and/or CosmoProf), Ulta, Ratner, Beauty Brands, Yellowwood, Masello, Four Star, East Coast Salon Services, Reliable, State Beauty Supply, RDA Beauty Supply, Armstrong McCall, Aurora Beauty Supply, Island Beauty, Champion Beauty Supply, Four Star Salon Services, Atlantic Star Salon Services, Northern Star Salon Services, TruStar Salon Services, Midway Star Salon Services, Western Star Salon Services, Mountain Star Salon Services, Future Visions Salon Services, Paul Mitchell N. New England, Bravo Distributors, Inc., Bionexia, TRI/Hayashi, George Riley, R. Stafford, Salon Direct, TRU Beauty Concepts, Thomassen Beauty Systems, New Age Beauty Distributor, Ace Beauty & Nail Supply, Hawaiian Beauty, Hairs the Bling, SalonRedi Yellowood, Discover Salon Services, WS Beauty, Windsor Beauty, J&J Beauty, Millenium Beauty, Useful Salon Solutions, Goldwell NY, Beyond Basics Beauty Supply, Elite Salon Distributors, Capps Beauty, Eugene Beauty Supply, D&D Beauty, Panache, Taylor B&B, Pan American B&B, Metro Beauty, Urban Beauty Systems, and any other sellers or suppliers of the Accused Products.

20.     "Person" refers to any individual, corporation, proprietorship, association, joint venture, company, limited liability company, partnership, limited liability partnership, or other business or legal entity, including governmental bodies and agencies.

21.     "Information" refers to any facts, data, statistics, or other information provided or learned through written or oral communication.

22.     "Sources" means any document storage system, document management system, or server (whether on-site, web-based, or cloud-based, such as an email server or account,

Amazon Web Services server or account, or other third-party managed database or enterprise system), any computer (laptop, desktop, and/or server), and/or any other form of electronic or hard-copy media, including but not limited to, electronic storage devices, external hard drivers, zip drives, memory sticks, jump drives, USB/flash drive devices, CDs, DVDs, floppy disks, Blackberries, other PDAs, cell phones, tablets, physical storage systems or locations for Documents, and/or any other electronic device capable of storing, transmitting, or receiving electronic data.

23.    "Thing(s)" refers to any physical specimen or tangible item, including research and development models, samples, prototypes and the like.

24.    "Referring to," "Relating to," "Regarding," "Concerning," or any variation thereof, means containing, describing, discussing, embodying, commenting upon, identifying, incorporating, summarizing, constituting, comprising, or otherwise pertinent to the matter or any aspect thereof.

25.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the interrogatory all responses that might otherwise be construed to be outside of its scope.

26.    The terms "any" and "all" shall each mean and include the other.

27.    The term "including" shall mean "including but not limited to."

28.    The term "each" shall mean "each and every."

29.    The use of the singular form of any word includes the plural and vice versa.

30.     The use of a verb in any tense includes use of the verb in all other tenses.

31.    "Identity" means the name, address, past and present job title(s), and current employment status of any individual natural person.

32.     "PTO" means the United States Patent and Trademark Office.

33.     "Defendants' Labeling" means all drafts and proposed versions of the package brochure, label, or any other written materials that Defendants have considered, plans, intends to distribute, or have distributed with the Accused Products.

## TOPICS FOR EXAMINATION

1. The dates on which You first made, had made, used, imported, exported, offered for sale and/or sold each of the Accused Products.

2. When and how You first became aware of any of the Asserted Patents.

3. When and how Defendants first received any copy, summary or description of the Asserted Patents, including but not limited to LIQ 103 US Utility application, filed May 15, 2015 (U.S.S.N. 14/713,885), LIQ 103 PCT Application, filed May 15, 2015 (PCT/US2015/031166) and LIQ 104 Provisional application, filed April 24, 2015 (U.S.S.N. 62/152,220), or any information derived from the Asserted Patents.

4. All submissions You made to the United States Patent and Trademark Office concerning or relating to the Asserted Patents including but not limited to the Third Party Submissions dated August 25, 2016, August 29, 2016, September 14, 2016 and September 23, 2016 submitted in connection with U.S. Patent Application No. 15/087,415, published as U.S. Publication No. 2016/0206535. (For clarity, the Third Party Submissions referenced in this Topic were also submitted as Exhibits 2006-2009 in PGR2017-00011.)

5. Any efforts to analyze, discuss, examine or consider whether the Accused Products, including any previous or potential new formulas for the Accused Products, are covered by any claim of the Asserted Patents.

6. For each of Your step 1, step 2, and step 3 formulas for the Accused Products, including but not limited to P1, P2, P3, P4, C2, C3, C4, C5, C6, C7, C8 and formula numbers 1200591, 1112405 and 38433 RDK, and any others identified in LO_USA0011302-03:

   a. The creation and development of the formulas, including Persons involved;

   b. Any proposal, decision, consideration, or deliberation relating to the creation and development of the formulas;

c.   The earliest date of creation of each formula and all corroborating documents;

d.   Any research, experiments, analysis and/or testing of the formulas; and

e.   Any failure, shortcoming, deficiency, problem, or limitation You experienced.

7.   For each of Your step 1, step 2, and step 3 formulas for the Accused Products, including but not limited to P1, P2, P3, P4, C2, C3, C4, C5, C6, C7, C8 and formula numbers 1200591, 1112405 and 38433 RDK, and any others identified in LO_USA0011302-03, to the extent they contain maleic acid or its salts:

a.   Any creation, proposal, consideration, deliberation and decision relating to the use of maleic acid, or its salts, in the formulas and all corroborating documents;

b.   The date(s) You first created, proposed, considered, deliberated and decided to use maleic acid, or its salts, in the formulas and all corroborating documents;

c.   Any research, experimentation, analysis and/or testing concerning the use of maleic acid, or its salts in the formulas, including but not limited to the concentration of maleic acid, or its salts, in the formulas, and all corroborating documents; and

d.   Your understanding and belief about the purpose of maleic acid, or its salts, in the formulas at the time of creation and throughout development of the formulas and all corroborating documents; and

e.   All persons involved in these activities.

8.   The concentration of maleic, or its salts, when the Accused Products are combined with Bleaching Treatments and the methodology You use to assess such concentration, and documents showing these assessments.

9.      For each of Your step 1, step 2, and step 3 formulas for the Accused Products, including but not limited to P1, P2, P3, P4, C2, C3, C4, C5, C6, C7, C8 and formula numbers 1200591, 1112405 and 38433 RDK, and any others identified in LO_USA0011302-03, the research, experiments, analysis and/or testing You used to determine the analytical, physical and/or chemical stability of each formula, including but not limited to nuclear magnetic resonance ("NMR") testing as identified in paragraph 55 of the Complaint, the date(s) on which the testing was performed and corroborating documents.

10.      Your knowledge of the properties of maleic acid, or its salts, alone or in solution, as a hair protecting additive in connection with Bleaching Treatments, including but not limited to the conditions at which maleic acid is converted to its salt forms and the conditions at which bleaching takes place, and the date(s) on which you learned of this knowledge.

11.      For each of Your step 1, step 2, and step 3 formulas for the Accused Products, including but not limited to P1, P2, P3, P4, C2, C3, C4, C5, C6, C7, C8 and formula numbers 1200591, 1112405 and 38433 RDK, and any others identified in LO_USA0011302-03, the research, experiments, analysis and/or testing You conducted to determine its effect on hair breakage.

12.      Your knowledge and use of TRI Princeton Research Education Service testing for the Accused Products, including but not limited to Measurement of Dry Combing Forces (LO_USA0018791), Repeated Grooming (LO_USA0018868, LO_USA0019032 and LO_USA0065396) and Strength Testing of Hair: Miniature Tensile Testing (LO_USA0019377 and LO_USA0019869).

13.      Your testing of hair that has undergone Bleaching Treatment, including but not limited to cysteic acid, miniature tensile testing (with wet hair), brushing (wet to dry hair),

repeated grooming (dry hair), DSC, SAPHIR, labile protein, and any others identified in LO_USA0064029-30, and Your understanding of the differences between these tests.

14.    Industry standards for assessing and determining hair breakage, including Your knowledge and understanding of physical breakage of hair due to damages caused by Bleaching Treatments.

15.    Testing, analysis or experiments referenced in or related to any L'Oréal Patent Application, including but not limited to all results, outcomes or conclusions of such testing (including for the Accused Products and any predecessor or successor formulas such as P1, P2, P3, P4, C2, C3, C4, C5, C6, C7, C8 and formula numbers 1200591, 1112405 and 38433 RDK, and any others identified in LO_USA0011302-03).

16.    Your protocols and testing of Olaplex's products, Bond Builders, and any other product that markets itself as or claims to be capable of protecting and/or repairing bonds in hair.

17.    Your education, training, use, and support of the Accused Products, and Your knowledge of customers use of the Accused Products in Bleaching Treatments, Coloring Treatments or as Standalone Treatments.

18.    Your research and development costs relating to the Accused Products.

19.    Your Bleaching Treatments offered, recommended, instructed, suggested or which You know that consumers buy with or use with the Accused Products.

20.    The Persons, employees, departments, organizations, or other entities that created, developed, test, use, manufacture, and market each of the Accused Products.

21.    Your actual and projected sales (quantity of units sold and revenues), profits (gross profits, operating profits, profits before taxes, net profits, and any other type of profits You typically calculate), market share, and pricing with respect to each Accused Product by

product SKU and distributor sold anywhere in the world, including the amount and category (*e.g.*, sales, administrative, direct labor, royalties) of each element of cost involved in the manufacturing, marketing, distribution, and sale of each Accused Product since launched.[1]

22.    Your system and database software for tracking and recording actual and/or projected sales (quantity of units sold and revenues), profits (gross profits, operating profits, net profits, and any other type of profits You typically calculate), profits before taxes, market share, and pricing with respect to sales of the Accused Products, including (a) the identification of every field available in the database, (b) who enters information into the database and the sources of the information; (c) who has access to the information; (d) the types of financial reports that can be prepared from the database; (e) the types of information that can be queried or extracted from the database; (f) and Your record-keeping practices of such information.

23.    The manufacture of the Accused Products, including each step involved in the manufacturing process of any intermediary product and each final Accused Product, including an identification of the manufacturer, source, product number, and product name of each ingredient used in all current and all previous versions of the Accused Products.

---

[1]   For clarity, this includes sales, profits, market share, and pricing recognized by L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc., and Redken 5th Avenue NYC, L.L.C., the Defendants in this action, and any predecessor or successor of L'Oréal, and any past or present parent (including L'Oréal S.A.), division, subsidiary (including SalonCentric), affiliate, joint venture, associated organization, director, officer, agent, employee, consultant, staff member, counsel, patent agent, or other representative of L'Oréal in any country.  This also includes "Representatives" as defined in the parties' NDA for which "[L'Oréal USA] shall be responsible for any breach of this Agreement by our Representatives to the same extent as if they were parties hereto and shall take all reasonable measures . . . to restrain [its] Representatives from making any unauthorized use or disclosure of any Confidential Information" and "[L'Oréal USA] shall be responsible for any breach of this paragraph by [its] Representatives to the same extent as if they were parties hereto."

24.     The identity of the specific L'Oréal entity, affiliates, or other entities that manufacture, market, offer for sale, sell, import and/or export the Accused Products anywhere in the world, including the location(s) in which they conduct each of these activities.

25.     The identity of the specific L'Oréal entity, affiliates, or other entities that realize, recognize, or otherwise track revenue, profits and losses in the ordinary course of business related to the manufacture, market, offer for sale, sell, import and/or export of the Accused Products anywhere in the world.

26.     Your revenue sharing models and ratios with any third parties with respect to the Accused Products or services relating thereto.

27.     The development, assembly, manufacture, and/or importation into the United States of the Accused Products or components thereof by or on behalf of You, including any third parties involved and the nature and extent of their involvement.

28.     Communications between You and any manufacturer, supplier and/or distributor of the Accused Products, including but not limited to any contracts and/or agreements for manufacture, supply and/or distribution.

29.     Identity of the manufacturer(s) and supplier(s) of the Accused Products and their geographic locations, including but not limited to Persons who process and/or mix the ingredients in the Accused Products.

30.     The process(es), method(s), or other sequence(s) or step(s) concerning the production, testing, packaging, shipping and/or ultimate point of sale and use of the Accused Products.

31.     Promotional, sales, and marketing activities with respect to the Accused Products, including, but not limited to, sampling, rebates, discounts, and/or other incentives offered for the

purchase of the Accused Products and strategies for the promotion and marketing of the Accused Product for each Accused Product since launched.

32.     Projects "Olivia," "Lemon," and any other pseudonyms or aliases created or used by You or your counsel for Your discussions with Olaplex that began in early 2015.

33.     Your knowledge regarding the historical, current, and projected future percentage of consumers that use the Accused Products with Bleaching Treatments, Coloring Treatments or as Standalone Treatments.

34.     Your proposal, decision, deliberation, and consideration, whether attempted or successful, in directly or indirectly, replacing, supplanting, or otherwise substituting the Accused Products in place of Olaplex's products in any product placement, promotion, advertising, sale, or other Bond Builder market opportunity, including but not limited to the Rachel Ray show "makeover" segment.

35.     Your efforts to, directly or indirectly, compete with Olaplex in the Bond Builder market and take, capture or otherwise acquire Olaplex's Bond Builder market share, including but not limited to targeting or soliciting by any means Olaplex customers (e.g., salons, stylists and their clients).

36.     Your, direct or indirect, proposal, decision, deliberation, and consideration of product placement of the Accused Products relative to Olaplex's products (e.g., at events, retail stores, catalogs, trade shows, etc.).

37.     Your, direct or indirect, promotions of the Accused Products (e.g., Salon Centric KPIs, salon purchasing incentives, discounts, premiums, free products, rewards, etc.).

38.     Your, direct or indirect, head-to-head and comparative advertising and marketing of the Accused Products relative to Olaplex's products including on social media (e.g., Instagram, Facebook, through use of influencers, etc.).

39.     Your proposal, decision, deliberation, and consideration of marketing and product packaging for the Accused Products that is similar or identical to marketing and product packaging used with Olaplex's products (e.g., instructions for use, use of a three step system, concentration of active agent, excipients, bottle size, shape, dispenser type, box, etc.).

40.     Your interactions and Communications with SalonCentric regarding SalonCentric's sales, marketing, advertising, product placement (online and in-store), and sales of Olaplex's products and the Accused Products.

41.     The reasons for purchasing and/or using and the advantages, benefits, or bases for preference or demand of the Accused Products and/or Olaplex's products, including when compared to any alleged competitor product(s), including but not limited to Eufora Pure Tech Professional Treatment; Davines Glorifying Anti-Age Elixir; Affinage ASP Kitoko Advanced Hair Therapy Protein Additive; Color Express Ultra One; Farouk Transformation Bonder; Snaplex; B3 Brazilian Bond Builder; Cureplex; ColorpHlex; HT Bondex; Bondplex; DS Laboratories Continuum; Ultra Bond Seal v2.1; Eslabondexx; Newsha Private Hair Care Colorwatch System Extract & Cream; Amika Virgin; FHI Heat Neobond; Nubond Bond Therapy System; Schwarzkopf Fibreplex; Schwarzkopf BlondMe; Schwarzkopf IGORA; Sexy Hair Bond-Ing Breakage Prevention System; Dennis Bernard 4Plex; Eufora Color Elixir; DiksoPlex; Link-D, MagiBond; Nirvelplex; Omniplex; Oxplex; SealPlex Hair Defender; SilaPlex; Tech K-Plex; Violett Plex; BondPro+ by Goldwell; Celeb Luxury BondFix Conditioner; Wellaplex; and Wonderplex, and any other alleged competitor product identified by You in this Action.

42.     Your knowledge of products that compete with the Accused Products and/or Olaplex's products anywhere in the world, the distributors that distribute both the competitor product(s) and any of the Accused Products and/or Olaplex products, the channels in which both the competitor product(s) and any of the Accused Products and/or Olaplex products are offered for sale and/or sold, the market which the competitor product(s) are a part of, the market share by units and revenue for each Accused Product by distributor in that market, the market share by units and revenue for Olaplex products by distributor in that market, and the market share by units and revenue for each of the competitor product(s) by distributor in that market.

43.     Your strategy and efforts in talent recruitment, including all efforts to hire Drs. Eric Pressly and Craig Hawker and the identity of any of Defendants' employees or consultants who participated in such efforts.

44.     Your practices and policies in acquiring third party targets, including but not limited to working with L'Oréal S.A. on such activities related to Olaplex.

45.     Your practices and protocols for the development and maintenance of segregated information departments (*e.g.*, "clean rooms" or "clean teams") to maintain and process confidential information received from third party targets for acquisition, licensing or other business opportunities, including but not limited to related to Olaplex.

46.     L'Oréal S.A.'s access to Olaplex's Trade Secrets, Olaplex Confidential Information, including information stored in Your "clean room," and Your documents containing any such information, such as meeting minutes related to Your potential acquisition of Olaplex or licensing of Olaplex's Asserted Patents, and the location and storage of such information whether physically or on Your servers.

47.     The identity of Persons who were employed by You and/or L'Oréal S.A. who worked on, researched, assisted, or otherwise have knowledge of the development, marketing and/or sale of the Accused Products and Olaplex's products, but who are no longer employed by You and/or L'Oréal S.A.

48.     All documents and communications You received from or sent to Dean Christal, Dr. Eric Pressly and/or Dr. Craig Hawker relating to Olaplex's technology described and claimed in the Asserted Patents, including but not limited to U.S. App. No. 14/713,885, U.S. Pat. No. 9,326,926, and U.S. Prov. App. No. 61/994,709,

49.     Your interactions with SalonCentric relating to Olaplex, including but not limited to Olaplex's Asserted Patents, Olaplex Trade Secrets, Olaplex Confidential Information and Your potential acquisition of Olaplex or licensing of Olaplex's Asserted Patents.

50.     All facts and knowledge regarding Your or L'Oréal S.A.'s patents and applications relating to the Accused Products, including but not limited to U.S. Provisional Application Nos. 62/155,900 and 62/155,931, both filed on May 1, 2015, and 62/259,564, filed on November 24, 2015, which led to the issuance of U.S. Publication Nos. 2018-0042830 and 2017-0246094, respectively, including the date(s) any invention disclosure statement or the like related to the inventions described or claimed therein was prepared and all corroborating documents.

51.     The monetary value or other benefit(s) to You of the Accused Products, including the perceived value at the time such Accused Products were launched, as well as the perceived impact of the value of the Accused Products on other of Your products.

52.     Your pricing policies, strategies, and practices regarding the Accused Products and any products or services sold or provided in combination with the Accused Products

including sell thru products, convoyed sales, increased services, cost savings, or any other benefits.

53.     Products or services, separate from the Accused Products, provided by You to Your customers when they purchase or pay for an Accused Product, and Your revenues, profits, profit margins before taxes, and costs associated with each such Product or service.

54.     The identity of Your customers purchasing or using the Accused Products, the number of such customers that You have and have had each year, the turnover rate of such customers, the cost of customer acquisition, the cost of customer retention, and the rate of conversion of Olaplex customers to customers of the Accused Products.

55.     Valuation of the Accused Products, regardless of the reason the valuation was performed or made, including without limitation, valuation in the context of licensing, marketing, sale, assignment, attempts to monetize, corporate transactions, or other commercialization.

56.     The effect of the Accused Products and technology on Your business, including on sales, recruiting and retaining customers, or any other commercial benefits.

57.     Any researched, planned, implemented, or known design-arounds for each of the Asserted Patents, including the removal of maleic acid from the Accused Products, and for each such alternative the details of Your consideration, if any, for inclusion in Your Accused Products.

58.     Your patent-clearing policies and procedures, as well as policies and procedures for reviewing potential licensing needs including but not limited to any patent licenses or agreements related to the Accused Products or technology.

59.     Any opinion of counsel (whether oral or written) with respect to the Asserted Patents, and the foundation of Documents that discuss, refer to, or evidence the same.

60.     Your first contemplation, knowledge, and/or awareness of the reasonable possibility and/or foreseeability of litigation with Olaplex.

61.     Your litigation hold, Document preservation and Document destruction policies related to this Action, including but not limited to the date(s) that You issued any Document preservation or litigation hold notice, identification of each Person that received such a notice on each date(s) and Your collection, identification, redaction and production of Documents in this Action.

62.     The steps You took in order to determine whether a copy of the Asserted Patents, including but not limited to LIQ 103 US Utility application, filed May 15, 2015 (U.S.S.N. 14/713,885), LIQ 103 PCT Application, filed May 15, 2015 (PCT/US2015/031166) and LIQ 104 Provisional application, filed April 24, 2015 (U.S.S.N. 62/152,220), or any information derived from the Asserted Patents including the foregoing applications, was in Your possession, custody or control between January 1, 2015 and November 19, 2015.

63.     Any indemnity or defense agreements relating to the Accused Products in this case.

64.     The existence, location, custodian, identification, and substance of any Documents created by, used by, or within the possession, custody, or control of You relating to the matters described in each of the Topics above.

65.     The identity of Persons with knowledge regarding the matters described in each of the Topics above.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C. A. No. 1:17-cv-00014-JFB-SRF |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA | ) | **CONFIDENTIAL –** |
| PRODUCTS, INC., L'ORÉAL USA | ) | **FILED UNDER SEAL** |
| S/D, INC., and REDKEN 5TH AVENUE | ) | |
| NYC, L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 4 TO EXCLUDE EVIDENCE OF OR REFERENCE TO POTENTIAL EMPLOYMENT OF CRAIG HAWKER AND ERIC PRESSLY

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Adam DiClemente
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5200

May 8, 2018

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

*Attorneys for Plaintiffs*

Plaintiffs ("Olaplex") oppose Defendants' ("L'Oréal") Motion *in Limine* No. 4 to Exclude Evidence of or Reference to Potential Employment of Craig Hawker and Eric Pressly ("Mot.").

## I.   <u>EVIDENCE OF L'ORÉAL'S ATTEMPT TO HIRE BOTH OF OLAPLEX'S INVENTORS ON THE SAME DAY IS HIGHLY PROBATIVE</u>

Drs. Craig Hawker and Eric Pressly are Olaplex's inventor-chemists.  D.I. 732, at 2-3. They are inventors on both Asserted Patents.  D.I. 636-1, Ex. A at 1, Ex. B at 1.  They were responsible for the work underlying Olaplex's technical trade secrets.  D.I. 732, at 3-4.  L'Oréal's attempt to poach and hire-away these individuals is highly probative of Olaplex's trade secret, punitive damages and willfulness claims: the evidence tends to circumstantially show that L'Oréal wanted Olaplex's technology but could not develop it without access to Olaplex's scientists and their know-how and planned to take it by any means necessary.  The probative value of this evidence is not only the ***fact*** that L'Oréal attempted to recruit Drs. Hawker and Pressly (sufficient in itself), but also the ***timing*** of those attempts.  The hair care industry spent decades before the launch of Olaplex working to correct damage from bleaching treatments, with only marginal success.  D.I. 732, at 2.  After Olaplex launched in the summer of 2014, L'Oréal devoted ***months*** of work—August 2014 to May 2015—secretly attempting, but failing, to replicate Olaplex.  *Id.* at 4-7.  This failure was despite that "determining the active ingredients and how the chemistry for Olaplex works" was "top priority."  *Id.* at 4.  In the same timeframe, L'Oréal approached Olaplex's founder and CEO Dean Christal in January 2015 claiming to be interested in a potential acquisition of the company.  D.I. 19, at ¶¶ 6-7.  When Mr. Christal refused to turn over Olaplex's trade secrets without some form of protection, L'Oréal tried to recruit ***both*** of Olaplex's inventors ***on the same day*** in March 2015 without telling Dean Christal.  Mot. at 1.  That failed recruitment effort nearly derailed L'Oréal's "acquisition" talks, and Mr. Christal's then counsel (Paul Hastings, which is now L'Oreal's counsel in this matter) demanded a Non-Disclosure Agreement between the parties

with an employee non-solicit provision before talks could resume.  D.I. 732, at 5.  After the parties signed NDAs, on May 19, 2015, L'Oréal gained access to Olaplex's trade secrets under the NDAs. *Id.* at 6.  L'Oréal never made an offer to acquire Olaplex, but nine days after May 19, 2015 the meeting, L'Oréal's documents indicate that it pivoted its development to Olaplex's trade secret technology.  *Id.* at 6-7.  This sequence of events gives rise to a powerful inference that Olaplex possessed valid trade secrets, which L'Oréal misappropriated.  When viewed in context, L'Oréal's attempt to recruit Olaplex's inventors is plainly probative.[1]

L'Oréal's argument that it was not "improper" for it to attempt to recruit Olaplex's inventors misses the point.  Mot. at 2.  Olaplex does not contend that L'Oréal was not permitted to approach Drs. Hawker and Pressly at the time that it did.  Rather, L'Oréal's poaching efforts—at that time and in the context it occurred—is compelling evidence that (1) Olaplex's trade secrets were not generally known or readily ascertainable; (2) L'Oréal was unable to independently invent Olaplex; and (3) L'Oréal resorted to any means necessary to obtain Olaplex's secrets when proper channels failed.

L'Oréal's observations in its Motion that Olaplex's cosmetic chemistry expert (Douglas Schoon) does not mention L'Oréal's recruitment effort, and that Olaplex did not ask L'Oréal's corporate designee about it at deposition, show nothing.  Mot. at 2.  It is not the proper function of a testifying expert to act as attorney mouthpieces, methodically reciting record evidence regardless of whether it relates to their field of expertise.[2]  Mr. Schoon is a cosmetic chemist who offers

---

[1]  Further still, Drs. Hawker and Pressly were well-regarded polymer chemists years before L'Oréal's solicitation.  It is striking that L'Oréal's "routine outreach to members of the scientific community" (Mot. at 1) happened to occur while L'Oréal was attempting to replicate Olaplex and "acquire" the company.  L'Oréal is entitled to argue this was a pure coincidence; but that speaks to the weight, not the admissibility of the evidence.

[2]  *See* D.I. 698 (Olaplex's *Daubert* motion of L'Oréal expert Thomas Schultz); D.I. 691 (same as to James Pooley); D.I. 687 (same as to Rhonda Harper).

opinions regarding (a) whether Olaplex's technical trade secrets were known or readily ascertainable; (b) the typical timeline required to develop and test products for salon use; and (c) whether L'Oréal could have independently developed the Olaplex technology in the time it claims—all topics that require technical or industry knowledge.  D.I. 749, Ex. 1, at ¶¶ 5-11.  No particular expertise is required to understand L'Oréal's attempted recruitment.  Further, it is not clear what L'Oréal contends Olaplex should have asked L'Oréal's Rule 30(b)(6) corporate designee to avoid this Motion.  *Cf.* Mot. at 2.  There is no rule—and L'Oréal cites none—that a litigant waives reliance on relevant evidence not mentioned during a Rule 30(b)(6) deposition.

## II.    <u>THERE IS NOTHING UNFAIRLY PREJUDICIAL ABOUT THE EVIDENCE</u>

Notwithstanding moving pursuant to Rule 403, L'Oréal's motion identifies nothing that would be ***unfairly*** prejudicial about this evidence. As the Third Circuit has explained, "[Rule 403] does not offer protection against evidence that is merely prejudicial, in the sense of being detrimental to a party's case.  Rather, the rule only protects against evidence that is unfairly prejudicial."  *Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980); *see also United States v. Wiseman*, 576 F. App'x 376, 379 (5th Cir. 2014) ("Relevant evidence is inherently prejudicial."). L'Oréal's efforts to recruit Drs. Hawker and Pressly are logical, probative, and admissible evidence in this case. L'Oréal also has not shown why this evidence, which is quite simple, presents a danger of "confusing the issues" or "wasting time."  *See* Fed. R. Evid. 403.

## III.    <u>CONCLUSION</u>

Olaplex respectfully requests that the Court deny L'Oréal's Motion *in Limine* No. 4 to Exclude Evidence of or Reference to Potential Employment of Craig Hawker and Eric Pressly.

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Adam DiClemente
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5200

May 8, 2019

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*
_____

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-14-JFB-SRF |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA | ) | **HIGHLY CONFIDENTIAL** |
| PRODUCTS, INC., L'ORÉAL USA S/D, INC., | ) | **FILED UNDER SEAL** |
| and REDKEN 5TH AVENUE NYC, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 4 TO EXCLUDE EVIDENCE OF OR REFERENCE TO POTENTIAL EMPLOYMENT OF CRAIG HAWKER AND ERIC PRESSLY

Of Counsel:
Dennis S. Ellis
Katherine F. Murray
Adam M. Reich
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
(213) 683-6000

Naveen Modi
Joseph E. Palys
Daniel Zeilberger
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1990

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Dated: May 13, 2019

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Katharine L. Mowery (#5629)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
mowery@rlf.com

*Attorneys for Defendants*
*L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc. and Redken 5th Avenue NYC, LLC*

Plaintiffs' Opposition ("Opp.") to Defendants' Motion *in Limine* No. 4 ("Mot.") offers nothing more than a made-up story to manufacture relevancy that does not exist.  (Opp. at 2.) L'Oréal USA's routine outreach to potential job candidates including Olaplex scientists has no probative value and should be precluded from the jury.

*First*, secrecy cannot reasonably be inferred from L'Oréal USA's routine outreach, which occurred in early March 2015, before the parties had their first meeting in April 2015, without the assumption of improper motives.[1]  Thus, Olaplex's relevancy argument assumes the ultimate issue to be proven—that L'Oréal USA acted to steal Olaplex's alleged trade secrets.  (*See id.* at 2; D.I. 732 at 17; Mot. at 2.)  *Second*, L'Oréal USA's outreach to Olaplex's scientists is irrelevant to Olaplex's claim of misappropriation, which hinges on its theory that L'Oréal USA somehow copied Olaplex's alleged trade secrets allegedly obtained through the parties' acquisition meeting.  (Opp. 1-2.)  The fact that L'Oréal USA reached out to Olaplex scientists (and did so before the parties met in April 2015) has no bearing on Olaplex's misappropriation claims.  (Mot. at 2.)  Olaplex's attempt to manufacture a scandal by referencing L'Oréal USA's routine recruitment efforts is pure speculation.  (Mot. at 3.)  Raising information relating to L'Oréal USA's recruitment efforts (including those involving the Olaplex scientists at issue here) would unfairly prejudice L'Oréal USA and confuse and mislead the jury by obfuscating Olaplex's theory of misappropriation with speculations of nefarious motives, and would invite the need for additional evidence and testimony that would waste trial time and resources to rebut such baseless accusations.  Thus, L'Oreal USA's Motion *in Limine* No. 4 should be granted.

---

[1] Where a party obtains information through *improper means*, it is reasonable to infer that the information could not have been otherwise obtained, and thus is not generally known or readily ascertainable.  (D.I. 732 at 17.)  Here, Olaplex acknowledges that L'Oréal USA's outreach to Olaplex scientists is not itself improper.  (Opp. at 2.)

1

_/s/ Frederick L. Cottrell, III_

| | |
|---|---|
| Of Counsel: | Frederick L. Cottrell, III (#2555) |
| Dennis S. Ellis | Jeffrey L. Moyer (#3309) |
| Katherine F. Murray | Katharine L. Mowery (#5629) |
| Adam M. Reich | Richards, Layton & Finger, P.A. |
| Paul Hastings LLP | One Rodney Square |
| 515 South Flower Street, 25th Floor | 920 N. King Street |
| Los Angeles, CA 90071 | Wilmington, Delaware 19801 |
| (213) 683-6000 | (302) 651-7700 |
| | cottrell@rlf.com |
| Naveen Modi | moyer@rlf.com |
| Joseph E. Palys | mowery@rlf.com |
| Daniel Zeilberger | |
| Paul Hastings LLP | **Attorneys for Defendants** |
| 875 15th Street, N.W. | L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal |
| Washington, D.C. 20005 | USA S/D, Inc. and Redken 5th Avenue NYC, LLC |
| (202) 551-1990 | |

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Dated: May 13, 2019

2

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 13, 2019, true and correct copies of the foregoing document

were caused to be served on the following counsel of record as indicated:

<table>
<tr>
<td valign="top">

**VIA ELECTRONIC MAIL**
Jack B. Blumenfeld
Jeremy A. Tigan
Anthony D. Raucci
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

Diane M. Doolittle
Suong T. Nguyen
Quinn, Emmanuel, Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(605) 801-5000
dianedoolittle@quinnemanuel.com
suongnguyen@quinnemanuel.com

Jared W. Newton
Quinn, Emmanuel, Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000
jarednewton@quinnemanuel.com

Megan Y. Yung
Quinn, Emmanuel, Urquhart & Sullivan, LLP
111 Huntington Avenue
Suite 520
Boston, MA 02199
meganyung@quinnemanuel.com

</td>
<td valign="top">

**VIA ELECTRONIC MAIL**
Amardeep L. Thakur
Joseph M. Paunovich
Bruce E. Van Dalsem
Ali Moghaddas
Patrick T. Schmidt
William Odom
Quinn, Emmanuel, Urquhart & Sullivan, LLP
865 S. Figueroa Street
Los Angeles, CA 90017
(213) 443-3000
amarthakur@quinnemanuel.com
joepaunovich@quinnemanuel.com
brucevandalsem@quinnemanuel.com
alimoghaddas@quinnemanuel.com
patrickschmidt@quinnemanuel.com
william.odom@quinnemanuel.com

Adam J. DiClemente
Quinn, Emmanuel, Urquhart & Sullivan, LLP
55 Madison Avenue
22nd Floor
New York, NY 10010
(212) 849-7361
adamdiclemente@quinnemanuel.com

Matthew K. Blackburn
Diamond McCarthy LLP
150 California Street
Suite 2200
San Francisco, CA 94111
(415) 263-9200
mblackburn@diamondmccarthy.com

</td>
</tr>
</table>

/s/ Jason J. Rawnsley
Jason J. Rawnsley (#5379)
rawnsley@rlf.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-14-JFB-SRF |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA | ) | **CONFIDENTIAL –** |
| PRODUCTS, INC., L'ORÉAL USA S/D, INC. | ) | **FILED UNDER SEAL** |
| and REDKEN 5TH AVENUE NYC, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' MOTION _IN LIMINE_ NO. 5 TO PRECLUDE REFERENCE TO PAUL
HASTINGS LLP AS FORMER COUNSEL TO OLAPLEX**

Of Counsel:

Dennis S. Ellis
Katherine F. Murray
Adam M. Reich
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
(213) 683-6000

Naveen Modi
Joseph E. Palys
Daniel Zeilberger
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1990

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Dated:  May 1, 2019

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Katharine L. Mowery (#5629)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
mowery@rlf.com

***Attorneys for Defendants***
*L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal
USA S/D, Inc. and Redken 5th Avenue NYC, LLC*

## I.        SUMMARY OF ARGUMENT

Plaintiffs should be precluded from making any reference at trial to the fact that certain attorneys at Paul Hastings LLP ("Paul Hastings"), the law firm representing Defendants in this action, previously represented Plaintiffs in connection with other matters, years ago. Specifically, Plaintiffs should be precluded from referencing the fact that Paul Hastings briefly represented Plaintiffs against a third-party in connection with a matter that was filed in January 2015 in Los Angeles Superior Court, *BehindtheChair.com, Inc. v. Christal* (the "BTC Litigation").  Plaintiffs also should be precluded from referencing the fact that certain corporate attorneys at Paul Hastings served as counsel to Olaplex LLC in connection with the non-disclosure agreement ("NDA") it executed with L'Oréal USA, Inc.  Paul Hastings' prior representation is irrelevant, as it has no bearing on any issue to be decided by the jury.  Fed. R. Evid. 402.  *Grizzle v. Gen. Growth Props., Inc.*, 2011 WL 7268176, at *3 (W.D. Okla. Oct. 12, 2011) (precluding evidence relating to an unproven conflict of interest between plaintiff's expert and defendants' counsel as irrelevant).  This information also should be excluded as substantially more prejudicial than probative, and likely to lead to juror confusion.  Fed. R. Evid. 403.  In this litigation, Plaintiffs have made references to the fact that Paul Hastings previously represented Plaintiffs, even going so far as to suggest that the very attorneys involved in this matter were involved in prior matters on behalf of Plaintiff, when there is no truth to that assertion.  (*See* D.I. 724, Ex. 20 at 11:24-12:18.)  None of the Paul Hastings attorneys involved in this matter had **any** involvement in the BTC Litigation or the NDA.  As such, any reference to Paul Hastings' representation in these matters should be excluded pursuant to Federal Rules of Evidence 402 and 403.

## II. PAUL HASTINGS' PRIOR REPRESENTATION OF PLAINTIFFS SHOULD BE EXCLUDED AS IRRELEVANT AND SUBSTANTIALLY MORE PREJUDICIAL THAN PROBATIVE.

Plaintiffs should be precluded from referencing the fact that the law firm representing Defendants previously performed some work for Plaintiffs.  This information is irrelevant to any issue that would properly be before the jury.  Indeed, the introduction of such evidence would do little more than suggest that Plaintiffs were somehow disadvantaged by a hypothetical conflict of interest or have credible claims since Defendants' counsel at some point represented Plaintiffs.  Courts routinely grant motions *in limine* excluding such evidence as both irrelevant and unduly prejudicial.

*Grizzle v. General Growth Properties, Inc.* is instructive.  In *Grizzle*, defendants moved *in limine* "to prevent Plaintiff from offering evidence related to a dispute between one of her experts . . . and the law firm representing Defendants."  2011 WL 7268176, at *3.  The law firm representing defendants previously represented plaintiff's expert, and that relationship subsequently soured.  *Id.*  The court granted a motion *in limine* prohibiting any reference to this representation, holding that it was irrelevant.  *Id.*  Specifically, the court reasoned that "the representation of [plaintiff's expert] was on a totally unrelated matter and," as here, was done "by different members of the law firm."  *Id.*  Moreover, as here, defendants' counsel "affirmatively stated that there is no communication between the two sets of attorneys and that the issue has been walled off."  *Id.*

Unlike the *Grizzle* plaintiffs, Plaintiffs have not even made an allegation of impropriety.  As such, they should not be permitted to use the unproven specter of a conflict of interest to gain an unwarranted advantage at trial.  *See PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 2007 WL 4404271, at *2 (C.D. Cal. May 18, 2007) (granting motion *in limine* to preclude evidence of a conflict of interest in representing defendants in the instant action).

2

Plaintiffs should be precluded from referencing at trial the fact that Paul Hastings previously represented Plaintiffs in any capacity.

Of Counsel:

Dennis S. Ellis
Katherine F. Murray
Adam M. Reich
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
(213) 683-6000

Naveen Modi
Joseph E. Palys
Daniel Zeilberger
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1990

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Dated:  May 1, 2019

/s/ Frederick L. Cottrell, III
Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Katharine L. Mowery (#5629)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
mowery@rlf.com

**Attorneys for Defendants**
L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc. and Redken 5th Avenue NYC, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2019, true and correct copies of the foregoing document

were caused to be served on the following counsel of record as indicated:

**VIA ELECTRONIC MAIL**
Jack B. Blumenfeld
Jeremy A. Tigan
Anthony D. Raucci
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

Diane M. Doolittle
Suong T. Nguyen
Quinn, Emmanuel, Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(605) 801-5000
dianedoolittle@quinnemanuel.com
suongnguyen@quinnemanuel.com

Jared W. Newton
Quinn, Emmanuel, Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000
jarednewton@quinnemanuel.com

Megan Y. Yung
Quinn, Emmanuel, Urquhart & Sullivan, LLP
111 Huntington Avenue
Suite 520
Boston, MA 02199
meganyung@quinnemanuel.com

**VIA ELECTRONIC MAIL**
Amardeep L. Thakur
Joseph M. Paunovich
Bruce E. Van Dalsem
Ali Moghaddas
Patrick T. Schmidt
William Odom
Quinn, Emmanuel, Urquhart & Sullivan, LLP
865 S. Figueroa Street
Los Angeles, CA 90017
(213) 443-3000
amarthakur@quinnemanuel.com
joepaunovich@quinnemanuel.com
brucevandalsem@quinnemanuel.com
alimoghaddas@quinnemanuel.com
patrickschmidt@quinnemanuel.com
william.odom@quinnemanuel.com

Adam J. DiClemente
Quinn, Emmanuel, Urquhart & Sullivan, LLP
55 Madison Avenue
22nd Floor
New York, NY 10010
(212) 849-7361
adamdiclemente@quinnemanuel.com

Matthew K. Blackburn
Diamond McCarthy LLP
150 California Street
Suite 2200
San Francisco, CA 94111
(415) 263-9200
mblackburn@diamondmccarthy.com

*/s/ Jason J. Rawnsley*
Jason J. Rawnsley (#5379)
rawnsley@rlf.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C. A. No. 1:17-cv-00014-JFB-SRF |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA | ) | **CONFIDENTIAL –** |
| PRODUCTS, INC., L'ORÉAL USA | ) | **FILED UNDER SEAL** |
| S/D, INC., and REDKEN 5TH AVENUE | ) | |
| NYC, L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 5 TO PRECLUDE REFERENCE TO PAUL HASTINGS LLP AS FORMER COUNSEL TO OLAPLEX

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Adam DiClemente
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5200

May 8, 2018

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

*Attorneys for Plaintiffs*

i

Plaintiffs ("Olaplex") oppose Defendants' ("L'Oréal") Motion *in Limine* No. 5 to Prelude Reference to Paul Hastings LLP as Former Counsel to Olaplex ("Motion" or "Mot.").

I.   <u>**THE IDENTITY OF OLAPLEX'S COUNSEL DURING A CRITICAL PERIOD IN THIS CASE IS PROBATIVE**</u>

Olaplex alleges that L'Oréal breached a pair of May 2015 non-disclosure agreements ("NDAs") between it and L'Oréal.  D.I. 636, at 41.  Two of L'Oréal's Counterclaims are for purported breach of the same NDAs.  D.I. 650, at 72-79.  L'Oréal also alleges that, during the negotiation and execution of those NDAs, Olaplex was committing a fraud by false promise because—under L'Oréal's implausible theory—Olaplex orchestrated the acquisition talks that L'Oreal approached Olaplex about as an elaborate scheme to plant the suspicion of trade secret misappropriation so that Olaplex could initiate this lawsuit years later.  *Id.* at 69-72.

***Identification of Paul Hastings is relevant and probative of Olaplex's fraud defense:*** Paul Hastings represented Olaplex throughout the period that L'Oréal alleges fraud, specifically in connection with negotiating the NDAs that L'Oréal now claims was a Trojan Horse for Olaplex's deception.  To fully defend itself against L'Oréal's fraud claim, Olaplex must be permitted to put on evidence of all circumstances surrounding the allegedly fraudulent negotiations, including the fact that Olaplex retained and was represented by the same large, well-respected law firm that L'Oreal hired to represent it and file a claim for breach of the very same NDAs that Paul Hastings negotiated on behalf of Olaplex; these actions make the existence of deceptive intent null.  Olaplex should be allowed to argue to the jury, among other defenses, that the Paul Hastings law firm represented it during the negotiation of the NDAs, did not and would have never facilitated the fraudulent scheme that L'Oréal's Paul Hastings counsel now alleges.

1

That is probative evidence that it is not unfairly prejudicial to *L'Oréal* in the least.  *See* Fed. R. Evid. 403.[1]

      *Olaplex's retention of Paul Hastings LLP is probative of protecting its trade secrets*:  One of L'Oréal's defenses to Olaplex's trade secret claims is that Olaplex failed to exercise reasonable efforts to protect its trade secrets.  *See, e.g.*, D.I. 650, at 29.  Indeed, L'Oréal charges that Olaplex failed to enter into adequate and sufficient NDAs with individuals and companies who may have had access to Olaplex's trade secrets.  D.I. 720, Ex. 6, at 8-10.  To establish reasonable efforts, Olaplex is entitled to inform the jury of *all* the ways by which it endeavored to protect its trade secrets, including retaining the same large, reputable law firm that L'Oreal is now using to negotiate the NDAs on behalf of Olaplex in connection with acquisition talks with L'Oreal.  That Olaplex was advised by the same law firm presently representing L'Oréal makes it more likely that Olaplex exercised reasonable care.

## II.    L'ORÉAL HAS IDENTIFIED NO UNFAIR PREJUDICE FROM THIS EVIDENCE

      Notwithstanding a motion pursuant to Rule 403, L'Oréal has not identified anything unfairly prejudicial about identifying for the jury the law firm that represented Olaplex during the negotiation of the NDAs on which both parties have filed suit.  As L'Oréal states in its Motion, "Plaintiffs have not even made an allegation of impropriety."  Mot. at 2.  With no allegation of impropriety in this lawsuit, it is not clear what prejudice could stem from Olaplex introducing and identifying its lawyers.

      Despite representing that courts "routinely" grant motions like this, L'Oréal directs the Court to a total of two cases, neither of which is on point.  First, *Grizzle v. General Growth*

---

[1]  Paul Hastings LLP is not a party in this lawsuit.  Potential embarrassment regarding its representation of the Plaintiffs in this action, notwithstanding a longstanding institutional relationship with L'Oréal, is not grounds to hide evidence through an order *in limine*.

*Properties, Inc.*, 2011 WL 7268176 (W.D. Okla. Oct. 12, 2011) was a personal-injury case about an attack in a mall parking lot.  *Id.* at *1.  The Defendants moved *in limine* to exclude "Allegations of Conflict of Interest" between one of plaintiff's **experts** (not the plaintiff herself) and the defendants' law firm because the defendants' law firm had previously represented the plaintiff's expert "on a totally unrelated matter."  *Id.* at *3.  In this proceeding, Olaplex seeks to inform the jury that it retained Paul Hastings LLP ***to negotiate the NDAs on its behalf against L'Oréal*** that are at the heart of this case.  Furthermore, Paul Hastings's representation of Olaplex was not "on a totally unrelated matter" (*cf.* Mot. at 2), but went to a central and critical part of this case: negotiating and executing the NDAs under which Olaplex disclosed trade secrets to L'Oréal, which L'Oréal now alleges was a fraud.  Second, *PSM Holding Corp. v. National Farm Financial Corp.*, 2007 WL 4404271 (C.D. Cal. May 18, 2007) is a pre-trial order granting and denying motions *in limine* without explanation.  The granted motion L'Oréal appears to seize upon was "To Preclude Evidence of Whether Chao has Considered a Malpractice Claim Against Dillingham & Murphy, LLP and John Camozzi, or Whether Camozzi's Malpractice Carrier Has Been Put on Notice of a Potential Claim, or That There is a Conflict of Interest in Representing Defendants in this Action."  *Id.* at *2.  Olaplex will not be asserting at this trial that Paul Hastings committed malpractice (it is not a party), nor inquiring as to whether Paul Hastings's malpractice insurance carrier has been notified of a potential claim.  There is no reasoning in the cited opinion that supports the relief L'Oréal seeks here.

## III.   <u>CONCLUSION</u>

Olaplex respectfully requests that the Court deny L'Oréal's Motion *in Limine* No. 5 to Prelude Reference to Paul Hastings LLP as Former Counsel to Olaplex.

OF COUNSEL:

Joseph M. Paunovich
Ali Moghaddas
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Adam DiClemente
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Matthew K. Blackburn
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA  94111
(415) 692-5200

May 8, 2019

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*
_____

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LIQWD, INC. and OLAPLEX LLC,       )
          )
          Plaintiffs,       )
          )
v.                 )       C.A. No. 17-14-JFB-SRF
          )
L'ORÉAL USA, INC., L'ORÉAL USA   )       **CONFIDENTIAL –**
PRODUCTS, INC., L'ORÉAL USA S/D, INC. )     **FILED UNDER SEAL**
and REDKEN 5TH AVENUE NYC, LLC,  )
          )
          Defendants.     )
          )

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION *IN LIMINE* NO. 5 TO PRECLUDE REFERENCE TO PAUL HASTINGS LLP AS FORMER COUNSEL TO OLAPLEX

Of Counsel:

Dennis S. Ellis
Katherine F. Murray
Adam M. Reich
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
(213) 683-6000

Naveen Modi
Joseph E. Palys
Daniel Zeilberger
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1990

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Dated:  May 13, 2019

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Katharine L. Mowery (#5629)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
mowery@rlf.com

*Attorneys for Defendants*
*L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc. and Redken 5th Avenue NYC, LLC*

Plaintiffs' explanation as to why they wish to reference Paul Hastings' prior representation of Olaplex demonstrates their intent to prejudice Defendants and the significant risk of misleading the jury.  Plaintiffs intend to reference Paul Hastings' assistance in negotiating the NDA to rebut Defendants' claim that Olaplex's professed interest on an acquisition was fraudulent, so as to suggest that Plaintiffs could not have possibly orchestrated such a scheme via a "large, well-respected" law firm like Paul Hastings.  (Opp. at 1.)  This argument presupposes that the Paul Hastings team at that time was privy to Plaintiffs' scheme, when the record shows that Paul Hastings' involvement was limited to negotiations of the NDA itself, not the acquisition.  (*See* Ex. A at 12:1-20; 13:9-14:3.)  Moreover, even if such evidence existed, Plaintiffs do not explain why they would need to reference "Paul Hastings"—rather than the fact that they were represented by counsel — to make this point.  The same can be said of Olaplex's argument that identification of Paul Hastings is relevant to Plaintiffs' trade secret misappropriation claims.  The fact that Paul Hastings[1] helped negotiate the terms of the NDA does not establish that Plaintiffs took care to guard their trade secrets.  And again, Plaintiffs do not explain why they would need to identify "Paul Hastings" by name to make this point.[2]

Contrary to Olaplex's contention, the fact that Olaplex has not expressly asserted a conflict of interest (because there is none) is immaterial.  There is a significant risk that, once mentioned, the jury will surmise that some conflict disadvantaged Olaplex—otherwise there would be no reason for Plaintiffs' desire to use Paul Hastings' name.  The Court should eliminate this risk by precluding any reference to Paul Hastings' prior representation of Plaintiffs.

---

[1] To be clear, none of the attorneys representing Defendants in this case had any involvement in that representation.

[2] Defendants also moved to exclude reference to Paul Hastings' brief representation of Plaintiffs in *BehindtheChair.com, Inc. v. Christal*.  Plaintiffs did not oppose this request, conceding the matter's irrelevance, and the danger of prejudice associated therewith.

Of Counsel:

Dennis S. Ellis
Katherine F. Murray
Adam M. Reich
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
(213) 683-6000

Naveen Modi
Joseph E. Palys
Daniel Zeilberger
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1990

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Dated:  May 13, 2019

*/s/ Frederick L. Cottrell, III*
Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Katharine L. Mowery (#5629)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
mowery@rlf.com

***Attorneys for Defendants***
*L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc. and Redken 5th Avenue NYC, LLC*

2

# EXHIBIT
# A

Contains Highly Confidential Portion
Bound Separately

Page 1

1                  UNITED STATES DISTRICT COURT

2                     DISTRICT OF DELAWARE

3

4     LIQWD, INC. and OLAPLEX LLC, )
                                   )
5                                  )
                                   )
            Plaintiff,             ) CASE NO.
6                                  ) 17-cv-14-SLR
                                   )
7     vs.                          )
                                   )
8                                  )
      L'OREAL USA, INC., L'OREAL   )
9     USA PRODUCTS, INC. and       )
      L'OREAL USA S/D, INC.,       )
10    L'OREAL S.A. and REDKEN 5TH  )
      AVENUE NYD, LLC,             )
11                                 )
            Defendants.            )
12    _____ )

13

14             **HIGHLY CONFIDENTIAL PORTION**

15                 **BOUND SEPARATELY**

16

17        VIDEOTAPED DEPOSITION OF DAVID HERNAND

18           WEDNESDAY, DECEMBER 19, 2018

19                    9:05 A.M.

20                 Pages 31-34

21

22

23

24    REPORTED BY:  KATHERINE FERGUSON, RPR, CSR NO. 12332

25              JOB NO. 152736

Contains Highly Confidential Portion
Bound Separately

---

**Page 10**

1   MR. HELM:  I'm sure when you show him the   09:11
2   e-mails he'll be able to answer that.   09:11
3   MR. SCHMIDT:  Sure.   09:11
4   BY MR. SCHMIDT:   09:11
5   Q  Do you remember when the attorney/client   09:11
6   relationship between you and Olaplex ended?   09:11
7   MR. HELM:  Vague and ambiguous.   09:11
8   MR. ELLIS:  Objection, calls for a legal   09:11
9   conclusion.   09:11
10   A  It's not entirely clear because we   09:11
11   transitioned a matter over and we assisted to another 09:11
12   law firm of an active litigation matter, not   09:11
13   unrelated to this matter.  And we were assisting in   09:12
14   moving that litigation over.  I don't remember the   09:12
15   exact timeframe, although I think it was sometime in 09:12
16   June.  So our representation I think -- I think was   09:12
17   June, but I don't remember exactly.   09:12
18   BY MR. SCHMIDT:   09:12
19   Q  The June following the December when the   09:12
20   representation began?   09:12
21   A  Right, I think so.   09:12
22   Q  What law firm were you transitioning the   09:12
23   matter over to?   09:12
24   A  McKool Smith.   09:12
25   Q  And was the matter that you referred to   09:12

**Page 11**

1   litigation?   09:12
2   A  Correct.   09:12
3   Q  Do you recall the name of the litigation?   09:12
4   A  The adverse party was Behind The Chair.   09:12
5   Q  Do you remember where that litigation was   09:12
6   venued?   09:12
7   A  I think it was Los Angeles.  Behind The   09:12
8   Chair, I believe, is in Chicago.   09:12
9   Q  During your representation of Olaplex, is   09:13
10   it true that you were a partner with Paul Hastings   09:13
11   the entire time?   09:13
12   A  Yes.   09:13
13   Q  During your representation of Olaplex, do   09:13
14   you recall L'Oreal becoming interested in acquiring   09:13
15   Olaplex?   09:13
16   A  Yes.   09:13
17   Q  Can you tell me the timeframe that that   09:13
18   interest first began?   09:13
19   A  It was in the -- I believe it was in the   09:13
20   spring or early -- I believe it was in the spring of 09:13
21   that period of representation.   09:13
22   Q  Is it true that you represented Olaplex in   09:13
23   negotiations with L'Oreal for L'Oreal's perspective   09:13
24   acquisition of Olaplex?   09:14
25   A  Yes.   09:14

**Page 12**

1   Q  Did you communicate with representatives   09:14
2   from L'Oreal about their interest in acquiring   09:14
3   Olaplex?   09:14
4   MR. HELM:  Vague and ambiguous.   09:14
5   A  I communicated with them directly only in   09:14
6   the context of negotiating an NDA.  And I suppose   09:14
7   from that I could infer that if they were engaging in 09:14
8   negotiations of an NDA, that they had interest in   09:14
9   acquiring the company.  That was certainly the   09:14
10   subject of the NDA.  But I didn't have any direct   09:14
11   discussions with them about their interest.   09:14
12   BY MR. SCHMIDT:   09:14
13   Q  Okay.  So is it fair to say that you were   09:14
14   involved in negotiating the NDA between Olaplex and   09:14
15   L'Oreal, but not the substantive terms of the   09:14
16   proposed acquisition?   09:15
17   MR. HELM:  You're talking about in   09:15
18   connection with his discussions with L'Oreal?   09:15
19   MR. SCHMIDT:  Correct.   09:15
20   A  Yes.   09:15
21   BY MR. SCHMIDT:   09:15
22   Q  Do you remember who you communicated with?  09:15
23   A  No, but I believe they -- I believe they   09:15
24   were inside counsel.   09:15
25   Q  For L'Oreal?   09:15

**Page 13**

1   A  For L'Oreal.   09:15
2   Q  Do you remember, during those negotiations, 09:15
3   drawing a distinction between different L'Oreal   09:15
4   entities that you were communicating with?   09:15
5   MR. HELM:  Vague and ambiguous.   09:15
6   A  Do I remember drawing a distinction, no, I  09:15
7   don't remember what I was thinking about at the time. 09:15
8   BY MR. SCHMIDT:   09:15
9   Q  Do you remember discussing with L'Oreal   09:15
10   what prompted their interest in acquiring Olaplex?   09:15
11   A  No.   09:15
12   Q  Are you saying that you can't remember or   09:15
13   are you sure that those sorts of conversations didn't 09:16
14   happen?   09:16
15   A  I -- well, I don't remember any, that is a  09:16
16   correct statement, and nor would I have had reason to 09:16
17   engage in discussions about why they wanted to buy   09:16
18   the company.   09:16
19   Q  Okay.  Understood.   09:16
20   A  I was dealing with a large conglomerate and 09:16
21   I was asked to -- I was putting an NDA in place, so I 09:16
22   was focussed on putting an NDA in place.   09:16
23   Q  And you may have already answered this, but 09:16
24   I'll ask again.   09:16
25   During these negotiations of the NDA, the   09:16

Contains Highly Confidential Portion
Bound Separately

Page 14

1  potential terms of the acquisition never came up; is 09:16
2  that true?                        09:16
3      A  Correct.                   09:16
4      MR. HELM:  In his discussions with L'Oreal? 09:16
5      MR. SCHMIDT:  Correct.        09:16
6      A  Correct.                   09:16
7  BY MR. SCHMIDT:                   09:16
8      Q  Do you recall, during this time,     09:16
9  communicating with L'Oreal about any intellectual 09:16
10  property owned by Olaplex?       09:17
11      A  Only inasmuch as we negotiated the terms of 09:17
12  an NDA for Olaplex and then decided to also have an 09:17
13  NDA, I think we did, for Liqwd.  And my understanding 09:17
14  had been that Liqwd was the owner of patents relevant 09:17
15  to Olaplex.  And so to the extent that the     09:17
16  discussions were going to relate to the brand and the 09:17
17  product Olaplex and the underlying technology, that 09:17
18  there would be a separate NDA with Liqwd as well.  So 09:17
19  I believe there would have been some discussion with 09:18
20  L'Oreal about it.                09:18
21      MR. HELM:  Got it.  I wanted to make sure 09:18
22  you were talking about discussions with L'Oreal? 09:18
23      THE WITNESS:  Yes.          09:18
24      MR. HELM:  Did you finish your answer? 09:18
25      THE WITNESS:  Yeah.         09:18

Page 15

1  BY MR. SCHMIDT:                   09:18
2      Q  Do you recall discussing with L'Oreal the 09:18
3  reason, if any, for their interest in acquiring 09:18
4  Olaplex's intellectual property?  09:18
5      MR. HELM:  Asked and answered. 09:18
6      A  No.                        09:18
7  BY MR. SCHMIDT:                   09:18
8      Q  You mentioned earlier a nondisclosure 09:18
9  agreement that you're involved in negotiating. 09:18
10      A  Uh-huh.                   09:18
11      Q  Do you remember what the purpose of that 09:18
12  nondisclosure agreement was?     09:18
13      MR. HELM:  Instruct you not to answer. 09:18
14  Attorney/client privilege.  If you want to ask him if 09:18
15  he discussed the purpose with L'Oreal, I'll let him 09:19
16  answer that.                     09:19
17  BY MR. SCHMIDT:                   09:19
18      Q  Did you discuss the purpose of a     09:19
19  nondisclosure agreement that was being negotiated 09:19
20  with L'Oreal at this time?       09:19
21      A  I don't think I discussed the purpose. 09:19
22      Q  A nondisclosure agreement was eventually 09:19
23  executed, correct?               09:19
24      A  I don't know.  I don't recall that.  I 09:19
25  recall negotiating it.  It's possible that the act of 09:19

Page 16

1  executing was left to the parties.  I simply don't 09:19
2  recall.                          09:19
3      MR. SCHMIDT:  Okay.  I'm going to mark the 09:19
4  next two exhibits.               09:19
5      MR. ODOM:  Start at 460.     09:19
6      MR. SCHMIDT:  We'll take care of it mark 09:19
7  these provisionally.             09:19
8      (Exhibits 462-463 were marked for     09:20
9  identification.)                 09:20
10  BY MR. SCHMIDT:                   09:20
11      Q  Sir, I placed before you the next two 09:20
12  exhibits in order --            09:20
13      A  Uh-huh.                   09:20
14      Q  -- which we're marking at this time as 09:20
15  Exhibits 3 and 4.  We'll renumber at a later time. 09:20
16  Starting at Exhibit 3 it's a document ending in Bates 09:20
17  number 96270.  This looks to be e-mail communications 09:20
18  between yourself and Marshall Gringauz at L'Oreal; is 09:20
19  that correct?                    09:20
20      A  Uh-huh.                   09:20
21      MR. HELM:  You have to say yes.     09:20
22      THE WITNESS:  Sorry, yes.   09:21
23  BY MR. SCHMIDT:                   09:21
24      Q  Are you familiar with these communications? 09:21
25      MR. HELM:  Vague and ambiguous.     09:21

Page 17

1      A  This appears to be an e-mail chain that I 09:21
2  sent or involving me and the L'Oreal attorney, yes. 09:21
3  BY MR. SCHMIDT:                   09:21
4      Q  Does what's been premarked as Exhibit 3 09:21
5  look to be a true and accurate copy of e-mail 09:21
6  communication between yourself and Mr. Gringauz? 09:21
7      MR. HELM:  Why don't you flip through, 09:21
8  Mr. Hernand.  He's asking you about the whole doc. 09:21
9      A  It appears to be, yes.     09:21
10  BY MR. SCHMIDT:                   09:21
11      Q  Who is Mr. Gringauz?      09:21
12      A  I assume that he is an inhouse attorney at 09:21
13  L'Oreal, but I don't know for sure.  But clearly from 09:21
14  this record, I was interacting with him,     09:21
15  negotiating -- me and my associate were interacting 09:22
16  with him and negotiating the NDA.  09:22
17      Q  Do you recall what L'Oreal entity he was an 09:22
18  inhouse attorney for?            09:22
19      A  No.                       09:22
20      Q  I want to draw your attention to the first 09:22
21  page, about halfway down, there's an e-mail from 09:22
22  Mr. Gringauz dated May 18th.     09:22
23      A  Uh-huh.                   09:22
24      Q  He says, "Hi David, just wanted to check 09:22
25  back to see if you were able to get Dean's 09:22

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 13, 2019, true and correct copies of the foregoing document

were caused to be served on the following counsel of record as indicated:

<u>**VIA ELECTRONIC MAIL**</u>

Jack B. Blumenfeld
Jeremy A. Tigan
Anthony D. Raucci
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

Diane M. Doolittle
Suong T. Nguyen
Quinn, Emmanuel, Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(605) 801-5000
dianedoolittle@quinnemanuel.com
suongnguyen@quinnemanuel.com

Jared W. Newton
Quinn, Emmanuel, Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000
jarednewton@quinnemanuel.com

Megan Y. Yung
Quinn, Emmanuel, Urquhart & Sullivan, LLP
111 Huntington Avenue
Suite 520
Boston, MA 02199
meganyung@quinnemanuel.com

<u>**VIA ELECTRONIC MAIL**</u>

Amardeep L. Thakur
Joseph M. Paunovich
Bruce E. Van Dalsem
Ali Moghaddas
Patrick T. Schmidt
William Odom
Quinn, Emmanuel, Urquhart & Sullivan, LLP
865 S. Figueroa Street
Los Angeles, CA 90017
(213) 443-3000
amarthakur@quinnemanuel.com
joepaunovich@quinnemanuel.com
brucevandalsem@quinnemanuel.com
alimoghaddas@quinnemanuel.com
patrickschmidt@quinnemanuel.com
william.odom@quinnemanuel.com

Adam J. DiClemente
Quinn, Emmanuel, Urquhart & Sullivan, LLP
55 Madison Avenue
22nd Floor
New York, NY 10010
(212) 849-7361
adamdiclemente@quinnemanuel.com

Matthew K. Blackburn
Diamond McCarthy LLP
150 California Street
Suite 2200
San Francisco, CA 94111
(415) 263-9200
mblackburn@diamondmccarthy.com

/s/ Jason J. Rawnsley
Jason J. Rawnsley (#5379)
rawnsley@rlf.com