IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LIQWD, INC. and OLAPLEX LLC,

        Plaintiffs,

    v.

L'ORÉAL USA, INC., L'ORÉAL USA
PRODUCTS, INC., L'ORÉAL USA S/D,
INC., and REDKENS 5TH AVENUE, NYC,
L.L.C.,

        Defendants.

**CIVIL ACTION NO. 17-14-JFB-SRF**

**MEMORANDUM AND ORDER**

This matter is before the Court on the following motions for summary judgment:

1.  Motion for summary judgment of non-patent issues filed by Liqwd, Inc. and Olaplex LLC, D.I. 682;

2.  Motion for summary judgment as to plaintiffs' claims for misappropriation of trade secrets and breach of contract filed by L'Oréal, D.I. 703;

3.  Motion for summary judgment of invalidity filed by L'Oréal, D.I. 710;

4.  Motion for summary judgment of non-infringement filed by L'Oréal, D.I. 712;

5.  Motion for summary judgment on patent issues filed by Liqwd, D.I. 717.

Defendants also object, D.I. 803, and plaintiffs object D.I. 802, to the Report and Recommendation of the magistrate judge, D.I. 791, denying plaintiffs' motion to dismiss, D.I. 665.

## I. BACKGROUND

In this patent infringement action filed by plaintiffs Liqwd, Inc. and Olaplex LLC (together, "Olaplex" or "plaintiffs" or "Liqwd") against defendants L'Oréal USA, Inc.,

L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc., and Redken 5th Avenue NYC, LLC (collectively, "L'Oréal" or "defendants"), Olaplex alleges infringement of United States Patent Nos. 9,498,419 ("the '419 patent") and 9,668,954 ("the '954 patent").  D.I. 262 at ¶¶ 90-138.

As outlined by the plaintiffs:

The '419 Patent (D.I. 636-1, Ex. A) and '954 Patent (D.I. 636-1, Ex. B) (collectively, the "Asserted Patents") are generally directed to methods for bleaching hair. The common specification explains that harsh chemicals used during traditional bleaching treatments damage and break hair bonds. D.I. 636-1, Ex. A at 1:31-2:10. Bleaching treatments typically include two components: powder lightener (i.e., bleach powder) and developer (i.e., peroxide). *Id.* at 23:15-18, 49-54. These chemicals remove color by attacking natural and artificial pigments in the hair. *Id.* at 16:48-50. The inventors of the Asserted Patents discovered that certain active agents (e.g., maleic acid or salts thereof) mixed with bleaching treatments will prevent and repair damage to the hair. *Id.* at 2:65-3:35.

D.I. 726 at 2.[1]  Further,

---

[1] Olaplex has asserted claims 1 and 10 of the '419 Patent. Claim 1 of the '419 Patent is reproduced below:

1. A method for bleaching hair comprising:

(a) mixing a formulation comprising an active agent with a bleaching formulation, wherein the active agent has the formula:

or salts thereof; and

(b) applying the mixture to the hair;

wherein the active agent in the mixture is at a concentration ranging from about 0.1% by weight to about 50% by weight; and wherein the mixture does not contain a hair coloring agent.

Olaplex has asserted claims 1, 4, 11-16, 19, 20, and 30 of the '954 Patent. Claim 1 of the '954 Patent is reproduced below:

1. A method for bleaching hair comprising:

(a) mixing a bleach powder and a developer to form a bleaching formulation;

(b) mixing an active agent formulation comprising an active agent with the bleaching formulation to form a mixture, wherein the active agent is maleic acid; and

(c) applying the mixture to the hair;

wherein the active agent in the mixture is at a concentration ranging from about 0.1% by weight to about 50% by weight.

D.I. 726 at 2-3.

Olaplex has accused L'Oréal of directly and indirectly infringing the Asserted Patents through its own use and the sale with instructions for using L'Oréal's three-step system accused products in an infringing manner: the Matrix Bond Ultim8 ("Ultim8"), Redken pH-Bonder ("pHBonder"), and L'Oréal Professionnel Smartbond ("Smartbond") three-step systems (collectively, the "Accused Products"). D.I. 636 ¶¶ 60-61. Each of these products has three treatment steps, including (1) a step 1 product that is used during in-salon hair bleaching treatments, (2) a step 2 product for use shortly after bleaching treatments, and (3) a step 3 product for at-home maintenance between chemical services. D.I. 650 (L'Oréal Answer) ¶¶ 61-68. All the Accused Products list maleic acid as an ingredient and are marketed by L'Oréal for use as a bond builder in connection with chemical treatments for hair that involve a bleaching step.

D.I. 726 at 3-4. The '419 Patent was issued by the United States Patent and Trademark

Office on November 22, 2016. The '954 Patent was issued by the United States Patent

and Trademark Office on June 6, 2017.

As stated by the plaintiffs:

83. The '419 Patent issued from a patent application that was assigned Serial No. 15/087,415 by the U.S. Patent & Trademark Office (USPTO). A series of anonymous submissions were made to the USPTO on August 25, 2016, August 29, 2016, September 14, 2016, and September 23, 2016, which alleged the pending claims could not be allowed.
84. On information and belief, L'Oréal made one or more of those third-party submissions to USPTO in hopes of stopping issuance of the '419 patent.
85. Those third-party submissions were not successful. After the independent patent examiner carefully considered each third-party submission, the '419 patent issued.

D.I. 636 at 24.

As stated by the magistrate judge,

On November 22, 2016, the United States Patent and Trademark Office (the "USPTO") issued United States Patent No. 9,498,419 ("the '419 patent"), entitled "Keratin Treatment Formulations and Methods." The '419 patent was filed on March 31, 2016 on a fast track, and claims priority to United States Provisional Application No. 61/994,709, which was filed on May 16, 2014. The '419 patent is a continuation of parent Application No. 14/713,885, which was filed on May 15, 2015, published on November 19, 2015, and issued as U.S. Patent No. 9,326,926 on May 3, 2016. The '419

> patent lists as inventors Eric D. Pressly and Craig J. Hawker ("the inventors"), and identifies Liqwd, Inc. as the assignee.  The '419 patent describes "[f]ormulations, kits, and methods for rebuilding the disulfide bonds in keratin" to be applied in conjunction with a hair coloring treatment. ('419 patent, Abstract)

D.I. 791 at 1-2.

On January 13, 2017, L'Oréal filed a petition for post-grant review ("PGR") challenging the patentability of all asserted claims of the '419 patent.  D.I. 354 at 4.  On June 27, 2018, the PTAB issued a final written decision finding all asserted claims of the '419 patent unpatentable.  D.I. 339, Ex. A. Olaplex appealed the final written decision to the Federal Circuit.  D.I. 373.  The appeal remains pending.

"United States Patent No. 9,668,954 ("the '954 patent") (together with the '419 patent, the "patents-in-suit") was filed on January 25, 2017 and issued on June 6, 2017.  On April 26, 2017, the USPTO issued a notice of allowance for the claims in the '954 patent.  D.I. 143, Ex. B.  The '954 patent is a continuation of United States Patent Application No. 15/290,593, which is a continuation of the '419 patent.  The '954 patent has the same title, inventors, and specification as the '419 patent.  The active agent element of claim 1 of the '954 patent requires application of a bleaching mixture containing an active agent of maleic acid to the hair.  '954 patent, col. 25:58-67 D.I. 186 at 3; D.I. 791 at 3.

"In late January and early February 2018, L'Oréal filed three PGR petitions challenging the patentability of all claims of the '954 patent (D.I. 354 at 5).  On August 10, 2018, the PTAB instituted PGR proceedings on one of the petitions and denied institution on the remaining two PGR petitions (D.I. 366, Exs. A-C).  A final written decision on the

instituted petition regarding the '954 patent is anticipated in August 2019 (D.I. 385 at 6-13).  D.I. 791 at 3.

In October of 2016 Liquid assigned exclusive license rights to the '518[2] patent to Olaplex so they could jointly enforce the patent rights.  In a litigation in the United Kingdom, representations were allegedly made by plaintiffs that the products do not include ionically bound reactive moieties.  D.I. 650 ¶¶ 227-40.  L'Oréal contends that the Olaplex products do not fall within the scope of the '518 patent despite the fact that they are marked. D.I. 650 ¶ 239-40.

Prior to the launching of its three products, defendants contend that Dean Christal, Olaplex's co-founder, began a media campaign for the three products, stating they could rebuild broken disulfide bonds.  L'Oréal contends Mr. Christal created false burner social media accounts to promote the products and attack the competitors.  L'Oréal also contends Christal offered to pay industry insiders to make claims about the products while concealing their affiliation with Olaplex.

L'Oréal says it did its own testing in 2014 and discovered the maleic in plaintiffs' products.  Then in January of 2015, the parties discussed acquisition of Olaplex.  The parties signed a nondisclosure agreement ("NDA").  L'Oréal approached plaintiffs about the possibility of a purchase of the company.  The plaintiffs disclosed secret and confidential information about these patents.  L'Oréal walked away without making an offer.  Thereafter, L'Oréal developed the Accused Products.  In November of 2015 plaintiffs filed an action in California against L'Oréal for infringement of the '419 patent

---

[2] Liqwd is the owner pursuant to an assignment of patent no. 9,095,518 (the '518 patent).  Liqwd assigned its rights to the '518 patent in October of 2016 to Olaplex to assist with the enforcement of the patent rights. Olaplex markets and sells its three products known as Bond Multiplier No. 1, Bond Perfector No. 2, and Bond Perfector No. 3 (collectively, hereinafter known as ("the Olaplex products"),

and for false advertising.  Defendants responded arguing that Olaplex publicized the filing of the lawsuit to news outlets, revealing confidential information.  That lawsuit was dismissed and this one filed.

## II. STANDARD OF REVIEW

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986).  A party asserting that a fact cannot be-or, alternatively, is-genuinely disputed must support the assertion either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A) & (B).  If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted).  The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more

than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87. Although the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

## B. Infringement

A patent is infringed when a person "without authority makes, uses, offers to sell, or sells any patented invention, within the United States ... during the term of the patent." 35 U.S.C. § 271(a). A two-step analysis is employed in making an infringement determination. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). First, the court must construe the asserted claims to ascertain their meaning and scope. *See id.* Construction of the claims is a question of law subject to de novo review. *See Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998). The trier of fact must then compare the properly construed claims with the accused infringing product. *See Markman*, 52 F.3d at 976. This second step is a question of fact. *See Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998).

"Direct infringement requires a party to perform each and every step or element

of a claimed method or product." *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007), overruled on other grounds by *Akamai Technologies v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). If an accused product does not infringe an independent claim, it also does not infringe any claim depending thereon. *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 n.9 (Fed. Cir. 1989). However, "[o]ne may infringe an independent claim and not infringe a claim dependent on that claim." *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359 (Fed. Cir. 2007) (quoting *Wahpeton Canvas*, 870 F.2d at 1552) (internal quotations omitted). A product that does not literally infringe a patent claim may still infringe under the doctrine of equivalents if the differences between an individual limitation of the claimed invention and an element of the accused product are insubstantial. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 24 (1997). The patent owner has the burden of proving infringement and must meet its burden by a preponderance of the evidence. *See SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988) (citations omitted).

When an accused infringer moves for summary judgment of non-infringement, such relief may be granted only if one or more limitations of the claim in question does not read on an element of the accused product, either literally or under the doctrine of equivalents. *See Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005); *see also TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002) ("Summary judgment of noninfringement is ... appropriate where the patent owner's proof is deficient

in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial").  Thus, summary judgment of non-infringement can only be granted if, after viewing the facts in the light most favorable to the non-movant, there is no genuine issue as to whether the accused product is covered by the claims (as construed by the court).  *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).

"[A] method claim is not directly infringed by the sale of an apparatus even though it is capable of performing only the patented method.  The sale of the apparatus is not a sale of the method.  A method claim is directly infringed only by one practicing the patented method." *Joy Technologies, Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993). Therefore, "the accused infringer must perform all the steps of the claimed method, either personally or through another acting under his direction or control." *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1307 (Fed. Cir. 2012).

With respect to apparatus claims, "to infringe a claim that recites capability and not actual operation, an accused device 'need only be capable of operating' in the described mode." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010) (citing *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991). However, if an apparatus claim requires "software [to] be configured in a particular way to infringe," infringement does not occur merely because the apparatus could be used in an infringing fashion. *Finjan*, 626 F.3d at 1204-05.

C.  Motion to Dismiss

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When considering a

Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008). "[C]ourts use the same standard in ruling on a motion to dismiss a counterclaim under Rule 12(b)(6) as they do in assessing a claim in a complaint." *Identix Pharms., Inc. v. Gilead Sciences, Inc.*, C.A. No. 13-1987-LPS-CJB, 2014 WL 4222902, at *5 (D. Del. Aug. 25, 2014) (citing *Tyco Fire Prods. LP v. Victaulic Co.*, 777 F. Supp. 2d 893, 898-99 (E.D. Pa. 2011)).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

When determining whether dismissal is appropriate, the court must take three steps. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must identify the elements of the claim. *Iqbal*, 556 U.S. at 675. Second, the court must identify and reject conclusory allegations. *Id.* at 678. Third, the court should assume the veracity of the well pleaded factual allegations identified under the first prong of the analysis, and determine whether they are sufficiently alleged to state a claim for relief. *Id.*; *see also Malleus v. George*, 641 F .3d 560, 563 (3d Cir. 2011). The third prong

presents a context-specific inquiry that "draw[s] on [the court's] experience and common sense." *Id.* at 663-64; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203,210 (3d Cir. 2009). As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

## III. DISCUSSION

A. <u>Motion for summary judgment of **non-patent issues** filed by Liqwd, Inc. and Olaplex LLC, D.I. 682; Report and Recommendation of the magistrate judge, D.I. 791, regarding plaintiffs' motion to dismiss, D.I. 665</u>

Plaintiffs move for summary judgment on defendants' claims for false advertising, fraud, breach of contract, and false patent marking. The magistrate judge recently addressed these issues, D.I. 791, pursuant to motions to dismiss the counterclaims of L'Oréal, D.I. 665, filed by the plaintiffs.[3] Defendants filed a Counterclaim against Liqwd

---

[3] The magistrate recommended that:
1.Olaplex's motion to dismiss Count I of L'Oréal's amended counterclaims for alleged violations of the Lanham Act is GRANTED-IN-PART. Specifically, the motion to dismiss Count I is GRANTED with respect to alleged misrepresentations (ii), (iii),

on January 11, 2019.   D.I. 608.   The issues in the motion to dismiss deal with the Counterclaim filed by defendants.   The parties have objected to the report and recommendation.   D.I.'s 802 and 803.   Because the issues in each motion are virtually the same, the Court will address these filings together.   *See* D.I 636 ¶¶ 139-167.

1.   Plaintiffs filed a motion to dismiss seven of L'Oréal's eleven counterclaims on February 22, 2019.[4]

This Court's review of the R&R is governed by 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b).   Pursuant thereto, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made" and "may also receive further evidence or recommit the matter to the magistrate judge with instructions."   28 U.S.C. § 636(b)(1)(C).   Similarly, Rule 72(b) requires de novo review of any recommendation that is "dispositive of a claim or defense of a party."   A Report and Recommendation addressing a Rule 12 Motion to Dismiss is subject to de novo review.   *See Fraunhofer-Gesellschaft Zur Forderung Der Angewandten Forschung E.V. v. Sirius XM Radio Inc.*, 2018 WL 4027028,

---

(vii), (viii), (x), and (xi). The motion to dismiss Count I is also GRANTED with respect to alleged misrepresentations based on conduct occurring prior to July 2016. The motion to dismiss Count I is also GRANTED as to averments of violations of the FTC Act. The motion to dismiss Count I is DENIED in all other respects.
2. Olaplex's motion to dismiss Count II of L'Oréal's amended counterclaims for fraud by false promise is DENIED.
3. Olaplex's motion to dismiss Counts III and IV of L'Oréal's amended counterclaims for breach of contract is DENIED.
4. Olaplex's motion to dismiss Count V of L'Oréal's amended counterclaims for false marking is DENIED.
5. Olaplex's motion to dismiss Counts X and XI of L'Oréal's amended counterclaims for inequitable conduct is GRANTED.
[4] The timing of these two motions is unusual and makes the analysis of the issues more difficult, particularly since trial is scheduled in July 2019.  The Counterclaim was filed in January 2019.  The motion for summary judgment on non-patent issues, D.I. 682, was filed on March 14, 2019.  The motion to dismiss the amended counterclaim, D.I. 665, was filed on February 22, 2019.  The magistrate judge filed a report and recommendation on April 30, 2019, D.I. 791, and objections by each side were filed on May 14, 2019.  D.I. 802 and 803.

at *1 (D. Del. Aug. 23, 2018) (Bataillon, J) (reviewing de novo a Magistrate's Report & Recommendation addressing a Rule 12(b)(6) motion to dismiss).

It is important to note that the magistrate judge addressed these issues from the perspective of a motion dismiss, based on the sufficiency of the pleadings.

The magistrate judge first addressed the Lanham Act (Count 1) claim. D.I. 791 at 9. The Lanham Act establishes civil liability for "[ a ]ny person who, on or in connection with any goods or service ... uses in commerce any ... false or misleading description of fact, or false or misleading representation of fact which ... is likely to cause confusion." 15 U.S.C. § 1125(a)(l)(A). To plead a false advertising claim under the Lanham Act, the counterclaimant must allege: "(1) the [counterclaim] defendant made false or misleading statements as to its own product or another's; (2) the statements actually deceive or at least [have] a tendency to deceive a substantial portion of the intended audience; (3) the deception is material in that it is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Incarcerated Entm 't, LLC v. CNBC LLC*, 331 F. Supp. 3d 352, 362 (D. Del. 2018) (internal quotation marks and citations omitted). "[M]isdescriptions or false representations of specific characteristics of a product, which are actionable under the Lanham Act, are distinguished from puffery, which is not actionable." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 632 F. Supp. 2d 362,366 (D. Del. 2009) (citing *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939,945 (3d Cir. 1993)).

The magistrate judge examined L'Oréal's counterclaim under the Lanham Act, in particular, the eleven allegedly false and deceptive statements by Olaplex. *See* D.I. 791 at 10-11. The Court magistrate judge determined that the claim asserting that L'Oréal's

13

products were "knockoffs" stated a claim as pled in the complaint.  *See Luxpro Corp. v. Apple, Inc.*, 2011 WL 3566616, at *6 (N.D. Cal. Aug. 12, 2011) (denying motion to dismiss Lanham Act claim based on representations that competitor's products were "cheap knockoffs" and "illegal copies").  Next, the magistrate judge denied the motion to dismiss claims iv and ix regarding the ability of plaintiffs' product to rebuild broken disulfide bonds on the basis that this is a motion to dismiss and the court must look at the allegations in the light most favorable to L'Oréal.  Third, with regard to alleged misrepresentations, (vii, viii and x), the magistrate judge recommended that the Court grant the motions to dismiss as the comments complained of are not verifiable statements of fact, but instead are puffery.  *See Robert Bosch*, 632 F. Supp. 2d at 367 (holding that phrases such as "new and improved" "are classic puffery").  Next, the magistrate judge likewise recommended that the eleventh alleged misrepresentation be dismissed for lack of particularity, as there are no who, what, where or when details and further because the claim fails to contain any advertising under the Lanham Act.  *See Reybold Grp. of Cos., Inc. v. Does*, 1-20, 323 F.R.D. 205,210 (D. Del. 2017).  The magistrate judge further determined that the other claims contained in one through 11 are plead with particularity.

The magistrate judge next addressed the alleged misrepresentations in the second through sixth and the ninth claims where plaintiffs argue the claims are outside of the three-year statute of limitations.  The magistrate judge recommended that this Court grant the motion as it pertains to the second and third alleged misrepresentations, as they were made prior to January 11, 2016, resulting in a presumption of prejudice and inexcusable delay.  *See Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.*, 401 F.3d 123, 138 (3rd Cir. 2005).  Further, the magistrate judge concluded that L'Oréal failed to plead

facts sufficient to toll the statute of limitations.  The magistrate judge permitted the fourth, fifth, sixth and ninth alleged misrepresentations to go forward as these are not time-barred.  The magistrate judge then recommended that this Court not deny plaintiffs' motion to dismiss to the extent L'Oréal attempts to assert a cause of action under the FTC Act within the Lanham Act Counterclaim, as there is no private of action under this Act.  The magistrate judge also recommended that the motion be denied as L'Oréal sufficiently pleads reputational harm and loss of sales stemming from plaintiffs' advertising efforts but recommended that alleged false advertising by plaintiff prior to 2016 lacks sufficient nexus between the alleged misrepresentations and injury to L'Oréal.

Count II alleges fraud by false promise, failing to share certain financial data.  A claim of common law fraud requires a showing that:

> (1) the defendant falsely represented or omitted facts that the defendant had a duty to disclose; (2) the defendant knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; ( 4) the plaintiff acted in justifiable reliance on the representation; and (5) the plaintiff was injured by its reliance.

*DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 958 (Del. 2005).  Plaintiffs contend the fraud counterclaim should be dismissed as a matter of law because the factual allegations are superseded by the NDA's signed by the parties.  These NDA's, argue plaintiffs, did not require plaintiffs to give its financial information to defendants.  The magistrate judge found that the NDAs do not supersede Mr. Christal's oral promise to

furnish financial information.  The magistrate judge concluded this was a question of fact at the motion to dismiss stage of the case.

With regard to the motion to dismiss the breach of contract claims, Counts III and IV, the magistrate judge determined that, contrary to plaintiffs' allegations, defendants have standing to sue for breach of the NDA's, as the confidentiality obligations extend to the mutual obligation of all parties.  Likewise, the magistrate judge concluded that the Noerr-Pennington doctrine, which shields parties from those who petition the government or agencies for their grievance, should not be extended to L'Oréal's counterclaims for breach of contract in this case.

Count V alleges false marking.  Section 292 of the Patent Act prohibits marking an article with "the words 'patent applied for,' 'patent pending,' or any word importing that an application for patent has been made, when no application for patent has been made, or if made, is not pending, for the purpose of deceiving the public."  35 U.S.C. § 292(a).  This claim is held to the same pleading standard as Fed. R. Civ. P. 9(b).  To establish a claim for false marking, the claimant must demonstrate two elements: (1) that the defendant marked an unpatented article; and (2) that the defendant intended to deceive the public. *Brinkmeier v. Graco Children's Prods. Inc.*, 767 F. Supp. 2d 488,494 (D. Del. 2011).  Under the America Invents Act ("AIA"), the claimant must also show that "it suffered a competitive injury as a result of the false marking."  *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1373 (Fed. Cir. 2013); *see* 35 U.S.C. § 292(b).  This issue involved whether plaintiffs falsely marked a method patent and whether plaintiff had a duty to mark it.  The magistrate judge determined that questions of fact remain as to whether the Olaplex products are unpatented articles not covered by the '518 patent.

16

The next claim addressed by the magistrate judge involves the marking of an unpatented article. The magistrate judge first found that L'Oréal's false marking allegations are sufficient to satisfy the first requirement of a § 292 claim as are the pleadings related to intent to deceive. The magistrate judge found that L'Oréal, for purposes of a motion to dismiss, has alleged sufficient facts in its counterclaim to show competitive injury.

Plaintiffs argue that defendants have failed to state a claim of inequitable conduct. To plead inequitable conduct "with the requisite particularity under Rule 9(b ), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the [USPTO]." *Senju Pharm. Co.*, 921 F. Supp. 2d 297, 306 (D. Del. 2013) (quoting *Exergen Corp.*, 575 F.3d at 1328). As the Court stated in *Exergen,*

> although "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

*Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328-29 (3rd Cir. 2009). The magistrate judge recommended that the motion to dismiss be granted with regard to Counts X and XI. She determined that the inequitable conduct counterclaims "do not adequately plead that the alleged misrepresentation or material omission was made with the requisite knowledge of falsity or intent to deceive the USPTO." D.I. 791 at 36-37. The magistrate judge found the pleadings to be insufficient.

Plaintiffs object to the report and recommendation of the magistrate judge. Plaintiffs argue the counterclaim should be dismissed in its entirety; that the fraud by false

promise counterclaim must be dismissed because of the express anti-reliance provisions set forth in the NDAs signed by L'Oréal; that the false patent marking claims exist outside of the statute and do not specify the competitive injury; and the breach of contract claim should be dismissed as a restraint on protected lawsuit activity.

Plaintiffs also object arguing that the cause of action pled by L'Oréal under the Lanham Act is plead as a fraud claim.  Thus, the Rule 9(B) standard applies, and the Court must use the heightened pleading standard.  Judge Fallon used the intermediate standard contends plaintiffs, finding the allegations relied on statements but not omissions that were made by Olaplex.  Further, L'Oréal's Lanham Act claim, argues plaintiffs, is totally predicated on nonactionable omissions, such as in Olaplex's alleged failure to disclose agents' and employees' affiliation in an unspecified handful of posts and online comments that L'Oréal claims constitute systemic false advertising.  Plaintiffs further contend that these are threadbare allegations without naming any factual evidence to support the claims.

With regard to the magistrate judge's recommendation that the Court not dismiss the fraud by false promise counterclaim, plaintiffs argue that the thrust of this claim is that Mr. Christal did not provide financial information to L'Oréal.  However, plaintiff contends that there are anti-reliance and integration clauses preventing L'Oréal from establishing justifiable reliance as a matter of law.  The R&R gave inadequate attention to this clause, argues plaintiffs.

Next, plaintiffs object arguing the false patent marking claims are outside of the scope of the statute and inadequate as to the competitive injury.  Plaintiffs argue that under 35 U.S.C. § 292 the false making claim does not apply to method patents.  The

statute talks about "patented articles" where there is no article to mark.  The magistrate judge said this interpretation would lead to an untenable result.  As for competitive injury, plaintiffs contend that this claim must be subjected to Rule 9(b).  The magistrate judge did not hold the defendants to this pleading standard.  Again, plaintiffs contend that the magistrate judge also erred in supporting defendants' breach of contract claims, as such claims are filed because plaintiff sued defendants.  Plaintiffs contend this clearly violates Noerr-Pennings, and L'Oréal is wrongfully using the NDA as a sword, filing these claims as retaliation long after the alleged violations occurred.

Defendants also filed their objections to the report and recommendation.  D.I. 803. First, they claim that Olaplex's alleged misrepresentations prior to January 2016 are not barred by the statute of limitations or laches, as the court failed to apply the discovery rule to the misrepresentations made before January 11, 2016.  Second, they argue that causation was pled as to the misrepresentations, prior to launch.  Third, misrepresentations in (viii) and (x) should not be dismissed; and fourth, the Lanham Act claim based on misrepresentation (xi) should not be dismissed.  The magistrate judge determined that the statements to the media cannot serve as a basis for tolling the discovery rule, as L'Oréal allegedly did not discover those statements were false until much later due to plaintiffs' alleged concealment of documents.  One example, complain defendants, is a comment stated by plaintiffs that Olaplex's products will "never break a client's hair again."  D.I. 650 ¶¶ 3 at 32, 130(iii) at 61.

Next, defendants contend they are entitled at the motion to dismiss stage to offer evidence in support of their laches claims.  The magistrate judge concluded there was inexcusable delay.  Defendants disagree and argue there are no facts to support this

conclusion.  The defendants also argue that the Court erred as a matter of law by applying the three-year statute of limitations to L'Oréal USA's Lanham Act counterclaim contending the court must look to the "principles of equity."  *D'Agostino v. Appliances Buy Phone, Inc.*, 633 F. App'x 88, 90 n.3 (3d Cir. 2015).

Regarding causation, defendants contend that plaintiffs made misrepresentations prior to the launch of defendants' product so it could distort the consumer with phrases such as "knockoffs" when referencing Olaplex's products.  This inhibited defendants' launch they argue, prior to July of 2016.  The date is where defendants argue the magistrate judge erred.

Defendants next argue that misrepresentations (viii) and (x) should not be dismissed.  These are not the kind of advertising and boasting that can be viewed as mere puffery, argues defendants.  Likewise, defendants contend that misrepresentation (xi) should not be dismissed, as it indicates that L'Oréal was copying plaintiffs' technology.

2.  Summary Judgment motion for Non-patent issues filed by Liqwd, D.I. 682

Plaintiffs argue the following:  summary judgment is appropriate on L'Oréal's Lanham Act claim; summary judgment is appropriate as to L'Oréal's fraud claim; summary judgment is appropriate on the breach of contract claims; and summary judgment is appropriate on L'Oréal's claims for false patent marking.  The plaintiffs make the same basic arguments as set forth herein regarding the motion to dismiss.  However, the standard of review is different under a motion for summary judgment.  With regard to the motion to dismiss, the Court reviews the motion to determine if there are sufficient allegations to go forward with that claim or if there are decisions that the Court can make as a matter of law.  As to the summary judgment, the Court will likewise look at decisions

as a matter of law but will also determine if there exists sufficient evidence to create a triable issue of fact for the jury.

The Court will first address the Lanham Act Claim.  Plaintiffs contend that the alleged statements are not actionable as a matter of law.  The Lanham Act requires "false or misleading representation[s] of fact."  15 U.S.C. § 1125(a)(1).  Thus, "only statements of fact capable of being proven false are actionable," whereas opinions and statements marked by "broad, vague and commendatory language" are not.  *Robert Bosch LLC v. Pylon Mfg. Corp.*, 632 F. Supp. 2d 362, 365 (D. Del. 2009).   Determining whether a statement is one "of fact" is a legal question for the Court.  *See Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008).  Defendants argue there is circumstantial evidence to support the Lanham Act Claim.  The Court agrees with the plaintiffs.  First, L'Oréal's Accused Products clearly launched after Olaplex's products.  The use of the word "knockoff" could have multiple meanings.  The Court finds that as a matter of law this statement is puffing and not a factual one.

The alleged statements regarding L'Oréal's products not performing as well as Olaplex's products are likewise puffing and are not statements of fact.  This is the everyday competitive environment of business.  Were we to find these words to be facts, the entire business community will be involved in multiple law suits over what amounts to puffing.  *See Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*, 685 F. Supp. 2d 1001, 1021 (N.D. Cal. 2009) (dismissing where statements that competitor's product was "a real risk you shouldn't take" that did not offer "real interoperability" were not statements of fact); *See, e.g., U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 925-26 (3d Cir. 1990) (language not actionable as "the most innocuous kind of 'puffing'");

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 498-99 (5th Cir. 2000) ("Better Ingredients, Better Pizza" not actionable as a "statement of opinion regarding the superiority of [defendant's] product); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245-46 (9th Cir. 1990) ("lower rates and better services" not actionable); *Nikkal Indus., Ltd. v. Salton, Inc.*, 735 F. Supp. 1227, 1234 n.3 (S.D.N.Y. 1990) (claiming product is "better" not actionable).  The Court finds that Olaplex is entitled to judgment concluding that the alleged misrepresentations (i), (vii), (viii) and (x) are non-actionable under the Lanham Act.  Further, defendants have offered no evidence that these statements have deceived or tended to deceive anyone.  *See Incarcerated*, 331 F. Supp.3d at 362.  When a statement is not literally false, the contestant must bear "the burden of proving actual deception by a preponderance of the evidence [and] cannot obtain relief by arguing how consumers could react; it must show how consumers actually do react." *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 228-29 (3d Cir. 1990)).

L'Oréal's next asserts that plaintiffs violated the Lanham Act by enlisting their employees and two celebrity spokespersons to promote Olaplex without disclosing their relationships with Olaplex.  The Court agrees with plaintiffs that the law does not impose a duty to disclose this information.  *See e.g.,* FTC Section 43(a); *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 640 (S.D.N.Y. 2018) ("As courts have routinely held, the Lanham Act does not impose an affirmative duty of disclosure").  Further, there is no private right of action under the FTC.  *Lokai Holdings*, 306 F. Supp. 3d at 640.  The court stated in Lokai:

> [T]he FTC Guidelines do not [control] because the Lanham Act
> requires an affirmative misrepresentation or an omission that

> renders an affirmative statement false or misleading—not a failure
> to disclose something material. As courts have routinely held, the
> Lanham Act does not impose an affirmative duty of disclosure.
> Accordingly, Lokai's failure to disclose compensation to celebrities
> and influencers for promoting its products is not actionable under
> the Lanham Act.

*Id.* at 639-40.

Further, the Court agrees there is no evidence that the alleged advertising caused injury to the defendants.  Defendants must show economic or reputational injury that flows directly from the alleged deception.  *Lexmark Int'l, Inc. v. Static Ctrl Components, Inc.*, 572 U.S. 118, 133 (2014).  There is a total failure of evidence in this regard. The defendants offer the expert opinion of Ms. Rhonda Harper.  However, much of her testimony concerns conduct a year and a half before L'Oréal's product launched; second, she has no apparent valid methodology for concluding that injury occurred; third, she had no idea how many advertisements were involved; fourth, she did not investigate the potential impact on consumers; and fifth, it appears she worked on this issue for only four days.  There is no foundation for her opinions; there is no evidence of causation; there is no evidence of injury.  The Court finds as a matter of law this claim is without merit.

The Court next turns to defendants' fraud claim.  Defendants apparently state that plaintiffs would sell its business to them when in fact they had other "secret intentions". The Court finds that this claim is far-fetched and not supported by any evidence.  There are no documents; no deposition testimony; nor anything else to support this claim. Plaintiffs shared all their research and trade secrets.  The only thing they did not share, and this according to defendants, was certain financial documents and information.  The contrary appears.  It seems that Olaplex did provide financial information to L'Oréal during this process.  In fact, Mr. Dolden specifically thanked Christal for the financials and asked

follow-up questions.  *See* Ex. Nos. 80, 81 and 83.  There is virtually no evidence of reputational harm and loss of sales due to alleged misrepresentations.  There is an insufficient nexus between all alleged misrepresentations and injury.  Most of the arguments made by the defendants are conclusory and not well-supported by evidence. The Court grants the summary judgment as to this issue, finding there is insufficient evidence whatsoever to support this claim.

The Court now reviews the breach of contract claims.  "When the factual record reveals that plaintiff has suffered no damages as a result of an alleged breach of contract, summary judgment is appropriate."  *Petroleum v. Magellan Terminals Holdings, L.P.*, 2015 WL 3885947, at *12 (Del. Super. Ct. June 23, 2015).  To establish a fact dispute regarding damages, they must "be actual and cannot be 'merely speculative or conjectural.'"  *Id.* (quoting *Laskowski v. Wallis*, 205 A.2d 825, 826 (Del. 1964)); *see also Johnson v. Gov't Employees Ins. Co.*, 2014 WL 2708300, at *1 (D. Del. June 16, 2014) (plaintiff must prove "breach of the contract was the proximate cause of damages"). Defendants have offered no evidence that it suffered damages from these alleged breaches.  The Court will grant the summary judgment on this issue as a matter of law.

Next the Court will address the false marking claim.  The parties argue the issue of false marking on the method patents.  Again, plaintiffs contend there is no duty to mark a product if it is a method claim.  D.I. 666 at 13; *see* 35 U.S.C. § 292 (uses the word "article"); *Bandag, Inc. v. Gerrard Tire Co., Inc.*, 704 F.2d 1578, 1581 (Fed. Cir. 1983). Further, L'Oréal contends that Olaplex falsely marks it products for use under the '518 patent.  However, Claim 1 of the '518 patent is directed to a method treatment for hair. Defendants contend that the false marking claims that use of the Olaplex products do not

24

meet the "ionically bound" requirement of claim 1.   Defendants base this claim on a statement from plaintiffs' U.K. counsel that "dissolution of salts of maleic acid always produces free-floating maleate ions and cations, and … this would have been the result of the process or manufacture of the Olaplex products."  Paunovich Decl., Ex. 2.  The court finds that this statement is insufficient to support defendants' theory.  The statement does not say that the products include only free-floating ions.  It does include them, but it clearly includes other ions.   Further, defendants' expert Dr. Freeman produces no evidence that show the actual composition of these products, in any event.

Finally, the Court finds defendants cannot show competitive injury.   Again, as already stated herein, there is no evidence of injury.  There is no connection by either of defendants' experts, Ms. Harper or Mr. Nolte, that show causation or actual harm.  The Court will grant summary judgment on all these issues as a matter of law.  Defendants have not submitted evidence to contradict this finding.  There are also no material facts in dispute, due to the lack of evidence.  The defendants have stretched arguments to the extreme attempting to create a dispute of material fact.  These allegations are puffing. They are not significant.  Plaintiffs are entitled to summary judgment.

B. <u>Motion for summary judgment as to plaintiffs' claims for misappropriation of trade secrets and breach of contract filed by L'Oréal, D.I. 703</u>

Plaintiffs Third Amended Complaint alleges that on May 19, 2015, Plaintiffs disclosed confidential, trade secret information to L'Oréal USA, Inc. ("L'Oréal USA") which L'Oréal USA then incorporated into its own additive products.   D.I. 636 ¶¶ 47-56. Plaintiffs' claims for trade secret misappropriation under the Defend Trade Secrets Act ("DTSA") and the Delaware Uniform Trade Secrets Act ("DUTSA") and for breach of contract fail on numerous grounds, argue defendants.

"Whether the trade secrets were generally known or readily ascertainable . . . is a question of fact." *SmithKline Beecham Pharms. Co. v. Merck & Co., Inc.*, 766 A.2d 442, 448 (Del. 2000); *see also Joint Stock Soc. v. UDV N.A., Inc.*, 104 F. Supp. 2d 390, 390 (D. Del. 2000) ("determination of whether information constitutes a trade secret is a factual one."); *Project Dev. Group, Inc. v. O.H. Materials Corp.*, 766 F. Supp. 1348, 1355 (W.D. Pa. 1991) ("The question of whether proprietary information constitutes a trade secret is an issue of fact, ordinarily resolved by the fact finder after a full presentation of the evidence"). In order to maintain a claim for trade secret misappropriation, "a plaintiff must provide facts which support its allegation that a defendant actually used those misappropriated trade secrets." *Avaya Inc. v. Cisco Sys., Inc.*, 2011 WL 4962817, at *3 (D.N.J. Oct. 18, 2011) (emphasis in original).

To prevail on a misappropriation of trade secrets claim under the DUTSA, a plaintiff must establish the following:

> The acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means, or alternatively, the disclosure or use of a trade secret of another without express or implied consent by a person who either: (1) acquired the secret by improper means; (2) knew or had reason to know that their knowledge of the trade secret was (A) derived by another who acquired it by improper means, (B) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or (C) acquired by accident or mistake.

*Mattern & Assocs., L.L.C. v. Seidel*, 678 F. Supp. 2d 256, 269 (D. Del. 2010).

Defendants contend that plaintiffs have not properly identified any trade secrets and the alleged trade secrets are in fact not trade secrets. Defendants further argue that the technical trade secrets were public or known to L'Oréal as was the financial and marketing information. Further, defendants contend that no evidence supports that they

26

misappropriated trade secrets causing injury.   Finally, defendants assert that plaintiffs cannot maintain a breach of contract claim.

Plaintiffs argue that defendants have failed to demonstrate the absence of any material fact as to both trade secret misappropriation and breach of contract.[5]   Plaintiffs contend they came up with the first and only way to bleach and treat hair (known as a "bond builder") that repaired damage to the hair during chemical processing.   Plaintiffs contend they had amazing success.

In early 2015 defendants became interested in a possible acquisition of plaintiffs' business.   Plaintiffs contend that they disclosed confidential documents and signed a non-disclosure agreement.   It is clear that during the alleged negotiations that plaintiffs shared substantial information by way of interrogatories; documents; and their Rule 30(b)(6) witness with defendants about their products.   D.I. 706, Ex. B, at 62-74; D.I. 734-3, Ex. 117.   Plaintiffs state this was all a guise so that defendants could gain access to all the research and development and testing regarding this technology.   During this discussion period, plaintiffs provided their lead chemist who answered numerous questions for hours regarding plaintiffs' technology.   After obtaining this information, contend plaintiffs, the defendants failed to make an offer to acquire Olaplex.   *See* Third Amended Complaint, D.I. 636, ¶¶ 37-59.   Defendants contend that they independently developed this same technology.

Plaintiffs further argue that:

Olaplex's chemists discovered that maleic acid, which had previously been used only as a pH balancer in hair-care products, could function as a lower-cost alternative to the bisamino used in the Olaplex Products. *Id.* at ¶ 49. Olaplex filed a series of patent applications describing the use of maleic

---

[5] The Court notes that L'Oréal previously sought a Rule 12 dismissal on the same grounds which this Court denied.   D.I. 186, at 28-31 (R&R); D.I. 234 (adopting R&R).

> acid, instead of bis-amino, as an active agent. *Id.* at ¶ 49. One such
> application, given to L'Oréal during the May 19, 2015 meeting discussed
> below, was a parent application to the Asserted Patents—U.S. Patent Nos.
> 9,498,419 and 9,668,954. The technology claimed by, and the other
> information in, this patent application was not made public in the United
> States until November 2015. *Id.* at ¶ 50.

D.I. 732 at 4.  Plaintiffs contend that defendants began to try to duplicate its products.

Defendants' chemists were told to reverse engineer how Olaplex works, and it was

deemed a top priority.   Defendants were unsuccessful.   Thereafter, they began the

negotiations with plaintiffs for a possible acquisition.   After the May meeting, L'Oréal

developed products containing maleic acid.  In June 2015 defendants tested maleic acid

and determined it performed well.   Thereafter, it began shifting to the use of maleic acid

as an active agent.

Plaintiff contends that L'Oréal then began creating its "me too" products which

included the Matrix Bond Ultim8 product ("Bond Ultim8"), the Redken pH-Bonder product

("pH-Bonder"), and the L'Oréal Professional Smartbond product ("Smartbond").   Since

late 2014, L'Oréal distributed Olaplex in the United States.   Thus, it had valuable

commercial information about the success of Olaplex in the marketplace.   However, all

three of Olaplex's products (Bond Multiplier, Bond Perfector, and Hair Perfector) are

patent protected.

The Court finds that the Plaintiff has established sufficient facts to support a prima

facia trade secrets claim notwithstanding the opinion expressed by Defendant's expert,

Dr. Schultz. .

Dr. Schultz's was a previous vice president of research and development from

1992-1998 for L'Oréal.  He is also a named inventor on five patents for L'Oréal.   He is

designated in this case as defendants' expert.[6]   The Court agrees that generally that a

battle between experts is one for the jury.[7]   As stated by Pooley,

> A pending patent application, not yet published, can derive great value
> from its secrecy. Not only can it reveal to a competitor the company's
> general direction of research, it can be (mis)used to create an advance
> design of a non-infringing product, perhaps resulting in patentable
> improvements owned by the competitor.

Pooley Treatise § 3.01[1][a] n.17 (emphasis added).  Further,

> Information will not be denied trade secret status merely because each
> bit of it can be found somewhere in the public domain. Courts have
> consistently held that there can be discovery and value in the act of
> combining available ideas and data into something useful.

Pooley Treatise § 4.03[2] (citations omitted) (emphasis added).

The Court concludes that defendants' motion for summary judgment must be

denied.  The plaintiffs have clearly identified trade secrets.  The Court finds there is

substantial evidence that plaintiffs had trade secrets, including the issues surrounding

new uses of maleic acid and its testing methods.  The Court has already determined that

the arguments by L'Oréal regarding marketing claims are primarily puffing, lack causation

to injury, and lack sufficient evidence to support the claim.  Accordingly, L'Oréal's motion

for summary judgment is denied.

C.   Motion for summary judgment of invalidity filed by defendants, D.I. 710

Patentees must provide "a written description of the invention, and of the

---

[6] Plaintiffs have moved to exclude his opinion.  The Court reviews it to the extent it is relevant for this motion.
[7] See Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co., 10 F.3d 144, 148 (3d Cir. 1993) ("Summary judgment is inappropriate when a case will turn on credibility determinations."); Dr. Douglas Schoon, plaintiffs' expert, rebuts each of defendants'' expert opinions. Transcenic, Inc. v. Google, Inc., 2014 WL 7275835, at *2 (D. Del. Dec. 22, 2014) ("[S]ummary judgment motions present a 'battle of the experts' that is not amenable to resolution prior to the presentation of evidence, including testimony") (collecting cases).

manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same." 35 U.S.C. § 112(a). The Federal Circuit has "held that a sufficient description of a genus requires the disclosure of either a representative number of species falling within the scope of the genus or structural features common to the members of the genus so that one of skill in the art can 'visualize or recognize' the members of the genus." *Ariad*, 598 F.3d 1336 at 1350. This written description "must clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Id.* at 1351.

Defendants move for summary judgment claiming invalidity for lack of sufficient written description. Defendants contend that this applies to the '954 patent, asserted claims 14-16, and '419, claim 1. Further, they contend that the asserted claims do not have adequate written description of the claim applying mixture containing an active ingredient to the hair.

Defendants argue that the broad ranges for hair breakage reduction contained in the '954 patent (at least 5, 10% and 20%) are not sufficiently described. *See Eiselstein v. Frank*, 52 F.3d 1035, 1040 (Fed. Cir. 1995) (holding a specification's description of 45 to 55 percent insufficient written description support for a claimed range of 50 to 60 percent); *Application of Wertheim*, 541 F.2d 257, 263-264 (C.C.P.A. 1976) (holding a disclosed range of 25-60% inadequate support for "at least 35%"). Defendants argue that this range could not be determined by the jury as it is not fully supported by the written description of the patents.

The phrase "salts thereof" (salts of the maleic acid), argue defendants, is unknown in the art and not explained in the '419 patent.  Defendants contend that "salts thereof" limitation in claim 1 of the '419 patent must include the "simple salts" stated in the specification.  This meaning, argues defendants, is not conveyed in the specification so that a reasonable juror can find there is an adequate written description in claims 1 and 10.  There is, argues defendants, no description of "simple salts" in the specifications.  See *Regents of the Univ. of California v. Eli Lilly & Co.*, 119 F.3d 1559, 1568 (Fed. Cir. 1997) ("naming a type of material generally known to exist, in the absence of knowledge as to what that material consists of, is not a description of that material"); *Bos. Sci. Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1364 (Fed. Cir. 2011) ("ipsis verbis disclosure of a claimed genus" is insufficient).

Last, defendants contend that there is insufficient description of the claim "applying a mixture containing the active agent for hair."  They argue that "under the requirements of the claims and this Court's preliminary claim construction, 'the mixture' that is applied to the hair must contain 'the active agent,' which is free acid having the nonionic structure. But, as explained below, the specifications of the Asserted Patents provide no support for such claimed features."  D.I. 711 at 17.

The Court, after reviewing the submitted evidence, the arguments of the parties and the relevant caselaw, finds that the motion for summary judgment must be denied. The prior claims constructions as set forth by the magistrate judge and affirmed by this Court are conclusive as to this claim.  The plaintiffs have adequately identified the "hair breakage" written descriptions.[8]  The claim language "salt thereof" has a plain meaning

---

[8] In particular, the magistrate judge stated, and this Court adopted the following:
The specification of the '954 patent provides sufficient guidance regarding

as found previously by the Court, and it will not disturb that determination.  D.I. 602 a 20-22.  Likewise, the Court has also determined prior claim constructions as to "the mixture" and "the active agent."  *Id.*  The magistrate judge also found that "there is an industry standard for measuring decreases in hair breakage [embodied in the claims] which is consistent with the method described in the specification."  *Id.* at 19 (citing *Wellman v. Eastman*, 642 F.3d 1355, 1367 (Fed. Cir. 2011) ("Well known industry standards need not be repeated in a patent")).  Further, the claim language recites "salts thereof."  In addition, Dr. Freeman acknowledges that the claim term "salts" in the '419 Patent claim 1 is well understood and has plain meaning.  D.I. 460, Ex. 1 ("October Freeman Tr.") at 167:19-25, 168:8-23, 169:17-20.  The '419 patent does in fact disclose and describe "salts" of maleic acid that is used as the active agent in this invention.  Plaintiffs' expert Dr. Borish supports these interpretations.  The Court agrees with the plaintiff that a summary judgment motion is not a way to revisit losing claim constructions previously decided by the Court.

For the reasons stated herein, the summary judgment motion is denied.

---

evaluating hair breakage … . Example 4 in the specification of the '954 patent discloses the comparison between treated and untreated hair samples from the same individual. ('954 patent, col. 23:18-51) The specification explains that the two hair samples are cut into ½ inch wide wefts, coated with a bleaching mixture, and washed with shampoo and air dried after the bleaching period. (*Id.*) The subsequent comparison of the swatches revealed no discernable breakage on the swatch treated with the bleaching mixture, as compared to breakage and fraying on the control swatch treated with bleaching formulation alone. (*Id.*) The record reflects that there is an industry standard for measuring decreases in hair breakage which is consistent with the method described in the specification. (D.I. 426, Ex. 20 at 35 n.25; Ex. 28 at 445) Specifically, the method requires treating tresses with a conditioning treatment to reduce breakage and comparing them to unconditioned tresses after multiple rounds of grooming and the counting of broken fibers. (*Id.*, Ex. 28 at 445) This evidence supports Olaplex's position that a person of ordinary skill in the art would know what test to use based on the industry standard.

D.I. 602 at 18-19 (emphases added).

D.   Motion for summary judgment on non-infringement by Defendants, D.I. 712

When an accused infringer moves for summary judgment of non-infringement, such relief may be granted only if one or more limitations of the claim in question does not read on an element of the accused product, either literally or under the doctrine of equivalents.  *See Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005).  The Court will deny the motion as a matter of law for the reasons set forth herein.

Defendants argue that the Accused Products do not have "the Active Agent" required by the asserted claims under the claim construction.  The claim construction requires in Claim 1 of the '419 and '954 patents that the active agent be free acid having the nonionic structure.  Defendants also argue that a reasonable juror could not find infringement, because the accused uses, and products do not include the active agent as required by the asserted claims.

In response, plaintiffs argue that the use of the word "comprising" allows for more than one active agent; that there is no dispute that the Accused Products include "active agent" in the form of a "free acid having a nonionic structure"; that defendants incorrectly interpret the claim language; and that use of the Accused products includes "applying the mixture to the hair."  In short, plaintiffs argue there is no genuine dispute of material facts, only legal disputes, which the Court can decide on summary judgment.  Accordingly, the plaintiffs ask this Court to deny defendants' motion for summary judgment and grant plaintiffs' motion for summary judgment.

Plaintiffs also argue that defendants' argument that the claimed formulation is restricted to a singular active agent that cannot include other alleged active agents is incorrect as a matter of law.  Again, as previously stated, the word "comprising" allows for

33

one or more active agents, contends plaintiffs.  *See Vivid Techs., Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 811 (Fed Cir. 1999) (the word "comprising" means that "claims do not exclude the presence in the accused apparatus or method of factors in addition to those explicitly recited").

The Court agrees that the law supports the definition of "comprising" as set forth by the plaintiff.  *See, e.g., Crystal Semiconductor Corp. v. TriTech Microelectronics Intern., Inc.*, 246 F.3d 1336, 1350-51 (Fed Cir. 2001) ("Because claim 4 uses 'comprising,' it encompasses more than one clock … Similarly, the article 'a' in 'a first clock signal' generally suggests one or more clocks."); *see also Abbott Labs. v. Baxter Pharma. Prods.*, 334 F.3d 1274, 1281 (Fed. Cir. 2003) ("[A]n indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising'").  *See Crystal Semi.*, 246 F.3d at 1350-51 (explaining that the term "comprising" allows for additional elements "unless the written description or the prosecution history clearly limits [the] claim [] to its recited elements"); *Transcenic, Inc. v. Google Inc.*, 7 F. Supp. 3d 405, 413 (D. Del. 2013) (refusing to give "a database" a "singular interpretation," because the patentee had not evinced a clear intent to do so). The Court finds that the motion to restrict the claims to a single active agent is denied.

The Court likewise agrees that use of the accused products includes "applying the mixture to the hair" as a matter of law.  Defendants contend that the maleic acid is "neutralized" when applied to the hair.  Therefore, the there is no infringement.  The Court disagrees and finds as a matter of law that the Accused Products meet the step of applying the mixture to the hair.  The Court already rejected this argument in its order on

claim construction.   D.I. 602 at 6-8; D.I. 460 at 1-6 (plaintiffs' discussion of the PTAB

findings).  As long as the mixture is applied to the hair, the step is satisfied.

Plaintiff then argues:

L'Oréal's next argument is that the Step 2 and Step 3 of the Accused Products are not part of a "method for bleaching hair" because the bleaching formulation is rinsed from a user's hair prior to application of Step 2 and Step 3. As a result, L'Oréal argues that Olaplex should not be able to rely on the use of Step 2 and Step 3 to meet the additional limitations of dependent claims 12-16, 19, and 20 of the '954 Patent. This is another improper claim construction argument that the Court should reject as a matter of law. *See* D.I. 726 at 17-19.

D.I. 757 at 13.   Plaintiffs point out that nothing in the claim language states that the

"method for bleaching hair" ends once the mixture is applied to the hair.  On the contrary,

argues plaintiffs, the claim language contemplates one or all of the steps including

shampooing, rinsing and conditioning the hair.  Defendants offer no evidence that the

claims or specifications narrow the definition of the "method of bleaching hair."  The Court

finds the "method of bleaching hair" set forth in claim 1 of the '954 patent includes these

additional steps.[9]

Last, plaintiffs contend they have offered irrefutable circumstantial evidence that

defendants directly infringed on their patent.  In particular, plaintiffs state that they have

submitted detailed and undisputed evidence that defendants instruct the end users how

to use the Accused Product causing infringement.   *See* generally D.I. 726 at 5-19.

Plaintiffs ask the Court to deny defendants' motion for summary judgment of no induced

infringement and grant plaintiffs' motion finding inducement (discussed hereinafter).  The

Court finds as a matter of law, for the reasons stated herein, that defendant has no claim

for non-infringement/inducement and denies defendants' motion for summary judgment.

---

[9] Plaintiffs agree that infringement does not occur in treatments without the bleaching step.   Consequently, this is a nonissue.

E. <u>Motion for summary judgment on patent issues filed by Liqwd, D.I. 717</u>

Under 35 U.S.C. § 271(a), "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." "To infringe a method claim, a person must have practiced all steps of the claimed method." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009). "[A] finding of infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period." *Id.* "The patentee must prove infringement by a preponderance of the evidence." *Highland Tank and Mfg. Co. v. PS Intern., Inc.*, 742 F. Supp.2d 722, 727 (W.D. Penn. 2010).

As set forth in 35 U.S.C. § 271(b), "Whoever actively induces infringement of a patent shall be liable as an infringer." Induced infringement requires a party show direct infringement. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S.Ct. 2111, 2117 (2014). "The patentee must also show that the alleged infringer possessed the requisite intent to induce infringement," and as expressed by the Federal Circuit, "requires that the alleged infringer knew or should have known his actions would induce actual infringements." *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 845 F.3d 1357, 1364 (Fed. Cir. 2017) (internal quotations omitted). Circumstantial evidence may be relied upon to prove specific intent. *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1060 (Fed. Cir. 2010). "Inducement can be found where there is evidence of active steps taken to encourage direct infringement, which can in turn be found in advertising an infringing use or instructing how to engage in an infringing use." *Takeda Pharm. U.S.A., Inc. v. West-*

*Ward Pharm. Corp.*, 785 F.3d 625, 630-31 (Fed. Cir. 2015) (internal formatting and quotations omitted); *Barry v. Medtronic, Inc.*, 914 F.3d 1310, 1334 (Fed. Cir. 2019).

Plaintiffs contend that L'Oréal directly infringes and induces infringement on both the '419 patent and the '954 Patent. The Court has carefully reviewed the record, including the briefs of the parties and the relevant evidence as well as the legal standards appropriate to these issues. The Court concludes that the motion for summary judgment filed by the plaintiffs must be granted.

Plaintiff contends that L'Oréal directly infringes each of the asserted claims as used in the Accused Products, and indirectly infringes with the knowledge and intent that L'Oréal's customers infringe through the sales of the Accused Products and by instructing the customers how to infringe the Asserted patents. The Court has already concluded herein and previously that defendants attempted to change the claim constructions and to allow their expert Dr. Benny Freeman to rely on such changes.

Plaintiff contends that L'Oréal's use of the Accused Products directly infringes claims 1 and 10 of the '419 Patent, through its Redken Brand. L'Oréal employees 600 people who demonstrate how to use the accused products as instructed with the bleaching treatments. D.I. 724, Paunovich Decl., Ex. 27 ("Morris Tr.") at p. 517 of 680, 68:11-69:17; D.I. 725, attach. 2, Ex. 63; Ex. 56. There is an education team that assists in this regard. Declaration of Joseph M. Paunovich ("Paunovich Decl."), D.I. 724, Ex. 25 ("Marino Tr.") at p. 492 of 680, 11:20-13:4, 18:4-13, 19:4-9, 57:4-18; 57; Ex. 24; Ex. 53. D.I. 725, Paunovich Decl., Ex. 84 ("Schiraldi December Tr.") at 223:25-224:21, Ex. 56, at p. 68 of 184. Plaintiffs' product contains maleic acid as does defendants. *Barry v.*

*Medtronic*, 914 F.3d 1320 (inducement found where defendants had trained surgeons to use vertebrae alignment kits in an infringing manner).

Plaintiffs argue that there is not a single genuine dispute of material fact on the issue of patent infringement.  There is direct evidence and circumstantial evidence of the infringing uses of the Accused Products contends plaintiffs.  Second, as discussed herein numerous times, L'Oréal uses the claim construction arguments to assert their arguments that certain limitations are missing from the Accused Products.  The Court has denied the attempts to reconfigure the claims constructions.  The Court finds in favor of the plaintiffs on both of these legal disputes.

Defendants contend that plaintiffs have failed to show infringement.  For example, defendants argue that the plaintiffs have failed to show that the Accused Uses meet the claim constructions that were adopted in the R&R, such as the "bleaching formulation" and "bleach powder."  Defendants argue that plaintiffs cannot, even with the help of their expert Dr. Edward Borish, establish the weight percentage of the "active agent" as set forth in the asserted claims and as construed by the magistrate judge.  D.I. 602 at 10-11, 13.

Defendants next assert that plaintiffs have failed to connect the Accused Uses and the steps of the asserted method claims.  Defendants contend that plaintiffs rely on bottle labels and instructions; demonstrations of how to use the Accused Products; and videos.  The Accused Products, argue defendants, do not infringe any claim of the '419 and '954 Patents.  Defendants reiterate the same arguments already determined by the Court regarding maleic acid or salts thereof.

38

With regard to induced infringement, defendants contend that plaintiffs failed to show direct infringement in the first instance, so there can be no indirect infringement. *See Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1364 (Fed. Cir. 2016) ("indirect infringement requires knowledge of the underlying direct infringement—not merely the knowledge of the existence of the patent"). *See* D.I. 757 at 17-20 (detailing evidence of infringement by third parties). *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1362-63 (Fed. Cir. 2006) (disagreeing with the argument that "Golden Blount could not rely on the instruction sheets to prove acts of direct infringement by end-users").

As discussed above, during the "sale negotiations" plaintiffs shared its secrets with defendants. Defendants made no offer to purchase plaintiffs' business. However, within a matter of weeks or months, defendants began selling the same product as plaintiff. This is sufficient to support a claim for direct infringement.

The Court has already ruled that that the term "comprising" permits plaintiffs to have additional active agents. The Accused Products clearly include maleic acid as an active agent. There is no evidence that plaintiffs are restricted to just this active agent. The claim language requires "a formulation comprising an active agent" in the form of maleic acid or salts thereof, but it does not restrict the formulation from including other ingredients, such as additional active agents. D.I. 757 at 2-3. Again, the Court has already discussed and identified the meaning of the word "comprising." As discussed herein, the Court will not permit modification of claim constructions already decided.

"Hair coloring agent" has been definitively and finally construed by the Federal Circuit to mean "a customary haircoloring composition that is present in the mixture in an amount that, when the mixture is applied to hair, results in hair coloring, judged in the

usual way—by visual inspection." *Liqwd, Inc. v. L'Oréal USA, Inc.*, 720 Fed. Appx. 623, 627 (Fed. Cir. 2018).  "This is in contrast to common agents that may be used to whiten or color a hair care product, but do not change the color or tone of hair when the hair care formulation is applied to hair based on visual inspection." *Id.* (emphasis in original).  As such, the Federal Circuit's construction stands as law of the case.

Defendants use packaging instructions to show how the Accused Products are intended to use in "lightening" services, which refers to bleaching.  D.I. 725, Ex. 54 at -867 ("Step 1: Bond Ultim8 Amplifier treatment helps prevent breakage during lightening services."); Ex. 55 at -872 (describing pH-Bonder #1 as a "promot[ing] bond integrity during a professional hair color of lightening service"); Ex. 53 at -863 (directing users to mix Smartbond Step 1 with lightener and developer).  The Accused Product also involves "applying the mixture to the hair."  Further, as stated herein, the Accused Products use the maleic acid at its claimed concentration values.  The claimed "method of bleaching hair" does include application of a rinse and applying a second active agent formulation. Defendants' argument that in Steps 2 and 3 are not a "method for bleaching hair" because there is a rinse after Step 1, is without merit.  Again, this is an attempt to change the claim construction.

The Court further agrees upon review that the Accused Product meets each and every step of the method claims 1-10.

With regard to the '954 Patent, the Court likewise concludes that L'Oréal clearly infringes plaintiffs' patent.  L'Oréal uses the Accused Products for bleaching hair; it mixes a bleach powder to form the bleaching formulation; it mixes an active agent formulation comprising an active agent with the bleaching formulation to form a mixture with the active

agent being maleic acid; the mixture is applied to the hair; and the active agent is at a concentration ranging from the identified weight.  Likewise, the Accused Product meets the limitation of Claim 4 that "the method of claim 1, wherein the active agent is present in an amount ranging from about 1 wt % to about 15 wt % of the active agent formulation" with maleic concentration less than 10.7%.  For the same reason the Accused Products meet this requirement.

With regard to Claims 12, 13, 19 and 20, the Court finds the Accused Products satisfies each of these limitations for the same reasons set forth herein.  The Accused Product also meets the breakage decrease requirements of Claim 14.  Likewise, under Claim 15, L'Oréal's Accused Products do not contain dye precursors.

For all the reasons stated herein, the Court finds that L'Oréal induces infringement of the '954 Patent as a matter of law.  Accordingly, the Court will grant plaintiffs' motion for summary judgment for '419 Patent claims 1 and10 and '954 Patent claims 1, 4, 11-16, 19, 20 and 30.

THEREFORE, THE COURT ORDERS:

1.  Motion for summary judgment of non-patent issues filed by Liqwd, Inc. and Olaplex LLC, D.I. 682 is granted;

2.  Motion for summary judgment as to plaintiffs' claims for misappropriation of trade secrets and breach of contract filed by L'Oréal, D.I. 703 is denied;

3.  Motion for summary judgment of invalidity filed by L'Oréal, D.I. 710 is denied;

4.  Motion for summary judgment of non-infringement filed by L'Oréal, D.I. 712 is denied;

5. Motion for summary judgment on patent issues filed by Liqwd, D.I. 717, including a finding that That L'Oréal has infringed, and/or induced the infringement of one or more claims of the Asserted Patents, is granted;

6. Plaintiffs' motion to dismiss, D.I. 665, the counterclaims of L'Oréal is granted in part and denied in part as is consistent with the summary judgment ruling of this Court;

7. The report and recommendation of the magistrate judge, D.I. 791, is denied as moot;

8. The objection filed by L'Oréal, D.I. 803, is overruled; and

9. The objection filed by Liqwd, D.I. 802, is overruled.


Ordered this 25th day of June 2019.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge