## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIQWD, INC. and OLAPLEX LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-14-JFB-SRF |
| | ) | |
| L'ORÉAL USA, INC., L'ORÉAL USA | ) | **REDACTED PUBLIC VERSION** |
| PRODUCTS, INC., L'ORÉAL USA S/D, | ) | |
| INC. and REDKEN 5TH AVENUE NYC, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## SUPPLEMENTAL MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER FEDERAL RULE OF CIVIL PROCEDURE 50(A)

Of Counsel:

Dennis S. Ellis
Katherine F. Murray
Adam M. Reich
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
(213) 683-6000

Naveen Modi
Joseph E. Palys
Daniel Zeilberger
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1990

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Dated:  August 11, 2019

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Katharine L. Mowery (#5629)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
mowery@rlf.com

***Attorneys for Defendants***
*L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc. and Redken 5th Avenue NYC, LLC*

1

## I.      INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 50(a), and further to the oral arguments made

on August 9, 2019,[1] Defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA

S/D, Inc. and Redken 5th Avenue NYC, LLC (collectively, "Defendants") hereby move for

judgment as a matter of law on willful patent infringement, trade secret misappropriation, breach

of contract, and lost profit damages.

## II.     LEGAL STANDARD FOR JMOL

Federal Rule of Civil Procedure 50(a) provides for the grant of JMOL at the close of a

plaintiff's case if a "reasonable jury would not have a legally sufficient evidentiary basis to find"

for the plaintiff.  In the Third Circuit, when determining whether to grant a JMOL motion "[t]the

question is not whether there is literally no evidence supporting the party against whom the

motion is directed but whether there is evidence upon which the jury could properly find a

verdict for that party."  *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993)

(citations omitted).  "Although judgment as a matter of law should be granted sparingly," it is

mandated "where the record is critically deficient of the minimum quantum of evidence"

necessary to support a jury verdict.  *Eshelman v. Agere Sys. Inc.*, 554 F.3d 426, 433 (3d Cir.

2009) (internal quotation marks omitted).

## III.    JMOL ON WILLFUL PATENT INFRINGEMENT

In order for the jury to find willfulness, Plaintiffs had to prove that Defendants' "conduct

rose to the level of wanton, malicious, and bad-faith behavior."  *SRI Int'l, Inc. v. Cisco Sys., Inc.*,

---

[1] In addition to the arguments raised herein, Defendants also moved for judgment as a matter of law with respect to their invalidity defense on August 9, 2019.  The Court overruled Defendants' motion in this regard and did not want to hear argument on this issue.  (Trial Tr. at 1588:20-1589:25.)  As such, Defendants do not present their invalidity arguments here, but would be happy to do so, should the Court request additional briefing on this issue.

--- F.3d ----, 2019 WL 3162421, at *9 (Fed. Cir. July 12, 2019).  Plaintiffs have offered no

evidence whatsoever as to Defendants' state of mind on infringement to show willfulness.[2]

Rather, it is Defendants who have offered evidence demonstrating that any infringement of the

Asserted Patents could not have been willful.  (Trial Tr. at 1427:4-8 (Leslie Marino, General

Manager of Redken, testifying that she was not aware of Olaplex's '419 patent before the instant

lawsuit was filed).)  Indeed, Roger Dolden testified regarding JTX 171 that L'Oréal USA's

Research and Innovation department believed they had "FTO" (freedom to operate), and that did

not change at any time even as he departed the company in December 2016, one month after the

'419 patent had issued.  (Trial Tr. at 995:12-996:10.)  As this is the only evidence in the record

on the issue of willfulness, Defendants are entitled to JMOL on this issue.

Throughout this case, Plaintiffs have attempted to bootstrap the Court's summary

judgment finding of infringement to into a willfulness finding.  But infringement does not

inevitably lead to a finding of willfulness.  In fact, infringement does not typically lead to a

finding of willfulness.  The Court made the point that the decision in *Exmark Manufacturing

Company Inc. v. Briggs & Stratton Power Products Group, LLC*, allows for a willfulness finding

if copying is known.  2016 WL 2772123, *4 (D. Neb. May 11, 2016).  The decision in *Exmark* is

inapposite.  Here, there is no copying of a patent since the patents do not cover the products.

---

[2] To the extent Plaintiffs assert that JTX 2034 is evidence of Defendants' willfulness, as they did in closing (Trial Tr. at 1600:6-16), this proves the point.  JTX 2034 is an email from Dean Christal, founder of Olaplex, to Frederic Roze of L'Oréal USA, attaching a letter stating that Olaplex believed the L'Oréal USA products infringed on Olaplex's intellectual property rights. However, this email, **dated July 14, 2016, predates the issuance of the Asserted Patents**, and thus cannot be evidence of willfulness.  Indeed, as explained above, Defendants put on evidence demonstrating that any infringement of the Asserted Patents was not willful.  (*See, e.g.*, Trial Tr. at 995:12-996:10 (Roger Dolden, Executive Vice President of L'Oréal USA through December 2016, testifying that no one at L'Oréal USA ever expressed any concern that the L'Oréal USA products were infringing on patents belonging to Olaplex).)

Therefore, allowing the issue of willful infringement to go to the jury would be particularly prejudicial here, as the Court has precluded Defendants from presenting to the Jury invalidity decisions issued by the Patent Trial and Appeal Board that bear directly on state of mind so as to rebut willfulness, and there is no evidence in the record to support such a finding.  (D.I. 908 at 2.)

## IV.        JMOL ON TRADE SECRET MISAPPROPRIATION

### A.        Definition of Trade Secrets

Plaintiffs have failed to identify their trade secrets with adequate particularity before or at trial, and thus any proof of misappropriation cannot support a verdict as to unidentified trade secrets.[3]  To the contrary, during its case, Plaintiffs' expert, Mr. Schoon, only pointed to four *categories* of *potential* trade secrets: (1) patent assets; (2) testing and know how; (3) business information; and (4) dead-ends and trial and errors.  (Trial Tr. at 696:7-18.)  However, neither Mr. Schoon nor anyone else identified with any particularity any trade secret within these categories.  JMOL is warranted on that ground alone.  *See Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164–65 (9th Cir. 1998) ("The plaintiff should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade.")  (internal citation and quotation omitted); *see also Jostens, Inc. v. Nat'l Comput. Sys., Inc.*, 318 N.W.2d 691, 699 (Minn. 1982); *Struthers Sci. & Int'l Corp. v. Gen. Foods Corp.*, 51 F.R.D. 149, 153 (D. Del. 1970) (requiring greater specificity in interrogatories regarding alleged trade secret in combination of elements); *Digital Reasoning Sys., Inc. v. Knowledge Extraction Tools, LLC*,

---

[3] Defendants initial Motion for Judgment as a Matter of Law showed that Plaintiffs had also failed to identify what, if any, compilation or combination of otherwise known elements was being asserted as a trade secret.  (D.I. 1051 at 3.)  Plaintiffs have since affirmatively stated that they are not pursuing such a theory at trial.  (Trial Tr. at 1315:10-1316:18.)

2008 WL 11340381 (C.D. Cal. Aug. 25, 2008) (granting summary judgment for failure to define trade secrets).

For example, as the Court noted, there was no testimony about how the financial information provided qualified as a trade secret.  (Trial Tr. at 1114:7-1117:17; *see also id.* (the Court requesting identification of any testimony from Mr. Schoon regarding the head start that L'Oréal USA purportedly received due to Olaplex handing over its financial information); D.I. 1052 at 17 (Olaplex citing no such testimony).)  Likewise, there was only conclusory testimony from Mr. Christal and Mr. Schoon regarding everything other than the alleged unpublished patent application.  This is wholly insufficient to satisfy Olaplex's burden of identification.

## B.  Existence of Trade Secrets

To the extent the Court finds that Plaintiffs have presented evidence from which a reasonable jury could identify a trade secret with particularity, Plaintiffs have also failed to adduce sufficient proof that such information actually qualified as a trade secret at the time of the alleged misappropriation.  Under Delaware law or federal law, Plaintiffs must prove by a preponderance of evidence that the information is [1] secret, and that the information "[2] [d]erives independent economic value, actual or potential, [3] from not being generally known to, and [4] not being readily ascertainable by proper means by, [5] other persons who can obtain economic value from its disclosure or use; and [6] [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy.'"  *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 897 (Del. 2002) (quoting 6 Del. Code § 2001(4) (brackets added)); 18 U.S.C. § 1839(3).  Plaintiffs have failed to offer any evidence as to whether any of the yet-to-be-disclosed trade secrets were

generally known or readily ascertainable by proper means.[4]

### C.   Misappropriation

Under Delaware or federal law, misappropriation can be proven in one of two ways. First, Plaintiffs may prove that Defendants [1] acquired [2] a trade secret [3] knowing or with reason to know that [4] the trade secret was acquired by improper means.  6 Del. Code § 2001(2)a; 18 U.S.C. § 1839(5)(A).  However, Plaintiffs have not argued that Defendants misappropriated any trade secrets by improper acquisition.  Plaintiffs may also prove that Defendants misappropriated a trade secret by [1] using or disclosing it [2] without consent of its owner if one or more of the following circumstances is present:  [3] acquired the trade secret by improper means; [4] acquired the trade secret under a duty of confidence; [5] acquired the trade secret from another person who had acquired it by improper means or breached a duty of confidence; or [6] before a material change of position, knew or had reason to know that the information was a trade secret acquired through an accident or mistake (unless the accident or mistake constituted a failure by the owner to make reasonable efforts to maintain secrecy).  6 Del. Code § 2001(2)b; 18 U.S.C. § 1839(5)(B).

Defendants are entitled to JMOL on Plaintiffs' theory of misappropriation by improper use or disclosure.  There is no evidence of disclosure or use of any identified trade secret.  In fact, while Plaintiffs' expert, Mr. Douglas Schoon, asserted that L'Oréal USA gained a 20 to 32 month head start, he provided no explanation whatsoever for this conclusion.  (*See* Trial Tr. at 691:12-20.)  He never explained to the jury why a 20 to 32 month head start finding was

---

[4] As Dr. Freeman explained, the technical aspects in the asserted patents, which have a common specification with the patent application that was allegedly shared at the May 19, 2015 meeting, were all well known.  For this additional reason, any information Plaintiffs try to point to within the patent application would not qualify as a trade secret, as it would either be generally known or readily ascertainable by proper means.

appropriate, nor did he provide any evidence to support a finding that Defendants obtained a 20 to 32 month head start.  Worse, even when granted a second chance by the Court to opine on how he determined his head start (*id.* at 777:10-13), Mr. Schoon simply *applied* the 20 to 32 month period—again without explanation as to how he *arrived* at the 20 to 32 month period—to provide the jury with a baseless damages end date of March 2018.  (*Id.* at 778:3-8.)  Such conclusory expert statements cannot support any reasonable jury verdict and, indeed, create undue risk of improperly influencing the jury into an erroneous result.

### D. Independent Development

Defendants are also entitled to judgment as a matter of law with respect to Plaintiffs' trade secrets claim, as Plaintiffs have put on no evidence demonstrating actual misappropriation and use of any purported trade secret, and Defendants have put on considerable evidence demonstrating that they independently developed the L'Oréal USA products.

This takes care of the unpublished patent application, which is the only trade secret that has been identified with particularity, albeit still insufficiently.  Even assuming L'Oréal USA received the unpublished patent application, which it vehemently denies, there is insufficient evidence to support Olaplex's trade secret claim in the record.  "[I]f the defendant developed the idea without reference to the trade secret, it did not purloin the plaintiff's idea."  *Moore v. Kulicke & Soffa Indus., Inc.*, 318 F.3d 561, 567 (3d Cir. 2003).  *See also id.* ("If there is proof that the defendant independently developed a technique that resembles the trade secret, then the defendant did not 'use' the trade secret.");  18 U.S.C. § 1839(6);  6 Del. § 2001(4).  Defendants, through a myriad of documentary evidence, along with the testimony of Ms. Kimberly Dreher and Dr. Fabien Boulineau, have shown that they conceived and developed the L'Oréal USA products without reference to Plaintiffs' purported trade secrets.

Ms. Dreher, who was in charge of P4 development (the skeleton formula for the L'Oréal

USA products), testified, in no uncertain terms, that her work was the product of information

available to her through L'Oréal USA, and L'Oréal USA alone:

> Q.    Okay.  In your development of the L'Oréal USA products,
> what information did you use in the previous formulations
> that led to L'Oréal USA's bonder product?
>
> A.    I used the information that L'Oréal had and knowledge of
> additives and the history of the products that we put on the
> market and other patents that L'Oréal has.
>
> Q.    Did any of that information ever include any non-public
> information from another company outside L'Oréal USA?
>
> A.    No.
>
> Q.    Did you ever receive and rely on any unpublished patent
> applications to develop formulations for the bonder
> product?
>
> A.    No.

(Trial Tr. 1078:5-18.)  Ms. Dreher's lab notebooks corroborate this testimony.  (*See* JTX 517;

Trial Tr. at 1138:1-21 (Ms. Dreher explaining that her work with respect to P4 was directly

related to work she did in 2014, as noted in her lab notebook).)  Fabien Boulineau, former

L'Oréal USA Manager of Analytical Chemistry, also testified that L'Oréal USA independently

came up with the idea of using the skeleton formulation that is now found in the L'Oréal USA

products in September 2014.  (*See, e.g.*, Trial Tr. at 1206:22-1207:11.)

Plaintiffs have not adduced any evidence rebutting Defendants' evidence of independent

development.  At best, Plaintiffs argue that the timing of the launch of the L'Oréal USA products

is suspect.  This is insufficient.  The L'Oréal USA products' development dates back to 2014,

and they launched more than a year after the parties' May 19, 2015 meeting.  *See Ahlert v.*

*Hasbro, Inc.*, 325 F. Supp. 2d 509, 515 (D.N.J. 2004) (granting summary judgment in favor of

defendants because plaintiff could not refute defendants' claims of independent development,

holding "[c]laims of independent development are often seen as suspicious when major

breakthroughs occur immediately following possible exposure to another idea.  However, it is

not inconceivable that *with over a year's effort*, a professional toy developer could independently

arrive at a technology that a recreational inventor assembled in his garage.") (emphasis added).

"It is the improper appropriation of another's secret which is the legal basis of liability."

*Bolt Assocs., Inc. v. Alpine Geophysical Assocs., Inc.*, 365 F.2d 742, 749 (3d Cir. 1966).  No

appropriation, let alone improper appropriation, occurred.  Because L'Oréal USA did not use any

purported trade secret information to develop its products, and the Jury has no reasonable basis

to find otherwise, Plaintiffs' trade secrets claim must fail as a matter of law.

## V.        JMOL ON BREACH OF CONTRACT CLAIM

Under Delaware law, the elements of a breach of contract claim are:  [1] the existence of

a contract, [2] the breach of an obligation imposed by that contract, and [3] resulting damages to

the plaintiff.  *VLIW Tech., LLC v. Hewlett-Packard Co*., 840 A.2d 606, 612 (Del. 2003).  Olaplex

has tied the viability of its breach of contract claim to its misappropriation claim.  (*See* Trial Tr.

at 491:2-492:19 (Dean Christal testifying that he believed the information he purportedly handed

over to L'Oréal USA at the parties' May 19, 2019 meeting was both covered by the NDA and

constituted Olaplex's "entire playbook").)  As such, for the same reasons discussed above,

L'Oréal USA is entitled to JMOL on Olaplex's breach of contract claim.

Defendants are entitled to JMOL on this claim because they have not put on any evidence

to prove a contractual breach.  While the parties' non-disclosure agreements prohibited the

dissemination of any confidential information disclosed in the course of acquisition discussions,

Plaintiffs have not introduced any evidence demonstrating that L'Oréal USA actually

disseminated any such purported information to a third party.  Plaintiffs have pointed only to the

fact that Defendants' launch of competing products in the fall of 2016.  This fact is of little consequence, especially since the non-disclosure agreements made clear that Defendants were independently developing competitor products prior to and throughout the parties' acquisition discussions.  (JTX 188, 189.)

Even if there was a jury question on breach, Defendants are entitled to JMOL because there is no evidence that the claimed breach caused any damages.  Olaplex seeks lost profits damages in connection with its breach of contract claim, but George Strong, Plaintiffs' expert, conceded that Olaplex was able to continue growing its revenues after the L'Oréal USA products launched.  (*See* Trial Tr. at 885:13-17; *see also id.* at 886:12-887:7 (conceding that Olaplex's sales revenue continued to grow on a quarterly basis after the L'Oréal USA products launched).)

Finally, Defendants are entitled to JMOL on contract damages because Plaintiffs claim consequential lost-profits damages, but did not establish the necessary predicate for an award of such damages: namely, that such damages were reasonably foreseeable at the time the contract was made.  *Pierce v. Int'l Ins. Co.*, 671 A.2d 1361, 1367 (Del. 1996).

## VI.      JMOL ON WILLFUL AND MALICIOUS TRADE SECRET MISAPPROPRIATION

Because Defendants are entitled to JMOL on Plaintiffs' trade secrets misappropriation claim (*see supra* Section IV), they are also entitled to JMOL to the extent Plaintiffs assert such trade secret misappropriation was willful and malicious.  Plaintiffs have presented no evidence that Defendants acted in such a manner.  Conduct is willful if a person has "an awareness, either actual or constructive, of one's conduct and a realization of its probable consequences."  *Jardel Co. v. Hughes*, 523 A.2d 518, 530 (Del. 1987).  Plaintiffs have not introduced any evidence demonstrating that Defendants willfully used any information they purportedly received from Plaintiffs to develop and launch the L'Oréal USA products.  Conduct is malicious if it evinces

"ill-will, hatred or intent to cause injury." *Casson v. Nationwide Ins. Co.*, 455 A.2d 361, 368 (Del. Super. Ct. 1982). Plaintiffs have introduced no evidence that Defendants' launch of the L'Oréal USA products was borne of ill-will toward Olaplex. Indeed, the facts in the record suggest otherwise, as L'Oréal USA disclosed in the parties' NDA that it was independently developing such products, and entered into good-faith acquisition discussions with Olaplex despite receiving no reliable financial information with which to value the company. (Trial Tr. at 509:8-510:20.)

## VII.      JMOL ON DAMAGES FOR PATENT INFRINGEMENT

### A.      Failure to Prove the Damages Caused by Infringement of Method Claims

Section 284 only authorizes "damages adequate to compensate *for the infringement*." 35 U.S.C. § 284 (emphasis added). Plaintiffs have not claimed any damages from the Defendants' own direct infringement. Rather, the infringement that allegedly caused damages here is the practice of the infringing method by hair stylists who purchased Defendants' products and were allegedly induced to infringe by Defendants.

Defendants are entitled to JMOL on patent damages because Plaintiffs never quantified the induced infringement that caused lost-profit damages. The estimation of lost-profit damages by Plaitniffs' expert depended on the false premise that every sale of an accused product by any Defendant deprived Plaintiffs of a corresponding sale of their products. But Defendants' products do not infringe the patents, only the actions of hair stylists. It is undisputed that Defendants' products have substantial non-infringing uses (for example, for use in coloring hair, or as a standalone treatment for damaged hair). Defendants' sales to customers who do not use the infringing method, even if they displace sales by Plaintiffs, by definition, cannot cause infringement damages. Plaintiffs failed to adduce the necessary proof of the extent of infringement (*i.e.*, what approximate percentage of Defendants' products are used to infringe the

patent), and thus JMOL on damages is required.

The Federal Circuit emphasized the importance of proving the extent of induced infringement of a method claim in *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009). There, as here, the plaintiff proved induced infringement, but the Court found that:

> the evidence of record is conspicuously devoid of any data about *how often* consumers use the patented date-picker invention. In one respect, Lucent believes the damages award is supported by the pervasive use of forms throughout the three software programs. What this position lacks is the requisite focus on the infringed claim. The damages award can't be supported by evidence that the infringers also used additional, non-infringing features. Only when the date-picker is used to fill out a form does infringement occur. All other means of filling out a form, such as typing in the entire date, do not infringe. The damages award ought to be correlated, in some respect, *to the extent the infringing method is used by consumers*.

*Id.* at 1334 (emphasis added). The Court emphasized that proof of the extent of infringement was necessary to support a damages award, even for reasonable-royalty damages.

> As we noted above, substantial evidence supports the jury's verdict of indirect infringement by Microsoft. But all the circumstantial evidence supports is the jury's implicit finding that at least one person performed the patented method one time in the United States sometime during the relevant period. Beyond that finding, all the jury had was speculation. No evidence describes how many Microsoft Outlook users had ever performed the patented method or how many times. *Lucent had the burden to prove that the extent to which the infringing method has been used supports the lump-sum damages award.*

*Id.* at 1334–35 (emphasis added). For that and other reasons, the Federal Circuit reached "the unmistakable conclusion that the jury's damages award is not supported by substantial evidence, but is based mainly on speculation or guesswork." *Id.* at 1335.

The *Lucent* Court found the damages award unsupported by substantial evidence even though only reasonable royalty damages were at issue, where there does not have to be a direct

nexus between acts of infringement and damages.  The *Lucent* analysis applies *a fortiori* to claims of lost-profit damages, where the Plaintiffs must make a *prima-facie* showing that its sales would have been made "but for" the infringement. *See Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1141 (Fed. Cir. 1991).  Because Plaintiffs did not adduce any proof that allowed the jury to determine the extent of infringement (*i.e.*, the use of Defendants' products to practice the infringing method), JMOL is warranted.

**B.      Estimates of Lost-Profits Damages Based on Speculation and Not Substantial Evidence Are Not a Legally Sufficietn Basis for Damages**

"To obtain as damages the profits on sales [a patent owner] would have made absent the infringement, i.e., the sales made by the infringer, a patent owner must prove: (1) demand for the patented product, (2) absence of acceptable noninfringing substitutes, (3) his manufacturing and marketing capability to exploit the demand, and (4) the amount of the profit he would have made."  *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978). Olaplex's damages expert, Mr. George Strong, relied on the existence of a two-player market to determine his lost-profits damages calculation.  (*See* Trial Tr. at 839:13-840:3.)  In order to determine the propriety of this alleged two-player market, however, Mr. Strong relied on the opinion of Olaplex's technical expert, Dr. Edward Borish, "that there were no other products that accomplished what [the Plaintiffs' and Defendants' products do] in terms of chemistry."  (*See id.* at 848:10-23.)  Critically, however, it turned out on cross-examination that Dr. Borish's opinion depended entirely on (1) the unsupported, conclusory assumption that any active agent different from that found in the products sold by Plaintiffs and Defendants cannot function in the same way (*id.* at 799:1-5), and (2) undisclosed "testing data" that Dr. Borish never disclosed during discovery (*id.* at 799:6-9).  If this were not problematic enough, Dr. Borish did not even perform any independent analysis to determine whether Plaintiffs' own products, or the Defendants'

products, satisfied Dr. Borish's definition of what is required for a product to be in the marketplace. (*Id.* at 804:8-11, 804:19-805:13.) And if this were not problematic enough, evidence presented to the Jury showed that there are many other competitors. (*See id.* at 802:3-803:11.) For instance, Leslie Marino, General Manager of Redken, testified that she counted Colorplex, b3 Brazilian Bond Builder, Bondpure and Snaplex as competitors. (*See id.* at 1425:5-12.) Todd Schoettelkotte, Defendants' damages expert, also testified that additional competitors exist, as evidenced by market research. (*See id.* at 1442:17-1444:2.)

Moreover, Mr. Strong presented various unsupportable conclusions as to demand for the patented product, absence of acceptable noninfringing substitutes, manufacturing and marketing capability to exploit demand, and the profit Plaintiffs would have made. Defendants have put on competent evidence demonstrating that the second, third, and fourth *Panduit* factors have not been met, and that, at best, it is inconclusive whether the first *Panduit* factor has been met. (*Id.* at 1446:15-1452:21.) If even one *Panduit* factor is not met, Plaintiffs are not entitled to lost profits. *Panduit*, 575 F.2d at 1156. As such, Defendants are entitled to JMOL as to the lost profits damages that Plaintiffs seek.

### C.    Plaintiffs' Estimates of Reasonable Royalty Damages Were Based on Speculation and Not Substantial Evidence

Mr. Strong asserted during trial that Plaintiffs are entitled to an outrageously high royalty rate of 40 percent. (Trial Tr. at 871:23-25.) This royalty rate, however, was not supported by any evidence. Defendants are entitled to JMOL as to the reasonable royalty damages that Plaintiffs seek.[5]

---

[5] As the Court granted Defendants' initial Motion for Judgment as a Matter of Law to preclude any award of future damages, Defendants do not raise that issue here. (Trial Tr. at 1119:8-24.)

VIII.    **JMOL ON DAMAGES FOR TRADE SECRET MISAPPROPRIATION AND BREACH OF CONTRACT**

Plaintiffs seek lost profit damages for their misappropriation of trade secrets and breach of contract claims.  (*See* Trial Tr. at 832:1-833:4.)  Because Plaintiffs have failed to introduce evidence demonstrating that Defendants committed any breach or misappropriation (*see supra* Sections IV, V), Defendants are entitled to JMOL with respect to Plaintiffs' request for damages on these claims.  Even if that were not the case, Defendants are independently entitled to JMOL on the issue of damages because Plaintiffs have offered no evidence demonstrating that the alleged breach and/or misappropriation gave Defendants a head start in developing their products.  Plaintiffs' expert, Mr. Douglas Schoon, offered only a conclusory assertion that L'Oréal USA gained a 20 to 32 month head start—the Jury cannot award damages based on such hollow evidence.  (*See supra* Section IV.C.)  Furthermore, all of Plaintiffs' damages calculations are predicated on an untested and unsubstantiated two-party market theory.  Because the Jury has received no evidence showing the existence of such a market, no damages can be awarded on this basis.  (*See supra* Section VII.B.)

IX.    **JMOL FOR FAILURE OF PROOF AS TO INDUCING ACTS OR CAUSATION OF DAMAGES BY INDIVIDUAL DEFENDANTS**

Plaintiffs chose to sue four separate L'Oréal entities: L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc. and Redken 5th Avenue NYC, LLC.  Plaintiffs have not pleaded, presented evidence, or sought a jury instruction on joint liability or disregard of the corporate form.  JMOL is required as to each individual defendant because Plaintiffs have not proven that any individual defendant has induced infringement, much less the damages caused by the infringement that defendant induced.  This Court cannot hold individual entities liable for whatever collective wrongs the Jury might find were committed by some unidentified L'Oréal USA entity, or the collective damages that Plaintiffs may have suffered.

Patent infringement, like trade secret misappropriation, is a personal tort. Moreover, only L'Oréal USA, Inc. is a party to the allegedly breached contract. The Federal Circuit has emphasized that a corporation can be held liable for an affiliate's "infringement under 35 U.S.C. § 271(a) only if the evidence reveals circumstances justifying disregard of the status of [the affiliated defendants] as distinct, separate corporations." *A. Stucki Co. v. Worthington Indus., Inc.*, 849 F.2d 593, 596–97 (Fed. Cir. 1988) (finding no infringement in the absence of evidence showing that the parent company either was an alter ego of the subsidiary or controlled the conduct of the subsidiary). Each corporation is entitled to an "individualized determination" of its liability. *F.T.C. v. Kuykendall*, 371 F.3d 745, 758 (2004); *see Marshall v. H & R Block Tax Servs., Inc.*, 564 F.3d 826, 828 (7th Cir. 2009). Because each defendant is liable only for its own acts, and Plaintiffs did not present any theory under which the corporate form could be disregarded and liability imposed for acts of its affiliates, this Court should grant JMOL to each Defendant.

There is no evidence that any Defendant waived the right to an individualized determination of liability or consented to joint-and-several liability for any infringement by its corporate affiliates. In *Rodriguez v. Riddell Sports, Inc.*, the Fifth Circuit rejected the claim that a plaintiff could escape its burden of proving individualized liability of corporate affiliates by blaming the defendants as a whole. There, the plaintiff convinced the district court to instruct the jury to determine liability of three affiliated corporate defendants (AA, RI, RSIO) collectively, and the jury returned a verdict against the defendants. *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 572 (5th Cir. 2001). The Fifth Circuit reversed and remanded. The Court noted that "[t]he evidence showed that AA is a separate corporation from RI. Although both AA and RI are owned by RSI, a holding company, plaintiffs did not argue that defendants were alter egos, that

they were agents of each other, or that the corporate veil should be pierced.  Absent proof of one of these conditions, the corporate form must be respected." *Id.* at 573.

The Fifth Circuit rejected the plaintiffs' argument "that defendants cannot object to the combining of the defendants in the charge, because defendants invited the error by referring to themselves collectively." *Id.*  The Court reasoned that "it is plaintiffs' duty to prove each element of their *prima facie* case.  Thus if combining two corporations into one is necessary to apply a strict liability standard, then plaintiffs must prove that the corporations should be combined, and sloppiness on the part of defendants does not excuse plaintiffs from this burden." *Id.* at 573.  Because there was evidence under which a properly instructed jury could hold two of the defendants liable, the court remanded for a new trial. *Id.* at 577.  As to the parent corporation, RSI, the Court rendered judgment in its favor because there was no evidence that it committed tortious acts, nor evidence to justify disregarding the corporate form. *Id.* at 577–78.

Because Plaintiffs failed to prove that any specific Defendant induced infringement, or the damages caused by the inducement it infringed, each Defendant is entitled to JMOL.

Of Counsel:

Dennis S. Ellis
Katherine F. Murray
Adam M. Reich
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
(213) 683-6000

Naveen Modi
Joseph E. Palys
Daniel Zeilberger
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1990

*/s/ Frederick L. Cottrell, III*
Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Katharine L. Mowery (#5629)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
mowery@rlf.com

***Attorneys for Defendants***
*L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc. and Redken 5th Avenue NYC, LLC*

Scott F. Peachman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Dated:  August 11, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2019, a true and correct copy of the foregoing

document was caused to be served upon the following counsel of record as indicated:

**VIA ELECTRONIC MAIL**
Jack B. Blumenfeld
Jeremy A. Tigan
Anthony D. Raucci
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
araucci@mnat.com

Diane M. Doolittle
Suong T. Nguyen
Quinn, Emmanuel, Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(605) 801-5000
Dianedoolittle@quinnemanuel.com
suongnguyen@quinnemanuel.com

Jared W. Newton
Quinn, Emmanuel, Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000
jarednewton@quinnemanuel.com

**VIA ELECTRONIC MAIL**
Amardeep L. Thakur
Joseph M. Paunovich
David M. Elihu
Patrick T. Schmidt
Bruce E. Van Dalsem
William Odom
Quinn, Emmanuel, Urquhart & Sullivan, LLP
865 S. Figueroa Street
Los Angeles, CA 90017
(213) 443-3000
amarthakur@quinnemanuel.com
joepaunovich@quinnemanuel.com
delihu@quinnemanuel.com
patrickschmidt@quinnemanuel.com
William.odom@quinnemanuel.com

Adam J. DiClemente
Quinn, Emmanuel, Urquhart & Sullivan, LLP
55 Madison Avenue
22nd Floor
New York, NY 10010
(212) 849-7361
adamdiclemente@quinnemanuel.com

Matthew K. Blackburn
Diamond McCarthy LLP
150 California Street
Suite 2200
San Francisco, CA 94111
(415) 263-9200
mblackburn@diamondmccarthy.com

*/s/ Katharine L. Mowery*
Katharine L. Mowery (#5629)

19