IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LIQWD, INC. and OLAPLEX LLC, | |
| Plaintiffs, | |
| v. | **CIVIL ACTION NO. 17-14-JFB-SRF** |
| L'ORÉAL USA, INC., L'ORÉAL USA PRODUCTS, INC., L'ORÉAL USA S/D, INC., and REDKENS 5TH AVENUE, NYC, L.L.C., | **MEMORANDUM AND ORDER** |
| Defendant. | |

This matter is before the Court on the following post-trial motions:

1. Motion For Approval of Stay of Any Execution or Enforcement of the Judgment by Bond, D.I. 1089, filed by defendants;

2. Motion to Alter Judgment or Amend the August 20th Judgment (D.I. 1078), D.I. 1093, filed by plaintiffs;

3. Defendants' Renewed Motion for Judgment as a Matter of Law Pursuant to Federal Rule of Civil Procedure 50(b), D.I. 1095;

4. Motion to Enhance Patent and Trade Secret Damages, D.I. 1097, filed by plaintiffs;

5. Motion for new trial, D.I. 1098, filed by defendants;

6. Motion for Attorney Fees, D.I. 1101, filed by plaintiffs;

7. Motion to Alter Judgment Defendants' Motion to Alter or Amend the Judgment, D.I. 1102, filed by defendants; and

8. Defendants' Motion for Trial on Their Unclean Hands Defense, D.I. 1106, filed by defendants.

## I.    BACKGROUND

The Court conducted a trial in this case.  The jury issued a verdict on August 12, 2019.  D.I.'s 1059-1060.  The Court thereafter signed a Memorandum and Order denying defendants' motions for a judgment as a matter of law (JMOL), D.I. 1051 and 1055. D.I. 1064.  The Court also entered a permanent injunction.  D.I. 1073.  The Court then signed a memorandum and judgment.  D.I. 1078.  On August 12, 2019, the jury returned a verdict finding L'Oréal liable for willful trade secret misappropriation, willful patent infringement, and breach of contract.  D.I. 1060.  The verdict form specified damages of $22,265,000 for the trade secret claims and breach of contract claims, $21,818,000 for infringement of U.S. Patent No. 9,498,419 and $24,960,000 for infringement of U.S. Patent No. 9,668,954.  *Id.*  The jury rejected each of L'Oréal's patent invalidity claims.  *Id.*  On August 20, 2019, the Court entered a Memorandum and Judgment in favor of Plaintiffs Olaplex LLC and Liqwd, Inc. ("Olaplex") and against L'Oréal USA for $49,920,000.00 (D.I. 1078).

## II.    DISCUSSION

### A.    Motion For Approval of Stay of Any Execution or Enforcement of the Judgment by Bond, D.I. 1089, filed by defendants.

L'Oreal requests that it be permitted to post a $60,000,000 bond and to obtain a stay of any execution or enforcement of the judgment, pending resolution to its post-trial motions herein and its appeal.  Federal Rule of Civil Procedure 62(b) provides that "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security.  The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security."  L'Oréal USA has obtained a bond in the amount of $60,000,000.00 with Liberty Mutual Insurance

Company.  D.I. 1089, Ex. A.  The amount of the bond includes the amount of damages awarded in the Judgment, $49,920,000.00, plus an additional 20%, which is more than sufficient to cover one year of interest using the interest rate set forth in 28 U.S.C. § 1961. This interest rate is 1.77%, based on the weekly average for the 1-year constant maturity Treasury yield for the week ending August 16, 2019 (the calendar week preceding the August 20, 2019, Judgment).

Plaintiffs do not oppose this motion.  The Court will grant this motion.  Defendants' shall post the $60,000,000.00 bond and the Court will stay any execution or enforcement of judgment.

B. Motion to Alter Judgment or Amend the August 20th Judgment (D.I. 1078), D.I. 1093, filed by plaintiffs.

Federal Rule of Civil Procedure 59(e) permits a party to move "to alter or amend a judgment." Fed. R. Civ. P. 59(e).  Such a motion "must rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice." *Evonik Degussa GmbH v. Materia, Inc.*, 305 F. Supp. 3d 563, 575 (D. Del. 2018) (Citations omitted).

Plaintiffs ask this Court to amend the August 20, 2019 judgment, D.I. 1078, against the defendants.  In particular, the plaintiffs ask the Court to amend its August 20th Judgment to recognize the jury's full damages award, $22,265,000 for the trade secrets claims.  Further, plaintiffs contend that the reducing the damages is neither procedurally nor substantively proper.

Plaintiffs agree that the overlapping portion of the two patent infringement awards are duplicative within the same period of time. The plaintiffs also agree that the Court appropriately treated the breach of contract as coextensive with damages for misappropriation of trade secrets. However, plaintiffs argue that the Court treated the trade secret misappropriation as subsumed by the patent damages, and the Court also overruled the jury's trade secret award by 57%. The Court erred, argues plaintiffs, when it prorated the trade secret damages by dividing $22,265,00 by the number of days in the twenty-month period x 9 months. This calculation, contends plaintiffs, reduced the jury's $22,265,000 trade secret award to $9,499,732.48.

Plaintiffs also contend that the Court should amend this judgment to correctly calculate non-duplicative compensatory recover for the claims. Plaintiffs argue that the total non-duplicative compensatory damages are $37,410,000, and the Court should eliminate overlapping time periods of damages but should allow non-duplicative damages representing unique periods of time not subsumed into each other be allowed. In addition, argue the plaintiffs, the defendants failed to move for JMOL regarding the trade secret damages. Second, when long after trial the defendants did move for JMOL, plaintiffs contend they did not do so on the two-player market, thus not arguing that trade secrets are limited to a period before publication. Delaware courts have adopted this approach to the "head-start" doctrine. *See, e.g., Agilent Techs., Inc. v. Kirkland*, 2010 WL 610725, at *26 & n.230 (Del. Ch. Feb. 18, 2010).

With regard to the amount of damages, plaintiffs contend that under a chronological approach, plaintiffs are entitled to $97,085,000. D.I. 1094 at 14-16. Under

the award size approach, plaintiffs contend they are entitled to $87,270,000.  *Id.* at 15-18.

Finally, plaintiffs request that the Court amend the judgment so as to include both prejudgment and post-judgment interest.  Under 35 U.S.C. § 284, "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, . . . together with interest . . ." (emphasis added).  For patent infringement, "prejudgment interest should ordinarily be awarded."  *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655 (1983); accord *Comcast IP Holdings I LLC v. Sprint Comms. Co., L.P.*, 850 F.3d 1302, 1313 (Fed. Cir. 2017).  "Delaware courts award prejudgment interest as a matter of right."  *Beard Research, Inc. v. Kates*, 8 A.3d 573, 620 (Del. Ch. 2010) (awarding pre-judgment interest on recovery for trade secret misappropriation).

The purpose of pre-judgment interest is "to ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement."  *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655 (1983).  In a patent case, "[g]enerally, the interest rate should be fixed as of the date of infringement, with interest then being awarded from that date to the date [the judgment is actually paid.]"  *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, No. 8:10CV187, 2016 WL 6246590, at *2 (D. Neb. May 11, 2016).

Pre-judgment interest may be permitted on attorneys' fees where the court determines there is bad faith or other exceptional circumstances.  *Mathis v. Spears*, 857 F.2d 749, 761 (Fed.Cir.1988) (quoting *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 653, 103 S.Ct. 2058, 2061, 76 L.Ed.2d 211 (1983)).  The District Court has an inherent equitable power to determine the appropriateness of an award under those

circumstances. *Id.*; *Water Tech. Corp. v. Calco Ltd.*, 714 F. Supp. 899, 909-910 (N.D. Ill. 1989). "Since the defendants' willful infringement made it necessary for the plaintiffs to bring this suit, an award of prejudgment interest is proper to fully compensate the plaintiffs for the expenses they incurred during litigation." *Id.* at 910. As stated in *Stryker*,

> The plaintiff also seeks prejudgment interest on the portion of its requested attorneys' fees and costs that has already been expended. The amount of such interest is calculated by the plaintiff to be $679,004. The Court, however, declines to grant such prejudgment interest on the attorneys' fees and costs. An award of attorney's fees and costs under section 285 is not compensatory, but rather is punitive in nature. Granting such an award is a "fee shifting sanction" imposed in exceptional circumstances. *See, e.g., L.E.A. Dynatech, Inc. v. Allina*, 49 F.3d 1527, 1533–34 (Fed.Cir.1995) (Judge Schall, concurring in part and dissenting in part). Because pre-judgment interest is only to be awarded on the compensatory portion of a damage award, *Beatrice Foods*, 923 F.2d at 1580, in the Court's view, it is improper to grant prejudgment interest on any portion of the plaintiff's attorneys' fees and costs.

*Stryker Corp. v. Intermedics Orthopedics, Inc.*, 898 F. Supp. 116, 123 (E.D.N.Y. 1995).

The Court has discretion when determining how pre-judgment interest should be awarded. While the Court finds the award of pre-judgment interest on the compensatory damages is appropriate in this case, the Court finds that pre-judgment interest in this case on the attorneys' fee award is unnecessary. The pre-judgment interest award is to make the patent owner whole. *General Motors Corp. v. Devex Corp.,* 461 U.S. 648, 655-56 (1983). However, the purpose of pre-judgment interest is to compensate and make whole the patent holder, not to punish the infringer. In this case, the Court believes the combination of the jury verdict, the enhanced awards and the finding of willfulness, and the award of attorney fees fully compensates and makes whole the patent holder. Accordingly, the Court determines that there is no need to further award pre-judgment interest on the attorneys' fees.

Under § 284 absent some justification for withholding such an award"). For trade secret and contract damages plaintiffs ask the Court to amend the judgment and give the jury's full damages in the amount of $22,265,000 for the trade secret claims. Further, plaintiffs request a rate of 5.25 % compounded quarterly from the beginning of the damages period. Further, plaintiffs indicate that the Court should specify in its amended judgment that Olaplex is also entitled to this pre-judgment interest on any award of attorneys' fees, to ensure that Olaplex is fully compensated for the money it had to spend prosecuting this action. *See, e.g., Regeneron Pharmas., Inc. v. Merus N.V.*, 2018 WL 3425013, at *7 (S.D.N.Y. June 25, 2018) (awarding pre-judgment interest on attorneys' fee award because doing so was "necessary to make [the prevailing party] whole, as [it] lost capital in defense of this litigation"); *Norwest Fin., Inc. v. Fernandez*, 121 F. Supp. 2d 258, 263 (S.D.N.Y. 2000) (approving costs for business-class airfare and "first class" but not "luxurious" hotels); *Ply Gem Indus., Inc. v. Argonaut Ins. Co.*, No. 87-cv-7327, 1988 WL 132911, at *2 (S.D.N.Y. Dec. 6, 1988) ("Air fare may be business class or equivalent....").

Post-judgment interest pursuant to 28 U.S.C. § 1961 is mandatory. *In re USN Comms., Inc.*, 280 B.R. 573, 602 (Bankr. D. Del. 2002). "'Any judgment' in Section 1961 includes a judgment awarding attorney fees." *Mathis v. Spears*, 857 F.2d 749, 760 (Fed. Cir. 1988). Courts in this district apply the prime rate in patent cases absent a reason to do otherwise. *See, e.g., Godo Kaisha IP Bridge 1 v. TCL Comm. Tech. Holdings Ltd.*, 2019 WL 1877189, at *5 (D. Del. April 26, 2019); *Hologic, Inc. v. Minerva Surgical, Inc.*, 2019 WL 1958020, at *10 (D. Del. May 2, 2019) ("The Court agrees with Hologic and finds prejudgment interest at the prime rate, compounded quarterly, from and after August

of 2015 to the date of judgment is appropriate (D.I. 536, Declaration of Christopher C. Barry at 8-10; Schedule D).")  "[I]t is not necessary that a patentee demonstrate that it borrowed at the prime rate in order to be entitled to prejudgment interest at that rate." *Uniroyal, Inc. v. Rudkin–Wiley Corp.*, 939 F.2d 1540, 1545 (Fed.Cir.1991) (citation omitted).

In conclusion, plaintiffs ask this court to grant its motion to amend and permit $97,085,00 in damages plus pre- and post-judgment interest.

Defendants disagree on all issues requested by plaintiffs.  Defendants argue that plaintiffs are attempting to shift their lost-profit damages to its trade secret claim, based on the wrong period of head-start months, and the duplicative damages.  Defendants contend the verdict on damages must be thrown out and defendants must be granted JMOL on at least head-start damages or remit the verdict to the maximum royalty rate as is supported by the evidence.

As for increased damages, defendants argue that while a court may reduce an excessive jury award.  *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 433 (1996), the Constitution "forb[ids] the court to increase the amount of damages awarded by a jury in actions such as th[is]." *Dimick v. Schiedt*, 293 U.S. 474, 482 (1935).  Defendants also contend that the 7th Amendment bars the Court from making its own findings on issues of fact, particularly on materials not admitted into trial as evidence.  *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1183 (3d Cir. 1993); *see also* *McLaughlin v. Fellows Gear Shaper Co.*, 786 F.2d 592, 596 (3d Cir. 1986) ("[F]acts as found by the jury cannot be redetermined by a court").  Further, defendants argue that the court was correct in subsuming trade secret damages into patent damages.  Additionally, the defendants

argue plaintiffs are not entitled to prejudgment interest, arguing it would be inequitable to do so. Prejudgment interest is only appropriate where "the underlying liability is reasonably capable of ascertainment . . . where liability and the amount of damages are fairly certain." *Anthuis v. Colt Indus. Operating Corp.*, 971 F.2d 999, 1010 (3d Cir. 1992) (citation omitted). Further, argues defendants, prejudgment interest must be at the Treasury Bill rate which is currently 1.58% - rather than the prime rate. "In federal question cases, the rate of prejudgment interest is committed to the discretion of the district court." *Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59, 63 (3d Cir. 1986); see also Montgomery Cellular Hldg. Co. v. Dobler, 880 A.2d 206, 226 (Del. 2005) (same). "The Court may be guided by the rate set out in 28 U.S.C. § 1961," i.e., the T-Bill rate. *Sun Ship*, 785 F.2d at 63.

Consequently, the defendants urge this Court to deny plaintiffs' motion to alter or amend the judgment.

Based on the arguments of the plaintiffs, the Court agrees that there was plenty of evidence at trial to support the period of secrecy plus a period of time during the misappropriation. The Court is of the opinion that the damages calculations made by this Court are an accurate assessment of the damages found by the jury, less duplicative recovery. For the reasons stated in its previous Memorandum and Order, D.I. 1078, the Court determines that the damages assessment is accurate and complete. The Court does not believe it "subsumed" the damages into one category. On the contrary, the Court carefully calculated the dates that overlapping occurred and subtracted those amounts. Accordingly, the Court will deny plaintiffs' motion to alter or amend.

With regard to the interest issues, the Court rules as follows.  Plaintiff is entitled to prejudgment issue at a rate to be determined by the district court.  *Sun Ship*, 785 F.2d at 63.  The Court will allow it to accrue at the prime rate as determined in the *Hologic* case. *Sun Ship*, 785 F.2d at 63.  In addition, the Court finds that in order to make plaintiffs whole, they will be permitted to collect this same interest on their attorneys' fees.

With regard to the post-judgment interest, plaintiffs are entitled to this recovery as a matter of law.  28 U.S.C. § 1961.  The Court will order that this interest be at the prime rate.  *See, e.g., Godo Kaisha IP Bridge 1 v. TCL Comm. Tech. Holdings Ltd.*, 2019 WL 1877189, at *5 (D. Del. April 26, 2019); *Hologic, Inc. v. Minerva Surgical, Inc.*, 2019 WL 1958020, at *10 (D. Del. May 2, 2019).

C. Motion Defendants' Renewed Motion for Judgment as a Matter of Law Pursuant to Federal Rule of Civil Procedure 50(b)], D.I. 1095, filed by defendants.

Defendants renew their motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) for judgment as a matter of law concerning damages, willful patent infringement, trade secret misappropriation, willful and malicious trade secret misappropriation, breach of contract, and patent invalidity.  The Court has carefully reviewed the briefs and arguments by counsel.  The Court will deny the motion.  The Court will uphold the jury verdict in this case, the record made by the Court at trial, and on the memorandum and orders by the Court on these issues, and the Court does not find grounds for a JMOL on any of the issues set forth by the defendants.

D. Motion to Enhance Patent and Trade Secret Damages, D.I. 1097, filed by plaintiffs.

Plaintiffs move to support the Court's findings that enhancement of the patent and trade secret damages are appropriate in this case. Plaintiffs want to confirm the exemplary damage awards set forth in the August 20, 2019 Memorandum and Judgment (D.I. 1078), awarding an aggregate two times enhancement of patent damages and three times enhancement of trade secret damages.

This Court instructed the jury regarding willful and exemplary damages, and the jury found the plaintiffs' patents valid and found willful infringement by the defendants. D.I. 1060. The jury also found that defendants willfully misappropriated plaintiffs' trade secrets. *Id.* The jury's verdict awarded Olaplex $22,265,000 in damages for trade secret misappropriation, $21,810,000 in damages for infringement of the '419 Patent, and $24,960,000 in damages for infringement of the '954 Patent. The Court awarded exemplary damages in the amount of twice the award in the verdict (so two times plus the exemplary). D.I. 1078 at 3-4. The Court also awarded damages of one time the verdict for exemplary damages thus ordering an additional $24,960.000.

Defendants contend that the Court's ruling on these damages was premature. D.I. 1103 at 2-7. Defendants also contend that the amount already rewarded - $24.96 million – is greatly inflated, particularly since the Court found that the "lost profits" damages were skinny. Modi Decl., Ex. A at 1277:13-19. Defendants argue that the plaintiffs would have received even less under a reasonable royalty theory. Plaintiffs' request to enhance, argues defendants, should be denied. Defendants believes that no enhancements are appropriate.

The Patent Act permits District Courts to "increase [infringement] damages up to three times the amount found or assessed." 35 U.S.C. § 284. Enhancements are designed to be punitive or indictive sanction for extreme behavior. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016). "The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed— characteristic of a pirate." *Id.* The Court must make factual findings separate from the jury verdict in this regard. *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1245 (Fed. Cir. 2017). In application, "[t]he decision whether to grant enhanced damages as allowed under 35 U.S.C. § 284 requires a two-step process." *Whitserve, LLC v. Computer Packages, Inc.*, 694 F. 3d 10, 37 (Fed. Cir. 2012). "First, the fact-finder must determine whether an infringer is guilty of conduct upon which increased damages may be based. If so, the court then determines, exercising its sound discretion, whether, and to what extent, to increase the damages award given the totality of the circumstances." *Id.* (quoting *Jurgens v. CBK, Ltd., 80 F.3d 1566*, 1570 (Fed. Cir. 1996)). The first step is satisfied when a jury has found willful infringement. *Id.* ("An act of willful infringement satisfies th[e] culpability requirement and is, without doubt, sufficient to meet the first requirement to increase a compensatory damages award"). Then, the Court must analyze the second step which is the amount of damages to award.

In this regard, the Courts will often apply the factors in *Read Corp* to make this determination. *See Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992). The *Read* factors include: "(1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection,

investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) [d]efendant's size and financial condition; (5) [c]loseness of the case; (6) [d]uration of defendant's misconduct; (7) [r]emedial action by the defendant; (8) [d]efendant's motivation for harm; and (9) [w]hether defendant attempted to conceal its misconduct." *Read*, 970 F.2d at 827. Although 'the district court is not required to discuss the Read factors,' *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1382 (Fed. Cir. 2017), it 'is obligated to explain the basis for the [enhanced damages] award, particularly where the maximum amount is imposed,' *Read*, 970 F.2d at 828." *Polara Eng'g Inc v. Campbell Co.*, 894 F.3d 1339, 1355 (Fed. Cir. 2018). The Court will again state its reasons for invoking enhancements in this case.

In application, "[t]he decision whether to grant enhanced damages as allowed under 35 U.S.C. § 284 requires a two-step process." *Whitserve, LLC v. Computer Packages, Inc.*, 694 F. 3d 10, 37 (Fed. Cir. 2012). "First, the fact-finder must determine whether an infringer is guilty of conduct upon which increased damages may be based. If so, the court then determines, exercising its sound discretion, whether, and to what extent, to increase the damages award given the totality of the circumstances." *Id.* (quoting *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1570 (Fed. Cir. 1996)). The first step is satisfied when a jury has found willful infringement. *Id.* ("An act of willful infringement satisfies th[e] culpability requirement and is, without doubt, sufficient to meet the first requirement to increase a compensatory damages award"). *Id.*

1. Enhanced patent damages

    a. Investigation and good-faith belief

The Court instructed the jury on the issue of willful infringement.  Such a finding implicates the good faith doctrine.  *See Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1572 (Fed. Cir. 1996).  It has been held that that a district court abuses its discretion when it refuses to enhance when "[i]n returning its verdict of willfulness, the jury necessarily decided that [the defendant] had acted in bad faith").  *Id.* at 1572.  The evidence overwhelmingly supported a finding that defendants intentionally copied and used plaintiffs' technology.

    b. Copying

The evidence clearly supports a finding that defendants deliberately copied plaintiffs' technology.  Both the jury and the Federal Circuit rejected defendants' "no copying" argument.  *See* D.I. 1060, at 1-2 (jury verdict); *Liqwd*, No. 2018-2152, Doc. 59, at 9 (affirming PTAB's determination that "L'Oréal used maleic acid because of L'Oréal's access to [Olaplex's] non-public information, rather than because of L'Oréal's independent development").  The timing of copying is important also.  Defendants met with plaintiffs to discuss a possible sale of plaintiff.  Defendants were permitted to see formulas, books and other proprietary information.  Defendants then withdrew from negotiations.  Shortly thereafter, the plaintiffs' technology was being used.  Defendants continued to sell this product, even after claims against it were made by plaintiffs.  The evidence is clear.  Copying by defendants occurred.

c.   Litigation behavior

This is one of the most overly-litigated cases this Court has worked on during its tenure.  The briefs and filings filed by the defendants were often excessive and duplicative.  The Court had to intervene far too often, and the Court agrees with the plaintiffs that often the behavior and numerous filings were obstructive.  The behavior during this case weighs in favor of the plaintiffs.  The damages are in no way excessive.

d.   Defendants' size and financial condition

Defendants are a large and wealthy corporation.  It is, as admitted by the defendants, the world's leading beauty company.  Defendants had a war chest to fight this lawsuit.  In 2018, defendants had 86,000 employees, worked in 150 countries and mad 26.9 billion in sales.  Plaintiffs were substantially smaller than defendant.  The defendants are not likely to be deterred from similar behavior in the future, absent enhancements.

e.   Closeness of the case

Plaintiffs won the preliminary injunction; defendants made repetitious arguments particularly with regard to claim construction issues, and it took the jury only 3 hours to return the verdict for the plaintiffs.  The merits of this case were not close.

f.   Duration of defendants' misconduct

Defendants have been infringing the '419 Patent since November 2016 and the '954 Patent since June 2017—the patent issuance dates, approximately 32-35 months. Plaintiffs contend that defendants continued to sell the products, even after the jury returned the verdict.  This factor clearly weighs in favor the of the plaintiffs.

g.  Remedial action

The defendants failed to take any remedial action until the Court ordered it to do so.  D.I. 1078.  This factor weighs in favor of the plaintiffs.  *See Tinnus v. Telebrands Corp.*, 369 F. Supp. 3d 704, 723-24 (E.D. Tex. 2019) ("Because Defendants failed to take remedial action and only took preventative action when forced by Court order, the Court finds this factor weighs in favor of enhancement").

h.  Motivation

"[T]he court concludes that defendants are Olaplex's direct competitor in what is a two-player national market."  *See* D.I. 135, at 13; *Liqwd, Inc. v. L'Oreal USA, Inc.*, 720 F. App'x 623, 633 Fed. Cir. 2018) (affirming two-player market finding); D.I. 1060.  The two-player market supports the evidence that defendants intended to under-cut plaintiffs' pricing and market share.

i.  Attempts to conceal misconduct

During the initial negotiations for the sale of the plaintiff, defendants concealed their misconduct in gathering information from the plaintiffs so as to create the infringing products. This factor likewise weights in favor of the plaintiffs.

2.  Enhanced trade secret damages for willful misappropriation

Under the DTSA, "[i]n a civil action brought under this subsection with respect to The misappropriation of a trade secret, a court may . . . if the trade secret is willfully and maliciously misappropriated, award exemplary damages in an amount not more than 2 times the amount of the [compensatory] damages." 18 U.S.C. § 1836(b)(3)(C) (emphasis added).  Similarly, under the DUTSA, "[i]f wilful [sic] and malicious misappropriation

exists, the court may award exemplary damages in an amount not exceeding twice any [compensatory damages] award." 6 Del. C. § 2003(b) (emphasis added).

The evidence clearly established trade secret misappropriation. The Defendants offer no evidence other than what they argued in their JMOL. As stated herein, the defendants clearly engaged in conduct that warranted enhanced damages. The jury and the Court found and find again that there was clearly willful and malicious misappropriation of trade secrets. The facts submitted by the plaintiffs overwhelmingly support this reasoning, from the initial meeting to purchase the plaintiff, to the copying of the trade secrets of the plaintiff, to the sale and continued sale of the trade secret products. There is no doubt this behavior was willful, and the evidence supports the same.

The Court will award exemplary damages for the patent infringement (2 times) claims as well as the compensatory award for the trade secret claims as set forth in its memorandum and order. D.I. 1078, at 3-4.

E. Motion for new trial, D.I. 1098, filed by defendants

Defendants move for a new trial pursuant to Fed. R. Civ. P. 59. Defendants contend that the weight of the evidence is against the verdict. "New trials are commonly granted where the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice . . . ." *Idenix Pharm. LLC v. Gilead Scis., Inc.*, 2018 WL 922125, at *4 (D. Del. Feb. 16, 2018) (citation omitted). A new trial may be granted "on all or some of the issues . . . after a jury trial." Fed. R. Civ. P. 59(a). A new trial is warranted where the "damages award is excessive," or the verdict "was against the weight of the evidence [and] a miscarriage of justice would result" if the verdict

is allowed to stand. *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991); *see also Garrison v. Mollers N. Am., Inc.*, 820 F. Supp. 814, 822 (D. Del. 1993); *Idenix Pharm. LLC*, 2018 WL 922125, at *4. Defendants further contend that the Court erred in excluding key testimony and evidence and giving incorrect jury instructions. Defendants add that plaintiffs' discovery abuses came to light at trial, and in addition, the jury awarded excessive damages. Defendants also argue that the plaintiffs lost profits verdict is against the evidence.

Plaintiffs disagree with defendants and argue that the great weight of evidence is in favor of them. A jury's verdict should be overturned only "when the great weight of the evidence cuts against the verdict and where a miscarriage of justice would result if the verdict" stands. *Jester v. Hutt*, 937 F.3d 233, 239 (3d Cir. 2019). Plaintiffs contend that the same reasons defendants are not entitled to a JMOL, they are not entitled to a new trial. Likewise, plaintiffs contend that the lost profits verdict is supported by the evidence. Plaintiffs had to prove by a reasonable probability that it would have made additional profits. *Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 615 F. Supp. 2d 304, 315 (D. Del. 2009) ("[A]bsolute certainty is not required, for reconstruction of the 'but for' market is 'by definition a hypothetical enterprise' based on the evidence introduced at trial." *Id.* (citation omitted).

In this regard, defendants contend that witness Delphine Allard should have been allowed to testify. They base this argument on this Court's belief that her inability to testify was a result of failure to disclose obligations on the part of the defendants. Plaintiffs argue that defendants clearly violated the Court's scheduling orders with regarding to Ms. Allard. This witness and others had not been disclosed timely or made available for

deposition. The Court has been over this on previous orders and found against the defendants on all occasions. *See* D.I. 831, 903, 905, 1013, and 1023. In all instances, it certainly appeared that defendants withheld Ms. Allard, who resided outside of the country during discovery, but then produced her for trial. The Court again confirmed its decision during trial, rejecting L'Oréal's August 8, 2019 bench brief and numerous requests to revisit its decision at bar. *See* D.I. 1047, 1048, Tr. at 950:5-22. The Court will deny this motion as meritless.

The Court also erred, argues defendants, in instructing the jury on the issue of obviousness by looking for some teaching, suggestion or incentive rather than applying the flexible approached set forth by the Supreme Court in *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398 (2007). (D.I. 1056 at 14-15) *see* Jury Instruction No. 65. The Court concludes it applied the correct law. The jury was instructed on the law of obviousness in nine separate instances in both sets of instructions. *See* Tr. at 359:14-370:14 (Initial Instruction Nos. 30-36), 1678:23-1680:19 (Closing Instruction Nos. 64-65). There was no relevant objection by defendants to these instructions as they relate to this issue. Even if the language was incorrect, "[i]nvited error prevents a party from inducing action by a court and later seeking reversal on the ground that the requested action was error." *Genzyme Corp. v. Atrium Med. Corp.*, 315 F. Supp. 2d 552, 575 n.18 (D. Del. 2004). At the charging conference, L'Oréal stated that it was "happy" with the Court's initial instructions on obviousness and wanted to replace Instruction No. 65 with a repeat of Instruction No. 35. Tr. at 1287:6-1289:7.

Defendants also contend that this Court should not have revised the calculations for damages, but instead should have remanded for a trial on damages. "Rather than

recalculating the award to reflect [the court's] intuition as to how the jury arrived at its verdict, the proper procedure is to remand for a new trial on the issue of damages." *Bereda v. Pickering Creek Indus. Park, Inc.*, 865 F.2d 49, 55 (3d Cir. 1989). "It is well settled that calculation of damages is the province of the jury." *Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir. 1990). As such, courts are "prohibit[ed] . . . from recalculating erroneous jury awards where damages cannot be determined as a matter of law." *Bereda*, 865 F.2d at 55 n.5. 1989. The Court, argues defendants, failed to instruct the jury on double recovery, but instead instructed the jury that the Court will determine the total damages to ensure there is not a double recovery. D.I. 1056, Instruction Nos. 82, 90. Likewise, the defendants preferred the Court would have adopted their verdict form and would have instructed the jury to find the end and begging date of the damages, thereby, inhibiting the Court from doing so. The Court did however, use special questions for damages. The jury awarded the amount of damages for trade/secrets/breach of contract which establish a misappropriation ending date on March 31, 2018, giving defendants a 20-month head-start. Tr. at 866:14-19; D.I. 1094, at 14-16; D.I. 1078 at 2. Defendants' motion is this regard is denied.

Next, defendants contend that this Court erred in excluding evidence of Olaplex's predatory marketing practices, and the Court also erred in not permitting evidence regarding the post-grant review proceedings before the U.S. Patent and Trademark Office invalidating certain claims of the Asserted Patents. *See Hologic, Inc. v. Minerva Surgical, Inc.*, 2018 WL 3348998, at *4 (D. Del. July 9, 2018) ("initiation of the [PGR] proceeding may be relevant to issues of subjective intent and willfulness"). The Court finds the evidentiary rulings in this regard were correct. The Court already determined prior to trial

that the defendants could not back-door this evidence.  D.I. 908, 4-5.  Yet defendants attempted to do so.  Tr. at 632:6-7.  Likewise, in the order regarding the non-final PGR proceedings the Court stated: "because the patent office proceeding and decision are not binding and are on appeal, the prejudicial and confusing effect of the evidence almost certainly outweighs any probative value."  D.I. 908, at 2;  *see also* *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1343 (Fed. Cir. 2009).  The Court finds no grounds to alter this ruling.

The Court has reviewed the evidence again and comes to the same conclusion. The verdict is supported by the great weight of the evidence.  The verdict is reasonable in all respects that are challenged by the defendants.

1.  <u>Motion for Attorney Fees, D.I. 1101, filed by plaintiffs</u>

a.  <u>Law and Argument</u>

Under the Patent Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  Similarly, under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  15 U.S.C. § 1117(a).  The Third Circuit defines "exceptional" under each of these statutes identically.  *See* *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 314-15 (3d Cir. 2014) (holding interpretation of "exceptional" under the Patent Act "controls" interpretation under the Lanham Act) (citing *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545 (2014)).  Exceptionality exists either where "there is an unusual discrepancy in the merits of the positions taken by the parties," or where "the losing party has litigated the case in an 'unreasonable manner.'"  *Fair Wind Sailing*, 764 F.3d at 315. "District courts may determine whether a case is 'exceptional' in the case-by-case

exercise of their discretion, considering the totality of the circumstances." *Octane Fitness,* 572 U.S. at 554. The standard of proof is a preponderance of the evidence. *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1310 (Fed. Cir. 2019).

Under the federal DTSA, "[i]n a civil action brought under this subsection with respect to the misappropriation of a trade secret, a court may . . . if . . . the trade secret was willfully and maliciously misappropriated, award reasonable attorneys' fees to the prevailing party." 18 U.S.C. § 1836(b)(3)(D). Similarly, under the DUTSA, if "willful and malicious misappropriation exists the court may award reasonable attorneys' fees . . . ." 6 Del. C. § 2004. Fees are available upon a finding of "willful and malicious" misappropriation. *Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC*, 2010 WL 338219, at *29 (Del. Ch. Jan. 29, 2010) ("Cherrydale did willfully and maliciously misappropriate Great American's trade secrets; hence, an award of attorneys' fees arising from Great American's pursuit of that claim is justified").

Plaintiffs move the Court to grant them a reasonable attorneys' fee, expert costs and expenses, and enter an order finding that this case is exceptional under the Patent Act and Lanham Act.

Defendants again reiterate that plaintiffs are not entitled to attorneys' fees. First, defendants argue that plaintiffs failed to apportion any fees for any claim in the case. Second, defendants contend there is nothing "exceptional" that would entitle the plaintiffs to patent cases under § 285. Likewise, the defendants contend the plaintiffs are not entitled to Lanham Act fees under 15 U.S.C. § 1117(a) as this case is not exceptional. Defendants claim that their litigation positions were meritorious, and this was just zealous advocacy.

There is no dispute that plaintiffs are the prevailing party in this case. The jury found Olaplex's patents valid and willfully infringed by L'Oréal, and also that L'Oréal willfully misappropriated trade secrets and breached the NDAs. D.I. 1060. In addition, the nondisclosure agreement states that ""[i]f a court of competent jurisdiction determines in a final, non-appealable order that this Agreement has been breached by a party or its Representatives, then such party will reimburse the other party for its reasonable, documented costs and expenses, including reasonable attorneys' fees." D.I. 636, JTX 188-5 (Olaplex, LLC Agreement, § 15); JTX 189-5 (Liqwd, Inc. Agreement, § 15) (emphasis added). Courts "may award the prevailing party all of the costs it incurred during litigation." *Mahani v. Edix Media Grp., Inc.*, 935 A.2d 242, 245-46 (Del. 2007). Further, the jury has already determined the issue of willful and malicious appropriation. Likewise, the Court finds this case is "exceptional" under the Patent Act and Lanham Act. The Court finds that under the relevant provisions of the Patent Act, Lanham Act, DTSA, and DUTSA, a "prevailing party" is entitled to fees. 35 U.S.C. § 285; 15 U.S.C. § 1117(a); 18 U.S.C. § 1836(b)(3)(B); 6 Del. C. § 2004. The Court also found that there was a complete absence of evidence of L'Oreal's Lanham Act Claim, as it involved puffing by the parties. D.I. 903, at 21-22. In that regard, the Court stated:

> [M]uch of [Rhonda Harper's] testimony concerns conduct a year and a half before L'Oréal's product launched; second, she has no apparent valid methodology for concluding that injury occurred; third, she had no idea how many advertisements were involved; fourth, she did not investigate the potential impact on consumers; and fifth, it appears she worked on this issue for only four days. There is no foundation for her opinions; there is no evidence of causation; there is no evidence of injury.

*Id.* at 23.

That alone is sufficient to find that this case is exceptional.  *See Ketab Corp. v. Mesriani and Assocs., P.C.*, 734 F. App'x 401, 411-12 (9th Cir. 2018) (finding Lanham Act case "exceptional" because the losing party "pursued groundless, frivolous, and unreasonable arguments" and "was unable to produce evidence of [trademark] infringement during the bench trial").  Likewise, defendants failed to produce sufficient evidence to support their marking claim.  D.I. 903, at 24.  Further, the Court defined claim constructions early in the case.  However, defendants attempted on numerous occasions to reassert their arguments in this regard.  These continued assertions likewise make this claim "exceptional."  *See, e.g., Tinnus Enterprises, LLC v. Telebrands Corp.*, 369 F. Supp. 3d 704, 745 (E.D. Tex. 2019) (finding case exceptional in part because "Defendants' continued assertion of claims and defenses and belated streamlining of issues wasted significant resources").  Defendants filed numerous motions and briefed and re-briefed the same arguments previously denied by this Court.  *See, e.g.*, D.I. 903, at 31-32.  Defendants likewise filed numerous letters that required substantial time and were generally replicates of previous arguments.  Plaintiffs achieved dismissal on all counterclaims, and the jury returned a verdict on all counts in plaintiffs' favor.  Likewise, the jury found in favor of the plaintiffs on the issues of willful and malicious.  The Court also find that this activity borders on, or is, vexatious litigation.  *See, e.g., Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1552 (Fed. Cir. 1989) (affirming determination that case was exceptional: "While it is difficult to infer bad faith on the part of LKB when each action is viewed individually, when viewed together, we cannot say that the district court's finding of vexatious litigation was clearly erroneous").

b. <u>Amount of Award</u>

The Court must now determine the amount of fees to be awarded to the plaintiffs.

Plaintiffs request the following attorneys' fees:

*Lead National Counsel Attorneys' Fees*
*(Quinn Emanuel Urquhart & Sullivan, LLP)*
*$11,053,874.50*
*National Co-Counsel Attorneys' Fees*
*(Diamond McCarthy LLP)*
*$966,749.00*
*Delaware Local Counsel Attorneys' Fees*
*(Morris, Nichols, Arsht & Tunnell, LLP)*
*$657,289.00*
*Costs and Expenses As To Experts Douglas*
*Schoon and George Strong*
*$1,663,739.19*
*TOTAL: $14,341,651.70 FEES, COSTS AND EXPENSES*

This case expanded through 2.5 years. The case was complex. The amount at stake was large. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010) (explaining that "the novelty and complexity of a case" should be "reflected in the number of billable hours recorded by counsel"). In addition to the substantive causes of action, the case involved two preliminary injunction motions, an interlocutory appeal to the Federal Circuit, substantial and complex discovery, 10 plus experts. Additionally, the Court notes that Quinn Emanuel's fees were subject to a 15% and 17.5% reduction.

The Court has carefully reviewed the declaration of Joseph Paunovich[1] in support of plaintiffs' motion for attorneys' fees. D.I. 1105. Counsel in this case are highly qualified and highly educated in the field of patent law and related subject matter. The fees charged for the core attorneys range from their highest hourly rates of $705.00 to $1,040. Quinn Emanual applied a 15% discount to all fees though June 30, 2017, and a 17.5%

---

[1] Mr. Paunovich is a member of the bar of the State of California and a Partner at Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), attorneys for plaintiffs Liqwd, Inc. and Olaplex, LLC, ("Olaplex")

discount to all fees from July 1, 2017 forward.[2]  All-time records are attached as D.I. 1105,

Appendix A.[3]

Morris Nichols acted as plaintiffs' Delaware counsel.  Their counsel likewise is

highly qualified.[4]  The Diamond McCarthy firm represented plaintiffs from the beginning

to the present.[5]  Cornerstone Research is a professional firm who submitted their own

---

[2] Diane Doolittle Partner $1,190.00, $981.75; Bruce Van Dalsem Partner $1,190.00, $981.75; Joseph Paunovich Partner $1,035.00 $853.88; Michelle Clark Partner $935.00, $771.38; Suong Nguyen Counsel $1,040.00, $858.00; David Elihu Counsel $955.00, $787.88; Adam DiClemente Associate $875.00, $721.88; Ali Moghaddas Associate $780.00, $643.50; William Odom Associate $ 705.00, $ 581.63

[3] December 2016: a. $40,952.57 (App. A-1); b. January 2017: $130,900.85 (App. A-2); c. February 2017: $45,679.42 (App. A-3); d. March 2017: $152,611.13 (App. A-4); e. April 2017: $100,118.53 (App. A-5); f. May 2017: $210,094.08 (App. A-6); g. June 2017: $103,830.48 (App. A-7); h. July 2017: $132,464.06 (App. A-8); i. August 2017: $45,315.19 (App. A-9); j. September 2017: $101,335.58 (App. A-10); k. October 2017: $30,968.44 (App. A-11); l. November 2017: $63,727.12 (App. A-12); m. December 2017: $56,034.00 (App. A-13); n. January 2018: $16,650.15 (App. A-14); o. February 2018: $46,381.50 (App. A-15); p. March 2018: $86,479.39 (App. A-16); q. April 2018: $165,929.78 (App. A-17); r. May 2018: $319,748.14 (App. A-18); s. June 2018: $284,410.09 (App. A-19); t. July 2018: $123,108.98 (App. A-20); u. August 2018: $149,135.25 (App. A-21); v. September 2018: $170,804.70 (App. A-22); w. October 2018: $401,763.86 (App. A-23); x. November 2018: $384,283.76 (App. A-24); y. December 2018: $662,976.19 (App. A-25); z. January 2019: $487,066.80 (App. A-26); aa. February 2019: $646,671.71 (App. A-27); bb. March 2019: $1,054,663.09 (App. A-28); cc. April 2019: $866,356.43 (App. A-29); dd. May 2019: $605,588.78 (App. A-30); ee. June 2019: $471,325.39 (App. A-31); ff. July 2019: $1,578,451.88 (App. A-32); and gg. August 2019: $1,318,047.22 (App. A-33) TOTAL:  $11,053,874.50

[4] Their totals are as follows:
a. January 2017: $11,945.00 (App. B-1); b. February 2017: $2032.50 (App. B-2); c. March 2017: $8,993.50 (App. B-3); d. April 2017: $4,734.50 (App. B-4); e. May 2017: $6,669.00 (App. B-5); f. June 2017: $7,957.50 (App. B-6); g. July 2017: $2,862.50 (App. B-7); h. August 2017: $1,334.00 (App. B-8); i. September 2017: $7,844.00 (App. B-9); j. October 2017: $10,390.00 (App. B-10); k. November 2017: $1,709.00 (App. B-11); l. December 2017: $629.50 (App. B-12); m. January 2018: $2,497.50 (App. B-13); n. February 2018: $6,688.50 (App. B-14); o. March 2018: $5,085.00 (App. B-15); p. April 2018: $6,183.50 (App. B-16); q. May 2018: $8,709.00 (App. B-17); r. June 2018: $20,622.00 (App. B-18); s. July 2018: $6,493.50 (App. B-19); t. August 2018: $16,903.00 (App. B-20); u. September 2018: $11,824.50 (App. B-21); v. October 2018: $23,635.00 (App. B-22); w. November 2018: $35,601.50 (App. B-23); x. December 2018: $25,627.50 (App. B-24); y. January 2019: $44,014.00 (App. B-25); z. February 2019: $37,345.00 (App. B-26); aa. March 2019: $39,947.50 (App. B-27); bb. April 2019: $37,225.50 (App. B-28); cc. May 2019: $57,345.00 (App. B-29); dd. June 2019: $40,899.00 (App. B-30); ee. July 2019: $57,142.00 (App. B-31); and ff. August 2019: $106,399.50 (App. B-32) Total claimed attorneys' fees charged by Morris Nichols are $657,289.00.

[5] Their totals include:
a. January 2017: $33,637 (App. C-1); b. February 2017: $8,268 (App. C-2); c. March 2017: $31,796 (App. C-3); d. April 2017: $11,128 (App. C-4); e. May 2017: $81,114 (App. C-5); f. June 2017: $1,716 (App. C-6); g. July 2017: $5,148 (App. C-7); h. August 2017: $1,976 (App. C-8); i. September 2017: $1,248 (App. C-9); j. October 2017: $468 (App. C-10); k. November 2017: $10,036 (App. C-11); l. December 2017: $3,591.50 (App. C-12); m. January 2018: $2,548 (App. C-13); n. February – March 2018: $5,200 (App. C-14); o. April 2018: $14,608 (App. C-15); p. May - June 2018: $90,981 (App. C-16); q. July 2018: $14,621.5 (App. C-17); r. August 2018: $8,112 (App. C-18); s. September 2018: $45,240 (App. C-19); t. October – November 2018: $60,852 (App. C-20); u. December 2018: $87,444 (App. C-21); v. January 2019: $76,336 (App.

costs and expense in the amount of $1,000,136.76.  *See* Appendix D.[6]  Mr. Strong, their expert and employee, submitted his costs and expenses separately.[7]  Likewise, Schoon Scientific and its expert seeks reimbursement.[8]  Olaplex is requesting reasonable fees and other costs for Quinn Emanuel, Diamond McCarthy, Morris Nichols, Cornerstone Research, George Strong, and Schoon Scientific in the aggregate amount of $14,341,651.70.  In addition, John W. Shaw, a member of the bars of the Supreme Court of Delaware, the Supreme Court of Pennsylvania, the Third Circuit Court of Appeals, the Federal Circuit Court of Appeals, the United States District Court for the District of Delaware, the United States District Court for the Eastern District of Pennsylvania, and the United States Patent & Trademark Office.  He is a 1994 magna cum laude graduate of the University of Pittsburgh School of Law, and a 1989 graduate of the Pennsylvania State University with Honors and High Distinction.  He has significant patent experience and credentials.  He testifies that the charges by these attorneys are reasonable and within the ranges charged by national counsel for this type of work.  D.I. 1107.

---

C-22); w. February - March 2019: $151,424 (App. C-23); x. April 2019: $32,836 (App. C-24); and y. May – August 2019: $186,420 (App. C-25) Their total is $966,749.

[6] a. November 2018: $192,189.04 (App. D-23); b. December 2018: $166,549.77 (App. D-24); c. January 2019: $246,454.99 (App. D-25); d. February 2019: $197,641.10 (App. D-26); e. March 2019: $38,068.44 (App. D-27); f. April 2019: $14,743.27 (App. D-28); g. May 2019: $5,398.00 (App. D-29); h. June 2019: $7,523.00 (App. D-30); i. July 2019: $70,363.64 (App. D-31); j. August 2019: $61,205.51 (App. D-32) Their total is $1,000,136.76.

[7] a. November 2018: $54,408.50 (App. E-1); b. December 2018: $53,630.00 (App. E-2); c. January 2019: $82,434.50 (App. E-3); d. February 2019: $97,572.00 (App. E-4); e. March 2019: $65,480.50 (App. E-5); f. May 2019: $432.50 (App. E-6); g. June 2019: $7,871.50 (App. E-7); h. July 2019: $73,525.00 (App. E-8); i. August 2019: $92,936.30 (App. E-9)  Their total is $528,290.80.

[8] a. November 2018: $1,218.75 (App. F-1); b. December 2018: $15,707.25 (App. F-2); c. January 2019: $20,582.25 (App. F-3); d. February 2019: $17,498.48 (App. F-4); e. March 2019: $8,699.45 (App. F-5); f. June 2019: $10,442.90 (App. F-6); g. July 2019: $46,355.38 (App. F-7); h. August 2019: $14,807.17 (App. F-8)  Their total is $135,311.63.

As for the requested fees, defendants argue that they must be reduced as they are overstated.  Defendants contend that the patent claims should be reduced as the second patent was added a year later.  Further they argue that the NDA's do not contemplate expert witness fees in the amount of over $1.5 million.  They also request that the Court delete the $500 in flight changes; $1200 for first class airfare; $33,688.50 for outside consultants who are non-experts; overtime meals; appellate fees regarding the preliminary injunction rulings; $953,648.35 for vague entries; administrative tasks in the amount of $241,426.99; time billed that related to L'Oreal S.A. in the amount of $89,361.62; proceedings other than this case in the amount of $70,143.42 (PGR's and the United Kingdom case); travel time in the amount of $28,844.08; unsuccessful motions in the amount of $63,982.50; and an event that did not occur or task potentially misbilled ($10,540.80) (*See, e.g.*, claims defendants, D.I. 1105 at Appendix A-27 (billing for reviewing an amended license agreement that never materialized)).  In conclusion, defendants ask this Court to reduce the fees by $6,508,335.20.

The Court has carefully reviewed the request for the amount of fees.  The plaintiffs have generally supported and itemized their request for fees with appropriate documentation and corroborating evidence.  The evidence supports a finding that the requested hourly rates and the hours spent is reasonable.  The Court likewise finds that defendants' argument that there is not a final-appealable order to be without merit.  With regard to the defendants' specific claims, the Court finds as follows:

i.   NDA'S – The Court finds that the NDA's do not contemplate a high or low amount of attorney fees.  Further, defendants' arguments regarding fee shifting are without merit, as the plaintiffs won on every claim.  The language set forth in the contract has no such limitations.

ii.  The plaintiffs are entitled to the $500 in flight changes.  Defendants have very little support for this request.

iii. The $1200 requested for first-class for a non-party/expert is likely not recoverable.  The Court will reduce that amount by $600.00.

iv.  The $33,688.50 requested for outside consultants who are non-experts – "[A] party will reimburse the other party for its *reasonable*, documented costs and expenses, including reasonable attorneys' fees.").   D.I. 636, JTX 188-5 (Olaplex, LLC Agreement, § 15); JTX 189-5 (Liqwd, Inc. Agreement, § 15) (emphasis added).  This language is supported under Delaware contract law. *See Mahani v. Edix Media Grp., Inc.*, 935 A.2d 242, 245 (Del. 2007) ("In these cases [involving a contractual fee-shifting provision], a trial judge may award the prevailing party *all of the costs* it incurred during litigation" (emphasis added)).  The Federal Circuit has affirmed the district court where the district court awarded attorneys' fees and expenses, including consulting fees.  *Lam, Inc. v. Johns-Manville Corp.,* 718 F.2d 1056, 1064 N.4 (Fed. Cir. 1983); *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1554 (Fed. Cir. 1989) ("it is now clear that such fees are awardable").  The Court finds these fees are reasonable given the complexity of this case and for the other

many factors as discussed herein. Accordingly, the Court will not deduct this amount from the fee request.

v. Overtime meals by employees of Cornerstone, an expert support firm – based on the duplicitous approach taken by the defendants in this case, the Court will allow these expenses.

vi. Appellate fees regarding the preliminary injunction rulings were untimely under Fed. Cir. Rule of Pract. 44.7 (allowing attorney fees and expenses within 30 days of entry of judgment). The Court concludes that a final and permanent injunction was not used until after judgment in this case. The plaintiffs have timely requested fees for the granting by the Court of the preliminary and permanent injunctions in this case. Any appellate fee disputes in this regard should be addressed with the appellate court.

vii. $953,648.35 for vague entries – The Court finds these entries are not vague and specifically address those items claimed.

viii. Administrative tasks in the amount of $241,426.99 – such amounts are generally not permissible. Accordingly, the Court will deduct this amount from the requested fee;

ix. Time billed that related to L'Oreal S.A. in the amount of $89,361.62 and proceedings other than this case in the amount of $70,143.42 (PGR's and the United Kingdom case) – The Court finds that these fees are generally related to the issues in this lawsuit. As such, the Supreme Court has held that a lawsuit in which "counsel's time will be devoted generally to the litigation as a whole" on a motion for fees "cannot be viewed as a series of discrete claims." Hensley,

461 U.S. at 434-35. Accordingly, the Court denies this request from defendants.

    x. Travel time in the amount of $28,844.08 – Plaintiffs included time travel supported by actual work during their travel. To that extent these items are includable as fees. D.I. 1125 Phillips Decl. ¶ 25.

    xi. Unsuccessful motions in the amount of $63,982.50 – The Court denies this request. The brief discussed this in the vaguest terms in 5 lines in the brief. Further, plaintiffs won on the merits for every single issue in this case.

    xii. An event that did not occur or task potentially misbilled ($10,540.80) – The plaintiffs did not object to this request. Accordingly, the Court will grant it, as it appears to be fees regarding a license agreement.

    F. <u>Motion to Alter Judgment Defendants' Motion to Alter or Amend the Judgment,</u> <u>D.I. 1102</u>, filed by defendants

Defendants move to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e) requesting that this Court should vacate its attorneys' fees and enhanced damages award pending further briefing and argument and independent fact finding on these matters. Defendants contend that on September 17, 2019, Olaplex filed motions—starting a full round of briefing—on these issues. *See* D.I. 1101 (Motion for Fees); D.I. 1097 (Motion for Enhanced Damages); *see also* D.I. 1093 (Olaplex's Rule 59(e) Motion to Amend or Alter the August 20th Judgment). The Court expressly issued its August 20th Judgment "subject to revision pursuant to any rulings on post-trial motions," D.I. 1078, at 5. The Court has already made findings in this Memorandum and Order that the enhanced fees have merit and are based on evidence. Likewise, based on the evidence presented at

trial and as discussed herein, the court has decided that it will award fees. The Court has made the necessary fact findings herein. Accordingly, this motion is denied.

G. Defendants' Motion for Trial on Their Unclean Hands Defense, D.I. 106, filed by defendants

Defendants move for a trial on the equitable defense of unclean hands. Defendants contend that this affirmative defense is still pending and has not been dismissed. Defendants argue this would result in a complete defense to all of plaintiffs' claims, both legal and equitable. Once again defendants argue that plaintiffs' marketing activities including false and deceptive advertising and social media practices. This defense was resolved in the Court's summary judgment rulings. The Court stated that there was "no evidence that these statements have deceived or tended to deceive anyone," and there was "a total failure of evidence" regarding causation or injury to L'Oréal. D.I. 903, at 21-23. Parallel counterclaims and affirmative defenses "rise or fall together." *Senju Pharmas. Co., Ltd. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 306 (D. Del. 2013) (citing *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 868 F. Supp. 2d 376, 379-83 (D. Del. 2012)) (emphasis added). D.I. 650, at 31. Defendants' unclean hands affirmative defense clearly ties itself to the counterclaims. D.I. 650 at 31-32.

Furthermore, and more importantly, defendants did not raise this request before trial, during trial or immediately thereafter. If this defense was as crucial as proclaimed by the defendants, it is unreasonable to believe it was not raised until this motion. The Court included the following in its Pretrial Order:

> Non-jury issues include all parties' requests for injunctive relief and certain equitable affirmative defenses. To the extent the Court requests additional evidence and/or argument, the parties will present such evidence and/or argument to the Court during jury deliberations on non-equitable issues

and/or as soon as practicable thereafter at the Court's convenience. In that event, the parties may summarize admitted evidence and/or present additional evidence to support such relief.

D.I. 805 ¶ 36. Plaintiffs renewed equitable issues immediately after trial, such as their request for a permanent injunction. It was two months before defendants raised this issue. It would be extremely prejudicial to the plaintiffs to now decide to conduct a trial on this issue. This motion is denied.

**THEREFORE, IT IS ORDERED THAT:**

1. Defendants' motion for Approval of Stay of Any Execution or Enforcement of the Judgment by Bond, D.I. 1089, is granted. Defendants shall forthwith post the $60,000,000.00 bond as set forth in their motion. The Court hereby orders a stay of execution of enforcement of any judgments herein until further order by this Court or the Eighth Circuit Court of Appeals.

2. Plaintiffs' motion to Alter Judgment or Amend the August 20th Judgment (D.I. 1078), D.I. 1093, is denied as set forth herein.

3. Defendants Renewed Motion for Judgment as a Matter of Law Pursuant to Federal Rule of Civil Procedure 50(b)], D.I. 1095, is denied.

4. Plaintiffs' motion to confirm the exemplary damage awards set forth in the August 20, 2019 Memorandum and Judgment (D.I. 1097), awarding an aggregate two times enhancement of patent damages and three times enhancement of trade secret damages is granted.

5. Defendants' Motion for new trial, D.I. 1098, is denied.

6. Plaintiffs' Motion for Attorney Fees, D.I. 1101, is granted as set forth herein.

7. Defendants' Motion to Alter or amend Judgment, D.I. 1102, is denied.

8. Defendants' Motion for Trial on Their Unclean Hands Defense, D.I. 1106, filed by defendants, is denied.

9. The Court awards pre-judgment interest at the prime rate, compounded quarterly, from November 22, 2016 on the '419 patent, and from June 6, 2017 on the 954 Patent, and from May 19, 2015, on the trade secrets to the date of this judgment. The Court will not award pre-judgment interest on the attorneys' fee award.

10. The Court awards post-judgment interest at the prime rate from the date of the verdict, August 12, 2019, D.I. 1059, until the entry of the final judgment herein.

11. The parties are ordered to submit a proposed final judgment to the Court within fourteen days from the date of this Memorandum and Order and in conformity with this Memorandum and Order, the Court's previous Memorandum and Order, D.I. 1078, and the Jury Verdict, D.I. 1059, in this case. The Court will then enter a judgment in accordance with this Memorandum and Order.

Dated this 16th day of December 2019.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge