NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

———————————————

**OLAPLEX, INC.,**
*Plaintiff-Appellee*

**v.**

**L'OREAL USA, INC., L'OREAL USA PRODUCTS, INC., L'OREAL USA S/D, INC., REDKEN 5TH AVENUE NYC, L.L.C.,**
*Defendants-Appellants*

———————————————

2019-2280, 2019-2292

———————————————

Appeals from the United States District Court for the District of Delaware in No. 1:17-cv-00014-JFB-SRF, Senior Judge Joseph F. Bataillon.

———————————————

Decided: March 4, 2021

———————————————

SANFORD IAN WEISBURST, Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY, argued for plaintiff-appellee. Also represented by JOSEPH M. PAUNOVICH, Los Angeles, CA.

STEPHEN BLAKE KINNAIRD, Paul Hastings LLP, Washington, DC, argued for defendants-appellants. Also

represented by NAVEEN MODI, JOSEPH PALYS, IGOR VICTOR TIMOFEYEV, DANIEL ZEILBERGER.

———————————————

Before DYK, REYNA, and TARANTO, *Circuit Judges*.

DYK, *Circuit Judge*.

Liqwd, Inc. ("Liqwd") and Olaplex LLC filed suit in the United States District Court for the District of Delaware, alleging that L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc., and Redken 5th Avenue NYC, L.L.C. (together "L'Oréal") infringed claims 1 and 10 of U.S. Patent No. 9,498,419 (the "'419 patent") and claims 1, 4, 11–16, 19, 20, and 30 of U.S. Patent No. 9,668,954 (the "'954 patent"). The district court granted Liqwd and Olaplex LLC summary judgment of direct and indirect infringement on all claims and issued a permanent injunction. L'Oréal appealed. Following post-grant review proceedings before the Patent Trial and Appeal Board ("Board"), only claims 14–16 of the '954 patent survive. As to these claims, we *affirm* the district court's claim construction. But because there are genuine questions of material fact relating to infringement of these claims under that claim construction, we *vacate* and *remand* for trial.[1] Additionally, we grant Liqwd and Olaplex LLC's motion to substitute Olaplex, Inc.

———————————————

[1]    We note that patent invalidity issues have been raised in the appeal from the district court's final judgment in case number 2020-1382 as to claims 14–16. Our decision here is therefore necessarily subject to the outcome of the invalidity issues in the 20-1382 proceeding.

Case 1:17-cv-00014-JFB-SRF    Document 1204-1    Filed 04/12/21    Page 3 of 18 PageID #: 72468

OLAPLEX, INC. v. L'OREAL USA, INC.                                    3

## BACKGROUND

### I

Olaplex, Inc. is the owner of the '419 and '954 patents, which are both directed toward methods of treating keratin in hair that has been colored or bleached.

On January 5, 2017, Olaplex, Inc.'s predecessors in interest (Liqwd and Olaplex LLC) filed suit in Delaware district court, alleging that L'Oréal directly and indirectly infringed the '419 patent through its Matrix Bond Ultim8 Step 1 Amplifier, Redken pH-Bonder #1 Bond Protecting Additive, and L'Oréal Professionnel Smartbond Step 1 Additive products (the "Step 1 products").[2]

Olaplex, Inc.'s predecessors in interest amended their complaint to allege that L'Oréal also infringed claims of the '954 patent, and to allege infringement by the combination of the Step 1 products with L'Oréal's Matrix Bond Ultim8 Step 2 Sealer, Redken pH-Bonder #2 Fiber Restorative Pre-Wash Concentrate, and L'Oréal Professionnel Smartbond Step 2 Pre Shampoo (together the "Step 2 products") and Matrix Bond Ultim8 Step 3 Sealing Treatment, Redken pH-Bonder #3 Post-Service Perfector, and L'Oréal Professionnel Smartbond Step 3 Conditioners (together the "Step 3 products").[3]

---

[2]    The complaint also asserted several non-patent claims that are not at issue in this appeal, but are the subject of the related appeal in case number 2020-1382.

[3]    Olaplex, Inc.'s predecessors in interest moved for a preliminary injunction. The district court originally denied the motion for preliminary injunction, concluding that Olaplex, Inc.'s predecessors in interest were not likely to show that L'Oréal's products did not contain a hair coloring agent (as required by claim 1 of the '419 patent). Olaplex, Inc.'s predecessors in interest appealed, and we

On June 25, 2019, the district court granted Olaplex, Inc.'s predecessors in interest summary judgment of direct and indirect infringement of the asserted claims of the '419 and '954 patents. On August 16, 2019, the district court issued a permanent injunction prohibiting L'Oréal "and their parents, subsidiaries, affiliates, officers, directors, agents, employees, successors, assigns, and attorneys, and any and all persons in active concert or participation with any of them" from "using, making, causing to be made, selling, offering to sell, causing to be sold, importing[,] and/or exporting" the Step 1, 2, and 3 products "and all other products only colorably and/or trivially different therefrom." J.A. 23. On the same day that the court issued the permanent injunction, L'Oréal filed a notice of appeal challenging the district court's grant of a permanent injunction.

L'Oréal also moved for a partial interim stay of the injunction. We granted a stay of the injunction "to the extent that it reaches beyond the following: (A) the use and promotion of the use of products having the current formulations of L'Oréal USA's Step 1 products . . . or products only colorably and/or trivially different therefrom; and (B) the use or promotion of the use of products having the current formulations of L'Oréal USA's Step 2 and 3 products . . . when used after use of the products identified in (A), or products only colorably and/or trivially different therefrom." Order at 2, *Liqwd, Inc. v. L'Oréal USA, Inc.*, No. 19-

---

determined that the district court's decision relied on an incorrect claim construction. We therefore vacated the denial of the preliminary injunction. On remand, the district court determined that Olaplex, Inc.'s predecessors in interest were entitled to a preliminary injunction. However, the court ultimately declined to enter the preliminary injunction, citing the proximity of trial and concluding that it should first decide the pending motions for summary judgment.

2280, (Fed. Cir. Aug. 21, 2019), ECF No. 15. We have jurisdiction over this appeal under 28 U.S.C. §§ 1292(c)(1) and 1295(a)(1).

## II

During the pendency of the district court proceeding at issue here, L'Oréal filed petitions for post-grant review of the '419 and '954 patents. The Board held claims 1–8 and 10 of the '419 patent unpatentable as obvious. The Board also found that L'Oréal copied an unpublished patent application owned by Olaplex, Inc.'s predecessors in interest, but that this evidence of copying was not relevant to obviousness because there was no evidence L'Oréal copied a patented product. On appeal, we concluded that this evidence of copying was relevant to the obviousness determination and had to be considered by the Board. On remand, the Board again concluded that claims 1–8 and 10 of the '419 patent were unpatentable as obvious. Although Olaplex, Inc. initially appealed the Board's remand decision, it later voluntarily dismissed its appeal.

In a separate decision, the Board determined that claims 1–13, 19–23, and 29–30 of the '954 patent were unpatentable as obvious, but that L'Oréal had not proven that claims 14–16, 18, and 24–28 of the '954 patent (the "breakage claims") were obvious. We affirmed. *L'Oréal USA, Inc. v. Olaplex, Inc.*, No. 2019-2410, 2021 WL 280493 (Fed. Cir. Jan. 28, 2021).

On this appeal, only the breakage claims remain patentable, and we address only those claims.

Claim 12 of the '954 patent, as shown with the incorporated text of claim 1, recites:

12. [A method for bleaching hair comprising:

    (a) mixing a bleach powder and a developer to form a bleaching formulation;

6                                  OLAPLEX, INC. v. L'OREAL USA, INC.

> (b) mixing an active agent formulation comprising an active agent with the bleaching formulation to form a mixture, wherein the active agent is maleic acid; and
>
> (c) applying the mixture to the hair;
>
> (d) wherein the active agent in the mixture is at a concentration ranging from about 0.1% by weight to about 50% by weight] further comprising:
>
> (e) applying a second active agent formulation comprising maleic acid,
>
> wherein step (d) occurs subsequent to step (c).

'954 patent col. 26 ll. 30–33.

In turn, claim 13 recites, "[t]he method of claim 12, wherein the second active agent formulation further comprises a conditioning agent." *Id.* col. 26 ll. 34–35. Finally, claims 14, 15, and 16 recite, "[t]he method of claim 13, wherein following step (d) breakage of the hair is decreased by at least" 5%, 10%, and 20%, respectively, "compared to hair bleached with the bleaching formulation in the absence of the active agent." *Id.* col. 26 ll. 36–47.

### III

On January 8, 2020, after the filing of the notice of appeal (but while the district court proceedings were continuing with respect to damages and other claims), Liqwd and Olaplex LLC assigned their rights in the asserted patents and causes of action to Olaplex, Inc. Then, on May 6, 2020, Liqwd and Olaplex LLC filed a motion to join or substitute Olaplex, Inc. for Liqwd and Olaplex LLC as a party to this appeal.

OLAPLEX, INC. v. L'OREAL USA, INC.                              7

DISCUSSION

I

We first address Liqwd, Inc. and Olaplex LLC's motion to join or substitute Olaplex, Inc.  Federal Rule of Appellate Procedure 43(b) governs substitution for "any reason other than death," and provides that "the procedure prescribed in Rule 43(a) applies."  Fed. R. App. P. 43(b).[4]  Substitution under Rule 43(b) "may . . . be necessary when a party is incapable of continuing the suit, such as . . . when a transfer of interest in the company or property involved in the suit has occurred."  21 James W. Moore et al., *Moore's Federal Practice – Civil* § 343.12 (2020).

Here, Liqwd and Olaplex LLC transferred their interests in the patents at issue and causes of action to Olaplex, Inc. on January 8, 2020.  Liqwd and Olaplex LLC filed a motion in this court to join or substitute Olaplex, Inc. on May 6, 2020.

---

[4]    Rule 43(a) provides in relevant part that:
(a) Death of a Party.
  (1) *After Notice of Appeal Is Filed.*  If a party dies after a notice of appeal has been filed or while a proceeding is pending in the court of appeals, the decedent's personal representative may be substituted as a party on motion filed with the circuit clerk by the representative or by any party.  A party's motion must be served on the representative in accordance with Rule 25.  If the decedent has no representative, any party may suggest the death on the record, and the court of appeals may then direct appropriate proceedings.
Fed. R. App. P. 43(a)(1).

8                                    OLAPLEX, INC. v. L'OREAL USA, INC.

L'Oréal opposed the motion, arguing that Liqwd and Olaplex LLC lost standing when they transferred their interests to Olaplex, Inc., and that this loss of standing rendered the entire action moot when the district court entered final judgment on March 24, 2020. In support, L'Oréal cites language from our opinion in *Schreiber Foods, Inc. v. Beatrice Cheese, Inc*, 402 F.3d 1198 (Fed. Cir. 2005). *Schreiber Foods* expressed "grave doubts as to whether" Rule 25(c) of the Federal Rules of Civil Procedure would allow a patent owner to continue as the sole plaintiff following transfer of its patent interests. *Id.* at 1204 n.6. However, it did not decide this issue. *Id.*

Liqwd and Olaplex LLC argue that the transfer of interests to Olaplex, Inc. does not deprive us of jurisdiction over the appeal of the permanent injunction because L'Oréal filed its notice of appeal on the same day the injunction issued, August 16, 2019, which was several months before the January 2020 transfer of interests to Olaplex, Inc. We agree. It is uncontested that Liqwd and Olaplex LLC had standing when the permanent injunction was entered and when their notice of appeal was filed, which is when our jurisdiction attached.[5] *See Uniloc USA, Inc. v. ADP, LLC*, 772 F. App'x 890, 893 (Fed. Cir. 2019) ("When [appellants] filed the notices of appeal that set our jurisdiction in these cases, they were indisputably the owners of the patents-in-suit. The [subsequent] transfer of the patent rights . . . did not divest this court of jurisdiction or the ability to substitute or join a successor-in-interest."); *see also Gilda Indus., Inc. v. United States*, 511 F.3d 1348, 1350 (Fed. Cir. 2008) (stating that filing a notice of appeal confers jurisdiction on an appellate court).

---

[5] A related issue of substitution arose in connection with the appeal from the district court's entry of final judgment following trial in case number 2020-1382. We do not address this issue in this appeal.

We also reject L'Oréal's argument that we do not have jurisdiction to hear this appeal because the permanent injunction was rendered moot by merger into the district court's March 24, 2020 final judgment.  L'Oréal is correct that the merger rule permits parties to appeal interlocutory rulings as part of an appeal of a final judgment.  *See Hendler v. United States*, 952 F.2d 1364, 1368 (Fed. Cir. 1991) ("As a general proposition, when a trial court disposes finally of a case, any interlocutory rulings 'merge' with the final judgment" and "both the order finally disposing of the case and the interlocutory orders are reviewable on appeal."); *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 706 (3d Cir. 1996) (stating that "interlocutory orders (to the extent that they affect the final judgment) may be reviewed on appeal from the final order").  However, the merger cases relied on by L'Oréal do not suggest that entry of final judgment eliminates a party's right to continue to appeal a previously issued and appealed permanent injunction.

We have previously allowed these parties to substitute under Rule 43(b) in the context of the '954 post-grant review proceeding.  *See L'Oréal USA, Inc. v. Olaplex, Inc.*, No. 2019-2410, 2021 WL 280493, at *4–6 (Fed. Cir. Jan. 28, 2021) (permitting substitution of Olaplex, Inc. for Liqwd, Inc. following transfer of patent interests after notice of appeal from a Board proceeding was filed); *cf. Uniloc USA*, 772 F. App'x at 894 (permitting joinder following transfer of patent interest after notice of appeal from district court proceeding was filed).  We see no reason not to do so here.

The motion to substitute is granted.  Having granted the motion to substitute, we hereafter use the term Olaplex to refer to Olaplex, Inc. and its predecessors in interest Liqwd and Olaplex LLC.

II

Next, we address L'Oréal's challenge to the district court's claim construction of the breakage claims.  "We review the district court's ultimate construction de novo, and

10                                    OLAPLEX, INC. v. L'OREAL USA, INC.

any underlying factual findings supporting the construction for clear error." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1333 (Fed. Cir. 2015).

The breakage claims depend on claim 1 of the '954 patent. Claim 1 requires that "the active agent in the mixture is at a concentration ranging from about 0.1% by weight to about 50% by weight." '954 patent col. 25 ll. 58–67. The possible constructions for this limitation concern whether the measurement is made when the active agent is added into the mixture or after it has been added to the mixture. The district court adopted Olaplex's construction for this limitation, construing it as the "weight of active agent added into the active agent formulation relative to the total weight of the mixture with the bleaching formulation." J.A. 29. L'Oréal contends that the district court's construction was wrong and that this term "requires determination of the weight of [active agent] present in the mixture." Appellant's Br. 24. L'Oréal argues that the district court's construction "contravenes . . . the plain language of the claims." *Id.* at 17. We agree with the district court.

First, L'Oréal's construction would render the claim term "maleic acid" meaningless because both parties agree that maleic acid is neutralized and transformed into maleate (a salt) once added to an alkaline bleaching solution. Consequently, there would be no maleic acid in the final bleaching solution under L'Oréal's construction, and the claim limitation would never be satisfied. *See Wasica Fin. GmbH v. Cont'l Automotive Systems, Inc.*, 853 F.3d 1272, 1288 n.10 (Fed. Cir. 2017) ("It is highly disfavored to construe terms in a way that renders them void, meaningless, or superfluous."); *Bicon, Inc. v. Straumann Co.*, 441 F.3d

OLAPLEX, INC. v. L'OREAL USA, INC.                                         11

945, 950– 51 (Fed. Cir. 2006) (rejecting a construction of a term that would render another limitation superfluous).[6]

Second, Example 3 discloses "maleic acid at concentrations of 2.0 g in 10 g total solution (water)" that is then added to a bleaching solution comprising a developer and a powder bleach. '954 patent col. 22 ll. 45–58. This example supports the district court's construction because it "describes the weight of maleic acid before it is mixed with bleaching formulation" rather than "the weight of maleic acid still present in the ultimate active agent formulation-bleaching formulation mixture." Appellee's Br. 23. Example 3 therefore illustrates how the patent consistently focuses on pre-mixing weights of maleic acid. Additionally, the final bleaching mixture in Example 3 would not have a maleic acid concentration within the claimed range under L'Oréal's construction, as both parties agree that maleic acid is fully neutralized to maleate at the high pH levels required for bleaching hair. Finally, Olaplex's statements during the prosecution history are also consistent with the proposed construction as they do not address <u>when</u> the maleic acid is weighed to determine the concentration.

Third, Olaplex's expert, Dr. Borish, explained that a person of ordinary skill in the art would understand the term "as describing the concentration range in terms of

---

[6]   Our opinion in *Chef America, Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371 (Fed. Cir. 2004), does not require a different result. In *Chef America*, the claims were only susceptible to one meaning and the patent owner was essentially asking this court to "redraft" the claim to make it operable. 358 F.3d at 1374 ("[W]e construe the claim as written, not as the patentees wish they had written it."). Here, the claim language supports either proposed construction and Olaplex has presented intrinsic and extrinsic evidence, including expert testimony, supporting its construction.

(1) the weight of active agent added into the active agent formulation relative to (2) the total weight of the final mixture." J.A. 10,556. The district court credited this testimony in arriving at its claim construction.

We thus affirm the district court's claim construction as requiring calculation of the weight percent of maleic acid using the "weight of active agent added into the active agent formulation relative to the total weight of the mixture with the bleaching formulation." J.A. 29.

## III

Finally, we address the district court's grant of summary judgment of infringement. A grant of summary judgment is reviewed de novo. *Gonzalez v. Sec'y of Dep't of Homeland Security*, 678 F.3d 254, 257 (3rd Cir. 2012). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

There are three types of products at issue here, all three of which contain maleic acid. The Step 1 products are mixed with a bleach solution or a coloring agent before application to the client's hair by stylists in a salon setting. The Step 2 products are applied by stylists after the Step 1 product and bleaching solution or coloring agent are rinsed from the client's hair. Finally, the Step 3 products are at-home products used by clients on a weekly basis. Because claim 12 requires a first and second application of maleic acid, the alleged infringement takes place by a combination of the Step 1 and 2 products. We conclude that there is a genuine issue as to whether the use of Step 1 and 2 products infringe. As we discuss below, the district court also should not have granted summary judgment on whether the accused use of the Step 3 products constitutes infringing activity.

OLAPLEX, INC. v. L'OREAL USA, INC.                                13

A

L'Oréal argues that there is a question of material fact regarding whether its Step 1 products contain a maleic acid concentration between about 0.1% by weight and 50% by weight as required by claim 1, upon which the breakage claims depend.[7]  Olaplex's expert witness, Dr. Borish, used nuclear magnetic resonance ("NMR") testing to establish that L'Oréal's Step 1 products contain added maleic acid at concentrations between 10.2 and 10.6% by weight, well within the claimed range.  L'Oréal argues that this testing failed to establish infringement because only nonionic maleic acid infringes the claims, and NMR cannot distinguish between hydrogen maleate, maleate, and maleic acid. L'Oréal contends that Dr. Borish's concentration calculations therefore improperly included the amount of non-infringing maleates in L'Oréal's products.

L'Oréal's argument appears to be an attempt to reargue the district court's construction of claim 1, which expressly required that the maleic acid concentration be based on the maleic acid added into solution, and not the maleic acid remaining in the mixed solution.  Further, we conclude that Olaplex established that all the maleates detected by Dr. Borish's testing "derived from pure maleic acid that had been added into [L'Oréal's] product[s]" and therefore served as an appropriate proxy for calculating the maleic acid concentration added to the mixture.  Appellee's Br. 32.  L'Oréal failed to show that the weight of the maleic acid salts in the solution were not representative of the weight of the maleic acid originally added into solution.  Finally, Dr. Borish separately calculated the Step 1 active agent concentration using L'Oréal's own internal calculations and data sheets.  These separate calculations showed that L'Oréal's Step 1 products have a maleic acid

---

[7]    There is no contention that the Step 2 products are relevant to whether this limitation is satisfied.

14                                        OLAPLEX, INC. v. L'OREAL USA, INC.

concentration of approximately 10.7% by weight, which both corresponds to the weight percent calculated by NMR testing and falls within the claimed range. Thus, there is no question of material fact concerning the maleic acid concentration added to the mixture in the Step 1 products, and Olaplex has established that the combination of the Step 1 and Step 2 products satisfies this limitation.

B

L'Oréal argues that there is a material issue as to whether the combination of its Step 1 and 2 products satisfy the specific percentages of decreased hair breakage limitations of the breakage claims following treatment with the claimed method.[8] The district court's summary judgment analysis of these claims was brief, consisting of a single sentence stating that "[t]he Accused Product also meets the breakage decrease requirements of claim 14." J.A. 98. The district court did not further explain the basis for its determination. We agree with L'Oréal.

In support of its summary judgment motion, Olaplex did not rely on any independent testing or expert analysis to demonstrate that the claim limitations were met. Instead, Olaplex relied on L'Oréal marketing materials and internal testing to show that the accused products cause a 70 percent reduction in hair breakage, which would be sufficient to meet the limitations of all the breakage claims. L'Oréal's expert, Dr. Freeman, challenged the relevance of this evidence, explaining that the marketing materials and L'Oréal internal tests only reported breakage results following a "repeated application process that involved

---

[8]    Claim 14 recites at least a 5% reduction in breakage, claim 15 recites at least a 10% reduction in breakage, and claim 16 recites at least 20% reduction in breakage. '954 patent col. 26 ll. 36 – 47.

different procedures, different formulations, [and] different hair." J.A. 23,988.

We agree with L'Oréal that summary judgment was inappropriate on this issue. L'Oréal's marketing material advertises "70% less breakage after 3 lightening services." J.A. 23,642. Similarly, L'Oréal's internal breakage testing also involved repeated applications of bleach and maleic acid. Because the breakage claims require specific breakage reductions following a <u>single</u> application of the claimed maleic acid treatment comprising a single bleach treatment and two serial applications of maleic acid, the evidence does not permit summary judgment of infringement. There is a question of material fact concerning whether the Step 1 and 2 products meet the limitations of the breakage claims.

C

L'Oréal argues that Olaplex failed to establish that its combination of Step 1 and 2 products used a "bleach powder" as required by the breakage claims, and that Olaplex failed to establish that L'Oréal induced third parties to perform the method of the breakage claims with a "bleach powder." The district court construed "bleach powder," as used in claim 1 of the '954 patent, on which the breakage claims depend, to require "a dry particulate composition (i.e., a powder) comprising at least a persulfate and an alkalizing agent." J.A. 32. Both parties appear to agree with this construction. Olaplex was therefore required to establish that the accused products produced the claimed reduction in breakage when hair was treated with a bleaching powder that contained a persulfate and an alkalizing agent. Additionally, Olaplex was required to show that accused infringers performed the claimed method using a bleach powder containing a persulfate and alkalizing agent. Olaplex failed to establish entitlement to summary judgment in either respect.

16                                    OLAPLEX, INC. v. L'OREAL USA, INC.

Olaplex argued that it was known in the industry that bleach powders include a persulfate.  However, Olaplex relied on an excerpt from a hair care textbook that stated that "[i]f extensive bleaching is required or a frosting/streaking effect is desired, peroxide alone is too slow" and "a 'bleach booster' is added" that is "usually a mixture of ammonium and potassium persulfates."  J.A. 2131.  Rather than supporting Olaplex's argument, the cited textbook by the use of the word "usually" suggests that not all bleach powders necessarily contain a persulfate.  Additionally, while Olaplex presented evidence that L'Oréal sold bleach powders containing potassium persulfate, it did not provide evidence entitling it to a finding on summary judgment that these bleach powders were used in L'Oréal's internal breakage testing or by the accused infringers.  We therefore agree with L'Oréal that there is a question of material fact concerning infringement of the breakage claims with respect to the bleach powder limitation.

D

L'Oréal also argues that the accused use of its Step 3 products does not infringe because these products are applied to the hair by customers at home, days or weeks after the salon stylists complete their work applying the Step 1 and 2 products.  Because the Step 3 products are at-home treatments, L'Oréal asserts that they are "applied after, not as part of, the claimed bleaching method."  Appellant's Br. 42.  We agree with L'Oréal that the district court erred in granting summary judgment on this issue.  The accused use of Step 3 products by clients in their own homes is not part of the "method of bleaching hair" required by claim 1 (incorporated into the claims still at issue) and so cannot be infringing.[9]

---

[9]    L'Oréal also contends that Olaplex failed to prove "that a single actor performed the method steps with

OLAPLEX, INC. v. L'OREAL USA, INC.                                          17

Although the word "subsequent" in the claim does not, standing alone, set a time limit on when the "second active agent formulation" is applied, the claim requires that the application of the first "active agent formulation" (as part of a mixture with a bleaching formulation) and also the "second active agent formulation" be part of a "method for bleaching hair." It would not be reasonable to find the "method for bleaching hair" phrase met on the facts of record, understood in the light most favorable to Olaplex, about the accused uses of L'Oréal's products. First, maleic acid within a bleaching formulation must be applied to the hair, which is allegedly achieved by application of the Step 1 products. Second, a "second active agent formulation" that contains a conditioning agent must be applied to the hair, which is allegedly achieved by application of the Step 2 products. The "method for bleaching hair" readily encompasses both of those steps when performed in the same setting (as alleged here, a salon) in the same client visit. But when that process is complete—Step 1 and Step 2 products have been applied—and the client's visit ends, it is not reasonable, under the claim, to treat the self-application of the Step 3 product days or weeks later as part of the "method for bleaching hair." Applying the Step 3 product in that situation would be applying a third, not second, active agent formulation.

On the summary judgment evidence of record, the Step 3 products are used by clients in their own homes following treatment with the Step 1 and 2 products in the salon. There is no allegation that the Step 3 products are ever applied to hair that has been treated by Step 1, but not Step 2, products. Additionally, while there is a contention that the Step 3 products have been used by stylists in a salon,

_____

regard to Step 3 products." Appellant's Br. 44. Because we conclude that the use of the Step 3 products is not infringing activity, we do not address this argument.

there is no evidence that the Step 3 products were used in salons as part of the accused process after the '954 patent issued.[10] In this case, therefore, we agree with L'Oréal that the district court should not have granted summary judgment because the Step 3 products are applied after, not during, the claimed bleaching method.

E

L'Oréal also argues that the district court should not have granted summary judgment on induced infringement because there were questions of material fact concerning L'Oréal's intent to induce infringement. We decline to address this argument because our conclusions with respect to direct infringement affect the induced infringement analysis. This must be addressed on remand.

We vacate the injunction and remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED**

COSTS

No costs.

---

[10] Olaplex submitted an affidavit by Vicki Laris, a stylist, who stated that she had "used all three steps" of the accused products "with clients when performing bleaching treatments." J.A. 33,250. However, the declaration does not state that this use occurred after June 6, 2017, when the '954 patent issued.